1  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
2  AMY C. TOVAR (SBN 230370)
   Amy.Tovar@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
5  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
6
   Attorneys for Defendants
7  UNIVERSAL MUSIC CORP.,
   UNIVERSAL MUSIC PUBLISHING, INC.,
8  and UNIVERSAL MUSIC PUBLISHING
   GROUP
9
                        UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11

12
   STEPHANIE LENZ,                          CASE NO.  CV 07-03783
13
                  Plaintiff,                **MEMORANDUM OF POINTS AND**
14                                          **AUTHORITIES IN SUPPORT OF**
          vs.                               **DEFENDANTS' MOTION TO**
15                                          **DISMISS COMPLAINT AND**
   UNIVERSAL MUSIC CORP., UNIVERSAL         **SPECIAL MOTION TO STRIKE**
16 MUSIC PUBLISHING, INC., and UNIVERSAL    **PLAINTIFF'S STATE LAW CLAIM**
   MUSIC PUBLISHING GROUP,
17                                          [Notice of Motion and Motion and
                  Defendants.               Declaration of Kelly M. Klaus Filed
18                                          Concurrently]

19                                          DATE:  TBD
                                            TIME:  TBD
20                                          CTRM: To Be Assigned

21

22

23

24

25

26

27

28

3663440.1                                      POINTS & AUTH. ISO MOT. TO DISMISS
                                               CASE NO. CV 07-03783

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    FACTUAL BACKGROUND ........................................................................................ 4

    A.    The Explosion Of Copyright Infringement Through The Internet......................... 4

    B.    YouTube's Terms Of Use Governing Notices Of Infringing Conduct.................. 5

    C.    Plaintiff's Posting Of Her "Let's Go Crazy" Video.............................................. 6

    D.    Universal's Notice ................................................................................................. 6

    E.    Plaintiff's Complaint And EFF's Public Relations Offensive ............................... 7

III.   ARGUMENT .............................................................................................................. 9

    A.    Plaintiff's Complaint Cannot Survive A Motion To Dismiss Without Facts
       That Plausibly Support A Claim For Relief............................................................ 9

    B.    Plaintiff's First Cause Of Action – For "512(f) Misrepresentation" – Fails
       Because, Even If The Statute Applies, Plaintiff Does Not And Cannot
       Plead The Mental-State Requirement Under Ninth Circuit Precedent ................. 9

         1.    Plaintiff Fails To Plead That Universal Had "Actual Knowledge" It
            Was Making A Material Misrepresentation............................................... 10

         2.    Plaintiff Cannot Avoid *Rossi* By Claiming Universal Must Have
            Known Her Posting Was A "Self-Evident Non-Infringing Fair Use" ...... 12

    C.    Plaintiff's Second Cause Of Action – For "Interference With Contract"
       Under California Law – Must Be Stricken Under California's Anti-SLAPP
       Statute................................................................................................................. 15

         1.    California's Two-Part Inquiry On An Anti-SLAPP Motion.................... 15

         2.    Step One: Plaintiff's Tortious Interference Claim Arises From
            Universal's Protected Speech Activity.................................................... 16

         3.    Step Two:  Plaintiff Cannot Meet Her Burden Of Establishing A
            Probability She Will Prevail On Her Claim............................................. 17

             a.    Plaintiff Cannot Show That She Had A Valid Contract That
                Guaranteed Her Right To Have YouTube Host Her Video ......... 18

             b.    Plaintiff Cannot Show That Universal Interfered With Any
                Contract She May Have Had With YouTube .............................. 18

             c.    Plaintiff Cannot Overcome Universal's Justification In
                Sending Its Notice To YouTube ................................................. 18

    D.    Plaintiff's Third Cause Of Action – For Declaratory Relief Of Non-
       Infringement – Does Not Present A Justiciable Case Or Controversy ................ 20

IV.    CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*A&M Records, Inc. v Napster, Inc.,*
239 F.3d 1004 (9th Cir. 2001)...................................................................................... 4, 5, 6

*Batzel v. Smith,*
333 F.3d 1018 (9th Cir. 2003)............................................................................................ 15

*Bausch & Lomb Inc. v. Alcide Corp.,*
684 F. Supp. 1155 (W.D.N.Y. 1987) .................................................................................. 21

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ......................................................................................................... 9

*Campbell v. Acuff-Rose Music, Inc.,*
510 U.S. 569 (1994) .............................................................................................. 2, 13, 14

*Cardinal Chemical Co. v. Morton Int'l, Inc.,*
508 U.S. 83 (1993) .............................................................................................................. 20

*Columbia Pictures Indus., Inc. v. Schneider,*
435 F. Supp. 742 ................................................................................................................. 21

*Conley v. Gibson,*
355 U.S. 41 (1957)................................................................................................................. 9

*Davox Corp. v. Digital Systems Int'l, Inc.,*
846 F. Supp. 144 (D. Mass. 1993) ..................................................................................... 21

*Dudnikov v. MGA Enter., Inc.,*
410 F. Supp. 2d 1010 (D. Colo. 2005) .............................................................................. 12

*Flast v. Cohen,*
392 U.S. 83 (1968) .............................................................................................................. 20

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
471 U.S. 539 (1985)............................................................................................................. 14

*Hulteen v. AT&T Corp.,*
___ F.3d ___, 2007 WL 2332071 (9th Cir. Aug. 17, 2007) (en banc)................................... 20

*M.G.M. Studios v. Grokster, Ltd.,*
545 U.S. 913 (2005) .............................................................................................................. 4

*MedImmune, Inc. v. Genentech, Inc.,*
127 S. Ct. 764 (2007) ......................................................................................................... 20

*Online Policy Group v. Diebold, Inc.,*
337 F. Supp. 2d 1195 (N.D. Cal. 2004) ....................................................................... 12, 19

*Perfect 10, Inc. v. Amazon.com, Inc.,*
487 F.3d 701 (9th Cir. 2007)......................................................................................... 13, 14

*Rossi v. MPAA,*
391 F.3d 1000 (9th Cir. 2004)....................................................................... 2, 11, 12, 19

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
464 U.S. 417 (1984) ........................................................................................................... 14

*Sosa v. DirecTV Inc.,*
437 F.3d 923 (9th Cir. 2006)............................................................................................... 17

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

*Staacke v. U.S. Secretary of Labor*,
    841 F.2d 278 (9th Cir. 1988)..................................................................... 20

4

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) .................................................................... 15

5

*United States v. Arnold*,
    678 F. Supp. 1463 (S.D. Cal. 1988) ......................................................... 20

6

7

*Westlands Water Dist. Distribution Dist. v. Natural Resources*
    *Defense Council, Inc.*,
    276 F. Supp. 2d 1046 (E.D. Cal. 2003) ..................................................... 20

8

**STATE CASES**

9

*A. F. Arnold & Co. v. Pacific Prof'l Ins., Inc.*,
    27 Cal. App. 3d 710 (1972)....................................................................... 17

10

*Briggs v. Eden Council for Hope & Opportunity*,
    19 Cal. 4th 1106 (1999) ............................................................................ 16

11

*Brill Media Co., LLC v. TCW Group, Inc.*,
    132 Cal. App. 4th 324 (2005) ................................................................... 16

12

*Damon v. Ocean Hills Journalism Club*,
    85 Cal. App. 4th 468 (2000) ..................................................................... 16

13

14

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002) ................................................................................ 15

15

*Flatley v. Mauro*,
    39 Cal. 4th 299 (2006) .............................................................................. 17

