1  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
2  AMY C. TOVAR (SBN 230370)
   Amy.Tovar@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
5  Telephone:     (213) 683-9100
   Facsimile:      (213) 687-3702
6
   Attorneys for Defendants
7  UNIVERSAL MUSIC CORP.,
   UNIVERSAL MUSIC PUBLISHING, INC.,
8  and UNIVERSAL MUSIC PUBLISHING GROUP

9
                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11

12
   STEPHANIE LENZ,                              CASE NO.  CV 07-03783
13
                 Plaintiff,                     **DEFENDANTS' REPLY IN
14                                              SUPPORT OF MOTION TO
         vs.                                    DISMISS COMPLAINT AND
15                                              SPECIAL MOTION TO STRIKE
   UNIVERSAL MUSIC CORP., UNIVERSAL             PLAINTIFF'S STATE LAW CLAIM**
16 MUSIC PUBLISHING, INC., and UNIVERSAL
   MUSIC PUBLISHING GROUP,                      [Supplemental Declaration of Kelly M.
17                                              Klaus Filed Concurrently]
                 Defendants.
18
                                                DATE: December 19, 2007
19                                              TIME:  9:00 a.m.
                                                CTRM:  3 (Hon. Jeremy Fogel)
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF REPLY ........................................................... 1

II. PLAINTIFFS' SECTION 512(A) CLAIM FAILS TO ALLEGE SUBJECTIVE KNOWLEDGE AS REQUIRED BY ROSSI AND MUST BE DISMISSED ................... 2

    A. Rossi Requires Plaintiff To Plead That Universal Subjectively Knew It Was Misrepresenting That Plaintiff's Video Was Infringing – A Standard That Plaintiff Does Not And Cannot Meet ................................................................ 2

    B. Plaintiff's Arguments For Ignoring Rossi Are Meritless ..................................... 4

III. PLAINTIFFS' INTERFERENCE WITH CONTRACT CLAIM IS SUBJECT TO THE ANTI-SLAPP STATUTE, AND SHE FAILS TO MAKE A PRIMA FACIE SHOWING IN SUPPORT OF HER CLAIM ................................................................... 6

    A. Plaintiff's Claim Arises From Protected Activity .................................................. 6

        1. The Notice Is "Speech In Connection With ... An Issue Of Public Interest," Cal. Civ. Proc. Code § 425.16(e)(4) ............................................ 6

            a. The Public Issue Is Not Plaintiff's Video But A Controversy Over The Sending Of Takedown Notices, Including Universal's .............................................................................. 7

            b. Universal's Sending Of Its Notice To YouTube Clearly Occurred "In Connection With" The Public Controversy Concerning The Sending Of Takedown Notices ........................... 7

        2. According To Plaintiff's Own Theory Of The Case, Universal's Notice Is A "Writing Made Before A ... Judicial Proceeding," Cal. Civ. Proc. Code § 425.16(e)(1) ................................................................... 10

    B. Plaintiff Fails To Make A Prima Facie Showing That She Has An Actionable Claim For Tortious Interference ....................................................... 11

        1. Plaintiff Does Not Show That She Had A Contract With YouTube That Gave Her Any Enforceable Rights, That Any Such Rights Were Interfered With, Or That She Suffered Any Damages ..................... 11

        2. The Complaint Itself Makes Clear Universal's Conduct Was Justified .................................................................................................. 13

        3. Plaintiff's Claim In Any Event Is Preempted ........................................... 13

IV. PLAINTIFF FAILS TO SHOW THAT HER DECLARATORY JUDGMENT CLAIM PRESENTS A SUBSTANTIAL AND IMMEDIATE CONTROVERSY ......... 14

V. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Bond v. Blum*,
  317 F.3d 385 (4th Cir. 2003) .......................................................................................... 4

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
  2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ................................................................. 11

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ....................................................................................................... 4

*Clegg v. Cult Awareness Network*,
  18 F.3d 752 (9th Cir. 1994) ........................................................................................... 2

*Feldman v. Google, Inc.*,
  2007 WL 966011 (E.D. Pa. Mar. 29, 2007) ................................................................ 11

*In re World Auxiliary Power Co.*,
  303 F.3d 1120 (9th Cir. 2002) ..................................................................................... 13

*Online Policy Group v. Diebold, Inc.*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004) ......................................................... 3, 5, 14, 15

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ....................................................................................... 5

*Religious Tech. Ctr. v. Lerma*,
  908 F. Supp. 1362 (E.D. Va. 1995) ............................................................................... 4

*Rossi v. MPAA*,
  391 F.3d 1000 (9th Cir. 2004) .............................................................................. *passim*

*Sandisk Corp. v. STMicroelectronics, Inc.*,
  480 F.3d 1372 (Fed. Cir. 2007) .............................................................................. 10, 15

*Tavory v. NTP, Inc.*,
  2007 WL 2965048 at (E.D. Va. Oct. 9, 2007) .............................................................. 4

*Video-Cinema Films, Inc. v. CNN*,
  2003 WL 1701904 (S.D.N.Y. Mar. 31, 2003) .............................................................. 4

**STATE CASES**

*ARP Pharmacy Services, Inc. v. Gallagher Bassett Servs., Inc.*,
  138 Cal App. 4th 1307 (2006) ..................................................................................... 10

