** E-Filed 04/08/2008 **

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STEPHANIE LENZ,<br><br>          Plaintiff,<br><br>     v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC.,<br><br>     and<br><br>UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>          Defendants. | Case Number C 07-03783 JF<br><br>ORDER[1] GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND AS TO CLAIMS 1 AND 2 AND WITHOUT LEAVE TO AMEND AS TO CLAIM 3; DENYING SPECIAL MOTION TO STRIKE WITHOUT PREJUDICE<br><br>[re: docket no. 16] |

   Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal") move to dismiss the instant case and to strike Plaintiff's state law claim. For the reasons set forth below, the motion to dismiss will be granted with leave to amend as to claims one and two and without leave to amend as to claim three. In light of the fact that Plaintiff will be granted leave to file an amended complaint, the special

---

[1] This disposition is not designated for publication and may not be cited.

motion to strike claim two will be denied without prejudice.

## I. BACKGROUND

On February 7, 2007, Plaintiff Stephanie Lenz ("Lenz"), using the screen name, "edenza", videotaped her toddler son dancing in the family's kitchen to a song entitled "Let's Go Crazy" by an artist known at the time the song was recorded as Prince. On February 8, 2007, Lenz uploaded the video from her computer to an Internet video hosting site, YouTube.com ("YouTube"). YouTube is a web site that provides "video sharing" or "user generated content." She titled the video "Let's Go Crazy". The video was available to the public at: http://www.youtube.com/watch?v=N1KfJHFW1hQ. Lenz alleges that she posted the video for her friends and family to enjoy.

Universal owns the copyright to "Let's Go Crazy". On or about June 4, 2007, Universal allegedly sent a takedown notice pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), demanding that YouTube remove the "Let's Go Crazy" video because of an alleged copyright violation. YouTube removed the video and sent Lenz an email notifying her that it had done so in response to Universal's accusation of copyright infringement and warning her that repeated incidents of copyright infringement could lead to the deletion of her account and all of her videos. Lenz sent YouTube a DMCA counter-notification pursuant to 17 U.S.C. § 512(g) on June 27, 2007, demanding that her video be re-posted because it did not infringe Universal's copyrights. The "Let's Go Crazy" video was re-posted by YouTube on the YouTube website about six weeks later.

On July 24, 2007, Lenz filed the instant action seeking redress for Universal's alleged misuse of the DMCA takedown process, its accusation of copyright infringement, and its alleged intentional interference with her contractual use of YouTube's hosting services. On August 15, 2007, Lenz amended her complaint to revise the names of the Defendants.[2] On September 21,

---

[2] Universal asserts that Universal Music Publishing Group does not exist as a legal entity and Universal Music Publishing, Inc. does not own or administer the copyright at issue in this case. However, Universal notes that while Lenz amended her complaint to add Universal Music Corp., she did not remove the allegedly improperly named Defendants.

2

2007, Universal moved to dismiss the complaint and to strike the interference claim as a strategic lawsuit against public participation ("SLAPP") within the meaning of Cal.Code Civ. P. § 415.16. The Court heard oral argument on December 19, 2007.

## II.  LEGAL STANDARD

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## III.  DISCUSSION

**1.  Claim One: Misrepresentation under 17 U.S.C. § 512(f)**

Lenz claims that the DMCA notice Universal sent to YouTube concerning her "Let's Go Crazy" video violated 17 U.S.C. § 512(f).[3] Section 512(f) provides:

> Any person who *knowingly* materially misrepresents under this section that material or activity is infringing . . . shall be liable for any damages, including costs and attorney's fees, incurred by the alleged infringer . . . as the result of the service provider relying upon such misrepresentations in removing or disabling access to the material or active claims to be infringing[.]

17 U.S.C. § 512(f)(emphasis added).

Lenz's complaint states that: "On information and belief, [Universal] knew or should have known that the [video] did not infringe any Universal copyrights on the date" it sent the notice to YouTube. Comp. ¶ 19. Lenz also asserts that her posting was "a self-evident non-infringing fair use under 17 U.S.C. § 107." *Id.* ¶ 18. Universal argues that Lenz does not properly plead the mental state required by § 512(f) as interpreted by the Ninth Circuit. Relying on *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004), Universal contends that § 512(f) applies only

---

[3] Universal also argues that its notice was not given pursuant to § 512 but rather was given pursuant to the specifications of YouTube's Terms of Use. However, because Lens alleges in her Complaint that the notice was made pursuant to §512, her allegations must be taken as true for purposes of the instant motion.

where the party sending a notice has the subjective mental state of "actual knowledge" that it is making a material misrepresentation.

