1   KELLY M. KLAUS (SBN 161091)
    Kelly.Klaus@mto.com
2   AMY C. TOVAR (SBN 230370)
    Amy.Tovar@mto.com
3   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
4   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
5   Telephone:    (213) 683-9100
    Facsimile:    (213) 687-3702
6
    Attorneys for Defendants
7   UNIVERSAL MUSIC CORP.,
    UNIVERSAL MUSIC PUBLISHING, INC.,
8   AND UNIVERSAL MUSIC PUBLISHING GROUP

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  STEPHANIE LENZ,                      CASE NO.  CV 07-03783

13              Plaintiff,               NOTICE OF MOTION AND MOTION TO
                                         DISMISS PLAINTIFFS' SECOND
14      vs.                              AMENDED COMPLAINT PURSUANT TO
                                         FED. R. CIV. PROC. 12(B)(6);
15                                       MEMORANDUM OF POINTS AND
    UNIVERSAL MUSIC CORP.,               AUTHORITIES IN SUPPORT THEREOF
16  UNIVERSAL MUSIC PUBLISHING,
    INC., and UNIVERSAL MUSIC            (Request for Judicial Notice and Proposed
17  PUBLISHING GROUP,                    Order filed concurrently herewith)

18              Defendants.              Judge:      Honorable Jeremy Fogel
                                         Date:       July 18, 2008
19                                       Time:       9:00 a.m.
                                         Courtroom:  3
20

21

22

23

24

25

26

27

28

                                         MOTION TO DISMISS; MEMO. OF P&A'S
                                         CV 07-03783

1    **NOTICE OF MOTION AND MOTION**

2    TO PLAINTIFF AND HER COUNSEL OF RECORD:

3    PLEASE TAKE NOTICE THAT, on July 18, 2008, at 9:00 a.m., or as soon thereafter as

4    counsel may be heard in Courtroom 3 of the above-captioned Court, located at 280 South First

5    Street, San Jose, California, 95113, Defendants Universal Music Corp., Universal Music

6    Publishing, Inc. and Universal Music Publishing Group ("Defendants" or "Universal") will and

7    hereby do move the Court for an Order dismissing with prejudice Plaintiff's Second Amended

8    Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the Second

9    Amended Complaint fails to state a claim upon which the Court may grant Plaintiff relief.

10    This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points

11    and Authorities and Request for Judicial Notice and all exhibits thereto that are being filed

12    concurrently with this Motion; all pleadings and documents on file in this action; and such other

13    materials or argument as the Court may properly consider prior to deciding this Motion.

14
15    DATED: May 23, 2008                    MUNGER, TOLLES & OLSON LLP

16

17                                          By:_____/s/ *Kelly M. Klaus*_____
18                                                    KELLY M. KLAUS

19                                          Attorneys for Defendants
                                            UNIVERSAL MUSIC CORP.,
20                                          UNIVERSAL MUSIC PUBLISHING, INC.,
                                            AND UNIVERSAL MUSIC PUBLISHING
21                                          GROUP

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .............................................................................................. 1

II.  FACTUAL BACKGROUND .......................................................................... 3

    A.   Plaintiff's Concededly Infringing Use Of "Let's Go Crazy" ................. 3

    B.   Plaintiff's Original Complaint .............................................................. 4

    C.   The Court's Order Granting Universal's Motion To Dismiss ................ 5

III. ARGUMENT .................................................................................................. 6

    A.   There Is No Liability Under Section 512(f) Except For A "Knowing Misrepresentation" ............................................................................... 7

    B.   Fair Use Is Never Self Evident ............................................................ 9

    C.   Plaintiff Cannot Establish That Universal Must Have Known Her Use Would Be Adjudicated To Be A Fair Use ............................................ 11

        1.   Plaintiff's Contentions Regarding The Purpose Of Her Use Are Based On Facts Known Only To Her ....................................... 11

        2.   Musical Compositions Lie At The Heart Of The Creative Expression That The Copyright Act Protects ............................. 13

        3.   Plaintiff Fails To Allege Facts Showing Universal Must Have Known Her Taking Was Insubstantial ...................................... 13

        4.   Plaintiff's Contention Regarding The Fourth Fair Use Factor Ignores The Supreme Court's Controlling Test ....................... 14

    D.   Plaintiff's Theory That Universal Should Be Liable Based On Its Claimed Failure To Acquire Knowledge About Whether Plaintiff's Use Would Be "Fair Use" Is Inconsistent With Section 512 and with *Rossi* .............. 16

    E.   Plaintiff Fails To Allege Damages Of The Type That Section 512(f) Authorizes .......................................................................................... 18

IV.  CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*ABKCO Music, Inc. v. Stellar Records, Inc.*,
  96 F.3d 60 (2d Cir. 1996)........................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ............................................................................................. 6

*Biosafe-One, Inc. v. Hawks*,
  524 F. Supp. 2d 452 (S.D.N.Y. 2007)....................................................................... 19

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .............................................................................. 9, 10, 11, 15

*Dudnikov v. MGA Entm't., Inc.*,
  410 F. Supp. 2d 1010 (D. Colo. 2005) ....................................................................... 8

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985)........................................................................ 10, 13, 14, 15

*Kramer v. Thomas*,
  2006 WL 4729242  (C.D. Cal. Sept. 28, 2006)........................................................ 14

*Leadsinger, Inc. v. BMG Music Publishing*,
  512 F.3d 522 (9th Cir. 2008)............................................................................... 4, 13

*Lloyd Corp., Limited v. Tanner*,
  407 U.S. 551 (1972).................................................................................................. 18

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004)................................................................................... 3

*Online Policy Group v. Diebold*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004) ............................................................... 8, 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007)...................................................................... 9, 10, 11

*Roy Export Co. Establishment v. Columbia Broadcasting Sys., Inc.*,
  503 F. Supp. 1137 (S.D.N.Y. 1980)......................................................................... 14

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Cir. 1936).......................................................................................... 13

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984).................................................................................................. 10

## STATUTES

17 U.S.C. § 107 ............................................................................................... passim

17 U.S.C. § 107(3) ................................................................................................... 13

17 U.S.C. § 107(4) ................................................................................................... 14

17 U.S.C. § 512(f) ............................................................................................. passim

17 U.S.C. § 512(g)(3)............................................................................................... 17

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

**RULES**

4

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 6

5

**LEGISLATIVE HISTORY**

Sen. Rep. No. 105-190 (1998) ........................................................................................ 16

