KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
AMY C. TOVAR (SBN 230370)
Amy.Tovar@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
AND UNIVERSAL MUSIC PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                Plaintiff,<br><br>        vs.<br><br>UNIVERSAL MUSIC CORP.,<br>UNIVERSAL MUSIC PUBLISHING,<br>INC., and UNIVERSAL MUSIC<br>PUBLISHING GROUP,<br><br>                Defendants. | CASE NO.  CV 07-03783<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT<br><br>[Supplemental Request for Judicial Notice filed concurrently herewith]<br><br>Judge:       Honorable Jeremy Fogel<br>Date:         July 18, 2008<br>Time:        9:00 a.m.<br>Courtroom: 3 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Plaintiff Has Failed To Plead An Actionable Misrepresentation: Universal's Representation That It Had A Good Faith Belief Plaintiff's YouTube Posting Was Infringing Was Indisputably True ..................................... 2

        1. There Is No Support For Plaintiff's Argument That A Fair Use Defense Exists Independent Of A Use That Otherwise Infringes Copyright ............................................................................................. 3

        2. Nothing In The DMCA Requires The Sender Of A Takedown Notice To Make An Ex Ante Determination Of Fair Use .......................... 4

    B. Plaintiff Fails To Support Her Claim That There Is Such A Thing As A "Self-Evident Non-Infringing Fair Use" .............................................................. 6

    C. Plaintiff Fails To Plead Facts Showing That Universal Must Have Known That Her YouTube Posting Would Be Adjudicated To Be A Fair Use .................. 8

        1. Plaintiff's Purposes For Her Use Were Known Only To Her ..................... 9

        2. Plaintiff Attempts To Dismiss The Second Factor's Significance Without Support In Copyright Law ........................................................... 11

        3. Plaintiff's Allegations Regarding The Third Factor Do Not Make It "Clear" That Universal Knew This Factor Would Support Plaintiff ......... 11

        4. Plaintiff's Allegations Regarding The Fourth Fair Use Factor Reflect Legal Error, Not Factual Disagreement ........................................ 12

    D. Plaintiff Fails To Allege Any Cognizable Damages Under Section 512(f) .......... 13

III. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

CASES                                                                                               Page(s)

*Azizian v. Federated Dept. Stores, Inc.*,
   499 F.3d 950 (9th Cir. 2007) .......................................................................................... 14

*Bell Atlantic v. Twombly*,
   127 S. Ct. 1955 (2007) ...................................................................................................... 7

*Bond v. Blum*,
   317 F.3d 385 (4th Cir. 2003) ..................................................................................... 3, 7, 8

*Burnett v. Twentieth Century Fox Film Corp.*,
   491 F. Supp. 2d 962 (C.D. Cal. 2007) ............................................................................. 7

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ............................................................................................. 3, 11, 12

*Google Inc. v. American Blind & Wallpaper Factory, Inc.*,
   2005 WL 832938 (N.D. Cal. Mar. 30, 2005) .................................................................. 1

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985) ......................................................................................................... 3

*Leadsinger, Inc v. BMG Music Publishing*,
   512 F.3d 522 (9th Cir. 2008) ........................................................................................ 2, 7

*Mattel Inc. v. Walking Mountains Prods.*,
   353 F.3d 792 (9th Cir. 2003) .......................................................................................... 11

*Moore v. Kulicke & Soffa Indus., Inc.*,
   318 F.3d 561 (3d Cir. 2003) ............................................................................................ 4

*Online Policy Group v. Diebold*,
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ....................................................................... 2, 6

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ......................................................................................... 4

*Religious Tech. Ctr. v. Lerma*,
   908 F. Supp. 1362 (E.D. Va. 1995) ................................................................................. 8

*Rossi v. MPAA*,
   391 F.3d 1000 (9th Cir. 2004) .............................................................................. 1, 2, 6, 7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ......................................................................................................... 4

*Video-Cinema Films, Inc. v. CNN*,
   2003 WL 1701904 ........................................................................................................... 8

STATUTES

15 U.S.C. § 15(a) ................................................................................................................... 14

17 U.S.C. § 102 ........................................................................................................................ 2

17 U.S.C. § 106 ........................................................................................................................ 3

17 U.S.C. § 107 ................................................................................................................ passim

17 U.S.C. § 505 ........................................................................................................................ 7

17 U.S.C. § 512 ................................................................................................................ passim

