**E-Filed 8/20/08**

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>　　　　　　Defendants. | Case Number C 07-3783 JF<br><br>ORDER DENYING MOTION TO DISMISS<br><br>[re: docket no. 38] |

　　　Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal") move to dismiss the instant case for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court has read the moving papers and has considered the oral arguments of counsel. For the reasons set forth below, the motion will be DENIED.

**I. BACKGROUND**

　　　On February 7, 2007, Plaintiff Stephanie Lenz ("Lenz") videotaped her young children dancing in her family's kitchen. The song "Let's Go Crazy" by the artist professionally known as Prince ("Prince") played in the background. The video is twenty-nine seconds in length, and

1  "Let's Go Crazy" can be heard for approximately twenty seconds, albeit with difficulty given the
2  poor sound quality of the video.  The audible portion of the song includes the lyrics, "C'mon
3  baby let's get nuts" and the song's distinctive guitar solo.  Lenz is heard asking her son, "what do
4  you think of the music?"  On February 8, 2007, Lenz titled the video "Let's Go Crazy #1" and
5  uploaded it to YouTube.com ("YouTube"), a popular Internet video hosting site, for the alleged
6  purpose of sharing her son's dancing with friends and family.[1]  YouTube provides "video
7  sharing" or "user generated content."  The video was available to the public at
8  http://www.youtube.com/watch?v=N1KfJHFW1hQ.
9      Universal owns the copyright to "Let's Go Crazy."  On June 4, 2007, Universal sent
10 YouTube a takedown notice pursuant to Title II of the Digital Millennium Copyright Act
11 ("DMCA"), 17 U.S.C. § 512 (2000).  The notice was sent to YouTube's designated address for
12 receiving DMCA notices, "copyright@youtube.com," and demanded that YouTube remove
13 Lenz's video from the site because of a copyright violation.  YouTube removed the video the
14 following day and sent Lenz an email notifying her that it had done so in response to Universal's
15 accusation of copyright infringement.  YouTube's email also advised Lenz of the DMCA's
16 counter-notification procedures and warned her that any repeated incidents of copyright
17 infringement could lead to the deletion of her account and all of her videos.  After conducting
18 research and consulting counsel, Lenz sent YouTube a DMCA counter-notification pursuant to
19 17 U.S.C. § 512(g) on June 27, 2007.  Lenz asserted that her video constituted fair use of "Let's
20 Go Crazy" and thus did not infringe Universal's copyrights.  Lenz demanded that the video be re-
21 posted.  YouTube re-posted the video on its website about six weeks later.  As of the date of this
22 order, the "Let's Go Crazy #1" video has been viewed on YouTube more than 593,000 times.
23      In September 2007, Prince spoke publicly about his efforts "to reclaim his art on the
24 internet" and threatened to sue several internet service providers for alleged infringement of his

---

28  [1] Lenz has posted other home videos on YouTube, allegedly for the same purpose.  These additional videos are not at issue in this action.

2

Case No. C 07-3783 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)

music copyrights.² Lenz alleges that Universal issued the removal notice only to appease Prince because Prince "is notorious for his efforts to control all uses of his material on and off the Internet." Lenz's Opposition Brief at 3. In an October 2007 statement to ABC News, Universal made the following comment:

> Prince believes it is wrong for YouTube, or any other user-generated site, to appropriate his music without his consent. That position has nothing to do with any particular video that uses his songs. It's simply a matter of principle. And legally, he has the right to have his music removed. We support him and this important principle. That's why, over the last few months, we have asked YouTube to remove thousands of different videos that use Prince music without his permission. ³

Second Amended Complaint ("SAC"), ¶ 30; *see also* J. Aliva et al., *The Home Video Prince Doesn't Want You to See*, ABC NEWS, Oct. 26, 2007, http://abcnews.go.com/print?id+3777651 (last viewed July 23, 2008). Lenz asserts in her complaint that "Prince himself demanded that Universal seek the removal of the ["Let's Go Crazy #1"] video . . . [and that] Universal sent the DMCA notice at Prince's behest, based not on the particular characteristics of [the video] or any good-faith belief that it actually infringed a copyright but on its belief that, as 'a matter of principle' Prince 'has the right to have his music removed.'" SAC ¶ 31.

On July 24, 2007, Lenz filed suit against Universal alleging misrepresentation pursuant to 17 U.S.C. § 512(f) and tortious interference with her contract with YouTube. She also sought a declaratory judgment of non-infringement. Universal filed a motion to dismiss, which the Court granted on April 8, 2008. Lenz was given leave to amend her complaint to replead her first and second claims for relief. On April 18, 2008, Lenz filed the operative SAC, alleging only a claim for misrepresentation pursuant to 17 U.S.C. § 512(f). On May 23, 2008, Universal filed the instant motion.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

---

² *See, e.g.,* M. Collett-White, *Prince to Sue YouTube, eBay Over Music Use*, REUTERS, Sept. 13, 2007, http://www.reuters.com/article/internetNew/idUSL1364328420070914?feedtype =RSS&feedName_InternetNews&rpc=22&sp=true (last visited July 23, 2008).

