KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
AMY C. TOVAR (SBN 230370)
Amy.Tovar@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
AND UNIVERSAL MUSIC PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNIVERSAL MUSIC CORP.,<br>UNIVERSAL MUSIC PUBLISHING,<br>INC., and UNIVERSAL MUSIC<br>PUBLISHING GROUP,<br><br>                    Defendants. | CASE NO.  CV 07-03783-JF<br><br>**DEFENDANTS' MOTION [1] TO CERTIFY AUGUST 20, 2008 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND [2] TO STAY PENDING RESOLUTION OF § 1292(b) PROCEEDINGS**<br><br>**[Declaration of Kelly M. Klaus and [Proposed] Order filed concurrently; Stipulation and [Proposed] Order on Shortened-Time Briefing Schedule also filed concurrently]**<br><br>Date:     N/A [For submission on papers, per Stipulation and [Proposed] Order]<br>Judge:    Honorable Jeremy Fogel<br>Courtroom: 3 |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group ("Defendants" or "Universal") will and hereby do move the Court for an Order [1] certifying the Court's August 20, 2008 Order ("Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and [2] staying proceedings in this Court pending the Ninth Circuit's resolution of the § 1292(b) appeal. Pursuant to Stipulation and [Proposed] Order filed concurrently with this Motion, the parties have agreed that this Motion may be briefed on a shortened-time schedule and deemed submitted as of the filing of Universal's reply, on September 16, 2008 (unless the Court would prefer to hear argument on the Motion).

This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities attached hereto; the contemporaneously filed Declaration of Kelly M. Klaus (and exhibits thereto); all pleadings and documents on file in this action; and such other materials or argument as the Court may properly consider prior to deciding this Motion.

DATED: August 29, 2008    MUNGER, TOLLES & OLSON LLP

By:    /s/ *Kelly M. Klaus*
       KELLY M. KLAUS

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
AND UNIVERSAL MUSIC PUBLISHING GROUP

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group ("Defendants" or "Universal") move for an Order [1] certifying the Court's August 20, 2008 Order ("Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and [2] staying proceedings in this Court pending the Ninth Circuit's resolution of the § 1292(b) appeal. The Order recognizes that the following legal question controls Plaintiff's ability to proceed with her suit under 17 U.S.C. § 512(f):

> [W]hether 17 U.S.C. § 512(c)(3)(A)(v) requires a copyright owner to consider the fair use doctrine in formulating a good faith belief that "use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law."

Order at 4:25-28.

This question is clearly appropriate for immediate appeal under § 1292(b): it is purely a legal question involving the construction of a federal statute, and thus does not depend upon the development of any facts in this case; the question, as the Court held, is one of "first impression," *id*. at 5:16, and there are substantial grounds for disagreeing with the Court's resolution of it; and if the Ninth Circuit answers the question differently, then Plaintiff's case is over, and the courts in this Circuit (and this District, in particular) may not have to deal with a wave of new § 512(f) cases that Plaintiff's counsel have indicated no hesitation to file.

A stay pending the § 1292(b) appeal will conserve both the parties' and the Court's resources. A stay will avoid costly discovery and motion practice, all of which may be mooted by a contrary ruling from the Ninth Circuit. And a stay will not prejudice Plaintiff one bit. Plaintiff has made clear that she is suing for principle – the same principle, in fact, that an interlocutory appeal will put before the Ninth Circuit – not for money damages (Plaintiff has none) or to restore her video posting (which is still online).

**ARGUMENT**

**I.   THE COURT SHOULD CERTIFY ITS ORDER FOR APPEAL UNDER § 1292(b)**

An Order is appropriate for interlocutory appeal under 28 U.S.C. § 1292(b) if:

- The Order "involves a controlling question of law";

- There is "substantial ground for difference of opinion" as to that question; and

- "[A]n immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"

*See* 28 U.S.C. § 1292(b).[1]  The Court's Order easily satisfies all three criteria.

