1  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
2  AMY C. TOVAR (SBN 230370)
   Amy.Tovar@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
5  Telephone:    (213) 683-9100
   Facsimile:    (213) 687-3702
6
   Attorneys for Defendants
7  UNIVERSAL MUSIC CORP.,
   UNIVERSAL MUSIC PUBLISHING, INC.,
8  and UNIVERSAL MUSIC PUBLISHING GROUP

9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA
11

12 | STEPHANIE LENZ,                                  | CASE NO. CV 07-03783-JF
13 |                   Plaintiff,                     | DECLARATION OF KELLY M. KLAUS IN SUPPORT OF DEFENDANTS' MOTION [1] TO CERTIFY AUGUST 20, 2008 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND [2] TO STAY PENDING RESOLUTION OF § 1292(b) PROCEEDINGS
14 |     vs.                                          |
15 | UNIVERSAL MUSIC CORP., UNIVERSAL                  |
16 | MUSIC PUBLISHING, INC., and UNIVERSAL             |
   | MUSIC PUBLISHING GROUP,                          |
17 |                   Defendants.                    |
18

   [Notice of Motion, Memorandum of Points and Authorities and [Proposed] Order filed concurrently; Stipulation and [Proposed] Order on Shortened-Time Briefing Schedule also filed concurrently]

   Date:      N/A [For submission on papers, per Stipulation and [Proposed] Order]
   Judge:     Honorable Jeremy Fogel
   Courtroom: 3

I, KELLY M. KLAUS, declare as follows:

1. I am a partner in the law firm of Munger, Tolles & Olson LLP, counsel to Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group ("Defendants" or "Universal") in the above-captioned case. I am submitting this Declaration in support of Universal's Motion to [1] certify the Court's August 20, 2008 Order ("Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and [2] stay proceedings in this Court pending the Ninth Circuit's resolution of the § 1292(b) appeal. The facts set forth within this Declaration are based upon my personal knowledge. If called as a witness in this action, I could and would testify competently to the contents of this Declaration.

2. Attached hereto as Exhibit A is a true and correct copy of a printout from the website of the Electronic Frontier Foundation ("EFF"), entitled "Judge Rules That Content Owners Must Consider Fair Use Before Sending Takedowns," www.eff.org/deeplinks/2008/08/judge-rules-content-owners-must-consider-fair-use-.

3. Attached hereto as Exhibit B is a true and correct copy of a printout from EFF's website, entitled "EFF and ACLU of Northern California to ISPs and Content Owners: Do Your Part to Protect Political Speech," www.eff.org/deeplinks/2008/08/election-approaches-do-your-part-protect-political.

4. Attached hereto as Exhibit C is a true and correct copy of the text of Plaintiff's Declaration in Support of Opposition to Motion to Dismiss and Special Motion to Strike (without exhibits thereto), filed on November 13, 2007 (Docket No. 23).

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed this 29th day of August 2008 at Los Angeles, California.

/s/ Kelly M. Klaus
KELLY M. KLAUS

# EXHIBIT A



**ELECTRONIC FRONTIER FOUNDATION**

Home » Deeplinks Blog » August, 2008
August 20th, 2008

# Judge Rules That Content Owners Must Consider Fair Use Before Sending Takedowns

News Update by Corynne McSherry

A judge's ruling today is a major victory for free speech and fair use on the Internet, and will help protect everyone who creates content for the Web. In Lenz v. Universal (aka the "dancing baby" case), Judge Jeremy Fogel held that content owners must consider fair use before sending takedown notices under the Digital Millennium Copyright Act ("DMCA").

Universal Music Corporation ("Universal") had sent a takedown notice targeting a 29-second home movie of a toddler dancing in a kitchen to a Prince song, "Let's Go Crazy," which is heard playing in the background. Because her use of the song was obviously a fair use and, therefore, non-infringing, Lenz sued Universal for misrepresentation under the DMCA. Universal moved to dismiss the case, claiming, among other things, that it had no obligation to consider whether Lenz's use was fair before sending its notice. The judge firmly rejected Universal's theory:

> [A] fair use is a lawful use of a copyright. Accordingly, in order for a copyright owner to proceed under the DMCA with "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," the owner must evaluate whether the material makes fair use of the copyright.

Universal had insisted that copyright owners could not efficiently police copyright infringement if they had to consider whether a give use was fair. Not so, said the judge:

> [I]n the majority of cases, a consideration of fair use prior to issuing a takedown notice will not be so complicated as to jeopardize a copyright owner's ability to respond rapidly to potential infringements. The DMCA already requires copyright owners to make an initial review of the potentially infringing material prior to sending a takedown notice; indeed, it would be impossible to meet any of the requirements of Section 512(c) without doing so. A consideration of the applicability of the fair use doctrine simply is part of that initial review.

