| | |
|---|---|
| 1 | KELLY M. KLAUS (SBN 161091) |
| | Kelly.Klaus@mto.com |
| 2 | AMY C. TOVAR (SBN 230370) |
| | Amy.Tovar@mto.com |
| 3 | MUNGER, TOLLES & OLSON LLP |
| | 355 South Grand Avenue |
| 4 | Thirty-Fifth Floor |
| | Los Angeles, CA  90071-1560 |
| 5 | Telephone:    (213) 683-9100 |
| | Facsimile:    (213) 687-3702 |

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
AND UNIVERSAL MUSIC PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE LENZ, | CASE NO.  CV 07-03783-JF |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION [1] TO CERTIFY AUGUST 20, 2008 ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND [2] TO STAY PENDING RESOLUTION OF § 1292(b) PROCEEDINGS** |
| vs. | |
| UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP, | |
| Defendants. | Date:    N/A [For submission on papers, per Stipulation and [Proposed] Order] |
| | Judge:    Honorable Jeremy Fogel |
| | Courtroom: 3 |

## I. INTRODUCTION

Plaintiff insists that there is no possibility of prejudice to Universal from having to await final judgment because at that point Universal "may then seek appellate review of this Court's decision." Opp. at 1. That result is by no means guaranteed. If the Court denies certification, and if its "considerable doubt" about Plaintiff's ability to prevail is confirmed, Order at 8:17-18, then Universal will not have the automatic right to seek appellate review of the Court's construction of the DMCA. The rules of appellate jurisdiction preclude a prevailing party from appealing adverse legal conclusions bound up in an otherwise favorable judgment. Federal appellate courts "review[] judgments, not statements in opinions." *Black v. Cutter Labs.*, 351 U.S. 292, 297 (1956). There is no appellate jurisdiction "where a party does not seek reversal of the judgment but asks only for review of unfavorable findings." *Penda Corp. v. United States*, 44 F.3d 967, 972 (Fed. Cir. 1994). For this reason, even if it wins the case, Universal will not necessarily be able to seek appellate review of the Court's Order, which undoubtedly will continue to be cited in § 512(f) cases as controlling on the meaning of the DMCA. That result may suit the litigating strategy of Plaintiff's counsel but it does not promote clarity in legal standards that are of considerable legal and practical importance for numerous copyright holders and service providers based in the Ninth Circuit.

This is a clear-cut case for § 1292(b) certification. The issue the Court resolved is purely legal and does not depend on any factual development; the question is one of first impression and, with respect to the Court (and notwithstanding Plaintiff's arguments), there are substantial grounds for a difference of opinion with the Court's resolution; and a contrary ruling from the Ninth Circuit will resolve this lawsuit, as well as § 512(f) cases based on the same premise as this case that otherwise could be before this Court and others. Considerations of efficiency and economy, and the absence of any prejudice to Plaintiff, all weigh in favor of a stay pending the § 1292(b) appeal.[1]

---

[1] Pursuant to the parties' Stipulation and Order entered September 4, 2008, this certification motion may be resolved on the papers following the submission of this reply brief, unless the Court would prefer to hear argument. If the Court has not resolved this motion by September 23, Universal respectfully requests that the Court extend Universal's time to answer, which currently

5920596.1                                                         - 1 -                              REPLY ISO MOT. TO CERTIFY AND STAY
                                                                                                     NO. CV 07-03783-JF

## II. ARGUMENT

### A. The Court's Order Satisfies All Three Criteria For § 1292(b) Certification

#### 1. Plaintiff Concedes The First § 1292(b) Factor Is Satisfied

Plaintiff does not – because she cannot – dispute that the Order meets the first criterion for § 1292(b), namely, that the Order "involves a controlling question of law[.]" 28 U.S.C. § 1292(b).

#### 2. The Court's Construction Of § 512(c)(3)(A)(v) Is Subject To A Difference Of Opinion

Plaintiff asserts that there is no "substantial ground for difference of opinion" with the Court's Order, Opp. at 2-6, but her arguments on this score confirm that the question presented is novel and that there are substantial arguments for a contrary result.

