ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA  94110
Telephone:     (415) 436-9333
Facsimile:      (415) 436-9993
Email: fred@eff.org; kurt@eff.org
          corynne@eff.org

FOLGER LEVIN & KAHN LLP
MICHAEL F. KELLEHER
SUZANNE ELIZABETH RODE
275 Battery Street, Suite 2300
San Francisco, CA  94111
Telephone:     (415) 986-2800
Facsimile:      (415) 986-2827
Email: mkelleher@flk.com; srode@flk.com

KEKER & VAN NEST, LLP
ASHOK RAMANI - #200020
MICHAEL KWUN -#198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:     (415) 391-5400
Facsimile:      (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
Email: mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                                      Plaintiff,<br><br>     v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                                      Defendants. | Case No. C 07-03783-JF<br><br>**PLAINTIFF STEPHANIE LENZ'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**<br><br>Date:          May 20, 2009<br>Time:         9:30 A.M.<br>Judge:        The Hon. Richard G. Seeborg<br>Courtroom: 4<br>Date Comp. Filed:     July 24, 2007<br><br>**[JOINT STIPULATION AND [PROPOSED] ORDER SHORTENING TIME; [PROPOSED] PROTECTIVE ORDER, AND DECLARATION OF MICHAEL S. KWUN FILED HEREWITH]** |

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT:**

PLEASE TAKE NOTICE, that on May 20, 2009, at 9:30 a.m., or at such other time as the Court may direct,[1] before the Honorable Richard G. Seeborg, United States District Court, 280 South First Street, San Jose, California, 95113, Plaintiff STEPHANIE LENZ ("Lenz") will, and hereby does, move the Court for entry of the concurrently submitted Proposed Protective Order.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declaration of Michael S. Kwun (filed herewith), the Proposed Protective Order (filed herewith), and such other and further papers, evidence and argument as may be submitted to the Court at or before the hearing on this motion.

---

[1] Filed concurrently herewith is a Joint Stipulation and Proposed Order to shorten time regarding the briefing schedule for this Motion, in which the parties respectfully request that the Court set this Motion for argument on the first available hearing date.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Stephanie Lenz filed her complaint against Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal"), seeking relief per 17 U.S.C. § 512(f) for Universal's demand that YouTube remove a home video of Lenz's children dancing to music.  By the present motion, Lenz asks the Court to enter a Protective Order governing the disclosure of confidential material in this case.  The parties have met and conferred over the form of this Order, and although they have been able to agree in most respects, three issues remain in dispute.

*First*, the parties disagree whether the Protective Order should forbid Lenz's counsel to share material designated as "Highly Confidential"[2] with her—even when necessary for her representation, and when she has signed an agreement to be bound by the Order—while permitting Universal's counsel to share such information with Universal Music Group's Harvey Geller.[3]  Universal cannot show good cause for denying Lenz access to such material.  Neither the fact that Lenz is not an attorney, nor the fact that she comments on matters of interest to her on her internet "blog," support Universal's insinuation that she is not trustworthy or justify undermining her ability to participate in her representation.

*Second*, the parties disagree whether Universal should be free to put irrelevant, personal, and private information about nonparties (such as Lenz's friends and family) in the record of the case, as well as disclose it to any person (such as court reporters, experts, and professional vendors) entitled to see "Highly Confidential" information.  Lenz has offered to produce both redacted *and* unredacted versions of documents containing such information under a protective order that requires the receiving party to use the redacted versions except when challenging the

---

[2] Universal objects even to the use of this term, maintaining that the appropriate designation is "Highly Confidential – Attorneys' Eyes Only," as used in this court's form Stipulated Protective Order.  The nomenclature is not important to Lenz.  Lenz proposes the term "Highly Confidential" simply because her proposed form of order (and, indeed, Universal's) allow some non-attorneys to have access to this category of information.

[3] Mr. Geller is the Deputy General Counsel and Senior Vice President, Business and Legal Affairs, of Defendant Universal Music Group.

