KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.
and UNIVERSAL MUSIC PUBLISHING
GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEPHANIE LENZ,

Plaintiff,

vs.

UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,

Defendants.

CASE NO. CV-07-03783-JF (RS)

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Date: May 6, 2009
Time: 9:30 a.m.
Judge: Hon. Richard G. Seeborg
Courtroom: 4

[Declaration of Kelly M. Klaus and [Proposed] Protective Order Filed Concurrently]

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 3

III. PLAINTIFF PROVIDES NO JUSTIFICATION FOR ELIMINATING THE NORTHERN DISTRICT'S HIGHEST TIER OF CONFIDENTIAL INFORMATION: "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ........ 5

A. It Is Undisputed That "Attorneys' Eyes Only" Treatment Will Apply To At Least Some Of The Documents Plaintiff Has Asked Defendants And Third Parties To Produce ........ 5

B. There Is Good Cause For A Limited Tier Of "Highly Confidential – Attorneys' Eyes Only" Documents In This Case ........ 6

1. Attorneys'-Eyes-Only Designations are Common and Justified in Cases Involving Individual Plaintiffs ........ 6

2. There Is Ample Cause To Believe That Plaintiff May Not Adequately Protect The Confidentiality Of Materials Designated "Highly Confidential – Attorneys' Eyes Only" ........ 7

3. Plaintiff's Insinuation That Defendants Are Demanding A Double Standard Is Unfounded And Untrue ........ 7

C. Plaintiff Fails To Demonstrate Any Need To Access Defendants' Highly Confidential Information ........ 8

IV. PLAINTIFF CANNOT DELETE UNILATERALLY-DESIGNATED "IRRELEVANT," "PRIVATE" PORTIONS OF RESPONSIVE DOCUMENTS ........ 10

V. THERE IS NO NEED FOR A VAGUE "PUBLIC DOMAIN" EXCEPTION TO THE PROTECTIVE ORDER ........ 11

VI. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999) ........ 10

*Creditors Comm. of Media Vision Tech., Inc. v. Jain*, 215 F.R.D. 587 (N.D. Cal. 2003) ........ 6

*Green v. Baca*, 219 F.R.D. 485 (C.D. Cal. 2002) ........ 6

*In re Enron Corp.*, 2002 WL 32116900 (S.D. Tex. 2002) ........ 10, 11, 12

*In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 120 F.R.D. 687 (C.D. Cal. 1988) ........ 6

*Knoll v. AT&T & Co.*, 176 F.3d 359 (6th Cir. 1999) ........ 10

*Lawson v. Extendicare Health Care Servs., Inc.*, 2008 WL 2518698 (N.D. Ind. 2008) ........ 10, 12

*Morris v. Swank Education Enterprises*, 2004 WL 1899987 (N.D. Ill. 2004) ........ 6

*Perfect 10, Inc. v. Google, Inc.*, No. CV-04-9484 (C.D. Cal. 2005) ........ 8

*Quontron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37 (S.D.N.Y. 1992) ........ 9

*Vertex Distrib, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 (9th Cir. 1982) ........ 11

*Wendt v. Walden University, Inc.*, 1996 WL 84668 (D. Minn. 1996) ........ 6

**STATUTES AND RULES**

17 U.S.C. § 512(f) ........ 3

## I. INTRODUCTION

Plaintiffs' Motion for the entry of a Protective Order with multiple provisions not found in the Northern District of California Form Protective Order should be denied. The Northern District Form Protective Order presumptively applies to *every* case in this District, whether one involving two corporate parties or one filed by an individual plaintiff. Although Plaintiff's papers omit this fact, Defendants offered weeks ago to stipulate to a Protective Order containing all but the three provisions that are the subject of Plaintiff's motion (and leaving Plaintiff the ability to file a motion to add those provisions). Declaration of Kelly M. Klaus ("Klaus Decl.") ¶ 8. Had Plaintiff accepted that proposal, confidential documents — including numerous documents that *Plaintiff* is withholding pending the entry of a Protective Order — would have been produced, and the parties would have been substantially closer to completing document discovery in what is, by any definition, a "small" case (concerning just a single video on YouTube).

