1  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
2  L. ASHLEY AULL (SBN 257020)
   Ashley.Aull@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
5  Telephone:     (213) 683-9100
   Facsimile:     (213) 687-3702
6
   Attorneys for Defendants
7  UNIVERSAL MUSIC CORP.,
   UNIVERSAL MUSIC PUBLISHING, INC.
8  and UNIVERSAL MUSIC PUBLISHING
   GROUP
9

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15  STEPHANIE LENZ,                     CASE NO.  CV-07-03783-JF (RS)

16              Plaintiff,              **DECLARATION OF KELLY M.
                                        KLAUS IN SUPPORT OF
17      vs.                             DEFENDANTS' OPPOSITION TO
                                        PLAINTIFF'S MOTION FOR ENTRY
18  UNIVERSAL MUSIC CORP.,              OF A PROTECTIVE ORDER**
    UNIVERSAL MUSIC PUBLISHING, INC. and
19  UNIVERSAL MUSIC PUBLISHING GROUP,   Date:  May 6, 2009
                                        Time:  9:30 a.m.
20              Defendants.             Judge:  Hon. Richard G. Seeborg
                                        Courtroom:  4
21

22                                      [Defendants' Opposition in Support of
                                        Plaintiff's Motion for Entry of a Protective
23                                      Order and [Proposed] Protective Order Filed
                                        Concurrently Herewith]
24

25

26

27

28

I, Kelly M. Klaus, declare and state:

1.      I am a partner with the law firm of Munger, Tolles & Olson LLP, counsel of record for the Defendants in the above-captioned matter.  The contents of this Declaration are within my personal knowledge.  If called on as a witness in this matter, I could and would testify competently to the contents of this Declaration.

2.      The parties exchanged Requests for Production in the closing months of 2008, and both have withheld confidential documents pending the negotiation of a protective order.  On January 19, 2009, Defendants' counsel sent Plaintiff's counsel a draft Stipulated Protective Order, which was based on the Northern of District of California Form Protective Order, available at cand.uscourts.gov/cand/form.nsf/7813fd3053452aef88256d4a0058fb31/5e428ee77bf8e03b88256 dd3005d9450/$FILE/StipulatedProtectiveOrder-1-03.pdf.

3.      On January 30, 2009, Plaintiff's counsel sent back a revised draft of the Stipulated Protective Order.  The draft that Plaintiff's counsel returned introduced each of the three provisions at issue on this motion to Defendants' draft (which changes also are changes to the Northern District Form Protective Order).  Plaintiff's revised version of the Stipulated Protective Order also included other requested changes, which are not at issue on this motion.

4.      On February 18, 2009, counsel for both sides met and conferred by telephone to discuss a number of discovery issues, including the Stipulated Protective Order.

5.      On February 23, 2009, Defendants' counsel sent Plaintiff's counsel a revised draft of the Stipulated Protective Order.  That revised draft accepted a number of changes that Plaintiff's counsel had requested in their January 30, 2009 draft, but did not accept the three changes that are the subject of Plaintiff's motion.

6.      On March 4, 2009, Plaintiff's counsel sent Defendants' counsel a revised draft of the Stipulated Protective Order, which substantially restored the three modifications that are the subject of Plaintiff's motion.

7.      On March 24, 2009, counsel for both sides had another telephonic meet-and-confer to discuss, among other issues, the outstanding disputes regarding the Stipulated Protective Order. One of the items we discussed was Plaintiff's request to have access to documents that

1   Defendants or third parties designated as "Highly Confidential – Attorneys' Eyes Only."

2   Plaintiff's counsel had asked Defendants to identify which types of documents Defendants

3   believed Plaintiff should not have access to under the Stipulated Protective Order.  I identified as

4   an example Defendants' agreements with YouTube, which agreements are called for in Plaintiff's

5   document requests both to Defendants and to YouTube.  During the March 24 meet-and-confer,

6   Plaintiff's counsel, Mr. Kwun, stated that Plaintiff would be willing to stipulate that she would

7   not have access to those agreements.

8        8.      During the same March 24, 2009 meet-and-confer, counsel discussed how to seek

9   resolution of their outstanding disputes regarding the Stipulated Protective Order, so that each

10   side could immediately start producing documents that they intended to designate as

11   "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under whatever Protective Order

12   was entered in the case.  I told Plaintiff that Defendants would be willing to enter into a Stipulated

13   Protective Order that did not include the three modifications that are the basis for Plaintiff's

14   motion, but that would have a provision in Paragraph 13 stating that each side would reserve its

15   rights to seek additional changes to the form of the Stipulated Protective Order.  Plaintiff would

16   not agree to proceed that way.

17        9.      During the same March 24, 2009 meet-and-confer, Plaintiff's counsel asserted that

18   it was unfair for the category of authorized recipients of "Highly Confidential – Attorneys' Eyes

19   Only" information to include Harvey Geller but not to include Plaintiff.  Mr. Geller is the Deputy

20   General Counsel, Senior Vice President, Business and Legal Affairs, for the Universal Music

21   Group.  Mr. Geller is the House Counsel on Defendants' side who is responsible for supervising

22   this litigation.  Under both parties' version of the Protective Order, it is undisputed that Mr. Geller

23   would be able to review documents designated by Plaintiff as "Confidential."  During the March

24   24, 2009 meet-and-confer, I asked Plaintiff's counsel, Mr. Kwun, whether Plaintiff had any

25   documents to produce that she intended to designate as "Highly Confidential – Attorneys' Eyes

26   Only."  Mr. Kwun replied that he was not aware of any such documents.

27        10.      To date, Plaintiff has not produced any documents that she intends to designate as

28   "Confidential" under whatever Protective Order is entered in this case.  On April 15, 2009, five

1    days before the date for Defendants' response to Plaintiff's motion, Plaintiff produced documents

2    that she had not previously produced in this litigation, including her communications with

3    YouTube and users of YouTube, as well as the original video footage that Plaintiff recorded and

4    from which she selected the posting that is at issue in this litigation.

5         11.    Attached as Exhibit A is a true and correct copy of Plaintiff's First Set of Requests

6    for Production to Defendants.

7         12.    Attached as Exhibit B is a true and correct copy of Plaintiff's First Set of

8    Interrogatories to Defendants.

9         13.    Attached as Exhibit C is a true and correct copy of Plaintiff's Subpoena for

10   Documents to YouTube, Inc.

11        14.    Attached as Exhibit D is a true and correct copy of Plaintiff's Deposition

12   Subpoena to YouTube, Inc.

13        15.    Attached as Exhibit E is a true and correct copy of Plaintiff's October 14, 2008

14   posting to her "blog," entitled "So anyway," available at

15   http://piggyhawk.wordpress.com/2008/10/14/picked-up-the-phone-dropped-it-on-the-floor/.

16        16.    Attached as Exhibit F is a true and correct copy of Plaintiff's April 21, 2008

17   posting to her blog, available at http://piggyhawk.wordpress.com/2008/04/21/twerple-pain/.

18        17.    Attached as Exhibit G is a true and correct copy of Plaintiff's February 12, 2008

19   posting to her blog, available at http://blog.piggyhawk.net/?p=458.

20        18.    Attached hereto as Exhibit H is a true and correct copy of Plaintiff's March 21,

21   2009 posting to her blog, available at http://piggyhawk.wordpress.com/2009/03/21/titlefreezone/.

22        19.    Attached hereto as Exhibit I is a true and correct copy of a press release posted on

23   EFF's web-site, http://www.eff.org/cases/lenz-v-universal.

24        20.    Attached hereto as Exhibit J is a true and correct copy of a page from the EFF's

25   web-site entitled "About EFF," located at http://www.eff.org/about.

26        21.    Attached hereto as Exhibit K is a true and correct copy of a January 2009 press

27   release from the EFF entitled, "YouTube's January Fair Use Massacre," available at

28   http://www.eff.org/deeplinks/2009/01/youtubes-january-fair-use-massacre.

1          22.      Attached hereto as Exhibit L are pages from EFF's website, available at

2    http://www.eff.org/deeplinks/2006/02/blogging-wipo-understanding-public-domain.

3          I declare under penalty of perjury under the laws of the United States that the foregoing is

4    true and correct and that this Declaration was executed this 20th day of April at Los Angeles,

5    California.

6                                                            /s/ Kelly M. Klaus
                                                           KELLY M. KLAUS
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Michael Kwun (SBN 198945)
*michael@eff.org*
Corynne McSherry (SBN 221504)
*corynne@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                              Plaintiff,<br><br>      v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC.,<br><br>      and<br><br>UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                              Defendants. | No. C 07-03783-JF<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION** |

**YOU ARE HEREBY REQUESTED** pursuant to Rule 34 of the Federal Rules of Civil Procedure to produce for inspection and copying the documents described below.  Pursuant to F.R.C.P. 34(b), the requested documents shall be produced for inspection and copying within thirty (30) days of the date of service of these Requests to Michael Kwun or his designated representative, in the offices of the Electronic Frontier Foundation, 454 Shotwell St., San Francisco, California, 94110, or at such other place as counsel for the parties shall mutually

1

1   agree.

2   **INSTRUCTIONS AND DEFINITIONS**

3   1.   "UNIVERSAL" means defendants Universal Music Corp., Universal Music

4   Publishing, Inc., and Universal Music Publishing Group, each of their predecessors and

5   successors, each of their subsidiaries, subsidiaries of subsidiaries, divisions, affiliates in which

6   they or any of them own a majority or a controlling interest, and other organizational or

7   operating units, and each of any of their directors, officers, employees, agents or representatives,

8   attorneys, consultants, investigators, contractors, and subcontractors, and all persons acting or

9   purporting to act on any of their behalf for any purpose whatsoever.

10   2.   "LENZ" means plaintiff Stephanie Lenz.

11   3.   In answering these document requests, UNIVERSAL is required to furnish all

12   documents that are available to UNIVERSAL, not merely such documents as the persons

13   preparing the responses know of their own personal knowledge, including without limitation

14   documents in the possession of UNIVERSAL's attorneys, employees, or other persons directly

15   or indirectly employed by, or connected with, UNIVERSAL or its attorneys or consultants, or

16   anyone acting in UNIVERSAL's behalf or otherwise subject to UNIVERSAL's control. In

17   answering these document requests UNIVERSAL is requested to make a diligent search of its

18   records or of other papers and materials in its possession or other possession of its employees,

19   attorneys, consultants, or other representatives.

20   4.   Please organize and label the documents UNIVERSAL produces according to

21   Request Number, in accordance with Fed. R. Civ. P. 34(b)(i).  Please produce any electronically

22   stored information in the form in which it is ordinarily maintained, in accordance with Fed. R.

23   Civ. P. 34(b). If any document was, but no longer is, in Plaintiff's possession, custody or

24   control, state: (1) the disposition of the document; (2) the date such disposition was made; (3) the

25   identity and address of the present custodian of the document or, if it no longer exists, identify

26   (a) the person(s) who made the decision to dispose of the documents; (b) state the reason(s) for

27   the disposition; and (c) provide a description of the document and its contents.

28   5.   In the event any information is withheld on a claim of attorney-client privilege,

2

work product immunity, or other allegedly applicable privilege or immunity, UNIVERSAL is required to provide a privilege log which includes at least the following information: the nature of the information contained in the withheld document, the date of the document, its source, and subject matter, and all persons to whom the document has been disclosed, such as would enable a privilege or immunity claim to be determined, and a citation to any authority which UNIVERSAL asserts supports any claim of privilege or immunity.

6.     If UNIVERSAL cannot respond to a document request fully, after a diligent attempt to attain the requested information, UNIVERSAL is required to respond to the document request to the extent possible, specify the portion of the document request to which UNIVERSAL is unable to respond, and provide whatever information UNIVERSAL has regarding the portion to which it is not responding.

7.     The term "DOCUMENT(S)" means and includes any kind of written, typewritten, or printed material whatsoever, and any computer readable media, including, but without limitation, papers, agreements, contracts, notes, memoranda, presentations, presentation materials, correspondence, letters, telegrams, statements, invoices, personal diaries, records, books, maps, blueprints, forms, transcriptions and recordings, translations to any language, magnetic tapes, discs, printed cards, programming instructions, assembly diagrams, schematic diagrams, and manuals, of which UNIVERSAL has knowledge or information, either in UNIVERSAL's possession or under UNIVERSAL's custody or control, relating to or pertaining in any way to the subject matters in connection with which it is used and includes, with but without limitation, originals, all file copies, and other copies, no matter how or by whom prepared, and all drafts prepared in connection with any such writings, whether used or not, regardless of whether the document still exists, and regardless of who has maintained custody of such documents.

8.     The term "PERSON(S)" includes any individual, firm, proprietorship, partnership, association, joint venture, corporation, governmental agency, other entity, or combination of any of the above.

9.     The term "RELATING TO" means concerning, referring to, summarizing,

3

1  reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning,

2  discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or

3  otherwise relating to the subject matter.

4      10.    The term "YOUTUBE" means YouTube, LLC and YouTube, Inc., as well as any

5  PERSON acting on their behalf.

6      11.    The term "HOLDEN VIDEO" means the video available on YouTube at the URL

7  <http://www.youtube.com/watch?v=N1KfJHFWlhQ>.

8      12.    The term "PRINCE" means Prince Rogers Nelson, as well as any PERSON acting

9  on his behalf.

10      13.    Unless otherwise indicated, these requests pertain to the time period from January

11  1, 2005, through the date of your responses.

12      14.    Unless otherwise indicated, these requests should not be read to encompass

13  materials on peer-to-peer file-sharing networks.

14  **REQUEST FOR PRODUCTION NO. 1:**

15      All DOCUMENTS RELATING TO this lawsuit.

16  **REQUEST FOR PRODUCTION NO. 2:**

17      All DOCUMENTS RELATING TO the HOLDEN VIDEO.

18  **REQUEST FOR PRODUCTION NO. 3:**

19      All DOCUMENTS RELATING TO LENZ.

20  **REQUEST FOR PRODUCTION NO. 4:**

21      All communications with YOUTUBE RELATING TO any material UNIVERSAL has

22  claimed infringes any of its copyrights or the copyrights of PERSONS on whose behalf

23  UNIVERSAL is authorized to act, and all DOCUMENTS RELATING TO any such

24  communications, all contracts with YouTube RELATING TO policing or responding to

25  infringement of the copyrights in any material UNIVERSAL owns or with respect to which

26  UNIVERSAL is authorized to act.

27  **REQUEST FOR PRODUCTION NO. 5:**

28      All communications with PRINCE RELATING TO material on the Internet that

1   allegedly infringes any copyrights RELATING TO material as to which PRINCE claims to hold

2   a copyright interest, and all DOCUMENTS RELATING TO any such communications.

3   **REQUEST FOR PRODUCTION NO. 6:**

4        All communications with PRINCE RELATING TO allegations of copyright on

5   YOUTUBE, and all DOCUMENTS RELATING TO any such communications.

6   **REQUEST FOR PRODUCTION NO. 7:**

7        All DOCUMENTS RELATING TO any of the videos identified in the email that is

8   attached as Exhibit A to the Second Amended Complaint in this lawsuit.

9   **REQUEST FOR PRODUCTION NO. 8:**

10        All DOCUMENTS RELATING TO the decision to send the email that is attached as

11   Exhibit A to the Second Amended Complaint in this action.

12   **REQUEST FOR PRODUCTION NO. 9:**

13        All DOCUMENTS RELATING TO the decision to request that YOUTUBE take down

14   the HOLDEN VIDEO.

15   **REQUEST FOR PRODUCTION NO. 10:**

16        All DOCUMENTS RELATING TO any UNIVERSAL policies and/or practices

17   RELATING TO requests to remove or disable materials posted on the Internet that

18   UNIVERSAL claims or has claimed infringe any copyrights UNIVERSAL holds or administers.

19   **REQUEST FOR PRODUCTION NO. 11:**

20        All DOCUMENTS RELATING TO any UNIVERSAL policies and/or practices

21   RELATING TO requests to remove or disable materials posted on the Internet that PRINCE

22   claims infringe any copyrights PRINCE holds or administers.

