KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.
and UNIVERSAL MUSIC PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>            Plaintiff,<br><br>     vs.<br><br>UNIVERSAL MUSIC CORP.,<br>UNIVERSAL MUSIC PUBLISHING, INC. and<br>UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>            Defendants. | CASE NO.  CV-07-03783-JF (RS)<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFFS' COMMUNICATIONS WITH NON-LAWYER THERYN FLEMING WITHHELD BASED ON A CLAIM OF ATTORNEY-CLIENT PRIVILEGE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:    August 5, 2009<br>Time:   9:30 a.m.<br>Judge:  Hon. Richard G. Seeborg<br>Courtroom: 4<br><br>[Declaration of Kelly M. Klaus and Proposed Order filed concurrently]<br><br>**PUBLIC REDACTED VERSION** |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on August 5, 2009, at 9:30 a.m., or as soon thereafter as counsel may be heard in Courtroom 4 of the above-captioned Court, located at 280 South First Street, San Jose, California, 95113, Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group ("Defendants" or "Universal") will and hereby do move the Court for:

[1]     An Order overruling Plaintiff's objections based on privilege to any communications including Theryn Fleming.

[2]     An Order compelling immediate production of all communications involving Theryn Fleming responsive to any of Universal's requests, including without limitation complete copies of all documents identified at Entries No. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 45, 46, 55 and 59 of Plaintiff's Privilege Log, and Entries No. 11, 12, and 13 of Plaintiff's Redaction Log.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declaration of Kelly M. Klaus and all exhibits thereto; all pleadings and documents on file in this action; and such other materials or argument as the Court may consider prior to deciding this Motion.

DATED: July 1, 2009               MUNGER, TOLLES & OLSON LLP


                                  By:     */s/ Kelly M. Klaus*
                                          KELLY M. KLAUS

                                  Attorneys for Defendants
                                  UNIVERSAL MUSIC CORP.,
                                  UNIVERSAL MUSIC PUBLISHING, INC.,
                                  and UNIVERSAL MUSIC PUBLISHING GROUP

# **TABLE OF CONTENTS**

**Page**

I. BACKGROUND ................................................................................................................. 2
    A. Plaintiff's Lawsuit ................................................................................................. 2
    B. Plaintiff's Claim Of Privilege Over Communications With Non-Lawyer Theryn Fleming ...................................................................................................... 4
    C. Universal's Unsuccessful Efforts To Resolve This Dispute Through The Meet-And-Confer Process ..................................................................................... 5

II. ARGUMENT ...................................................................................................................... 6
    A. Plaintiff Is Not Entitled To Claim Privilege Over Her Communications With Someone Who Is Not A Lawyer Or Even Acting At The Direction Of A Lawyer ............................................................................................................. 6
    B. Theryn Fleming Is Not An Attorney, And Plaintiff Is Not Entitled To Claim Privilege Over Her Communications With Fleming .................................. 7
        1. Plaintiff Cannot Claim Attorney-Client Privilege Over Communications With Someone Who Is Not A Lawyer ............................ 7
        2. Plaintiff's Claim That She Had A "Reasonable Belief" Regarding Fleming's Status Fails To Justify The Privilege Claim ............................. 9
    C. Lenz Was Never, And Never Sought To Be, Fleming's "Client" ........................ 11
    D. Plaintiff's Communications With Fleming Do Not Relate To A Request For Legal Services ............................................................................................... 12
    E. Even If Plaintiff's Communications With Fleming Were Privileged — Which They Never Were — Plaintiff Has Waived Any Claim Of Privilege ....... 13

III. CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,
   No. C 07-1359 PJH(JL), 2008 WL 5214330, slip op. (N.D. Cal. Dec. 12, 2008) .................... 7

*Clarke v. Am. Commerce Nat'l Bank*,
   974 F.2d 127 (9th Cir. 1992) ............................................................................................... 7

*Dabney v. Inv. Corp. of Am.*,
   82 F.R.D. 464 (E.D. Pa. 1979) ................................................................................. 7, 8, 10

*Dion v. Nationwide Mut. Ins. Co.*,
   185 F.R.D. 288 (D. Mont. 1998) ....................................................................................... 13

*Fisher v. United States*,
   425 U.S. 391 (1976) ............................................................................................................ 7

*In re Fischel*,
   557 F.2d 209 (9th Cir. 1977) ...................................................................................... passim

