| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION<br>FRED VON LOHMANN #192657<br>KURT OPSAHL #191303<br>CORYNNE MCSHERRY #221504<br>454 Shotwell Street<br>San Francisco, CA 94110<br>Telephone: (415) 436-9333<br>Facsimile: (415) 436-9993<br>Email: fred@eff.org; kurt@eff.org;<br>corynne@eff.org<br><br>FOLGER LEVIN & KAHN LLP<br>MICHAEL F. KELLEHER<br>SUZANNE ELIZABETH RODE<br>275 Battery Street, Suite 2300<br>San Francisco, CA 94111<br>Telephone: (415) 986-2800<br>Facsimile: (415) 986-2827<br>Email: mkelleher@flk.com; srode@flk.com<br><br>KEKER & VAN NEST LLP<br>ASHOK RAMANI - #200020<br>MICHAEL S. KWUN -#198945<br>MELISSA J. MIKSCH - #249805<br>710 Sansome Street<br>San Francisco, CA 94111-1704<br>Telephone: (415) 391-5400<br>Facsimile: (415) 397-7188<br>Email: aramani@kvn.com; mkwun@kvn.com<br>Email: mmiksch@kvn.com<br><br>Attorneys for Plaintiff<br>STEPHANIE LENZ | MUNGER TOLLES & OLSON LLP<br>KELLY M. KLAUS #161091<br>ASHLEY AULL #257020<br>355 South Grand Avenue<br>Los Angeles, CA 90071-1560<br>Telephone: (213) 683-9238<br>Facsimile: (213) 683-4038<br>Email: kelly.klaus@mto.com;<br>ashley.aull@mto.com<br><br>Attorneys for Defendants<br>UNIVERSAL MUSIC CORP., UNIVERSAL<br>MUSIC PUBLISHING, INC., and<br>UNIVERSAL MUSIC PUBLISHING GROUP |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>　　　　　　　Defendants. | Case No. C 07-03783-JF<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:　　July 10, 2009<br>Time:　　10:30 am<br>Courtroom: 3<br>Judge:　　The Hon. Jeremy Fogel<br><br>Date Comp. Filed:　July 24, 2007<br>Trial Date: |

8258907.1

Plaintiff Stephanie Lenz ("Lenz") and Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group (collectively, "Universal") jointly submit this Case Management Conference Statement in advance of the July 10, 2009, Case Management Conference.

Lenz and Universal previously submitted joint Case Management Statements on December 5, 2008, in advance of the conference scheduled for December 19, 2007 (Doc. No. 30), and on July 8, 2008, in advance of the conference scheduled for July 18, (Doc. No. 43). The previous Case Management Conferences were deferred pending the Court's Orders on the previous motions to dismiss. The Statement below updates the previous statement in light of the Court's subsequent Orders, the discovery that has occurred thus far in the case, and certain disputes that have arisen related to that discovery.

### 1. Jurisdiction and Service

Lenz contends that this Court has subject matter jurisdiction over her claim under Section 512(f) of the Digital Millennium Copyright Act ("DMCA"), pursuant to the Copyright Act (17 U.S.C. §§ 101 et seq.), 28 U.S.C. §§ 1331 and 1338.

Universal disputes the basis upon which Lenz invokes jurisdiction for her claimed violation of Section 512(f). Universal contends that it did not send its notice to YouTube pursuant to the DMCA, and that there is no subject matter jurisdiction over Lenz's claim under Section 512(f) or the Copyright Act.

Lenz's position is that the Court, in its August 20 ruling denying Universal's Motion to Dismiss Lenz's second Amended Complaint, found that the notice was a Section 512 notice.

Universal's position is that the August 20 Order was a ruling on a Motion to Dismiss; that the issue the Court decided necessarily was limited to whether Plaintiff had made sufficient factual allegations that the notice was sent pursuant to Section 512 of the DMCA; and that because the issue is one that is bound together with the question of Plaintiff's standing to bring suit under the DMCA and the Court's subject matter jurisdiction over the claim, Plaintiff bears the burden at all stages of this litigation (including summary judgment and trial) of proving that the notice was sent

pursuant to the DMCA. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### 2. Facts

