ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA  94110
Telephone:     (415) 436-9333
Facsimile:     (415) 436-9993
Email: fred@eff.org; kurt@eff.org
       corynne@eff.org

FOLGER LEVIN & KAHN LLP
MICHAEL F. KELLEHER
SUZANNE ELIZABETH RODE
275 Battery Street, Suite 2300
San Francisco, CA  94111
Telephone:     (415) 986-2800
Facsimile:     (415) 986-2827
Email: mkelleher@flk.com; srode@flk.com

KEKER & VAN NEST, LLP
ASHOK RAMANI - #200020
MICHAEL KWUN -#198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP, <br><br> Defendants. | Case No. C 07-03783-JF <br><br> **OPPOSITION TO MOTION TO COMPEL COMMUNICATIONS WITH THERYN FLEMING** <br><br> Date:       August 5, 2008 <br> Time:       9:30 a.m. <br> Courtroom: 4 <br> Judge:      Richard G. Seeborg |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Accused of copyright infringement, Plaintiff Stephanie Lenz did what many people do when they have a legal problem—she reached out to a lawyer friend for legal advice. She did so because she knew that her friend had a law degree and believed her friend could advise her as a lawyer. Ms. Lenz had no idea that a law school graduate is not actually qualified to render legal advice unless he or she *also* holds a license to practice law. She received the advice she needed, and occasionally consulted with her friend again, always expecting such communications would be confidential.

Universal's protests notwithstanding, communications between Ms. Lenz and her friend in the course of these consultations are privileged. Universal seeks to take advantage of a layperson's understandable ignorance of the difference between a licensed and an unlicensed attorney in order to obtain discovery of confidential information that has no bearing on the issues in the case and is likely to be entirely cumulative in any event. This is not just a fishing expedition—it borders on harassment.

Universal's claim of waiver is specious. First, no privilege has been waived. Second, where, as here, privilege is asserted entirely as a shield and not as a sword, the disclosure of one communication does not waive privilege as to other communications. Third, any waiver would apply only to the substance of the particular communication at issue, and *not*—as Universal incredibly seems to claim—to every single privileged communication between the parties.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On June 5, 2007, Stephanie Lenz received notice that a home video she had made was being taken down as a result of an allegation of copyright infringement. Dkt. 23, Exh. B. Declaration of Stephanie Lenz In Support of Opposition to Motion to Compel Communications with Theryn Fleming ("Lenz Decl") at ¶¶ 6-9. Shocked at being accused of breaking the law, and confused about when and how she might defend herself, Ms. Lenz turned to a friend she thought was a lawyer, Theryn Fleming, to help her understand the accusation and the counter-notice process. *Id.* at ¶ 10, 13. Ms. Lenz had no idea that Ms. Fleming was not licensed; indeed, she had no idea that a license was necessary for a person to be qualified as a lawyer. *Id.* at ¶¶ 11-

1

1  12.  She knew Ms. Fleming had a law degree (which Universal does not contest), and as far as
2  Ms. Lenz understood that meant Ms. Fleming was a lawyer, even if she did not choose to
3  practice law professionally.  *Id.* at ¶¶ 4, 10-12.  Indeed, two days after Universal demanded that
4  YouTube remove her video, Ms. Lenz told her mother in an email that she had "spoken with
5  [her] friend who's a lawyer about this YouTube thing."  Miksch Decl. Exh. A.  Ms. Lenz
6  expected that her request for legal advice from Ms. Fleming would remain confidential.  Lenz
7  Decl. at ¶ 14, 17.  Ms. Fleming, in her turn, answered the questions Ms. Lenz put to her and also
8  steered her toward more qualified counsel.  *Id.* at ¶ 15.  Once represented by other counsel, Ms.
9  Lenz primarily discussed other matters with her friend.  *Id.* at ¶ 16.  However, she very
10  occasionally consulted with Ms. Fleming regarding her lawsuit, and believed those
11  communications were privileged.  *Id.* at ¶ 17.  In mid-2008, she learned that Ms. Fleming was not
12  a lawyer because, although she had a law degree, she had never taken the bar and was not
13  admitted to practice.[1]  *Id.* at ¶ 18.  Ms. Lenz does not assert privilege as to any communications
14  after mid-2008.
15      Thus, there are two sets of communications at issue in this motion: (1) Ms. Lenz's initial
16  emails to and from Ms. Fleming, seeking and obtaining advice regarding Universal's accusation
17  of infringement, and discussing the results of that advice; and (2) a handful of redacted
18  exchanges between Ms. Lenz and Ms. Fleming, in which Ms. Lenz consults with Ms. Fleming
19  regarding the progress of her case.

