1  ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
2  KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
3  454 Shotwell Street
San Francisco, CA  94110
4  Telephone:    (415) 436-9333
Facsimile:    (415) 436-9993
5  Email: fred@eff.org; kurt@eff.org, corynne@eff.org

6  FOLGER LEVIN & KAHN LLP
MICHAEL F. KELLEHER
7  SUZANNE ELIZABETH RODE
275 Battery Street, Suite 2300
8  San Francisco, CA  94111
Telephone:    (415) 986-2800
9  Facsimile:    (415) 986-2827
Email: mkelleher@flk.com; srode@flk.com
10
KEKER & VAN NEST, LLP
11  ASHOK RAMANI - #200020
MICHAEL S. KWUN -#198945
12  MELISSA J. MIKSCH - #249805
710 Sansome Street
13  San Francisco, CA  94111-1704
Telephone:    (415) 391-5400
14  Facsimile:    (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com,
15  mmiksch@kvn.com

16  Attorneys for Plaintiff
STEPHANIE LENZ
17
UNITED STATES DISTRICT COURT
18
NORTHERN DISTRICT OF CALIFORNIA
19
SAN JOSE DIVISION
20

| | |
|---|---|
| 21 STEPHANIE LENZ, | Case No. C 07-03783-JF |
| 22                     Plaintiff, | **NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| 23      v. | |
| 24 UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP, | Date:       August 19, 2009<br>Time:       9:30 a.m.<br>Dept:       Courtroom 4<br>Judge:      Hon. Richard Seeborg<br>Date Comp. Filed:    July 24, 2007 |
| 25 | |
| 26                     Defendants. | [DECLARATION OF MICHAEL S. KWUN AND [PROPOSED] ORDER FILED HEREWITH] |
| 27 | |
| 28 | **PUBLIC REDACTED VERSION** |

1  <u>**NOTICE OF MOTION**</u>

2  **NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT:**

3  PLEASE TAKE NOTICE, that on August 19, 2009, at 9:30 a.m., or at such other time as

4  the Court may direct, before the Honorable Richard G. Seeborg, United States District Court,

5  280 South First Street, San Jose, California, 95113, Plaintiff Stephanie Lenz ("Ms. Lenz") will,

6  and hereby does, move the Court for an Order compelling Defendants Universal Music Corp.,

7  Universal Music Publishing, Inc., and Universal Music Publishing Group (hereinafter

8  "Universal") to produce responsive documents or explain why it cannot.

9  This Motion is based on this Notice of Motion, the Memorandum of Points and

10  Authorities below, the Declaration of Michael S. Kwun (filed herewith), the Proposed Order

11  (filed herewith), and such other and further papers, evidence and argument as may be submitted

12  to the Court at or before the hearing on this motion.

13

14  Dated:  July 15, 2009                                    KEKER & VAN NEST, LLP

15

16

17                                                By:  _____/s/ Melissa J. Miksch_____
                                                         MELISSA J. MIKSCH
18                                                       Attorneys for Plaintiff
                                                         STEPHANIE LENZ
19

20

21

22

23

24

25

26

27

28

444030.08

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................1

II.  BACKGROUND ................................................................2

III. ARGUMENT.......................................................................3

   A.   Universal's document collection and production improperly excluded responsive documents. ................................................................4

   B.   Universal has no attorney/client relationship with Prince and therefore cannot withhold communications between them as privileged. .............................8

   C.   Universal's policies for issuing takedown notices are neither legal advice nor prepared in anticipation of litigation, and therefore are not privileged or work product.................................................................10

      1.   Universal's policies are business directives, not legal advice. ..................11

      2.   Universal's policies are not work product because they do not reflect attorneys' trial preparation strategy. ...............................................11

   D.   Documents relating to any licensing efforts for the "Let's Go Crazy" composition relate to the existence of any market for videos such as Ms. Lenz's and thus to the question of whether her video is infringement or fair use.................................................................12

   E.   Universal must produce agreements with YouTube that relate to the interaction between them with respect to allegations of infringement. ................13

   F.   Universal must produce communications with third parties about Ms. Lenz and/or this lawsuit. ................................................................14

   G.   Universal cannot accuse Ms. Lenz of infringing the "Let's Go Crazy" composition but refuse to produce it to her. ...........................................15

IV.  CONCLUSION.......................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A. Farber and Partners, Inc. v. Garberi*
234 F.R.D. 186 (C.D. Cal. 2006)................................................................4, 7

*Blankenship v. Hearst Corp.*
519 F.2d 418 (9th Cir. 1975) ........................................................................4

*Campbell v. Acuff-Rose Music, Inc.*
510 U.S, 569, 577-78 (1994) ......................................................................13

*Contratto v. Ethicon* Inc.,
225 F.R.D. 593 (N.D. Cal. 2004)...................................................................3

