ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA 94110
Telephone:   (415) 436-9333
Facsimile:   (415) 436-9993
Email: fred@eff.org; kurt@eff.org
       corynne@eff.org

FOLGER LEVIN & KAHN LLP
MICHAEL F. KELLEHER
SUZANNE ELIZABETH RODE
275 Battery Street, Suite 2300
San Francisco, CA 94111
Telephone:   (415) 986-2800
Facsimile:   (415) 986-2827
Email: mkelleher@flk.com; srode@flk.com

KEKER & VAN NEST, LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN -#198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:   (415) 391-5400
Facsimile:   (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
Email: mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                     Plaintiff,<br><br>    v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                     Defendants. | Case No. C 07-03783-JF<br><br>**OPPOSITION TO UNIVERSAL'S MOTION TO COMPEL EVIDENCE OF DAMAGES**<br><br>Date:      August 5, 2009<br>Time:      9:30 a.m.<br>Courtroom: 4<br>Judge:     Hon. Richard G. Seeborg |

## I. INTRODUCTION

Ms. Lenz has produced documents evidencing her damages in this case, exclusive of her *pro bono* attorneys' fees and costs. That is all that Universal needs or is entitled to at this point in this litigation. As explained below, the remedy allowable under 17 U.S.C. § 512(f) is far more expansive than Universal suggests, and thus discovery regarding fees and costs awardable under section 512(f) would be highly burdensome and would improperly interfere with the attorney-client relationship between Ms. Lenz and her counsel. Universal's motion should be denied.

## II. BACKGROUND

By its motion, Universal seeks all documents that "relate to Ms. Lenz's contention of having suffered any damages as the result of YouTube's alleged reliance on Universal's notice." Mot. at 11:21-23. In its motion, Universal attempts to obscure the burden its requests pose by claiming the scope of damages available under the section 512(f) does not include litigation fees and costs (and, therefore Ms. Lenz need not produce—and redact—records reflecting such damages). Ms. Lenz vehemently disagrees. In fact, there are at least three key differences of opinion between the parties regarding the scope of the remedy provided by 17 U.S.C. § 512(f):

1) Whether "any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as the result of" reliance on a false take down notice (17 U.S.C. § 512(f)) includes fees and costs incurred during the litigation of the section 512(f) claim itself;

2) Whether the "costs and attorneys' fees" in section 512(f) include *pro bono* fees and costs; and

3) Whether the statutory remedy of "any" damages includes non-pecuniary losses, such as compensation for time spent responding to a false takedown notice.

Ms. Lenz contends that the answer to each of those questions is "yes," and that as a result Universal's efforts to force her to produce "all" non-privileged documents that relate to those damages is unreasonably burdensome and highly invasive of the attorney-client relationship.

Given the three as-yet unresolved purely legal disputes implicated by Universal's motion to compel, counsel for Ms. Lenz raised the issue with Judge Fogel at a case management

1

OPPOSITION TO UNIVERSAL'S MOTION TO COMPEL EVIDENCE OF DAMAGES
CASE NO. C 07-03783-JF

444824.03

1  conference last Friday. Kwun Decl. ¶ 4. Judge Fogel recognized the importance of these three
2  open issues, and without endorsing any particular position, suggested a number of possible
3  approaches, including the possibility of holding the present motion to compel in abeyance while
4  the parties briefed the legal issues to Judge Fogel. *Id.* ¶ 5

5    Moreover, at the case management conference, counsel for Universal stated that the
6  current motion does not seek any information about litigation fees and costs. *Id.* ¶ 6. Because the
7  motion purports to seek "all non-privileged documents" that relate to "Plaintiff's contention" that
8  she has been injured (Mot. at11:21-23), and because Ms. Lenz contends that those damages
9  include litigation fees and costs, Ms. Lenz's counsel raised the issue with Universal's counsel
10 after the case management conference. *Id.* The following Monday, Ms. Lenz's counsel made
11 the following proposal to Universal's counsel in an attempt to resolve the present dispute:

