KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.
and UNIVERSAL MUSIC PUBLISHING
GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEPHANIE LENZ,

Plaintiff,

vs.

UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,

Defendants.

CASE NO. CV-07-03783-JF (RS)

**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Date: August 19, 2009
Time: 9:30 a.m.
Judge: Hon. Richard G. Seeborg
Courtroom: 4

[Declarations of Kelly M. Klaus, Ed Arrow, Peter Lofrumento and Robert E. Allen filed concurrently]

**PUBLIC REDACTED VERSION**

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ........ 1

II. PROCEDURAL BACKGROUND ........ 2

A. Plaintiff's Single Claim For Relief ........ 2

B. Universal's Document Collection And The Parties' Meet-and-Confer Discussions ........ 3

1. Universal Conducted A Diligent Review For Potentially Relevant Documents — And Was Clear To Plaintiff About What It Was Doing ........ 3

2. Universal Has Not Delayed Producing Documents, Or Communicating With Plaintiff In the Meet-And-Confer ........ 5

III. ARGUMENT ........ 6

A. Universal's Objections and Responses to Plaintiff's Document Requests Have Been Appropriately Tailored to the Claims and Defenses at Issue in this Case ........ 6

1. Plaintiff's Complaints About Universal's General Date Cut-Off Are Meritless ........ 7

2. There Is No Reason For Universal To Expand Its List Of Custodians ........ 10

B. Communications Between Prince and Universal Counsel, Seeking Legal Advice and/or Enforcement of Prince's Legal Rights, Are Privileged ........ 11

C. Universal Has Adequately Responded to Plaintiff's Requests Regarding Licensing Efforts for "Let's Go Crazy" ........ 12

D. Plaintiff Manufactures a Number of Disputes Where There Is None ........ 14

1. Universal Has No Written Policy Regarding the Sending of Notices of Infringement ........ 14

2. Plaintiff's Complaints About the Production of the YouTube Agreement Are Imaginary ........ 15

3. Universal Has Searched for Documents Regarding The Statement To ABC News ........ 15

4. Universal Does Not Need to Produce Copies of the "Let's Go Crazy" Composition That Are Not In Their Possession, Custody or Control ........ 16

IV. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Advanced Tech. Assoc., Inc. v. Herley Indus., Inc.*, 1996 WL 711018 (E.D. Pa. Dec. 5, 1996) ........ 11

*Benedict v. Amaducci*, 1995 WL 23555 (S.D.N.Y. Jan. 20, 1995) ........ 11

*Hendrick v. Avis Rent A Car Sys., Inc.*, 944 F. Supp. 187 (W.D.N.Y. 1996) ........ 11

*Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522 (9th Cir. 2008) ........ 13

*Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004) ........ 1, 3, 7

*Tennenbaum v. Deloitte & Touche*, 77 F.3d 337 (9th Cir. 1996) ........ 11

**FEDERAL STATUTES**

17 U.S.C. 107 ........ 13

17 U.S.C. § 512(f) ........ passim

Copyright Act, 17 U.S.C. § 115 ........ 13

**STATE RULES**

R. Evid. Rule 503 ........ 11

**TREATISES**

97 Corpus Jurus Secundum Witnesses § 280 ........ 12

98 Corpus Jurus Secundum Witnesses § 317 (2002) ........ 12

*Nimmer on Copyright* § 7.17[A] at 7-190.A ........ 16

## I. INTRODUCTION

This lawsuit involves a single claim for relief concerning the Defendants' ("Universal's") actual, subjective knowledge concerning one video posted to YouTube as of June 4, 2007 — the date that Universal sent YouTube the notice at issue in the case. There are no other issues in the case, nor could there be. Plaintiff admits as much on the first page of her motion, asserting that the "central question" for her claim is "[w]hat Universal actually thought (if it thought at all) about the nature of Ms. Lenz's video *when it decided to send its takedown notice*[,]" *i.e.*, Universal's knowledge *about* Plaintiff's video *on June 4, 2007*. Mot. at 1:16-17 (emphasis added). Plaintiff *has to* admit this, because Ninth Circuit law is crystal clear that 17 U.S.C. § 512(f) imposes liability only for *actual*, *subjective knowledge* of a misrepresentation — not knowledge cobbled together from some standard of what is (or is not) objectively reasonable behavior. *Rossi v. MPAA*, 391 F.3d 1000, 1004 (9th Cir. 2004). What is more, Plaintiff *herself* has explicitly relied on the extremely limited nature of the inquiry relevant to her claim in refusing to provide discovery concerning numerous other postings she has made on YouTube and elsewhere on the Internet. Declaration of Kelly M. Klaus ("Klaus Decl."), Exh. A at 5:22-24 ("Lenz's communications with YouTube that do not relate to the Holden video or this lawsuit are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."), 6:8-9 ("Lenz's activities with regard to videos other than the Holden video is not at issue in this case").

