*E-Filed 8/25/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEPHANIE LENZ,

    Plaintiff,

v.

UNIVERSAL MUSIC CORP., et al.

    Defendants.

NO. C 07-3783 JF (RS)

**ORDER: (1) GRANTING UNIVERSAL'S MOTION TO COMPEL RE: DAMAGES; (2) GRANTING UNIVERSAL'S MOTION TO COMPEL COMMUNICATIONS; AND (3) GRANTING IN PART AND DENYING IN PART LENZ'S MOTION TO COMPEL DOCUMENTS**

## I. INTRODUCTION

Plaintiff Stephanie Lenz has brought an action against defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively "Universal") alleging a violation of 17 U.S.C. § 512(f) stemming from a thirty second video she posted on YouTube. The video features her young toddler performing an impromptu dance to the song "Let's Go Crazy" by the artist professionally known as Prince. Universal administers the copyright to the composition. Lenz entitled the video "Let's Go Crazy #1." On June 4, 2007, Universal sent YouTube a notice requesting that YouTube remove the video Lenz posted. YouTube complied and sent Lenz an email notifying her that it had done so. After receiving two e-mails from Lenz demanding that the video be restored, YouTube agreed. Lenz thereupon brought suit against Universal in connection with its takedown notice.

1

1 Three discovery motions are at issue here. In the first, Universal moves to compel Lenz to
2 produce documents relating to her alleged damages. In the second, Universal moves to compel Lenz
3 to produce communications with non-lawyer Theryn Fleming. In the third, Lenz moves to compel
4 Universal to produce documents responsive to request numbers 1-6, 9-10, 14, 16. For the reasons
5 set forth below, Universal's motions will be granted, and Lenz's motion will be granted in part and
6 denied in part.

## II. DISCUSSION

### A. Motion to Compel Re: Damages

Lenz filed her original complaint against Universal seeking damages under Section 512(f) based on her allegation that Universal knowingly misrepresented that her video was infringing. Ultimately, Lenz filed a second amended complaint ("SAC") on April 18, 2008, alleging that she was injured as a result of Universal's actions. As part of that injury, Lenz points to the financial and personal expenses associated with responding to Universal's claim.

Universal moved to dismiss the SAC for failure to allege any damages under Section 512(f). In denying Universal's motion, the presiding judge based his order on Lenz's representation that she incurred actual damages in reviewing the notice procedures, seeking the assistance of an attorney, and responding to the takedown notice.

Universal now seeks to obtain from Lenz any supporting materials regarding her claimed damages. The parties dispute the scope of damages available under Section 512(f). In particular, the parties disagree as to whether damages under Section 512(f) should include: (1) litigation fees and costs; (2) *pro bono* fees and costs; and/or (3) non-pecuniary losses such as compensation for time spent responding to the takedown notice. Lenz argues that she does not need to produce records reflecting any of these damages. The question of whether or not certain types of damages are recoverable for a Section 512(f) claim need not be resolved for the purposes of this motion. It is undisputed that damages constitute a requisite element of Lenz's Section 512(f) claim. Universal, therefore, is entitled to know how Lenz calculates and supports those alleged damages, whether or not all or part of them are ultimately adjudged to be recoverable.

2

1    Simply put, to the extent Lenz claims entitlement to damages of any kind she needs to
2 describe the type and extent of them in discovery. While Lenz claims she produced evidence of her
3 damages, her initial disclosures fail to provide a complete computation. At the same time, to the
4 extent that certain categories of claimed damages, such as litigation fees, will be evolving and
5 increasing, a detailed calculation at this point is not necessary. Instead, Lenz will be ordered to
6 provide a damages computation up to the filing of this motion, listing the lump sum fees and costs to
7 date and including a computation for all damages she claims to have incurred that predate the filing
8 of this action. Lenz will not be required to produce detailed attorney time records at this time but
9 may be required to do so before the close of discovery in the event that the presiding judge
10 concludes that such damages are recoverable. Any responsive documents consistent with this order
11 shall be produced within twenty days of the date of this order.

12 B.   Motion to Compel Communications

13   Universal seeks production of all communications between Lenz and Theryn Fleming. After
14 receiving the notice of removal from YouTube, Lenz allegedly turned to Fleming, who is not an
15 attorney, to assist Lenz in understanding the accusations against her. Lenz represents that because
16 Fleming attended law school in Canada, she believed Fleming was entitled to practice law in the
17 United States. Consequently, Lenz asserts attorney-client privilege as the grounds to withhold
18 communications she had with Fleming.

