1
2
3
4
5
6
7
8
9

KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC.
and UNIVERSAL MUSIC PUBLISHING
GROUP

10

11

12

13

14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

15
16
17
18
19
20
21
22
23

STEPHANIE LENZ,

                    Plaintiff,

          vs.

UNIVERSAL MUSIC CORP.,
UNIVERSAL MUSIC PUBLISHING, INC. and
UNIVERSAL MUSIC PUBLISHING GROUP,

                    Defendants.

CASE NO.  CV-07-03783-JF (RS)

**REPLY IN SUPPORT OF MOTION
TO COMPEL PLAINTIFF'S
COMMUNICATIONS WITH NON-
LAWYER THERYN FLEMING
WITHHELD BASED ON A CLAIM OF
ATTORNEY-CLIENT PRIVILEGE**

Date:     August 19, 2009
Time:    9:30 a.m.
Judge: Hon. Richard G. Seeborg
Courtroom:  4

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ........................................................................................................ 1

II.  FLEMING IS NOT A LAWYER — THAT ENDS THE PRIVILEGE INQUIRY ........... 1

    A.   The Ninth Circuit Does Not Recognize Any "Reasonable Belief"
         Exception ........................................................................................................ 2

    B.   Plaintiff In Any Event Has Not Established That She Had Any "Belief"
         About Fleming Being An Attorney That Is "Reasonable" ................................. 3

III. PLAINTIFF NEVER SOUGHT TO BECOME FLEMING'S CLIENT — WHICH
     ALSO IS SUFFICIENT IN AND OF ITSELF TO END THE PRIVILEGE
     INQUIRY ................................................................................................................... 7

IV.  EVEN IF A PRIVILEGE EXISTED BETWEEN PLAINTIFF'S
     COMMUNICATIONS WITH FLEMING — AND IT DID NOT — PLAINTIFF
     WAIVED THE PRIVILEGE ...................................................................................... 10

    A.   Plaintiff Obviously Disclosed The Very Information That She Claims Is
         Privileged ...................................................................................................... 10

    B.   Plaintiff's Voluntary Disclosure Of Communications Of Litigation
         Strategy With Fleming Waives Any Claim Of Privilege Over All
         Communications With Fleming ...................................................................... 11

V.   UNIVERSAL'S MOTION SEEKS HIGHLY RELEVANT INFORMATION ............... 12

VI.  CONCLUSION ......................................................................................................... 13

1

## TABLE OF AUTHORITIES

2

Page(s)

3

### FEDERAL CASES

4
*Clarke v. Am. Commerce Nat'l Bank,*
   974 F.2d 127 (9th Cir. 1992)........................................................................... 1

5
*Dabney v. Investment Corp. of Am.,*
   82 F.R.D. 464 (E.D. Pa. 1979) ....................................................................... 3

6

7
*In re Fischel,*
   557 F.2d 209 (9th Cir. 1977)........................................................................ 2, 7

8
*In re Grand Jury Investigation,*
   231 F. App'x 692 (9th Cir. 2007) ................................................................... 2

9
*In re Grand Jury Subpoena,*
   415 F.3d 333 (4th Cir. 2005)........................................................................... 8

10

11
*In re Grand Jury Subpoena Duces Tecum,*
   112 F.3d 910 (8th Cir. 1997)..................................................................... 5, 11

12
*In re Grand Jury Subpoenas,*
   995 F. Supp. 332 (E.D.N.Y. 1998) ................................................................. 3

13
*Lanci v. Arthur Andersen, LLP,*
   1998 WL 409776 (S.D.N.Y. July 21, 1998) ................................................ 8, 9

14
*Moorhead v. Lane,*
   125 F.R.D. 680 (C. D. Ill. 1989) .................................................................... 2

15
*Rossi v. MPAA,*
   391 F.3d 1000 (9th Cir. 2004).................................................................. 11, 12

16

17
*Speaker ex rel. Speaker v. County of San Bernardino,*
   82 F. Supp. 2d 1105 (C.D. Cal. 2000) ..................................................... 2, 5, 6

18
*Stanford v. Roche Molecular Sys., Inc.,*
   237 F.R.D. 618 (N.D. Cal. 2006) .................................................................. 11

19
*The Diversified Group, Inc. v. Daugerdas,*
   304 F. Supp. 2d 507 (S.D.N.Y. 2003) ............................................................ 8

20
*United States v. Boffa,*
   513 F. Supp. 517 (D. Del. 1981).................................................................. 5, 6

21

22
*United States v. Evans,*
   113 F.3d 1457 (7th Cir. 1997)......................................................................... 8

23
*United States v. Fisher,*
   692 F. Supp. 488 (E.D. Pa. 1988) .................................................................. 9

