ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA 94110
Telephone:    (415) 436-9333
Facsimile:    (415) 436-9993
Email: fred@eff.org; kurt@eff.org
        corynne@eff.org

FOLGER LEVIN & KAHN LLP
MICHAEL F. KELLEHER
SUZANNE ELIZABETH RODE
275 Battery Street, Suite 2300
San Francisco, CA 94111
Telephone:    (415) 986-2800
Facsimile:    (415) 986-2827
Email: mkelleher@flk.com; srode@flk.com

KEKER & VAN NEST, LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN -#198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
Email: mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                              Defendants. | Case No. C 07-03783-JF<br><br>**DECLARATION OF MELISSA J. MIKSCH IN SUPPORT OF ADMINISTRATIVE MOTION TO MODIFY CASE MANAGEMENT SCHEDULE**<br><br>**[ADMINISTRATIVE MOTION AND PROPOSED ORDER FILED HEREWITH]**<br><br>Judge:      The Hon. Jeremy Fogel<br>Date Comp. Filed:    July 24, 2007<br>Trial Date: March 19, 2010 |

449925.01

I, MELISSA J. MIKSCH, declare and state:

1.      I am an attorney licensed to practice law in the State of California and am associated with Keker & Van Nest LLP, attorneys for plaintiff Stephanie Lenz in the above-captioned action.

2.      I have knowledge of the facts set forth herein, and if called upon as a witness thereto, I could do so competently under oath.

3.      On August 19, 2009, Judge Seeborg heard argument on the parties' motions to compel.  I argued on behalf of Ms. Lenz that Universal's document production indicated a failure to conduct a sufficient search and that the problem could have been in the choice of custodians, in the search protocol for existing custodians, or both.  I did not spell out a specific proposal of how Universal should remedy the defects because neither I nor my co-counsel believe we have sufficient knowledge of who are potentially relevant custodians and what Universal' search protocol was to formulate such a proposal.

4.      After the argument, Kelly Klaus, Universal's lead counsel, and I spoke briefly about deposition scheduling.  Mr. Klaus stated that he expected to be in trial the week of September 21.

5.      On August 25, 2009, Judge Seeborg ordered each of the parties to produce additional documents by September 14, 2009.  A true and correct copy of this Order (highlighted for the Court's convenience) is attached hereto as Exhibit A.

6.      On August 27, 2009, Mr. Klaus and I met and conferred by telephone about Universal' compliance with Judge Seeborg's Order of August 25, 2009, and about modifying the discovery schedule for this case.

7.      I explained in that phone call that Plaintiff wants to have Universal' complete production, including the additional documents to be produced in accordance with Judge Seeborg's order, before taking depositions.  I proposed that the parties jointly stipulate to a schedule modification

8.      Mr. Klaus responded that he would like to include in the same document a stipulation that Universal need not search Raul Gonzalez's documents, as ordered by Judge

1

449925.01

1    Seeborg.  Mr. Klaus stated in our call that Universal would agree to search for replies to four

2    particular emails but would not search and produce any of Raul Gonzalez's electronic documents

3    because those documents are now on backup tapes.  In an email sent August 27, 2009, Mr. Klaus

4    stated that those documents "have been on backup tapes since [Mr. Gonzalez] left [Universal]"

5    on August 3, 2009.  A true and correct copy of this email (highlighted for the Court's

6    convenience) is attached hereto as Exh. B.

7           9.      I asked Mr. Klaus in that conversation if he would propose an alternative means

8    of satisfying Judge Seeborg's order that Universal search Mr. Gonzalez's documents as a means

9    of remedying the deficiencies in their production.  Mr. Klaus offered only to conduct a targeted

10   search for replies to four particular emails and declined to offer a more detailed proposal.

11   Rather, Mr. Klaus said that he would consider what I could propose as an intermediate

12   alternative between the narrow targeted search he offered and a full search of Mr. Gonzalez's

13   documents.

14          10.     Later that day, I sent Mr. Klaus an email explaining that after considering the

15   issue further, I and my co-counsel determined that we could not come up with a meaningful

16   proposal because we did not have any information about who might be potential additional

17   custodians or what Universal had used as a search protocol.  I asked Mr. Klaus either to provide

18   us with information we could use to formulate a supplementary search for Universal, or to put

19   forward his own thoughts for our consideration.  I attached a proposed stipulation to modify the

20   case management schedule and explained that I had concluded it would be simpler to address

21   any accommodation reached regarding Mr. Gonzalez's documents in a separate stipulation.  Exh.

22   B at 2.

23          11.     Mr. Klaus replied that Universal would only "agree to one stipulation addressing

24   both of our issues," and therefore would not stipulate to modify the case management schedule

25   because Plaintiff would not stipulate to excuse Universal from Judge Seeborg's order to search

26   Mr. Gonzalez's documents.  Mr. Klaus did not respond to my request either to put forward a

27   proposal for Universal' supplemental search or to provide us information we could use to do so.

28   Exh. B at 1.

DECL. OF MELISSA K. MIKSCH IN SUPPORT OF ADMIN. MOTION TO MODIFY CASE
MANAGEMENT SCHEDULE
CASE NO. C 07-03783-JF

449925.01

12.     On August 27, 2009, after our telephone call, I received an email from Mr. Klaus proposing dates for four of the five deponents Plaintiff will notice.  The dates offered were September 3, 8, 10, and 11.  On August 28, 2009, I responded to Mr. Klaus by email and repeated Plaintiff's request to depose Universal' witnesses after the production September 14 production deadline.  Mr. Klaus responded by email on August 31, 2009, refusing to provide later dates and threatening that Plaintiff would be "cancelling the depositions at [her] own risk" if she declined to proceed on the dates Universal had offered.

13.     Attached hereto as Exhibit B is a true and correct copy of the Order issued by Magistrate Judge Seeborg on August 25, 2009 (Dkt. No. 150), compelling supplemental production from both parties (highlighted for the Court's convenience).

