1  KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
2  MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
3  MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
4  Thirty-Fifth Floor
Los Angeles, CA 90071-1560
5  Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702
6
Attorneys for Defendants
7  UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
PUBLISHING, INC. and UNIVERSAL MUSIC
8  PUBLISHING GROUP

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12  STEPHANIE LENZ,                        CASE NO.  C 07-03783 JF (RS)

13              Plaintiff,                 **UNIVERSAL'S OBJECTION TO
                                           MAGISTRATE JUDGE SEEBORG'S
14        vs.                              AUGUST 25, 2009 ORDER
                                           GRANTING MOTION TO COMPEL
15  UNIVERSAL MUSIC CORP., UNIVERSAL       PRODUCTION OF UNIVERSAL-
MUSIC PUBLISHING, INC. and UNIVERSAL       PRINCE COMMUNICATIONS AS
16  MUSIC PUBLISHING GROUP,                TO WHICH UNIVERSAL ASSERTS
                                           PRIVILEGE; MEMORANDUM OF
17              Defendants.                POINTS AND AUTHORITIES IN
                                           SUPPORT THEREOF**
18
                                           Judge:  Honorable Jeremy Fogel
19

20                                         **PUBLIC REDACTED VERSION**

21

22

23

24

25

26

27

28

8765018.1                                         OBJECTION TO MAG. J. RULING
                                                  CASE NO. CV-07-03783

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

II.   BACKGROUND .............................................................................................. 3

    A.   Universal's Administration Agreement With Prince ................................ 3

    B.   Plaintiff's Motion To Compel .................................................................. 4

    C.   The Order Compelling Universal's Production Of The Privileged
        Documents ............................................................................................... 6

III.   ARGUMENT .................................................................................................. 7

    A.   This Court Reviews De Novo Universal's Objection To The Order's Legal
        Ruling ...................................................................................................... 7

    B.   The Order Is Contrary To Law:  Under The Common Interest Doctrine,
        Privileged Communications Between Universal And Prince Related To
        Enforcement Of Prince's Copyrights Remain Privileged ....................... 8

        1.   The Common Interest Doctrine Protects Communications In
            Furtherance Of Common Legal Interests Even Where The Parties
            Communicating Do Not Have An Attorney-Client Relationship
            With Each Other ............................................................................. 9

        2.   The Order Is Contrary To Law Because The Communications In
            Issue Are Privileged Common Interest Communications ................ 10

    C.   The Order Cannot Be Sustained On The Ground That Communications
        Concerning The Legal Enforcement Of Copyright Is A Business Rather
        Than A Legal Subject .............................................................................. 13

    D.   The Communications Also Are Protected Work Product ...................... 14

    E.   The Order Is Contrary To Law Or Clearly Erroneous In Holding The
        Communications Relevant ..................................................................... 16

IV.   CONCLUSION ............................................................................................. 17

OBJECTION TO MAG. J. RULING
CASE NO. CV-07-03783

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Clarke v. American Commerce Nat'l Bank*,
   974 F.2d 127 (9th Cir. 1992) ................................................................ 8

*Coastal States Gas Corp. v. Department of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ............................................................ 13

*Coleman v. Schwarzenegger*,
   2008 WL 4300554 (E.D. & N.D. Cal. Sept. 11, 2008) .......................... 7

*E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*,
   621 F. Supp. 2d 603 (W.D. Tenn. 2009) ............................................... 7

*In re Grand Jury Subpoena*,
   357 F.3d 900 (9th Cir. 2004) ......................................................... 14, 15

*In re Napster, Inc. Copyright Litig.*,
   479 F.3d 1078 (9th Cir. 2007) .............................................................. 3

*In re Regents of the Univ. of Calif.*,
   101 F.3d 1386 (Fed. Cir. 1996) ....................................................... 9, 12

*Kounelis v. Sherrer*,
   529 F. Supp. 2d 503 (D.N.J. 2008) ....................................................... 7

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ...................................... 2, 9, 10, 12

*Rossi v. MPAA*,
   391 F.3d 1000 (9th Cir. 2004) .......................................... 2, 6, 8, 16, 17

*United States v. Bergonzi*,
   216 F.R.D. 487 (N.D. Cal. 2003) .................................................. 9, 10, 12

*United States v. Chen*,
   99 F.3d 1495 (9th Cir. 1996) .............................................................. 13

*United States v. ChevronTexaco Corp.*,
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) ......................................... 10, 11

*Visa U.S.A., Inc. v. First Data Corp.*,
   2004 WL 1878209 (N.D. Cal. Aug. 23, 2004) ............................... 14, 15

## FEDERAL STATUTES

17 U.S.C. § 512(f) ........................................................ 2, 4, 6, 7, 8, 16

## FEDERAL RULES

Federal Rule of Civil Procedure 6(a)(2) ................................................. 1

Federal Rule of Civil Procedure 26(b)(3) ............................................. 15

Federal Rule of Civil Procedure 72(a) ........................................... 1, 7, 12

Local Rule 72-2 ..................................................................................... 1

- ii -

1

2

TREATISES

3   8 C. Wright, A. Miller, and R. Marcus, *Federal Practice and Procedure*
    (2d ed. 1994) ................................................................................................................ 15

4   1 Paul R. Rice, *Attorney-Client Privilege in the United States* (1999 ed.) .......................... 2, 9, 12

