1   KELLY M. KLAUS (SBN 161091)
    Kelly.Klaus@mto.com
2   MELINDA E. LEMOINE (SBN 235670)
    Melinda.LeMoine@mto.com
3   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
4   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
5   Telephone:     (213) 683-9100
    Facsimile:     (213) 687-3702
6
    Attorneys for Defendants
7   UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
    PUBLISHING, INC. and UNIVERSAL MUSIC
8   PUBLISHING GROUP

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12  STEPHANIE LENZ,                          CASE NO.  C 07-03783 JF (RS)

13              Plaintiff,                   **DECLARATION OF KELLY M.
                                             KLAUS IN SUPPORT OF
14        vs.                                UNIVERSAL'S OBJECTION TO
                                             MAGISTRATE JUDGE SEEBORG'S
15  UNIVERSAL MUSIC CORP., UNIVERSAL         AUGUST 25, 2009 ORDER
    MUSIC PUBLISHING, INC. and UNIVERSAL     GRANTING MOTION TO COMPEL
16  MUSIC PUBLISHING GROUP,                  PRODUCTION OF UNIVERSAL-
                                             PRINCE COMMUNICATIONS AS
17              Defendants.                  TO WHICH UNIVERSAL ASSERTS
                                             PRIVILEGE**
18
                                             Judge:  Honorable Jeremy Fogel
19
                                             **PUBLIC REDACTED VERSION**
20

21

22

23

24

25

26

27

28

8763176.1                                            KLAUS DECL. ISO OBJECTION
                                                     CASE NO. CV-07-03783

I, Kelly M. Klaus, declare:

1. I am a partner in the law firm of Munger, Tolles & Olson LLP, counsel of record for Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively "Universal"). I make this Declaration based upon my own personal knowledge, and if called upon to do so, I could and would testify competently to the matters stated herein.

2. Attached as Exhibit A is a true and correct copy of Magistrate Judge Seeborg's August 25, 2009 Order on the parties' Motions to Compel in this matter.

3. Attached as Exhibit B is a true and correct copy of the provisions of the September 1, 2005 Administration Agreement between Prince and Universal Music Corp. cited in Universal's Objection to the August 25, 2009 Order. The Administration Agreement was submitted to Judge Seeborg at Exhibit E to my July 29, 2009 Declaration in Support of Universal's Opposition to Plaintiff's Motion to Compel.

4. Attached as Exhibit C is a true and correct copy of the Declaration of Robert E. Allen. This declaration was previously submitted to Judge Seeborg in Support of Universal's Opposition to Plaintiff's Motion to Compel.

5. Attached as Exhibit D are true and correct copies of Universal's original and revised privilege logs in this matter. Universal revised its logs pursuant to Section II.C.5 of Judge Seeborg's August 25, 2009 Order. Universal's original privilege log is behind Tab 1 of Exhibit D. This log was previously submitted to Judge Seeborg at Exhibit L to the July 15, 2009 Declaration of Michael S. Kwun in Support of Plaintiff's Motion to Compel. Universal's revised privilege log is behind Tab 2 of Exhibit D. Universal served the revised log on September 1, 2009.

6. Attached as Exhibit E are true and correct copies of Universal's original and revised logs of documents redacted to remove privileged information. Universal's original redaction log is behind Tab 1 of Exhibit E. This log also was submitted to Judge Seeborg at Exhibit L to the July 15, 2009 Declaration of Michael S. Kwun in Support of Plaintiff's Motion to

1    Compel. Universal's revised redaction log is behind Tab 2 of Exhibit E. Universal also served

2    this revised log on September 1, 2009.

3          7.     Attached as Exhibit F is a true and correct copy of Plaintiff's Second Amended

4    Complaint in this action (without the exhibits thereto), filed April 18, 2008.

5          8.     Attached as Exhibit G is a true and correct copy of this Court's Order Denying

6    Motion to Dismiss, filed August 20, 2008.

7          I declare under penalty of perjury under the laws of the United States that the foregoing is

8    true and correct and that this Declaration was executed this 9th day of September, 2009, at Los

9    Angeles, California.

10

11

12                              By: _____*/s/ Kelly M. Klaus*_____
                                         KELLY M. KLAUS

13                              Attorneys for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8763176.1

- 2 -

KLAUS DECL. ISO APP. TO SEAL
CASE NO. CV-07-03783

# EXHIBIT A

*E-Filed 8/25/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEPHANIE LENZ,

            Plaintiff,

   v.

UNIVERSAL MUSIC CORP., et al.

            Defendants.

_____/

NO. C 07-3783 JF (RS)

**ORDER: (1) GRANTING UNIVERSAL'S MOTION TO COMPEL RE: DAMAGES; (2) GRANTING UNIVERSAL'S MOTION TO COMPEL COMMUNICATIONS; AND (3) GRANTING IN PART AND DENYING IN PART LENZ'S MOTION TO COMPEL DOCUMENTS**

## I.  INTRODUCTION

Plaintiff Stephanie Lenz has brought an action against defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively "Universal") alleging a violation of 17 U.S.C. § 512(f) stemming from a thirty second video she posted on YouTube.  The video features her young toddler performing an impromptu dance to the song "Let's Go Crazy" by the artist professionally known as Prince.  Universal administers the copyright to the composition.  Lenz entitled the video "Let's Go Crazy #1."  On June 4, 2007, Universal sent YouTube a notice requesting that YouTube remove the video Lenz posted.  YouTube complied and sent Lenz an email notifying her that it had done so.  After receiving two e-mails from Lenz demanding that the video be restored, YouTube agreed.  Lenz thereupon brought suit against Universal in connection with its takedown notice.

United States District Court

For the Northern District of California

1    Three discovery motions are at issue here.  In the first, Universal moves to compel Lenz to

2  produce documents relating to her alleged damages.  In the second, Universal moves to compel Lenz

3  to produce communications with non-lawyer Theryn Fleming.  In the third, Lenz moves to compel

4  Universal to produce documents responsive to request numbers 1-6, 9-10, 14, 16.  For the reasons

5  set forth below, Universal's motions will be granted, and Lenz's motion will be granted in part and

6  denied in part.

II. DISCUSSION

7

8  A.    Motion to Compel Re: Damages

9    Lenz filed her original complaint against Universal seeking damages under Section 512(f)

10  based on her allegation that Universal knowingly misrepresented that her video was infringing.

11  Ultimately, Lenz filed a second amended complaint ("SAC") on April 18, 2008, alleging that she

12  was injured as a result of Universal's actions.  As part of that injury, Lenz points to the financial and

13  personal expenses associated with responding to Universal's claim.

14    Universal moved to dismiss the SAC for failure to allege any damages under Section 512(f).

15  In denying Universal's motion, the presiding judge based his order on Lenz's representation that she

16  incurred actual damages in reviewing the notice procedures, seeking the assistance of an attorney,

17  and responding to the takedown notice.

18    Universal now seeks to obtain from Lenz any supporting materials regarding her claimed

19  damages.  The parties dispute the scope of damages available under Section 512(f).  In particular,

20  the parties disagree as to whether damages under Section 512(f) should include: (1) litigation fees

21  and costs; (2) pro bono fees and costs; and/or (3) non-pecuniary losses such as compensation for

22  time spent responding to the takedown notice.   Lenz argues that she does not need to produce

23  records reflecting any of these damages.  The question of whether or not certain types of damages

24  are recoverable for a Section 512(f) claim need not be resolved for the purposes of this motion.  It is

25  undisputed that damages constitute a requisite element of Lenz's Section 512(f) claim.  Universal,

26  therefore, is entitled to know how Lenz calculates and supports those alleged damages, whether or

27  not all or part of them are ultimately adjudged to be recoverable.

