Pages 1 - 48

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Magistrate Judge

```
Stephanie Lenz,              )
                             )
          Plaintiff,         )
                             )
  VS.                        )    NO. C 07-3783 JF (RS)
                             )
Universal Music Group, Inc.; )
et al.,                      )
                             )
          Defendants.        )
_____)
```

San Jose, California
Wednesday, August 19, 2009

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
RECORDING**

**APPEARANCES**:

For Plaintiff:

        Keker & Van Nest
        710 Sansome Street
        San Francisco, California  94111-1704
   BY:  **MELISSA J. MIKSCH**
        **ATTORNEY AT LAW**


        Electronic Frontier Foundation
        454 Shotwell Street
        San Francsico, California 94110
   BY:  **CORYNNE MCSHERRY**
        **ATTORNEY AT LAW**

   **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


TRANSCRIBED BY:      Kelly L. Bryce
                   Court Reporter Pro Tem

          Computerized Transcription By Eclipse

1    <u>**APPEARANCES**</u>:  (CONTINUED)

2    For Defendants:

                         MUNGER, TOLLES & OLSON LLP
3                        355 South Grand Avenue
                         35th Floor
4                        Los Angeles, California 90071
                   BY:  **KELLY MAX KLAUS**
5                        **ATTORNEY AT LAW**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    <u>Wednesday - August 19, 2009</u>                          <u>9:55 a.m.</u>

2

3         **THE CLERK:**  Calling Case Number C 07-03783 RS, Lenz

4    versus Universal Music Corporation, et al.

5         Counsel, come forward, please, and state your

6    appearances.

7         **MS. MIKSCH:**  Good morning, Your Honor.  Melissa

8    Miksch of Keker & Van Nest for plaintiff Stephanie Lenz.  With

9    me is my colleague Corynne McSherry from the Electronic

10   Frontier Foundation.

11        **MS. McSHERRY:**  Good morning, Your Honor.

12        **THE COURT:**  Good morning.

13        **MR. KLAUS:**  Good morning, Your Honor.  Kelly Klaus

14   from Munger, Tolls & Olson for the Universal defendants.

15        **THE COURT:**  Good morning.

16        **MR. KLAUS:**  Good morning.

17        What I'd like to do is I'll review with you my

18   tentative thoughts on these various motions, and then we'll

19   take them one at a time.

20        Let me start with some comments about the

21   Universal's motion to compel regarding damages.  I know it's

22   a -- that's a sort of short summary of several subsets, which

23   is the motion goes to initial disclosures, a request for

24   document production, and a particular damages interrogatory.

25        I'm inclined to grant that motion.  I understand

1    that there's a dispute about how expansive the recoverable

2    damages are for a Section 512(f) violation, whether or not

3    litigation fees and costs are part of that damage universe or

4    not; but however that dispute is resolved, what is clear is

5    that, to me, is that damages is a part of this claim and that

6    the defendant is entitled to know how plaintiffs calculate and

7    support those damages.

8           I'm not convinced that it's a particular burden and

9    I don't think there are any real privilege issues here.  I

10   think the amount of fees is not privileged, and I think basic

11   information about the fees imposed can definitely be addressed

12   through redaction process if there are some particular

13   privilege issues.

14          You know, I guess the short summary, in my view, is

15   that the question of whether or not damages is an element of a

16   Section 512 claim or whether litigation fees and costs

17   represent recoverable damage are not the issues I have to reach

18   on a discovery motion.  To the extent that plaintiffs are

19   claiming they are entitled to such damages, they need to

20   respond with respect to discovery and redact if necessary, as I

21   said; but I think that issue is fairly clear, frankly, in my

22   mind.

23          With respect to Universal's motion to compel

24   communications with I guess it's pronounced Theryn Fleming.  Is

25   that -- that's a Ms. or Mr.?

1          **MS. MIKSCH:**  Ms.

2          **THE COURT:**  It's a Ms., Ms. Fleming.

3          Apparently Ms. Fleming is someone who plaintiff

4  communicated with online.  I'm inclined to grant that motion.

5  There's no dispute that Ms. Fleming is not a lawyer, no dispute

6  that she did not hold herself out as such.

7          I understand the plaintiff's argument to be that,

8  with the understanding that Ms. Fleming had a law degree, that

9  she then reasonably believed that she could consult with

10  Ms. Fleming on legal matters and that the attorney-client

11  privilege protected those conversations.

12          I don't think there is a reasonable belief exception

13  to the situation here under Ninth Circuit law.  I know it's a

14  bit unclear.  I mean, I don't think the Circuit has weighed

15  in -- weighed in in a definitive way.  I just don't think that

16  we have that carve out.

17          And even if such an exception were to apply in our

18  Circuit Law, I just don't think there's been any showing here

19  that would support the reasonable belief exception.  Knowing

20  somebody has a law degree is not a reasonable basis to conclude

21  that you've established an attorney-client relationship with

22  that person.  I do think there's a sufficient showing of

23  relevance with respect to the communications.

24          And I further think that, to the extent that there

25  would be any privilege in this instance, which I really don't

1    think there is any showing, I think there would be a waiver

2    because there has been some selective disclosure of these chats

3    with Ms. Fleming.  So on that motion I'm inclined to grant it.

4              Now with respect to plaintiff's motion to compel the

5    production of documents, the question seems to be or the issues

6    that seem to be joined in this motion are whether or not the

7    cut-off date for responsive documents should go through to what

8    I understand to be the date of the Second-Amended Complaint,

9    which I think is April 18 of '08, whether or not Mr. Allen

10   who's the senior V.P. of business affairs ought to be included

11   in the custodian or the list of those whose documents are

12   subject to search, and whether or not there's a claim of

13   privilege regarding communications between the defendants and

14   Prince.

15             I'm inclined to grant the plaintiff's motion as

16   limited by plaintiff.  In other words, I think extending the

17   date through to April 18th, '08, is warranted as the issue is

18   whether or not Universal's notice of infringement was done in

19   bad faith; and I think even if the evidence is subsequent to

20   the notice, there could be some information from subsequent

21   materials that shed light on Universal's practices and

22   motivations.

23             I don't see any privilege in communications between

24   Prince and Universal.  Even if Universal's acting has some sort

25   of attorney in fact authorization to act on Prince's behalf, I

1   don't think that establishes the requisite attorney-client

2   relationship for purposes of invoking the privilege.  And there

3   may be some other issues in that motion that we can talk about.

4          Let me also just make a general comment about

5   motions in this case.  There is some -- some of this has been

6   filed under seal, and I signed off on that; but I'm very

7   concerned, as a general matter and in particular with respect

8   to this case, that there's some, perhaps, overreaching with

9   respect to under-seal proceedings.  I'm very averse to

10  under-seal proceedings.  I think we tend to, we, as a court,

11  sometimes tend to sign off on them because it's the path of

12  least resistance.

13         But so much of what we get, that is, the request to

14  have it under seal, is really not appropriately under seal,

15  because I think we have pretty clear directives from the Ninth

16  Circuit that, you know, the default is everything is -- this is

17  a public courtroom, filings are public, and you really have to

18  show that there's some particularized need to have something

19  under seal; and just saying, "Well, we have a protective

20  order," or, "We'd rather have this under seal," is not enough.

