1   ELECTRONIC FRONTIER FOUNDATION
    FRED VON LOHMANN #192657
2   KURT OPSAHL #191303
    CORYNNE MCSHERRY #221504
3   454 Shotwell Street
    San Francisco, CA  94110
4   Telephone:    (415) 436-9333
    Facsimile:    (415) 436-9993
5   Email: fred@eff.org; kurt@eff.org
            corynne@eff.org
6
    KEKER & VAN NEST LLP
7   ASHOK RAMANI - #200020
    MICHAEL S. KWUN -#198945
8   MELISSA J. MIKSCH - #249805
    710 Sansome Street
9   San Francisco, CA  94111-1704
    Telephone:    (415) 391-5400
10  Facsimile:    (415) 397-7188
    Email: aramani@kvn.com; mkwun@kvn.com
11  mmiksch@kvn.com

12  Attorneys for Plaintiff
    STEPHANIE LENZ
13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                        SAN JOSE DIVISION

17  STEPHANIE LENZ,                     Case No. C 07-03783-JF

18                        Plaintiff,    **PLAINTIFF'S MOTION FOR PARTIAL
                                        SUMMARY JUDGMENT OR, IN THE
19        v.                            ALTERNATIVE, FOR PARTIAL
                                        JUDGMENT ON THE PLEADINGS**
20  UNIVERSAL MUSIC CORP., UNIVERSAL
    MUSIC PUBLISHING, INC., and         Date:      December 11, 2009
21  UNIVERSAL MUSIC PUBLISHING          Time:      9:00 a.m.
    GROUP,                              Courtroom: 3, 5th floor
22                                      Judge:     Hon. Jeremy Fogel
                          Defendants.
23                                      [SUPPORTING DECLARATION OF MELISSA J. MIKSCH;
                                        AFFIDAVIT OF DARREN HUBBARD; PROPOSED ORDER;
24                                      APPLICATION TO SEAL AND PROPOSED SEALING ORDER
                                        FILED HEREWITH]
25
                                        **PUBLIC REDACTED VERSION**
26

27

28

454020.01

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..............................................................................................1

II.    FACTS ..............................................................................................................1

III.   ARGUMENT .....................................................................................................5

    A.   Summary judgment is appropriate where, as here, there is no genuine issue of material fact. ..................................................................................5

    B.   Ms. Lenz did not act in bad faith (Second Affirmative Defense) or have unclean hands (Seventh Affirmative Defense)..................................6

    C.   Universal's Third Affirmative Defense fails because Ms. Lenz was damaged by Universal's improper takedown. .........................................9

        1.   Section 512(f) allows recovery of "any" damages, not merely damages for pecuniary harm. ..................................................10

        2.   Malicious prosecution torts can provide guidance on interpreting available damages pursuant to Section 512(f)......................12

        3.   Section 512(f) Damages Include Costs and Attorneys' Fees....................13

        4.   Ms. Lenz is entitled to recover costs and attorneys' fees for work both before and after litigation. .............................................15

        5.   Ms. Lenz is entitled to recover pro bono attorneys' fees. ...........................17

    D.   Universal's First, Fourth and Fifth Affirmative Defenses are baseless ................19

        1.   The Court has already concluded that the Complaint states a claim, and thus Universal's first affirmative defense fails. .......................19

        2.   There is no basis for Universal's affirmative defenses of estoppel and waiver..................................................................................19

IV.    CONCLUSION..................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanced Cardiovascular System v. Medtronic, Inc.*
36 Fed. R. Serv.3d ...................................................................................................20

*American Express Travel Related Services, Inc. v. D & A Corp.*
No. CV-F-04-6737 OWW/TAG, 2007 WL 3217565 (E.D. Cal. Oct, 29
2007) ........................................................................................................................20

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ..................................................................................................5

*Anderson v. United Finance Co.*
666 F.2d 1274 (9th Cir. 1982) .................................................................................11

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*
493 F.3d 110 (2d Cir. 2007) ....................................................................................18

*Ashcroft v. Iqbal*
129 S. Ct. 1937 (2009) .............................................................................................21

*Astoria Federal Savings & Loan Ass'n v. Solimino*
501 U.S. 104 (1991) ................................................................................................10

*Batzel v. Smith*
333 F.3d 1018 (9th Cir. 2003) .................................................................................12

*Beard v. Walsh*
(*In re Walsh*), 219 B.R. 873 (B.A.P. 9th Cir. 1998) ..............................................14

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................................................21

*Carolene Products Co. v. United States*
323 U.S. 18 (1944) ..................................................................................................15

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) ..................................................................................................5

*Central Green Co. v. United States*
531 U.S. 425 (2001) ................................................................................................10

*Dawson v. Washington Mutual Bank (In re Dawson)*
346 B.R. 503 (Bankr. N.D. Cal. 2006) ...................................................................18

*Dennis v. Chang*
611 F.2d 1302 (9th Cir. 1980) (42 U.S.C. § 1988) .................................................18

*Ed A. Wilson, Inc. v. General Services Administration*
126 F.3d 1406 (Fed. Cir. 1997) ..............................................................................18

*EEOC v. Recruit USA, Inc.*
939 F.2d 746 (9th Cir. 1991) ..............................................................................6, 8

*Eskanos & Adler, P.C. v. Leetien*
309 F.3d 1210 (9th Cir. 2002) .................................................................................14

*Eskanos & Adler, P.C. v. Roman (In re Roman)*
283 B.R. 1 (B.A.P. 9th Cir. 2002) ...........................................................................14

ii

454020.01

*Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.*
, No. 99 C 8237, 2000 WL 1222043 (N.D. Ill. Aug. 22, 2000) ...................................6

*Gotro v. R&B Realty Group*
69 F.3d 1485 (9th Cir. 1995) ...................................................................................18

*Greany v. Western Farm Bureau Life Insurance Co.*
973 F.2d 812 (9th Cir. 1992) ...................................................................................20

*Hairston v. R & R Apartments*
510 F.2d 1090 (7th Cir. 1975) .................................................................................18

*Harold Stores v. Dillard Department Stores*
82 F.3d 1533 (10th Cir. 1996) .................................................................................11

*Heller Financial, Inc. v. Midwhey Powder Co., Inc*
883 F.2d 1286 (7th Cir. 1989) .................................................................................21

*In re Baker*
140 B.R. 88 (D. Vt. 1992)........................................................................................14

*In re Robinson*
228 B.R. 75 (Bankr. E.D.N.Y. 1998)........................................................................14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*
304 F.3d 829 (9th Cir. 2002) .....................................................................................6

*Jarvis v. K2, Inc.*
486 F.3d 526 (9th Cir. 2007) ...................................................................................11

*Jones Apparel Group, Inc. v. Piccone*
No. 94 Civ 0754, 1994 WL 260767 (S.D.N.Y. Jun. 8, 1994) ...................................6

*Keene Corp. v. United States*
508 U.S. 200 (1993) .................................................................................................11

*Keystone Driller Co. v. General Excavator Co.*
290 U.S. 240 (1933) ...................................................................................................6

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
543 U.S. 111 (2004) ...............................................................................................8, 9

*Lenz v. Universal*
572 F. Supp. 2d 1150 (N.D. Cal. 2008) ...................................................................13

*Lockett v. Prudential Insurance Co. of America*
870 F. Supp. 735 (W.D. Tex. 1994) ..........................................................................6

*Lyes v. City of Riviera Beach*
166 F.3d 1332 (11th Cir. 1999) (en banc) ...............................................................10

*Mag Instrument, Inc. v. JS Prods.*
595 F. Supp. 2d 1102 (C.D. Cal. 2008) ...................................................................20

*Maryland Cas. Co. v. Regis Ins. Co.*
No. CIV.A. 96-CV-1790, 1997 WL 164268 (E.D. Pa. 1997) .................................16

*Miles v. Apex Marine Corp.*
498 U.S. 19 (1990) ...................................................................................................15

*Morissette v. United States*
342 U.S. 246 (1952) .................................................................................................15

*Morrison v. C.I.R.*
565 F.3d 658 (9th Cir. 2009) ...................................................................................17

iii

454020.01

*Operating Engineers' Pension Trust Fund v. Clark's Welding and Machine*
  No. 09-0044 SC, 2009 WL 2252121 (N.D. Cal. July 28, 2009) ..............................19

