ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA  94110
Telephone:      (415) 436-9333
Facsimile:      (415) 436-9993
Email: fred@eff.org; kurt@eff.org
        corynne@eff.org

FOLGER LEVIN & KAHN LLP
MICHAEL F. KELLEHER
SUZANNE ELIZABETH RODE
275 Battery Street, Suite 2300
San Francisco, CA  94111
Telephone:      (415) 986-2800
Facsimile:      (415) 986-2827
Email: mkelleher@flk.com; srode@flk.com

KEKER & VAN NEST, LLP
ASHOK RAMANI - #200020
MICHAEL KWUN -#198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:      (415) 391-5400
Facsimile:      (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
Email: mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                              Defendants. | Case No. C 07-03783-JF<br><br>**CORRECTED REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>Date:       Aug. 19, 2009<br>Time:       9:30 a.m.<br>Dept:       Courtroom 4<br>Judge:      The Hon. Richard Seeborg<br>Date Comp. Filed:      July 24, 2007<br>Trial Date: March 19, 2009<br><br>[SUPPLEMENTAL DECLARATION OF MICHAEL S. KWUN AND APPLICATION TO SEAL FILED HEREWITH]<br>**PUBLIC REDACTED VERSION** |

448644.01

1

# TABLE OF CONTENTS

2
**Page**

3    I.     INTRODUCTION ...................................................................................................1

4    II.    ARGUMENT .........................................................................................................2

5           A.     Fair use, and Universal's consideration (or lack of consideration) of
                    fair use is squarely at issue, and thus Lenz is entitled to documents that
6                   relate to fair use...........................................................................................2

7                  1.      Based on and in reliance on Universal's new representations,
                           Ms. Lenz no longer seeks an order compelling production of
8                          non-synchronization licenses, or licenses that are not specific
                           to "Let's Go Crazy." ..........................................................................3
9
                   2.      Plaintiff is entitled to documents relating to ▮▮▮▮▮▮
10                         ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
                           and to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11                         attempts to enter into "Let's Go Crazy" synchronization
                           licenses. ...........................................................................................4
12
            B.     Universal's refusal to produce documents generated after July 24,
13                  2007 is unreasonable....................................................................................4

14          C.     Documents relating to Universal's policies and practices regarding
                    takedowns are non-privileged business communications and must be
15                  collected and produced. ..............................................................................5

16          D.     Universal's communications with Prince are relevant and not
                    privileged, and should be produced. ............................................................7
17
                   1.      Communications between Universal and Prince are relevant
18                         because they reflect the reasons underlying Universal's
                           takedown notices for Prince's works. .................................................7
19
                   2.      Universal has no attorney-client relationship with Prince ....................8
20
                   3.      Universal claims privilege over communications that do not
21                         request or provide legal advice. ........................................................10

22          E.     Universal's document collection is incomplete. ..........................................10

23          F.     Universal must produce any copy of the composition it has in its
                    possession. ..................................................................................................11
24
     III.   CONCLUSION....................................................................................................12
25
26

27

28

i

448644.01

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Advanced Tech. Assoc., Inc. v. Herley Indus., Inc.*
   1996 WL 711018 (E.D. Pa. Dec. 5, 1996) ...................................................................9

*Boca Investerings Partnership v. U.S.*
   31 F.Supp.2d 9 (D.D.C. 1998) ...............................................................................10

*Burton v. R.J. Reynolds Tobacco Co., Inc.*
   170 F.R.D. 481 (D. Kan. 1997) ................................................................................6

*Hendrick v. Avis Rent A Car Sys., Inc.*
   944 F. Supp. 187 (W.D.N.Y. 1996) ..........................................................................9

*U.S. v. Huberts*
   637 F.2d 630 (9th Cir. 1980) ....................................................................................9

*United States v. ChevronTexaco Corp.*
   241 F.Supp. 1065 (N.D. Cal. 2002) .....................................................................6, 7

*United States v. Plache*
   913 F.2d 1375 (9th Cir. 1990) ...................................................................................6

**Federal Statutes**

17 U.S.C. § 107 ....................................................................................................................3

17 U.S.C. § 512(f) ...............................................................................................................1

**Federal Rules**

F.R.C.P 26(b)(1) ...............................................................................................................1, 2

Fed. R. Civ. Proc. 26 .........................................................................................................1, 3

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF
DOCUMENTS
CASE NO. C 07-03783-J

448644.01

1

## I.    INTRODUCTION

2      As with its discovery responses and meet and confer communications, Universal's

3 opposition offers melodrama and clever linguistic acrobatics, liberally seasoned with baseless

4 accusations, in lieu of facts and explanation.  Along the way, it seriously misstates both Ms.

