1   ELECTRONIC FRONTIER FOUNDATION
    FRED VON LOHMANN #192657
2   KURT OPSAHL #191303
    CORYNNE MCSHERRY #221504
3   454 Shotwell Street
    San Francisco, CA  94110
4   Telephone:     (415) 436-9333
    Facsimile:     (415) 436-9993
5   Email: fred@eff.org; kurt@eff.org
          corynne@eff.org
6
    FOLGER LEVIN & KAHN LLP
7   MICHAEL F. KELLEHER
    SUZANNE ELIZABETH RODE
8   275 Battery Street, Suite 2300
    San Francisco, CA  94111
9   Telephone:     (415) 986-2800
    Facsimile:     (415) 986-2827
10  Email: mkelleher@flk.com; srode@flk.com

11  KEKER & VAN NEST LLP
    ASHOK RAMANI - #200020
12  MICHAEL S. KWUN -#198945
    MELISSA J. MIKSCH - #249805
13  710 Sansome Street
    San Francisco, CA  94111-1704
14  Telephone:     (415) 391-5400
    Facsimile:     (415) 397-7188
15  Email: aramani@kvn.com; mkwun@kvn.com
    Email: mmiksch@kvn.com
16
    Attorneys for Plaintiff
17  STEPHANIE LENZ

18                  UNITED STATES DISTRICT COURT

19              NORTHERN DISTRICT OF CALIFORNIA

20                       SAN JOSE DIVISION

21  STEPHANIE LENZ,                    Case No. C 07-03783-JF

22                       Plaintiff,    **PLAINTIFF'S OPPOSITION TO
                                       DEFENDANTS' OBJECTION TO
23        v.                           MAGISTRATE JUDGE SEEBORG'S
                                       AUGUST 25, 2009 ORDER**
24  UNIVERSAL MUSIC CORP., UNIVERSAL
    MUSIC PUBLISHING, INC., and        Judge:      The Hon. Jeremy Fogel
25  UNIVERSAL MUSIC PUBLISHING         Date Comp. Filed:    July 24, 2007
    GROUP,
26                                     **[DECLARATION OF MELISSA J. MIKSCH AND EXHIBITS
                         Defendants.   THERETO FILED HEREWITH]**
27
                                       **PUBLIC REDACTED VERSION**
28

_____
            PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
                   JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
                          CASE NO. C 07-03783-JF

451700.01

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................................1

II. BACKGROUND .................................................................................................1

III. ARGUMENT .....................................................................................................3

    A.  Universal waived any purported application of the common-interest privilege or the work-product doctrine. ...............................................3

        1.  Universal never timely asserted either the common-interest privilege or work-product protection for any of its communications with Prince, and thus cannot rely upon either now. ...............................................................................3

        2.  Universal also waived the common-interest privilege and work-product protection by not presenting them to Judge Seeborg. ................................................................................5

    B.  Universal's communications with Prince are not covered by the common-interest privilege. ...............................................................6

        1.  The common-interest privilege cannot apply if Prince is not represented by counsel in connection with his communications with Universal. ...............................................................7

        2.  Universal's communications with Prince are not "otherwise privileged." ...............................................................................8

        3.  Even if Universal had shown that any of the Prince communications were "otherwise privileged," it would also have to show that they were made to further a common *legal* interest. ............................................................................10

    C.  Judge Seeborg's Order is not contrary to law for not upholding Universal's privilege claim under the "necessary intermediary" rule because neither Universal nor Prince is a necessary intermediary for the other's receipt of legal advice .............................................11

    D.  The Order is not contrary to the law of work-product protection because Universal's communications with Prince are not trial preparation materials revealing attorneys' strategy. ..........................12

    E.  Judge Seeborg's Order is not contrary to law in recognizing that communications between Universal and Prince are reasonably anticipated to lead to the discovery of admissible evidence. ....................14

IV. Conclusion ....................................................................................................16

i

451700.01

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Bank Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.*
160 F.R.D. 437 (S.D.N.Y. 1995) ...................................................................6, 13

*Boyd v. City and County of San Francisco*
576 F.3d 938 (9th Cir. 2009) ...............................................................................14

*Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Ct.*
408 F.3d 1142 (9th Cir. 2005) ...........................................................................3, 4

*Cavallaro v. United States*
153 F. Supp. 2d 52 (D. Mass. 2001) ......................................................................7

*Contratto v. Ethicon*
Inc., 225 F.R.D. 593 (N.D. Cal. 2004) ................................................................14

*Fox v. Cal. Sierra Fin. Serv.*
120 F.R.D. 520 (N.D. Cal. 1988) .........................................................................12

*Geophysical Sys. Corp. v. Raytheon Co.*
117 F.R.D. 646 (C.D. Cal. 1987) (Tashima, J.) ..................................................14

*Greenhow v. Sec. of Health & Human Serv.*
863 F.2d 633 (9th Cir. 1988), *overruled on other grounds, United States
v. Hardesty,* 977 F.2d 1347 (9th Cir. 1992) .........................................................5

*Guillemard-Ginorio v. Contreras-Gomez*
490 F.3d 31 (1st Cir. 2007) ...................................................................................5

*Hickman v. Taylor*
329 U.S. 495 (1947) .............................................................................................12

*Holmgren v. State Farm Mut. Auto. Ins. Co.*
976 F.2d 573 (9th Cir. 1992) ...............................................................................13

