ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA  94110
Telephone:    (415) 436-9333
Facsimile:    (415) 436-9993
Email: fred@eff.org; kurt@eff.org
        corynne@eff.org

KEKER & VAN NEST LLP
ASHOK RAMANI #200020
MICHAEL S. KWUN #198945
MELISSA J. MIKSCH #249805
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
        mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                              Defendants. | Case No. C 07-03783-JF<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>Date:        December 11, 2009<br>Time:        9:00 a.m.<br>Courtroom: 3, 5th floor<br>Judge:      Hon. Jeremy Fogel<br><br>[OBJECTIONS TO EVIDENCE AND DECLARATION OF MICHAEL S. KWUN FILED HEREWITH] |

# TABLE OF CONTENTS

|  |  |  |  | Page No. |
|--|--|--|--|---------:|
| I. | | Introduction | | 1 |
| II. | | Argument | | 1 |
| | A. | Universal's "unclean hands" and "bad faith" affirmative defenses are unsupported by any admissible evidence sufficient to create a dispute of material fact. | | 1 |
| | | 1. | Universal's "evidence" cannot support a finding that Ms. Lenz has made false allegations. | 2 |
| | | | a. Ms. Lenz has not alleged that "anyone" would immediately have recognized that her video is a fair use. | 2 |
| | | | b. The "evidence" cited by Universal is irrelevant. | 3 |
| | | | c. Ms. Lenz has suffered damages, and been irreparably harmed. | 4 |
| | | 2. | Allegedly false allegations cannot support an unclean hands defense. | 6 |
| | | 3. | Universal has suffered no prejudice. | 7 |
| | | 4. | Universal "bad faith" and "unclean hands" arguments are essentially an attack on Ms. Lenz's prima facie case, not affirmative defenses. | 7 |
| | B. | Ms. Lenz has suffered damages. | | 8 |
| | | 1. | Section 512(f) damages are not limited to pecuniary harm. | 9 |
| | | | a. The plain language of the statute and the purpose behind it support a broad reading of section 512(f) damages. | 9 |
| | | | b. The Court should not import a limitation from the common law tort of fraudulent misrepresentation that is contrary to the plain language of section 512(f). | 10 |
| | | 2. | Section 512(f) damages include all damages that would not have resulted but for the false notice. | 12 |
| | | 3. | Pro bono fees and costs are recoverable to the same extent as any other fees and costs. | 12 |
| | | 4. | Fees and costs for work on Ms. Lenz's counter notice are recoverable. | 13 |
| | | 5. | Fees and costs for work on this litigation are recoverable. | 13 |
| | C. | Universal's First, Fourth and Fifth Affirmative Defenses fail as a matter of law. | | 14 |

i

458718.02

III.     Conclusion ..................................................................................................15

458718.02

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ...........................................................................................4, 8

*Batzel v. Smith*
333 F.3d 1018 (9th Cir. 2003) ...........................................................................5, 10

*Blue Chip Stamps v. Manor Drug Stores*
421 U.S. 723 (1975) ................................................................................................11

*D. Ginsberg & Sons, Inc. v. Popkin*
285 U.S. 204 (1932) ................................................................................................13

*In re Dawson*
346 B.R. 503 (Bankr. N.D. Cal. 2006) ..................................................................13

*Dennis v. Chang*
611 F.2d 1302 (9th Cir. 1980) ...............................................................................13

*Dura Pharms., Inc. v. Broudo*
544 U.S. 336 (2005) ..........................................................................................11, 12

*Ellison Educ. Equip., Inc. v. Chen*
No. SACV02-1184-JVS(ANX), 2004 WL 3154592 (C.D. Cal. Dec. 21,
2004) .........................................................................................................................7

*Elrod v. Burns*
427 U.S. 347 (1976) ..................................................................................................5

*Fogerty v. Fantasy, Inc.*
510 U.S. 517 (1994) ................................................................................................14

*Gotro v. R&B Realty Group*
69 F.3d 1485 (9th Cir. 1995) .................................................................................13

*Greany v. Western Farm Bureau Life Ins. Co.*
973 F.2d 812 (9th Cir. 1992) .................................................................................15

*Hynix Semiconductor Inc. v. Rambus Inc.*
591 F. Supp. 2d 1038 (N.D. Cal. 2006) ...................................................................7

*Keystone Driller v. General Excavator Co.*
290 U.S. 240 (1933) ..................................................................................................6

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
543 U.S. 111 (2004) ..................................................................................................8

*Lenz v. Universal Music Corp.*
572 F. Supp. 2d 1150 (N.D. Cal. 2008) .................................................3, 4, 14, 15

*Lusa Lighting, Int'l, Inc. v. America Elex, Inc.*
No. 07-0674, 2008 WL 4350741 (C.D. Cal. Sept. 22, 2008) ................................11

*Maryland Cas. Co. v. Regis Ins. Co.*
No. CIV.A. 96-CV-1790, 1997 WL 164268 (E.D. Pa. April 9, 1997)...................12

*Morales v. Trans World Airlines, Inc.*
504 U.S. 374 (1992) ................................................................................................13

*Morrison v. C.I.R.*
565 F.3d 658 (9th Cir. 2009) .................................................................................12

*National People's Action v. Village of Wilmette*
914 F.2d 1008 (6th Cir. 1990) .................................................................................5

REPLY ISO PLF'S MOT. FOR PARTIAL S. J. OR, IN THE ALT., FOR PARTIAL J. ON THE PLEADINGS
CASE NO. C 07-03783-JF

458718.02

*PenneCom B.V. v. Merrill Lynch & Co., Inc.*
   372 F.3d 488 (2d Cir. 2004) ..........................................................................................7

