1                IN THE UNITED STATES DISTRICT COURT

2             FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                       SAN JOSE DIVISION

4

     LENZ,                          )   CV-07-3783-JF
5                                   )
                        PLAINTIFF,  )   SAN JOSE, CALIFORNIA
6                                   )
                 VS.                )
7                                   )   DECEMBER 11, 2009
     UNIVERSAL MUSIC GROUP,         )
8    INC., ET AL,                   )
                                    )   PAGES 1-27
9                       DEFENDANT.  )
     ─────────────────────────────

10

11                   TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE JEREMY FOGEL
12                 UNITED STATES DISTRICT JUDGE

13

14    A P P E A R A N C E S:

15

16    FOR THE PLAINTIFF:  ELECTRONIC FRONTIER FOUNDATION
                          BY:  CORYNNE MCSHERRY
17                        454 SHOTWELL STREET
                          SAN FRANCISCO, CA  94110
18

19

20    FOR THE DEFENDANT:  MUNGER TOLLES & OLSON
                          BY:  KELLY KLAUS
21                        355 SOUTH GRAND AVE, 35TH FL
                          LOS ANGELES, CA  90071
22

23        (APPEARANCES CONTINUED ON THE NEXT PAGE)

24

25    OFFICIAL COURT REPORTER: SUMMER CLANTON, CSR, RPR
                               CERTIFICATE NUMBER 13185

                                                            1

1     FOR THE PLAINTIFF:   KEKER & VAN NEST, LLP
                            BY:  MICHAEL KWUN

2                           710 SANSOME STREET
                           SAN FRANCISCO, CA 94111

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | SAN JOSE, CALIFORNIA          DECEMBER 11, 2009 |
| 2 | P R O C E E D I N G S |
| 3 | (WHEREUPON, COURT CONVENED AND THE |
| 4 | FOLLOWING PROCEEDINGS WERE HELD:) |
| 5 | THE COURT:  LENZ VERSUS UNIVERSAL MUSIC. |
| 6 | MR. KLAUS:  GOOD MORNING, YOUR HONOR. |
| 7 | KELLY KLAUS FROM MUNGER TOLLES & OLSON FOR |
| 8 | UNIVERSAL. |
| 9 | MR. KWUN:  GOOD MORNING, YOUR HONOR. |
| 10 | MICHAEL KWUN, KECKER & VAN NEST, FOR PLAINTIFF |
| 11 | STEPHANIE LENZ. |
| 12 | MS. MCSHERRY:  CORYNNE MCSHERRY, |
| 13 | ELECTRONIC FRONTIER FOUNDATION, FOR STEPHANIE LENZ. |
| 14 | THE COURT:  GOOD MORNING. |
| 15 | I WAS TRYING TO REMEMBER THE LAST TIME I |
| 16 | HAD A MOTION FOR SUMMARY JUDGEMENT ON AFFIRMATIVE |
| 17 | DEFENSES, IT'S BEEN A LONG, LONG TIME.  AND USUALLY |
| 18 | IT HAPPENS IN PATENT CASES, AND USUALLY IT'S HAVING |
| 19 | TO DO WITH SOME TECHNICAL TYPE OF THING. |
| 20 | AND MY SENSE OF WHAT HAPPENED HERE IS |
| 21 | THAT WHEN UNIVERSAL ANSWERED THE COMPLAINT, THAT IT |
| 22 | SIMPLY SET FORTH THE TYPICAL DEFENSES THAT MOST |
| 23 | DEFENDANTS DO, AND THAT FOR THE MOST PART THESE ARE |
| 24 | THINGS THAT CAN BE RESOLVED AND SHOULD BE RESOLVED |
| 25 | IN THE FACT FINDING PROCESS. |

