1   ELECTRONIC FRONTIER FOUNDATION
    FRED VON LOHMANN - #192657
2   KURT OPSAHL – 191303
    CORYNNE MCSHERRY - #221504
3   454 Shotwell Street
    San Francisco, CA  94110
4   Telephone:    (415) 436-9333
    Facsimile:     (415) 436-9993
5   Email: fred@eff.org;  kurt@eff.org
            corynne@eff.org
6
    KEKER & VAN NEST LLP
7   ASHOK RAMANI - #200020
    MICHAEL S. KWUN - #198945
8   MELISSA J. MIKSCH - #249805
    710 Sansome Street
9   San Francisco, CA  94111-1704
    Telephone:    (415) 391-5400
10  Facsimile:     (415) 397-7188
    Email: aramani@kvn.com;  mkwun@kvn.com
11          mmiksch@kvn.com

12  Attorneys for Plaintiff
    STEPHANIE LENZ
13

14                   UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                        SAN JOSE DIVISION

17

18  STEPHANIE LENZ,                        Case No. C-07-03783-JF

19                        Plaintiff,       **PLAINTIFF'S MOTION TO DETERMINE
                                           SUFFICIENCY OF RESPONSES TO
20        v.                               REQUESTS FOR ADMISSIONS**

21  UNIVERSAL MUSIC CORP., UNIVERSAL       Date:       March 30, 2010
    MUSIC PUBLISHING, INC. and             Time:       10:00 a.m.
22  UNIVERSAL MUSIC PUBLISHING             Dept.:      5
    GROUP,                                 Judge:      The Hon. Patricia V. Trumbull
23
                          Defendants.      Date Comp. Filed:    July 24, 2007
24
25                                         [MOT. TO COMPEL ANSWER TO
                                           INTERROGATORY; SUPPORTING DECL. OF
26                                         MICHAEL S. KWUN; PROPOSED ORDERS; AND
                                           APPLICATION TO SEAL FILED HEREWITH]
27
                                           **PUBLIC REDACTED VERSION**
28

PLAINTIFF'S MOT. TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION
CASE NO. C-07-03783-JF

**NOTICE OF MOTION AND STATEMENT OF RELIEF SOUGHT**

PLEASE TAKE NOTICE, that on March 30, 2010, at 10:00 a.m., or at such other time as the Court may direct, before the Honorable Patricia V. Trumbull, United States District Court, 280 South First Street, San Jose, California, 95113, Plaintiff Stephanie Lenz ("Ms. Lenz") will, and hereby does, move the Court for an Order deeming responses by Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (hereinafter "Universal") to her Requests for Admission Nos. 1-4, 6-7, 16-17, 26, 29, 32-33, 35-36, 38-43, and 54-55 to be admissions.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declaration of Michael S. Kwun in Support of Ms. Lenz's Discovery Motions (filed herewith), the Proposed Order (filed herewith), and such other and further papers, evidence and argument as may be submitted to the Court at or before the hearing on this motion.


Dated:  February 9, 2010                            KEKER & VAN NEST LLP



                                                    By:   _/s/Michael S. Kwun_____
                                                          MICHAEL S. KWUN
                                                          Attorneys for Plaintiff
                                                          STEPHANIE LENZ

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ................................................................................................1

4   II.     BACKGROUND ................................................................................................2

5   III.    ARGUMENT ......................................................................................................2

6          A.      Universal's "Legal Theory" Objections Are Improper............................2

7          B.      Universal's Responses to Ms. Lenz's First Set of RFAs Are
                   Insufficient and the Facts Identified in Ms. Lenz's Requests Should Be

8                  Deemed Admitted ................................................................................3

9   IV.     CONCLUSION....................................................................................................14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

468189.01

# TABLE OF AUTHORITIES

<u>Page</u>

## Federal Cases

*Asea, Inc. v. S. Pac. Transp. Co.*
   669 F.2d 1242 (9th Cir. 1982) ...................................................................................9

*Booth Oil Site Admin. Group v. Safety-Kleen Corp.*
   194 F.R.D. 76 (W.D.N.Y. 2000) .............................................................................5, 11

*Gaston v. Caden*
   No. CIV-S-03-1707, 2007 WL 2727142 (E.D.Cal. Sept. 17, 2007) .......................3, 4

*Gracenote v. Musicmatch*
   2003 U.S. Dist. LEXIS 26015 (N.D. Cal Oct. 14, 2003) .........................................9

*Holmgren v. State Farm Mut. Auto Ins. Co.*
   976 F.2d 573 .............................................................................................................7

