1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 2/25/10**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>            Plaintiff,<br><br>      v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>            Defendants. | Case Number C 07-3783 JF<br><br>**ORDER[1] GRANTING PARTIAL SUMMARY JUDGMENT**<br><br>[re: docket no. 199] |

      Plaintiff Stephanie Lenz ("Lenz") moves for partial summary judgment or, in the alternative, for partial judgment on the pleadings with regard to six affirmative defenses asserted by Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal"). *See* Fed. R. Civ. P. 12(c), 56(c). The Court has read and considered the moving papers and the oral argument presented by counsel on December 11, 2009. For the reasons set forth below, the motion will be GRANTED.

//

---

[1] This disposition is not designated for publication in the official reports.

# I. FACTUAL BACKGROUND

Disposition of the instant motion turns largely on questions of law and allegations of litigation misconduct.  The relevant pre-litigation facts are set forth in detail in the Court's order dated August 20, 2008 ("August 20 order"), and will not be repeated here.

# II.  PROCEDURAL BACKGROUND

On July 24, 2007, Lenz filed suit against Universal alleging misrepresentation pursuant to 17 U.S.C. § 512(f) and tortious interference with her contract with YouTube.  She also sought a judicial declaration that she did not infringe on Universal's copyrights.  Universal filed a motion to dismiss, which was granted on April 8, 2008.  Lenz was given leave to amend her complaint to replead her first and second claims for relief.  On April 18, 2008, Lenz filed the operative Second Amended Complaint ("SAC"), alleging only a claim for misrepresentation pursuant to 17 U.S.C. § 512(f).  In its August 20 order, the Court denied Universal's motion to dismiss the SAC.  Universal subsequently filed its answer, and on October 30, 2009, after extensive discovery, Lenz filed the instant motion.

# III.  LEGAL STANDARD

## A.      Motion for summary judgment

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

2

1   *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

2   **B.**   **Motion for judgment on the pleadings**

3        The standard applicable to a motion for judgment on the pleadings is essentially the same

4   as that applicable to a motion to dismiss, though the former may be made by either party. *Qwest*

5   *Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002). In reviewing a

6   motion for judgment on the pleadings, the Court views the facts presented in the light most

7   favorable to the non-moving party, accepting as true all the allegations in the complaint and

8   treating as false those allegations in the answer that contradict the plaintiff's allegations. *Id.*

9        In order to succeed on a motion for judgment on the complaint, a plaintiff must show that

10  "all of the defenses raised in the answer are legally insufficient. A plaintiff is not entitled to

11  judgment on the pleadings if the answer raises issues of fact or an affirmative defense which, if

12  proved, would defeat plaintiff's recovery." *Id.*

13                        **IV. DISCUSSION**

14   **A.**   **First Affirmative Defense: Failure to State a Claim**

15        For the reasons discussed in the Court's August 20 order, Lenz has alleged sufficient

16  facts to state a claim under 17 U.S.C. § 512(f). Accordingly, Lenz's motion will be granted as to

17  Universal's first affirmative defense.

18   **B.**   **Second and Seventh Affirmative Defenses: Bad Faith and Unclean Hands**

19        Universal asserts in its answer that Lenz acted in bad faith (Second Affirmative Defense)

20  and "is guilty of unclean hands" (Seventh Affirmative Defense). (Defs.' Answer ¶ 45.) Lenz

21  contends that as a matter of law Universal cannot establish either of these defenses based upon

22  the undisputed facts in the record. Because the legal standards for these two equitable defenses

23  are for practical purposes the same, and because both parties did so in their briefing, the Court

24  will treat the defenses together.

25        As the Supreme Court has long held, the doctrine of unclean hands dictates that

26        "whenever a party who, as actor, seeks to set the judicial machinery in motion and
          obtain some remedy, has violated conscience, or good faith, or other equitable

27        principle, in his prior conduct, then the doors of the court will be shut against him
          in limine; the court will refuse to interfere on his behalf, to acknowledge his right,

28        or to award him any remedy."