16

*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*,
    99 Cal. App. 4th 1179 (2002) ................................................................... 15

17

18

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ................................................................................ 17

19

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) ................................................................................ 17

20

*Rhode v. Wolf*,
    154 Cal. App. 4th 28 (2007) ..................................................................... 17

21

*Rosenthal v. Great Western Fin. Sec. Corp.*,
    14 Cal. 4th 394 (1996) .............................................................................. 17

22

23

*Wang v. Hartunian*,
    111 Cal. App. 4th 744 (2003) ................................................................... 17

24

*Wilson v. Parker, Covert & Chidester*,
    28 Cal. 4th 811 (2002) .............................................................................. 17

25

26

27

28

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

**FEDERAL STATUTES**

17 U.S.C. § 107 ............................................................................ 2, 10, 12, 14

17 U.S.C. § 512(c)(1) ............................................................................ 10

17 U.S.C. § 512(f) ............................................................................ 1, 2, 9

**STATE STATUTES**

Cal. Civ. Proc. Code § 425.16 ............................................................ 3, 15

Cal. Civ. Proc. Code § 425.16(b)(2) .......................................................... 16

Cal. Civ. Proc. Code § 425.16(c) ............................................................ 19

Cal. Civ. Proc. Code § 425.16(e)(1) .......................................................... 16

Cal. Civ. Proc. Code § 425.16(e)(4) .......................................................... 16

Cal. Civ. Proc. Code § 425.17(b) ............................................................ 17

California Civil Code Section 47(b) .......................................................... 17

1  **I.   INTRODUCTION AND SUMMARY OF ARGUMENT**

2          Although disguised as a lawsuit about protecting Plaintiff's self-expression rights, the

3  Complaint in this action runs afoul of clear Ninth Circuit law, pleads a state law claim that is

4  barred by California's "anti-SLAPP" statute, and in reality is part of an ongoing campaign by the

5  Electronic Frontier Foundation ("EFF") to deter copyright holders from protecting their rights.

6  The EFF may have philosophical objections to the rights granted to copyright holders by the

7  Constitution and by Congress, but those objections do not create causes of action simply because

8  they make for attention grabbing press releases.

9          Plaintiff's claims against Defendants Universal Music Corp., Universal Music Publishing,

10  Inc. and Universal Music Publishing Group[1] (collectively, "Universal") are all based on a notice

11  that Universal sent to the web site "YouTube," pursuant to YouTube's posted "Terms of Use."

12  Universal's notice identified more than 200 videos posted on YouTube (including one posted by

13  Plaintiff) that made unauthorized and infringing uses of musical compositions by the artist known

14  professionally as Prince, and requested that YouTube remove or disable access to the postings.

15  Plaintiff's YouTube posting uses as its soundtrack, without authorization, Prince's hit song,

16  "Let's Go Crazy," which also is the title of Plaintiff's posting.  As YouTube's Terms of Use

17  require, Universal in its notice attested to its "good faith belief that use of the material in the

18  manner complained of is not authorized by the copyright holder, its agent, or the law[.]"  Ex. A

19  ¶ 8.A (YouTube Terms of Use).[2]

20          Plaintiff's principal claim is that Universal violated Section 512(f) of the federal Digital

21  Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f).  Section 512(f) creates a damages

22  claim against an entity that, in a notice to a service provider subject to one of the DMCA's so-

23  called "safe harbor" provisions, "knowingly materially misrepresents under this section that

24  _____

[1] Universal Music Publishing Group does not exist as a legal entity and Universal Music
25  Publishing, Inc. does not own or administer the copyright at issue in this case.  Thus, neither one
should even be a defendant.  To clear up this discrepancy, counsel for Defendants advised counsel
26  for Plaintiff of the name of the Universal entity that should be substituted as the proper defendant.
Plaintiff's amended Complaint added the new entity (Universal Music Corp.) but did not dismiss
27  the improperly named defendants.  Decl. of Kelly M. Klaus ("Klaus Decl.") ¶ 2.

[2] All exhibit cites are to the accompanying Klaus Decl.  YouTube's Terms of Use also are
28  available online at www.youtube.com/t/terms.

1   material or activity is infringing[.]"  *Id*.  Universal did not send its notice pursuant to the DMCA

2   (*i.e.*, "under this section [512]") but rather pursuant to YouTube's Terms of Use.  But the Court

3   does not have to resolve whether YouTube – which is not a party – is entitled to rely on Section

4   512 or whether Universal's notice was subject to the DMCA.  The Court need not reach that issue

5   because, *even if* the DMCA applies to Universal's notice, Plaintiff's claim fails as a matter of law

6   under the Ninth Circuit's controlling interpretation of Section 512(f).[3]

7          Specifically, the Ninth Circuit holds that the "*knowingly*" requirement in Section 512(f) is

8   satisfied *only* if the defendant has the subjective "*actual knowledge*" it is making a

9   misrepresentation in a notice sent pursuant to the DMCA.  *Rossi v. MPAA*, 391 F.3d 1000, 1005

10  (9th Cir. 2004) (emphasis added).  The Complaint filed by EFF, in contrast, only alleges that

11  Universal had the required mental state under an *objective*, *negligence-based* standard.  The

12  Complaint alleges that Universal "knew *or should have known*" that Plaintiff's posting of the

13  "Let's Go Crazy" video was "a self-evident non-infringing fair use under 17 U.S.C. § 107."

14  Compl. ¶¶ 18-19 (emphasis added).  *Rossi* squarely rejects this standard.

15         Plaintiff cannot evade *Rossi* by calling her posting a "self-evident" fair use.  Compl. ¶ 18.

16  The "self-evident" allegation is just another way of pleading that Universal violated the

17  "knowingly" requirement based on an objective standard – which *Rossi* forecloses.  Moreover,

18  fair use is not even an issue to be considered (much less anticipated) unless and until a defendant

19  affirmatively raises that defense.  Even then, the validity of that defense is *never* "self-evident."

20  As the Supreme Court has made clear, fair use is determined "case-by-case," based on an

21  equitable balancing of multiple factors.  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577

22  (1994).  The result of a fair use inquiry cannot be predicted *ex ante*, as demonstrated by the fact

23  that the fair use defense within individual cases can be (and often has been) resolved differently

24  _____

25  [3] The question whether YouTube and other similar websites are entitled to rely on the "safe harbor" provisions of Section 512 of the DMCA – in particular, Section 512(c) – is currently being litigated in several different cases, and is ultimately not relevant to this case or this motion. *Viacom Int'l, Inc. v. YouTube, Inc.*, USDC SDNY Case No. 07-CV-02103; *Football Players Ass'n Premier League Ltd v. YouTube*, USDC SDNY Case No. 07-CV-03582; *UMG Recordings, Inc. v. MySpace, Inc.*, USDC CD Cal. Case No. 06-CV-07361; *UMG Recordings, Inc. v. Veoh Networks, Inc.*, USDC CD Cal. Case No. 07-CV-5744; *UMG Recordings, Inc. v. Grouper Networks, Inc.*, USDC CD Cal. Case No. 06-CV-06561.