*Averill v. Superior Court*,
  42 Cal. App. 4th 1170 (1996) .................................................................................... 8, 9

*Consumer Justice Center v. Trimedica Int'l, Inc.*,
  107 Cal. App. 4th 595 (2003) ....................................................................................... 8

*Damon v. Ocean Hills Journalism Club*,
  85 Cal. App. 4th 468 (2000) ...................................................................................... 7, 8

*Ramona Manor Convalescent Hosp. v. Care Enters.*,
  177 Cal. App. 3d 1120 (1986) ..................................................................................... 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Sade Shoe Co. v. Oschin & Snyder*,
    62 Cal. App. 3d 1174 (1984) .................................................................................................. 13

*Sipple v. Found. For Nat'l Progress*,
    71 Cal. App. 4th 226 (1999) ............................................................................................... 7, 8

*Wilson v. Parker, Covert & Chidester*,
    28 Cal. 4th 811 (2002) ........................................................................................................... 11

**FEDERAL STATUTES**

17 U.S.C. § 106 ............................................................................................................................ 13
17 U.S.C. § 107 ..................................................................................................................... 2, 3, 4
17 U.S.C. § 301 ............................................................................................................................ 13
17 U.S.C. § 505 .............................................................................................................................. 3
17 U.S.C. § 512 ..................................................................................................................... *passim*

**STATE STATUTE**

Cal. Civ. Proc. Code § 425.16 ............................................................................................... *passim*

## I. INTRODUCTION AND SUMMARY OF REPLY

In an attempt to salvage her defective Complaint, Plaintiff asks this Court to ignore *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004) – the Ninth Circuit's controlling decision on Section 512(f). However, *Rossi*'s holding is clear, as is Plaintiff's failure to comply with it. Plaintiff has not pleaded a knowing misrepresentation, nor can she. Plaintiff fails to remedy this shortcoming by inviting the Court to create a non-existent standard of "self-evident non-infringing fair use." Fair use is never "self-evident," and it is not even relevant until a defendant raises it as an affirmative defense and thereafter establishes it with evidence – neither of which Plaintiff has done. Plaintiff asks the Court to substitute clairvoyance for the multi-faceted, fact intensive analysis that fair use necessarily entails. The law is not nearly that malleable.

Not content with simply asking the Court to ignore *Rossi* and established law regarding fair use, Plaintiff takes a similar approach to her state law contract interference claim. Indeed, Plaintiff seeks to avoid dismissal of that claim under California's anti-SLAPP statute by asking the Court to ignore the public statements by her EFF lawyers in support of their highly publicized campaign against copyright holders (including their announcement of this lawsuit) that place Universal's undisputed speech act of sending its notice smack dab in the middle of a preexisting public controversy regarding takedown notices. Those statements are not so easily dispensed with, and neither is Plaintiff's failure to establish the elements of her state law claim.

Finally, Plaintiff fails to establish an actual, immediate controversy between herself and Universal. She instead asks the Court to adopt an unprecedented and inefficient rule that merely sending a takedown notice creates declaratory judgment jurisdiction. The entire purpose of the informal resolution process underlying a take down notices is to avoid litigation, not to create it. The desire for publicity is simply not a sufficient basis to invoke federal jurisdiction.

The complaint should be dismissed with prejudice and Universal should be awarded its fees and costs under the anti-SLAPP statute.

**II.   PLAINTIFFS' SECTION 512(a) CLAIM FAILS TO ALLEGE SUBJECTIVE KNOWLEDGE AS REQUIRED BY *ROSSI* AND MUST BE DISMISSED**

Section 512(f) provides that liability attaches for sending a take-down notice only if the defendant "*knowingly* materially misrepresents ... that material or activity is infringing[.]" (Emphasis added.)  *Rossi* is clear: a plaintiff cannot prevail on a Section 512(f) claim without "a demonstration of some *actual knowledge of misrepresentation* on the part of the copyright owner." *Rossi*, 391 F.3d at 1005 (emphasis added). Plaintiff argues that her complaint satisfies *Rossi*, or, failing that, that the Court should ignore the case.  Both arguments are meritless.[1]

**A.   *Rossi* Requires Plaintiff To Plead That Universal Subjectively Knew It Was Misrepresenting That Plaintiff's Video Was Infringing – A Standard That Plaintiff Does Not And Cannot Meet**

Plaintiff first argues that she satisfies *Rossi* because "[t]he 'knew' language" in her "'*knew or should have known*'" allegation "is an allegation of actual knowledge."  Opp. at 4 (citing Compl. ¶ 19).  That contention is wrong.  So long as the "***or should have known***" qualification remains, Plaintiff's 512(f) claim is predicated on a claim that Universal's notice was unreasonable under an objective standard, which *Rossi* forecloses.  But even standing by itself, the lone word "knew" fails to allege that Universal actually knew it was making a misrepresentation.  It is a conclusory allegation that cannot get a complaint past Rule 12(b)(6) in the absence of some factual allegation suggesting it may be true.  As the Ninth Circuit long held, a "court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Plaintiff does not point to any allegations that support a boilerplate assertion of actual knowledge.  The most she alleges is that her posting "is a self-evident non-infringing fair use under 17 U.S.C. § 107."  Compl. ¶ 18.  That, too, is just boilerplate bereft of allegations to back it up.  Calling something "self-evident" is another way of saying a defendant "should have known" it to be so, which is inconsistent with *Rossi*.  *See* Mot. at 12-13.