In *Rossi*, the plaintiff operated a website that advertised "Full Length Downloadable Movies" and posted graphics for movies whose copyrights were owned by MPAA members. *Id.* at 1001-02.  Following the procedures specified in the DMCA, the MPAA sent notices of infringing conduct to Rossi and his internet service provider. *Id.* at 1002.  Rossi then sued the MPAA for tortious interference with contract and other related torts. *Id.*  The MPAA argued that its compliance with the DMCA was a complete defense to Rossi's claims. *Id.*  Rossi claimed that the MPAA could not have formed a "good faith belief" that his site was making infringing material available, because "a reasonable investigation into" the website would have revealed that users could not actually download movies there. *Id* at 1003.  The Ninth Circuit rejected Rossi's reading of the statute and affirmed summary judgment for the MPAA.  The court held that the "interpretive case law and the statutory structure [of the DMCA] support the conclusion that the "good faith belief" requirement . . . encompasses a subjective, rather than objective, standard." *Id .* at 1004.  Discussing 516(f), the court noted that:

> Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation.  A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake, Rather, there must be a demonstration of some actual knowledge of misrepresentation of the party of the copyright owner.  Juxtaposing the "good faith" provision of the DMCA with the 'knowing misrepresentation' provision of that same statute reveals an apparent statutory structure that predicated the imposition of liability upon copyright owners only for knowing misrepresentations regarding allegedly infringing websites.  Measuring compliance with a lesser "objective reasonableness standard" would be inconsistent with Congress's apparent intent that the statute protect potential violators from subjectively improper actions of copyright owners.

*Id.* at 1004-05.

Universal argues that  Lenz's complaint alleges an objective reasonableness standard that the Ninth Circuit has rejected and that accordingly Lenz's section 512(f) claim must be dismissed.  Lenz contends that *Rossi* merely examined whether and to what extent a copyright holder must conduct a factual investigation before sending a DMCA notice in order to meet the "good faith" standard required by the statue, and did not interpret the term "knowingly."  Lenz

asserts that this Court's decision in *Online Policy Group v. Diebold*, 337 F. Supp.2d 1195 (N.D. Cal. 2004) sets forth the proper definition of "knowingly." In *Diebold,* this Court held that "[k]nowingly means that a party actually knew, should have known if it acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that it was making misrepresentations." *Id.* at 1204.

While *Diebold* was decided prior to *Rossi*, the cases are not necessarily in conflict. *Diebold* is distinguishable based on its facts; although it included a takedown of hundreds of emails, the defendant failed to identify any specific emails containing copyrighted content, and it appeared to acknowledge that at least some of the emails were subject to the fair use doctrine. Here, it is undisputed that the song "Let's Go Crazy" is copyrighted, and Universal does not concede that the posting is a fair use. Under *Rossi*, there must be a showing of a knowing misrepresentation on the part of the copyright owner. Lenz fails to allege facts from which such a misrepresentation may be inferred. Lenz also fails to allege why her use of "Lets Go Crazy" was a "self-evident" fair use. Accordingly, Lenz's first claim will be dismissed, with leave to amend.

**2.    Claim Two: Tortious Interference with Contract**

A.    Anti-SLAPP Statute

Universal moves to strike claim two pursuant to Cal. Code Civ. P. § 425.16. That statute provides for the early dismissal of meritless suits aimed at chilling the valid exercise of the rights of free speech and to petition for the redress of grievances. Cal.Code Civ. P. § 415.16(a); *Braun v. Chronicle Publishing Co.*, 52 Cal.App.4th 1036, 1042 (1997). These meritless suits often are referred to as "Strategic Lawsuits Against Public Participation" or "SLAPP" suits, with the result that § 425.16 has come to be known as "anti-SLAPP statute."

A defendant filing an anti-SLAPP motion must make an initial *prima facie* showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of free speech or petition. *Braun*, 52 Cal.App.4th at 1042-43. If the defendant makes this showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims. *Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1450 (1999).

1    Universal asserts that its conduct is protected under § 425.16 because its notice to
2 YouTube was plainly speech, and Lenz's actions following the filing of the instant suit including
3 appearances on television news shows and commenting about the suit in her personal blog show
4 that the suit has the potential to impact a broad segment of society and thus involves a matter of
5 public concern.  In addition, Universal argues that claim two is not subject to either of the
6 exceptions set forth in Cal. Code Civ. P. §§ 425.17 (b) and (c).
7    However, Universal's speech does not fall within the protections of the anti- SLAPP
8 statute simply because Lenz appeared on television to discuss her case and wrote about her case
9 on her blog.  Because it is not clear that Universal's free speech rights were violated, and because
10 in any event this Order requires Lenz to amend her complaint, the Court will deny the special
11 motion to strike without prejudice. *See Verizon Delaware, Inc. v. Covad Commc'n Co.*, 337 F.3d
12 1081, 1091 (9th Cir. 2004).
13    B.  Preemption
14    Universal also argues that Lenz's state law claim is preempted by federal law.  In
15 *Diebold*, 337 F. Supp. 2d at 1205-06, this Court held that:

> Preemption occurs 'when compliance with both state and federal [laws] is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' *Hillsborough County Fla. v. Automated Med. Labs. Inc.*, 471 U.S. 707, 713 (1985) (internal citations omitted); *see also In re Cybernetics Servs., Inc.*, 252 F.3d 1039, 1045 (9th Cir. 2001) (internal citation omitted).  Even if a copyright holder does not intend to cause anything other than the removal of allegedly infringing material, compliance with the DMCA's procedures nonetheless may result in disruption of a contractual relationship: by sending a letter, the copyright holder can effectuate the disruption of ISP service to clients.  If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law.  To the extent that Plaintiffs argue that there is no conflict because Diebold's use of the DMCA in this case was based on misrepresentation of Diebold's rights, their argument is undercut by the provisions of the statute itself.  In section 512(f), Congress provides an express remedy for misuse of the DMCA's safe harbor provisions.

25    Lenz urges the Court to reconsider its prior holding.  She asserts that the holding in
26 *Diebold* is erroneous because it does not base its preemption analysis on 17 U.S.C. § 301, which
27 Lenz asserts provides the exclusive framework for analyzing whether a provision of the Copyright
28 Act preempts state law.

6

The Ninth Circuit has applied conflict and field preemption analysis to a recording and priority provision of the state uniform commercial code even though those state law provisions did not deal with rights equivalent to those found in 17 U.S.C. § 106. *See In re World Auxiliary Power Co.*, 303 F.3d 1120 (9th Cir. 2002). Professor Nimmer also has observed that "even apart from Section 301, the general proposition pertains in copyright law, as elsewhere, that a state law is invalid that stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." 1 Nimmer on Copyright 1.01[B]{3}[a] at 1-77. Citing *Diebold*, Professor Nimmer notes specifically that "[g]iven that a special provision of the Copyright Act itself regulates misrepresentation in such notifications, that provision constitutes the sole remedy for a customer who objects to its contents and their effects." Accordingly the Court will dismiss Lenz's second claim based on state law because it is preempted by federal law. However, because it is possible that Lenz may be able to allege that the take down notice was based on YouTube's Terms of Use policy rather than the DMCA leave to amend will be granted.

**3.    Claim Three: Judgment of Non-Infringement**

Lenz's third claim seeks a judicial declaration that the "Let's Go Crazy" video does not infringe any copyright owned or administered by Universal. Universal argues the Court lacks subject matter jurisdiction because there is no case or controversy between Universal and Lenz to support such a claim.

Under the Declaratory Judgment Act, a declaratory relief action may be brought to resolve an "actual controversy." 28 U.S.C. § 2201. "The purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993). The Supreme Court recently has reaffirmed that the "actual controversy" requirement is satisfied if the dispute is "definite and concrete, touching the legal relations of parties having adverse interests" and "real and substantial" such that it will permit "specific relief through a decree of conclusive character." *MedImmune Inc. v. Genetech, Inc.* 127 S.Ct. 764, 771 (2007).

Lenz relies on *Sandisk Copr. v. ST Microelecs., Inc.*, 480 F.3d 1372 (Fed. Cir. 2007) and

1 *Hulteen v. AT&T Corp.*, 498 F.3d 1001 (9th Cir. 2007). In *Sandisk*, the Federal Circuit found that a case and controversy existed even though a patentee stated that it did not intend to sue. *Id.* at 1383. The court determined that the patentee's actual conduct was inconsistent with patentee's statements to the contrary. *Id.* at 1382-83. In *Hulteen*, the Ninth Circuit found that a case or controversy existed between an employee and an employer even though the employee still was employed by the company because the employee would be exposed to an adverse calculation of benefits in the event that she left the company or was terminated. *Id.* at 1004 n.1.

In the instant case, Universal sent a notice to YouTube under YouTube's Terms of Use, and Lenz sent a counter-notice. Universal did not file an infringement action, and YouTube restored Lenz's video to its site, where it remains as of the date of this Order. Universal's conduct thus is significantly different from the conduct of the patentee in *SanDisk*, who engaged in a five-month campaign to convince the plaintiff that the patentee had strong infringement claims against it. *Hulteen* also is distinguishable, because Universal has indicated it had and presently has no intention of ever asserting an infringement action directly against Lenz based on the "Let's Go Crazy" video. Unlike the employee in *Hulteen*, who risked negative employment decisions, Lenz faces no threat as a result of the "Let's Go Crazy" video being posted on YouTube. Accordingly, this claim will be dismissed for lack of subject matter jurisdiction.

## IV.  ORDER

Good cause therefor appearing, Defendants' motion to dismiss is GRANTED with leave to amend as to claims one and two and without leave to amend as to claim three. The special motion to strike claim two is DENIED without prejudice.

IT IS SO ORDERED.

DATED: April 8, 2008

_____
JEREMY FOGEL
United States District Judge

1  This Order has been served upon the following persons:

2  corynne@eff.org

3  kelly.klaus@mto.com

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9
Case No. C 07-03783 JF
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ETC.
(JFLC3)