6

**OTHER AUTHORITIES**

7

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12B.08 (2007)....................... 2

8

4 *Nimmer on Copyright* § 13.05.................................................................................. 10

9

4 Nimmer on Copyright § 13.05 [A][2][a].................................................................. 10, 13

10

4 *Nimmer on Copyright* § 13.05 [A][4] ..................................................................... 15

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Continuing their quest to rewrite both the Copyright Act and controlling Ninth Circuit

4  law, Plaintiff and the Electronic Frontier Foundation ("EFF") have filed an amended complaint,

5  again alleging that Universal Music Corp., Universal Music Publishing, Inc. and Universal Music

6  Publishing Group (collectively, "Universal")[1] violated 17 U.S.C. § 512(f) by notifying YouTube

7  of a video posting that made an admittedly unauthorized use of the Prince song "Let's Go Crazy."

8  This Court, in dismissing Plaintiff's prior complaint held that, under *Rossi v. MPAA*, 391 F.3d

9  1000 (9th Cir. 2004), "there must be a showing of a knowing misrepresentation on the part of the

10  copyright owner."  Order at 5.  The Court also held that Plaintiff's complaint – which predicated

11  Section 512(f) liability on the claim that Universal "knew or should have known" that her posting

12  was a "self-evident non-infringing fair use" – failed to allege any "facts from which such a

13  misrepresentation may be inferred."  *Id*. at 3, 5.

14      There are two threshold issues that are fatal to Plaintiff's revised Section 512(f) claim.

15  First, Universal's notice, which Plaintiff attaches to her amended complaint, makes it very clear

16  that Universal did not send YouTube a notice pursuant to Section 512.  In fact, Universal sent the

17  notice pursuant to YouTube's Terms of Use and expressly disclaimed any reliance on Section

18  512.  Therefore, that statute cannot support a claim against Universal – whether or not Plaintiff

19  can allege a knowing misrepresentation.  Second, because fair use is a defense to an otherwise

20  infringing use, Universal could not – under any analysis – have made any misrepresentations

21  (knowing or otherwise) when it notified YouTube that Plaintiff had incorporated "Let's Go

22  Crazy" into her video without authorization from the copyright owner.  By raising fair use as a

23  defense, Plaintiff necessarily has to admit those facts.

24      But even on the assumption that Section 512 does apply, Plaintiff's amended complaint,

25  like its predecessor, is still defective since it fails to allege facts that justify an inference of actual

26

---

27  [1] As Universal noted in the prior motion, Universal Music Publishing Group does not exist as a legal entity and Universal Music Publishing, Inc. does not own or administer the copyright at
28  issue in this case.  Thus, neither one should even be a defendant.

- 1 -      MOTION TO DISMISS; MEMO. OF P&A'S
         CV 07-03783

1    knowledge.  Incredibly, Plaintiff continues to claim that Universal may be liable on the ground

2    that it "should have known, if [it] acted with reasonable care or diligence," that her posting was a

3    "self-evident non-infringing fair use under 17 U.S.C. § 107."  Second Amended Complaint

4    ("SAC") ¶¶ 34, 36.  "Should have known" and "reasonable care or diligence" are objective

5    standards of reasonableness that fail under this Court's Order and *Rossi*.  Moreover, there is not,

6    and never has been, such a thing as a "self-evident non-infringing fair use."  That is a standard

7    that finds no support in the law.  The reason that standard has no support is very simple:

8    "[u]sually, fair use determinations are so clouded that one has no sure idea how they will fare

9    until the matter is litigated."  3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*

10   § 12B.08 at 12B-93 n.16 (2007).  *Rossi* and Section 512 make it clear that copyright owners do

11   not have to engage in such conjecture in order to avoid a Section 512(f) damages claim.[2]

12        Plaintiff does not cure her pleading shortcomings by making the conclusory allegation (on

13   "information and belief" no less) that Universal had actual knowledge that its notice

14   misrepresented that Plaintiffs video was infringing (SAC ¶ 35), particularly since this allegation is

15   based on the same "self-evident" fair use standard that just does not exist.  Plaintiff was required

16   to plead facts supporting her allegation that Universal had actual knowledge that it was making a

17   knowing misrepresentation.  A made-up legal standard is not a substitute for facts.

18        Finally, Plaintiff's misconstruction of Section 512 is not limited to the definitions of

19   knowledge or misrepresentation, but also extends to the relief the statute allows.  Section 512(f)

20   allows only those damages that a user incurs "as a result of" the internet service provider taking

21   material down in response to a knowing misrepresentation.  Yet, Plaintiff has not alleged any

22   such damages, nor could she since the sum total of her effort to respond to Universal's notice was

23   a five-paragraph email asking that the video be re-posted (as it has been).  SAC ¶ 27; Request for

24

25   _____

[2] Plaintiff's handful of allegations in support of her fair use contention only confirm why that
defense is never "self-evident," and certainly why it is not "self-evident" in this case.  Plaintiff
26   claims that her purpose in posting "Let's Go Crazy" to YouTube was so that her mother, who
"has difficulty downloading email files but knows how to access the YouTube website," could
27   see her grandchild dancing.  SAC ¶ 16.  Even if this was a legitimate purpose to justify the
infringing posting (and it is not), there is no conceivable way Universal could have known that
28   this was Plaintiff's purpose.

1  Judicial Notice ("RJN") Ex. 1.  Instead, Plaintiff seeks damages for "harm to her free speech

2  rights under the First Amendment" (SAC ¶ 38) and an injunction enjoining Universal from

3  "bringing any lawsuit" against Plaintiff in connection with the video.  Plaintiff ignores the fact

4  that neither Universal nor YouTube is a state actor; thus, there can be no First Amendment

5  violation.  And Plaintiff's demand for injunctive relief also fails since the statute does not even

6  allow for an injunction.

7      Having been given a chance to re-plead, Plaintiff has confirmed that she has no actionable

8  claim against Universal under Section 512(f).  Plaintiff's second amended complaint should be

9  dismissed with prejudice.