**I.     INTRODUCTION**

Claiming that the applicable law is "uncertain," Plaintiff asserts that the Court should be "particularly hesitant to dismiss" her claim. Opp. at 15 (citing this Court's decision in *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, 2005 WL 832938 at *5 (N.D. Cal. Mar. 30, 2005)). However, the legal standards that apply to this motion are not at all unclear. As this Court held on the prior motion, *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004), clearly holds that Plaintiff has to plead facts that show a "*knowing misrepresentation* on the part of the copyright owner." Order, Apr. 8, 2008 at 5 (emphasis added). Plaintiff has failed to do this, and her complaint should be dismissed with prejudice for at least the following reasons:[1]

***Plaintiff Has Failed To Plead That Universal Misrepresented Her Posting Infringed***: Plaintiff's exclusive reliance on the affirmative defense of fair use necessarily establishes that Universal's statement that her use was infringing was true. For there to be a "fair use," there first must be an infringing use. Plaintiff's arguments that her use could be a "fair use" without infringing, or that Universal must be deemed to have impliedly represented that her use was not "fair," are contrary to the Copyright Act and controlling case law.

***Plaintiff Fails To Plead That Universal Knew It Was Making A Misrepresentation***: Even if Universal's notice somehow could be construed to make a representation about whether Plaintiff's use would be excused as "fair," Plaintiff has not demonstrated, as she must, that it is plausible to believe that Universal *knew* it was making a misrepresentation about fair use. Plaintiff's argument that Universal may be charged with recognizing her use as "self-evidently" fair use is mistaken for the simple reason that there is no such thing as "self-evident" fair use, and Plaintiff to this day has not cited any authority showing that there is. Plaintiff's own analysis of the four fair use factors under Section 107 confirms that her claim of "self-evident" fair use cannot substitute for pleading actual knowledge. Plaintiff is alleging that Universal *should have*

---

[1] It is clear from the face of Universal's notice, SAC Ex. A, that Universal did not send its notice pursuant to the DMCA. Plaintiff is wrong that the Court must accept her allegation that Universal's notice was sent pursuant to the DMCA. Whether YouTube is subject to Section 512(c) of the DMCA, and whether Section 512(f) applies to notices sent to YouTube, are legal conclusions that are not affected by Plaintiff's pleading. In any event, Plaintiff's Section 512(f) claim fails for all of the other reasons discussed in the text.

*known* that her use was fair based on a *post hoc* inquiry into what she and her lawyers believe is an objectively reasonable fair use defense. What Plaintiff and the EFF think is "self-evident" about copyright law and the fair use doctrine is not even consistent with the governing case law; those views certainly cannot be imputed to Universal to plead its knowledge.

***Plaintiff Fails To Plead Cognizable Damages Under Section 512(f)***: Even if there was a misrepresentation (which there was not), and even if Plaintiff pleaded actual knowledge (which she has not), Plaintiff's claim still fails because she does not and cannot plead any cognizable damages.

Plaintiff's inability to state a claim is not surprising. She has no claim, and never came close to alleging one. It is time for Plaintiff to heed the Ninth Circuit's ruling in *Rossi*, and it is time for this case to be over.

## II.   ARGUMENT

### A.   Plaintiff Has Failed To Plead An Actionable Misrepresentation: Universal's Representation That It Had A Good Faith Belief Plaintiff's YouTube Posting Was Infringing Was Indisputably True

Plaintiff's entire claim is based on Universal's one-sentence assertion that it had "a good faith belief that the above-described activity is not authorized by the copyright owner, its agent, or the law." SAC Ex. A. Plaintiff's complaint and her opposition confirm that this statement was true. Unlike in *Online Policy Group v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004), where the notice sender failed to identify any copyrighted content, *id.* at 1203, or *Rossi*, where the website operator claimed that no movies could be downloaded through his site, 391 F.3d at 1003, it is undisputed here that Plaintiff's YouTube posting infringed a valid copyright. Plaintiff concedes that "Let's Go Crazy" is an original work of authorship protected by copyright. *See* 17 U.S.C. § 102. She concedes that the copyright holder has the exclusive "right to control the synchronization of musical compositions with the content of audiovisual works[.]" *Leadsinger, Inc v. BMG Music Publishing*, 512 F.3d 522, 527 (9th Cir. 2008). And she concedes that her YouTube posting *did* use "Let's Go Crazy" in timed relation with the video images, Opp. at 3, which means that she infringed the exclusive synchronization right.

Based on these facts, and based on the fact that Plaintiff stakes her entire defense to "fair use" – an affirmative defense that presupposes a use that otherwise infringes – Plaintiff has conceded that Universal's representation that Plaintiff's YouTube posting infringed "Let's Go Crazy" was *true*. Plaintiff makes two arguments to try to get around these inconvenient facts. Neither argument has merit.