³ Lenz has dubbed this alleged pattern of activity the "Prince Policy."

cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

### III. DISCUSSION

The DMCA requires that copyright owners provide the following information in a takedown notice:

> (i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.
>
> (iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.
>
> (iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.
>
> (v) *A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.*
>
> (vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3)(A) (emphasis added). Here, the parties do not dispute that Lenz used copyrighted material in her video or that Universal is the true owner of Prince's copyrighted music. Thus the question in this case is whether 17 U.S.C. § 512(c)(3)(A)(v) requires a copyright owner to consider the fair use doctrine in formulating a good faith belief that "use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law."

4

1    Universal contends that copyright owners cannot be required to evaluate the question of
2 fair use prior to sending a takedown notice because fair use is merely an *excused* infringement of
3 a copyright rather than a use *authorized* by the copyright owner or by law.  Universal emphasizes
4 that Section 512(c)(3)(A) does not even mention fair use, let alone require a good faith belief that
5 a given use of copyrighted material is not fair use.  Universal also contends that even if a
6 copyright owner were required by the DMCA to evaluate fair use with respect to allegedly
7 infringing material, any such duty would arise only *after* a copyright owner receives a counter-
8 notice and considers filing suit.  *See* 17 U.S.C. § 512(g)(2)(C).
9    Lenz argues that fair use *is* an authorized use of copyrighted material, noting that the fair
10 use doctrine itself is an express component of copyright law.  Indeed, Section 107 of the
11 Copyright Act of 1976 provides that "[n]otwithstanding the provisions of sections 106 and 106A,
12 the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107.
13 Lenz asserts in essence that copyright owners cannot represent in good faith that material
14 infringes a copyright without considering all authorized uses of the material, including fair use.
15    Whether fair use qualifies as a use "authorized by law" in connection with a takedown
16 notice pursuant to the DMCA appears to be an issue of first impression.  Though it has been
17 discussed in several other actions, no published case actually has adjudicated the merits of the
18 issue. *See, e.g.*, *Doe v. Geller*, 533 F. Supp. 2d 996, 1001 (N.D. Cal. 2008) (granting motion to
19 dismiss for lack of personal jurisdiction).
20 **A.    Fair Use and 17 U.S.C. § 512(c)(3)(A)(v).**
21    When interpreting a statute, a court must begin "with the language of the statute and ask
22 whether Congress has spoken on the subject before [it]." *Norfolk and Western Ry. Co. v.*
23 *American Train Dispatchers Ass'n*, 499 U.S. 117, 128 (1991).  If "Congress has made its intent
24 clear, [the court] must give effect to that intent." *Miller v. French*, 530 U.S. 327, 336 (2000)
25 (internal quotation marks and citation omitted).  Here, the Court concludes that the plain meaning
26 of "authorized by law" is unambiguous.  An activity or behavior "authorized by law" is one
27 permitted by law or not contrary to law.  Though Congress did not expressly mention the fair use
28 doctrine in the DMCA, the Copyright Act provides explicitly that "the fair use of a copyrighted

5

work . . . is not an infringement of copyright." 17 U.S.C. § 107. Even if Universal is correct that fair use only *excuses* infringement, the fact remains that fair use is a lawful use of a copyright.[4] Accordingly, in order for a copyright owner to proceed under the DMCA with "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," the owner must evaluate whether the material makes fair use of the copyright. 17 U.S.C. § 512(c)(3)(A)(v). An allegation that a copyright owner acted in bad faith by issuing a takedown notice without proper consideration of the fair use doctrine thus is sufficient to state a misrepresentation claim pursuant to Section 512(f) of the DMCA. Such an interpretation of the DMCA furthers both the purposes of the DMCA itself and copyright law in general. In enacting the DMCA, Congress noted that the "provisions in the bill balance the need for rapid response to potential infringement with the end-users [sic] legitimate interests in not having material removed without recourse." Sen. Rep. No. 105-190 at 21 (1998).

Universal suggests that copyright owners may lose the ability to respond rapidly to potential infringements if they are required to evaluate fair use prior to issuing takedown notices. Universal also points out that the question of whether a particular use of copyrighted material constitutes fair use is a fact-intensive inquiry, and that it is difficult for copyright owners to predict whether a court eventually may rule in their favor. However, while these concerns are understandable, their actual impact likely is overstated. Although there may be cases in which such considerations will arise, there are likely to be few in which a copyright owner's determination that a particular use is not fair use will meet the requisite standard of subjective bad faith required to prevail in an action for misrepresentation under 17 U.S.C. § 512(f). *See Rossi v. Motion Picture Ass'n of America, Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (holding that "the 'good faith belief' requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than