**A.   Whether The DMCA Requires A Copyright Owner To Evaluate Fair Use Before Sending A Takedown Notice Is A Purely Legal Question Of Statutory Construction**

The question that the Order answers, and that Universal seeks to appeal immediately, is purely legal:  whether the term "authorized by law" in 17 U.S.C. § 512(c)(3)(A)(v) requires a party sending a DMCA takedown notice to evaluate whether the material complained of makes a "fair use" of the copyright under 17 U.S.C. § 107.  That question requires the interpretation of a federal statute, a task that by definition does not depend on the development of any facts in this case.

That legal question also is controlling.  A question is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).  If the Ninth Circuit decides that "authorized by law" does *not* encompass fair use, then Plaintiff's case is over.  It is undisputed that, unless excused by the fair use defense, Plaintiff's posting infringes the copyright to "Let's

---

[1] Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Go Crazy." If § 512(c)(3)(A)(v) does not require an *ex ante* fair use evaluation, then Universal's statement that it had "a good faith belief that the above-described activity is not authorized by the copyright owner, its agent, or the law" was true as a matter of law, and Plaintiff has no § 512(f) claim.

### B. There Exist Substantial Grounds For Difference Of Opinion With The Court's Resolution Of The Question

There is "a substantial ground for difference of opinion" when a controlling legal question "is difficult and of first impression." *Marsall v. City of Portland*, 2004 U.S. Dist. LEXIS 15976 at *20 (D. Or. Aug. 9, 2004) (quotation omitted). *See also Kersh v. General Council of the Assemblies of God*, 535 F. Supp. 494, 498 (N.D. Cal. 1982) (finding substantial grounds on "difficult questions of first impression in this Circuit"), overruled on other grounds, *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990); *Klinghoffer v. Achille Lauro Lines*, 921 F.2d 21, 25 (2d Cir. 1990) ("substantial grounds for difference of opinion" when the "issues are difficult and of first impression").

The Court's resolution of the controlling question of law is both difficult and a matter of first impression. The Order expressly finds that the question "[w]hether fair use qualifies as a use 'authorized by law'" is one of "first impression." Order at 5:15-16. That question also is a "difficult" one for purposes of § 1292(b). The Court concludes that "[a]n activity or behavior 'authorized by law' is one permitted by law or not contrary to law." *Id*. at 5:26-27. Based on this construction, the Court holds that, even if "fair use only *excuses* infringement, the fact remains that fair use is a lawful use[,]" and therefore is use "authorized by law" within the meaning of § 512(c)(3)(A)(v). *Id*. at 6:1-2. With respect, Universal submits that the text and structure of § 512, the Ninth Circuit's controlling case under § 512(f), and the nature of the fair use defense all provide substantial grounds for an opposite answer: namely, that because fair use is not a right that the copyright law affirmatively grants, but rather a defense that the infringer must raise and prove, fair use is not use "authorized by law" within the meaning of § 512(c)(3)(A)(v).

First, the statutory text provides substantial support for Universal's position. "Authorized" means "endowed with authority" or "sanctioned by authority: APPROVED,"

Webster's Third New International Dictionary 147 (1968), meanings that are consistent with the law affirmatively granting a right, rather than providing a defense to a violation of someone else's right. Reading "authorized by law" in § 512(c)(3)(A)(v) to encompass rights rather than defenses allows the statute to have full meaning, because copyright law *does* affirmatively grant rights of use, such as the compulsory license to make and distribute copies of sound recordings that embody musical compositions. *See* 17 U.S.C. § 115. Fair use, however, is *not* one of these rights. Fair use instead is an affirmative defense, as repeated holdings from the Supreme Court and legislative history to § 107 make clear. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985) (Congress "structured [Section 107] as an affirmative defense"); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994) (same); H.R. Rep. 102-836 at 3 n.3 (1992), 102d Cong., 2d Sess. (report on 1992 amendment to § 107) ("the burden of proving fair use is always on the party asserting the defense").