The court also noted that consideration of fair use is necessary to make sure that content owners do not abuse the takedown process:

> A good faith consideration of whether a particular use is fair use is consistent with

> the purpose of the statute. Requiring owners to consider fair use will help "ensure[]
> that the efficiency of the Internet will continue to improve and that the variety and
> quality of services on the Internet will expand" without compromising "the movies,
> music, software and literary works that are the fruit of American creative genius."

Given the "shoot first and ask questions later" approach some content owners take to the DMCA notice process, improper takedowns of non-infringing fair uses are all too common. We're very pleased that Judge Fogel has put content owners on notice: ignore fair use at your peril!

*Related Issues:* No Downtime for Free Speech Campaign

*Related Cases:* Lenz v. Universal

[Permalink] [Email this article]

# EXHIBIT B



Home » Deeplinks Blog » August, 2008

August 25th, 2008

 

# EFF and ACLU of Northern California to ISPs and Content Owners: Do Your Part to Protect Political Speech

*Commentary by Corynne McSherry*

*Coauthored by ACLU of Northern California Technology and Civil Liberties Policy Director Nicole A. Ozer*

On blogs, personal and political websites, and through user generated content sites, ordinary citizens in extraordinary numbers are recreating a public sphere and reinvigorating the democratic debate at the core of our political system. 46% of Americans have already used the Internet in connection with the political campaign- more than during all of 2004.[1] User-generated content is playing a particularly integral role, with 35% of Americans watching online videos and 10% using social networking sites to engage in political activity.[2]

An overwhelming number of political discussions are taking place in publicly-accessible but privately-owned, online town squares. Which means that this important political speech depends on service providers, users, and content owners all doing their part to safeguard free speech.

Unfortunately, political speech has been threatened repeatedly by claims that controversial material violates a site's terms of use or infringes copyrights or trademark rights. Here are just a few recent examples:

- The International Olympics Committee demanded that YouTube remove a video of a protest by Students For A Free Tibet, based on a bogus copyright infringement claim. The IOC subsequently withdrew the notice, but the IOC's demand is a lesson in the dangers of hair-trigger DMCA takedowns by service providers.

- An alleged terms of service violation caused YouTube to take down a slideshow of a military funeral.

- Another alleged terms of use violation caused YouTube to remove a video critical of John McCain, apparently because the video included numerous graphic images of the effects of war. But those images were integral to the commentary: the video focused on McCain's support for the Iraq war.

- An apparent copyright complaint caused Broadview Networks to shut down a political website parodying Exxon's environmental policies.

- The Republican National Committee threatened the online vendor CafePress for allowing users to create t-shirts using Republican trademarks, like "Grand Old Party," or the official version of the elephant logo.

- The Chicago Auto Show tried to use allegations of trademark infringement to force the shutdown of a satirical website promoting transportation alternatives.

- The Associated Press tried to use the Digital Millennium Copyright Act (DMCA) to force the takedown of blog entries that reproduced excerpts of AP news stories—some of them just a few words long.

ACLU of Northern California and EFF urge service providers to take extra precautions before pulling the plug on political speech. Remember that you're facilitating a new era of reason and debate, and that there are laws that protect you as a facilitator. By taking that responsibility seriously, you'll do right by your users, content owners and the political process.

We urge content owners to count to ten and look at the Fair Use Frequently Asked Questions and Fair Use Principles for User-Generated Video Content for some guidance before firing off a complaint. Remember that you are legally obligated to consider whether the use of your material is a fair use. Consider carefully whether actions may result in the loss of free speech, and remember: *the antidote to free speech that you don't like is MORE free speech.* Make your voice heard with a written blog post, a video blog post, or a message in the comment thread. We also urge users to contact us if they feel that their political speech has been improperly censored.

As we move forward into the fall election season, the Internet can continue to revitalize our political lives in exciting and unforeseen ways—but only if service providers, users and content owners all do their parts. No matter where you stand on the candidates or the issues, we should all agree on one principle: No downtime for online free speech!

---

1. http://www.pewinternet.org/pdfs/PIP_2008_election.pdf
2. *Id.* As many as 65-milliion Americans watched the virally distributed, political web video, "This Land," in 2004. Under the Radar and Over the Top: Online Political Videos in the 2004 Election. http://www.ipdi.org/UploadedFiles/web_videos.pdf

*Related Issues:* Free Speech, No Downtime for Free Speech Campaign

*Related Cases:* Chicago Auto Show SHUTDOWN, Diehl v. Crook, Electric Slide Litigation, Frankel v. Lyons (Barney), Lenz v. Universal, Medical Week News v. Sanofi-Aventis, Online Policy Group v. Diebold, SHARK v. PRCA

[Permalink] [Email this article]