Plaintiff asserts that the issue in this case is decided by "unambiguous statutory language and clear case law." *Id*. at 3. With respect, Universal submits that statutory language and structure and court precedent do not by any means make it obvious that 17 U.S.C. § 512(c)(3)(A)(v) requires a party sending a DMCA takedown notice to evaluate whether the material complained of makes a "fair use" of the copyright. Universal has already pointed out why the statute's plain language and structure point to a contrary result, *see* Mot. at 3-6. Plaintiff largely ignores Universal's arguments, and Universal will not repeat them here.[2]

Plaintiff also ignores (or distorts) legal precedent. She continues to cite *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), for the incorrect proposition (not even adopted by that case) that fair use is a right affirmatively granted by the Copyright Act, while

---

is set at September 30, 2008.

[2] One notable exception is Plaintiff's *ipse dixit* that the counter-notice procedure "does not suffice to protect fair use and there is no record to suggest that Congress thought it would." Opp. at 3. The relevant question is not whether the counter-notice procedure "protects fair use" as vigorously as Plaintiff would like. The question instead is whether the existence of that procedure is consistent with a system where copyright owners are required to evaluate the relative merits of the affirmative defense of fair use before *or after* knowing whether such a defense even will be raised. We submit that the procedure is much more consistent with the time for evaluating the affirmative defense of fair use. Plaintiffs' assertion that "there is no record to suggest that Congress thought" the counter-notice procedure would protect fair use is a red herring: the legislative history of Section 512(f) does not say one word about fair use, an omission that, Universal submits, is more consistent with the conclusion that the statute does not require an *ex ante* fair use evaluation.

ignoring the subsequent Supreme Court cases that make clear fair use is an affirmative defense. *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 561 (1985); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). Plaintiff also continues to distort *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004), the Ninth Circuit's leading decision on § 512(f). *Rossi* did not simply hold that a copyright owner can send a takedown notice without making "*a full investigation* into the material in question." Opp. at 4 (emphasis added). *Rossi* actually decided that the notice sender was not liable even if it failed to look at the material in question. 391 F.3d at 1003. *Rossi* cannot be read as consistent with an affirmative duty to review the material, much less a duty to analyze whether the material is subject to a defense as malleable as fair use.

As Universal also pointed out, the indeterminacy of the fair use defense is inconsistent with the type of *post hoc* reasonableness inquiry that Plaintiff's § 512(f) claim sets up. Mot. at 5-6. Plaintiff responds by saying that "there are many ways in which a copyright owner can show 'proper consideration' that do not require a *post hoc* assessment of reasonableness" – and then promptly lists as examples hypothetical "showings" that inevitably turn on after-the-fact reasonableness review, such as "*how*" someone "considered" the fair use factors before sending a notice, and "*efforts to educate* agents as to the fair use factors[.]" Opp. at 4 (emphasis added). Topping that off, Plaintiff then says that she does not even concede that the examples she gives to purportedly illuminate an inquiry based on subjective knowledge would be sufficient. *Id*. at 5 n.1. All this simply serves to confirm that Plaintiff's claim leads to an objective, not a subjective, inquiry, and that is inconsistent with *Rossi*.

For purposes of § 1292(b), the Court's construction of the DMCA presents a difficult question that is a matter of first impression. The Order satisfies the second criterion for interlocutory appeal.

**3.    An Immediate Appeal Obviously May Terminate This Litigation**

Plaintiff purports to dispute whether the third factor applies, but her argument on this factor changes the statutory test and ignores the procedural posture of this case. According to Plaintiff, the third § 1292(b) factor is not satisfied if there is a possibility that the District Court and Ninth Circuit may both be expending judicial resources on the case at the same time. *See*

Opp. at 6. That is not the test under § 1292(b); if that were the test, certification would never be granted because there always is a possibility of the District Court and the Court of Appeals both handling the case simultaneously. The applicable test – stated directly in the statute – is whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). This test indisputably is satisfied: If the Ninth Circuit decides that the phrase "authorized by law" in 17 U.S.C. § 512(c)(3)(A)(v) does *not* require an *ex ante* fair use evaluation, then Plaintiff's case is over. The way to deal with Plaintiff's professed concern about conserving judicial effort and party resources is to stay proceedings in this Court, a result that makes tremendous practical sense and that will not prejudice Plaintiff in the slightest.[3]