1  redactions themselves.  This is at no cost to Universal: Lenz's proposed Order *requires*
2  production of unredacted versions of such documents as well as the redacted versions so that the
3  receiving party can review—and, if need be, challenge—the scope of the redactions.

4  ***Third***, the parties disagree whether the Protective Order should encompass material
5  received outside of discovery.  Universal insists on an Order that precludes a receiving party
6  from doing what anyone else can do with protected material that it obtains from other sources or
7  that has fallen into the public domain.  Specifically, Universal wants to forbid such use unless
8  the *receiving* party can show that it obtained the material before it was produced in discovery
9  *and* that the *source* of the material obtained it lawfully.  Declaration of Michael S. Kwun, ¶ 15
10 and Ex. A at ¶ 13.4.  Lenz believes that she and her counsel—like any member of the public—
11 should be free to discuss and share material she or her counsel receive outside of discovery or
12 read in a newspaper even if Universal speculates that the source obtained it unlawfully.

## II.  FACTUAL BACKGROUND

Lenz served her first set of Requests for Production over six months ago—on September 30, 2008—and has patiently waited for documents ever since.[4]  Kwun Dec. at ¶¶ 3, 22.  Just three days ago (April 6, 2009), Universal produced 178 pages of, principally, printouts from Lenz's own blog, internet articles about this case, and YouTube's terms of use—all of which are publicly available.  Kwun Dec. at ¶ 22.

Universal's stated reason for withholding its documents is its need for a protective order to protect its confidential information.  Kwun Dec., ¶ 4, 7.  On December 22, 2008, Universal said it would send Lenz a proposed stipulated protective order.  Kwun Dec., ¶ 8.  Universal did not send its proposed stipulated protective order until January 19, 2009.  Kwun Dec., ¶ 8.  Lenz returned a revised version of the draft order on January 30, 2009.  Kwun Dec., ¶ 9.  The parties discussed the protective order and other issues by telephone on February 18, 2009.  Kwun Dec., ¶ 11.  During that call, Lenz proposed producing documents on an "Attorneys' Eyes Only" basis while the parties continued to negotiate the terms of a Stipulated Protective Order.  Kwun Dec., ¶

---

[4] Lenz produced her first set of documents, along with her responses to Universal's first set of Requests for Production, on December 17, 2008.  Kwun Dec., ¶ 15.

1  11. Universal's counsel indicated that he would discuss that proposal with his clients. *Id.*
2  Universal ultimately refused, insisting on having a "firm protective order in place" before
3  producing confidential material. Kwun Dec., ¶ 14.
4      Negotiations continued, without success. The parties spoke by telephone on March 24,
5  2009. Kwun Dec., ¶ 15. Lenz sent a further draft of the Stipulated Protective Order to Universal
6  on March 26, 2009, and the parties exchanged multiple emails about the drafts over the next
7  week. Kwun Dec., ¶¶ 19-20. On March 31, both parties agreed that agreement on the remaining
8  issues was unlikely to materialize through further discussion and exchange of drafts. Kwun
9  Dec., ¶ 21. The unresolvable disagreements concern, as described above,
10      **1)** Lenz's access to Highly Confidential material;
11      **2)** protection for personal and private information about non-parties; and
12      **3)** restrictions on use of protected material acquired outside of discovery.[5]

### III.    ARGUMENT

**A.    Defendants Cannot Show Good Cause for Barring Lenz From Seeing Highly Confidential Material.**

"It is well established that the fruits of pretrial discovery are . . . presumptively public" absent a court order to the contrary. *San Jose Mercury News v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999). The party seeking to restrict disclosure of discoverable information must show good cause for the limitation. *See* Fed. R. Civ. P. 26(c)(1). Among other things, good cause requires a showing that "specific prejudice or harm will result" without the protection sought. *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Universal cannot make such a showing here.