The changes that Plaintiff asks the Court to make to the Northern District Form Protective Order are not justified. What is more, Plaintiff's arguments in support of each of those changes rest on hypothetical disputes that have not materialized and that may never materialize:

***First***, Plaintiff asks the Court to modify the Northern District Form Protective Order to add Plaintiff to the list of persons entitled to review documents designated "Highly Confidential – *Attorneys'* Eyes Only." Plaintiff, however, is not an attorney. She is a party. While parties of all types (corporate and individual) have an interest in their litigation, two-tiered Protective Orders limit disclosure of the most confidential documents to attorneys responsible for the litigation. Plaintiff does not dispute that a two-tier Protective Order is appropriate in this case. Moreover, Plaintiff has conceded there are some documents (namely, Defendants' agreements with YouTube) that only her lawyers, and not Plaintiff herself, should see. Klaus Decl. ¶ 7. While Defendants expect that a relatively small number of additional documents will be designated "Highly Confidential – Attorneys' Eyes Only," there will be other such documents, because Plaintiff's requests (both to Defendants and to third parties, including YouTube) ask for documents that closely relate to the YouTube agreement. *Id*. Exhs. A–D.

Plaintiff implies in her Motion that there is some bias in favor of lawyers over non-lawyers in terms of who has access to "Highly Confidential – Attorneys' Eyes Only" information. *See* Mot. at 5. That is not true. The restrictions at the highest level of confidentiality in the Northern District Form Protective Order have nothing to do with whether lawyers are better people than the clients they represent. The demarcation between lawyers and parties instead reflects the fact that lawyers are subject to regulations and restrictions (including being officers of the Court and subject to State Bar disciplinary procedures) that do not operate to inform the discretion of non-lawyer parties. While the potential for a non-lawyer party to disclose "Highly Confidential – Attorneys' Eyes Only" exists in every case, Defendants in this case have particular cause for concern. Plaintiff writes a publicly available "blog," on which (contrary to the self-serving posting included as an exhibit to her Motion) Plaintiff has routinely fulminated against Defendants and against the recording artist Prince. Klaus Decl. Exhs. E–G. Defendants have ample cause to be concerned about Plaintiff having access to their most highly confidential documents. *See id.* Exh. H.

Plaintiff's argument that not allowing her to see documents designated "Highly Confidential – Attorneys' Eyes Only" will impair her ability to prosecute this case is unfounded and unripe. *If* Defendants produce a document with that designation, and *if* the *eight* outside lawyers representing Plaintiff review the document and believe it should be designated "Confidential" (in which case Plaintiff could review it under the Protective Order), and *if* Defendants refuse to re-designate the document, then there will be an issue for this Court to resolve. There is no issue now.

***Second***, Plaintiff asks the Court to create an entirely new category of protected documents — "non-party private facts" — that would not only receive blanket treatment as "Highly Confidential – Attorneys' Eyes Only," but which Plaintiff could redact if she unilaterally deemed the redacted information to be "irrelevant." Here, too, there is no actual issue presented to the Court. Plaintiff has not provided the Court (or Defendants) with a single example of such an "irrelevant" "non-party" "private" fact, the production of which (even subject to "Confidential" treatment under the Protective Order) would be so damaging that it would justify redactions based

on relevance objections. Plaintiff has not provided a coherent legal standard by which to evaluate such redactions, nor has she cited any case that has sanctioned such redactions. Responsive documents often implicate statements by or about non-parties. If the document merits "Confidential" treatment, Plaintiff can designate it as such. She should not be allowed to make relevance-based redactions.