23   **REQUEST FOR PRODUCTION NO. 12:**

24        All DOCUMENTS RELATING TO the article attached as Exhibit E to the Second

25   Amended Complaint in this action, including without limitation DOCUMENTS RELATING TO

26   any of the statements quoted or referenced in that article.

27   **REQUEST FOR PRODUCTION NO. 13:**

28        All DOCUMENTS RELATING TO the article attached as Exhibit F to the Second

5

1  Amended Complaint in this action, including without limitation DOCUMENTS RELATING TO

2  any of the statements quoted or referenced in that article.

3  **REQUEST FOR PRODUCTION NO. 14:**

4      All DOCUMENTS RELATING TO any harm to any actual or potential licensing market

5  caused to UNIVERSAL by the HOLDEN VIDEO.

6  **REQUEST FOR PRODUCTION NO. 15:**

7      All DOCUMENTS RELATING TO the purpose of the HOLDEN VIDEO.

8  **REQUEST FOR PRODUCTION NO. 16:**

9      All DOCUMENTS RELATING TO the amount of copyrighted material as to which

10  UNIVERSAL holds or administer an interest that is used in the HOLDEN VIDEO.

11  **REQUEST FOR PRODUCTION NO. 17:**

12      All DOCUMENTS discussing fair use RELATING TO the HOLDEN VIDEO.

13  **REQUEST FOR PRODUCTION NO. 18:**

14      All DOCUMENTS discussing fair use RELATING TO enforcement of copyright claims

15  on the Internet.

16  **REQUEST FOR PRODUCTION NO. 19:**

17      All DOCUMENTS discussing fair use RELATING TO any video that UNIVERSAL

18  claims or has claimed infringes any copyrights UNIVERSAL holds or administers.

19  **REQUEST FOR PRODUCTION NO. 20:**

20      DOCUMENTS sufficient to identify the job title and job description for Alina Moffat,

21  David Benjamin, David Renzer, Robert Allen, and Sean Johnson (i.e., the sender and cc

22  recipients of the email attached as Exhibit A to the Second Amended Complaint in this lawsuit).

23  **REQUEST FOR PRODUCTION NO. 21:**

24      DOCUMENTS sufficient to identify all PERSONS retained to implement any

25  UNIVERSAL policies RELATING TO requests to remove or disable materials posted on the

26  Internet that UNIVERSAL claims or has claimed infringe any copyrights UNIVERSAL holds or

27  administers.

28

1   **REQUEST FOR PRODUCTION NO. 22:**

2         DOCUMENTS sufficient to identify all PERSONS retained to implement any

3   UNIVERSAL policies RELATING TO requests to remove or disable any materials posted on

4   the Internet that PRINCE claims or has claimed infringe any copyrights PRINCE claims to hold

5   or administer, or otherwise incorporates any materials as to which PRINCE claims to hold or

6   administer a copyright interest.

7   **REQUEST FOR PRODUCTION NO. 23:**

8         UNIVERSAL's document retention policies.

9   **REQUEST FOR PRODUCTION NO. 24:**

10        All DOCUMENTS RELATING TO UNIVERSAL's efforts to preserve DOCUMENTS

11  relevant to this case.

12

13  Dated:  September 30, 2008                    ELECTRONIC FRONTIER FOUNDATION

14

15

16  By: _____

        MICHAEL KWUN

17      Attorneys for Plaintiff
        STEPHANIE LENZ

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
CASE NO. C 07-03783-JF

**PROOF OF SERVICE**

I, Leticia Perez, declare:

I am employed in the City and County of San Francisco, California by Electronic Frontier Foundation at 454 Shotwell Street, San Francisco, California 94110.  I am over the age of eighteen years and am not a party to the within cause.

On September 30, 2008, at the above-referenced address, I served the attached PLAINTIFF'S INITIAL DISCLOSURES and PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION on the interested parties in said cause by

____ personal delivery by messenger service of the document(s) above to the person(s) at the address(es) set forth below:

_X_ placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in accordance with the firm's practice of collection and processing correspondence with the United States Postal Service, which in the normal course of business provides for the deposit of all correspondence and documents with the United States Postal Service on the same day they are collected and processed for mailing to the person(s) at the address(es) set forth below:

Kelly M. Klaus
Amy C. Tovar
MUNGER, TOLLES & OLSEN, LLP
355 South Grand Avenue
35th Floor
Los Angeles, California 90071-1560

____ facsimile transmission pursuant to Rule 2008 of the California Rules of Court on this date before 5:00 p.m. (PST) of the document(s) listed above from sending facsimile machine telephone number (415) 436-9993, and which transmission was reported as complete and without error (copy of which is attached), to facsimile number(s) set forth below:

____ consigning the document(s) listed above to an express delivery service for guaranteed delivery on the next business day to the person(s) at the address(es) set forth below:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  September 30, 2008

_____
LETICIA PEREZ

# EXHIBIT B

1   Michael Kwun (SBN 198945)
    *michael@eff.org*
2   Corynne McSherry (SBN 221504)
    *corynne@eff.org*
3   ELECTRONIC FRONTIER FOUNDATION
    454 Shotwell Street
4   San Francisco, CA 94110
    Telephone: (415) 436-9333
5   Facsimile: (415) 436-9993

6   Attorneys for Plaintiff
    STEPHANIE LENZ

7

8

9                   UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  STEPHANIE LENZ,                  )   No. C 07-03783-JF
                                     )
13                       Plaintiff,  )
                                     )
14                                   )   **PLAINTIFF'S FIRST SET OF**
        v.                           )   **INTERROGATORIES**
15                                   )
    UNIVERSAL MUSIC CORP., UNIVERSAL )
16  MUSIC PUBLISHING, INC.,          )
                                     )
17        and                        )
                                     )
18  UNIVERSAL MUSIC PUBLISHING GROUP,)
                                     )
19                                   )
                         Defendants. )
20                                   )
                                     )
21  _____  )

22          Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Stephanie Lenz

23  submits the following Interrogatories to be fully answered within thirty (30) days of the date of

24  service of these Interrogatories

25                   **INSTRUCTIONS AND DEFINITIONS**

26      1.      "UNIVERSAL" or "YOU" means defendants Universal Music Corp., Universal Music

27  Publishing, Inc., and Universal Music Publishing Group, each of their predecessors and successors,

28  each of their subsidiaries, subsidiaries of subsidiaries, divisions, affiliates in which they or any of

                                    -1-

them own a majority or a controlling interest, and other organizational or operating units, and each of any of their directors, officers, employees, agents or representatives, attorneys, consultants, investigators, contractors, and subcontractors, and all persons acting or purporting to act on any of their behalf for any purpose whatsoever.

2.    "LENZ" means plaintiff Stephanie Lenz.

3.    In answering these Interrogatories, UNIVERSAL is required to furnish all information that is available to UNIVERSAL, not merely such information as the PERSONS preparing the responses know of their own personal knowledge, including without limitation information in the possession of UNIVERSAL's attorneys, employees, or other persons directly or indirectly employed by, or connected with, UNIVERSAL or its attorneys or consultants, or anyone acting in UNIVERSAL's behalf or otherwise subject to UNIVERSAL's control. In answering these Interrogatories UNIVERSAL is required to make a diligent search of its records or of other papers and materials in its possession or other possession of its employees, attorneys, consultants, or other representatives.

4.    In the event any information is withheld on a claim of privilege or work product protection, specify the privilege or work product protection claimed, the subject matter and nature of the information withheld sufficient to enable a determination of whether the claimed privilege or protection applies, all persons to whom the information has been disclosed, and a citation to any authority that UNIVERSAL asserts supports any claim of privilege or protection.

5.    If UNIVERSAL cannot respond to an Interrogatory fully, after a diligent attempt to obtain the requested information, UNIVERSAL is required to answer the Interrogatory to the extent possible, specify the portion of the Interrogatory UNIVERSAL is unable to answer, and provide whatever information UNIVERSAL has regarding the unanswered portion.

6.    The term "DOCUMENT(S)" means and includes any kind of written, typewritten, or printed material whatsoever, and any computer readable media, including, but without limitation, papers, agreements, contracts, notes, memoranda, presentations, presentation materials, correspondence, letters, telegrams, statements, invoices, personal diaries, records, books, maps, blueprints, forms, transcriptions and recordings, translations to any language, magnetic tapes, discs,

printed cards, programming instructions, assembly diagrams, schematic diagrams, and manuals, of which UNIVERSAL has knowledge or information, either in UNIVERSAL's possession or under UNIVERSAL's custody or control, relating to or pertaining in any way to the subject matters in connection with which it is used and includes, with but without limitation, originals, all file copies, and other copies, no matter how or by whom prepared, and all drafts prepared in connection with any such writings, whether used or not, regardless of whether the document still exists, and regardless of who has maintained custody of such documents.

7.     The term "PERSON(S)" includes any individual, firm, proprietorship, partnership, association, joint venture, corporation, governmental agency, other entity, or combination of any of the above.

8.     The terms "RELATES TO" or "RELATING TO" mean concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise relating to the subject matter.

9.     The term "YOUTUBE" means YouTube, LLC and YouTube, Inc., as well as any PERSON acting on their behalf.

10.    The term "HOLDEN VIDEO" means the video file available on YouTube at the URL <http://www.youtube.com/watch?v=N1KfJHFWlhQ>.

11.    The term "PRINCE" means Prince Rogers Nelson, as well as any PERSON acting on his behalf.

12.    The terms "NOTICE OF CLAIMED INFRINGEMENT" or "NOCI" means a written notice, sent via email or other means, alleging that material available on the recipient's website infringes a copyrighted work.

13.    The term "JUNE 4 NOCI" means the NOTICE OF CLAIMED INFRINGEMENT attached as Exhibit A to the Second Amended Complaint in this Action.

14.    Unless otherwise indicated, these Interrogatories pertain to the time period from January 1, 2005, through the date of YOUR responses.

15.    Unless otherwise indicated, these Interrogatories should not be read to encompass

1    materials on peer-to-peer file-sharing networks.

2    16.    The terms "IDENTIFY" or "IDENTIFYING" means,

3        a.   With respect to a fact, to state all information available to YOU, as described in

4            Instruction 3, above;

5        b.   With respect to a DOCUMENT describing:

6            i.    The nature of the DOCUMENT (e.g., letter, memorandum, computer print-

7               out, minutes, resolution, tape recording, etc.);

8            ii.   Its date (or if it bears no date, the date when it was prepared)

9            iii.  The signer or signers (or if there is no signer, of the PERSON who prepared

10              it);

11           iv.   The PERSON, if any, to whom the DOCUMENT was sent (and anyone else

12              who received the DOCUMENT;

13           v.    If YOU have possession, custody or control of the DOCUMENT, the

14              location and designation of the place or file in which it is contained, and the

15              person having custody of the DOCUMENT;

16           vi.   If YOU do not have possession, custody or control of the DOCUMENT, the

17              present (or last known) location thereof and the PERSON having possession,

18              custody or control thereof; and

19           vii.  A brief statement of the subject matter of such DOCUMENT;

20       c.   With respect to a natural PERSON, describing:

21           i.    The full name, present (or last known) residential and business addresses and

22              present (or last known) occupation, employer and position of the PERSON;

23           ii.   The PERSON's relationship to YOU; and

24           iii.  Whether the PERSON has given testimony by way of deposition or

25              otherwise in any proceeding related to the present proceeding and/or whether

26              that PERSON has given a statement whether oral, written, or otherwise, and

27              if so, the title and nature of any such proceeding, the date of the testimony,

28              whether YOU have a copy of the transcript thereof, the name of the

1           PERSON to whom the statement was given, where the statement is presently

2           located if written or otherwise transcribed, and the present location of such

3           transcript or statement if not in YOUR possession.

4      d.  With respect to any other PERSON:

5         i.    The full name,

6         ii.   The legal form and place of organization;

7         iii.  Present (or last known) address of its principal place of business;

8         iv.  Its primary business activities; and

9         v.   The PERSON's relationship to YOU.

10     17.    Whenever YOU are asked to IDENTIFY a copyrighted work, include the author/creator

11 of the work, the copyright holder (if different from the author/creator), its title, its registration

12 number with the copyright office (if any), its total length in minutes, the date(s) and time(s) it was

13 filmed, and a detailed description of the events depicted.

14     18.    These Interrogatories shall be deemed to be continuing Interrogatories.  Between the

15 time of YOUR answers to said Interrogatories and the time of trial, if YOU or anyone acting in

16 YOUR behalf learns the identity or whereabouts of other witnesses not disclosed in YOUR

17 answers, or if YOU obtain or learn of additional information requested herein, but not supplied in

18 YOUR answers, then YOU shall promptly furnish a supplemental answer under oath containing the

19 same.

20                   **INTERROGATORIES**

21     1.    IDENTIFY all copyrighted works that YOU contend YOU believed were infringed by

22 the HOLDEN VIDEO at the time YOU sent the JUNE 4 NOCI, including but not limited to their

23 title, author, year and place of creation, year and country of first publication and a description of

24 their content.

25     2.    Describe in detail the nature of YOUR business relationship with PRINCE as it

26 RELATES TO the JUNE 4 NOCI, including but not limited to the basis for your authority to send

27 NOCIs RELATING TO PRINCE's copyrighted works.

28     3.    For each work YOU IDENTIFY in response to Interrogatory No. 1 above, describe in

1   detail the basis for YOUR alleged belief, at the time YOU sent the JUNE 4 NOCI, that the

2   HOLDEN VIDEO infringed the copyright in such work.

3       4.      For each work YOU IDENTIFY in response to Interrogatory No. 1 above, describe in

4   detail any effect YOU contend YOU believed, at the time YOU sent the JUNE 4 NOCI, that the

5   purported infringement had, if any, upon the actual market for, or the value of, the purportedly

6   infringed copyrighted work.

7       5.      For each work YOU IDENTIFY in response to Interrogatory No. 1 above, describe in

8   detail any effect YOU contend YOU believed, at the time YOU sent the JUNE 4 NOCI, that the

9   purported infringement had, if any, upon any potential market for, or the value of, the purportedly

10  infringed copyrighted work.

11      6.      IDENTIFY all facts, DOCUMENTS, and other information in YOUR possession,

12  custody or control that support any claim YOU have that YOU have attempted to exploit the

13  potential market identified in YOUR response to Interrogatory No. 5, if any, including the identity

14  of all PERSONS YOU believe have knowledge RELATING TO any such attempts.

15      7.      For each work YOU IDENTIFY in response to Interrogatory No. 1 above, describe all

16  licenses pertaining to the purportedly infringed work, including without limitation, IDENTIFYING

17  the persons who are the parties to the license, license terms and conditions, consideration, whether

18  the license is written or oral, and whether or not the license is exclusive.

19      8.      IDENTIFY all facts, DOCUMENTS, and other information in your possession, custody

20  or control that support your allegation that LENZ acted in bad faith, including the identity of all

21  PERSONS YOU believe have knowledge RELATING to any such alleged bad faith.

22      9.      IDENTIFY all facts, DOCUMENTS and other information in your possession, custody

23  or control that support your allegation that LENZ is guilty of unclean hands, including the identity

24  of all PERSONS YOU believe have knowledge RELATING to any such alleged unclean hands.

25      10.     IDENTIFY all PERSONS who made or authorized the statement quoted in Paragraph

26  30 of the Second Amended Complaint and Exhibit F thereto.

27      11.     IDENTIFY all PERSONS who communicated with ABC News in regard to PRINCE's

28  involvement with the JUNE 4 NOCI.

12.    Describe in detail the procedure YOU undertook that led to the sending of the JUNE 4 NOCI, including but not limited to all facts considered, all PERSONS involved, any steps taken to determine whether the HOLDEN VIDEO is a fair use, and the identity of any PERSON who reviewed the HOLDEN VIDEO prior to the sending of the JUNE 4 NOCI.

13.    Describe in detail the measures YOU have taken to ensure that UNIVERSAL employees and/or agents sending NOCIs on behalf of UNIVERSAL or any PERSON UNIVERSAL represents consider fair use before sending such notices.