*In re Grand Jury Investigation*,
   231 F. App'x 692 (9th Cir. 2007) ....................................................................................... 9

*In re Grand Jury Subpoena Duces Tecum*,
   112 F.3d 910 (8th Cir. 1997) ............................................................................................ 10

*In re Grand Jury Subpoenas*,
   995 F. Supp. 332 (E.D.N.Y. 1998) ..................................................................................... 7

*Modern Woodmen v. Watkins*,
   132 F.2d 352 (5th Cir. 1942) ............................................................................................ 12

*Moorhead v. Lane*,
   125 F.R.D. 680 (C.D. Ill. 1989) .......................................................................................... 7

*Newton v. Diamond*,
   388 F.3d 1189 (9th Cir. 2004) ............................................................................................ 3

*Sedillos v. Bd. of Educ. of Sch. Dist. No. 1*,
   313 F. Supp. 2d 1091 (D. Colo. 2004) .......................................................................... 6, 13

*Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*,
   150 F.R.D. 648 (N.D. Cal. 1993) ..................................................................................... 11

*Speaker v. County of San Bernardino*,
   82 F. Supp. 2d 1105 (C.D. Cal. 2000) ................................................................................ 9

*United States v. Boffa*,
   513 F. Supp. 517 (D. Del. 1981) ........................................................................................ 9

*United States v. Martin*,
   278 F.3d 988 (9th Cir. 2002) .............................................................................................. 6

*United States v. Munoz*,
   233 F.3d 1117 (9th Cir. 2000) ............................................................................................ 9

*United States v. Nixon*,
   418 U.S. 683 (1974) ............................................................................................................ 6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Palmer*,
   536 F.2d 1278 (9th Cir. 1976) ................................................................................. 12

*United States v. United Shoe Mach. Corp.*,
   89 F. Supp. 357 (D. Mass. 1950) ......................................................................... 7, 11

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
   647 F.2d 18 (9th Cir. 1981) ...................................................................................... 6

**STATE CASES**

*People v. Gionis*,
   892 P.2d 1199 (Cal. 1995) ...................................................................................... 12

**FEDERAL STATUTES**

17 U.S.C. § 512(f) ........................................................................................................ 3, 5

**FEDERAL RULES**

Fed. R. Evid. 501 ............................................................................................................. 6

Fed. R. Evid. 503(a)(1) .................................................................................................. 11

**TREATISES**

1 Kenneth S. Broun, McCormick on Evidence § 88 (6th ed.) .......................................... 7

2 Witkin, California Evidence § 1111 (3d ed. 1986) ....................................................... 9

8 Wigmore on Evidence § 2292 (McNaughten rev. 1961) .............................................. 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

The Plaintiff in this lawsuit has asserted attorney-client privilege over multiple communications that she had concerning this matter with an online "chat" friend and fellow editor of an online literary journal. Plaintiff's friend, Theryn Fleming, is not an attorney, is not licensed to practice law anywhere, and has never represented Plaintiff in this case or anywhere else. Plaintiff nevertheless claims that because she knew Fleming had attended law school, Plaintiff somehow was justified in concluding that she was dealing with a lawyer and that their conversations were privileged — even conversations that Plaintiff was having with Fleming *months after* Plaintiff had real legal counsel that had been actively litigating this case. Plaintiff's claim of privilege over her communications with Fleming are baseless, and the Defendants in the case, Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal"), respectfully move for an Order overruling the privilege assertion and ordering the immediate production of all communications involving Fleming.

The claim of privilege (which Plaintiff has the burden to justify) fails for multiple reasons:

*First*, the attorney-client privilege only applies if the communication involves an actual *attorney*, and an attorney is a "professional legal adviser in his capacity as such." *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). Fleming is not a professional legal adviser in any sense of the term. She does not have a license to practice law, and she does not even pretend to practice law or dispense legal advice. Plaintiff does not contend that she believed otherwise, but instead claims that she is entitled to claim privilege because she knew that Fleming once upon a time attended law school. That assertion does nothing to change the fact that the communications are not subject to a claim of privilege.

*Second*, just as Fleming was not an "attorney," Plaintiff was in no sense her client, or even her prospective client. Plaintiff and Fleming are online blogging buddies. Nothing about their relationship bespeaks a professional consultation regarding legal services, as is required for the privilege to apply.