The underlying material facts of this case are largely undisputed and were discussed in the parties' briefing on the first and second Motions to Dismiss and are therefore summarized only briefly here. Lenz posted to YouTube a video, which is 29 seconds in length and which features her child dancing to the Prince song "Let's Go Crazy." The video is also entitled "Let's Go Crazy #1." Universal, which administers the copyright in that musical composition, sent YouTube a written notice stating, *inter alia*, that it had a good faith belief that Lenz's posting made an unauthorized use of the Prince's copyrighted composition. Universal requested that YouTube remove the posting or disable access to it. YouTube blocked access to Lenz's posting for a period of time. Plaintiff sent YouTube a counter-notification, stating, *inter alia*, that she had a good faith belief that the disabling of access to her posting was as a result of mistake or misidentification of the posting. YouTube has since restored access to Lenz's posting and it is available at <http://www.youtube.com/watch?v=N1KfJHFWlhQ>.

On July 24, 2007, Lenz filed a Complaint contending that Universal violated federal and state law by sending the notice. Lenz's Complaint alleged causes of action for misrepresentation under 17 U.S.C. § 512(f), intentional interference with her contractual use of YouTube's hosting services, and sought a declaratory judgment of non-infringement. Following discussions with Universal's counsel, Lenz amended her Complaint on August 15, 2007, to add an additional Defendant. On September 21, 2007, Universal moved to dismiss Lenz's federal claims and to strike Lenz's state law claim.

On April 8, 2008, this Court granted Universal's Motion to Dismiss, with leave to amend as to Lenz's Section 512(f) claim and without leave to amend based on a lack of subject matter jurisdiction as to her declaratory judgment claim; the Court denied the Motion to Strike without prejudice. On April 18, 2008, Lenz filed a Second Amended Complaint, which contains a single cause of action for misrepresentation under 17 U.S.C. § 512(f). On May 23, 2008, Universal moved to dismiss Lenz's Second Amended Complaint.

On August 20, 2008, this Court denied Universal's Motion to Dismiss, and subsequently

denied Universal's request that the Order be certified for interlocutory appeal. The parties have since commenced discovery.

3. <u>Legal Issues</u>

The parties' respective briefs on the second Motion to Dismiss identified a number of legal issues regarding Lenz's claim. Although the parties do not necessarily agree regarding the continued existence or the phrasing as to each of the following issues, the parties believe (either individually or jointly) that if the Court finds that it has subject matter jurisdiction for Lenz's claim, then the case raises at least the following legal issues:

- Whether Lenz's use of "Let's Go Crazy" was a non-infringing fair use;
- Whether Universal is charged under Section 512(f) with making an *ex ante* determination that a user's unauthorized use of copyrighted material would be deemed to be a non-infringing fair use prior to sending a notice
- Whether Universal's notice is deemed to make a representation concerning whether Lenz's use would be deemed to be a non-infringing fair use;
- Whether Universal violated Section 512(f) by knowingly making a material misrepresentation that Lenz's post constituted an infringing use of "Let's Go Crazy";
- Whether, Universal violated Section 512(f) by knowingly making a material misrepresentation that, at the time it sent the notice, Universal had a good faith belief that Lenz's post made an infringing use of "Let's Go Crazy";
- The proper standard for assessing damages under Section 512(f);
- Whether Lenz has any damages under Section 512(f);
- Whether Section 512(f) of the DMCA applies to Universal's notice.

4. <u>Motions</u>

Universal filed a Motion to Dismiss Lenz' First Amended Complaint and Special Motion to Strike, which the Court granted in part and denied in part on April 8, 2008.

Universal filed a Motion to Dismiss Lenz's Second Amended Complaint, which the Court denied on August 20, 2008.

1   On August 29, 2008, Universal filed a motion to certify the Court's August 20, 2008 Order
2   for Interlocutory Appeal.  The Court denied that Motion by Order entered October 28, 2009.
3   On April 9, 2009, Lenz filed a motion for a protective order.  Magistrate Judge Seeborg
4   denied that Motion on May 1, 2009.  The parties subsequently filed a Stipulated Protective Order
5   governing discovery of confidential documents.  Magistrate Judge Seeborg entered the Stipulated
6   Protective Order on May 11, 2009.
7   On July 1, 2009, Universal filed two motions to compel, noticed for hearing before
8   Magistrate Judge Seeborg on August 5, 2009.
9   On June 30, Universal responded to Lenz's June 10 and 11 meet and confer letters
10  regarding various discovery disputes.  Lenz is evaluating that response and may file one or more
11  motions to compel as well.
12  Each of the parties may file a Motion for Summary Judgment on the single claim remaining
13  in the case.