20                               **III.    ARGUMENT**
21  **A.    Ms. Lenz's Communications with Theryn Fleming Are Privileged**
22      **1.    Ms. Lenz Had A Reasonable Belief That Ms. Fleming Was A Qualified
                Lawyer And That Her Communications Respecting the Lawsuit Were
23              Privileged Until Mid-2008**
24      Universal thoroughly misconstrues the standard for invoking attorney-client privilege
25  when an individual seeks legal advice from an individual who is not a licensed attorney.
26      As a preliminary matter, Ms. Lenz does *not* contend that Ms. Fleming *is* a lawyer.  What
27  Ms. Lenz *does* contend is that she reasonably *believed* that Ms. Fleming was a lawyer.  Court
28  

---

[1] Ms. Fleming had never represented to Lenz that she had a license.  Lenz. Decl at ¶ 5

after court[2] has held that communications should be treated as privileged where, as here, the person seeking counsel has a reasonable belief that the person to whom she is speaking is a licensed attorney. *See Speaker ex rel. Speaker v. County of San Bernardino*, 82 F. Supp. 2d 1105 (C.D. Cal. 2000) (collecting cases; "several courts and treatises have stated that where a client reasonably believed that her/his confidential communication was with an attorney, the attorney/client privilege still applies"); *United States v. Rivera*, 837 F. Supp. 565, 567 n.1 (S.D.N.Y. 1993).[3]

Universal nonetheless insists that the "reasonable belief" standard applies only where the person seeking counsel was actively deceived. Mot. at 9. That is not the rule. While these issues often come up in the context of deception, no case holds that this exception applies *only* where an "attorney" has taken active steps to deceive a client. *See United States v. Boffa*, 513 F. Supp. 517, 523 (D. Del. 1981) ("the rationale behind the privilege equally supports the theory that the privilege should be extended to those who make confidential communications to an individual in the genuine, but mistaken, belief that he is an attorney"); *Rivera,* 837 F. Supp. at 567 n.1 ("It is common ground among the parties that the attorney/client privilege attaches to confidential communications made to an individual in the genuine, but mistaken, belief that he is an attorney") (citations omitted).

The only question, then, is whether Ms. Lenz's belief was reasonable. Here's what she knew: Ms. Fleming had graduated from the University of British Columbia Faculty of Law. Lenz. Decl. at ¶ 4. Ms. Lenz believed that Ms. Fleming, because of her legal training, would be

---

[2] As Universal admits, the Ninth Circuit has never decided the issue. Mot. at 8-9.

[3] *See also* 8 Wigmore, Evidence § 2302 (McNaughton rev., 1961) (attorney-client privilege should apply where the client reasonably but mistakenly thought that she was dealing with a lawyer); Restatement (Third) of the Law Governing Lawyers § 72 (2000): (privilege applies if the client is communicating with a person "(1) *who is a lawyer or who the client or prospective client reasonably believes to be a lawyer*; and (2) whom the client or prospective client consults for the purpose of obtaining legal assistance") (emphasis added); *compare In re Grand Jury Subpoenas*, 995 F.Supp.2d 332, 337 (E.D.N.Y. 1998) (union officials were not licensed attorneys *and* no police officer who consulted them reasonably believed them to be authorized to practice law); *Moorhead v. Lane*, 125 F.R.D. 680, 686 (C.D. Ill. 1989) (communications between prisoners and inmate law clerks not privileged; no evidence that plaintiffs argued, or the court considered, whether the prisoners had a reasonable belief as to the law clerks ability to practice law); *Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa.1979) (recognizing but declining to apply "reasonable belief" exception where corporation was well aware that putative attorney was not admitted to any bar during relevant time period).