*First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*
163 F.R.D. 574 (N.D. Cal. 1995)...............................................................5, 12

*Garvey v. Nat'l Garage Mut. Ins. Co.*
167 F.R.D. 391 (E.D. Pa. 1996) ...................................................................9

*Hickman v. Taylor*
329 U.S. 495 (1947).....................................................................................11

*Hynix Semiconductor Inc. v. Rambus Inc.*
2008 WL 350641 (N.D. Cal. February 2, 2008) ...........................................11

*Louen v. Twedt*
236 F.R.D. 502 (E.D. Cal. 2006) ..................................................................4

*Miller v. Pancucci*
141 F.R.D. 292 (C.D. Cal. 1992) ................................................................12

*Oakes v. Halvorsen Marine Ltd.*
179 F.R.D. 281 (C.D. Cal. 1998) ..................................................................4

*Oppenheimer Fund, Inc. v. Sanders*
437 U.S. 340 (1978).......................................................................................3

*Thompson v. Gen. Nutrition Corp., Inc.*
593 F. Supp. 1443 (C.D. Cal. 1984) .............................................................7

**Federal Statutes**

17 U.S.C. § 107...............................................................................................13

17 U.S.C. § 107(3) ..........................................................................................15

17 U.S.C. § 512(c)(3).......................................................................................1

17 U.S.C. § 512(f).............................................................................................1

**Federal Rules**

F.R.C.P. 26(b)(5)(A)(ii)...................................................................................10

Fed. R. Civ. P. 26(b)(3)...................................................................................11

Fed. R. Civ. Proc. 26(b)(1) ..............................................................................3

Local Rule 7-2(a) ..............................................................................................3

**Treatises**

8 J. WIGMORE, EVIDENCE § 2292, at 554 (McNaughton rev. ed. 1961) ...................8, 11

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Stephanie Lenz posted a home video of her young son dancing to "Let's Go Crazy," by Prince, on YouTube on February 7, 2007.  Four months later, Universal demanded that YouTube remove the video by sending a takedown request tracking the requirements of 17 U.S.C. § 512(c)(3).  Declaration of Michael S. Kwun, Exh. A.  In that notice, Universal represented that it had a good faith belief that her video infringed Prince's copyright in the "Let's Go Crazy" composition (which Universal administers).  Ms. Lenz contends that this representation was false: no one who had watched her 29-second home video could reasonably have concluded that it was not a fair use of that song.  Ms. Lenz further contends that Universal did not consider whether her use was protected by the fair use doctrine, and that the takedown was based not on the particular characteristics of the Holden Video or any good-faith belief that it actually infringed a copyright but on its belief that, as "a matter of principle," Prince "has the right to have his music removed."  Second Amended Complaint ¶ 31 (Dkt. No. 38).

Ms. Lenz therefore filed this suit under 17 U.S.C. § 512(f) to hold Universal responsible for its misrepresentation.  What Universal actually thought (if it thought at all) about the nature of Ms. Lenz's video when it decided to send its takedown notice is the central question in this case.  Universal, though, has refused to produce documents that relate to this issue despite Ms. Lenz's requests.  Specifically, Universal has withheld:

A. all documents generated by Universal after Ms. Lenz filed her original complaint on July 24, 2007;

B. Universal's responses to █████████████████████████████████████████████████████████

C. communications between Universal and Prince;

D. Universal's policies and procedures governing its requests to take down allegedly infringing material;

E. any documents relating to attempts to exploit the market for the "Let's Go Crazy" composition;

F. communications between Universal and third parties about Ms. Lenz and/or her video (including a statement Universal released to ABC News on October 25, 2007);

1

444030.08

G. agreements between Universal and YouTube touching on YouTube's responses to Universal's allegations of infringing material on YouTube's system (including a ████████████████████████████████████Content License Agreement between Universal and YouTube that YouTube has produced to Universal's takedown notices); and

H. the very copyrighted work Universal claims that Ms. Lenz infringed.

Ms. Lenz requested each of these categories of documents in her Requests for Production served on September 30, 2008. As of this date—nine months later—Universal still refuses either to produce them or to tell Ms. Lenz whether they exist.

The parties have met and conferred about the production of these documents to no avail. Ms. Lenz therefore asks this Court for an order requiring Universal to honor its discovery obligations.

## II. BACKGROUND

Ms. Lenz served her Requests for Production on September 30, 2008. Kwun Decl. ¶ 6 and Exh. B. The particular Requests at issue here are:

- Request No. 1: all documents related to this lawsuit;
- Requests 5 and 6: communications with Prince relating to alleged infringement of Prince's copyrights;
- Request No. 16: documents relating to the scope of Universal's interest in the copyrighted work at issue;
- Request No. 9: documents relating to Universal's decision to send a takedown notice for Ms. Lenz's video;
- Requests Nos. 10 and 11: Universal's polices relating to takedown notices for copyrighted material;
- Request No. 14: documents relating to any harm to any actual or potential licensing market caused by Ms. Lenz's video;
- Request No. 4: communications with YouTube about any material Universal has claimed infringes its copyrights, and any agreements with YouTube about its response to such claims; and
- Requests Nos. 2 and 3: communications between Universal and third parties about Ms. Lenz and/or her video.