> (1)    Defendants will withdraw, without prejudice, their motion to compel evidence of damages.
>
> (2)    The parties will agree that there will be no discovery into litigation fees and costs at this time. If the Court rules that litigation fees and costs are included in the remedy for a section 512(f) violation, the parties will meet and confer about how best to address related discovery and trial issues.
>
> (3)    Plaintiff will provide a damages computation that includes a computation for claimed intangible harms to her that predate the filing of the lawsuit, and a computation for claimed pro bono fees and costs associated with the counter-notice process. This damages computation will, per the parties' agreement, reserve until a later time any computation for litigation fees and costs. Plaintiff will produce non-privileged documents, including attorney time records edited to remove any privileged information, regarding the claimed intangible harms and the fees and costs associated with the counter-notice process. Plaintiff will confirm that she is not seeking any damages pursuant to section 512(f) other than the listed damages and her litigation fees and costs.
>
> (4)    The parties will submit a stipulation to Judge Fogel clarifying that the fact discovery cutoff in the case management dates recently proposed does not apply to litigation fees and costs that Plaintiff contends are recoverable as part of the remedy set forth in section 512(f).
>
> (5)    This agreement would be without prejudice to either party's right to seek modification. By entering into the agreement, Defendants are not conceding and in fact continue to dispute that litigation fees and costs are recoverable as part of the remedy set forth in section 512(f). By entering into the agreement, Plaintiff is

> not conceding that litigation fees and costs are any less available as a remedy under 512(f) than are fees and costs incurred in connection with responding to a take down notice, and in fact Plaintiff continues to assert that litigation fees and costs in a 512(f) suit are recoverable as part of the section 512(f) remedy.

*Id.* ¶ 7 & Exh. A.

Universal rejected this proposal, stating, "If Plaintiff intends to claim that fees and costs provided pro bono by EFF, your firm, or others, count as actual 'damages' that Plaintiff 'incurred' 'as a result of' YouTube's temporary disabling of Plaintiff's Let's Go Crazy Video, then Universal must have the ability to obtain discovery of all non-privileged documents relating to that contention prior to deposing Plaintiff and/or other witnesses, preparing expert reports, evaluating and filing a summary judgment motion, and/or preparing for trial." *Id.* ¶ 8 & Exh. B. In light of this reaction, Ms. Lenz files this opposition based on the understanding that the motion to compel does seek production of documents relating to litigation fees and costs.

### III.     ARGUMENT

**A.     Ms. Lenz has supplemented her initial disclosures regarding damages.**

Ms. Lenz has served Universal with supplemental disclosures pursuant to Rule 26(a)(1)(A)(iii). Kwun Decl. ¶ 9 & Exh. C. Those disclosures include a computation for each category of claimed damages except her *pro bono* fees and costs. As to the categories for which a computation has been disclosed, Universal's motion to compel is moot. As to the remaining category of *pro bono* fees and costs, Universal's motion should be denied for the reasons stated below. *See* Part III.D, *infra*.

**B.     The remedy provided in 17 U.S.C. § 512(f) is expansive, and thus so too is the discovery Universal seeks.**

The statute at issue in this case, 17 U.S.C. § 512(f), provides for an expansive remedy. It provides that a defendant that knowingly and materially misrepresents in a DMCA takedown notice that material is infringing shall be liable for "any damages . . . incurred by the alleged infringer who is injured by such misrepresentation." 17 U.S.C. § 512(f). It also expressly includes "costs and attorneys' fees" within the remedy it provides. *Id.* Because the remedy is far broader than Universal suggests, the discovery it seeks is also far broader (and more

burdensome) than Universal claims.

### 1. Section 512(f) allows recovery of damages for any injury caused by the defendant's misrepresentation, including litigation fees and costs.