Notwithstanding the limited nature of information that is relevant to Plaintiff's case, the instant motion seeks to expand discovery far beyond the scope of any information that is conceivably relevant to that case. With little more than a month remaining in fact discovery, Plaintiff seeks to have Universal search at least an additional nine months' worth of documents, all for information that concerns numerous *other videos* posted by *other people* to YouTube. In other words, Plaintiff seeks to compel Universal to search for and produce the same category of documents that Plaintiff herself has refused to produce. Thus, what is now clear is that Plaintiff is proposing two different standards of discovery — one for her and one for Universal.

Plaintiff is also asking the Court to compel Universal to produce documents that Universal has already made clear do not exist. For example, Plaintiff has pointed to a statement made by Universal to ABC News in response to Plaintiff's and her lawyers' self-described "[REDACTED]" concerning this lawsuit, and asked for production of that statement. Klaus Decl., Exh. B (P-E_002685). However, as Plaintiff knows, that statement was made by Peter Lofrumento and was made *orally*, *not in writing*. Declaration of Peter Lofrumento ("Lofrumento Decl.") ¶ 3. As such, there could be no responsive document. Nevertheless, in a strained effort to try and distort the record, Plaintiff states in her motion:

> Universal's conduct … is particularly egregious because Universal is well aware of at least one such *document*: the statement Peter Lofrumento *issued* to ABC News.

Mot. at 14:16-18. The only document to which Plaintiff could be referring is a privileged email chain that is on Universal's privilege log and which Plaintiff does not contest is privileged. It is not clear how a clearly privileged document is evidence that a statement made orally was actually made in writing.

Plaintiff's eleventh-hour request to greatly expand discovery in this case is transparent in its attempt to impose substantial additional burdens on Universal with little more than a month remaining in fact discovery. Plaintiff's motion should be denied in its entirety.

## II. PROCEDURAL BACKGROUND

### A. Plaintiff's Single Claim For Relief

As the Court knows, this case arises from Plaintiff's February 2007 posting to YouTube of a video entitled "Let's Go Crazy #1." On June 4, 2007, Universal sent YouTube a notice concerning links to more than 200 video postings (including Plaintiff's) that made unauthorized use of musical compositions written in whole or in part by Prince. Second Am. Compl. (Doc. No. 34) ("SAC") Exh. A. Plaintiff only claim is that Universal violated 17 U.S.C. § 512(f) by *knowingly*, materially misrepresenting that it had a good-faith belief that Plaintiff's admitted use of "Let's Go Crazy" in her YouTube posting incorporating the same name was "not authorized by the copyright owner, its agent, or the law." As discussed in the Introduction, *supra*, liability

under § 512(f) requires the Plaintiff to prove that Universal *actually, subjectively knew* it was making a material misrepresentation concerning Plaintiff's posting. *Rossi*, 391 F.3d at 1004. In an effort to try to satisfy *Rossi*, Plaintiff alleged "[o]n information and belief" that "Prince himself demanded that Universal seek the removal of" the "Let's Go Crazy" video, and that Universal "had actual subjective knowledge of the contents of the [video] and that it did not infringe any Universal copyrights on the date they sent YouTube the takedown notice regarding the [video]." SAC ¶¶ 31, 35.

### B. Universal's Document Collection And The Parties' Meet-and-Confer Discussions

Plaintiff's accuses Universal of having created an impenetrable fog of obfuscation and delay around its collection and review of documents, and its meet-and-confer discussions with Plaintiff. Both allegations are false, and the facts demonstrating why they are false illuminate why Plaintiff's Motion is meritless.

#### 1. Universal Conducted A Diligent Review For Potentially Relevant Documents — And Was Clear To Plaintiff About What It Was Doing

The pleadings in this case were not finalized until the District Court's rulings denying Universal's motion to dismiss the Second Amended Complaint (the Court had dismissed Plaintiff's prior complaint) and Universal's motion to certify that order for interlocutory appeal, which were issued October 28, 2008. *See* Doc. No. 53. The parties exchanged written discovery requests between September 30 and mid-December of last year.