19   The Ninth Circuit has explained that to invoke attorney-client privilege: (1) legal advice must
20 be sought, (2) from a professional legal adviser in his or her capacity as such, (3) with the
21 communication relating to that purpose, (4) made in confidence, (5) by the client. *Admiral Ins. Co.*
22 *v. U.S. Dist. Ct.*, 881 F.2d 1486, 1492 (9th Cir. 1989). "[T]he privilege normally extends both to the
23 substance of the client's communication as well as the attorney's advice in response thereto." *In re*
24 *Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

25   Fleming is not an attorney, and it is undisputed that Lenz never formed an express
26 attorney-client relationship with her. Instead, Lenz contends that an attorney-client relationship
27 should be implied because she reasonably believed that Lenz was her counsel. In support of that
28

3

1 contention, Lenz explains that while aware Fleming did not practice law, she was under the
2 impression that a law degree was all that was required to do so.

3 The Ninth Circuit has not directly addressed whether a "reasonable belief" exception can
4 substitute for actual attorney involvement in invoking privilege. *United States v. Munoz*, 233 F.3d
5 1117, 1128 n.2 (9th Cir. 2000). Courts in other jurisdictions have recognized that, in limited
6 circumstances, "the [federal] privilege may apply where a party reasonably but mistakenly believes
7 that an attorney represents him rather than another party." *Id*. (citing *In re Grand Jury Subpoena*
8 *Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997); *United States v. Hart*, Crim.A. No. 92-219, 1992
9 WL 348425, at *1-2 (E.D. La. Nov. 16, 1992)).

10 Even assuming a "reasonable belief" exception applies, the evidence Lenz presents is
11 insufficient to carry her burden of establishing an attorney-client relationship with Fleming. *See*
12 *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973) ("The burden of establishing the
13 existence of an attorney-client relationship rests on the claimant of the privilege who resists
14 disclosure of shielded communication."). First, as evidence of an implied attorney-client
15 relationship, Lenz explains that when confused about the counter-notice process she turned to
16 Fleming to help understand it. Lenz Decl., ¶¶ 2, 10, 13. Lenz, however, fails to explain the nature
17 of Fleming's assistance or how it relates to the communications for which she claims the privilege.
18 Second, there is no dispute that Fleming steered Lenz towards qualified counsel. *Id*., ¶ 15. Fleming
19 thereby made it unmistakably clear that she did not represent Lenz. Third, there is no evidence from
20 Fleming herself indicating what she explained to Lenz that created Lenz's purportedly mistaken
21 belief that Fleming gave her confidential legal advice. Finally, and most importantly, believing that
22 a person who attends law school in Canada somehow qualifies her to practice law in the United
23 states is itself not a reasonable belief.

24 Because Lenz fails to show she had an express or implied attorney-client relationship with
25 Fleming, the attorney-client privilege is inapplicable to communications and documents between
26 them. Lenz therefore must produce any such documents within twenty days of the date of this order.
27 C.    Motion to Compel Documents
28

4

Lenz moves to compel Universal to produce: (1) all documents Universal generated after Lenz filed her original complaint (request number one); (2) communications between Universal and third parties about Lenz and/or her video (request numbers two and three); (3) agreements between Universal and YouTube touching on YouTube's responses to Universal's allegations of infringing material (request number four); (4) communications between Universal and Prince (request numbers five and six); (5) documents relating to Universal's decision to send a takedown notice for Lenz's video (request number nine); (6) Universal's policies and procedures governing its requests to take down allegedly infringing material (request numbers ten and eleven); (7) any documents relating to attempts to exploit the market for the "Let's Go Crazy" composition (request number fourteen); and (8) documents relating to the scope of Universal's interest in the copyrighted work at issue (request number sixteen).

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of any nonprivileged matter that is relevant to any party's claims or defenses, or "for good cause," discovery of any matter relevant to the subject matter involved in the action. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

    1.    <u>Request Number One</u>

Request number one seeks all documents Universal generated after Lenz filed her original complaint on July 24, 2007. Universal objects to this request on the grounds of lack of relevance and undue burden. Lenz seeks to prove that Universal sent a takedown notice claiming that her video infringed a copyright without having a good faith belief that her video actually did so. Lenz's SAC specifically includes allegations based on Universal's conduct after Lenz originally filed suit. Lenz, therefore, is entitled to explore documents Universal generated after her original complaint which may shed light on its general practices and on the question of its good faith in issuing takedown notices.

Beyond the issue of relevance, Universal argues that because the discovery cut-off is September 24, 2009, it would create an undue burden for it to review the 1,490 documents it identified as responsive. While there will no doubt be additional effort involved in searching for any

5

additional responsive materials, the conclusory burden argument does not outweigh Lenz's right to the materials requested.