24
*United States v. Mullen & Co.,*
   776 F. Supp. 620 (D. Mass. 1991) .................................................................. 9

25
*United States v. Munoz,*
   233 F.3d 1117 (9th Cir. 2000).......................................................................... 2

26

27
*United States v. Rivera,*
   837 F. Supp. 565 (S.D.N.Y. 1993).............................................................. 3, 5

28

1

2

## **TABLE OF AUTHORITIES**
### (continued)

**Page(s)**

3

*United States v. Rowe*,
    96 F.3d 1294 (9th Cir. 1996) ................................................................................... 9

4

*United States v. Tedder*,
    801 F.2d 1437 (4th Cir. 1986) ................................................................................. 9

5

*United States v. Tyler*,
    745 F. Supp. 423 (W.D. Mich. 1990) ...................................................................... 5

6

*Weil v. Investment/Indicators, Research & Mgmt., Inc.*,
    647 F.2d 18 (9th Cir. 1981) ..................................................................................... 12

7

8

### FEDERAL STATUTES

9

17 U.S.C. § 107 ................................................................................................................ 12

10

17 U.S.C. § 512(f) .................................................................................................... 12, 13

11

12

### FEDERAL RULES

13

Proposed Fed. R. Evid. 503(a)(1) ..................................................................................... 7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.      INTRODUCTION

2          Plaintiff derides Universal's motion as "a fishing expedition," "harassment," "specious,"

3   "disingenuous," "spurious," "wasteful and harassing," and one that "defies reason."  Plaintiff's

4   Opp. at 1, 5, 9, 10.  Plaintiff laces her brief with such table-pounding rhetoric because neither the

5   law nor the facts supports her unprecedented request to extend the attorney-client privilege to

6   Plaintiff's communications with someone she admits *is not an attorney*, and in circumstances

7   where Plaintiff has admitted *she was not (and was not seeking to be) a client*.  No court — *ever*

8   — has held that the privilege shrouds communications where purported "lawyer" is not and never

9   was capable of acting as a lawyer, and where (as here) the putative "client" admits that she knew

10  that the other person did not "practice law professionally."  Lenz Decl. ¶ 12.  On the contrary, as

11  discussed below, every court that has confronted privilege claims in analogous circumstances has

12  *rejected* the claim of privilege.

13         Well aware that the privilege claim is baseless — and that she has, multiple times,

14  destroyed the confidentiality that would be a prerequisite to maintaining even a valid privilege

15  claim — Plaintiff changes tack in her Opposition and for the first time asserts that her

16  communications with Fleming are irrelevant.  That is flatly wrong.  Plaintiff is trying to shield the

17  very first communications that she had upon receiving the notice from YouTube, precisely the

18  time when her recollections and mental state about why she put the "Let's Go Crazy" video onto

19  YouTube and how she reacted to the video would be at the forefront of her mind.  Plaintiff's

20  Complaint expressly puts these matters in issue, and her conversations with Fleming from this

21  initial point will be among the most relevant communications in the case.  Universal's motion

22  should be granted.

23  ## II.     FLEMING IS NOT A LAWYER — THAT ENDS THE PRIVILEGE INQUIRY

24         This fact is absolutely, unequivocally undisputed on this motion:  "Ms. Lenz does *not*

25  contend that Ms. Fleming *is* a lawyer."  Opp. at 2:26.  Plaintiff's admission ends the privilege

26  inquiry.  Ninth Circuit law is clear that the attorney-client privilege only shields from disclosure

27  "confidential communications made by a client *to an attorney* to obtain legal services[.]"  *Clarke*

28  *v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (emphasis added); *accord In re*

*Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).  Plaintiff is trying to claim privilege over communications with someone who *never* could have had a privileged conversation with Plaintiff.  The privilege assertion is unfounded in the purest sense of that word.

Plaintiff nevertheless stakes her continuing claim of privilege on a single argument:  that she can claim privilege over someone admitted not to be a lawyer because Plaintiff "reasonably believed" that Fleming "was a lawyer, even if she did not choose to practice law professionally." Lenz Decl. ¶ 12.  This argument fails for two reasons.  First, there is no "reasonable belief" exception in the Ninth Circuit.  Second, even if there were, Plaintiff has not established that her purported belief was reasonable.

**A.     The Ninth Circuit Does Not Recognize Any "Reasonable Belief" Exception**

Plaintiff's Opposition takes it as a given that there is such a thing as a "reasonable belief" exception to the rule that a claim of attorney-client privilege requires that an actual *attorney* be involved in the communication.  That proposition, however, is unsupported.  The Ninth Circuit, in fact, has refrained from deciding if there is such an exception.  *See In re Grand Jury Investigation*, 231 F. App'x 692, 693-94 (9th Cir. 2007) (declining to decide whether to create an exception); *United States v. Munoz*, 233 F.3d 1117, 1128 n.2 (9th Cir. 2000) (same).