14.     Attached hereto as Exhibit C is a true and correct copy of Universal' Motion for Leave to File a Motion for Reconsideration of Judge Seeborg's Order, filed on August 28, 2009 (Dkt. No. 157).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on August 31, 2009, in San Francisco, California.


___/s/ Melissa J. Miksch_____
MELISSA J. MIKSCH

449925.01

# EXHIBIT A

*E-Filed 8/25/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEPHANIE LENZ,

                Plaintiff,

    v.

UNIVERSAL MUSIC CORP., et al.

                Defendants.

_____/

NO. C 07-3783 JF (RS)

**ORDER: (1) GRANTING UNIVERSAL'S MOTION TO COMPEL RE: DAMAGES; (2) GRANTING UNIVERSAL'S MOTION TO COMPEL COMMUNICATIONS; AND (3) GRANTING IN PART AND DENYING IN PART LENZ'S MOTION TO COMPEL DOCUMENTS**

## I.  INTRODUCTION

Plaintiff Stephanie Lenz has brought an action against defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively "Universal") alleging a violation of 17 U.S.C. § 512(f) stemming from a thirty second video she posted on YouTube.  The video features her young toddler performing an impromptu dance to the song "Let's Go Crazy" by the artist professionally known as Prince.  Universal administers the copyright to the composition.  Lenz entitled the video "Let's Go Crazy #1."  On June 4, 2007, Universal sent YouTube a notice requesting that YouTube remove the video Lenz posted.  YouTube complied and sent Lenz an email notifying her that it had done so.  After receiving two e-mails from Lenz demanding that the video be restored, YouTube agreed.  Lenz thereupon brought suit against Universal in connection with its takedown notice.

United States District Court

For the Northern District of California

1       Three discovery motions are at issue here.  In the first, Universal moves to compel Lenz to

2   produce documents relating to her alleged damages.  In the second, Universal moves to compel Lenz

3   to produce communications with non-lawyer Theryn Fleming.  In the third, Lenz moves to compel

4   Universal to produce documents responsive to request numbers 1-6, 9-10, 14, 16.  For the reasons

5   set forth below, Universal's motions will be granted, and Lenz's motion will be granted in part and

6   denied in part.

7                           II.  DISCUSSION

8   A.    <u>Motion to Compel Re: Damages</u>

9       Lenz filed her original complaint against Universal seeking damages under Section 512(f)

10  based on her allegation that Universal knowingly misrepresented that her video was infringing.

11  Ultimately, Lenz filed a second amended complaint ("SAC") on April 18, 2008, alleging that she

12  was injured as a result of Universal's actions.  As part of that injury, Lenz points to the financial and

13  personal expenses associated with responding to Universal's claim.

14      Universal moved to dismiss the SAC for failure to allege any damages under Section 512(f).

15  In denying Universal's motion, the presiding judge based his order on Lenz's representation that she

16  incurred actual damages in reviewing the notice procedures, seeking the assistance of an attorney,

17  and responding to the takedown notice.

18      Universal now seeks to obtain from Lenz any supporting materials regarding her claimed

19  damages.  The parties dispute the scope of damages available under Section 512(f).  In particular,

20  the parties disagree as to whether damages under Section 512(f) should include: (1) litigation fees

21  and costs; (2) *pro bono* fees and costs; and/or (3) non-pecuniary losses such as compensation for

22  time spent responding to the takedown notice.   Lenz argues that she does not need to produce

23  records reflecting any of these damages.  The question of whether or not certain types of damages

24  are recoverable for a Section 512(f) claim need not be resolved for the purposes of this motion.  It is

25  undisputed that damages constitute a requisite element of Lenz's Section 512(f) claim.  Universal,

26  therefore, is entitled to know how Lenz calculates and supports those alleged damages, whether or

27  not all or part of them are ultimately adjudged to be recoverable.

28

**United States District Court**
For the Northern District of California

1    Simply put, to the extent Lenz claims entitlement to damages of any kind she needs to

2    describe the type and extent of them in discovery.  While Lenz claims she produced evidence of her

3    damages, her initial disclosures fail to provide a complete computation.  At the same time, to the

4    extent that certain categories of claimed damages, such as litigation fees, will be evolving and

5    increasing, a detailed calculation at this point is not necessary.  Instead, Lenz will be ordered to

6    provide a damages computation up to the filing of this motion, listing the lump sum fees and costs to

7    date and including a computation for all damages she claims to have incurred that predate the filing

8    of this action.  Lenz will not be required to produce detailed attorney time records at this time but

9    may be required to do so before the close of discovery in the event that the presiding judge

10   concludes that such damages are recoverable.  Any responsive documents consistent with this order

11   shall be produced within twenty days of the date of this order.

12   B.    Motion to Compel Communications

13   Universal seeks production of all communications between Lenz and Theryn Fleming.  After

14   receiving the notice of removal from YouTube, Lenz allegedly turned to Fleming, who is not an

15   attorney, to assist Lenz in understanding the accusations against her.  Lenz represents that because

16   Fleming attended law school in Canada, she believed Fleming was entitled to practice law in the

17   United States.  Consequently, Lenz asserts attorney-client privilege as the grounds to withhold

18   communications she had with Fleming.

19   The Ninth Circuit has explained that to invoke attorney-client privilege: (1) legal advice must

20   be sought, (2) from a professional legal adviser in his or her capacity as such, (3) with the

21   communication relating to that purpose, (4) made in confidence, (5) by the client.  *Admiral Ins. Co.*

22   *v. U.S. Dist. Ct.*, 881 F.2d 1486, 1492 (9th Cir. 1989).  "[T]he privilege normally extends both to the

23   substance of the client's communication as well as the attorney's advice in response thereto."  *In re*

24   *Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

25   Fleming is not an attorney, and it is undisputed that Lenz never formed an express

26   attorney-client relationship with her.  Instead, Lenz contends that an attorney-client relationship

27   should be implied because she reasonably believed that Lenz was her counsel.  In support of that

28

3

**United States District Court**
For the Northern District of California

1  contention, Lenz explains that while aware Fleming did not practice law, she was under the

2  impression that a law degree was all that was required to do so.