5   A. Kohn & B. Kohn, *Kohn on Music Licensing* (3d ed. 2002) ...................................................... 3

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF OBJECTION AND OBJECTION

2      TO PLAINTIFF AND HER COUNSEL OF RECORD: PLEASE TAKE NOTICE that,

3   pursuant to Federal Rule of Civil Procedure 72(a) and Civil Local Rule 72-2, Defendants

4   Universal Music Corp., Universal Music Publishing, and Universal Music Publishing Group

5   ("Defendants" or "Universal") will, and hereby do, Object to Section II.C.4 of Magistrate Judge

6   Seeborg's August 25, 2009 Order (Doc. No. 150) ("Order"), which orders Universal to produce

7   communications between Universal and the artist Prince or his representatives that Universal has

8   withheld on privilege grounds.  Universal respectfully requests that the Court set a briefing

9   schedule and hear this matter (although a hearing is not required under the Local Rules) in the

10  above-captioned Court, located at 280 South First Street, San Jose, California.

11      This timely Objection is made on the ground that Section II.C.4 of the Order is clearly

12  erroneous or contrary to law insofar as the Order compels production of confidential, privileged

13  communications that (1) remain privileged pursuant to the common interest doctrine, (2) concern

14  matters relating to legal advice and legal services, (3) are protected work product, and (4) are not

15  relevant to Plaintiff's claims.[1]  This Objection is based on this Notice of Objection and Objection,

16  the Points and Authorities below, the Declaration of Kelly M. Klaus filed herewith ("Klaus

17  Declaration"), and the files and records of this case.  Proposed Orders (a) setting a briefing

18  schedule on this Objection and (b) granting this Objection are being lodged concurrently.

19

## MEMORANDUM OF POINTS AND AUTHORITIES

20

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

21      The Order erroneously overrules Universal's privilege claim regarding legal

22  communications made in confidence with Prince (or his representatives), whose copyrighted

23  compositions Universal administers.  Order Section II.C.4, at 7-8 (Klaus Decl. Ex. A.)  The

24  communications in issue relate to matters in which Universal and Prince have common (indeed,

25  essentially identical) *legal* interests, namely, the strong protection and enforcement of copyrights

26

---

[1] Judge Seeborg entered the Order on August 25, 2009.  Federal Rule of Civil Procedure 72(a)
27  provides Universal a 10-day period to file its Objection.  Pursuant to Federal Rule of Civil
Procedure 6(a)(2), the intervening Saturdays and Sundays, as well as Labor Day, are excluded
28  from this 10-day period.  Accordingly, this Objection is timely filed on September 10.

1   that Prince owns and that Universal administers and enforces on his behalf. Under firmly

2   established law applying the common interest doctrine, these communications are privileged,

3   notwithstanding that Universal is not Prince's lawyer. The common interest doctrine provides

4   that "individuals with a community of interests 'may communicate among themselves and with

5   the separate attorneys on matters of common legal interest, for the purpose of preparing a joint

6   strategy, and the attorney-client privilege will protect those communications to the same extent as

7   it would communications between each client and his own attorney.'" *Nidec Corp. v. Victor Co.*

8   *of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (Chen, Mag. J.) (quoting 1 Paul R. Rice,

9   *Attorney-Client Privilege in the United States* § 4:35, at 192 (1999 ed.) (hereinafter, "Rice,

10  *Attorney-Client Privilege*")). The Order's holding that the privilege is inapplicable because

11  Universal is not Prince's lawyer, Order at 7:28-8:2 (Klaus Decl. Ex. A), is contrary to law.

12         The Order is contrary to law or clearly erroneous in other respects as well. For example,

13  *none* of the privileged communications in issue concern any discussion between Prince or his

14  representatives and Universal concerning *Plaintiff's* "Let's Go Crazy" video prior to Universal's

15  sending its notice. Nevertheless, Section II.C.4 holds these communications relevant to

16  Plaintiff's claim that Universal violated 17 U.S.C. § 512(f). *See* Order at 7. Under the Ninth

17  Circuit's controlling construction of Section 512(f), Plaintiff must show (among other

18  requirements) that Universal made a *knowingly* false, material statement to YouTube concerning

19  *her* video. *Rossi v. MPAA*, 391 F.3d 1000, 1004-05 (9th Cir. 2004). What was said in privileged

20  communications concerning *other people's* uses of Prince's works has no legal relevance to

21  Universal's subjective knowledge when it made its statements to YouTube about *Plaintiff's*

22  posting. Plaintiff's attempt to turn the trial in this case into a series of mini-trials about

23  Universal's knowledge or decisions regarding other uses of other works by people other than

24  Plaintiff seeks to fasten liability on Universal based on the objective reasonableness of its actions.

25  *Rossi* forecloses such an inquiry, and it was contrary to law or clearly erroneous for the Order to

26  hold that such unrelated communications could be relevant.