28

**United States District Court**
For the Northern District of California

2

1    Simply put, to the extent Lenz claims entitlement to damages of any kind she needs to

2    describe the type and extent of them in discovery.  While Lenz claims she produced evidence of her

3    damages, her initial disclosures fail to provide a complete computation.  At the same time, to the

4    extent that certain categories of claimed damages, such as litigation fees, will be evolving and

5    increasing, a detailed calculation at this point is not necessary.  Instead, Lenz will be ordered to

6    provide a damages computation up to the filing of this motion, listing the lump sum fees and costs to

7    date and including a computation for all damages she claims to have incurred that predate the filing

8    of this action.  Lenz will not be required to produce detailed attorney time records at this time but

9    may be required to do so before the close of discovery in the event that the presiding judge

10   concludes that such damages are recoverable.  Any responsive documents consistent with this order

11   shall be produced within twenty days of the date of this order.

12   B.    Motion to Compel Communications

13   Universal seeks production of all communications between Lenz and Theryn Fleming.  After

14   receiving the notice of removal from YouTube, Lenz allegedly turned to Fleming, who is not an

15   attorney, to assist Lenz in understanding the accusations against her.  Lenz represents that because

16   Fleming attended law school in Canada, she believed Fleming was entitled to practice law in the

17   United States.  Consequently, Lenz asserts attorney-client privilege as the grounds to withhold

18   communications she had with Fleming.

19   The Ninth Circuit has explained that to invoke attorney-client privilege: (1) legal advice must

20   be sought, (2) from a professional legal adviser in his or her capacity as such, (3) with the

21   communication relating to that purpose, (4) made in confidence, (5) by the client.  *Admiral Ins. Co.*

22   *v. U.S. Dist. Ct.*, 881 F.2d 1486, 1492 (9th Cir. 1989).  "[T]he privilege normally extends both to the

23   substance of the client's communication as well as the attorney's advice in response thereto." *In re*

24   *Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

25   Fleming is not an attorney, and it is undisputed that Lenz never formed an express

26   attorney-client relationship with her.  Instead, Lenz contends that an attorney-client relationship

27   should be implied because she reasonably believed that Lenz was her counsel.  In support of that

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  contention, Lenz explains that while aware Fleming did not practice law, she was under the

2  impression that a law degree was all that was required to do so.

3       The Ninth Circuit has not directly addressed whether a "reasonable belief" exception can

4  substitute for actual attorney involvement in invoking privilege. *United States v. Munoz*, 233 F.3d

5  1117, 1128 n.2 (9th Cir. 2000). Courts in other jurisdictions have recognized that, in limited

6  circumstances, "the [federal] privilege may apply where a party reasonably but mistakenly believes

7  that an attorney represents him rather than another party." *Id.* (citing *In re Grand Jury Subpoena*

8  *Duces Tecum*, 112 F.3d 910, 923 (8th Cir. 1997); *United States v. Hart*, Crim.A. No. 92-219, 1992

9  WL 348425, at *1-2 (E.D. La. Nov. 16, 1992)).

10       Even assuming a "reasonable belief" exception applies, the evidence Lenz presents is

11  insufficient to carry her burden of establishing an attorney-client relationship with Fleming. *See*

12  *United States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973) ("The burden of establishing the

13  existence of an attorney-client relationship rests on the claimant of the privilege who resists

14  disclosure of shielded communication."). First, as evidence of an implied attorney-client

15  relationship, Lenz explains that when confused about the counter-notice process she turned to

16  Fleming to help understand it. Lenz Decl., ¶¶ 2, 10, 13. Lenz, however, fails to explain the nature

17  of Fleming's assistance or how it relates to the communications for which she claims the privilege.

18  Second, there is no dispute that Fleming steered Lenz towards qualified counsel. *Id.*, ¶ 15. Fleming

19  thereby made it unmistakably clear that she did not represent Lenz. Third, there is no evidence from

20  Fleming herself indicating what she explained to Lenz that created Lenz's purportedly mistaken

21  belief that Fleming gave her confidential legal advice. Finally, and most importantly, believing that

22  a person who attends law school in Canada somehow qualifies her to practice law in the United

23  states is itself not a reasonable belief.

24       Because Lenz fails to show she had an express or implied attorney-client relationship with

25  Fleming, the attorney-client privilege is inapplicable to communications and documents between

26  them. Lenz therefore must produce any such documents within twenty days of the date of this order.

27  C.    <u>Motion to Compel Documents</u>

28

United States District Court
For the Northern District of California

1    Lenz moves to compel Universal to produce: (1) all documents Universal generated after

2   Lenz filed her original complaint (request number one); (2) communications between Universal and

3   third parties about Lenz and/or her video (request numbers two and three); (3) agreements between

4   Universal and YouTube touching on YouTube's responses to Universal's allegations of infringing

5   material (request number four); (4) communications between Universal and Prince (request numbers

6   five and six); (5) documents relating to Universal's decision to send a takedown notice for Lenz's

7   video (request number nine); (6) Universal's policies and procedures governing its requests to take

8   down allegedly infringing material (request numbers ten and eleven); (7) any documents relating to

9   attempts to exploit the market for the "Let's Go Crazy" composition (request number fourteen); and

10   (8) documents relating to the scope of Universal's interest in the copyrighted work at issue (request

11   number sixteen).

12    Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of

13   any nonprivileged matter that is relevant to any party's claims or defenses, or "for good cause,"

14   discovery of any matter relevant to the subject matter involved in the action.  "Relevant information

15   need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

16   discovery of admissible evidence." *Id*.

17    1.    Request Number One

18    Request number one seeks all documents Universal generated after Lenz filed her original

19   complaint on July 24, 2007.  Universal objects to this request on the grounds of lack of relevance

20   and undue burden.  Lenz seeks to prove that Universal sent a takedown notice claiming that her

21   video infringed a copyright without having a good faith belief that her video actually did so.  Lenz's

22   SAC specifically includes allegations based on Universal's conduct after Lenz originally filed suit.

23   Lenz, therefore, is entitled to explore documents Universal generated after her original complaint

24   which may shed light on its general practices and on the question of its good faith in issuing

25   takedown notices.

26    Beyond the issue of relevance, Universal argues that because the discovery cut-off is

27   September 24, 2009, it would create an undue burden for it to review the 1,490 documents it

28   identified as responsive.  While there will no doubt be additional effort involved in searching for any

United States District Court

For the Northern District of California

1    additional responsive materials, the conclusory burden argument does not outweigh Lenz's right to

2    the materials requested.

3          Associated with the scope of her request, Lenz seeks to compel Universal to expand the

4    number of officials whose records must be searched for responsive documents.  Universal identified

5    three individuals who were most likely to have relevant materials: Robert Allen, Universal's Vice

6    President of Business Affairs, who had primary responsibility for communicating with Prince, an

7    attorney who sent the notice to YouTube, and an employee who was involved in preparing the

8    notice.  Universal searched the electronic files of these three individuals and found approximately

9    4,100 responsive documents.  Universal produced all non-privileged documents.

10          Lenz has made the requisite showing that a search for responsive materials should be

11   expanded to include records maintained by Raul Gonzalez who interacted with Universal's copyright

12   officials in connection with takedown notices.  Accordingly, Lenz's motion to compel production of

13   documents pursuant to request number one shall be granted in terms of expanding the period

14   involved and adding an additional document custodian.