21         So what's done is done with respect to the pending

22  motion; but just for your own purposes going forward, I really

23  will be looking to a showing to warrant any sort of under seal

24  filings or submissions.

25         So let's now double back and start with Universal's

1   motion to compel on the damages question; and whoever's going

2   to talk about that, why don't you come on up.

3           MS. MIKSCH:  Your Honor, first may I ask a

4   clarifying question?

5           THE COURT:  Sure.

6           MS. MIKSCH:  Is Your Honor inclined to grant the

7   motion with respect to the production of time records or only

8   with respect to the disclosure of a calculation of the amount

9   of fees incurred?

10          THE COURT:  I think it's broader than just a

11  lump-sum total.  I think it's appropriate to provide, because I

12  don't think there's any privilege implicated in entries that

13  talk about, oh, the amount of legal work that was done at

14  certain periods of time.

15          Now, the particular entries, depending upon what

16  they are, if they do disclose privileged information, I'm not

17  saying that that's not subject to redaction, although there may

18  be some fights about whether or not the redactions are

19  appropriate; but I think it is -- if your question is, is my

20  tentative to say you simply communicate with your counterpart

21  it's "X" amount, that's not enough.  You have to provide some

22  basis for or some documentation that supports the calculation.

23          But, you know, we have a good deal of case law that

24  says just, you know, fees saying you work 10 hours on this

25  matter and it's this particular lawyer who worked on the

1    matter, that's not privileged.

2             And I do think that just from the very basic

3    perspective, you know, if plaintiffs say, "We're entitled to

4    damages," you're going to fight in front of the presiding judge

5    on whether or not the scope of damages includes litigation fees

6    and expenses and costs, and all that, and I know there's a hot

7    issue in that area and Judge Fogel will be deciding that

8    question.

9             But, as I understand it, plaintiffs are saying, and

10   I'm not surprised that they're saying this, "We are entitled to

11   a fairly expansive damage."  Damages, as an element of a 512

12   violation, includes a fairly large scope of potential damage."

13   More power to you.  But if that's your position, then I don't

14   think you can take the position at the same time that, "We

15   don't have to produce documentation that goes to litigation

16   fees and costs."

17            **MS. MIKSCH:**  First, Your Honor, with respect to our

18   privilege claim, you're quite right.  We're not claiming

19   privilege over who worked, how much they worked, and that it

20   was on this case.

21            The issue is, that reviewing our records and

22   redacting from within them the privileged information from the

23   information that's not privileged, which may include a general

24   description of the work we did, is something that is burdensome

25   and implicates our client's privilege.

1          But to address the --

2          **THE COURT:**  But how does it, the redaction -- if

3   you're allowed to redact, I don't understand how it implicates

4   the privilege because that is the -- that is the fix so that

5   there isn't a disclosure of privilege.

6          And the burden of going through -- well, just to say

7   it's burdensome is not enough and I suppose my just basic

8   reaction to that is, it doesn't, it really doesn't sound

9   particularly burdensome.  I mean, you go through the records

10  and you make some redactions.  That happens everyday.  What is

11  special about why this is burdensome?

12         **MS. MIKSCH:**  Well, first I should -- as Your Honor

13  probably understands, we're talking about over two years of

14  litigation fees on behalf of several attorneys, so there's a

15  lot of paper to look at.

16         And the burden is not -- we're not complaining that

17  we have to do some work.  We recognize we have to do some work.

18  We're complaining that the burden is that if we inadvertently

19  fail to redact something that Universal believes is privileged,

20  we then have a waiver dispute.  If we redact something that we

21  believe is privileged that Universal thinks is unlikely to be

22  privileged, we have a dispute about whether or not we've

23  improperly redacted.

24         **THE COURT:**  Alas that's the way of the world.  I

25  mean, you know, that's what we -- that's right.  You're right.

1          **MS. MIKSCH:**  I am right, Your Honor.  Thank you.

2          And I understand Your Honor's point, that we've put

3     this at issue as damages and Universal is entitled to

4     information, and we're not saying that they're not entitled to

5     this information.  We're saying that it's appropriate to

6     disclose this underlying information once all of the attorneys

7     work has accrued.  That would not be at this point in the case,

8     Your Honor, because obviously we're continuing to do work.

9          **THE COURT:**  Right.

10         **MS. MIKSCH:**  So disclosing that information now

11    would sort of create in the background a side issue of

12    reviewing the redacting documents, producing documents, arguing

13    about how much work we've done, maybe, you know, considerations

14    of whether or not we're being reasonable at a point in time

15    when it's not necessary to resolve the legal issues before the

16    Court.

17         **THE COURT:**  No.  I see that argument, and I think

18    that's the strongest of your arguments to say that, in

19    particular because Universal is saying you're never going to --

20    they don't think those damages are recoverable damages, that

21    you ought to get a determination first on whether or not that's

22    going to be part or not of a claim going forward.  Indeed,

23    Universal's position is there's going to be no claim going

24    forward, so why do you have to go through the process of

25    actually detailing those damages until there's some

1    determination on whether or not you need to go there.

2              And that's probably the best, in my view, of the

3    arguments in support of a timing argument as opposed to another

4    one.  Because I think if it does go forward and you do seek

5    those damages and you're determined to be entitled to those

6    damages, you've got to provide the information.  I mean, that's

7    just a pretty simple proposition.

8              So why don't I turn to you then, Mr. Klaus.  Why

9    now?

10             **MR. KLAUS:**  Your Honor, we are deposing the

11   plaintiff in a couple of weeks.  We don't want to have to

12   depose her twice on the same --

13             **THE COURT:**  But aren't you going to have to, because

14   they presumably, on this litigation fees and costs, they're

15   going to have to supplement because the thing keeps going on?

16   So there's -- you know, isn't your proposed timing going to

17   inevitably require more rather than less litigation expense?

18             **MR. KLAUS:**  We may or may not depending on what

19   the -- depending on what the subsequent activity in the case

20   is.

21             I would also just point out that, with respect to

22   coming up with some sort of a measure to alleviate the burden,

23   the claimed burden, and to put the issue before the Court so

24   that it can be resolved, that was invited by Judge Fogel more

25   than a month ago at the case management conference when this

1    issue was raised in the context of plaintiff's request to

2    bifurcate liability from damages.

3           Judge Fogel specifically invited the plaintiff to

4    come up with a procedure for putting that issue before him; and

5    in a month and a half worth of time since then, the plaintiff

6    has done nothing to propose any sort of a procedure.  So they

7    are in a situation that is, in a sense, of their own making.

8           But also just --

9           **THE COURT:**  Well, where does it stand on your -- you

10   made a motion to dismiss, didn't you, and Judge Fogel denied

11   the motion?

12          **MR. KLAUS:**  Correct.

13          **THE COURT:**  Okay.  And so at this juncture there

14   isn't anything pending that's going to bring the question of

15   the scope of recoverable damage.  It's not in front of Judge

16   Fogel at the moment.

17          **MR. KLAUS:**  It is not, although Judge Fogel

18   specifically requested or said that if plaintiffs were

19   concerned about this issue and wanted an early resolution, that

20   he would entertain a Rule 56 motion dedicated to just this

21   issue.  He thought that that would be --

22          **THE COURT:**  Well, you could also bring it, too;

23   couldn't you?