*Preseault v. United States*
  52 Fed. Cl. 667 (Fed. Cl. 2002) ..............................18

*Oarbon.com Inc. v. eHelp Corp.*
  315 F. Supp. 2d 1046 (N.D. Cal. 2004) ..............................20

*Republic Molding Corp. v. B.W. Photo Utilities*
  319 F.2d 347 (9th Cir. 1963) ..............................8

*Rossi v. Motion Picture Ass'n of America Inc.*
  391 F.3d 1000 (9th Cir. 2004) ..............................15

*Russello v. United States*
  464 U.S. 16 (1983) ..............................11

*Sony Corp. of America v. Universal City Studios, Inc.*
  464 U.S. 417 (1984) ..............................7

*Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.*
  335 F. Supp. 2d 466 (S.D.N.Y. 2004) ..............................11, 16

*Suarez v. Barrett (In re Suarez)*
  400 B.R. 732 (B.A.P. 9th Cir. 2009) (Jury, J., concurring) ..............................16

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.*
  881 F. Supp. 1021 (E.D. Va. 1994), *affirmed* 74 F.3d 488, *cert denied*
  519 U.S. 809 ..............................15

*United Companies Lending Corp. v. Sargeant*
  32 F. Supp. 2d 21 (D. Mass. 1999) ..............................19

*United States v. Gonzales*
  520 U.S. 1 (1997) ..............................10

*United States v. Idaho*
  508 U.S. 1 (1993) ..............................15

*United States v. James*
  478 U.S. 597 (1986) ..............................10

*United States v. Price*
  176 B.R. 807 (N.D. Ill. 1993) ..............................14

*United States v Ron Pair Enterprises, Inc*
  489 U.S. 235 (1989) ..............................10

*Williams v. United States*
  503 U.S. 193 (1992) ..............................16

*Witherspoon v. Sielaff*
  507 F. Supp. 667 (N.D. Ill. 1981) ..............................19

*Xilinx, Inc. v. Altera Corp.*
  33 U.S.P.Q.2d 1149 (N.D. Cal. 1994) ..............................6

**State Cases**

*Babb v. Superior Court*
  3 Cal. 3d 841 (1971) ..............................13

*Davis v. International Brotherhood of Electrical Workers*
  16 Cal. App. 3d 686 ..............................13

iv

454020.01

*Johnson v. Nadir*
No. B163805, 2003 WL 23028879 (Cal.App. 2 Dist. Dec. 30, 2003) ........................... 13

*Peebler v. Olds*
71 Cal. App. 2d 382(1945) ........................... 13

*Prentice v. North American Title Guaranty Corp.*
59 Cal. 2d 618 (1963) ........................... 12

*Wong v. Earle C. Anthony, Inc.*
199 Cal. 15 (1926) ........................... 12

**Federal Statutes**

11 U.S.C. § 362(h) ........................... 18

11 U.S.C. § 362(k)(1) ........................... 14, 15, 18

15 U.S.C. § 15 ........................... 10

15 U.S.C. § 1125(d) ........................... 14

17 U.S.C. 512(f) ........................... 4

17 U.S.C. § 504 ........................... 11, 16

17 U.S.C. § 504(b) ........................... 16

17 U.S.C. § 505 ........................... 17

17 U.S.C. § 511 ........................... 11

17 U.S.C. § 512(c)(3)(A) ........................... 3, 10, 11

17 U.S.C. § 512(f) ........................... *passim*

17 U.S.C. § 512(f), 512(f)(2) ........................... 9

17 U.S.C. § 512(g)(3)(D) ........................... 3

17 U.S.C. § 1009 ........................... 11

17 U.S.C. § 1203(c)(1)(A) ........................... 11

18 U.S.C. § 3742 ........................... 16

28 U.S.C. § 1447(c) ........................... 18

28 U.S.C. § 1920 ........................... 15

28 U.S.C. § 1923 ........................... 15

42 U.S.C. § 3612(c) ........................... 18

Digital Millennium Copyright Act of 1998, Public Law 105-304, 112 Stat.
2860 ........................... 11

17 U.S.C. § 512 ........................... 10, 16

17 U.S.C. § 512(g)(3)(C) ........................... 3

**Federal Rules**

Fed. R. Civ. P. 8 ........................... 20

Fed. R. Civ. P. 12(c) ........................... 1, 20, 21

Fed. R. Civ. P. 54 ........................... 15

Fed. R. Civ. P. 56(c) ........................... 5

v

454020.01

**Treatises**

Restatement of the Law, Second, Torts, Chapter 47, Section 902.................................10

William Patry, PATRY ON COPYRIGHT, § 22:101 at 22-266 (2009) ............................16

**Other Authorities**

House Report 105-551, Part 1 (1998).................................................................11

Senate Report 105-190 (1998)...........................................................................11

Webster's Third New International Dictionary 97 (1976)..........................................10

vi

454020.01

1   **NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT:**

2   PLEASE TAKE NOTICE, that on December 11, 2009, at 9:00 a.m., or at such other time

3   as the Court may direct, before the Honorable Jeremy Fogel, United States District Court, 280

4   South First Street, San Jose, California, 95113, Plaintiff STEPHANIE LENZ ("Ms. Lenz") will,

5   and hereby does, move the Court for entry of partial summary judgment (or, in the alternative,

6   judgment on the pleadings) on Defendants' First, Second, Third, Fourth, Fifth, and Seventh

7   Affirmative Defenses.

8   This Motion is based on this Notice of Motion, the Memorandum of Points and

9   Authorities below, the Declaration of Melissa J. Miksch and Exhibits thereto (filed herewith), the

10   Affidavit of Darren Hubbard and Exhibits thereto (filed herewith), the Proposed Order (filed

11   herewith), and such other and further papers, evidence and argument as may be submitted to the

12   Court at or before the hearing on this motion.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. C 07-03783-J

454020.01

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This case arises from a false claim of copyright infringement that led to the takedown of a 29-second home video.  In February 2007, Stephanie Lenz caught her 13 month old son on camera dancing in her kitchen to (barely audible) music by the artist Prince.  Excited to share her son's new dance moves with her family and friends, she posted the 29-second clip (the "Video") on an Internet video hosting site, YouTube.com.[1]  Four months later, the Video disappeared from YouTube and Ms. Lenz received an ominous notice that the Universal Music Publishing Group had accused her of copyright infringement.  Because of the notice, her video was absent from YouTube for over six weeks.  Shocked and angered, Ms. Lenz filed this case to hold Defendants Universal Music Publishing Group et al. (collectively "Universal") accountable for their false copyright infringement charge.

After this Court denied its second motion to dismiss, Universal filed its Answer to the Second Amended Complaint, asserting seven affirmative defenses.  Ms. Lenz now moves for partial summary judgment on six of them: the First (Failure to State a Claim), Second (Bad Faith), Third (No Damages), Fourth (Estoppel), Fifth (Waiver) and Seventh (Unclean Hands) Affirmative Defenses.[2]

## II.  FACTS

Plaintiff Stephanie Lenz is a mother, wife, writer and editor.  She and her husband have two children, a girl and a boy. Declaration of Melissa J. Miksch ("Miksch Decl.") Ex. A (September 16, 2009 Lenz Deposition Transcript) at 28:4-17.  On February 4, 20087, her children had watched the artist Prince perform on television during the Super Bowl halftime show, and had bounced about during the show to songs including "Let's Go Crazy."[3]  *Id.* at 33:3-

---

[1] The online service, located at http://www.youtube.com, is provided by YouTube LLC, a subsidiary of Google Inc. ("YouTube").  Affidavit of Darren Hubbard ("Hubbard Aff.") at ¶ 3.

[2] Ms. Lenz in the alternative seeks dismissal with leave to amend, pursuant to Rule 12(c), of Universal's fourth and fifth affirmative defenses.