5 Lenz's claim and the kinds of discovery that may lead to evidence relevant to that claim.

6      *First*, Universal claims that it need not produce information related to fair use because, as

7 it repeatedly proclaims, this case "is not an infringement case."  Indeed this case is *not* an

8 infringement case: Ms. Lenz's home video did not infringe any copyright.  But Universal

9 represented to YouTube that it did, and this case is about whether Universal made that

10 representation in bad faith.  Ms. Lenz has alleged that Universal violated 17 U.S.C. § 512(f)

11 when it told YouTube that her video was "not authorized by the copyright owner, its agent, or

12 the law" because her video made an obvious fair use of the Prince song and Universal could not

13 have formed—and did not form—a good faith belief to the contrary.  The questions of whether

14 Universal did or did not consider whether Ms. Lenz's use was fair, and if it did, the nature of and

15 basis for its consideration (i.e., fair use factors such as market harm) are squarely at issue.  Ms.

16 Lenz is therefore entitled to documents that relate to the answers to these questions.  Fed. R. Civ.

17 Proc. 26.

18      *Second*, Universal has unilaterally implemented its ambitiously narrow interpretation of

19 its discovery obligations, refusing to produce relevant and responsive documents generated after

20 Ms. Lenz filed suit and/or relating to its actions towards videos other than hers.  Universal claims

21 that because Ms. Lenz has declined to produce documents and information regarding every home

22 video she has ever made, Universal is excused from providing information about how it has

23 handled other takedowns.  In other words, Universal believes that if Ms. Lenz does not have to

24 produce information unless it is directly related to the video Universal took down, neither does

25 Universal.  Opp. at 1.

26      Universal's argument finds no support in the Federal Rules of Civil Procedure.  Both

27 parties are entitled to seek information that is relevant to any claim or defense.  F.R.C.P 26(b)(1).

28 Ms. Lenz seeks to prove that Universal sent a takedown notice claiming that her video infringed

1

PLAINTIFF'S CORRECTED REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
CASE NO. C 07-03783-JF

1  a copyright either despite knowing that her video did *not* infringe or without troubling to

2  consider that question at all.  Evidence of Universal's conduct with respect to other videos could

3  indicate whether it bothers to form a good faith belief that videos are infringing before sending

4  takedown notices for them.  A fact-finder could find from such evidence that Universal did not

5  form the requisite belief before sending the takedown notice at issue here.  Universal's conduct

6  with respect to other videos is therefore relevant to Ms. Lenz's claim, and she is entitled to

7  discover information about it.  F.R.C.P. 26(b)(1).  But Universal has not sent takedown notices

8  for any other videos *Lenz* has posted to YouTube, and therefore information about those videos

9  has no bearing on this case.  As Universal is fond of pointing out, it is *Universal's* state of mind

10  that is at issue, not Ms. Lenz's.  Simply put, the parties are differently positioned, and

11  Universal's "good for the goose, good for the gander" argument is irrelevant.

12       ***Third***, Universal claims broad privilege over business communications, both internal and

13  with Prince and his agents.  But it is black-letter law that communications that are primarily

14  business advice, rather than legal advice, are not privileged.  Copying a lawyer on an email does

15  not automatically render that communication privileged.  As for Universal's claim of privilege in

16  its communications with Prince, Universal is not Prince's attorney.  Universal is his agent.  Their

17  communications are no more privileged than any other business communication.  Even if

18  Universal *did* have an attorney-client relationship with Prince, their communications would be

19  privileged only if they involved legal advice.  The communications Universal has withheld,

20  though, do not: a request from one business entity to another business entity that it consider

21  taking legal action is not a request for legal advice.

22       ***Fourth***, and finally, Universal stubbornly refuses to remedy gaps in its production.