*In re Fischel*
557 F.2d 209 (9th Cir. 1977) .................................................................................9

*In re Grand Jury Subpoena*
357 F.3d 900 (9th Cir. 2004) ...............................................................................12

*In re Regents of Univ. of Cal.*
101 F.3d 1386 (Fed. Cir. 1996) .............................................................................7

*Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.*
212 F.R.D. 567 (E.D. Cal. 2002) ...........................................................................7

*Nidec Corp. v. Victor Co. of Japan*
249 F.R.D. 575 (N.D. Cal. 2007) ..................................................................6, 8, 11

*Oppenheimer Fund, Inc. v. Sanders*
437 U.S. 340 (1978) .............................................................................................14

*Peat, Marwick, Mitchell & Co. v. West*
748 F.2d 540 (10th Cir. 1984) ..........................................................................3, 5

*United States v. Ackert*
169 F.3d 136 (2d Cir. 1999) .............................................................................9, 12

ii

451700.01

**TABLE OF AUTHORITIES**
(cont'd)

Page(s)

*United States v. Bergonzi*
   216 F.R.D. 487 (N.D. Cal. 2003) (Jenkins, J.) .................................................6

*United States v. ChevronTexaco Corp.*
   241 F. Supp. 2d 1065 (N.D. Cal. 2002) (Brazil, Mag. J.).............................13

*United States v. Dunkel*
   927 F.2d 955 (7th Cir. 1991) ........................................................................6

*United States v. Kovel*
   296 F.2d 918 (2d. Cir. 1961) (Friendly, J.) ..............................................12

*United States v. Zannino*
   895 F.2d 1 (1st Cir. 1990)........................................................................5, 6

*Yurick v. Liberty Mut. Ins. Co.*
   201 F.R.D. 465 (D. Ariz. 2001) ................................................................4

**Federal Statutes**

28 U.S.C. §§ 631 et seq..................................................................................5

**Federal Rules**

Fed. R. 26(b)(5)(A) ........................................................................................4

Fed. R. Civ. P. 26(b)(1)..................................................................................14

Fed. R. Civ. P. 26(b)(3)..................................................................................12

Fed. R. Civ. P. 26(b)(3)(A) ............................................................................12

Fed. R. Civ. P. 26(b)(5)(A)(i) ........................................................................3

**Treatises**

Judge William W. Schwarzer et al, Federal Civil Procedure Before Trial...............3, 4

Restatement (Third) of the Law Governing Lawyers § 76 (2008) ............................6, 7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01

## I.   INTRODUCTION

Universal seeks to overturn Magistrate Judge Seeborg's order to produce its communications with Prince based on two privileges it never properly asserted and never properly presented to Magistrate Judge Seeborg (one of which it admits it did not even mention until now, *see* Obj. at 14:22-24). Universal has waived these new arguments twice over, and neither has merit anyway. Universal's shell game approach to withholding these documents has gone on long enough. This Court should reject Universal's attempt to justify its persistent avoidance of its discovery obligations.

## II.   BACKGROUND

Universal has hopscotched its way around the question of whether its communications with Prince are privileged, arguing some theories in its response to Ms. Lenz's motion to compel, new theories at argument on that motion, and, by its own admission, different and newly-asserted theories here. *See* Obj. at 14:22-24.

The parties originally exchanged privilege and redaction logs on June 12, 2009. Universal's original logs claimed attorney-client privilege—and *only* attorney-client privilege—for communications with Prince and his agents. Klaus Decl. Exhs. D-1, E-1. Ms. Lenz moved to compel production of these communications and other documents on July 15, 2009. Decl. of Melissa J. Miksch, Exh. A. In her motion, Ms. Lenz explained that the attorney-client privilege did not apply to communications between Universal and Prince because there was no attorney-client relationship between them. *Id.* at 8-10. Universal argued in its Opposition that the communications were privileged because "Universal obviously is both an agent and a *necessary intermediary*" for the provision of legal advice to Prince. Miksch Decl. Exh. B at 11-12 (emphasis in original). Accordingly, Ms. Lenz responded to this argument in her Reply, pointing out that Universal had not identified any attorney to whom it served as an intermediary for Prince, and that Prince was quite capable of seeking legal advice on his own behalf without Universal's assistance. Miksch Decl. Exh. C at 8-9.

At the August 19 hearing on the parties' motions to compel, Universal changed tack and claimed that *Prince* was a necessary intermediary for *Universal's* receipt of legal advice from its

1

451700.01

1  own in-house counsel. Miksch Decl. Exh. D at 34:16-21, 36:1-10. Judge Seeborg expressed

2  skepticism of this argument, *id.* at 36:18-24, after which Universal then raised, for the very first

3  time, a claim of common interest privilege, *id.* at 36:25-37:1. Judge Seeborg indicated that he

4  would consider both of these arguments, *id.* 36:18-24, 38:5-11, notwithstanding the fact that

5  neither had been mentioned in Universal's brief.

6        On August 25, 2009, Judge Seeborg rejected Universal's claim of privilege over its

7  communications with Prince and ordered them produced, finding that the agreement between

8  them "simply designates Universal as an agent with respect to Prince's business interests, but

9  does not represent retention of Universal's in-house counsel to provide him with legal advice."