*Perfect 10 v. CCBill*
   488 F.3d 1102 (9th Cir. 2007) ...................................................................................5, 10

*Quintana v. Baca*
   233 F.R.D. 562 (C.D. Cal. 2005) ..................................................................................8

*Synopsys, Inc. v. Magma Design Automation, Inc.*
   No. C-04-3923, 2007 WL 420184 (N.D. Cal. Feb. 6, 2007) .........................................7

*United States v. Fairchild Indus., Inc.*
   766 F. Supp. 405 (D. Md. 1991) .................................................................................14

*United States v. Gonzales*
   520 U.S. 1 (1997).......................................................................................................10

*Williams v. United States*
   503 U.S. 193 (1992)....................................................................................................12

*X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.*
   155 F. Supp. 2d 577 (E.D. Va. 2001) ............................................................................7

*Yurman Design, Inc. v. Golden Treasure Imports, Inc.*
   275 F. Supp. 2d 506 (S.D.N.Y. 2003) ...........................................................................7

**Statutes and Regulations**

15 U.S.C. § 78bb(a) ...........................................................................................................11

15 U.S.C. § 78u-4(b)(4) ......................................................................................................12

17 U.S.C. § 505..............................................................................................................13, 14

17 U.S.C. § 512(f)......................................................................................................*passim*

17 C.F.R. § 240.10b-5 .........................................................................................................11

**Rules**

Fed. R. Civ. P. 7(a) .............................................................................................................14

Fed. R. Civ. P. 8(e) ...............................................................................................................2

Fed. R. Civ. P. 9(b) .............................................................................................................12

Fed. R. Civ. P. 12(b)(6)........................................................................................................14

Fed. R. Civ. P. 12(c) ...........................................................................................................15

Fed. R. Civ. P. 12(e) ......................................................................................................14, 15

Fed. R. Civ. P. 56..............................................................................................................1, 15

Fed. R. Evid. 201(b)(2).........................................................................................................9

**Treatises**

WILLIAM PATRY, PATRY ON COPYRIGHT (2009) .................................................................12

PROSSER AND KEETON ON TORTS (5th ed. 1984).................................................................4

**Legislative History**

S. Rep. No. 105-190.............................................................................................................10

REPLY ISO PLF'S MOT. FOR PARTIAL S. J. OR, IN THE ALT., FOR PARTIAL J. ON THE PLEADINGS
CASE NO. C 07-03783-JF

458718.02

# I.     Introduction

Despite a great deal of sound and fury, Universal fails to establish that there is a genuine material factual dispute as to its challenged defenses.

Regarding the affirmative defenses of "bad faith" and "unclean hands," there is no evidence that Ms. Lenz acted with unclean hands when she posted her video of her toddler dancing. There is similarly no evidence of unclean hands on Ms. Lenz's part when her video was removed—indeed, she had no inkling that the takedown was coming until her video disappeared thanks to unilateral action by Universal.  Ms. Lenz's alleged beliefs about this litigation, Universal and Prince, much less her lay testimony about how she understands her legal claims, have no bearing on any potential "bad faith" or "unclean hands" defenses that Universal asserts.

Universal's "no damages" defense fares no better.  Universal's reading of section 512(f)—as requiring monetary "out of pocket" damages, exclusive of attorneys' fees and costs—flies in the face of both the letter and spirit of the statute.  Were Universal's view the law, millions of YouTube users would have no recourse at all against blatantly false Digital Millennium Copyright Act ("DMCA") takedown notices, simply because YouTube provides its video hosting services for free.  That is not what Congress intended, nor what it said.  On any fair reading of the DMCA, Ms. Lenz has cognizable damages.  As for the claim that pro bono work does not qualify as compensable damages, black-letter law and well-established public policy say otherwise.

Summary judgment in Ms. Lenz's favor will fulfill the principal purpose of Rule 56: to clear away the underbrush so that the parties and the Court can focus on the only questions that matter—here, whether Universal knowingly made a material misrepresentation that Ms. Lenz's video was infringing, and what harm Ms Lenz thereby suffered.

# II.     Argument

**A.     Universal's "unclean hands" and "bad faith" affirmative defenses are unsupported by any admissible evidence sufficient to create a dispute of material fact.**

In a marked departure from its original interrogatory responses, Universal now offers two

1

new arguments in support of its unclean hands defense.[1]   According to Universal, (1) some of Ms. Lenz's allegations are false, and Ms. Lenz knew this when the allegations were made; and (2) this lawsuit is "simply a publicity campaign."   The latter argument can be disposed of quickly.   Universal admits, as it must, that Ms. Lenz and her attorneys "have the right to publicly discuss this case or their views about copyright law, Universal, Prince, or anything else."  Opp. at 15:12-13.  Universal takes issue only insofar as this case is being pursued "based on facts known to be false."  *Id.* at 15:13-14.  In short, the second argument is merely the first repeated.

> **1.      Universal's "evidence" cannot support a finding that Ms. Lenz has made false allegations.**
>
> > **a.      Ms. Lenz has not alleged that "anyone" would immediately have recognized that her video is a fair use.**

Universal begins by arguing that Ms. Lenz has falsely claimed that "*anyone* who looked at her video posting would have immediately recognized that it made what Plaintiff has called a 'self-evident non-infringing fair use' of 'Let's Go Crazy.'"  Opp. at 6:20-23 (emphasis added).[2] But the operative allegation of the second amended complaint ("SAC") does not state that "anyone" who looked at the video would have known it was a fair use.  *See* SAC ¶ 34.[3] Moreover, the SAC does not name just "anyone" as a defendant—it names Universal.  The SAC alleges that Universal is a sophisticated company in the music industry, with an extensive legal staff and employees who understand the DMCA and the fair use doctrine.  *See id.* ¶ 19.  This case is about *Universal's* decision to send a takedown notice, and the allegations in the complaint can only be understood to address what was self-evident to *Universal*.