1          I THINK CERTAIN ASPECTS OF THE MOTION ARE

2     WELL TAKEN.  I THINK WHEN THE COURT DECIDED THE

3     12(B)(6) MOTION IT CONCLUDED THE CLAIM HAD BEEN

4     STATED.  SO I THINK THAT PARTICULAR DEFENSE IS MOOT

5     AT THIS POINT.  AND I ALSO THINK THAT WAIVER AND

6     ESTOPPEL ARE NOT IN PLAY IN THIS CASE ANYMORE BASED

7     ON WHAT'S IN THE RECORD.

8          THE ONE WHERE I THINK THERE ARE ISSUES

9     ARE THE ONES HAVING TO DO WITH BAD FAITH AND

10    UNCLEAN HANDS WHICH IN TURN GO TO THE QUESTION OF

11    WHETHER MS. LENZ SUFFERED ANY DAMAGES AND WHETHER

12    HER STATEMENTS THAT SHE DID WERE MADE IN GOOD FAITH

13    OR NOT.  I DON'T THINK THE COURT IS IN ANY POSITION

14    TO DECIDE THAT.

15         I THINK THE PLAINTIFFS CAN ARGUE WHAT HER

16    DAMAGES WERE AND DEFENDANTS ARE GOING TO SAY THOSE

17    DAMAGES AREN'T REAL.  AND THEN THE DEFENDANT HAS

18    THE ADDITIONAL RIGHT TO SAY THAT CLAIMS WERE NEVER

19    SUBSTANTIATED IN THE FIRST PLACE.  BUT THOSE THINGS

20    STRIKE ME AS BEING INHERENTLY FACTUAL.  AND I THINK

21    MY INCLINATION IS NOT TO GRANT SUMMARY JUDGEMENT IN

22    THAT DIRECTION ANY MORE THAN IT WOULD BE TO GRANT

23    THE OTHER WAY.

24         IT SEEMS TO ME PEOPLE'S STATE OF MIND IN

25    DOING THE THINGS THEY DID, WHICH IS VERY MUCH WHAT

4

1    THIS CASE IS GOING TO COME DOWN TO, I THINK, IS

2    SOMETHING FOR A TRIER OF FACT TO DETERMINE.

3              SO I'M PREPARED TO GRANT THIS IN PART,

4    ALTHOUGH NOT ENTIRELY.  SO LET ME GIVE MOVING PARTY

5    AN OPPORTUNITY TO BE HEARD

6              MR. KWUN:  YOUR HONOR, DID YOU HAVE

7    PRELIMINARY FEELINGS ON THE NO DAMAGES?

8              THE COURT:  WELL, I THINK THAT THE NO

9    DAMAGES ARGUMENT IS, THE DEFENDANTS HAVE ASSERTED

10   THERE AREN'T ANY REAL DAMAGES.  SO I'M NOT PREPARED

11   TO SAY THAT THEY DON'T GET TO SAY THAT.  IT'S AN

12   ELEMENT THAT YOUR CLIENT HAS TO PROVE.

13             SHE HAS SAID REPEATEDLY, IN FACT THE

14   COURT ASKED ON THE MOTION TO DISMISS, CAN SHE MOVE

15   SHE SUFFERED DAMAGES BECAUSE THAT'S ONE THE

16   ELEMENTS UNDER DMCA, AND THE REPRESENTATION WAS

17   THAT SHE COULD.  AND DEFENDANT IS SAYING THAT

18   ACTUALLY SHE CAN'T.  AND NOT ONLY CAN SHE NOT SHOW

19   DAMAGES, BUT THE CLAIM SHE COULD WAS IN BAD FAITH.

20             I HAVE NO IDEA WHETHER THAT'S TRUE OR

21   NOT.  IT STRIKES ME AS BEING A FACTUAL INQUIRY

22   GOING TO STATE OF MIND AND WOULD BE INAPPROPRIATE

23   FOR SUMMARY JUDGEMENT.

24             THE ONES HAVING TO DO WITH WHETHER THEY

25   ARE DAMAGES, WHETHER THE DAMAGES CLAIMS WERE

1    ASSERTED IN BAD FAITH, WHETHER SOMEHOW THE

2    PLAINTIFF ACTED IN BAD FAITH, I THINK THAT IS SORT

3    OF THE MIRROR IMAGE TO THE INQUIRY OF WHETHER

4    UNIVERSAL ACTED IN BAD FAITH, WHICH IS ONE OF THE

5    ELEMENTS MS. LENZ HAS TO PROVE.

6         SO IT SEEMS TO ME THAT PART IS FACTUAL.

7    THE OTHER TECHNICAL DEFENSES I AGREE WITH YOU AND

8    I'M PREPARED GET RID OF THEM NOW.

9         MR. KWUN:  SO YOUR HONOR, LET ME FOCUS ON

10   DAMAGES.

11        THE COURT:  YES, SIR, PLEASE.

12        MR. KWUN:  I THINK THAT THERE'S A NUMBER

13   OF ISSUES THAT THEY RAISE ABOUT WHETHER OR NOT SOME

14   THINGS ARE COGNIZABLE AS DAMAGES OR WHETHER THESE

15   THINGS ARE THINGS SHE'S GOING TO BE ABLE TO PROVE.

16        HOWEVER, I THINK THERE ARE SEVERAL

17   CATEGORIES WHERE, ASSUMING LIABILITY, OF COURSE THE

18   NO DAMAGES PORTION OF THE NO DAMAGES AFFIRMATIVE

19   DEFENSES AIMED AT THE GENERAL LIABILITY OTHER THAN

20   THE DAMAGES ASPECT.

21        ASSUMING THAT THEY MADE A

22   MISREPRESENTATION, THAT THEY KNEW IT WAS A

23   MISREPRESENTATION, ET CETERA, I JUST DON'T THINK

24   THE DAMAGES CAN BE CONTESTED.

25        AND FOR EXAMPLE, I DON'T THINK IT WOULD

1    BE CONTESTED THAT HER ATTORNEYS WHO HAD WORKED ON

2    THIS CASE WERE HERE BEFORE YOUR HONOR RIGHT NOW,

3    THERE'S -- I DON'T THINK IT'S POSSIBLE FOR THEM TO

4    DISPUTE THE FACT THAT WORK WAS DONE ON THE

5    COUNTER-NOTICE BY HER COUNSEL.

6         SO THERE'S -- REGARDLESS OF ANY OTHER