*Kutner Buick, Inc. v. Crum & Foster Corp.*
   No. Civ.A. 95-1268, 1995 WL 508175 (E.D. Pa. Aug. 24, 1995) ............................5

*Marchand v. Mercy Medical Center*
   22 F.3d 933 (9th Cir. 1994) ......................................................................................4

*Rossi v. MPAA*
   391 F.3d 1000 (9th Cir. 2004) ........................................................................3, 13, 14

*S.A. Healy Co. v. United States*
   37 Fed. Cl. 204 (1997) ..........................................................................................8, 10

*U.S. ex rel Englund v. L.A. County*
   235 F.R.D. 675 (E.D. Cal. 2006) ....................................................................6, 8, 9, 11

*U.S. ex rel. Seals v. Wiman*
   304 F.2d 53 (5th Cir. 1962), cert. denied 372 U.S. 915 (1963) ...............................4

*Viacom Intern., Inc. v. YouTube, Inc.*
   No. C-08-80211, 2009 WL 102808 (N.D.Cal. Jan. 14, 2009) ..................................4

## Federal Statutes

17 U.S.C. § 106 ..................................................................................................8, 10

17 U.S.C. § 107 ............................................................................................1, 2, 12, 13

17 U.S.C. § 512 ......................................................................................................1, 4

17 U.S.C. § 512(f) ..................................................................................................1, 4

## Federal Rules

Fed. R. Civ. P. 36 .................................................................................................4, 5, 6

Fed. R. Civ. P. 36(a)(6) ...............................................................................................2

Fed. R. Civ. P. 36(a)(1)(A) ..........................................................................................4

468189.01

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On February 7, 2007, Stephanie Lenz posted a home video of her young son dancing to "Let's Go Crazy," by Prince, on YouTube (a video-hosting service). Four months later, Universal demanded that YouTube remove the video by sending a takedown request tracking the requirements of 17 U.S.C. § 512 (a.k.a. the "safe harbor" provisions of the Digital Millenium Copyright Act ("DMCA"). In that notice, Universal represented that it had a good faith belief that her video infringed Prince's copyright in the "Let's Go Crazy" composition (which Universal administers). Ms. Lenz contends that her video was *not* infringing because it is a fair use of the copyrighted work under 17 U.S.C. § 107. Ms. Lenz further contends that Universal's representation that it had a good faith belief to the contrary was false and that, therefore, Universal's takedown notice violated 17 U.S.C. § 512(f). Specifically, Ms. Lenz contends that Universal did not consider whether her use was protected by the fair use doctrine (or ignored the fact that it was indeed a fair use). Second Amended Complaint (Dkt. No. 34-1) at p. 4 ¶ 20 and p. 7-8 ¶¶ 35-36.

Ms. Lenz therefore filed this suit under 17 U.S.C. § 512(f), which creates a cause of action for anyone injured by a service provider's reliance on a copyright owner's misrepresentation in a takedown notice that a work infringes its copyright. What Universal actually thought (or whether it thought at all) about the nature of Ms. Lenz's video when it decided to send its takedown notice is at the heart of this case.

Ms. Lenz has asked Universal to admit a series of facts relating to her claim, admissions which should be both non-controversial and useful in narrowing the issues that remain for discovery, motion practice, and trial. Universal has refused to provide substantive responses to many of these requests, primarily on one of two grounds: (1) unreasonable claims that common words and phrases are unintelligible; and (2) claims that the requests seek information Universal asserts is irrelevant in light of Universal's theory of the case.

Universal's objections are improper (and, in some cases, simply nonsensical). Ms. Lenz requests that the Court deem the matters addressed in the following requests to be admitted or, in

1

468189.01

1    the alternative, order Universal to provide appropriate responses.

2                  **II.     BACKGROUND**

3        Ms. Lenz served her First Set of Requests for Admissions on July 21, 2009.  Declaration

4    of Michael S. Kwun, Exh. A.  Pursuant to an agreed schedule, Defendants served their objections

5    and responses on August 20, 2009.  Kwun Decl. Exh. B.  On October 8, 2009, Ms. Lenz wrote to

6    Universal to express her concerns with several of Universal's responses to her first set of RFAs.

7    Kwun Decl. Exh. C. The parties met and conferred on October 27, 2009, and Universal agreed to

8    give several of its positions further consideration and to respond further by the end of that week.