Case No. C 07-3783 JF
ORDER GRANTING PARTIAL SUMMARY JUDGMENT
(JFLC3)

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) (quoting Pomeroy, Equity Jurisprudence (4th Ed.) s 397).  However, the doctrine does not apply to all prior bad conduct. Instead, the defense is available "only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation."  *Id.*

### 1.    Universal's allegations of bad faith and unclean hands

#### a.    Allegation of bad faith in pleading fair use while admitting infringement

Universal first argues that Lenz implicitly has admitted using Prince's copyrighted musical composition without authorization, and thus that she infringed the copyright, through her "exclusive reliance on fair use in this litigation."  (Defs.' Objections & Resp. to Pl.'s First Set of Interrogs. ("Defs.' Interrogs. Resp.") 11-12.)  In response, Lenz maintains that the she has not admitted infringing the copyright by relying on a fair use theory because "[a]s this Court has noted, a fair use is not an infringement."  (Pl.'s Mot. for Partial Summ. J. "MSJ" 2 (citation omitted).)  Lenz is correct.  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("anyone . . . who makes a fair use of the work is not an infringer of the copyright with respect to such use").

#### b.    Allegation of bad faith in alleging video was intended for private viewing

Universal also contends in its responses to Lenz's interrogatories that Lenz's allegation that she posted her video on YouTube for private viewing by family and friends was made in bad faith.  According to Universal, the record shows that the posting was not so limited and that the number of viewings–841,000 as of the time of its responses to Lenz's interrogatories–"far exceeds the possible number of viewings by Plaintiff's 'family and friends,' and instead reflects the efforts of Plaintiff and her counsel to the [sic] publicize the posting for widespread viewing." (Defs.' Interrogs. Resp. 11.)

Lenz claims that the large number of viewings of the video on YouTube is not evidence of her bad faith.  She points to evidence in the record that the video had been viewed only 273

Case No. C 07-3783 JF
ORDER GRANTING PARTIAL SUMMARY JUDGMENT
(JFLC3)

1   times prior to Universal's takedown notice, a number which Lenz maintains is consistent with

2   her intention to post the video to allow friends and family to watch it.  (MSJ 7 (citing 2007

3   Schaffer Decl. ¶ 3).)  Lenz contends that the fact that the number of viewings has risen to nearly a

4   million since the filing of the lawsuit "does not tell us anything about Ms. Lenz's bad or good

5   faith in posting the Video in February 2007."  (MSJ 7.)

6            Even if Universal could show that the number of viewings has grown as the result of

7   efforts by Lenz and her counsel to call attention to the video, this is insufficient to show bad faith

8   or unclean hands with regard to Lenz's original intent in posting the video or representation of

9   that intent.  No reasonable jury could find that, because the number of viewings grew

10  exponentially following the filing of the lawsuit, Lenz's representation that she posted the video

11  for viewing by her friends and family was an "unconscionable act."

12                       **c.      Allegation of bad faith based on Lenz's counter-notification**

13           Third, Universal alleges in its interrogatory responses that Lenz acted in bad faith because

14  she did not claim in her counter-notification that her use of the copyrighted song was authorized,

15  "but rather lamented the fact that Universal was able to discover [the] video because of the title

16  that she used."  (*Id.*)  Universal argues that these facts are sufficient to defeat summary judgment

17  with respect to their bad faith and unclean hands defenses because they are "inconsistent with

18  Plaintiff's allegations and raise[] questions about the veracity of those allegations and the

19  prosecution of this case."  (Defs.' MSJ Opp. 6.)

20           Lenz asserts that Universal's argument on this point is factually incorrect.  Lenz directs

21  the Court's attention to the original email and revised counternotice she sent to YouTube on June

22  5 and 7, 2009, respectively.  Both of these documents include Lenz's statement that she "do[es]

23  not believe that the video in question violated copyright or infringed on copyright in any way."

24  Notably, in its opposition to the instant motion, Universal does not reassert its argument that the

25  counternotice demonstrates Lenz's bad faith.

26           While Lenz's original email does contain statements that could be interpreted, as

27  Universal does, as "lament[ing] the fact that Universal was able to discover [the] video because

28  of the title [Lenz] used," it also contains the language quoted above, thereby undermining any

5

claim of bad faith.  The record establishes that Lenz did in fact claim that her use of the song was authorized.