26

27

28

1    by different courts in the same litigation.  EFF no doubt would prefer for federal law to put

2    copyright holders at risk of damages should they fail to predict accurately that a fair use defense

3    would be raised and, if it were raised, how the courts might resolve that defense at the end of a

4    lawsuit and appeal.  As *Rossi* makes clear, that is *not* the standard that Congress adopted in

5    Section 512(f).

6        The Complaint includes two other claims, both of which also fail.  Plaintiff accuses

7    Universal of tortiously interfering with her purported "contract" with YouTube.  Leaving aside

8    that the Ninth Circuit in *Rossi* flatly rejected a tortious interference claim, Plaintiff's claim should

9    be stricken under California's "anti-SLAPP" statute, Cal. Civ. Proc. Code § 425.16 *et seq*., which

10   applies to state claims in federal court.  Plaintiff's claim is based on protected speech activity, and

11   the California statute bars Plaintiff from proceeding unless she can come forward with admissible

12   evidence, at the outset of this case, to establish a reasonable probability she will prevail on her

13   claim.  Plaintiff cannot make that showing.  In fact, under no analysis can Plaintiff show that

14   Universal interfered with any contractual right she possessed; and she most certainly cannot

15   overcome Universal's justification for its conduct, as *Rossi* holds.

16       Finally, Plaintiff seeks an advisory opinion – namely, a judicial declaration that her novel

17   "self-evident" fair use theory is a complete defense to an infringement claim that Universal has

18   never filed against Plaintiff.  Plaintiff fails to establish – as she must – the existence of an actual

19   case or controversy between herself and Universal.  The only thing that Plaintiff alleges Universal

20   has done is to send a notice to a third party, YouTube.  Universal's notice informed YouTube that

21   Plaintiff's posting of Prince's work was not authorized and asked that the unauthorized use be

22   removed or access to it disabled.  Universal's notice did not indicate any intent or threat to sue

23   Plaintiff.  Thus Plaintiff's declaratory relief claim is not sufficient to invoke the Court's

24   jurisdiction.

25       Plaintiff has not alleged a single claim that can survive a motion to dismiss, and her state

26   law claim cannot survive the anti-SLAPP motion to strike.  Because the defects in Plaintiff's

27   Complaint cannot be cured with further pleading, the Complaint should be dismissed with

28   prejudice.

1    **II.    FACTUAL BACKGROUND**

2        **A.    The Explosion Of Copyright Infringement Through The Internet**

3        The issues raised by Plaintiff's Complaint do not arise in a vacuum but rather against the

4    background of the widespread use of the Internet as an engine for committing copyright

5    infringement.  Since 1999, with the launch of the notorious Napster service, multiple Internet

6    services have deliberately enabled users to copy and distribute literally billions of unauthorized

7    copies of copyrighted works.  Through a series of lawsuits litigated in the federal courts and all

8    the way to the Supreme Court, copyright owners have succeeded in obtaining injunctive relief and

9    damages against Internet services that support such mass infringement.  *See, e.g., M.G.M. Studios*

10   *v. Grokster, Ltd.*, 545 U.S. 913 (2005); *A&M Records, Inc. v Napster, Inc.*, 239 F.3d 1004 (9th

11   Cir. 2001).  Because of the legal protections that exist to protect the authorized dissemination of

12   copyrighted content on the Internet, lawful online sales through legitimate retailers, such as

13   iTunes, have grown significantly in recent years.

14       YouTube, where Plaintiff posted her video, is a relatively new type of web site, which

15   provides so-called "video sharing" or "user generated content."  Video sharing sites feature

16   videos that can be "streamed" over the Internet.  Many of the videos that are posted to video

17   sharing sites include copyrighted music.  In recognition of the legal rights accorded under the

18   Copyright Act, some sites have taken steps to obtain permission to distribute the copyrighted

19   music that their users' videos "generate."

20       However, where the holder of a copyright in a musical work has *not* licensed the use of its

21   work on a video sharing site, the work's unauthorized use can be every bit as infringing as the

22   massive uploading and downloading of copyrighted music that takes place over a peer-to-peer

23   service.  Just like peer-to-peer services, video sharing sites are available to anyone, anywhere who

24   has Internet access.  As a result, copyrighted music whose use has not been authorized can be

25   infringed thousands upon thousands of times, as is true of Plaintiff's use of "Let's Go Crazy" in

26   her video, which has been played *more than 115,000 times.  See* Ex. B.

27

28

**B.    YouTube's Terms Of Use Governing Notices Of Infringing Conduct**

YouTube, like many web sites, maintains Terms of Use, which (according to the Terms) list the circumstances under which YouTube says its users may access the site.  Ex. A, http://www.youtube.com/t/terms (last visited Sept. 19, 2007).  YouTube's Terms of Use also provide a means for copyright owners or their agents to notify YouTube if they "believe that any User Submission or other content infringes upon [their] copyrights[.]"  *Id.* ¶ 8.A.  Specifically, the Terms of Use provide that the copyright owner or their agent may notify YouTube's "Copyright Agent" about unauthorized content on the site.  The Terms of Use specify the required contents of such a notice, including:  "[i]dentification of the copyrighted work claimed to have been infringed"; "[i]dentification of the material that is claimed to be infringing"; and "[a] statement that [the owner or agent] ha[s] a good faith belief that use of the material complained of is not authorized by the copyright owner, its agent, or the law[.]"  *Id.*

The Terms of Use also provide a mechanism for a user whose posting is removed or blocked to file a "counter-notice" with YouTube.  *Id.* ¶ 8.B.  Among other things, the Terms of Use require that the "counter-notice" provide "[a] statement that [the user] ha[s] a good faith belief that the content was removed or disabled as a result of mistake or a misidentification of the content."  *Id.*  The Terms of Use go on to provide that

> If a counter-notice is received by the Copyright Agent, YouTube may send a copy of the counter-notice to the original complaining party informing that person that it may replace the removed content or cease disabling it in 10 business days.  Unless the copyright owner files an action seeking a court order against the content provider, member or user, the removed content may be replaced, or access to it restored, in 10 to 14 business days or more after receipt of the counter-notice, at YouTube's sole discretion.

*Id.*

These provisions from YouTube's Terms of Use appear on their face to track the requirements for notices and counter-notices under Section 512 of the Digital Millennium Copyright Act ("DMCA").  As discussed below, Universal does not agree that a notice in accordance with YouTube's Terms of Use is notification pursuant to the DMCA or that You Tube is entitled to DMCA protection.  Those issues, however, have no bearing on this case or this motion, because Plaintiff's Complaint fails even if the DMCA applies.

### C.    Plaintiff's Posting Of Her "Let's Go Crazy" Video

In early February, Plaintiff (using the handle, "edenza") posted her video to YouTube. *See* Compl. ¶ 13. Plaintiff entitled the video, "'Let's Go Crazy' #1," and, indeed, it is the first result listed when one types "Let's Go Crazy" into YouTube's search engine. The video shows Plaintiff's child dancing to Prince's "Let's Go Crazy." The use of the music is central to Plaintiff's posting, as is obvious from both the title and the content of the video. In fact, Plaintiff says to her child, "what do you think of the music?" While the Complaint tries to portray Plaintiff's posting as a home movie intended for private viewing by "her family and friends," *id*. ¶ 2, that allegation is inconsistent with the fact that Plaintiff posted the video on YouTube for the entire world to see and hear. Plaintiff's posting has had its desired effect, since the video (including its unauthorized use of "Let's Go Crazy") has been played *more than 115,000 times*, and counting. *See* Ex. B, www.youtube.com/watch?v=N1KfJHFWlhQ.