---

[1] Plaintiff argues that Universal asks the Court to adjudicate on this motion that its notice was not sent pursuant to the DMCA.  Opp. at 3-4.  Plaintiff misreads Universal's motion.  What Universal actually said in its motion was that: "*Even taking as true Plaintiff's necessary allegation that Universal's notice is covered by Section 512, her claim still fails as a matter of law*."  Mot. at 10.

Moreover, there is no such thing as a "self-evident non-infringing fair use." *Id*. at 13-14. As Professor Nimmer states: "Usually, fair use determinations are so clouded that one has no sure idea how they will fare until the matter is litigated." 3 Nimmer on Copyright § 12B.08 at 12B-93 n.16. He goes on to say that, when a copyright holder and end user disagree over the assertion that content is infringing, "it may not be obviously apparent who is wrong," and "*[i]n the case of a fair use defense, it might even take successive reversals at every level of review, up to and including the Supreme Court, before the winner's identity is established.*" *Id*. at 12B-91 & n.1 (emphasis added).

Tellingly, Plaintiff buries her entire response to Universal's argument that there is no "self-evident non-infringing fair use" in a footnote. There, she boldly proclaims that there are cases of fair use "where copyright owners have no realistic chance of succeeding in their copyright claims." Opp. at 9 n.5. The cases that Plaintiff cites, however, do not establish that a fair use may be deemed to be subjectively known for purposes of Section 512(f), which is what *Rossi* demands. Instead, Plaintiff points out that this Court, in the *Diebold* case, held that "[n]o reasonable copyright holder could have believed that the portions of the email archive discussing possible technical problems with Diebold's voting machines were protected by copyright[.]" *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004). *Diebold*, however, was decided based on an objective standard before the Ninth Circuit rejected the use of such a standard in *Rossi*. *Diebold* does not survive *Rossi* on this point. But *Diebold* is also distinguishable for a more fundamental reason. In that case, Diebold failed to identify *any* "specific emails that contain copyrighted content," and it "appear[ed] to *acknowledge[] that at least some of the emails are subject to the fair use doctrine*." *Id*. at 1203 (emphasis added). Here, in contrast, it is undisputed that "Let's Go Crazy" *is* copyrighted, and Universal does not for one second concede that the posting is a fair use.

Plaintiff also cites a handful of cases awarding attorneys' fees under 17 U.S.C. § 505. Opp. at 9 n.5. Those cases are inapposite to the 512(f) inquiry, however, because they expressly inquire into "*the objective reasonableness* of the legal and factual positions advanced[.]" *Bond v.*

*Blum*, 317 F.3d 385, 397 (4th Cir. 2003) (emphasis added) (quotations omitted). 512(f), in contrast, turns on the notice sender's "actual knowledge." *Rossi*, 391 F.3d at 1005.[2]

But even if there were such a thing as a "self-evident" fair use under Section 512(f), Plaintiff's complaint still does not and cannot plead it. Plaintiff, as the putative proponent of a fair use defense to a hypothetical infringement lawsuit, has the burden of proving that her use actually was fair as a matter of law under 17 U.S.C. § 107. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) . Nothing in Plaintiff's complaint explains why her posting necessarily meets the requirements for a fair use defense, much less why that legal conclusion would necessarily be known and obvious to any and every observer who viewed the posting. Nor does Plaintiff's opposition attempt to make that showing. Her bald statement – in a *footnote* – that "[t]his case presents a textbook example of ... an 'unclouded' fair use[,]" Opp. at 9 n.5, is *ipse dixit* in defense of *ipse dixit* and implicitly admits that further pleading will not cure the complaint's deficiencies.

**B.    Plaintiff's Arguments For Ignoring *Rossi* Are Meritless**

Tacitly conceding that *Rossi* dooms her claim, Plaintiff devotes the bulk of her opposition on the 512(f) issue to urging the Court to disregard that case. Plaintiff insists that *Rossi* has no effect on this Court's pre-*Rossi* reading of "knowingly" to mean, *inter alia*, "should have known

---

[2] The attorneys' fees cases that Plaintiff cites also are off point because in each the fee award was based on multiple factors, including the copyright claimant's improper motivations that bear no resemblance to Plaintiff's unauthorized posting that incorporated indisputably copyrighted music. *See Bond*, 317 F.3d at 397-98 (plaintiff had claimed copyright infringement when his spouse's ex-husband attempted to introduce plaintiff's manuscript into evidence in a child-custody case; court found fee award proper because "it was unreasonable for Bond to use a copyright infringement action to attempt to bar introduction of facts disclosed in the work as admissions against his interest, particularly when the information was relevant to child-custody issues"); *Tavory v. NTP, Inc.*, 2007 WL 2965048 at *2-4 (E.D. Va. Oct. 9, 2007) (following *Bond* and finding fee award appropriate where the underlying copying was for the purpose of litigation and where copyright holder had "falsely answer[ed]" discovery requests); *Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1365-68 (E.D. Va. 1995) (infringement claim against *Washington Post* based on newspaper's publication of quotations (obtained from copies in court records) of Scientology documents; Court expressed "serious reservations" about whether the documents at issue were "properly copyrighted," and found that "the motivation of plaintiff in filing this lawsuit against *The Post* is reprehensible"); *Video-Cinema Films, Inc. v. CNN*, 2003 WL 1701904 at *3 (S.D.N.Y. Mar. 31, 2003) (finding that plaintiff's stated propositions of law in opposition to major news networks' fair use defense for broadcasting excerpted film footage of Robert Mitchum after the actor's death were "objectively unreasonable").