10  **II.    FACTUAL BACKGROUND**

11      **A.    Plaintiff's Concededly Infringing Use Of "Let's Go Crazy"**

12      This case arises from Plaintiff's posting on YouTube of a video that makes an admittedly

13  unauthorized use of the musical composition, "Let's Go Crazy," by the artist professionally

14  known as Prince.  Universal administers the copyright to the "Let's Go Crazy" composition, as

15  well as a number of other of Prince's compositions.[3]  Order at 2.

16      Plaintiff entitled the video, "'Let's Go Crazy' #1," and, it is the first result listed when one

17  types "Let's Go Crazy" into YouTube's search engine.[4]  The video shows Plaintiff's child

18  dancing to the song, Prince's "Let's Go Crazy."  The use of the music is central to Plaintiff's

19  posting, as is obvious from both the title and the content of the video.  Plaintiff says that the video

20  "includes only a few words of the lyrics."  SAC ¶ 14.  In fact, the lyrics incorporated into the

21  video are, "C'mon baby, Let's get nuts."  Plaintiff says to her child, "what do you think of the

22  music?," and the song's frenetic guitar solo plays in time with the images of Plaintiff's children

23  running around the kitchen.

24

25  _____

26  [3] The copyright in the "Let's Go Crazy" composition is separate and distinct from the copyright
    in the sound recording that embodies that composition.  *See Newton v. Diamond*, 388 F.3d 1189,
    1191 (9th Cir. 2004).  This case concerns the composition copyright.

27  [4] A current print out of the web page where the video appears is attached as Exhibit 2 to
28  Universal's RJN.

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

1    In making her posting, Plaintiff infringed the "Let's Go Crazy" copyright, a point she

2    must concede by staking her defense entirely on fair use, which is an affirmative defense to an

3    otherwise infringing use.  Specifically, Plaintiff's unauthorized use violated the synchronization

4    right, which is the "right to control the synchronization of musical compositions with the content

5    of audiovisual works[.]"  *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 527 (9th Cir.

6    2008).  This right derives from the copyright owner's exclusive right to reproduce the copyrighted

7    work.  *ABKCO Music, Inc. v. Stellar Records, Inc.*, 96 F.3d 60, 63 n.4 (2d Cir. 1996).[5]

8    On June 4, 2007, Universal sent YouTube a notice requesting that YouTube remove or

9    disable access to Plaintiff's video and nearly 200 other postings that also made unauthorized uses

10   of Prince's compositions.  Order at 2; SAC Ex. A at 3 (Universal Notice).  In accordance with

11   YouTube's posted Terms of Use, Universal declared that it had "a good faith belief that the

12   above-described activity is not authorized by the copyright owner, its agent, or the law."  SAC

13   Ex. A at 6; SAC Ex. B at 3 (YouTube Terms of Use).  YouTube removed the video and sent

14   Plaintiff an email notifying her that it had done so.  Order at 2.  On June 7, 2007, Plaintiff sent

15   YouTube a counter-notification demanding that her video be re-posted because, according to her,

16   the video did not infringe Universal's copyright.  Order at 2; RJN Ex. 1.  After receiving

17   Plaintiff's counter-notice, YouTube restored Plaintiff's video to the site, where it remains.  *Id.*  As

18   of the date this motion is being submitted, Plaintiff's video has been viewed on YouTube *more*

19   *than 485,000 times*.  RJN Ex. 2.

20

21

22

---

23   [5] Plaintiff violated not only the copyright to "Let's Go Crazy," but also YouTube's Terms of Use,
     which state that users must "not submit material that is copyrighted ... unless you are the owner of
24   such rights or have permission from their rightful owner to post the material and to grant
     YouTube all of the license rights granted herein."  RJN Ex. 3.  Plaintiff also ignored YouTube's
25   Copyright Tips:  "How To Make Sure Your Video Does Not Infringe Someone Else's
     Copyrights:  The way to ensure that your video doesn't infringe someone else's copyright is to
26   use your skills and imagination to create something completely original. ... *Be sure that all*
     *components of your video are your original creation – even the audio portion.  For example, if*
27   *you use an audio track of a sound recording owned by a record label without that record label's*
     *permission, your video is infringing the copyrights of others, and we will take it down as soon as*
28   *we become aware of it.*"  RJN Ex. 4 (emphasis added).

### B.    Plaintiff's Original Complaint

Plaintiff's First Amended Complaint ("FAC"), filed August 15, 2007, alleged three claims: (1) that Universal violated Section 512(f) of the Digital Millennium Copyright Act ("DMCA") in sending the notice to YouTube, because Plaintiff's use of "Let's Go Crazy" was a "self-evident" fair use; (2) that Universal tortiously interfered with Plaintiff's purported contract with YouTube; and (3) that Plaintiff was entitled to a declaration that her use of "Let's Go Crazy" is a fair use protected from any claim of infringement.

Simultaneous with the filing of this lawsuit, Plaintiff and the EFF, the advocacy organization representing her, launched a public relations offensive.[6] EFF's statements make it clear that it wants to use this case to rewrite the copyright laws that Congress has enacted in order to promote EFF's own views about making content freely available online. EFF linked this suit to its self-declared effort "to develop a set of 'best practices' for proper takedowns under the Digital Millennium Copyright Act." RJN Ex. 5. EFF's proposed "best practices" may make for good reading for the self-described "free culture" crowd, but they are nowhere to found in the DMCA or the Copyright Act. *See* EFF's "Fair Use Principles for User Generated Video Content" at 2 ¶ 1, RJN Ex. 6.

### C.    The Court's Order Granting Universal's Motion To Dismiss

Universal moved to dismiss the FAC. On April 8, 2008, the Court entered an Order dismissing all three of Plaintiff's claims. First, with respect to Plaintiff's Section 512(f) claim, the Court held that, under the Ninth Circuit's controlling decision in *Rossi*, "there must be a showing of a knowing misrepresentation on the part of the copyright owner." Order at 5. The Court held that Plaintiff had "fail[ed] to allege facts from which such a misrepresentation may be inferred." *Id*. The Court also observed that Plaintiff had failed to allege any facts that would substantiate her allegation that her use could be deemed to be "a 'self-evident' fair use." *Id*. Second, the Court held that Plaintiff's state law tortious interference claim failed on the ground that it was preempted by the Copyright Act. *Id*. at 7. Third, the Court held that it lacked subject

---

[6] *See, e.g.*, RJN Ex. 5 (EFF web page devoted to publicizing case); Ex. 7 (Washington Post interview of Plaintiff); Ex. 8 (Good Morning America profile of Plaintiff).