### 1. There Is No Support For Plaintiff's Argument That A Fair Use Defense Exists Independent Of A Use That Otherwise Infringes Copyright

Plaintiff first says that it is "[n]onsense" for Universal to argue that her exclusive reliance on the fair use defense implicitly concedes the truth of Universal's representation that her use infringed the synchronization right. Opp. at 8. Plaintiff argues that the fact that fair use is raised as an affirmative defense is just a "procedural vehicle," and she insists that a use can be "fair" and non-infringing without regard to whether it violates one of the exclusive rights under copyright.

Plaintiff's argument is belied by the very "plain language" of Section 107 that she cites in her brief. *See* Opp. at 8. The preamble to Section 107 confirms that a use that is determined to be "fair" under the statute's multi-factor balancing test is excused "*[n]otwithstanding* the provisions of [§] 106," 17 U.S.C. § 107 (emphasis added), *i.e.*, *notwithstanding that the use otherwise infringes*. It is not surprising, therefore that the Supreme Court has expressly held that Congress "structured [Section 107] *as an affirmative defense*[,]" *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985) (emphasis added), a holding the Court has reaffirmed. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).[2] It also is not surprising that courts have repeatedly made it clear that a fair use does not exist independent of an otherwise infringing use. *See Bond v. Blum*, 317 F.3d 385, 394 (4th Cir. 2003) ("A fair-use analysis bears relevance *only when a challenged use violates a right protected by the Copyright Act*.")

---

[2] Given the Supreme Court's binding construction of the nature of Section 107 as an affirmative defense, Plaintiff's footnote analogy to the law of libel for the proposition that a copyright claimant's case includes an implied element of "not a fair use," *see* Opp. at 9 n.2, falls flat. The analogy fails for other reasons as well. The truth or falsity of a statement is an objective fact. Whether a use is fair involves balancing mixed questions of law and fact. It is hardly surprising, therefore, that the law requires someone making an infringing use to plead the defense and to bear the burden of proving it.

(emphasis added)[3]; *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 573-74 (3d Cir. 2003) ("Fair use assumes that the defendant used the copyrighted material, but *provides a limited excuse*.") (emphasis added).

Plaintiff's reliance on *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), for her contrary argument, Opp. at 9, is misplaced. In *Sony*, it was undisputed that the unauthorized copying of copyrighted television programs *would* violate the copyright owners' exclusive reproduction rights under Section 106. That fact "notwithstanding," however the majority (by a 5-4 vote, reversing the Ninth Circuit's opposite conclusion) concluded that the use was "fair" under the multi-factor test of Section 107. 464 U.S. at 447-56. Even if *Sony* were ambiguous on the question whether fair use exists independent of infringing use, the Court's decisions in *Harper & Row* and *Campbell* both post-date *Sony*, and those cases make clear that fair use is an affirmative defense. By relying exclusively on that affirmative defense, Plaintiff concedes the truth of Universal's representation that her use infringed.

### 2. Nothing In The DMCA Requires The Sender Of A Takedown Notice To Make An *Ex Ante* Determination Of Fair Use

Next, Plaintiff argues that even if Universal's express representation was true, Universal should be deemed to have made an implied representation that she claims was false. Specifically, Plaintiff claims that Universal's notice "necessarily embodied a corollary representation that her use was not a fair use." Opp. at 9. This is so, Plaintiff argues, because "a DMCA notice sender must consider fair use prior to sending a DMCA notice." Opp. at 16.

These are "necessar[y] embod[iments]" and statutory requirements entirely of Plaintiff's imagination. Nothing in the DMCA, 17 U.S.C. § 512(c)(3), or YouTube's Terms of Use, SAC Ex. B, requires the sender of a takedown notice to make an *ex ante* determination whether a use would be deemed to be "fair," much less to make a representation about that determination under penalty of perjury. As the Ninth Circuit has emphasized, the DMCA is quite detailed in setting out what has to be in a compliant notice. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1112 (9th Cir. 2007). But the statute says not one word about the sender making determinations or

---

[3] Plaintiff herself relies on *Bond* in support of a different argument. *See* Opp. at 20.

representations regarding fair use. Under the principle of statutory construction *expressio unius est exclusio alterius*, the absence of a requirement to make a fair use determination means that one should not be implied.[4]