---

[4] The Supreme Court also has held consistently that fair use is not infringement of a copyright. *See e.g., Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("[a]nyone . . . who makes a fair use of the work is not an infringer of the copyright with respect to such use.").

objective, standard").[5]

The Copyright Act unequivocally establishes the four factors used to determine fair use:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107. Undoubtedly, some evaluations of fair use will be more complicated than others. But in the majority of cases, a consideration of fair use prior to issuing a takedown notice will not be so complicated as to jeopardize a copyright owner's ability to respond rapidly to potential infringements. The DMCA already requires copyright owners to make an initial review of the potentially infringing material prior to sending a takedown notice; indeed, it would be impossible to meet any of the requirements of Section 512(c) without doing so. A consideration of the applicability of the fair use doctrine simply is part of that initial review. As the Ninth Circuit observed in *Rossi*, a full *investigation* to verify the accuracy of a claim of infringement is not required. *Rossi*, 391 F.3d at 1003-04.

The purpose of Section 512(f) is to prevent the abuse of takedown notices. If copyright owners are immune from liability by virtue of ownership alone, then to a large extent Section 512(f) is superfluous. As Lenz points out, the unnecessary removal of non-infringing material

---

[5] One might imagine a case in which an alleged infringer uses copyrighted material in a manner that unequivocally qualifies as fair use, and in addition there is evidence that the copyright owner deliberately has invoked the DMCA not to protect its copyright but to prevent such use. *See, e.g., Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal. 2004) (suggesting that the copyright owner sought to use the DMCA "as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property").

causes significant injury to the public where time-sensitive or controversial subjects are involved and the counter-notification remedy does not sufficiently address these harms. A good faith consideration of whether a particular use is fair use is consistent with the purpose of the statute. Requiring owners to consider fair use will help "ensure[] that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will expand" without compromising "the movies, music, software and literary works that are the fruit of American creative genius." Sen. Rep. No. 105-190 at 2 (1998).

### B. The Sufficiency of Lenz's Second Amended Complaint

#### 1. The "Prince Policy"

The operative SAC contains sufficient allegations of bad faith and deliberate ignorance of fair use to survive the instant motion to dismiss. Lenz alleges that Universal is a sophisticated corporation familiar with copyright actions, and that rather than acting in good faith, Universal acted solely to satisfy Prince. SAC ¶ 31. Lenz alleges that Prince has been outspoken on matters of copyright infringement on the Internet and has threatened multiple suits against internet service providers to protect his music. *Id*. at ¶ 28. Lenz also alleges that Universal acted to promote Prince's personal agenda and that its actions "ha[ve] nothing to do with any particular [YouTube] video that uses his songs." *Id*. at ¶ 30. Although the Court has considerable doubt that Lenz will be able to prove that Universal acted with the subjective bad faith required by *Rossi*, and following discovery her claims well may be appropriate for summary judgment, Lenz's allegations are sufficient at the pleading stage.

#### 2. Damages

Universal also contends that the SAC fails to allege a compensable loss under the DMCA. Universal Brief at 2. The SAC provides that:

> [Lenz's] injury includes, but is not limited to, the financial and personal expenses associated with responding to the claim of infringement and harm to her free speech rights under the First Amendment. Because Universal's notice was intimidating, Ms. Lenz is now fearful that someone might construe some portion of a new home video to infringe a copyright. As a result, she has not posted a single video on YouTube since she received the takedown notice.

SAC ¶ 38. Universal nonetheless claims that Lenz has not alleged a compensable loss because:

1   (1) Universal is a private entity and thus not subject to First Amendment actions; (2) Lenz did not
2   suffer any actual injury as a result of the notice; (3) Universal is not liable for damages for
3   intimidation; and (4) Section 512 does not provide for injunctive relief.
4          At oral argument, counsel for Lenz indicated that while the damages incurred in preparing
5   Lenz's counter-notice cannot be elaborated upon for reasons of privilege, Lenz did incur actual
6   damages in reviewing counter-notice procedures, seeking the assistance of an attorney, and
7   responding to the takedown notice. *See* Transcript of Law & Motion Hearing, July 18, 2008, p.
8   5:15-25. Though damages may be nominal and their exact nature is yet to be determined, the
9   Court concludes that Lenz adequately has alleged cognizable injury under the DMCA.

## IV. ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is DENIED. Universal shall file its answer within twenty (20) days of the date of this order.

DATED: August 20, 2008

_____
JEREMY FOGEL
United States District Judge

1 | This order has been served upon the following persons:

Corynne McSherry
Email: corynne@eff.org

Jason M. Schultz
Email: jason@eff.org

Marcia Clare Hofmann
Email: marcia@eff.org

Michael Soonuk Kwun
Email: michael@eff.org

Kelly Max Klaus
Email: kelly.klaus@mto.com

Amy C. Tovar
Email: amy.tovar@mto.com

Case No. C 07-3783 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)