Second, the structure of § 512 also supports Universal's argument. Congress knew how to refer to defenses to infringement in § 512. *See* 17 U.S.C. § 512(*l*) (providing that service provider's "defense[s]" to infringement "under this title," which includes fair use, unaffected by defenses under § 512(a)-(d)). The fact that Congress did not incorporate defenses of any kind, whether fair use or otherwise, into the required certification under § 512(c)(3)(A)(v), is consistent with reading "authorized by law" not to include "subject to a defense under law." In addition, Congress built into § 512 a specific counter-notification procedure, § 512(g)(2)(c), which allows the party affected by a notice to raise affirmative defenses (including fair use), and at that point gives the party sending the notice two weeks to evaluate any defense so asserted in considering whether to file suit (or else see the service re-post the material). Plaintiff's suggestion, credited by the Court, that the counter-notification procedure "does not sufficiently address" the potential harm where "time-sensitive or controversial subjects are involved[,]" Order at 8:1-2, is not well founded. This case, as well as others filed by Plaintiff's counsel under § 512(f) (such as *Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008), involving a takedown notice for a video concerning a spoon-bending "paranormalist"), provide no reason to believe that takedown notices are likely to be used as devices for abuse within two weeks of an election. In any event, the relevant

5817523.1 - 4 - DEFTS' MOT. TO CERTIFY AND STAY
CV 07-03783-JF

question is whether the structure of the counter-notification procedure is more consistent with Congress's intent to require an evaluation of fair use, if at all, only when the infringer raises the defense, rather than an intent to make the copyright holder engage (under threat of a § 512(f) suit) in a speculative *ex ante* inquiry into the merits of a fair use defense. Universal submits that the counter-notification procedure, along with the rest of the text and structure of § 512, support the former reading of the statute.

Third, Universal's reading of the statute finds substantial support in the Ninth Circuit's leading case on § 512(f), *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004), whose standard for liability is inconsistent with requiring an *ex ante* inquiry into a defense as malleable and indeterminate as fair use. *Rossi* holds that there must be "some actual knowledge of misrepresentation on the part of the copyright owner" for there to be liability. *Id*. at 1005. The Court's Order, however, holds that a copyright owner must make a "*proper* consideration of the fair use doctrine." Order at 6:7 (emphasis added). An inquiry into the propriety of a party's consideration of fair use inevitably will lead to calls (as Plaintiff makes in this case) for a *post hoc* assessment of the *reasonableness* of the copyright owner's "evaluat[ion] whether the material makes fair use of the copyright[,]" *id*. at 6:5-6, an assessment that is contrary to *Rossi*. While the Court says that "[o]ne might imagine a case in which" the use "unequivocally qualifies as fair use," *id*. at 7 n.5, there is no such thing as "unequivocal" fair use.[2] Balancing the four fair use factors is a notoriously indeterminate exercise, a point that Professor Nimmer has made not only in discussing the fair use cases decided by the Supreme Court, *see* 4 *Nimmer on Copyright* § 13.05 at 13-156 (2008) (all cases were "overturned at each level of review, two of them by split opinions at the Supreme Court level," which exemplifies "[t]he malleability of fair use"), but in large numbers of cases decided by the Courts of Appeals and District Courts. *See* David Nimmer,

---

[2] The Court cites its pre-*Rossi* opinion in *Online Policy Group v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004), as a possible example of such "unequivocal" fair use. Order at 7 n.5. But, as the Court recognized in its Order on the first motion to dismiss in this case, the defendant in Diebold "failed to identify any specific emails containing copyrighted content[.]" Apr. 8, 2008 Order Granting Mot. to Dismiss at 5:8. A representation that identifies a copyrighted work claimed to be infringed – unlike a representation about whether the infringing use is fair use – *is* an express requirement of a DMCA takedown notice. *See* 17 U.S.C. § 512(c)(3)(A)(ii). *Diebold* is inapposite.