# EXHIBIT C

```
 1   Kurt Opsahl (SBN 191303)
 2   kurt@eff.org
     Jason Schultz (SBN 212600)
 3   jason@eff.org
     Corynne McSherry (SBN 221504)
 4   corynne@eff.org
     Marcia Hofmann (SBN 250087)
 5   marcia@eff.org
     ELECTRONIC FRONTIER FOUNDATION
 6   454 Shotwell Street
     San Francisco, CA 94110
 7   Telephone: (415) 436-9333
     Facsimile: (415) 436-9993
 8

 9

10   Attorneys for Plaintiff
     STEPHANIE LENZ
11                      UNITED STATES DISTRICT COURT

12                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                             SAN JOSE DIVISION

14   STEPHANIE LENZ,                )   No. C 07-03783-JF
                                    )
15                    Plaintiff,    )   DECLARATION OF STEPHANIE LENZ IN
                                    )   SUPPORT OF OPPOSITION TO MOTION
16       v.                         )   TO DISMISS AND SPECIAL MOTION TO
                                    )   STRIKE
17   UNIVERSAL MUSIC CORP., UNIVERSAL)
     MUSIC PUBLISHING, INC.,        )
18                                  )   DATE: December 7, 2007
          and                       )   TIME: 9:00 a.m.
19                                  )   CTRM: 3 (Hon. Jeremy Fogel)
     UNIVERSAL MUSIC PUBLISHING GROUP,)
20                                  )
                      Defendants.   )
21                                  )
22
```

-1-

LENZ DECLARATION

I, Stephanie Lenz, declare as follows:

1. I am the plaintiff in the above-captioned matter. I submit this declaration in support of the attached Opposition to Defendants' Motion to Dismiss and Motion to Strike. The facts stated here are known to me of my own personal knowledge, except where otherwise stated. If called upon to testify thereto I could and would competently do so.

2. I am a mother, wife, writer and editor.

3. My husband and I have two children, Zoe (age 4) and Holden (now almost 2).

4. On or about February 7, 2007, my children were playing in the kitchen when Holden, who was still learning to walk at the time, began dancing to a song by Prince, "Let's Go Crazy."

5. Zoe and Holden had recently heard the song on television during the Super Bowl halftime show.

6. Using my digital camera, I created a 29-second video recording of the children's activities, which consisted primarily of Holden dancing.

7. On or about February 8, 2007, I uploaded the Holden Video from my computer to the YouTube website for my family and friends to enjoy, particularly my mother in California.

8. The video was publicly available at the Internet address <http://www.youtube.com/watch?v=N1KfJHFWlhQ>.

9. When I opened my account with YouTube, pursuant to which I posted the Holden Video and other videos, I explicitly agreed to the Terms of Use and privacy policy by clicking a button with the words "Sign Up" next to a checked checkbox stating "I agree to the terms of use and privacy policy." I did not retain a copy of that signup page, but to the best of my recollection it was identical to the signup page as it currently appears on YouTube. A true and correct copy of that "sign up" webpage, as it appeared on October 24, 2007, is attached hereto as Exhibit A. I agreed to these contractual terms expressly in return for the hosting and playback services YouTube offered.

10. On June 5, 2007, I received an email from YouTube notifying me that the video of Holden dancing had been removed from YouTube site in response to a claim by Universal Music

-2-
LENZ DECLARATION

1  Public Group that the video infringed Universal's copyrights. The notice warned me that repeated
2  incidents of copyright infringement could lead to the deletion of my account and all my videos. A
3  true and correct copy of that email is attached hereto as Exhibit B. Based on this notice, I thought
4  that I might be sued for copyright infringement for posting the video of my son.

5       11.  In the days following my receipt of the notice, I posted a few statements on my blog
6  expressing my shock and anger at the accusation and mentioning my contact with my current
7  counsel.

8       12.  On June 27, 2007, I sent YouTube a counter-notification disputing Universal's
9  infringement allegation and demanding that my video be reposted. A true and correct copy of that
10 email is attached hereto as Exhibit C.

11      13.  On July 20, 2007, I received a notice from YouTube stating that the video had been
12 restored.

13      14.  Since the video was restored, I have deleted a few comments about it posted on
14 YouTube, primarily where such comments made offensive personal remarks about Holden. I did
15 not delete any comments posted prior to June 3, 2007—indeed, only a single comment was posted
16 prior to that date.

17      15.  As a result of Universal's allegation of infringement, I lost access to YouTube's
18 service for the Holden Video from June 5, 2007 until July 20, 2007.

19      16.  I place a high value on my right to free speech and my use of YouTube to express
20 myself. The removal of the Holden video impinged on those rights.

21

22 I declare under penalty of perjury that the foregoing is true and correct and that this document was
23 executed in Gallitzin, Pennsylvania.

24

25 DATED: November 12, 2007

26                                      By _____
27                                          Stephanie Lenz
28

-3-

LENZ DECLARATION