**4.     Section 1292(b) Is Not Limited To "Antitrust" And Other Big Cases**

Plaintiff's final argument against certification dredges up dictum from a 1966 case for the proposition that § 1292(b) appeals should be limited to "'protracted or expensive litigation, such as antitrust and similar protracted cases.'" Opp. at 7 (quoting *U.S. Rubber v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)). In the nearly 40 years since this statement appeared, the Ninth Circuit and other courts have considered § 1292(b) appeals in cases that satisfied the statutory criteria but were not "big" or expensive litigation. *See* 16 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3929, at 368 ("[E]ven a casual survey of the hundreds of appeals decided under § 1292(b) suggests that it is often used in cases that do not meet the 'exceptional' test.") (2d ed. 1966). According to the leading treatise on federal practice:

> The flexible approach to § 1292(b) is far superior to blind adherence to a supposed need to construe strictly any permission to depart from the final judgment rule. The statute is not limited by its language to "exceptional" cases. Flexibility is justified in part because the statute itself was suggested and drafted by judges who were concerned with avoiding the rigors of the final judgment rule. Such judge-inspired legislation should be subject to development by judges in

---

[3] In the cases that Plaintiff cites, *see* Opp. at 6, discovery and pretrial proceedings were well underway when the Court was asked to rule on certification. *See Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1348 (9th Cir. 1988) (order denying interlocutory appeal decided in *February* 1988, where trial was scheduled to begin *July* 1988); *Cortez v. MTD Prods., Inc.*, 927 F. Supp. 386, 394 (N.D. Cal. 1996) (Brazil, Mag. J.) (denying certification where "[v]irtually all pretrial preparation" was about to be completed and case was scheduled to go to trial "less than two months" from the date of the court's order). Here, in contrast, the Court has not entered a scheduling order or set a trial date, and neither side has served any discovery.

>light of their own perceptions of need, and their ability to control a potentially explosive source of appeals.

*Id*. at 370.

Plaintiff admits that the issue the Court's Order resolves is "important," Opp. at 1, and it obviously is. It is an important issue for major copyright holders, many of whom are located in the Ninth Circuit. The issue also affects the sending and receipt of takedown notices to service providers, many of whom also are located within the Ninth Circuit. Plaintiffs' counsel has made plain its eagerness to file more suits under § 512(f) based on the Court's construction of the DMCA, a point that Plaintiff's opposition brief does not dispute but instead urges that this Court to ignore. *Id*. at 6. The issue does not require any factual development. The importance of the issue and its suitability for § 1292(b) certification are not lessened because Plaintiff has no damages or because this is not "big case" litigation. The Order satisfies all three criteria under § 1292(b), and the Court should certify it.

**B. A Stay Of Proceedings Will Not Prejudice Plaintiff At All And Will Conserve Judicial And Party Resources**

The equities of a stay are straightforward, clear, and all weigh in favor of staying this case until the Ninth Circuit resolves the § 1292(b) petition. If the Court certifies its Order, then the statute requires Universal to file its request for certification within 10 days. 28 U.S.C. § 1292(b). A Ninth Circuit motions panel must then decide whether to accept the certification. That process will be completed within a matter of weeks, not years. If the Ninth Circuit accepts certification of the appeal, that means that Court will agree that the issue is important and has the potential to resolve the litigation, in which case Plaintiff cannot plausibly contend that a stay is unwarranted. If the Ninth Circuit declines certification, then there will have been only a short pause in trial court proceedings, where discovery has not even commenced. In either case, granting a stay to allow the Ninth Circuit to consider the § 1292(b) petition makes good sense and poses no risk of prejudice to Plaintiff.

Plaintiff's argument against a stay is based on an incorrect legal standard and an exaggerated characterization of the relative equities. In the first place, the standard for staying proceedings on a § 1292(b) appeal is *not* the same as the standard for obtaining a preliminary

injunction. The preliminary injunction standard applies when a district court is deciding *whether to stay the effect of one of its orders pending appeal.*[4] The issue here, however, is not whether the Court should stay the effect of any order but rather whether the Court should stay proceedings pending the Ninth Circuit's resolution of the § 1292(b) appeal. It is well established that a District Court "possesses the inherent power to control its own docket and calendar." *Eaton v. Siemens*, 2007 WL 2318538, at *2 (E.D. Cal. Aug. 10, 2007). As the Ninth Circuit has explained: "A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972). In deciding how to control its own docket pending a § 1292(b) appeal, the District Court is not constrained by the four-factor preliminary injunction standard, but instead has flexibility to stay proceedings based on considerations of conserving judicial and party resources. Unsurprisingly, District Courts have often found these factors weigh in favor of a stay, as they do here.[5]