---

[5] Lenz had also proposed, in her most recent draft of a Stipulated Protective Order, that the parties be able to show Confidential and Highly Confidential material to deponents who "(i) authorized or otherwise eligible to receive the Protected Material, (ii) to whom disclosure is reasonably necessary for this litigation, and (iii) who have signed Exhibit A to this Order." Kwun Dec., Ex. B at ¶¶ 7.2(f) and 7.3(f). Universal did not specifically comment on this proposal until Lenz inquired about it on April 7, and at that time Universal's counsel was unable to confirm whether or not Universal could agree to this proposal before Lenz filed this motion. Kwun Dec., ¶ 23. If Universal does not agree to this provision, than this would be a fourth open issue for the Court to resolve. Given that this provision merely ensures that the Protective Order does not prevent a party from showing a document to a person who is authorized to view it, Lenz contends that this provision is appropriate.

1   First, Lenz is not engaged in any activity that creates a heightened risk of inadvertent disclosure. Courts have, for example, protected a party's trade secrets from disclosure to a competitor's in-house counsel where the in-house attorney's duties included advising his client in matters related to the trade secrets. *See, e.g.*, *Brown BagSoftware v. Symantec Corp.*, 960 F.2d 1465, 1470-71 (9th Cir. 1992), *citing U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). Lenz, though, is a mother, homemaker, writer, and editor. She has no involvement in the music industry (other than as a consumer), is not a competitor of Universal, and is never called upon to engage in the sort of "competitive decisionmaking" at issue in *Brown Bag*. 920 F.2d at 1470-71.

Second, there is no reason to think that Lenz will not abide by the terms of the Protective Order. Universal has cited the fact that Lenz is not an attorney as one justification for refusing to consent to her access to Highly Confidential material. Kwun Dec., ¶ 14. Universal, however, does not object to the disclosure of Highly Confidential material to other non-attorneys—such as Experts,[6] court personnel, court reporters, court reporters' staff, and Professional Vendors.[7] Moreover, in order to gain access to Highly Confidential material, Lenz would need expressly to agree to the terms of the Protective Order, *see* Proposed Protective Order at ¶ 7.3(h) and Ex. A to Proposed Protective Order, and would be subject to the Court's contempt power should she violate its terms.

Universal's apparent reason for singling out Lenz from the host of non-attorneys it will permit to see its Highly Confidential material is that she "operates a blog site and comments routinely about the details of this case." Kwun Dec., ¶ 14. Universal has not, however,

---

[6] Defined in ¶ 2.12 of Lenz's proposed Protective Order (and in Section 2.12 of this Court's form Stipulated Protective Order) as "a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become and employee of a Party or a competitor of a Party. This definition includes a professional jury or trial consultant retained in connection with this litigation."

[7] Defined in ¶ 2.13 of Lenz's proposed Protective Order (and also in Section 2.13 of the form Order) as "persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors."

1 identified a single blog post in which Lenz has disclosed confidential information or otherwise
2 engaged in suspect behavior.  To the contrary, Lenz has noted her reluctance to "talk[] to anyone
3 in any way about anything" out of fear that her words may be misconstrued in this suit.  Kwun
4 Dec., Ex. C.
5      Universal has suggested that if Lenz needs access to particular "Highly Confidential"
6 documents, her counsel can ask Universal to agree on a document-by-document basis, and if
7 need be can seek relief from the Protective Order from the Court.  Kwun Dec., ¶ 16.  But if Lenz
8 needs access to such documents, they are likely to be highly relevant to her theory of the case.
9 Requiring that her counsel identify to Universal the very documents that they deem key to the
10 advice they are offering her would invade the heart of the attorney-client relationship, and cannot
11 be justified merely based on Universal's unfounded speculation that Lenz cannot be trusted to
12 keep such material confidential.
13      In *Perfect 10, Inc. v. Google Inc.*, No. 04-9484 (C.D. Cal. Dec. 27, 2005) (Minute Order),
14 Magistrate Judge Hillman refused to enter a protective order barring Perfect 10's CEO and in-
15 house counsel from viewing Google's confidential and highly confidential material.  Kwun Dec.,
16 Ex. D.  Google had argued that the CEO in particular had displayed "such a degree of public
17 animus towards[, and] desire to embarrass [Google]," that disclosure of the material under a
18 protective order would not sufficiently protect its confidential information.  *Id.* at p. 2.  Judge
19 Hillman, though, refused to enter Google's proposed order because Google had not shown that it
20 was "reasonably likely" that the CEO and inhouse attorney would not abide by a protective
21 order.  *Id.*  Here too, Universal cannot show a reasonable likelihood that Lenz will "flaunt the
22 strict terms of a Protective Order…and thereby expose [herself] to severe fines and possibly even
23 Contempt charges."  *Id.*  Lenz is entitled to access Highly Confidential information.
24 **B.     The Order Should Protect the Privacy of Nonparties.**
25      Rule 26(c)(1) expressly authorizes a court to enter a protective order "to protect a party or
26 person from…embarrassment."  As the Supreme Court has recognized, this language gives the
27 trial court "broad discretion . . . to decide when a protective order is appropriate and what degree
28 of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (interpreting