***Third***, Plaintiff asks the Court to add to the Northern District Form further vague and unnecessary language about the right she claims to use information in the "public domain" or obtained from "other sources." Plaintiff provides no evidence that this is or ever is likely to become a real issue. Whatever rights the First Amendment protects regarding information obtained outside of the lawsuit, Plaintiff (like any other litigant) retains those rights under the Northern District Form Protective Order. That may explain why the Northern District Form *does not include* the type of provision that Plaintiff requests.

The Protective Order the parties had agreed to (minus the above three changes requested by Plaintiff) is fully appropriate, and Defendants respectfully request that the Court enter it.[1] That form of Order is lodged with this Opposition. Alternatively, Defendants do not object if the Court simply enters the Northern District Form Protective Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her complaint in July 2007, seeking money damages under 17 U.S.C. § 512(f) based on Defendants' notifying YouTube that Plaintiff's video posting (entitled "Let's Go Crazy #1") made an admittedly unauthorized use of the Prince song "Let's Go Crazy." To prevail on that claim, Plaintiff must show, among other things, that Defendants sent the notice subject to the Digital Millennium Copyright Act (they did not); that Defendants knowingly and materially misrepresented that her posting was infringing (they did not); and that Plaintiff has suffered actual

[1] In a footnote, Plaintiff also suggests the addition of sections 7.2(f) and 7.3(f) to the Protective Order, permitting disclosure of Confidential and Highly Confidential documents during deposition of persons "authorized or otherwise eligible" to view them. Mot. at 4, n.5. This language is vague and imprecise. If Plaintiff intends to reference "employees or officers of the producing party who at the time of the document and the proposed disclosure would have had the authority to review it," then that is what the language should say.

damages (it is apparent that she has none). *See* Order Denying Mot. to Dismiss, Dkt. No. 45, at 9; Order Denying Mot. To Certify Interlocutory Appeal, Dkt. No. 53, at 4.

Plaintiff's papers paint a picture of her as reticent to comment about this case. Mot. at 6. That is simply not true. Since Plaintiff filed this case, she and her lawyers (originally, just from the organization Electronic Frontier Foundation ("EFF"), since expanded to include two Bay Area law firms) have used this case as the springboard for a public-relations offensive. *See, e.g.*, Klaus Decl. Exh. I. In numerous postings on her "blog" site, Plaintiff has routinely made disparaging and vituperative comments about Defendants and about Prince (the owner of the copyright in "Let's Go Crazy," which copyright Defendant Universal Music Corp. administers). *See id*. Exhs. E–G.

Both parties served Requests for Production in the closing months of 2008, and each has since withheld documents on confidentiality grounds, pending the negotiation of a protective order. *See id*. ¶ 2. On January 19, Defendants proposed a draft Stipulated Protective Order, taken largely from the Northern District's form. *Id*. Plaintiff returned a significantly edited version on January 30. Three of Plaintiff's changes — which have persisted through various iterations of the draft Protective Order — are the points at issue on this motion. *Id*. ¶¶ 3–6. Notwithstanding this disagreement, Defendants offered to stipulate to all of the provisions of the Protective Order to which the parties agreed, thus permitting the production of all "Confidential" documents, pending any further motion practice with respect to Plaintiff's proposed modifications. Plaintiff declined to proceed in this manner. *Id*. ¶ 8.[2]

[2] Plaintiff suggests that she alone "has patiently waited for documents" in this case. Mot. at 3:15. That is misleading. Plaintiff has not produced any documents that she wants to designate "Confidential," including any documents with what she calls "irrelevant" "private" facts. Moreover, Plaintiff only produced five days ago numerous communications that she has had with YouTube and YouTube users, as well as the actual video footage that she shot and from which she selected the footage for her YouTube posting. Klaus Decl. ¶ 10. Plaintiff also has yet to produce any document showing that she has incurred even a penny's worth of damages based on the notification sent to YouTube in this case.