14.    Describe in detail the measures YOU have takeN to prevent copyright infringement online, including the identity and job description of each UNIVERSAL employee involved in such measures.

15.    IDENTIFY any communications between YOU and PRINCE RELATING TO any unauthorized uses of copyrighted works authored or performed by PRINCE, including but not limited to all facts and DOCUMENTS RELATING TO such communications and the identity of all PERSONS YOU believe have knowledge RELATING TO any such communications.


DATED:  December 5, 2008

By _____
     Michael Kwun
     Corynne McSherry
     ELECTRONIC FRONTIER FOUNDATION
     454 Shotwell Street
     San Francisco, CA  94110
     Telephone:     (415) 436-9333
     Facsimile:      (415) 436-9993

     Attorneys for Plaintiff
     STEPHANIE LENZ

**PROOF OF SERVICE**

I, Leticia Perez, declare:

I am employed in the City and County of San Francisco, California by Electronic Frontier Foundation at 454 Shotwell Street, San Francisco, California 94110. I am over the age of eighteen years and am not a party to the within cause.

On December 5, 2008, at the above-referenced address, I served the attached PLAINTIFF'S FIRST SET OF INTERROGATORIES on the interested parties in said cause by

___ personal delivery by messenger service of the document(s) above to the person(s) at the address(es) set forth below:

_X_ placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in accordance with the firm's practice of collection and processing correspondence with the United States Postal Service, which in the normal course of business provides for the deposit of all correspondence and documents with the United States Postal Service on the same day they are collected and processed for mailing to the person(s) at the address(es) set forth below:

Kelly M. Klaus
Amy C. Tovar
MUNGER, TOLLES & OLSEN, LLP
355 South Grand Avenue
35th Floor
Los Angeles, California 90071-1560

___ facsimile transmission pursuant to Rule 2008 of the California Rules of Court on this date before 5:00 p.m. (PST) of the document(s) listed above from sending facsimile machine telephone number (415) 436-9993, and which transmission was reported as complete and without error (copy of which is attached), to facsimile number(s) set forth below:

___ consigning the document(s) listed above to an express delivery service for guaranteed delivery on the next business day to the person(s) at the address(es) set forth below:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED:  December 5, 2008

_____
LETICIA PEREZ

# EXHIBIT C

AO88  (Rev. 12/07) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### Northern District of California

| | |
|---|---|
| STEPHANIE LENZ, Plaintiff, | **SUBPOENA IN A CIVIL CASE** |
| V. | |
| UNIVERSAL MUSIC CORP., et al., Defendants. | Case Number:[1]  C 07-03783-JF |

TO:   CUSTODIAN OF RECORDS for YOUTUBE, INC.
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA  95833

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

| PLACE   Folger Levin & Kahn LLP, 275 Battery Street, 23rd Floor, San Francisco, California 94111 | DATE AND TIME   2/10/2009 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]*                              **Attorney for Plaintiff** | 1/21/2009 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Suzanne E. Rode, Folger Levin & Kahn LLP, 275 Battery Street, 23rd Floor, San Francisco, California  94111
(415) 986-2800

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## PROOF OF SERVICE

| | DATE | | PLACE | |
|---|---|---|---|---|
| SERVED | | | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

**(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.**

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) DUTIES IN RESPONDING TO A SUBPOENA.**

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.**

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the following definitions and instructions apply for purposes of this subpoena.

**DEFINITIONS AND INSTRUCTIONS**

1.      The term "DOCUMENT(S)" means and includes any kind of written, typewritten, or printed material whatsoever, and any computer readable media, including, but without limitation, papers, agreements, contracts, notes, memoranda, presentations, presentation materials, correspondence, letters, telegrams, statements, invoices, personal diaries, records, books, maps, blueprints, forms, transcriptions and recordings, translations to any language, magnetic tapes, discs, printed cards, programming instructions, assembly diagrams, schematic diagrams, and manuals, of which YOUTUBE has knowledge or information, either in YOUTUBE's possession or under YOUTUBE's custody or control, relating to or pertaining in any way to the subject matters in connection with which it is used and includes, with but without limitation, originals, all file copies, and other copies, no matter how or by whom prepared, and all drafts prepared in connection with any such writings, whether used or not, regardless of whether the document still exists, and regardless of who has maintained custody of such documents.

2.      The term "PERSON(S)" includes any individual, corporation, general partnership, limited partnership, joint venture, association, joint-stock company, trust, incorporated organization, government or political subdivision thereof, and other non-natural persons in whatever nature.

3.      The term "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise relating to the subject matter.

4.      The term "COMMUNICATIONS" means any expression or exchange of information by writing between two or more persons, including, without limitation, written contract, by means such as letters, memoranda, e-mails, or any other documents, and any oral contract or expression or exchange of information by speech, such as face-to-face meetings or

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

1  telephone conversations.

2      5.      The term "YOUTUBE" means YouTube, LLC and YouTube, Inc., each of their

3  predecessors and successors, each of their subsidiaries, subsidiaries of subsidiaries, divisions,

4  affiliates in which they or any of them own a majority or a controlling interest, and other

5  organizational or operating units, and each of any of their directors, officers, employees, agents or

6  representatives, attorneys, consultants, investigators, contractors, and subcontractors, and all

7  PERSONS acting or purporting to act on any of their behalf for any purpose whatsoever.

8      6.      The term "LENZ" means plaintiff Stephanie Lenz.

9      7.      The term "UNIVERSAL" means defendants Universal Music Corp., Universal

10  Music Publishing, Inc., and Universal Music Publishing Group, each of their predecessors and

11  successors, each of their subsidiaries, subsidiaries of subsidiaries, divisions, affiliates in which

12  they or any of them own a majority or a controlling interest, and other organizational or operating

13  units, and each of any of their directors, officers, employees, agents or representatives, attorneys,

14  consultants, investigators, contractors, and subcontractors, and all PERSONS acting or purporting

15  to act on any of their behalf for any purpose whatsoever.

16      8.      The term "HOLDEN VIDEO" means the video available on YouTube at the URL

17  <http://www.youtube.com/watch?v=N1KfJHFWlhQ>.

18      9.      The term "PRINCE" means Prince Rogers Nelson, as well as any PERSON acting

19  on his behalf.

20      10.     The term "TERMS OF USE" means the terms and conditions that apply to all

21  users of the YouTube Web site, available at the URL <http://www.youtube.com/t/terms>.

22      11.     In answering these document requests, YOUTUBE is required to furnish all

23  documents that are available to YOUTUBE, not merely such documents as the persons preparing

24  the responses know of their own personal knowledge, including without limitation documents in

25  the possession of YOUTUBE's attorneys, employees, or other persons directly or indirectly

26  employed by, or connected with, YOUTUBE or its attorneys or consultants, or anyone acting in

27  YOUTUBE's behalf or otherwise subject to YOUTUBE's control.  In answering these document

28  requests YOUTUBE is requested to make a diligent search of its records or of other papers and

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

1    materials in its possession or other possession of its employees, attorneys, consultants, or other

2    representatives.

3           12.    Please organize and label the DOCUMENTS YOUTUBE produces according to

4    Request Number.  Please produce any electronically stored information in the form in which it is

5    ordinarily maintained.  If any document was, but no longer is, in YOUTUBE's possession,

6    custody or control, state:  (1) the disposition of the document; (2) the date such disposition was

7    made; (3) the identity and address of the present custodian of the document or, if it no longer

8    exists, identify (a) the person(s) who made the decision to dispose of the DOCUMENTS; (b) state

9    the reason(s) for the disposition; and (c) provide a description of the document and its contents.

10           13.    In the event any information is withheld on a claim of attorney-client privilege,

11    work product immunity, or other allegedly applicable privilege or immunity, YOUTUBE is

12    required to provide a privilege log which includes at least the following information:  the nature

13    of the information contained in the withheld document, the date of the document, its source, and

14    subject matter, and all persons to whom the document has been disclosed, such as would enable a

15    privilege or immunity claim to be determined, and a citation to any authority which YOUTUBE

16    asserts supports any claim of privilege or immunity.

17           14.    Unless otherwise indicated, these requests pertain to the time period from January

18    1, 2005 through the date of your responses.

19           15.    Unless otherwise indicated, these requests should not be read to encompass

20    materials on peer-to-peer file-sharing networks.

21                                      **DOCUMENT REQUESTS**

22    **REQUEST FOR PRODUCTION NO. 1:**

23           All DOCUMENTS RELATING TO the HOLDEN VIDEO, including but not limited to

24    YOUTUBE's decision to disable access to the video, YOUTUBE's COMMUNICATIONS with

25    UNIVERSAL RELATING TO that decision, and YOUTUBE's decision to restore access to the

26    video.

27    **REQUEST FOR PRODUCTION NO. 2:**

28           All DOCUMENTS RELATING TO LENZ.

**REQUEST FOR PRODUCTION NO. 3:**

All COMMUNICATIONS with UNIVERSAL RELATING TO any material UNIVERSAL has claimed infringes any of its copyrights or the copyrights of PERSONS on whose behalf UNIVERSAL purports to be authorized to act, and all DOCUMENTS RELATING TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS RELATING TO any agreements with UNIVERSAL RELATING TO preventing and/or responding to the alleged infringement of the copyrights in any material UNIVERSAL owns or with respect to which UNIVERSAL purports to be authorized to act.

**REQUEST FOR PRODUCTION NO. 5:**

All COMMUNICATIONS with PRINCE RELATING TO any material PRINCE has claimed infringes any of his copyrights or the copyrights of PERSONS on whose behalf he purports to be authorized to act, and all DOCUMENTS RELATING TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 6:**

All COMMUNICATIONS with UNIVERSAL RELATING TO any material UNIVERSAL has claimed violates YOUTUBE's TERMS OF USE and all DOCUMENTS RELATING TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS RELATING TO any agreements with UNIVERSAL RELATING TO preventing and/or responding to alleged violations of YOUTUBE's TERMS OF USE.

**REQUEST FOR PRODUCTION NO. 8:**

All COMMUNICATIONS with PRINCE RELATING TO any material PRINCE has claimed violates YOUTUBE's TERMS OF USE and all DOCUMENTS RELATING TO any such COMMUNICATIONS.

**REQUEST FOR PRODUCTION NO. 9:**

DOCUMENTS sufficient to identify any YOUTUBE policies and/or practices RELATING TO requests to remove or disable materials that UNIVERSAL and/or PRINCE claim

1   or have claimed infringe any copyrights or violate YOUTUBE's TERMS OF USE.

2   **REQUEST FOR PRODUCTION NO. 10:**

3       All DOCUMENTS RELATING TO fair use and the HOLDEN VIDEO.

4   **REQUEST FOR PRODUCTION NO. 11:**

5       All DOCUMENTS RELATING TO fair use and any material as to which YOUTUBE

6   understands PRINCE to hold a copyright interest.

7   **REQUEST FOR PRODUCTION NO. 12:**

8       All DOCUMENTS RELATING TO fair use and any material as to which YOUTUBE

9   understands UNIVERSAL to hold copyright or as to which UNIVERSAL purports to be

10  authorized to act.

11  **REQUEST FOR PRODUCTION NO. 13:**

12      DOCUMENTS sufficient to identify all PERSONS retained to implement any YOUTUBE

13  policies RELATING TO requests to remove or disable the HOLDEN VIDEO.

14  **REQUEST FOR PRODUCTION NO. 14:**

15      DOCUMENTS sufficient to identify all PERSONS retained to implement any

16  YOUTUBE policies RELATING TO requests to remove or disable any material that

17  UNIVERSAL and/or PRINCE claim or have claimed infringe any copyrights or violate

18  YOUTUBE's TERMS OF USE.

19

20

21

22  58074\2001\630702.1

23

24

25

26

27

28

FOLGER LEVIN &
KAHN LLP
ATTORNEYS AT LAW

-5-

# EXHIBIT D

AO88 (Rev. 12/07) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

Northern District of California

| STEPHANIE LENZ, Plaintiff, | **SUBPOENA IN A CIVIL CASE** |
|---|---|
| V. | |
| UNIVERSAL MUSIC CORP., et al., Defendants. | Case Number:[1]  C 07-03783-JF |

TO:   YOUTUBE, INC.
      2730 Gateway Oaks Drive, Suite 100
      Sacramento, CA  95833

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☑   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.   See Attachment A.

| PLACE OF DEPOSITION   Folger Levin & Kahn LLP, 275 Battery Street, 23rd Floor, San Francisco, California  94111 | DATE AND TIME 2/25/2009 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| | |

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)            **Attorney for Plaintiff** | DATE 1/21/2009 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Suzanne E. Rode, Folger Levin & Kahn LLP, 275 Battery Street, 23rd Floor, San Francisco, California  94111
(415) 986-2800

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**ATTACHMENT A**

The following definitions apply for purposes of this subpoena.

**DEFINITIONS**

1.      The term "HOLDEN VIDEO" means the video available on YouTube at the URL <http://www.youtube.com/watch?v_N1KfJHFWlhQ>.

2.      The term "COMMUNICATIONS" means any expression or exchange of information by writing between two or more persons, including, without limitation, written contract, by means such as letters, memoranda, e-mails, or any other documents, and any oral contract, or expression or exchange of information by speech, such as face-to-face meetings or telephone conversations.

3.      The term "LENZ" means plaintiff Stephanie Lenz.

4.      The term "YOUTUBE" means YouTube, LLC and YouTube, Inc., each of their predecessors and successors, each of their subsidiaries, subsidiaries of subsidiaries, divisions, affiliates in which they or any of them own a majority or a controlling interest, and other organizational or operating units, and each of any of their directors, officers, employees, agents or representatives, attorneys, consultants, investigators, contractors, and subcontractors, and all PERSONS acting or purporting to act on any of their behalf for any purpose whatsoever.

5.      The term "TERMS OF USE" means the terms and conditions that apply to all users of the YouTube Web site, available at the URL <http://www.youtube.com/t/terms>.

6.      The term "UNIVERSAL" means defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group, each of their predecessors and successors, each of their subsidiaries, subsidiaries of subsidiaries, divisions, affiliates in which they or any of them own a majority or a controlling interest, and other organizational or operating units, and each of any of their directors, officers, employees, agents or representatives, attorneys, consultants, investigators, contractors, and subcontractors, and all PERSONS acting or purporting to act on any of their behalf for any purpose whatsoever.

7.      The term "PRINCE" means Prince Rogers Nelson, as well as any PERSON acting on his behalf.

8. The term "RELATING TO" means concerning, referring to, summarizing, reflecting, constituting, containing, embodying, pertaining to, involved with, mentioning, discussing, consisting of, comprising, showing, commenting upon, evidencing, describing or otherwise relating to the subject matter.

**MATTERS ON WHICH EXAMINATION OF YOUTUBE'S REPRESENTATIVE**

**DEPONENT(S) IS REQUESTED**

1. The decisions to disable access and restore access to the HOLDEN VIDEO.

2. COMMUNICATIONS with and/or RELATING TO LENZ.

3. The development and implementation of YOUTUBE's policies and/or practices for preventing and responding to complaints about alleged infringement of copyrighted material and alleged violations of YOUTUBE's TERMS OF USE, including but not limited to:

a. the nature of such policies;

b. the volume of complaints YOUTUBE receives alleging copyright infringement and/or violations of YOUTUBE's TERMS OF USE from UNIVERSAL and/or PRINCE; and

c. YOUTUBE's response to such complaints (e.g., whether complaints from UNIVERSAL and/or PRINCE are handled differently from those of other persons, the number of times YOUTUBE has disabled access to material due to complaints made by UNIVERSAL and/or PRINCE of copyright infringement and/or violations of YOUTUBE's TERMS OF USE, and the number of times YOUTUBE has restored access to such material) and the reasons for such response(s).

4. Any agreements, formal or informal, with UNIVERSAL and/or PRINCE relating to preventing and/or responding to alleged infringement of copyrights in any material UNIVERSAL and/or PRINCE owns or purports to be authorized to act.