*Third*, and relatedly, nothing about the communications between Plaintiff and Fleming involved a request for or the provision of legal services. On the contrary, Plaintiff has revealed in a pre-motion proffer that, when Plaintiff contacted Fleming, Fleming told her to go consult an advocacy organization to get legal advice. This and other communications between Plaintiff and Fleming that have been disclosed are positively inconsistent with a relationship involving the provision of legal services from Fleming to Plaintiff.

*Fourth*, Plaintiff *has* disclosed a number of communications between her and Fleming relating to this case, thereby destroying the element of confidentiality, which is a requirement for the privilege to apply. Plaintiff's disclosure of some communications with Fleming regarding the legal issues involved in this case vitiates Plaintiff's claim of privilege over the non-disclosed communications with Fleming.

As discussed below, the parties have met and conferred concerning Plaintiff's privilege claim and have been unable to resolve this issue. In order to resolve the issue as to the withheld communications involving Fleming — and to obviate any privilege assertions on this subject at Plaintiff's upcoming deposition — Universal therefore brings this motion to compel.

## II.     BACKGROUND

### A.     Plaintiff's Lawsuit

This case arises from Plaintiff Stephanie Lenz's posting on YouTube of a video that makes an admittedly unauthorized use of the musical composition, "Let's Go Crazy," by the artist professionally known as Prince. The video shows Plaintiff's children "going crazy" dancing in the family kitchen while the frenetic instrumental portion of "Let's Go Crazy" plays in the background (and while Plaintiff herself, holding the video camera, asks one child, "What do you think of the music?"). Plaintiff entitled her YouTube posting, "'Let's Go Crazy' #1." Indeed, it is the first search result that YouTube returns when "Let's Go Crazy" is entered into YouTube's search engine.

Universal administers the copyright to the "Let's Go Crazy" composition, along with numerous other compositions written by Prince.[1] On June 4, 2007, Universal sent YouTube a notice requesting that YouTube remove or disable access to Plaintiff's video and nearly 200 other postings that also made unauthorized uses of Prince's compositions. Second Am. Compl. (Doc. No. 34) ("SAC"), Exh. A. In accordance with YouTube's posted Terms of Use, Universal declared that it had "a good faith belief that the above-described activity is not authorized by the copyright owner, its agent, or the law." *Id.* at 6; SAC Exh. B at 3 (YouTube Terms of Use). On June 7, 2007, Plaintiff sent YouTube an email labeled as a counter-notification, demanding that her video be re-posted. Exh. A.[2] On June 27, 2007, Plaintiff sent YouTube another counter-notification, again requesting that YouTube re-post her video. Exh. B. YouTube then restored Plaintiff's video to the site, where it remains. Lenz Decl. In Opp. to Motion to Dismiss (Doc. No. 23) at ¶ 13. Subsequently, Plaintiff sued Universal, seeking damages under 17 U.S.C. § 512(f) for allegedly "knowingly materially misrepresent[ing]" that her "'Let's Go Crazy' #1" video was infringing. Lenz alleges that Universal should be held liable for damages because her use of "Let's Go Crazy" was "self evident" fair use.

On August 20, 2008, the District Court denied Universal's motion to dismiss the Second Amended Complaint. (Doc. No. 45). The parties have since been engaged in document discovery.

**B.     Plaintiff's Claim Of Privilege Over Communications With Non-Lawyer Theryn Fleming**

The present motion relates to a series of e-mail communications and online "chats" that Plaintiff had with Theryn Fleming about Universal's notice and about this lawsuit, and that Plaintiff has withheld from production based on a claim of attorney-client privilege. Fleming, however, is not a lawyer. Plaintiff has many lawyers. Indeed, no fewer than nine licensed

---

[1] The copyright in the "Let's Go Crazy" composition is separate and distinct from the copyright in the sound recording that embodies that composition. *See Newton v. Diamond*, 388 F.3d 1189, 1191 (9th Cir. 2004). This case concerns the rights that Universal administers in the composition copyright.

[2] Unless otherwise indicated, "Exh." references are to the accompanying Declaration of Kelly M. Klaus.