### 5. Amendment of Pleadings

Plaintiff may seek to amend the pleadings if she believes that other parties should be added or that one or more of the named defendants should be dismissed.  The parties do not anticipate the potential for any other amendments to the pleadings at this juncture.

### 6. Evidence Preservation

The parties have discussed evidence preservation and have taken steps to prevent erasure or loss of potentially relevant materials, including electronic data.  In particular, both sides have taken steps to prevent erasure or loss of all potentially relevant materials related to Lenz, the YouTube posting at issue in the case, or Universal's notice to YouTube and Lenz's counter-notice.

The parties disagree whether the parties' preservation obligation extends more broadly.

**Lenz Position:**

Lenz has asked Universal to preserve all information, including electronic data and/or other documents, pertaining to Defendants' (and/or their agents') policies and practices with respect to the identification of any DMCA takedowns sent in response to potentially infringing material on the Internet, as of January 4, 2005, to the present.  Lenz contends that this material is potentially

8258907.1                                      -4-
                              JOINT CASE MANAGEMENT STATEMENT

relevant to a number of disputed issues, including but not limited to Defendants' state of mind and whether they acted in bad faith when they sent the DMCA notice. Defendants' policies and practices regarding DMCA takedowns should help establish a course of conduct and a context for the notice at issue, from which a reasonable fact-finder might infer knowledge. For example, if Defendants' do not discuss fair use with the individuals who send takedowns, then that would tend to suggest that Defendants did not consider fair use when they send the takedown notice at issue.

**Universal Position:**

Universal believes that the category of any document of any kind "pertaining to Defendants' (and/or their agents') policies and practices with respect to the identification of any DMCA takedowns sent in response to potentially infringing material on the Internet, as of January 4, 2005, to the present" is vastly overbroad; that the burden of complying with it would be substantial; and that the underlying information is irrelevant to the claims or defenses in this case. Contrary to Lenz's contention, the underlying information has no relevance to Universal's "state of mind." The "state of mind" that Plaintiff alleges in her Second Amended Complaint is that Universal "knew," "should have known" or "would have no substantial doubt had [it] been acting in good faith" that *Lenz's* YouTube posting was a "self-evident non-infringing fair use." While Universal believes that Lenz's legal claim has no merit, the important point for document preservation purposes is that Universal's takedown notices for the period of the last *four years* have nothing to do with what Universal subjectively knew about the "self-evident" nature of Lenz's posting, or about any of the allegations in this case. Notably, while Plaintiff has suggested that Universal should be imposing discovery holds and gathering documents regarding tremendous amounts of infringing material on the Internet, Plaintiff herself has explicitly limited her discovery responses and production to the single video that is at issue in this case.

At this juncture, the preservation request that Plaintiff alludes to threatens significant prejudice to Universal. Plaintiff has been aware of Universal's position that her preservation request is substantially overbroad, and that Universal is not bound by it, since November 2007. Plaintiff identified this point of disagreement as a potential issue in the very first Case Management Statement the parties jointly filed, on December 5, 2007 (Doc. No. 30) at pp. 3-4. Nevertheless,

Plaintiff has made no motion or other request for an order imposing the overbroad preservation obligations she now claims are appropriate. Nor has Plaintiff ever articulated or demonstrated any prejudice based on Universal's position. Any request by Plaintiff for a broad preservation order following this substantial lapse of time would be prejudicial, as well as without merit.

### 7. Disclosures

The parties exchanged Initial Disclosures on September 30, 2008.

### 8. Discovery

The parties have exchanged written discovery requests and responses and have met and conferred (and, as to some issues, continue to meet-and-confer) regarding whether their respective requests have been satisfied.

Universal has filed two motions to compel before Magistrate Judge Seeborg. Both of those motions are noticed for hearing on August 5, 2009. Lenz may file on or more motions to compel as well.

### 9. Class Actions

This case is not a class action.

### 10. Related Cases

The parties are not aware of any related cases.