1 able to help her understand her options and the nature of the claims against her, and advise her
2 on how she might proceed. Lenz. Decl. at ¶¶ 10, 13.  Ms. Lenz acted on that belief and did in fact
3 receive the help she sought.  *Id.* at ¶ 10, 12-15.  In short, she believed that Ms. Fleming was a
4 lawyer who could (and did) provide her with legal counsel.

5 What Ms. Lenz did *not* know is that lawyers are, in fact, subject to licensing requirements
6 as well as educational requirements.  *Id.* at ¶ 11.  She knew that Ms. Fleming had a law degree
7 but did *not* know that Ms. Fleming lacked the additional qualifications necessary to practice law.
8 *Id.*  Based on Ms. Lenz's understandable ignorance of that single fact, Universal wants to
9 eviscerate the confidentiality of all of Ms. Lenz's communications with Ms. Fleming from her
10 first plea for help to her later, more informal consultations.

11 Ms. Lenz is not a corporation, nor is she a criminal.  She had never previously had a
12 serious need for a lawyer's advice.  *See Financial Technologies Intern., Inc. v. Smith*, No.
13 999351, 2000 WL 1855131 at *6 (S.D.N.Y. Dec. 19, 2000) (recognizing that laypersons, unlike
14 corporations, have a lesser obligation to investigate whether they are speaking with a "real"
15 attorney; 'A layman cannot be expected to understand the complexities of the law regulating the
16 practice of law'") (quoting 9 Weinstein, Korn & Miller, *New York Civil Practice* § 4503.03, at
17 45-130).  Ms. Lenz is a writer, mother and homemaker, not an executive or realtor or any other
18 person whose daily activities bring them into contact with lawyers acting in their professional
19 capacity.  Like many laypeople, she thought that having a law degree was sufficient to qualify a
20 person to be a lawyer, and nothing in her personal or professional life had presented her with the
21 occasion to learn differently.  *See generally id.; see also United States v. Hart.,* 1992 WL 348425
22 (E.D. La. 1992) (upholding privilege based on client's reasonable belief, even where attorneys
23 did not take affirmative steps to deceive and one attorney told client she did not represent them).
24 After all, a person becomes a doctor of philosophy simply by completing the requirements of a
25 Ph.D program.  Indeed, a person can put "J.D." after her name even if she is not admitted to any
26 bar—she does, after all, hold a juris doctor degree.  Members of the bar know the difference;
27 many others in the world often will not.  *Compare United States v. Tyler*, 745 F. Supp. 423, 426
28 (W.D. Mich. 1990) (not "ingenuous" for lay person not to know that lawyer lost ability to

1 practice upon conviction of a felony).[4]

2 In mid-2008, Ms. Fleming told Ms. Lenz that Ms. Fleming was not a licensed lawyer.
3 Lenz. Decl. at ¶ 18.  Ms. Lenz does not claim privilege as to any communications with Ms.
4 Fleming after that point.

5 Faced with a legal threat, Ms. Lenz did what many people would do—she turned to a
6 friend she thought was a lawyer for help.  As a layperson, Ms. Lenz had a reasonable basis to
7 believe that Ms. Fleming was a lawyer and that her consultations with her were privileged.  A
8 wealth of persuasive authority, as well as fundamental fairness, require that Universal not be
9 permitted to take advantage of Ms. Lenz's genuine mistake.