From October 2008 to April 2009, Universal refused to produce a single document. Universal's stated reason was the lack of a firm Protective Order. Kwun Decl. ¶¶ 7-9. The parties could not agree on the terms of a Stipulated Protective Order, though, and Ms. Lenz

---

2

444030.08

1    therefore told Universal on March 31 that she intended to move for entry of a Protective Order

2    by the Court. Kwun Decl. ¶ 11. The parties agreed to a briefing schedule according to which

3    she would file her motion on April 9, 2009. Kwun Decl. ¶ 12. Just three days before that date—

4    April 6, 2009—Universal produced a handful of publicly available documents: printouts from

5    Ms. Lenz's own blog, internet articles about this case, and YouTube's terms of use. Kwun Decl.

6    ¶ 13. After this Court's ruling on Ms. Lenz's motion, the parties submitted a Stipulated

7    Protective Order on May 5, which this Court entered on May 11.

8         The parties then exchanged documents subject to the Protective Order on June 2, 2009.

9    Universal did *not* produce any of the documents at issue in this motion (save seven wholly

10   redacted emails to Prince and others associated with him). Kwun Decl. ¶ 16.. Ms. Lenz's

11   counsel sent two letters to Universal's counsel outlining the deficiencies in Universal's

12   production on June 10 and 11, 2009. Kwun Decl. ¶ 17 and Exhs. Q and R. Universal did not

13   respond until 4:37 pm on June 30 (the day before the Local Rule 7-2(a) requires a party to file a

14   motion noticed for hearing on August 5, and the day before Universal filed its own motions to

15   compel). Kwun Decl. at ¶ 18 and Exh. S. Universal continued to refuse to produce all but two

16   of the documents at issue or to confirm that it had no such documents to produce. The only

17   documents Universal agreed to produce were a license agreement with YouTube (that YouTube

18   had already produced) and the agreement with Prince under which it asserts it has the right to

19   administer the copyright in (and send takedown notices for) the work at issue here. Kwun Decl.

20   Exh. S. Universal later produced these documents. Kwun Decl. ¶ 16.

21                              **III. ARGUMENT**

22        A party is entitled to discover "any nonprivileged matter that is relevant to any party's

23   claim or defense…that appears reasonably calculated to lead to the discovery of admissible

24   evidence." Fed. R. Civ. Proc. 26(b)(1). "The Supreme Court has consistently held that the

25   discovery rules should be accorded a 'broad and liberal scope.'" *Contratto v. Ethicon*, Inc., 225

26   F.R.D. 593, 595 (N.D. Cal. 2004) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15

27   (1964)). Under this rule, "any matter that bears on, or that reasonably could lead to other matter

28   that could bear on, any issue that is or may be in the case" is subject to discovery. *Oppenheimer*

444030.08

1   *Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The party who refuses to comply with

2   discovery requests "carr[ies] a heavy burden of showing why discovery was denied."

3   *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  Carrying this burden requires

4   the resisting party to "clarify[], explain[], and support[] its objections."  *Oakes v. Halvorsen*

5   *Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).

6          Universal cannot carry its burden here.

7   **A.     Universal's document collection and production improperly excluded responsive**
           **documents.**

8

9          A party responding to requests for production has "an affirmative duty to seek []

10  information reasonably available to it," *A. Farber and Partners, Inc. v. Garberi*, 234 F.R.D. 186,

11  189 (C.D. Cal. 2006), and to produce that information to the requesting party.  The requesting

12  party is entitled to a response "[e]ven if there are no documents responsive to a request for

13  production." *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006) (granting motion to compel

14  responses to requests for production where responding party, among other delinquencies, "did

15  not expressly indicate when there were no documents responsive to a particular request…").

16         In *Farber*, the court granted the plaintiff's motion to compel further production of

17  documents because the defendant's production was inadequate.  There, too, the defendant had

18  produced only a few documents (666 pages) and had produced no documents at all for certain

19  categories of requested information.  234 F.R.D. at 189-90.  The court also criticized the

20  defendant for making improper boilerplate objections to nearly every one of the plaintiff's

21  requests.  *Id.* at 188.