Universal, relying on mere *ipse dixit,* asserts that litigation fees and costs are not the "result" of its notice. Mot. at 7:22-8:6. Ms. Lenz initiated the current litigation because YouTube, relying on Universal's takedown notice, disabled access to her video for several weeks.  The notice is therefore the but-for cause of the litigation, which makes the litigation the "result of" the false takedown notice. *See Williams v. United States,* 503 U.S. 193, 203 (1992) (construing 18 U.S.C. § 3742 and concluding that, when a district court intends to depart from the guideline range, the sentence is nevertheless "imposed 'as a result of' a misapplication of the Guidelines if the sentence would have been different but for the district court's error"); *Maryland Cas. Co. v. Regis Ins. Co.,* 1997 WL 164268, at *4-*5 (E.D. Pa. Feb. 13, 2006) (construing "as a result of" clause in an insurance policy merely to require "but for" causation, because no higher level of causation was stated explicitly); *In re Suarez,* 400 B.R. 732, 741 (9th Cir. B.A.P. 2009) (Jury, J., concurring) (attorneys' fees and costs incurred by creditor were "'as a result of,' 'with respect to' and 'by reason of' debtor's violation of the injunction and court order," because "[b]ut for debtor's willful and malicious behavior, no attorneys fees and costs would have been incurred nor awarded by statute").

In any event, the statute does not limit damages to those that are "the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing . . . ." *Id.; see also* Mot. at 6:22-24 (emphasis added). Instead, that clause is part of the definition of who is a proper plaintiff.  The section 512(f) cause of action accrues to three types of plaintiffs: "the alleged infringer," "any copyright owner or copyright owner's authorized licensee," or "a service provider."  17 U.S.C. § 512(f).  Any of those three types of plaintiffs can bring a section 512(f) claim if they are "injured [1] by such misrepresentation, [2] as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or [3] in replacing the removed material or ceasing to disable access to it."  In this present case, Plaintiff

is an "alleged infringer" who was "injured by such misrepresentation."

### 2. Section 512(f) allows recovery of "any" damages, not merely damages for pecuniary harm.

Universal baldly asserts that Judge Fogel "recognized in the Order denying Universal's Motion to Dismiss [that] actual damages are a required element of a claim under 17 U.S.C. § 512(f)." Mot. at 6:20-21. While Judge Fogel did make reference in his order, in passing, to "actual" damages, nowhere did he hold that "actual" damages are necessary to support a section 512(f) claim or that by referring to "actual" damages he meant (as Universal assumes) to limit damages to pecuniary losses. Moreover, the statute itself does not refer to "actual" damages, but to "any" damages. 17 U.S.C. § 512(f). "Congress' choice of the language '*any* damage' . . . undercuts a narrow construction." *United States v. James,* 478 U.S. 597, 605 (1986), *abrogated on other grounds by Central Green Co. v. U.S.*, 531 U.S. 425, 436 (2001) (emphasis in original) (phrase "any damage" encompasses all possible damages, and is not limited to just property damage). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales,* 520 U.S. 1, 5 (1997)(quoting Webster's Third New International Dictionary 97 (1976)).

In the absence of any contrary ruling from Judge Fogel, this Court should decline Universal's invitation to assume that section 512(f) requires proof of a pecuniary loss.  While Universal suggests that this is the "ordinary" rule in fraud claims, the statute at issue in this case *expressly states* that its remedy includes "any" damages, while including no language suggesting that Congress intended to limit the remedy to pecuniary losses.[1]  Moreover, section 512(f) is much more closely analogous to other causes of action, such as malicious prosecution, where courts have long recognized a broad ranges of possible damages. *See e.g., Wong v. Earl C. Anthony, Inc.,* 199 Cal. 15, 18 (1926) (damages in a malicious prosecution case can include, among other things, compensation for lost time and deprivation of liberty); *Prentice v. North Am. Title Guaranty Corp., Alameda Division,* 59 Cal. 2d 618, 620 (1963) ("A person who through the

---

[1] Universal suggests that "the text of the statute makes clear" that a pecuniary loss is required (Mot. at 7:6-7), but fails to identify any supporting text..

tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred").