Universal's counsel has worked with its client to determine which Universal custodians were likely to have documents relevant to this matter. Klaus Decl. ¶ 2. As a result of those inquiries, counsel identified three individuals who were most likely to have relevant, potentially responsive information. These people are Robert Allen, Universal's Vice President of Business Affairs, and the person at Universal with primary responsibility for communicating with Prince and his representatives regarding Universal's administration of Prince's rights in his compositions; Alina Moffatt, an attorney who works for Mr. Allen, and who sent the June 4, 2007

notice to YouTube; and Sean Johnson, who also works for Mr. Allen, and who was involved in preparing the notice. *Id.*; *see also* Declaration of Robert E. Allen ("Allen Decl.") ¶¶ 1-4.

Universal's counsel obtained documents (including the electronic files) of all three of these custodians. Klaus Decl. ¶ 3. Universal's counsel also collected various hard copy documents as were relevant to this matter and responsive to a number of Plaintiff's requests. *Id.* ¶ 4. In searching the electronic documents, Universal's counsel worked with an in-house information-technology specialist at Universal to conduct text-based searches on the custodians' electronic documents. These search-terms included, among others, the search terms "Lenz," the known email addresses for Prince and his representatives, and "YouTube" in close proximity to "take down" or "takedown." *Id.* ¶ 3. The search for electronic documents ultimately yielded a data set of approximately 4,100 documents. *Id.* Universal's outside counsel reviewed these documents, identified responsive documents, reserved privileged documents, and produced the non-privileged, responsive documents to Plaintiff. *Id.*

Much of Plaintiff's Motion is premised on the idea that Universal has tried to hide the ball about its search and collection efforts. *Se, e.g.*, Mot. at 8:2 ("Lenz is therefore entitled to know what measures Universal is taking to address the issue."). That is a fiction. Universal's counsel explained to Plaintiff's counsel in meet-and-confer discussions that took place *last February*:

- Which custodians counsel was collecting electronic documents from (Allen, Moffat and Johnson), and why they were selected;
- The fact that Universal was running text-based searches on the custodians' electronic files for potentially responsive documents; and
- The fact that Universal was applying a general cut-off date for searching for documents as of the date of the filing of Plaintiff's complaint, July 24, 2007. This last point was not news to Plaintiff, even in February, since *Universal told Plaintiff on November 3, 2008, that it would not conduct a general search for documents post-dating the complaint.*

Klaus Decl. ¶¶ 5-6; Kwun Decl., Exh. C at 2 ¶ 6 (Universal's General Objections).

Universal has made clear its willingness to do targeted searches for post-July 24, 2007 documents, but Plaintiff to date has provided only one example of such documents that could potentially be relevant (namely, the October 2007 statement to ABC News). Klaus Decl. ¶ 6.

**2. Universal Has Not Delayed Producing Documents, Or Communicating With Plaintiff In the Meet-And-Confer**

The other half of the picture that Plaintiff and her counsel try to paint — that Universal engaged in foot-dragging and delay in producing documents and meeting and conferring — also is false. In the first place, Plaintiff neglects to state that she herself did not produce a single electronic document to Universal until April 15, 2009 — nine days *after* Universal's first electronic production. *See* Klaus Decl., Exh. C; Mot. at 3:3-5. Before that point, Plaintiff had mailed to Universal's counsel a small stack of printouts from publicly available websites (including Plaintiff's own website), and a few copies of Plaintiff's emails. Klaus Decl. ¶ 11 & Exh. C. Plaintiff's production trickled in throughout April, May and June. *See id.*, ¶ 12 & Exh. D.

Plaintiff also insinuates that Universal used the parties' dispute about the protective order as a pretext for avoiding the production of documents. Mot. at 3. That, too, is untrue, and is based on a selective and misleading recitation of the facts. As the Court will recall, *Plaintiff* insisted upon a protective order that would have given Plaintiff — a non-lawyer — access to material designated as "Attorneys' Eyes Only." *See* Plaintiff's Motion for Entry of a Protective Order, Doc. No. 60 at 4:15-6:23. Universal actually told Plaintiff's counsel that it would start producing confidential and highly confidential documents if Plaintiff would stipulate to the agreed-upon form of protective order (based on the Northern District form), with Plaintiff reserving the right to seek to modify the order. *See* Defendants' Opposition to Motion for Entry of a Protective Order, Doc. No. 66 at 1:5-12. Plaintiff, however, refused Universal's offer; brought a motion for entry of a protective order before this Court seeking to justify an individual plaintiff as a proper recipient as "Attorneys' Eyes Only" information; and lost. *See id.*; Order Re: Protective Order Dispute, Doc. No. 71. Plaintiff and her lawyers have no one but themselves to blame for any delay occasioned by their meritless motion for a protective order.