Associated with the scope of her request, Lenz seeks to compel Universal to expand the number of officials whose records must be searched for responsive documents. Universal identified three individuals who were most likely to have relevant materials: Robert Allen, Universal's Vice President of Business Affairs, who had primary responsibility for communicating with Prince, an attorney who sent the notice to YouTube, and an employee who was involved in preparing the notice. Universal searched the electronic files of these three individuals and found approximately 4,100 responsive documents. Universal produced all non-privileged documents.

Lenz has made the requisite showing that a search for responsive materials should be expanded to include records maintained by Raul Gonzalez who interacted with Universal's copyright officials in connection with takedown notices. Accordingly, Lenz's motion to compel production of documents pursuant to request number one shall be granted in terms of expanding the period involved and adding an additional document custodian.

2. <u>Request Numbers Two and Three</u>

Request numbers two and three seek communications between Universal and third parties about Lenz and/or her video. Specifically, Lenz seeks materials surrounding a statement Universal released to ABC on October 25, 2007. Universal represents that it contacted Peter Lofrumento, the person who made the statement to ABC, to collect any communications regarding that statement. Lofrumento states that he communicated with ABC by telephone, and thus, there are no written documents to produce. Accordingly, as Universal has represented no responsive documents exist in its possession, no further production will be ordered.

3. <u>Request Number Four</u>

Request number four seeks agreements between Universal and YouTube regarding YouTube's responses to Universal's allegations of infringing material. In particular, Lenz believes that Universal's production is incomplete because a June 28, 2007 Content License Agreement between Universal and YouTube indicates there is an attachment labeled as Exhibit C. Lenz, however, has not received a copy of this exhibit from Universal or YouTube. Universal represents

6

1 that it produced its copy of the agreement to Lenz and its files contain no text to Exhibit C which
2 apparently was not attached in the first instance. As Universal has represented that it does not
3 possess an Exhibit C, it need not respond further to this request.

        4.     Request Numbers Five and Six

Request numbers five and six seek communications between Universal and Prince. Universal objects to these requests on the grounds of lack of relevance and privilege. Regarding relevance, Lenz presents evidence suggesting that Universal sent hundreds of takedown requests for videos involving Prince's works simply because it was urged to do so by the artist and without reference to infringing conduct. If Universal sent such letters without further inquiry but simply to appease one of its artists, Lenz argues it will be difficult for Universal to claim a good faith belief that she misappropriated copyrighted material. Communications between Universal and Prince about takedowns for any of his works thus are reasonably calculated to lead to evidence about the formation of Universal's good faith belief in sending the letters.

As to Universal's claim of attorney-client privilege, it bears the burden of establishing each element of that privilege. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996). While acknowledging the absence of any express attorney-client relationship between it and Prince, Universal argues that, pursuant to a 2005 Administration Agreement giving it the sole right to take legal action on the artist's behalf, Universal is acting as Prince's agent or attorney-in-fact.

Establishing that it acted as Prince's agent or "attorney-in-fact," does not satisfy Universal's burden to demonstrate that these communications are protected by the attorney-client privilege. As a general rule, an attorney who serves a client in a business capacity may not assert the attorney-client privilege owing to the absence of a confidential relationship to provide legal advice. *United States v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980). Ordinary business advice is not protected. Here, the agreement in question provides that if Prince notifies Universal of infringement, Universal may choose to retain attorneys to pursue the matter, but is not required to do so. If an attorney is retained, Universal maintains complete control over the litigation. If Universal declines to hire counsel, Prince is left to decide whether he wants to pursue legal action at his own expense. In short, it appears that the agreement simply designates Universal to act as an agent with

7

1 respect to Prince's business interests, but does not represent retention of Universal in-house counsel
2 to provide him with legal services. Universal, therefore, shall produce any documents responsive to
3 request numbers five and six within twenty days of the date of this order.

4      5.    <u>Request Numbers Nine, Ten and Eleven</u>

5 Request number nine seeks documents relating to Universal's decision to send a takedown
6 notice for Lenz's video. Closely related, request numbers ten and eleven seek Universal's policies
7 and procedures governing its requests to take down allegedly infringing material.[1] Universal's
8 search for documents relating to its practices resulted in the production of numerous documents from
9 Robert Allen, Universal's Vice President of Business Affairs. Some of these materials were
10 produced to Lenz while others were designated as privileged because Allen is an attorney. Lenz
11 contends that these materials are non-privileged business communications and must be produced.
12 Universal maintains that part of Allen's job includes communicating legal advice when questions
13 arise concerning specific legal issues surrounding the issuance of takedown notices.