Plaintiff insists that "[c]ourt after court has *held*" that there is a "reasonable belief" exception where the putative lawyer is not, in reality, a lawyer.  Opp. at 2:27-3:1 (emphasis added).  But she cites exactly *one* case within the Ninth Circuit for this proposition, *Speaker ex rel. Speaker v. County of San Bernardino*, 82 F. Supp. 2d 1105 (C.D. Cal. 2000).  The *Speaker* case, however, did not even involve a claim of attorney-client privilege.  The privilege claim at issue there was the so-called "therapist-patient" privilege, and in particular a claim of privilege for a "quasi-therapist." *Id.* at 1115.  And, contrary to Plaintiff's contention, the other cases she relies on (all but one of which she buries in a footnote) do not "*hold*" that there is a "reasonable belief" exception.  Indeed, *Moorhead v. Lane*, 125 F.R.D. 680, 683 (C. D. Ill. 1989) *does not address "reasonable belief" at all.*[1]   The other cases cited by Plaintiff hold that, *assuming* such

---

[1] *Moorhead* clearly states: "Neither Ms. Trammel nor Ms. Wheeler is a lawyer.  While it is true that Ms. Trammell has a law degree from the University of Denver, *neither she nor Ms. Wheeler*

an exception exists, the facts did not justify a reasonable belief exception.  *See In re Grand Jury Subpoenas*, 995 F. Supp. 332, 337 (E.D.N.Y. 1998) (noting that it was "undisputed" that "no [claimant] . . . reasonably believed them to be authorized to practice law"); *Dabney v. Investment Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa. 1979) (noting that the facts of the case "clearly do not bring it within" any reasonable belief exception). And *Rivera* denies attorney-client privilege on the basis of the crime-fraud exception, addressing reasonable-belief issues in a passing footnote. *United States v. Rivera*, 837 F. Supp. 565, 567 n.1 (S.D.N.Y. 1993).  Dicta are not holdings. Plaintiff has simply failed to establish the existence of the rule that is the sole basis for her privilege claim.

> **B.     Plaintiff In Any Event Has Not Established That She Had Any "Belief" About Fleming Being An Attorney That Is "Reasonable"**

Even on the assumption — an incorrect one — that there is a "reasonable belief" exception in the Ninth Circuit, Plaintiff's privilege claim still fails for the reason that her claimed "belief" never could be considered "reasonable."

Plaintiff's argument for crediting her current claimed "belief" that Fleming "was a lawyer," Lenz Decl. ¶ 12,[2] is based entirely on the following alleged "facts":

---

*are members of the Illinois bar*.  As a result, any legal advice that was given was not 'from a professional legal adviser in his capacity as such.'  Accordingly . . . the attorney/client privilege does not apply . . . ." (emphasis added).

[2] Plaintiff's assertion in her current declaration that she "knew Ms. Fleming had a law degree, and as far as I understood *that meant she was a lawyer*" is the first time — in nearly six months of sworn statements from Plaintiff on this issue — that Plaintiff has indicated under oath anything even remotely resembling a belief that Fleming was a lawyer.  (Notably, she still nowhere clearly indicates that she did have such a belief that Fleming "was a lawyer.")  In her initial interrogatory responses, Plaintiff stated only:  "Ms. Fleming is not a practicing attorney but holds a law degree."  Klaus Decl., Exh. F at 10:12-13 (Plaintiff's Response to Interrogatory No. 9) (Jan. 21, 2009).  After Universal raised concerns about the privilege claim, Plaintiff submitted a proffer in which she stated that: "I knew that my friend Theryn Fleming had a law degree, and I believed that in light of her education she might be able to advise me about the legal threat and possible responses."  Klaus Decl., Exh. G at ¶ 3(Proffer) (June 2, 2009).  It is only now, in support of an Opposition brief in which her attorneys are arguing that Plaintiff actually believed Fleming was a lawyer, that Plaintiff has included these words, quoted above, in a sworn statement.  Contrary to the suggestion by Plaintiff's counsel, the contention that Plaintiff believed in June 2007 that Fleming "was a lawyer" is not established by the email attached as Exhibit A to the Declaration of *Plaintiff's Counsel*. *See* Miksch Decl., Exh. A.  That email does not refer to Fleming's name *at all*, and it is notable that the email is not attached to Plaintiff's declaration, much less authenticated or explained by her.