3       The Ninth Circuit has not directly addressed whether a "reasonable belief" exception can

4  substitute for actual attorney involvement in invoking privilege. *United States v. Munoz*, 233 F.3d

5  1117, 1128 n.2 (9th Cir. 2000). Courts in other jurisdictions have recognized that, in limited

6  circumstances, "the [federal] privilege may apply where a party reasonably but mistakenly believes

7  that an attorney represents him rather than another party." *Id.* (citing *In re Grand Jury Subpoena*

8  *Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997); *United States v. Hart*, Crim.A. No. 92-219, 1992

9  WL 348425, at *1-2 (E.D. La. Nov. 16, 1992)).

10      Even assuming a "reasonable belief" exception applies, the evidence Lenz presents is

11  insufficient to carry her burden of establishing an attorney-client relationship with Fleming. *See*

12  *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973) ("The burden of establishing the

13  existence of an attorney-client relationship rests on the claimant of the privilege who resists

14  disclosure of shielded communication."). First, as evidence of an implied attorney-client

15  relationship, Lenz explains that when confused about the counter-notice process she turned to

16  Fleming to help understand it. Lenz Decl., ¶¶ 2, 10, 13. Lenz, however, fails to explain the nature

17  of Fleming's assistance or how it relates to the communications for which she claims the privilege.

18  Second, there is no dispute that Fleming steered Lenz towards qualified counsel. *Id.*, ¶ 15. Fleming

19  thereby made it unmistakably clear that she did not represent Lenz. Third, there is no evidence from

20  Fleming herself indicating what she explained to Lenz that created Lenz's purportedly mistaken

21  belief that Fleming gave her confidential legal advice. Finally, and most importantly, believing that

22  a person who attends law school in Canada somehow qualifies her to practice law in the United

23  states is itself not a reasonable belief.

24      Because Lenz fails to show she had an express or implied attorney-client relationship with

25  Fleming, the attorney-client privilege is inapplicable to communications and documents between

26  them. Lenz therefore must produce any such documents within twenty days of the date of this order.

27  C.    Motion to Compel Documents

28

United States District Court

For the Northern District of California

Lenz moves to compel Universal to produce: (1) all documents Universal generated after Lenz filed her original complaint (request number one); (2) communications between Universal and third parties about Lenz and/or her video (request numbers two and three); (3) agreements between Universal and YouTube touching on YouTube's responses to Universal's allegations of infringing material (request number four); (4) communications between Universal and Prince (request numbers five and six); (5) documents relating to Universal's decision to send a takedown notice for Lenz's video (request number nine); (6) Universal's policies and procedures governing its requests to take down allegedly infringing material (request numbers ten and eleven); (7) any documents relating to attempts to exploit the market for the "Let's Go Crazy" composition (request number fourteen); and (8) documents relating to the scope of Universal's interest in the copyrighted work at issue (request number sixteen).

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of any nonprivileged matter that is relevant to any party's claims or defenses, or "for good cause," discovery of any matter relevant to the subject matter involved in the action. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.

1.     Request Number One

Request number one seeks all documents Universal generated after Lenz filed her original complaint on July 24, 2007. Universal objects to this request on the grounds of lack of relevance and undue burden. Lenz seeks to prove that Universal sent a takedown notice claiming that her video infringed a copyright without having a good faith belief that her video actually did so. Lenz's SAC specifically includes allegations based on Universal's conduct after Lenz originally filed suit. Lenz, therefore, is entitled to explore documents Universal generated after her original complaint which may shed light on its general practices and on the question of its good faith in issuing takedown notices.

Beyond the issue of relevance, Universal argues that because the discovery cut-off is September 24, 2009, it would create an undue burden for it to review the 1,490 documents it identified as responsive. While there will no doubt be additional effort involved in searching for any

United States District Court

For the Northern District of California

1    additional responsive materials, the conclusory burden argument does not outweigh Lenz's right to

2    the materials requested.

3           Associated with the scope of her request, Lenz seeks to compel Universal to expand the

4    number of officials whose records must be searched for responsive documents.  Universal identified

5    three individuals who were most likely to have relevant materials: Robert Allen, Universal's Vice

6    President of Business Affairs, who had primary responsibility for communicating with Prince, an

7    attorney who sent the notice to YouTube, and an employee who was involved in preparing the

8    notice.  Universal searched the electronic files of these three individuals and found approximately

9    4,100 responsive documents.  Universal produced all non-privileged documents.

10          Lenz has made the requisite showing that a search for responsive materials should be

11   expanded to include records maintained by Raul Gonzalez who interacted with Universal's copyright

12   officials in connection with takedown notices.  Accordingly, Lenz's motion to compel production of

13   documents pursuant to request number one shall be granted in terms of expanding the period

14   involved and adding an additional document custodian.

15          2.      Request Numbers Two and Three

16          Request numbers two and three seek communications between Universal and third parties

17   about Lenz and/or her video.  Specifically, Lenz seeks materials surrounding a statement Universal

18   released to ABC on October 25, 2007.  Universal represents that it contacted Peter Lofrumento, the

19   person who made the statement to ABC, to collect any communications regarding that statement.

20   Lofrumento states that he communicated with ABC by telephone, and thus, there are no written

21   documents to produce.  Accordingly, as Universal has represented no responsive documents exist in

22   its possession, no further production will be ordered.