27

28

1    For these and other reasons discussed below, Universal respectfully requests that the

2    Court set aside Section II.C.4 of the Order.[2]

3    **II.    BACKGROUND**

4        **A.    Universal's Administration Agreement With Prince**

5        The communications between Prince's representatives and Universal relating to the

6    enforcement of copyrights in his works are made in accordance with the September 1, 2005

7    Administration Agreement between Prince and Defendant Universal Music Corp.  Klaus Decl.

8    Ex. B (previously submitted to Judge Seeborg as Ex. E to Klaus Decl. in Opp. to Mot. to Compel

9    (Doc. No. 149)).  Administration agreements are common in the music publishing industry.  Such

10   agreements allow the owner of copyrights in musical compositions to retain ownership of her or

11   his rights, while appointing the music publisher as the owner's exclusive administrator for

12   exploiting the works, collecting and distributing monies earned from exploitation of the works,

13   and enforcing the owner's copyright in those works.  *See* A. Kohn & B. Kohn, *Kohn on Music*

14   *Licensing* at 258-62 (3d ed. 2002).  The Administration Agreement between Prince and Universal

15   follows this structure, ███████████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████████████████ *See* Klaus

17   Decl. Ex. B at §§ 3, 4(a), 4(d).

18       Section 9 of the Administration Agreement deals with legal "Actions" regarding the

19   copyrights that Universal administers.  *Id*. § 9.  Pursuant to this provision, ████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████

22   ███████████████████████████████████████ *Id*. The Agreement further provides

23

24   _____
     [2] Because this Objection concerns an Order to produce documents that Universal claims are
25   privileged, Universal has requested, and Plaintiff has agreed, that Section II.C.4 of the Order shall
     be stayed pending this Court's consideration of Universal's Objection.  If the Court overrules the
26   Objection, Plaintiff has agreed that Section II.C.4 shall be stayed for at least an additional 20 days
     following such overruling (or such longer period as the Court may grant) in order to allow
     Universal the opportunity to seek a stay from the Ninth Circuit.  Universal has the right to take an
27   interlocutory appeal challenging an adverse privilege ruling.  *See In re Napster, Inc. Copyright*
     *Litig.*, 479 F.3d 1078, 1087-88 (9th Cir. 2007).  The parties will be filing a stipulation shortly to
28   memorialize the stay agreement and other matters related to pretrial discovery and scheduling.

1

2

3

4

5

6

7       As provided in Section 9 of the Agreement, Prince or his representatives have contacted

8   Universal in writing to alert Universal to possible instances of copyright infringement and to

9   request that Universal investigate and take legal action if necessary to stop such infringement.

10  Declaration of Robert E. Allen in Opp. to Plaintiff's Mot. to Compel (Doc. No. 113) ¶¶ 3, 5-6

11  (submitted herewith at Klaus Decl. Ex. C) ("Allen Decl.").  During the time prior to Plaintiff's

12  filing of her complaint, Prince or one of his representatives (Kathy Adams, Ruth Arzate or Patrick

13  Cousins) communicated about instances of possible infringement of Prince's copyrighted works

14  to one of Universal's in-house attorneys (Robert Allen or Raul Gonzalez) for further investigation

15  and action.  Allen Decl. ¶¶ 3-4.[3]  *See also* Klaus Decl. Exs. D & E (Universal's logs of

16  documents withheld or redacted on the basis of privilege objections).[4]

17          **B.      Plaintiff's Motion To Compel**

18          As the Court knows, this case concerns Plaintiff's claim that Universal violated 17 U.S.C.

19  § 512(f) when, on June 4, 2007, Universal sent YouTube a notice that Plaintiff's video posting,

20  which she entitled, "Let's Go Crazy #1," made an unauthorized use of Prince's copyrighted

21  composition (the same email also covered more than 200 other YouTube postings).  Second Am.

22  Compl. ¶¶ 20-21 & Ex. A (Doc. No. 34) (Klaus Decl. Ex. F).  In attempting to state a complaint

23  that would survive dismissal, Plaintiff specifically alleged that "Prince himself demanded that

24  _____

[3] Mr. Gonzalez no longer works for Universal.  The in-house attorney who now performs the
25  relevant duties previously performed by Mr. Gonzalez is Alina Moffat, who, as Mr. Gonzalez did,
reports to Mr. Allen.  Allen Decl. ¶ 4.  Information regarding enforcement activities also has been
26  communicated to or on behalf of Mr. Allen by Sean Johnson, who is an assistant to Mr. Allen.  *Id.*

[4] These privilege and redaction logs were revised in accordance with Section II.C.5 of the Order.
27  *See* Order at 8-9.  The privilege and redaction logs produced prior to the Magistrate Judge's
Orders are attached at tabs 1 to Exhibits D and E, respectively; the revised logs are attached
28  behind tab 2 of each of those Exhibits.

8765018.1                                                                    OBJECTION TO MAG. J. RULING
                                                                             CASE NO. CV-07-03783

1  Universal seek the removal of the ["Let's Go Crazy"] Video." *Id.* ¶ 31.  This Court cited this

2  allegation in denying Universal's Motion to Dismiss.  *See* Order Denying Mot. to Dismiss (Doc.

3  No. 45) at 8:11-13 (Klaus Decl. Ex. G).  *None* of the communications at issue in Plaintiff's

4  Motion to Compel relate to this allegation or indeed to any discussion about Plaintiff's posting

5  prior to Universal's notice.  It is undisputed that neither Prince nor any of his representatives

6  contacted Universal regarding Plaintiff's posting before Universal sent the notice to YouTube on

7  June 4, 2007.  Allen Decl. ¶ 9.

8          Notwithstanding the irrelevance of these communications to her allegation, Plaintiff

9  nevertheless asked Judge Seeborg to overrule Universal's privilege claim concerning

10  communications with Prince.  Plaintiff advanced two arguments in support of her motion.

11  Plaintiff's primary argument was that "a communication is not privileged unless it is … made in

12  the course of an attorney-client relationship[.]"  Plaintiff' Mot. to Compel (Doc. No. 146) at 8:14-

13  15.  Plaintiff argued that, because Universal is not Prince's attorney, any communications

14  between them, regardless of the subject matter, could not be the subject of a valid privilege claim.