15          2.    Request Numbers Two and Three

16          Request numbers two and three seek communications between Universal and third parties

17   about Lenz and/or her video.  Specifically, Lenz seeks materials surrounding a statement Universal

18   released to ABC on October 25, 2007.  Universal represents that it contacted Peter Lofrumento, the

19   person who made the statement to ABC, to collect any communications regarding that statement.

20   Lofrumento states that he communicated with ABC by telephone, and thus, there are no written

21   documents to produce.  Accordingly, as Universal has represented no responsive documents exist in

22   its possession, no further production will be ordered.

23          3.    Request Number Four

24          Request number four seeks agreements between Universal and YouTube regarding

25   YouTube's responses to Universal's allegations of infringing material.  In particular, Lenz believes

26   that Universal's production is incomplete because a June 28, 2007 Content License Agreement

27   between Universal and YouTube indicates there is an attachment labeled as Exhibit C.  Lenz,

28   however, has not received a copy of this exhibit from Universal or YouTube.  Universal represents

1    that it produced its copy of the agreement to Lenz and its files contain no text to Exhibit C which

2    apparently was not attached in the first instance.  As Universal has represented that it does not

3    possess an Exhibit C, it need not respond further to this request.

4          4.    Request Numbers Five and Six

5          Request numbers five and six seek communications between Universal and Prince.

6    Universal objects to these requests on the grounds of lack of relevance and privilege.  Regarding

7    relevance, Lenz presents evidence suggesting that Universal sent hundreds of takedown requests for

8    videos involving Prince's works simply because it was urged to do so by the artist and without

9    reference to infringing conduct.  If Universal sent such letters without further inquiry but simply to

10   appease one of its artists, Lenz argues it will be difficult for Universal to claim a good faith belief

11   that she misappropriated copyrighted material.  Communications between Universal and Prince

12   about takedowns for any of his works thus are reasonably calculated to lead to evidence about the

13   formation of Universal's good faith belief in sending the letters.

14         As to Universal's claim of attorney-client privilege, it bears the burden of establishing each

15   element of that privilege.  *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir. 1996).

16   While acknowledging the absence of any express attorney-client relationship between it and Prince,

17   Universal argues that, pursuant to a 2005 Administration Agreement giving it the sole right to take

18   legal action on the artist's behalf, Universal is acting as Prince's agent or attorney-in-fact.

19         Establishing that it acted as Prince's agent or "attorney-in-fact," does not satisfy Universal's

20   burden to demonstrate that these communications are protected by the attorney-client privilege.  As

21   a general rule, an attorney who serves a client in a business capacity may not assert the

22   attorney-client privilege owing to the absence of a confidential relationship to provide legal advice.

23   *United States v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980).  Ordinary business advice is not

24   protected.  Here, the agreement in question provides that if Prince notifies Universal of

25   infringement, Universal may choose to retain attorneys to pursue the matter, but is not required to do

26   so.  If an attorney is retained, Universal maintains complete control over the litigation.  If Universal

27   declines to hire counsel, Prince is left to decide whether he wants to pursue legal action at his own

28   expense.  In short, it appears that the agreement simply designates Universal to act as an agent with

United States District Court
For the Northern District of California

1   respect to Prince's business interests, but does not represent retention of Universal in-house counsel

2   to provide him with legal services.  Universal, therefore, shall produce any documents responsive to

3   request numbers five and six within twenty days of the date of this order.

4          5.    <u>Request Numbers Nine, Ten and Eleven</u>

5         Request number nine seeks documents relating to Universal's decision to send a takedown

6   notice for Lenz's video.  Closely related, request numbers ten and eleven seek Universal's policies

7   and procedures governing its requests to take down allegedly infringing material.[1]  Universal's

8   search for documents relating to its practices resulted in the production of numerous documents from

9   Robert Allen, Universal's Vice President of Business Affairs.  Some of these materials were

10  produced to Lenz while others were designated as privileged because Allen is an attorney.  Lenz

11  contends that these materials are non-privileged business communications and must be produced.

12  Universal maintains that part of Allen's job includes communicating legal advice when questions

13  arise concerning specific legal issues surrounding the issuance of takedown notices.

14        There is no dispute that Allen wears two hats for Universal as he conducts business as well

15  as legal affairs.  "[T]he presumption that attaches to communications with outside counsel does not

16  extend to communications with in-house counsel . . . [b]ecause in house counsel may operate in a

17  purely or primarily business capacity in connection with many corporate endeavors."  *United States*

18  *v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  Universal, however, has not

19  indicated that the "primary purpose" of Allen's communications reflecting Universal's practices for

20  sending a takedown notice to Lenz or others was to render legal advice.  As Lenz proffers, it is

21  entirely plausible that Allen's statements to the unidentified employees sending out the takedown

22  notices does not constitute legal advice because such notices may be dispatched as part of a business

23  strategy to appease client artists.  In short, Universal has not met its burden of showing that any

24  privilege attaches to Allen's advice.

25        Without more, the Court cannot simply assume that every communication involving Allen as

26  in-house counsel that related to these transactions was made primarily for the purpose of securing

27  ————————————

28       [1]    Universal represents that it does not have a written policy regarding the sending of
   notices.

1    legal advice where that same in-house counsel also helped implement business decisions.  Universal

2    must therefore clarify whether each document or communication identified by Allen as privileged

3    was created for the primary purpose of providing legal advice or essentially for a business purpose.

4           Accordingly, Universal is ordered to supplement its privilege log by September 1, 2009,

5    addressing the issue noted above.  Thereafter, the parties shall meet and confer in a good faith effort

6    to reach agreement as to what, if any, documents have properly been withheld, and then to submit a

7    joint report by September 8, 2009, advising the Court of any documents identified in Lenz's motion

8    that are being withheld on the basis of privilege that remain in dispute.

9           6.      Request Number Fourteen

10          Request number fourteen seeks any documents relating to attempts to exploit the market for

11   the "Let's Go Crazy" composition.  Universal represents that the only actual or potential market for

12   "Let's Go Crazy" affected by Lenz's video is whatever market exists for synchronization licenses

13   specific to the song itself.  Based on this representation, Lenz no longer seeks an order compelling

14   production of non-synchronization licenses, or licenses that are not specific to "Let's Go Crazy."

15   That said, Lenz still seeks documents relating to other attempts to enter into "Let's Go Crazy"

16   synchronization licenses including materials relating to the license entered into for an episode of

17   "The Late Show with David Letterman" ("Letterman license").[2]  Universal acknowledges that it will

18   produce one license, but it is unclear whether it is the Letterman license.

19          Besides the one license Universal has agreed to produce, it argues that other such licenses

20   have no conceivable relevance to this case.  Contrary to Universal's argument, other licenses are

21   relevant to the question of whether or not Lenz's video is a fair use of "Let's Go Crazy," and

22   therefore, did not warrant a takedown notice.  Accordingly, Lenz is entitled to these documents or to

23   confirmation that no further licenses exist.

24          7.      Request Number Sixteen

25

26

---

27          [2]      In its opposition, Universal indicates that it identified and will produce in a
28   supplemental response one license that specifically licensed "Let's Go Crazy" for synchronization
     with audio-visual images.

9

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Request number sixteen seeks documents relating to the scope of Universal's interest in the

2    copyrighted work at issue.  In Universal's June 4, 2007 takedown notice, it claimed that Lenz's video

3    infringed the musical composition "Let's Go Crazy," Copyright Reg. No. PA0000217248.  As a

4    result, Lenz argues that she is entitled to receive a copy of the work Universal identified.  Universal

5    contends that the deposit copy of the song is not relevant to the claims or defenses in this case, and it

6    does not have a copy of the song that was deposited with the Copyright Office.  As Universal has

7    represented it does not possess such a copy, no further production shall be required.