24          **MR. KLAUS:**  We could bring it as well.  But the

25   issue that Judge Fogel presented was, if you, plaintiff, are

1    the ones complaining about this discovery and want this issue

2    resolved sooner rather than later to avoid the burden, you

3    should be -- you're the ones who should be bringing the motion.

4            I'd also just say, on the question of burden,

5    there's been no showing, there's no attorney declaration saying

6    how many prime records would have to be reviewed.

7            **THE COURT:**  Right.

8            **MR. KLAUS:**  And while Ms. Miksch is correct that the

9    case has been pending for approximately two years now, there

10   have been significant periods of -- of dormant activity in the

11   case while motions have been under submission.  And, so, it

12   seems unlikely -- this is not the IBM antitrust litigation --

13           **THE COURT:**  Right.  Right.

14           **MR. KLAUS:**  -- which will require extensive review

15   and redactions of bills.

16           **THE COURT:**  I'm just trying to think through why --

17   I understand your point being that there's no reason to wait.

18   You want to, you know, proceed with discovery in the case; and

19   if they really want to bring this issue to a head, they're

20   fully capable of doing so.

21           But just from a case management standpoint, it's

22   pretty much a legal question as to whether or not litigation

23   fees and costs are recoverable or not as a damage under a 512

24   claim.  So the actual detail of what they've expended, how

25   extensive that damage is, I mean, to some extent isn't it --

1   isn't it more efficient to do that in one -- at the point at

2   which you're fairly late in the game so you know if it's

3   allowable damage, you know what it is?

4           Because doing it now is just inevitably going to

5   mean -- I understand you saying, "Well, maybe we won't take

6   another deposition," but they have a duty to supplement, so

7   they will have to provide additional information.  I'm just --

8   I don't want to, you know, presume to take on the role of

9   trying to figure out when the timing is best for lawyers to do

10  things.  That's -- you make your judgments and I would not, you

11  know, intrude on that, but I am kind of struck and I hadn't

12  really thought it through on why the timing is now that they

13  should have to do this; but....

14          MR. KLAUS:  Well, it's an element of her claim,

15  clearly.

16          THE COURT:  Well, the damages are an element of the

17  claim.

18          MR. KLAUS:  Damages are clearly an element of her

19  claim.  This is what she's said she's going to seek to recover.

20          THE COURT:  Right.  And you're saying -- you're

21  saying, number one, damages is an element of her claim; and,

22  number two, these aren't damages.

23          MR. KLAUS:  We're saying these aren't damages.

24          THE COURT:  Yeah.

25          MR. KLAUS:  But in the event that they are -- in the

1    event that that turns out not to be the adjudication, either on

2    the summary judgment motion or on the motion in limine before

3    trial, if the ruling is otherwise, we'd like to have the

4    evidence of it.

5            In particular, one of the things we'd like to have

6    is the evidence of it prior to the sending of the counter

7    notice.  Because we think that's where, to the extent there's

8    any damages claimed, that's where the statute --

9            **THE COURT:**  I understand.

10           **MR. KLAUS:**  -- would cut it off, and there are legal

11   questions about whether pro bono fees would count as damages

12   incurred there --

13           **THE COURT:**  Right.  Right.

14           **MR. KLAUS:**  -- and those will be decided.

15           In the event that we lose, however, we have actually

16   now, although the case has been pending for two years, a

17   relatively short timeframe to get fact discovery done and to go

18   to trial, and that's at a schedule that the plaintiffs proposed

19   and we accepted.  But there's a short time -- there's a short

20   time window here and if we're going to get the discovery, we'd

21   like to get it in now.

22           **THE COURT:**  Okay.  One more comment, if you'd like,

23   on that and then we'll move on to the next motion.

24           **MS. MIKSCH:**  Well, a minor comment, Your Honor.  I

25   want to correct any misimpression that may have been caused

1   that Judge Fogel asked us to bring a motion and we didn't.

2   Judge Fogel indicated a willingness to allow the issue to

3   percolate up after Your Honor had had a chance to provide

4   guidance from the discovery part of the issue, and we thought

5   that that would also be reasonable.

6          But turning to the issue of the timing and what

7   evidence Universal has, we can agree that, to the extent that

8   Your Honor is inclined to grant the motion, that there would be

9   less of a burden in producing evidence with respect to the

10  prelitigation time period.  So we would suggest that to the

11  extent that Your Honor is inclined to grant it, that that would

12  be an appropriate demarcation.

13         But with respect to the ongoing litigation, you're

14  quite right, we would be under a duty to continue to

15  supplement.  That would in a sense make Universal getting that

16  number and those records now somewhat meaningless because next

17  month they will probably need more and the month after that

18  they'll need more.  So there won't be a point at which

19  Universal has the documentary evidence supporting our entire

20  damages claim before the close of fact discovery.

21         We've proposed to Universal that we produce the time

22  records for the prelitigation period and that we mutually agree

23  to extend fact discovery with respect to litigation fees and,

24  that we undertake that agreement without prejudice to either

25  sides' ability to make a legal argument.  That proposal was

1    rejected, so we're back on the table with our two years of

2    ongoing litigation fees.

3            And, as Your Honor has understood, the question is

4    not whether Universal is going to get that evidence, the

5    question is whether it's appropriate for them to have that

6    evidence now.  And, as I said, producing that evidence now

7    isn't really going to answer the question for Universal because

8    it will be an ongoing duty to supplement even after the close

9    of fact discovery, after summary judgment, after, perhaps, even

10   trial.

11           **THE COURT:**  I mean, to some extent the argument that

12   Universal is making is that these are simply not recoverable

13   fees and costs once litigation is underway.  I suppose maybe

14   I'm getting now too much into the weeds on this issue, but why

15   does it -- why does the detail of that really make much of a

16   difference to your position?

17           I mean, you're going to take the position that none

18   of this is recoverable.  You might, I think, having a sort of a

19   read on what the amount of that -- of what they claim is

20   recoverable damage is, but the -- what I'm anticipating would

21   be required if I grant your motion, is they send over some

22   billing records and it says, "Well, we, you know, investi --

23   prepared a complaint, and this that and the other thing, and

24   these lawyers did it and their billing is X, Y, Z."  What's

25   that?  I mean, why do you need it, I guess, is my question?

1          **MR. KLAUS:**  Because, Your Honor, if we lose the

2     issue of whether or not --

3          **THE COURT:**  Oh, sure.

4          **MR. KLAUS:**  -- if we lose the issue of whether these

5     are recoverable damages --

6          **THE COURT:**  Right.

7          **MR. KLAUS:**  -- then we need to be able to --

8          **THE COURT:**  True.

9          **MR. KLAUS:**  -- take apart, and our expert on damages

10    will need to be able to critique the information that's going

11    to be provided.

12         **THE COURT:**  Right.  Arguments like, okay, whatever

13    judge has said these are recoverable, but these are grossly

14    excessive or these are whatever, or this actually wasn't for

15    this purpose, it was for some other purpose, it is now out of

16    the case, I understand that.