[3] The halftime show's set list included Queen's "We Will Rock You," Prince's "Let's Go Crazy" and "Baby, I'm a Star," Creedence Clearwater Revival's "Proud Mary," Bob Dylan's "All Along the Watchtower," the Foo Fighters' "Best of You," and closed with Prince's "Purple Rain."  *See*

1

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. C 07-03783-J

454020.01

1  34:4.  Because her son was still learning to walk, Ms. Lenz was excited by this new stage in his

2  development.  *Id.* at 30:20-23, 38:7-9.  A few days later, Ms. Lenz and her family were gathered

3  in the family kitchen; the children were playing and running around while  family's CD of

4  Prince's "The Hits" Volume I was playing in the background.  *Id.* at 30:16-32:17.  Occasionally,

5  the children would dance to the music, though for Ms. Lenz's son, who was just learning to

6  walk, "dancing" meant bouncing up and down in his walker.  *Id.*  Ms. Lenz grabbed her digital

7  camera from the counter and recorded a short video of her son dancing to the song that was

8  playing then—Let's Go Crazy—(while his sister ran around in the background).  *Id.*  Ms. Lenz

9  knew from past experience that her son often reacted to the word "music" by bouncing up and

10  down when he heard this word.  *Id.*  Thus, while recording her video, Ms. Lenz asked her son,

11  "What do you think of the music?"  *Id.*  The 29-second Video documents her son's resulting

12  "dance moves" against a background of normal household activity, commotion and laughter.  *Id.*

13  The point of Ms. Lenz's video was the children's dancing; the music was simply background.

14  *Id.* at 38:2-15, 41:6-8, 62:5-7.

15       Ms. Lenz thought her friends and family (particularly her mother in California) would

16  enjoy seeing her son's new ability to dance as well.  *Id.* at 90:13-17.  Ms. Lenz posted the Video

17  to YouTube as is, without editing.  *Id.* at 74:5-7.  She gave the Video the title "Let's Go Crazy

18  #1," thinking that she might someday make additional videos of her children bopping around and

19  otherwise going 'crazy,' possibly with different songs or possibly no music at all.  *Id.* at 67:1-13,

20  69:16-70:21.  The Video was assigned a location at

21  <http://www.youtube.com/watch?v=N1KfJHFWlhQ> on YouTube's site.  Miksch Decl. Exh. G

22  (2007 Lenz Decl.) at ¶ 8.  Over the next few months the Video garnered 273 views, and one

23  comment.  Miksch Decl. Exhs. G (2007 Lenz Decl.) at ¶ 14 and H (November 13, 2007 Decl. of

24  Micah Schaffer in Support of Plaintiff's Opp. to Mot. to Dismiss) at ¶ 3.

25       On or around June 4, 2007, Universal sent YouTube an email notice alleging that the

26  Video infringed copyrights that Universal administers, and demanding that YouTube remove it.

27  Affidavit of Darren Hubbard ("Hubbard Aff.") ¶¶ 7-11 and Exh. A.  The notice tracked,

28  
http://en.wikipedia.org/wiki/Super_Bowl_XLI#Halftime_show.

1   perfectly, every single requirement of Section 512(c)(3)(A) of the Digital Millennium Copyright

2   Act (DMCA).[4] *Compare id.* with 17 U.S.C. § 512(c)(3)(A).

3          Following its normal practice in responding to DMCA compliant notices, YouTube

4   promptly disabled access to the video. *Id.* ¶ 11. On June 5, 2007, YouTube informed Ms. Lenz

5   that it had "removed or disabled access to [the Video] as a result of a third-party notification by

6   Universal Music Publishing Group claiming that this material is infringing." *Id.* Exh. H at 2-3;

7   Miksch Decl. Exh. A (Lenz Trans.) at 110:3-10. The notice also warned Ms. Lenz that repeated

8   incidents of copyright infringement could lead to the deletion of her account and all of the videos

9   included in that account. *Id.*

10          While no expert on copyright law, Ms. Lenz did not (and does not) believe that her video

11  violated copyright law. Miksch Decl. Exh. A (Lenz Trans.) at 117:12-20, 138:4-5, 171:22-23,

12  172:23-25. On June 5 2007, Ms. Lenz sent an email to YouTube that she intended to serve as a

13  counternotice under Section 512(g) of the DMCA. Miksch Decl. Exhs. K at 1, A (Lenz Trans.)

14  at 116:12-20. YouTube responded by asking Ms. Lenz to revise her notice to include a statement

15  that she consented to federal jurisdiction and would accept service of process from the sender of

16  the takedown notice.[5] Hubbard Aff. Exh. G. Without that statement, YouTube explained, it

17  could not process her counternotice. *Id.* Ms. Lenz sent a revised counternotice to YouTube on

18  June 7, 2007. Hubbard Aff. Exh. C at 3-5. YouTube forwarded Ms. Lenz's counternotice to

19  Universal. *Id.* at 3. Universal responded to YouTube by asserting that ███████████

20  ████████████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████████████ Hubbard

---

[4] Section 512(c)(3)(A) sets forth the requirements for a notice to trigger an online service provider's obligation to remove allegedly infringing material posted by a user. The notice must be (1) a written communication; (2) provided to the designated agent of a service provider; (3) signed, (4) identifying a work claimed to be infringed, (5) identifying allegedly infringing material, including the submitter's contact information, (6) alleging a good faith belief that the alleged infringement is not authorized by the copyright owner or by the law, and (7) stating that the information in the notification is accurate and, under penalty of perjury, that the complaint is authorized by the copyright holder.

[5] The statement YouTube asked Ms. Lenz to add is required by the DMCA for a communication to serve as a counternotice. *See* 17 U.S.C. § 512(g)(3)(D).

3

454020.01

1   Aff. Exh. C at 1. Universal also repeated its assertion that ███████████████

2   ███████████████████████████████████████████████████████████

3   ████████████ *Id.* at 2.

4        Meanwhile, on June 13, 2007, Ms. Lenz had engaged counsel to assist her in addressing

5   the issues arising as a result of YouTube removing her video in response to the Universal's

6   DMCA notice. Miksch Decl. Exhs. E (Retainer Agreement), A (Lenz Trans.) at 216:1-9. With

7   the assistance of counsel, Ms. Lenz prepared and sent to YouTube another DMCA counter-

8   notification on June 27, 2007, demanding that her video be reposted because it did not infringe

9   Universal's copyrights. Miksch Decl. Exhs. D at 2, A (Lenz Trans.) at 228:22-25 (as corrected),

10  Exh. F. Regardless, the Video was unavailable on YouTube for over six weeks. *See* Hubbard

11  Aff. ¶ 12 and Exh. E.

12       Ms. Lenz spent approximately five to ten hours, before filing this lawsuit, ensuring that

13  access to her video had been restored, working on tasks such as obtaining counsel, determining

14  how to send a counter-notice, sending the counter notice, and sending a revised counter-notice

15  after Universal objected to the first counter-notice. Miksch Decl. Exhs. A (Lenz Trans.) at

16  313:13-25 and D at 2. Ms. Lenz's attorneys spent time on intake, explaining various response

17  options, and assisting her with her counter-notice, as well as $1.67 in long distance telephone

18  costs. As a result, Ms. Lenz incurred pro bono attorneys' fees and costs for these tasks. *Id.* Exh.

19  D at 2.

20       On July 24, 2007, Ms. Lenz filed a Complaint seeking redress for Universal's misuse of

21  the DMCA takedown process and its intentional interference with her contractual use of

22  YouTube's hosting services. On September 21, 2007, Universal moved to dismiss the Complaint

23  and to strike the interference claim. On April 8, 2008, this Court dismissed the Ms. Lenz's

24  Complaint with leave to amend. On April 18, 2008, Ms. Lenz filed her Second Amended

25  Complaint, alleging only misuse of the DMCA process under 17 U.S.C. 512(f). Universal

26  moved again for dismissal, and on August 20, 2008, this Court denied that Motion. Universal

27  filed its Answer on September 30, 2008, asserting the affirmative defenses at issue in this

28  motion.

4

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. C 07-03783-J

454020.01

1    Ms. Lenz and this lawsuit have received considerable press attention.  Not surprisingly,

2    as the general public learned of the situation, the popularity of the Video has risen dramatically.

3    By September 21, 2007, it had over 115,000 views, Miksch Decl. Exh. C, and it now has over

4    900,000 views, *id*. Exh. B.