23                               **II.   ARGUMENT**

24  **A.   Fair use, and Universal's consideration (or lack of consideration) of fair use is squarely at issue, and thus Lenz is entitled to documents that relate to fair use.**

25       Universal's oft-repeated proclamation that this case "is not an infringement case" is quite

26  right: Ms. Lenz's home video did not infringe Prince's copyright.  But Universal represented to

27  YouTube that the video did, and an element of Ms. Lenz's claim is whether Universal's

28

448644.01

1   representation is a "misrepresentation" i.e. whether the video was actually *not* infringing.

2   Moreover, Ms. Lenz has alleged that Universal did not form a good faith belief that Ms. Lenz's

3   video was infringing, either because it did not bother to consider fair use when reviewing her

4   video, or because it did not bother to conduct a review sufficient to support such a good faith

5   belief, or both. SAC ¶ 34.  Universal has denied these allegations.  Ans. ¶ 34.  Whether Universal

6   did or did not consider fair use, and, if it did, the nature of, basis for and result of such an

7   assessment, are squarely at issue.  Ms. Lenz is therefore entitled to documents that relate to the

8   answers to these questions.  F.R.C.P. 26.

9         **1.**     **Based on and in reliance on Universal's new representations, Ms. Lenz no longer seeks an order compelling production of non-synchronization licenses,**

10             **or licenses that are not specific to "Let's Go Crazy."**

11       As Ms. Lenz explained in her memorandum in support of this Motion, Mot. at 12-13, 17

12   U.S.C. § 107 mandates consideration of the effect of her video on any actual or potential market

13   for licenses of "Let's Go Crazy" in judging whether her video was a fair use.  Any efforts

14   Universal has made to exploit any such markets reflect on the demand for the work, and

15   documents relating to such efforts are therefore properly discoverable in this case.  Universal

16   previously stated that Prince had exploited the market for synchronization of "Let's Go Crazy,"

17   but did not clearly state that this was the *only* market it believed was relevant to the fair use

18   analysis for Ms. Lenz's video.  *See* Klaus Decl., Exh. G at 10:8-19.  Nor did Universal

19   previously state that it believed only the market for licensing *specific* to "Let's Go Crazy" (as

20   opposed to, e.g., catalogue-wide licenses) was relevant.  *See id.*  In its opposition, however,

21   Universal for the first time has stated that it believes the only actual or potential market for

22   "Let's Go Crazy" affected by Ms. Lenz's video is whatever market exists for synchronization

23   licenses *specific to* "Let's Go Crazy" itself.  Opp. at 14:4-8.  Based on this new representation by

24   Universal, Ms. Lenz no longer seeks an order compelling production of non-synchronization

25   licenses, or licenses that are not specific to "Let's Go Crazy."

26

27

28

PLAINTIFF'S CORRECTED REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
CASE NO. C 07-03783-JF

**2.    Plaintiff is entitled to documents relating to ████████ ████████ and to ████████████████████ attempts to enter into "Let's Go Crazy" synchronization licenses.**

Universal has now agreed to produce ████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

█████████████████████████████ Alternatively, if Universal has

never tried to licensed the composition for home videos, this fact would show that Universal

could not have formed a good faith belief that Lenz's use could have harmed any market for such

licenses.

**B.    Universal's refusal to produce documents generated after July 24, 2007 is unreasonable.**

Universal protests that post-lawsuit documents and documents about other videos are not

relevant, but at least some of them are.  For example, Universal denies the relevance of ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████

███████████████████████████████

█████████████████████████████ Evidence about

----

[1] ████████████████████████████████████████

████████████████████████████████████

1  each of these topics would bear on Ms. Lenz's allegations about what Universal did when it

2  decided to take down her video.

3       Universal asserts that Ms. Lenz should have moved to compel earlier, but Universal's

4  own tactical decision to withhold discovery cannot preclude the relief Ms. Lenz now seeks.