10  Klaus Decl. Exh. A at 7-8.

11        Judge Seeborg's order also required Universal to supplement its privilege and redaction

12  logs. *Id.* at 8:24-9:3. The original logs, he found, were deficient in failing to make clear whether

13  communications with Robert Allen, Universal's in-house counsel, were made primarily for the

14  purpose of seeking or providing legal advice as opposed to business consultation. *Id.*.

15        Universal supplemented its privilege and redaction logs on September 1, 2009. Klaus

16  Decl. Exhs. D-2 & E-2. Only then, over two months after the parties first exchanged privilege

17  logs and after the chance to bring arguments to Judge Seeborg's attention had passed, did

18  Universal *ever* assert that any communication between it and Prince was protected under the

19  attorney work product doctrine. Indeed, Universal's revised logs assert both attorney-client and

20  work-product protection for *every single document*—even though Universal's original logs had

21  asserted work-product protection for only *one* of the more than 140 logged documents.

22  *Compare* Klaus Decl. Exhs. D-1 and E-1 *with* D-2 and E-2.[1]

23        Now, in its Objection, Universal briefly attempts to resurrect its argument that *Universal*

24  is the "necessary intermediary," Obj. at 11:7-10, but focuses on its new arguments of common-

25  interest privilege and work-product protection.

26

27

28

[1] The lone document for which Universal originally asserted work-product protection is PRIV-00103, which is not described as a communication with Prince.

2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01

1

## III.   ARGUMENT

2

**A.     Universal waived any purported application of the common-interest privilege or the work-product doctrine.**

3

4

**1.     Universal never timely asserted either the common-interest privilege or work-product protection for any of its communications with Prince, and thus cannot rely upon either now.**

5

6

It is black-letter law that a privilege is only preserved if it is specifically and timely

7

asserted. *E.g.*, Judge William W. Schwarzer et al, Federal Civil Procedure Before Trial

8

("Rutter"), § 11:785 ("Failure to make a timely and specific objection to a discovery request

9

waives any objection based on privilege."); *see also* Fed. R. Civ. P. 26(b)(5)(A)(i) (the

10

withholding party must "expressly make the claim" that the information withheld is "privileged

11

*or* subject to protection as trial-preparation material") (emphasis added).  As a result, courts have

12

observed that "[t]he applicability of the privilege turns on the adequacy and timeliness of the

13

showing [that it applies] as well as on the nature of the document." *Peat, Marwick, Mitchell &*

14

*Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984) (denying mandamus and affirming order to

15

compel where defendant waived privilege by waiting until after the trial court ruled on the

16

privilege claim to make more than a boilerplate objection to Rule 34 requests for production).

17

Until it served its revised privilege and redaction logs four weeks ago, the only mention

18

of work-product protection that Universal had ever made in connection with Prince was in its

19

objections to Ms. Lenz's First Set of Requests for Production, when it stated (as it did in

20

response to every single request) that it objected "to this Request to the extent it calls for

21

information protected by the attorney-client privilege and/or work product doctrine." Miksch

22

Decl. Exh. E (RFPs 5 and 6).  Universal never hinted at the common-interest privilege at all

23

(except, perhaps, by claiming "any other applicable privilege or protection from disclosure,

24

including without limitation any joint privilege relating to the same" in its General Objection No.

25

2). *Id.*

26

In the Ninth Circuit, "boilerplate objections or blanket refusals inserted into a response to

27

a Rule 34 request for the production of documents are insufficient to assert a privilege."

28

*Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005)

3

451700.01

1    (denying mandamus because district court did not clearly err in finding waiver and ordering

2    production of allegedly privileged documents).  There, the court found the defendant's privilege

3    assertions untimely, given that it produced its privilege log five months after the 30-day deadline

4    for responding to the plaintiff's requests for production (which is when both parties expected the

5    log to be produced).  *Id.* at 1149-50.  The defendant's status as a "sophisticated corporate litigant

6    and a repeat player" in the type of lawsuit at issue further supported the district court's finding of

7    waiver.  *Id.*

8           Here, too, Universal is a sophisticated corporate litigant and a repeat player in lawsuits

9    about copyrighted material it administers on behalf of the artists who own the copyrights.  Yet,

10   Universal made no mention of any common-interest privilege for its communications with Prince

11   until the hearing on Ms. Lenz's motion to compel those communications.  Miksch Decl. Exhs. B

12   at 11-12, D at 36:25.  Even now, Universal has not specified, in a privilege log or otherwise,

13   exactly which of the many withheld communications with Prince it now claims are subject to the

14   common-interest privilege.  Klaus Decl. Exhs. D-1, D-2, E-1 & E-2.  And Universal said nothing

15   *at all* in its original privilege logs, in its Opposition to Ms. Lenz's Motion, or to Judge Seeborg

16   of the work-product protection it now invokes.  Rather, Universal waited to raise that claim until

17   it served its revised privilege logs three months after serving the originals and—just as in

18   *Burlington Northern*—after Judge Seeborg had already determined that the Prince

19   communications must be produced.[2]

20          Having failed to make a specific and timely assertion of either the common-interest

21   privilege or work-product protection, Universal waived both.