By starting with the unsupported straw man premise that Ms. Lenz has asserted that "anyone" would recognize that her video is a fair use, Universal has made an argument

---

[1] As explained in Ms. Lenz's moving papers, although Universal has separately pled affirmative defenses of unclean hands and bad faith, the legal standard applicable to both of them is the same.  *See* Mot. at 6:7-14.  Universal has not disputed this point.

[2] Universal persists in this erroneous characterization of Ms. Lenz's complaint, notwithstanding that its error has been pointed out to it.  *See* Klaus Decl., Exh. O at 1-2.

[3] Universal is not entitled to any deference in its interpretation of Ms. Lenz's complaint. "Pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).

458718.02

1    unmoored from Ms. Lenz's actual allegations.[4]  It follows this fiction with three excerpts from

2    Ms. Lenz's filings, none of which claim that "anyone" would have recognized that the video is a

3    fair use.  Instead, the excerpts are expressly tied to Universal's own knowledge.  Klaus Decl.,

4    Exh. R (Opp. to Mot. to Dismiss SAC) at 19:10-11 ("fair use was plainly applicable and

5    Universal knew it"), 21:1-2 ("If Universal had looked at the video" it would have known it was a

6    noncommercial, transformative use);[5] Decl. of Michael S. Kwun ("Kwun Decl."), Exh. C (Reply

7    in Supp. of Mot. to Compel) at 1:12-13 (stating that "Universal could not have formed" a good

8    faith belief of infringement).[6]

9          Universal's entire argument about Ms. Lenz's "self-evident" allegation thus lacks any

10    foundation at all.  Universal bases its "unclean hands" theory on an allegation that simply has not

11    been made.

12          b.    **The "evidence" cited by Universal is irrelevant.**

13          In a comment made on her blog on June 12, 2007, Ms. Lenz said that her case is "not a

14    'fair use' case at all. . . . It's something different."  Klaus Decl., Exh. Q at 2.  Ms. Lenz's case *is*

15    something different.  While fair use is certainly an important issue in this case, Ms. Lenz's cause

16    of action is asserted under 17 U.S.C. § 512(f), based on Universal's false takedown notice.  The

17    core question is whether *Universal* made a knowing misrepresentation that Lenz's video was

18    infringing.  What Ms. Lenz said on June 12, 2007 is correct but in any event raises no issues

19    about her good faith in filing her complaint.[7]

20          Similarly, Ms. Lenz's beliefs about what "anyone," "somebody," or even an abstract

---

[4] Universal omits any citation in support of this assertion.  Opp. at 6:22.

[5] Universal has omitted these two lines from the excerpt it included in its brief, notwithstanding that counsel for *both* parties quoted this language in prior correspondence.  Klaus Decl., Exh. N at 3 & O at 1.

[6] Even Universal's own prior filings suggest that it understood that the SAC is about *Universal's* knowledge.  *See, e.g.,* Kwun Decl., Exh. D (Universal's Reply in Supp. of Mot. to Dismiss SAC) at 6 ("Plaintiff continues to claim that her YouTube posting was so self-evidently 'fair' that *Universal* must be deemed to have known it was fair use just by looking at it." (emphasis added)).

[7] Regardless, Ms. Lenz has testified that she believes her video was and is a fair use, and that it does not infringe copyright.  Klaus Decl., Exh. A (Lenz. Depo.) at 264:19-22, 265:8-17; Kwun Decl., Exh. A (Lenz Depo.) at 75:6-9; *see also id.* at 75:10-17, 271:1-11.

---

"reasonable person" might think about her video are irrelevant.  This case is not about what "anybody" might think, viewing Ms. Lenz's video.  It's about what Universal thought when it saw her video.  Unlike "somebody," Universal is a multi-million dollar concern in the music industry, with lawyers on staff who are well-versed in copyright law.  Whether "anyone" would think the video was a fair use, whether "somebody" could have thought it wasn't a fair use, and whether "reasonable people"[8] could disagree on this point—and certainly what Ms. Lenz's lay view is on those questions—simply have no relevance to this case, and are not evidence of unclean hands.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .  Only disputes over facts that might affect the outcome . . . will properly preclude the entry of summary judgment.") (emphasis in original).

The conversations between Ms. Lenz and her friend Theryn Fleming are equally inconsequential.  Universal itself takes the position that "[w]hether Ms. Fleming was right or wrong in her opinion that Plaintiff's posting was infringing really is of no consequence to this motion."  Opp. at 10:20-21.  Nonetheless, Universal seeks to make this "evidence" relevant by arguing that Ms. Lenz is guilty of "turning around and trying to persuade the Court that *anyone* with any knowledge about copyright issues would had to have known just by looking at her video posting that it was non-infringing."  *Id.* at 10:23-25 (emphasis in original).  Universal cannot manufacture a dispute of material fact by shadow boxing against allegations that Ms. Lenz never made.  Ms. Lenz's position is that her video was self-evidently a non-infringing fair use *to Universal.  See* SAC ¶¶ 19, 34.

### c.   Ms. Lenz has suffered damages, and been irreparably harmed.

Universal next claims that there is a problem with Ms. Lenz's claims that she has been

---

[8] The Court has previously addressed the requisite standard for bad faith under section 512(f).  *Lenz v. Universal Music Corp.,* 572 F. Supp. 2d 1150, 1155 (N.D. Cal. 2008).  Even if the Court were applying a "reasonable person" standard, that standard necessarily would consider what the hypothetical reasonable and prudent person in Universal's position would think.  *Prosser and Keeton on Torts,* § 32 at 185 (5th ed. 1984) (under a reasonable person standard, "if a person in fact has knowledge, skill, or even intelligence superior to that of the ordinary person, the law will demand of that person conduct consistent with it").