7    ARGUMENTS THEY MIGHT RAISE AND REGARDLESS OF

8    WHETHER A BAD FAITH DEFENSE MIGHT INTERPOSE SOME

9    OTHER ISSUES FOR THAT, I DON'T THINK THAT THEY CAN

10   CREDIBLY CLAIM -- I DON'T THINK THERE'S ANY

11   EVIDENCE THEY PUT FORTH THAT THAT WORK WASN'T DONE.

12        SO WHAT WE ARE LEFT WITH IS A LEGAL

13   QUESTION OF WHETHER OR NOT THESE TYPES OF DAMAGES

14   CAN BE CLAIMED AT ALL.

15        AND I DO THINK REGARDLESS OF WHAT THE

16   COURT FEELS ABOUT THE REST OF THE NO DAMAGES

17   AFFIRMATIVE DEFENSE, THAT IT WOULD MOVE THIS CASE

18   FORWARD CONSIDERABLY IF WE HAD GUIDANCE FROM THE

19   COURT ABOUT WHAT TYPE WAS DAMAGES ARE COGNIZABLE

20   UNDER SECTION 512(F).

21        THE COURT:  LET ME PUT A FINE POINT ON

22   THAT, IF I CAN.

23        SO THE CONSEQUENTIAL DAMAGES, IN THE

24   SENSE OF INCONVENIENCE OR ANYTHING LIKE THAT, THAT

25   TYPE OF THING IS NOT WHAT YOU ARE TALKING ABOUT.

1    WHAT YOU ARE TALKING ABOUT IS THE RIGHT TO FEES FOR

2    HAVING TO DEAL WITH THE TAKEDOWN NOTICE AND TO

3    PREPARE THE COUNTER TAKEDOWN NOTICE, AND I THINK

4    THINGS OF NATURE OR FOR DAMAGES FOR THE IMPINGEMENT

5    ON YOUR CLIENT'S FIRST AMENDMENT REQUIREMENTS,

6    THAT'S WHAT YOU NEED A LEGAL DETERMINATION ON?

7              MR. KWUN:  I WOULD ACTUALLY SAY THERE'S

8    FIVE THINGS.

9              THE COURT:  OKAY.

10             MR. KWUN:  OR YOU COULD CALL THEM THREE,

11   DEPENDING ON HOW YOU COUNT THEM.

12             ONE IS TIME THAT OUR CLIENT SPENT ON THE

13   COUNTER-NOTICE.

14             THE COURT:  HER PERSONAL TIME.

15             MR. KWUN:  HER TIME.  ONE IS TIME.  HER

16   APPEARANCES, PRO BONO ATTORNEYS, NOBODY IS CLAIMING

17   OTHERWISE.  TIME THAT HER PRO BONO ATTORNEYS SPENT

18   ON THE COUNTER-NOTICE PROCESS, SO THAT'S TWO.

19             THREE IS IMPINGEMENT OF HER FREE SPEECH

20   RIGHTS, THE FACT THAT HER VIDEO WAS DOWN FOR SIX

21   WEEKS.

22             THEN FOUR IS HER TIME SPENT ON THE

23   LAWSUIT ITSELF.

24             AND THEN FIVE, IS HER ATTORNEYS.  AND

25   AGAIN, PRO BONO, HER ATTORNEY'S TIME SPENT ON THE

1    LAWSUIT ITSELF.

2              AND I THINK THAT THERE'S -- YOU COULD

3    FRAME IT AS THREE, FIVE, AND YOU COULD COME UP WITH

4    DIFFERENT WAYS OF SAYING IT, BUT THERE'S A

5    DISAGREEMENT ON ALL OF THESE POINTS THAT I THINK IS

6    STRICTLY LEGAL AS TO WHETHER OR NOT THESE THINGS

7    FALL WITHIN THE PURVIEW OF SECTION 512(F) DAMAGES.

8              THE COURT:  I THOUGHT THERE WAS ALSO A

9    FACTUAL DISPUTE AS TO WHETHER THE DAMAGES HAD

10   ACTUALLY BEEN INCURRED.

11             EVEN ASSUMING THAT THE DMCA DOES PERMIT

12   DAMAGES IN THIS CATEGORY THAT THERE'S A DISPUTE AS

13   TO WHETHER THERE ACTUALLY WERE SUCH DAMAGES.

14   THAT'S WHAT I TOOK FROM DEFENDANT'S PAPERS,

15   ALTHOUGH I WILL LET COUNSEL SPEAK FOR HIMSELF, I

16   GOT THE SENSE IT WAS MORE A LEGAL DISPUTE.

17             MR. KWUN:  I DON'T THINK -- THERE ARE

18   ISSUES THAT HAVE BEEN RAISED BY THE DEFENDANTS IN

19   THEIR PAPERS ABOUT CERTAIN WAYS OF CHARACTERIZING

20   CERTAIN PORTIONS OF THOSE DAMAGES, BUT I DON'T

21   THINK THERE'S ANY DISPUTE FROM MR. KLAUS THAT OUR

22   CLIENT SPENT TIME ON THE HER COUNTER-NOTICE.

23             THE QUESTION OF WHETHER OR NOT SHE SHOULD

24   BE ENTITLED TO CLAIM THAT AS DAMAGES IS A SEPARATE

25   POINT.  THE QUESTION OF HOW MUCH SHE SHOULD BE ABLE

1    TO GET FOR THAT IS A SEPARATE POINT.

2              THE COURT:  SO THERE'S A LEGAL QUESTION

3    AS TO WHETHER A NON-LAWYER PARTY WHO HAS TO RESPOND

4    TO A TAKEDOWN NOTICE AND DO A COUNTER-NOTICE,

5    WHETHER THAT -- THE REASONABLE VALUE OF THAT

6    PARTY'S TIME CAN BE CLAIMED AS DAMAGES?

7              MR. KWUN:  YES.

8              THE COURT:  THAT'S A LEGAL QUESTION.

9              MR. KWUN:  YES.

10             THEN THERE'S A LEGAL QUESTION OF,

11   PARTICULARLY FOR THE ATTORNEY FEES, WHAT IT MEANS

12   FOR SOMETHING TO BE INCURRED, I THINK, IS THE WAY

13   THE DEFENDANTS HAVE PLACED IT.  SO WHETHER OR NOT

14   PRO BONO FEES ARE INCURRED.