9    Kwun Decl. ¶ 7.  On December 8, 2009, after Ms. Lenz's repeated requests for Universal's final

10    position on her first RFAs, the parties met and conferred again, and Universal advised Ms. Lenz

11    that it would not provide supplemental responses.  *Id.*  At no point in this process did Universal's

12    counsel identify any authority for the proposition that a party may refuse to admit or deny facts

13    because it disagrees with the requesting party about the legal significance of those facts.  *Id.* ¶ 8.

14        This Motion follows.  Specifically, pursuant to Federal Rule of Civil Procedure 36(a)(6),

15    Ms. Lenz moves for the Court to determine the sufficiency of Universal's Responses to

16    Plaintiff's Requests for Admission Nos. 1-4, 6-7, 16-17, 26, 29, 32-33, 35-36, 38-43, and 54-55.

17    For the Court's convenience, Ms. Lenz has included a chart of the RFAs and responses at issue.

18    Kwun Decl. Exh. F.

19                  **III.     ARGUMENT**

20    **A.     Universal's "Legal Theory" Objections Are Improper**

21        In Universal's General Objections 15 and 16 and in response to several specific requests

22    for admissions, Universal objects to the extent that Universal believes the Requests do not

23    conform to Universal's view of the *legal* standards that apply to this case (with respect to

24    knowledge and fair use).[1]  Specifically, Universal generally objects to Ms. Lenz's requests to the

25    extent that they might be premised on a theory that "an entity that sends a notice pursuant to the

26    DMCA must conduct a fair use analysis under 17 U.S.C. § 107" because Universal insists, such a

27

28

---

[1] Universal asserted several other improper general objections, but assured Plaintiff in the meet and confer process that General Objections 1-9 and 14 had no effect on Universal's responses.

theory is inconsistent with *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004) and this Court's prior

rulings. Kwun Decl. Exh. B at 6:10-12 (G.O. 15). And, Universal generally objects to requests

that refer to an actual market for Let's Go Crazy, on the ground that (it contends) market harm,

for purposes of a fair use analysis, is not defined in terms of an actual or potential market. *Id.* at

6:17-19 (G.O. 16). These are legal arguments, not valid bases for objecting to requests for

admission of facts. In meeting and conferring, Universal has cited no authority excusing a party

from its obligation to admit or deny facts simply because it disagrees with the opposing party

about the legal significance of those facts, Kwun Decl. ¶ 8, and Ms. Lenz is not aware of any

such authority.

Presumably, then, Universal's objection is really on grounds of relevance. If so, the

objection still fails. "Relevancy in the discovery context has been construed broadly to

encompass any matter that bears on, or that reasonably could lead to other matters that bear on,

any issue that is in the case." *Gaston v. Caden*, No. CIV-S-03-1707, 2007 WL 2727142, at *2

(E.D.Cal. Sept. 17, 2007) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)

and *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Surely any request that Universal admit facts

pertaining to its consideration and understanding of fair use bears on the central question in this

case: whether Universal formed a good faith belief that Ms. Lenz's video was infringing, rather

than, as Ms. Lenz contends, a non-infringing fair use.

**B.    Universal's Responses to Ms. Lenz's First Set of RFAs Are Insufficient and the Facts Identified in Ms. Lenz's Requests Should Be Deemed Admitted**

Request for Admissions Nos. 1-2

*Admit that YOUTUBE is a provider of online services or network access, or the operator of facilities therefore.* (RFA 1)

*Admit that YOUTUBE is a provider of online video hosting services.* (RFA 2)

These requests ask Universal to admit what should be beyond dispute: that YouTube—

Universal's own business partner--"is a provider of online services or network access, or the

operator of facilities therefore," and "a provider of online video hosting services." Universal

Kwun Dec. Plaintiff therefore will not address those objections here.

3

claims that these requests are unintelligible, and seek legal conclusions and irrelevant information. Universal's failure to answer these requests is improper.  First, they seek  relevant information pertaining to whether or not YouTube is a service provider pursuant to 17 U.S.C. § 512, which bears in turn on Ms. Lenz's allegation that the DMCA governs Universal's conduct in sending the June 4, 2007 takedown notice.  *See Gaston*, 2007 WL 2727142, at *2 (E.D.Cal. 2007) (citing *Oppenheimer*, 437 U.S. at 352 and *Hickman*, 329 U.S. at 501).