### d.    Allegation of bad faith in alleging video was a "self-evident non-infringing fair use"

Universal next asserts that Lenz's statements on websites, in emails, and at her deposition undermine her contention that her use of the song was a "self-evident non-infringing fair use."  Among the statements referenced by Universal are: Lenz's response in a blog posting that her case is "not a 'fair use' case at all"; statements by one of Lenz's friends informing Lenz of the friend's belief that the use of the song in the video constitutes infringement; and Lenz's statements at her deposition that "it is possible that someone could look at [her use of the copyrighted song] and find it infringing."  (Lenz Dep. 276:23-277:3-6.)

Lenz claims that Universal mischaracterizes these statements.  Instead of alleging "anyone who looked at her video posting would have immediately recognized that it made what Plaintiff has called a 'self-evident fair use of 'Let's Go Crazy,''" (Defs.' MSJ Opp. 6:20-23), she argues that "the allegations in the complaint can only be understood to address what was self-evident to *Universal*."  (Pl.'s MSJ Reply 2 (emphasis added).)  Lenz also argues that none of the statements Universal has culled from her earlier moving papers asserts that the fair use would be "self-evident" to anyone.  Lenz's point is well taken.

### e.    Allegation of bad faith in alleging Lenz has suffered damages and has been "substantially and irreparably" injured

Universal also argues that there are triable issues of fact as to whether Lenz has "prosecuted in good faith the assertion that she has been damaged" by Universal's alleged violation of § 512(f).  (Defs.' MSJ Opp. 11.)  This argument is based on four separate contentions.  First, Universal contends that Lenz, through her attorney, misled the Court at the hearing on Universal's motion to dismiss the SAC by representing that Plaintiff had incurred expenses in responding to the takedown notice and obtaining professional services even though Lenz later admitted in her deposition that she did not incur any such expenses.  Second, Universal claims that Lenz also misled the Court in representing that she suffered damages during the time that her video was removed from YouTube even though she admitted in email

Case No. C 07-3783 JF
ORDER GRANTING PARTIAL SUMMARY JUDGMENT
(JFLC3)

1    correspondence that she did not care about the removal of the video.  Third, Universal maintains

2    that Lenz's claim for damages to her free speech rights arising from the takedown notice is

3    contradicted by Lenz's posting of another video on YouTube the month after she received the

4    notice.  Universal argues that the second posting belies Lenz's statement in the SAC that she had

5    not posted any videos on YouTube since receiving the notice because she was intimidated and

6    fearful.  Finally, Universal claims that an email exchange between Lenz and one of her friends

7    shows that Lenz does not believe that she was injured substantially and irreparably by the

8    takedown notice.  In the exchange, Lenz responds to her friend's comment that the friend

9    "love[s] how [Lenz has] been injured 'substantially and irreparably' ;-)" by writing "I have ;-)."

10   The (";-)") symbol, according to Lenz, is a "winky" emoticon which signifies something along

11   the lines of "just kidding."

12       In response, Lenz denies that there are issues of fact as to whether she made her claims

13   for damages in bad faith.  First, without admitting that counsel made any misrepresentation to the

14   Court during the hearing on Universal's motion to dismiss, Lenz argues that there is no evidence

15   that any purported misstatement was made in bad faith.  Lenz argues that Universal is aware that

16   Lenz is represented pro bono and that Universal's assertion of misrepresentation is "disingenuous

17   at best."  (Pl.'s MSJ Reply 5.)

18       Second, Lenz contends that she did not mislead the Court in asserting that she suffered

19   harm during the period when her video was offline.  Rather than claiming that this harm was

20   monetary, however, she claims that she was injured through the curtailment of her First

21   Amendment rights and cites case law holding that such curtailment constitutes irreparable injury.

22   (Pl.'s MSJ Reply 5 (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976).)

23       Lenz also counters Universal's argument that her claim of First Amendment injury was

24   made in bad faith.  Lenz contends that her assertion in the SAC that she had not posted a single

25   video on YouTube following receipt of the takedown notice was not made in bad faith, but rather

26   that, as she testified at her deposition, she merely forgot about the July 2007 posting of her family

27   watching her appearance on the television show *The O'Reilly Factor* until it was brought to her

28   attention at her deposition.  Lenz maintains that this memory slip is not evidence of bad faith or

7

1   unclean hands.  Lenz also argues that the fact that she posted the July video privately, and only

2   for a few days, is evidence that she was intimidated rather than that she was not.