### D.    Universal's Notice

Universal owns and administers various copyrights in musical compositions. A musical composition is distinct from the particular sound recording in which the composition may be embodied, though each work may be the subject of a separate copyright. Among the musical compositions that Universal administers are those owned or controlled by Prince Rogers Nelson, professionally known as "Prince." Compl. ¶ 10. On June 4, 2007, Universal sent YouTube a notice in accordance with the site's Terms of Use. Universal's notice listed the links to more than 200 video postings (including Plaintiff's) that made unauthorized use of musical compositions written in whole or in part by Prince. *Id*. ¶ 14; Ex. C (Universal Notice to YouTube). Following the requirements set forth in YouTube's Terms of Use, Universal stated that the listed "files are offering video recordings in an interactive streaming format that embody musical compositions written by the artist known as Prince." Ex. C at 6. Also in accordance with the Terms of Use, Universal stated that it had "a good faith belief that the above-described activity is not authorized by the copyright owner, its agent, or the law." *Id*. Universal requested that YouTube "remove the infringing files from the system, or ... disable access to the infringing files, and that you inform the site operator of the illegality of his or her conduct." *Id*.

On June 7, 2007, Plaintiff sent YouTube a counter-notice to Universal's notice. Compl. Compl. ¶ 16 (stating that the date was June 27, 2007); Ex. D (Plaintiff's Counter-Notice, listing date as June 7). Notwithstanding the fact that "Let's Go Crazy" was (and Plaintiff clearly intended it to be) the soundtrack for her video, Plaintiff claimed she was "appalled and disgusted that my video has been targeted[,]" while "you allow videos on YouTube that constantly use copyrighted music and film snippets (videos and show taped off television, homemade videos of songs, remixed movie trailers, etc.)[.]" Plaintiff lamented only the fact that she had used a title that, she said, made it easier for Universal to discover her unauthorized use of Prince's music: "I firmly believe that if I had simply titled the video differently, it would never have been noticed." Ex. D at 2. Notably, Plaintiff did not claim that she had the legal right to use "Let's Go Crazy" as the soundtrack for her video.

Universal has not filed an infringement action against Plaintiff. Indeed, Universal has not had any contact whatsoever with Plaintiff. After receiving Plaintiff's counter-notice and in light of Universal's not having filed suit, YouTube restored Plaintiff's video to the site, as the service expressly reserves the right to do under its Terms of Use. Plaintiff's video remains on the site to this day and, as noted, has been played more than 115,000 times. *See* Ex. B.

**E.    Plaintiff's Complaint And EFF's Public Relations Offensive**

EFF filed the original Complaint on Plaintiff's behalf on July 24, 2007, and an amended Complaint on August 15, 2007. Plaintiff alleges three causes of action: a claim that Universal violated Section 512(f) of the DMCA in sending the notice to YouTube; a claim under California law for tortious interference with a supposed contract between Plaintiff and YouTube; and a claim for declaratory relief that Plaintiff's posting of the "Let's Go Crazy" video is subject to an affirmative defense of fair use to a hypothetical claim of copyright infringement of that work.

This Complaint is the latest in a string of lawsuits claimed to arise under Section 512(f) and filed by EFF, an advocacy group that believes copyright owners "are trying to dumb down technology to serve their 'bottom lines' and manipulate copyright laws[.]"[4] EFF has proclaimed

---

[4] *See* Ex. E, www.eff.org/about/history.php (last visited Sept. 19, 2007).

that it wants to use "the risk of substantial damages and fees" to make "companies pause before sending unfounded copyright threats."[5]  EFF rolled out the Compliant with appearances by counsel and Plaintiff on Fox News's, *The O'Reilly Factor,*"[6] followed by counsel's appearance on talk radio's, "The David Lawrence Show."[7]  EFF lists this case at the top of its "Current Hot Cases,"[8] and EFF's website features a press release that announces this suit and provides a direct link to Plaintiff's posting on YouTube.[9]

Plaintiff, whose Complaint alleges "substantial[] and irreparabl[e]" injury from Universal's notice, including "harm to her free speech rights under the First Amendment," Compl. ¶ 21,[10] has been anything but reticent about expressing herself in response to the statements that Universal made in its notice.  In addition to filing this Complaint and going on television with her lawyer, Plaintiff devotes an entire section of her online "blog" to responding to Universal.[11]  Plaintiff also is an active contributor to the subject on the "blog" that appears under the heading "Comments" on her YouTube posting, where there have been more than 270 posts about Universal's notice and about this lawsuit.[12]

---

[5] *See* Ex. F, *Diebold Coughs Up Cash In Copyright Case* www.eff.org/news/archives/2004_10.php#002009 (last visited Sept. 19, 2007).

[6] *See* Ex. G, http://blog.piggyhawk.net/?p=174 (last visited Sept. 19, 2007).

[7] *See* Ex. H, www.thedavidlawrenceshow.com/rays_privacyclue_the_effs_mcsherry_and_bond_on_green_007337.html (last visited Sept. 19, 2007).

[8] *See* Ex. I, www.eff.org/ (last visited Sept. 19, 2007).

[9] *See* Ex. J, www.eff.org/legal/cases/lenz_v_universal/ (last visited Sept. 19, 2007).

[10] In postings on her personal "blog," Plaintiff (there going by the handle "Eden") states that the allegation of "substantial and irreparable injury" is "legalese" that she put into the Complaint "on the advice of my lawyers."  Ex. G at 9-10 (posts 24 and 26).

[11] *See* Ex. K, http://blog.piggyhawk.net/?cat=26 (last visited Sept. 19, 2007).

[12] *See* Ex. B.  The postings on YouTube are laced with expletives and overheated rhetoric directed at Universal.  *See, e.g., id*. at 3 ("Boycott buying Universal music, download it from LimeWire [an illegal download site] and just donate the money straight to the artist, everyone's better off that way.").

1    **III.    ARGUMENT**

2        **A.    Plaintiff's Complaint Cannot Survive A Motion To Dismiss Without Facts That
              Plausibly Support A Claim For Relief**

3
         Just last Term, the Supreme Court clarified the standards that govern motions to dismiss in
4
*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  The Court expressly disavowed as "an
5
incomplete, negative gloss on an accepted pleading standard," the oft-repeated statement from
6
*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for
7
failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in
8
support of [her] claim which would entitle [her] to relief."  *See Twombly*, 127 S. Ct. at 1969.
9
*Twombly* holds that a complaint must be dismissed if it fails to plead "enough facts to state a
10
claim that is plausible on its face."  *Id*. at 1974.
11
         **B.    Plaintiff's First Cause Of Action – For "512(f) Misrepresentation" – Fails
12              Because, Even If The Statute Applies, Plaintiff Does Not And Cannot Plead The
               Mental-State Requirement Under Ninth Circuit Precedent**
13
         Plaintiff first claims that Universal's notice violated Section 512(f), which provides:
14
             Any person who ***knowingly materially misrepresents under this section*** that
15           material or activity is infringing ... shall be liable for any damages, including costs
             and attorney's fees, incurred by the alleged infringer ... as the result of the service
16           provider relying upon such misrepresentation in removing or disabling access to
             the material or activity claimed to be infringing[.]
17
17 U.S.C. § 512(f) (emphasis added).
18
         As a threshold matter, Plaintiff's entire claim fails because Universal's notice was not
19
made "under this section," *i.e.*, pursuant to the requirements of Section 512(c).  Universal sent its
20
notice pursuant to the specifications of YouTube's Terms of Use.  Universal expressly stated in
21
its notice that Universal's "use of this form, as required by YouTube, is meant to facilitate
22
YouTube's removal of the infringing material listed above and *is not meant to suggest or imply*
23
*that YouTube's activities and services are within the scope of the DMCA safe harbor*."  Ex. C at 6
24
(emphasis added). The reason for this qualification is quite simple: Universal does not agree that
25
YouTube or other similar "video sharing" sites are providing the type of services that are eligible
26