if it acted with reasonable care or diligence." *See Diebold*, 337 F. Supp. 2d at 1204.  With respect, we submit that *Rossi* forecloses this reading.

Plaintiff's contrary argument is based on a hair splitting and erroneous misreading of both *Rossi* and Section 512(f).  Plaintiff insists that *Rossi* sets the standard for "512(f) *factual investigations*," and not "the *legal determination* of infringement under Section 512(f)," the latter of which Plaintiff claims is governed by the "should have known" standard articulated in *Diebold*.  Opp. at 4, 5 (emphasis added).  Nothing in Section 512(f) talks about "factual investigations."  Section 512(f) speaks only of misrepresentations, and specifically only those that "knowingly materially" misstate what Plaintiff calls the "legal determination," namely, "that material or activity is infringing[.]"  17 U.S.C. § 512(f).  *Rossi* could not be clearer in defining the mental state required for a claim based on an error in making *that* determination:  The Section 512(f) claimant must show that the copyright owner *knew* it was making a mistake; it is *not* enough "*if the copyright owner acted unreasonably in making the mistake*."  *Rossi*, 391 F.3d at 1005 (emphasis added).

Nothing in the legislative history of the DMCA supports Plaintiff's argument for ignoring *Rossi*.  Plaintiff quotes the Senate Report's statement that Section 512(f) was "'intended to deter *knowingly* false allegations to service providers .....'" Opp. at 6 (quoting Sen. Rep. No. 105-190 at 49 (1998)) (emphasis added).  The Report recites "knowingly" but does not define it; *Rossi* does, and it is controlling.  Plaintiff's reliance on the Ninth Circuit's decision in *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007), is likewise misguided.  Opp. at 8.  The language she quotes discusses the requirement that a copyright holder sending a DMCA notice affirm its "good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law."  17 U.S.C. § 512(c)(3)(A)(v).  YouTube's Terms of Use repeat the same requirement for notices sent to the service.  Here, it is undisputed that Universal's notice *did* attest to Universal's good faith belief.  Klaus Decl. Ex. C.  Plaintiff does not seek to challenge the *bona fides* of that good faith belief.  She instead wants to challenge its *reasonableness*.  *Rossi* does not allow that challenge, and nothing in *CCBill* changes that result.

Finally, Plaintiff claims that if the Court follows *Rossi*, "Section 512(f) becomes a dead letter," because no copyright holder would violate Section 512(f) without a prior court determination that a use was non-infringing. Opp. at 6. This is not an argument; it is an inappropriate request for this Court to overrule the Ninth Circuit and to redraft the DMCA. In any event, if a plaintiff had a plausible factual basis for pleading that a copyright holder *actually knew* it was making a material misrepresentation, the claim could proceed under Section 512(f). The situation in this case, though, is completely different. The fact remains that Plaintiff's video posting *does* make an unauthorized use of "Let's Go Crazy." And the fact also remains that Plaintiff does not and cannot allege any plausible basis for believing that Universal *knew* that a fair use defense would be raised in the first place and that the defense would be successful.

In sum, Plaintiff offers no reason for ignoring *Rossi* and no basis for finding that her Complaint satisfies the Ninth Circuit's standard for liability. The 512(f) claim must be dismissed.

### III. PLAINTIFFS' INTERFERENCE WITH CONTRACT CLAIM IS SUBJECT TO THE ANTI-SLAPP STATUTE, AND SHE FAILS TO MAKE A PRIMA FACIE SHOWING IN SUPPORT OF HER CLAIM

#### A. Plaintiff's Claim Arises From Protected Activity

Plaintiff *concedes* that Universal's notice (which she cites as the sole basis for her belief that Universal was on the precipice of suing her) is speech. Plaintiff also concedes that the notice has been the focal point of her and her lawyers' publicity campaign. And finally, Plaintiff and the EFF can hardly dispute the EFF's very public condemnation of take down notices in general and copyright holders' use of those notice to protect their rights. In light of all of this, it is not surprising that Plaintiff struggles mightily to explain why Universal's notice falls outside of the categories of activities that the anti-SLAPP law protects. That effort fails though, as it must, since the notice is within two categories that the statute protects.

##### 1. The Notice Is "Speech In Connection With ... An Issue Of Public Interest," Cal. Civ. Proc. Code § 425.16(e)(4)

Plaintiff does not dispute that Universal's notice to YouTube was speech. The entire issue on this prong of the anti-SLAPP statute is whether that speech was "*in connection with ... an issue of public interest.*" Plaintiff's effort to portray Universal's notice as a purely private business

communication is based on a mischaracterization of the "issue" and a misreading of California law on the "in connection with" requirement.