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

1    matter jurisdiction over Plaintiff's declaratory relief claim because there was no active case or

2    controversy between Universal and Plaintiff. *Id.* at 7-8.

3        The Court dismissed Plaintiff's declaratory relief claim with prejudice and gave Plaintiff

4    leave to amend her Section 512(f) and state law claims. In her SAC, Plaintiff has now abandoned

5    her state law claim, and asserts only a claim under Section 512(f). Much of the SAC has been

6    copied from the prior version of the complaint. The handful of additional paragraphs that

7    Plaintiff has tacked on do nothing to cure the deficiencies in Plaintiff's prior complaint.

8    **III.    ARGUMENT**

9        A complaint must be dismissed under Rule 12(b)(6) if it fails to plead "enough facts to

10    state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

11    1955, 1974 (2007). That is the case here. The sole claim in Plaintiff's SAC is that Universal

12    violated Section 512(f) of the DMCA when it sent its notice to YouTube. However, the SAC

13    fails to allege any facts that make it plausible to believe that Universal actually knew it was

14    misrepresenting that Plaintiff's video posting made an infringing use of the "Let's Go Crazy"

15    composition when it sent its notice. But the Court does not even need to reach that issue in order

16    to dismiss the SAC. Plaintiff's Section 512(f) claim is premised entirely on her allegation that

17    Universal sent YouTube a DMCA notice (*i.e.* a notice "under this section," 17 U.S.C. § 512 (f)).

18    Try as she might, Plaintiff cannot convert Universal's notice into something that it is not by mis-

19    characterizing that notice in her SAC. Universal sent its notice pursuant to YouTube's Terms of

20    Use and expressly stated in that notice that its "use of this form, as required by YouTube, is

21    meant to facilitate YouTube's removal of the infringing material listed above and *is not meant to*

22    *suggest or imply that YouTube's activities and services are within the scope of the DMCA safe*

23    *harbor*." SAC Ex. A at 6 (emphasis added). Universal was explicit on this point because

24    Universal does not agree that YouTube is eligible for protection under the DMCA's "safe

25    harbors," or that Universal has to send notices "under" the DMCA in order to insist on the

26    removal of infringing material.

27

28

6

1    Because Universal did not send a DMCA notice, the predicate for Plaintiff's claim is

2    missing.  But even if the Court takes Plaintiff's characterization of Universal's notice as true for

3    purposes of this motion, Plaintiff's Section 512(f) claim still fails.

**A.    There Is No Liability Under Section 512(f) Except For A "Knowing Misrepresentation"**

Section 512(f) of the Copyright Act provides that:

> Any person who ***knowingly materially misrepresents*** under this section … that material or activity is infringing ... shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer ... as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing[.]  17 U.S.C. § 512 (f)  (emphasis added).

10    The Ninth Circuit has made it very clear that this Section applies only where the party

11    sending a notice has the *subjective* mental state of "actual knowledge" that it is making a material

12    misrepresentation.  *Rossi*, 391 F.3d at 1004-05.  In affirming summary judgment for the MPAA,

13    the court held that the "interpretive case law and the statutory structure [of the DMCA] support

14    the conclusion that the 'good faith belief' requirement ... *encompasses a subjective, rather than*

15    *objective*, standard."  *Id*. at 1004 (emphasis added).  To reach this conclusion, the Ninth Circuit

16    had to construe "knowingly" in Section 512(f), and determined that the DMCA did not impose

17    upon a copyright holder any obligation to verify the accuracy of an allegation of infringement so

18    long as the copyright holder did not have actual knowledge that it was making a material

19    misrepresentation:

> *In § 512 (f), Congress included an expressly limited cause of action* for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation.  *A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake.  Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner.*

> Juxtaposing the "good faith" proviso of the DMCA with the "knowing misrepresentation" provision of that same statute reveals an apparent statutory structure that predicated the imposition of liability upon copyright owners only for knowing misrepresentations regarding allegedly infringing websites.  Measuring compliance with a lesser "objective reasonableness" standard would be inconsistent with Congress's apparent intent that the statute protect potential violators from <u>subjectively</u> improper actions by copyright owners.

5165019.1

1   *Id.* at 1004-1005 (emphasis added) (underscored emphasis in original) (citations omitted).

2   *Accord Dudnikov v. MGA Entm't., Inc.*, 410 F. Supp. 2d 1010, 1012 (D. Colo. 2005) (following

3   *Rossi* standard).

4           There can be no doubt that *Rossi* specifically rejected an "objective standard" for

5   determining knowledge.  Yet, in her SAC, Plaintiff again alleges that Universal is liable under a

6   "should have known" standard.  SAC ¶ 36.  Plaintiff also asserts that Universal "would have no

7   substantial doubt" that Plaintiff's use was a fair use, had Universal "been acting in good faith." *Id*.

8   The latter allegation, of course, is just another way of alleging what Plaintiff claims Universal

9   should have known rather than what Universal *did* know.  Plaintiff's "should have known" and

10  "would have no substantial doubt" allegations are both lifted directly from the portion of this

11  Court's pre-*Rossi* definition of "knowing" that incorporated objective rather than subjective

12  standards.  *See Online Policy Group v. Diebold*, 337 F. Supp. 2d 1195, 1204 (N.D. Cal. 2004).[7]

13  Plaintiff's continued reliance on the objective standards ignores this Court's explanation for why

14  a conflict did not necessarily exist between *Diebold* and the Ninth Circuit's later ruling in *Rossi*.

15  It is not because *Diebold's* objective standards are reconcilable with *Rossi*'s actual knowledge

16  standard – they are not – but rather because "*Diebold* is distinguishable based on its *facts*."  Order

17  at 5 (emphasis added).   In *Diebold,* the defendant's notice listed "hundreds of emails," but "the

18  defendant failed to identify any specific emails containing copyrighted content"; moreover, the

19  defendant "appeared to *acknowledge* that at least some of the emails were subject to the fair use

20  doctrine."  *Id*. (emphasis added).  As a result, based on its facts, *Diebold* satisfied the *Rossi*

21  standard requiring that the plaintiff show that the defendant had actual, subjective knowledge it

22  was making a misrepresentation.  In contrast, here, Universal has not admitted it made a

23  misrepresentation, much less that it had actual knowledge that it was making a misrepresentation

24  at the time it sent the notice to YouTube.  Indeed, as this Court explained, "it is undisputed that

25  the song 'Let's Go Crazy' is copyrighted, and Universal does not concede that the posting is a fair

26

27  _____

    [7] *Diebold* also said "knowingly" meant "that a party actually knew ... that it was making
28  misrepresentations," which is the sole standard that *Rossi* adopted.  *See Diebold*, 337 F. Supp. 2d
    at 1204.