The legislative history and overall structure of Section 512 confirm that Congress did not intend to require copyright owners and senders of takedown notices to make *ex ante* fair use determinations. As Universal demonstrated in its opening brief, Mot. at 16-17, the DMCA's notice procedures "balance the need for rapid response to potential infringement with the end-users' legitimate interests in not having material removed without recourse." Sen. Rep. No. 105-190 at 21 (1998). In service of those ends, the statute includes not only a notification procedure, but a counter-notification procedure, which Plaintiff herself claims to have invoked. The counter-notification procedure, in particular, shows that, to the extent Congress intended for copyright holders to consider at all the possible merits of a fair use defense as part of the Section 512 process, Congress intended that to be done at the counter-notification stage. It is at the point of the counter-notification that the copyright holder has a short time-fuse (14 days) to evaluate any asserted defenses to its good-faith belief of infringement and either file an infringement suit or let the online service re-post the material. 17 U.S.C. § 512(g)(2)(c). If a fair use defense has been asserted in the counter-notification, the copyright holder then has to consider the potential merits of that defense and decide whether to proceed to litigation. It is far more reasonable to believe that Congress intended for fair use to be considered (if at all) at the counter-notification stage, rather than *ex ante*, at the time an infringing use is discovered and a takedown notice is sent. This reading of the statutory structure makes sense, given the indeterminate nature of the fair use defense, and the implausibility that Congress intended to subject notice senders to liability for guessing incorrectly how that defense (were it to be raised at all) might be resolved.[5]

---

[4] In contrast, EFF's proposed "Fair Use Principles for User Generated Video Content" *would* require copyright owners to make such determinations prior to sending out notices. *See* Universal's RJN Ex. 6 at p.2. This simply underscores the fact that this litigation is an attempt to engraft onto the DMCA requirements that Congress did not see fit to adopt.

[5] Tellingly, Plaintiff fails to respond at all to Universal's argument regarding the significance of the counter-notification procedure. Plaintiff claims that the structure of Section 512(f) supports her proposed requirement of an *ex ante* fair use determination because "[i]f 512(f) liability were only available *after* an infringement action, there would be no point to the 512 process." Opp. at

Finally, nothing in the case law requires a copyright holder to conduct an *ex ante* fair use analysis before sending a takedown notice. Plaintiff's argument that *Rossi* implicitly adopts such a rule is unfounded and wrong. As Universal explained in its opening brief, *see* Mot. at 17, *Rossi* rejected the argument that the notice sender has a duty to look for material rebutting its subjective belief of infringement. 391 F.3d at 1004. Plaintiff claims that the Ninth Circuit's description of the facts known to the MPAA demonstrate that the Ninth Circuit actually did recognize a duty to investigate. Opp. at 15. The facts known to the MPAA were relevant, however, only because the website operator claimed there was no infringing content available through his site. 391 F.3d at 1003. Of course, Plaintiff cannot make this argument since she admittedly made an unauthorized use of "Let's Go Crazy." Plaintiff's claim that Universal had to go beyond asserting this (indisputably true) fact, to consider a fair use defense that was not raised until this lawsuit was filed, finds no support in *Rossi*.[6]

All available guides for statutory construction – text, structure, legislative history and case law – show there is no basis for construing Section 512 to require the notice sender to investigate and make a representation regarding a possible fair use defense. Universal's notice accurately stated that Plaintiff's use was unauthorized and infringing. Plaintiff fails to plead any misrepresentation, and her complaint can and should be dismissed on this ground alone.

**B.   Plaintiff Fails To Support Her Claim That There Is Such A Thing As A "Self-Evident Non-Infringing Fair Use"**

Even if Universal's notice can be construed to make the implied representation that Universal did not believe Plaintiff's use would be deemed a fair use, Plaintiff's claim still fails because she pleads no facts that make it plausible to believe Universal knew this implied representation was false.[7]

---

19. Plaintiff's all-or-nothing dichotomy between the 512 notice and an infringement lawsuit completely ignores the significance of the counter-notification procedure.

[6] Plaintiff also asserts that this Court's decision in *Diebold* holds that a notice sender has an *ex ante* obligation to evaluate a possible fair use claim and make a representation about it. Opp. at 17-18 (citing *Diebold*, 337 F. Supp. 2d at 1204). *Diebold* says no such thing. Had it said there was an obligation *ex ante* to consider and evaluate a possible fair use claim, that portion of the Court's holding (like the portion adopting a "knew or should have known" standard of knowledge) would not have survived *Rossi*.