*"Fairest of Them All" and Other Fairy Tales of Fair Use*, 66 Law & Contemporary Problems 263, 269-80 (2003) (analyzing courts' analysis of § 107 factors in 60 cases and concluding that "had Congress legislated a dartboard rather than the particular four fair use factors embodied in the Copyright Act, it appears that the upshot would be the same").

Given the indeterminacy of the fair use inquiry, it is impossible to see how a court can determine whether a copyright holder has made a "proper consideration of the fair use doctrine" without adjudicating the *reasonableness* of how that party balanced the fair use factors. A § 512(f) defendant never is going to say that it recognized an infringing use to be a fair use, and a § 512(f) plaintiff always is going to claim that the defendant *should have* recognized the use to be fair. The Court need look no further than the briefing on the motions to dismiss to see why this inevitably will be the case. Plaintiff's allegations about why her posting is fair use all depend upon Universal's claimed failure to recognize and agree with the four fair use factors as Plaintiff and her counsel would interpret those factors. *Compare* Mot. to Dismiss (Docket No. 38) at 11-15 *with* Opp. to Mot. to Dismiss (Docket No. 39) at 10-13. The standard the Court adopts will inevitably lead to calls for an inquiry into the reasonableness of Universal's (and other copyright owners') fair use evaluation, but *Rossi* makes clear that reasonableness is not the test. Under § 1292(b), the Ninth Circuit can and should have the opportunity now to determine whether this Court's standard is consistent with *Rossi*.[3]

Universal recognizes that the Court found that the text and structure of § 512 and the Ninth Circuit's decision in *Rossi* lead to a different reading of the statute than the one Universal advocates. The question under § 1292(b), however, is whether Universal's argument provides "substantial grounds" for a different result. Universal respectfully submits the answer to that question is yes, and that this question of first impression merits interlocutory review.

---

[3] The objective-subjective dichotomy is not the only area where this Court's Order is in apparent tension with *Rossi*. The Order also holds that "it would be impossible to meet any of the requirements of Section 512(c) without" engaging in "an initial review of the potentially infringing material prior to sending a takedown notice." Order at 7:15-17. *Rossi*, in fact, held there was no violation of § 512(f) even though the copyright holders' representative did not attempt to download any movies, click on any links, or take any other steps to verify its belief that the plaintiff's website contained infringing material. *Rossi*, 391 F.3d at 1002, n.2.

5817523.1 - 6 - DEFTS' MOT. TO CERTIFY AND STAY
CV 07-03783-JF

### C.  An Interlocutory Appeal May Materially Speed The Termination Of This Litigation

The Ninth Circuit's resolution of the question whether "authorized by law" requires *ex ante* evaluation of fair use obviously has the potential not only to "materially advance," but to require the "termination of the litigation[.]" 28 U.S.C. § 1292(b). As discussed above, if the Ninth Circuit holds that "authorized by law" does not require an *ex ante* fair use evaluation, then Plaintiff's case is over, because she cannot point to any false statement in Universal's notice.

An immediate appeal not only will resolve a dispositive question in this case but also determine the limits (if any) on the filing of future § 512(f) cases in the federal courts, and in particular the Northern District of California.[4] Although the Court states that it "has considerable doubt that Lenz will be able to prove that Universal acted with the subjective bad faith required by *Rossi*," Order at 8:17-19, EFF has not indicated any reticence about its willingness to file more suits under § 512(f). EFF's press release announcing the Court's Order concludes with the ominous warning to copyright owners, "ignore fair use at your peril!" Klaus Decl. Ex. A (EFF Press Release, Aug. 20, 2008). More recently, EFF posted an open letter, on behalf of itself and the ACLU of Northern California, telling "ISPs and Content Owners" to "Do Your Part to Protect Political Speech," and "urg[ing] users to contact us if they feel that their political speech has been improperly censored." *Id*. Ex. B (EFF Press Release, Aug. 25, 2008). Giving the Ninth Circuit the opportunity to address now, not later, whether copyright owners are obligated to evaluate fair use before sending takedown notices will allow the Circuit to settle the law on this important issue.