A stay obviously will conserve judicial and party resources. Notwithstanding her acknowledgement in the Joint Case Management Conference Statement that the parties disagree about multiple issues, *see* Joint Case Management Conference Statement ("C.M. Stmt.") (Docket No. 43) (July 8, 2008) at 3, Plaintiff now claims that the cost of litigating the case "should be comparatively small." Opp. at 9. The litigation will not be costless, however, and there is no

---

[4] *See Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir. 1998) (seeking stay of order of deportation pending review of order denying asylum); *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983) (seeking partial stay of preliminary injunction order pending appeal), rev'd in part on other grounds, 463 U.S. 1328 (1983); *Comm. on The Judiciary U.S. House of Representative v. Miers*, 2008 WL 3906419, *1 (D.D.C. Aug. 26, 2008) (seeking stay of court order).

[5] *See Jones v. Henry*, 2007 WL 781509, at *1 (E.D. Cal. Mar. 13, 2007) (stay warranted because "the issue before the Ninth Circuit may be dispositive of this action" and a stay "will promote economy of time and effort for both the parties and the court") (order vacated after Ninth Circuit denied permission to appeal, 2007 WL 1412046, at *1 (E.D. Cal. May 11, 2007)); *Eaton*, 2007 WL 2318538, at *4 ("Because a reversal of this court's Order by the Ninth Circuit could resolve this case . . . the court stays this action in its entirety pending resolution of defendants' appeal of the Order."); *Watson v. Yolo County Flood Control and Water Conservation District*, 2007 WL 4107539, at *4 (E.D. Cal. Nov. 16, 2007) ("a reversal of this court's Order by the Ninth Circuit could materially affect this case and advance the ultimate termination of litigation"); *Advanced Analogic Technologies v. Linear Technology Corp.*, 2006 WL 2850017, at *3 (N.D. Cal. Oct. 4, 2006) ("The Court finds the stay requested . . . will conserve the resources of the parties and the Court[.]").

1  guarantee it will live up to Plaintiff's sunny surmise. Plaintiff notably does *not* deny that she still
2  intends to litigate issues far beyond her one YouTube posting, and that she continues to think
3  herself entitled to discover all of Universal's policies and practices regarding takedown notices
4  going back to January 2005. C.M. Stmt. at 3-4. Continuing with the discovery disputes, the
5  document production, the depositions and the motions makes no sense if the Ninth Circuit has
6  before it a question that may moot the entire lawsuit.

7        On the other side of the balance, there is no possible hardship to Plaintiff. Notably,
8  Plaintiff does not dispute Universal's showing, based on Plaintiff's own sworn declaration, that
9  she has no damages.[6] *See* Opp. at 10, n.6. Plaintiff's claim that she must proceed full steam with
10 her litigation in order to preserve "relevant, admissible evidence," *id*. at 10, is a non sequitur.
11 Concerns about evidence disappearing and memories fading are relevant where there are multiple
12 transactions and many witnesses who may have differing or inconsistent recollections. This case
13 concerns a single YouTube posting and a single notice sent to YouTube. There is no reason to
14 believe that discovery in this litigation – which avowedly is being pursued by Plaintiff and her
15 counsel to vindicate principle and to establish favorable precedent – will be impaired or
16 compromised if the case is stayed to allow the Ninth Circuit to consider an immediate appeal.

---

[6] The absence of damages, of course, is contrary to Plaintiff's counsel's representation to the Court that Plaintiff *did* have damages – a representation the Court accepted in holding Plaintiff had pleaded the damages element of her claim. *See* Order at 9.

5920596.1      - 7 -      REPLY ISO MOT. TO CERTIFY AND STAY
CV 07-03783-JF

### III. CONCLUSION

For the foregoing reasons, and those stated in its opening brief, Universal respectfully requests that the Court certify its Order for interlocutory review and stay proceedings pending the Ninth Circuit's disposition of the § 1292(b) petition.

DATED: September 16, 2008    MUNGER, TOLLES & OLSON LLP

By:    /s/ *Kelly M. Klaus*
         KELLY M. KLAUS

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.,
AND UNIVERSAL MUSIC PUBLISHING
GROUP