1  equivalent language in Washington Superior Court Civil Rule 26(c), modeled on Fed. R. Civ. P.
2  26). Indeed, "a court may be as inventive as the necessities of a particular case require in order
3  to achieve the benign purposes of the rule." 8 Wright, Miller & Marcus, Fed. Prac. & Proc., Civ.
4  § 2036, at 489 (2d Ed. 1994).

5      This case presents the quintessential type of good cause warranting an order protecting
6  "person[s] from embarrassment." Rule 26(c)(1). As is true in so many cases in the Internet era,
7  many of the documents that will be produced in this case are electronic mail messages. And
8  often those messages include prior messages, which means that communications regarding many
9  disparate topics are sometimes including in a single electronic mail message. As a result, some
10 of the documents in this case, though responsive in some way to Universal's discovery requests,
11 include personal and private information about non-parties that is not relevant to any issue in this
12 suit.

13     For example, a friend might mention the video at issue in this suit in an email to Lenz,
14 but also criticize her employer in the same email. Given the reference to the video, one can
15 imagine that such an email could one day end up attached as an exhibit in support of a motion, or
16 even as a trial exhibit. There is simply no reason, however, for an unrelated (and potentially
17 embarrassing) communication by a non-party to enter the record. As another example, a
18 responsive email might include a person's cell phone number. The public's interest in this case
19 does not extend to that cell phone number, or to other irrelevant personal and private
20 information.

21     What Lenz asks is very simple. Lenz proposes to produce documents containing personal
22 and private information about nonparties in their entirety, without redacting any non-privileged
23 material. She also proposes to produce additional copies of such documents from which
24 personal and private information about non-parties has been redacted. Lenz does not ask to
25 withhold any non-privileged responsive documents or parts thereof from Universal. What she
26 does ask is that this Court enter an Order requiring the receiving party to use the redacted
27 versions of these documents in depositions, in filings (except when necessary to challenge the
28 scope of a redaction itself), and at trial. *See* Proposed Protective Order ¶¶ 5.3, 7.3(h), 7.4(d), and

1  10.

2  Such an Order would keep personal and private information about non-parties out of the

3  record of this case without compromising Universal's interests in any way, shape, or form.

4  Universal's only objection to Lenz's proposal seems to be that it is unusual and not part of this

5  Court's form Stipulated Protective Order.  Kwun Dec., ¶ 17.

6  This, though, is no objection at all.  This Court has "substantial latitude to fashion [a]

7  protective order[]" that imposes whatever procedure best balances the "competing needs and

8  interests of the parties affected by discovery."  *Seattle Times*, 467 U.S. at 36.  Indeed, the 2007

9  Amendments to the Federal Rules of Civil Procedure expressly require the redacting of certain

10 private information in court filings, *see* Fed. R. Civ. P. 5.2(a), and authorize courts to grant

11 protective orders that "require redaction of additional information," *id.* 5.2(e)(1).  Even before