## III. PLAINTIFF PROVIDES NO JUSTIFICATION FOR ELIMINATING THE NORTHERN DISTRICT'S HIGHEST TIER OF CONFIDENTIAL INFORMATION: "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

### A. It Is Undisputed That "Attorneys' Eyes Only" Treatment Will Apply To At Least Some Of The Documents Plaintiff Has Asked Defendants And Third Parties To Produce

The Northern District of California Form Protective Order provides for two tiers of confidentiality: "Confidential," and "Highly Confidential – Attorneys' Eyes Only." The former category may be disclosed to parties themselves (subject to the Protective order), but the latter may only be disclosed to a party's litigation counsel. The reason for having two tiers of designations is obvious: requests for documents and testimony frequently call for a party to produce trade secret and other highly sensitive information that, if disclosed outside the needs of the case, will cause the disclosing party (and/or third parties) significant harm.

Importantly, Plaintiff does not dispute the need for two tiers of information protected by the Protective Order. What is more, Plaintiff does not even dispute that there are some documents she has requested that should not be disclosed to her. Plaintiff has asked for, *inter alia*, "all contracts with YouTube relating to policing or responding to infringement of . . . copyrights . . . ." *See* Klaus Decl. Exh. A, at 4. Plaintiff has likewise served subpoenas on YouTube, seeking, among other materials, all "documents relating to any agreement with Universal." *Id*. Exh. C, at 4; Exh. D, at 2. Defendants have agreements with YouTube, and they are willing to produce them, but Defendants' Agreements contain highly confidential trade secret information. Defendants, obviously, are not the only companies that have (or may have) agreements with YouTube. Nor is YouTube the only party that has permission to use Defendants' copyrighted works. The trade secret status of Defendants' Agreements with YouTube agreement is undisputed. And Plaintiff's counsel *has conceded* that it is unnecessary to show Plaintiff Defendants' agreements with YouTube. Plaintiff, in fact, offered to stipulate to treat it as Attorneys' Eyes Only. *See id.* ¶ 7. That does not resolve the issue, however, because there will be some additional documents that refer to terms of Defendants' Agreements with YouTube and/or financial or other trade secret provisions relating to other agreements. *See, e.g.*,

*id.* Exh. B, at 8–10. Such information is exactly the type of information commonly designated "Highly Confidential – Attorneys' Eyes Only" in litigation.

### B. There Is Good Cause For A Limited Tier Of "Highly Confidential – Attorneys' Eyes Only" Documents In This Case

#### 1. Attorneys'-Eyes-Only Designations are Common and Justified in Cases Involving Individual Plaintiffs

Plaintiff's motion to change the Northern District Protective Order rests on a false premise, namely, that "Attorneys' Eyes Only" treatment is justified only to protect trade secrets as between two corporate competitors. See Plaintiff's Mot. at 5:6–9 ("Lenz, though, is a mother, homemaker, writer, and editor. She has no involvement in the music industry (other than as a consumer), is not a competitor of Universal, and is never called upon to engage in the sort of 'competitive decisionmaking' at issue in *Brown Bag*.").

Plaintiff is just wrong that the risk of a competitive threat from the individual entitled to review the document provides the only justification for "Attorneys' Eyes Only" treatment, or that individual plaintiffs are always allowed to review every document that their opponent produces in litigation. Two-tiered protective Orders are common in a variety of contexts, including those involving individual plaintiffs. Thus, as reflected in cases such as *Morris v. Swank Education Enterprises*, 2004 WL 1899987, at *3 (N.D. Ill. 2004), and *Wendt v. Walden University, Inc*., 1996 WL 84668, at *1 (D. Minn. 1996), courts regularly order materials produced on an "Attorneys' Eyes Only" basis in employment discrimination and harassment claims. Similar rules are applied in a variety of other contexts, including individual civil-rights claims, *see, e.g.*, *Green v. Baca*, 219 F.R.D. 485, 488 (C.D. Cal. 2002) (§ 1983 claim), and fraud claims, *see, e.g.*, *Creditors Comm. of Media Vision Tech., Inc. v. Jain*, 215 F.R.D. 587, 590 (N.D. Cal. 2003). *See also In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Sec. Litig.*, 120 F.R.D. 687, 692 (C.D. Cal. 1988). The rule of these cases is reflected in the Northern District Form Protective Order, which recognizes two tiers of "Confidential" information. There is no reason for a different rule in this case.