5. COMMUNICATIONS with UNIVERSAL and/or PRINCE relating to material UNIVERSAL and/or PRINCE has claimed infringes any of its copyrights and/or violates YOUTUBE's TERMS OF USE.

1    6.       COMMUNICATIONS with UNIVERSAL and/or PRINCE relating to the

2  HOLDEN VIDEO.

3    7.       COMMUNICATIONS RELATING TO fair use and the HOLDEN VIDEO.

4    8.       COMMUNICATIONS RELATING TO fair use and any material as to which

5  YOUTUBE understands UNIVERSAL and/or PRINCE to hold a copyright interest.

6

7

8  58074\2001\630707.1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT E

Picked up the phone, dropped it on the floorie « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page39 of 117

# So anyway...

**Home**

**Contact**

**Fifty things**



 [Until this crisis is over](#)    [In lieu of text, pics](#) 

October 14, 2008...12:08 pm

# Picked up the phone, dropped it on the floorie

 [Jump to Comments](#)

[From the NYP](#):

> PRINCE rocked the Gansevoort Hotel rooftop over the weekend, but the show was nearly KO'd by audience members who refused to turn off their cellphones.
>
> As the "Purple Rain" pop star prepared to take the stage, a panicked emcee announced the hundreds of cellphones in the room had knocked out Prince's high-tech sound system. He begged fans to shut them or "there may not be a show."
>
> Some did, but many ignored the plea - including one publicist involved with the show - claiming they had to have them on at all times. "It was so obnoxious," one fan said. "To think a bunch of idiots can't exist without their precious cells for an hour."
>
> Once the problem was solved, Dave Chappelle, Spike Lee, Anderson Cooper, Howard Stern and Dennis Rodman bopped to tunes like "1999″ at the Inocente Tequila event benefiting Love 4 One Another. Earlier, Prince had Gansevoort staffers working hard to meet his fussy demands. "He's very anal and required a humidifier in every room of his suite and the windows blacked out," a source told us.

Because they interfere with his — and only his — sound system. And all the ones that were left on did not interfere. Let's be honest here, Prince: you didn't want anyone to video- or audio-record your performance and put it online. People know this about you. Guess it's

Picked up the phone, dropped it on the floorie « So anyway...

Case5:07-cv-03783-JF   Document67   Filed04/20/09   Page40 of 117

more desirable to lie than to perpetuate your image as someone who despises and suspects his own fans.

It was funny but when I watched "Graham Norton" the other night his guests were Eddie Izzard and Harry Shearer (Travis was the musical guest; it was the perfect show). He showed both Eddie and Harry YouTube user created videos, one was the Lego opening of the Simpsons and the other was the previously-linked Lego version of Eddie's Death Star canteen bit. Were they offended and demanded the videos be removed? Of course not. Both though the pieces were brilliant. I also sincerely doubt that Eddie & Harry asked for humidifiers in every room and blackout curtains (don't all hotels have blackout curtains?). Anyway, I'm just sayin'. Hello UMG person.

I certainly hope there's no video of Anderson Cooper dancing to "1999."

---

**Possibly related posts: (automatically generated)**

- **[A little dose of purple](#)**
- [PRINCE PERFORMS ON HOTEL ROOFTOP](#)
- [Eddie Izzard is "Stripping" his way across the US](#)
- [Prince on The Muppet Show?!](#)



Filed under [Making a federal case](#)   Tags: [eddie](#) [izzard](#), [prince](#)   2 Comments



##  2 Comments

.

---

### Goldie

October 15, 2008 at 12:30 pm

"It was so obnoxious," one fan said. "To think a bunch of idiots can't exist without their precious cells for an hour."
Ugh, seriously. I hope this never happens, but if that fan is ever in the ER and they have to page the doctor on call, maybe he'll reconsider the "obnoxious" comment. Yes some people do have to have them on at all times.
That said, I was at a concert last Friday and darn cell phones kept going off every fifteen

minutes. I was embarrassed for my city, yet again. Couldn't they put them on silent???

.



## Eden

October 15, 2008 at 2:08 pm

I can understand asking people to have them in silent mode at a play, movie, etc. and then taking any calls outside. But simply having it on? That's someone's paranoia about people using the sounds, images or combination of the two showing up online or something.

Maybe if he had the respect to be honest with his concertgoers and fans, they'd comply. But this ridiculous story about it interfering with his sound equipment? Who'd believe that? Other than the guy who thinks no one in the world needs to have a phone on all the time and that Prince's comfort level is more important than an actual possible matter of life & death.

# Leave a Reply

Name (required)

Mail (will not be published) (required)

Website

Submit Comment

edenza @ gmail . com

☐ Notify me of follow-up comments via email.



.

October 2008

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|

« Sep          Nov »

| | | 1 | 2 | 3 | 4 |
|---|---|---|---|---|---|
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |

. Search



Find »

. ‒

Select Category

. Recent Posts

- ○ PW review
- ○ And then there were 100…
- ○ How I spent my Saturday afternoon
- ○ Larry and the Lip Balm
- ○ Some writing stuff

. 🔲 Feed

- ○ PW review
- ○ And then there were 100…
- ○ How I spent my Saturday afternoon
- ○ Larry and the Lip Balm
- ○ Some writing stuff

Picked up the phone, dropped it on the floorie « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page43 of 117

## Recent Comments

Eden on PW review

Kristin Baxter on PW review

lm on It's official: We really...

krishanna on PW review

Eden on PW review

## Top Posts

- Crush groove
- PW review
- It's official: We really hate Colorado
- Twerple pain
- Wikipedia game: Five Clicks to Jesus
- Cheesecake Factory cheesecake for half price
- Popcorn and eye candy
- It's official: I hate Colorado
- Easy to please -- now with "dry sink" explanation goodness!
- Whups... forgot title (and had to retype this one 6 times)

## Photos







More Photos

. Tags

29 Days birthday boobs **Bumblefuck** celebrity charity eff erie family fashion food halloween **hawk** hawk's hospital adventure **holden** joaquin knitting lawsuit **me** meme minerva movies **music** parenting party photos plus **politics** prince **quiz** religion school sex **sexography** **star wars** story **TC** tom cruise tv video witchy **writing** younglings youtube

# **zoe**

. Sgoinawn

Proud member of Mom Blog Network





NetworkedBlogs

Blog:
So anyway…

Topics:
personal

Join my network

. Blogroll

○ A Mindful Life

○ A Spattering

○ All Things Jennifer

○ AmeriMama

Picked up the phone, dropped it on the floorie « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page45 of 117

- ○ bad egg
- ○ Big Fat Deal
- ○ Blue Moon Mama
- ○ Boozie
- ○ Bossy
- ○ Busta's Blog
- ○ Cream of Potato Soup
- ○ Crosswind
- ○ cybercoven
- ○ Daisybones
- ○ Dinosaur Mom Chronicles
- ○ Erie Blogs
- ○ EriePressible
- ○ Erin-go-blog
- ○ Fabulously Jinxed
- ○ figcookies
- ○ Film Freaks Film Club
- ○ fredlet
- ○ Glitter For Brains
- ○ ham & cheese on wry
- ○ High on the Hog
- ○ I can has Cheezburger?
- ○ If they can do it...
- ○ knittyBlog
- ○ Kristophrenia
- ○ Life after Work
- ○ Light Motifs
- ○ Little Foodies
- ○ LocoBellaTuna
- ○ Make Way For Cupcakes
- ○ Mari's Midnight Garden
- ○ Matter of Fact Mommy
- ○ Michael Mahler's Ditherings
- ○ Mini Obs
- ○ Mother of Confusion
- ○ Necessary Evil
- ○ not martha

Picked up the phone, dropped it on the floorie « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page46 of 117

- One good Thing
- PACER
- Palace of Exile
- photography.ron.richardson
- Plain Jane Mom
- PostSecret
- Pseudotherapy
- Roger Ebert's Journal
- San Diego Momma
- Secondhand Tryptophan
- soul food
- Sour Grapes
- Spaghetti Harvest
- Spin Me I Pulsate.
- Standing here solidly...
- Sublime Stitching
- Sweetney
- Tea and Cakes
- The ADD Knitter
- The Remainder Table
- The Stephford Diaries
- Unclutterer
- Uppercase Woman
- We make three
- Weetapidol
- What's Your Name, Mommy?
- Why Am I Doing This?
- Will Write For Chocolate
- Witchvox

. Archives

- April 2009
- March 2009
- February 2009
- January 2009
- December 2008
- November 2008

- October 2008
- September 2008
- August 2008
- July 2008
- June 2008
- May 2008
- April 2008
- March 2008
- November 2007
- May 2007
- April 2007
- March 2007
- February 2007
- January 2007
- December 2006
- November 2006
- October 2006
- September 2006
- August 2006
- July 2006
- June 2006
- May 2006
- April 2006
- March 2006
- February 2006
- January 2006
- December 2005
- November 2005
- October 2005
- September 2005
- August 2005
- July 2005
- June 2005
- May 2005
- April 2005
- March 2005
- February 2005

- January 2005
- December 2004
- November 2004
- October 2004
- September 2004
- August 2004
- July 2004
- June 2004
- May 2004
- April 2004
- March 2004
- February 2004
- January 2004
- December 2003
- November 2003
- October 2003
- September 2003
- August 2003
- July 2003
- June 2003
- May 2003
- April 2003
- March 2003
- February 2003
- January 2003
- December 2002
- November 2002
- October 2002
- September 2002
- August 2002
- July 2002
- June 2002
- May 2002
- April 2002
- March 2002
- February 2002
- January 2002

Picked up the phone, dropped it on the floorie « So anyway…

- ○ [December 2001](#)
- ○ [November 2001](#)

# Pages

- ○ [Contact](#)
- ○ [Fifty things](#)
- ○ [Fish in the sky](#)

# Blog Stats

- ○ **142,527 hits**

# 'N' 'at










Picked up the phone, dropped it on the floorie « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page50 of 117







**JOINT TAXES**
**DEATH TAXES**
**JOB SECURITY**
**SOCIAL SECURITY**
**HEALTH BENEFITS**
**MILITARY SERVICE**
**MEDICAL DECISIONS**
**HOSPITAL VISITATION**
**SPOUSAL IMMIGRATION**

**EDUCATE YOURSELF**
**WWW.EQUALITYMATTERS.ORG**
**JOIN THE ONLINE MARCH**



.



So anyway... by Stephanie Lenz is licensed under a

Creative Commons Attribution-Noncommercial-Share
Alike 3.0 United States License.

Based on a work at piggyhawk.wordpress.com.

"So anyway…" content © 2001-present

Who links to me?





eXTReTracke





Lijit Search

. Meta

- ○ Log in
- ○ Entries RSS
- ○ Comments RSS
- ○ WordPress.com

Blog at WordPress.com. | Theme: Pressrow by Chris Pearson.

# EXHIBIT F

# So anyway...

Home

Contact

Fifty things



Welcome to West Bumblef*ck Mr President                    FO: Sherbet Cozy

April 21, 2008...7:13 pm

# Twerple pain


Jump to Comments

"Hey, Eden, what's going on with your lawsuit?"

Well I'm glad you asked.

When last we left The Dancing Baby Saga, our case was in front of a judge. Lawyers argued back and forth and the judge said, "Let me think about this for a while." And he did. That was in December or January (possibly both).

Then earlier this month, he announced what he'd decided: he dismissed parts of the suit but parts he basically said, "Fix this up and bring it back" to the rest.

So we dropped the state part of the suit and focused on the federal case and voila! Second amended complaint was filed on Friday, ten days after the order, b/c Corynne is that awesome (she's quoted in the current Entertainment Weekly as well; it was weird to be reading along and say "hey my lawyer's quoted in the EW"). Take that, big record company bullies.

The federal case is the false DMCA notice that Universal filed with YouTube. The state case was that Universal butted into my contract with YouTube. If you want more details, clarification, info, etc. you can read it in the legal documents or in my EFF/UMPG category at the old blog.

Anyway, the amended complaint zeroes in on His Purpleness as well. We found out about his personal *cough* interest in removing my video after we filed our suit and now, well, now we know he's just a little dick in a crushed velvet suit. I wonder if that will be admitted as evidence. Hrm.

BTW: Hello person at Universal whose job it is to monitor my weblog. That gig must either suck musty balls or be the bright spot in an otherwise boring day of scouring the web looking for evildoers and people who actually *do* infringe copyright. I hope the Sexography posts are perking up your day and that you donate if only for the purpose of snagging RAINN a matching corporate donation.



Filed under

Making a federal case

Tags: eff,

lawsuit,

prince

6 Comments



## 6 Comments

.



### Melissa

April 22, 2008 at 8:58 am

When I hear Prince on the radio these days, I change the channel 

.



### Joe the Troll

April 22, 2008 at 10:13 am

Hell, I ALWAYS did THAT.

As always, the best of luck with this. I'm glad I've found a way to legally stock my music collection beyond my wildest dreams without giving these record company bastards a single cent.

.





## Eden
April 22, 2008 at 10:31 am

I hear they're working on a radio that would make you put in a quarter every time there's a new song.

•



## Deb
April 23, 2008 at 1:36 am

Good luck, too. I'm thinking you will prevail.

Also, I think I read b/w the lines re: the Prince "personal interest." Ew, if so.

And a quick hello to the Universal minion.

•

## Spring renewal « So anyway…
April 29, 2008 at 12:41 pm

[…] Spring renewal Jump to Comments Media coverage for my suit is picking up again. Not every outlet is reporting the whole story. Some are reporting that the judge "threw out" our case, which is inaccurate. Some are not reporting that we've refiled our federal case. Here's a pretty good story that explains things as they stand, in case I wasn't clear when I did. […]

•

## eriepressible™ » Dream a Little Dream
December 1, 2008 at 12:19 pm

[…] and I were at a Prince* concert with some other friends.  The concert was at Fenway Park but, as is common with […]

# Leave a Reply

Name (required)

Mail (will not be published) (required)

Website



Submit Comment

edenza @ gmail . com

☐ Notify me of follow-up comments via email.





.

### April 2008

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| « Mar | | | | | May » | |
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

## . Search

Find »

Select Category

## . Recent Posts

- PW review
  - And then there were 100...
  - How I spent my Saturday afternoon
  - Larry and the Lip Balm
  - Some writing stuff

## . 🟧 Feed

  - PW review
  - And then there were 100...
  - How I spent my Saturday afternoon
  - Larry and the Lip Balm
  - Some writing stuff

## . Recent Comments

Eden on PW review

Kristin Baxter on PW review

lm on It's official: We really...

krishanna on PW review

Eden on PW review

## . Top Posts

  - Crush groove
  - PW review
  - It's official: We really hate Colorado
  - Cheesecake Factory cheesecake for half price
  - Twerple pain
  - Wikipedia game: Five Clicks to Jesus
  - Popcorn and eye candy
  - It's official: I hate Colorado
  - Easy to please -- now with "dry sink" explanation goodness!
  - Whups... forgot title (and had to retype this one 6 times)

## . Photos



More Photos

## . Tags

29 Days birthday boobs Bumblefuck celebrity charity eff erie family fashion food halloween hawk hawk's hospital adventure holden joaquin knitting lawsuit me meme minerva movies music parenting party photos plus politics prince quiz religion school sex sexography star wars story TC tom cruise tv video witchy writing younglings youtube

## zoe

## . Sgoinawn

Proud member of
Mom Blog Network



NetworkedBlogs

Blog:
**So anyway...**

Topics:
**personal**

**Join my network**

## · Blogroll

- A Mindful Life
- A Spattering
- All Things Jennifer
- AmeriMama
- bad egg
- Big Fat Deal
- Blue Moon Mama
- Boozie
- Bossy
- Busta's Blog
- Cream of Potato Soup
- Crosswind
- cybercoven
- Daisybones
- Dinosaur Mom Chronicles
- Erie Blogs
- EriePressible
- Erin-go-blog
- Fabulously Jinxed
- figcookies
- Film Freaks Film Club
- fredlet
- Glitter For Brains
- ham & cheese on wry
- High on the Hog
- I can has Cheezburger?
- If they can do it...
- knittyBlog
- Kristophrenia
- Life after Work

- Light Motifs
  - Little Foodies
  - LocoBellaTuna
  - Make Way For Cupcakes
  - Mari's Midnight Garden
  - Matter of Fact Mommy
  - Michael Mahler's Ditherings
  - Mini Obs
  - Mother of Confusion
  - Necessary Evil
  - not martha
  - One good Thing
  - PACER
  - Palace of Exile
  - photography.ron.richardson
  - Plain Jane Mom
  - PostSecret
  - Pseudotherapy
  - Roger Ebert's Journal
  - San Diego Momma
  - Secondhand Tryptophan
  - soul food
  - Sour Grapes
  - Spaghetti Harvest
  - Spin Me I Pulsate.
  - Standing here solidly...
  - Sublime Stitching
  - Sweetney
  - Tea and Cakes
  - The ADD Knitter
  - The Remainder Table
  - The Stephford Diaries
  - Unclutterer
  - Uppercase Woman
  - We make three
  - Weetapidol
  - What's Your Name, Mommy?