1   attorneys, from two private law firms and the advocacy group Electronic Frontier Foundation
2   ("EFF"), have appeared on the pleadings for Plaintiff. Fleming is not one of them. She is not
3   even authorized to practice law in any jurisdiction, much less California or the bar of this Court.
4       Fleming does not hold herself out to be a lawyer, and Plaintiff herself admits that Fleming
5   is not a lawyer. Fleming actually holds herself out as the "Founding Editor" and "Webmaster" of
6   blog spot called "Toasted Cheese," an online creative-writing journal, and as a Ph.D. student at
7   Simon Fraser University in British Columbia, Canada, where Fleming apparently wrote her thesis
8   on "intertextuality in blog narratives" and teaches undergraduate classes. *See* Exh. C, at 6
9   (Fleming bio from "Toasted Cheese"); Exh. O at P-E_002945 (5:57-6:01pm); Exh. E, at 1
10  (discussing Ph.D. graduation). Plaintiff knows Fleming through their postings together on
11  "Toasted Cheese." *See* Exh. C, at 5 (Plaintiff's "Toasted Cheese" biography). Fleming claims to
12  have a law degree, one of four degrees she has collected, *see* Exh. C, at 6, in addition to
13  ███████████████████████████, Exh. M at P-E_002939 (12:09-12:10am).
14      Plaintiff claims privilege over a series of conversations with Fleming starting in early
15  June, 2007, after Plaintiff received Universal's notice from YouTube, and continuing well into
16  2008, months after Plaintiff had obtained counsel from EFF and filed the complaint in this case.
17  *See* Exh. I (Redaction log). Plaintiff has produced some communications with Fleming regarding
18  this lawsuit and her actual lawyers' apparent legal strategy in litigating this case. Exh. O, at P-
19  E_002945 (5:51pm) ██████████████████████
20  ████████████████████████. It is undisputed that the communications Plaintiff has
21  withheld are relevant and (unless privileged) discoverable, coming as they did in the wake of
22  Universal's notice (when Plaintiff claims she was "fearful that someone might construe some
23  portion of a new home video to infringe a copyright," SAC ¶ 38, and concerning this lawsuit and
24  Plaintiff's allegations.
25      **C.    Universal's Unsuccessful Efforts To Resolve This Dispute Through The Meet-
26  And-Confer Process**
27      Notwithstanding that Fleming is not a lawyer, is not authorized to practice law and has
28  never represented Plaintiff, Plaintiff has claimed that some — though not all — of her

communications with Fleming regarding this lawsuit are privileged. Universal asked Plaintiff to provide a proffer regarding the basis for her claim of privilege. Plaintiff's proffer made it clear that Fleming is *not* authorized to practice law. Rather, what Plaintiff stated was that she knew Fleming had gone to law school, and that Plaintiff talked to Fleming based on "her education," and not her professional status. *See* Exh. G ¶ 3 ("I knew that my friend Theryn Fleming had a law degree, and I believed that in light of her education she might be able to advise me about the legal threat and possible responses."). What is more, Plaintiff's proffer made clear that the only "advice" of any kind that Fleming provided Plaintiff was her suggestion, in early June, that Plaintiff contact the organization "Creative Commons" to try to get advice about responding to Universal's notice. *Id.* ¶ 5; *see* Klaus Decl. ¶¶ 5-6.

Universal objected, pointing out that Fleming is not a licensed lawyer, that Plaintiff was not attempting to consult with Fleming in the course of any attorney-client relationship, and that Plaintiff in any event had waived any conceivable claim of privilege by selectively disclosing her communications with Fleming. Exh. J. Plaintiff responded that she was entitled to claim privilege because she purportedly does not know the difference between going to law school and having a license to practice law, and that it therefore was "reasonable" for Plaintiff to believe she was communicating with a lawyer. Exh. K at 3-4. Plaintiff's counsel indicated that they had over-designated some communications with Fleming as privileged, and that they would re-review the Plaintiff-Fleming communications to withdraw certain privilege claims. *Id.* at 4. Notwithstanding this re-review, Plaintiff continues to claim privilege over her June 2007 emails with Fleming, and also 2008 communications within online "chats," which Plaintiff has redacted. *See* Exhs. H, I (Plaintiff's privilege and redaction logs). Plaintiff's privilege claim is baseless.