### 11. Relief

Plaintiff seeks injunctive relief and monetary damages for the violation of 17 U.S.C. § 512(f). Plaintiff's calculation of damages is ongoing, but will be based, in part, upon the loss of access to YouTube's services; time, effort, and expenses responding to the DMCA notice (including attorneys' fees and costs of this litigation); and damage to Plaintiff's free speech rights.

Universal contends that Plaintiff has no damages and that it is entitled to an award of its attorneys' fees and costs. Universal also disputes Plaintiff's claim that she is entitled to injunctive relief under Section 512(f).

### 12. Settlement and ADR

The parties agree that the Court's ADR processes would be unlikely to help resolve this case at this juncture.

13. Consent to Magistrate for All Purposes

The parties have declined to have a magistrate judge conduct all further proceedings, including trial and entry of judgment.

14. Other References

The parties believe that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. Narrowing of Issues

At this juncture, the parties do not anticipate a narrowing of issues by agreement. The parties presently have a disagreement on whether this case is appropriate for bifurcation. Their respective positions are as follows:

**Lenz's Position:**

Lenz believes that it would promote efficiency to bifurcate liability and damages. Her asserted damages to date include, primarily, her attorneys' fees and costs under 17 U.S.C. § 512(f), and she contends that it makes sense to determine whether she may recover attorneys' fees as damages before opening discovery into the amount of those fees. Universal contends that fees and costs related to this litigation are not recoverable as damages, primarily because Lenz's attorneys are representing her *pro bono publico.* This is a question of law, not a question of fact, and thus can be properly resolved by this Court without the need for a jury. Because producing attorney records (including redacting those records to protect attorney-client communications and attorney work product) would impose a significant burden and interfere with the attorney-client and work product privileges, Lenz contends that such records should only be produced once the Court has determined Universal's liability and the damages allowable. In Lenz's view, the question of bifurcation is a narrow question about whether this Court should exercise its discretion to separate two logically distinct issues in order to "expedite and economize" these proceedings. Fed. R. Civ. P. 42(b). One purpose of Rule 42(b) is "to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great Northern Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970). Ms. Lenz believes that this is the case here: discovery of her attorney fees would be unnecessary if this Court finds that

1  she cannot recover them as damages, or if she does not prevail on liability.

2  Moreover, to the extent that evidence of damages are necessary at this stage as an element of liability under Section 512(f), the only factual issue is whether or not there were any damages. While Universal does not appear to seriously dispute that Lenz's attorneys' did at least some work, nevertheless Lenz can establish this fact with declarations showing that her attorneys did in fact do work with respect to Universal's DMCA notice and this litigation. The amount of such damages, however, is not relevant to the liability question.

3  The Northern District's Standing Order on the contents of a Case Management Statement directs that "[t]he parties must include," in their Statement, "any request to bifurcate issues, claims, or defenses." Lenz accordingly believes that it would be efficient for this Court to consider this question at the Case Management Conference. Lenz notes that Universal has offered an extensive legal brief on the issue below. Lenz believes the issue is a straightforward one and no such briefing is needed. However, if the Court is inclined to reject Lenz's request to bifurcate based on the discussion below, Lenz requests the opportunity to submit further briefing,

**Universal's Position on Plaintiff's Proposed Bifurcation:**

Plaintiff's proposal to bifurcate what she calls liability from damages issues is a transparent attempt to avoid entirely non-intrusive discovery that threatens to expose the absence of an essential element of Plaintiff's claim under 17 U.S.C. § 512(f). Contrary to Plaintiff's representations at the dismissal stage, it appears that Plaintiff did not incur any actual damages in responding to Universal's notice to YouTube. Plaintiff's bifurcation proposal does not come close to meeting the requirements of Rule 42(b).

In the first place, it is important to be clear about what counts - and what does not count - as the damages that Plaintiff needs to prove in order to establish liability under 17 U.S.C. § 512(f). That issue is critical to understanding why Plaintiff's request for bifurcation proposes to sever an issue going to liability, and why it would yield no efficiencies justifying bifurcation. Section 512(f), like other statutes sounding in misrepresentation or fraud, makes the fact of actual damage an element of a Plaintiff's claim. Plaintiff must prove that she actually was "injured" by the alleged "misrepresentation," and specifically, that she incurred actual damages "as the result of the

1  service provider relying upon such misrepresentation in removing or disabling access to the
2  material or activity claimed to be infringing ...." 17 U.S.C. § 512(f).  The damages so incurred may
3  include "costs and attorneys' fees," but the critical point is that whatever the damages are, they
4  have to have been actually incurred by Plaintiff "as the result of" YouTube relying upon
5  Universal's alleged knowing misrepresentation.