### 2. Ms. Lenz Repeatedly Sought and Received Legal Counsel From Ms. Fleming

11 Universal also insists that Ms. Lenz did not seek legal advice from Ms. Fleming.  With
12 respect to Ms. Lenz's early communications, the claim defies reason.  Ms. Lenz has consistently
13 maintained, and Universal does not seriously dispute, that Ms. Lenz sought legal advice from
14 Ms. Fleming regarding Universal's DMCA notice; *i.e.*, she consulted her with a view to
15 obtaining an opinion on law from her.  *See United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir.
16 1996) (privilege applies where, inter alia, communication made for the purpose of securing
17 "either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal
18 proceeding . . ."); *see also United States v. Mullen & Co.*, 776 F. Supp. 620, 621 n.1 (D. Mass
19 1991) (the central factual question is whether the . . . private communications were made
20 pursuant to one or more of the individuals seeking *legal advice*") (emphasis added).  And, in
21 fact, Ms. Lenz obtained "assistance in [the] legal proceeding": Ms. Fleming answered Ms.
22 Lenz's questions about the accusation of infringement and her options for response, and steered
23 her toward qualified legal representation.  *Rowe*, 96 F.3d at 1296.

24 As for the later communications, Universal insists that the two were just friends, and

---

[4] Moreover, Ms. Fleming resides in British Columbia, Canada, where the privilege is broader and more protective than in the Unites States.  In Canada, the "Litigation privilege . . . is not directed at, still less, restricted to, communications between solicitor and client.  It contemplates, as well, communications between a solicitor and third parties or, in the case of an unrepresented litigant, between the litigant and third parties." *Blank v. Canada* (Minister of Justice), [2006] 2 S.C.R. 319 (S.C.C.) at ¶ 27, per Fish J. (Available at

5
OPPOSITION TO MOTION TO COMPEL COMMUNICATIONS WITH THERYN FLEMING
CASE NO. C 07-03783-JF

444642.07

1  therefore Ms. Lenz could not have sought Ms. Fleming's legal advice.  There is no rule that

2  friends cannot offer legal advice, and Universal's suggestion to the contrary would undoubtedly

3  come as a surprise to the many attorneys who consider many of their clients to be friends.

4  Simply put, the formation of an attorney-client relationship does not exclude the existence of

5  other relationships.

6       Again, Universal offers little support for its position. *Sky Valley Ltd. P'ship v. ATX Sky,*

7  *Ltd.,* 150 F.R.D. 648 (N.D. Cal. 1993), and *People v. Gionis*, 892 P.2d 1199 (Cal. 1995), are

8  easily distinguishable: both applied California privilege law, which Universal admits does not

9  apply here.  *Sky Valley*, 150 F.R.D. at 650 n.2; *Gionis*, 892 P.2d at 1204-05; *see also Clark v.*

10 *Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[i]ssues concerning application

11 of the attorney-client privilege in the adjudication of federal law are governed by federal

12 common law"); Mot. at 5-6.  Moreover, the dispute in *Sky Valley* concerned the existence of an

13 attorney-client relationship between a prominent law firm and a "commercially sophisticated

14 party" seeking to assert a joint-client privilege. 150 F.R.D. at 655.  Ms. Lenz is hardly a

15 commercially sophisticated party.  *Sky Valley* concerned a narrow question: whether the

16 defendant could show that it was entitled to use the joint client exception to invade another's

17 privileged communications. *Id.* at 656 n.15  ("The nature of our analysis would be different if the

18 issue before us were, are these communications privileged as against the rest of the world.").

19 Furthermore, *Modern Woodmen of Am. v. Watkins*, 132 F.2d 352, 353 (5th Cir. 1942), simply

20 holds that the privilege does not extend to every statement made to a lawyer.  Ms. Lenz has never

21 claimed otherwise; indeed, she has withheld only a tiny proportion of her communications with

22 Ms. Fleming.

23      Ms. Lenz does claim that she consulted Ms. Fleming with a view to obtaining legal

24 services (i.e., advice) from her.  While even the leading treatise suggests that "client" defies easy

25 definition, *see* 24 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 5474

26 (2d ed. 1987), courts have found that the relationship, like the privilege, hinges on the putative

27 client's reasonable belief that she is consulting a lawyer in order to secure legal advice.  *See, e.g.,*

28

http://csc.lexum.umontreal.ca/en/2006/2006scc39/2006scc39.html.)