22         These are exactly the facts here.  Universal objected to *every single one* of Ms. Lenz's

23  requests for production as "overly broad, unduly burdensome and not reasonably calculated to

24  lead to the discovery of admissible evidence."  Kwun Decl. Exh. C.  Not once did Universal

25  explain the basis for this objection or even vary the language it used to make it.  Universal has

26  produced only 752 pages of documents to date (only 574 of which are its own; the others being

27  the publicly available documents Universal produced six months after Ms. Lenz served her

28  requests).  Kwun Decl. ¶ 16.  Universal has not produced any responsive documents for several

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

1   of Ms. Lenz's requests, as discussed in detail below.  And, the production Universal *has* made

2   suffers from fatal infirmities.

3        ***First***, YouTube's response to a third party subpoena demonstrates that Universal has

4   withheld relevant communications.  In particular, YouTube (but not Universal) produced two

5   emails from Robert Allen, of Universal Music Publishing Group, ███████████████████

6   ████████████████████████████████████████████████████████████████

7   ████████████████████████  Kwun Decl. ¶ 20 and Exhs. D and E.  In each, Allen

8   claims that ████████████████████████████████████████████████████████

9   ██████████████████████████████████████  *Id.*  In one, Allen

10  adds that ████████████████████████████████████████████████████

11  ████████████████████████████  *Id.* Exh. D.  Ms. Lenz specifically

12  requested emails of this sort in RFP No. 4, which seeks all communications with YouTube about

13  any material Universal claims infringes its copyrights.  Klaus Decl. Exh. B.  Ms. Lenz is entitled

14  to these emails, and, more importantly, to any similar emails as well.  Universal may not evade

15  its discovery obligations simply because Ms. Lenz has received these two emails from YouTube.

16  Given that YouTube is not under the same preservation obligations as Universal, and that, as a

17  third party, its document search may not have been as complete as Universal's should be, Ms.

18  Lenz is entitled to the benefit of a comprehensive search *by Universal* for these emails and

19  similarly responsive documents YouTube may not have found (or possessed in the first place).

20       ***Second***, documents in Universal's *own* limited production suggest the existence of other

21  responsive and relevant documents that have not been produced.  In particular, Universal

22  produced several emails in which a member of YouTube's copyright team asks Raul Gonzalez,

23  of Universal, █████████████████████████████████████████████████████

24  ████████████████████████████████████████  Kwun Decl. Exh. F.

25  But, Universal has not produced *any* emails (or documents reflecting any other form of

26  communication) from any Universal representative responding to YouTube's question.  It is not

27  plausible to suppose that Universal simply ignored the inquiry, ████████████████████

28  ████████████████████████████████████████████████████████

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

1      ████████████ Universal has confirmed that the documents it "*collected*" did not include

2      a response to these emails, Kwun Decl. Exh. S, but this is not the point.  Universal's obligation is

3      to find and produce these emails if they exist, even if they were not captured by its initial

4      collection.  And yet, Universal has refused to tell Ms. Lenz whether or not these missing emails

5      exist, let alone assure her that it will seek them out and produce them to her if they do.

6          ***Third***, and more generally, Universal has not produced a single internal document that it

7      generated after Ms. Lenz filed her original complaint on July 27, 2007.  Kwun Decl. ¶ 16.

8      Universal acknowledges that it has not even reviewed such documents, claiming Ms. Lenz had

9      "never explained why such documents are relevant" during the course of meet and confer.[1]

10     Kwun Decl. ¶ 20 and Ezh. S.   This is not true.  In a letter sent December 19, 2008, and also in a

11     telephone conversation thereafter, Ms. Lenz's counsel explained to Universal's counsel that there

12     may be post-lawsuit documents that relate to Universal's motivation for sending its takedown

13     notices and that would therefore be relevant and responsive.  Kwun Decl. ¶ 20.  And YouTube's

14     production shows that Ms. Lenz was right: at least some post-lawsuit documents—the Allen

15     emails and the responses to YouTube's inquiries just discussed—bear on central issues in this

16     case, for the reasons discussed above.

17         Universal nevertheless contends that documents "reflecting communications with

18     YouTube after Ms. Lenz filed her lawsuit are not relevant to any issue in this case."  Kwun Decl.

19     ¶ 20 and Exh. S.  But it is Ms. Lenz's Second Amended Complaint, filed April 18, 2008, that is

20     the operative complaint in this suit.  That complaint specifically includes allegations based on

21     Universal's conduct after Ms. Lenz originally filed suit.  *See* SAC ¶¶ 28-31.  For example, Ms.

22     Lenz alleges—based on a statement Universal released to ABC News in *October* of 2007—that

23     Universal sent a takedown notice for her video simply because Prince "has the right to have his

24     music removed" and asked Universal to do so.  *Id.*; Kwun Decl. Exh. J.  This post-lawsuit

25     statement reflects Universal's reasons for sending its takedown notice and *is* relevant to the

26     issues in this case.