**C.      Ms. Lenz has produced documents demonstrating the damages she suffered while responding to Universal's accusations of infringement.**

Ms Lenz has produced documents showing that she spent time responding to Universal's takedown notice—indeed, Universal refers to some of these documents in their motion. *See* Mot. at 3:4-18. These documents also show that the video at issue in this case was unavailable on YouTube for several weeks. *See id.* While the parties obviously disagree whether these sorts of harm are within the scope of section 512(f), there is no dispute about these *facts,* including the fact that Ms. Lenz has produced such documents.

**D.      Discovery regarding Ms. Lenz's *pro bono* attorneys' fees and costs is inappropriate.**

**1.      *Pro bono* attorneys' fees and costs can be recovered as part of the remedy in 17 U.S.C.§ 512(f).**

Universal's motion proceeds under the tacit assumption that *pro bono* fees and costs cannot be recovered. *See* Mot. at 6:3-13 (discussing the *pro bono* nature of EFF's representation of Ms. Lenz, and then concluding, "It thus appears that Plaintiff incurred no actual fees or costs of any kind as a result of responding to Universal's notice to YouTube") (emphasis omitted). Universal offers no justification for its presumption that *pro bono* fees are not included in the section 512(f) remedy.

Courts have held that fee provisions even in remedies expressly limited to "actual" harm—which can only be narrower than section 512(f), which reaches "any" damages—include fees without regard to whether the party was obliged to pay money to counsel out of its pocket. For example, in *Gotro v. R&B Realty Group,* 69 F.3d 1485 (1995), the court rejected the argument that "payment of just costs and any actual expenses, including attorney fees, incurred as the result of " improper removal excludes contingent or *pro bono* fees. *Id.* at 1488 (interpreting 28 U.S.C.§ 1447(c)). Similarly, 11 U.S.C. § 362(k)(1) provides that the remedy for violation of the bankruptcy stay (11 U.S.C. § 362(h)), includes "actual damages, including costs and attorneys' fees." In *In re Dawson,* 346 B.R. 503 (Bankr. N.D. Cal. 2006), the court held that

this remedy allows recovery of fees regardless of whether the litigant is personally liable for them. *Id.* at 516-17; *see also Morrison v. C.I.R.*, 565 F.3d 658, 666 (9th Cir. 2009) (litigant "incurs" fees even if litigants does not pay, and only has "contingent obligation to pay the fees in the event that he is able to recover them."); *Ed A. Wilson, Inc. v. Gen. Serv. Admin.*, 126 F.3d 1406, 1409 (Cal. Fed. Cir. 1997) (attorneys' fees are "incurred" when a litigant "is represented by a legal services organization or counsel appearing pro bono.").

### 2. Universal is not entitled to discovery regarding fees and costs incurred by Ms. Lenz's *pro bono* counsel.

Although Universal seemingly intends to argue that section 512(f) is narrower than the provisions in *Gotro* and *Dawson,* it does not appear to dispute that Ms. Lenz was, in fact, assisted by counsel in connection with her response to the takedown notice, and that Ms. Lenz has been and is being advised in connection with the current litigation. Nowhere does it explain the urgency of determining at this point in the case *how much* time Ms. Lenz's *pro bono* attorneys spent and are continuing to spend on her behalf.

In the typical situation in which a party seeks fees and costs in litigation, the parties do not engage in pre-trial discovery over the amount of those fees and costs. Universal offers no reason why the Court should deviate from the ordinary course here.[2]  By contrast, there is ample reason not to deviate from that course, because the discovery Universal seeks would necessarily and unreasonably intrude upon the attorney-client relationship.

The importance of the privacy of that relationship has been long recognized. As the Supreme Court has held,

> it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

---

[2] In the interest of avoiding needless court hearings, Plaintiff has, as noted above, offered to produce limited time records regarding the counter-notice process. That voluntary proposal should not be read as a concession that Defendants are *entitled* to such information at this stage.