Finally, Plaintiff suggests that there was foot-dragging in Universal's response to her cascade of letters and emails between June 10 and 25, 2009. Mot. at 3:10-15. This charge is unfounded and lacks candor. As Plaintiff's counsel well knows — because the undersigned had told them (before and after the fact) — Universal's counsel was out of the office and on vacation between June 17 and 29. Klaus Decl. ¶ 8; *see also* Kwun Decl., Exh. S at 1. The suggestion by Plaintiff's counsel that they were somehow disadvantaged in their ability to file this motion to compel until Universal's counsel sent them a response letter upon his return, on June 30, Mot. at 3:12-14, is baseless. As recounted above, Plaintiffs have been aware since at least *February 2009* (and, in the case of Universal's search-date cut-off, since *November 2008*) of the matters they are complaining about. And, what is more, after receiving counsel's letter of June 30, 2009, Plaintiff waited *more than two weeks* before filing the instant motion.[1]

## III. ARGUMENT

### A. Universal's Objections and Responses to Plaintiff's Document Requests Have Been Appropriately Tailored to the Claims and Defenses at Issue in this Case

It appears that Plaintiff's lead argument — Section III(A) — makes two specific requests: *First*, Plaintiff appears to want Universal to expand the cut-off date for its general search for responsive documents beyond the filing of the original complaint (July 24, 2007), at least through the date of her Second Amended Complaint (April 18, 2008). Mot. at 6:19-20. *Second*, Plaintiff asserts that Universal's custodian list is inadequate. *Id*. at 7:26-27. Both of these contentions are meritless.

#### 1. Plaintiff's Complaints About Universal's General Date Cut-Off Are Meritless

##### a. Documents That Post-Date The Complaint In This Action, In General, Are Highly Unlikely To Be Relevant

Discovery must be relevant to the allegations at hand. As Plaintiff alleged in her complaint and in her motion, the "central question" for her case is "[w]hat Universal actually

[1] It appears that the delay in Plaintiff filing her own motion was not caused by waiting for a letter from Plaintiff's counsel, but from the fact (omitted in Mr. Kwun's selective recitation of the procedural background) that Plaintiff's lead lawyer at Keker & VanNest was *himself* out of the country and on vacation during late June and early July. Klaus Decl. ¶ 8.

thought (if it thought at all) about the nature of Ms. Lenz's video *when it decided to send its takedown notice*[.]" Mot. at 1:16-18 (emphasis added). *See also* SAC ¶¶ 31, 35. Plaintiff has to focus her allegations on Universal's subjective state of mind *regarding her video* at *the time Universal sent the notice*, because § 512(f) imposes liability solely for misrepresentations made with subjective knowledge they are false, not for statements that someone later contends were objectively unreasonable:

> A copyright owner cannot be liable simply because an unknowing mistake is made, *even if the copyright owner acted unreasonably in making the mistake*. Rather, *there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner*.

*Rossi*, 391 F.3d at 1005 (emphasis added).

Actions and communications with YouTube that not only post-date Universal's challenged decision but *post-date this lawsuit itself* and have nothing to do with Plaintiff or her video have no conceivable relevance to Universal's "actual knowledge" at the time of sending the challenged notice of infringement, Mot. at 1:16. Plaintiff herself strains to explain the actual or potential relevance of the handful of post-lawsuit emails that she obtained from YouTube. *See* Kwun Decl., Exhs. D & E. Plaintiff asserts that the emails "illuminate[] Universal's motivations for and practices with respect to sending takedown notices[.]" Mot. 7:6-7. In fact, there is much less here than meets the eye. In one email, Robert Allen [REDACTED]. *See* Mot. at 5:7-11; Kwun Decl., Exh. E. While citing this passage, Plaintiff provides no explanation of its relevance to the "Let's Go Crazy" video, to Universal's knowledge regarding that video on June 4, 2007, or to any other topic of relevance. Indeed, Plaintiff has already received the *very* Agreement [REDACTED] *See* Mot. at 13:26-28. Likewise, in the another email cited by Plaintiff, Mr. Allen states [REDACTED] *Id.* at 5:10-11; Kwun Decl., Exh. D. Again, Plaintiff provides no explanation of the relevance of this statement, made over five months *after* Universal sent the notice regarding Lenz' video. The statement reveals nothing about Universal's knowledge of an unrelated video

(Plaintiff's) in the past. Plaintiff's contention is that, even though these emails have nothing to do with Plaintiff or her video, she thinks they will tend to show what Universal should *"reasonably have concluded"* about her video in light of some sort of "fair use" analysis. Mot. at 1:9-10 (emphasis added). Try as Plaintiff might to ignore the clear holding of *Rossi*, however, what Universal should "reasonably have concluded" is irrelevant and never will be relevant. Expanding the scope of Universal's general search beyond the date of filing of Plaintiff's Complaint is improper because it contradicts the legal standards that must guide this case. A case cabined by the law is not made broader simply because Plaintiff disagrees with the law.