14 There is no dispute that Allen wears two hats for Universal as he conducts business as well
15 as legal affairs. "[T]he presumption that attaches to communications with outside counsel does not
16 extend to communications with in-house counsel . . . [b]ecause in house counsel may operate in a
17 purely or primarily business capacity in connection with many corporate endeavors." *United States*
18 *v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). Universal, however, has not
19 indicated that the "primary purpose" of Allen's communications reflecting Universal's practices for
20 sending a takedown notice to Lenz or others was to render legal advice. As Lenz proffers, it is
21 entirely plausible that Allen's statements to the unidentified employees sending out the takedown
22 notices does not constitute legal advice because such notices may be dispatched as part of a business
23 strategy to appease client artists. In short, Universal has not met its burden of showing that any
24 privilege attaches to Allen's advice.

25 Without more, the Court cannot simply assume that every communication involving Allen as
26 in-house counsel that related to these transactions was made primarily for the purpose of securing

---

[1] Universal represents that it does not have a written policy regarding the sending of notices.

8

legal advice where that same in-house counsel also helped implement business decisions. Universal must therefore clarify whether each document or communication identified by Allen as privileged was created for the primary purpose of providing legal advice or essentially for a business purpose.

Accordingly, Universal is ordered to supplement its privilege log by September 1, 2009, addressing the issue noted above. Thereafter, the parties shall meet and confer in a good faith effort to reach agreement as to what, if any, documents have properly been withheld, and then to submit a joint report by September 8, 2009, advising the Court of any documents identified in Lenz's motion that are being withheld on the basis of privilege that remain in dispute.

### 6. Request Number Fourteen

Request number fourteen seeks any documents relating to attempts to exploit the market for the "Let's Go Crazy" composition. Universal represents that the only actual or potential market for "Let's Go Crazy" affected by Lenz's video is whatever market exists for synchronization licenses specific to the song itself. Based on this representation, Lenz no longer seeks an order compelling production of non-synchronization licenses, or licenses that are not specific to "Let's Go Crazy." That said, Lenz still seeks documents relating to other attempts to enter into "Let's Go Crazy" synchronization licenses including materials relating to the license entered into for an episode of "The Late Show with David Letterman" ("Letterman license").[2] Universal acknowledges that it will produce one license, but it is unclear whether it is the Letterman license.

Besides the one license Universal has agreed to produce, it argues that other such licenses have no conceivable relevance to this case. Contrary to Universal's argument, other licenses are relevant to the question of whether or not Lenz's video is a fair use of "Let's Go Crazy," and therefore, did not warrant a takedown notice. Accordingly, Lenz is entitled to these documents or to confirmation that no further licenses exist.

### 7. Request Number Sixteen

---

[2] In its opposition, Universal indicates that it identified and will produce in a supplemental response one license that specifically licensed "Let's Go Crazy" for synchronization with audio-visual images.

9

1    Request number sixteen seeks documents relating to the scope of Universal's interest in the
2 copyrighted work at issue. In Universal's June 4, 2007 takedown notice, it claimed that Lenz's video
3 infringed the musical composition "Let's Go Crazy," Copyright Reg. No. PA0000217248. As a
4 result, Lenz argues that she is entitled to receive a copy of the work Universal identified. Universal
5 contends that the deposit copy of the song is not relevant to the claims or defenses in this case, and it
6 does not have a copy of the song that was deposited with the Copyright Office. As Universal has
7 represented it does not possess such a copy, no further production shall be required.

### III.  CONCLUSION

Universal's motions to compel regarding damages and communications with Fleming are granted. Lenz shall produce the material requested as outlined above. Lenz's motion to compel is granted in part and denied in part. As to request numbers two, three, four, and sixteen no further production will be ordered. With respect to the remaining requests, Universal shall produce the information requested as explained above within twenty days of the date of this order except for request numbers nine, ten, and eleven. For those three requests, Universal shall follow the instructions provided above.

IT IS SO ORDERED.

Dated: 8/25/09

RICHARD SEEBORG
United States Magistrate Judge

ORDER: (1) GRANTING UNIVERSAL'S MOTION TO COMPEL RE: DAMAGES; (2) GRANTING UNIVERSAL'S MOTION TO COMPEL COMMUNICATIONS; AND (3) GRANTING IN PART AND DENYING IN PART LENZ'S MOTION TO COMPEL DOCUMENTS
C 07-3783 JW (RS)