- Plaintiff's assertion that she "knew Ms. Fleming had a law degree, and as far as I understood that meant she was a lawyer, even if she did not choose to practice law professionally[,]"[3] *id*.;

- Plaintiff's assertion that she "did not know that Ms. Fleming was not licensed," or that "lawyers are subject to licensing requirements as well as educational requirements[,]" *id*. ¶ 11; and

- The assertion by *Plaintiff's lawyers* — not substantiated in any way by Plaintiff's sworn declaration — that Plaintiff's ignorance of the actual facts and her failure to investigate must be overlooked because Plaintiff "had never previously had a *serious* need for a lawyer's advice." Opp. at 4:11-12 (emphasis added).

These "facts" do not come close to establishing what Plaintiff would have to show to come within a "reasonable belief" exception, even if one existed (which it does not):

1.   ***Plaintiff is alleging a mistake of law, not a mistake of fact, and legal mistakes do not count***.  Plaintiff does *not* allege that she had a mistaken belief about *the fact* of Fleming being a lawyer.  What Plaintiff is saying is that she had a mistaken belief about the *legal requirements* for being an actual lawyer — namely, "I did not know lawyers are subject to licensing requirements as well as educational requirements." Lenz Decl. ¶ 11.  Mistakes of law (as opposed to mistakes of fact) do not count, even in those cases where courts have discussed there being a "reasonable belief" exception.  As the Court of Appeals for the Eighth Circuit explained:

> In some aspects of the law of attorney-client privilege, the client's reasonable beliefs may be relevant.  For example, courts have found the privilege applicable where the client reasonably believed that a poseur was in fact a lawyer . . . or reasonably believed that a conversation with a lawyer was confidential, in the sense that its substance would not be overheard by or reported to anyone else. . . . But we know of no authority, and [the privilege claimant] has cited none, holding that a client's beliefs, subjective or objective, about the law of privilege can transform an otherwise unprivileged conversation into a privileged one.

---

[3] Plaintiff suggests that Universal concedes that Fleming actually had a law degree. Opp. at 2:1. In fact, Universal has no idea whether Fleming has a law degree, or even if she attended law school (whether in Canada or elsewhere).  Indeed, Universal has no way of knowing if there is such a person as Theryn Fleming, since all that is known about Fleming is what is posted on Toasted-Cheese.com and another blog.  Notably, Plaintiff does not substantiate any facts about Fleming with a declaration from Fleming herself.

1

2

> [W]e are satisfied that *there is no compelling reason that a reasonable-mistake-of-law rule should apply in the realm of privileges*.

3

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 923-24 (8th Cir. 1997) (emphasis

4

added).

5

      2.      ***Even if Plaintiff were alleging a mistake of fact (which she is not), the facts that***

6

***she admits are inconsistent with any "reasonable" belief she was dealing with a lawyer***.

7

Consider, first, the facts that Plaintiff *admits*. In particular, she admits that she knew that Fleming

8

did not "practice law professionally." Lenz Decl. ¶ 12. Of course, Plaintiff has to admit that,

9

since Plaintiff's entire affiliation with Fleming was through the latter's role as "Founding Editor"

10

and "Webmaster" of "Toasted-Cheese.com," an online writing journal. Klaus Decl., Exh. C at 6.

11

That admission is fatal to Plaintiff's claim that it was "reasonable" for her to believe she was

12

communicating with a lawyer. Even taking as true Plaintiff's claimed ignorance of the fact that a

13

lawyer has to be admitted to the Bar in order to be a lawyer, Plaintiff has admitted that *she knew*

14

*Fleming was not a practicing lawyer*. In every one of the cases that Plaintiff cites for the

15

supposed "reasonable belief" exception, the putative "lawyer" gave some indicia to the alleged

16

"client" that he or she actually was engaged in the practice of law. *See, e.g.*, *Speaker*, 82 F.

17

Supp. 2d at 1113 (quoting *United States v. Tyler*, 745 F. Supp. 423, 425 (W.D. Mich. 1990), in

18

which the purported attorney "held himself out as an attorney to the defendant . . . posted a legal

19

diploma on his cell wall, assisted prisoners in all types of legal matters, and was addressed by

20

fellow prisoners as 'counselor'"); *Rivera*, 837 F. Supp. at 567 ("Rivera had falsely held himself

21

out to be an attorney").

22

      In this regard, Plaintiff's citation to *United States v. Boffa*, 513 F. Supp. 517 (D. Del.