23          3.      Request Number Four

24          Request number four seeks agreements between Universal and YouTube regarding

25   YouTube's responses to Universal's allegations of infringing material.  In particular, Lenz believes

26   that Universal's production is incomplete because a June 28, 2007 Content License Agreement

27   between Universal and YouTube indicates there is an attachment labeled as Exhibit C.  Lenz,

28   however, has not received a copy of this exhibit from Universal or YouTube.  Universal represents

United States District Court

For the Northern District of California

1   that it produced its copy of the agreement to Lenz and its files contain no text to Exhibit C which

2   apparently was not attached in the first instance.  As Universal has represented that it does not

3   possess an Exhibit C, it need not respond further to this request.

4        4.      Request Numbers Five and Six

5        Request numbers five and six seek communications between Universal and Prince.

6   Universal objects to these requests on the grounds of lack of relevance and privilege.  Regarding

7   relevance, Lenz presents evidence suggesting that Universal sent hundreds of takedown requests for

8   videos involving Prince's works simply because it was urged to do so by the artist and without

9   reference to infringing conduct.  If Universal sent such letters without further inquiry but simply to

10  appease one of its artists, Lenz argues it will be difficult for Universal to claim a good faith belief

11  that she misappropriated copyrighted material.  Communications between Universal and Prince

12  about takedowns for any of his works thus are reasonably calculated to lead to evidence about the

13  formation of Universal's good faith belief in sending the letters.

14      As to Universal's claim of attorney-client privilege, it bears the burden of establishing each

15  element of that privilege.  *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996).

16  While acknowledging the absence of any express attorney-client relationship between it and Prince,

17  Universal argues that, pursuant to a 2005 Administration Agreement giving it the sole right to take

18  legal action on the artist's behalf, Universal is acting as Prince's agent or attorney-in-fact.

19      Establishing that it acted as Prince's agent or "attorney-in-fact," does not satisfy Universal's

20  burden to demonstrate that these communications are protected by the attorney-client privilege.  As

21  a general rule, an attorney who serves a client in a business capacity may not assert the

22  attorney-client privilege owing to the absence of a confidential relationship to provide legal advice.

23  *United States v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980).  Ordinary business advice is not

24  protected.  Here, the agreement in question provides that if Prince notifies Universal of

25  infringement, Universal may choose to retain attorneys to pursue the matter, but is not required to do

26  so.  If an attorney is retained, Universal maintains complete control over the litigation.  If Universal

27  declines to hire counsel, Prince is left to decide whether he wants to pursue legal action at his own

28  expense.  In short, it appears that the agreement simply designates Universal to act as an agent with

7

respect to Prince's business interests, but does not represent retention of Universal in-house counsel to provide him with legal services. Universal, therefore, shall produce any documents responsive to request numbers five and six within twenty days of the date of this order.

5.   Request Numbers Nine, Ten and Eleven

Request number nine seeks documents relating to Universal's decision to send a takedown notice for Lenz's video. Closely related, request numbers ten and eleven seek Universal's policies and procedures governing its requests to take down allegedly infringing material.[1] Universal's search for documents relating to its practices resulted in the production of numerous documents from Robert Allen, Universal's Vice President of Business Affairs. Some of these materials were produced to Lenz while others were designated as privileged because Allen is an attorney. Lenz contends that these materials are non-privileged business communications and must be produced. Universal maintains that part of Allen's job includes communicating legal advice when questions arise concerning specific legal issues surrounding the issuance of takedown notices.

There is no dispute that Allen wears two hats for Universal as he conducts business as well as legal affairs. "[T]he presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel . . . [b]ecause in house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). Universal, however, has not indicated that the "primary purpose" of Allen's communications reflecting Universal's practices for sending a takedown notice to Lenz or others was to render legal advice. As Lenz proffers, it is entirely plausible that Allen's statements to the unidentified employees sending out the takedown notices does not constitute legal advice because such notices may be dispatched as part of a business strategy to appease client artists. In short, Universal has not met its burden of showing that any privilege attaches to Allen's advice.

Without more, the Court cannot simply assume that every communication involving Allen as in-house counsel that related to these transactions was made primarily for the purpose of securing

---

[1]   Universal represents that it does not have a written policy regarding the sending of notices.

8

legal advice where that same in-house counsel also helped implement business decisions. Universal must therefore clarify whether each document or communication identified by Allen as privileged was created for the primary purpose of providing legal advice or essentially for a business purpose.

Accordingly, Universal is ordered to supplement its privilege log by September 1, 2009, addressing the issue noted above. Thereafter, the parties shall meet and confer in a good faith effort to reach agreement as to what, if any, documents have properly been withheld, and then to submit a joint report by September 8, 2009, advising the Court of any documents identified in Lenz's motion that are being withheld on the basis of privilege that remain in dispute.

6. Request Number Fourteen

Request number fourteen seeks any documents relating to attempts to exploit the market for the "Let's Go Crazy" composition. Universal represents that the only actual or potential market for "Let's Go Crazy" affected by Lenz's video is whatever market exists for synchronization licenses specific to the song itself. Based on this representation, Lenz no longer seeks an order compelling production of non-synchronization licenses, or licenses that are not specific to "Let's Go Crazy." That said, Lenz still seeks documents relating to other attempts to enter into "Let's Go Crazy" synchronization licenses including materials relating to the license entered into for an episode of "The Late Show with David Letterman" ("Letterman license").[2] Universal acknowledges that it will produce one license, but it is unclear whether it is the Letterman license.

Besides the one license Universal has agreed to produce, it argues that other such licenses have no conceivable relevance to this case. Contrary to Universal's argument, other licenses are relevant to the question of whether or not Lenz's video is a fair use of "Let's Go Crazy," and therefore, did not warrant a takedown notice. Accordingly, Lenz is entitled to these documents or to confirmation that no further licenses exist.

7. Request Number Sixteen

---

[2] In its opposition, Universal indicates that it identified and will produce in a supplemental response one license that specifically licensed "Let's Go Crazy" for synchronization with audio-visual images.