15  *Id.* at 8-9.  *See also* Plaintiff's Reply in Support of Mot. to Compel (Doc. No. 155) at 8:4

16  ("Universal has no attorney-client relationship with Prince.").

17          Second, Plaintiff argued that, whether or not the communications arose in the course of an

18  attorney-client relationship, the communications did not relate to legal advice.  Plaintiff' Mot. to

19  Compel (Doc. No. 146)  at 9:15-16.  In making this contention, Plaintiff sidestepped the fact that

20  the communications relate to notices of possible *infringement* (a legal issue), and thus involve

21  whether Universal will act to restrain infringing conduct (*i.e.*, the provision of legal services).

22  Plaintiff asserted that communications reflecting requests to take legal action to enforce Prince's

23  copyrights do not reflect legal advice, but rather seek to "to implement a business transaction,"

24  namely, Universal's rights under Section 9 of the Administration Agreement.  Plaintiff's Reply in

25  Support of Mot. to Compel (Doc. No. 155) at 10:9 (internal quotations omitted).

26          Universal opposed Plaintiff's Motion on both relevance and privilege grounds.  Regarding

27  relevance, Universal pointed to the undisputed fact that none of the communications in issue

28  concerns any discussion about *Plaintiff's* "Let's Go Crazy" video prior to Universal's sending its

8765018.1                                    - 5 -                     OBJECTION TO MAG. J. RULING
                                                                       CASE NO. CV-07-03783

1   notice.  Universal's Opp. to Mot. to Compel (Doc. No. 148) at 11:3-4.  By definition, none could

2   be relevant to Plaintiff's allegation that "Prince himself demanded that Universal seek the

3   removal of the ["Let's Go Crazy"] Video."  Second Am. Compl. ¶ 31 (Klaus Decl. Ex. F).  Nor

4   would any communication regarding other people's postings to YouTube be relevant to

5   Universal's state of mind *regarding Plaintiff's posting*.  It is Universal's subjective knowledge

6   about Plaintiff's posting at the time Universal sent its notice that is at issue on a claim under

7   Section 512(f).  *Rossi*, 391 F.3d at 1005.  Communications about other postings shed no light on

8   what Universal actually knew about its statements concerning Plaintiff's video.

9        Universal also opposed Plaintiff's privilege arguments.  Universal pointed out that the

10   communications between Prince and Universal took place pursuant to Section 9 of the

11   Administration Agreement, under which Universal is responsible for investigating instances of

12   possible infringement of Prince's copyrights and making decisions regarding legal actions to

13   enforce those copyrights.  Universal's Opp. to Mot. to Compel (Doc. No. 148) at 11-12.

14   Universal and Prince unquestionably have common legal interests concerning enforcement

15   matters.  Indeed, Universal serves as "*a necessary intermediary* relating to the provision of legal

16   services related to the enforcement of [Prince's] copyrights."  *Id*. at 11:23-12:2.

17        **C.    The Order Compelling Universal's Production Of The Privileged Documents**

18        The Order grants Plaintiff's motion to compel the Prince-Universal communications

19   withheld as privileged.  Order at 7-8.  Regarding relevance, the Order holds that Universal-Prince

20   communications "are reasonably calculated to lead to evidence about the formation of Universal's

21   good faith belief in sending *the letters*."  *Id*. at 7:7-13 (emphasis added).  In describing as relevant

22   Universal's belief in sending "letter*s*" - plural - the Order is contrary to *Rossi*, which makes clear

23   that Universal's objective reasonableness is not the issue under Section 512(f); rather it is

24   Universal's subjective knowledge *concerning Plaintiff's posting* that is in issue.

25        The Order next holds the communications not privileged on the ground that Universal is

26   not Prince's legal counsel.  In particular, the Order states that "Universal argues that … Universal

27   is acting as Prince's agent or attorney-in-fact[,]" and then states that "[e]stablishing that it acted

28   as Prince's agent or 'attorney-in-fact,' does not satisfy Universal's burden to demonstrate that

these communications are protected by the attorney-client privilege." *Id*. at 7:17-20.  In apparent

reference to Plaintiff's argument that communications regarding legal enforcement of copyrights

are mere "business matters," the Order states (without elaboration or factual findings) that

"[o]rdinary business advice is not protected." *Id*. at 7:23-24.  The legal-versus-business

distinction does not appear, however, to be dispositive to the Order's ultimate conclusion.  The

Order concludes that: "it appears that the [Administration] agreement simply designates Universal

to act as an agent with respect to Prince's business interests, *but does not represent retention of

Universal in-house counsel to provide him with legal services*." *Id*. at 7:28-8:2 (emphasis added).

## III.   ARGUMENT

### A.   This Court Reviews *De Novo* Universal's Objection To The Order's Legal Ruling

Rule 72(a) provides that where, as here, the Magistrate Judge issues a non-dispositive

pretrial ruling, the District Court "must consider timely objections and modify or set aside any

part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).  "A ruling

is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law."

*Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008).[5]  "A district court's review under

the 'contrary to law' standard is plenary, and it may overturn any conclusions of law which

contradict or ignore applicable precepts of law. … Thus, a district court must exercise its

independent judgment with respect to a Magistrate Judge's legal conclusions." *E.E.O.C. v.

Burlington N. & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605-06 (W.D. Tenn. 2009) (internal

quotations omitted).  "A finding is 'clearly erroneous' when although there is evidence to support

it, the reviewing court on the entire evidence is left with the definite and firm conviction that a

mistake has been committed." *Coleman v. Schwarzenegger*, 2008 WL 4300554 at *1 (E.D. &

N.D. Cal. Sept. 11, 2008) (internal quotations omitted).