8                                                        III.  CONCLUSION

9    Universal's motions to compel regarding damages and communications with Fleming are

10   granted.  Lenz shall produce the material requested as outlined above.  Lenz's motion to compel is

11   granted in part and denied in part.  As to request numbers two, three, four, and sixteen no further

12   production will be ordered.  With respect to the remaining requests, Universal shall produce the

13   information requested as explained above within twenty days of the date of this order except for

14   request numbers nine, ten, and eleven.  For those three requests, Universal shall follow the

15   instructions provided above.

16      IT IS SO ORDERED.

17

18   Dated: 8/25/09

19                                                             RICHARD SEEBORG
                                                              United States Magistrate Judge

20

21

22

23

24

25

26

27

28   ORDER: (1) GRANTING UNIVERSAL'S MOTION TO COMPEL RE: DAMAGES; (2) GRANTING UNIVERSAL'S
     MOTION TO COMPEL COMMUNICATIONS; AND (3) GRANTING IN PART AND DENYING IN PART LENZ'S
     MOTION TO COMPEL DOCUMENTS
     C 07-3783 JW (RS)
                                                        10

# EXHIBIT B

# CONFIDENTIAL --

# FILED UNDER SEAL

# EXHIBIT C

1   KELLY M. KLAUS (SBN 161091)
    Kelly.Klaus@mto.com
2   L. ASHLEY AULL (SBN 257020)
    Ashley.Aull@mto.com
3   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
4   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
5   Telephone:     (213) 683-9100
    Facsimile:      (213) 687-3702
6
    Attorneys for Defendants
7   UNIVERSAL MUSIC CORP.,
    UNIVERSAL MUSIC PUBLISHING, INC.
8   and UNIVERSAL MUSIC PUBLISHING
    GROUP
9

10

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14

15  STEPHANIE LENZ,                    CASE NO.  CV-07-03783-JF (RS)

16                                     **DECLARATION OF ROBERT E.**
                 Plaintiff,            **ALLEN IN SUPPORT OF**
17                                     **DEFENDANTS' OPPOSITION TO**
                                       **PLAINTIFFS' MOTION TO COMPEL**
18        vs.                          **PRODUCTION OF DOCUMENTS**

19  UNIVERSAL MUSIC CORP.,             Date:    August 19, 2009
    UNIVERSAL MUSIC PUBLISHING, INC. and   Time:   9:30 a.m.
20  UNIVERSAL MUSIC PUBLISHING GROUP,  Judge:  Hon. Richard G. Seeborg
                                       Courtroom:  4
21               Defendants.
                                       [Opposition to Plaintiff's Motion and
22                                     Declarations of Kelly M. Klaus, Ed Arrow
                                       and Peter Lofrumento filed concurrently]
23

24

25

26

27

28

1    I, Robert E. Allen, declare:

2         1.    I am Senior Vice President, Business Affairs, Universal Music Publishing Group.

3    I make this declaration in support of the Opposition of Defendants Universal Music Corp.,

4    Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively,

5    "Universal") to Plaintiff's Motion to Compel Production of Documents. Universal is engaged in

6    the business of music publishing in, among other places, the United States. Except as to those

7    matters stated on information and belief, the contents of this declaration are based upon my own

8    personal knowledge. If called as a witness in this action, I could and would testify competently to

9    the matters stated herein.

10        2.    I am and since 1993 have been an attorney licensed to practice law in the State of

11   California. My job responsibilities at Universal include advising on and coordinating a variety of

12   business and legal matters concerning Universal's relationship with various songwriters whose

13   rights Universal administers. In the course of my job responsibilities, I both provide legal advice

14   to other Universal employees and receive and disseminate legal advice from other Universal

15   attorneys.

16        3.    One of the songwriters whose rights Universal administers is Prince Rogers

17   Nelson, professionally known as "Prince." I am the person at Universal with overall

18   responsibility for any legal or business issues that arise in the course of Universal's

19   administration of Prince's rights in his copyrighted works. I also am the person at Universal with

20   primary responsibility for communicating with Prince or his representatives regarding any issues

21   that arise in the course of Universal's administration of those works.

22        4.    I am assisted in my work by a staff of individuals. These persons have included

23   Raul Gonzalez (who no longer works for Universal), Alina Moffat, and Sean Johnson. To the

24   best of my knowledge, it is and has been the standard practice of these individuals to copy me on

25   their written communications regarding any matters involving Universal's administration of

26   Prince's rights.

27

28

8421121.1

ALLEN DECL. ISO
OPP. TO PLTF'S MOTION TO COMPEL
C 07-03783-JF (RS)

1        5.      Universal's administration of Prince's rights in his works is the subject of a written

2  Administration Agreement, made as of September 1, 2005, by and between Universal Music

3  Corp. on the one hand, and Prince Rogers Nelson, p/k/a/ Prince, d/b/a/ Controversy Music (on

4  behalf of all other music publishing companies owned and/or controlled by Prince) on the other.

5        6.      One of Universal's responsibilities as the administrator for Prince's copyrighted

6  works is to take legal action regarding the enforcement and protection of Prince's rights in those

7  works.

8        7.      Universal does not have a written policy that describes the procedures or practices

9  to be followed when sending notices to YouTube or other websites regarding the removal of or

10  the blocking of access to materials making unauthorized uses of copyrighted works for which

11  Universal administers rights.

12        8.      Universal Music Publishing Group and YouTube entered into a written Content

13  License Agreement in June 2007.  This Agreement has an Exhibit C, entitled "Restricted

14  Composer List."  The copy of the Agreement that is in Universal's files has no other text on

15  Exhibit C.

16        9.      I understand that this matter arises from a notice that Universal sent to YouTube

17  on or about June 4, 2007, that included a video posted by the Plaintiff.  Prior to Universal having

18  sent that notice, neither Prince nor any of his representatives had ever communicated with me or,

19  to the best of my knowledge, anyone at Universal, regarding Plaintiff or her video posting.

20       I declare under penalty of perjury under the laws of the United States that the foregoing is

21  true and correct and that this declaration was executed this 28 day of July, 2009, at Los Angeles,

22  California.

26                        ROBERT  ALLEN

# EXHIBIT D

# EXHIBIT D-1

# CONFIDENTIAL --

# FILED UNDER SEAL

# EXHIBIT D-2

# CONFIDENTIAL --

# FILED UNDER SEAL

# EXHIBIT E

# EXHIBIT E-1

# CONFIDENTIAL --

# FILED UNDER SEAL

# EXHIBIT E-2

# CONFIDENTIAL --

# FILED UNDER SEAL

# EXHIBIT F

1   Fred von Lohmann (SBN 192657)
    *fred@eff.org*
2   Kurt Opsahl (SBN 191303)
    *kurt@eff.org*
3   Corynne McSherry (SBN 221504)
    *corynne@eff.org*
4   ELECTRONIC FRONTIER FOUNDATION
    454 Shotwell Street
5   San Francisco, CA 94110
    Telephone: (415) 436-9333
6   Facsimile: (415) 436-9993

7

8   Attorneys for Plaintiff
    STEPHANIE LENZ

9                   UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12

13   STEPHANIE LENZ,                    )   No. C 07-03783-JF
                                        )
14                       Plaintiff,     )   **SECOND AMENDED COMPLAINT**
                                        )
15       v.                             )   (Jury Trial Demanded)
                                        )
16   UNIVERSAL MUSIC CORP., UNIVERSAL   )
     MUSIC PUBLISHING, INC.,            )
17                                      )
                                        )
18       and                            )
                                        )
19   UNIVERSAL MUSIC PUBLISHING GROUP,  )
                                        )
20                       Defendants.    )
     _____)

21

22       1.    This is a civil action seeking injunctive relief and damages for misrepresentation of

23   copyright claims under the Digital Millennium Copyright Act ("DMCA").