17         But we are in this strange moment here where all of

18    this is detail supporting a damage claim that you don't think

19    will ever get to a point where you're going to be examining it;

20    and, so, there is a certain appeal to the idea of staging this,

21    but I'm in the position that I'm not -- you know, it's not my

22    case.  So it's really -- a staging decision is more of a Judge

23    Fogel decision than my decision.

24         **MR. KLAUS:**  Which I think, number one, they should

25    have brought.

1       And, number two, if their argument is, "We'll give

2  you the information now, we'll let you question Stephanie Lenz

3  about it in two weeks, and you can ask questions that are

4  designed to impeach her on the theory that this is -- that

5  these would be reasonable damages if they are related," they

6  can then -- they have the option, if we were going to try to

7  depose her again based on a supplement, to say, "You took your

8  chances, you took her at the time," and that's an argument that

9  we would have to face at that point down the road.

10      But the question -- the only question right now is,

11  these are damages that they claim are recoverable.  There is no

12  bifurcation.  There is no -- there has been no early decision

13  that they've sought on this issue.  There has been no pleading

14  of discovery or staging of discovery in the way that the judge

15  requested.

16      Given that they are an element of their claim, if

17  they're going to claim -- if they're going to claim that

18  they're part of their claim and if they're going to claim that

19  they are as expansive as they are, they have -- all that does

20  is mean they have to provide it because by definition it's

21  relevant; and, again, there's been absolutely no showing of

22  burden.

23      **THE COURT:**  Okay.  Well, let me tell you what I'm

24  going to think about a little further, and then I'll give you

25  an written order.

1          I can tell you now that, to the extent the motion

2     seeks damages information that is putting aside the litigation

3     fees and expenses issue, plaintiffs are going to have to

4     produce that, and I think that is a fairly clean question.

5          I'm going to think about whether or not I'm going to

6     require the plaintiffs to provide the detail behind the

7     litigation fees and costs, or I'm going to say they have to

8     provide an amount at this time without prejudice to the

9     defendants seeking that information down the line.

10          But I think I understand everybody's position and I

11     just want to think it through, and I'll give you a written

12     order on that question.

13          Okay.  Let's talk about the next -- go --

14          **MS. MIKSCH:**  I just have one small question,

15     Your Honor, with respect to the timing if Your Honor is

16     inclined to in court -- to order production.

17          We have several attorneys on this case, some are on

18     vacation, some are coming back, some are going, so we ask

19     Your Honor to consider that we have some period of time for

20     each attorney to be able to review the time that they've -- to

21     make sure that the records are accurate.

22          **THE COURT:**  How much time would you be requesting?

23          **MS. MIKSCH:**  Your Honor, we think that perhaps

24     September 4th would be an appropriate date.  Everyone will have

25     come back into the country by then and will have had a few days

1    to look at their records.  So if Your Honor is inclined to

2    order that, we'd ask for at least that much time; but, again,

3    we think it would be better not to order that.

4              **THE COURT:**  Okay.  That doesn't seem to be an unfair

5    request.  Any problem that if I do order it, that they --

6    usually it's 20 days or 30 days, and that's consistent with

7    when that would be in the schedule.

8              **MR. KLAUS:**  There are two caveats.  One is, I think

9    we've talked about scheduling the plaintiff's deposition after

10   that date; and, so, as long as that holds, that would be fine.

11             And the second is, to the extent, of course, we are

12   ordered to make a supplemental production on our end, that we

13   can reach some accommodation as well for the schedules of

14   people in our office that would need to be involved.

15             **THE COURT:**  All right.  Okay.

16             The next issue is the motion with respect to

17   Ms. Fleming.  And I certainly don't want to cut off people's

18   opportunities to discuss the question, but I will tell you of

19   these motions, this one was, in my mind, the simplest because I

20   just -- I don't think there's an argument here.

21             There's an argument and it was -- it was made as

22   well as it can be made, and I'm not suggesting that it

23   shouldn't have been made, but I don't think it's a close call I

24   guess is the way I would phrase it.

25             So I know that's a disincentive, I suppose, to --

1   maybe not.  Maybe that's just a challenge, but go ahead.

2            MS. MIKSCH:  Well, Your Honor, if you read our brief

3   again, you'll see all these gray areas in there.

4            THE COURT:  Okay.  I'll do it again.

5            MS. MIKSCH:  Well, more importantly, Your Honor made

6   a point that even if you were to find that there could be a

7   reasonable exception here, that we haven't shown that.

8            THE COURT:  Right.

9            MS. MIKSCH:  I'd like to draw your attention just to

10  our point that reasonableness needs to be considered on the

11  facts.  And what we have here is a layperson who has not,

12  unlike perhaps corporate counsel or more sophisti -- or people

13  who have more experience with legal issues, she's not someone

14  who has been in a position to ascertain what it is to be a

15  lawyer.  She knew her friend had a law degree.  She thought

16  that that meant that her friend was a lawyer, and it was on

17  that basis and only on that basis that she went to Ms. Fleming

18  and asked her for legal advise and asked what she should do.

19            THE COURT:  Yes, but the cases, even though cases

20  where the reasonable basis exception is articulated -- and,

21  again, I think there's a significant question on whether or not

22  our circuit embraces that concept, but even when it is those

23  cases where it has been embraced, those cases are ones in

24  which, at least from the review that I've made, where people

25  are holding themselves out as attorneys, where, you know, it's

1   a really different situation than ours.

2           Because if I were to say that Ms. Lenz had a

3   reasonable basis, we're pretty much expanding attorney-client

4   privilege to a subjective notion on the part of an individual

5   that, "Well, this person knows something about the law, so

6   there -- you know, I get attorney-client privilege to protect

7   my conversations."  And this would be a real stretch even if we

8   plainly had a reasonable basis exception, which I don't

9   particular -- I just don't think we have in our circuit.

10          So, there's so many hurdles, I guess is my point, to

11  get to the stage where I would say, "Yes, this is protected

12  under some privilege."  You know, there's so many steps and I

13  don't think the steps -- any of those steps have been addressed

14  here.

15          So, okay, let's move on to the plaintiff's motion.

16  So you can assume on that one, I'll give you a written order,

17  but you should be thinking of, in terms to the extent that

18  there are these communications, that they will need to be

19  produced.

20          Okay.  With respect to the plaintiff's motion, I

21  know I gave you some sort of generalized overview on it but

22  there are particular requests, so I suppose what I'll do is,

23  why don't I ask you, Mr. Klaus, first to address which of

24  these -- well, whichever ones you want to address.

25          As I said, I'm inclined to, in certain general

1   categories, grant the motion, plaintiff's motion.  So why don't

2   you go ahead and start out.