5    From July 24, 2007 through June 30, 2009, Ms. Lenz incurred pro bono attorneys' fees in

6    the amount of $432,363.25 and pro bono litigation costs in the amount of $5,094.45 for work

7    related to this lawsuit.  Miksch Decl. Exh. D at 2.  Ms. Lenz also spent resources on this lawsuit,

8    including $174.89 for purchase of a hard drive.  *Id*. Exhs. D at 2 and A (Lenz Trans.) at 317:21-

9    319:3.

10    ###    III.    ARGUMENT

11    **A.    Summary judgment is appropriate where, as here, there is no genuine issue of material fact.**

12    A court may grant summary judgment when the submissions in the record "show that

13    there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

14    matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To

15    establish a "genuine issue" of material fact, the non-moving party must show that there is

16    sufficient evidence to allow a jury to return a verdict in its favor.  *Anderson v. Liberty Lobby,*

17    *Inc.*, 477 U.S. 242, 248 (1986).  It is not enough for the non-moving party to scrape together a

18    mere "scintilla" of evidence.  *Id*. at 251.

19    In addition, the Court must view the evidence proffered "through the prism of the

20    substantive evidentiary burden." *Id*. at 254.  With respect to the affirmative defenses challenged

21    here, Universal bears the burden of designating specific facts showing a genuine issue for trial.

22    *See Celotex*, 477 U.S. at 322-23.  Ms. Lenz's burden "may be discharged by 'showing'—that is,

23    pointing out to the district court—that there is an absence of evidence to support the nonmoving

24    party's case." *Id*. at 325.

25    By this motion, Ms. Lenz seeks to streamline the case by eliminating several affirmative

26    defenses that are now clearly insupportable.  Written discovery is now complete. Miksch Decl.

27    ¶ 4 and Exh. J (September 14, 2009 Order) at 3:6-8 (no further written discovery will be

28

454020.01

propounded).  Universal has taken the only two depositions it has noticed, and can take no

further depositions without leave of court.  *Id.* (only depositions that have been previously

noticed can be taken without leave of court).  Because there are no genuine issues of material

fact regarding Univeral's First, Second, Third, Fourth, Fifth and Seventh Affirmative Defenses,

Ms. Lenz is entitled to summary judgment on those defenses.

**B.      Ms. Lenz did not act in bad faith (Second Affirmative Defense) or have unclean
         hands (Seventh Affirmative Defense).**

Universal cannot establish that Ms. Lenz has acted in bad faith or with unclean hands.  As

an initial matter, the bad faith and unclean hands defenses are substantially the same.  "Both

'unclean hands' and 'good faith and fair dealing' essentially translate into 'bad faith' defenses."

*Franklin Capital Corp. v. Baker & Taylor Entm't, Inc.* , No. 99 C 8237, 2000 WL 1222043, at *4

(N.D. Ill. Aug. 22, 2000) (*citing Jones Apparel Group, Inc. v. Piccone*, No. 94 Civ 0754, 1994

WL 260767, at *4 (S.D.N.Y. Jun. 8, 1994) and *Lockett v. Prudential Insurance Co. of America*,

870 F. Supp. 735, 737 (W.D. Tex. 1994)).[6]  Ms. Lenz will therefore address the Universal's

second and seventh affirmative defenses in tandem.

The doctrine of unclean hands bars a plaintiff from seeking equitable relief "only where

some unconscionable act of [the plaintiff] . . . has immediate and necessary relation to the equity

that he seeks in respect of the matter in litigation."  *Keystone Driller Co. v. General Excavator

Co.*, 290 U.S. 240, 245 (1933).  Courts "do not close their doors because of [a] plaintiff's

misconduct, whatever its character, that has no relation to anything involved in the suit, but only

for such violations of conscience as in some measure affect the equitable relations between the

parties in respect of something brought before the court for adjudication."  *See Keystone*, 290

U.S. at 245.  In addition, the Court must consider whether a finding of unclean hands would

"frustrate a substantial public interest."  *EEOC v. Recruit USA, Inc.*, 939 F.2d 746, 753 (9th Cir.

1991).  In its response to Ms. Lenz's First Set of Interrogatories, Universal identified just three

---

[6] *See also Xilinx, Inc. v. Altera Corp.*, 33 U.S.P.Q.2d 1149 (N.D. Cal. 1994) (affirmative defense
of unclean hands based on the allegation that the plaintiff brought the action in bad faith); *Jarrow
Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) (defining unclean hands
as a defensive doctrine that bars a party from seeking equitable relief when its conduct is tainted
by bad faith).

454020.01

1    "facts" as the basis for its bad faith and unclean hands defenses:

2        [1] As is admitted by Plaintiff's exclusive reliance on fair use in this litigation, Plaintiff's
         use of the copyrighted musical composition "Let's Go Crazy" without authorization
3        infringes the copyright in that work.

4        [2] Further, Plaintiff alleges in her complaint that her posting to YouTube was intended
         for private viewing by "her family and friends," including her mother who
5        purportedly has difficulty opening email attachments but nevertheless can navigate
         through user-generated content websites. In reality, Plaintiff's posting to YouTube
6        was not limited to "her family and friends" for viewing, but was posted for anyone
         without any connection to Plaintiff to view. As of the date of these responses, the
7        posting has been viewed more than 841,000 times, which far exceeds the possible
         number of viewings by Plaintiff's "family and friends," and instead reflects the
8        efforts of Plaintiff and her counsel to the publicize the posting for widespread
         viewing.
9
         [3] In addition, Plaintiff's counter-notification to YouTube demonstrates bad faith insofar
10       as Plaintiff did not claim that she had the right to use "Let's Go Crazy" as the
         soundtrack for her video but rather lamented the fact that Universal was able to
11       discover video because of the title that she used.

12   Miksch Decl. Exh. I at 11-12 (line breaks added).  None of these "facts," even if true, could

13   support a finding of bad faith or unclean hands.

14       Assertion [1] is easily dismissed.  As this Court has noted, a fair use is not an

15   infringement.  See Dkt. No. 45 at n.4 ("The Supreme Court also has held consistently that fair

16   use is not infringement of a copyright," citing *Sony Corp. of America v. Universal City Studios,*

17   *Inc.*, 464 U.S. 417, 433 (1984) ("anyone . . . who makes a fair use of the work is not an infringer

18   of the copyright with respect to such use.")).  Therefore, Ms. Lenz's assertion that her use is a

19   fair use cannot be construed to admit infringement, let alone be taken as evidence of bad faith.

20       Assertion [2] is almost equally specious.  It is hardly an "unconscionable act" that Ms.

21   Lenz did not try to limit restrict the number of people who could view the Video.  Further, the

22   fact that the Video *now* has well over 900,000 views does not tell us anything about Ms. Lenz's

23   bad or good faith in posting the Video in February 2007.  Indeed, it is undisputed that as of June

24   4, 2007, when Universal sent its takedown notice, the Video had only 273 views and a single

25   comment.  Miksch Decl. Exhs. H (2007 Schaffer Decl.) at ¶ 3, G (2007 Lenz Decl.) at ¶ 14.  The

26   number of views began to rise exponentially only after this lawsuit was filed and generated press

27   attention that, in turn, aroused public interest in the Video.  But for Universal's DMCA takedown

28   (and Ms. Lenz's resulting effort to defend her rights) the video would in all likelihood have

7

454020.01

1   languished in obscurity.[7]

2       If Universal intends to suggest that Ms. Lenz's efforts to call attention to Universal's

3   misuse of copyright law (which necessarily require calling attention to the material Universal

4   improperly targeted for takedown) reflect bad faith, the claim still fails as a matter of law.  First,

5   any such claim must necessarily run afoul of the First Amendment, and a finding of unclean

6   hands on that basis would necessarily frustrate the public interest in full and fair exposure of

7   wrongdoing.  *See EEOC*, 939 F.2d at 753 (courts must consider effect of finding unclean hands

8   on the public interest).  Second, Universal cannot show that Ms. Lenz "dirtied [her hands] in

9   acquiring the right [s]he now asserts, or that the manner of dirtying renders inequitable the

10  assertion of such rights."  *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d  347, 349

11  (9th Cir. 1963).  Ms. Lenz's efforts, and those of her counsel, to publicize Universal's

12  misconduct happened *after* Universal sent the takedown notice that gives rise to her claim in this

13  action.  Even assuming publicizing Universal's actions could somehow "dirty" her hands, it was

14  not part of the *acquiring* of "the right [s]he now asserts."  *Id.*  And if Universal falsely claimed

15  the Video was infringing,[8] publicizing its misconduct certainly could not "render[] inequitable

16  the assertion" of her rights.  *Id.*

17      Finally, assertion [3] is simply incorrect.  In her very first email to YouTube, on June 5,

18  2007, Ms. Lenz stated, "I do not believe that the video in question violated copyright or infringed

19  on copyright in any way."  Miksch Decl. Exhs. K at 1, A (Lenz Trans.) at 116:12-20.  Ms. Lenz

20  repeated this statement word for word in the revised counternotice she sent to YouTube on June

21  7.  Hubbard Aff. Exh. C at 3.  By asserting that the Video did not violate copyright law or

22  infringe any copyright, Ms. Lenz was in fact claiming that she had the right to use "Let's Go

---

24  [7] Any suggestion that this lawsuit was instigated as part of a master plan to call attention to a tiny home video does not pass the proverbial laugh test.