5  Mere weeks after receiving Universal's objections and responses, counsel for Ms. Lenz

6  explained why the date cutoff was inappropriate. Kwun Decl., Exh. P at 1. Ms. Lenz's counsel

7  reiterated this point during the parties' February telephone call, noting in particular that

8  communications with third parties seemed unlikely to be privileged, and that Universal's

9  assertion that post-lawsuit documents were irrelevant was plainly untrue, given the Court's

10 discussion, in the order denying Universal's second motion to dismiss, of allegations relating to

11 post-lawsuit conduct. Supplemental Declaration of Michael S. Kwun in support of Plaintiff's

12 Reply ("Kwun Reply Decl.") at ¶ 4. Ultimately, Ms. Lenz decided to await Universal's

13 production of documents, so that she could assess her need for additional discovery based on

14 concrete information. To the extent that Universal now believes it faces an unreasonable

15 deadline, that is a problem of its own making. Moreover, by Universal's own admission,

16 extending its search to include documents through the filing of the second amended complaint

17 would require review of fewer than 1,500 additional documents. Klaus Decl. ¶ 8.

18 **C.  Documents relating to Universal's policies and practices regarding takedowns are non-privileged business communications and must be collected and produced.**

19

20      Ms. Lenz asked for documents relating to any policies and practices its employees are to

follow when sending takedown notices. Kwun Decl. Exh. B (RFPs 10 and 11). Universal

21 responds that it does not have "*a* written policy that describes the procedures or practices to be

22 followed when sending" takedown notices, Allen Decl. ¶ 7 (emphasis added), and claims that

23 emails between Mr. Allen and his subordinates about specific takedowns are privileged. Opp. at

24 14-15. But this response does not explain why Universal has not produced any documents that,

25 even if not rising to the level of an official written policy, reflect whatever general directives

26 Universal provides to a new takedown sender on the first day. Perhaps Universal gives no

27 written direction about how to do the job other than answering whatever questions come up

28

5

1  about particular takedowns.  If so, it should say so.   Or perhaps Universal does gives such

2  direction through individuals from whom Universal did not collect documents.  If so, Ms. Lenz is

3  entitled to any such documents that exist, even if it means that Universal will have to gather them

4  from new custodians.

5        In any case it is Universal's burden to establish that documents reflecting instructions to

6  its non-attorney takedown staff, even if from its in-house attorneys, about particular takedowns

7  are privileged.  *See United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990).  Indeed, "the

8  presumption that attaches to communications with outside counsel does ***not*** extend to

9  communications with in-house counsel" "[b]ecause in house counsel may operate in a purely or

10  primarily business capacity in connection with many corporate endeavors." *United States v.*

11  *ChevronTexaco Corp.*, 241 F.Supp. 1065, 1076 (N.D. Cal. 2002) (emphasis added).

12        Universal has not carried its burden.  The attorney-client privilege "does not apply where

13  the legal advice is merely incidental to business advice." *Burton v. R.J. Reynolds Tobacco Co.,*

14  *Inc.*, 170 F.R.D. 481, 484 (D. Kan. 1997).  Mr. Allen is the "Senior Vice President of *Business*

15  *Affairs*" and, by his own admission, coordinates both business and legal affairs. Allen Decl. ¶ 7

16  (emphasis added).  Unless the "primary purpose" of his communications reflecting Universal's

17  practices for sending takedown notices is to render *legal* advice, they are not privileged and

18  should be produced.  *See ChevronTexaco*, 241 F.Supp. at 1076.

19        It is unlikely that Mr. Allen's statements to Universal's takedown workers are

20  predominantly legal advice.  Instead, circumstances suggest that they were incidental to the

21  business decisions about how to respond to use of Universal-administered content online.  For

22  example, it appears that the June 4, 2007 takedown notice for Ms. Lenz's video was sent just a

23  few weeks before ████████████████████████████████████

24  ██████████████████████████████████████████████████████

25  ██████████████████████████████████████████████████████

26  ██████████████████████████████████████████████████████

27  ████████████████████████████████████████   Further, as

28  discussed below and in Ms. Lenz's moving brief, Mot. at 9, Universal's own statements suggest

6

1   that it follows a simple rule with respect to the use of Prince's works online: take down

2   everything.  Following such a rule is necessarily a business decision, motivated by a desire to

3   maintain a lucrative business relationship, rather than legal advice.  *Cf. ChevronTexaco*, 241

4   F.Supp. at 1076 ("Extending [attorney-client privilege] protection to communications primarily

5   and sufficiently animated by some other purpose [than seeking legal advice] would not be

6   necessary to encourage forthright disclosures by clients to lawyers-so such communications

7   should not be privileged.").