22

23   [2] The boilerplate objections Universal raised to Ms. Lenz's requests for communications with
     Prince—which mention only attorney-client privilege and work-product protection, saying
24   nothing of any common-interest privilege, Miksch Decl. Exh. E at 6-7 (RFPs 5 and 6)—do not
     suffice to assert anything.  *Burlington Northern*, 408 F.3d at 1149.  Nor does the assertion of
25   attorney-client privilege in Universal's original logs preserve either the common-interest
     privilege or work-product protection, for *each* privilege claimed must be specifically asserted.
26   *See Yurick v. Liberty Mut. Ins. Co.*, 201 F.R.D. 465, 472 (D. Ariz. 2001) ("The burden of
     establishing protection of alleged work product is on the proponent, and it must be specifically
27   raised and demonstrated rather than asserted in a blanket fashion."); Rutter, § 11:786 (under Fed.
     R. 26(b)(5)(A) a party "must:—'*expressly*' claim" the privilege on the basis of which it
28   withholds information) (internal quotation marks omitted; emphasis in original).

**2.    Universal also waived the common-interest privilege and work-product protection by not presenting them to Judge Seeborg.**

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (affirming conviction and sentence, rejecting cursory attempt to incorporate by reference all arguments made by co-appellants in separate briefs). This rule applies equally firmly when a party skips by a magistrate judge to present a brand-new argument to the district court. *See Greenhow v. Sec. of Health & Human Serv.*, 863 F.2d 633, 638 (9th Cir. 1988) (affirming summary judgment for the defendant; approving district court's refusal to consider new legal theory not raised before the magistrate judge), *overruled on other grounds*, *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992).[3] The Magistrates Act[4] was not enacted to "give litigants an opportunity to run one version of their case past the magistrate, then another past the district court." *Id.* at 638. This is especially so for privilege claims, for even where a privilege would have attached if properly asserted, the fact "that such a showing had not been made when the trial court was called upon to make its ruling defeats the privilege." *Peat*, 748 F.2d at 542.

Universal complains that Judge Seeborg's Order was "contrary to law" because it did not adopt one privilege (common-interest) that Universal never mentioned in the briefing below or another theory (work-product protection) that Universal never mentioned anywhere at all. As it admits, Obj. at 14:22, Universal never told Judge Seeborg that it intended to claim work-product protection for its communications with Prince. *See* Miksch Decl. Exhs. B, D. Universal's counsel did perfunctorily raise the common-interest privilege at the August 19 hearing, but even then failed to develop that argument in any meaningful fashion. *Id.* Exh. D at 36:25-38:4. Rather, Universal merely "mention[ed] a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones,"

---

[3] *See also Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d 31, 36 n.3 (1st Cir. 2007) (affirming district court's determination that qualified immunity defense was waived for claims as to which it was not raised before magistrate).

[4] 28 U.S.C. §§ 631 et seq..

451700.01

1   which is not enough to preserve the argument. *Zannino*, 895 F.2d at 17. "Judges are not

2   expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments

3   squarely and distinctly, or else forever hold its peace." *Id.* (internal quotation marks omitted).

4        Magistrate Judge Seeborg did not act contrary to law by declining to adopt Universal's

5   belated and half-hearted common-interest argument, and he certainly did not act contrary to law

6   by neglecting to compose and embrace a work-product argument Universal never made. *Cf.*

7   *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for

8   truffles buried in briefs.").

9   **B.**    **Universal's communications with Prince are not covered by the common-interest privilege.**

10       As with any claim of privilege, the party claiming protection bears the burden of

11  establishing that it applies. *E.g.*, Epstein, The Attorney-Client Privilege and the Work-Product

12  Doctrine, 1148 (2007). The common-interest privilege is an exception to the rule that disclosure

13  of an attorney-client privileged communication to a third party destroys confidentiality and

14  thereby waives the privilege. *E.g.*, *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578

15  (N.D. Cal. 2007) (Chen, Mag. J.); *see generally* Restatement (Third) of the Law Governing

16  Lawyers § 76 (2008) cmt. c. The common-interest privilege saves an otherwise privileged

17  communication from waiver only where the communication is shared with the third party in

18  order to further a matter of common *legal* interest. *E.g.*, *Nidec*, 249 F.R.D. at 579-80 (finding

19  waiver where common interest was commercial interest in acquisition, not anticipation of joint

20  litigation); *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (Jenkins, J.) (finding

21  waiver of work-product protection by company's disclosure to government investigators). It

22  does not protect communications made in furtherance only of a common business interest. *Bank*

23  *Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.*, 160 F.R.D. 437, 448 (S.D.N.Y. 1995).

24       Thus, Universal's common-interest privilege objection to the Order is based on *two*

25  privileges, and it must establish that *both* privileges apply. That is, Universal must first establish

26  that the communications at issue are within the scope of the attorney-client privilege, and then, if

27  successful, must *also* establish that they were shared with Prince to further a common *legal*

28

451700.01

interest, not just a business strategy.