1    injured, and that her injury is substantial and irreparable.  These issues are principally addressed

2    below, in the portion of this brief addressing what types of harm are compensable under section

3    512(f).  *See infra* Part III.B.  Three issues merit additional discussion at this juncture.

4          First, Universal suggests that Ms. Lenz's counsel misstated the facts at the hearing on

5    Universal's motion to dismiss the SAC.  Universal's assertion is disingenuous at best; it is no

6    secret that Ms. Lenz is represented pro bono.  Moreover, Ms. Lenz's counsel addressed this issue

7    at the July 10, 2009 case management conference.  *See* Kwun Decl., Exh. B (Hearing Trans.) at

8    13:3-21.  Ms. Lenz's counsel does not believe any misrepresentation was made, but certainly

9    there is no evidence that this claimed "misrepresentation" was made *in bad faith*.

10         Second, Universal questions whether Ms. Lenz suffered harm from YouTube's disabling

11   of her video.  She did, as a matter of law.  When YouTube disabled her video, Ms. Lenz's First

12   Amendment protected speech was curtailed.  *Cf. Batzel v. Smith,* 333 F.3d 1018, 1031 n.19 (9th

13   Cir. 2003) (DMCA procedures "carefully balance the First Amendment rights of users with the

14   rights of a potentially injured copyright holder"); *Perfect 10 v. CCBill,* 488 F.3d 1102, 1112 (9th

15   Cir. 2007) (false DMCA notices can cause the removal of "speech protected under the First

16   Amendment").  "[L]oss of First Amendment freedoms, for even minimal periods of time,

17   unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976)

18   (plurality); *see also National People's Action v. Village of Wilmette,* 914 F.2d 1008, 1013 (6th

19   Cir. 1990) ("Even a temporary deprivation of first amendment freedom of expression is generally

20   sufficient to prove irreparable harm.").[9]

21         Third, Universal tries to claim that Ms. Lenz's allegation that she was intimated by

22   Universal's notice was made in bad faith, largely based on a small error in the SAC.  The SAC

23   alleges that Ms. Lenz has not posted a video to YouTube since learning of Universal's takedown

---

24

25   [9] Universal also claims that Ms. Lenz does not believe she was substantially and irreparably
     harmed.  Her testimony refutes that claim. Klaus Decl., Exh. A (Lenz Depo.) at 242:7-8; *see also*

26   *id.* at 239:24-240:4.  Ms. Lenz believed Ms. Fleming's use of a "wink" emoticon while
     discussing that allegation "was kind of a reference back to [the] lawyerese." *Id.* at 241:11-12.

27   When Ms. Lenz "winked" in reply, that was "a reply to the wink that [Ms. Fleming] used," *id.* at
     241:20-21—that is, another reference to the "lawyerese" in the complaint.  The fact that Ms.

28   Lenz (a writer) believes that lawyers sometimes use stilted language is not evidence of bad faith.

458718.02

notice, when in fact she has posted one additional video (of her family watching her appearance on *The O'Reilly Factor*). Ms. Lenz testified that she had forgotten about posting this additional video until her deposition. Klaus Decl., Exh. A (Lenz Depo.) at 106:3-8. A memory slip is not bad faith. Moreover, the evidence demonstrates that Ms. Lenz was in fact intimidated, in that she posted this additional video privately, and left it online for only a few days. *See* Klaus Decl., Exh. S.[10]

### 2. Allegedly false allegations cannot support an unclean hands defense.

Universal's assertion that Ms. Lenz made knowingly false allegations thus rests on an incorrect reading of Ms. Lenz's complaint, inferences based on erroneous legal theories, and utter speculation. *See also* Klaus Decl., Exh. O (Nov. 9, 2009 Kwun-McSherry Ltr. to Klaus). What is more, the assertion does not establish unclean hands. Universal's opposition deceptively cites *Keystone Driller v. General Excavator Co.,* 290 U.S. 240 (1933), for the proposition that litigation misconduct can support a defense of unclean hands. Universal argues that

> Where a party "seeks to set the judicial machinery in motion and obtain some remedy" but in the course of litigation "has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him[.]"

Opp. at 5:15-19 (quoting *Keystone,* 290 U.S. at 244-45[11]). By inserting "in the course of litigation" where it did, Universal suggests that misconduct in the very case in which the defense is raised can support an unclean hands defense. But that phrase is not in the *Keystone* case; the Court expressly referred, instead, to *prior conduct.* 290 U.S. at 245. Here, Universal points to nothing in Ms. Lenz's prior conduct that has dirtied her hands.

In *Keystone,* the Supreme Court held that the plaintiff's concealment of evidence *in a prior case* constituted unclean hands, because the decree of patent validity obtained in the first case was used as the basis of the plaintiff's action in its subsequent case. *See id.* at 246. Here, Universal argues only about conduct in the case at bar. A defendant "cannot maintain a defense

---

[10] Ms. Lenz has not relied on this allegation in any of her subsequent filings, and has offered to stipulate to strike the sentence from the SAC *nunc pro tunc* to the date of its filing. *See* Klaus Decl., Exh. O at 4.

[11] The *Keystone* Court was, in turn, quoting POMEROY, EQUITY JURISPRUDENCE, 4th ed., § 397.