15             AND THEN THERE'S ALSO A LEGAL QUESTION OF

16   WHETHER OR NOT CONDUCT BY THE PLAINTIFF, OR BY THE

17   PLAINTIFF'S ATTORNEYS DURING THE LAWSUIT, IS WITHIN

18   THE PURVIEW OF SECTION 512(F) DAMAGES --

19             THE COURT:  SO WHAT YOU ARE SAYING IS

20   NOTWITHSTANDING VARIOUS FACTUAL DISPUTES, IT WOULD

21   BE HELPFUL FOR THE PARTIES TO KNOW IF THE COURT

22   WOULD, ASSUMING THAT A JURY FOUND THAT THOSE

23   AMOUNTS HAD BEEN SPENT, WHETHER THEY WERE

24   RECOVERABLE OR NOT.

25             MR. KWUN:  YES, YOUR HONOR.

1          THIS WAS AN ISSUE WE RAISED WHEN WE WERE

2     LAST BEFORE YOUR HONOR AT THE CASE MANAGEMENT

3     CONFERENCE.

4          THE COURT:  I UNDERSTAND.  I JUST WANT TO

5     MAKE SURE THAT I'M NOT MISSING SOMETHING

6     SIGNIFICANT.  I GOT THE SENSE THERE WERE

7     FUNDAMENTAL FACTUAL DISPUTES.

8          LET ME GIVE COUNSEL A CHANCE TO BE HEARD.

9          MR. KLAUS:  THANK YOU VERY MUCH, YOUR

10    HONOR.

11         FIRST OF ALL MR. KWUN IS RIGHT, THE LAST

12    TIME WE WERE HERE THERE WAS AN ISSUE.  AND WHAT

13    WOULD HAVE BEEN HELPFUL AT THE TIME WAS, AND WHAT

14    YOUR HONOR INVITED THE MOTION ON AT THAT TIME WAS A

15    QUESTION AS TO WHETHER CERTAIN TYPES OF DAMAGES OR

16    CERTAIN TYPES OF AMOUNTS COUNTED AS DAMAGES

17    INCURRED UNDER THE STATUTE IN ORDER TO HELP RESOLVE

18    A DISCOVERY MOTION THAT AT THE TIME WAS PENDING

19    BEFORE JUDGE SEEBORG CONCERNING WE WANTED ALL

20    DOCUMENTS CONCERNING THE DAMAGES.

21         THE PLAINTIFF NEVER FILED THAT MOTION AT

22    THAT TIME AND JUDGE SEEBORG SAID, I'M NOT GOING TO

23    REQUIRE YOU TO -- I'M NOT GOING TO REQUIRE EFF TO

24    PRODUCE ALL OF THEIR TIME RECORDS AT THAT TIME.

25    AND SO THAT ISSUE IS OFF THE TABLE.  THERE IS NO

1    NEED FOR THAT ISSUE TO BE RESOLVED RIGHT NOW.

2              THE POSTURE OF THIS MOTION IS THEY ARE

3    MOVING FOR SUMMARY JUDGEMENT AND THEY HAVE AN

4    INITIAL BURDEN TO SHOW THAT THERE IS NO DISPUTE AS

5    TO FACT.

6              THERE CERTAINLY ARE LEGAL QUESTIONS UNDER

7    THE STATUTE AS TO WHAT COUNTS AS DAMAGES.  AND THE

8    QUESTION -- YOU'RE RIGHT, WE DO NOT DISPUTE THAT

9    MS. LENZ SPENT TIME PREPARING HER COUNTER-NOTICE.

10   THE PROBLEM IS THIS IS A MISREPRESENTATION STATUTE.

11   IT SAYS SO RIGHT ON THE VERY TITLE.  AND IT SAYS

12   THAT IT'S DAMAGES INCURRED BY THE -- ANY DAMAGES

13   INCLUDING ATTORNEY'S FEES AND LOSS INCURRED BY

14   REASON OF, AND THEN IT LISTS THE VARIOUS FACTORS

15   THAT IT HAS TO BE BY REASON OF.

16             AND THERE IS NO REASON TO READ THE

17   MISREPRESENTATION STATUTE ANY DIFFERENTLY THAN

18   MISREPRESENTATION DEFINED AS COMMON LAW.  WHICH THE

19   SUPREME COURT'S OPINION IN DURA MAKES CLEAR THERE

20   HAS TO BE ACTUAL ECONOMIC LOSS.

21             AND WHATEVER TIME MS. LENZ SPENT, THE

22   DEPOSITION TESTIMONY IS UNCONTROVERTED THAT SHE DID

23   NOT LOSE A PENNY.  THERE WAS NO LOST OPPORTUNITY.

24   THERE WERE NO LOST WAGES.  SHE DIDN'T PAY ANYTHING

25   IN RESPONDING TO THAT COUNTER-NOTICE.  SO THAT

1    ELEMENT IS OFF THE TABLE.

2              THEY THEN SAY, WELL, WHAT ABOUT THE TIME

3    THAT PRO BONO COUNSEL SPENT HELPING MS. LENZ TO

4    PREPARE THE NOTICE?  AND ON THAT ONE I WANT TO

5    POINT YOUR HONOR TO EVEN BEFORE WE GET TO THE

6    QUESTIONS AS TO WHETHER PRO BONO AMOUNTS THAT

7    SOMEBODY ISN'T CHARGED FOR AND THEY DON'T PAY

8    ANYTHING, COUNTS AS ECONOMIC LOSS.

9              THE TESTIMONY ON THIS POINT IS PAGE 229

10   OF MS. LENZ'S DEPOSITION.  I SHOWED HER THE NOTICE.

11   I SAID, DID YOUR LAWYERS HELP YOU DRAFT THIS?  AND

12   THE ANSWER WAS, NO.  THAT'S THE TESTIMONY THAT'S IN

13   THE RECORD.

14             NOW, AFTER THE DEPOSITION MS. LENZ'S

15   LAWYERS HELPED HER PREPARE AN ERRATA SHEET AND THE

16   ERRATA SHEET THEY ATTACHED AND SUBMITTED AND STATED

17   IN THEIR PAPERS TRIES TO CHANGE THAT TESTIMONY.

18   THAT CREATES A FACTUAL ISSUE THAT CREATES A

19   CREDIBILITY ISSUE THAT THE FINDER OF FACT, WHETHER

20   IT'S THE JURY OR YOUR HONOR, IN EVALUATING THE