Second, these requests seek only facts, not legal conclusions (nor even "the application of law to fact," which is expressly permitted under Rule 36(a)(1)(A)).  While these facts relate to Ms. Lenz's theory of how 17 U.S.C. § 512(f) applies, "it is irrelevant to their admissibility that they will support certain legal conclusions. To say that the court cannot draw legal conclusions from facts found in requests for admissions would be to eliminate any purpose for Rule 36." *U.S. ex rel. Seals v. Wiman*, 304 F.2d 53, 64 (5th Cir. 1962), cert. denied 372 U.S. 915 (1963).

Finally, the terms "provider of online services," "provider of ... network access," "operator of facilities thereof," and "provider of online video hosting services" are not vague or ambiguous.  Universal and its employees interact with providers of online services and of network access regularly, and it should have no problem understanding what they are. "Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *Marchand v. Mercy Medical Center*, 22 F.3d 933, 936 (9th Cir. 1994). It should not be difficult to admit the obvious fact that YouTube, which permits users to post videos online, is a provider of an online service, specifically video hosting. *See Viacom Intern., Inc. v. YouTube, Inc.*, No. C-08-80211, 2009 WL 102808 at *1 (N.D.Cal. Jan. 14, 2009) ("YouTube is an online video hosting service.").

Ms. Lenz therefore asks this Court to order that her RFAs 1 and 2 are admitted.

<u>Request for Admission No. 3</u>

*Admit that the JUNE 4 NOCI represented that LENZ VIDEO was infringing the copyright in LET'S GO CRAZY.*

468189.01

1    Request No. 3 asks Universal to admit that the takedown notice it sent for Ms. Lenz's

2    video represents that her video infringed the copyright in the Prince composition "Let's Go

3    Crazy." Instead of admitting or denying, Universal ████████████████████████████

4    ████████████████████████████████████████████████████████[2] "A

5    statement of a party's understanding of the meaning or intent of a document is therefore a

6    statement of fact, and where the question of the meaning of the document is at issue in the case, a

7    request directed to another party seeking an admission or denial of a document's meaning or

8    intent by that party as stated in the request relates to a statement of fact, and is authorized by

9    Rule 36." *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y.

10   2000). Admissions of the contents or interpretation of document at most involve the application

11   of law to facts. *Kutner Buick, Inc. v. Crum & Foster Corp.*, No. Civ.A. 95-1268, 1995 WL

12   508175, at *2 (E.D. Pa. Aug. 24, 1995) (admissions required as to contents of insurance

13   policies). Universal can, and must, admit or deny whether it represented a particular application

14   of law to fact in a document it created. Indeed, Universal's June 4, 2007 takedown notice itself

15   refers to the videos at issue—including Ms. Lenz's—as "infringing material." Kwun Decl. Exh.

16   D at 6. Further, Universal has averred, in ████████████████████████████

17   ████████████████████████ and various briefs before this Court, that the Lenz video

18   infringed Let's Go Crazy. Kwun Decl. Exh. I; Dkt. No. 38 (Mot. to Dismiss S.A.C. at 2 n.2, 4);

19   Dkt. No. 41 (Reply ISO Mot. to Dismiss S.A.C. at 6-7). Ms. Lenz merely asks Universal to

20   formally admit a fact it has already conceded.

21        Ms. Lenz therefore asks this Court to order that RFA 3 is admitted.

22        <u>Request for Admission Nos. 4,6, and 7</u>

23        *Admit that YOU intended YOUTUBE to remove or disable access to the LENZ VIDEO as*

24   *a result of the JUNE 4 NOCI.* (RFA 4)

25        *Admit that YOUTUBE removed or disabled access to the LENZ VIDEO as a result of the*

26   *JUNE 4 NOCI.* (RFA 6)

27        *Admit that YOUTUBE relied upon the June 4, 2007 NOCI in removing or disabling*

28
     ───────────────────────────────
     [2] Kwun Decl. Exh. B at 8:3.

     PLAINTIFF'S MOT. TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION
     CASE NO. C-07-03783-JF

468189.01

1  *access to the LENZ VIDEO.*  (RFA 7)

2      Requests Nos 4, 6 and 7 ask Universal to admit three seemingly obvious facts—that

3  Universal "intended YouTube to remove or disable access to" the video as a result of its

4  takedown notice, that YouTube did so as a result of the notice, and that YouTube relied on the

5  notice in taking that action. With respect to RFA 4, Universal objects that "intended" and "as a

6  result of" are vague and ambiguous terms, but nonetheless responds that the email speaks for

7  itself.[3]   For RFAs 6-7, Universal contends it does not understand the term "as a result of" and

8  "relied on," ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[4]

10      As explained above, "the document speaks for itself" is not a proper response under Rule

11  36.  As for Universal's vagueness and ambiguity objections, the terms in question are hardly so

12  ambiguous that Universal could not have framed an intelligent reply or, at least, proposed

13  alternative wording to which it could respond.  *U.S. ex rel Englund v. L.A. County*, 235 F.R.D.