3       With respect to Universal's argument that Lenz did not believe she was substantially and

4   irreparably harmed, Lenz argues that her deposition testimony refutes that claim.  At her

5   deposition, Lenz testified that she believed her friend's use of the emoticon "was kind of a

6   reference back to [the] lawyerese" of the "substantially and irreparbly harmed" language and that

7   her use of the emoticon was "a reply to the wink that [her friend] used."  (Lenz Depo 241: 11-

8   21.)  Lenz maintains that the fact that she "believes that lawyers sometimes use stilted language

9   is not evidence of bad faith."  (Pl.'s MSJ Reply 5 n.2.)

10      As discussed in greater detail below, the question of what types of damages are available

11  under § 512(f) is yet to be addressed by appellate courts.  That said, Universal's proffered

12  evidence is insufficient to establish that Lenz acted in bad faith in claiming injury as a result of

13  the takedown notice.  Further, given the state of the law on damages under the statute and the

14  unfamiliarity of lay people with statutory language, no reasonable jury could find that Lenz's

15  allegations of "substantial and irreparable injury" are the kind of unconscionable acts against

16  which the defenses of bad faith and unclean hands are intended to guard.  This is not to say

17  Universal has no recourse.  If Universal believes that Lenz or her counsel have engaged in

18  litigation misconduct that warrants sanctions, it may raise that issue by motion.

19              **f.    Allegation of bad faith in motivation for suit**

20      Finally, Universal argues that the evidence "shows . . . that this lawsuit has been

21  prosecuted not because of a violation of Plaintiff's rights, but rather to serve the interests of

22  Plaintiff's counsel in publicizing their hostility to the rights of copyright owners, in particular the

23  sending of takedown notices to sites like YouTube."  (Defs.' MSJ Opp. 14.)  Universal relies on

24  statements by Lenz concerning the interest of the Electronic Frontier Foundation ("EFF") in her

25  case and the publicity surrounding it, as well as comments by Lenz and lawyers for EFF, to

26  support this contention.  Universal concedes that "Plaintiff and her lawyers . . . have the right to

27  publicly discuss this case or their views about copyright law, Universal, Prince, or anything else,"

28  but argues that "the desire for a publicity campaign does not give anyone the right to pursue a

8

case based on facts known to be false." (*Id.* at 15.)

Lenz contends that this last argument is redundant to Universal's other arguments, as it is depends upon there being an issue of fact as to whether Lenz made allegations she knew to be false. Lenz is correct.

### 2.    Lenz's general counter-arguments

#### a.    False allegations are not sufficient to establish an unclean hands defense

In large part, Universal bases its unclean hands defense on its claim that Lenz knowingly has made false allegations in prosecuting the instant suit. Lenz argues that Universal should seek sanctions if it believes Lenz has engaged in litigation misconduct. Lenz claims that Universal "deceptively cite[s] *Keystone Driller v. General Excavator Co.*, 290 U.S. 240 (1933), for the proposition that litigation misconduct can support a defense of unclean hands." (Pl.'s MSJ Reply 6.) She contends that the Supreme Court's decision in *Keystone* was predicated on misconduct in a prior case and use of a decree obtained through that misconduct in the subsequent case. Lenz argues that "[a] defendant 'cannot maintain a defense of unclean hands where the basis of the defense is premised on the posture taken by the plaintiff[] with respect to its [rights] in the course of litigation.'" (Pl.'s Reply 7 (citing *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F. Supp. 2d 506, 518 (S.D.N.Y. 2003)).)

Though Lenz is correct with respect to the underlying facts in *Keystone*, neither that case nor any Ninth Circuit decision stands for the proposition for which Lenz cites *Yurman*. In fact, after setting out the standard for the application of the doctrine, *Keystone* held that "[n]either the plaintiff's corruption of Clutter in respect of the first Downie patent," (the bad act involved in the prior litigation) "*nor its use in these cases* of the Byers decree" (the offer in the pending litigation of the earlier, wrongfully obtained decree) "can fairly be deemed to be unconnected with causes of action based on the other patents." *Keystone*, 290 U.S. at 246. Nonetheless, Universal has not identified evidence from which a reasonable jury could find that any of the Lenz's alleged misrepresentations during this litigation were made in bad faith, or constituted the kind of "unconscionable acts" for which the unclean hands defense is designed.