27

28

3663440.1                              - 9 -              POINTS & AUTH. ISO MOT. TO DISMISS
                                                         CASE NO. CV 07-03783

for protection under the DMCA's "safe harbors," or that Universal has to send notices under the DMCA in order to insist on the removal or blocking of infringing material.[13]

But whether YouTube is eligible for the Section 512(c) "safe harbor" is not relevant to this case or this motion. *Even taking as true Plaintiff's necessary allegation that Universal's notice is covered by Section 512, her claim still fails as a matter of law*. That is because Plaintiff's Section 512(f) claim does not (and cannot) plead the mental-state requirement that the statute requires.[14]

1. **Plaintiff Fails To Plead That Universal Had "Actual Knowledge" It Was Making A Material Misrepresentation**

Plaintiff's sole allegation regarding Universal's mental state when it sent the notice is as follows:  "On information and belief, [Universal] knew or should have known that the [video] did not infringe any Universal copyrights on the date" it sent the notice to YouTube.  Compl. ¶ 19. Plaintiff's only explanation for why Universal "knew or should have known" this alleged fact is the conclusory and novel allegation that Plaintiff's use of "Let's Go Crazy" in her online posting was "a self-evident non-infringing fair use under 17 U.S.C. § 107."  *Id.* ¶ 18.

These allegations fail to plead the required mental state under Section 512(f) (even assuming it applies), because "knew or should have known" is an *objective*, *negligence-based* standard.  The Ninth Circuit, however, has construed Section 512(f) to apply only where the party sending a notice has the *subjective* mental state of "*actual knowledge*" that it is making a material

---

[13] It is Universal's position that video sharing sites are not entitled to DMCA protection because (among other things) they do not "stor[e]" material "at the direction of a user," as is required for the Section 512(c) "safe harbor" to apply.  17 U.S.C. § 512(c)(1).  Video sharing sites actually copy their users' videos onto their own servers, create derivative works of the same, distribute and perform the derivative works, and engage in other conduct that has nothing to do with storing material at the direction of a user.

[14] The problems identified in the text are not the only deficiencies in Plaintiff's attempt to plead and prove Section 512(f) liability.  As noted, the statute allows a plaintiff to seek damages incurred "as the result of" the service taking material down in response to a knowing material misrepresentation.  Plaintiff is quite vague about her alleged damages; she claims only that she incurred "financial and personal expenses associated with responding to the complaint[.]"  Compl. ¶ 21.  Of course, Plaintiff has never had to respond to a *complaint*, because Universal has never sued her.  Plaintiff's response to Universal's *notice* was a five-paragraph email message she sent to YouTube as her counter-notice.  Ex. D.  The Complaint provides no plausible basis for believing that Plaintiff incurred any "financial and personal expenses" in drafting this half-page email.

1    misrepresentation. *Rossi v. MPAA,* 391 F.3d 1000, 1004-05 (9th Cir. 2004) (emphasis added).

2    Plaintiff does not and cannot plead that mental state.

3          In *Rossi*, the plaintiff operated a website that advertised "Full Length Downloadable

4    Movies" and posted graphics for movies whose copyrights were owned by MPAA members.

5    Following the procedures specified in the DMCA, the MPAA sent notices of infringing conduct

6    to Rossi and his internet service provider. Rossi then sued the MPAA for tortious interference

7    with contract (as Plaintiff also does in her Complaint) and other related torts. *Id*. at 1002. The

8    MPAA argued that its compliance with the DMCA was a complete defense to Rossi's claims.

9    Rossi, in contrast, argued that the MPAA had not complied with the DMCA. He argued that,

10   under an *objective* standard, the MPAA could not have formed a "good faith belief" that Rossi's

11   site was making infringing material available, because "a reasonable investigation into" his

12   website would have revealed that users could not actually download movies there. *Id*. at 1003.

13         The Ninth Circuit rejected Rossi's reading of the statute and affirmed summary judgment

14   for the MPAA. The court held that the "interpretive case law and the statutory structure [of the

15   DMCA] support the conclusion that the 'good faith belief' requirement ... ***encompasses a***

16   ***subjective, rather than objective***, standard." *Id*. at 1004 (emphasis added). To reach this

17   conclusion, the Ninth Circuit had to construe "knowingly" in Section 512(f), and the court's

18   construction of that provision forecloses Plaintiff's claim:

19         ***In § 512(f), Congress included an expressly limited cause of action*** for improper
       infringement notifications, imposing liability only if the copyright owner's
20     notification is a knowing misrepresentation. ***A copyright owner cannot be liable***
       ***simply because an unknowing mistake is made, even if the copyright owner***
21     ***acted unreasonably in making the mistake. Rather, there must be a***
       ***demonstration of some actual knowledge of misrepresentation on the part of the***
22     ***copyright owner***.

23         Juxtaposing the "good faith" proviso of the DMCA with the "knowing
       misrepresentation" provision of that same statute reveals ***an apparent statutory***
24     ***structure that predicated the imposition of liability upon copyright owners only***
       ***for knowing misrepresentations regarding allegedly infringing websites***.
25     ***Measuring compliance with a lesser "objective reasonableness" standard would***
       ***be inconsistent with Congress's apparent intent that the statute protect potential***
26     ***violators from <u>subjectively</u> improper actions by copyright owners***.

27

28

1    *Id.* at 1004-1005 (underscored emphasis in original) (citations omitted).  *Accord Dudnikov v.*

2    *MGA Enter., Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) (following *Rossi* standard).[15]

3    Plaintiff's Complaint fails to meet Section 512(f)'s mental-state requirement.  Plaintiff

4    does not and cannot allege that Universal subjectively knew that it was misrepresenting the

5    infringing nature of Plaintiff's use of "Let's Go Crazy" in her posting.  The Complaint instead

6    alleges that Universal "knew *or should have known*" that it was making a misrepresentation – *i.e.*,

7    that an *objective*, *reasonable* copyright owner would have recognized that Plaintiff's use was

8    non-infringing.  Compl. ¶ 19.  The Complaint thus seeks to impose liability on Universal based

9    on the same "objective reasonableness" standard that the Ninth Circuit unequivocally rejected in

10   *Rossi*.  The Section 512(f) claim can and must be dismissed on this ground alone.

2.      **Plaintiff Cannot Avoid *Rossi* By Claiming Universal Must Have**
        **Known Her Posting Was A "Self-Evident Non-Infringing Fair Use"**

11
12
        Plaintiff's deficient allegation is not saved by the fact that she pleads "knew *or* should

13   have known" in the disjunctive, so that the Court should read the Complaint to allege "actual

14   knowledge."  Under *Twombly*, Plaintiff has to allege some factual information that makes an

15   "actual knowledge" allegation plausible, and this she has not done.  The most that Plaintiff has

16   done is to allege that her unauthorized use of "Let's Go Crazy" in her YouTube posting "is a self-

17   evident non-infringing fair use under 17 U.S.C. § 107[,]" Compl. ¶ 18, and that Universal

18   therefore must be charged with having known it was making an intentional misrepresentation.