###### a. **The Public Issue Is Not Plaintiff's Video But A Controversy Over The Sending Of Takedown Notices, Including Universal's**

Plaintiff tries to cabin the relevant issue to her video, which she says was of concern only to her and Universal prior to the sending of the notice. Opp. at 12. That contention misstates the true nature of the issue of public controversy, which involves the standards that should govern Universal and other copyright holders when they invoke notice and takedown procedures in an effort to stop others from infringing their copyrighted content. EFF's view is that "content owners should ... avoid issuing DMCA or other informal takedown notices" unless they have made an *ex ante* guess about whether someone might claim their use is fair use, and if so, how the equitable factors informing that defense might be balanced and come out following a full trial. *See* EFF's "Fair Use Principles for User Generated Video Content" at 2 ¶ 1.[3] Although the DMCA does not require copyright holders to engage in such speculative undertakings, the important point is that Plaintiff concedes this is an issue of public interest: "*DMCA misuse and fair use are, of course, both topics of public interest*." Opp. at 12 (emphasis added).

###### b. **Universal's Sending Of Its Notice To YouTube Clearly Occurred "In Connection With" The Public Controversy Concerning The Sending Of Takedown Notices**

Plaintiff claims that Universal's speech did not occur "in connection with" the public controversy over the standards that should govern the sending of takedown notices because Universal's notice was sent only to YouTube. Opp. at 11. This argument misreads the anti-SLAPP law and ignores the full context within which Universal sent its notice.

To promote the Legislature's objectives in preserving free speech, California courts "broadly construe[]" the "public interest" provisions of the anti-SLAPP statute. *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000); *Sipple v. Found. For Nat'l Progress*, 71 Cal. App. 4th 226, 236 (1999). In particular, courts do not look at a party's speech act in

---

[3] www.eff.org/files/UGC_Fair_Use_Best_Practices_0.pdf (last visited Dec. 3, 2007) (attached as Exhibit A to the supplemental declaration of Kelly M. Klaus ("Klaus Supp. Decl.")).

microscopic isolation – as Plaintiff urges – but rather consider the full context within which the speech occurs. In *Averill v. Superior Court*, 42 Cal. App. 4th 1170 (1996), for example, the plaintiff (Eli) filed a slander action against the defendant (Averill). Averill had opposed Eli's attempt to open a battered-women's shelter in her neighborhood. *Id*. at 1173. Eli's suit was based on *private* statements Averill made to her employer urging it not to support Eli as a Christmas charity. Eli argued that Averill's anti-SLAPP motion was unfounded because her statements to her employer were simply "private conversations." *Id*. at 1174. The court of appeal held that the private conversation took place in connection with the larger public controversy – namely, the controversy over the shelter – and that the anti-SLAPP motion should be granted. The court made it clear that the entire "context" surrounding the speech in issue has to be examined to determine if that speech is "in connection with" a larger public issue. *Id.* at 1175. *Averill* is consistent with a long line of California authority holding that the speech must be considered in the context in which it occurs. *See Sipple*, 71 Cal App. 4th at 238 (statements regarding an individual's specific history of spousal abuse were a public issue because in connection with the broader public issue of domestic violence); *Damon*, 85 Cal. App. 4th at 479 (statements critical of homeowner's association manager were in connection with the broader public issue of the association's governance).

Citing *Consumer Justice Center v. Trimedica Int'l, Inc.*, 107 Cal. App. 4th 595 (2003), Plaintiff argues that the California courts focus on the specific speech act in isolation and without reference to the larger public debate in which it may take place. *See* Opp. at 12. The case holds no such thing. That case involved a manufacturer's claim that its commercial advertisement for the "Grobust" bust enhancer was connected to public discussion of herbal supplements. *See Trimedica*, 107 Cal. App. 4th at 598 ("Do claims that a product offers 'The All-Natural Way To A Fuller, More Beautiful Bust!' constitute speech on a matter of 'public interest' within the meaning of Code of Civil Procedure section 425.16? We hold that they do not."). The court's actual holding was that the definition of issues of public interest should not "include specific *advertising* statements about a particular commercial product," *id*. at 602 (emphasis added),

which the Legislature subsequently codified in the anti-SLAPP law. *See* Cal. Civ. Proc. Code § 425.17(c). This case, of course, does not concern commercial advertising. *See* Mot. at 17.

Judged in light of the robust principles that actually apply to the anti-SLAPP statute, Universal's speech clearly was "in connection with" the public controversy surrounding takedown notices. EFF admits as much in its own press release about this case. While the EFF-written opposition brief now tries to claim there was no controversy that involved Universal until it sent its notice to YouTube, Opp. at 12, EFF's press release make it clear that the controversy involving copyright holders' (and, most notably, Universal's) standards for sending takedown notices predated the notice about Plaintiff's posting, *and* that Universal's notice in this case and this lawsuit are part and parcel of that ongoing public controversy:

> *Last May, UMPG's parent company, Universal Music Group, sent a baseless copyright takedown demand to YouTube for a video podcast by political blogger Michelle Malkin. That video was quickly reposted after Malkin fought back.*
>
> ***
>
> *This lawsuit is part of EFF's ongoing work to protect online free speech in the face of bogus copyright claims*.