                                          MOTION TO DISMISS; MEMO. OF P&A'S
                                          CV 07-03783
    5165019.1

1    use." *Id.*  Accordingly, *Diebold* provides no support for Plaintiff's flawed attempt to reassert the

2    standard of objective knowledge that the Court already rejected on the last motion to dismiss.

3        Although Plaintiff does assert "[o]n information and belief" that Universal had "actual

4    subjective knowledge" that Plaintiff's posting was non-infringing, SAC ¶ 35, Plaintiff fails to

5    back up this conclusory averment with any allegations that justify an inference of actual

6    knowledge.  Instead, Plaintiff again alleges, just as she did in her prior complaint, that her

7    concededly unauthorized use of "Let's Go Crazy" is "a self-evident non-infringing fair use under

8    17 U.S.C. § 107."  *Id.* ¶ 34.  The "self-evident non-infringing fair use" claim does not make it

9    plausible that Universal had actual knowledge it was making a material misrepresentation; in fact,

10   that allegation undermines Plaintiff's contention of actual knowledge.  By relying exclusively on

11   fair use as a defense, Plaintiff necessarily concedes that her use *does infringe* copyright – which

12   means that everything in Universal's notice was true.  Fair use is an *affirmative defense* to

13   conduct that otherwise infringes one or more of the exclusive rights of copyright under Section

14   106.  Supreme Court and Ninth Circuit precedent both make clear that a court does not reach the

15   question of fair use under Section 107 until the court *first* concludes the use infringes under

16   Section 106.  *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Perfect 10,*

17   *Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007).  Given Plaintiff's concession that

18   her use of "Let's Go Crazy" in her posting *does* infringe, Plaintiff cannot plausibly contend that

19   Universal knew it was making a material misrepresentation in its notice.

20        **B.    Fair Use Is Never Self Evident**

21        Plaintiff's reliance on a supposed "self-evident" fair use defense also fails because there is

22   no such thing.  It is a concept that is not found in any statute or case law.  Whether a use does or

23   does not amount to a fair use is never "self-evident," but is reached only after a defendant first

24   affirmatively pleads it and then proves it after an intense equitable balancing of multiple factors,

25   including the four factors set out in the text of Section 107.[8]

---

26   [8] The statutory factors are: "(1) the purpose and character of the use, including whether such use
27   is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the
     copyrighted work; (3) the amount and substantiality of the portion used in relation to the
     copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value
28   of the copyrighted work."  17 U.S.C. § 107.

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

5165019.1

The Supreme Court has made it clear that fair use does not lend itself to "bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell*, 510 U.S. at 577. The Court has instructed that all of the statutory factors "are to be explored, and the results weighed together, in light of the purposes of copyright." *Id*. at 578. "Since the doctrine is an equitable rule of reason, no generally applicable definition is possible, and *each case raising the question must be decided on its own facts*." *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) (emphasis added) (quotation and alteration omitted). As Professor Nimmer observes in his leading copyright treatise, each of the Supreme Court's three landmark fair use decisions was "overturned at each level of review, two of them by split opinions at the Supreme Court level"; Professor Nimmer points to this divergence on whether a use is fair or not – even on the same facts, within the same litigation – as proof of "[t]he malleability" of the fair use inquiry. 4 *Nimmer on Copyright* § 13.05 at 13-156 (footnotes omitted).[9] *See also Perfect 10*, 508 F.3d at 1168 (Ninth Circuit held defendants' use of thumbnail images *was* fair use, whereas district court, based on same facts, held it was not).

Professor Nimmer also makes it clear that an assertion of fair use will not support a claim of misrepresentation under Section 512(f). In the portion of his treatise addressing Section 512(f), Professor Nimmer specifically discusses the type of claim that Plaintiff advances here, namely, a use that is asserted in a notice to an internet service to be unauthorized and infringing but that the user claims is protected by fair use. Professor Nimmer explains that, "[u]sually, fair use determinations are so clouded that one has no sure idea how they will fare until the matter is litigated." 3 *Nimmer on Copyright* § 12B.08 at 12B-93 n.16. Professor Nimmer also states that, when a copyright holder and end user disagree over the assertion that content is infringing, "it may not be obviously apparent who is wrong," and "*[i]n the case of a fair use defense, it might even take successive reversals at every level of review, up to and including the Supreme Court, before the winner's identity is established*." *Id*. at 12B-91 & n.1 (emphasis added).[10]

---

[9] The Supreme Court cases that Professor Nimmer cites are *Campbell*, *Harper & Row* and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).

[10] Even the EFF, in its "Fair Use Principles," concedes that "the precise contours of the fair use doctrine can be difficult for non-lawyers to discern[.]" RJN Ex. 6. It is hard to reconcile this

10
MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

Given the inherently fact-specific, equitable nature of fair use, Plaintiff's reliance on a concept of "self-evident" fair use is oxymoronic.  If courts can (and often do) disagree about whether the same factual record does or does not excuse a use as "fair" under Section 107, a plaintiff under Section 512(f) cannot premise a defendant's "actual knowledge" based on its failure to recognize a use as "self-evidently" fair.  Plaintiff's Section 512(f) claim cannot be premised on a claim that her use is "self-evidently" a fair use under Section 107.

### C.    Plaintiff Cannot Establish That Universal Must Have Known Her Use Would Be Adjudicated To Be A Fair Use

Even on the counter-factual assumption that there can be such a thing as a "self-evident" fair use, Plaintiff's use is not that.  While Plaintiff offers a handful of factual allegations that she says support her contention that her use was "self-evidently" a fair use, in reality these allegations reflect facts that (assuming they are true) would have been known only to her, or that rest on misconceptions of the governing fair use standards.[11]

### 1.    Plaintiff's Contentions Regarding The Purpose Of Her Use Are Based On Facts Known Only To Her

The first statutory fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes."  17 U.S.C. § 107(1).  As the Supreme Court has explained, "[t]he enquiry here may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like[.]"  *Campbell*, 510 U.S. at 578-79.