[7] Plaintiff erroneously suggests that requiring her to plead facts that make an inference of

Plaintiff continues to claim that her YouTube posting was so self-evidently "fair" that Universal must be deemed to have known it was fair use just by looking at it. Universal first pointed out nine months ago that there is no such thing as a fair use that is so "self-evident" as to be instantly and subjectively recognized as such by a copyright holder. In the intervening time, including in her opposition to the instant motion, Plaintiff has never cited a case for the proposition that such a creature exists in the law. The materials that Plaintiff does rely on confirm that "self-evident" fair use is a non-existent standard.

*First*, Plaintiff cites cases for the unsurprising proposition that courts have resolved fair use in the context of a motion to dismiss. Opp. at 19 (citing *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 975 (C.D. Cal. 2007); *Leadsinger*, 512 F.3d at 532-33). Plaintiff's assertion that these cases are relevant is based on her mischaracterizing Universal's position as one that fair use cannot "be assessed before discovery and trial[.]" *Id*. What Universal actually said is that the party claiming that its use is "fair use" has to raise that defense and then support it. *See* Mot. at 9. In the motion to dismiss cases, the defense was pleaded and litigated. In this case, fair use was not raised until Plaintiff filed this lawsuit – and the supposed elements that support the claim were not even articulated until Plaintiff filed her Second Amended Complaint. The motion to dismiss cases do not establish there is such a thing as a "self-evident" fair use.

*Second*, Plaintiff recycles (from her opposition to the first motion to dismiss) her reliance on cases awarding attorneys' fees under 17 U.S.C. § 505. As Universal previously pointed out (and Plaintiff ignores), those cases are inapposite to Section 512(f), because they expressly inquire into "*the objective reasonableness* of the legal and factual positions advanced[.]" *Bond*, 317 F.3d at 397 (emphasis added) (quotations omitted). Section 512(f), in contrast, turns on the notice sender's "actual knowledge." *Rossi*, 391 F.3d at 1005.[8]

---

knowledge "plausible" erroneously imposes upon her a heightened pleading obligation, in violation of Rule 9(b). *See* Opp. at 14 n.3. There is no merit to this argument. *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), establishes the baseline pleading requirements *for Rule 8*, including knowledge. *Twombly* sets the applicable standard for Plaintiff's claim of knowledge.

[8] As Universal also demonstrated, the attorneys' fees cases that Plaintiff cites also are inapposite because in each the fee award was based on multiple factors, including the copyright claimant's

*Third*, Plaintiff claims that the concept of "self-evident" and "unclouded" fair use was purportedly accepted in connection with a Section 512(f) complaint filed by EFF on behalf of "MoveOn.Org" against Viacom. Opp. at 20. Obviously, EFF's self-serving press releases (*see also id*. at 17 n.5) do not have the force of legal precedent. This is especially true in the case of *MoveOn.Org v. Viacom*, where (1) the complaint alleging a "self-evident non-infringing fair use" was almost instantly dismissed, (2) no court ever considered the merits of the "self-evident" fair use claim, and (3) Viacom's own correspondence to EFF makes it clear that Viacom's determinations about not challenging certain uses of its content are made "[r]egardless of the law of fair use."[9]

In sum, there is no such thing as a "self-evident" fair use. Even under her analysis of the law, Plaintiff was required to plead facts making it plausible to believe that Universal subjectively knew that Plaintiff would raise a fair use defense and that the defense would prevail. This Plaintiff has not done – nor could she ever.

**C.   Plaintiff Fails To Plead Facts Showing That Universal Must Have Known That Her YouTube Posting Would Be Adjudicated To Be A Fair Use**

Plaintiff's opposition confirms that her threadbare allegations of Universal's supposed knowledge fails to satisfy *Rossi*. In fact, Plaintiff's entire tack on the elements of Universal's supposed knowledge show that Plaintiff once again is asserting liability based on an objective standard. In particular, Plaintiff attempts to divorce the two elements – knowledge and

---

improper motivations that bear no resemblance to Plaintiff's unauthorized posting that incorporated indisputably copyrighted music. *See Bond*, 317 F.3d at 397-98 (plaintiff had claimed copyright infringement when his spouse's ex-husband attempted to introduce plaintiff's manuscript into evidence in a child-custody case; court found fee award proper because "it was unreasonable for Bond to use a copyright infringement action to attempt to bar introduction of facts disclosed in the work as admissions against his interest, particularly when the information was relevant to child-custody issues"); *Video-Cinema Films, Inc. v. CNN*, 2003 WL 1701904 at *3 (S.D.N.Y. Mar. 31, 2003) (finding that plaintiff's stated propositions of law in opposition to major news networks' fair use defense for broadcasting excerpted film footage of Robert Mitchum after the actor's death were "objectively unreasonable"); *Religious Tech. Ctr. v. Lerma*, 908 F. Supp. 1362, 1365-68 (E.D. Va. 1995) (infringement claim against *Washington Post* based on newspaper's publication of quotations (obtained from copies in court records) of Scientology documents; Court expressed "serious reservations" about whether the documents at issue were "properly copyrighted," and found that "the motivation of plaintiff in filing this lawsuit against *The Post* is reprehensible").