## II.   THE COURT SHOULD STAY THE CASE PENDING THE § 1292(b) APPEAL

If the Court certifies the Order for a § 1292(b) appeal, the case should be stayed in this Court until the Ninth Circuit resolves that appeal. A stay will not change the status quo in this

---

[4] The Northern District has been the Electronic Frontier Foundation's ("EFF") forum of choice for § 512(f) litigation. EFF filed not only this case and *Diebold* in this District, but also *Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008), which the Court dismissed for lack of personal jurisdiction, because the defendants were in located in England.

litigation. The Court has not issued a case management order, and the parties are only just now at the point of preparing to serve discovery.

If the Ninth Circuit holds that copyright owners are not required to evaluate fair use before sending a takedown notice, then this case will be over and the stay will have saved the parties, and the Court, from the time and expense of needless discovery and motion practice. The costs associated with marching ahead with this litigation will be significant. As discussed in the Joint Case Management Statement (Docket No. 43) (July 8, 2008), the parties disagree about (and can be expected to seek discovery and possibly file motions directed to) numerous issues, including the threshold question whether Universal's notice was sent pursuant to the DMCA (and thus whether § 512(f) even applies to it), as well as questions related to Plaintiff's claim that her use of "Let's Go Crazy" was a "self-evident" fair use. *Id*. at 3. Discovery into these and other issues will require document production and depositions, which will cost real money and which could be completely unnecessary. The Joint Case Management Statement also identifies sharp disagreements over the scope of discovery. For example, Plaintiff contends that her claim puts in issue all of Universal's policies and practices regarding takedown notices going back to January of 2005. *Id*. at 3-4. While Universal strenuously disagrees that Plaintiff's claim implicates such a broad scope of discovery, that disagreement only portends discovery motions on this issue and others, all of which will tax not only the parties' resources but the Court's time. A stay will defer, and potentially moot, all of this burden and expense.

In contrast, there is no prejudice to Plaintiff from a stay. Plaintiff claims to be suing over principle, not lost money. An immediate appeal will put the principle she claims to be fighting for before the Ninth Circuit and give that Court the opportunity to issue a definitive ruling on the law of the Circuit. Plaintiff is not out-of-pocket any money in connection with this suit, so a stay will not cost her anything. Although Plaintiff's counsel suggested in argument (and without elaboration) that Plaintiff may have incurred some out-of-pocket expense in responding to the takedown notice, Order at 9:4-6, this suggestion is not supported by a declaration that Plaintiff filed earlier in this case. Specifically, in opposition to Universal's anti-SLAPP motion, Plaintiff submitted a declaration attesting to the elements of her claim for tortious interference with

1  contract, including the element of that claim requiring actual damages caused by the alleged
2  interference.  In her declaration, Plaintiff identified *no* alleged monetary loss whatsoever resulting
3  from the notice that Universal sent to YouTube.  *See* Lenz Decl. (Docket No. 23) (Nov. 13, 2007)
4  (attached as Ex. C to Klaus Decl.).  A stay pending the results of an immediate interlocutory
5  appeal also will not interfere with Plaintiff's posting: it remains on YouTube and, as the Court
6  noted, has been viewed there more than a half-million times.  Order at 2:22.

## III.  CONCLUSION

For the foregoing reasons, Universal respectfully submits that the Court's Order presents a clear case for immediate interlocutory review, and that all considerations of case management and equity weigh in favor of a stay.  Universal has submitted a proposed order with this motion.

DATED: August 29, 2008            MUNGER, TOLLES & OLSON LLP


By:      /s/ *Kelly M. Klaus*
            KELLY M. KLAUS

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
AND UNIVERSAL MUSIC PUBLISHING
GROUP