12 these amendments, courts in similar circumstances have imposed protective measures similar to

13 what Lenz proposes here.  In *Nichols v. Phila. Tribune Co.*, 22 F.R.D. 89 (E.D. Pa. 1958), for

14 example, the court confronted a dispute in a defamation suit about interrogatories calling for

15 "very personal" information about the plaintiff.  *Id.* at 92.  The court commanded the plaintiff to

16 answer, but, mindful of its power under what is now Rule 26(c) to prevent embarrassment,

17 ordered that the answers "be placed in a sealed envelope in the Clerk's file and [that] the

18 defendant not make public his copy of these answers until further order of this court."  *Id.*

19 The Protective Order Lenz asks this Court to enter protects the privacy interests of non-

20 parties while still giving Universal and its counsel full access to all responsive, non-privileged

21 material.  The protection Lenz seeks is well within this Court's power and an appropriate

22 exercise of it.

23 **C.    The Protective Order Cannot Restrict Use of Material Obtained Outside of Discovery**

24

25 The First Amendment entitles Lenz to search for information outside of the formal

26 discovery process and use it in any lawful way she sees fit, whether or not she also obtained the

27 same information in discovery subject to a protective order.  Indeed, while the Supreme Court

28 has noted that "[a] litigant has no First Amendment right of access to information made available

1  only for purposes of trying his suit," *Seattle Times,* 467 U.S. at 32, so too has it recognized the

2  First Amendment problems inherent in regulating "identical information covered by the

3  protective order as long as the information is gained through means independent of the court's

4  processes," *id.* at 34. Courts throughout the country recognize the First Amendment's protection

5  of such speech and the consequently strict requirements for an order restricting it.  *E.g.*, *In re*

6  *Rafferty*, 864 F.2d 151, 155 (D.C. Cir. 1988) (vacating order prohibiting dissemination of

7  material obtained by party outside of discovery); *Rodgers v. U.S. Steel Corp.*, 536 F.2d 1001,

8  1008-09 (3d Cir. 1976) (issuing writ of mandamus to vacate protective order prohibiting

9  dissemination of material obtained outside of discovery as an impermissible prior restraint).

10        The dispute about this provision is on all fours with *Rafferty*.  There, the magistrate judge

11  extended the existing protective order to material the petitioner had acquired before discovery

12  began, and the district court affirmed.  864 F.2d at 151-52.  Issuing a writ of mandamus to

13  reverse the lower court's ruling, the D.C. Circuit held that the magistrate judge had "exceeded

14  his delegated powers, which were limited to supervising the *discovery* process."  *Id.* at 155

15  (emphasis added).  The court expressly rejected the respondents' effort to "use the happenstance

16  of a discovery proceeding to place under a protective order materials not obtained through

17  discovery."  *Id.*  This is exactly what Universal is trying to do here.

18        Universal cannot justify a prior restraint on Lenz's First Amendment right to disseminate

19  and comment on material published in the press or otherwise independently acquired, whether or

20  not previously produced in discovery.  Nor is there any basis for requiring the receiving party to

21  show that the independent source obtained the material lawfully.  Indeed, in *Rafferty*, the court

22  quite clearly held that a protective order was "not a proper remedy" even if the *petitioner* (let

23  alone his independent source) had obtained the disputed material unlawfully.  864 F.2d at 155.

24  The respondents were "free to seek any legal or equitable relief available to them" to prevent

25  dissemination of allegedly improperly obtained material, but could not do so through a Rule

26  26(c) protective order.  *Id.*

27

28

### IV.   CONCLUSION

For the reasons above, Lenz respectfully asks this Court to enter the attached Protective Order.

Dated: April 9, 2009                                        KEKER & VAN NEST, LLP


                                                By:   */s/ Melissa J. Miksch*
                                                    ASHOK RAMANI
                                                    MICHAEL S. KWUN
                                                    MELISSA J. MIKSCH
                                                    Attorneys for Plaintiff
                                                    STEPHANIE LENZ