**2. There Is Ample Cause To Believe That Plaintiff May Not Adequately Protect The Confidentiality Of Materials Designated "Highly Confidential – Attorneys' Eyes Only"**

The risks associated with disclosure of highly commercially sensitive information to individual litigants are exacerbated, here, by particular risks of disclosure and dissemination posed by the Plaintiff. Plaintiff's demonstrated fixation on Prince, and oft-published rancor regarding Universal, raises significant concerns about her ability to respect the confidentiality of highly sensitive business information regarding those parties. Defendants do not base their concerns on mere allegations of Plaintiff's animus. *See* Kwun Exh. D, at 2. Plaintiff routinely "blogs" about this case, Universal and about Prince. Her postings often contain intemperate and derogatory language. *See, e.g.*, Klaus Decl. Exh. E ("Let's be honest here, Prince: you didn't want anyone to video- or audio-record your performance and put it online. People know this about you. Guess it's more desirable to lie than to perpetuate your image as someone who despises and suspects his own fans".); *id*. Exh. F ("Anyway, the amended complaint zeroes in on His Purpleness as well. We found out about his personal *cough* interest in removing my video after we filed our suit and now, well, now we know he's just a little dick in a crushed velvet suit. I wonder if that will be admitted as evidence. Hrm."); *id.* Exh. G ("Prince is going to sh*t his little purple pants."). Defendants have more than ample cause to be concerned about how scrupulously Plaintiff — who is neither an officer of the Court nor subject to State Bar disciplinary procedures — would safeguard from disclosure information designated "Highly Confidential – Attorneys' Eyes Only" treatment. *See id.* Exh. H.

**3. Plaintiff's Insinuation That Defendants Are Demanding A Double Standard Is Unfounded And Untrue**

Plaintiff also claims that Defendants are trying to impose a double standard, because they asked for (and Plaintiff agreed) that Harvey Geller, an attorney who is the head of litigation for Universal Music Group, be a permitted recipient of "Highly Confidential – Attorneys' Eyes Only" information. Plaintiff's current argument is that it is unfair for Defendants to allow Mr. Geller to see documents that she designates "Attorneys' Eyes Only," while not allowing Plaintiff similar access to documents that Defendants (or third parties) designate at that level.

This is a false comparison. In the first place, Plaintiff's counsel has admitted that Plaintiff *has no* documents that she intends to designate "Highly Confidential – Attorneys' Eyes Only." Klaus Decl. ¶ 9. Hence, there is no double standard, because there is no dispute that Mr. Geller is entitled to review all of Plaintiff's documents, including those she designates "Confidential." More fundamentally, Mr. Geller and Plaintiff are not comparable in terms of access to information designated "Attorneys' Eyes Only." Mr. Geller is a practicing *attorney*. He oversees this litigation on behalf of Defendants, and (like all outside counsel) is an officer of the Court. *Id*. It is entirely reasonable for an in-house lawyer who has responsibility for the litigation to have access to "Attorneys' Eyes Only" documents. Plaintiff, in contrast, is not a lawyer and she is not an officer of the Court.

**C. Plaintiff Fails To Demonstrate Any Need To Access Defendants' Highly Confidential Information**

Plaintiff offers no evidence that her representation by or communications with her eight outside lawyers will suffer in any way if the Protective Order allows an "Attorneys' Eyes Only" designation. Accordingly, she has provided *no facts* supporting any necessity to disclose these sensitive documents to Plaintiff, which would justify the attendant risk of disclosure and extreme harm to Defendants. The very order cited in Plaintiff's brief underscores the insufficiency of her position: the Court in *Perfect 10, Inc. v. Google, Inc.*, No. CV-04-9484 (C.D. Cal. 2005) granted the Plaintiff's CEO, Mr. Zeda, access to "Highly Confidential" materials only after finding that he had a "*unique need* for access to all discovery because of his *daily personal involvement with the technical aspects of [the] litigation*, consistent with his level of involvement in similar types of Perfect 10 intellectual property litigation," and that he had an "untarnished record" of abiding by Protective Orders in the past. *See* Kwun Decl. Exh. D, at 2 (emphasis added).