Why Am I Doing This?

Will Write For Chocolate

Witchvox

## Archives

- April 2009
- March 2009
- February 2009
- January 2009
- December 2008
- November 2008
- October 2008
- September 2008
- August 2008
- July 2008
- June 2008
- May 2008
- April 2008
- March 2008
- November 2007
- May 2007
- April 2007
- March 2007
- February 2007
- January 2007
- December 2006
- November 2006
- October 2006
- September 2006
- August 2006
- July 2006
- June 2006
- May 2006
- April 2006
- March 2006
- February 2006
- January 2006

- December 2005
- November 2005
- October 2005
- September 2005
- August 2005
- July 2005
- June 2005
- May 2005
- April 2005
- March 2005
- February 2005
- January 2005
- December 2004
- November 2004
- October 2004
- September 2004
- August 2004
- July 2004
- June 2004
- May 2004
- April 2004
- March 2004
- February 2004
- January 2004
- December 2003
- November 2003
- October 2003
- September 2003
- August 2003
- July 2003
- June 2003
- May 2003
- April 2003
- March 2003
- February 2003
- January 2003
- December 2002

- November 2002

- October 2002

- September 2002

- August 2002

- July 2002

- June 2002

- May 2002

- April 2002

- March 2002

- February 2002

- January 2002

- December 2001

- November 2001

## Pages

- Contact

- Fifty things

- Fish in the sky

## Blog Stats

- 142,532 hits

## 'N' 'at









**stephl**

I have two finished novel-length lit fic mss and I'm currently querying. I'm working on a third novel and writing short fiction as well. I'm co-founder and editor of the literary journal and writing

Join me @ Agent Query Connect

Powered by Leverage Software 







**JOINT TAXES**
**DEATH TAXES**
**JOB SECURITY**
**SOCIAL SECURITY**
**HEALTH BENEFITS**
**MILITARY SERVICE**
**MEDICAL DECISIONS**
**HOSPITAL VISITATION**
**SPOUSAL IMMIGRATION**

**EDUCATE YOURSELF**
**WWW.EQUALITYMATTERS.ORG**
**JOIN THE ONLINE MARCH**





.



So anyway... by Stephanie Lenz is licensed under a
Creative Commons Attribution-Noncommercial-Share
Alike 3.0 United States License.

Based on a work at piggyhawk.wordpress.com.

"So anyway..." content © 2001-present

Who links to me?






eXTRe
Tracke




Technorati FAVORITES



Lijit Search

. Meta

- ○ Log in
- ○ Entries RSS
- ○ Comments RSS
- ○ WordPress.com

Blog at WordPress.com. | Theme: Pressrow by Chris Pearson.

☺

# EXHIBIT G

# Prince is going to sh*t his little purple pants

Feb 12th, 2008 by Eden

... when he sees this:

> Have you heard of that new movie with Jack Black and Mos Def called *Be Kind Rewind* where they remake movies? Well the Alamo Drafthouse here in Austin is having a contest for people to remake movies in a chance to have their movie shown in the theatre before *Be Kind Rewind*. My friend PJ, who is the bass player in my husband Chris's band Beta Valentine, remade *Purple Rain*. PJ plays Prince. If you have ever seen *Purple Rain* you will giggle. After that you should go and vote for them to win so we can all see PJ and his blow up doll on the big screen.

Make sure to visit the site and see the video (parody, Mr Nelson, parody!) and to VOTE for it!

Posted in EFF/UMPG | 2 Comments

## 2 Responses to "Prince is going to sh*t his little purple pants"

1.
   *on 12 Feb 2008 at 4:11 pm*1*Leslie*

   I got your link from Kim;s website, and I have to ask... is the Drafthouse in Austin nicer than the one in San Antonio? I heard it was but then again, I kinda think the one here is a bit of a dump. There were theatres in Virginia similar to the drafthouse, but much nicer. I was just curious.

2.
   *on 12 Feb 2008 at 4:22 pm*2*Eden*

   Sorry but I have no idea 🙂 But I'll assume that is it b/c Austin seems to care a lot about stuff like that.

   I'm just a fan of Naughty Secretary Club so I read the blog & I have my own reasons for finding this parody exceptionally hilarious 🙂 (click on the category for more).

Trackback URI | Comments RSS

## Leave a Reply

You must be [logged in](#) to post a comment.

- ## Recent Posts

  - [Wedding details later](#)
  - [Comments on these old blog entries](#)
  - [Play park](#)
  - [It has come to this](#)
  - [I'm sick of futzing with this blog](#)
  - [If you're not out of book space, you're not worth knowing](#)
  - [Real life versus the Internet](#)
  - [No wonder Sharper Image went down](#)
  - [Ni](#)
  - [A belated Ostara](#)

- ## Recent Comments

  - [Eden](#) on [Girly girlness: Creative Wanderings fanlove](#)
  - Catherine on [Girly girlness: Creative Wanderings fanlove](#)
  - [Tarot Cards](#) on [Weekend quiz: What tarot card are you?](#)
  - [Two unrelated things « So anyway…](#) on [Hellen Buttigieg is my heroine](#)
  - [I may have to go see this « So anyway…](#) on [Blizzard of Izzard](#)

- ## Read this:

  My "Faves" Blogroll

  - A Few Good Memes
  - AmeriMama
  - Boozie.
  - Carbolic Smoke Ball
  - Cleverly disguised as one of the masses
  - daisybones

- Erie Media-Go-Round

- Erin's Wedding Blog

- Famous Last Words

- i am bossy

- I bought it on eBay

- I wasn't always like this...

- If they can do it...

- IKEAN Blog

- I'm a Reader, Not a Writer

- Just Sayin'

- Kitsch and Giggles

- MichaelShakesDotCom

- Moose and Monkey

- Ms. Mandi Knits

- Pacer

- Parenting Without A License

- photography.ron.richardson

- Radical Mama

- ron's house

- Sex Changes

- Spun

- The Mommanista

- The places I go

- (title unknown)

- Unraveled
- Why Am I Doing This?
- Will Write For Chocolate

Read more...

## Pages

- [Fifty Things About Me](#)
- [Fish In The Sky](#)

## And then...





68% Geek











-

# EXHIBIT H

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page73 of 117

# So anyway...

Home

Contact

Fifty things



Up in the sky

 [Watch out for your goodies, Hawkeye](#)          [Popcorn and eye candy](#) 

March 21, 2009...11:31 pm

# Whups... forgot title (and had to retype this one 6 times)

 [Jump to Comments](#)

Imagine me just plopping my fat ass down beside you at the moment.

Hi.

Um...

I have a mai tai. I like it. I have a straw in it and everything. Allows for more instant access to the goodies.

I really don't have anything to say but I seem to have this drink and tyhese fingers that were made for tping and I don't want to finish my drink just yet so here I am.

Hi.

So anyway...

I ... no, we went to see Hawk at the hospital today. He's healing well. I think the removal of ... forgot. Not saying. Let's call it "some guts" means that his prick ghland has swelled. Oops. Topo... typo there. I'm going to surge forward, a boat against the current. So wan... anyway...

Wow.

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page74 of 117

Um...

Oh!

I was selling girl scout cookies today w/ my new BFF "Lissa" who will get a cool nickame sometime and her sister "Manda."  Table full of redheads sittin' outside a Wal-Mart in WEst Bumblefuck enticing sailors to buy baked goods. We just about sold out, truth be told. Zoe was very well-beahved. A model Daisy Scout. Unlike me. I was the one responsible for keeping tallies on Totally Hot Dudes Who Have Bought Cookies (total=4), one of which I said I would like to have bathed and brought to my tent.

Hrm. Maybe I was in this mood before the mai tai.

Anyway, where was I?

Oh. Hi. Insert big smile here. I would probably lean on you by this point.

erm...

So after... wait. Okay. So first I did the cookies, then we went to see Hawk, who pretty much watched the clock waiting for us to leave and near about rolled his eyes plumb out of his head (omg I'm blogging in a southern accent). Then I went to the ATM at the hospital and loaded up on Jacksons cos that's how I roll. Then me an' my posse went to Mickey D's. Zoe has been singing "My Humps" all day. Her favorite part is "She's got me spendin', spendin' all yer money on me and spending time on me"  although she sings "spinning" which it very well could be. She also sings "Candyman" but she learned that in school. That song makes Holden go batshit. I'd show you but...  you know.

So ANYway...

um...

yeah.

Oh! Okay, so we went to McD's and came home UP the mountain and didn't get here until 8. So I've basically been gone all day for two days. Which is teh suck b/c I have shit to do around here. But I'll do shit tomrrow like laundry 'n' 'at.

*sigh*

And on top of all that, the rum is gone.

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF   Document67   Filed04/20/09   Page75 of 117



I know, Jack. I know. I tell ya this: you can just bring him (point up) staight to my tent.

Okay thassit.

It was nice talking to you. See ya 😃

Bye!

*slide out of chair*

Whups... forgot title (and had to retype this one 6 times) « So anyway...

See ya! Have a good time! Bring me back somethin French!

---

**Possibly related posts: (automatically generated)**

- **Forward, men, forward**
- Consumers urged to avoid all peanut butter products
- Office Watch: Road Trip!
- Obamamania is Passed - And That's a Good Thing

 Filed under That's fucked up    Tags: fueled by alcohol     8 Comments

 8 Comments





**Paula**
March 21, 2009 at 11:52 pm

Damn, I miss drinking! Nice poastie! And very nice picture...



**SereneBabe**
March 22, 2009 at 12:51 am

Very funny read at this hour... As for Mr. Depp, I prefer more of a Gilbert Grape look for him. 😐



**thordora**
March 22, 2009 at 8:18 am

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page77 of 117

You and I totally need to go drinking sometime.

And fuck me, now I want cookies.

.



### JulieKP

March 22, 2009 at 8:19 am

Can I come and have a mai tai too? Lord knows I need one

lately. I would have kept the hot guy tally with you while selling cookies. You gotta
entertain yourself somehow.

.



### Erin

March 22, 2009 at 10:29 am

Bwahahahaha... 

.



### CJ

March 23, 2009 at 2:09 pm

You crack me up! You can plop down next to me anytime and ramble on! I would
welcome it...after all, it's done all the time (at least virtually!)

.



### nimbus1108

March 29, 2009 at 3:22 pm

Just one mai tai did that? You are a cheap drunk!

.



Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page78 of 117



## **Eden**
March 29, 2009 at 3:31 pm

I don't know if the quantity was technically "one" as it was a big tall one.

# Leave a Reply

Name (required)

Mail (will not be published) (required)

Website

Written by

Submit Comment



f follow-up comments via email.

Amazon Breakthrough Novel Award

# General Literature

## download my entry

.

### March 2009

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|

« Feb            Apr »

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |

Whups... forgot title (and had to retype this one 6 times) « So anyway...

15  16  17  18  19  20  21
22  23  24  25  26  27  28
29  30  31

## . Search

[                    ] [ Find » ]

. –

[ Select Category ]

## . Recent Posts

- PW review
- And then there were 100...
- How I spent my Saturday afternoon
- Larry and the Lip Balm
- Some writing stuff

## .  Feed

- PW review
- And then there were 100...
- How I spent my Saturday afternoon
- Larry and the Lip Balm
- Some writing stuff

## Recent Comments

Eden on PW review

Kristin Baxter on PW review

lm on It's official: We really...

krishanna on PW review

Eden on PW review

## . Top Posts

- Crush groove

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page80 of 117

- ○ PW review
- ○ It's official: We really hate Colorado
- ○ Cheesecake Factory cheesecake for half price
- ○ Twerple pain
- ○ Wikipedia game: Five Clicks to Jesus
- ○ Popcorn and eye candy
- ○ It's official: I hate Colorado
- ○ Easy to please -- now with "dry sink" explanation goodness!
- ○ Whups... forgot title (and had to retype this one 6 times)

. Photos



More Photos

. Tags

29 Days birthday boobs **Bumblefuck** celebrity charity eff **erie** family fashion food halloween **hawk** hawk's hospital adventure **holden** joaquin knitting lawsuit **me** meme minerva movies music parenting party photos **plus politics** prince **quiz** religion school sex **sexography star wars** story TC tom cruise tv video witchy writing younglings youtube

# **zoe**

Whups... forgot title (and had to retype this one 6 times) « So anyway...

. Sgoinawn



blogged

current rating: **7.2**

**very good**
rate this blog

NetworkedBlogs

Blog:
**So anyway...**

Topics:
**personal**

**Join my network**

. Blogroll

- A Mindful Life
- A Spattering
- All Things Jennifer
- AmeriMama
- bad egg
- Big Fat Deal
- Blue Moon Mama
- Boozie
- Bossy
- Busta's Blog
- Cream of Potato Soup
- Crosswind
- cybercoven
- Daisybones
- Dinosaur Mom Chronicles
- Erie Blogs
- EriePressible
- Erin-go-blog
- Fabulously Jinxed

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page82 of 117

- figcookies
- Film Freaks Film Club
- fredlet
- Glitter For Brains
- ham & cheese on wry
- High on the Hog
- I can has Cheezburger?
- If they can do it...
- knittyBlog
- Kristophrenia
- Life after Work
- Light Motifs
- Little Foodies
- LocoBellaTuna
- Make Way For Cupcakes
- Mari's Midnight Garden
- Matter of Fact Mommy
- Michael Mahler's Ditherings
- Mini Obs
- Mother of Confusion
- Necessary Evil
- not martha
- One good Thing
- PACER
- Palace of Exile
- photography.ron.richardson
- Plain Jane Mom
- PostSecret
- Pseudotherapy
- Roger Ebert's Journal
- San Diego Momma
- Secondhand Tryptophan
- soul food
- Sour Grapes
- Spaghetti Harvest
- Spin Me I Pulsate.
- Standing here solidly...

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page83 of 117

- Sublime Stitching
- Sweetney
- Tea and Cakes
- The ADD Knitter
- The Remainder Table
- The Stephford Diaries
- Unclutterer
- Uppercase Woman
- We make three
- Weetapidol
- What's Your Name, Mommy?
- Why Am I Doing This?
- Will Write For Chocolate
- Witchvox

## Archives

- April 2009
- March 2009
- February 2009
- January 2009
- December 2008
- November 2008
- October 2008
- September 2008
- August 2008
- July 2008
- June 2008
- May 2008
- April 2008
- March 2008
- November 2007
- May 2007
- April 2007
- March 2007
- February 2007
- January 2007
- December 2006

Whups... forgot title (and had to retype this one 6 times) « So anyway...