### III. ARGUMENT

#### A. Plaintiff Is Not Entitled To Claim Privilege Over Her Communications With Someone Who Is Not A Lawyer Or Even Acting At The Direction Of A Lawyer

The privilege rules that apply in this case are not in dispute. Because jurisdiction is based on a federal statute, 17 U.S.C. § 512(f), federal common law governs the availability and scope of

the attorney-client privilege. Fed. R. Evid. 501. In the Ninth Circuit, the attorney-client privilege applies to confidential communications relating to legal advice sought from an attorney acting in his or her role as such. *See, e.g.*, *Fischel*, 557 at 211 (citing 8 Wigmore on Evidence § 2292, at 554 (McNaughten rev. 1961)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *see generally United States v. Nixon*, 418 U.S. 683, 710 (1974) (privileges are not to be "expansively construed" because they are "exceptions" to the rule that the law has a right to every person's evidence and are "in derogation of the search for truth").

The attorney-client privilege only applies where a number of prerequisites are satisfied, including a number of prerequisites that Plaintiff fails to satisfy here:

*First*, the communication must involve an *attorney*, meaning a "*professional* legal adviser *in his capacity as such*." *Fischel*, 557 F.2d at 211 (emphasis added). The "attorney" — one-half of the attorney-client relationship — must be professionally authorized to practice law.

*Second*, the "client" — which is the other half of the attorney-client relationship — must be just that: a *client*. The individual must be receiving (or inquiring about receiving) legal services in the course of a professional relationship. *See United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).

*Third*, the communications have to relate to the attorney-client relationship, *i.e.*, they have to reflect a request for, or the provision of, legal services. *See id.*

*Fourth*, the client must vigilantly protect the confidentiality of all of her or his communications with their lawyer regarding the requested legal services. *See, e.g., Fischel*, 557 F.2d at 211. Among other things, this requirement means that the client cannot divulge some communications with counsel but attempt to retain the cloak of privilege over the others. Such selective disclosure waives the privilege over the entirety of the communications. *See, e.g.*, *Sedillos v. Bd. of Educ. of Sch. Dist. No. 1*, 313 F. Supp. 2d 1091 (D. Colo. 2004).

As the party claiming privilege, Plaintiff bears the burden of showing that all of these requirements are satisfied, and that the privilege applies over her communications with Fleming. *Fischel*, 557 F.2d at 212. Plaintiff fails to satisfy *any* of these requirements.

**B. Theryn Fleming Is Not An Attorney, And Plaintiff Is Not Entitled To Claim Privilege Over Her Communications With Fleming**

**1. Plaintiff Cannot Claim Attorney-Client Privilege Over Communications With Someone Who Is Not A Lawyer**

It is well established that the *attorney*-client privilege does not apply unless, among other requirements, the communication involves an *attorney*.[3] *Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged."); *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure."). An attorney, for purposes of the attorney-client privilege, does not just mean someone who happened to attend law school. For privilege purposes, the Ninth Circuit has made it clear that an attorney means a "*professional legal adviser in his capacity as such*." *Fischel*, 557 F.2d at 211 (emphasis added). Being a "professional legal advisor" means having a license to practice law. *In re Grand Jury Subpoenas*, 995 F. Supp. 332, 337 (E.D.N.Y. 1998) (holding attorney-client privilege does not apply to communications with union officials who are "not licensed attorneys"); *Moorhead v. Lane*, 125 F.R.D. 680, 686 (C.D. Ill. 1989) (finding attorney-client privilege does not apply where advisor has a law degree but is not a member of the state bar because the legal advice given was not from "a professional legal adviser in his capacity as such"); *Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465-66 (E.D. Pa. 1979) (concluding attorney-client privilege does not attach to confidential communications made to a law student or law school graduate who has not yet been admitted to the bar, where the client is not genuinely mistaken as to the student's credentials); 1 Kenneth S. Broun, McCormick on Evidence § 88 (6th ed.) ("Ordinarily an attorney can lawfully hold herself

---

[3] Attorney-client privilege also protects communications made to a subordinate who is acting under the direction of a lawyer. *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. C 07-1359 PJH(JL), 2008 WL 5214330, slip op. at 2 (N.D. Cal. Dec. 12, 2008) (requiring for attorney-client privilege that the person to whom the communication was made "is a member of the bar of a court, or his subordinate" (citing *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950))). This principle has no application here, because plaintiff has never contended that Fleming was employed by or indeed had any communications regarding legal matters with anyone at any of the plaintiff's three law firms.