6        From the outset of this case, Plaintiff has been deliberately vague about alleging what
7  damages she actually claims to have incurred "as the result of" YouTube's alleged reliance on
8  Universal's notice.  Plaintiff has said that she lost the value of her time writing responses to
9  YouTube.  But those responses (consisting of a handful of short email exchanges with YouTube)
10  cost Plaintiff nothing.  Plaintiff also has said that she lost the value of YouTube's services in
11  hosting her "Let's Go Crazy #1" video.  But Plaintiff pays YouTube nothing for its service, and she
12  retained her access to YouTube (which hosted other of her videos) during the entire time "Let's Go
13  Crazy #1" was offline.

14        The third, and final, category of damages that Plaintiff has asserted concern fees allegedly
15  paid to attorneys for advising Plaintiff on how to respond to Universal's notice.  The Court
16  inquired about this issue at the July 18, 2008 hearing on Universal's second motion to dismiss.
17  Indeed, it was the first issue the Court questioned counsel about.  *See* Tr. of Hr'g, July 18, 2008, at
18  3:18-20 ("Let me focus on the issue that I have the most concern about which is the damages
19  element of this claim.").  The Court specifically asked Plaintiff's counsel whether her client was
20  alleging that she actually expended attorneys' fees in responding to Universal's notice:

21      The Court:  That was true in the Diebold case, but what - again, and I realize we are
22      at the motion to dismiss stage, but I don't believe there was any assertion there were
       any attorneys fees involved in responding to the notice.  There are attorneys' fees
23      involved in bringing the lawsuit.

       Were there attorneys fees ─ is the representation that plaintiff alleged she expended
24      attorneys fees in responding to the take down notice?

25      Ms. McSherry:  I have to be a little careful in responding because I don't want to
       reveal communications, but my client did need to seek legal counsel along the way
26      in determining how to respond.

27      The Court:  There could, hypothetically, be an allegation that a response to the
       original take down notice involved an actual expense to get professional services.
28

8258907.1       -9-
JOINT CASE MANAGEMENT STATEMENT

Ms. McSherry: Yes, Your Honor.

The Court: Okay.

*Id*. at 5:4-25 (emphasis added).

The Court specifically relied on Plaintiff's counsel's representations in denying Universal's Motion to Dismiss on the ground that Plaintiff failed to allege damages:

> At oral argument, counsel for Lenz indicated that while the damages incurred in preparing Lenz's counter-notice cannot be elaborated upon for reasons of privilege, Lenz did incur actual damages in reviewing counter-notice procedures, seeking the assistance of an attorney, and responding to the takedown notice. *See* Transcript of Law & Motion Hearing, July 18, 2008, p. 5:15-25. Though damages may be nominal and their exact nature is yet to be determined, the Court concludes that Lenz adequately has alleged cognizable injury under the DMCA.

Order, Aug. 20, 2008 (Doc. No. 45) at 9:4-9 (emphasis added).

The background of the statute and what was represented at the pleading stage make it clear why bifurcation is not appropriate. The fact of Plaintiff's damages cannot be put off until after a jury trial on liability. The question is not whether Plaintiff's lawyers "did in fact do work" regarding the notice, but rather whether (as represented to the Court) Plaintiff "incur[red] actual damages" in connection with counsel's work, and if so, how much. If Plaintiff did not incur any actual damages in responding to Universal's notice, then there is no liability. Whether Plaintiff incurred any actual damages is not a question of law; it is a question of fact. Bifurcation is an exceptional practice "not to be routinely ordered," Fed. R. Civ. P. 42 (Advisory Committee Notes, 1966 Amendment). It is not remotely appropriate here, since bifurcation would exclude from the jury's consideration an essential factual element that Plaintiff has the burden to prove.