6

444642.07  OPPOSITION TO MOTION TO COMPEL COMMUNICATIONS WITH THERYN FLEMING
CASE NO. C 07-03783-JF

*Wylie v. Marley Co.*, 891 F.2d 1463, 1471 (10th Cir 1989).  No express contract is required, *contra* Mot. at 11.  *See Pucket v. Hot Springs School Dist. No. 23-2*, 239 F.R.D. 572, 580 (D.S.D. 2006) (party was "client" of lawyer for an organization that provides pro bono legal assistance to persons seeking to vindicate religious rights where the person sought and obtained legal advice from the lawyer); *Richardson v. Griffiths*, 560 N.W.2d 430, 435 (Neb. 1997) (attorney-client relationship exists, despite absence of fee or contract, where person seeks and lawyer gives legal advice).

Ms. Lenz has been careful to narrowly tailor her claim of privilege to her initial consultations regarding Universal's legal threat, and a few communications involving a legal consultation regarding the progress of her case.  Universal's suggestion that communications on other topics implies that those few communications are not privileged does not hold water.

**B.     The April 11, 2008 Chat Log Did Not Waive The Privilege With Respect to Other Communications**

The April 11, 2008 chat log that Universal contends waived privilege[5] did not include any privileged material.  In the portion of the chat relied upon by Universal, Ms. Lenz reveals the following facts:

(1)     She is taking the legal position that Universal's notice is a DMCA notice;

(2)     She is taking the factual position that Universal's notice was false;

(3)     Content owners who send takedown notices often try to claim their notices aren't DCMA notices; and

(4)     If Universal can be forced to accept that its notices are DMCA notices, that's a good thing.

*See* Klaus Decl., Exh. O at P-E_002945.  The first two points merely repeat allegations that Ms. Lenz has made in this lawsuit.  And neither the third or the fourth points communicates any confidential information either, let alone privileged information.

Moreover, even if the Court were to conclude that these vanilla statements somehow revealed privileged information, under Federal Rule of Evidence 502(a), the disclosure of a privileged communication waives privilege as to undisclosed information only if (1) the waiver

7

is intentional; (2) the disclosed and undisclosed information concern the same subject matter and (3) they ought in fairness to be considered together.  Fed. R. Evid. 502(a).  The rule embodies the well-established principle that one cannot use privilege as both a sword and a shield.  Wright & Miller § 2016 ("The idea is to limit subject matter waiver to situations in which the privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials.").

As explained above, there was no privilege to waive as to the April 11, 2008 communications.  Even if the Court were to conclude otherwise, any waiver could not be intentional, because Ms. Lenz did not believe the information was privileged in the first place.  More importantly, there is no reason Ms. Lenz's other communications with Ms. Fleming need to be considered with the one disclosed.  Ms. Lenz has not put her communications with Ms. Fleming at issue, including the communication cited by Universal.  *United States v. Gasparik*, 141 F. Supp. 2d 361 (S.D.N.Y. 2001) (implied waiver should only be found when the client asserts a claim that "in fairness" requires examination of protected communications).  She has not asserted that she relied on Ms. Fleming's counsel in bringing this lawsuit, making her video, or in any other way.  Ms. Lenz will not call Ms. Fleming as a witness.  Indeed, as explained below, Universal has failed to explain how Ms. Lenz's communications with Ms. Fleming might have even attenuated relevance to the claims and defenses at issue in this case.

Again, Universal offers nothing to the contrary.  In *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288 (D. Mont. 1998), the court found that defendant waived privilege as to its attorney of record when it named the attorney as an expert witness.  *Id.* at 295.  In *Sedillos v. Bd. of Educ. of Sch. Dist. No. 1*, 313 F. Supp. 2d 1093 (D. Colo. 2004), the defendant asserted an advice of counsel defense.  *Id*. at 1093-94.  Both cases are classic examples of using privilege as both a sword and a shield; neither support a finding of subject matter waiver in this instance.  Indeed, courts have rejected much stronger waiver theories than Universal's.  *Compare Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 199 F.R.D. 677, 682 (N.D. Ok. 2001) (assertion by

---

[5] Universal has offered no other basis for its waiver argument.

major league baseball players' association that it acted in good faith when it sent a cease and desist letter to the manufacturer of parody baseball cards did not constitute the type of affirmative act necessary for a waiver of the attorney-client privilege.); *Sorenson v. H & R Block, Inc.*, 197 F.R.D. 206, 208-09 (D. Mass. 2000) (taxpayer who sued a tax preparer for unauthorized disclosure of tax return information did not make his communications with his attorney a material issue in the judicial proceeding; no waiver of the privilege).

**C.    Universal Has Failed to Show How Ms. Lenz's Communications with Ms. Fleming Could Be Relevant to Any Claim or Defense**

Universal's invocation of the principle that attorney-client privilege must be strictly construed because assertion of the privilege can impede "full and free discovery of the truth" is disingenuous at best.  Mot. at 6 (citing *Weil v. Investment/Indicators Research & Mgmt., Inc*. 647 F.2d 18, 24 (9th Cir. 1981)).  There is just one claim in this case—whether Universal violated 17 U.S.C. § 512(f) by knowingly and materially misrepresenting that Ms. Lenz's home video was copyright infringement.  Ms. Lenz's communications with Ms. Fleming can do nothing to illuminate that issue.

Universal claims that the communications are relevant nonetheless because they concern this lawsuit and her allegations, but fails to explain how.  If they concern the lawsuit, they are likely to contain a request for or receipt of legal advice, which goes to support the claim of privilege, and in any event does not suggest they pertain to the central claim at issue.  As for the notion that they concern "the allegations," the only allegation Universal identifies is a statement that Lenz is fearful that someone might construe some portion of a video to infringe a copyright. Mot. at 4.  Perhaps Universal imagines that Ms. Lenz held this belief because of something Ms. Fleming said.  If so, that would suggest that Ms. Fleming communications were legal advice and, therefore, underscores that the communications should be treated as privileged.  But the communications still would have no bearing on the central issues in the case.  At most, the communications might reflect Ms. Lenz's state of mind—which, again, is not at issue nor "relevant to any party's claim or defense."  Fed. R. Civ. P.26(b)(1).  Moreover, even if her state of mind were at issue, Ms. Lenz has produced numerous emails and chats with others that provide ample evidence of her response to the takedown and her motivations for bringing a

9

1  lawsuit against Universal.  To the extent that communications with Ms. Fleming concern this
2  topic, additional communications with Fleming would be cumulative at best.  Fed. R. Civ. P.
3  26(c)(i) (discovery may be limited where it is "unreasonably cumulative or duplicative").

4       Thus, the sound policy of ensuring that privilege does not impede the full and fair
5  litigation of the issues in a given case does nothing to support Universal's argument.  Universal
6  is not embarked on a quest for truth; rather it has burdened this Court with a spurious motion to
7  compel.

8       Indeed, the more appropriate policy is set forth in Rule 26, which authorizes the court to
9  limit discovery when

> the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i-iii); *see generally Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense....' Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process.").

### IV.  CONCLUSION

Until mid-2008, Ms. Lenz had a reasonable belief that Ms. Fleming was a lawyer, and acted in reliance on that belief in seeking advice from her.  Universal seeks to take advantage of Ms. Lenz's understandable ignorance of legal licensing requirements, in order to discover communications that are both privileged and where Universal can identify no relevance.  Ms. Lenz respectfully urges the Court to deny Universal's wasteful and harassing Motion.

Dated:  July 15, 2009       KEKER & VAN NEST, LLP

By: ___/s/ Corynne McSherry[6]___
CORYNNE MCSHERRY
Attorneys for Plaintiff
STEPHANIE LENZ

---

[6] Electronically signed by Melissa J. Miksch, with the concurrence of Ms. McSherry.  N.D. Cal. G.O. 45 ¶ X.B.

10

OPPOSITION TO MOTION TO COMPEL COMMUNICATIONS WITH THERYN FLEMING
CASE NO. C 07-03783-JF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28