27

28     [1] Universal's privilege log does list eleven documents dated after the filing date of this lawsuit.
       Kwun Decl. Exh. L (yellow highlights).

1    The missing responses, the Allen emails, the underlying takedown notices, and similar

2    unproduced documents are relevant and responsive to Ms. Lenz's requests (at least RFPs Nos 1,

3    2, 3, and 4).  Kwun Decl. Exh. B.  Ms. Lenz contends that Universal has a practice of sending

4    DMCA takedown notices for videos even where it has not a formed a good faith basis to

5    determine whether the videos are infringing.  Evidence such as the Allen emails███████

6    ███████████████████████████████████████████████████████████████████████

7    ███████████████████████████████and should have been produced.  Evidence that

8    Universal has█████████████████████████████████████████████████████████

9    ████████████████████████would support Ms. Lenz's argument that Universal sends

10   takedown notices without giving any thought to whether or not each target video actually

11   infringes the copyright at issue.██████████████████████████████████████

12   ████████████████████████████████████████████

13   If Universal has not destroyed these emails, it should have produced them.  If they still

14   exist, Universal should produce them now.  Both of the Allen emails were sent after Ms. Lenz

15   filed this suit on July 27, 2007.  Kwun Decl. Exhs. D and E.  If Universal did destroy them, Ms.

16   Lenz is entitled to know the circumstances surrounding their destruction so that Ms. Lenz can

17   evaluate her options.  Universal knew or should have known that they are "relevant in the action,

18   [] reasonably calculated to lead to the discovery of admissible evidence, [] reasonably likely to

19   be requested during discovery, and/or [] the subject of a pending discovery request," and

20   consequently had a duty to preserve them.  *Thompson v. Gen. Nutrition Corp., Inc.*, 593 F. Supp.

21   1443, 1455 (C.D. Cal. 1984) (sanctioning defendant for knowingly permitting destruction of

22   relevant documents).

23   Universal has refused to do either.  Ms. Lenz therefore asks this Court to order Universal

24   to produce these documents or explain why it cannot do so.  In *Farber*, the court ordered the

25   defendant to submit a declaration "detailing the nature of [its] 'reasonable inquiry.'" 234 F.R.D.

26   at 190.  The same sort of order is appropriate here.  Universal represented to Ms. Lenz that

27   collecting documents from more than a few custodians would simply be duplicative.  Kwun

28   Decl. ¶ 15.  This, it turns out, appears to be untrue, and calls into question the validity of

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

1    Universal's judgment about what is and is not necessary to satisfy its discovery obligations.  Ms.

2    Lenz is therefore entitled to know what measures Universal is taking to address the issue.

3    **B.      Universal has no attorney/client relationship with Prince and therefore cannot
            withhold communications between them as privileged.**

4
     Universal has withheld thirty-three emails between it and Prince or his agents[2] as

5    "attorney client privileged," and has redacted on the same basis all seven of the emails with

6    Prince (or his agents) that it *has* produced.  Kwun Decl. Exhs. G and K (green highlights).  Each

7    of the redacted communications merely forwards, ███████████████████████████████

8    ████████████████████████████████████████████████████████████████████████████

9    ██████████████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████

11   ████████████████████  *Id.*  Exh. G at UMC-0000592.

12
     As with any claim of privilege, the party claiming protection bears the burden of

13   establishing that it applies.  *Eg.*, Epstein, The Attorney-Client Privilege and the Work-Product

14   Doctrine, 1148 (2007).  Necessarily, a communication is not privileged unless it is, among other

15   things, made in the course of an attorney-client relationship for the purpose of seeking legal

16   advice.  8 J. WIGMORE, EVIDENCE § 2292, at 554 (McNaughton rev. ed. 1961).  Universal claims

17   an attorney-client relationship between its attorneys and Prince, based on ████████

18   ██████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████

20   ██████████████████  Kwun Decl. Exh. M & ¶ 21.  Universal further claims that these

21   communications are protected from discovery because they "reflect[] requests for or the

22   provision of legal services."  Kwun Decl. Exh. S.

23   ████████████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████████████████

25
     _____

26   [2] Because the email address used by the recipient on redacted documents identified on
     Universal's redaction log as to Kathy Adams is the same as that used by Prince [BEGIN

27   REDACTION] (opnmind@aol.com), [END REDACTION] it appears that Ms. Adams is an
     agent of or otherwise connected with Prince.  Kwun Decl. Exh. G at UMC-000291, Exh. K at 1.

28   In addition, a Google search of "'Ruth Arzate' Prince" turns up results indicating that Ms. Arzate

                                                    8



13    Further, there is no indication that the redacted communications, at least, were designed

14  to further the provision of any legal advice—a necessary element of the attorney-client privilege.

15  Rather, each appears to do nothing more than "convey[]" to Prince "information learned from"

16  other sources, and as such they are not privileged. *Garvey v. Nat'l Garage Mut. Ins. Co.*, 167

17  F.R.D. 391, 396 (E.D. Pa. 1996).

18    Ms. Lenz sought correspondence between Universal and Prince (or his agents) in RFPs

19  Nos. 5 and 6, and it is relevant to her case.  Kwun Decl. Exh. B.  Based on the October 2008

20  statement to ABC News by Universal's Peter Lofrumento, Kwun Decl. Exh. J, Ms. Lenz

21  believes these communications may be evidence supporting her allegation that Universal sends

22  takedown notices for all videos involving Prince's music simply because Prince wants it to do so.

23  Such evidence would further support Ms. Lenz's contention that Universal does not trouble to

24  assess the subjects of its takedown notices to determine whether they may be fair use or

25  otherwise lawful.

26    Universal has refused to produce or unredact each of these communications.  This refusal

27  is improper, and Ms. Lenz therefore asks this Court for an order compelling their production.

28

is the producer of a video by Prince.  Kwun Decl. Exh. H.

9

444030.08

1    **C.    Universal's policies for issuing takedown notices are neither legal advice nor
2           prepared in anticipation of litigation, and therefore are not privileged or work
            product.**

3          Universal has also refused to produce documents reflecting its policies and procedures for

4    sending takedown notices, such as (for example) documents reflecting instructions to the

5    employees in charge of this effort.  These documents are responsive to Ms. Lenz's Requests for

6    Production Nos. 10 and 11.  Kwun Decl. Exh. B.

7          Universal asserts that it has no non-privileged documents to produce in response to this

8    request.  Kwun Decl. Exh. S at 2.  Not one entry on Universal's privilege log, though, appears to

9    correspond to a policy or procedure of the sort Ms. Lenz has requested.  With one exception,

10   each entry on that log is either an "email" involving at most three people, an "email chain"

11   involving multiple people, or a "summary" sent from a non-attorney to an attorney.  Kwun Decl.

12   Exh. L.  The sole exception is the May 30, 2007 email identified as PRIV-000061, from Robert

13   Allen (who is an attorney) to Robert Sammis (who is not), described as "summary provided for

14   the purpose of rendering legal advice regarding notices of unauthorized content on website."  *Id.*

15   It seems highly unlikely that the only guidance Universal furnishes to those who send its

16   takedown notices comes through one email sent to one solitary individual, or through email

17   "chains," or through scattered emails sent to only a few recipients.

18         Even if Universal's privilege log includes the policies Ms. Lenz seeks here, it does not

19   satisfy the requirements of Rule 26.  That rule mandates that the withholding party

20   "must:…describe the *nature* of the documents…and do so in a manner that…will enable other

21   parties to assess the claim."  F.R.C.P. 26(b)(5)(A)(ii) (emphasis added).  If the sort of guidelines

22   Ms. Lenz seeks exist, they should have been logged in such a way as to enable her to identify

23   which documents they are (if they exist at all) and evaluate the basis on which Universal claims

24   they are privileged.

25         Even without the benefit of an adequate privilege log, it appears that Universal has not—

26   and, Ms. Lenz believes, cannot—establish that either the attorney/client privilege or the work

27   product doctrine applies to its general policies for takedown notices.

28

10

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

1.     **Universal's policies are business directives, not legal advice.**

It is black-letter law that a communication falls within the attorney-client privilege only if it, among other requirements, seeks (or provides) legal advice. 8 J. WIGMORE, EVIDENCE § 2292, at 554 (McNaughton rev. ed. 1961). A vague assertion that a document "reflects an attorney's advice is insufficient to demonstrate that the document should be found privileged." *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 350641 at *3 (N.D. Cal. February 2, 2008) (internal quotation marks omitted) (denying defendant's motion in limine to exclude strategy presentation on claim of privilege). A party does not carry its burden of establishing privilege where the document reveals no confidential communications between the attorney and the client, even if it "discuss[es a] business plan and strategy...which may have taken into account advice from [the attorney] as to [the party's] legal positions." *See id.*

The policies Ms. Lenz seeks are equivalent to the strategy presentation at issue in *Hynix*. There, the defendant claimed privilege over a "Strategy Update" presentation by one of its officers to its board of directors on the ground that it allegedly "reflect[ed] legal advice...related to patent prosecution and infringement analysis" the officer had received from outside counsel. *Id.* at *2 (internal quotation marks omitted). The court rejected this assertion because the presentation did not actually reveal any confidential communications and in fact appeared to discuss business strategy rather than legal advice. *Id.* Here, Universal appears to claim privilege over documents presented to some of its employees as instructions for sending takedown notices, presumably on the theory that those documents evolved from discussions with attorneys about the legal issues implicated by such notices. They may well have developed in that fashion, but the fact remains that unless every single guideline or policy or manual or list of instructions reveals confidential communications made in the course of such discussions or *provides* legal advice (not just instructions based on such advice), they are not *all* privileged.

2.     **Universal's policies are not work product because they do not reflect attorneys' trial preparation strategy.**

The work product doctrine protects trial preparation materials that reveal an attorney's strategy. Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

11

444030.08

1      Universal does not appear to claim work product protection for these documents, and

2    such a claim would fail anyway.  By their very nature, Universal's policies and guidelines for

3    issuing takedown notices are not such documents.  The drafters may, in the abstract, have

4    contemplated the possibility of eventual litigation concerning some of its takedown notices, but

5    Universal has offered no reason to think that the sort of guidelines Ms. Lenz has requested would

6    include trial strategy for any actual litigation.  What Ms. Lenz has requested are documents

7    reflecting general instructions to those tasked with performing whatever evaluation Universal

8    requires to determine what to include in its takedown notices (if it requires any evaluation at all).

9    Documents prepared in the ordinary course of business, such as these, are not protectible as work

10   product.  *See, e.g.*, *Miller v. Pancucci*, 141 F.R.D. 292, 303 (C.D. Cal. 1992) (overruling

11   objections because "[d]ocuments prepared in the regular course of business do not fall under

12   'work product' and thus are not immune from discovery.").  When, as here, "it is clear that

13   documents would have been prepared independent of any anticipation of use in litigation (i.e.,

14   because some other purpose or obligation was sufficient to cause them to be prepared), no work

15   product protection can attach."  *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574,

16   582 (N.D. Cal. 1995).

17      Yet again, these are documents relevant to Ms. Lenz's theory of the case that Universal

18   has improperly withheld.  As explained above, Ms. Lenz filed this suit because she believes

19   Universal does not assess videos it takes down in any manner sufficient to give rise to the good

20   faith belief of infringement that the DMCA requires.  Universal's policies would support her

21   belief if they make no mention of considering fair use before sending a takedown notice.  Ms.

22   Lenz is entitled to see what these policies say, or to an explanation of why they do not exist.

23   Universal refuses to provide either.

24   **D.    Documents relating to any licensing efforts for the "Let's Go Crazy" composition
           relate to the existence of any market for videos such as Ms. Lenz's and thus to the**

25   **question of whether her video is infringement or fair use.**

26      In addition, Universal has not produced any licenses for the allegedly infringed

27   composition, or even documents reflecting the nature of any license or attempt to license the

28   work.  Ms. Lenz requested these documents in RFP No. 14.  Kwun Decl. Exh. B.  These

12

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

1  documents, if they exist, bear on the nature and extent of actual and/or potential markets for the

2  Let's Go Crazy competition.  As such, they are relevant to the question of whether or not Ms.

3  Lenz's video is a fair use, and therefore not an infringement, of the copyright in that

4  composition.  *See* 17 U.S.C. § 107; *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S, 569, 577-78

5  (1994).

6         Universal has said that "no synchronization license specific to Let's Go Crazy has been

7  issued for film or television since January 1, 2005."  Kwun Decl. Exh. K.  This carefully phrased

8  assertion implies that there may well be licenses not falling within its narrowly circumscribed

9  limits—synchronization licenses including but not *specific* to Let's Go Crazy, perhaps, or maybe

10  even synchronization licenses specific to that composition issued *before* 2005.  And in any case,

11  Ms. Lenz asked for documents relating to *attempts* to license the composition as well as actual

12  licenses themselves.  Universal, though, has refused to tell Ms. Lenz whether it has such

13  documents to produce.

14         Ms. Lenz is, again, entitled either to these documents or to confirmation that there are

15  none.

16  **E.     Universal must produce agreements with YouTube that relate to the interaction**
        **between them with respect to allegations of infringement.**

17

18         Universal also has refused to confirm that it has produced each of its agreements with

19  YouTube that relate to alleged infringement of copyrights Universal administers.  There is at

   least one: YouTube produced an apparently incomplete version of a █████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

   █████████████  Kwun Decl. ¶ 22.  This agreement—like so many other documents Universal

24  refused to produce—is responsive to Ms. Lenz's requests (in this case, RFP No. 4).  Kwun Decl.

25  Exh. B.  In particular, ███████████████████████████████████████████

26  ████████████████████████████████████████████████████ Kwun

27  Decl. Exh. I.  Though Universal has now produced a similarly incomplete version of this

28

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

1   agreement (but only after Ms. Lenz pointed out its omission from Universal's own production), it

2   has refused to tell Ms. Lenz if there are any responsive agreements with YouTube that it has

3   withheld.  Kwun Decl. Exh. S at 2.

4          Universal failed to collect and produce this agreement in its initial production, and also

5   failed to collect and produce █████████████████████████████████████████

6   ████████████even when specifically looking for the agreement.  Taken in conjunction with

7   Universal's hesitance to confirm whether or not any *other* responsive agreements exist that have

8   not been produced, these failures suggest that its document collection did not capture all of the

9   documents in its possession to which Ms. Lenz is entitled and which could reasonably be

10  produced.

11  **F.      Universal must produce communications with third parties about Ms. Lenz and/or
          this lawsuit.**
12
13         Universal has not produced one single communication between it and a third party other

14  than YouTube about Ms. Lenz or her video, and has made no response when Ms. Lenz's counsel

15  drew this omission to its attention.  Kwun Decl. Exh. Q at pages 1-2, Exh. S.  This is yet another

16  wholesale failure to produce documents Ms. Lenz has requested in multiple requests for

17  production (RFPs Nos. 2 and 3, and also, tangentially, 1, 4, 5, 6, and 9).[3]  Universal's conduct in

18  this instance is particularly egregious because Universal is well aware of at least one such

19  document: the statement Peter Lofrumento issued to ABC News. Kwun Decl. Exs. I and J. This

20  statement bears on Universal's reasons for sending the takedown notice in question, and is

21  indisputably responsive to Ms. Lenz's requests and relevant to her case.  Further, Ms. Lenz has

22  called this particular statement to the attention of Ms. Lenz's counsel on several occasions,

23  including in paragraph 30 and Exhibit F of her Second Amended Complaint and her

24  Interrogatory No. 10. Kwun Decl. Exs. I and J.  Nevertheless, it appears that Universal either

25  deliberately withheld this statement, somehow managed not to notice its absence from its

26  document collection, or destroyed it after this litigation began while concealing that destruction

27  from Ms. Lenz.  All of these are inexcusable.

28  ───────────────
    [3] Perhaps the communications between Universal and Prince refer to Ms. Lenz or her video, but

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

**G.     Universal cannot accuse Ms. Lenz of infringing the "Let's Go Crazy" composition but refuse to produce it to her.**

Finally, Universal has refused either to produce the work it claims Ms. Lenz infringed or to tell Ms. Lenz that it does not have it in its possession, custody, or control.  Any person accused of infringing a copyright has the right to know exactly what he has supposedly done wrong.  *See generally Nimmer on Copyright* § 7.17[A] at 7-190.A (noting that the copyright deposit can "permit a determination of whether the work which the copyright owner claims to have been infringed is in fact the same work in which the copyright was originally claimed.").  Ms. Lenz is entitled to know what she is accused of infringing, and has served requests for production encompassing this work (in particular, RFPs Nos. 1, 2, 9, and 16).  Kwun Decl. Exh. B.

Universal claims that the copy of the "Let's Go Crazy" composition deposited with the Copyright Office does not "reasonably fall within the scope of any of Plaintiff's requests."  Kwun Decl. Exh. S at p. 3.  This is incorrect: the allegedly infringed work is related to this lawsuit (RFP No. 1), related to Ms. Lenz's video (RFP No. 2), and related to the amount of copyrighted material used in Ms. Lenz's video (RFP No. 16).  Kwun Decl. Exh. B.  In particular, Ms. Lenz has the right to know which of the three released versions of Let's Go Crazy corresponds to the copyrighted composition Universal claims she infringed.  *See* Kwun Decl. Exh. N.  These versions are of varying lengths (3 minutes and 46 seconds; 4 minutes and 39 seconds, and 7 minutes and 35 seconds), *id.*, and Ms. Lenz is entitled to know which is at issue so that she may evaluate "the amount and substantiality of the portion used" by her 29 second video "in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3).

Universal has also objected to Ms. Lenz's request on the ground that the Copyright Office deposit is "equally available to Plaintiff as [it is] to Defendants."  Kwun Decl. at ¶ 26.  This objection misses the point: Ms. Lenz asked Universal to produce the original work *if it has it*.  Kwun Decl. ¶ 26.  If Universal already has the original work in its possession, then it is *not* equally available to Ms. Lenz.  Ms. Lenz can obtain the deposit specimen only by applying to the

Universal's redactions make this impossible to determine.

15

1   Copyright Office and paying a fee, Kwun Decl. Exh. O at p. 4, which Universal would not have

2   to do.

### IV. CONCLUSION

4       For the foregoing reasons, the Court should grant Plaintiff Stephanie Lenz's Motion to

5   Compel and order Universal to produce the documents at issue and submit a declaration detailing

6   the nature of its supplemental efforts to find and produce responsive documents.

7   Dated: July 15, 2009                      KEKER & VAN NEST, LLP

By: _____*/s/ Melissa J. Miksch*_____
MELISSA J. MIKSCH
Attorneys for Plaintiff
STEPHANIE LENZ

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND BRIEF IN SUPPORT
CASE NO. C 07-03783-JF

444030.08