1  *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947).  Although *Hickman* concerned the work
2  product doctrine, the same principles support the exercise of caution before requiring trial
3  counsel to respond to onerous discovery seeking time records for ongoing litigation. Even
4  assuming privilege issues could be addressed by redacting or editing time records, the burden
5  and intrusion of such discovery is unwarranted.
6        Universal contends that producing redacted time records poses no burden to Ms. Lenz.
7  That is simply incorrect. Universal sent its takedown notice on June 4, 2007, and Ms. Lenz's first
8  contact with *pro bono* counsel occurred shortly thereafter. At issue, then, are time records for
9  over two years of legal advice.[3] Moreover, the litigation has included two motions to dismiss, a
10 motion to certify a decision for interlocutory appeal, and numerous discovery matters, including
11 several filed motions. And the litigation is still ongoing. The burden of reviewing all time
12 records to determine what narratives might require redaction would be enormous, and together
13 with the burden of supplementing that discovery (to reflect legal services provided thereafter)
14 would create an unprecedented intrusion into the relationship between Ms. Lenz and her counsel.
15 Finally, as is plain from Universal's other pending motion to compel, Universal might then argue
16 that information that was not redacted from those time records resulted in a waiver of privilege,
17 which might require further motion practice to resolve.

18 **E.   Denying Universal's motion will not affect its ability to seek summary judgment based on its damages theories.**
19
20       In an effort to explain why it needs this discovery, Universal suggests that the
21 information it seeks is critical to its summary judgment strategy. But Universal cannot
22 reasonably dispute in a motion for summary judgment that (a) Ms. Lenz spent time responding to
23 its takedown notice; and (b) *pro bono* counsel spent time has spent and is spending time advising
24 her in connection with responding to the notice and litigating the present suit. Instead, if
25 Universal wishes to argue in a motion for summary judgment that Ms. Lenz has no compensable

---

[3] In its motion, Universal claims that the issue of litigation fees is a "red herring." *See* Mot. at 8:7-12. But in support it merely repeats its claim that damages "as a result of" Universal's notice cannot include litigation fees and costs. Moreover, as noted above, Universal has subsequently made clear that it is, in fact, seeking documents regarding litigation fees and costs. *See* Part II, *supra.* Thus, the issue of litigation fees and costs is anything but a red herring.

1  damages, it must base that motion on *legal* arguments over what types of harm are compensable
2  under section 512(f). Those arguments in no way depend on the discovery sought by way of the
3  present motion.
4      Universal's claim that it needs discovery regarding litigation fees and costs prior to
5  taking Ms. Lenz's deposition also lacks merit. It is hard to imagine what questions Universal
6  would want or need to ask Ms. Lenz based on her counsel's time records. If Universal's position
7  were true, one would expect parties routinely to seek depositions of opposing parties as part of
8  the process of opposing motions for attorneys' fees, but of course that sort of discovery simply
9  does not happen. Universal's claim that information regarding litigation fees and costs will
10 somehow be needed for expert discovery, or for preparation for trial, is similarly specious.

### IV.   Conclusion

Granting Universal's motion would accomplish little except to countenance an "unnecessary intrusion by opposing parties and their counsel" into the attorney-client relationship between Ms. Lenz and her counsel. *See Hickman,* 329 U.S. at 510-11. For the foregoing reasons, Universal's motion to compel evidence of damages should be denied.

Dated: July 15, 2009                             KEKER & VAN NEST, LLP


By:  __/s/ Michael S. Kwun____[4]
    ASHOK RAMANI
    MICHAEL S. KWUN
    MELISSA J. MIKSCH
    Attorneys for Plaintiff
    STEPHANIE LENZ

---

[4] Electronically signed by Melissa J. Miksch, counsel for Plaintiff, with the concurrence of Michael S. Kwun.  N.D. Cal. G.O. 45 ¶ X.B.