At bottom, Plaintiff's real complaint in this Motion appears to reflect her disappointment that Universal has not spent nearly as much time talking about her as she spends haranguing against Universal and Prince. Plaintiff fulminates that she has produced more pages of documents than Universal, but of course, this reflects the fact (recounted in Plaintiff's own documents) that she and her lawyers always viewed this case principally as an opportunity to go on a "[REDACTED]" about take-down notices. Klaus Decl., Exh. B. It is small wonder, then, that of the documents produced by Plaintiff, the lion's share are her emails and other communications with reporters talking about this case. On the other hand, as recounted by Mr. Allen in his declaration — and contrary to Plaintiff's "information and belief" allegation in her complaint, SAC ¶ 31 — neither Prince nor any of his representatives contacted Universal about Plaintiff's video before Universal sent the notice on June 4, 2007. Allen Decl. ¶ 9. What this means is that, even on Plaintiff's own (erroneous) theory that Universal's knowledge regarding other people's video postings is relevant to what it knew about her posting, Universal's search through the date of the complaint (as well as YouTube's production) already has given Plaintiff a substantial amount of discovery into this irrelevant issue. She is not entitled to more.[2]

[2] The only allegation in Plaintiff's Second Amended Complaint that relates in any way to Universal's post-filing conduct is that relating to an October 2007 statement to ABC News. SAC ¶ 30 ("On or around October 26, 2007, Defendants released the following statement to ABC News . . . ."). What Plaintiff completely misrepresents — but Universal has made clear — is that Universal agreed collect documents from the person who made the statement, Mr. Lofrumento, and to produce non-privileged communications, if any, regarding the statement. Universal's privilege log accordingly reflects an e-mail chain on October 24, 2007, regarding the statement in this allegation. See Kwun Decl., Exh. L at 13 (PRIV-000103, reflecting email chain from October 24, 2007, regarding "communications with ABC News regarding *Lenz* litigation."). It

**b. Plaintiff's Request To Expand The Time-Frame Of Universal's Search Is Unduly Burdensome and Unjustified**

On the other side of the balance, Plaintiff's request for an additional nine months (at least) of documents for counsel to review would impose substantial and unjustified burdens on Universal. For Universal now to go back, even just to the custodians it has already identified, conduct new electronic searches, and review all of the "hits," would entail the review of approximately 1,490 additional documents. Klaus Decl. ¶ 7.

This burden would not be justified if this Motion had been filed back in February or March of this year, following the parties' discussion about it. But the request is particularly unjustified coming, as it does, *five months after* this issue surfaced, and with a fact discovery cut-off of September 24, 2009. Indeed, the fact that Plaintiff's proposed order would give Universal just *ten calendar days* to complete this burdensome additional review, *see* Plaintiff's Proposed Order, Doc. No. 99, at 1, only underscores the impropriety and inequity of Plaintiff's delay.

This burden is particularly unjustified where Plaintiff has YouTube's production. Though she hypothesizes that YouTube may not have conducted a search "as complete as Universal's should be," Mot. at 5:17, she misses the point: YouTube clearly obtained all of the emails cited by Plaintiff, which do not come anywhere close to indicating that a further search on Universal's part will yield more relevant information.

**2. There Is No Reason For Universal To Expand Its List Of Custodians**

Plaintiff also fails to substantiate her charge that the custodians whose documents used for its general collection — Allen, Moffat and Johnson — are inadequate. First, it is important to be very clear that we are talking about the custodians for Universal's *general* search: these are the people whose electronic files have been collected, and against which search terms were run and those documents reviewed for documents responsive to the mass of Plaintiff's requests about contacts with Prince and YouTube. Universal has always been willing to discuss doing targeted

---

has been clear that there was no written statement to ABC News, a point expressly confirmed in Mr. Lofrumento's declaration. *See* Lofrumento Decl. ¶ 3.

custodian searches, if and when Plaintiff could articulate grounds for a specific search (as in the case of Mr. Lofrumento, and his conversation with ABC News).

Second, Universal's selection of these custodians has been based on sound reasons, which have been fully communicated to Plaintiff's counsel. Since last February, Universal's counsel has told Plaintiff's counsel that, to the extent there are communications regarding Prince and his music being used on YouTube, it is extremely likely that such documents would have been copied to Mr. Allen, who has primary responsibility for the Prince relationship at Universal. Klaus Decl. ¶ 5; Allen Decl. ¶ 4 (pointing out that the general practice of Ms. Moffat, Mr. Johnson, and Raul Gonzalez, an attorney who no longer works at Universal, is (and has been) to copy Mr. Allen on Prince-related communications).

Plaintiff now asserts that Universal's representation that "collecting documents from more than [these] custodians would simply be duplicative . . . it turns out, appears to be untrue[.]" Mot. at 7:27-28. In fact, this charge is completely unsubstantiated. Plaintiff cites exactly two sets of emails, one, a set of emails from Robert Allen (Kwun Decl., Exhs. D & E), and the other, emails to Mr. Gonzalez (Kwun Decl., Ex. F). What Plaintiff omits to tell the Court is that Mr. Allen — one of Universal's custodians — *is present (either as a source or a cc:) on every one of these emails*. That explains why all of the emails in Exhibit F (which predate July 24, 2007) *were produced by Universal*. Far from suggesting the inadequacy of Universal's custodian list, Plaintiff's "evidence" *confirms* the propriety of Universal's custodian list.

**B. Communications Between Prince and Universal Counsel, Seeking Legal Advice and/or Enforcement of Prince's Legal Rights, Are Privileged**

Universal has properly withheld or redacted several communications between Prince (or his agents, Ruth Arzate and Kathy Adams, herein collectively referred to as "Prince") and Universal counsel, in which Prince requests enforcement of his copyrights administered by Universal. Despite the undeniably legal nature of these requests, their communication to an attorney acting as Prince's attorney-in-fact for enforcement purposes pursuant to Prince's agreement with Universal, and the confidential character of these communications, Plaintiff

claims that they are not subject to attorney-client privilege. Plaintiff has little support for this assertion.

Plaintiff's motion is thus directed at not only privileged but *irrelevant* communications, dealing with videos other than that at issue in this litigation. And these communications, sent by Prince to Universal in the course of seeking enforcement advice, are clearly privileged. Communications between a principal and agents whose participation is necessary to the institution or investigation of legal action are privileged under the law. *See* Proposed R. Evid. 503(b) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the provision of professional legal services to the client . . . . (4) between representatives of the client or between the client and a representative of the client . . ."); *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996). Likewise, confidential communications between a client and his agent, made for purposes of obtaining legal services from a lawyer, are privileged. *Benedict v. Amaducci*, 1995 WL 23555, at *1 (S.D.N.Y. Jan. 20, 1995) (finding communications with party and agent "protected by the attorney-client privilege if 'the communication [was] made in confidence for the purpose of obtaining legal advice from [a] lawyer.'") (citation omitted); *Advanced Tech. Assoc., Inc. v. Herley Indus., Inc.*, 1996 WL 711018, at *5, *8 (E.D. Pa. Dec. 5, 1996); *Hendrick v. Avis Rent A Car Sys., Inc.*, 944 F. Supp. 187, 189 (W.D.N.Y. 1996) ("communications to any person whose intervention is necessary to secure and facilitate the communication between an attorney and client are privileged").

Under the terms of the Agreement between Universal and Prince, [REDACTED] *See* Klaus Decl., Exh. E § 9;[3] *see also id.* at § 4. Universal obviously is both an agent

[3] The operative Agreement between Prince and Universal is a 2005 Administration Agreement, attached hereto as Exhibit E to the Klaus Declaration. Universal originally inadvertently produced an out-of-date agreement (dated 1983), which is the agreement that Plaintiff cites and attaches as Exhibit M to the Kwun Declaration. We note that Plaintiff's counsel *never* raised their concerns about the territorial scope of the 1983 agreement (or anything else about it) during the more than two weeks after Universal produced that agreement and the filing of their motion. Klaus Decl. ¶ 13. Had they done so, of course, the original error would have been corrected much more quickly.

and a *necessary intermediary* relating to the provision of legal services related to the enforcement of his copyrights. *Id.* Thus, the communications are privileged.

Plaintiff cites minimal support for her arguments to the contrary, relying on just a single case regarding "information learned from other sources." *See* Mot. at 9:16-17. But, as is reflected in Universal's redacted communications themselves, Universal has *not* claimed privilege over third-party communications or information forwarded to Prince. *See* Kwun Decl., Exh. G (reflecting numerous redacted communications). As reflected in Universal's privilege log, the communications over which privilege has been claimed universally relate to requests for enforcement. *See* Kwun Decl., Exh. L (various). Plaintiff's citation to *Corpus Jurus Secundum*, on the topic of "Admissibility of Instruments," is particularly baffling. 97 CJS Witnesses § 280 (cited at Mot. at 9:5) (discussing admissibility of instruments in writing between a witness and a deceased person). The applicable section of this treatise supports Universal's privilege claim. *See* 98 CJS Witnesses § 317 (2002) ("The attorney-client privilege has been said to cover only communications between a client and his or her attorney, *and the client's communications made through necessary intermediaries and agents* . . .") (emphasis added). Plaintiff's objections to Universal's privilege assertions are without merit.

**C. Universal Has Adequately Responded to Plaintiff's Requests Regarding Licensing Efforts for "Let's Go Crazy"**

Plaintiff's discovery requests called for production of documents relating to harm to any "actual or potential licensing market" for "Let's Go Crazy," *see* Kwun Decl., Exh. B, at 6:3-5, as well as a description of any effect of Plaintiff's video on the "actual market" or "potential market" of "Let's Go Crazy," *see id.*, Exh. K, at 8:3-7, 24-28. These requests, which track the language of the affirmative defense of "fair use" under the Copyright Act, seek irrelevant information. *See id*; Exh. K at 8:8-23, 9:1-16. *This is not an infringement case*, and therefore there is no fair use defense. *See* 17 U.S.C. 107. Indeed, Plaintiff's initial declaratory-judgment action seeking a finding of non-infringement was dismissed with prejudice by the Court over a year ago. *See* Doc. No. 32.

But despite this lack of relevance, and in pursuit of resolution of the issue, Universal provided Plaintiff with a supplemental response providing exactly the information requested by Plaintiff's Interrogatory No. 7, describing "all licenses pertaining to the purportedly infringed work . . . ." Kwun Decl., Exh. K, at 10:11-15. Plaintiff now baselessly argues that this answer was artificially limited in time and scope; these allegations are false.

***Plaintiff's own interrogatories limited the relevant time period to January 1, 2005, to the present.*** Plaintiff suggests that Universal's limitation of its response to licenses issued January 1, 2005 to the present was designed to be evasive. That is disingenuous. *The time limitation complied with the explicit instructions in Plaintiff's First Set of Interrogatories*, which indicated: "Unless otherwise indicated, these Interrogatories pertain to the time period from January 1, 2005, through the date of YOUR responses." Klaus Decl., Exh. F, at 3:26-27. Universal responded according to Plaintiff's own directions.

***Universal endeavored to identify all licenses within the "potential market," as defined by Universal in response to Plaintiff's other discovery requests.*** Likewise, Plaintiff's complaint about limitation of Universal's answer to synchronization licenses for films and music videos is without merit. In general, there are dominant types of licenses for musical compositions: (1) for use with sound recordings on a phonorecord — a so-called "mechanical license," the rates for which are the subject of a compulsory license regime set forth in the Copyright Act, 17 U.S.C. § 115; and (2) for use in timed relation to audio-visual works — a "synchronization license." *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 526-27 (9th Cir. 2008). Universal identified the market for synchronization licenses as the "potential market" with which uses like Ms. Lenz's, if allowed on a widespread and unchecked scale, could interfere. *See* Klaus Decl., Exh. G, at 10:8-19 (identifying the "potential market" for "Let's Go Crazy" as: "the market for synchronization of that work with sound recordings and with the content of audiovisual works, including as incorporated into films and music videos.").

Accordingly, it has been entirely proper for Universal to limit its responses not only to the time period called for in the requests (January 1, 2005 to the present), but also to licenses for the synchronization of the composition with visual images. Since the date of Universal's previous

responses, Universal has identified one license that specifically licensed "Let's Go Crazy" for synchronization with audio-visual images. Universal will serve a supplemental response and produce that license shortly. Klaus Decl. ¶ 16.

Plaintiff also suggests there is something nefarious about Universal indicating which licenses have specifically concerned "Let's Go Crazy." Mot. at 13:9. There is not. Universal sometimes enters into agreements with third parties entailing catalogue-wide licensing. Such catalogue-wide licenses have no conceivable relevance to this case, since what is at issue here is solely the "Let's Go Crazy" composition.

**D. Plaintiff Manufactures a Number of Disputes Where There Is None**

Finally, Plaintiff's Motion asks the Court to resolve a number of phantom discovery disputes: where documents either have been produced, do not exist, or are not within Universal's possession, custody or control. Universal has attempted, numerous times, to respond to Plaintiff's requests on these issues. Plaintiff's continued pressing of the issue is baffling.

**1. Universal Has No Written Policy Regarding the Sending of Notices of Infringement**

Plaintiff strains, in her motion, to accuse Universal of falsely claiming privilege over written policies regarding the sending of take-down notices. As Plaintiff herself recognizes, however: "Not one entry in Universal's privilege log . . . appears to correspond to a policy or procedure" for sending notices of infringement. Mot. 10:8-9. Indeed, that is exactly the case, as Universal's privilege log makes clear. *See* Kwun Decl., Exh. L. Universal does not have a written policy regarding the sending of notices. Allen Decl. ¶ 7.

Plaintiff's request additionally encompassed documents reflecting "practices" for sending notices of infringement. *See* Kwun Decl., Exh. B at 5:15-18 (requesting documents relating to "policies and/or practices"). Universal's search for documents relating to its "practices" regarding the sending of notices has resulted in numerous documents, many of which have been produced to Plaintiff. Where the documents reflecting Universal's "practices" convey privileged information regarding the sending of such notices, Universal has withheld them and logged them. This is entirely consistent with not having a written policy: from time to time questions may arise

about specific legal issues concerning what to do regarding sending a notice, and Mr. Allen's job includes communicating legal advice in these circumstances. Allen Decl. ¶ 2-3. Such communications are reflected on Universal's privilege log.

**2. Plaintiff's Complaints About the Production of the YouTube Agreement Are Imaginary**

Plaintiff likewise manufactures a dispute regarding Universal's content license agreement with YouTube. As Plaintiffs own motion indicates, this is much ado about nothing: YouTube produced its copy of the agreement to Plaintiff. Universal has also produced its copy. *See* Kwun Decl., Exh. I; Mot. at 13:19-24. Plaintiff asserts that something is rotten because the version that both YouTube and Universal produced has no text on Exhibit C. Mot. at 14:5. In fact, there is no text on Exhibit C in Universal's files. Allen Decl. ¶ 8.

**3. Universal Has Searched for Documents Regarding The Statement To ABC News**

Universal went to the person who made the statement to ABC News — Peter Lofrumento — to collect any communications regarding the ABC News statement. Universal listed on its privilege log the internal, privileged communication regarding that statement. Klaus Decl. ¶ 6; Lofrumento Decl. ¶ 4; Kwun Decl., Exh. L, at 13 (PRIV-000103). As Mr. Lofrumento states, he communicated with ABC News by telephone. Lofrumento Decl. ¶ 3. There is no written statement to produce.

**4. Universal Does Not Need to Produce Copies of the "Let's Go Crazy" Composition That Are Not In Their Possession, Custody or Control**

Finally, after several months of meeting and conferring during which a request for the composition of "Let's Go Crazy" was never once mentioned, Plaintiff for the first time demanded a copy of the "Let's Go Crazy" composition itself in an e-mail to Universal's counsel on June 11, 2009. Klaus Decl. ¶ 17 & Exh. I. Contrary to Plaintiff's assertions, the composition to "Let's Go Crazy" does not reasonably fall within any of Plaintiff's requests. Its lack of mention in *any* of the parties' meet-and-confer calls reflects this absence. *Id.* ¶ 17 & Exh. J at ¶ 11.

The deposit copy of the composition "Let's Go Crazy" is not relevant to the claims or defenses in this case: as noted above, this is not an infringement action. Plaintiff's arguments to

the contrary are, once again, unsupported by the very sources she cites. *See* Plaintiff's Mot. at 15:5-7 (incompletely quoting *Nimmer on Copyright* § 7.17[A] at 7-190.A, the full sentence of which reads "It may be argued that deposit has a copyright as well as an archival function in that *in an infringement action* it permits a determination of whether the work which the copyright owner claims to have been infringed is in fact the same work in which copyright was originally claimed.") (emphasis added). Plaintiff has sued Universal for misrepresentation under 17 U.S.C. § 512(f), and Plaintiff's own motion recognizes that it is Universal's *state of mind* that is relevant to her claims. *See* Mot. at 1:16-18.

Plaintiff, in any event, is well aware of which twenty-nine seconds of the "Let's Go Crazy" composition she used, and she does not (because she cannot) claim that this portion is not in all three versions of the composition. *See* Mot. at 15:18-21. Universal has already represented to Plaintiff that it does not have a copy of the "Let's Go Crazy" composition that was deposited with the Copyright Office. Arrow Decl. ¶ 3; Klaus Decl., Exh. J at ¶ 11. Universal, to obtain that copy, would be in no different a position than Plaintiff, since Universal does not have that copy within its possession, custody, or control. Arrow Decl. ¶ 5.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Compel.

Dated: July 29, 2009

MUNGER, TOLLES & OLSON LLP

By: */s/ Kelly M. Klaus*
KELLY M. KLAUS

Attorneys for Defendants