23

1981) (described by *Speaker* as a "seminal case," 82 F. Supp. 2d at 1112) as supporting precedent

24

is baffling: In *Boffa*, the claimant stated that he was "convinced" that the putative lawyer,

25

Morgan, was a lawyer; indeed, the claimant testified that Morgan was recommended to him as a

26

"good lawyer," that he had been told Morgan had other clients, and that he spent a great deal of

27

time interviewing Morgan. *Boffa*, 513 F. Supp. at 524-25. And even under these circumstances

28

— which bear no similarity to Plaintiff's knowledge that Fleming was *not* a practicing attorney —

1    the court *denied* the application of the privilege, holding that the client's belief was not

2    reasonable where the client did not discuss or independently investigate Morgan's credentials and

3    never paid expenses or fees. *Id.*

4         None of these cases — not a single one — supports the proposition that a "reasonable

5    belief" exception applies in the absence of someone holding himself out as a professionally

6    practicing attorney. *See Speaker*, 82 F. Supp. 2d at 1113 (recognizing some courts' "extend[ing]

7    the privilege . . . in cases where the client is *deceived* as to the attorney's lack of professional

8    status.'") (citation omitted) (emphasis added). In this case, Plaintiff admits that Fleming did not

9    even have that patina of legitimacy as a practicing lawyer. Even in the cases that Plaintiff cites,

10   the pretense of someone actually practicing law was not enough to support the "reasonable belief"

11   assertion. *See Boffa*, 513 F. Supp. at 524-25 (finding that claimant "clearly has failed to meet his

12   *burden of proving that Morgan fraudulently held himself out to [claimant] as an attorney*")

13   (emphasis added). *A fortiori*, the claimed "belief" here cannot be deemed to be "reasonable."

14        3.    ***The facts that are missing from Plaintiff's declaration (and the absence of any***

15   ***declaration from Fleming) underscore further why Plaintiff's claimed "belief" is not***

16   ***reasonable***. Most conspicuously, Plaintiff does not suggest that Fleming said or did anything to

17   indicate to Plaintiff that any of their discussions were privileged communications. As

18   conspicuous (if not more so) is the absence of any declaration from Fleming — Plaintiff's

19   "friend" and confidante — stating that *she* said or did something to lead Plaintiff to believe she

20   was a lawyer and could have a privileged conversation with her. To the extent there is any

21   evidence at all concerning what Fleming said to Plaintiff, it is positively inconsistent with the idea

22   that Fleming gave Plaintiff any reason to think she was dealing with a lawyer. Take the initial

23   conversation in June 2007: Plaintiff tells us that Fleming "steered me toward more qualified

24   counsel." Lenz Decl. ¶ 15. In reality, of course, this means that Fleming "steered" Plaintiff

25   toward *actual* counsel, since Fleming (by Plaintiff's own admission) has no qualification to

26   provide legal counsel to someone. And, what the statement really translates to is, "get yourself a

27

28

1  lawyer," which is not a statement that provides reason to believe the person making it is a

2  lawyer.[4]

3          Again, the contrast to the cases that Plaintiff cites in support of her "reasonable belief"

4  exception is striking, for in each, the proponent of the (unsuccessful) privilege claim at least put

5  forward some evidence that the putative "lawyer" had given them some indication to believe that

6  they were dealing with an actual lawyer. And, once again, the fact that Plaintiff does not even

7  have that type of evidence supporting her claimed "reasonable" belief means that she cannot

8  possibly establish that her "belief" provides an exception to the attorney-client privilege.

9                                      *    *    *

10         At bottom, Plaintiff's "reasonable belief" argument is that, because she is "a mother, wife,

11 writer and editor," Lenz Decl. ¶ 2, she can claim privilege over communications with someone

12 Plaintiff knew did not practice law and who is not alleged to have said or done anything that gave

13 Plaintiff reason to believe the conversations were privileged. There has never been a case — *ever*

14 — that has recognized privilege in these circumstances, and this case should not be the first.

15 **III.    PLAINTIFF NEVER SOUGHT TO BECOME FLEMING'S CLIENT — WHICH**
         **ALSO IS SUFFICIENT IN AND OF ITSELF TO END THE PRIVILEGE**
16       **INQUIRY**

17         Plaintiff's admission that she knew Fleming "did not choose to practice law

18 professionally," Lenz Decl. ¶ 12, also fatally undermines a *second* element Plaintiff would have

19 to show to sustain the privilege claim. Specifically, Plaintiff does not and cannot show that she

20 was seeking legal advice "from a *professional* legal adviser *in [her] capacity as such.*"  *Fischel*,

21 557 F.2d at 211 (emphasis added).  Because Plaintiff knew that Fleming did not engage in any

22 professional practice, Plaintiff could not have approached her with any view to "obtaining

23 *professional* legal services."  *See* Proposed Fed. R. Evid. 503(a)(1) (attorney-client privilege

24 protects communications from a "client," defined as one who "is rendered *professional legal*

25 ───────────────

26 [4] Plaintiff's later conversations with Fleming only underscore why Plaintiff could have no
   reasonable basis for concluding she was dealing with an actual lawyer acting in her professional
27 capacity.  *See* Klaus Decl., Exh. O at P-E_002945 ("**me**:  so if just one of these cases either gets
   them to admit that they're filing a DMCA notice, we're all winners …. **Theryn:**  heh copyright
28 law needs to be seriously scaled back.").

1  *services* by a lawyer, or who consults a lawyer with a view to *obtaining professional legal*

2  *services*[.]") (emphasis added).

3        Courts reject claims of privilege where claimants approach even licensed, practicing

4  attorneys for advice, but outside of a request for professional representation.  *See, e.g.*, *The*

5  *Diversified Group, Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 513 (S.D.N.Y. 2003) ("Without

6  evidence that Haber intended to retain Daugerdas in a legal capacity at the time the

7  communications were made, the documents are not privileged.").  Even assuming the person to

8  whom a client appeals is a licensed attorney, a person seeking to invoke the attorney-client

9  privilege "must prove that he is a client or that he affirmatively sought to become a client.  The

10  professional relationship . . . hinges upon the client's belief that he is consulting a lawyer in that

11  capacity and his manifested intention to seek *professional* legal advice."  *In re Grand Jury*

12  *Subpoena*, 415 F.3d 333, 339 (4th Cir. 2005) (citation omitted) (emphasis added); *see also United*

13  *States v. Evans*, 113 F.3d 1457, 1463-64 (7th Cir. 1997) ("Evans fails to appreciate the fact that

14  the critical inquiry is whether [counsel] was acting in his capacity as a professional legal advisor

15  — as opposed to his capacity as a long-time friend who happens to be a lawyer — during his

16  interactions with Evans.  The privilege extends only to communications between a client and a

17  *professional legal advisor in his capacity as such.*") (quotations and citation omitted) (emphasis

18  added).

19        Plaintiff responds to this deficiency in her privilege claim with a *non sequitur*:  "There is

20  no rule that friends cannot offer legal advice, and Universal's suggestion to the contrary would

21  undoubtedly come as a surprise to the many attorneys who consider many of their clients to be

22  friends."  Opp. at 6:1-3.  Of course Universal is not arguing that lawyers and clients cannot be

23  friends.  The point is that, for there to be a claim of attorney-client privilege over the

24  communication, the client must be dealing with the lawyer *as a professional*, and not as a friend.

25  The law could not be clearer on this.  For example, in *Lanci v. Arthur Andersen, LLP*, 1998 WL

26  409776 (S.D.N.Y. July 21, 1998), the claimant, upon learning that he was going to be fired, called

27  an old friend who was an Assistant United States Attorney (AUSA), for legal advice.  There

28  (unlike here), the AUSA actually put testimony in the record, and that testimony made it clear

1    that he thought his friend came to him "to get free legal advice as a friend[.]"  *Id.*  at *1.  Given

2    that fact, the fact that claimant did not compensate his friend, and that he knew his friend did not

3    represent private clients, the court rejected the privilege claim.  Similarly, in *United States v.*

4    *Tedder,* 801 F.2d 1437, 1442 (4th Cir. 1986) the court denied a claim of privilege where claimant

5    made disclosures to an attorney under circumstances "suggesting the non-existence of an

6    attorney-client relationship," including that the attorney's practice was not related to the topic of

7    the statements made.  And in *United States v. Fisher*, 692 F. Supp. 488, 491-92 (E.D. Pa. 1988),

8    the court rejected a claim of privilege where two union members claimed that they were "eligible

9    to receive advice and assistance" from the law-firm at issue, though they were not in fact seeking

10   to retain the firm professionally at the time of their disclosures.  The court held that "it stretches

11   the rationale of the attorney-client privilege too far to assert that merely because at some time in

12   the future [claimants] may call upon [an attorney] for legal services, an attorney-client

13   relationship exists . . . ."  *Id.*

14         Plaintiff did exactly what these cases hold is beyond the scope of the attorney-client

15   privilege.  She sought free "advice and counsel" from a friend *as a friend*, Klaus Decl., Exh. G

16   ¶ 4 (Proffer), in a context in which that friend could not possibly give her professional advice.

17   Plaintiff knew as much.  As stated by Plaintiff herself, she sought Fleming's counsel because "in

18   light of her education she might be able to advise me about the legal threat and possible

19   responses."  *Id.* ¶ 3.  However, Plaintiff knew that Fleming did not "practice law professionally."

20   Lenz Decl. ¶ 12.  Plaintiff has failed, as is her burden, to prove that her communications with

21   Fleming "were made for the purpose of obtaining professional legal services[.]"  *Lanci*, 1998 WL

22   409776, at *1.  This is further reason why the privilege claim is meritless.[5]

23

24

25

26   _____
     [5] In both of the cases that Plaintiff cites, the putative client sought legal advice from *retained*
27   *legal professionals*.  *See United States v. Rowe*, 96 F.3d 1294, 1296 (9th Cir. 1996) (involving
     law-student associates employed by a client's retained attorneys); *United States v. Mullen & Co.*,
28   776 F. Supp. 620, 621 (D. Mass. 1991) (involving professionally engaged accountants who also
     provided "legal financial" advice).  These cases are completely inapposite.

1
2

## IV.  EVEN IF A PRIVILEGE EXISTED BETWEEN PLAINTIFF'S COMMUNICATIONS WITH FLEMING — AND IT DID NOT — PLAINTIFF WAIVED THE PRIVILEGE

3

As Universal demonstrated in its opening papers, Plaintiff in all events waived any claim

4

of privilege by voluntarily (and repeatedly) disclosing the substance of the purportedly

5

confidential communications.  Mot. at 13-14.  Plaintiff responds, first, by claiming that she did

6

not disclose any privileged information; and, second, by saying that even if she did, the disclosure

7

has no legal consequence.  Plaintiff is wrong on both counts.

8

### A.  Plaintiff Obviously Disclosed The Very Information That She Claims Is Privileged

9

10

In her Opposition, Plaintiff claims that her privileged conversations with Fleming

11

involved, among other subjects, "consult[ing] with Ms. Fleming regarding her lawsuit[.]"  Opp. at

12

2:10.  Plaintiff's actual lawyers (who claim their client is ignorant about the law of privilege) also

claim that Plaintiff "believed those communications were privileged."  *Id*. at 2:10-11.  Yet, when

13

confronted with Plaintiff's divulgence of EFF's strategy and objectives for the litigation of this

14

case, Plaintiff's counsel characterize the disclosures as mere "vanilla statements," and claim that

15

16

"Ms. Lenz did not believe the information was privileged in the first place."  Opp. at 7:25, 8:10.

17

This argument requires Plaintiff's lawyers to rewrite the text of her "chat" with Fleming

18

— which they do extensively.  For example, Plaintiff's lawyers say that the "chat" record

19

"merely" shows Plaintiff saying that, "[i]f Universal can be forced to accept that its notices are

20

DMCA notices, that's a good thing."  *Id*. at 7:21-23.  In fact, this is what Plaintiff actually said:

21

22

> 5:51  **me:** . . . so we're sticking w/claim 1
>           b/c we want them to admit the DMCA notice was (1) a DMCA notice and (2) false.  Plus we want to clarify Rossi
> 5:52  apparently there are a bunch of cases, the big one w/YouTube, where they refuse to admit what they file is even a DMCA notice
>           they say it's a "possible copyright infringement notice"

23

24

Klaus Decl., Exh. O at P-E_002945.

25

What Plaintiff actually told Fleming was, "*we* want them to admit the DMCA notice was

26

(1) a DMCA notice and (2) false," and "*we* want to clarify Rossi," *i.e.*, *Rossi v. MPAA*, 391 F.3d

27

1000, 1004 (9th Cir. 2004), which requires *actual, subjective* knowledge of a false statement, not

28

- 10 -

objective "should have known" knowledge (and thus is fatal to Plaintiff's claim on the merits). These are not "vanilla statements" about what Plaintiff thinks is a good thing. She is disclosing EFF's litigation strategy.

**B.    Plaintiff's Voluntary Disclosure Of Communications Of Litigation Strategy With Fleming Waives Any Claim Of Privilege Over All Communications With Fleming**

Plaintiff obviously cannot disclose some parts of her conversations with Fleming while maintaining a claim of privilege over others. *See* Opp. at 2:19. Waiver extends to all communications on the same subject matter. *See Stanford v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006) ("The scope of a waiver of attorney-client privilege extends the privilege to all communications on the same subject matter."); 8 Wigmore, Evidence 2328, at 638 (McNaughton rev. 1961) ("The client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter.").

Plaintiff's contrary arguments are meritless. First, Plaintiff argues (without citing any legal support) that any waiver could not be intentional "because Ms. Lenz did not believe the information was privileged in the first place." Opp. at 8:10. That contention, of course, is inconsistent with Plaintiff's simultaneous claim (to invoke a supposed "reasonable belief" exception) that she is ignorant about what is and is not a privileged conversation. In any event, the argument is beside the point. As discussed above, Plaintiff's beliefs about the legal status of her communications (are they privileged or not) is irrelevant. *See In Re Grand Jury Subpoenas Duces Tecum*, 112 F.3d at 924 ("there is no compelling reason that a reasonable-mistake-of-law rule should apply in the realm of privileges").

Second, Plaintiff suggests that because she has not put her communications with Fleming "at issue," no "implied waiver" can be found. *See* Opp. at 8:13-14. This argument is sideways. Plaintiff has not *impliedly* waived privilege, as in the advice-of-counsel cases she cites. *She expressly* waived the privilege by destroying the confidentiality that is a prerequisite to maintaining a privilege claim. *See Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647

1   F.2d 18, 25 (9th Cir. 1981). In sum, Plaintiff waived any conceivable claim of privilege over her

2   communications with Fleming.

3   **V.    UNIVERSAL'S MOTION SEEKS HIGHLY RELEVANT INFORMATION**

4          Plaintiff at the close of her brief questions whether any of the material sought by

5   Universal's motion is relevant. Given Plaintiff's admission that these communications expressly

6   concern events at the center of this lawsuit, this is a surprising argument; it is also meritless.

7          *Communications with Fleming are highly relevant to Plaintiff's allegation that her*

8   *video's unauthorized use of "Let's Go Crazy" constituted "self-evident non-infringing fair use*

9   *under 17 U.S.C. § 107."* Plaintiff alleges in her Second Amended Complaint that Universal may

10   be liable for misrepresentation because Plaintiff's use of "Let's Go Crazy" was a "self-evident

11   non-infringing fair use[.]" SAC ¶ 34. To be clear: this allegation entails a wholly incorrect

12   statement of law in the Ninth Circuit. In *Rossi*, the Ninth Circuit expressly held that § 512(f)

13   encompasses a "subjective, rather than objective, standard." *Rossi*, 391 F.3d at 1004.

14   Nevertheless, Plaintiff *herself* has put the allegation at issue, and Universal must be able to take

15   discovery to be prepared to respond to it. Plaintiff's communications to Fleming, made within

16   hours or days immediately following her receipt of Universal's notice, are highly relevant to her

17   allegation that her video was "self-evident[ly]" fair use; to the reasonableness of Universal's

18   belief to the contrary; and to whether Plaintiff (or her friend) believed that Plaintiff's use was " so

19   obvious that a copyright owner could not reasonably believe that actionable infringement was

20   taking place." Order Denying Def.'s Motion to Certify Interlocutory Appeal, Doc. No. 53, at

21   4:13-15.

22          *Communications with Fleming are relevant to Plaintiff's claim of damages.* Plaintiff's

23   Opposition to Universal's Motion to Compel regarding damages, filed concurrently with her

24   present Opposition, argues at length that Plaintiff may satisfy the required element of damages

25   under 17 U.S.C. § 512(f) by her *pro bono* counsel's time spent responding to Universal's notice

26   of infringement. *See* Opp. to Motion to Compel re: Damages, Doc. No. 100 at 6:14-7:6. She also

27   claims as damages the "time" she allegedly spent responding to Universal's notice, her loss of

28   access to her video on YouTube for several weeks, as well as harm to her "free speech" rights.

1    *See id.* at 6:5-6; SAC ¶ 38.  To the extent Plaintiff therein includes any time spent speaking with

2    Fleming or indeed a claim to Fleming's own time as compensable under the statute,

3    communications are relevant to a required element of Plaintiff's claim.  Moreover, Plaintiff's

4    contemporaneous communications with Fleming also could provide relevant evidence of

5    Plaintiff's own "time" and alleged harm to her "free speech."

6          ***The communications are highly relevant to Plaintiff's credibility and Universal's***

7    ***affirmative defenses.***  Finally, communications between Plaintiff and Fleming are relevant to

8    establishing or challenging Plaintiff's credibility and supporting Universal's affirmative defenses.

9    Plaintiff has made allegations regarding her state of mind immediately following receipt of

10   Universal's notice.  Namely, she alleges that Universal's notice was "intimidating" and that, as a

11   result, she is "now fearful that someone might construe some portion of a new home video to

12   infringe a copyright." SAC ¶ 38.  In connection with the present Motion, Plaintiff contends that

13   she was "[s]hocked" and "confused" by the notice.  Lenz. Decl. ¶ 10.  She has also alleges that

14   she suffered "harm to her free speech rights" as a result of Universal's notice.  SAC ¶ 38.

15   Universal, contrariwise, has raised as an affirmative defense Plaintiff's bad faith.  Answer to

16   SAC, Doc. No. 52, ¶ 40.  The conversations Plaintiff had with an admitted friend immediately

17   following receipt of the challenged notice are highly relevant to Plaintiff's alleged fear, state of

18   mind, and perception of chilled speech, as well as to her good or bad faith in bringing this claim

19   against Universal.  Plaintiff cannot shield what may be among the most relevant communications

20   in the case behind an erroneous and unfounded privilege claim.

21   **VI.    CONCLUSION**

22          For these reasons, and those set forth in Universal's moving papers, Universal respectfully

23   requests that the Court grant its motion.

24

25

26

27

28

1

2

3   Dated: August 5, 2009                    MUNGER, TOLLES & OLSON LLP

4

5                                            By:          */s/ Kelly M. Klaus*
                                                         KELLY M. KLAUS

6                                            Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28