9

United States District Court
For the Northern District of California

1    Request number sixteen seeks documents relating to the scope of Universal's interest in the

2  copyrighted work at issue.  In Universal's June 4, 2007 takedown notice, it claimed that Lenz's video

3  infringed the musical composition "Let's Go Crazy," Copyright Reg. No. PA0000217248.  As a

4  result, Lenz argues that she is entitled to receive a copy of the work Universal identified.  Universal

5  contends that the deposit copy of the song is not relevant to the claims or defenses in this case, and it

6  does not have a copy of the song that was deposited with the Copyright Office.  As Universal has

7  represented it does not possess such a copy, no further production shall be required.

8                                        III.  CONCLUSION

9          Universal's motions to compel regarding damages and communications with Fleming are

10  granted.  Lenz shall produce the material requested as outlined above.  Lenz's motion to compel is

11  granted in part and denied in part.  As to request numbers two, three, four, and sixteen no further

12  production will be ordered.  With respect to the remaining requests, Universal shall produce the

13  information requested as explained above within twenty days of the date of this order except for

14  request numbers nine, ten, and eleven.  For those three requests, Universal shall follow the

15  instructions provided above.

16          IT IS SO ORDERED.

17

18  Dated: 8/25/09
                                         _____
19                                        RICHARD SEEBORG
                                         United States Magistrate Judge
20

21

22

23

24

25

26

27  ORDER: (1) GRANTING UNIVERSAL'S MOTION TO COMPEL RE: DAMAGES; (2) GRANTING UNIVERSAL'S
    MOTION TO COMPEL COMMUNICATIONS; AND (3) GRANTING IN PART AND DENYING IN PART LENZ'S
28  MOTION TO COMPEL DOCUMENTS
    C 07-3783 JW (RS)
                                              10

# EXHIBIT B

**Melissa J. Miksch**

---

**From:**    Klaus, Kelly [Kelly.Klaus@mto.com]
**Sent:**    Thursday, August 27, 2009 3:25 PM
**To:**    Melissa J. Miksch; LeMoine, Melinda
**Cc:**    Michael S. Kwun; Fred von Lohmann EFF
**Subject:** RE: Lenz v Universal: Supplemental Production/Stip re Schedule

Melissa:

I'm sorry that is your position. I'm also surprised to hear you say that you have some question about when Mr. Gonzalez left Universal. When we met and conferred in February, I told you and Michael that Mr. Gonzalez left Universal in August 2007, which was just after Plaintiff filed her initial complaint, and that his files were therefore on backup since he left. I assume the fact that you knew Mr. Gonzalez's files were only available on backup is why you did not include a request to add him as a custodian in your motion, and why you did not say anything about Mr. Gonzalez when Judge Seeborg discussed the only custodian issue he raised at the hearing, concerning Mr. Allen. Your suggestion that we add other custodians or broaden our search criteria are not well-taken, for reasons I have previously explained to you. We will be filing a motion with Judge Seeborg pointing out all of the facts and asking him to modify his Order to remove the requirement that Universal add Mr. Gonzalez as a custodian.

I also told you that we would be willing to agree to one global stipulation that addressed both of our issues, so it looks like we have no stipulation. Mr. Lofrumento's deposition will not be going forward on September 1. Assuming that you still agree to do that by videoconference, I will check for dates for him, and confirm dates for the other witnesses you requested (Allen, Gonzalez, Johnson and Moffat) before the 24th. Let's plan to talk at the start of next week about the deposition schedule.

Also, when we spoke yesterday, I did not say anything about what Universal intends to do in terms of construing the Court's Order on Request No. 14. I told you that I am discussing this with my client, and Universal of course will comply with the Court's Order.

Best,
Kelly

---

**From:** Melissa J. Miksch [mailto:MMiksch@kvn.com]
**Sent:** Thursday, August 27, 2009 3:10 PM
**To:** Klaus, Kelly; LeMoine, Melinda
**Cc:** Michael S. Kwun; 'Fred von Lohmann EFF'
**Subject:** Lenz v Universal: Supplemental Production/Stip re Schedule

Dear Kelly & Mindy,

Attached please find a draft joint stipulation and proposed order to modify the case management schedule, as we discussed on the phone yesterday. Though we had contemplated including a placeholder for any stipulation we are able to reach regarding Universal's supplemental production, I came to the conclusion while drafting that it would be clearer to address those issues in two separate stipulations rather than combining them. I've therefore not included a placeholder in this document, but let me know if you see things differently. Just to be clear, we are not planning to go forward with Mr. Lofrumento's deposition on Sept. 1 since I understood from our call that we agreed in principle to extend the fact discovery cutoff. Please let me know if that's incorrect.

Regarding the nature of Universal's supplemental production, I understood you to say yesterday that Universal intends to investigate who is likely to have, and to search for, documents relating to any negotiations or attempts to enter synchronization license for Let's Go Crazy. Please let me know if that's not right.

As for saisfying Judge Seeborg's order to search Raul Gonzalez's material, we've thought about what we can propose as a supplementary search in lieu of searching the backup tapes for his electronic files. As a preliminary matter, when did Mr. Gonzalez leave Universal? And when did his electronic files cease to exist other than on backup tapes?

As I said in our telephone conversation, we cannot agree that a narrowly targeted search for responses to the emails from YouTube that we discussed will suffice. (Those emails were produced with beginning Bates numbers UMC-0000425, UMC-0000367, UMC-0000385, and UMC-0000346). Universal's inability to determine, based on its original search, whether any responses to those emails actually exist indicates that its original search was not sufficiently comprehensive to warrant the conclusion that it captured all responsive documents that might exist. (Especially since Universal's original search did not yield the Universal-YouTube agreement or the Universal-Prince agreement, both of which were specifically requested in our RFPs).

8/28/2009

We therefore think that Universal has to do something more than a spot-check for particular documents to satisfy its discovery obligations in this case.  Based on the knowledge we have, we think Universal would need to add new custodians or broaden its search protocol for existing custodians or some combination thereof.  We can't tell you exactly who we think Universal needs to search with what search terms because we don't know what Universal's original search protocol was or who else at Universal besides Mr. Allen, Mr. Johnson, Ms. Moffat and Mr. Gonzalez is involved with sending takedown notices.  (We did ask for documents sufficient to identify those individuals in RFPs 21 and 22, but Universal simply objected and hasn't produced any documents that provide us with information we could use in formulating Universal's supplementary search).

If you would like us to make a more specific proposal before Universal puts forward its own thoughts, please let us know who are the individuals at Universal who are responsible for sending takedown notices and what each person's role is in the takedown process (ie, if someone only deals with YouTube, or only with alleged infringement of lyrics, or only with international markets, or only with artist relations in connection with takedowns for that artist's work...).

Alternatively, we are of course open to hearing from you about what you would propose as a remedy and working with you from there.

Best regards,
Melissa

---

**Melissa J. Miksch** | **Keker & Van Nest LLP** | 710 Sansome Street, San Francisco, CA 94111
tel: 415.391.5400 | fax: 415.397.7188 | email: mmiksch@kvn.com

This message is intended only for the use of the individual or entity to whom it is addressed. The message is confidential and may contain attorney-client information, attorney work product or other privileged information. If you are not the intended recipient, you are hereby notified that any use or dissemination of this message is strictly prohibited. If you received this message in error, please notify the sender by replying to the message. When complete, please delete the original message.

# EXHIBIT C

1  KELLY M. KLAUS (SBN 161091)
   Kelly.Klaus@mto.com
2  MELINDA E. LEMOINE (SBN 235670)
   Melinda.LeMoine@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
4  Thirty-Fifth Floor
   Los Angeles, CA  90071-1560
5  Telephone:     (213) 683-9100
   Facsimile:     (213) 687-3702
6
7  Attorneys for Defendants
   UNIVERSAL MUSIC CORP.,
   UNIVERSAL MUSIC PUBLISHING, INC.
8  and UNIVERSAL MUSIC PUBLISHING
   GROUP
9

10

11               UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14

15  STEPHANIE LENZ,                      CASE NO.  CV-07-03783-JF (RS)

16                  Plaintiff,           **UNIVERSAL'S MOTION FOR LEAVE
                                         TO FILE MOTION FOR
17        vs.                            RECONSIDERATION REGARDING
                                         PORTION OF AUGUST 25, 2009
18                                       ORDER REQUIRING UNIVERSAL
                                         TO ADD FORMER ATTORNEY
19  UNIVERSAL MUSIC CORP.,               RAUL GONZALEZ AS A
    UNIVERSAL MUSIC PUBLISHING, INC. and DOCUMENT CUSTODIAN**
20  UNIVERSAL MUSIC PUBLISHING GROUP,
                                         Date:   N/A
21                  Defendants.          Time:   N/A
                                         Judge:  Hon. Richard G. Seeborg
22

23
                                         [[Proposed] Motion, [Proposed] Orders and
24                                       Declarations of Kelly M. Klaus and Clifton
                                         Lancaster filed concurrently]
25

26

27

28

1

**NOTICE OF MOTION AND MOTION**

2      TO PLAINTIFF AND HER COUNSEL OF RECORD, PLEASE TAKE NOTICE that,

3   pursuant to Civil Local Rule 7-9, Defendants Universal Music Corp., Universal Music

4   Publishing, and Universal Music Publishing Group ("Defendants" or "Universal") will, and

5   hereby do, move the Court for an order granting Universal leave to file the accompanying

6   "[Proposed] Motion for Reconsideration Re Portion of August 25, 2009 Order (Doc. No. 150)

7   Requiring Universal to Add Former Attorney Raul Gonzalez as a Document Custodian,"

8   supported by the accompanying Declarations of Kelly M. Klaus ("Klaus Decl.") and Clifton

9   Lancaster ("Lancaster Decl.").  This motion is based on this Notice of Motion and Motion, the

10  Memorandum of Points and Authorities below, the Klaus and Lancaster Declarations, the papers

11  and exhibits filed in connection with Plaintiff's Motion to Compel (Doc. No. 146), and the files

12  and records of this case.  Proposed Orders granting this Motion for Leave, as well as granting

13  reconsideration, are being lodged concurrently.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

15      Universal respectfully requests that the Court grant it leave to file the accompanying

16  [Proposed] Motion for Reconsideration regarding a single narrow provision of the Court's recent

17  discovery Order, entered August 25, 2009 (Doc. No. 150) (hereinafter "Order").  Specifically,

18  Universal requests that the Court reconsider its ruling that Universal add to its list of document

19  custodians a former Universal in-house attorney Raul Gonzalez.  Order at 6.  There is good cause

20  under Civil Local Rule 7-9 for the Court to reconsider this portion of the ruling, because:

21      •   <u>Plaintiff's motion did not ask for an Order adding Mr. Gonzalez to the custodian</u>

22          <u>list</u>, which is why Universal did not address this issue in opposition;

23      •   <u>Mr. Gonzalez left Universal in August 2007, Mr. Gonzalez's files are available</u>

24          <u>solely on backup tape</u>, and they can be recovered only with significant expense

25          and burden; therefore they are not reasonably accessible to Universal under Fed.

26          R. Civ. P. 26(b)(2)(B);

27

28

---

8659707.1                                    - 1 -                    MOT. FOR LEAVE TO FILE MOT.
                                                                     FOR PARTIAL RECON. C 07-03783-JF (RS)

- <u>The Court did not ask any questions about adding Mr. Gonzalez as a potential custodian at oral argument</u>, although the Court did inquire about another custodian, Robert Allen (who is on Universal's custodian list); and

- As evidenced by Plaintiff's own submission in support of her motion, <u>Mr. Gonzalez routinely copied his communications to Mr. Allen</u>, and Universal therefore has produced (and, pursuant to the expanded cut-off date the Court ordered for Universal's search, will continue to produce) non-privileged documents sent to and from Mr. Gonzalez that may relate to this matter.

Pursuant to Civil Local Rule 7-9(b), Universal believes that there is good cause for the Court to allow it to file the Motion for Reconsideration, and to grant that Motion, for either or both of the following reasons contemplated under Local Rule 7-9.[1]

*First*, as of the time of this motion for leave, "a material difference in fact or law exists from that which was presented to the Court before entry of the [Order] for which reconsideration is sought." Civil L.R. 7-9(b)(1). Specifically, Plaintiff's Motion to Compel (Doc. No. 146) *did not* request that the Court order Universal to add Mr. Gonzalez to Universal's list of custodians. Plaintiff's Proposed Order on her Motion - Docket No. 99 - similarly does not mention Mr. Gonzalez's name or ask that he be added to Universal's custodian list.

It is not surprising that Plaintiff's motion did not ask the Court to add Mr. Gonzalez as a custodian. Mr. Gonzalez left Universal in early August 2007, less than two weeks after Plaintiff filed her original complaint in this action (on July 24, 2007). Klaus Decl. ¶ 2.[2] Moreover, during counsel's meet-and-confer discussions this past February, Universal's counsel explained to Plaintiff's counsel that Mr. Gonzalez was no longer with Universal; that his electronic files exist only on computer back-up tapes and can be recovered only with significant expense and burden;

---

[1] Universal tried to work out a stipulation with Plaintiff's counsel to obviate the need for this motion, but those meet-and-confer discussions did not yield an agreement. *See* page 6, *infra*.

[2] Mr. Gonzalez had not sent (and was not copied on) the notice to YouTube that was the exclusive subject of Plaintiff's original complaint. Kwun Decl. (Doc. No. 147) Ex. A. As we discuss below, Plaintiff's sole theory in her original complaint was that Plaintiff's posting of the "Let's Go Crazy" video was "a self-evident non-infringing fair use under 17 U.S.C. § 107." Compl. ¶ 18 (Doc. No. 1), and made no allegations about any purported "Prince policy" of sending notices to YouTube.

1    and that Universal therefore did not include him as a custodian for electronic documents.  *Id.*  If

2    Plaintiff's motion *had* asked the Court to require Universal to add Mr. Gonzalez as a custodian,

3    Universal would have submitted declarations regarding this part of the meet-and-confer process

4    and attesting to the burden of requiring Universal to retrieve Mr. Gonzalez's electronic files from

5    back-up tapes.  The scope of that burden is described in the accompanying declaration of Clifton

6    Lancaster, who works in the Universal Music Group Global Information Security Office.  Mr.

7    Lancaster describes that the process of reconstructing Mr. Gonzalez's files for search and review

8    would require the hiring of an outside vendor to restore back-up tapes, and that those restoration

9    costs alone likely would exceed $10,000 (and potentially run over $20,000).  Lancaster Decl. ¶ 4.

10   Once back-up tapes are restored, Universal's in-house information and technology personnel then

11   would have to devote considerable time to reconstructing Mr. Gonzalez's files so that they could

12   be provided to counsel for a review for responsiveness and privilege, *id.* ¶ 5, the latter being a

13   formidable task in and of itself, given that Mr. Gonzalez worked as an in-house lawyer for

14   Universal.  Under Federal Rule of Civil Procedure 26(b)(2)(B), Mr. Gonzalez's electronic files

15   are not "reasonably accessible because of undue burden or cost[,]" and Plaintiff has not made

16   (and cannot make) a showing of cause to require Universal to reconstruct Mr. Gonzalez's files.

17         Universal did not address the issue of the accessibility of Mr. Gonzalez's electronic data

18   previously because, as discussed, nothing in Plaintiff's motion or her proposed order asked for an

19   order adding Mr. Gonzalez to Universal's custodian list.  Moreover, at the August 19 hearing on

20   Universal's motion, Plaintiff's counsel did not raise the issue of adding Mr. Gonzalez to the

21   custodian list, and the Court did not ask Universal's counsel any questions about adding Mr.

22   Gonzalez as a custodian.  The Court *did* inquire whether Robert Allen of Universal should be a

23   custodian.  Universal's counsel replied that Mr. Allen is a Universal custodian.  Klaus Decl. ¶ 3.

24   There was no further discussion of custodians at the hearing.

25         For the foregoing reasons, Universal believes it is clear that "a material difference in fact

26   or law exists from that which was presented to the Court before entry of the [Order] for which

27   reconsideration is sought."  Civil L.R. 7-9(b)(1).  Moreover, given that neither Plaintiff nor the

28   Court asked Universal to address the issue of adding Mr. Gonzalez as a custodian, Universal "in

1   the exercise of reasonable diligence … did not know of the [foregoing] fact or law at the time of

2   the interlocutory order." Civil L.R. 7-9(b)(1).

3       *Second*, the Court's Order states with respect to Mr. Gonzalez only that "Lenz has made

4   the requisite showing that a search for responsive material should be expanded to include records

5   maintained by Raul Gonzalez, who interacted with Universal's copyright officials in connection

6   with takedown notices." Order at 6:10-12. With respect, Universal submits that this part of the

7   Order represents "[a] manifest failure by the Court to consider material facts or dispositive legal

8   arguments which were presented to the Court before the [Order]." Civil L.R. 7-9(b)(3).

9       In the first place, Mr. Gonzalez is *not* included on the email to YouTube that is the subject

10  of this case. *See* Kwun Decl. in Support of Pltf's Mot. (Doc. No. 147 Ex. A).[3] Plaintiff has

11  sought discovery beyond that notice as relevant to her allegations about a purported "Prince

12  policy." But the evidence before the Court (including Plaintiff's own evidentiary submission)

13  shows that the electronic files of Universal's existing custodians *include* Mr. Gonzalez's

14  documents concerning the topic of notices other than the one referring to Plaintiff's "Let's Go

15  Crazy" video. Robert Allen, for whom Mr. Gonzalez worked, declared that Mr. Gonzalez

16  routinely copied Mr. Allen on matters relating to the administration of Prince's copyrighted

17  works. Allen Decl. (Doc. No. 113) ¶ 4. And the very documents that Plaintiff relies on in her

18  motion confirm Mr. Gonzalez's practice in this regard. Specifically, Plaintiff submitted (at

19  Exhibit F of the Kwun Declaration) several emails from YouTube to Mr. Gonzalez, copying Mr.

20

---

21  [3] Plaintiff has suggested that there is something nefarious about Universal not collecting Mr.
    Gonzalez's electronic documents for this lawsuit in early August 2007, when he left the company.
22  *See* Klaus Decl. Ex. A. Plaintiff's insinuations are baseless. Plaintiff filed her original complaint
    on July 24, 2007, less than two weeks before Mr. Gonzalez left the company. As the Court may
23  recall from the briefing on Plaintiff's motion, Plaintiff's original complaint said *nothing* about a
    purported "Prince policy," or emails that Universal sent to YouTube other than the one including
24  Plaintiff's posting. Plaintiff's sole theory in her original complaint was that Plaintiff's posting of
    the "Let's Go Crazy" video was "a self-evident non-infringing fair use under 17 U.S.C. § 107."
25  Compl. ¶ 18 (Doc. No. 1). It was not until April of 2008 - *more than eight months after* Mr.
    Gonzalez left Universal and his files existed solely on back-up - that Plaintiff first made
26  allegations about a supposed "Prince policy," which Plaintiff now contends makes other notices
    to YouTube relevant. *See* Second Am. Compl. ¶¶ 28-31 (Doc. No. 34). Indeed, it is the Second
27  Amended Complaint that is the basis for the Court's Order expanding the cut-off for Universal's
    search. Order at 5:21-25. There is no reason why Universal should have made some special
28  effort to retain Mr. Gonzalez's electronic files when Mr. Gonzalez left the company.

---

1   Allen, Sean Johnson (another Universal custodian) and others regarding notices sent to YouTube

2   (none of which relates to the notice concerning Plaintiff's posting). Kwun Decl. (Doc. No. 147

3   Ex. F). *Universal produced all of these emails, which is not surprising given that Mr. Allen*

4   *and Mr. Johnson are electronic data custodians from whom Universal collected documents*.

5   Plaintiff suggested in her motion that something must be wrong with Universal's collection

6   because there are no replies to YouTube in these emails. But Plaintiff's musings about improper

7   or inadequate document collection ignore another (and more reasonable) explanation: that there

8   likely was not be a reply to YouTube on these emails. Why do we say that?

9           (1)     Because *YouTube, which produced thousands of pages of back and forth emails*

10  *with Universal, did not produce a reply from Universal on these documents*;

11          (2)     Because Universal *did* produce (with privileged information redacted out) different

12  internal documents *discussing these very emails*, thus indicating that whatever key words were

13  "hitting" on the text of the emails at Kwun Declaration Ex. H also would hit on any reply email

14  that incorporated the same text, Kwun Decl. Ex. S at 2 ¶ 7; and

15          (3)     Because the emails produced by Defendants (including the emails at Kwun Decl.

16  Ex. F) show that Universal and YouTube routinely hit "reply to all" (i.e., including Mr. Allen or

17  Mr. Johnson, where they were cc'd), and incorporated the text of previous emails in the same

18  string; this once again indicates that, if there were a reply email to YouTube (that YouTube for

19  some reason did not produce) Universal's key word search would have picked it up, and

20  Universal would have produced it.

21          In short, Plaintiff failed to show that there was any need to add Mr. Gonzalez's as a

22  custodian. It is highly likely that any responsive, non-privileged communications to or from Mr.

23  Gonzalez have been (and will continue to be) picked up in Universal's searches of the electronic

24  files of its other custodians, whose files do not exist solely on back-up tape. There certainly is

25  nothing in Plaintiff's showing that justifies putting Universal to the expense and inconvenience of

26  restoring back-up tapes containing Mr. Gonzalez's files in order to search for documents that very

27  likely are duplicated in documents that Universal has produced, and will continue to produce in

28  accordance with the Court's Order.

1                                      *   *   *

2          Universal recognizes that the Court invested a significant amount of time in considering

3   the parties' motions to compel.  Universal only reluctantly brings this motion to the Court.  We

4   attempted to obviate this motion by asking Plaintiff to stipulate that Universal would re-review its

5   hard copy files to ensure there are no responsive, non-privileged *hard-copy* documents of Mr.

6   Gonzalez's to be produced, but that Universal would not be required to incur the expense and

7   inconvenience of restoring back-up tapes to review Mr. Gonzalez's files.  We even discussed that

8   Universal would be willing to conduct targeted searches to see if the replies to YouTube that

9   Plaintiff hypothesizes in her motion actually exist (even though YouTube has not produced

10  them).  Plaintiff refused.  Klaus Decl. ¶ 5 & Ex. A.  Plaintiff's email suggests that she will oppose

11  this motion by asking for a "horse trade," slotting some other person in to replace Mr. Gonzalez.

12  *See id*. Ex. A ("we think Universal would need to add new custodians").  Such a request is unfair,

13  unfounded, and prejudicial.  Plaintiff did not make a showing sufficient to add Mr. Gonzalez, or

14  any other Universal employee, to Universal's custodian list.

15         Universal therefore respectfully requests that the Court grants it leave to file its

16  reconsideration motion and that the Court reconsider this narrow portion of its ruling.

17

18  Dated: August 28, 2009                          MUNGER, TOLLES & OLSON LLP

19

20                                                  By:        */s/ Kelly M. Klaus*
21                                                          KELLY M. KLAUS

22                                                  Attorneys for Defendants

23

24

25

26

27

28