The issues involved in this objection are almost entirely legal and therefore subject to *de

novo* review.  The Order resolves the question of privilege based on an erroneous *legal* standard,

namely, that unless Universal is Prince's lawyer, communications between them relating to the

---

[5] As set forth above, this Objection is timely made under Rule 72(a).  *See* n.1, *supra*.

8765018.1

OBJECTION TO MAG. J. RULING
CASE NO. CV-07-03783

1    enforcement of the copyrights in Prince's works cannot be the subject of a privilege claim.  This

2    holding is contrary to the well-established rule that communications do not cease to be privileged

3    when shared between parties with common legal interests in the communication.  Because it

4    applies the wrong legal standard, the Order is entitled to no deference and must be set aside.

5            The remaining issues that the Order implicates - whether communications concerning

6    enforcement of legal rights are "business matters," and whether communications regarding

7    postings other than Plaintiff's are relevant under Section 512(f) - likewise implicate legal rules,

8    such as the scope of the privilege and the interpretation of Section 512(f) as set forth in *Rossi*.

9    Such legal issues also are subject to *de novo* review.  To the extent there are factual issues

10   intertwined with these issues, the Order's resolution of them is without any evidentiary

11   foundation and therefore is clearly erroneous.

12   **B.     The Order Is Contrary To Law:  Under The Common Interest Doctrine,
             Privileged Communications Between Universal And Prince Related To
13           Enforcement Of Prince's Copyrights Remain Privileged**

14           Because jurisdiction in this case is premised on a federal statute, federal law controls the

15   privilege issue in this case.  *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th

16   Cir. 1992).  The general privilege standard under federal law is that "confidential communications

17   made by a client to an attorney to obtain legal services are protected from disclosure."  *Id.*

18           A number of the elements for privilege are undisputed on Plaintiff's Motion.  First, it is

19   undisputed that all of the communications that Plaintiff's Motion seeks were transmitted in

20   confidence and have remained confidential.  Second, it is undisputed that the communications

21   involve lawyers who provide legal advice and services to their client, Universal (either Robert

22   Allen or (during the time in issue) Raul Gonzalez).  It is undisputed that Messrs. Allen and

23   Gonzalez have an attorney-client relationship with Universal relating to the enforcement of

24   copyrights that Universal administers.[6]  *See* Allen Decl. ¶¶ 2, 6.

---

[6] Plaintiff elsewhere in her motion disputed whether certain of Mr. Allen's communications
concern legal, as opposed to business, advice.  *See* Order at 8-9.  As discussed in Part C of this
Objection, *infra*, communications relating to the enforcement of copyrights clearly concern
requests relating to *legal* matters, namely, legal services to restrain infringing conduct.  In any
event, Section II.C.4 of the Order is not based on any finding that Mr. Allen was acting other than
in his capacity as a lawyer for Universal.  Accordingly, Plaintiff may not seek to sustain Section
II.C.4 on the ground that Mr. Allen was not functioning as a lawyer.

The Order holds that the privilege does not apply to the communications in issue on the ground that Universal is not Prince's lawyer. Order at 8:1-2 (no showing of Prince's "retention of Universal in-house counsel to provide him with legal services"). That holding is contrary to law.

> 1. **The Common Interest Doctrine Protects Communications In Furtherance Of Common Legal Interests Even Where The Parties Communicating Do Not Have An Attorney-Client Relationship With Each Other**

The "general rule" regarding privilege is that "attorney-client communications made 'in the presence of, or shared with, third parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality.'" *Nidec*, 249 F.R.D. at 578 (quoting Rice, *Attorney-Client Privilege* § 4:35, at 195).

> However, there is an exception to the waiver rule. Participants in a joint or common defense or *individuals with a community of interests "may communicate among themselves* and with the separate attorneys *on matters of common legal interest*, for the purpose of preparing a joint strategy, *and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney*."

*Id*. (quoting Rice, *Attorney-Client Privilege* at 192.) (emphasis added).

The common interest doctrine has its roots in the joint defense context. However, common interest doctrine is *not* limited to situations where the same lawyer acts as an attorney for two different clients. Rather, the doctrine "is applicable *whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance*." *Id*. (quoting Rice, *Attorney-Client Privilege* at 216.) (emphasis added). Federal courts have repeatedly held that the common interest doctrine will protect from disclosure confidential communications between parties in furtherance of a common legal interest. *See, e.g.*, *In re Regents of the Univ. of Calif.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (common interest doctrine protected confidential communications between patentee and exclusive licensee); *United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003) (Jenkins, J.) (recognizing common interest doctrine and articulating test for same, but finding it inapplicable on facts of case). Closely related to the common interest doctrine is the principle that the privilege is maintained where counsel's communications with party outside attorney-client relationship "are necessary to effectuate the client's consultation"

8765018.1

OBJECTION TO MAG. J. RULING
CASE NO. CV-07-03783

1   with an attorney.  *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1072 (N.D. Cal.

2   2002) (Brazil, Mag. J.).

3       As set forth in the cases, the common interest doctrine protects an otherwise privileged

4   communication "where (1) the communication is made by separate parties in the course of a

5   matter of common interest; (2) the communication is designed to further that effort; and (3) the

6   privilege has not been waived."  *Bergonzi*, 216 F.R.D. at 495.  The parties' common interest must

7   be legal in nature, *Nidec*, 249 F.R.D. at 579, but if it is, then the privilege is not lost simply

8   because the parties to the communication are not in an attorney-client relationship.

9       2.      **The Order Is Contrary To Law Because The Communications In Issue Are Privileged Common Interest Communications**

10

11      The communications between Prince (and his representatives) and counsel for Universal

12   are protected under the common interest doctrine.  There is no doubt that the communications

13   otherwise are privileged.  They all relate to information provided to or by an attorney (Allen or

14   Gonzalez) for a client (Universal) relating to the provision of legal advice or services

15   (investigation or enforcement regarding potential infringement), and all have been maintained in

16   confidence.  The question is whether such communications lose their privileged status simply

17   because Universal is not Prince's lawyer.  Under the well-established standards set forth in the

18   case law, it is clear that the privilege is maintained, not lost.

19      First, the record clearly establishes that the communications were made "in the course of a

20   matter of common [legal] interest," namely, the strong and effective protection and enforcement

21   of Prince's copyrights.  Prince obviously has a legal interest in such matters:  *he owns the*

22   *copyrights*.  And Universal, which is responsible for administering and enforcing *the same*

23   copyrights, has the same legal interest in the protection and enforcement of those copyrights.  To

24   that end, ███████████████████████████████████████████████████████████████████

25   ███████████████████████████████████████████.  *See* Klaus Decl., Ex. B § 9.

26   The Agreement further provides that ████████████████████████████████

27   ███████████████████████████████████████████████████████████████████

28   ███████████████████████████████████████████████████████████████████

1    ██████████████████ *Id.  See also* Allen Decl. ¶ 6 ("One of Universal's responsibilities as the

2    administrator for Prince's copyrighted works is to take legal action regarding the enforcement and

3    protection of Prince's rights in those works.").  And the Agreement provides that ████████

4    █████████████████████████████████████████████████████████████

5    Klaus Decl. Ex. B § 9.  Given the nature of Universal's responsibilities concerning Prince's

6    copyrighted compositions, it is clear that Universal and Prince have common (indeed, essentially

7    identical) legal interests regarding the protection and enforcement of those copyrights.  Indeed,

8    given Universal's primary role in enforcing the copyrights subject to the Administration

9    Agreement, Universal also is a necessary intermediary to effective consultation regarding the

10   legal enforcement of those copyrights.  *See ChevronTexaco*, 241 F. Supp. 2d at 1072.

11          Second, the record also clearly establishes that the communications in issue were intended

12   to further the parties' common legal interest in the protection and enforcement of Prince's

13   copyrights.  The Agreement itself expressly provides that ████████████████████

14   ████████████████ *See* Klaus Decl. Ex. B § 9 ████████████████

15   █████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████

17   █████████████████████████████████████████████████████████████

18   ██████ (emphasis added).  Universal's privilege log, while not revealing the substance of the

19   privileged communications, describes the nature of those communications in sufficient detail to

20   demonstrate that the communications concern the enforcement of the copyrights in cases of

21   potential infringement.  *See, e.g.*, Klaus Decl. Ex. D.1 at Entry 4 ████████████████

22   █████████████████████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ████████████████████████.[7]  Communications concerning the enforcement of Prince's

25   copyrights further the parties' common legal interest in that subject.

26          Third, there is no contention that any privilege has been waived.

27   _____

28   [7] Similar descriptions revealing the legal nature of the communications appear throughout
     Universal's original and revised logs.  *See* Klaus Decl. Exs. D & E.

1    The facts here are closely analogous to those in the *In re Regents* case, where the Federal

2    Circuit held that the common interest doctrine applied to communications between a patentee

3    (UC) and its exclusive patent licensee (Eli Lilly).  The plaintiff in that case (Genentech) argued,

4    and the district court held, that the privilege could not protect legal communications between UC

5    and Lilly concerning the prosecution of a patent covered by their license, because those parties

6    were not in an attorney-client relationship with each other.  *In re Regents*, 101 F.3d at 1388.

7    Granting a petition for mandamus, the Federal Circuit disagreed and reversed the privilege ruling.

8    The Federal Circuit held that the common interest doctrine applied because "the legal interest

9    between Lilly and UC was substantially identical because of the potentially and ultimately

10   exclusive nature of the Lilly-UC license agreement.  *Both parties had the same interest in*

11   *obtaining strong and enforceable patents*."  *Id*. at 1390 (emphasis added).[8]

12   The same is true in this case.  The communications at issue concern a matter where

13   Universal and Prince have common, indeed essentially identical, *legal* interests, namely, the

14   strong protection and enforcement of Prince's copyrights, which, under the Administration

15   Agreement, Universal has the responsibility to administer and enforce.  The communications are

16   designed to further that interest, and there is no basis for finding waiver.  *Bergonzi*, 216 F.R.D. at

17   495.  The Order's conclusion that there is no privilege because Universal is not Prince's counsel

18   is contrary to the well-established law holding that the privilege is maintained, not lost, in the

19   context of such common interest communications.  The Order must be set aside under Rule 72(a).

20

21

22

23

---

24   [8] UC also argued that it and Lilly were joint clients of the Lilly lawyers.  *In re Regents*, 101 F.3d
     at 1389.  The Federal Circuit, applying Seventh Circuit privilege law, held that both "the joint
25   client doctrine *and* the community of interest doctrine apply to and protect legal advice and
     communications between the patent applicant or patentee and attorneys of its optionee/licensee."
26   *Id*. at 1391 (emphasis added).  As Magistrate Judge Chen observed in quoting a leading treatise in
     *Nidec*, "'[t]he protection of the privilege under the community of interest rationale, however, is
27   not limited to joint litigation preparation efforts.  It is applicable whenever parties with common
     interests join forces for the purpose of obtaining more effective legal assistance.'"  *Nidec*, 249
28   F.R.D. at 578 (quoting Rice, *Attorney-Client Privilege* § 4:36 at 216).

1

**C.      The Order Cannot Be Sustained On The Ground That Communications Concerning The Legal Enforcement Of Copyright Is A Business Rather Than A Legal Subject**

2

3      As discussed, Plaintiff's alternative argument against the privilege was that

4  communications regarding the legal enforcement of Prince's copyrights involve business, not

5  legal, advice.  Plaintiff' Mot. to Compel (Doc. No. 146)  at 9:15-16.  To the extent that Section

6  II.C.4 accepts this argument, the Order is contrary to law or clearly erroneous.[9]

7      It is difficult to imagine a category of communications more centrally related to requests

8  for and the provision of *legal* advice than communications concerning possible infringement and

9  enforcement actions to restrain the same.  The enforcement of legal rights - including takedown

10  notices, cease-and-desist letters, or other actions that relate to preventing and restraining

11  infringement - is at the core of what lawyers do in providing legal services to their clients.  *See*

12  *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (privilege applies "when the lawyers

13  act in a counseling and planning role, as well as when lawyers represent their clients in

14  litigation"); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C. Cir.

15  1980) ("The privilege is not limited to communications made in the context of litigation or even a

16  specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal

17  matter.").  The communications in issue relate to the enforcement of legal rights, which involves

18  legal services to protect and enforce legal rights.  The communications are clearly of the type that

19  the attorney-client privilege is intended to protect.[10]

20

21

22  [9] As noted in the Background, *supra*, it is unclear whether the Order adopts this rationale.  The Order does state that "[o]rdinary business advice is not protected."  Order at 7:23-24.  The Order's ultimate conclusion, however, is that "the agreement simply designates Universal to act as an agent with respect to Prince's business interests, but does not represent retention of Universal in-house counsel to provide him with legal services."  *Id*. at 7:28-8:2.  Thus, it appears that the Order was based on the no-attorney-client-relationship rationale.  To the extent the Order adopts Plaintiff's business-not-legal-advice argument, the Order is contrary to law or clearly erroneous for the reasons discussed in the text.

23

24

25

26  [10] Section II.C.5 of the Order notes that not all communications with in-house counsel can be presumed privileged, and on that basis orders Universal to supplement its logs regarding Mr. Allen's communications, which Universal has done.  *See* Order at 8-9; Klaus Decl. Exs. D.2 and E.2.  Section II.C.4 of the Order, however, is not based on any finding that Mr. Allen was acting in a business, rather than a legal, capacity.  Plaintiff may not defend Section II.C.4 on that basis.

27

28

8765018.1

- 13 -

1    Plaintiff's argument for a contrary result is that the communications concern business

2    advice because they "implement a business transaction," *i.e.*, they fulfill Universal's contractual

3    right to take action regarding the enforcement of Prince's copyrights.  Plaintiff's Reply in Support

4    of Mot. to Compel (Doc. No. 155) at 10:6-8 (internal quotations omitted).  That argument is

5    facile.  The fact that a contract gives Universal the right to take legal action to enforce Prince's

6    copyrights does not thereby transform every instance of Universal's considering or taking legal

7    action pursuant to that agreement into the completion of a business transaction.  The question

8    under the cases is whether the requests related to the attorney's services arise "because of" or

9    primarily for legal reasons.  *See In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004)

10   (for work product, test is not whether litigation was "primary or secondary motive behind the

11   creation of a document[,]" but rather whether "totality of the circumstances" indicates that the

12   document "was created because of anticipated litigation"); *Visa U.S.A., Inc. v. First Data Corp.*,

13   2004 WL 1878209 at *4 (N.D. Cal. Aug. 23, 2004) (Chen, Mag. J.) (holding that the *In re Grand*

14   *Jury Subpoena* "because of" standard, rather than "primary or secondary" standard stated in some

15   earlier cases, governs the resolution of the attorney-client privilege inquiry of legal

16   communications made in in-house corporate setting).  Whether the document that gives rise to the

17   request for the service is a "business" document does not change the legal character of the

18   services that are sought.  A request to take action to consider possible infringement and restrain

19   the same is a request that is made because of, or primarily for, the need for legal services.  It is a

20   privileged communication.

21        **D.      The Communications Also Are Protected Work Product**

22   Although Universal did not argue work product in opposing Plaintiff's Motion to Compel,

23   Universal's revised logs (revised pursuant to the Order, Klaus Decl. Exs. D.2 & E.2) assert work

24   product as well as attorney-client privilege over the communications in issue.  The issue also may

25   arise with respect to documents that Judge Seeborg ordered Universal to produce post-dating

26   Plaintiff's original complaint.  Order at 5-6.  If the Court sustains Section II.C.4's holding with

27   respect to attorney-client privilege, the Court nevertheless should hold that the documents are

28   protected work product.

1    "The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects

2    from discovery documents and tangible things prepared by a party or his representative in

3    anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 906 (internal quotations

4    omitted). "[A] document should be deemed prepared 'in anticipation of litigation' and thus

5    eligible for work product protection under Rule 26(b)(3) if 'in light of the nature of the document

6    and the factual situation in the particular case, the document can be fairly said to have been

7    prepared or obtained because of *the prospect of litigation*.'" *Id.* at 907 (quoting 8 C. Wright, A.

8    Miller, and R. Marcus, *Federal Practice and Procedure* § 2024 (2d ed. 1994)) (emphasis added).

9    Non-opinion work product "documents may only be ordered produced upon an adverse party's

10   demonstration of 'substantial need [for] the materials' and 'undue hardship [in obtaining] the

11   substantial equivalent of the materials by other means.'" *Id.* at 906 (quoting Fed. R. Civ. P.

12   26(b)(3)).

13          The communications between Universal and Prince relating to the enforcement of his

14   copyrights are work product documents. While such communications do not necessarily involve

15   plans for probable or imminent litigation, communications regarding possible infringement at

16   least involve "the *prospect* of litigation." *Id.* at 907 (emphasis added). The prospects for

17   litigation may crystallize into probable legal action, or may be mitigated by actions short of a

18   lawsuit (*e.g.*, the response to a cease-and-desist letter or similar notice). In either case, the

19   communications involve the prospect of litigation, and Rule 26(b)(3) applies.[11]

20          The application of the work product doctrine means that Plaintiff cannot obtain the

21   documents in issue absent a showing of substantial need for them and undue hardship in obtaining

22   their equivalent by other means. *Id.* at 906; Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiff cannot show

23   any substantial need for these communications because, as discussed in the next section, they are

24

25

26   [11] The question whether there is an attorney-client relationship between Universal and Prince,
     which is not controlling for privilege purposes, also does not determine whether work product
27   protection applies. Work product protects communications with a party's representative, and "[a]
     representative of a party includes the party's attorney, consultant, or agent." *Visa U.S.A.*, 2004
28   WL 1878209 at *5.

irrelevant to her case.  The work product doctrine, in short, is an alternative and independent basis for setting aside Section II.C.4 of the Order.

### E.    The Order Is Contrary To Law Or Clearly Erroneous In Holding The Communications Relevant

Finally, Section II.C.4 of the also is contrary to law or clearly erroneous in holding that communications between Universal and Prince regarding *other people's* postings have any relevance to Plaintiff's case under Section 512(f).  As discussed above, and contrary to Plaintiff's allegation about Prince ordering the removal of her "Let's Go Crazy" video, Second Am. Compl. ¶ 31, *none* of the communications in issue concern any discussion of Plaintiff's posting prior to Universal sending its notice.  As such, they are irrelevant to Plaintiff's claim under *Rossi*.

*Rossi* holds that 17 U.S.C. § 512(f) imposes liability only for *actual, subjective knowledge* of a misrepresentation, not knowledge measured by a standard of what is (or is not) objectively reasonable behavior.  *Rossi*, 391 F.3d at 1004-05.  "A copyright owner cannot be liable simply because an unknowing mistake is made, *even if the copyright owner acted unreasonably in making the mistake. … [T]here must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner*."  *Id.* at 1005 (emphasis added).  Plaintiff's attempt to cobble together a state of mind based on Universal's knowledge concerning numerous other, unrelated video postings is a direct attempt to do what *Rossi* says cannot be done under Section 512(f), namely, impose liability based on a claimed standard of *objective* unreasonableness.  *See* Plaintiff's Motion to Compel (Doc. No. 146) at 1:9-10 (asserting, incorrectly, that the standard is what Universal "*could reasonably have concluded*" after watching Plaintiff's video) (emphasis added).  What Plaintiff believes Universal should "reasonably have concluded" is irrelevant and never will be relevant under *Rossi*.  Plaintiff's claim under Section 512(f) may only be based on Universal's knowledge about the statements it made to YouTube concerning *Plaintiff's* video.

Hence, what Universal said (or what was said to it) regarding *other people's* postings has no relevance to Plaintiff's claim.  The trial in this case cannot and should not include a series of mini-trials concerning Plaintiff's contentions about whether Universal "got it right or got it

wrong" concerning numerous other YouTube postings that have been included in Universal's email notices. Such a wide-ranging excursion would be confusing, distracting and a complete waste of time. It also would attempt to fasten liability on Universal by trying to claim its sending of notices to YouTube is not objectively reasonable, which is contrary to *Rossi*. It is contrary to law or clear error for the Order to hold that communications regarding other postings may be relevant to Plaintiff's claim.

**IV.   CONCLUSION**

For the foregoing reasons, Section II.C.4 of the Order is contrary to law or clearly erroneous and must be set aside. Universal therefore respectfully requests that the Court:

[1]   Enter the accompanying Order, directing Plaintiff to file a response to this Objection within 14 calendar days, allowing Universal leave to file a reply 7 calendar days after that, and (if convenient for the Court), setting this Objection for an in-Court or telephonic hearing;

[2]   Upon submission of all briefing and argument on this Objection, enter an Order overruling Section II.C.4 of the Order, and holding that Plaintiff is not entitled to obtain communications between Universal and Prince (or his representatives) concerning the enforcement of his copyrights in his musical compositions.

In the event the Court sustains all or part of Section II.C.4 of the Order, Universal respectfully requests that the Court stay that part of the Order for a period of 30 days, to allow Universal to seek a stay from the Ninth Circuit in support of an interlocutory appeal. *See* n.2, *supra*.

DATED: September 9, 2009                    MUNGER, TOLLES & OLSON LLP


By:   _____*/s/ Kelly M. Klaus*_____
                                            KELLY M. KLAUS

                                            Attorneys for Defendants