24       2.    This case arises from an improper assertion of copyright infringement against a

25   mother who made a short home video recording of her children playing and dancing, which she

26   shared with her family and friends via the popular Internet video website YouTube.  The

27   infringement claim successfully compelled YouTube to remove Plaintiff's original video from

28   public access.

## PARTIES

3.    Plaintiff Stephanie Lenz ("Lenz") is an individual residing in Gallitzin, Pennsylvania.

4.    On information and belief, Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group (collectively, "Universal" or "Defendants") are business entities and/or corporations that each maintain a principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this claim pursuant to the Copyright Act (17 U.S.C. §§ 101 et seq.), 28 U.S.C. §§ 1331 and 1338.

6.    On information and belief, Defendants are subject to the general and specific jurisdiction of this Court.

## VENUE AND INTRADISTRICT ASSIGNMENT

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391.

8.    Assignment to the San Jose division is proper pursuant to Local Rule 3-2(c) and (d) because a substantial portion of the events giving rise to this action occurred in this district and division.

## FACTUAL ALLEGATIONS

9.    YouTube is a video-sharing website where millions of Internet users post videos to make them available to others for viewing. These videos range from traditional home recordings of personal events to news reports, advertisements, and television programs. YouTube's website is available at the web address www.youtube.com. Its corporate headquarters is located in San Bruno, California.

10.    On information and belief, Defendants are music publishing companies. On information and belief, Defendants own and/or administer the copyrights in musical compositions owned or controlled by the artist Prince Rogers Nelson, professionally known as "Prince," including the song "Let's Go Crazy."

11.     Plaintiff Stephanie Lenz is a mother, wife, writer and editor.  She and her husband have two children, Zoe and Holden.

12.     On or about February 7, 2007, Lenz's children were playing in the family's kitchen when Holden (then 13 months old) began dancing to the Prince song "Let's Go Crazy," which was playing in the background on the Lenz family CD player.  Zoe and Holden had recently heard Prince perform on television during the Super Bowl halftime show.  Lenz used her digital camera to create a 29-second video recording of the children's activities, which consisted primarily of Holden's dance performance.  Lenz later transferred the recording onto her computer and saved it as a video computer file (hereafter "Holden Dance Video").

13.     The video bears all the hallmarks of a family home movie—it is somewhat blurry, the sound quality is poor, it was filmed with an ordinary digital video camera, and it focuses on documenting Holden's "dance moves" against a background of normal household activity, commotion and laughter.

14.     Due to the noise and commotion made by the children, the song "Let's go Crazy" can only be heard in the background for approximately 20 seconds of the 29-second video and even then not all that clearly.  The portion of the song used is near the song's end and includes only a few words of the lyrics.

15.     On information and belief, the snippet of "Let's Go Crazy" that plays in the background (not dubbed as a soundtrack) of the Holden Video could not substitute for the original Prince song in any conceivable market.  This is due, in part, to the abbreviated nature of the use of the work, the low audio quality of the ordinary digital video camera Ms. Lenz used, the household noises, laughter and talking of Ms. Lenz that partially obscure the music, and the sounds made by the toys that Holden and his sister are pushing around the kitchen during the video.

16.     Holden was just learning to walk when Lenz made the video.  Lenz thought her friends and family, particularly her mother in California, would enjoy seeing Holden's new ability to dance as well.  Lenz's mother has difficulty downloading email files but knows how to access the YouTube website.

17.     Therefore, on or about February 8, 2007, Lenz uploaded the Holden Dance Video

1  from her computer to the YouTube website for her family and friends to enjoy.  The video was

2  publicly available at the Internet address <http://www.youtube.com/watch?v=N1KfJHFWlhQ>.

3      18.    Thus, the purpose and character of the video was for Ms. Lenz to amuse her family

4  and friends with her young child's nascent dancing ability.   This was non-commercial and

5  transformative, as it made a use of the work that was distinct and separate from its original context

6  and added additional creative elements, such as Holden's dancing.  Moreover, the amount of the

7  song taken was approximately 20 seconds of a 3 1/2 minute song – the necessary background of

8  the almost equally brief video—and the content of the Holden Dance Video did not and could not

9  substitute for the original song or inflict any harm to the market for the original song.

10      19.    On information and belief, Defendants are sophisticated music industry companies,

11  have extensive experience with copyright law, and employ staff who are familiar with the Digital

12  Millennium Copyright Act (including the Section 512 "good faith" requirements and the obligation

13  to submit Section 512 notices under penalty of perjury), as well as the principles and application of

14  the fair use doctrine.

15      20.    On information and belief, between February and June 2007, Defendants, and/or

16  their representatives, viewed the Holden Dance Video and decided to issue a DMCA takedown

17  notice despite their knowledge that the use of the Prince song in the video was a non-infringing fair

18  use.

19      21.    On June 4, 2007, Defendants, through their representative, demanded that YouTube

20  remove the Holden Dance Video from the YouTube website because the video allegedly infringed

21  a copyright owned or administered by Defendants.   By authorizing the demand, Defendants

22  affirmed under penalty of perjury that the notice of infringement was accurate and that they were

23  authorized to make the infringement claim arising from the Prince song "Let's Go Crazy."  See

24  Notice of Copyright Infringement, attached hereto as Ex. A.

25      22.    On information and belief, Defendants sent this notice to copyright@youtube.com.

26  Section 8 of YouTube's Terms of Use expressly states that "only DMCA notices should go to the

27  Copyright Agent [with the email address 'copyright@youtube.com'.]."  See YouTube Terms of

28  Use, downloaded on April 17, 2008, from http://www.youtube.com/t/terms and attached hereto as

1    Ex. B.    On information and belief, the relevant portions of this webpage have not been

2    substantively modified since June 4, 2007.

3          23.    The notice precisely tracked the language specified for a notice of claimed

4    infringement under Section 512(c)(3) of the DMCA.

5          24.    On information and belief, YouTube treated the demand as a request for takedown

6    pursuant to the Section 512(c)(3) of the DMCA.

7          25.    On June 5, 2007, YouTube sent Lenz an email notifying her that it had removed the

8    Holden Dance Video pursuant to Universal's notification that the material infringed their

9    copyright.  The email warned Lenz that repeated incidents of copyright infringement could lead to

10   the deletion of her YouTube account and all videos uploaded to the account. See Notice of Video

11   Removal, attached hereto as Ex. C.

12         26.    The email advised Lenz that she was entitled to submit a counter-notice, and

13   directed her to webpages that explained the procedures for a counter-notice pursuant to Section

14   512(g) of the DMCA. Id.  See also "Help Center: How do I file a counter notice?" downloaded on

15   April 17, 2008, from http://www.google.com/support/youtube/bin/answer.py?answer+59826 and

16   attached hereto as Ex. D.  On information and belief, the relevant portions of this webpage have not

17   been substantively modified since June 4, 2007.

18         27.    On June 27, 2007, Lenz sent YouTube a counter-notice, pursuant to Section 512(g)

19   of the DMCA, demanding that her video be reposted because it did not infringe Universal's

20   copyright in any way.  Following that counter-notice, YouTube restored the video.  Regardless, the

21   Holden Dance Video remained unavailable on YouTube for more than six weeks.

22         28.    On information and belief, on or around September 13, 2007, Prince issued a

23   statement threatening to sue several Internet service providers for copyright infringement as part of

24   an effort to "to reclaim his art on the internet."  See M. Collett-White, "Prince to Sue YouTube,

25   eBay Over Music Use," Reuters, Sept. 13, 2007, downloaded on April 16, 2008, from

26   http://www.reuters.com/article/internetNew/idUSL1364328420070914?feedtype=RSS&feedName

27   _InternetNews&rpc=22&sp=true, and attached hereto as Ex. E.  On information and belief, the

28   relevant portions of this webpage have not been substantively modified since September 13, 2007.

29.  On information and belief, the statement asserted that "Prince strongly believes that artists as creators and owners of their music need to reclaim their art."

30.   On or around October 26, 2007, Defendants released the following statement to ABC News, in response to a request for comment regarding the take down of the Holden Dance Video:

> Prince believes it is wrong for YouTube, or any other user-generated site, to appropriate his music without his consent. That position has nothing to do with any particular video that uses his songs. It's simply a matter of principle. And legally, he has the right to have his music removed.  We support him and this important principle. That's why, over the last few months, we have asked YouTube to remove thousands of different videos that use Prince music without his permission.

See J. Avila et al, "The Home Video Prince Doesn't Want You to See," ABC News, October 26, 2007, downloaded on November 7, 2007, from http://abcnews.go.com/print?id+3777651 and attached hereto as Ex. F.

31.  On information and belief, Prince himself demanded that Universal seek the removal of the Holden Video.  On information and belief, Universal sent the DMCA notice at Prince's behest, based not on the particular characteristics of the Holden Video or any good-faith belief that it actually infringed a copyright but on its belief that, as "a matter of principle," Prince "has the right to have his music removed."

## COUNT I: 17 U.S.C. § 512(F) MISREPRESENTATION

32.   Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this complaint.

33.   The Holden Dance Video does not infringe any copyright owned or administered by Defendants.

34.   Lenz's use of the Prince song "Let's Go Crazy" is a self-evident non-infringing fair use under 17 U.S.C. § 107.  This is in part because the Holden Dance Video non commercially transforms the song into partially obscured background music for a family video about a toddler just learning to dance, uses only a small, nonsubstantial portion of the original work, and does not substitute for the work or harm any market for the work.

35.   On information and belief, Defendants had actual subjective knowledge of the

1   contents of the Holden Dance Video and that it did not infringe any Universal copyrights on the

2   date they sent YouTube the takedown notice regarding the Holden Dance Video. With this actual

3   subjective knowledge, Defendants acted in bad faith when they sent the takedown notice,

4   knowingly and materially misrepresenting that they had concluded that the video was infringing.

5       36.     In the alternative, Defendants should have known, if they had acted with reasonable

6   care or diligence, or would have no substantial doubt had they been acting in good faith, that the

7   Holden Dance Video did not infringe any Universal copyrights on the date they sent YouTube their

8   complaint under the DMCA.

9       37.     Defendants violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting

10  that Holden Dance Video infringed Universal's copyright.

11      38.     As a direct and proximate result of Defendants' actions, Plaintiff has been injured

12  substantially and irreparably. Such injury includes, but is not limited to, the financial and personal

13  expenses associated with responding to the claim of infringement and harm to her free speech

14  rights under the First Amendment. Because Universal's notice was intimidating, Ms. Lenz is now

15  fearful that someone might construe some portion of a new home video to infringe a copyright. As

16  a result, she has not posted a single video on YouTube since she received the takedown notice.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment as follows:

1.  Injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from bringing any lawsuit or threat against Plaintiff for copyright infringement in connection with the Holden Dance Video, including, but not limited to, the video's publication, distribution, performance, display, licensing, or the ability to host it online or link to it from any website;

2.  Damages according to proof;

3.  Attorneys fees pursuant to 17 U.S.C. § 512(f), other portions of the Copyright Act including Section 505, on a Private Attorney General basis, or otherwise as allowed

-7-

1    by law;

2        4.    Plaintiff's costs and disbursements; and

3        5.    Such other and further relief as the Court shall find just and proper.

4

5        Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited

6    to, those issues and claims set forth in any amended complaint or consolidated action.

7

8    DATED: April 18, 2008

9                                    By _____/s/_____
10                                       Corynne McSherry, Esq.
                                         ELECTRONIC FRONTIER FOUNDATION
11                                       454 Shotwell Street
                                         San Francisco, CA  94110
12                                       Telephone:  (415) 436-9333
                                         Facsimile:  (415) 436-9993

13

14                                       Attorneys for Plaintiff
                                         STEPHANIE LENZ

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-8-
SECOND AMENDED COMPLAINT

# EXHIBIT G

**E-Filed 8/20/08**

DESIGNATED FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| STEPHANIE LENZ, | Case Number C 07-3783 JF |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| v. | [re: docket no. 38] |
| UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP, | |
| Defendants. | |

    Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal") move to dismiss the instant case for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court has read the moving papers and has considered the oral arguments of counsel. For the reasons set forth below, the motion will be DENIED.

### I. BACKGROUND

    On February 7, 2007, Plaintiff Stephanie Lenz ("Lenz") videotaped her young children dancing in her family's kitchen. The song "Let's Go Crazy" by the artist professionally known as Prince ("Prince") played in the background. The video is twenty-nine seconds in length, and

1  "Let's Go Crazy" can be heard for approximately twenty seconds, albeit with difficulty given the

2  poor sound quality of the video. The audible portion of the song includes the lyrics, "C'mon

3  baby let's get nuts" and the song's distinctive guitar solo. Lenz is heard asking her son, "what do

4  you think of the music?" On February 8, 2007, Lenz titled the video "Let's Go Crazy #1" and

5  uploaded it to YouTube.com ("YouTube"), a popular Internet video hosting site, for the alleged

6  purpose of sharing her son's dancing with friends and family.[1] YouTube provides "video

7  sharing" or "user generated content." The video was available to the public at

8  http://www.youtube.com/watch?v=N1KfJHFW1hQ.

9        Universal owns the copyright to "Let's Go Crazy." On June 4, 2007, Universal sent

10  YouTube a takedown notice pursuant to Title II of the Digital Millennium Copyright Act

11  ("DMCA"), 17 U.S.C. § 512 (2000). The notice was sent to YouTube's designated address for

12  receiving DMCA notices, "copyright@youtube.com," and demanded that YouTube remove

13  Lenz's video from the site because of a copyright violation. YouTube removed the video the

14  following day and sent Lenz an email notifying her that it had done so in response to Universal's

15  accusation of copyright infringement. YouTube's email also advised Lenz of the DMCA's

16  counter-notification procedures and warned her that any repeated incidents of copyright

17  infringement could lead to the deletion of her account and all of her videos. After conducting

18  research and consulting counsel, Lenz sent YouTube a DMCA counter-notification pursuant to

19  17 U.S.C. § 512(g) on June 27, 2007. Lenz asserted that her video constituted fair use of "Let's

20  Go Crazy" and thus did not infringe Universal's copyrights. Lenz demanded that the video be re-

21  posted. YouTube re-posted the video on its website about six weeks later. As of the date of this

22  order, the "Let's Go Crazy #1" video has been viewed on YouTube more than 593,000 times.

23        In September 2007, Prince spoke publicly about his efforts "to reclaim his art on the

24  internet" and threatened to sue several internet service providers for alleged infringement of his

25

26

27  _____

28        [1] Lenz has posted other home videos on YouTube, allegedly for the same purpose. These
    additional videos are not at issue in this action.

2

Case No. C 07-3783 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)

1   music copyrights.[2]  Lenz alleges that Universal issued the removal notice only to appease Prince

2   because Prince "is notorious for his efforts to control all uses of his material on and off the

3   Internet."  Lenz's Opposition Brief at 3.  In an October 2007 statement to ABC News, Universal

4   made the following comment:

5           Prince believes it is wrong for YouTube, or any other user-generated site, to
        appropriate his music without his consent.  That position has nothing to do with
6           any particular video that uses his songs.  It's simply a matter of principle.  And
        legally, he has the right to have his music removed.  We support him and this
7           important principle.  That's why, over the last few months, we have asked
        YouTube to remove thousands of different videos that use Prince music without
8           his permission. [3]

9   Second Amended Complaint ("SAC"), ¶ 30; *see also* J. Aliva et al., *The Home Video Prince*

10  *Doesn't Want You to See*, ABC NEWS, Oct. 26, 2007, http://abcnews.go.com/print?id+3777651

11  (last viewed July 23, 2008).  Lenz asserts in her complaint that "Prince himself demanded that

12  Universal seek the removal of the ["Let's Go Crazy #1"] video . . . [and that] Universal sent the

13  DMCA notice at Prince's behest, based not on the particular characteristics of [the video] or any

14  good-faith belief that it actually infringed a copyright but on its belief that, as 'a matter of

15  principle' Prince 'has the right to have his music removed.'" SAC ¶ 31.

16          On July 24, 2007, Lenz filed suit against Universal alleging misrepresentation pursuant to

17  17 U.S.C. § 512(f) and tortious interference with her contract with YouTube.  She also sought a

18  declaratory judgment of non-infringement.  Universal filed a motion to dismiss, which the Court

19  granted on April 8, 2008.  Lenz was given leave to amend her complaint to replead her first and

20  second claims for relief.  On April 18, 2008, Lenz filed the operative SAC, alleging only a claim

21  for misrepresentation pursuant to 17 U.S.C. § 512(f).  On May 23, 2008, Universal filed the

22  instant motion.

23                              **II. LEGAL STANDARD**

24          "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

25  _____

26          [2] *See, e.g.,* M. Collett-White, *Prince to Sue YouTube, eBay Over Music Use*, REUTERS,
    Sept. 13, 2007, http://www.reuters.com/article/internetNew/idUSL1364328420070914?feedtype
27  =RSS&feedName_InternetNews&rpc=22&sp=true (last visited July 23, 2008).

28          [3] Lenz has dubbed this alleged pattern of activity the "Prince Policy."

                                                    3

1   cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

2   *Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  "While a complaint

3   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

4   plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

5   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

6   do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964-65 (2007) (internal

7   citations omitted).

8                                           **III. DISCUSSION**

9            The DMCA requires that copyright owners provide the following information in a

10  takedown notice:

11          (i) A physical or electronic signature of a person authorized to act on behalf of the
            owner of an exclusive right that is allegedly infringed.
12

13          (ii) Identification of the copyrighted work claimed to have been infringed, or, if
            multiple copyrighted works at a single online site are covered by a single
            notification, a representative list of such works at that site.
14

15          (iii) Identification of the material that is claimed to be infringing or to be the
            subject of infringing activity and that is to be removed or access to which is to be
            disabled, and information reasonably sufficient to permit the service provider to
16          locate the material.

17          (iv) Information reasonably sufficient to permit the service provider to contact the
            complaining party, such as an address, telephone number, and, if available, an
18          electronic mail address at which the complaining party may be contacted.

19          (v) *A statement that the complaining party has a good faith belief that use of the
            material in the manner complained of is not authorized by the copyright owner,*
20          *its agent, or the law.*

21          (vi) A statement that the information in the notification is accurate, and under
            penalty of perjury, that the complaining party is authorized to act on behalf of the
22          owner of an exclusive right that is allegedly infringed.

23  17 U.S.C. § 512(c)(3)(A) (emphasis added).  Here, the parties do not dispute that Lenz used

24  copyrighted material in her video or that Universal is the true owner of Prince's copyrighted

25  music.  Thus the question in this case is whether 17 U.S.C. § 512(c)(3)(A)(v) requires a

26  copyright owner to consider the fair use doctrine in formulating a good faith belief that "use of

27  the material in the manner complained of is not authorized by the copyright owner, its agent, or

28  the law."

                                                    4

1    Universal contends that copyright owners cannot be required to evaluate the question of

2 fair use prior to sending a takedown notice because fair use is merely an *excused* infringement of

3 a copyright rather than a use *authorized* by the copyright owner or by law.  Universal emphasizes

4 that Section 512(c)(3)(A) does not even mention fair use, let alone require a good faith belief that

5 a given use of copyrighted material is not fair use.  Universal also contends that even if a

6 copyright owner were required by the DMCA to evaluate fair use with respect to allegedly

7 infringing material, any such duty would arise only *after* a copyright owner receives a counter-

8 notice and considers filing suit.  *See* 17 U.S.C. § 512(g)(2)(C).

9    Lenz argues that fair use *is* an authorized use of copyrighted material, noting that the fair

10 use doctrine itself is an express component of copyright law.  Indeed, Section 107 of the

11 Copyright Act of 1976 provides that "[n]otwithstanding the provisions of sections 106 and 106A,

12 the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107.

13 Lenz asserts in essence that copyright owners cannot represent in good faith that material

14 infringes a copyright without considering all authorized uses of the material, including fair use.

15    Whether fair use qualifies as a use "authorized by law" in connection with a takedown

16 notice pursuant to the DMCA appears to be an issue of first impression.  Though it has been

17 discussed in several other actions, no published case actually has adjudicated the merits of the

18 issue.  *See, e.g., Doe v. Geller*, 533 F. Supp. 2d 996, 1001 (N.D. Cal. 2008) (granting motion to

19 dismiss for lack of personal jurisdiction).

20 **A.     Fair Use and 17 U.S.C. § 512(c)(3)(A)(v).**

21    When interpreting a statute, a court must begin "with the language of the statute and ask

22 whether Congress has spoken on the subject before [it]." *Norfolk and Western Ry. Co. v.*

23 *American Train Dispatchers Ass'n*, 499 U.S. 117, 128 (1991).  If "Congress has made its intent

24 clear, [the court] must give effect to that intent." *Miller v. French*, 530 U.S. 327, 336 (2000)

25 (internal quotation marks and citation omitted).  Here, the Court concludes that the plain meaning

26 of "authorized by law" is unambiguous.  An activity or behavior "authorized by law" is one

27 permitted by law or not contrary to law.  Though Congress did not expressly mention the fair use

28 doctrine in the DMCA, the Copyright Act provides explicitly that "the fair use of a copyrighted

5

1   work . . . is not an infringement of copyright." 17 U.S.C. § 107.  Even if Universal is correct that

2   fair use only *excuses* infringement, the fact remains that fair use is a lawful use of a copyright.[4]

3   Accordingly, in order for a copyright owner to proceed under the DMCA with "a good faith

4   belief that use of the material in the manner complained of is not authorized by the copyright

5   owner, its agent, or the law," the owner must evaluate whether the material makes fair use of the

6   copyright.  17 U.S.C. § 512(c)(3)(A)(v).  An allegation that a copyright owner acted in bad faith

7   by issuing a takedown notice without proper consideration of the fair use doctrine thus is

8   sufficient to state a misrepresentation claim pursuant to Section 512(f) of the DMCA.  Such an

9   interpretation of the DMCA furthers both the purposes of the DMCA itself and copyright law in

10  general.  In enacting the DMCA, Congress noted that the "provisions in the bill balance the need

11  for rapid response to potential infringement with the end-users [sic] legitimate interests in not

12  having material removed without recourse."  Sen. Rep. No. 105-190 at 21 (1998).

13        Universal suggests that copyright owners may lose the ability to respond rapidly to

14  potential infringements if they are required to evaluate fair use prior to issuing takedown notices.

15  Universal also points out that the question of whether a particular use of copyrighted material

16  constitutes fair use is a fact-intensive inquiry, and that it is difficult for copyright owners to

17  predict whether a court eventually may rule in their favor.  However, while these concerns are

18  understandable, their actual impact likely is overstated.  Although there may be cases in which

19  such considerations will arise, there are likely to be few in which a copyright owner's

20  determination that a particular use is not fair use will meet the requisite standard of subjective

21  bad faith required to prevail in an action for misrepresentation under 17 U.S.C. § 512(f).  *See*

22  *Rossi v. Motion Picture Ass'n of America, Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (holding that

23  "the 'good faith belief' requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than

24

25

─────────────────

26        [4] The Supreme Court also has held consistently that fair use is not infringement of a
    copyright.  *See e.g., Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433
27  (1984) ("[a]nyone . . . who makes a fair use of the work is not an infringer of the copyright with
    respect to such use.").
28

6

1  objective, standard").[5]

2  The Copyright Act unequivocally establishes the four factors used to determine fair use:

3  In determining whether the use made of a work in any particular case is a fair use
   the factors to be considered shall include--

4

5  (1) the purpose and character of the use, including whether such use is of a
   commercial nature or is for nonprofit educational purposes;

6  (2) the nature of the copyrighted work;

7  (3) the amount and substantiality of the portion used in relation to the
   copyrighted work as a whole; and

8

9  (4) the effect of the use upon the potential market for or value of the
   copyrighted work.

10  The fact that a work is unpublished shall not itself bar a finding of fair use if such
   finding is made upon consideration of all the above factors.

11

12  17 U.S.C. § 107.  Undoubtedly, some evaluations of fair use will be more complicated than

13  others. But in the majority of cases, a consideration of fair use prior to issuing a takedown notice

14  will not be so complicated as to jeopardize a copyright owner's ability to respond rapidly to

15  potential infringements.  The DMCA already requires copyright owners to make an initial review

16  of the potentially infringing material prior to sending a takedown notice; indeed, it would be

17  impossible to meet any of the requirements of Section 512(c) without doing so.  A consideration

18  of the applicability of the fair use doctrine simply is part of that initial review.  As the Ninth

19  Circuit observed in *Rossi*, a full *investigation* to verify the accuracy of a claim of infringement is

20  not required. *Rossi*, 391 F.3d at 1003-04.

21  The purpose of Section 512(f) is to prevent the abuse of takedown notices.  If copyright

22  owners are immune from liability by virtue of ownership alone, then to a large extent Section

23  512(f) is superfluous.  As Lenz points out, the unnecessary removal of non-infringing material

24  _____

25  [5] One might imagine a case in which an alleged infringer uses copyrighted material in a
   manner that unequivocally qualifies as fair use, and in addition there is evidence that the
26  copyright owner deliberately has invoked the DMCA not to protect its copyright but to prevent
   such use. *See, e.g., Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204-05 (N.D.
27  Cal. 2004) (suggesting that the copyright owner sought to use the DMCA "as a sword to suppress
   publication of embarrassing content rather than as a shield to protect its intellectual property").
28

7

1   causes significant injury to the public where time-sensitive or controversial subjects are involved

2   and the counter-notification remedy does not sufficiently address these harms.  A good faith

3   consideration of whether a particular use is fair use is consistent with the purpose of the statute.

4   Requiring owners to consider fair use will help "ensure[] that the efficiency of the Internet will

5   continue to improve and that the variety and quality of services on the Internet will expand"

6   without compromising "the movies, music, software and literary works that are the fruit of

7   American creative genius."  Sen. Rep. No. 105-190 at 2 (1998).

8   **B.      The Sufficiency of Lenz's Second Amended Complaint**

9           **1. The "Prince Policy"**

10          The operative SAC contains sufficient allegations of bad faith and deliberate ignorance of

11  fair use to survive the instant motion to dismiss.  Lenz alleges that Universal is a sophisticated

12  corporation familiar with copyright actions, and that rather than acting in good faith, Universal

13  acted solely to satisfy Prince.  SAC ¶ 31. Lenz alleges that Prince has been outspoken on matters

14  of copyright infringement on the Internet and has threatened multiple suits against internet

15  service providers to protect his music.  *Id.* at ¶ 28. Lenz also alleges that Universal acted to

16  promote Prince's personal agenda and that its actions "ha[ve] nothing to do with any particular

17  [YouTube] video that uses his songs."  *Id.* at ¶ 30.  Although the Court has considerable doubt

18  that Lenz will be able to prove that Universal acted with the subjective bad faith required by

19  *Rossi*, and following discovery her claims well may be appropriate for summary judgment,

20  Lenz's allegations are sufficient at the pleading stage.

21          **2. Damages**

22          Universal also contends that the SAC fails to allege a compensable loss under the

23  DMCA.  Universal Brief at 2.  The SAC provides that:

24          [Lenz's] injury includes, but is not limited to, the financial and personal expenses
            associated with responding to the claim of infringement and harm to her free
25          speech rights under the First Amendment.  Because Universal's notice was
            intimidating, Ms. Lenz is now fearful that someone might construe some portion
26          of a new home video to infringe a copyright.  As a result, she has not posted a
            single video on YouTube since she received the takedown notice.
27

28  SAC ¶ 38. Universal nonetheless claims that Lenz has not alleged a compensable loss because:

8

Case No. C 07-3783 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)

1   (1) Universal is a private entity and thus not subject to First Amendment actions; (2) Lenz did not

2   suffer any actual injury as a result of the notice; (3) Universal is not liable for damages for

3   intimidation; and (4) Section 512 does not provide for injunctive relief.

4       At oral argument, counsel for Lenz indicated that while the damages incurred in preparing

5   Lenz's counter-notice cannot be elaborated upon for reasons of privilege, Lenz did incur actual

6   damages in reviewing counter-notice procedures, seeking the assistance of an attorney, and

7   responding to the takedown notice. *See* Transcript of Law & Motion Hearing, July 18, 2008, p.

8   5:15-25. Though damages may be nominal and their exact nature is yet to be determined, the

9   Court concludes that Lenz adequately has alleged cognizable injury under the DMCA.

10                                    **IV. ORDER**

11      Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is

12  DENIED. Universal shall file its answer within twenty (20) days of the date of this order.

13

14  DATED: August 20, 2008

15

16                                    JEREMY FOGEL
                                      United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

                                    9

1

This order has been served upon the following persons:

2

3

Corynne McSherry
Email: corynne@eff.org

4

Jason M. Schultz
Email: jason@eff.org

5

6

Marcia Clare Hofmann
Email: marcia@eff.org

7

Michael Soonuk Kwun
Email: michael@eff.org

8

9

Kelly Max Klaus
Email: kelly.klaus@mto.com

10

Amy C. Tovar
Email: amy.tovar@mto.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-3783 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)