3          MR. KLAUS:  Sure.  Let me ask.  I think one of the

4   categories that Your Honor had mentioned was whether Robert

5   Allen --

6          THE COURT:  Yes.

7          MR. KLAUS:  -- should be -- he was a custodian.

8          THE COURT:  All right.  Okay.

9          MR. KLAUS:  So there's no dispute about that.

10         THE COURT:  Okay.

11         MR. KLAUS:  He is a custodian.

12         MS. MIKSCH:  The question is whether it goes beyond

13  Mr. Allen.

14         THE COURT:  Oh, goes beyond Mr. Allen.

15         MS. MIKSCH:  Yeah.  Beyond the 300 selected.

16         THE COURT:  Okay.  I see.  Okay.

17         MR. KLAUS:  And let me start, Your Honor, with the

18  question of the cut-off date, and cutting off the generalized

19  search through electronic documents as of the date of the

20  filing of the initial Complaint.

21         A couple of things here.  One is, this really is

22  coming quite late in the process.  The argument that they are

23  making in terms of this being -- that things that happened

24  after the filing of the initial Complaint could be relevant is

25  an argument that they could have raised last November when they

1   got our general objections, they could have raised in February

2   when we had a meet and confer about it; and they've waited

3   until now, which is just before the fact discovery cut-off and

4   at a time when we have a number of depositions to raise the

5   issue, which we think increases the prejudice and burden

6   side -- the burden side of the motion.

7           But on the relevance side, coming back to the

8   relevance issue here, the question that's at issue in this case

9   is not what Universal's general practice is.  What Judge Fogel

10  has made clear in his orders, and there are two of them that

11  are important to look at.  One is the motion on the order to

12  dismiss, which is Docket Number 45, which is the original order

13  denying the motion to dismiss.

14          But the second is, we filed a motion to certify the

15  ruling on the motion to dismiss for interlocutory appeal to the

16  Ninth Circuit, and Judge Fogel denied that motion; but the

17  order, which is Docket Number 53, specifically said the Court

18  did not hold that every takedown notice must be preceded by a

19  full fair use investigation.

20          The Court recognized, as it has previously, that in

21  a given case fair use may be so obvious that a copyright owner

22  could not reasonably believe actual -- actionable infringement

23  was taking place.  In such a case, which is likely to be

24  extremely rare, the policy objectives of the DMCA are served by

25  requiring copyright owners at least a form of subjective good

1    faith belief.

2              And I think it's clear that what Judge Fogel was

3    saying is, there's not a question of what is your policy in

4    general cases, do you always look to see whether something is a

5    fair use, does somebody sit and go through the full fair use

6    factors --

7              **THE COURT:** Right.

8              **MR. KLAUS:** -- and do that sort of analysis on every

9    video.  The question is:  Is this such an extreme case?

10             And, therefore, you have one video, you have one

11   notice which was sent on June the 4th, and you have two

12   additional months of -- you have two additional months of

13   documents that are after that that relate to large numbers of

14   documents.

15             And the other thing is, they served a -- they served

16   a document request on YouTube and Google, which they allude to,

17   and they don't tell the Court anything about the magnitude of

18   the production that they received there.  And the magnitude of

19   the production that they received from Google, which apparently

20   just did a search of all their communications with Universal

21   related to YouTube from the time YouTube started up until the

22   time they responded to the subpoena, they got 4,000 documents.

23             They've got lots and lots and lots of communications

24   with Universal, and the showing of relevance that they've made

25   based on the production we have done to date, based on the

1    documents they've received from Google and YouTube about what

2    could possibly be relevant two months after this -- two months

3    after the notice was sent and after this lawsuit was filed is

4    tissue thin.

5           The handful --

6           **THE COURT:**  Well, don't you think -- I'm not

7    suggesting that this is the way -- what the discovery would

8    show; but let's say that there was some -- you respond and the

9    documents reflect that, you know, every time, almost on a

10   automatic basis Universal has put in a system where, you know,

11   notices just go out almost automatically; and they find two

12   months or three months after this incident, there's some

13   documents that reflect, you know, if -- if anything, any of our

14   portfolio shows up, you immediately send out a notice.  Don't

15   look -- I mean, I'm not suggesting that that's what it's going

16   to say, but wouldn't that be relevant in terms of the overall

17   look at what Universal's motives and practices are even if it's

18   after the fact?  Because one could infer that that's how they

19   conduct themselves and all that sort of thing.

20          **MR. KLAUS:**  Number one, it doesn't say anything

21   about what their -- as Judge Fogel directed their consideration

22   to.  What was your consideration with respect to this

23   particular video?  Did this particular video trigger some sort

24   of an obligation on someone's part?

25          But, beyond that, there is no dispute that Universal

1    has sent a great number of notices to YouTube --

2              **THE COURT:**  Uh-huh.

3              **MR. KLAUS:**  -- in a similar form to the one that was

4    done here.  They've got hundreds of them that we've produced.

5              **THE COURT:**  Uh-huh.

6              **MR. KLAUS:**  They've got hundreds more that have been

7    produced by YouTube.  They will -- they have plenty of

8    information, they had plenty of opportunity within the context

9    of trying to make a showing of relevance on this motion to show

10   that there was some reason to think that there's something else

11   in that extra nine months of production from Universal that

12   we're now requesting, with a month left in fact discovery, that

13   will somehow shed any additional light on this issue and not be

14   cumulative of all of the other documents that we've got.

15             That's certainly going -- we understand.  Their

16   theory is going to be that if there's a Prince video, you take

17   it down.  You don't care what it is.  We don't think that's a

18   relevant test; but to the extent that is a test, they've got

19   ample amounts of documents already that would allow them --

20   would allow them to make that showing.

21             There's no reason to think that anything that is two

22   months after the notice in question was sent and after this

23   litigation was filed is going to shed any additional light on

24   that beyond what they already have.

25             **THE COURT:**  Okay.

1           **MS. MIKSCH:**  Well, Your Honor, I want to go first to

2      the issue of what we have from YouTube, and I think that the

3      YouTube production only highlights that Universal has --

4      whatever they have done in order to collect documents to

5      produce has been inadequate.  YouTube gave us the agreement

6      between Universal and YouTube but Universal didn't until we

7      specifically pointed out that they hadn't done so.

8           If anything, that indicates either that Universal

9      chose the wrong group of people from whom to collect documents

10     or that, even if they may have collected that document, that

11     whatever procedure they put in place to review documents was

12     inadequate.

13          So we think -- that's one of our issues, is that

14     Universal's production has gaps in it and we think that those

15     gaps need to be addressed.

16          **THE COURT:**  Why, though, does that warrant going

17     after the notice date?

18          **MS. MIKSCH:**  Well, as Your Honor was pointing out --

19     and we're not saying that this is a case about Universal's

20     practices.  We are saying that Universal's general practice may

21     provide a basis from which a finder of fact can infer what

22     Universal did with respect to our notice.

23          And to the extent, perhaps, there may be documents

24     generated after our Complaint where perhaps it's referenced,

25     given the Lenz litigation, we now need to be sure that we

1    consider Y, Z and Q.  If so, that would be a basis on which to

2    inquire, well, what was it before; you know, was there any

3    instruction that you needed to consider in the case of

4    particular videos where fair use is fairly evident, that you

5    need to think about that question.

6              In addition, Your Honor, we think that there are

7    documents.  They've been designated confidential.  They're the

8    e-mails from Mr. Allen that are Exhibits B and E to Mr. Kwun's

9    declaration.  In one of those e-mails Mr. Allen indicates a

10   plot that we think is directly germane to an issue in this

11   case.  We think that those are documents.  There could be other

12   documents or, perhaps, those particular documents that's

13   produced by Universal might provide a basis to inquire of

14   Mr. Allen, you know:  What were you thinking?  Is that usually

15   what you think?  How did that compare to what you may have

16   thought here?

17             The point being, Your Honor, we haven't waited until

18   now to raise the issue of the post-lawsuit cut-off.  We've

19   always been clear.  In December in our letter, we said these

20   are relevant.  In our February telephone conversation, we said

21   these are relevant.  We didn't get any documents for five

22   months because we had a dispute about protective order, and we

23   don't want to get into finger pointing.

24             The point being, we thought what the documents are

25   and we thought, yes, we do need these documents.  We aren't

1   satisfied with our production that it shows there isn't any

2   bases on which post-lawsuit documents might be relevant.

3   Indeed, our Complaint has a specific allegation about

4   post-lawsuit conduct on the part of Universal; namely,

5   Mr. Lofrumento's statement to ABC news about what we've been

6   calling internally "The Prince Policy."  Namely, that, as a

7   matter of principle, without any regard to any particular

8   video, Universal supports Prince in his belief that anything

9   having to do with music should not be used by anybody else on

10  the Internet.

11          And, so, we think that, look, even after the fact,

12  Universal is sort of explaining that they have this sort of

13  relationship with Prince.  We think there may be documents

14  after the fact that would further support our theory that, at

15  least with respect to Prince, which is what matters in this

16  lawsuit, Universal has a general practice of, you know, taking

17  down any video, without regard to whether or not it's an

18  obvious fair use, and from that we can make argument and the

19  jury can infer what they did in our case, even if there isn't a

20  smoking-gun document about what Ms. Lenz in particular did

21  before the lawsuit.

22          **THE COURT:**  Okay.  One more opportunity to address

23  that, and then we'll move to the --

24          **MR. KLAUS:**  A couple of points.  First, to the

25  extent of what I heard Ms. Miksch saying is, perhaps you took

1    subsequent remedial measures, I don't think those would be

2    admissible.

3              THE COURT:  Well --

4              MR. KLAUS:  Assuming that, it wouldn't be admissible

5    to prove liability in the first place.

6              THE COURT:  Well, admissibility and discoverability

7    are two different propositions.

8              MR. KLAUS:  That's right.  It doesn't seem that

9    something that's calculated to get to that is calculated to get

10   to admissible evidence, which is the standard.

11             The second thing is, she says, "Look at the e-mails

12   that Mr. Allen sent, which are D and E."  This is -- by the

13   way, these are the only two e-mails that they've introduced out

14   of the thousands that they've received from YouTube to say this

15   gives you some indication of what could be relevant.

16             And two things.  One is, they say it could be

17   relevant to what Mr. Allen thought at the time that he watched

18   the video.  As they know, because I told them when we had a

19   meet and confer in February, Mr. Allen didn't watch the video.

20   They know that he didn't.  They know that Mr. Johnson, who

21   works for him, watched the video.  And, so, the idea that it's

22   going to shed some additional light on Mr. Allen's state of

23   mind is not correct.

24             And the second thing is, is that when Mr. Allen is

25   talking about these e-mails to YouTube, which I'm sure they

1    will to want to try to question him on at his deposition, is

2    he's saying, after this lawsuit was filed, after this lawsuit

3    was filed and, obviously, in reaction to this lawsuit, somebody

4    wrote to YouTube after having their video taken down and said,

5    "Wait a minute.  It's fair use.  It's self-evident fair use."

6          And what Mr. Allen has said is, "I've looked at

7    the" -- he said, "this is pursuant to our agreement.  I've

8    looked at the video, and there's no way that somebody could

9    claim this is fair use."

10         This really is far afield, and there is no adequate

11   explanation that's been provided to why we're getting this

12   motion now and to why there should be an additional bunch of

13   documents that we should have to review.

14         **THE COURT:**  Okay.  Let's talk about the privilege

15   claim you make with respect to Prince and Universal.

16         **MR. KLAUS:**  Right.  I just I want to be -- I want to

17   be clear in terms of what the proposed -- the claim is not that

18   Universal is Prince's attorney.  The privilege that exists in

19   communications involving Prince is Universal's privilege.  It's

20   a privilege between Universal, which is the enforcer of

21   Prince's copyrights, and Universal's counsel.

22         And there's a clear question, and the question that

23   comes up is:  If there is a communication from Prince, or one

24   of his representatives, who is the copyright owner to Universal

25   that is part of the process of Universal being able to obtain

1   the legal advise that it needs in order to decide whether to

2   take enforcement action; and, if so, what --

3            **THE COURT:**  So you're saying it gets to the cloak of

4   privilege because it's otherwise not privileged communication.

5   I mean, Prince communicates with Universal.  Universal takes

6   that communication to get some, internally with its counsel,

7   some guidance on how to enforce copyright rights.  So it's

8   invested with privilege because it's being used for that

9   purpose?

10           I mean, I think we start from the premise that there

11  is, just as a simple proposition, no attorney-client

12  relationship between Prince if he's communicating to Universal

13  and Universal communicating to him, even if he as authorized

14  Universal to act on his behalf with respect to protecting

15  copyright, his copyright rights.  Am I wrong about that

16  starting premise?

17           **MR. KLAUS:**  That starting premise is correct except,

18  Your Honor, for the fact that as -- because Prince isn't just a

19  third party with respect to the actual works that are at issue

20  here.  He owns the copyright.

21           In the event that Universal decides not to take

22  legal action, Prince has the option to take legal action.  And

23  the question is whether his presence or the presence of one of

24  his representatives, in connection with what is indisputably

25  something that relates to legal services, the enforcement of

1    copyrights, whether the presence of that person who owns the

2    copyright somehow destroys the privilege.

3           And we think the cases are clear that where you have

4    someone who is, the cases speak of, the necessary intermediary,

5    somebody's communication which is, "Hey, I'm the owner of the

6    copyright.  You're supposed to be enforcing this.  I think

7    there's an enforcement action that should be taken here," that

8    type of communication, the privilege is not lost because of the

9    presence of that additional party.  Whether it's the

10   necessary --

11          **THE COURT:**  I don't disagree with you that if, let's

12   say, internally within Universal someone makes reference to the

13   fact when there is consultation with counsel they say, "Well,

14   Prince has told us that he wants to bring an enforcement

15   proceeding.  What do you think of that?  How -- you know, what

16   our chances blah, blah, blah."  Plainly I don't think that

17   there would be a question that that would be privileged.

18          But what they're seeking is the communication

19   between Prince and Universal, and that's where I'll look at the

20   cases again as to whether or not you can -- you know, the

21   blanket of privilege can be expanded to cover that; and that if

22   there is some case law that says this essential party concept,

23   or whatever, I'll take a look at it.  But my initial read on it

24   was --

25          **MR. KLAUS:**  But there's also a -- there's also a

1    common interest issue here, Your Honor.  There is no doubt

2    that --

3              **THE COURT:**  This is not like a joint-defense

4    privilege or something.  I mean --

5              **MR. KLAUS:**  No, but there's no doubt that -- except

6    there's no doubt that if -- if Universal filed a lawsuit to

7    enforce one of Prince's copyrights, the work that he actually

8    is the copyright owner of, that a communication with him about

9    the status of that lawsuit would not destroy the privilege

10   because he has a --

11             **THE COURT:**  I'm not sure I agree with you.

12             **MR. KLAUS:**  I think he has -- I think he as -- I

13   think there's a -- isn't there a common legal interest between

14   the parties?

15             **THE COURT:**  Well, you can consult with your

16   insurance carrier.  When you're telling the insurance carrier

17   about the lawsuit for purposes of, you know, reserves, and the

18   like, that's not privilege.  Yet there is a common interest,

19   certainly, between the insurance carrier and the insured.

20             And, you know, so, you know, the fact that there is

21   that -- you know, it's an imperfect analogy I recognize; but it

22   isn't self-evident to me that, well, because they're both

23   jointly interested in protecting the intellectual property

24   rights that this particular artist has, that means everything

25   is privileged that goes on between them.  I don't think that

1   that's as broad as that.

2          **MR. KLAUS:**  The only difference here is that in this

3   case we have been sued and in the other case it's a I want you

4   to take action with respect to this particular work.

5          **THE COURT:**  Well, what I'm saying is I'm not even

6   sure -- I don't necessarily go with you that if you were

7   bringing a copyright infringement action, that the

8   communications between the artist and Universal would be

9   privileged.  I mean, you're saying, "Well, it would be," and

10  I'm not -- I don't think I necessarily agree with that.  I'll

11  go back and take a look at it.

12         But on the privilege issue, anything you want to add

13  to that?

14         **MS. MIKSCH:**  Well, not in particular, Your Honor.

15  You mentioned you would look at the cases, and I just point out

16  that the relevant cases involved a situation where the alleged

17  intermediary was necessary for the client to obtain legal

18  advise.  And it's simply not the case that Universal's

19  employees need to route through Prince in order to consult with

20  their attorneys.

21         As Your Honor recognized, Universal might --

22         **THE COURT:**  They need input from him, though, don't

23  they?

24         **MS. MIKSCH:**  Well, that's just it.  They might

25  communicate with Prince, he's not part of the privilege

1    relationship, obtain fact, and then they're perfectly capable

2    of going to their own attorney without Prince and discussing

3    the facts they've learned from Prince.  And what we're saying

4    is that the communications between Universal and Prince are

5    simply not privileged.

6              THE COURT:  Okay.  Why don't I let you wrap it up.

7    I have, you know, the particular requests and I will go through

8    them and make some specific calls.

9              I have to move on to some criminal matters in a few

10   moments, so let me give you each an opportunity to kind of wrap

11   it up on the plaintiff's motion to compel.

12             Anything further, Mr. Klaus, you want to have me

13   know?

14             MR. KLAUS:  There were several additional elements,

15   and I don't know whether Your Honor is inclined to grant them.

16   One is to expand the set of custodians.

17             THE COURT:  Yes.

18             MR. KLAUS:  We think there's been no showing that --

19   we think Robert Allen obviously has -- he's exactly the person

20   they cite.

21             THE COURT:  And you've cleared up for me that

22   Mr. Allen is someone whose materials have been reviewed and

23   documents produced.

24             MR. KLAUS:  Correct.

25             There was a question about whether or not there

1    should be a further digging for communications regarding the

2    negotiations of the synchronization licenses for the *Late Show*

3    *with David Letterman*, for the use there.  I don't know if

4    Your Honor had any tentative thoughts about that.

5              We think that that is -- that the question of

6    whether or not -- to treat that as a question of whether or not

7    you'd be analyzing this in the way you would if a fair use

8    defense were raised in litigation and going through and looking

9    at the market when there's simply a -- no requirement, as

10   Judge Fogel has said, that there be an exhaustive consideration

11   of all the four fair use factors, and there's no -- there's

12   been no showing about whether there was knowledge on the part

13   of the person who prepared this notice of whether this

14   license -- that that's really a -- that that's a fishing

15   expedition.

16             There's also a part of the motion that was directed

17   to Universal's policies and practices regarding the sending of

18   notices to YouTube.  And just to be clear, there is, as we've

19   said, we put in our declaration from Mr. Allen, we said there

20   is no written policy.

21             **THE COURT:**  Well, that's fine, and then you live or

22   die on that representation.  And this comes up all the time,

23   you know, and if a party says, "We have no responsive

24   documents," and they -- you know, the other side does with that

25   what they will.  Either they argue that's a shocking and

```
1    terrible thing and certain ramifications fall from that; or if

2    somehow they learn in the course of discovery that that's an

3    inaccurate representation, then the party that's made the

4    representation has got some real explaining to do.

5           But there's nothing more to be done in the face of

6    if a party says, "We don't have anything," I can't order them

7    to produce something they say they don't have.  Other things

8    have to happen, so -- yeah.

9           MS. MIKSCH:  Yeah, we're not asking that,

10   Your Honor.  It's now clear to us from Mr. Allen's declaration

11   there is not a written policy as Mr. Klaus said.

12           The point is that we think it would be extremely

13   unlikely that there aren't any documents that might reflect the

14   general policy.  Perhaps Universal hires someone new to start

15   sending takedown notices, but surely they have to do something

16   to tell that person how to do their job.

17           THE COURT:  Then the burden falls back on you to

18   formulate your requests for specific -- so that they -- I mean,

19   it can't be, "Well, okay.  You don't have a policy.  Give us

20   anything that might look like -- might be useful for putting

21   together a policy or might replace a policy, or something."  I

22   mean, that's quite amorphous.  I mean, you need to be more

23   specific.  I would think that any request along those lines

24   would have other problems, different problems.

25           MS. MIKSCH:  We think we did and in 10 and 11 we
```

1    requested documents --

2            **THE COURT:**  Okay.

3            **MS. MIKSCH:**  -- related to policies and practices.

4    So I draw your attention to that.

5            And I do want to point out Your Honor was quite

6    right with respect to the effective representation that there

7    aren't any documents; and if Universal doesn't have any, we

8    think they ought to tell us that.  And if they do tell us that,

9    then that certainly would --

10           **THE COURT:**  I thought they did tell you that.

11           **MS. MIKSCH:**  They told us that they don't have a

12   written policy.  That doesn't -- that doesn't mean that they

13   don't have documents that might reflect sort of general

14   instructions that they may not consider to rise to a written

15   policy, but that might still be responsive to our requested

16   documents.

17           **THE COURT:**  Well, the request in 10 and 11 are

18   policies and procedures governing requests to take down

19   allegedly infringing material.

20           Okay.  And your representation, Mr. Klaus, is, it's

21   now clear that you're representing there is no written policy.

22           **MR. KLAUS:**  There isn't.

23           **THE COURT:**  There's one policy document.  Are there

24   other materials that together as a compilation represent

25   policies and procedures?

1          **MR. KLAUS:**  There are -- there's no document that's

2    taken together as a compilation as a procedure.  There are

3    documents, and I've told plaintiff's counsel this, there are

4    documents that reflect practices.  In fact, a number of them

5    have been produced.  A document that is a notice to YouTube

6    reflects the practice of sending the notice.  That is literally

7    encompassed within the request.

8          What we have withheld is if somebody within

9    Universal has a communication with a Universal counsel, setting

10   aside the Prince issue now, but if there is somebody within

11   Universal having a communication with Universal counsel or

12   intended to reach Universal counsel that is a request for a

13   provision of legal advice regarding how do you do the practice

14   in a particular case, we, of course, have claimed privilege

15   over those.

16             **THE COURT:**  That's a privilege issue then.

17             **MR. KLAUS:**  That's a privilege issue, correct.

18             And they -- and, so, to be very clear, a statement

19   of, "Give us all your documents that reflect your practice," is

20   very broad.  And what they've gotten are lots of practice

21   documents and where the practice documents have reflected a

22   privilege communication, we've claimed privilege.

23             **THE COURT:**  I mean, I read those requests as asking

24   for documents that are general guidance documents as opposed to

25   implementation from which one could glean how you operate.

1          **MR. KLAUS:**  Correct.  And that's -- and we do not

2   have a set --

3          **THE COURT:**  Okay.

4          **MR. KLAUS:**  -- of -- there's not a set of

5   procedures.

6          **THE COURT:**  Okay.  Okay.

7          **MR. KLAUS:**  And then --

8          **THE COURT:**  Yes.

9          **MR. KLAUS:**  I'm sorry.

10         **THE COURT:**  No.  Go ahead.  Go ahead.

11         **MR. KLAUS:**  There's one other issue, Your Honor,

12  which was the request had, we thought, had not asked us to

13  produce a copy of the actual copyrighted work deposited with

14  the Copyright Office.  This was raised late in a letter.

15  There's no request that asked for it.  We said we didn't have

16  it.  We've put in a declaration from Mr. Arrow saying, you

17  know, we don't have it.  The work was actually registered when

18  a different music company was the administrator for his rights.

19        And as I read the reply brief, I think there's still

20  a request, "Well, give us something.  Go to the Copyright

21  Office and get it.  Give us something."  We don't think that

22  it's been requested and we think that request should be denied.

23         **MS. MIKSCH:**  Your Honor, in Request 9 we asked for

24  documents relating to Universal's decision to send the takedown

25  notice, and in that notice they said she infringed the

1    composition.

2          If Universal has in its possession some copy of the

3    composition itself, even if it's not a particular Copyright

4    Office specimen, that's a document that presumably relates to

5    their decision, if they thought about it at all, and that's a

6    document to which we're entitled.

7          **THE COURT:**  Well --

8          **MS. MIKSCH:**  Now we know that they don't have the

9    Copyright Office specimen, so we're not asking for that; but we

10   are wondering do they have anything that constitutes the

11   composition.  Either tell us if you don't or give it to us.

12         **THE COURT:**  Well, I think Mr. Klaus just said you

13   didn't, or do you?  Do you have something that doesn't rise to

14   the level of the official copyrighted material that's filed

15   with the PTO?  But, I mean, do you have something in the

16   file --

17         **MR. KLAUS:**  The sheet music?  My understanding is we

18   do not.

19         **THE COURT:**  Okay.  You don't have it.  If you don't

20   have it, you don't have it.

21         **MR. KLAUS:**  And, also, just so we're clear, there is

22   no requirement, none, that somebody who is sending a notice,

23   even if it is pursuant to the DMCA, has to go look at the

24   copyrighted work in order to --

25         **THE COURT:**  Well, that's an issue not for me.

1   That's an issue for another day.  My limited issue, as I

2   understand it is, if you have material -- if you did have, not

3   whether or not you needed to, you're required to, whatever, if

4   you had it, they're saying they want it produced.  You're

5   saying, "We don't have it.  We don't have to have it."  Okay,

6   fair enough.

7         **MS. MIKSCH:**  Now we've got an answer.

8         **THE COURT:**  Okay.  I will give you a written order

9   on these three motions, two going from Universal and one from

10  plaintiffs.  And you kind of can glean where I'm going on

11  several of these, but I'll go back and take a look again --

12        **MR. KLAUS:**  Your Honor --

13        **THE COURT:**  -- at the issues that you've raised.

14        Yes?

15        **MR. KLAUS:**  I apologize.

16        To the extent -- to the extent that Your Honor is

17  inclined to order the production of, in particular, my concern

18  is with respect to the additional tranche of documents that

19  would take us up through --

20        **THE COURT:**  Okay.

21        **MR. KLAUS:**  -- that date, to the extent that -- to

22  the extent that Your Honor is inclined to grant that, I would

23  request that we get something like maybe 20 days --

24        **THE COURT:**  Sure.

25        **MR. KLAUS:**  -- to do that.

1      **THE COURT:**  Well, I mean, unless I misheard the back

2      and forth with respect to the motions that you've brought where

3      I am, at least with respect to the motion as to Ms. Fleming, I

4      am going to require some production, I was going to give you a

5      window of, perhaps, 30 days; and I'd give the same, if I'm

6      ordering further documents that you have to produce in response

7      to plaintiff, I'd give the same timeframe.

8      **MR. KLAUS:**  We need, with respect to Ms. Fleming,

9      that falls --

10     **THE COURT:**  All right.

11     **MR. KLAUS:**  -- into a slightly different category

12     because we have been offered dates for the plaintiff as early

13     as September the 9th.

14     **THE COURT:**  All right.

15     **MR. KLAUS:**  Obviously --

16     **THE COURT:**  You want it before.

17     **MR. KLAUS:**  -- we're going to want to question

18     her -- obviously we're going to question her about those

19     documents.

20     **THE COURT:**  Well --

21     **MR. KLAUS:**  And there are very few of them.

22     **THE COURT:**  Yes, I wouldn't --

23     **MR. KLAUS:**  There are, I think, something like nine

24     on the privilege log.

25     **THE COURT:**  Right.  I wouldn't think those are

1    particularly voluminous.  So thank you.  I may require those to

2    be produced more quickly.

3              MS. MIKSCH:  Well, Your Honor, we've also been

4    offered a date for Mr. Lofrumento for September 1st; and, so,

5    to the extent that we're facing the production of these

6    documents right up to the end of that discovery after we've

7    taken these depositions, that puts us in a bit of a difficulty

8    with regard to our ability to effectively depose.

9              THE COURT:  Well, you may have to do some adjusting

10   of your deposition schedule depending upon my timing schedule.

11   I'm not going to carve out all sorts of different -- I'm not

12   going to fine tune it to various possible dates for the

13   depositions.  It's, frankly, going to be tossed back to you and

14   it's going to be your problem, because then you've maybe got to

15   make some adjustments on your deposition schedule.

16             MS. MIKSCH:  Thanks, Your Honor.

17             MR. KLAUS:  Thank you, Your Honor.

18             MS. McSHERRY:  Thank you, Your Honor.

19             THE COURT:  Thank you.

20                  (Proceedings adjourned at 10:51 a.m.)

21

22

23

24

25

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U. S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

_Kelly Bryce_                    9/16/09
        Signature of Transcriber       Date