25  [8] For purposes of evaluating Universal's affirmative defenses, the Court should assume that Ms.
26  Lenz would prevail on her claim in the absence of the affirmative defenses, because that is the only circumstance in which they would have any effect.  *See KP Permanent Make-Up, Inc. v.*
27  *Lasting Impression I, Inc.*, 543 U.S. 111, 120 (2004) (noting that "it is only when a plaintiff has shown [his prima facie case] by a preponderance of the evidence that a defendant could have any need of an affirmative defense.").  That is, if Ms. Lenz's case-in-chief fails, the affirmative
28  defenses are moot.

454020.01

1   Crazy" in the manner in which it is heard in the Video.  Miksch Decl. Exh. A (Lenz Trans.) at

2   117:12-20; *see generally id.* at 56:3-13.  There is no evidence to the contrary.

3       Universal has not and cannot raise a genuine issue of fact as to whether Ms. Lenz acted

4   with unclean hands or in bad faith either in creating the Video or in posting it to YouTube.

5   Accordingly, this Court should grant summary judgment on Universal's Second and Seventh

6   Affirmative Defenses.

7   **C.   Universal's Third Affirmative Defense fails because Ms. Lenz was damaged by
         Universal's improper takedown.**

8

9       Universal's Third Affirmative Defense asserts that Ms. Lenz has suffered no damages.

10  Prior to filing its Answer, though, Universal took the position that damages are a necessary

11  element of Ms. Lenz's claim.  *See* e.g. Dkt. No. 38 at 18 and Dkt. No. 41 at 16.  Regardless of

12  whether Universal now believes "no damages" is an affirmative defense or an element of the

13  prima facie case, this Court can and should grant summary judgment on the defense Universal

14  pled in its Answer because Ms. Lenz has indisputably suffered cognizable damages.

15      There is no question that Ms. Lenz spent time responding to Universal's notice.  There is

16  no question that Ms. Lenz's attorneys have devoted many hours to this matter, beginning with

17  helping Ms. Lenz craft a DMCA compliant counter-notice through the litigation of this case, and

18  both Ms. Lenz and her attorneys have spent money on costs.  Instead, based on the pleadings

19  thus far in this case, it appears that Universal's "no damages" defense distills to the contention

20  that these items do not qualify as compensable damages.  *See* Dkt. No. 38 at 18.

21      This argument fails as a matter of law.  Section 512(f) provides that "[a]ny person who

22  knowingly materially misrepresents under this section . . . that material or activity was removed

23  or disabled by mistake or misidentification, shall be liable for *any damages, including costs and

24  attorneys' fees*, incurred by the alleged infringer . . . ."  17 U.S.C. § 512(f), 512(f)(2) (emphasis

25  added).[9]  It does not by its terms limit recovery to, for example, economic injury.  *Compare id.*

26  _____

27  [9] Any attempt by Universal to claim that its June 4 email is not a DMCA notice is of no
    consequence for this motion.  For purposes of evaluating the affirmative defense, the Court
    should assume Ms. Lenz would, in the absence of the defense, prevail, because otherwise the

28  affirmative defense is moot.  *See KP Permanent Make-Up, Inc.*, 543 U.S. at 120.  Thus, the
    Court, for purposes of this motion, should assume the June 4 email—which meticulously

9

454020.01

1   with, e.g., 15 U.S.C. § 15(b) (in private antitrust actions, the plaintiff must have been "injured *in*

2   *his business or property* by reason of anything forbidden in the antitrust laws . . ." (emphasis

3   added)).  Instead, from the plain language of the statute, any harm whatsoever must be

4   compensated, including but not limited to time spent responding to pursuing redress.

     **1.**     **Section 512(f) allows recovery of "any" damages, not merely damages for pecuniary harm.**

6        Universal's "no damages" theory is anchored in the assumption that Section 512 limits

7   damages to pecuniary harm.  *See* Motion to Compel Re Damages at 7:3-8 (Dkt No. 76).  This

8   assumption defies both the plain meaning of Section 512 and the Congressional intent behind it.

9        As this Court well knows, "[t]he plain meaning of legislation . . . [is] conclusive, except

10  in the rare cases [in which] the literal application of a statute will produce a result demonstrably

11  at odds with the intentions of its drafters." *United States v Ron Pair Enterprises, Inc*, 489 U.S.

12  235, 242 (1989) (quotation marks and citation omitted).  Section 512(f) unequivocally states that

13  it permits recovery of "***any***" damages.  The plain meaning of "'any' has an expansive meaning,

14  that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales,* 520 U.S. 1,

15  5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). This terminology

16  on its own demands that "damages" in Section 512 be given a generous scope.  "Congress'

17  choice of the language '*any* damage' . . . undercuts a narrow construction." *United States v.*

18  *James*, 478 U.S. 597, 605 (1986), *abrogated on other grounds by Central Green Co. v. United*

19  *States*, 531 U.S. 425, 436 (2001) (emphasis in original).  "[T]he adjective 'any' is not

20  ambiguous; it has a well established meaning." *Lyes v. City of Riviera Beach*, 166 F.3d 1332,

21  1337 (11th Cir. 1999) (en banc) (construing any person or class of persons) (internal quotation

22  marks omitted).  Moreover, to avoid rendering the word "any" mere surplusage,  Section 512(f)

23  must be understood to include any type of damages recognized under the law, including

24  compensatory, general, special and nominal damages.  *See generally* Damages, Restatement of

25  the Law, Second, Torts, Chapter 47, Section 902; *Astoria Federal Savings & Loan Ass'n v.*

26  *Solimino*, 501 U.S. 104, 112 (1991) (statutes should be construed "so as to avoid rendering

28  followed each and every requirement of section 512(c)(3)(A), *compare* Hubbard Aff. Exh. A

1    superfluous . . ." any statutory language).

2         Further, Section 512(f)'s use of "any damages" marks a significant departure from the

3    Copyright Act's habit of using the narrower term "actual damages," indicating that Congress

4    intended an expansive construction of "damages" in Section 512(f). *Compare* 17 U.S.C. § 512(f)

5    *with* 17 U.S.C. §§ 504, 511, and 1009. This change is no accident, for in passing the Digital

6    Millennium Copyright Act of 1998, Public Law 105-304, 112 Stat. 2860, Congress enacted *both*

7    Section 512(f), using the phrase "any damages," *and* Section 1203(c)(1)(A), which uses the

8    narrower "actual damages." "Where Congress includes particular language in one section of a

9    statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and

10   purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200,

11   208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).[10] To give meaning to

12   Congress' use of "any damages" in Section 512(f), the statute must be understand to go beyond

13   "actual damages" and include any type of damages recognized under the law, such as

14   compensatory damages, general damages, special damages, and nominal damages.

15        The legislative history reinforces the broad reading of "any damages" commanded by the

16   plain meaning of Section 512(f). Congress expressly articulated its intent in adopting this broad

17   language:

18        This subsection is *intended to deter* knowingly false allegations to service
          providers in recognition that such misrepresentations are detrimental to rights
19        holders, service providers, and Internet users.

20   Senate Report 105-190, at 49 (1998) (emphasis added); *see also* House Report 105-551, Part 1, at

21   27 (1998). This is in contrast to the "actual damages" provision used elsewhere in the Copyright

22   Act. *See Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc.*, 335 F. Supp. 2d 466, 468

23

24   *with* 17 U.S.C. § 512(c)(3)(A)—is, in fact, a DMCA notice.

25   [10] Universal has further suggested that Section 512(f) damages be limited to out-of-pocket costs.
     Even where Congress has used the phrase "actual damages," recovery is not necessarily so
26   narrow. *See, e.g., Jarvis v. K2, Inc.*, 486 F.3d 526, 537-38 (9th Cir. 2007) (allowing damages for
     failure to credit copyright owner for images); *Harold Stores v. Dillard Department Stores*, 82
27   F.3d 1533, 1547 (10th Cir. 1996) (allowing damages for loss of goodwill); *see also Anderson v.
     United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982) (Under the Equal Credit Opportunity
28   Act, "[a]ctual damages may include out-of-pocket monetary losses, injury to credit reputation,
     and mental anguish, humiliation or embarrassment.").

(S.D.N.Y. 2004) ("concepts of punishment for infringement, deterrence of similar behavior in the future, and recompense for the costs and effort of litigation . . . form no part of 'actual damages' under the statute"). The wide range of damages invoked by "any damages" is an effective deterrent, as intended by the drafters. By contrast, a narrow interpretation that limits recovery to out-of-pockets costs, or to costs incurred solely in preparing a counter-notice, runs contrary to Congress's intent because it would do little in most cases to deter copyright owners from making knowingly false infringement allegations to free services like YouTube.[11]

Finally, Universal's suggestion that Section 512(f) does not recognize injuries to First-Amendment protected speech is simply wrong. Reply in Support of Second Motion to Dismiss, Dkt. No. 41 at 17. Congress certainly did not intend to allow unfounded attacks on noncommercial speech, where monetary damages are rare, to go unpunished. Instead, by allowing recovery for "*any* damages," Congress deliberately crafted the widest possible range of liability to provide recourse for harm from loss of speech, including those not redressable with money damages. *See Batzel v. Smith*, 333 F.3d 1018, 1031 n. 19 (9th Cir. 2003) (DMCA procedures "carefully balance the First Amendment rights of users with the rights of a potentially injured copyright holder.").

### 2. The Court should look to malicious prosecution case law when determining what damages are available pursuant to Section 512(f).

Universal has urged the Court look to take guidance from damages rulings in fraud cases. *See* Motion to Compel Re Damage at 6-7, Dkt No. 76). But Section 512(f) is much more closely analogous to malicious prosecution, where courts have long recognized a broad range of possible damages. *See, e.g., Wong v. Earle C. Anthony, Inc.,* 199 Cal. 15, 18 (1926) (damages in a malicious prosecution case can include, among other things, compensation for lost time and deprivation of liberty); *Prentice v. North American Title Guaranty Corp.,* 59 Cal. 2d 618, 620 (1963) ("A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures

---

[11] There will, of course, be exceptional cases where significant financial costs may flow from a

1  thereby suffered or incurred.")

2      Like the victim of an improper prosecution, a DMCA takedown target must spend time

3  (including working with attorneys) to obtain redress for the abuse of a legal process.  In both

4  situations, public policy demands that the persons launching such improper claims be held

5  accountable for the difficulties they cause in order to deter future misconduct.  In keeping with

6  these purposes, the range of damages potentially recoverable in a malicious prosecution action in

7  California, for example, is strikingly broad.  Damages may be recovered for loss of time,

8  deprivation of liberty, injury to fame, reputation, character, social or business standing, mental

9  suffering, injury to credit, and for sums expended in defending the unfounded lawsuit.  *Babb v.*

10  *Superior Court*, 3 Cal. 3d 841, 848 n.4 (1971); *Davis v. International Brotherhood of Electrical*

11  *Workers*, 16 Cal. App. 3d 686, 695-96, (1971); *Peebler v. Olds*, 71 Cal. App. 2d 382, 389

12  (1945); *Johnson v. Nadir*, No. B163805, 2003 WL 23028879, at *15 (Cal.App. 2 Dist. Dec. 30,

13  2003) (unpublished) (finding a prima facie case for damages where it was uncontroverted that

14  plaintiff "spent time and energy defending against" a lawsuit).

15      Ms. Lenz's damages include time spent reviewing counternotice procedures, seeking the

16  assistance of counsel, and responding to the takedown notice.  Miksch Decl. Exhs. A (Lenz

17  Trans.) at 313:13-25 and D at 2.  All of these are well within the types of harm redressable in a

18  case of malicious prosecution.  While the dollar value of Ms. Lenz's time may be somewhat

19  limited (to facilitate matters, Ms. Lenz has tied the amount to the minimum wage for her state,

20  $6.25 per hour), Ms. Lenz's time and effort are nonetheless cognizable injury under the DMCA

21  as well.  *Lenz v. Universal,* 572 F. Supp. 2d 1150, 1156-57 (N.D. Cal. 2008).

22      **3.      Section 512(f) Damages Include Costs and Attorneys' Fees.**

23      Ms. Lenz's damages also include costs and attorneys' fees.  Miksch Decl. Exh. D at 2-3.

24  Section 512(f) goes further than other damages provisions in the Copyright Act by specifically

25  "*including* costs and attorneys' fees" as part of the damages authorized by the statute.  17 U.S.C.

26  § 512(f) (emphasis added).  By adopting this formulation, Congress recognized that targets of

27  improper takedowns may require the assistance of legal counsel to respond to the allegations and

28

takedown, e.g., where a takedown resulted in a drop in fundraising.

13

454020.01

1   obtain redress.

2          The inclusion of "costs and attorney's fees" as a part of damages, while unusual, is not

3   unprecedented.  For example, the Anti-Cyber-Squatting Consumer Protection Act, 15 U.S.C.

4   § 1125(d), uses identical language in a provision allowing redress for similar improper

5   accusations with respect to a domain name.[12]  But the most useful guidance may be found in an

6   almost equally broad provision in the U.S. Bankruptcy Code, 11 U.S.C. § 362(k)(1), which

7   provides that, in certain circumstances, "an individual injured by any willful violation of a stay

8   provided by this section shall recover actual damages, *including costs and attorneys' fees . . . .*"

9   (emphasis added).[13]

10          Numerous bankruptcy courts have considered the unusual wording of the damages

11  provision in Section 362(k)(1), and have emphasized that it encompasses fees and costs, and that

12  a showing of other damages is not required as a predicate to recovering fees and costs.  Indeed,

13  pursuant to Section 362(k), a court may award attorneys' fees even if the debtor has suffered no

14  other compensable harm.  *In re Robinson,* 228 B.R. 75 (Bankr. E.D.N.Y. 1998).[14]  Thus, the

15  court in *In re Baker,* 140 B.R. 88, 90 (D. Vt. 1992), upheld an award of attorneys' fees and

16  punitive damages in the absence of any other actual damages.  "Analyzing the statute with

17  reference to its plain language, and giving the words used in the statute their ordinary meaning . .

18  . , it is obvious that for purposes of this statute attorneys' fees are encompassed within the larger

19  sphere of actual damages, rather than being some separate form of relief."  *Id.* at 90 (citations

20  omitted).[15]

21

22  [12] Unfortunately no court has had occasion to interpret this provision.

23  [13] Notably, the bankruptcy statute uses the narrower term "actual damages."  Thus, Section
    512(f) is broader than the bankruptcy statute.  Nevertheless, the cases interpreting the "including
    costs and attorneys' fees" language are instructive.

24  [14] *See also, e.g., Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1216 (9th Cir. 2002) (finding
    actual damage as compensation for willful violation of a stay, where defendant incurred legal
25  costs in defending against continuing stay violation and preventing default judgment); *United
    States v. Price*, 176 B.R. 807 (N.D. Ill. 1993) ("The use of the word 'including' points to an
26  intent that attorneys' fees be considered an element of actual damages, not, as claimed by the
    government, an embellishment to those damages.").

27  [15] *Cf. Eskanos & Adler, P.C. v. Roman (In re Roman),* 283 B.R. 1, 9-10 (B.A.P. 9th Cir. 2002)
28  (upholding an award of $5 in actual damages—gas to and from the debtor's lawyer's office—and
    $1000 in attorneys' fees) (quoting *Beard v. Walsh (In re Walsh)*, 219 B.R. 873, 879 (B.A.P. 9th

                                                14

When Congress enacted the DMCA in 1998, the "damages, including costs and attorneys' fees" language in Section 362(k)(1) of the Bankruptcy Code was the only use of that phrase in the entire United States Code. This strongly suggests that Congress intended to adopt not just the wording of Section 362(k)(1) but also previous judicial interpretations of that wording. *Carolene Products Co. v. United States*, 323 U.S. 18, 26 (1944) (considering language borrowed from another legislative jurisdiction); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."). Therefore, this Court may presume that Section 512(f), like Section 362, construes costs and attorneys' fees as damages.

### 4.    Ms. Lenz is entitled to recover costs and attorneys' fees for work both before and after litigation.

Universal claims that the statutory language "as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing" limits any recovery to fees and costs associated with the counter-notice alone. Motion to Compel Re Damage at 7-8, Dkt. No. 76.

There is no support for this assertion. Indeed it runs contrary to the common understanding of the term of art "costs and attorneys' fees." "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . ." *Morissette v. United States*, 342 U.S. 246, 263 (1952); *see also Rossi v. Motion Picture Ass'n of America Inc.*, 391 F.3d 1000, 1004 n.4 (9th Cir. 2004). The term "costs" is well known to mean costs associated with litigation. *See e.g.* Fed.R.Civ.Proc. 54; 28 U.S.C. §§ 1920, 1923; *United States v. Idaho*, 508 U.S. 1, 8 (1993) (observing that "'costs' are those items of expense incurred in litigation that a prevailing party is allowed by rule to tax against the losing party"); *see also Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 881 F. Supp. 1021 (E.D. Va. 1994), *affirmed* 74 F.3d 488, *cert denied* 519 U.S. 809 (allowing "[l]itigation expenses, such as supplemental secretarial costs, copying, telephone costs, and necessary travel"

Cir. 1998)).

454020.01

1  as "costs" under the Copyright Act).  It would make no sense to interpret Section 512(f) to

2  exclude costs and attorneys' fees associated with litigation, when there would be no "costs," in

3  the usual sense, until litigation is filed.

4          Universal's attempt to cabin Section 512 damages through the phrase "as a result of"

5  fares no better.  The sensible interpretation of that phrase (one consistent with Congressional

6  intent) is that "as the result of" simply establishes a basic causation requirement.  *See* William

7  Patry, PATRY ON COPYRIGHT, § 22:101 at 22-266, (2009) (causation under Copyright Act Section

8  504(b) damages is "expressed as a 'cause-in-fact' or 'but for' relationship," citing "as a result of"

9  in statutory text.); *see also Williams v. United States,* 503 U.S. 193, 203 (1992) (construing 18

10  U.S.C. § 3742 and concluding that, when a district court intends to depart from the guideline

11  range, the sentence is nevertheless "imposed 'as a result of' a misapplication of the Guidelines if

12  the sentence would have been different but for the district court's error"); *Maryland Cas. Co. v.*

13  *Regis Ins. Co.,* No. CIV.A. 96-CV-1790, 1997 WL 164268, at *4-*5 (E.D. Pa. 1997) (construing

14  "as a result of" clause in an insurance policy merely to require "but for" causation, because no

15  higher level of causation was stated explicitly).

16          Here, actual causation is readily apparent.  This lawsuit would not have been filed but for

17  Universal's misrepresentation to YouTube, and YouTube's reliance on such misrepresentation in

18  taking the Video down, nor would Ms. Lenz have incurred any of her litigation costs or fees.  *See*

19  *Suarez v. Barrett (In re Suarez),* 400 B.R. 732, 741 (B.A.P. 9th Cir. 2009) (Jury, J., concurring)

20  (attorneys' fees and costs incurred by creditor were "'as a result of,' 'with respect to' and 'by

21  reason of' debtor's violation of the injunction and court order," because "[b]ut for debtor's

22  willful and malicious behavior, no attorneys fees and costs would have been incurred nor

23  awarded by statute")[16]  Ms. Lenz's damages were also proximately caused by Universal.

24  Universal's conduct was a substantial factor in generating the costs of responding to Universal's

25  notice, such as the loss of the video on YouTube and the expenses associated with Ms. Lenz's

---

26  [16] Costs of litigation are ordinarily not part of "actual damages" under the Copyright Act not due
27  to a lack of causation, but because they would not be considered "damages" without the
   "including costs and attorney's fees" language.  *See Stehrenberger v. R.J. Reynolds Tobacco*
28  *Holdings, Inc.*, 335 F. Supp. 2d 466, 468 (S.D.N.Y. 2004); *compare* 17 U.S.C. § 504 (providing

1   effort to hold Universal accountable for the improper takedown.  And, the damages were easily

2   anticipated.  First, the removal of Ms. Lenz's Video was the very purpose of Universal's

3   takedown notice; Ms. Lenz's loss of YouTube's service for that video was thus an obviously

4   foreseeable consequence of sending that notice.  Second, given that both counternotice

5   procedures and the 512(f) cause of action are built into the DMCA, and that Universal is a

6   sophisticated corporate litigant well aware of those procedures, Universal had every reason to

7   expect that its takedown notice could prompt a counternotice and subsequent litigation.

8          In any event, the statute does not limit damages to those that are "the result of the service

9   provider relying upon such misrepresentation in removing or disabling access to the material or

10  activity claimed to be infringing . . . ."  17 U.S.C. § 512(f).  Instead, that clause is part of the

11  definition of who is a proper plaintiff.  The Section 512(f) cause of action accrues to three types

12  of plaintiffs: "the alleged infringer," "any copyright owner or copyright owner's authorized

13  licensee," or "a service provider."  *Id.*  Any of those three types of plaintiffs can bring a Section

14  512(f) claim if they are "injured [1] by such misrepresentation, [2] as the result of the service

15  provider relying upon such misrepresentation in removing or disabling access to the material or

16  activity claimed to be infringing, or [3] in replacing the removed material or ceasing to disable

17  access to it."  *Id.*  In this present case, Ms. Lenz is an "alleged infringer" who was injured both

18  "by such misrepresentation" and "as the result of the service provider relying upon such

19  misrepresentation," and is therefore entitled to any damages she incurs.  *Id.*

20      **5.     Ms. Lenz is entitled to recover pro bono attorneys' fees.**

21          Universal finally has attempted to argue that Ms. Lenz has not "incurred" her attorneys'

22  fees because her attorneys represent her on a pro bono basis.  Motion to Compel re Damages at

23  6, Dkt. No. 76.  This last effort, too, must fail.

24          Ms. Lenz has assigned her interest in any attorneys' fees award to her attorneys.  Miksch

25  Decl. Exh. E at 2-3.  Accordingly, Ms. Lenz has "incurred" these fees.  *Morrison v. C.I.R.*, 565

26  F.3d 658, 666 (9th Cir. 2009) (litigant "incurs" fees even if litigant does not pay and only has

27  contingent obligation to pay the fees in the event that he is able to recover them); *see also*

28

for actual damages) *with* 17 U.S.C. § 505 (providing for costs in certain circumstances).

17

1    *Preseault v. United States,* 52 Fed. Cl. 667 (Fed. Cl. 2002).

2           Courts have held that even fee provisions expressly limited to "actual" harm—which can

3    only be narrower than Section 512(f), which reaches "any" damages—include fees without

4    regard to whether the party was obliged to pay money to counsel out of its pocket.  For example,

5    in *Gotro v. R&B Realty Group,* 69 F.3d 1485 (9th Cir. 1995), the court rejected the argument that

6    "payment of just costs and any actual expenses, including attorney fees, incurred as the result

7    of . . ." improper removal excluded contingent or *pro bono* fees.  *Id.* at 1487 (interpreting 28

8    U.S.C. § 1447(c)).  Similarly, 11 U.S.C. § 362(k)(1) provides that the remedy for violation of the

9    11 U.S.C. § 362(h) bankruptcy stay includes "actual damages, including costs and attorneys' fees

10   . . ."  In *Dawson v. Washington Mutual Bank (In re Dawson),* 346 B.R. 503 (Bankr. N.D. Cal.

11   2006), the court held that this remedy allows recovery of fees regardless of whether the litigant is

12   personally liable for them.  *Id.* at 516-17; *Ed A. Wilson, Inc. v. General Services Administration*,

13   126 F.3d 1406, 1409 (Fed. Cir. 1997) (attorneys' fees are "incurred" when a litigant "is

14   represented by a legal services organization or counsel appearing pro bono.").

15          Moreover, such a position flies in the face of law and longstanding public policy holding

16   that pro bono attorneys must be treated as equivalent to other attorneys for purposes of any fee

17   award.  *See Dennis v. Chang*, 611 F.2d 1302, 1306 n.12 (9th Cir. 1980) (42 U.S.C. § 1988)

18   ("Legal services organizations often must ration their limited financial and manpower resources.

19   Allowing them to recover fees enhances their capabilities to assist in the enforcement of

20   congressionally favored individual rights.").  *See also Arbor Hill Concerned Citizens*

21   *Neighborhood Ass'n v. County of Albany,* 493 F.3d 110, 112 n.2 (2d Cir. 2007) ("Our decision

22   today in no way suggests that attorneys from non-profit organizations or attorneys from private

23   law firms engaged in pro bono work are excluded from the usual approach to determining

24   attorneys' fees.  We hold only that in calculating the reasonable hourly rate for particular legal

25   services, a district court should consider what a reasonable, paying client would expect to pay.")

26   (emphasis omitted); *Hairston v. R & R Apartments*, 510 F.2d 1090, 1092 (7th Cir. 1975)

27   (awarding fees to pro bono counsel under 42 U.S.C. § 3612(c), the Fair Housing Act's fee

28   shifting provisions) ("When free legal services are provided there may be no direct barrier to the

courtroom door, but if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere, thereby curtailing the forceful application of the [Fair Housing] Act that Congress sought.  Thus, the denial of fees in this situation indirectly cripples the enforcement scheme designed by Congress."); *United Companies Lending Corp. v. Sargeant,* 32 F. Supp. 2d 21, 25 (D. Mass. 1999) ("While the possibility of attorneys' fees may not have factored heavily into the decision to represent Sargeant [pro bono], it would be strange indeed to penalize attorneys who are willing to sacrifice profits to represent the less fortunate."); *Witherspoon v. Sielaff,* 507 F. Supp. 667, 669-670 (N.D. Ill. 1981) (rejecting argument pro bono counsel should not be entitled to a fee award: "Pro bono services by members of the Bar provide an invaluable service to the less fortunate in our society and, thereby, to society as a whole. . . . [E]ven though individual attorneys or law firms may have the financial resources to absorb the costs of pro bono services, they are entitled to a fee award to encourage future service by them and promote greater respect for our civil rights by all.").

**D.    Universal's First, Fourth and Fifth Affirmative Defenses are baseless.**

> **1.    The Court has already concluded that the Complaint states a claim, and thus Universal's first affirmative defense fails.**

Universal's First Affirmative Defense can be disposed of easily as a matter of law.  On August 20, 2008, this Court denied Universal's motion to dismiss the Complaint for failure to state a claim.  See Dkt. Nos. 38 and 45.  Thus, the Court has already determined that the Complaint states a claim upon which relief can be granted, and the First Affirmative Defense must be dismissed with prejudice.  *Operating Engineers' Pension Trust Fund v. Clark's Welding and Machine,* No. 09-0044 SC, 2009 WL 2252121 (N.D. Cal. July 28, 2009) (granting motion to strike without leave to amend).

> **2.    There is no basis for Universal's affirmative defenses of estoppel and waiver.**

Universal's Fourth and Fifth Affirmative Defenses simply plead doctrines: "Plaintiff's claim is barred by the doctrine of estoppel" and "Plaintiff's claim is barred by the doctrine of waiver."  *See* Answer to Second Amended Complaint at 6:21-26 (Dkt. 52).  "A reference to a

19

454020.01

1   doctrine, like a reference to statutory provisions, is insufficient notice." *Qarbon.com Inc. v.*

2   *eHelp Corp.,* 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004); *Advanced Cardiovascular System v.*

3   *Medtronic, Inc.,* 36 Fed. R. Serv.3d 648 (N.D. Cal. July 24, 1996) ("To plead equitable estoppel,

4   a party must allege [the] three essential elements . . . .")).

5        Universal cannot remedy its failure to allege facts to support these defenses because no

6   such facts exist.  Estoppel requires that Universal allege that it reasonably relied to its detriment

7   on some communication by Ms. Lenz that induced it to act as it did.  *Greany v. Western Farm*

8   *Bureau Life Insurance Co.,* 973 F.2d 812, 821 (9th Cir. 1992);[17] *Advanced Cardiovascular*

9   *System, supra* at 9.  There is no evidence whatsoever that Universal even had any contact with

10  Ms. Lenz before it sent its takedown notice.

11       The waiver defense is similarly specious.  There are no facts that suggest that Ms. Lenz

12  intentionally relinquished any known right after acquiring knowledge of the facts.  *See American*

13  *Express Travel Related Services, Inc. v. D & A Corp.,* No. CV-F-04-6737 OWW/TAG, 2007 WL

14  3217565 (E.D. Cal. Oct, 29 2007) (granting summary judgment on waiver affirmative defense).

15  To the contrary, Ms. Lenz promptly submitted a counter-notice, and filed her lawsuit shortly

16  thereafter.

17       In the alternative, should the Court be inclined to deny summary adjudication of these

18  affirmative defenses, Ms. Lenz requests that the Court dismiss them pursuant to Rule 12(c) of the

19  Federal Rules of Civil Procedure, with leave to amend.  "Affirmative defenses are governed by

20  the same pleading standard as complaints." *Qarbon.com Inc. v. eHelp Corp.,* 315 F. Supp. 2d

21  1046, 1049 (N.D. Cal 2004).  This means that "an affirmative defense [must provide] plaintiff

22  [with] fair notice of the defense." *Mag Instrument, Inc. v. JS Prods.,* 595 F. Supp. 2d 1102, 1107

23  (C.D. Cal. 2008); *see also Qarbon.com Inc.,* 315 F. Supp. 2d at 1050 (striking affirmative

24  defenses of waiver, estoppel and unclean hands for failure to allege factual basis).  Rule 8 of the

25  Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands

26

_____

27  [17] To show estoppel, "(1) the party to be estopped must know the facts; (2) he must intend that
    his conduct shall be acted on or must so act that the party asserting the estoppel has a right to
    believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on

28  the former's conduct to his injury." *Greany,* 973 F.2d at 821 (citations omitted).

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. C 07-03783-J

454020.01

1   more than an unadorned . . . accusation." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citing

2   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   An answer that offers "labels and

3   conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell*

4   *Atlantic Corp.*, 550 U.S. at 545; *see also Ashcroft,* 129 S. Ct. at 1949; *Heller Financial, Inc. v.*

5   *Midwhey Powder Co., Inc,* 883 F.2d 1286, 1295 (7th Cir. 1989) (affirmative defenses fail where

6   defendant omitted any short and plain statement of facts and failed to allege necessary elements

7   of the alleged defenses).   Here, where Universal has pled no facts whatsoever in support of these

8   defenses, they plainly fail to meet this standard, and thus at a minimum, for the reasons stated

9   above, Ms. Lenz is entitled to dismissal with leave to amend pursuant to Rule 12(c) of the

10  Federal Rules of Civil Procedure .

11                      **IV.     CONCLUSION**

12          For the foregoing reasons, the Court should grant summary judgment for Ms. Lenz on

13  Universal's First, Second, Third, Fourth, Fifth, and Seventh Affirmative Defenses.

14  Dated:  October 30, 2009                      ELECTRONIC FRONTIER FOUNDATION

15

16

17          By:   ___*/s/ Kurt Opsahl*[*]_____
                    FRED VON LOHMANN
18                  KURT OPSAHL
                    CORYNNE MCSHERRY
19
                    KEKER & VAN NEST LLP
20                  ASHOK RAMANI
                    MICHAEL S. KWUN
21                  MELISSA J. MIKSCH

22                  Attorneys for Plaintiff
                    STEPHANIE LENZ
23

24

25  _____

26  [*] Electronically signed by Melissa J. Miksch, counsel for Plaintiff, with the concurrence of Kurt
    Opsahl.  N.D. Cal. G.O. 45 ¶ X.B.
27

28

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS
CASE NO. C 07-03783-J

454020.01