8   **D.      Universal's communications with Prince are relevant and not privileged, and should
            be produced.**

9

10              **1.      Communications between Universal and Prince are relevant because they
                        reflect the reasons underlying Universal's takedown notices for Prince's
                        works.**

11

12          Universal's communications with Prince are directly relevant to Ms. Lenz's claims.  As

13   explained in her Motion to Compel, Ms Lenz alleges, based on part on Universal's own

14   statements, that Universal has a pattern and practice of issuing takedown notices for *any*

15   unlicensed use of Prince compositions it finds online—without considering whether a use is fair

16   or otherwise authorized by law.  Mot. at 9.  Peter Lofrumento suggested as much to ABC News

17   when he explained why Universal has sent takedown requests for "thousands" of videos

18   involving Prince's works.[2]  Kwun Decl. Ex. J at p. 2.  The reason, according to Mr. Lofrumento,

19   is that Universal supports Prince in his belief that "as a matter of principle" "it is wrong for

20   YouTube … to appropriate his music without his consent." *Id.*  Mr. Lofrumento emphasized that

21   that position has "nothing to do with any particular video." *Id.*  It stands to reason that Universal

22   would not have a policy of supporting Prince's desire to take down each and every use of his

23   work unless Prince had at some point told Universal of his wishes.  Because the Prince policy

24   [2] Universal asserts that it had "already made clear" before Ms. Lenz filed her motion that Mr.
25   Lofrumento's statement was made orally and not in writing.  Opp. at 2.  Universal goes on to
     claim that "Plaintiff knows" that the statement was "made by Peter Lofrumento and was made
26   *orally, not in writing.*" *Id.* (emphasis in original).  While Universal had previously indicated that
     the statement was made by Mr. Lofrumento, it had never stated that it was an oral statement.
27   Indeed, even when Ms. Lenz specifically questioned why Universal had not produced the
     statement, Kwun Decl. Exh. Q at 1-2, Universal responded only by saying that "Documents
28   responsive to [the pertinent request] are reflected on Defendants' privilege log,"  Kwun Decl.
     Exh. S at 2.

7

448644.01

1   has "nothing to do with any particular video," Universal's present claim—only communications

2   about her particular video could be relevant—is simply wrong.  Communications between Prince

3   and Universal about takedowns for *any* of his works are reasonably calculated to lead to

4   evidence about Universal's motivation for sending them and to help Ms. Lenz verify the

5   existence of special policy for online uses of Prince material.  .

6          **2.     Universal has no attorney-client relationship with Prince**

7          Universal's communications with Prince's agents are not privileged.  The relationship

8   between Prince and Universal is not that of attorney and client, and even if it were, the

9   communications at issue here are unlikely to contain legal advice.

10          Universal is not Prince's attorney.  Universal's attorneys in the present case have

11   affirmatively disclaimed representation of Prince.  Kwun Reply Decl. ¶ 5.  And nowhere in its

12   opposition does Universal assert that Universal's in-house attorneys act as Prince's attorneys.

13   ████████████████████████████████████████████████████

14   ██████████████████████████████████████████████████████████

15   ██████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████

19   ██████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████

23   ██████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████████

26   ██████████████████████████████████████████████████████

27   ████████████████████████████

28          Further, as explained in Plaintiff's moving papers, ████████████████████████████

PLAINTIFF'S CORRECTED REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
CASE NO. C 07-03783-JF

448644.01



9   Universal ducks this question by asserting that it is a "necessary intermediary" for the

10  provision of legal services relating to enforcement of Prince's copyrights.  Opp. at 11:23-12:2.

11  This assertion is meritless.

12  First, an intermediary is one who stands between the client and the attorney representing

13  that client.  Universal has failed to identify any attorney representing Prince, let alone one on

14  whose behalf it conveys information to or from Prince.  The factual void dooms Universal's

15  assertion of privilege.

16  Second, even if Universal were somehow an "intermediary," is not a *necessary*

17  intermediary.  Even Universal's cited cases (Opp. at 11) demonstrate that a "necessary"

18  intermediary is a person who *must* be relied on to convey information to the client's legal

19  representative.  For example, in one, the court found no waiver where "plaintiff's injuries and

20  paralysis required his father to act as his agent for the purpose of furthering plaintiff's legal

21  interests." *Hendrick v. Avis Rent A Car Sys., Inc.*, 944 F. Supp. 187, 190 (W.D.N.Y. 1996).  In

22  the more factually analogous case, in contrast, the court found that the disclosure to the alleged

23  intermediary *waived* the privileged because "nothing in this record establishes that absent [the

24  intermediary's] involvement, Fukuda would have been either unable or unwilling to obtain legal

25  assistance on behalf of ATA, or that obtaining such assistance would have been exceptionally

26  difficult." *Advanced Tech. Assoc., Inc. v. Herley Indus., Inc.*, 1996 WL 711018 at *8 (E.D. Pa.

27

28  [3] Plaintiff's citation, in her moving papers, to volume 97 section 280 was in error; the correct citation is to volume 98 section 324.

9

PLAINTIFF'S CORRECTED REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
CASE NO. C 07-03783-JF

448644.01

Dec. 5, 1996).

In short, Universal has no role in any attorney-client relationship Prince may have.

**3.    Universal claims privilege over communications that do not request or provide legal advice.**

Even supposing for the sake of argument that Universal and Prince did share an attorney-client relationship, the communications at issue would still not be privileged because they do not seek or reflect legal advice. Universal states that in the emails at issue (Kwun Decl. Exh. G), Prince asks Universal to take steps to enforce his copyrights. Opp. at 10:22-25. This is not a request for legal advice, but a request by one party to a contract of the other party to that contract to undertake an activity that the second party has right, but not an obligation, to do. *See Boca Investerings Partnership v. U.S.*, 31 F.Supp.2d 9, 12 (D.D.C. 1998) (denying privilege: "When a lawyer acts merely to implement a business transaction ... the lawyer is like any other agent of the corporation whose communications are not privileged.").

**E.    Universal's document collection is incomplete.**

Ms. Lenz moved to compel further collection efforts because Universal's document production and response to her meet and confer inquiries compel the reasonable conclusion that the efforts Universal did make were insufficient. Universal laboriously chronicles its document collection and production efforts in support of its contention that its judgment about which custodians from whom to collect were reasonable. Opp. at 3-5, 9-10. The gaps in Universal's document production, however, strongly suggest that Universal's document collection was inadequate.

As Plaintiff explained in her motion, Universal produced ████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

10

448644.01

1

2

3

4

5

6

7

8

9  **F.      Universal must produce any copy of the composition it has in its possession.**

10          Though Universal suggests otherwise, Opp. at 15:20-26, the "Let's Go Crazy"

11 composition is among other things a document relating to this lawsuit, a document relating to

12 Ms. Lenz's video, and a document relating to any harm Ms. Lenz's video allegedly caused to any

13 market for the composition, and as such it falls within Ms. Lenz's requests.  Kwun Decl. Exh. B

14 (RFPs 1, 7 and 14).

15          Universal states that it has "already represented" to Ms. Lenz that it does not have a copy

16 of the composition that was deposited with the Copyright Office.  Opp. at 16.  But until it filed

17 its opposition, all it had said, without further explanation, was that the deposit copy was equally

18 available to both parties.  Kwun Decl., Exh. S at 3.  In any event, Universal has specifically

19 asserted that as of June 4, 2007, when it sent the takedown notice, it believed Ms. Lenz's video

20 infringed the "musical composition 'Let's Go Crazy,' Copyright Reg. No. PA0000217248 . . . ."

21 Klaus Decl., Exh. G at 5:25-6:13 (Interrog. No. 1 & Resp.).  Ms. Lenz is entitled to receive from

22 Universal a copy of the work it has identified that it believed, at the time it sent the takedown

23 notice, that she infringed.

24

25

26

27

28

PLAINTIFF'S CORRECTED REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
CASE NO. C 07-03783-JF

448644.01

1

### III.     CONCLUSION

2          For the foregoing reasons, this Court should grant Ms. Lenz's motion to compel.

3     Dated:  August 5, 2009                          KEKER & VAN NEST, LLP

4

5
                                             By: /s/ Melissa J. Mikskch _____
6                                                 MELISSA J. MIKSCH
                                                  Attorneys for Plaintiff
7                                                 STEPHANIE LENZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S CORRECTED REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
CASE NO. C 07-03783-JF

448644.01