**1. The common-interest privilege cannot apply if Prince is not represented by counsel in connection with his communications with Universal.**

The common-interest privilege applies where "two or more clients with a common interest in a litigated or nonlitigated matter *are represented by separate lawyers* and they agree to exchange information concerning the matter."[5] Rest. 3d Law Governing Lawyers § 76(1) (emphasis added); *see also Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572 (E.D. Cal. 2002) (describing common-interest privilege as "expand[ing] the application of privileges to circumstances in which parties are represented by separate counsel but engage in a common legal enterprise."). Therefore, "[a] person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement within this Section." Rest. 3d Law Governing Lawyers § 76 cmt. d. In other words, the common-interest privilege does not apply unless each party to the putative privilege is represented by an attorney.[6]

Universal has not established that Prince was represented by any attorney at all when the two exchanged communications, let alone by an attorney in connection with whatever interest he has in common with Universal that they intended those communications to further.[7] It therefore cannot carry its burden of establishing that the common-interest privilege applies. *Id.; see also Cavallaro v. United States*, 153 F. Supp. 2d 52, 55 & 61 (D. Mass. 2001) (rejecting common-

---

[5] Of course, communications among two parties who share the same lawyer may also be privileged under the joint client privilege. *E.g.*, Rest. 3d Law Governing Lawyers § 75(1). This privilege does not apply here because Prince is not a client of Universal's in-house attorneys. Miksch Decl. Exh. D at 34:17-18 (Universal's counsel: "…the claim is not that Universal is Prince's attorney.").

[6] *In re Regents of Univ. of Cal.*, 101 F.3d 1386 (Fed. Cir. 1996), on which Universal chiefly relies (Obj. at 12), is not to the contrary. There, the Federal Circuit found that the inventor and licensee were both clients of the licensee's attorneys and upheld the privilege under both the joint-client doctrine *and* the common-interest privilege. *Id.* at 1390-91.

[7] Universal's counsel has explained to Ms. Lenz's counsel that Nora O'Hara, party to two of the logged communications (PRIV-000001 & PRIV-000014), is a "representative from Prince," but did not affirmatively state or otherwise confirm that she represents him *as his attorney*. Miksch Decl. ¶ 4 and Exh. J. Indeed, Ms. O'Hara is not listed as an attorney (or even mentioned) on the website of the law firm with which Universal's counsel stated she is associated, *id.* Exh. H, and it appears that she is nor a member of the bar association of any state in which that law firm's website indicates that it maintains an office, *id.* Exh. K.

1    interest privilege and ordering production of communications made in the presence of parties not

2    represented by an attorney).

3         **2.**      **Universal's communications with Prince are not "otherwise privileged."**

4         As stated above, the common-interest privilege is not a stand-alone privilege, but an

5    exception to the rule that disclosure of an attorney-client privileged communication to a third

6    party waives the privilege. *Nidec*, 249 F.R.D. at 578. The question of whether Universal and

7    Prince share a common legal interest therefore does not even come into play unless Universal

8    first establishes that its communications with Prince are "otherwise privileged." Universal's

9    revised privilege and redaction logs do not establish that any of its communications with Prince

10   contain material that ever qualified for any privilege at all.

11        Universal's own affirmative representations to Judge Seeborg entail that not one of its

12   communications with Prince can be "otherwise privileged" unless it discloses to him an attorney-

13   client privileged communication between Universal and its in-house attorneys. At oral

14   argument, Universal's counsel explicitly represented to the Court that "[t]he privilege that exists

15   in communications involving Prince is Universal's privilege. It's a privilege between Universal,

16   which is the enforcer of Prince's copyrights, and Universal's counsel." Miksch Decl. Exh. D at

17   34:18-21. Universal's counsel explicitly disavowed any claim that Universal and Prince have an

18   attorney-client relationship of their own: "I want to be clear in terms of what the proposed—the

19   claim is not that Universal is Prince's attorney." *Id.* at 34:16-18.

20        It is clear from Universal's privilege and redaction logs that 24 of the 30 communications

21   with Prince that it has logged so far[8] do not contain any privileged material. The

22   communications on Universal's logs are of two types: 24 communications with Prince that seek

23

---

[8] It is not perfectly clear exactly how many communications with Prince Universal is actually
24   withholding. There are only 30 documents on its revised logs described as to, from, or cc'ing
Prince or one of his representatives. *See* Miksch Decl. Exh. F. There are 12 additional
25   documents described as "forwarding" an email from Prince or his representative (*id.* entries 21-
25, 30-31, 33, 36, 84, and 97). Universal produced approximately 295 documents on September
26   14, 2009, pursuant to a different part of Judge Seeborg's Order, but has not yet provided
privilege or redaction logs for those newly produced documents. Miksch Decl. ¶ 5. And,
27   Universal's revised redaction log removed the entry corresponding to one of the documents
originally produced with a redacted communication with Prince, *compare* Klaus Decl. Exh. E-1
28   (Bates No. UMC-0000291) *with id.* Exh. E-2, but Universal did not include an unredacted

PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01

1  or provide information for the purpose of allowing Universal's counsel to provide advice to

2  Universal (the "Information Communications"), and six communications that "reflect[] counsel's

3  provision of legal advice" to Universal ("the Reflection Communications").[9]  Miksch Decl. Exh.

4  F (green and yellow highlights, respectively).[10]

5          Universal's privilege logs show that nothing in the 24 Information Communications was

6  ever "otherwise privileged" before disclosure to Prince.  The privilege between Universal and its

7  attorneys does not encompass fact-gathering conversations between its attorneys and third

8  parties.  Lawyers regularly communicate with third parties to gather facts that will facilitate the

9  effective provision of legal advice to their clients.  Personal injury lawyers interview witnesses to

10  the car accidents that injured their clients, employment attorneys speak with representatives of

11  educational institutions to verify whether an employee did or did not falsify his background, tax

12  attorneys consult with accountants and investment bankers to learn the facts relevant to their

13  legal analysis of transactions.  None of these communications are privileged: none are between

14  an attorney and a client; none are made for the purpose of dispensing or obtaining legal advice;

15  often, they are not even made in confidence.  Cf. In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977)

16  (privilege attaches only to confidential communications between attorneys and clients made for

17  the purpose of seeking or providing legal advice).  "A communication between an attorney and a

18  third party does not become shielded by the attorney-client privilege solely because the

19  communication proves important to the attorney's ability to represent the client."  *United States*

20  *v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (reversing determination that privilege protects

21

22  version of UMC-0000291 in its September 14 production.

[9] One of the six Reflection Communications, PRIV-000065, is described only as "reflecting legal
23  advice" rather than "reflecting...legal advice to Universal."  Miksch Decl. Exh. F (pink
highlight).  Ms. Lenz assumes that the omission of "to Universal" was unintentional, for
24  Universal's denial that Prince is a client of its attorneys means that it cannot claim privilege over
legal advice given to him.  Miksch Decl. Exh. D. at 34:16-21.

25  [10] Universal also represented in its Opposition to Ms. Lenz's Motion to Compel that the
communications Ms. Lenz seeks involve requests by Prince that Universal take action against
26  use of his copyrighted works.  Miksch Decl. Exh. B at 10:21-24.  It is not clear which (if any)
entries on Universal's logs correspond to requests of this sort.  In any case, though, a
27  communication from Prince that merely instructs Universal to send a takedown notice or file a
lawsuit is not privileged because such a communication would not contain anything protected by
28  Universal's privilege with its in-house attorneys (which, it has made clear, is the only privilege

9

PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01

1   attorney's discussions with third party investment banker for the purpose of gathering

2   information; fact that communications facilitated lawyer's provision of legal advice did not make

3   them privileged).

4          However helpful the fact-gathering accomplished through the Information

5   Communications may have been to Universal's attorneys' subsequent provision of legal advice

6   to Universal, Universal's privilege logs do not establish that any one of those communications

7   contains anything privileged. For the Information Communications, then, Universal's common-

8   interest privilege claim does not even get off the ground.

9          Universal's logs also fail to establish that any of the Reflection Communications are

10  "otherwise privileged."  The attorney-client privilege covers only confidential communications

11  between an attorney and his client; it does not cover statements by an attorney to a third party

12  that merely express (or "reflect") the same proposition previously expressed to his client.  (If it

13  did, virtually every single pleading in every single case would waive privilege by disclosing to

14  the court—and the public—the same legal propositions undoubtedly explained to the client in the

15  course of discussing the arguments to be made.)  If all that the Reflection Communications do is

16  repeat to Prince statements of law also made to Universal, then they, too, contain nothing that is

17  "otherwise privileged" and therefore never were eligible for protection under the common-

18  interest privilege.  Universal's privilege and redaction logs do not establish that any of the six

19  Reflection Communications do anything more than that, and it has therefore failed to carry its

20  burden of establishing each element of its claim of common-interest privilege.

21          **3.     Even if Universal had shown that any of the Prince communications were
22          "otherwise privileged," it would also have to show that they were made to
               further a common *legal* interest.**

23          Universal's failure to establish that there ever was anything privileged in anything it said

24  to Prince means that there is no need to reach the question of whether the common-interest

25  privilege salvages that privilege from waiver.  Even if Universal had established that it disclosed

26  a privileged communication to Prince in any of the six Reflection Communications, it would

27  have waived that privilege if it made the disclosure to further a common business interest and not

28  implicated).

                                                    10

451700.01

1    a legal interest. *E.g.*, *Nidec*, 249 F.R.D. at 579-80 (finding waiver where common interest was

2    commercial interest in acquisition, not anticipation of joint litigation).  The common interest

3    Universal claims the communications at issue were supposed to further is the "strong protection

4    and enforcement of Prince's copyrights."  Obj. at 12:12-15.

5          Notably, as discussed above, Universal did not assert work product protection for these

6    communications on its original privilege log. *See* Klaus Decl. Exhs. D-1 and E-1. And it made no

7    such claim in its opposition to Ms. Lenz's motion to compel. Miksch Decl. Exh. B.  Only now,

8    when it is for the first time briefing its belated common interest privilege argument, has it

9    asserted work product protection for these communications.  Plainly, Universal previously

10   recognized that they were furtherance of merely a business interest, not a legal interest, and has

11   switched course and asserted a work-product claim only because it feels it must in order to

12   support its newly manufactured common interest argument.

13   **C.    Judge Seeborg's Order is not contrary to law for not upholding Universal's
            privilege claim under the "necessary intermediary" rule because neither Universal
14          nor Prince is a necessary intermediary for the other's receipt of legal advice**

15         Universal half-heartedly returns to its claim that it is a "necessary intermediary to

16   effective consultation regarding the legal enforcement of [Prince's] copyrights."  Obj. 11:9-10.

17   Universal raised this argument in its Opposition to Ms. Lenz's motion, Miksch Decl. Exh. B at

18   11-12, but reversed itself at oral argument and claimed that *Prince* was the necessary

19   intermediary between Universal and its counsel, *id.* Exh. D at 34:18-21, 36:3-10.  Whatever

20   "necessary intermediary" theory Universal chooses to advance now (and it has waived the right

21   to advance the Prince-as-intermediary theory here by not raising it in its opening brief), neither

22   can justify Universal's privilege claim.

23         First, Universal cannot be the necessary intermediary.  By definition, an intermediary is

24   one who stands between two others.  Universal, though, does not even say whom it claims to be

25   a "necessary intermediary" between.  *See* Obj. at 11:7-10.  Universal certainly has not identified

26   any attorney representing Prince on whose behalf it conveys information to or from Prince.  *Id.*

27         Second, even if Universal or Prince were some sort of intermediary between the other

28   and an attorney, neither is a *necessary* intermediary.  The Second Circuit first articulated the

11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01

1  "necessary intermediary" doctrine in *United States v. Kovel*, 296 F.2d 918 (2d. Cir. 1961)

2  (Friendly, J.).  The *Kovel* rule extends the attorney-client privilege to communications with a

3  third party where the third party's role is to help the attorney *understand* communications from

4  his client.  *Id.* at 922.  That is, where the third party plays a role analogous to an interpreter, such

5  as when an accountant translates the client's financial information for the attorney,

6  communications with that third party are privileged.  *Id.*  Universal has never asserted that it

7  needed Prince to clarify or "interpret" its communications with its attorneys.  Rather, Universal

8  apparently consulted with Prince to learn facts it did not otherwise know that it deemed relevant

9  to its administration of Prince's copyright.  However important Universal's attorneys'

10  communications with Prince may be to the advice they provide to Universal, the *Kovel* doctrine

11  does not protect communications such as these.  *Ackert*, 169 F.3d at 139-140 (*Kovel* does not

12  shield attorney's discussions with investment banker where discussions were for the purpose of

13  gathering facts, not for translating or interpreting client communications, even though

14  communications were important to the attorney's provision of legal advice).

15  **D.    The Order is not contrary to the law of work-product protection because Universal's communications with Prince are not trial preparation materials**
16  **revealing attorneys' strategy.**

17       As explained above (*supra*, Part A), Universal forfeited any right to claim work-product

18  protection both by not asserting it in a timely fashion and by not raising it before Judge Seeborg.

19  Universal's work-product argument is also meritless.

20       The work product doctrine protects trial preparation materials that reveal an attorney's

21  strategy.  Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).  Crucially, it

22  only protects material that was actually "prepared in anticipation of litigation or for trial."  Fed.

23  R. Civ. P. 26(b)(3)(A).  Though litigation need not have actually commenced, it "must be more

24  than a remote possibility."  *Fox v. Cal. Sierra Fin. Serv.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988)

25  (work-product doctrine inapplicable where no showing that documents were prepared in

26  anticipation of actual litigation); *c.f. In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir.

27  2004) (documents prepared in anticipation of litigation where EPA had previously notified client

28  that it was under investigation for violating federal law).  And, work-product protection is not

12
PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01

1  absolute, even for attorneys' mental impressions and theories—"opinion work product may be

2  discovered and admitted when mental impressions are *at issue* in a case and the need for the

3  material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 578 (9th

4  Cir. 1992) (emphasis in original) (affirming district court's order requiring disclosure of insurer's

5  opinion work product in insurance bad faith case).

6         There is no evidence that Universal's communications with Prince contain any material

7  prepared by its attorneys "in anticipation of litigation." Universal's privilege logs indicate that

8  the withheld communications relate to ███████████████████████████

9  ████████████████████████████████████████        *See* Miksch Decl.

10 Exh. F. Universal's attorneys may, when exchanging these communications with Prince, have

11 speculated about the possibility of litigation about the particular unauthorized content at issue.

12 But Universal has offered no reason to think that it made those communications because it

13 "face[d] an actual claim or potential claim following an actual event or series of events that could

14 reasonably result in litigation." *Bank Brussels*, 160 F.R.D. at 448-49 (quoting *National Union*

15 *Fire Ins. Co. v. Murray St. Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992), omitting emphasis).

16 "The expectation of litigation is either real or it is not." *United States v. ChevronTexaco Corp.*,

17 241 F. Supp. 2d 1065, 1082 (N.D. Cal. 2002) (Brazil, Mag. J.) (work-product protection applied

18 to documents prepared in anticipation of IRS challenge to transaction that client believed was a

19 "virtual certainty.") Universal has made *no* showing that its attorneys contemplated anything

20 more than a "remote possibility" of litigation when communicating with Prince, and the work-

21 product doctrine therefore does not apply. Indeed, Universal's failure even to claim work

22 product protection over these communications in its original privilege logs and in the briefing

23 below speaks volumes about the lack of real expectation of litigation in the minds of its counsel

24 when they communicated with Prince.

25         Further, even if Universal could show that its communications with Prince were work

26 product and even if it had not waived the argument (twice), Ms. Lenz would still be entitled to

27 those communications. Universal has said time and time again that the key issue in this case is its

28 state of mind. As explained in more detail below, Prince's relationship with Universal is highly

13

451700.01

1  relevant to Universal's state of mind when dealing with uses of his work.  Even assuming that

2  the work-product doctrine applied to these communications (and, of course, that Universal had

3  not waived it), Ms. Lenz's need to discover what Prince and Universal said to each other is

4  compelling and justifies production.

5  **E.   Judge Seeborg's Order is not contrary to law in recognizing that communications
       between Universal and Prince are reasonably anticipated to lead to the discovery of
6       admissible evidence.**

7        A party is entitled to discover "any nonprivileged matter that is relevant to any party's

8  claim or defense…[that] appears reasonably calculated to lead to the discovery of admissible

9  evidence."  Fed. R. Civ. P. 26(b)(1).  "The Supreme Court has consistently held that the

10  discovery rules should be accorded a 'broad and liberal scope.'"  *Contratto v. Ethicon*, Inc., 225

11  F.R.D. 593, 595 (N.D. Cal. 2004) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15

12  (1964)).  "[A]ny matter that bears on, or that reasonably could lead to other matter that could

13  bear on, any issue that is or may be in the case" is subject to discovery.  *Oppenheimer Fund, Inc.*

14  *v. Sanders*, 437 U.S. 340, 351 (1978).

15        Therefore, a district court "must review the magistrate's order with an eye toward the

16  broad standard of relevance in the discovery context."  *Geophysical Sys. Corp. v. Raytheon Co.*,

17  117 F.R.D. 646, 647 (C.D. Cal. 1987) (Tashima, J.).  The standard of review for a magistrate

18  judge's relevance determination "in most instances is not the explicit statutory standard, but the

19  clearly implicit standard of abuse of discretion."  *Id.*  A decision is reversible as an abuse of

20  discretion only where the reviewing court is "convinced firmly that the reviewed decision lies

21  beyond the pale of reasonable justification under the circumstances."  *Boyd v. City and County of*

22  *San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009) (quoting *Harman v. Apfel*, 211 F.3d 1172,

23  1175 (9th Cir. 2000)).

24        Universal's communications with Prince, whether about her video or not, are directly

25  relevant to Ms. Lenz's claims.  As she explained in her Motion to Compel, Ms. Lenz alleges,

26  based on Universal's own statements, that Universal has a "Prince Policy" of sending takedown

27  notices for *any* unlicensed use of Prince compositions it finds online—without considering

28  whether a use is fair or otherwise authorized by law.  Miksch Decl. Exh. A at 9.  Peter

14

451700.01

1    Lofrumento, Universal Music Group's Executive Vice President, Communications and Public

2    Relations,[11] suggested as much to ABC News when he explained why Universal has sent

3    takedown requests for "thousands" of videos involving Prince's works.  Miksch Decl. Exh. G at

4    p. 2.  The reason, according to Mr. Lofrumento, is that Universal supports Prince in his belief

5    that "as a matter of principle" "it is wrong for YouTube … to appropriate his music without his

6    consent."  *Id.*  Universal must have some reason to think that Prince believes that no one may use

7    his music in any way at all without his consent, and the reason is most likely that Prince at some

8    point *told* Universal what he believed.  Ms. Lenz is therefore entitled to discover

9    communications that may bear on what Prince told Universal about what he wanted done with

10   unlicensed uses of his music.  Communications about videos other than hers may well reflect

11   Prince's instructions.

12          The communications at issue may well lead to evidence that Universal follows a "Prince

13   Policy" even if none contain a direct statement by Prince that he wants Universal to take down

14   all uses of his works regardless of whether they infringe or not.  Mr. Lofrumento emphasized to

15   ABC News that that position has "nothing to do with any particular video," *id.*, which suggests

16   that Universal treats all uses of Prince's music the same way (i.e., sending takedowns without

17   considering whether they actually infringe).  And, Universal has ████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21   ████████████████  Miksch Decl. Exh. I at UMC-0001583.  Ms. Lenz is therefore entitled to

22   discover what Universal and Prince say to each other about takedown notices to flesh out her

23   theory of how Universal approaches uses of Prince's music.  This is *not* because she intends to

24   turn this case into a "series of mini-trials concerning…whether Universal 'got it right or got it

25   wrong' concerning numerous other YouTube postings…."  Obj. 16:28-17:2.  Rather, as Judge

26   Seeborg recognized, Ms. Lenz is free to argue that if Universal sends takedown requests for

27

28   [11] *See* Decl. of Peter Lofrumento in Support of Universal's Opp. to Plaintiff's Mot. to Compel, ¶ 1 (Dkt. No. 112).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01

1   videos involving Prince's works "simply because it was urged to do so by the artist and without

2   regard to infringing conduct," the jury should infer that it did the same in her case.  Klaus Decl.

3   Exh. A at 6:5-13.

4          Communications between Prince and Universal about takedowns for *any* of his works are

5   therefore reasonably calculated to lead to evidence about Universal's motivation for sending the

6   takedown for *her* video.  Judge Seeborg did not act contrary to law, let alone abuse his

7   discretion, in recognizing as much.

8                              **IV.    Conclusion**

9          This Objection merely presents the latest in Universal's ever-shifting explanations of why

10  it should not need to produce its communications with Prince.  These arguments fail, just as have

11  its previous rationalizations.  Universal has not established a valid claim of privilege for its

12  communications with Prince, and the Court should therefore reject Universal's Objection to

13  Section C.4 of Judge Seeborg's order in its entirety.  Moreover, the twenty day stay agreed to by

14  the parties to allow Universal to seek a stay from the Ninth Circuit is more than sufficient, and

15  Universal's request for a 30 day stay should thus also be rejected.

16

17  Dated:  September 30, 2009                    KEKER & VAN NEST LLP

18

19

20                                           By:   */s/ Melissa J. Miksch*
                                                   MELISSA J. MIKSCH
21                                                 Attorneys for Plaintiff
                                                   STEPHANIE LENZ

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' OBJECTION TO MAGISTRATE
JUDGE SEEBORG'S AUGUST 25, 2009 ORDER
CASE NO. C 07-03783-

451700.01