REPLY ISO PLF'S MOT. FOR PARTIAL S. J. OR, IN THE ALT., FOR PARTIAL J. ON THE PLEADINGS
CASE NO. C 07-03783-JF

458718.02

of unclean hands where the basis of the defense is premised on the posture taken by the plaintiff[] with respect to its [rights] in the course of litigation." *Yurman Design, Inc. v. Golden Treasure Imports, Inc.,* 275 F. Supp. 2d 506, 518 (S.D.N.Y. 2003). Universal's claims should be addressed, if at all, by way of a motion for sanctions.[12]

If Universal files a motion for sanctions based on the innuendo and speculation in its opposition, the Court can deny it on the merits at that time.[13] Those suppositions, however, have no role in Universal's "bad faith" and "unclean hands" defenses, and thus Ms. Lenz is entitled to partial summary judgment on Universal's second and seventh affirmative defenses.

**3.     Universal has suffered no prejudice.**

Universal has offered no evidence that any of the alleged wrongs of which it complains has prejudiced its defense. *See Republic Molding Corp.,* 319 F.2d at 349-50 (in applying the unclean hands defense, "the extent of actual harm caused by the conduct in question" is "a highly relevant consideration"); *Hynix Semiconductor Inc. v. Rambus Inc.,* 591 F. Supp. 2d 1038, 1067 (N.D. Cal. 2006) (party asserting unclean hands must show that the alleged misconduct prejudiced its defense); *PenneCom B.V. v. Merrill Lynch & Co., Inc.,* 372 F.3d 488, 493 (2d Cir. 2004) (unclean hands defense requires proof that the plaintiff "has injured the party attempting to invoke the doctrine"). The lack of prejudice is another basis for granting summary judgment on Universal's affirmative defenses.

**4.     Universal "bad faith" and "unclean hands" arguments are essentially an attack on Ms. Lenz's prima facie case, not affirmative defenses.**

The doctrine of unclean hands applies only where the court concludes that misconduct by

---

[12] *Cf. Synopsys, Inc. v. Magma Design Automation, Inc.,* No. C-04-3923, 2007 WL 420184, at *5 (N.D. Cal. Feb. 6, 2007) ("Courts have repeatedly held . . . that a defense of unclean hands may not be based on discovery misconduct."); *X-IT Prods., L.L.C. v. Walter Kidde Portable Equip., Inc.,* 155 F. Supp. 2d 577, 600-01 (E.D. Va. 2001) (unclean hands defense cannot be based on litigation misconduct; "appropriate remedy is . . . a motion to compel and/or a motion for sanctions"); *Ellison Educ. Equip., Inc. v. Chen,* No. SACV02-1184-JVS(ANX), 2004 WL 3154592, at *20 (C.D. Cal. Dec. 21, 2004) ("To the extent Quickutz's unclean hands are caused by alleged discovery abuses, . . . the proper remedy is a motion to compel or a motion for sanctions . . . . [T]he Court is unwilling to deny Quickutz declaratory relief based on unclean hands because the remedy for Ellison's concerns are properly sought elsewhere, not in a motion for summary judgment.").

[13] A motion for sanctions would fail for at least the reasons expressed in Ms. Lenz's counsel's November 8, 2009 letter to Universal's counsel. *See* Klaus Decl., Exh. O.

7

458718.02

the plaintiff is so unconscionable that it bars equitable remedies notwithstanding the defendant's own misconduct.  "In the interests of right and justice the court should not automatically condone the defendant's infractions because the plaintiff is also blameworthy . . . .  Rather the court must weigh the substance of the right asserted by plaintiff against the transgression which, it is contended, serves to foreclose that right."  *Republic Molding Corp.,* 319 F.2d at 350.

Casting about for some basis for its unclean hands defense, all Universal has been able to adduce is a layperson's testimony that someone somewhere could think the video was infringing, a memory slip, a few sound bites, and pictures of children wearing T-shirts depicting Batman and Disney's Princess Jasmine.  Because Universal asserts unclean hands as an affirmative defense, for purposes of deciding this motion the Court must presume that Ms. Lenz has established a prima facie case that Universal made a knowing material misrepresentation under penalty of perjury.[14]  Even giving full weight to Universal's allegations,  Universal's own misconduct would, as a matter of law, far outweigh Ms. Lenz's alleged misconduct.[15]

**B.    Ms. Lenz has suffered damages.**

Universal claims that Ms. Lenz's motion should be denied because she has not introduced evidence "of her various categories of damages."  Opp. at 16:1.  To the contrary, Ms. Lenz submitted ample evidence that she has at least *some* damages:

1.    Ms. Lenz spent approximately five to ten hours before filing this lawsuit on tasks such as obtaining counsel and the counter notice process.  Miksch Decl., Exh. A (Lenz Depo.) at 313:13-25.

2.    Ms. Lenz has spent time working on this lawsuit, including at least twenty hours from July 24, 2007 through June 30, 2009.  *Id.* at 314:1-7.

3.    Ms. Lenz expended resources, including use of her computer, on her pre-lawsuit efforts.  *Id.* at 316:9-317:2.

---

[14] *Quintana v. Baca,* 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("a defense is an affirmative defense if it will defeat the plaintiff's claim even where the plaintiff has stated a prima facie case for recovery under the applicable law") (citing *Black's Law Dictionary* 451 (8th ed. 2004)); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 120 (2004) (affirmative defenses may be raised to "bar relief even if the prima facie case is sound").

[15] To avoid summary judgment on its affirmative defenses, Universal must proffer more than evidence of disputed facts—it must demonstrate that the disputed facts are *material.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson,* 477 U.S. at 247-48.

8

458718.02

4.   Ms. Lenz spent money during this litigation on a hard drive for purposes of backing up computer files. *Id.* at 317:21-319:13.

5.   Ms. Lenz's video was not available on YouTube for several weeks, which impinged her free speech. *Id.* at 320:8-321:3.

6.   Ms. Lenz's counsel spent time working with her on a counter notice in response to Universal's takedown notice. *See, e.g., id.* at 228:22-229:10 & Errata.[16]

7.   Ms. Lenz's counsel has spent time working on this lawsuit. *See, e.g.,* Kwun Decl., Exh. A (Lenz Depo.) at 13:22-14:2.[17]

Universal's affirmative defense asserts that Ms. Lenz has *no* damages. In order to defeat that defense, Ms. Lenz is not required today to prove the full extent of her damages, but only that she has been damaged at all. While the *amount* of time and resources spent on these various activities might be subject to further proof, the fact that *some* time and resources have been spent cannot be disputed.

There also is a *legal* dispute regarding what forms of harm are compensable under section 512(f).[18] This is precisely the question Ms. Lenz has raised by this motion.

### 1.   Section 512(f) damages are not limited to pecuniary harm.

#### a.   The plain language of the statute and the purpose behind it support a broad reading of section 512(f) damages.

Congress did not limit section 512(f) damages to "actual" damages, to "pecuniary" harm, or to "economic" losses. Instead, it chose the expansive term "any." 17 U.S.C. § 512(f); *United States v. Gonzales,* 520 U.S. 1, 5 (1997) (the plain meaning of "any" is expansive, meaning "one or some indiscriminately of whatever kind"). *See Lenz,* 572 F. Supp. 2d at 1154 (where

---

[16] The Errata appears at the end of Exhibit A.

[17] The deposition excerpts for this final category were not part Ms. Lenz's moving papers. However, the Court can take judicial notice of the fact that Ms. Lenz's attorneys have spent time working on this lawsuit. Ms. Lenz's attorneys have appeared before the Court for hearings in this case. The fact of that work is not subject to reasonable dispute because it is capable of accurate and ready determination by resort to a source (the Court) whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).

[18] While theoretically the Court can grant partial summary judgment on Universal's "no damages" defense simply by finding a single category of damages that is compensable and for which there is no reasonable dispute that there are *some* damages, Ms. Lenz respectfully requests that the Court address all of the categories of damages addressed in Ms. Lenz's moving papers. The Court has previously suggested that this is an issue that should be resolved. *See* Kwun Decl., Exh. B (Hearing Trans.) at 7:7-16:5.

9

458718.02

1   Congress's intent is clear from the plain language of the statute, that controls).

2         This is consistent with the design of section 512, and its goal of "carefully balanc[ing] the

3   First Amendment rights of users with the rights of a potentially injured copyright holder."

4   *Batzel,* 333 F.3d at 1031 n.19; *see also Perfect 10,* 488 F.3d at 1112 ("Accusations of alleged

5   infringement [in a DMCA takedown notice] have drastic consequences: A user could have

6   content removed, or may have his access terminated entirely. If the content infringes, justice has

7   been done. But if it does not, speech protected under the First Amendment could be removed.").

8   Part of Congress's remedial purposes in enacting section 512(f) was "to deter knowingly false

9   allegations to service providers in recognition that such misrepresentations are detrimental to . . .

10  Internet users." S. Rep. No. 105-190 (Klaus Decl., Exh. K) at 49.

11        Limiting section 512(f) to pecuniary losses would sharply limit its reach, and do damage

12  to Congress's stated intent of deterring false allegations that are detrimental to Internet users.

13  Under Universal's proposed reading of the statute, many users could suffer grievous harm to

14  their First Amendment rights, but have no remedy absent the ability to demonstrate a pecuniary

15  loss. If so, section 512(f) would offer little deterrence against false takedown notices in the

16  context of free services like YouTube (or free services that existed at the time the DMCA was

17  enacted, such as GeoCities[19]). Universal's interpretation would sacrifice the First Amendment

18  rights of many Internet users, and in those instances would render the protections of section

19  512(f) a dead letter. This cannot be what Congress intended.

20         **b.    The Court should not import a limitation from the common law tort
21              of fraudulent misrepresentation that is contrary to the plain language
                of section 512(f).**

22        Universal urges the Court to limit section 512(f) damages to economic harm, arguing by

23  analogy to the common law tort of fraudulent misrepresentation. Universal asserts this is

24  appropriate to do in interpreting section 512(f), because the Supreme Court did so in connection

25  with private securities fraud claims in *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336 (2005).

26  Universal is wrong.

27  _____

28  [19] *See* <http://en.wikipedia.org/wiki/GeoCities>.

REPLY ISO PLF'S MOT. FOR PARTIAL S. J. OR, IN THE ALT., FOR PARTIAL J. ON THE PLEADINGS
CASE NO. C 07-03783-JF

458718.02

1      First, the private securities fraud claim at issue in *Dura* was itself a judicially-implied

2  private right of action, *see id.* at 343, while section 512(f) is wholly a creature of statute.  Many

3  of the contours of the private right of action in securities fraud cases were initially developed not

4  through statute, but by the courts.  *See, e.g., Blue Chip Stamps v. Manor Drug Stores,* 421 U.S.

5  723, 737 (1975) ("When we deal with private actions under Rule 10b-5, we deal with a judicial

6  oak which has grown from little more than a legislative acorn.").  It was in light of the "common-

7  law roots of the securities fraud action" that the Supreme Court in *Dura* relied on the common

8  law tort of fraudulent misrepresentation.  544 US. at 344.[20]  The section 512(f) cause of action, in

9  contrast, is squarely based on a statute.

10      Second, notwithstanding the Court's discussion of common law, the limitation on the

11  types of damages in securities fraud actions is reflected in the statute itself.  15 U.S.C. § 78bb(a)

12  (recovery in a private damages action under the Securities Act of 1934 is limited to "actual"

13  damages); *Blue Chip Stamps,* 421 U.S. at 734-35 (concluding that section 78bb(a) offers support

14  for denying recovery for intangible injuries).  Here, section 512(f) does not limit damages to

15  "actual" damages (let alone "economic" damages), but allows for recovery of "any" damages.[21]

16      Third, section 512(f) differs substantially from the common law tort of fraudulent

17  misrepresentation.  To state a fraudulent misrepresentation claim (or a private securities fraud

18  claim), the plaintiff must allege that the defendant fraudulently misrepresented material facts *to*

19  *the plaintiff,* with resulting harm.  *Dura,* 544 U.S. at 343-44.  In contrast, section 512(f) allows

20  an Internet user to sue based on a false takedown notice sent to the user's service provider.  17

21  U.S.C. § 512(f).  Because the section 512(f) cause of action is materially different from the

22

---

23  [20] Moreover, the Court has not slavishly followed the common law even in securities fraud
    actions.  *Blue Chip Stamps,* 421 U.S. at 730-31, 744-45 (limiting securities fraud claims to sellers

24  and purchasers, notwithstanding that under the common law, a misrepresentation that leads to a
    failure to buy or sell is also actionable).

25  [21] Universal citation to *Lusa Lighting, Int'l, Inc. v. America Elex, Inc.,* No. 07-0674, 2008 WL
    4350741 (C.D. Cal. Sept. 22, 2008), illustrates why its common law argument proves too much.

26  Universal cites *Lusa* for the proposition that section 512(f) damages exclude not only nominal
    damages, but also "loss of profits."  Opp. at 22:19-22.  Under Universal's theory, it could send a

27  knowingly false DMCA takedown aimed at a rival record label's music on iTunes and would
    face no repercussions if all that its rival lost were profits from the sale of songs. This stretches

28  the "any damages" language of section 512(f) well beyond the breaking point.

11

458718.02

1    common law tort of fraudulent misrepresentation, the Court should not draw parallels between

2    the two.[22]

3         Section 512(f) is not limited to pecuniary damages.  Because Ms. Lenz was forced to

4    spend time and resources responding to Universal's takedown notice, and during the prosecution

5    of this case, she has incurred cognizable damages.

6    **2.    Section 512(f) damages include all damages that would not have resulted but
           for the false notice.**

7

8         Universal also relies on *Dura* in its attempt to impose a heightened causation requirement

9    for a section 512(f) claim.  As discussed above, *Dura* was a private securities fraud action, which

10   is an area of the law that has common law roots that section 512(f) lacks.  And as also discussed

11   above, the section 512(f) claim is not analogous to the common law tort of fraudulent

12   misrepresentation.  For both of these reasons, *Dura* is inapposite.

13        In addition, in *Dura,* the Court was construing the Private Securities Litigation Reform

14   Act, which expressly requires that the plaintiff prove that defendant's conduct "caused" the loss

15   at issue.  15 U.S.C. § 78u-4(b)(4).  Section 512(f), in contrast, uses the phrase "as a result of,"

16   which should be interpreted merely to require "but for" causation.  *See* WILLIAM PATRY, PATRY

17   ON COPYRIGHT, § 22:101 at 22-266 (2009); *Williams v. United States,* 503 U.S. 193, 203 (1992);

18   *Maryland Cas. Co. v. Regis Ins. Co.,* No. CIV.A. 96-CV-1790, 1997 WL 164268, at *4-*5 (E.D.

     Pa. April 9, 1997).

19   **3.    Pro bono fees and costs are recoverable to the same extent as any other fees
           and costs.**

20

21        Nowhere in its opposition does Universal address the authorities cited by Ms. Lenz in her

22   moving papers holding that (a) fees are "incurred" if there is a contingent obligation to pay fees

23   in the event of a fee recovery, *Morrison v. C.I.R.*, 565 F.3d 658, 666 (9th Cir. 2009);

24   (b) contingent and pro bono fees can be "incurred as a result of" improper removal, *Gotro v.*

25   *R&B Realty Group,* 69 F.3d 1485 (9th Cir. 1995); and (c) fees and costs can be "incurred" even

26

27   [22] Universal has previously gone out of its way to argue that section 512(f) claims are *not* fraud
     claims.  *See* Kwun Decl., Exh. D (Universal's Reply in Supp. of Mot. to Dismiss SAC) at 6-7 n.7
28   (arguing that Rule 9(b), which is applicable to fraud claims, does not apply to the SAC).

458718.02

1   if there is no personal liability to pay them, *In re Dawson,* 346 B.R. 503 (Bankr. N.D. Cal. 2006).

2   Universal also fails to address the numerous authorities cited by Ms. Lenz holding that pro bono

3   attorneys must be treated as equivalent to other attorneys for purposes of any fee award. *See,*

4   *e.g., Dennis v. Chang,* 611 F.2d 1302, 1306 n.12 (9th Cir. 1980).  Given these authorities and

5   Universal's failure to rebut them, the Court should conclude that Ms. Lenz's fees and costs are

6   recoverable notwithstanding that her attorneys are working for her pro bono.

7       **4.**    **Fees and costs for work on Ms. Lenz's counter notice are recoverable.**

8       Universal offers only two arguments against allowing the recovery of fees and costs for

9   work on Ms. Lenz's counter notice.  The first is that the work has been done pro bono.  That

10   argument is addressed above.  The second is that Universal believes there is a dispute of material

11   fact about whether those fees and costs are also litigation fees and costs.  This is immaterial.

12   Even under Universal's reading of section 512(f), damages incurred in restoring Ms. Lenz's

13   video must be recoverable.  Even assuming that those efforts had a dual purpose—to restore

14   Ms. Lenz's video, but also to prepare for this litigation—Universal must concede that at least *one*

15   purpose was "as a result of" its takedown notice.  Nothing in section 512(f) suggests that

16   damages are available only if they were incurred *solely* as a result of a false takedown notice.

17       **5.**    **Fees and costs for work on this litigation are recoverable.**

18       As discussed above, "but for" causation is all that is required by section 512(f).

19   Ms. Lenz's fees and costs in this action undeniably would not have been incurred but for

20   Universal's takedown notice.  Nothing in section 512(f) bars their recovery.

21       Section 505 does not support Universal's contrary view.  Section 505 is a general

22   attorneys' fees provision. *See* 17 U.S.C. § 505.  Section 512(f) includes a more specific fees

23   provision, which is applicable only to section 512(f) claims.  There is nothing unusual about this

24   practice. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384-385 (1992) ("[I]t is a

25   commonplace of statutory construction that the specific governs the general[.]"); *D. Ginsberg &*

26   *Sons, Inc. v. Popkin,* 285 U.S. 204, 208 (1932) ("General language of a statutory provision,

27   although broad enough to include it, will not be held to apply to a matter specifically dealt with

28   in another part of the same enactment.").

13

458718.02

1    Nor does *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), support Universal's view.

2  Universal correctly points out that the Court held that prevailing plaintiffs and prevailing

3  defendants receive the same treatment, *id.* at 534, but the Court was speaking about *section 505,*

4  not section 512(f).  The Court's conclusion directly followed from "[t]he statutory language" of

5  section 505, which "gives no hint that successful plaintiffs are to be treated differently than

6  successful defendants."  *Fogerty,* 510 U.S. at 522.  The statutory language of section 512(f) is

7  very different, and compels a very different conclusion.  Section 512(f) mandates recovery of

8  fees and costs by a prevailing plaintiff, not for prevailing defendants, and thus is materially

9  different from section 505.[23]

10  **C.    Universal's First, Fourth and Fifth Affirmative Defenses fail as a matter of law.**

11    Universal's argument in support of its First Affirmative Defense, for a failure to state a

12  claim, is frivolous.  That defense tests the legal sufficiency of the *pleading* (i.e. whether the

13  plaintiff has *stated* a claim), not of the proof in support of it.  *See* Fed. R. Civ. P. 12(b)(6); *United*

14  *States v. Fairchild Indus., Inc.,* 766 F. Supp. 405, 408-09 (D. Md. 1991) (defense of failure to

15  state a claim "relates only to the sufficiency of plaintiff's allegations"). The Court has already

16  held that the complaint states a claim.  *Lenz,* 572 F. Supp. 2d at 1156-57.

17    Universal's claim that Ms. Lenz's motion for summary judgment on its defenses of

18  waiver and estoppel is untimely is equally frivolous.  First, Ms. Lenz has not admitted, tacitly or

19  otherwise, that this is a motion for a more definite statement.  Second, a motion for a more

20  definite statement can only be made as to a "pleading to which a responsive pleading is

21  allowed."  Fed. R. Civ. P. 12(e).  No pleading is allowed in response to an answer, absent an

22  order requiring such a response.  *Id.* 7(a).  A motion pursuant to Rule 56 or, in the alternative,

23  Rule 12(c) is timely and appropriate.

24    On the merits, Universal's estoppel argument ignores the law.  Universal fails to proffer

25  any evidence that it reasonably relied to its detriment on any false statements by Ms. Lenz.

26

27  [23] Section 512(f) authorizes claims by those injured by false counter notices as well as those
injured by false takedown notices, 17 U.S.C. § 512(f), but in both cases, it is only the prevailing

28  plaintiff that is entitled to a mandatory recovery of fees and costs.

1   *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992).

2          Universal's attempt to save its waiver argument fares no better.  The *only* evidence it

3   cites in support of this defense is Ms. Lenz's statement that if YouTube didn't want to host her

4   video, that was YouTube's business.  Klaus Decl., Exh. C.  First, nothing in that statement refers

5   to (much less relinquishes) any claim against *Universal*.  Second, to the extent that Universal is

6   arguing that this is evidence that Ms. Lenz has not been *damaged,* that is not an issue of

7   *waiver.*[24]

8                              **III.   Conclusion**

9          For the foregoing reasons, the Court should grant Ms. Lenz's motion in full.

10  Dated:  November 24, 2009                    KEKER & VAN NEST LLP

11

12                                        By:  */s/Michael S. Kwun*_____
                                               ASHOK RAMANI
13                                             MICHAEL S. KWUN
                                               MELISSA J. MIKSCH
14
                                               ELECTRONIC FRONTIER FOUNDATION
15                                             FRED VON LOHMANN
                                               KURT OPSAHL
16                                             CORYNNE MCSHERRY

17                                             Attorneys for Plaintiff
                                               STEPHANIE LENZ
18

19

20

21

22

23

24  ———————————————
    [24] Universal's argument overreaches.  Under Universal's view, a parent who initially responds to
    a report of a car accident involving her child by saying something like, "I don't care about the
25  car, I'm just glad everyone's ok," is in danger of having waived a claim for damages arising out
    of the accident.  This is not the law.
26

27

28

                                              15
    REPLY ISO PLF'S MOT. FOR PARTIAL S. J. OR, IN THE ALT., FOR PARTIAL J. ON THE PLEADINGS
                                  CASE NO. C 07-03783-JF