21   EQUITABLE DEFENSE, SHOULD WE GET TO THAT STAGE, IS

22   ENTITLED TO ASSESS HER DEMEANOR AND TO MAKE A

23   DETERMINATION BASED ON WATCHING HER DEMEANOR AND

24   SEEING HER CONFRONTED WITH THAT INFORMATION.

25             THE NEXT CATEGORY THEY SAY IS, WELL, WHAT

1    ABOUT THE PRO BONO FEES THAT WE'VE ACCUMULATED FROM

2    TWO YEARS LITIGATING THIS CASE?  AND THE PROBLEM,

3    AGAIN, THAT THEY RUN INTO IS DURA.  AND THE CASES

4    THAT ARE CITED THERE WHICH MAKE IT CLEAR THAT YOU

5    DO NOT SATISFY THE ELEMENT OF DAMAGES FOR A

6    MISREPRESENTATION CLAIM BY FILING THE CLAIM.  IT

7    WOULD BE A CLASSIC BOOTSTRAP --

8         THE COURT:  WELL, IF HE'S SHIFTING

9    WITHOUT EXPLICITLY DOING THAT.

10         IN OTHER WORDS, YOU ARE ENTITLED TO WHAT

11   IT TAKES TO DEFEND AGAINST THE MISREPRESENTATION,

12   ARGUABLY, BUT THEN NOT TO PURSUE AFFIRMATIVE ACTION

13   AGAINST THE MISREPRESENTER.

14         MR. KLAUS:  THE AFFIRMATIVE ACTION

15   AGAINST THE MISREPRESENTER REQUIRES THERE BE SOME

16   PRE-EXISTING ECONOMIC --

17         THE COURT:  ECONOMIC LOSS.

18         MR. KLAUS:  -- PRE-EXISTING ACTUAL

19   ECONOMIC LOSS.  AND SO I THINK THAT'S WHERE WE DO

20   HAVE --

21         THE COURT:  TO GET BACK TO WHERE I'M

22   STRUGGLING HERE.  IS THIS ULTIMATELY SOMETHING I

23   HAVE TO DECIDE AS A QUESTION OF LAW?  IF I DECIDE

24   THE LAW AS YOU SAY IT IS, I DENY THE MOTION BUT I

25   DO IT ON LEGAL GROUNDS, OR IS IT A FAILURE OF

1    PROOF?

2            MR. KLAUS:  I THINK IT DOES DEPEND

3    CATEGORY BY CATEGORY.  I DON'T THINK THERE'S ANY

4    EFFICIENCIES TO BE GAINED NOW BY DOING IT,

5    YOUR HONOR.

6            WE WILL, AT THE CLOSE OF EVIDENCE, FILE A

7    MOTION FOR SUMMARY JUDGEMENT.  THIS WILL BE ONE OF

8    OUR GROUNDS FOR SUMMARY JUDGEMENT IS THAT THERE ARE

9    NO DAMAGES IN THE CASE.

10           THE COURT:  SO WHAT IS THE DISADVANTAGE,

11   ASSUMING THAT THERE ARE SOME THINGS THE COURT CAN

12   DECIDE NOW, OF MAKING THOSE CALLS IS OF COURSE YOU

13   CAN BRING A JWOL MOTION AFTER TRIAL.  BUT WHAT

14   WOULD BE THE HARM, ASSUMING THE COURT WOULD SAY

15   THIS TYPE OF DAMAGE IS RECOVERABLE UNDER 512, THAT

16   HELPS THE PARTIES PREPARE FOR TRIAL AND MAKES THE

17   TRIAL MORE EFFICIENT?

18           MR. KLAUS:  IT MAY HELP TO DO THAT.  THIS

19   IS A SUMMARY JUDGEMENT MOTION, YOUR HONOR, SO THERE

20   IS THE QUESTION OF WHETHER THEY HAVE SATISFIED

21   THEIR BURDEN.

22           THE COURT:  THAT'S WHAT I WAS TRYING TO

23   TEASE OUT IS WHERE THERE'S A FAILURE OF PROOF AND

24   WHERE YOU ARE SAYING THEY ARE WRONG IN THE LAW.

25           MR. KLAUS:  IF YOUR HONOR WOULD LIKE TO

1    DO THAT, WE CAN GO THROUGH.  I THINK I'VE DONE THAT

2    WITH RESPECT TO SOME OF THEM, CATEGORY BY CATEGORY,

3    AND SAY WHY WE THINK THERE'S A LEGAL QUESTION OR

4    WHY WE THINK THERE'S A FACTUAL QUESTION.

5            THE COURT:  I'M HAPPY TO SORT IT OUT, IT

6    WILL TAKE A WHILE, BUT I'M HAPPY TO DO THAT.

7            MR. KWUN:  YOUR HONOR, I WANT TO SPEAK TO

8    DURA.

9            SO I THINK THE DURA IN THE COMMON LAW OF

10   FRAUDULENT MISREPRESENTATION, I THINK THE COMMON

11   LAW FRAUDULENT MISREPRESENTATION ELEMENTS ARE

12   DIFFERENT ENOUGH HERE THAT IT MAKES LITTLE SENSE TO

13   RELY ON THE COMMON LAW.

14           AND IN PARTICULAR, A CLASSIC FRAUDULENT

15   MISREPRESENTATION CASE IS BETWEEN TWO PARTIES WHERE

16   THE DEFENDANT HAS MADE A MISREPRESENTATION OF THE

17   PLAINTIFF THAT THE PLAINTIFF HAS RELIED UPON HERE.

18           CONGRESS, WITH THE SAFE HARBOR OF THE

19   ADDITIONAL MILLENNIUM COPYRIGHT ACT, CREATED WHAT I

20   WILL CALL A TRI-PART SYSTEM.  REALLY, IT TAKES INTO

21   ACCOUNT THE RIGHTS AND OBLIGATIONS OF THE COPYRIGHT

22   OWNER, OF THE SERVICE PROVIDER, AND OF THE INTERNET

23   USER.

24           AND THE REPRESENTATIONS THAT ARE MADE IN

25   THIS SITUATION ARE REPRESENTATIONS FROM THE

16

1   COPYRIGHT OWNER TO THE SERVICE PROVIDER WHO RELIES

2   UPON THESE THINGS.

3          AND I THINK IT'S A VERY DIFFERENT

4   SITUATION, AND CONGRESS ACTUALLY TRIED TO BALANCE

5   THOSE THINGS IN A STATUTORY MANNER.  THEY SET

6   FORTH --

7          THE COURT:  THEY DIDN'T EVER TELL US WHAT

8   DAMAGES WERE RECOVERABLE, THOUGH.  THERE ARE ALL

9   SORTS OF QUESTIONS UNDER THIS STATUTE, AS WE ALL

10  KNOW, INCLUDING THE STATE OF MIND ISSUE THAT WE

11  HAVE, ROSSI AND THE NINTH CIRCUIT, SO WE'RE BOUND

12  BY THAT; BUT THAT'S NOT CLEAR.  AND THE KINDS OF

13  DAMAGES THAT ARE RECOVERABLE, THAT'S NOT CLEAR,

14  THAT'S WHY WE ARE HAVING THIS ARGUMENT THIS

15  MORNING.  CONGRESS DIDN'T SAY ANYTHING ABOUT THAT.

16         SO THE COURT HAS TO TRY TO DEFINE WHAT

17  CONGRESS WAS TALKING ABOUT.

18         MR. KWUN:  YES, YOUR HONOR.

19         I THINK WHAT YOU NEED TO LOOK AT ARE,

20  FIRST OF ALL, WHAT WAS THE PURPOSE CONGRESS HAD IN

21  MIND WHEN THEY ENACTED THE STATUTE BY HAVING THESE

22  THREE PARTIES?

23         AND I THINK, REALLY, WHAT THEY WERE

24  TRYING TO DO WAS TO GIVE SOME RIGHTS TO EACH OF

25  THESE PARTIES AS WELL AS A REMEDY FOR THINGS THAT

17

1    GO WRONG.

2              SO THE COPYRIGHT OWNER HAS THE ABILITY TO

3    GET WHAT AMOUNTS TO AN EXTRA JUDICIAL INJUNCTION.

4    THEY HAVE A VERY QUICK REMEDY, THEY DON'T HAVE TO

5    GO INTO COURT, THEY DON'T HAVE TO PROVE UP THEIR

6    INFRINGEMENT CLAIM, THEY SEND IN A NOTICE.

7              THE SERVICE PROVIDER HAS THE ABILITY TO

8    TAKE ADVANTAGE OF THE SAFE HARBORS.  SO YOU CAN SEE

9    EXACTLY HOW IT'S GOING TO LINE UP IN TERMS OF WHAT

10   IS THE LIKELY OUTCOME FOR THOSE TWO PARTIES.

11             THE SERVICE PROVIDER IS GOING TO WANT TO

12   TAKE ADVANTAGE OF THAT SAFE HARBOR, AND IT'S GOING

13   TO BE VERY LIKELY TO TAKE MATERIAL DOWN IN RESPONSE

14   TO A TAKEDOWN NOTICE.

15             THE ADVANTAGE THAT THE INTERNET USER

16   GETS, THE ONE WHOSE SPEECH COMES DOWN REGARDLESS OF

17   WHETHER THAT WAS A PROPER NOTICE OR NOT, THEY GET

18   512(F).  AND THEY GET THE ABILITY TO GO BACK AND

19   SEEK A REMEDY FOR FALSE TAKEDOWN NOTICES.

20             AND CONGRESS, IN THE SENATE REPORT,

21   CONGRESS SAID THE PURPOSE OF 512(F) WAS TO DETER

22   KNOWINGLY FALSE MISREPRESENTATIONS TO SERVICE

23   PROVIDERS IN RECOGNITION THAT SUCH REPRESENTATIONS

24   ARE DETRIMENTAL TO INTERNET USERS.

25             AND EVEN AT THE TIME OF THE DMCA CONGRESS

1    KNEW THAT MANY OF THESE SERVICES ON THE INTERNET

2    WERE FREE SERVICES.  AND THE TYPES OF HARM THAT ARE

3    GOING TO BE SUFFERED BY A LOT OF INTERNET USERS

4    SIMPLY ARE NOT GOING TO BE ADDRESSED AT ALL UNLESS

5    THEY HAVE SOME REMEDY BEYOND ECONOMIC HARM THAT

6    OCCURRED PRIOR TO THE LAWSUIT.

7            SO IF WE ARE GOING TO GIVE MEANING TO

8    CONGRESS'S STATED REMEDIAL PURPOSE OF DETERRING

9    KNOWINGLY FALSE MISREPRESENTATIONS WE NEED TO DO

10   SOMETHING MORE THAN WHAT UNIVERSAL WOULD HAVE YOU

11   BELIEVE.

12           AND I ALSO THINK THEN, AND OF COURSE IT'S

13   JUST THE PLAIN LANGUAGE OF THE STATUTE.  AND THE

14   PLAIN LANGUAGE OF THE STATUTE IS NOT ECONOMIC HARM,

15   IT'S NOT PECUNIARY LOSSES, IT'S NOT ACTUAL DAMAGES,

16   IT'S ANY DAMAGES.

17           I THINK THE FACT THEY CHOSE THAT IS,

18   ITSELF, SOME INDICATION OF WHAT THEY MEANT.

19           THE COURT:  IT SOUNDS LIKE I'M GOING TO

20   HAVE TO DO SOMETHING OF A MIXED APPROACH HERE.

21   THERE ARE FACTUAL QUESTIONS AND SOME LEGAL CALLS AS

22   WELL.

23           MR. KLAUS:  MAY I RESPOND BRIEFLY TO THE

24   POINT THAT MR. KWUN JUST MADE?

25           MR. KWUN JUST SAID THE REMEDY FOR THE

1    PERSON'S MATERIAL IN RESPONSE TO A TAKEDOWN NOTICE

2    IS 512(F), THEREFORE WE SHOULD INFER FROM THAT THAT

3    IS WHAT CONGRESS INTENDED WAS THE DOOR IS OPEN TO

4    MAKE SURE THAT SOMETHING COUNTS AS DAMAGES THERE.

5            HE'S LEFT OUT A STEP, WHICH IS CONGRESS

6    ALSO SAID THAT THERE WAS ANOTHER REMEDY WHICH IS

7    THE COUNTER-NOTICE PROCEDURE WHICH IS EXACTLY WHAT

8    HAPPENED IN THIS CASE.

9            THE MATERIAL WAS DOWN FOR A FEW WEEKS AND

10   IT WAS PUT BACK UP WITH NO ECONOMIC LOSS OF ANY

11   KIND TO THE PLAINTIFF.

12           AND WHEN MR. KWUN SAYS THE PURPOSE OF

13   SECTION 512(F) IS TO DETER KNOWINGLY FALSE TAKEDOWN

14   NOTICES, BUT IN THIS INSTANCE, THE ENTIRE COURSE OF

15   THE SCHEME, THE PURPOSE OF THE ENTIRE TAKEDOWN

16   NOTICE PROCEDURE IS TO MAKE SURE THERE'S AN ORDERLY

17   WAY FOR NOTICING TO BE SENT, AND IF THERE ARE

18   MISTAKES THAT ARE MADE, FOR COUNTER-NOTICES TO BE

19   SENT BACK IN.

20           IT'S ALSO PART OF THE HOUSE REPORT ON

21   PAGE 45.  THEY ARE REFERRING TO THE FACT THAT WHAT

22   WE ARE TRYING TO DO IS TO FORMALLY CODIFY INTO LAW

23   SOMETHING THAT JUDGE WHYTE, I THINK, HIMSELF IN ONE

24   OF THE EARLIER CASES, THE NETCOM CASE --

25           THE COURT:  YEAH.

20

1          MR. KLAUS:  -- HAD SAID WAS A SENSIBLE

2    WAY TO PROCEED IN THIS AREA.

3          THE QUESTION THEN BECOMES, IN THE CASE OF

4    DAMAGES THAT'S AN ELEMENT BECAUSE DOES THE

5    PLAINTIFF ACTUALLY SUFFER SOME ACTUAL ECONOMIC

6    LOSS?

7          ONE CAN IMAGINE THE CASES, THE

8    HYPOTHETICAL ABOUT SOMEONE IN THE MIDDLE OF A

9    PRIMARY CAMPAIGN WHOSE MATERIAL WAS TAKEN DOWN AND

10   WHO ACTUALLY HAS TO RUN INTO COURT AND OBJECT, SUE

11   THE PERSON WHO SENT THE TAKEDOWN NOTICE.

12         BUT TO SAY YOUTUBE OR SOMEBODY ELSE, I

13   WANT THAT MATERIAL PUT BACK UP BECAUSE THE ELECTION

14   IS IN A DAY OR DAY AND A HALF.  IF THAT PERSON IS

15   PAYING ACTUAL ATTORNEYS FEES AND ACTUAL COSTS FOR

16   THAT LITIGATION, THAT MAY COUNT AS ACTUAL DAMAGES

17   UNDER SECTION 512(F).

18         SO THAT'S MY RESPONSE TO MR. KWUN'S

19   ARGUMENT THAT THERE HAS TO BE A DAMAGES REMEDY HERE

20   BECAUSE OTHERWISE CONGRESS WOULD HAVE LEFT A

21   TOOTHLESS STATUTE.

22         THE OTHER THING I WANT TO POINT OUT,

23   YOUR HONOR, WITH RESPECT TO THE PRE-LAWSUIT WORK BY

24   EFF, AGAIN, I POINTED OUT THAT THE TESTIMONY THAT'S

25   IN THE RECORD IS THAT THE LAWYERS DID NOT HELP HER

1      DRAFT IT.  THAT'S WHAT SHE SAID.  THAT'S HER

2      DEPOSITION TESTIMONY, AND THEY MAY TRY TO

3      CONTRADICT IT.

4              THERE'S ANOTHER ELEMENT AS WELL, THOUGH,

5      WHICH IS THAT THE QUESTION OF PRO BONO FEES AS TO

6      WHETHER OR NOT THEY ARE RECOVERABLE BEING INCURRED

7      BY THE STATUTE.

8              STATUTE BY STATUTE INQUIRY OF

9      JUDGE BERZON'S OPINION IN THE RECENT MORRISON

10     AGAINST COMMISSIONER OF INTERNAL REVENUE CASE FROM

11     EARLIER THIS YEAR MAKES CLEAR IT'S AN ANALYSIS OF

12     THE STATUTE, IT'S AN ANALYSIS OF THE PURPOSES OF

13     THE STATUTE.  AND ONE OF THE CRITICAL ELEMENTS THAT

14     SHE IDENTIFIED IN THAT OPINION IS THAT IF THERE IS

15     A CONTINGENT OBLIGATION TO PAY, THAT MAY COME UP

16     FOR WHAT CONSTITUTES BEING INCURRED.

17             THE EVIDENCE IN THIS RECORD SHOWS THE

18     CONTINGENT OBLIGATION TO PAY MS. LENZ'S CONTINGENT

19     PRO BONO OBLIGATION TO PAY EFF AND KECKER FOR FEES

20     IN THIS CASE, ACCORDING TO THE AGREEMENT SHE

21     EXECUTED WITH EFF, IS FROM THE LITIGATION.

22             THERE'S NOTHING CONTINGENT ABOUT IN THE

23     EVENT THAT THE MATERIAL IS PUT BACK UP BECAUSE OF A

24     COUNTER-NOTICE, YOU THEN HAVE A CONTINGENT

25     OBLIGATION FOR US TO REPAY YOU.

1              SECOND THING IS THERE'S ALSO A FACTUAL,

2     THERE'S ANOTHER FACTUAL ISSUE WITH RESPECT TO THE

3     PRE-LAWSUIT WORK WHICH IS DOCUMENTS THAT WERE

4     PRODUCED TO US AFTER MS. LENZ WAS DEPOSED AND JUST

5     PRIOR TO THE TIME WE HAD TO FILE THIS OPPOSITION

6     THAT WE HAD NEVER SEEN BEFORE, DOCUMENTS FROM BACK

7     IN 2007, AND THESE ARE EXHIBITS W AND X TO MY

8     DECLARATION AND OPPOSITION TO THE SUMMARY JUDGEMENT

9     MOTION, SHOW THAT THE RESTORING OF THE VIDEO, EVEN

10    ASSUMING THERE WAS WORK EFF DID WHICH WAS NOT

11    SUPPORTED FACTUALLY ON THE RECORD BY THIS, THE

12    SUMMARY JUDGEMENT, BUT EVEN ASSUMING THERE WAS,

13    THAT THAT WAS ENTIRELY RELATED TO THE LITIGATION

14    BECAUSE SHE SAYS IN EXHIBIT W -- SHE SAYS, I'M NOT

15    SUPPOSED TO BLOG.  EFF HAS TOLD ME I CAN BLOG

16    DISCREETLY ABOUT THIS, BUT WHAT I'M GOING TO DO IS

17    ON MONDAY -- AND THE DATE OF THIS IS JUNE 21ST --

18    SHE SAYS, I'M GOING TO POINT TO IT ON MY SITE THEN

19    WE WILL WATCH THE COUNTER GO DING, DING, DING,

20    DING.  IT TURNS OUT YOUTUBE DID NOT RESTORE THE

21    VIDEO UNTIL JULY 20TH.

22             WHAT THE NEXT DOCUMENT IS, EXHIBIT X

23    JULY 18TH SHOWS IS THEY HELD SHE -- THEY HELD THE

24    LAWSUIT IN ORDER FOR THE VIDEO TO BE REPOSTED,

25    BECAUSE WITH PARTUM AND PARCEL AN ENTIRE LITIGATION

1    OF PUBLICITY AND PAIN WHICH THE DOCUMENTS ALSO

2    SHOW.

3             I THINK THAT'S ANOTHER FACTUAL ISSUE THAT

4    PRECLUDES SUMMARY JUDGEMENT ON THAT POINT.

5             THE COURT:  ALL RIGHT.  I THINK I HAVE

6    SOME WORK TO DO.

7             AND WE WILL GET IT OUT TO YOU SOON

8    BECAUSE I KNOW WE HAVE A TRIAL DATE NOT TOO FAR

9    AWAY.

10            MR. KWUN:  YOUR HONOR, I WANT TO POINT

11   YOU TO THREE CASES, ONE OF THEM WAS ALREADY

12   MENTIONED, THE MORRISON CASE.

13            IF IT IS ON A STATUTE BY STATUTE BASIS,

14   YOU CAN LOOK AT THE GOTRO CASE WHERE THE CONCLUSION

15   WAS THAT IN -- REMOVAL INCURRED DOES NOT REQUIRE --

16   IS NOT A LIMITING TERM AND THAT, INDEED, IF

17   CONGRESS MEANT IT TO BE A LIMITING TERM YOU WOULD

18   EXPECT THE STATUTE TO BE CLEARER THAN THAT.

19            THE COURT:  I WILL SAY IT AGAIN, I DON'T

20   THINK CONGRESS THOUGHT ABOUT ALL THESE

21   PERMUTATIONS, SO WE HAVE TO SORT OF FIGURE OUT WHAT

22   THEIR LARGER INTENT WAS.

23            MR. KWUN:  THE FINAL CASE IS

24   IN RE DAWSON.  I THINK THAT'S A PARTICULARLY USEFUL

25   ONE TO LOOK AT.  THAT WAS A BANKRUPTCY STAY CASE.

1    ALL OF THE FEES THAT WERE INCURRED, OR AT ISSUE,

2    WERE ALL INCURRED AFTER THE VIOLATION OF THE

3    AUTOMATIC STAY HAD BEEN CURED.  SO IT'S FACTUALLY

4    VERY SIMILAR TO THIS CASE.

5            THE COURT:  I WILL GIVE THIS ALL SOME

6    THOUGHT, AND I WILL TRY TO GET AN ORDER OUT TO YOU

7    EARLY IN JANUARY SO YOU WILL HAVE TIME TO PLAN

8    ACCORDINGLY.

9            MR. KLAUS:  YOUR HONOR, ONE IS YOU SAID

10   YOU WERE GOING TO GRANT THE MOTION TO DISMISS THE

11   AFFIRMATIVE DEFENSE FOR FAILURE TO STAY THE CLAIM.

12   I JUST WANTED TO BE CLEAR, THAT'S WITHOUT PREJUDICE

13   TO OUR POSITION THAT THE COMPLAINT DOESN'T STATE A

14   CLAIM AND --

15           THE COURT:  OH, OF COURSE.  THAT'S WHAT

16   YOU WANTED INTERLOCUTORY APPEAL ON.  I THINK YOU'VE

17   MADE THE RECORD NUMEROUS TIMES.

18           THANK YOU.

19           MR. KLAUS:  THANK YOU.

20           WE ALSO HAD A CASE MANAGEMENT SCHEDULE IN

21   THIS CASE THAT WE HAD ADJOURNED BECAUSE OF THE --

22   PENDING DISCOVERY THAT WE HAD.

23           THE COURT:  OKAY.

24           MR. KLAUS:  WE HAD TOLD YOUR HONOR IN ONE

25   OF OUR LAST CMC STATEMENTS THAT WE WOULD PROPOSE A

1    SCHEDULE THAT WAS, I THINK, A TRIAL THAT WAS

2    SCHEDULED TO START IN MARCH.

3              THE COURT:  MARCH 19TH IS WHAT I'VE GOT.

4              MR. KLAUS:  THAT DATE -- I THINK IT'S

5    CLEAR WE ARE NOT READY TO GO ON MARCH 19TH.

6              BUT PLAINTIFF'S COUNSEL AND I HAVE TALKED

7    EARLIER IN THE WEEK AND WE ARE GOING TO AGREE TO

8    THAT ROUGHLY COMPARABLE CASE MANAGEMENT SCHEDULE

9    AND SUBMIT IT.

10             WOULD IT BE FINE TO JUST SUBMIT IT --

11             THE COURT:  I WOULD BE HAPPY TO DO IT BY

12   STIPULATION, THAT'S FINE, SUBJECT TO MY

13   AVAILABILITY, OBVIOUSLY.  BUT YOU WORK OUT WHAT

14   WORKS FOR YOU.  IT'S NOT GOING TO BE A LONG TRIAL,

15   SO WE WILL MAKE IT WORK.

16             MR. KWUN:  THANK YOU, YOUR HONOR.

17             MR. KLAUS:  THANK YOU, YOUR HONOR.

18             THE COURT:  THANK YOU VERY MUCH.  WE WILL

19   BE IN RECESS UNTIL 10:30.

20             (WHEREUPON A RECESS WAS TAKEN.)

21             (WHEREUPON, THE PROCEEDINGS IN THIS

22   MATTER WERE CONCLUDED.)

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13              THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22                    _____
                      SUMMER A. CLANTON, CSR, CRR
23                    CERTIFICATE NUMBER 13185

24

25