14  675, 684 (E.D. Cal. 2006) ("a party who is unable to agree with the exact wording of the request

15  for admission should agree to an alternate wording or stipulation.").  Indeed, Ms. Lenz's counsel

16  proposed alternate wording, offering to define "intended" in RFA 4 as "understood that" and to

17  supplement her own answers to Universal's RFAs 13-18 (which also used the word "intended")

18  with that alternate wording if Universal would do likewise.  Kwun Decl. ¶ 9.  Universal declined.

19  *Id.*

20      As a practical matter, Universal's answer to Requests 6 and 7 appear effectively to be

21  admissions; Ms. Lenz requests that the Court clarify the matter by ordering that these facts are

22  admitted.

23      <u>Request for Admission No. 16</u>

24      *Admit that YOU did not consider whether the LENZ VIDEO was a fair use of the*

25  *copyright in LET'S GO CRAZY prior to sending the JUNE 4 NOCI.*

26      Universal claims that the phrase "consider whether the ["Lenz Video] was a fair use of

27  ───────────────

28  [3] *Id.* at 8:14.
   [4] *Id.* at 9.

PLAINTIFF'S MOT. TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION
CASE NO. C-07-03783-JF

468189.01

1  copyright" is unintelligible[5]—yet it understood this phrase well enough to use it before the

2  Court. *See, e.g.*, Docket No. 47 (Mot. to Certify) at p. 2 (discussing whether a "party sending a

3  DMCA takedown notice [is required] to evaluate whether the material complained of makes a

4  'fair use' of the copyright."); *see also* Docket No. 38 (Mot. to Dismiss Second Amended

5  Complaint) at p. 17 ("Congress believed a copyright holder needs to consider the relative balance

6  of a fair use assertion ...")  Universal's position that this request is unintelligible is meritless.

7  Universal further objects that, on its tortured reading of the Court's prior holding, it does not

8  have to consider fair use and therefore the requested information is irrelevant.[6]  Universal is not

9  excused from its obligation to admit or deny facts because it has a different self-serving

10  interpretation of the law of this case. Third, contrary to Universal's contention, Request No. 16

11  does not call for any legal conclusion[7].  It asks Universal to admit or deny that it did not consider

12  (i.e. think about or reflect on) if and how the doctrine of fair use might apply to Ms. Lenz's

13  video. *Holmgren v. State Farm Mut. Auto Ins. Co.* 976 F.2d 573 (580) (9th Cir. 1992) (If party

14  objects requests based on issues other than historical fact, good faith requires it to qualify its

15  denials to make clear it concedes matters of historical fact).  Indeed, during meet and confer

16  discussions Ms. Lenz offered to narrow "consideration" to simply "coming to some conclusion"

17  as to fair use.  Kwun Decl. ¶ 9.  Universal still refused to amend its response.

18      Ms. Lenz therefore asks this Court for an order deeming RFA 16 admitted.

19      Request for Admission No. 17

20      *Admit that an online video hosting service has value to a person whose video is hosted*

21  *online by such service*

22      Universal claims this request is unintelligible.[8] Again, Universal misconstrues its

23  obligations.   The request is not so ambiguous that Universal cannot, in good faith, frame an

24  intelligent reply, and it should do so.  "Value" in this context obviously means economic value,

25

26  [5] *Id.* at 13.

27  [6] *Id.* at 13-14.
    [7] *Id.* at 13.

28  [8] *Id.* at 14.

1    such as providing utility.   A "person whose video is hosted online" refers to the users of online

2    video hosting services.  If Universal had a different definition of these common terms, it was

3    obliged to state that definition and respond on that basis.  *See S.A. Healy Co. v. United States*, 37

4    Fed. Cl. 204, 205-06 (1997) ("If defendant understood the term to have some other possible

5    meaning, it should have specified that meaning and admitted or denied each request based on

6    both meanings"), citing *Marchand*, 22 F.3d at 938 (party "should admit to the fullest extent

7    possible, and explain in detail why other portions of a request may not be admitted"; "party

8    unable to agree with exact wording of request for admission ... should agree to an alternate

9    wording or stipulation," or " 'set forth in detail the reasons why [he could not] truthfully admit or

10   deny the matter' ") (additional citation omitted); *Englund*, 235 F.R.D. at 684 ("a party who is

11   unable to agree with the exact wording of the request for admission should agree to an alternate

12   wording or stipulation.")

13        Ms. Lenz therefore asks this Court for an order deeming these RFAs admitted.

14        <u>Request for Admission Nos. 26, 32-33</u>

15        *Admit that YOU have never granted a SYNCHRONIZATION license for any HOME*

16   *VIDEO for any PRINCE copyrights YOU administer.*  (RFA 26)

17        *Admit that YOU have never licensed any exclusive right under 17 U.S.C. 106 for any*

18   *PRINCE copyrights YOU administer to any creator of any HOME VIDEO for use in such a*

19   *video.*  (RFA 32)

20        *Admit that, to YOUR knowledge, PRINCE has never licensed any exclusive right under*

21   *17 U.S.C. §106 for LET'S GO CRAZY to any creator of any HOME VIDEO for use in such*

22   *video.*  (RFA 33)

23        These requests ask Universal to admit three non-controversial points. Universal objects

24   that the requests are unintelligible and that it has produced any agreement since January 1, 2005,

25   that "specifically licenses the musical composition 'Let's Go Crazy' for synchronization with

26   audio-visual images."[9]  Counsel for Ms. Lenz have reviewed the documents produced by

27   Universal and have not found any that relate to a license for "Let's Go Crazy" for anything

28

8

468189.01

1   remotely close to a home video. These requests are designed to confirm as much in a simply and

2   straightforward manner in order to save time at trial.  The purpose of requests for admission is

3   "to expedite trial by establishing certain material facts as true and thus narrowing the range of

4   issues for trial." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1982).

5        Universal also claims that the term "home video" is unintelligible, incorporating by

6   reference General Objection No. 13.[10]  Ms. Lenz's Requests define the term to mean "a video

7   recorded by an individual using readily available consumer recording equipment, for personal

8   noncommercial use."  Kwun Decl. Exh. A at 2:5-6.  Universal generally objects to the term,

9   purportedly because Universal doesn't know what "readily available consumer recording

10  equipment" and "personal noncommercial use" mean and because Ms. Lenz does not explain

11  how a person could determine whether a video was a home video simply by viewing it.[11]

12       First, the defined phrase does not render any request for admission so ambiguous that

13  Universal cannot, in good faith, "frame an intelligent reply." *Englund*, 235 F.R.D. at 685.

14  Universal can and should propose alternative wording if it genuinely needs clarity on the

15  meaning of the term. *Id.* at 684; *see also Gracenote v. Musicmatch*, 2003 U.S. Dist. LEXIS

16  26015 (N.D. Cal Oct. 14, 2003).  Second, it is not difficult to discern what Ms. Lenz means by

17  "readily available consumer recording equipment."  For example, as Ms. Lenz explained to

18  Universal during the meet and confer process, this would include a camcorder, mobile phone

19  with video capacity, or a digital camera.  Kwun Decl. ¶ 10.  Third, the phrase "personal non-

20  commercial use" is not unintelligible. Again, as Ms. Lenz explained to Universal, it is a use by a

21  person that is not for the purposes of sale, rental, barter, or other financial gain by the person.

22  Indeed, Universal Music Group uses this phrase on its own website. *See* Kwun Decl. ¶ 10 and

23  Exh. J (Universal Music Group Privacy Policy, http://smsterms.umusic.com) at ¶ 6 ("The service

24  and the content and materials received through the service are proprietary to us or our licensors,

25  and is for your personal, non-commercial use only.") (emphasis added).  Kwun Decl. Exh. J at

---

[9] *Id.* at 19:4-5

[10] *Id.* at 19, 22.

[11] *Id.* at 5 (G.O. 13).

PLAINTIFF'S MOT. TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION
CASE NO. C-07-03783-JF

468189.01

¶ 6. Finally, the General Objection does not actually apply to the requests as they do not call for any determination based upon viewing a video on YouTube.

Ms. Lenz therefore asks this Court for an order deeming these RFAs admitted.

Requests for Admission Nos. 29, 35

*Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license the SYNCHRONIZATION, to audio-visual works displayed on YouTube, of any of his musical compositions that YOU administer.* (RFA 29)

*Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license any exclusive right under 17 U.S.C. § 106 in audio-visual works displayed on YouTube with respect any of his musical compositions that YOU administer.* (RFA 35)

Universal claims these requests seek irrelevant information.[12] Hardly--these facts speak directly to the issue of whether Universal sent a takedown notice for Ms. Lenz's video simply because Prince instructed it to shut down all uses of his works online—i.e. whether Universal acted in good or bad faith in sending that takedown notice—and to whether there is an actual market for YouTube video licenses of songs written by Prince, which bears on whether Ms. Lenz's video was fair use.   Universal also claims not to understand the terms "instructed" and "audio-visual works displayed on YouTube."[13]  The term "instructed" is a common English word and does not render this request unintelligible, let alone so ambiguous that Universal cannot frame an intelligent reply.  Likewise, "in audio-visual works displayed on YouTube" is not vague, ambiguous or unintelligible.  Universal is a sophisticated corporate litigant in copyright law and administers many copyrights, and has sufficient understanding of the terms "audio-visual work," "displayed," and "on YouTube" to frame an intelligent reply to this request.  As noted, if Universal had a different definition of these common terms, it should have qualified its response and responded on that basis. See *S.A. Healy Co.*, 37 Fed.Cl. at 205-06 ("If defendant understood the term to have some other possible meaning, it should have specified that meaning and admitted or denied each request based on both meanings") *citing Marchand*, 22 F.3d at 938

---

[12] *Id.* at 20, 23-24.

[13] *Id.* at 20, 23.

468189.01

1   (party "should admit to the fullest extent possible, and explain in detail why other portions of a

2   request may not be admitted") (additional citation omitted); *Englund*, 235 F.R.D. at 684 ("a party

3   who is unable to agree with the exact wording of the request for admission should agree to an

4   alternate wording or stipulation.")

5          Ms. Lenz therefore asks this Court for an order deeming these RFAs admitted.

6          Request for Admission No. 36

7   ████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████

9   █████████████████████████████████████████████

10         Universal asserts that this request is improper because it seeks an interpretation of a

11  contract and because the contract "speaks for itself."[14]   As noted, this is not a valid objection.

12  *Booth Oil*, 194 F.R.D. at 80.   Universal also incorporates by reference General Objection 13

13  (which claims the term Home video is unintelligible).   This, too, is an improper objection for the

14  reason set forth above.

15         Ms. Lenz therefore asks this Court to order that this RFA is admitted.

16         Request for Admission No. 38

17         *Admit that Lenz's use of the LENZ VIDEO did not affect the value of LET'S GO CRAZY.*

18         Universal mounts three principal objections to this Request.   First, it contends that

19  "Lenz's use," "affect the value of" and "quantifiable amount" are unintelligible.[15]   As Ms. Lenz

20  explained in the meet and confer process, "Lenz's use" can be construed to mean Ms. Lenz's

21  initial posting of the Lenz video.   As for the other terms, neither are so ambiguous that Universal

22  cannot frame and intelligent reply.   Either the Lenz video has had an effect on the value of the

23  work or it has not.   Either that effect is quantifiable, or it is not.   Second, Universal objects that

24  the request calls for a legal conclusion and seeks irrelevant information.[16]   Not so: the request

25  asks Universal to admit a fact – that the Lenz video has not affected the value of the Prince song

26

27  [14] *Id.* at 24.
    [15] *Id.* at 25.

28  [16] *Id.*

468189.01

1   in contains – which is obviously relevant to what (if any) effect the Lenz video did or did not

2   have on the value of the work.  *See* 17 U.S.C. § 107. That effect bears, in turn, on whether

3   Universal could have formed a good faith belief that the Lenz video infringed any copyright.

4   Third, Universal objects that the request assumes an incorrect legal standard for fair use and

5   compensable harm.[17]  As explained above, this "legal theory" objection is meritless.  Moreover,

6   the objection reads a whole series of assumptions into the request that bear little relationship to

7   the actual, simple request itself.

8       Ms. Lenz therefore asks this Court to order that this RFA is admitted.

9       Request for Admissions Nos. 39-40

10      *Admit that PRINCE communicated with YOU regarding the removal of the LENZ video.*

11   (RFA 39)

12      *Admit that PRINCE requested that YOU seek removal of the LENZ VIDEO. (RFA 40)*

13      Universal denies both requests, subject to an important caveat: a claim of attorney-client

14   and work-product privilege.[18]  Judge Fogel affirmed Judge Seeborg's specific rejection of

15   Universal's claim of privilege with respect to its communications with Prince.  Kwun Decl. Exh.

16   E (October 30, 2009 Order (Dkt. No. 196)); *see also* Dkt. No. 150 (Judge Seeborg's August 25,

17   2009 Order).  Accordingly, this caveat is improper.  Universal should therefore provide a

18   straightforward denial or, if communications do exist under the false cloak of privilege, it should

19   admit as much.

20      Ms. Lenz therefore asks this Court to order that these RFAs are admitted.

21      Request for Admissions Nos. 41-43

22      *Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson that fair use of a*

23   *copyrighted work is not an infringement of copyright.* (RFA 41*)*

24      *Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson to consider fair use*

25   *when reviewing YouTube videos for copyright infringement.* (RFA 42)

26      *Admit that Sean Johnson did not consider fair use when reviewing the LENZ VIDEO.*

27   ───────────────

[17] *Id.* at 25-26.

28   [18] *Id.* at 26-27.

12

468189.01

1  (RFA 43)

2          Universal objects that "instructed," "fair use," "not an infringement of copyright," "when

3  reviewing," "copyright infringement" and "consider fair use" are vague and ambiguous.[19]

4  Nonsense.  These requests use basic English words and mean what they say.  Neither these

5  requests nor any of their composite terms are so ambiguous that Universal cannot in good faith

6  frame an intelligent reply.  Further, Universal has discussed the relationship between fair use and

7  copyright infringement in its own pleadings.  *See, e.g.,* Docket No. 38 at p. 9 (Mot. to Dismiss

8  Second Amended Complaint) (asserting that "[b]y relying exclusively on fair use as a defense,

9  [Ms. Lenz] necessarily concedes that her use does infringe copyright.") (emphasis omitted).

10  Universal has offered no reason to think that it cannot understand these terms here.  Moreover,

11  during meet and confer discussions Ms. Lenz offered to define as simply "coming to some

12  conclusion" as to fair use.  Kwun Decl. ¶ 9.  Universal still refused to amend its response.

13          Universal also reiterates its attempt to argue legal theory instead of asserting a valid

14  objection, claiming that "to the extent the Request is premised on the theory that an entity that

15  sends a notice pursuant to the DMCA must conduct a fair use analysis under 17 U.S.C. § 107,

16  that premise is inconsistent with *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004)" and this Court's

17  orders.[20]  This Court held that "consideration of the applicability of the fair use doctrine simply

18  is part of [the copyright holder's] initial review." Docket No. 45, at p. 7.  These requests ask

19  Universal to admit various facts relevant to whether that occurred in this case.  Universal's

20  strained interpretation of the Court's Order has no place in an objection to a request for

21  admission.  This request asks Universal to admit or deny whether or not, as a factual matter, it

22  took certain actions.  Universal can argue about the legal significance of those facts in another

23  arena.

24          Ms. Lenz therefore asks this Court to order that these RFAs are admitted.

25          Requests for Admission Nos. 54 and 55

26          *Admit that the LENZ VIDEO is not a substitute for LET'S GO CRAZY in any actual*

27  _____

    [19] *Id.* at 27-29.

28  [20] *Id.* at 25:16-21.

PLAINTIFF'S MOT. TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION
CASE NO. C-07-03783-JF

1    *market for that composition of which YOU are aware.* (RFA 54)

2        *Admit that the LENZ VIDEO is not a substitute for LET'S GO CRAZY in any potential*

3    *market for that composition of which YOU are aware.*  (RFA 55)

4        Universal claims these requests use vague and ambiguous terms ("as a substitute for," "in

5    any actual market" and "in any potential market") and call for a legal conclusion.[21]  None of

6    these terms are so unintelligible or ambiguous that Universal—a sophisticated corporate litigant

7    well-versed in markets for copyrighted compositions which it administers—cannot frame an

8    intelligent reply.  Nor do these requests call for any legal conclusion.  They call for factual

9    admissions about whether a fuzzy 29-second clip in the background of a home video could

10   replace the Let's Go Crazy composition in any licensing market.

11       Ms. Lenz therefore asks this Court to order that these RFAs are admitted.

12                          **IV.    CONCLUSION**

13       For the foregoing reasons, Ms. Lenz respectfully asks this Court to order that Requests

14   for Admission Nos. 1-4, 6-7, 16-17, 26, 29, 32-33, 35-36, 38-43, and 54-55 are admitted.

15   Dated:  February 9, 2010                    KEKER & VAN NEST LLP

16

17

18                                   By:   */s/Michael S. Kwun*
                                          MICHAEL S. KWUN
19                                        Attorneys for Plaintiff
                                          STEPHANIE LENZ
20

21

22

23

24

25

26

27   [21] *Id.* at 37-38.

28

PLAINTIFF'S MOT. TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION
CASE NO. C-07-03783-JF

468189.01