Case No. C 07-3783 JF
ORDER GRANTING PARTIAL SUMMARY JUDGMENT
(JFLC3)

1

**b.     Universal has suffered no prejudice**

2      Lenz also claims that she is entitled to summary judgment on Universal's bad faith and

3 unclean hands defenses because Universal has not claimed that any of her alleged bad acts have

4 caused prejudice to its ability to defend the present action.  However, while the Ninth Circuit has

5 recognized that the extent of the harm caused by the plaintiff's misconduct is "a highly relevant

6 consideration," it has not held that a defendant asserting an unclean hands defense is *required* to

7 demonstrate prejudice.  *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 350 (9th

8 Cir. 1963); *but see Hynix Semiconductor Inc. v. Rambus Inc.*, 591 F. Supp. 2d 1038, 1067 (N.D.

9 Cal. 2006) ("An unclean hands defense further requires proof that the offending conduct

10 materially prejudiced a party's ability to defend itself.")

11      In light of the foregoing discussion, the motion will be granted as to the affirmative

12 defenses of bad faith and unclean hands.

13 **C.     Third Affirmative Defense: No Damages**

14      Universal's third affirmative defense asserts that Plaintiff has suffered no damages.  As

15 Universal clarifies in its opposition papers, this defense "is applicable to Plaintiff's request for

16 injunctive relief.  To that end, Universal's defense is that Plaintiff has not suffered any

17 cognizable harm in the past, and cannot show any likelihood of incurring such harm in the

18 future."  (Defs.' MSJ Opp. 16 (emphasis in original).)

19      The Court first must determine what types of damages, as a matter of law, are

20 compensable under § 512(f).  Once it makes this determination, the Court must decide whether

21 there are genuine issues of material fact as to whether Plaintiff has suffered any damages

22 recoverable under the statute.

23 **1.     Damages available under 17 U.S.C. § 512(f)**

24 The statutory provision at issue, in its entirety, reads as follows:

25      (f) Misrepresentations.—Any person who knowingly materially
misrepresents under this section—

26

27      (1) that material or activity is infringing, or
     (2) that material or activity was removed or disabled by mistake or
     misidentification,

28

10

1       shall be liable for any damages, including costs and attorneys' fees, incurred by the
2       alleged infringer, by any copyright owner or copyright owner's authorized
    licensee, or by a service provider, who is injured by such misrepresentation, as the
3       result of the service provider relying upon such misrepresentation in removing or
    disabling access to the material or activity claimed to be infringing, or in replacing
4       the removed material or ceasing to disable access to it.

17 U.S.C. § 512(f).

The parties disagree as to what types of damages are recoverable under this provision.

This appears to be an issue of first impression.

### a.     General principles

Lenz contends that plain language analysis dictates that because Congress chose to use

the word "any damages," recovery under § 512(f) is available to compensate "any harm

whatsoever." (Pl.'s MSJ 10.) Lenz points to case law establishing the breadth with which courts

have interpreted the terms "any" and "any damages" as evidence of Congressional intent "to

include any type of damages recognized under the law, including compensatory, general, special

and nominal damages." (*Id.*) Lenz also argues that the use of "any damages" in the Digital

Millennium Copyright Act ("DMCA") is particularly significant in light of the narrower "actual

damages" language in the Copyright Act, which also appears in Title 17. Lenz claims that the

purpose of this difference in part is to allow recovery "for harm from loss of speech, including

those [harms] not redressable with money damages." (*Id.* at 12.)

Lenz contends that the legislative history is at odds with a narrow interpretation that

would require proof of monetary damages. She quotes a section of the Senate Report that states

that § 512(f) "is **intended to deter** knowingly false allegations to service providers in recognition

that such misrepresentations are detrimental to the rights holders, service providers, and Internet

users." (Pl.'s MSJ 11 (citing S. Rep. 105-190, May 11, 1998, at 49) (emphasis added).) She

argues that a narrow interpretation of "any damages" would not serve the goal of deterrence

because "many [Internet] users could suffer grievous harm to their First Amendment rights, but

have no remedy absent the ability to demonstrate a pecuniary loss." (Pl.'s MSJ Reply 10.)

Universal disputes the inference Lenz asks the Court to draw from the use of "any

damages" in § 512(f) rather than the "actual damages" formulation in the Copyright Act:

11

Case No. C 07-3783 JF
ORDER GRANTING PARTIAL SUMMARY JUDGMENT
(JFLC3)

1

> The significance of the word "actual" is not (as Plaintiff contends) that it means economic loss, whereas "any damages" (in § 512(f)) means anything the Plaintiff claims are damages. "Actual damages and profits" are defined remedies for copyright infringement. 17 U.S.C. § 504(b). "Actual" is contrasted not with "any" but rather with "*statutory*" damages, which are the alternative damages for infringement. *Id.* § 504(c).

(Defs.' MSJ Opp. 19 n.12 (emphasis in original).)

Universal also argues that Lenz's interpretation of the statute is "incredibly misleading" because it takes the "any damages" language out of context. In Universal's view, the statute requires the plaintiff to have been injured by the misrepresentation and

> the statute also makes clear what the nature of that injury must be to count as damages: specifically, "any damages, including costs and attorneys' fees," that are "incurred" by the eligible plaintiff "as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it."

(*Id.* 17 (quoting 17 U.S.C. § 512(f)).) Universal maintains that the "as the result of" language establishes a proximate cause requirement that Lenz's interpretation "reads . . . out of the statute" and without which "any plaintiff [could] satisfy an essential element of her or his claim simply by filing suit." (*Id.*)

Lenz argues that the statute's "as the result of" language establishes a basic, or "but for," causation requirement rather than a proximate causation standard. According to this theory, fees and costs in this litigation are recoverable because "[t]his lawsuit would not have been filed but for Universal's misrepresentation to YouTube." (Pl.'s MSJ 16.) Further, Lenz maintains that the "as the result of" language is not intended to limit damages but to define who is a proper plaintiff:

> The Section 512(f) cause of action accrues to three types of plaintiffs: "the alleged infringer," "any copyright owner or copyright owner's authorized licensee," or "a service provider." Any of those three types of plaintiffs can bring a Section 512(f) claim if they are "injured [1] by such misrepresentation, [2] as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or [3] in replacing the removed material or ceasing to disable it." In this present case, Ms. Lenz is an "alleged infringer" who was injured both "by such misrepresentation" and "as the result of the service provider relying upon such misrepresentation," and is therefore entitled to any damages she incurs.

(*Id.* at 17 (quoting 17 U.S.C. § 512(f) (bracketed numbers added)).)

12

1   Universal disputes Lenz's construction of the "as the result of" language through

2   reference to the DMCA's legislative history and to the Anti-Cyber Squatting Consumer

3   Protection Act, which was adopted a year after the DMCA.  Universal cites a section of the

4   Senate Report that reads: "Defendants who make such a knowing misrepresentation are liable for

5   **any damages, including costs and attorneys' fees, incurred by any of these parties as a**

6   **result of** the service provider's reliance upon misrepresentation." (Defs.' MSJ Opp. 20 (citing S.

7   Rep. 105-190, May 11, 1998, at 49) (emphasis added).)  Universal notes that the

8   misrepresentation provision in the Anti-Cyber Squatting Consumer Protection Act includes

9   language nearly identical to that in the DMCA Senate Report language: "the person making the

10  knowing and material misrepresentation shall be liable for **any damages, including costs and**

11  **attorney's fees, incurred by the domain name registrant as a result of** such action."  15

12  U.S.C. § 1114(2)(D)(iv) (emphasis added).

13  Universal also contends that damages not only must be proximately caused by the

14  misrepresentation but also must be more-than-marginal economic damages.  Universal draws an

15  analogy to common law fraudulent misrepresentation, pointing out that in *Dura*

16  *Pharmaceuticals, Inc. v. Broudo*, the Supreme Court held that in order to succeed in a 10b-5

17  private securities action, a plaintiff must "prove that the defendant's misrepresentation (or other

18  fraudulent conduct) proximately caused the plaintiff's economic loss."  544 U.S. 336, 346

19  (2005).  Universal argues that this Court should likewise limit damages under § 512(f) to

20  economic, or pecuniary, damages proximately caused by the alleged misrepresentation.

21  Lenz argues that *Dura* applied principles of common law only because the 10b-5 private

22  right of action, unlike that created by § 512(f), has "common-law roots" and because "[j]udicially

23  implied private securities fraud actions resemble in many (but not all) respects common-law

24  deceit and misrepresentation actions."  *Id.* at 343.  Lenz emphasizes that, in comparison to the

25  "any damages" language in § 512(f), the language of the Securities Act limits recovery to "actual

26  damages."  *See* 15 U.S.C. § 78bb(a).  She also argues that § 512(f) actions are different form

27  common law misrepresentation actions because § 512(f)  misrepresentations are not made

28  directly to plaintiffs but to third parties, i.e., service providers.

13

1    The Court concludes that a plain language reading of the statute supports certain aspects

2    of both parties' arguments.  The use of "any damages" suggests strongly Congressional intent

3    that recovery be available for damages even if they do not amount to the substantial economic

4    damages required under *Dura*.  The statutory language, overall statutory scheme, and legislative

5    history all are inconsistent with Universal's narrow interpretation of "any damages."  As this

6    Court recognized in an earlier order in this matter, under Ninth Circuit case law a plaintiff in a §

7    512(f) action must demonstrate that the copyright owner acted with subjective bad faith.  *See*

8    *Rossi v. Motion Picture Ass'n of Am. Inc*., 391 F.3d 1000, 1004-05 (9th Cir. 2004).  Requiring a

9    plaintiff who can make such a showing to demonstrate in addition not only that she suffered

10   damages but also that those damages were economic and substantial would vitiate the deterrent

11   effect of the statute.

12   At the same time, neither the statutory language nor the statutory goal of deterrence

13   justifies recovery for all damages that occur as a "but for" result of the misrepresentation.  A fair

14   reading of the statute, the legislative history, and similar statutory language indicates that a §

15   512(f) plaintiff's damages must be proximately caused by the *misrepresentation to the service*

16   *provider and the service provider's reliance on the misrepresentation*.  Universal's argument

17   that concluding otherwise would allow plaintiffs to satisfy the damage element of their claims

18   merely by hiring an attorney and filing suit, thereby incurring "costs and fees," is well taken.

19   It may be that the combination of the subjective bad faith standard and the proximate

20   causation requirements will lead many potential § 512(f) plaintiffs to refrain from filing suit

21   unless they have suffered substantial economic harm or other significant inconvenience.

22   However, as two commentators in the field note, this result is not necessarily at odds with what

23   Congress intended.  *See* Laura Quilter & Jennifer M. Urban, *Efficient Process or "Chilling*

24   *Effects"?  Takedown Notices Under Section 512 of the Digital Millennium Copyright Act*, 22

25   Santa Clara Computer & High Tech. L.J. 621, 631 (2006) ("The alleged infringers are to be

26   protected from mistaken takedowns and misuse of this rather remarkable extra-judicial process

27   *principally through a counternotice procedure . . . .* [T]he vast majority of § 512 notices likely

28   are never subject to the scrutiny of a court.  In part, this was *precisely the point behind § 512*: the

14

1   efficient removal of infringing materials from the Internet in a fair process, with (in most cases)

2   no need for court review." (emphasis added))

3           **b.**     **Recovery of costs and attorneys' fees**

4           Section 512(f) provides explicitly for the inclusion of "costs and fees" as part of the

5   recoverable damages.  Lenz argues that costs and fees incurred both prior to litigation–i.e., in

6   drafting and issuing the counter notice–and during the litigation itself are recoverable.  She

7   contends that this interpretation is consistent with the traditional interpretation of "costs" as costs

8   associated with litigation.

9           Universal concedes implicitly that pre-litigation attorneys' fees are recoverable if they are

10   incurred for work related to the counternotice and not as part of a broader litigation strategy.  At

11   the same time, it contends that costs and fees incurred *following* the commencement of litigation

12   cannot satisfy the proximate causation requirement of § 512(f) because they would accrue not

13   because of the misrepresentation but because of the litigation.  Universal also claims that

14   including the recovery of costs and fees incurred for work in the instant litigation would conflict

15   with the attorney's fees provision of 17 U.S.C. § 505.  Section 505 provides that

16           In any civil action under this title, the court in its discretion may allow the
17           recovery of full costs by or against any party other than the United States or an
        officer thereof.  Except as otherwise provided by this title, the court may also
18           award a reasonable attorney's fee to the prevailing party as part of the costs.

19   17 U.S.C. § 505.  Universal argues that Lenz's reading of § 512(f) would remove the Court's

20   discretion to award (or not award) fees to plaintiffs, force the Court to treat prevailing plaintiffs

21   and defendants differently with regard to fees, and contradict the application of § 505 to "any

22   civil action under" Title 17.

23           As discussed above, the Court concludes that Congress did not intend to allow plaintiffs

24   to establish the damage element under § 512(f) simply by hiring an attorney and filing suit.

25   Congress obviously is familiar with statutory fee-shifting provisions, and there is no indication

26   that it intended § 512(f) to be such a provision.  Accordingly, while any fees incurred for work in

27   responding to the takedown notice and prior to the institution of suit under § 512(f) are

28

15

recoverable under that provision, recovery of any other costs and fees is governed by § 505.

c.    <strong>Recovery for <em>pro bono</em> attorneys' fees and costs</strong>

Even if pre-litigation fees are recoverable under § 512(f), Universal argues that plaintiffs actually must "incur" the attorneys' fees or litigation costs to recover them and cannot recover if their counsel work on a *pro bono* basis. The Ninth Circuit has held that a plaintiff "can 'incur' attorneys' fees if he assumes either: (1) a noncontingent obligation to repay the fees advanced on his behalf at some later time; or (2) a contingent obligation to repay the fees in the event of their eventual recovery." *Morrison v. C.I.R.*, 565 F.3d 658, 662 (9th Cir. 2009). Universal therefore must show that there are genuine issues of material fact as to whether Lenz assumed one of these obligations for fees incurred for work related to responding to the takedown notice.

<strong>2.    Issues of fact material to recoverable damages</strong>

In order to survive Lenz's summary judgment motion on this affirmative defense, Universal must show that there are genuine issues of material fact as to all categories of recoverable damages. Universal has challenged Lenz's claim that her pre-suit activities, which included "time spent reviewing counternotice procedures, seeking the assistance of counsel, and responding to the takedown notice," (Pl.'s MSJ), involved actual expense or economic loss.

Universal does not claim that Lenz did not take these actions or incur any damages in doing so. As discussed above, the Court concludes that actual expenses or economic losses of some minimum value are not necessary under the statute. Accordingly, because there is no genuine issue of material fact as to whether Lenz incurred *some* damages as defined under the statute, Lenz's motion will be granted as to Universal's affirmative defense of no damages.

**D.    Fourth Affirmative Defense: Estoppel**

Universal's fourth affirmative defense is simply that "Plaintiff's claim is barred by the doctrine of estoppel." (Defs.' Answer § 41.) In order to survive summary judgment on its affirmative defense of estoppel, Universal must demonstrate, among other things, that there are triable issues of material fact as to whether Universal detrimentally relied on any misrepresentation by Lenz. *See, e.g.*, *Lyng v. Payne*, 476 U.S. 926, 935 (1986) (holding that "[a]n essential element of any estoppel is detrimental reliance on the adverse party's

16

1   misrepresentations" (citation omitted)).  Universal makes no attempt in its opposition papers to

2   show that it relied in any way on any misrepresentations made by Lenz.  Instead, Universal

3   argues only that there are triable issues "on whether Plaintiff prosecuted this lawsuit knowing her

4   allegations to be false."  (Defs.' MSJ Opp. 25.)  Lenz's motion for summary judgment as to this

5   defense will be granted.

6   **E.      Fifth Affirmative Defense: Waiver**

7           Universal's affirmative defense of waiver similarly is without support or elaboration in

8   Universal's answer or opposition brief.  Universal merely quotes Lenz as expressing her lack of

9   interest in having YouTube host the video at issue and argues that Lenz "is simply pursuing this

10  case as part of her and EFF's 'publicity blitz.'" (Defs.' Opp. 25.)  Universal provides no support,

11  legal or otherwise, for the conclusion that Lenz's opinion should be interpreted as a waiver of her

12  § 512 claim.

13                                        **V. ORDER**

14          For the foregoing reasons, Lenz's motion for partial summary judgment as to each of the

15  challenged affirmative defenses will be granted.

16

17  DATED: February 25, 2010

18

19                                                    JEREMY FOGEL
                                                      United States District Judge
20

21

22

23

24

25

26

27

28

                                                17