19
        The contention that the fair use defense is "self-evident" is just an objective standard

20   dressed up with different verbiage.  What Plaintiff is saying is that a hypothetical, objectively

21   reasonable copyright owner would have predicted both that the affirmative defense of fair use

22   would be raised (something that is not done until a court complaint is answered) *and* that a court

23

24   ───────────────
     [15] In *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) – another
25   Section 512(f) case brought by EFF in which the District Court decided cross-motions for
     summary judgment two months *before* the Ninth Circuit decided *Rossi* – Judge Fogel held that
26   "knowingly" in Section 512(f) "means that a party actually knew, should have known if it acted
     with reasonable care or diligence, or would have had no substantial doubt had it been acting in
27   good faith, that it was making misrepresentations."  *Id.* at 1204.  In light of the later-issued (and
     controlling) decision of the Ninth Circuit in *Rossi*, it is clear that only the first type of knowledge,
28   *i.e.*, actual knowledge, will suffice.

1   would have credited the defense as meritorious.  Plaintiff is *not* alleging that Universal *actually*

2   *did know* that Plaintiff would assert fair use were she sued (which she has not been) *and* that her

3   defense would be held meritorious (which is entirely speculative), but chose to send its notice

4   notwithstanding this actual knowledge.  Under *Rossi*, only the latter type of knowledge could

5   potentially be actionable in a case properly arising under Section 512(f).

6          Plaintiff's attempt to substitute the label "self-evident non-infringing fair use" for an

7   allegation of subjective, "actual knowledge" is particularly inappropriate in light of the nature of

8   the fair use defense.  In the first place, the very fact that Plaintiff contends her posting was "fair

9   use" is an implicit concession that the use was infringing under Section 106 of the Copyright Act.

10  The fair use defense is just that – an *affirmative defense* to conduct that otherwise infringes one or

11  more of the exclusive rights of copyright under Section 106.  As Supreme Court and Ninth Circuit

12  precedent make clear, a court does not reach the question of fair use under Section 107 until the

13  court *first* concludes the use infringes under Section 106.  *See, e.g.*, *Campbell v. Acuff-Rose*

14  *Music, Inc.*, 510 U.S. 569, 590 (1994); *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 719

15  (9th Cir. 2007).  By asserting that her use of "Let's Go Crazy" in her posting is justified, if at all,

16  only as a fair use, Plaintiff necessarily concedes that her use *does infringe* one or more rights

17  protected under Section 106.  Given Plaintiff's concession that her use of "Let's Go Crazy" in her

18  posting *does* infringe under Section 106, Plaintiff cannot plausibly contend that Universal knew it

19  was making a material misrepresentation in its notice.

20         More fundamentally, Plaintiff's reliance on a supposed "self-evident" fair use defense also

21  fails because there is no such thing.  It is a concept that can be found only in the wishful thinking

22  of the EFF.  It is not found in any statute or case law.  Whether a use does or does not amount to a

23  fair use is never "self-evident," but is reached only after a defendant first affirmatively pleads it

24  and then proves it after an intense equitable balancing of multiple factors, including four factors

25

26

27

28

3663440.1                          - 13 -

set out in the text of Section 107.[16]  The Supreme Court has emphasized that the fair use analysis

does not lend itself to "bright-line rules, for the statute, like the doctrine it recognizes, calls for

case-by-case analysis."  *Campbell*, 510 U.S. at 577.  All of the statutory factors "are to be

explored, and the results weighed together, in light of the purposes of copyright."  *Id*. at 578.

"Since the doctrine is an equitable rule of reason, no generally applicable definition is possible,

and each case raising the question must be decided on its own facts."  *Harper & Row, Publishers,

Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) (quotation and alteration omitted).  In fact, as

Professor Nimmer observes in his leading copyright treatise, each of the Supreme Court's three

landmark fair use decisions was "overturned at each level of review, two of them by split

opinions at the Supreme Court level"; Professor Nimmer points to this divergence on whether a

use is fair or not – even on the same facts, within the same litigation – as proof of "[t]he

malleability" of the fair use inquiry.  4 *Nimmer on Copyright* § 13.05, at 13-156 (footnotes

omitted).[17]  *See also*, *Perfect 10*, 487 F.3d at 725 (Ninth Circuit held defendants' use of

thumbnail images *was* fair use, whereas district court, based on same facts, held it was not).

      Given the inherently fact-specific, equitable nature of fair use, Plaintiff's reference to a

"self-evident" fair use is oxymoronic.  If courts can (and often do) disagree about whether the

same factual record does or does not excuse a use as "fair" under Section 107, a plaintiff under

Section 512(f) cannot premise a defendant's "actual knowledge" based on its failure to recognize

a use as "self-evidently" fair.  This is true even in the case of Plaintiff's video, which (with its

unauthorized use of "Let's Go Crazy") was posted to a globally accessible web site and has been

played over 115,000 times as of the date of this motion.  Whether or not *that* use is fair under the

multi-factor analysis of Section 107 is not "self-evident," and simply calling it that does not

---

[16] The statutory factors are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.

[17] The Supreme Court cases that Professor Nimmer cites are *Campbell*, *Harper & Row* and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).

- 14 -

1  substitute for the "actual knowledge" that Section 512(f) and *Rossi* require. Plaintiff's first cause

2  of action must be dismissed.

3  **C.    Plaintiff's Second Cause Of Action – For "Interference With Contract" Under California Law – Must Be Stricken Under California's Anti-SLAPP Statute**

4

5        Plaintiff's next claim, based on California law, alleges that Universal tortiously interfered

6  with a "contract" Plaintiff supposedly entered into with YouTube. This claim, however, runs

7  afoul of California's substantive statutory restrictions on "SLAPP" suits (*i.e.*, "Strategic

8  Litigation Against Public Participation," Cal. Civ. Proc. Code § 425.16 *et seq.*).[18]  Indeed,

9  because Plaintiff's tortious interference claim is based on protected speech activity as defined in

10  the anti-SLAPP statute, and because Plaintiff cannot establish with admissible evidence a

11  reasonable probability she will prevail on that claim, Plaintiff's second cause of action must be

12  stricken in accordance with the California statute.

13        **1.    California's Two-Part Inquiry On An Anti-SLAPP Motion**

14        The Court undertakes a two-part analysis in evaluating an anti-SLAPP motion:

15                First, the court decides whether the defendant has made a threshold
16        showing that the challenged cause of action is one arising from
        protected activity. The moving defendant's burden is to
        demonstrate that the act or acts of which the plaintiff complains
17        were taken "in furtherance of the [defendant]'s right of petition or
        free speech under the United States or California Constitution in
18        connection with a public issue" as defined in the statute. (§ 425.16,
        subd. (b)(1).) If the court finds such a showing has been made, it
19        then determines whether the plaintiff has demonstrated a
        probability of prevailing on the claim.

20  *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). "When the

21  moving party establishes that the action qualifies for treatment under section 425.16, the burden

22  shifts to the plaintiff to demonstrate the 'probability that the plaintiff will prevail on the claim.'"

23  *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*, 99 Cal. App. 4th 1179, 1188 (2002) (citation

24  omitted). "In making its determination [under the anti-SLAPP statute], the court *shall* consider

25

26  ────────────────
[18] The anti-SLAPP statute applies with equal force to state claims brought in federal court. *See*
27  *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir.
1999) (anti-SLAPP statute applies to California law claims in federal court); *Batzel v. Smith*, 333
28  F.3d 1018, 1023-24 (9th Cir. 2003) (same).

1    the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or

2    defense is based." Cal. Civ. Proc. Code § 425.16(b)(2) (emphasis added).

3                    2.    **Step One: Plaintiff's Tortious Interference Claim Arises From Universal's Protected Speech Activity**

4            Plaintiff premises her tortious interference claim – like all of her claims for relief – on

5    Universal's notice to YouTube. Compl. ¶ 25. Universal's only burden at step one is to show that

6    this conduct is protected speech or petitioning activity under Section 425.16 of the California

7    Civil Procedure Code, and that the claim is not subject to either of the exceptions to the anti-

8    SLAPP statute in Section 425.17. *Brill Media Co., LLC v. TCW Group, Inc.*, 132 Cal. App. 4th

9    324, 329-31 (2005). The record establishes that the conduct complained of clearly is within the

10   anti-SLAPP statute.

11           *First*, Universal's notice was "conduct in furtherance of the exercise of the ...

12   constitutional right of free speech in connection with a public issue or an issue of public interest."

13   Cal. Civ. Proc. Code § 425.16(e)(4). Universal's notice to YouTube is plainly speech. *See* Ex. C.

14   And "[t]he definition of 'public interest' within the meaning of the anti-SLAPP statute has been

15   broadly construed to include not only governmental matters, but also private conduct that impacts

16   a broad segment of society and/or that affects a community in a manner similar to that of a

17   governmental entity." *Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468, 479 (2000).

18   As demonstrated by her own actions and speech, Plaintiff clearly believes that Universal's speech

19   impacts a broad segment of society. This is shown by, *inter alia*, Plaintiff's incendiary counter-

20   notice, Ex. D, as well as her and her lawyers' far-flung public response tour, with stops (to date)

21   on Fox News, talk radio and the blogosphere. *See* Exs. G-K. Universal's conduct is protected

22   under Section 425.16.[19]

23   ─────────────────────────

24   [19] As discussed below, Plaintiff's declaratory judgment claim does not present a justiciable case
     or controversy because the mere act of sending a notice to a third-party web site does not provide
     Plaintiff a real and reasonable belief Universal intends to sue her. *See* Section D, *infra*. If the

25   Court concludes, however, that Universal's notice *does* give Plaintiff a basis for believing she
     will be sued – *i.e.*, that it is a pre-litigation communication that is an incident of a lawsuit – then

26   an additional provision of Section 425.16 applies: "any written or oral statement or writing made
     before a ... judicial proceeding[.]" Cal. Civ. Proc. Code § 425.16(e)(1). *See, e.g.*, *Briggs v. Eden*

27   *Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999); *Rhode v. Wolf*, 154 Cal. App.
     4th 28 (2007). What is more, if the notice is an incident of litigation, then the absolute privilege

28   of California Civil Code Section 47(b) applies at step two of the anti-SLAPP analysis, and

─────────────────────────

*Second*, Plaintiff's claim is not subject to either of the exceptions to the anti-SLAPP statute set forth in Section 425.17(b) and (c).  As is clear from the record, Plaintiff's claim is not "brought solely in the public interest or on behalf of the general public[,]" Cal. Civ. Proc. Code § 425.17(b), and Universal's notice was not commercial advertising "made for the purpose of ... promoting ... sales" to "an actual or potential buyer or customer[,]" *id*. § 425.17(c).  Thus, Universal has satisfied its threshold burden at step one of the anti-SLAPP analysis.

3.    **Step Two:  Plaintiff Cannot Meet Her Burden Of Establishing A Probability She Will Prevail On Her Claim**

At step two, *Plaintiff* has the burden of coming forward with *competent, admissible evidence* – not  allegations – showing that she has "'stated *and substantiated* a legally sufficient claim.'"  *Navellier v. Sletten,* 29 Cal. 4th 82, 88 (2002) (emphasis added); *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal. 4th 394, 412 (1996).  "The plaintiff 'must demonstrate that the complaint is *both* legally sufficient *and* supported by a sufficient prima facie showing of *facts* to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'"  *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002) (emphasis added) (citations omitted); *Wang v. Hartunian*, 111 Cal. App. 4th 744, 748 (2003).

The elements of intentional interference with contract under California law are: (1) the existence of a valid contract between Plaintiff and a third party; (2) defendant's knowledge of that contract; (3) intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach of disruption of the relationship; and (5) resulting damage.  *See, e.g.*, *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998).  The defendant's justification for its conduct is a complete defense to the claim.  *See, e.g.*, *A. F. Arnold & Co. v. Pacific Prof'l Ins., Inc.*, 27 Cal. App. 3d 710, 714 (1972).  Plaintiff has not shown, and cannot show, that she has a legally sufficient claim that survives the anti-SLAPP statute.

---

independently bars Plaintiff's state law claim.  *See Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).  For good measure, the federal *Noerr-Pennington* doctrine also would apply as an independent bar to Plaintiff's federal claim based on Section 512(f).  *See Sosa v. DirecTV Inc.,* 437 F.3d 923, 936-37 (9th Cir. 2006).

a.    **Plaintiff Cannot Show That She Had A Valid Contract That Guaranteed Her Right To Have YouTube Host Her Video**

Plaintiff's Complaint alleges that she "contracted with YouTube for the hosting of [the] video pursuant to YouTube's Terms of Use." Compl. ¶ 23. YouTube's Terms of Use did not give Plaintiff a legally enforceable contract; the document simply sets forth the standards that users must conform to if they wish to use the website. *See* Ex. A. The Terms of Use reserve and grant rights to YouTube but do not purport to give Plaintiff any enforceable right to have her video posted (or any other right for that matter). Because Plaintiff cannot show the existence of a valid and enforceable contract with YouTube, her claim fails.

b.    **Plaintiff Cannot Show That Universal Interfered With Any Contract She May Have Had With YouTube**

Even if Plaintiff could show that YouTube's Terms of Use give her enforceable contract rights (which she cannot), Plaintiff still cannot show that Universal interfered with any rights conferred by that contract. Plaintiff alleges that Universal interfered with her supposed YouTube contract by sending its notice to YouTube, which resulted in YouTube's temporary removal of the video from the site.

YouTube's Terms of Use, however, expressly provide for the sending of notices and temporary (or in some cases extended) removal or blocking of the material in question. *See* Ex. A ¶ 8.A. YouTube followed the notice (and counter-notice) procedures in this case to a tee, and Plaintiff can neither allege nor show that YouTube did otherwise. Hence, the purported "contract" – assuming there was one – was not interfered with; the "contract" was followed. For this reason, too, Plaintiff's tortious interference claim cannot survive the anti-SLAPP motion.

c.    **Plaintiff Cannot Overcome Universal's Justification In Sending Its Notice To YouTube**

Plaintiff also cannot plead her tortious interference claim under the anti-SLAPP standards because she cannot overcome Universal's justification for sending its notice to YouTube. Universal's justification defeats any claim for interference, even assuming Plaintiff could show such interference (which she cannot).

1
2

This result follows from *Rossi*, where the Ninth Circuit held the plaintiff's tortious interference claim (albeit under the law of a different state) failed as a matter of law:

3
4
5
6

> The MPAA's compliance with the notice and takedown procedures detailed in the DMCA, based on a "good faith belief" that Rossi's website was infringing on its copyrighted material, meet Hawaii's standards for "justification." ... The MPAA complied with its statutory obligations, its actions were apparently sincere and proper in means and purpose, and without further evidence of impropriety, we must find the MPAA's actions justified under the circumstances. As a result, Rossi's interference claims fail as a matter of law.

7

*Rossi*, 391 F.3d at 1006 (citations omitted).

8
9
10
11
12
13
14
15

As discussed above, Universal does not agree with the allegation (necessary for Plaintiff to proceed with her Section 512(f) claim) that it sent its notice to YouTube pursuant to the DMCA.[20]  Regardless of whether Universal's notice was pursuant only to YouTube's Terms of Use or also the DMCA, the result for purposes of this anti-SLAPP motion is the same.  Universal was attempting to protect its rights; Universal did so in compliance with neutral procedures established by YouTube; Universal's actions undeniably were sincere and proper in means and purpose; and Plaintiff has not shown (and cannot show) otherwise as to any of these points. Plaintiff cannot demonstrate a probability of prevailing on the tortious interference claim.[21]

16
17

For all of the foregoing reasons, Plaintiff's second cause of action under California law must be stricken in accordance with the anti-SLAPP statute.[22]

18
19

---

20
21

[20] Universal, as noted, contested on the face of its notice that the DMCA was even applicable. Ex. C at 6 (Universal's "use of this form, as required by YouTube, is meant to facilitate YouTube's removal of the infringing material listed above and is not meant to suggest or imply that YouTube's activities and services are within the scope of the DMCA safe harbor").

22
23
24
25
26

[21] If Plaintiff were correct that the DMCA applied at all to Universal's notice, then the tortious interference with contract claim also would necessarily be preempted, as Judge Fogel held in the *Diebold* case, also filed by EFF. *See Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004) ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law.") (citations omitted). Although Judge Fogel's construction of Section 512(f)'s "knowingly" requirement was superseded by the Ninth Circuit's subsequent *Rossi* opinion, *see* note 15, *supra*, Judge Fogel's preemption analysis was not.

27
28

[22] The anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c) (emphasis added).  Universal request the opportunity to submit an application for its fees and costs pursuant to the statute following the resolution of the anti-SLAPP motion.

1

**D.    Plaintiff's Third Cause Of Action – For Declaratory Relief Of Non-Infringement – Does Not Present A Justiciable Case Or Controversy**

2

3    Plaintiff's final claim is for declaratory relief, seeking a ruling as to whether Plaintiff's

4    claimed fair use defense would prove meritorious to a claim of infringement.  Plaintiff bears the

5    burden of establishing the existence of subject matter jurisdiction for this claim.  *Cardinal*

6    *Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) ("a party seeking a declaratory

7    judgment has the burden of establishing the existence of an actual case or controversy[.]").[23]

8    Article III of the U.S. Constitution prohibits federal courts from issuing advisory opinions.

9    Federal courts may not entertain nebulous disputes, because they are "are not pressed before the

10   Court with that clear concreteness provided when a question emerges *precisely framed* and

11   necessary for decision."  *Flast v. Cohen*, 392 U.S. 83, 96-97 (1968) (emphasis added) (quotation

12   omitted).  Absent a "definite and concrete" dispute, there is no subject matter jurisdiction.

13   *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (quotations omitted).

14   Accordingly, "in the declaratory judgment context, the Supreme Court has admonished that [t]he

15   disagreement *must not be nebulous* or contingent *but must have taken on fixed and final shape* so

16   that a court can see what legal issues it is deciding, what effect its decision will have on the

17   adversaries, and some useful purpose to be achieved in deciding them."  *United States v. Arnold*,

18   678 F. Supp. 1463, 1465-66 (S.D. Cal. 1988) (emphasis added) (quotations omitted).  *See also*

19   *Westlands Water Dist. Distribution Dist. V. Natural Resources Defense Council, Inc.*, 276 F.

20   Supp. 2d 1046, 1050 (E.D. Cal. 2003) ("the Supreme Court has repeatedly recognized the

21   increased likelihood that declaratory judgment actions will fall outside Article III.").  In other

22   words, Plaintiff must allege specific facts that show "there is a substantial controversy, between

23   parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance*

24   *of a declaratory judgment*."  *Hulteen v. AT&T Corp.*, ___ F.3d ___, ___ n.1, 2007 WL 2332071

25   at *26 n.1 (9th Cir. Aug. 17, 2007) (en banc) (quotations omitted) (emphasis added).

26   ---

[23] *Staacke v. U.S. Secretary of Labor*, 841 F.2d 278, 280 (9th Cir. 1988) (affirming dismissal for

27   lack of subject matter jurisdiction) ("It is well settled that the Declaratory Judgment Act does not itself confer federal subject matter jurisdiction, but merely provides an additional remedy in cases

28   where jurisdiction is otherwise established.") (quotations omitted).

Plaintiff's Complaint fails to meet these requirements.  In trying to show the existence of a substantial controversy of sufficient immediacy to justify jurisdiction, Plaintiff points to only one action that Universal has taken – sending its notice *to YouTube* – but that does not create an actual case or controversy as *between Universal and Plaintiff*.  As discussed above, Universal sent its notice pursuant to YouTube's Terms of Use. Those Terms of Use do *not* require that the party sending the notice either file a suit or have an intention of doing that as a condition of invoking YouTube's procedures.  On the contrary, YouTube's procedures provide a means *short of filing a lawsuit* for copyright owners to have the infringement of their works stopped or limited.  If every notice was sufficient to invoke the Court's jurisdiction, then ordinary notice and blocking procedures would be transformed from an informal resolution process into an incredible burden on the federal court system. "[I]It would be inappropriate to reward – and indeed abet – conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources."  *Davox Corp. v. Digital Systems Int'l, Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993).  *See also, e.g.*, *Bausch & Lomb Inc. v. Alcide Corp.*, 684 F. Supp. 1155, 1160 (W.D.N.Y. 1987) (refusing to exercise jurisdiction); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977) ("[a]s federal court calendars become increasingly burdened, attorneys should exercise correspondingly increased responsibility to attempt to resolve disputes without using limited judicial resources to decide issues which might, by reasonable discussions between reasonable people, be settled out of court").

Ironically, YouTube's Terms of Use do in fact make a reference to the possibility of a copyright holder's action against a subscriber – but that provision cuts *against* Plaintiff's claim of a genuine apprehension of suit by Universal.  Specifically, YouTube's Terms of Use provide that, "[u]nless the copyright owner files an action seeking a court order against the content provider, member or user, the removed content may be replaced, or access to it restored, in 10 to 14 business days or more after receipt of the counter-notice, at YouTube's sole discretion."  Ex. A ¶ 8.B.  That is exactly what happened here:  Universal sent a notice under YouTube's Terms of Use; Plaintiff sent a counter-notice; Universal did not file an infringement action; and YouTube restored Plaintiff's video to the site, where it remains to this day (a fact that EFF promotes on its

- 21 -

1   web site, with a link directly to Plaintiff's YouTube posting). These circumstances do not give

2   rise to a case or controversy between Plaintiff and Universal, and Plaintiff's declaratory relief

3   claim must be dismissed along with the rest of her claims.

4   **IV.    CONCLUSION**

5          As demonstrated above, all of Plaintiff's claims are deficient as a matter of law, and the

6   deficiencies cannot be cured with repleading. Universal respectfully requests that the Court

7   dismiss Plaintiff's Section 512(f) and declaratory relief claims with prejudice and strike

8   Plaintiff's interference with contract claim, reserving the authority to award Universal its fees and

9   costs in accordance with the anti-SLAPP statute.

10

11  DATED: September 21, 2007                    MUNGER, TOLLES & OLSON LLP

12

13                                              By:_____/s/_____
14                                                            KELLY M. KLAUS

15                                              Attorneys for Defendant
                                                UNIVERSAL MUSIC CORP., UNIVERSAL
16                                              MUSIC PUBLISHING, INC., and
                                                UNIVERSAL MUSIC PUBLISHING GROUP

17

18

19

20

21

22

23

24

25

26

27

28