Klaus Decl. Ex. J (emphasis added).[4]

Plaintiff also asserts that Universal had to subjectively intend for the public to see its notice to YouTube in order for the statement to be "in connection with" the public issue requirement. Opp. at 14. This is a requirement of Plaintiff's imagination. Nothing in *Averill* indicates that the defendant charged with defamation there intended her statements to her employer to go beyond the walls of her office. The court nevertheless had no difficulty concluding that the suit based on those "private conversations" were within the protection of Cal. Civ. Proc. Code § 425.16(e)(4). *Averill*, 42 Cal. App. 4th at 1174-76.[5] Universal's speech in its takedown notice likewise was "in connection with ... an issue of public interest."

---

[4] Plaintiff's and EFF's campaign to impact the public discussion concerning the sending of takedown notices, including the one in this case, has continued unabated since the filing of Universal's motion. *See*, *e.g.*, Klaus Supp. Decl. Exs. B, C (www.washingtonpost.com/wp-dyn/content/article/2007/10/18/AR2007101802453_pf.html (last visited Dec. 3, 2007); http://abcnews.go.com/TheLaw/story?id=3777651 (last visited Dec. 3, 2007)).

[5] Plaintiff likewise is wrong that Universal's notice had to make an editorial comment to be

2. **According To Plaintiff's Own Theory Of The Case, Universal's Notice Is A "Writing Made Before A ... Judicial Proceeding," Cal. Civ. Proc. Code § 425.16(e)(1)**

Based on Plaintiff's own theory of this case, and in particular, her declaratory judgment claim, Universal's notice was a **"**writing made before a ... judicial proceeding," and thus within the anti-SLAPP statute under Cal. Civ. Proc. Code § 425.16(e)(1). Plaintiff's declaratory judgment claim necessarily presupposes that Universal sent the notice as a precursor to filing an infringement claim. Without that implicit premise, Plaintiff has no basis for her stated belief that she "thought that I might be sued for copyright infringement for posting the video of my son." Lenz Decl. ¶ 10. For purposes of the anti-SLAPP statute, however, Plaintiff wants to say she has no reason to believe that the notice was incident to a contemplated lawsuit.

Plaintiff cannot have it both ways. If she is willing to admit that she has no reason to believe Universal sent the notice as the first step in filing an infringement action, she should say so and drop her declaratory judgment claim. If she insists on maintaining that argument as a basis for jurisdiction, she must accept the necessary consequence that the notice triggers § 425.16(e)(1). Plaintiff suggests that the Federal Circuit's decision in *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed. Cir. 2007), shows that a declaratory judgment plaintiff can simultaneously believe that the defendant is not seriously considering litigation and satisfy the jurisdictional standards for declaratory relief. See Opp. at 15 n.11. That is wrong. The Federal Circuit found declaratory judgment jurisdiction in *Sandisk* because the defendant's entire course of conduct *belied* its informal statement to the plaintiff that it did not plan to file an infringement action. The case does not support Plaintiff's attempt to retain her declaratory judgment claim and avoid the anti-SLAPP statute.

---

protected by the anti-SLAPP statute. Opp. at 14 & n.10. The particular speech in question does not have to expressly state a viewpoint; it just has to be "in connection with" the public issue. *See ARP Pharmacy Services, Inc. v. Gallagher Bassett Servs., Inc.*, 138 Cal App. 4th 1307, (2006) (drug claims processors' refusal to provide pharmacy fee reports that consisted of statistical information to insurers within the protection of the anti-SLAPP statute).

### B. Plaintiff Fails To Make A Prima Facie Showing That She Has An Actionable Claim For Tortious Interference

The "evidence" that Plaintiff submits with her opposition does not satisfy her burden of showing that she can sustain a favorable judgment. *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002). Indeed, the defects in Plaintiff's case are so obvious that the interference claim should be dismissed even independent of the anti-SLAPP statute.

#### 1. Plaintiff Does Not Show That She Had A Contract With YouTube That Gave Her Any Enforceable Rights, That Any Such Rights Were Interfered With, Or That She Suffered Any Damages

Plaintiff claims that merely because she checked a box saying she agreed with YouTube's Terms of Use, she had an enforceable contract of the type that the state law tort protects. Opp. at 16. It is not at all clear that YouTube would agree with that position; notably, the declaration filed by YouTube's employee says nothing about there being a contract. *See* Schaffer Decl. More importantly, Plaintiff has not shown her assertion to be true. Plaintiff suggests with attorney argument – though not with evidence – that her contract with You Tube "only provides for removals based upon receipt of proper DMCA notices." Opp. at 18. The Terms of Use say no such thing. On the contrary, they expressly state that YouTube always retains the unilateral right to pull the plug on Plaintiff's use of the site at for any time and for any reason – or for no reason at all: "YouTube reserves the right to discontinue any aspect of the YouTube Website at any time." Klaus Decl. Ex. A at ¶ 4.I.[6]

Following from the fact that Plaintiff had no right to demand that YouTube do (or not do) anything pursuant to the Terms of Use, Plaintiff also fails to introduce any evidence that Universal's notice caused YouTube to breach the supposed agreement. Plaintiff claims that she is not required to make any such showing on the ground that the California courts supposedly "'permit liability where the defendant does not literally induce a breach of contract, but makes

---

[6] Plaintiff's reliance on cases finding mutual assent in click-through agreements is misplaced. In each, the party that signed up to the terms alleged a breach of them – an allegation that Plaintiff does not make and for which she introduces no support. *See Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) at *2-3 (defendant alleged to have violated restriction on deep-linking to plaintiff's sites); *Feldman v. Google, Inc.*, 2007 WL 966011 at *2 (E.D. Pa. Mar. 29, 2007) (plaintiff entered into commercial agreement for Google's "AdWords" service and alleged that Google passed on improper "click fraud" charges).

4040076.1 - 11 - DEFS' REPLY ISO MOTION TO DISMISS
CASE NO. CV 07-03783

1  plaintiff's performance of the contract more expensive or burdensome.'" Opp. at 18 (quoting
2  *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1131 (1986)). This
3  is an odd argument since Plaintiff has not alleged (much less sworn to in her declaration) that she
4  was obligated to perform anything for YouTube. Thus, it is not at all clear how a non-existent
5  obligation could become "more expensive or burdensome."[7]

6  Finally, Plaintiff cannot prove damages. As Universal pointed out in its motion, Plaintiff
7  alleged that her damages in this case include "the financial and personal expenses associated with
8  responding to [Universal's notice]." Compl. ¶ 21. Plaintiff says nothing about such expenses in
9  her brief or her declaration. Plaintiff does argue – with attorney assertions but (again) not with
10 admissible evidence – that "she was deprived of YouTube's video hosting services for six
11 weeks." Opp. at 18. That is not true, which explains why the statement is not in Plaintiff's
12 declaration. There is *no* evidence that Plaintiff lost YouTube's hosting services. Far from it: She
13 actually has posted at least seven other videos to YouTube, and it appears from the website that
14 all of these videos have remained up since before June.[8] Plaintiff's attorneys try to show that
15 "comparable replacement services" for YouTube supposedly "*can* cost up to $39.00 per month."
16 Opp. at 18 (emphasis added). That is irrelevant to Plaintiff's claim, since there is no evidence she
17 ever paid a cent for any such service – just as she never paid a cent to YouTube.

18 Plaintiff's attorneys also claim damage based on a supposed "loss of First Amendment
19 freedoms" to Lenz. *Id*. That is nice rhetoric but it has no basis since there is no possible claim to
20 First Amendment violation in this case: Neither Universal nor YouTube is a state actor.

---

[7] While Plaintiff was not affirmatively required to do anything for YouTube, her consent to the Terms of Use included her agreement that she would "not submit material that is copyrighted ... unless you are the owner of such rights or have permission from their rightful owner to post the material and to grant YouTube all of the license rights granted herein." Klaus Decl. Ex. A at ¶ 6.D. Plaintiff's posting indisputably did *not* satisfy that provision. *See also* "YouTube Copyright Tips": "How to Make Sure Your Video Does Not Infringe Someone Else's Copyrights: The way to ensure that your video doesn't infringe someone else's copyright is to use your skills and imagination to create something completely original. ... *Be sure that all the components of your video are your original creation – even the audio portion. For example, if you use an audio track of a sound recording owned by a record label without the record label's permission, your video is infringing the copyrights of others, and we will take it down as soon as we become aware of it*." Klaus Supp. Decl. Ex. D (www.youtube.com/t/howto_copyright (last visited Dec. 3, 2007) (emphasis added)).

[8] *See* www.youtube.com/user/edenza (last visited Dec. 3, 2007) (Klaus Supp. Decl. Ex. E).

### 2. **The Complaint Itself Makes Clear Universal's Conduct Was Justified**

As Universal demonstrated, *Rossi* holds that compliance with the notice and takedown procedures justifies the sending of a takedown notice as a matter of law. Mot. at 19 (quoting *Rossi*, 391 F.3d at 1006). Plaintiff's only response to this argument is that *Rossi* should be ignored (again) because Hawaii law, at issue there, makes absence of justification an element of plaintiff's case, whereas in California it is an affirmative defense. Opp. at 20 n.17. Plaintiff overlooks, however, that in California, justification may be adjudicated at the dismissal stage if "it appears on the face of the complaint." *Sade Shoe Co. v. Oschin & Snyder*, 162 Cal. App. 3d 1174, 1180 (1984). As discussed above in connection with Section 512(f), it is clear from the face of Plaintiff's complaint that, assuming the DMCA applies – as must be the case for Plaintiff's 512(f) claim to proceed – Universal's notice was in compliance with that statute. Universal's obvious justification for its conduct is yet another reason this claim fails.

### 3. **Plaintiff's Claim In Any Event Is Preempted**

Having urged the Court for purposes of Section 512(f) to adhere to that portion of *Diebold* that is inconsistent with the Ninth Circuit's subsequent decision in *Rossi*, Plaintiff switches gears and asks the Court to *overrule* its holding in *Diebold* that Section 512(f) preempts the same tortious interference claim that Plaintiff pleads in this case. Opp. at 20-23.

Plaintiff argues that this Court erred because it did not base its preemption analysis on 17 U.S.C. § 301, which Plaintiff suggests provides the exclusive framework for analyzing whether a provision of the Copyright Act preempts state law. *Id*. at 21. That is not correct, as Plaintiff's own cited authority and the Nimmer treatise make clear. In *In re World Auxiliary Power Co.*, 303 F.3d 1120 (9th Cir. 2002) (cited in Opp. at 23), the Ninth Circuit applied conflict and field preemption analysis to recording and priority provisions of the state U.C.C. even though those state law provisions did not deal with rights equivalent to those found in 17 U.S.C. § 106. And, contrary to Plaintiff's characterization of the case, Opp. at 23, the Ninth Circuit *did* find preemption, insofar as the Copyright Act had specific provisions dealing with the recording of security interests in registered copyrights. *World Auxiliary Power Co.*, 303 F.3d at 1129-30 ("As applied to registered copyrights, the Act's recording scheme is comprehensive"). That case

1   *supports* this Court's preemption analysis in *Diebold*, which held that Section 512(f)'s detailed

2   provisions reflect a "carefully" struck balancing of the interests with respect to the takedown

3   notices that are within its reach. *Diebold*, 337 F. Supp. 2d at 1206.

4         Professor Nimmer's treatise also undercuts Plaintiff's argument for exclusive reliance on

5   Section 301 for preemption analysis. The treatise states that, "*even apart from Section 301*, the

6   general proposition pertains in copyright law, as elsewhere, that a state law is invalid that stands

7   as an obstacle to the accomplishment of the full purposes and objectives of Congress." 1 Nimmer

8   on Copyright § 1.01[B][3][a] at 1-77 (emphasis added) (quotation omitted). Professor Nimmer

9   cites *this Court's analysis in Diebold* as an example of the correct application of a non-Section

10  301 preemption analysis:

> [O]ne court properly dismissed a claim for interference with plaintiffs' contractual relations with their ISP through defendant's service on the ISP of an erroneous notification of claimed copyright infringement. *Given that a special provision of the Copyright Act itself regulates misrepresentations in such notifications, that provision constitutes the sole remedy for a customer who objects to its contents and their effects*.

15  *Id*. at 1-81 (emphasis added) (discussing *Diebold*, 337 F. Supp. 2d at 1205-06).

16        Finally, Plaintiff's suggestion that Universal has waived the right to argue preemption by

17  pointing out that its notice was not sent pursuant to the DMCA is specious. Opp. at 22 n.20.

18  Plaintiff's only jurisdictional hook for having her state law claim in federal court is her allegation

19  that Universal sent its notice under the DMCA. While Universal contests that allegation as a

20  factual matter, Universal accepts it for purposes of this motion and is entitled to seek dismissal of

21  Plaintiff's complaint based on the way she herself has pled it.

## IV. PLAINTIFF FAILS TO SHOW THAT HER DECLARATORY JUDGMENT CLAIM PRESENTS A SUBSTANTIAL AND IMMEDIATE CONTROVERSY

23        Plaintiff cites no case finding declaratory judgment jurisdiction based on the mere sending

24  of a takedown notice, and any such rule would open the gates to massive numbers of copyright

25  cases in the federal courts. That result would be both unprecedented and grossly inefficient,

26  particularly for a statute that Plaintiff herself states "was meant as an alternative" to an

27  infringement action. Opp. at 7.

Because she wants to avoid saying anything that will trigger the anti-SLAPP statute, *see* Section III.A.2, *supra*, Plaintiff claims that the court should issue an advisory opinion because she and Universal disagree about whether her posting would qualify as "fair use." Opp. at 24-25. This is far too nebulous a basis for jurisdiction, and *Sandisk*, which Plaintiff relies on, is inapposite. As this Court likely recalls, the patentee there engaged in a five-month campaign (with letters, emails, meetings, and phone calls) to convince the plaintiff it had strong infringement claims against it. The patentee made a "studied and considered determination of infringement" and communicated that determination directly to the plaintiff in "a thorough infringement analysis presented by seasoned litigation experts." *Sandisk*, 480 F.3d at 1382-83. Because defendant exhibited a "course of conduct that show[ed] a preparedness and willingness to enforce its patent rights," the court held that the patentee's statement "that it [did] not intend to sue [did] not moot the actual controversy created by its acts." *Id.* at 1383. The facts of *Sandisk* obviously bear no relationship to the facts here. Universal had no contact with Plaintiff and merely sent a takedown notice to a third party. This claim must be dismissed.

## V.  CONCLUSION

For the reasons stated here and in Universal's opening brief, we respectfully request that the Court dismiss Plaintiff's Section 512(f) and declaratory relief claims with prejudice and strike Plaintiff's interference with contract claim, reserving the authority to award Universal its fees and costs in accordance with the anti-SLAPP statute.

DATED: December 3, 2007                          MUNGER, TOLLES & OLSON LLP


By: _____/s/_____
         KELLY M. KLAUS

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
and UNIVERSAL MUSIC PUBLISHING GROUP