> The central purpose of this investigation is to see ... whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative.

*Id*. at 579 (quotations and alterations omitted).  *Accord Perfect 10*, 508 F.3d at 1164.

---

concession with the complaint filed by the EFF in this action.

[11]  It must be emphasized that the issue here is *not* whether Plaintiff's allegations, if true, could support a defense of fair use in a hypothetical infringement suit.  The question instead is whether Plaintiff's factual contentions, if true, justify the inferences that Universal made a *knowing* determination that Plaintiff would raise a fair use defense to a charge of infringement, *and* that Universal *knew* that a court would hold that Plaintiff had carried her burden to establish fair use as a matter of law.  Plaintiff's allegations fail to justify these necessary inferences.

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

5165019.1

Plaintiff claims that her posting of the video to YouTube is a non-commercial transformation of the work, SAC ¶ 34, but the facts she alleges in support of this allegation could not have been known to Universal.  Among other things, Plaintiff alleges that she posted the video, incorporating "Let's Go Crazy," to YouTube, because "Holden had recently heard Prince perform on television during the Super Bowl halftime show[,]" because Plaintiff "thought her friends and family, particularly her mother in California, would enjoy seeing Holden's new ability to dance[,]" and because Plaintiff's "mother has difficulty downloading email files but knows how to access the YouTube website." *Id.* ¶¶ 12, 16.

There is no possibility that Universal could have known any of these things from viewing the video on YouTube.  Plaintiff's posting was made under an anonymous user name ("edenza"), and provided no details about her alleged purposes in making the posting.  The facts that *are* apparent from the video posting are

- That it does not fit within any of the examples in the preamble to Section 107, which the Supreme Court said may "guide" the fair use inquiry, *Campbell*, 510 U.S. at 578.  *See* 17 U.S.C. § 107 ("for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research"); *Leadsinger*, 512 F.3d at 530 (commencing fair use analysis with observation that fair use claimant's use was not even alleged to fit within any of the purposes set forth in the preamble to Section 107; fair use defense rejected by Ninth Circuit).

- That it incorporates the "Let's Go Crazy" composition, and adopts that title (along with "#1") as the title for the video, thereby guaranteeing higher hits when "Let's Go Crazy" is entered into YouTube's search engine.

- That the video is available for unlimited viewing by anyone with access to the internet, a point that is underscored by the fact the video has been played nearly a half-million times to date.

Notwithstanding all of these facts, Plaintiff insists that Universal *must* have known her posting was "transformative," because it "bears all the hallmarks of a family home movie[.]" SAC ¶ 13.  It is not clear if Plaintiff is contending that everything that looks like a family home movie is exempt from the copyright laws, or just this one.  Regardless, while Plaintiff's video may have made for good viewing within her home, the fact is that *Plaintiff's posting it on YouTube goes far beyond the traditional home movie*.  Plaintiff's YouTube posting makes the video, including its incorporation of "Let's Go Crazy," available for unlimited performances by

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

5165019.1

anyone in the world with access to the internet.  *That* use does not "transform" the musical composition into something new or different.  It appropriates the work into a format for which Universal and numerous other copyright holders can and do receive remuneration every day.

### 2. Musical Compositions Lie At The Heart Of The Creative Expression That The Copyright Act Protects

Plaintiff does not even bother to allege any facts that would purport to show Universal knew it would lose the second fair use factor, "the nature of the copyrighted work."  17 U.S.C. § 107(2).  The law is clear that a musical composition is "a work of creative expression, as opposed to an informational work[.]"  *Leadsinger*, 512 F.3d at 531.  "Let's Go Crazy" thus "is precisely the sort of expression that the copyright law aims to protect."  *Id.* (citing, among other sources, 4 Nimmer on Copyright § 13.05 [A][2][a] ("*[T]he more creative a work, the more protection it should be accorded from copying*; correlatively, the more informational or functional the plaintiff's work, the broader should be the scope of the fair use defense.")).  That this factor weighs so clearly against any assertion of fair use squarely undercuts Plaintiff's allegation that Universal must have known a fair use defense would be raised and would be adjudicated in Plaintiff's favor.

### 3. Plaintiff Fails To Allege Facts Showing Universal Must Have Known Her Taking Was Insubstantial

Plaintiff's allegations regarding the third fair use factor –"the amount and substantiality of the portion used in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3) – also fail to support her claim of actual knowledge.  Plaintiff alleges that this factor supports her assertion of a "self-evident" fair use because the song "can *only* be heard in the background for approximately 20 seconds" of a three-and-a-half minute song, the portion used "is near the song's end and includes only a few words of the lyrics."  SAC ¶¶ 14, 18 (emphasis added).

Plaintiff's allegation that taking 20 seconds of a three-and-a-half minute composition must have been recognized to be fair under factor three is flatly inconsistent with fair use precedent.  The Supreme Court, quoting Judge Learned Hand, has held that "'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.'"  *Harper & Row*, 471 U.S. at 565 (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936)).  The Court in

1  *Harper & Row* made clear that the relevant question on factor three is not the absolute quantity of

2  content taken from the original work, but rather the qualitative importance of that content.  *Id.*

3  *See also Roy Export Co. Establishment v. Columbia Broadcasting Sys., Inc.*, 503 F. Supp. 1137,

4  1145 (S.D.N.Y. 1980) (cited with approval by the Supreme Court in *Harper & Row* for the

5  proposition that "taking of 55 seconds out of 1 hour and 29-minute film deemed qualitatively

6  substantial," 471 U.S. at 565).

7       Plaintiff notably fails to allege any facts suggesting that Universal must have known that

8  her posting reproduced a qualitatively insignificant portion of the work.  Her allegation that "[t]he

9  portion of the song used is near the song's end and includes only a few words of the lyrics[,]"

10  SAC ¶ 14, is not sufficient on this score.  This is because Plaintiff's video posting makes it clear

11  that the portion of the song Plaintiff reproduced in her posting is very substantial.  Specifically,

12  the "few words" incorporated into her posting are, "C'mon baby, Let's get nuts," and the music

13  that is incorporated is the electric guitar solo that embodies the "craziness" that the song is

14  famous for.  Plaintiff took precisely those portions of the song that were most consistent with, as

15  she describes it, a scene of "commotion and laughter."  SAC ¶ 13.  It would be entirely

16  reasonable for Universal to have believed that this factor would have weighed against a fair use

17  defense.  *See Kramer v. Thomas*, 2006 WL 4729242 at *10 (C.D. Cal. Sept. 28, 2006) (defendant

18  took 10 seconds of a composition, but it was plaintiff's "best selling" and "most recognizable

19  composition, "the musical compositions included were chosen for this very reason[,]" and

20  "[t]herefore, the third factor weighs against a finding of fair use") (internal quotations omitted).

21           **4.**    **Plaintiff's Contention Regarding The Fourth Fair Use Factor Ignores**

22                  **The Supreme Court's Controlling Test**

23       Factor four is "the effect of the use upon the potential market for or value of the

24  copyrighted work."  17 U.S.C. § 107(4).  In alleging that Universal must have known this factor

25  would weigh in favor of fair use, Plaintiff focuses solely on the potential effect of *her use,*

26  *standing alone*.  Specifically, she alleges: "the content of the Holden Dance Video did not and

27  could not substitute for the original song or inflict any harm to the market for the original song."

28  SAC ¶ 18.

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

5165019.1

1    The test under the fourth fair use factor, however, is never limited just to the claimant's

2    use.  An infringer could always say that its use had only a trivial effect on the copyright holder's

3    actual or potential market.  The Supreme Court has held that the Court must make a broader

4    inquiry, to consider the potential impact of widespread use:

5           [The fourth fair use factor] requires courts to consider *not only* the
            extent of market harm caused by the particular actions of the
6           alleged infringer, *but also "whether unrestricted and widespread*
            *conduct of the sort engaged in by the defendant ... would result in a*
7           *substantially adverse impact on the potential market" for the*
            *original.*  The enquiry "must take account not only of harm to the
8           original but also of harm to the market for derivative works."

9    *Campbell*, 510 U.S. at 590 (emphasis added) (quoting 4 *Nimmer on Copyright* § 13.05 [A][4] at

10   13-102.61, and *Harper & Row*, 471 U.S. at 568).  In addition, because "fair use is an affirmative

11   defense, its proponent would have difficulty carrying the burden of demonstrating fair use

12   without favorable evidence about relevant markets."  *Id.*

13   Plaintiff fails completely to allege any facts about the impact on the potential market for

14   the "Let's Go Crazy" composition were similar uses made of that work made on an "unrestricted

15   and widespread" scale.  The omission is explained by the fact that such "unrestricted and

16   widespread" use would completely undermine any market for allowing authorized use of that

17   work in synchronization with visual images.  Plaintiff may believe that her posting, in isolation, is

18   innocuous.  But a fair use analysis of factor four requires the consideration of potentially

19   thousands (or more) users of YouTube or other user-generated content services helping

20   themselves to portions of the copyrighted work for their postings.  This could include not only

21   parents of dancing toddlers, but bands or other musical performers creating unauthorized

22   derivative works and posting them to YouTube.  Allowing all such users to appropriate the

23   underlying work under the claim of fair use threatens to eliminate a potentially significant market.

24   At the very least, Universal would have been reasonable to believe that this potential for harm

25   would weigh against the fourth fair use factor, were such a defense to be asserted.  Plaintiff, who

26   as the fair use proponent bears the burden on this factor, notably fails to allege any facts

27   concerning the potential effect on such markets.

28

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

5165019.1

1

2

**D.    Plaintiff's Theory That Universal Should Be Liable Based On Its Claimed Failure To Acquire Knowledge About Whether Plaintiff's Use Would Be "Fair Use" Is Inconsistent With Section 512 and with *Rossi***

3    Plaintiff's alternative theory of a knowing misrepresentation is premised not on Universal

4    recognizing Plaintiff's posting to be a fair use, but rather on Universal *refraining* from conducting

5    such an analysis.  Pointing to a statement by Universal in response to Plaintiff's public relations

6    blitz that "Prince believes it is wrong for YouTube, or any other user-generated site, to

7    appropriate his music without his consent[,]" SAC Ex. F, Plaintiff contends that "Universal sent

8    the DMCA notice at Prince's behest, based not on the particular characteristics of the Holden

9    Video or any good-faith belief that it actually infringed a copyright but on its belief that, 'as a

10    matter of principle,' Prince 'has the right to have his music removed.'" SAC ¶ 31.  In short,

11    Plaintiff contends that, because Universal did not conduct a fair use analysis, the Court should

12    impute to Universal knowledge that it was misrepresenting that Plaintiff's posting infringed.

13    Plaintiff's theory of imputation is that the copyright owner or administrator is obliged –

14    under possible penalty of a Section 512(f) violation – to speculate whether an online poster would

15    assert fair use as a defense to a hypothetical infringement claim, and whether a court would find

16    that the poster would carry its burden of proving that defense.  This is exactly the type of

17    obligation that EFF wants to pin on copyright holders as part of EFF's "Fair Use Principles for

18    User Generated Video Content."  RJN Ex. 6.  But it is not an obligation that can be squared with

19    the DMCA or with the Ninth Circuit's controlling construction of Section 512(f) of that statute.

20    A rule requiring a copyright holder to undertake an *ex ante* analysis of the multi-faceted

21    and often indeterminate question whether an infringing use of its work would be subject to a fair

22    use defense would directly contradict the purpose and structure of the DMCA.  The DMCA was

23    designed to provide a summary procedure through which a copyright right holder could protect its

24    works without having to resort to filing an infringement action in federal court.  Congress made

25    clear that Section 512 was intended to "balance *the need for rapid response to potential*

26    *infringement* with the end-users' legitimate interests in not having material removed without

27    recourse."  Sen. Rep. No. 105-190 at 21 (1998) (emphasis added) (quoted in *Rossi*, 391 F.3d at

28    1003).  Even Plaintiff, in her prior briefing, recognized this was the purpose of the DMCA's

16

1    notice and takedown regime. Pltfs' Opp. to Mot. to Dismiss, filed Nov. 13, 2007, at 7 ("*Section*

2    *512 was enacted by Congress to allow for rapid responses to potential copyright infringement.*")

3    (emphasis added).

4         If copyright holders were required to make *ex ante* predictions about fair use – and to be at

5    risk of a Section 512(f) suit for guessing incorrectly – the inevitable effect would be to deter them

6    from sending takedown notices. That may be the policy result that EFF wants, but that is not the

7    statute that Congress legislated. The statute actually shows a contrary intent. Specifically, the

8    statute provides that the person whose material is removed may send a counter-notification if he

9    or she believes their use is not infringing. 17 U.S.C. § 512(g)(3). The counter-notification then

10   starts a 14-day clock for the copyright owner to evaluate the assertion of non-infringement, and

11   either file an infringement suit or see the online service re-post the material. This flexible system

12   shows that Congress believed a copyright holder needs to consider the relative balance of a fair

13   use assertion, and how that might play out in possible litigation, only after the individual posting

14   the material indicates they believe they would have a fair use defense. The system that Congress

15   enacted is inconsistent with the regime of *ex ante* speculation and conjecture that EFF wants to

16   foist upon copyright owners.

17        Plaintiff's assertion that a copyright holder must conduct a fair use analysis to test its

18   belief that material is infringing also is contrary to *Rossi*. In that case, the copyright holders'

19   representative did not attempt to download any movies, click on any links, or take any other steps

20   to verify its belief that the plaintiff's website contained infringing material. 391 F.3d at 1002, n.2.

21   The court nevertheless determined that the defendant complied with the DMCA because it

22   subjectively believed based on reviewing plaintiff's website that it contained infringing material,

23   and Section 512(f) imposes liability on copyright holders only for subjectively improper actions.

24   *Id.* at 1005. In reaching this conclusion, the court rejected the plaintiff's argument that the

25   DMCA imposes a duty upon copyright holders to investigate the accuracy of their subjective

26   belief of infringement. *Id.* at 1004.

27        *Rossi* is entirely inconsistent with Plaintiff and EFF's proposed rule requiring an *ex ante*

28   fair use analysis. If a copyright owner or administrator cannot have actual knowledge imputed to

17

1    it where it does not take the final step of verifying that a site actually has infringing material,

2    there is no way to hold such an actor liable where it determines (correctly) that material *is*

3    infringing, but does not go on to determine whether the affirmative defense of fair use would be

4    raised and would prevail.

### E.    Plaintiff Fails To Allege Damages Of The Type That Section 512(f) Authorizes

5

6         Plaintiff not only fails to allege a plausible claim that Universal made a knowing

7    misrepresentation, but her SAC seeks damages that are not recognized by Section 512(f).  Under

8    the statute, a plaintiff may seek damages incurred "as the result of" the internet service provider

9    taking material down in response to a knowing misrepresentation.  17 U.S.C. § 512(f).  Plaintiff

10   alleges that as a result of Universal's actions she has suffered injury including "the financial and

11   personal expenses associated with responding to the claim of infringement and harm to her free

12   speech rights under the First Amendment."  SAC ¶ 38.  But Plaintiff's response to Universal's

13   notice was a five-paragraph email message she sent to YouTube as her counter-notice.  SAC ¶ 27;

14   RJN Ex. 1.  The SAC provides no plausible basis for believing that Plaintiff incurred any

15   "financial and personal expenses" in drafting this half-page email.  Moreover, Plaintiff's claim

16   that she suffered First Amendment injury is baseless:  Universal is a private entity, not a state

17   actor, and therefore is not subject to the First Amendment.  *Lloyd Corp., Limited v. Tanner*, 407

18   U.S. 551, 567 (1972) ("the First and Fourteenth Amendments safeguard the rights of free speech

19   . . . by limitations on state action.").

20        Plaintiff further claims she found Universal's notice "intimidating" and has not posted "a

21   single video" on YouTube out of fear that someone might construe some portion of a new video

22   to infringe a copyright.  SAC ¶ 38.  But Plaintiff acknowledges that Universal did not send its

23   notice to her; rather, she alleges that Universal sent its notice to YouTube and YouTube contacted

24   Plaintiff.  *Id.* ¶¶ 22, 25.  Plaintiff does not allege that YouTube forwarded Universal's notice or

25   that Plaintiff otherwise saw Universal's notice before she sued Universal.  Thus, it is unclear on

26   what basis Plaintiff claims that Universal's notice "intimidat[ed]" her.  *Id.* ¶ 38.  In any event,

27

28

MOTION TO DISMISS; MEMO. OF P&A'S
CV 07-03783

5165019.1

1    Plaintiff has not alleged any facts suggesting that she suffered any compensable loss as a result of

2    this purported intimidation.

3            Not only does Plaintiff lack a cognizable injury, but she seeks relief that Section 512(f)

4    does not authorize.  The statute provides for a limited cause of action for "damages" incurred by

5    an alleged infringer, but does not provide for injunctive relief. 17 U.S.C. § 512(f); *see also*

6    *Biosafe-One, Inc. v. Hawks*, 524 F. Supp. 2d 452, 469 (S.D.N.Y. 2007) (denying injunctive relief

7    on DMCA claim where the "statutory language specifically provides for the remedy of damages

8    and makes no mention of injunctive relief.").  Nevertheless, Plaintiff seeks an injunction

9    restraining Universal from "bringing any lawsuit or threat against Plaintiff for copyright

10   infringement in connection with" her video.  SAC Prayer ¶ 1.  Not only is such relief unavailable

11   under the DMCA, the Court already rejected Plaintiff's request for the same relief through a

12   declaratory judgment claim, which the Court dismissed with prejudice.  Order at 8.

13   **IV.    CONCLUSION**

14           Plaintiff's revised Section 512(f) claim is every bit as deficient as her first.  The failure of

15   Plaintiff's re-pleaded Section 512(f) claim establishes that the deficiencies in her claim cannot be

16   cured with further pleading.  Universal respectfully submits that Plaintiff's Section 512(f) claim,

17   and her SAC, must be dismissed with prejudice.

18   DATED: May 23, 2008                    MUNGER, TOLLES & OLSON LLP

19

20

21                                          By:_____/s/ *Kelly M. Klaus*_____

22                                                   KELLY M. KLAUS

23                                          Attorneys for Defendants
                                            UNIVERSAL MUSIC CORP.,
24                                          UNIVERSAL MUSIC PUBLISHING, INC.,
                                            AND UNIVERSAL MUSIC PUBLISHING
25                                          GROUP

26

27

28

                                            MOTION TO DISMISS; MEMO. OF P&A'S
                                            CV 07-03783

5165019.1