[9] *See* Apr. 17, 2007 Letter from Mark C. Morril to Fred von Lohmann, available at www.eff.org/cases/moveon-brave-new-films-v-viacom (Supp. RJN Ex. A).

misrepresentation – that are part of the single element she has to plead under *Rossi* and this Court's prior Order, *i.e.*, a "*knowing misrepresentation.*" Order at 5 (emphasis added). First, Plaintiff argues that her allegations are sufficient to raise a disputed issue of fair use, and thus her claim of a misrepresentation should survive a Rule 12(b)(6) motion on misrepresentation. *See* Opp. at 10-13. Then, in a separate portion of her brief, Plaintiff claims to satisfy an entirely separate knowledge element by alleging that Universal is a "sophisticated" music company with "extensive experience with copyright law," SAC ¶ 19, and that it must have recognized the merits of her defense. Opp. at 16-23.

Plaintiff's approach reflects a fundamental misreading of *Rossi*, this Court's Order and Section 512(f). All of those authorities required Plaintiff to plead that Universal *knew* it was making a *misrepresentation*. By decoupling the allegations of Universal's knowledge from the allegations about what Universal supposedly misrepresented, Plaintiff attempts to transform the standard into one of objective reasonableness. If Plaintiff's view were the law, a Section 512(f) claimant could always get past a Rule 12(b)(6) motion (at least whenever a "sophisticated" copyright owner is the defendant – which will be often) simply by alleging that the claimant's use *could* be deemed to be a fair use. *Rossi*, this Court's Order and Section 512(f) all require that the claimant's allegations make it plausible to believe the defendant knew the use *would* be deemed to be a fair use.

Plaintiff's allegations do not make it at all plausible to believe that Universal knew not only that a fair use defense would be raised, but that if raised a court would resolve the defense in Plaintiff's favor. Each of Plaintiff's fair use allegations rests upon either facts that (if true) were known exclusively to Plaintiff; idiosyncratic (and erroneous) interpretations of the law of fair use advocated by Plaintiff's lawyers but not accepted by the courts; or both.

### 1. Plaintiff's Purposes For Her Use Were Known Only To Her

As demonstrated in Universal's opening brief, Plaintiff's alleged justifications for posting her "Let's Go Crazy" video were known exclusively to her. Mot. at 11-12. Specifically, Plaintiff alleges in her Second Amended Complaint that she wanted her "friends and family" – and in particular her mother, who is alleged to have "difficulty downloading email files but knows how

to access the YouTube website" – to be able to view the video. SAC ¶¶ 12, 16. Leaving aside the absurdity of this allegation, there is no way that Universal could have known any of these alleged purposes.

In response to Universal's motion, Plaintiff simply tries to ignore what she has pleaded. Without mentioning her friends or her mother (or her mother's alleged difficulty downloading videos), Plaintiff flatly asserts that "Universal does not dispute ... that the video was made available on YouTube for noncommercial purposes," and that it must be deemed to be "transformative," because it adds Holden's dancing to Prince's song. Opp. at 10.

Contrary to Plaintiff's *ipse dixit*, Universal *does* dispute that when it sent the notice, it "must have known" that Plaintiff's purposes were noncommercial, because Plaintiff has not alleged any facts showing that Universal must have known this to be true. Likewise, Plaintiff's self-serving declaration that her use was "transformative" does not make it so. For purposes of Section 512(f), Plaintiff's calling her use transformative does not make it plausible to believe that Universal must have known that a court would deem her use to be transformative. The use, it must be emphasized, was not the making of a "home movie." It is the use of the music in a YouTube posting, which anyone in the world with a computer can access and play (as has been done now more than 493,000 times, and counting). That use does not on its face does not fit within any of the examples of fair use recognized in the preamble to Section 107 – not even close. And while the preamble is not exhaustive of uses that may be fair, Plaintiff's use also does not fit within any recognized purpose for fair use that has been recognized in the case law, such as parody. Indeed, Plaintiff does not cite a single case that holds that the use of copyrighted music in a posting on a user generated website is transformative. It is not plausible to believe that Universal – a company that generates revenue from authorized uses of its copyrighted music in music videos – would know that such a use in a YouTube posting available to a mass audience is transformative.

Plaintiff's allegations fail to establish that Universal knew Plaintiff's posting would be deemed to satisfy the first fair use factor as a matter of law.

### 2. Plaintiff Attempts To Dismiss The Second Factor's Significance Without Support In Copyright Law

Because she could not plead any facts regarding the second fair use factor ("the nature of the copyrighted work," 17 U.S.C. § 107(2)), Plaintiff just ignored this factor in her complaint. *See* Mot. at 13. Having been called out on that omission, Plaintiff now attempts to sidestep this factor by claiming that it is "'not ... terribly significant in the overall fair use balancing.'" Opp. at 11 (quoting *Mattel Inc. v. Walking Mountains Prods.*, 353 F.3d 792, 803 (9th Cir. 2003)). In fact, the case that Plaintiff cites (*Mattel*), in accordance with Supreme Court precedent, shows that the second factor is not "terribly significant" in *parody* cases. *See Mattel*, 353 F.3d at 803. *Accord Campbell*, 510 U.S. at 586 ("This fact, however, is not much help in this case, or ever likely to help much in separating the fair use sheep from the infringing goats *in a parody case*, since parodies almost invariably copy publicly known, expressive works.") (emphasis added). Plaintiff's YouTube posting, of course, is not a parody. Plaintiff did not use "Let's Go Crazy" so that she could comment on the song or Prince. She used it for a globally accessible web posting that takes the song's title and that makes prominent use of the music by synchronizing its words and lyrics ("C'mon baby, Let's get nuts") with the video images. Expediency is not parody. Nothing "invariably" required that Plaintiff use copyrighted music in her posting (or that she title the video "Let's Go Crazy #1").[10]

For purposes of drawing inferences about Universal's knowledge (which is the relevant inquiry), the significance of the second factor cannot be brushed aside, and it certainly cannot be ignored based on Plaintiff' incorrect view of the law. This factor makes it implausible to believe that Universal knew Plaintiff's use would be deemed to be a fair use.

### 3. Plaintiff's Allegations Regarding The Third Factor Do Not Make It "Clear" That Universal Knew This Factor Would Support Plaintiff

Plaintiff insists that "[t]he reasons this [third] factor favors Lenz ... are all clear to anyone who views the video[.]" Opp. at 22. These purportedly "clear" "reasons" are that the song is

---

[10] In fact, YouTube's published copyright policy expressly informed Plaintiff *not* to use copyrighted music in her posting. *See* RJN Ex. 4 ("if you use an audio track of a sound recording owned by a record label without that record label's permission, your video is infringing the copyrights of others, and we will take it down as soon as we become aware of it.").

mixed with background noise of children playing, that Lenz says she used "only" 20 seconds of the song, and that it is "the necessary background of the almost equally brief video." *Id*. at 11.

As Universal showed in its motion, the "reasons" that factor three must have been seen to favor Plaintiff are anything but "clear." Mot. at 13-14. Plaintiff's claim that Universal *must* have recognized that "Let's Go Crazy" was mere background music is contradicted by the facts (which are apparent from the posting) that (1) the posting is titled "Let's Go Crazy #1," (2) Plaintiff says to her child, "what do you think of the music?," (3) the posting incorporates the lyrical verse, "C'mon baby, Let's get nuts," and (4) the claimed background noise in fact is the song's frenetic guitar solo, which plays simultaneously with the images of Plaintiff's children running around the kitchen. The actual facts, as opposed to Plaintiff's *post hoc* rationalizations, do not provide any basis for inferring that Universal knew this fair use factor would favor Plaintiff.[11]

### 4. Plaintiff's Allegations Regarding The Fourth Fair Use Factor Reflect Legal Error, Not Factual Disagreement

Plaintiff tries to create a non-existent fact issue by claiming that Universal "takes issue" with her allegations on factor four "because Universal disagrees with the facts as pled." Opp. at 12. Not so. Universal pointed out that Plaintiff's allegation on factor four was based on an incorrect *legal* standard. Specifically, Plaintiff's allegations focus solely on the potential effect of *her use, standing alone*, *see* SAC ¶ 18, whereas the Supreme Court has held that factor four asks "whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market for the original." *Campbell*, 510 U.S. at 590 (quotation omitted).

In response, Plaintiff tries to define the relevant class of unrestricted uses as narrowly as she can – she describes it as a potential market for "recordings as incidental background music in home videos" – and then urges the Court to let her take discovery on the potential impact on *that* narrow market. Opp. at 12-13. Plaintiff's argument is too cute by half. Again, it must be emphasized that Plaintiff's use is no mere "home video," but rather a posting to YouTube, where

---

[11] While Plaintiff's claimed purpose – that her friends and family would enjoy *seeing* Holden's new ability to dance, SAC ¶ 16 – could not have been known to Universal, it must be noted that Plaintiff could have achieved this purported purpose *without* the sound of "Let's Go Crazy."

anyone in the world can (and where nearly a half-million people have) played Plaintiff's video on demand. To get past a Rule 12(b)(6) motion and burden Universal with discovery, Plaintiff is required to plead facts that make it plausible to believe that Universal must have known this factor would be weighed against it. Plaintiff does not meet this burden by adopting an exceedingly narrow and inaccurate description of the class of uses implicated by her posting, and then insisting that it is plausible to believe Universal may have accepted this crabbed definition.

None of Plaintiff's fair use allegations make it plausible to believe that Universal knew that Plaintiff's fair use contentions would be raised or that a court would credit them. Plaintiff has failed entirely to plead the required element that Universal actually knew it was making a misrepresentation about whether Plaintiff's use was fair.

### D. Plaintiff Fails To Allege Any Cognizable Damages Under Section 512(f)

Plaintiff does not (because she cannot) dispute that she is required to plead damages are an element of her Section 512(f). Plaintiff instead claims that she adequately pleads damages. She is wrong on every score.

*First*, Plaintiff asserts that she "spen[t] her limited time" reacting to Universal's notice and preparing her five-paragraph email response. Opp. at 23. Plaintiff does not suggest how, absent some concrete loss, her "limited time" spent reading and typing emails constitutes compensable damages. It does not.

*Second*, Plaintiff asserts that she was damaged by the supposed "depriv[ation] of YouTube's video hosting services" for her posting. Opp. at 23. This did not "damage" Plaintiff, because she pays nothing for YouTube's "hosting services."[12] Plaintiff's speculation about what her damages *might* have looked like had she paid an alternative service to host this posting is a *non sequitur*; Plaintiff does not allege that she spent a cent on such a service. Plaintiff's footnote

---

[12] Plaintiff's claim of damage in this regard undermines her claimed purpose (known, if at all, to her) that she posted the video solely so her family and friends could see it. By Plaintiff's own admission, her posting was on YouTube for four months before Universal sent its notice, and her friends and family had ample opportunity to view it. *See* Opp. at 21 n.7; SAC ¶¶ 12, 21. Plaintiff's assertion that she was damaged when access was blocked after four months indicates a purpose to have the posting played (as it has been) by a significantly larger audience of unaffiliated persons.

suggestion that her supposed lost access improperly denied her valuable "consideration" under her purported "contract" with YouTube, *id*. at 23 n.11, is a red herring. Plaintiff continued to have full access to YouTube for multiple of her other postings. *See* Klaus Supp. Decl. Ex. E in Support of First Motion to Dismiss, Dec. 3, 2007 (Docket No. 29). And her supposed "contract" (YouTube's Terms of Use) expressly provides for what happened here: a notice, a temporary takedown, a counter-notice, and a re-posting. Even assuming there was a contract, Plaintiff cannot claim as damages a loss of "consideration" when there was no breach.

*Third*, while admitting that Universal is not subject to the First Amendment, Plaintiff nevertheless bizarrely asserts that Universal damaged her "free speech" rights. Opp. at 23-24. The disconnect in Plaintiff's logic is manifest. Plaintiff cannot claim First Amendment damages when she has no First Amendment claim.

*Fourth*, Plaintiff claims that her damages include EFF's costs in *pursuing this litigation*. What counts under the statute, however, are damages that Plaintiff "incurred" because of the notice. Opp. at 24. While the prevailing party in litigation under Section 512(f) can recover its attorney's fees and costs, Plaintiff cannot bootstrap those fees and costs into her claimed underlying "injury" under Section 512(f). *Cf. Azizian v. Federated Dept. Stores, Inc.*, 499 F.3d 950, 959 (9th Cir. 2007) (damage element is distinct from award of attorney's fees Clayton Act, 15 U.S.C. § 15(a) ).

*Fifth*, and finally, Plaintiff does not even attempt to defend her request for injunctive relief, which Section 512(f) does not authorize.

### III. CONCLUSION

Plaintiff's Second Amended Complaint should be dismissed with prejudice.

DATED: July 3, 2008                    MUNGER, TOLLES & OLSON LLP


By: _____/s/ *Kelly M. Klaus*_____
        KELLY M. KLAUS

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
AND UNIVERSAL MUSIC PUBLISHING GROUP