No such facts exist here. As Plaintiff's counsel's own publications indicate, she is the *de facto* representative of test litigation brought by the Electronic Frontier Foundation (to whose counsel of record Highly Confidential information *is* available under the terms of the Order). *See* Klaus Decl. Exhs. I–K. Unlike the findings with respect to Mr. Zeda, there is no showing that Plaintiff has any expertise relevant to the planning for this litigation; no "daily . . . involvement"

in the technical aspects of this case; and no prior record of compliance. Thus, Plaintiff has not demonstrated any need to access such sensitive commercial information that outweighs Defendant's factually-supported concerns. *See Quontron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) ("this Court is hesitant to permit Quotron employees access to material that may well contain proprietary ADP programming. Furthermore, Quotron has not demonstrated a need for Quotron employees' access to the documents sufficient to outweigh these concerns.").

Finally, if Plaintiff's counsel thinks that a document should not be designated "Highly Confidential – Attorneys' Eyes Only," there is a readily available avenue for relief: they can ask Defendants to re-designate the document. *See* Defendants' Proposed Protective Order ¶¶ 6.1–6.3. Plaintiff's argument that such a request will force her counsel to reveal "work product" is baseless. First, compliance with procedures for designating (or requesting de-designation) of documents under a protective order does not reveal any "work product." Designations and re-designations require communication of information to the other side; there is no "work product" to protect in such communications. If Defendants designate a document "Attorneys' Eyes Only," they will be representing (under terms taken from the Northern District Form Protective Order) that it contains "extremely sensitive 'Confidential Information or Items' whose disclosure to another Party or nonparty would create a substantial risk of serious injury that could not be avoided by less restrictive means." If Plaintiff's counsel consider that designation inappropriate, they can identify the document and articulate their reason for re-designating it. There is no work product involved in any such communication.

Nor does the procedure for designating and re-designating documents pose any risk of exposing Plaintiff's counsel's thoughts about what he or she believes to be an important document. This is not a massive case involving a mountain of documents, the culling of which could reveal counsel's strategy. By the standards of this District (or any other), it is not even a case of ordinary complexity or volume of documents: the case concerns a single music video posted to YouTube and events spanning at most several months. Even if Plaintiff's counsel decided to request re-designation of a document from "Highly Confidential – Attorneys' Eyes

Only" to "Confidential," the existence or contents of such document will not come as any surprise to Defendants' counsel or reveal any privileged strategic thinking.

For all of the foregoing reasons, Plaintiff's request to add herself — a non-lawyer party — to the list of permitted recipients of "Highly Confidential – Attorneys' Eyes Only" information should be rejected.

## IV. PLAINTIFF CANNOT DELETE UNILATERALLY-DESIGNATED "IRRELEVANT," "PRIVATE" PORTIONS OF RESPONSIVE DOCUMENTS

Plaintiff's second proposal would give her unilateral discretion not only to designate, but to *delete* from the discovery record, contents of otherwise responsive documents that Plaintiff decides contain "irrelevant," "non-party" and "private" facts. *See* Plaintiffs Proposed Protective Order ¶¶ 5.3, 7.3(h), 7.4(d). This provision is vague and unspecific, as well as unsupported by any showing of good cause. Plaintiff has not provided the Court or Defendants with any material showing what she would propose to redact. Nor has Plaintiff cited any law allowing a party unilateral and unfettered discretion to redact portions of responsive documents that a party or their lawyer decides is "irrelevant." The law is to the contrary: far more sensitive third-party information is regularly included as part of document discovery, and is adequately protected by a confidentiality designation. *See, e.g., In re Enron Corp.*, 2002 WL 32116900, at *1 (S.D. Tex. 2002) (designating as confidential Enron's personnel files, including employee's social security numbers, medical histories, sexual harassment allegations, and credit histories); *Knoll v. AT&T & Co.*, 176 F.3d 359, 365 (6th Cir. 1999) (recognizing a party's "valid interest in the privacy of nonparty personnel files," and citing cases thus mandating confidential or highly-confidential treatment for those files).

Plaintiff also fails to provide any enforceable standard governing her proposed deletions. Protective orders may only extend to "properly demarcated categor[ies] of legitimately confidential information"; courts may not enter orders that fail to provide guidance as to what types of information are protected, or that grant parties *carte blanche* to protect or seal materials at their discretion. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999); *accord Lawson v. Extendicare Health Care Servs., Inc.*, 2008 WL

2518698, at *1 (N.D. Ind. 2008) (denying motion for entry of protective order where "the Court [was] not satisfied that the parties know what information constitutes protected confidential information . . ."); *Enron*, 2002 WL 32116900, at *1 (denying motion for protective order on the grounds that the categories are "broad" and the "definitions of key terms . . . vague"). *Cf. Vertex Distrib, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (noting, in the context of consent judgments, that where the language of an order is "too vague, it cannot be enforced; to do so would be an invalid exercise of judicial authority.").

Plaintiff's proposed provision violates these principles. Plaintiff's provision would leave the determination of "relevance" and "priva[cy]" to her and her lawyer's discretion. Plaintiff's purported "compromise" —to produce a set of unredacted documents for Defendants' counsel to review and challenge — does not alleviate the lack of standards in Plaintiff's order. It only invites expense, motion practice, and delay. Defendants should not bear the burden of challenging redactions against a vague standard, particularly where the underlying information is well-protected by the designation of "Confidential." Given Plaintiff's willingness to disclose these materials to Defendants' counsel, it is unclear how such a complicated system serves any legitimate purpose.

## V. THERE IS NO NEED FOR A VAGUE "PUBLIC DOMAIN" EXCEPTION TO THE PROTECTIVE ORDER

Finally, Plaintiff asks the Court to add a provision, not found in the Northern District Form Order, that would explicitly except from the Protective Order's scope information "from the public domain or from other sources." *See* Plaintiff's Proposed Protective Order ¶ 13.4. Plaintiff's overblown rhetoric aside, this is a non-issue.

What happened during the meet-and-confer is that Plaintiff requested that the provision include undefined terms like "public domain" and "other sources." Plaintiff has *never* provided a coherent definition of this superfluous language. The EFF, Plaintiff's counsel, has an expansive and political view of what is in the "public domain." *See* Klaus Decl. Exh. L. As with their proposed language regarding "irrelevant" "nonparty" "private" facts, this reference to the "public

domain" and "other sources" is vague and unintelligible. *See Lawson*, 2008 WL 2518698, at *1; *Enron*, 2002 WL 32116900 at *1.

In response to Plaintiff's requested language, Defendants were willing to try to agree on a compromise, putting more meat on the bones of the definition of what was outside the Protective Order's scope. *See* Kwun Decl., Exh. A, ¶ 13.4. Plaintiff now wildly characterizes this language as a "prior restraint." It is not, but in any event, the most sensible solution is just not to include this type of provision, which is exactly how the Northern District Form Protective Order treats this issue. Whatever law exists outside the Protective Order about the use of information lawfully obtained from third party sources exists without this provision.

## VI. CONCLUSION

For the above-stated reasons, Defendants respectfully request that the Court deny Plaintiffs' motion and enter either the contemporaneously submitted Protective Order or the Northern District Form Protective Order.

Dated: April 20, 2009

MUNGER, TOLLES & OLSON LLP

By: */s/ Kelly M. Klaus*
KELLY M. KLAUS

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.
AND UNIVERSAL MUSIC PUBLISHING GROUP