- November 2006
- October 2006
- September 2006
- August 2006
- July 2006
- June 2006
- May 2006
- April 2006
- March 2006
- February 2006
- January 2006
- December 2005
- November 2005
- October 2005
- September 2005
- August 2005
- July 2005
- June 2005
- May 2005
- April 2005
- March 2005
- February 2005
- January 2005
- December 2004
- November 2004
- October 2004
- September 2004
- August 2004
- July 2004
- June 2004
- May 2004
- April 2004
- March 2004
- February 2004
- January 2004
- December 2003
- November 2003

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page85 of 117

- October 2003
- September 2003
- August 2003
- July 2003
- June 2003
- May 2003
- April 2003
- March 2003
- February 2003
- January 2003
- December 2002
- November 2002
- October 2002
- September 2002
- August 2002
- July 2002
- June 2002
- May 2002
- April 2002
- March 2002
- February 2002
- January 2002
- December 2001
- November 2001

# Pages

- Contact
- Fifty things
- Fish in the sky

# Blog Stats

- 142,532 hits

# 'N' 'at

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09   Page86 of 117









**stephl**
I have two finished novel-length lit fic mss and I'm currently querying. I'm working on a third novel and writing short fiction as well. I'm co-founder and editor of the literary journal and writing

Join me @ Agent Query Connect

Powered by Leverage Software 





Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF    Document67    Filed04/20/09    Page87 of 117



JOINT TAXES
DEATH TAXES
JOB SECURITY
SOCIAL SECURITY
HEALTH BENEFITS
MILITARY SERVICE
MEDICAL DECISIONS
HOSPITAL VISITATION
SPOUSAL IMMIGRATION

EDUCATE YOURSELF
WWW.EQUALITYMATTERS.ORG
JOIN THE ONLINE MARCH



.



So anyway... by Stephanie Lenz is licensed under a

Creative Commons Attribution-Noncommercial-Share

Alike 3.0 United States License.

Based on a work at piggyhawk.wordpress.com.

"So anyway..." content © 2001-present

Who links to me?

Whups... forgot title (and had to retype this one 6 times) « So anyway...

Case5:07-cv-03783-JF     Document67     Filed04/20/09     Page88 of 117









Lijit Search

. Meta

- Log in
- Entries RSS
- Comments RSS
- WordPress.com

Blog at WordPress.com. | Theme: Pressrow by Chris Pearson.

# EXHIBIT I

Lenz v. Universal | Electronic Frontier Foundation



# ELECTRONIC FRONTIER FOUNDATION

About    **Our Work**    Deeplinks Blog    Press Room    Take Action    Join EFF

Home » Our Work » Cases

## Lenz v. Universal

The Electronic Frontier Foundation (EFF) filed suit against Universal Music Publishing Group (UMPG), asking a federal court to protect the fair use and free speech rights of a mother who posted a short video of her toddler son dancing to a Prince song on the Internet.

Stephanie Lenz's 29-second recording shows her son bouncing along to the Prince song "Let's Go Crazy," which is heard playing in the background. Lenz uploaded the home video to YouTube in February to share it with her family and friends.

But last month, YouTube informed Lenz that it had removed the video from its website after Universal claimed that the recording infringed a copyright controlled by the music company. Under federal copyright law, a mere allegation of copyright infringement can result in the removal of content from the Internet.

"I was really surprised and angry when I learned my video was removed," said Lenz. "Universal should not be using legal threats to try to prevent people from sharing home videos of their kids with family and friends."

"Universal's takedown notice doesn't even pass the laugh test," said EFF Staff Attorney Corynne McSherry. "Copyright holders should be held accountable when they undermine non-infringing, fair uses like this video."

Last May, UMPG's parent company, Universal Music Group, sent a baseless copyright takedown demand to YouTube for a video podcast by political blogger Michelle Malkin. That video was quickly reposted after Malkin fought back.

"Copyright abuse can shut down online artists, political analysts, or -- as in this case -- ordinary families who simply want to share snippets of their day-to-day lives," said EFF Staff Attorney Marcia Hofmann. "Universal must stop making groundless infringement claims that trample on fair use and free speech."

The lawsuit asks for a declaratory judgment that Lenz's home video does not infringe any Universal copyright, as well as damages and injunctive relief restraining Universal from bringing further copyright claims in connection with the video.

This lawsuit is part of EFF's ongoing work to protect online free speech in the face of bogus copyright claims. EFF is currently working with Stanford's Fair Use Project to develop a set of "best practices" for proper takedowns under the Digital Millennium Copyright Act.

Watch the video here: http://www.youtube.com/watch?v=N1KjHFWlhQ

Enter search terms    Go  ?

Subscribe to EFFector

[our free email newsletter]

Email

Zip Code (optional)

Subscribe!

» EFFector Archive

Related Issues:
No Downtime for Free Speech Campaign

Action Alerts



Reform The PATRIOT Act: Stop Abuse of National Security Letters

Act on ACTA: Tell the New Congress to Open the Secret IP Pact

» Action Center



Help EFF Fight Illegal Spying!

EFF SWAG! Buy EFF t-shirts, stickers, and more!

Bloggers' Rights
Miners' Rights
FOIA Litigation for Accountable Government Project
Line Noise Podcast
Patent Busting

Lenz v. Universal | Electronic Frontier Foundation

**SOCIAL NETWORKS NEWS TOP HEP**

## Documents

- .

  - ○ **October 28, 2008**
    - Order Denying Universal's Motion to Certify Interlocutory Appeal
  - ○ **August 29, 2008**
    - Defendant's motion to certify order for interlocutory appeal and to stay pending resolution of proceedings[PDF, 169.03 KB]
      - ▪ Defendant's reply in support of motion to certify and stay[PDF, 132.78 KB]
      - ▪ Opposition to defendant's motion to certify and stay[PDF, 389.88 KB]

- **August 20, 2008**
  - Order denying Universal's motion to dismiss[PDF, 97.68 KB]
- **July 3, 2008**
  - Defendant's reply in support of motion to dismiss plaintiff's second amended complaint[PDF, 267.91 KB]
  - Supplemental request for judicial notice in support of defendant's motion to dismiss[PDF, 145.67 KB]
- **June 20, 2008**
  - Opposition to Motion to Dismiss Second Amended Complaint[PDF, 404.81 KB]
- **May 23, 2008**
  - Motion to Dismiss Plaintiffs Second Amended Complaint[PDF, 322.91 KB]
- **April 18, 2008**
  - Second Amended Complaint[PDF, 143.04 KB]
  - Exhibits[PDF, 7.92 MB]
- **April 8, 2008**
  - Order granting defendants motion to dismiss[PDF, 136.60 KB]
- **December 19, 2007**
  - Declaration in Support of Motion to Dismiss [PDF, 63.86 KB]
  - Exhibits A-F[PDF, 879.27 KB]
  - Exhibits G-K[PDF, 0 B]
- **December 3, 2007**
  - Reply in Support of Motion to Dismiss[PDF, 70.71 KB]
  - Supplemental Declaration In Support of Motion to Dismiss[PDF, 63.86 KB]
  - Exhibits A-C[PDF, 564.72 KB]
  - Exhibits D-E[PDF, 425.33 KB]
- **November 13, 2007**

Lenz v. Universal | Electronic Frontier Foundation

- Lenz Opposition to Motion to Dismiss[PDF, 652.64 KB]

- Declaration of Lenz[PDF, 430.36 KB]

- Declaration of McSherry[PDF, 1.42 MB]

- Declaration of Schaffer[PDF, 137.29 KB]

- **September 21, 2007**
  Motion to Dismiss[PDF, 152.05 KB]

- **August 15, 2007**
  Amended Complaint[PDF, 122.53 KB]

- **July 24, 2007**
  Complaint[PDF, 121.97 KB]

## Press Releases

- July 15, 2008
  Friday Court Hearing in YouTube Video Battle

## Deeplinks Posts

- February 03, 2009
  YouTube's January Fair Use Massacre

- October 15, 2008
  YouTube Responds to McCain Campaign's Letter

- October 14, 2008
  McCain Campaign Feels DMCA Sting

- August 25, 2008
  EFF and ACLU of Northern California to ISPs and Content Owners: Do Your Part to Protect Political Speech

- August 20, 2008
  Judge Rules That Content Owners Must Consider Fair Use Before Sending Takedowns

- January 03, 2008
  New Study on Copyright and Creativity from the Center for Social Media

## In The News

- ABA LAW JOURNAL | February 12, 2009
  Copyright in the Age of YouTube

- SAN FRANCISCO CHRONICLE | August 21, 2008
  Woman can sue over YouTube clip de-posting

Lenz v. Universal | Electronic Frontier Foundation

- WIRED NEWS | August 20, 2008
Judge: Copyright Owners Must Consider 'Fair Use' Before Sending Takedown Notice

- ZDNET | August 24, 2008
Suit Over Baby Vid with Prince Song Goes Forward

- TV TECHNOLOGY | August 22, 2008
Judge: Toddler Dancing to Prince Song Can Stay on YouTube



- Thanks | RSS Feeds | Privacy Policy | Contact EFF

# EXHIBIT J

About EFF | Electronic Frontier Foundation

**ELECTRONIC FRONTIER FOUNDATION**

About   Our Work   Deeplinks Blog   Press Room   Take Action   Join EFF

Home

- **EFF's History**
- **Opportunities**
  - Job Openings
  - Internships
  - Volunteer
- **Staff**
- **Board of Directors**
- **Fellows**
- **Advisory Board**
- **Contact EFF**

## About EFF

From the Internet to the iPod, technologies are transforming our society and empowering us as speakers, citizens, creators, and consumers. When our freedoms in the networked world come under attack, the Electronic Frontier Foundation (EFF) is the first line of defense. EFF broke new ground when it was founded in 1990 — well before the Internet was on most people's radar — and continues to confront cutting-edge issues defending free speech, privacy, innovation, and consumer rights today. From the beginning, EFF has championed the public interest in every critical battle affecting digital rights.

Blending the expertise of lawyers, policy analysts, activists, and technologists, EFF achieves significant victories on behalf of consumers and the general public. EFF fights for freedom primarily in the courts, bringing and defending lawsuits even when that means taking on the US government or large corporations. By mobilizing more than 50,000 concerned citizens through our Action Center, EFF beats back bad legislation. In addition to advising policymakers, EFF educates the press and public.

EFF is a donor-funded nonprofit and depends on your support to continue successfully defending your digital rights. Litigation is particularly expensive; because two-thirds of our budget comes from individual donors, every contribution is critical to helping EFF fight —and win—more cases.

Information on donating to EFF

Learn about significant EFF court victories

Learn more about EFF's founding

**Subscribe to EFFector**

[our free email newsletter]

Email

Zip Code (optional)

Subscribe!

» EFFector Archive

**Action Alerts**

Reform The PATRIOT Act: Stop Abuse of National Security Letters

Act on ACTA: Tell the New Congress to Open the Secret IP Pact

» Action Center





EFF SWAG! Buy EFF t-shirts, stickers, and more!

Bloggers' Rights
Coders' Rights
FOIA Litigation for Accountable Government Project
Line Noise Podcast
Patent Busting

About EFF | Electronic Frontier Foundation

· Thanks | RSS Feeds | Privacy Policy | Contact EFF

Social Networks
Maps TOHelp

# EXHIBIT K

YouTube's January Fair Use Massacre | Electronic Frontier Foundation

# ELECTRONIC FRONTIER FOUNDATION



**About    Our Work    Deeplinks Blog    Press Room    Take Action    Join EFF**

Home » Deeplinks Blog » February, 2009

## Deeplinks Archives

- April, 2009
- March, 2009
- February, 2009
- January, 2009
- December, 2008
- November, 2008
- October, 2008
- September, 2008
- More Archives

## Blog Categories

- Analog Hole
- Announcement
- Anonymity
- Anti-Counterfeiting Trade Agreement
- Bloggers' Rights
- Broadcast Flag
- Broadcasting Treaty
- CALEA
- Call To Action
- Cell Tracking
- Coders' Rights Project
- Commentary
- Development Agenda
- Digital Radio
- Digital Rights Management
- Digital Video

February 3rd, 2009

# YouTube's January Fair Use Massacre

*Commentary by Fred von Lohmann*

Privacy info. This embed will serve content from *youtube.com*.

This is what it's come to. Teenagers singing "Winter Wonderland" being censored off of YouTube.

Fair use has always been at risk on YouTube, thanks to abusive DMCA takedown notices sent by copyright owners (sometimes carelessly, sometimes not). But in the past several weeks, two things have made things much worse for those who want to sing a song, post an a capella tribute, or set machinima to music.

First, it appears that more and more copyright owners are using YouTube's automated copyright filtering system (known as the Content ID system), which tests all videos looking for a "match" with "fingerprints" provided by copyright owners.

Second, thanks to a recent spat between YouTube and Warner Music Group, YouTube's Content ID tool is now being used to censor lots and lots of videos (previously, Warner just silently shared in the advertising revenue for the videos that included a "match" to its music).

EFF, along with many other public interest groups, have repeatedly expressed our concerns to both copyright owners and YouTube about the dangers of automated filtering systems like the Content ID system. These

http://www.eff.org/deeplinks/2009/01/youtubes-january-fair-use-massacre (1 of 3) [4/20/2009 5:17:54 PM]

## Subscribe to EFFector

[our free email newsletter]

Email

Zip Code (optional)

Subscribe!

» EFFector Archive

» Action Center

## Action Alerts

Reform The PATRIOT Act: Stop Abuse of National Security Letters

Act on ACTA: Tell the New Congress to Open the Secret IP Pact





Help EFF Fight Illegal Spying!

EFF SWAG! Buy EFF t-shirts, stickers, and more!

Bloggers' Rights
Coders' Rights
FOIA Litigation for Accountable Government Project
Line Noise Podcast
Patent Busting

**SOCIAL NETWORKING WAYS TO HELP**

systems are still primitive and unable to distinguish a tranformative remix from copyright infringement. So unless they leave lots of breathing room for remixed content, these filters end up sideswiping lots of fair uses.

And that's exactly what has happened these past few weeks. And while today it's Warner Music, as more copyright owners start using the Content ID tool, it'll only get worse. Soon it may be off limits to remix anything with snippets of our shared mass media culture -- music, TV, movies, jingles, commercials. That would be a sad irony -- copyright being used to stifle an exciting new wellspring of creativity, rather than encourage it.

It's clear from the Warner Music experience that YouTube's Content ID tool fails to separate the infringements from the arguable fair uses. And while YouTube offers users the option to dispute a removal (if it's an automated Content ID removal) or send a formal DMCA counter-notice (if it's an official DMCA takedown), many YouTube users, lacking legal help, are afraid to wave a red flag in front of Warner Music's lawyers. That's a toxic combination for amateur video creators on YouTube.

So what can we do?

**First, YouTube should fix the Content ID system. Now.** The system should not remove videos unless there is a match between the video *and* audio tracks of a submitted fingerprint. When we made this suggestion in October 2007, YouTube assured us that they were working on improving the tool. Well, it's been more than a year. If YouTube is serious about protecting its users, the time has come to implement this fix. (Some will point out that this implies that record labels and music publishers can never use the Content ID tool to remove videos solely based on what's in the audio track. That's right. I think that adding a soundtrack to your home skateboarding movie is a fair use. If copyright owners feel differently, they can send a formal DMCA takedown notice, and with any luck, we'll see each other in court.)

**Second, YouTubers, EFF wants to help.** If Warner Music Group took down your video, ask yourself if your video is (1) noncommercial (i.e., no commercial advertisements or YouTube Partner videos) and (2) includes substantial original material contributed by you (i.e., no verbatim copies of Warner music videos). If so, and you'd like to counternotice but are afraid of getting sued, we'd like to hear from you. We can't promise to take every case, but neither will we stand by and watch semi-automated takedowns trample fair use.

*Related Issues: DMCA  Free Speech  Intellectual Property  No Downtime for Free Speech Campaign*

*Related Cases: Lenz v. Universal*

[Permalink] [Email this article]

- DMCA
- DMCA Rulemaking
- E-Voting Rights
- EFF Europe
- EFF15
- File Sharing
- FOIA Litigation for Accountable Government
- Free Speech
- Free Trade Agreement of the Americas
- Innovation
- Intellectual Property
- International
- Legal Analysis
- Legislative Analysis
- miniLinks
- News Roundup
- News Update
- No Downtime for Free Speech Campaign
- NSA Spying
- Patents
- PATRIOT Act
- Printers
- Privacy
- Real ID
- RFID
- Search Engines
- Technical Analysis
- Test Your ISP
- Transparency
- Travel Screening
- Trusted Computing
- WIPO

• Thanks   • RSS Feeds   • Privacy Policy   • Contact EFF

# EXHIBIT L

Blogging WIPO: Understanding the Public Domain | Electronic Frontier Foundation

ELECTRONIC FRONTIER FOUNDATION

About    Our Work    **Deeplinks Blog**    Press Room    Take Action    Join EFF

Home » Deeplinks Blog » February, 2006

**Deeplinks Archives**

○ April, 2009
○ March, 2009
○ February, 2009
○ January, 2009
○ December, 2008
○ November, 2008
○ October, 2008
○ September, 2008
○ More Archives

**Blog Categories**

○ Analog Hole
○ Announcement
○ Anonymity
○ Anti-Counterfeiting Trade Agreement
○ Bloggers' Rights
○ Broadcast Flag
○ Broadcasting Treaty
○ CALEA
○ Call To Action
○ Cell Tracking
○ Coders' Rights Project
○ Commentary
○ Development Agenda
○ Digital Radio
○ Digital Rights Management
○ Digital Video

February 22nd, 2006

# Blogging WIPO: Understanding the Public Domain

*Deeplink by Gwen Hinze*

In the afternoon of Day 2 of the WIPO Provisional Committee on Proposals Related to a Development Agenda we finally got down to business: discussing Chile's thoughtful proposal on the Public Domain. Chile had actually put forward three suggestions, but it was the proposal for WIPO to undertake a study of the value of "a rich and accessible public domain" that drew comments from a slew of Member States, the Committee Chair and public interest non-governmental organizations. And rightly so. As Chile's proposal notes, the public domain is essential for ensuring access to knowledge, and provides the foundation for technological innovation.

Intellectual property rights are supposed to promote the same goals, but you'd never know it from the comments of some participants who seemed to fundamentally misunderstand the essential relationship between IP and the public domain. Apparently under the mistaken impression that the public domain is the opposite of intellectual property, these participants claimed that the proposal was outside WIPO's mandate.

The copyright and patent regimes have historically recognized that the creation of intellectual property requires a robust public domain. Material from the public domain forms the building blocks on which new creations are built. As the Chilean delegate eloquently put it: "Our starting premise is that nothing is created out of nothing. The greater the works in the public domain, the greater the creation." The public policy underlying the grant of time-limited exclusive copyright and patent rights is that the public domain will be continually enriched, to the benefit of all society.

Precisely because of the public domain's importance, recent encroachments upon it - such as Technological Protection Measures, new sui generis database rights for non-copyrightable data, exclusive rights for test data in the patent arena, and extensions of copyright and patent terms - deserve careful scrutiny.

Chile also proposed that WIPO analyze complementary systems to intellectual property that incentivize creative activity, innovation and technology transfer, including free and open source software and creative commons licences, and a study or set of case studies assessing the appropriate level of intellectual property protection based on different countries' development status.

The NGO coalition's notes of day two's proceedings are after the jump. There are also great summaries of the debate at the blogs of IP-Watch, Georg Greve, and Karsten Gerloff of Free Software Foundation Europe.

**Subscribe to EFFector**

[our free email newsletter]
Email
Zip Code (optional)
Subscribe!

» EFFector Archive

**Action Alerts**

Reform The PATRIOT Act: Stop Abuse of National Security Letters

Act on ACTA: Tell the New Congress to Open the Secret IP Pact

» Action Center

Enter search terms    Go  ?

Help EFF Fight Illegal Spying!

EFF SWAG! Buy EFF t-shirts, stickers, and more!




Bloggers' Rights
Coders' Rights
Free Speech Project
Line Noise Podcast
Patent Busting



FGV Brazil, and Thiru Balasubramaniam of Consumer Project on Technology.

---

First Meeting of WIPO Provisional Committee for Proposals Related to a Development Agenda

Day 2, February 21, 2006

---

Notes taken by:

Gwen Hinze, gwen at eff.org, Electronic Frontier Foundation [GH]

Thiru Balasubramaniam, thiru at cptech.org, Consumer Project on Technology [TB]

Teresa Hackett, Electronic Information for Libraries [TH]

[NOTE: This is not an official transcript. Any errors and omissions are regretted.]

-=-=-=-

Copyright-Only Dedication (based on United States law)

The person or persons who have associated their work with this document (the "Dedicator") hereby dedicate the entire copyright in the work of authorship identified below (the "Work") to the public domain.

Dedicator makes this dedication for the benefit of the public at large and to the detriment of Dedicator's heirs and successors. Dedicator intends this dedication to be an overt act of relinquishment in perpetuity of all present and future rights under copyright law, whether vested or contingent, in the Work. Dedicator understands that such relinquishment of all rights includes the relinquishment of all rights to enforce (by lawsuit or otherwise) those copyrights in the Work.

Dedicator recognizes that, once placed in the public domain, the Work may be freely reproduced, distributed, transmitted, used, modified, built upon, or otherwise exploited by anyone for any purpose, commercial or non-commercial, and in any way, including by methods that have not yet been invented or conceived.

-=-=-=-

Meeting started 10:30 am

Chair: I have four speakers on my list, then I'd like to move on to the African Group

- DMCA
- DMCA Rulemaking
- E-Voting Rights
- EFF Europe
- EFF15
- File Sharing
- FOIA Litigation for Accountable Government
- Free Speech
- Free Trade Agreement of the Americas
- Innovation
- Intellectual Property
- International
- Legal Analysis
- Legislative Analysis
- miniLinks
- News Roundup
- News Update
- No Downtime for Free Speech Campaign
- NSA Spying
- Patents
- PATRIOT Act
- Printers
- Privacy
- Real ID
- RFID
- Search Engines
- Technical Analysis
- Test Your ISP
- Transparency
- Travel Screening
- Trusted Computing
- WIPO

Algeria:

Would like to make similar statement to that of Pakistan, and that of African Group spokesperson. The key elements we'd like to see included in these discussions:

- technical assistance - should be included in a national framework;
- technology transfer - it has an important role to play in strengthening economic base of developing countries. So far has been subject of political statements, but not so much concrete action.
- human resource strengthening and putting an end to brain drain which is linked to the issue of transfer of technology. Need to take responsibility and recognize that brain drain is a terrible loss to developing countries. WTO needs to help strengthen developing countries' human resources sector to help stop and reverse brain drain. Development of human resources needs to be strengthened through international instruments so that developing countries can use IP as tool for development.

The development dimension's importance has been recognized by a number of bodies. The WTO, despite its trade focus, has recognized the importance of the development dimension. Other trade organizations have also recognized this. It is incumbent on WIPO to mainstream the development dimension in the work of WIPO. Virtually all delegations have mentioned this, which is a sign for optimism about the outcome of this meeting.

Although every proposal should be given consideration, we should focus our work to find practical solutions to mainstream the development dimension. The African Group proposal and the GFoD proposal contain concrete elements that could help focus our work.

Tunisia:

In view of the Tunis WSIS plan of action and recognizing that the technical assistance provided by WIPO to our countries can enable us to identify the political space of individual countries to allow them to respond to their individual needs.

We hope that IP should play a more important role in fostering innovation and creativity in our counties. We need a whole range of tangible proposals many of which are contained in the African Group proposal such as strengthening technical assistance, encouraging R & D in innovative sectors, strengthening links with SMES, need to take into account the informal sector in providing protection for literary and artistic works in Africa and using ICTs more effectively. Hope that we can come forward with concrete proposals for WIPO General Assembly.

Bangladesh: We would like to align ourselves with statements of Pakistan (on behalf of G-77 China), Thailand (Asian Group) and Benin (on behalf of the Least Developed Countries).
We must ask the question whether WIPO can afford do without the development dimension. Overarching principle of all UN organizations - including WIPO - is fostering wellbeing of all humanity.

IPR is not just about private property rights, is of benefit to all.

The UK Commission on Intellectual Property Rights found that intellectual property has direct effects on developing countries.

IPR is best regarded as one of many ways to foster development.

and

"Intellectual property systems may, if we are not careful, introduce distortions that are detrimental to the interests of developing countries. Developed countries should pay more attention to reconciling their commercial self-interest with the need to reduce poverty in developing countries, which is in everyone?s interest. Higher IP standards should not be pressed on developing countries without a serious and objective assessment of their impact on development and poor people."

PCIPD is too narrow in focus to undertake this work.

All this rhetoric on achieving MDGs has become like an elusive dream.

How can WIPO support environment for sustainable development? The key question is technology transfer. We have the Brussels agreement on technology transfer.

Uruguay:

As co-sponsor of GFoD proposal, we support statement of Argentina yesterday. Share idea that need to identify common denominators in various proposals submitted. Would be a good way for this committee to fulfill its mandate to come up with concrete proposals. Would be helpful to draw up a table of proposals and points of convergence.

Proposals we think are important:
- drafting standards that balance private rights with public rights, namely access to knowledge

- Standards need to contain the possibility for states to apply them in accordance with their legislation.

- Another important element is effective access to the public domain

- With respect to impact studies, we support the proposal and have done it often in this body. Impact studies should be carried out, the protagonists should be developing countries.

Egypt:

Decision of General Assembly to set up this provisional committee shows the importance that Member States accord to the development dimension.

This decision did not aim only at continuing important discussions on Development Agenda but also required us to speed up our work.

Nothing to add to great and comprehensive statement and proposal of African Group.

As we have stressed at the 3rd IIM, we find a clear continuity between the GFoD proposal and the African

group proposal.

All proposals should have an equal time and opportunity for discussion, which hasn't happened with African Group proposal yet.

The delegation of Egypt supports the proposal on behalf of the GFoD because the ideas are practical and objective and in line with desired objectives to include the development agenda in multilateral activities.

Thanks delegation of Chile for proposal.

The three basic elements of the Chilean proposal are important and are of vital importance to developing countries.

We agree that there should be an effective mechanism to protect and support public domain because it is the arsenal for innovation, creation and development.

There should be complementary systems to intellectual property protection. Worthy of discussion and study. Their proposal added to existing suggestions on studies for economic value of intellectual property rights.

We also support the proposal of Colombia as it deals with some of the problems faced by developing country patent examiners.

Thanks to the US for their proposal. Due to constraints of time, we have not had time to study it.

Jordan:

I would like to propose that the WIPO Secretariat set out all the proposals in the form of clusters so that we can find the common ground and reach collective agreement as soon as possible

Ivory Coast:

We support the position of the African Group while highlighting our own ideas. We stress that an effective intellectual property system should contain a targeted system for allowing countries to promote development, economic growth, create jobs and exports.

This should answer the needs of developing countries and Laces. In our country the advantages to businesses from an effective IP system have not been exploited in an optimum way. WIPO should give more help to states to train staff and draw up guides, and provide support to small businesses.

The management of IP should be the concern of businesses in all countries, both in the business and cultural areas, both of which are expanding.
Intangible assets contribute to regional economies because they add value.

WIPO should help developing countries to introduce policies and strategies to develop intellectual property.

We propose that WIPO should set up a training program on IP for countries that do not currently provide this for economic and social development. There should be special courses for policy makers. WIPO should prepare an information guide for parliamentarians. We want an international instrument for combating piracy of traditional knowledge, which is ravaging developing countries.

Ethiopia:

Associates itself with statements on behalf of G-77 and China and African Group.

Africa is a continent where poverty both in absolute and relative terms is on the increase.  On the other hand, IP is well documented in its ability to create wealth.

Africa as in many other fields of endeavor is isolated from benefit of intellectual property system.

We are of the firm view that the modest submission of the African Group to this august gathering should be given a favourable hearing.

We thank WIPO for its assistance in helping us to develop an intellectual property system.

El Salvador:

We support the proposals of the delegation of Colombia, as it would greatly facilitate the work of our patent office. El Salvador is building a trademark system based on horizontal trademark links. We have signed technical assistance and cooperation agreements with Spain and we are grateful to the EPO.Therefore we support proposal of Chile to study benefits of intellectual property

Argentina (Ambassador Dumont):

On behalf of the GFOD, I will give a general reaction to the Africa proposal. This is an important contribution to the debate. Development should be translated into a global programme within WIPO.

While recognizing that intellectual property is increasingly important to developing countries' economies, we also recognize impact on a number of public policies.

Common to both proposals is the view that developing countries need to integrate the development of IP to ensure that it is not a barrier to the social, economic policies of these countries. We are happy to note that the African Group proposal especially acknowledges the proposal of the GFOD and is pleased at the degree of convergence of both proposals which are complementary and mutually supportive. Since the whole idea of the Development Agenda is to find solutions to the needs of developing countries, it is important that the proposals specific to Africa are given due consideration.

We concur with many of the important proposals on technology transfer and patent disclosure. Let me express the conviction of the GFOD that we will present concrete proposals to the next GA.

Break - 11:20 a.m.

Blogging WIPO: Understanding the Public Domain | Electronic Frontier Foundation

Restarted 12:09 am

Chair: the African Group is not in the room, but has told me that they are not ready yet. They are reanalyzing their proposals and will be able to present them this afternoon.

So I had planned to give the floor to the African Group, but I will now ask the Chilean delegate to present their proposal.

Austria: i have a co-ordination announcement - Group B will meet at 1.

Chile: Our document contains three independent proposals.

The first is on the public domain. It's not about putting a money value on the public domain but to understand its value to all.

The benefits of a rich public domain are obvious, to education, businesses that can use rich databases, for governments, patent offices to see what prior art is available throughout the world, and to libraries and archives.

Our starting premise is that nothing is created out of nothing. The greater the works in the public domain (PD), the greater the creation. We don't want to put fences around the public domain.

We've picked out various examples of where the public domain may be affected. Patents and copyright laws may have a negative effect on the public domain. About 100 years ago, various limits were put on the PD through these laws. While they may be justified one by one, taken as a whole, they have reduced the public domain.

Copyright was originally designed to protect author's rights, artists and performers. We are now discussing new right holders that can have claims to the same work. The number of rights conferred on right holders has increased.

And we have increased the terms of protection of both copyright and patent. For instance, in treaties administered by WIPO, in Article 18 of the Berne Convention [GH: applied by Art. 13 of WIPO Copyright Treaty] there is retrospective protection; there's a presumption about ownership of works; there's the so-called orphan works problem. The legislation of some developed countries deals with this. For instance, the US is considering legislation to address this problem. So these two items could be addressed.

It would be useful to include PD works in a library e.g. like the Library of Alexandria. Who has ownership rights to a particular work, or which publishing houses to ask permission from in order to use a work?

There are other things that could be done to identify works that are in the public domain. For instance, I mentioned yesterday our proposal for a public domain database. Chile has such a list. WIPO has a role to play here - for instance with its WCT global database. There are also issues of obsolescence. There are also creative commons licenses.

In Chile, we're trying to digitalize all copyright works so they'll be available when they move into the PD.

On our second proposal, we should discuss systems that are currently being implemented by countries such as creative commons, and free and open source software.

It is important to discuss incentives for intellectual creation. Systems to analyze the novelty of something are not hard to do.

We'd like to set up a new forum within WIPO to address these issues. There are difficulties in setting up permanent fora at WIPO so here are some examples of how this can be implemented e.g. an electronic discussion forum limited in time.

An alternative would be a permanent committee within WIPO with this as a standing agenda item. And we could talk about a utility model in the Standing Committee on Patents.

Proposal three is to study the impact on development. We realize that a country-by-country analysis is ambitious. More realistic are studies on specific issues e.g. patents and copyright, L&E, alternative systems. These should be limited to a representative selection of developed and developing countries and would be voluntary. It should include both developed and developing countries, so we can make a comparison between countries and rates of development. Chile would be prepared to participate.

Chair: Congratulations on quality of proposal. I've read your proposal with interest. When I was director of the national patent office (Paraguay) we realized that the vast majority of patents fall into the public domain within a lifetime because in most cases a fee must be paid to keep the patent in force. Many developing countries don't know this - so when we want to use a patent for the benefit of our country, we don't know that is in the public domain.

The experts from the EPO told us that the average lifetime of a patent was 7 years (this was in the 1980s and 1990s).

The Chile proposal is tackling an issue that could be of great interest to developing countries.

Mexico: Commenting on Chilean proposal.

We have studied the Chile proposal carefully especially the proposal on free software and open source. This was one of the most discussed issues at WSIS Tunis. The issue of free software or free code, will be key issue to be discussed after Tunis Plan of Action, so we think that tackling free and open source software in this forum would therefore be premature.

Chile should raise its document again at UNDP/ITU/UNCTD meeting on 24 February.

We note that the Chilean delegate did not mention this in his intervention and in any case, I would want to make sure that this issue is associated with follow-up to the Tunis WSIS plan of action.

[GH: FSF Europe notes that Mexico argued the opposing position at WSIS - namely that free and open source software issues should be discussed within WIPO, the UN's specialist IP body.]

Panama:

Blogging WIPO: Understanding the Public Domain | Electronic Frontier Foundation

We are pleased that the work programme departs from the traditional means of working. We have examined all the proposals which are all useful. Many are complementary and all have an impact on our collective work, so we support them all.

We support Uruguay's call for a comparative table of proposals. Many similarities that complement one another.

On the Chile proposal, I would like to comment on each point.

1. Appraisal of the public domain: We find this section interesting. The public should be informed that PD material can be used so there is greater scientific knowledge leading to job creation. There should be easy access to the public domain, as stressed by Chile.

2. Importance of complementary systems to and with IP - interesting and stimulating. Human beings by their very nature are attracted by various initiatives. In my country, we have enacted initiatives to universities not to register IP to make greater use of IP for scientific research, which has lower levels of patentability.

This is already applied to countries where there are SMEs.

We are having creativity competitions which have generated a lot of interest and they are registering their collective rights.

For instance, authenticity stamps for goods made in indigenous sectors. Met with great success nationally.

I agree with Chile on the need to find complementary systems to and in IP.

3. Study to assess appropriate levels of IP. We support this, as each member state needs to know its strengths and weaknesses in order to develop a national strategy. We also support WIPO to publish guides to study IP system in each country. With regard to specific studies, we support the suggestion on the strategic use of IP.

Bangladesh:
On Chilean proposal:

1. Appraisal of public domain: If the shorter period for patents means these are transferred to the public domain, this is good.

We agree with Chile that WIPO should study the benefits of a rich and accessible public domain.

On Chile's proposal for models to protect the public domain, we have some pre-existing models e.g. in the domain of Traditional Knowledge, from the African Union. We can have a library of proposals.

There should be more interaction between the CBD and WIPO. Very important for developing countries.

We have this question of complementary systems in IP. The Chilean proposal says there should be a permanent fora for this; GFOD mentions establishing a new Standing Committee on Technology Transfer.

We have listened with interest on open software licenses. We believe that developing countries should have free software in addition to licensed. WIPO should advise countries on how to develop systems of anti-trust laws because it's better for all if multiple sources available.

The impact assessment proposal is good. Perhaps we can draw upon existing sources e.g. from UNCTAD on level and capacity of different countries. We should not wait as we do not know the timeframe for these studies.

The LDCs have a peculiar situation because of their vulnerability to certain constraints.

Argentina: The Chile proposals are very complementary to the GFOD proposals.

Basically, in quite general terms we see a great deal of similarity between the two proposals because they are both based on the same philosophy or spirit if you like.
We agree with proposal for complementary systems - we put forward a similar proposal in 2004.

Finally the issue of impact assessment studies is something we have already stressed. We need to have rules and instruments that are member-led.

Brazil:

Many proposals, but many points of convergence. We align ourselves with the statement made by Argentina.

The Chilean proposal complements many of the proposals we have presented. The Chilean proposal reflects a common understanding that the Development Agenda should not be focused on technical assistance alone. Should also incorporate concerns about norm setting activities, research and studies to assess impacts of IP systems in all countries, with view to highlighting differences on development in various countries

We also support putting in place measures to safeguard the public domain. The idea to elaborate a databank to register the contents of the public domain should be further elaborated perhaps in conjunction with UNESCO.

WIPO must incorporate the progress enjoyed in the WSIS process on free and open sources software. We reiterate that the Chilean proposal convergences with the FOD document with a view to moving forward to results.

Austria (EU plus Bulgaria and Romania): The Chilean proposal touches upon several important horizontal issues. We fully recognize the importance of disseminating knowledge in the public domain.

On second proposal, we acknowledge that IP systems are essential tool for encouraging development, but systems such as public procurement also play a role as well.

On the third proposal, the EU also believes that sound impact assessments can deepen understanding of the flexibilities provided in the IP systems themselves.
Would want further analysis of proposal as to who conducts this study, cost implications if conducted by WIPO.

However, as a first step before initiating studies, a compilation of studies that have already been conducted could be useful.

Islamic Republic of Iran:
Public domain is a pillar of APRs.

Working on study with view to promoting and making available more information in IP areas is useful.

IP is not only policy for encouraging innovation and creativity. Notes that UK IPR Commission report also supports this.

Our work involves identifying concrete flexibilities that currently exist.

USA:
We see a number of points of concurrence, including with proposal put forward by Bahrain et al.

In order to achieve concrete results, we should list all proposals without trying to categorize, so that we can move forward.

We agree that the public domain is a resource that can foster innovation and creativity.

We also agree that creativity and innovation are not from nothing, but are incremental.

During term of protection, the public domain is enriched by limited exceptions.
And after term, is also enriched by new material.

We believe that WIPO in helping to establish well-functioning IP systems is working to protect the PD.

When WIPO established WIPOnet, WIPO enhanced access to a vast array of public domain. WIPO should deepen analysis of the benefits of rich and vibrant public domain both in norm-setting activity and in its technical assistance.

Some doubts whether it would be a wise use of WIPO resources to consider proposal two, because wide-ranging factors involved in incentivization, including procurement etc. But WIPO should focus its efforts on IP matters, not on IP matters. Agree with African Group utility model for patent system is important and would support further analysis.

Regarding proposal two, we have doubts that this would be a valuable use of WIPO's resources.

With respect to proposal three, we do support studies of appropriate levels of IP protection but this must be

must be addressed by each government, not WIPO

WIPO plays an important role in international environment. Believe that conducting study proposed by Chile would consumer enormous resources even to settle terms of reference and not something that WIPO could easily do because turns on political questions by countries in different positions, whether they are DCs or LDCs, and whether they decide to comply with TRIPs obligations. For instance, the WTO General Council in October decided to extend transitional period for LDCs to 2013. WTO decided upon appropriate levels of IP in the TRIPS agreement with respect to minimum enforcement and transition periods.

Therefore we do not support WIPO embarking on these studies.

Japan: We recognize that public domain is important, however, our understanding is that public domain exists as complementary to IP system. So if pd is studied, must also analyze meaning of IPR, the other side of the coin. Also, this type of study done elsewhere so we should avoid duplication in our work.

Chair: closed list of speakers for this morning's meeting. We'll come back at 3pm.

Will give floor to organizations to make announcements.

2:15 GFod meeting

International Film Producers Association holding showing of Nigerian film in HDTV this evening - Wiyet Dey

===
Afternoon Session:

Colombia: We support the view of other delegations that the public domain is vital and important to WIPO's work. We support Chilean proposal.

Support proposal one.

We are still discussing proposal two.

Regarding proposal three, my government supports this proposal.

Panama has indicated that it would be useful to have a list or table of all the proposals submitted thus far.

Nigeria (African Group): Chile is an important country within the developing world and its proposal should be taken seriously.

1) Our group views that the privatization and commodification of knowledge should be resisted (especially when it is enclosed). Thus, we welcome Chile's proposal.

3) Support call for study on appropriate levels of IP based on level on development.

Peru: In general terms the Chilean proposal seems a positive proposal.

1) Deepen analysis of public domain in keeping it accessible. Preservation of public domain or safeguarding protection of the public domain. We support safeguarding.

2) We would like an indication from Chile as suggestions as to what type of fora we could consider these complementary systems. ITU/WSIS is not only forum. These are cross-cutting issues.

3) We should tie competition with and...??
Studies should be done by countries.

Russian Federation:

2) Implementing complementary systems should be done at national levels. Is this within the remit of WIPO?

3) We would not object to carrying out such a study.

Kenya:

1) WIPO should deepen analysis of the benefits of a rich public domain. WIPO should consider the protection of the PD under WIPO's normative process.

2) Support importance of complementary systems to and in IP system.

3)

Azerbaijan:

Brazil:
We find it strange that some have said that Chile?s public domain proposal is outside WIPO?s mandate. The public domain is part of the system. If WIPO?s mandate involves international treaty making, in the end it does define the size of the public domain.

Perhaps the use of the word ?protection? in relation to the public domain may have raised doubts. We do not understand Chile?s proposal to be about owning a piece of the public domain. The public domain is a realm of rights that mankind is free to venture into. It works to the benefit of all humanity.

On technology transfer, this is part of the IP system. Many delegations have repeatedly said that IP protection will lead to technology transfer. Technology transfer is an anti free- market activity. Monopolies may be acceptable to the extent that societies get something back in return. There needs to be a balance. If rights are pushed too far, we lose the balance. WIPO should be asking what is going on in the IP realm. Why is it that the developing countries perceive that the system may not be responding to their national needs?

NGO statements:

Civil Society Coalition (CSC): Civil Society Coalition Statement to the Provisional Committee on Proposals related to a WIPO Development Agenda

Comments on Chilean proposal

February 21, 2006

Thank you Ambassador. As this is the first time the Civil Society Coalition is taking the floor, please let me congratulate you on your election to the chair.

The Civil Society Coalition welcomes the Chilean proposal to the PCDA which articulates three main points: (1) recognizing the value of the public domain, (2) the ?importance of complementary systems to and in intellectual property? and (3) conducting a ?study for assessing what are the appropriate levels of intellectual property, considering the particular situation in each country, specifically its degree of development and institutional capacity?. WIPO is at the forefront of normative processes involving such negotiations as the Substantive Patent Law Treaty (SPLT) and the broadcasting/webcasting treaty which could potentially lock-in countries into greater privatizations of knowledge, and a shrinking of the public domain. Much of this work appears to have been motivated by an uncritical belief that the enclosure of knowledge is the best way to promote creativity, invention and development. But the CSC believes this older way of looking at things is wrong, and outdated. The great success of the Internet, which is based upon public domain technologies, the free software and open access publishing movements, and projects like the Human Genome Project illustrate how useful it is share knowledge goods widely. We believe that the Chilean proposal, which says the ?public domain is fundamental for ensuring access to knowledge? is an explicit effort to have greater balance at WIPO.

CSC adds however, that it may be useful to modify the Chilean proposal by expanding the phrase, ?the public domain? to the more inclusive, ?the public domain and other elements of the knowledge commons.?

We are learning not only the value and importance of the pure public domain, where knowledge it is not owned by anyone, but also, the value of the other elements of the knowledge commons, where the private owners of knowledge goods make them freely available to everyone -- like the Wikipedia, much of the free software licensed under the GNU General Public License for free software, or the creative commons, to mention just a few examples.

In this context, we also encourage WIPO to look at the issue of open standards, which are aspect of the public domain and the knowledge commons which are very important, for innovation and for development. Open standards will provide more opportunities for new businesses and other knowledge good organizations to participate in the creation and design of the new knowledge ecology.

Also, with regard to the importance of complementary systems to and in intellectual property, we highlight recent events at the World Health Organization?s Executive Board which recently submitted to the World Health Assembly, the highest decision-making body of the WHO, a draft resolution on a ?Global Framework on Essential Health Research and Development?. The resolution provides a process to consider a new global regime that is consistent with human rights and public health priorities. The proposed resolution recognizes the importance and relevance of public sector and open source methods of supporting and doing R&D, and the need to have appropriate balance between the public domain and intellectual property rights.

Thank you Mr. Chairman.

International Federation of Library Associations (IFLA): Mr Chairman, the International Federation of Library Associations represents the world?s major libraries and library associations through 1700 member organisations in 150 countries. We support the intervention made at this meeting by eIFL: Electronic Information for Libraries, one of our member organisations.

We welcome the proposal by Chile (PCDA/1/2) that WIPO undertakes an appraisal of the public domain. In our view this must include the issue of the impact of intellectual property laws, licensing and technological protection measures on access to public domain information and works in electronic form. As Chile has stated, the public domain provides a fertile source of content on which creators can build new works but it needs to be nurtured and protected from erosion in the digital environment.

The digitisation of public domain works affects libraries? role as the world?s custodians of human memory. While there are indeed major public sector digitisation projects, many public sector libraries such as national, academic and public libraries give commercial publishers access to public domain content for digitisation projects because they can not afford to digitise everything themselves. The publisher in turn uses the content to provide databases of compilations which receive their own copyright protection and which provide much more enriched content than can be provided by merely digitising the original works ?as is?. It is only right that the publisher should have rights in the compilation and have prospect of receiving a viable financial return from such investment for a specified period.

Public domain content within commercial electronic materials is subject to a licensing regime which is often non-negotiable and in most countries licences and contracts are allowed to override copyright exceptions and limitations. Moreover, if the digital content is not otherwise available in an open access repository, it risks being locked up in perpetuity by TPMs and the DRMS that enforce the licence terms. Libraries already have experience of how TPMs in e-books, e-journals, databases and multimedia products such as film, broadcasts and sound recordings, remove users? rights to avail themselves of statutory exceptions and limitations to copyright, including the rights of visually impaired people to have accessible copies made or to deploy read-aloud software.

The world?s great research libraries need to keep digital works in perpetuity and be able to transfer them to other formats and platforms in order to preserve them for the public domain, so they can make the content fully accessible and usable once all the rights have expired. A number of legal deposit libraries now have legislative mandates to collect and preserve digital materials. Yet the average life of a TPM or DRMS is around 3 to 5 years. If the product is no longer made, there will be no new TPM compatible with new operating systems and no key available to allow libraries to migrate content to new platforms. Nor does the TPM cease upon expiry of copyright, so the content will remain locked even when no rights subsist. By then the ownership of the rights may be impossible to trace, rendering the product orphaned and without a key. Obsolescent TPMs render digital content inaccessible to future generations of researchers. For libraries, charged with creating and maintaining a patrimony of public domain works in the digital environment, this is serious.

A low cost solution to these problems is that publishers who digitise public domain works also be required to furnish the library which provided the material, with clean digital copies so that the library may not only preserve the digitised works for posterity and migrate them to new platforms, but also make those public

domain works freely available forthwith on an ?as is? basis to the public on library servers. This would immensely benefit access to public domain works by developing countries, especially if WIPO created a database or portal to these works as Chile proposes. Publishers should also be required to entrust major legal deposit and research libraries stipulated by national legislation with clean copies of their electronic products for the purposes of conservation and preservation so that the content is not lost when the rights in the product expire. It would be helpful if the proposed appraisal were to address these points.

The library community believes that it is proper for WIPO to assume guardianship of the public domain, promoting its value and protecting it from encroachment. Chile?s suggestion that WIPO establishes a permanent unit, which would work on public domain issues, would be of great benefit to Member States and the IP community. IP is not just about generating economic benefit for nations and enterprise, an area of activity that WIPO already advises on, but is also about growing knowledge, innovation and creativity, and delivering education - the bedrock of economic prosperity.

We support Chile?s proposal for a without-prejudice impact study to assess the appropriate levels of IP with regard to individual countries and we endorse the suggested criteria. We would expect the study to reveal the hidden costs met by libraries resulting from copyright protection ? such as the fees they pay for licensing and document supply, book and journal prices, reprographics and levies and the expensive and frustrating process of copyright clearance ? especially when tracing the vanished right owners of orphan works. This study risks being flawed unless library associations and institutions in those countries are specifically invited by their governments to play a full part. We urge WIPO to request Member States to do this. IFLA would be pleased to assist in this regard.

Finally, we urge the present meeting to adopt the practical proposals made by the Group of Friends of Development (PCDA/1/5). They seem to present an eminently sensible way forward.

*Related Issues:* *WIPO*

[Permalink] [Email this article]