8168936.3                                     - 7 -                         MOTION TO COMPEL RE: THERYN FLEMING
                                                                                    C 07-03783-JF (RS)

1 out as qualified to practice only in the state in which she is licensed, and consultation elsewhere
2 on a continuing basis would traditionally not be privileged.").

3       The requirement than an attorney-client privileged communication involve actual lawyers,
4 rather than pseudo-lawyers, follows from the policy underlying the privilege to encourage frank
5 communications between clients and persons authorized by the state to provide legal services.  As
6 one court has explained:

> [t]o extend the attorney-client privilege . . . would, to some extent, encourage the public to entrust its legal concerns and seek legal advice from persons as yet unqualified to engage in the practice of law.  It would, to that extent, undermine the power of the state to regulate this most sensitive of professions . . . . It would permit the claiming of the privilege not simply where one party to a conversation is an attorney whose professional advice is sought, but in virtually any situation where legal confidences are exchanged.  It would unnecessarily blur the dividing line between qualified and unqualified attorneys, to the certain dismay of the lay public and the ultimate detriment of the legal profession. . . .  The job of individually assessing each attorney's qualifications to practice law should remain where it is, with the State Board of Law Examiners, rather than with the courts.

13 *Dabney*, 82 F.R.D. at 465-66.

14       The requirement that there be an actual lawyer on the attorney side of the attorney-client
15 relationship is fatal to Plaintiff's claim of privilege over her communications with Fleming.
16 Plaintiff admits that "Fleming *is not a practicing attorney*[.]"  Exh. F, at 10:12-13 (Plaintiff's
17 Response to Interrogatory No. 9) (emphasis added).  Plaintiff has never claimed that Fleming was
18 acting for or at the direction of someone who actually is licensed to practice law or provide legal
19 services.  Accordingly, Plaintiff's privilege claim fails under the controlling law of privilege.

      **2.    Plaintiff's Claim That She Had A "Reasonable Belief" Regarding Fleming's Status Fails To Justify The Privilege Claim**

      Despite her failure to satisfy the Ninth Circuit's requirements for the attorney-client privilege, Plaintiff argues that her communications with Fleming are privileged because Plaintiff "reasonably believed" that Fleming was a lawyer.  *See* Exh. K, at 3-4.  This "reasonable belief" argument fails for multiple reasons.

      *First*, we have not found any case where the Ninth Circuit has held that communications involving a non-lawyer may nevertheless be protected by the attorney-client privilege if the putative client "reasonably believed" he or she was speaking to a licensed attorney.  On the

1  contrary, the Ninth Circuit thus far has declined to extend the attorney-client privilege to cases
2  where a party mistakenly (albeit reasonably) believed that an attorney represented him. *In re*
3  *Grand Jury Investigation*, 231 F. App'x 692, 693-94 (9th Cir. 2007) (declining to decide whether
4  to adopt the "reasonable belief" standard because, under any standard, claimants of the privilege
5  had failed to carry their burden); *United States v. Munoz*, 233 F.3d 1117, 1128 n.2 (9th Cir. 2000)
6  (acknowledging the Ninth Circuit had never addressed the issue). Instead, the Ninth Circuit's
7  stated test for attorney-client privilege requires a communication involving a "professional legal
8  adviser in his capacity as such." *Fischel*, 557 F.2d at 211.

9      *Second*, even those courts that have created a limited "reasonable belief" exception to the
10 rule requiring that a privileged communication involve a licensed attorney have done so to protect
11 interests very different than those at issue here. Specifically, some courts have invoked a limited
12 "reasonable belief" exception in order to protect a putative client who was "*deceived* as to the
13 attorney's lack of professional status" *Speaker v. County of San Bernardino*, 82 F. Supp. 2d
14 1105, 1113 (C.D. Cal. 2000) (emphasis added) (quoting 2 Witkin, California Evidence § 1111 (3d
15 ed. 1986)) (cited in Exh. K, at 3). The concern that is expressed in these cases is that, if the
16 putative lawyer deceptively holds him- or herself out to be an attorney, the putative client who
17 reasonably entrusts the deceiver ought not the "bear the risk" of the deception. *Id.* at 1113
18 (quoting *United States v. Boffa*, 513 F. Supp. 517, 523 (D. Del. 1981)). Notably, in order to claim
19 the benefit of the "reasonable belief" exception, courts require that the putative client have
20 utilized some "precaution" to be assured that they were dealing with a licensed lawyer. *Id*.

21     The concern about pseudo-lawyer deception of clients have nothing to do with the facts
22 here. Plaintiff does not say that Fleming did anything to "deceive" or mislead Plaintiff into
23 thinking she was dealing with someone authorized to give professional advice. Nor does Plaintiff
24 claim she utilized any "precaution" or undertook any type of investigation that in the
25 circumstances would have been reasonable to confirm her claimed "belief" that she was dealing
26 with a lawyer. The fact that Plaintiff claims privilege over communications she has with Fleming
27 *months after* Plaintiff was represented by counsel — any one of whom could have told Plaintiff
28 that Fleming was not a lawyer — underscores the fact that Plaintiff was not laboring under any

*reasonable* belief regarding Fleming's status. *See* Exh. I (Redaction Log, entries 11, 12, and 13 (reflecting communications between January and April 2008)); *see also* Exh. H (Privilege Log, entries 45, 46, 55, and 59 (reflecting communications after Lenz contacted counsel in June 2007)).

*Third*, even in those cases applying a "reasonable belief" exception, the mistaken belief must concern a question of *fact* — *i.e.*, whether someone actually is a lawyer — and *not* a question of law. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997) (finding that "reasonable beliefs" require "reasonable mistakes of fact" and noting that no authority has held "that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one"); *Dabney*, 82 F.R.D. at 465-66 (concluding attorney-client privilege does not attach to confidential communications made to a law student or law-school graduate not admitted to the bar, where the client is not genuinely mistaken as to the student's credentials). Plaintiff's claimed misunderstandings had nothing to do with any mistake of fact. Plaintiff *never* says that she thought Fleming had a law license but was somehow reasonably mistaken in holding that belief. Indeed, Plaintiff's proffer is very careful *never* to state that Plaintiff believed Fleming has a license. Plaintiff (through her counsel) instead apparently will claim that she "was not aware of the difference between a person with a law degree and a person with a law degree who is also admitted to the bar[.]" *See* Exh. K, at 4. Even if Plaintiff in fact had such a belief, that at most is a mistake as to a legal issue (the consequence for privilege purposes of someone not having a law license), and not a mistake of fact.

In sum, even if there were a "reasonable belief" exception to the requirement that a communication involve an actual lawyer, that exception would not assist Plaintiff.

**C.   Lenz Was Never, And Never Sought To Be, Fleming's "Client"**

Even if the Ninth Circuit applied the "reasonable belief" test (which it does not), and even if Plaintiff had "reasonably believed" Fleming to be a licensed attorney (which Plaintiff did not), there still is no attorney-client privilege because the facts show that Plaintiff never sought to

become Fleming's "client." *Fischel*, 557 F.2d at 211; *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950) (attorney-client privilege requires, *inter alia*, that "the asserted holder of the privilege is or sought to become a client . . . ."). A client is a person "who is rendered professional legal services by a lawyer, or *who consults a lawyer with a view to obtaining professional legal services from him*." Proposed Fed. R. Evid. 503(a)(1) (emphasis added); *see also id.* advisory committee's note ("The definition [of 'client'] . . . extends the status of client to one consulting a lawyer preliminarily with a view to retaining him, even though actual employment does not result."). For example, in *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648 (N.D. Cal. 1993), the court rejected the claim of privilege where none of the attorneys at the law firm with whom the claimant communicated considered him to be a client; the firm never billed the privilege-claimant for any services (and he did not pay the firm anything); there was no express contract between the privilege claimant and the firm; and he used counsel other than the law firm when litigation arose in connection with the disputed matter. *Id.* at 654-56

It is undisputed that Plaintiff never sought to enter into a professional relationship with Fleming as her counsel. On the contrary, Plaintiff states in her proffer that she turned to Fleming as a "friend" with "a law degree." Exh. G ¶ 3. Plaintiff does not aver that she sought to retain Fleming (either for a fee or as "pro bono" counsel), or that the two of them ever discussed any type of professional relationship, much less that they entered into (or even discussed entering into) any type of contract for legal services. What is more, there is no evidence that Fleming ever actually provided Plaintiff with anything resembling professional services. On the contrary, Plaintiff admits that what Fleming actually did was "advise[] me to seek a further, more detailed legal opinion from Creative Commons." *Id.*. ¶ 5. One does not become a client (or potential client) of a lawyer (or even a pseudo-lawyer) by getting a referral to someone who actually is a legal professional.

The bottom line is that Plaintiff never was, and never sought to be, Fleming's "client." This is another reason why the privilege cannot apply to communications between the two.

### D. Plaintiff's Communications With Fleming Do Not Relate To A Request For Legal Services

Another requirement for a valid privilege claim is that the communication must relate to a request for, or the provision of, an attorney's legal services. *See, e.g.*, *United States v. Palmer*, 536 F.2d 1278, 1281 (9th Cir. 1976). Even where the putative lawyer actually has a license to practice law (which is not the case here), conversations to the lawyer "merely as a personal friend," are not protected by the attorney-client privilege. *Modern Woodmen v. Watkins*, 132 F.2d 352, 354 (5th Cir. 1942); *People v. Gionis*, 892 P.2d 1199, 1208 (Cal. 1995) (where attorney had previously declined to represent defendant, advice given must have been in role as a "friend").

The redacted and unredacted communications with Ms. Fleming produced by Plaintiff make clear that their communications occurred in exactly such a context, removed from "professional legal services" protected by the privilege. In page after page of "GChat" transcripts regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Plaintiff has surgically redacted sets of just 5-10 *lines* which counsel claims to satisfy the requirements of the attorney-client privilege. *See, e.g.*, Exh. L at P-E_002935 (8:49-8:50pm) ▇▇▇▇; Exh. O at P-E_002946 ▇▇▇▇▇▇; Exh. N at P-E_002942 (7:11pm-7:13pm) ▇▇▇▇▇▇; Exh. M at P-E_002940 (12:25am-12:26am) ▇▇▇▇▇▇. The unredacted text that surrounds these handful of lines makes it clear that Plaintiff has no basis to assert that the few lines that are redacted reflect a request for, or the provision of, professional legal advice. *See, e.g.*, Exh. O at P-E_002945 (5:51-6:01pm) (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). It is inconceivable that in the midst of these informal (to say the least) "chats," Plaintiff was asking for, or Fleming was dispensing, privileged legal advice.[4]

---

[4] Other of Plaintiff's communications with Fleming regarding this matter reflect Plaintiff boasting to Fleming about how Plaintiff plans to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1  Plaintiff was communicating with Fleming as a friend and a fellow blogger, not as someone
2  seeking professional legal services. This, of course, is not surprising, since Plaintiff had legal
3  counsel while she was engaged in these "chats" — but Fleming was not one of them. The fact
4  that Plaintiff obviously was not requesting or receiving professional legal services from Fleming
5  is yet another reason why these communications are not privileged.

### E. Even If Plaintiff's Communications With Fleming Were Privileged — Which They Never Were — Plaintiff Has Waived Any Claim Of Privilege

Finally, even if Plaintiff had remotely satisfied the requirements for attorney-client privilege, she has waived any such privilege by failing to keep the underlying communications entirely "in confidence." *Fischel*, 557 F.2d at 211. Although Plaintiff has withheld or redacted multiple communications with Fleming regarding this matter, Plaintiff has *produced* communications with Fleming in which the two discuss this lawsuit and the strategy of Plaintiff's litigation counsel. For example, one online "chat" from April 11, 2008 (just days after the Court granted Defendant's Motion to Dismiss Plaintiff's original complaint) reveals the following exchange:



Exh. O at P-E_002945.

A party cannot disclose certain purportedly privileged communications while maintaining the privilege claim over other communications with the same "counsel." *See, e.g.*, *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 295 (D. Mont. 1998); *Sedillos*, 313 F. Supp. 2d at

---

███████████████████████████ This is just further evidence that Plaintiff and Fleming were not having a professional conversation about legal advice.

1093-1094. Plaintiff's voluntary production of certain communications with Fleming regarding the legal issues involved in this matter destroys the confidentiality that is a prerequisite to any privilege claim over *all* of Plaintiff's communications with Fleming.

## IV. CONCLUSION

For the reasons set forth above, Universal respectfully requests that the Court enter an Order requiring Plaintiff to withdraw her claim of privilege over communications involving Theryn Fleming, and to produce immediately all responsive communications involving Fleming.

Dated: July 1, 2009               MUNGER, TOLLES & OLSON LLP


                                  By:      */s/ Kelly M. Klaus*
                                           KELLY M. KLAUS

                                  Attorneys for Defendants