Bifurcation also would result in no efficiencies or cost savings. Plaintiff asserts that bifurcation would avoid discovery, privilege issues, and possible litigation regarding the amount of time that her nine different lawyers (from two law firms and the EFF) have expended pro bono on litigating this lawsuit. This is a complete red herring. The damages that count under 17 U.S.C. § 512(f) are the damages allegedly incurred in responding to a notice containing a knowing material misrepresentation. The attorneys' fees that may be recovered for brining a lawsuit under § 512(f), as with any other provision of Title 17 of the United States Code, are governed by 17 U.S.C. § 505. When there is a judgment on Plaintiff's claim for relief, there will be time enough for the parties to

take discovery and litigate issues relating to attorneys' fees and costs for the litigation. And, in any event, if Plaintiff wants to argue that an imputed value of her lawyers' work for litigating this case pro bono counts as damages for purposes of § 512(f), Plaintiff can do so by way of a properly noticed Motion for Summary Judgment (or an opposition to a Motion for Summary Judgment by Universal, if it files one). There is no reason for the question whether litigation fees are damages to put the brakes on Universal's legitimate discovery into what indisputably counts as damages, namely, the actual costs incurred "as the result of" the service provider's alleged reliance on a knowing misrepresentation in a notice subject to the statute.

The savings, in terms of time, expense and burden that would result from bifurcating Plaintiff's damages under 17 U.S.C. § 512(f) are minimal to non-existent. Universal asked Plaintiff to identify the burden of complying with her Initial Disclosure and discovery obligations regarding damages allegedly incurred in responding to Universal's notice, and Plaintiff could not identify any such burden. It is apparent that the reason Plaintiff refuses to produce any of this information - and that she now proposes to sever any issue of damages until after a jury trial on supposed liability issues - is that, contrary to her representation at the dismissal stage, Plaintiff has no such damages. Universal has filed a Motion to Compel to the production of complete Initial Disclosures and documents on this issue. That Motion to Compel is noticed for hearing before Magistrate Judge Seeborg on August 5, 2009.

Universal's pending Motion to Compel seeks only the amount of, and documents relating to, the allegation (made to this Court, to avoid a motion to dismiss) that Plaintiff actually incurred damages "reviewing counter-notice procedures, seeking the assistance of an attorney, and responding to the takedown notice." As noted, Plaintiff has identified no burden that such discovery would impose, and there is none: Plaintiff first talked to EFF counsel on June 14, 2007, and Plaintiff's second counter-notice email was sent to YouTube on June 27, 2007, just 13 days later. That is a minimal period of time for discovery. Nor is there any privilege issue. The amount of fees charged to Plaintiff is not privileged. Any attorney-client privilege or work product information contained in an invoice or other type of bill sent to Plaintiff obviously can be redacted, while the rest of the document is produced. Of course, if there is no amount of damages and no

invoice or record of billing to Plaintiff, then not only is there no privilege or burden issue, there is no claim for relief.

Universal respectfully submits that the Court should not grant Plaintiff's proposed bifurcation, and that Universal should be allowed to proceed with its pending motion to compel before Judge Seeborg.

16.   Expedited Schedule

The parties do not believe this case is appropriate for expedited scheduling.

17.   Scheduling

The parties request that the Court adopt the following case management schedule:

- Fact discovery cut-off:  September 24, 2009.
- Designation of affirmative experts: October 15, 2009.
- Designation of rebuttal experts:  November 12, 2009.
- Expert discovery cut-off: December 15, 2009.
- Last day to file dispositive motions: January 14, 2010.
- Pretrial conference: March 5, 2010.
- Trial:  March 19, 2010.

18.   Trial

Plaintiff has requested a trial by jury.  The parties anticipate that a trial of this matter would be completed in between one and four days.

19.   Disclosure of Non-Party Interested Entities or Persons

Each party has filed a Certification of Interested Entities or Persons as required by Local Rule 3-16.  Both certifications state that, aside from the named parties, there is no interest to report.

20.   Other Matters.

The parties are not aware of any other matters to be addressed at this time.

DATED: July 1, 2009

ELECTRONIC FRONTIER FOUNDATION

By */s/Corynne McSherry*
 Corynne McSherry

Attorneys for Plaintiff
STEPHANIE LENZ

MUNGER, TOLLES & OLSON LLP

By: */s/Kelly M. Klaus*
 Kelly M. Klaus

Attorneys for Defendants
UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP