1    KELLY M. KLAUS (SBN 161091)
     Kelly.Klaus@mto.com
2    MELINDA E. LEMOINE (SBN 235670)
     Melinda.LeMoine@mto.com
3    MUNGER, TOLLES & OLSON LLP
     355 South Grand Avenue
4    Thirty-Fifth Floor
     Los Angeles, CA  90071-1560
5    Telephone:    (213) 683-9100
     Facsimile:    (213) 687-3702
6
     Attorneys for Defendants
7    UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
     PUBLISHING, INC. and UNIVERSAL MUSIC
8    PUBLISHING GROUP

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                         SAN JOSE DIVISION

12   STEPHANIE LENZ,                    CASE NO.  C 07-03783 JF (RS)

13              Plaintiff,              **OPPOSITION TO PLAINTIFF'S
                                        MOTION TO DETERMINE
14        vs.                           SUFFICIENCY OF RESPONSES TO
                                        REQUESTS FOR ADMISSION**
15   UNIVERSAL MUSIC CORP., UNIVERSAL
     MUSIC PUBLISHING, INC. and UNIVERSAL   [Declaration of Kelly M. Klaus filed
16   MUSIC PUBLISHING GROUP,            concurrently]

17              Defendants.             Date:    March 30, 2010
                                        Time:    10:00 a.m.
18                                      Crtrm:   5 (Hon. Patricia V. Trumbull)

19                                      **[PUBLIC VERSION]**

20

21

22

23

24

25

26

27

28
                                   1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 1

   A.   Legal Standards ............................................................................................... 1

      1.    Requests For Admission Must Be Direct, Simple And Limited To Singular Relevant

            Facts .......................................................................................................... 1

      2.    Plaintiff's Requests To Have All Of Her Requests Deemed Admitted Is Improper ....... 3

   B.   Universal's Responses To Each Of The Disputed Requests Under The Rules ................... 4

      1.    Requests 1 and 2 ........................................................................................ 4

      2.    Request 3 ................................................................................................... 6

      3.    Requests 4, 6 and 7 .................................................................................... 7

      4.    Request 16 ................................................................................................. 9

      5.    Request 17 ............................................................................................... 11

      6.    Requests 26, 32 and 33 ............................................................................ 12

      7.    Requests 29 and 35 .................................................................................. 13

      8.    Request 36 ............................................................................................... 14

      9.    Request 38 ............................................................................................... 15

      10.   Requests 39 and 40 .................................................................................. 16

      11.   Requests 41, 42 and 43 ............................................................................ 18

      12.   Requests 54 and 55 .................................................................................. 20

III.  CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

Page

## CASES

*Abbott v. United States*,
177 F.R.D. 92 (N.D.N.Y. 1997)................................................................. 12, 13

*Asea, Inc. v. Southern Pac. Transp. Co.*,
669 F.2d 1242 (9th Cir. 1981)........................................................................ 3

*Beeman v. TDI Managed Care Servs., Inc.*,
449 F.3d 1035 (9th Cir. 2006)........................................................................ 5

*Booth Oil Site Administrate Group v. Safety-Kleen Corp.*,
194 F.R.D. 76 (W.D.N.Y. 2000).................................................................. 1, 3

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
259 F.3d 1186 (9th Cir. 2001)...................................................................... 15

*Disability Rights Council v. Washington Metropolitan Area Transit Auth.*,
234 F.R.D. 1 (D.D.C. 2006).......................................................................... 2

*Dubin v. E.F. Hutton Group Inc.*,
125 F.R.D. 372 (S.D.N.Y. 1989) ................................................. 1, 2, 8, 10, 15

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)...................................................................................... 11

*Henry v. Champlain Enters., Inc.*,
212 F.R.D. 73 (N.D.N.Y. 2003)................................................................... 1, 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
487 F.3d 701 (9th Cir. 2007)..................................................................... 7, 19

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007)........................................................................ 4

*Rossi v. MPAA*,
391 F.3d 1000 (9th Cir. 2004)........................................................................ 2

*Salinger v. Random House, Inc.*,
811 F.2d 90 (2d Cir. 1987).......................................................................... 14

*The Football Players Ass'n Premier League Ltd v. YouTube*,
USDC SDNY Case No. 07-CV-03582 ............................................................ 4

*United States v. Consolidated Edison Co.*,
1988 WL 138275 (E.D.N.Y. Jan. 11, 1989) ................................................... 1

*Viacom Int'l, Inc. v. YouTube, Inc.*,
USDC SDNY Case No. 07-CV-02103 ............................................................ 4

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000)...................................................................... 14

*Yurman Design, Inc. v. PAJ, Inc.*,
93 F. Supp. 2d 449 (S.D.N.Y. 2000)............................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

### STATUTES

Page

17 U.S.C. § 107 ........................................................................................................................7

17 U.S.C. § 107(4) ..................................................................................................................20

17 U.S.C. § 512 ........................................................................................................................4

17 U.S.C. § 512(f) ..................................................................................................................12

17 U.S.C. § 512(k)(1)(B) .........................................................................................................5

### RULES

Fed. R. Civ. P. 36(a)(4) ....................................................................................................3, 6, 8

Fed. R. Civ. P. 36(a)(6) ............................................................................................................3

### OTHER AUTHORITIES

4 *Nimmer on Copyright* § 13.05 [A][4] ..............................................................................21

1    **I.      INTRODUCTION**

2              Plaintiff's Motion asks the Court to deem admitted more than 20 Requests for Admission.

3    Plaintiff served more than 60 separate Requests in this set alone, and she has served *200* total

4    Requests in this indisputably small case.  The Requests that are the subject of this Motion were

5    poorly worded and objectionable on numerous grounds.  Universal's objections notwithstanding,

6    it *did* provide appropriately qualified partial admissions to a number of the Requests at issue—a

7    fact that Plaintiff barely mentions in her Motion.  Universal's responses and objections were

8    proper under the standards of Rule 36.  This Motion should be denied.

9    **II.     ARGUMENT**

10           **A.      Legal Standards**

11                    1.       **Requests For Admission Must Be Direct, Simple And Limited To
                                Singular Relevant Facts**

12           Plaintiff's Motion devotes almost no attention to the legal standards that govern requests

13   for admission under Rule 36.  The case law is clear that "[e]ach request for admissions must be

14   direct, simple and limited to singular relevant facts, so that it can be admitted or denied without

15   explanation."  *Dubin v. E.F. Hutton Group Inc.*, 125 F.R.D. 372, 375 (S.D.N.Y. 1989) (citing and

16   quoting, *inter alia*, *United States v. Consolidated Edison Co.*, 1988 WL 138275 (E.D.N.Y. Jan.

17   11, 1989); Wright & Miller, Federal Practice and Procedure § 2258 (1970) (internal quotation

18   marks omitted).  "[T]he requesting party bears the burden of setting forth its requests simply,

19   directly, not vaguely or ambiguously, and in such a manner that they can be answered with a

20   simple admit or deny without an explanation, and in certain instances, permit a qualification or

21   explanation for purposes of clarification."  *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77

22   (N.D.N.Y. 2003).  "Ambiguous and vague requests which cannot be fairly answered will not be

23   enforced."  *Booth Oil Site Administrate Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 79

24   (W.D.N.Y. 2000).  "A request should not state 'half a fact' or 'half-truths' which require the

25   answering party to qualify responses."  *Dubin*, 125 F.R.D. at 375 (citation omitted).

26           Although a request may seek an admission regarding the application of law to fact (or the

27   responding party's opinion about the same), a request may *not* ask for an admission on an opinion

28

1    or conclusion of law.  *See, e.g.*, *Disability Rights Council v. Washington Metropolitan Area*

2    *Transit Auth.*, 234 F.R.D. 1, 3 (D.D.C. 2006) (collecting cases).

3         Plaintiff claims that Universal improperly refused to respond to numerous Requests on the

4    ground that Universal disagrees with Plaintiff's views of the legal standards that should govern

5    this case.  *See* Mot. at 2-3.  In particular, Plaintiff asserts that Universal "generally objects to …

6    requests to the extent they might be premised on a theory that 'an entity that sends a notice

7    pursuant to the DMCA must conduct a fair use analysis under 17 U.S.C. § 107' because Universal

8    insists, such a theory is inconsistent with *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004) and this

9    Court's prior rulings."  Mot. at 2:24-3:2.  This is a red herring.  Universal asserted that objection

10   generally (and in response to several Requests) as a means of preserving its record.  If and when

11   Plaintiff attempts to introduce Universal's response in a manner that Universal contends is legally

12   objectionable—for example, to support an argument by Plaintiff that a fair use analysis is

13   required as a prerequisite to sending a takedown notice under the DMCA—Universal has the

14   right to present that objection to the District Court, and if necessary, preserve it for appeal.  That

15   General Objection, however, was not an across-the-board basis for refusing to respond to

16   Plaintiff's Requests.  In fact, in response to Request 16 (discussed below), which asked Universal

17   to admit that it "did not consider whether [Plaintiff's video] was a fair use," Universal asserted

18   this objection (and others) but went on to provide a properly qualified partial admission.

19        Universal *did* object *and* either qualified its answer or stated that it could not answer in

20   response to Requests that call for an application of a legal principle to facts—but that misstate the

21   legal principle.  For example, Request No. 38, discussed below, asked Universal to admit that

22   Plaintiff's use of "Let's Go Crazy" "did not affect the value of" that work "by any quantifiable

23   amount."  As we discuss, that Request has embedded within it an incorrect premise, namely, that

24   an effect from an unauthorized use must be quantifiable to alter the value of the work.  That

25   premise is incorrect under controlling copyright law, and Universal is well within its rights to

26   object to such a misleading request.  *See Dubin*, 125 F.R.D. at 375-76 ("A request should not

27   state 'half a fact' or 'half-truths' which require the answering party to qualify responses.")

28   (citation omitted).

2.     **Plaintiff's Requests To Have All Of Her Requests Deemed Admitted Is Improper**

As to every single Request, Plaintiff asks the Court to enter an Order deeming the Request admitted.  That is an improper remedy, and it would create a radically misleading record on numerous issues.  Rule 36(a)(6) provides that the Court may Order the matter admitted (or a supplemental response) only upon a "finding that an answer does not comply with this rule[.]"  Fed. R. Civ. P. 36(a)(6).  Universal's responses have complied with the Rules.  Where Universal in good faith believed that it had to qualify an answer, its answers have "specif[ied] the part admitted and qualif[ied] or den[ied] the rest."   Fed. R. Civ. P. 36(a)(4).  Indeed, as to numerous Requests, Plaintiff in her motion does not even discuss Universal's qualified responses, but instead suggests (misleadingly) that Universal simply denied the Request.  Where Universal was unable to provide a response to a Request—such as where the Request is unintelligible— Universal has so stated in detail.  That again is in compliance with Rule 36(a)(4).  It is "a refusal to admit, without detailed reasons why the responder cannot truthfully admit or deny is the equivalent of an admission."  *Booth Oil*, 194 F.R.D. at 80 (citing cases).

While Universal believes that its responses and objections to the disputed Requests are proper, as demonstrated below, should the Court disagree, Plaintiff is not entitled to an order deeming the Requests admitted.  The most that Plaintiff would be entitled to is an order directing Universal to serve supplemental responses.  *See Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) (where answering party is found not to have made "reasonable inquiry" or utilized "readily obtainable" information to admit or deny request, "the district court should ordinarily first order an amended answer, and deem the matter admitted only if a sufficient answer is not timely filed").[1]  Indeed, with respect to several of the Requests discussed below, an

---

[1] The Ninth Circuit in *Asea* went on to hold that a district court may order "the severe sanction or ordering a matter admitted when it has been demonstrated that a party has intentionally disregarded the obligations imposed by Rule 36(a)."  *Asea*, 669 F.2d at 1247.  Although in that case there had been "[a] year of volatile and acrimonious fighting, during which many discovery disputes were placed before the judge as referee," the Ninth Circuit ultimately remanded for further factual findings to determine if "the severe sanction of deeming admitted certain key matters described in the requests" was justified.  *Id.*

Order deeming the matter admitted would result in a record that is directly contrary to the uncontroverted factual record in the case.

**B.    Universal's Responses To Each Of The Disputed Requests Under The Rules**

1.    **Requests 1 and 2**

*No. 1:  Admit that YOUTUBE is a provider of online services or network access, or the operator of facilities therefor.*

*No. 2:  Admit that YOUTUBE is a provider of online video hosting services.*

<u>The Requests Seek Admissions That Are Irrelevant To This Case</u>:  Both Requests ask Universal to admit that *YouTube*—which is not a party to this case—meets one of the criteria for so-called "safe harbor" protection under the DMCA for infringing content on its site.  These Requests seek irrelevant information.  Whether *YouTube* satisfies the legal requirements for being a "service provider" is *irrelevant* to this case:  *YouTube is not a defendant, and any limitations of YouTube's liability are not in issue in this case.*[2]

Plaintiff argues that the Requests seek relevant admissions because Universal, in its email notice and in this action, has claimed that *Universal* did not send *its* notice pursuant to the DMCA.  Universal made clear that the notice used the language it did because that is what YouTube's Terms of Use require for a copyright owner or its agent to request the removal of unauthorized material from the site.  *See* Doc. No. 34 Ex. A at 6 (Universal Notice).  Universal was not thereby conceding that the DMCA applied to YouTube, nor was Universal required to do so as a prerequisite to requesting that YouTube remove unauthorized content.  Whether YouTube would be adjudicated to meet all of the legal requirements for claiming safe harbor protection— including whether it meets the legal test of being a "service provider"—could only be determined if a copyright owner sued YouTube for copyright liability, and YouTube thereafter established the legal requirements for "Limitations on liability relating to material online."  17 U.S.C. § 512.  *See generally Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109-18 (9th Cir. 2007) (analyzing multiple statutory requirements for safe harbor protection).  Plaintiff cites no authority—and

---

[2] The question whether YouTube is entitled to rely on the safe harbor provisions of the DMCA is currently being litigated in different cases, and is not relevant to this case or this motion.  *Viacom Int'l, Inc. v. YouTube, Inc.*, USDC SDNY Case No. 07-CV-02103; *The Football Players Ass'n Premier League Ltd v. YouTube*, USDC SDNY Case No. 07-CV-03582.

1   Universal is aware of none—for the proposition that a copyright owner, as a prerequisite to

2   sending a notice pursuant to a web site's terms of use, is required to evaluate (much less

3   conclude) that the web site meets the requirements for a DMCA safe harbor.

4        In short, this case does not and never will present or resolve the question of YouTube's (or

5   any other web site's) eligibility for safe harbor protection under the DMCA, so these Requests

6   seek irrelevant information.

7        <u>The Requests Seek Admissions As To Conclusions Of Law</u>:  In addition to seeking

8   irrelevant information, the Requests also are improper because they ask Universal to admit the

9   legal conclusion that YouTube meets the legal requirements for being a "service provider"

10  entitled to claim DMCA safe harbor protection.

11       Plaintiff argues that these Requests "seek only facts" that "*pertain*[] to whether or not

12  YouTube is a service provider pursuant to 17 U.S.C. § 512[.]"  Mot. at 4 (emphasis added).  In

13  reality, Plaintiff asks Universal not to admit facts that might be relevant to the question of

14  YouTube's status as a service provider, but the ultimate legal conclusion that YouTube *is* a

15  "service provider" under the DMCA.  That Plaintiff seeks legal conclusions is clear from

16  comparing the Requests (quoted above) with the statutory standard for who or what is a "service

17  provider":

18           As used in this section, other than subsection (a), *the term "service
             provider" means a provider of online services or network access, or the operator
19           of facilities therefor*, and includes an entity described in subparagraph (A).

20  17 U.S.C. § 512(k)(1)(B) (emphasis added). Requests 1 and 2 track the italicized statutory

21  standard precisely, the only exception being that Request 2 adds the words "video hosting"

22  between "online" and "services."

23       Whether YouTube meets the statutory definition of a "service provider" is a matter of

24  determining if the statute applies to YouTube.  The interpretation of a statute is a legal, not a

25  factual, question.  *See, e.g., Beeman v. TDI Managed Care Servs., Inc.*, 449 F.3d 1035, 1038 (9th

26  Cir. 2006).  Because the Requests ask Universal to admit legal conclusions, they are improper and

27  Plaintiff's Motion as to them must be denied.

28

2.    **Request 3**

*Admit that the JUNE 4 NOCI represented that LENZ VIDEO was infringing the copyright in LET'S GO CRAZY.*

The Request That Plaintiff Actually Asked—As Opposed To The Request She
Hypothesizes In Her Motion—Seeks A Misleading Admission Concerning A Legal Conclusion:
After objecting to this Request, Universal admitted that its June 4, 2007 notice to YouTube states
what it states:  That, per YouTube's Terms of Use, Universal had "a good faith belief that the
above-described activity"—*i.e.*, the more than 200 video postings (including Plaintiff's) that
embodied musical compositions by Prince—"is not authorized by the copyright owner, its agent,
or the law."  Doc. No. 34 Ex. A at 6 (Universal Notice).  Universal's response then denies all that
it has not specifically admitted.  Kwun Decl. Ex. B at 7-8.  That is entirely proper under the
Rules.  Fed. R. Civ. P. 36(a)(4).

Plaintiff argues that Universal should have answered the Request as though it were
phrased to ask Universal to admit that it "*understand[s] … the meaning or intent*" of the notice to
be "that [the Let's Go Crazy] Video was infringing the copyright in Let's Go Crazy."  Mot. at
4:27-5:6 (emphasis added; quotations omitted).  That is *not*, however, the Request that Plaintiff
actually served.  The Request that Plaintiff *served* asks Universal to admit that the June 4, 2007
email "*represented* that [the] Lenz Video was infringing[.]"  Kwun Decl. Ex. A at 4 (emphasis
added).

The reason that Plaintiff wants a written admission that the notice included words that it
does not include—namely, that Plaintiff's posting "was infringing"—is for what Plaintiff claims
is the legal conclusion she believes to be embodied within such a statement.  In particular,
Plaintiff wants to transform Universal's statement to include the additional representations that *if*
Universal sued Plaintiff for copyright infringement (which it had not and has not done); and if
Plaintiff was adjudicated to have *prima facie* violated one of the exclusive rights of copyright
under 17 U.S.C. § 106 (as has not happened); and if Plaintiff in defense of that lawsuit raised one
or more of the affirmative defenses to copyright infringement, including the defense of fair use

1    under § 107 (which she has not done)[3]; then the defense would be adjudicated to be insufficient

2    and Plaintiff would be liable as an infringer (which also has not happened).

3           The June 4 notice, of course, does not state any of those additional points.  If Plaintiff

4    wants to try to convince the Court that it should read Universal's statements in the June 4 notice

5    to encompass a representation about all of those additional points, that is a legal argument that

6    Plaintiff can make to the Court and that Universal can and will oppose.  It is improper for Plaintiff

7    to attempt to end-run the need to support her legal argument with a misleading Request for

8    Admission that calls for a conclusion of law.

9           Universal's Legal Arguments *After* The June 4 Notice Do Not Make This Request Any

10   Less Improper:  Plaintiff tries to get around Universal's legal conclusion objection by pointing to

11   legal arguments that Universal has made in *subsequent* correspondence with YouTube and filings

12   with the Court.  Mot. at 5:16-19.  Plaintiff claims that if Universal made legal contentions in those

13   documents, then it is not too much for Universal to be required to admit or deny legal contentions

14   concerning the original notice.  This argument proves too much for Plaintiff.  Not only do these

15   legal arguments post-date the June 4 notice—and thus fall outside the scope of the Request—but

16   they are legal arguments by lawyers.  Universal has no problem litigating the legal point that

17   Plaintiff wants to make based on the text of the June 4 notice.  That fight must happen based on

18   legal arguments presented to the legal decision-maker, not through misleading and improper

19   Requests for Admission.

20                    3.      **Requests 4, 6 and 7**

21          *No. 4:  Admit that YOU intended YOUTUBE to remove or disable access to the LENZ
     VIDEO as a result of the JUNE 4 NOCI.*

22
          *No. 6:  Admit that YOUTUBE removed or disabled access to the LENZ VIDEO as a result*
23   *of the JUNE 4 NOCI.*

24          *No. 7:  Admit that YOUTUBE relied upon the JUNE 4 NOCI in removing or disabling*
     *access to LENZ VIDEO.*

25

26   [3] The Supreme Court and Ninth Circuit have made it clear that a court does not reach the question
     of fair use under Section 107 until the court *first* concludes the use infringes under Section 106.
27   Fair use is *always* an affirmative defense to a claim of copyright infringement.  *See, e.g.*,
     *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Perfect 10, Inc. v. Amazon.com,*
28   *Inc.*, 487 F.3d 701, 719 (9th Cir. 2007).

10075040.1                                                OPP. TO MOT. RE RFA RESPONSES
                                                          CASE NO. CV-07-03783

<u>Universal Admitted These Requests To The Extent It Was Able To</u>:  Plaintiff does not actually come out and tell the Court this, but Universal properly qualified its responses and admitted in part each of these Requests.  These are the answers that Plaintiff omits from her brief:

> No. 4:  Subject to and without waiver of its General and Specific Objections, Universal admits that the June 4, 2007 email to YouTube speaks for itself and that it states, among other things, that "we request that you remove the infringing files from the system, or that you disable access to the infringing files." Except as specifically admitted herein, Universal denies the request.

> No. 6:  Subject to and without waiver of its General and Specific Objections, Universal admits that, *to its knowledge*, YouTube temporarily removed or temporarily disabled access to Plaintiff's "Let's Go Crazy" in response to the June 4, 2007 email from Universal that referred to the URL www.youtube.com/watch?v=N1KfJHFW1hQ, among others. Except as specifically admitted herein, Universal denies the request.  (Emphasis added.)

> No. 7:  Subject to and without waiver of its General and Specific Objections, Universal admits that, *to its knowledge*, YouTube temporarily removed or temporarily disabled access to Plaintiffs "Let's Go Crazy" in response to the June 4, 2007 email from Universal that referred to the URL www.youtube.com/watch?v=N1KfJHFW1hQ, among others. Except as specifically admitted herein, Universal denies the request.  (Emphasis added.)

Kwun Decl. Ex. B at 8-9 (emphases added).

The highlighted qualifications in Universal's responses were both necessary and authorized, because Universal is not YouTube.  Rule 36 does not require Universal to "seek[] information from a third party *absent sworn deposition testimony*[,]" of which there is none of YouTube.  *Dubin*, 125 F.R.D. at 374.  Rule 36 *expressly* provides that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Fed. R. Civ. P. 36(a)(4).  That is exactly what Universal did:  Universal admitted what YouTube, ***to Universal's knowledge***, did in response to Universal's June 4, 2007 email.  If Plaintiff believed it was relevant to her case to have YouTube on record stating why it took certain actions, Plaintiff could and should have noticed a deposition of YouTube during the time that was open for serving discovery notices.  She did not do that, and she cannot require Universal to make its own independent inquiry of YouTube in this regard.[4]

---

[4] Per Court Order, there are to be no further notices for deposition without the approval and Order of the Court.  *See* Doc. No. 176 at 3.

10075040.1

OPP. TO MOT. RE RFA RESPONSES
CASE NO. CV-07-03783

4. **Request 16**

*Admit that YOU did not consider whether the LENZ VIDEO was a fair use of the copyright in LET'S GO CRAZY prior to sending the JUNE 4 NOCI.*

<u>Universal Admitted This Request To The Extent It Was Able To Understand It</u>:  Here again, Plaintiff's Motion conveys the misleading impression that all Universal did was object to this Request.  *See* Mot. at 6-7.  That is wrong.  Universal certainly stated its well-founded objections—and there are many—to this poorly drafted Request.  But Universal then went on to provide the following qualified answer in accordance with Rule 34(a)(4):

> Subject to and without waiver of its General and Specific Objections, Universal admits that, prior to the time that Universal sent the email to YouTube that is the subject of Plaintiffs complaint, a Universal employee had watched the Let's Go Crazy video and had considered certain information observable from that video that Universal believes a court could have considered had Plaintiff been sued for copyright infringement (she has not been sued) and had she raised (as she has not done) the affirmative defense of fair use for her admittedly unauthorized use of Let's Go Crazy. Except as specifically admitted herein, Universal denies the request.

Kwun Decl. Ex. B at 14.

Universal believed in good faith that it had to qualify its partial admission as it did because Plaintiff did not supply any definition for what it means to "consider fair use."  Whether a use does or does not amount to a fair use is reached only after a defendant in an infringement action first affirmatively pleads it and then proves it after an intense equitable balancing of multiple factors, including four factors set out in the text of Section 107.  The statutory factors are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107.

If Plaintiff had wanted to Request whether Universal had taken into account one or more of the factual elements that may inform one or more of these statutory factors, Plaintiff could and should have asked precisely drawn Requests.  *See Henry*, 212 F.R.D. at 77 ("the requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and

1   in certain instances, permit a qualification or explanation for purposes of clarification"); *Dubin*,

2   125 F.R.D. at 375 ("[e]ach request for admission must be direct, simple and limited to singular

3   relevant facts").  For example, Plaintiff could have asked whether Universal, in deciding whether

4   to include Plaintiff's posting in the notice to YouTube, took into account in any way the amount

5   of the "Let's Go Crazy" work that Plaintiff incorporated into her video.  In fact, the Universal

6   employee—Sean Johnson—who reviewed Plaintiff's posting testified that he *did* take into

7   consideration the fact that the song "was loud in the background and it was played through the

8   entire video."  Klaus Decl., Ex. 1 (Johnson Dep. Tr.) at 76:4-6.  Plaintiff, however, did not ask

9   precisely drawn Requests that would have gone to this or other facts, and Universal therefore had

10  to qualify its answer as stated above.

11         The District Court's Orders in this case show why it is important to have precision—

12  which Plaintiff's Request does not have—regarding Universal's subjective consideration of

13  factors relating to Plaintiff's video posting.  Although the Court denied Universal's motion to

14  dismiss Plaintiff's Second Amended Complaint, the Court made it clear that it "did not hold that

15  every takedown notice must be preceded by a full fair use investigation."  Doc. No. 53 at 4:11-12.

16  While Universal continues to disagree with the Court's resolution of its motion to dismiss,

17  Plaintiff has not even established that her posting was one that required any type of "fair use

18  investigation," or what the contents of such an investigation would be, under the Court's Orders.

19  *See* Doc. No. 45 at 7 ("Undoubtedly, some evaluations of fair use will be more complicated than

20  others.").  By asking Universal to admit or deny a Request incorporating an undefined standard of

21  what it means to "consider fair use," Plaintiff attempts to avoid the difficult threshold questions

22  that the Court's Orders have reserved.

23         <u>Plaintiff's Attempt To Have The Request *As Drafted*—Or Even As She Says, As</u>

24  <u>"Narrowed"—Admitted Is Improper And Misleading</u>:  For the reasons stated above, Section II.B.,

25  *supra*, Plaintiff is not entitled to an Order deeming this (or any other) Request admitted.  That

26  result would be particularly improper and misleading with respect to Request No. 16, because

27  Plaintiff herself effectively concedes that the Request was poorly drafted and had to be qualified

28  and narrowed.  Mot. at 7:15-17.  Plaintiff's proposed narrowing of this Request during meet-and-

confer discussions did not clarify the Request.  Plaintiff proposed changing "considered" to "came to some conclusion."  That still does not resolve the ambiguity of what the "*it*" is as to which Universal did (or did not) "come to some conclusion."  The doctrine of fair use "is an equitable rule of reason," and the Supreme Court has said that "no generally applicable definition is possible, and each case raising the question must be decided on its own facts."  *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985) (quotation and alteration omitted).

Plaintiff's Request is inherently ambiguous, her proposed clarification did not resolve the ambiguity, and Plaintiff's Motion regarding this Request must be denied.

### 5.   **Request 17**

*Admit that an online video hosting service has value to a person whose video is hosted online by such service.*

This Request Is Unintelligible Because Plaintiff Does Not Define What "Value" Is Or Who The Particular "Person" May Be To Whom A Service May (Or May Not) Have Value: Plaintiff asserts that "'[v]alue in this context *obviously* means economic value, such as providing utility."  Mot. at 7:24-8:1 (emphasis added).  There is nothing "obvious" about that.  The word "value," standing alone, can and does have many meanings, many of which may be entirely subjective.  The fact is that Plaintiff did not qualify or define the term by saying "economic value."  She does not clarify anything by proposing in her Motion to add a clause—"such as providing utility"—that was never in her Request in the first place.  "Utility" does not necessarily translate into economic value, as evidenced by the fact that a person can find many things "useful"—from daydreaming to crossing the street only on green lights—that do not have economic value.

The Request is equally unintelligible because it fails to define who the "person" is to whom a video hosting service may—or may not—have "value," however that is defined.  An online video site does not necessarily have any economic value to the people who use it.  Exhibit A in this regard is Plaintiff herself.  In an email message to her non-lawyer friend Theryn Fleming shortly after YouTube temporarily removed her video, Plaintiff stated:

10075040.1

1    Klaus Decl., Ex. 2 at 1 (emphasis added).  Even if the definition of "value" was clarified (and it

2    was not), that question could not be answered except with reference to a specific person,

3    something Plaintiff did not do in her Request.

4            <u>Because The Request Is Not Tied To Plaintiff Or The Facts Of This Case, It Seeks</u>

5    <u>Irrelevant Opinion</u>:  The point just made also demonstrates why the Request seeks entirely

6    irrelevant opinions about abstract matters.  Requests concerning the application of law to facts

7    must be connected to the facts *of the case at bar*.  *See Abbott v. United States*, 177 F.R.D. 92, 93

8    (N.D.N.Y. 1997) ("The defect of this request is plain—plaintiffs have attempted to have the

9    Government respond to a legal question unconnected to the facts of the case at bar.") (collecting

10    cases).  The question whether the use of an online service may have some economic consequence

11    could only be a relevant issue *in this case* insofar as it concerns the statutorily required element

12    that *Plaintiff* have suffered damages as a result of YouTube removing her video posting.  17

13    U.S.C. § 512(f).  Of course, if Plaintiff had inquired whether Universal believed YouTube's

14    service had any economic value *to Plaintiff*, Universal would have denied the Request.  Plaintiff's

15    email to Ms. Fleming admits that the service had no such value.

16                  6.    **Requests 26, 32 and 33**

17       *No. 26:  Admit that YOU have never granted a SYNCHRONIZATION license for any*
   *HOME VIDEO for any PRINCE copyrights YOU administer.*

18

19       *No. 32:  Admit that YOU have never licensed any exclusive right under 17 U.S.C. § 106*
   *for any PRINCE copyrights YOU administer to any creator of any HOME VIDEO for use in such*
   *a video.*

20

21       *No. 33:  Admit that, to YOUR knowledge, PRINCE has never licensed any exclusive right*
   *under 17 U.S.C. §106 for LET'S GO CRAZY to any creator of any HOME VIDEO for use in such*
   *video.*

22

23            <u>The Requests' Use Of The Term "Home Video" Makes Them Unintelligible; To The</u>

24    <u>Extent Any Meaning Can Be Discerned, The Requests Seek Irrelevant Opinions Unconnected To</u>

25    <u>The Case At Bar</u>:  These Requests are unintelligible because the concept of a "Home Video" on a

     site like YouTube has no discernable meaning.  Plaintiff contends that her supplied definition—"a

26    video recorded by an individual using readily available consumer recording equipment, for

27    personal noncommercial use"—clears things up.  It does not.  In this day and age, where

28

professional cinematographers strive to achieve effects of cinéma vérité, it is difficult if not impossible for someone watching a video on YouTube to know whether it was recorded using "a camcorder, mobile phone with video capacity, or a digital camera." Mot. at 9:18-19. The concept of a YouTube video being for "personal noncommercial use," is a *non sequitur*. Videos posted to YouTube by definition are not "personal," since they are posted for anyone in the world to watch. The concept of such postings as being "noncommercial" also is meaningless, since YouTube is a commercial service, and people can and do generate commercial benefit from their postings.

Plaintiff contends that all of these problems with her definition of "Home Video" are beside the point, because the Requests "do not call for any determination *based upon viewing a video on YouTube*." Mot. at 10:1-2 (emphasis added). That just confirms why these are improper Requests: ***If Plaintiff's Requests have nothing to do with viewing videos posted to YouTube, then they seek patently irrelevant information***. *See Abbott*, 177 F.R.D. at 93. This case has nothing to do with videos that people make and watch entirely within the confines of their own home. This case involves a video posted to YouTube, where such a video can be viewed by anyone, anywhere in the world with an Internet connection (as Plaintiff's video has, nearly a million times to date). Plaintiff's Motion as to these Requests should be denied.

### 7.   **Requests 29 and 35**

*No. 29:  Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license the SYNCHRONIZATION, to audio-visual works displayed on YouTube, of any of his musical compositions that YOU administer.*

*No. 35:  Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license any exclusive right under 17 U.S.C. § 106 in audio-visual works displayed on YouTube with respect any [sic] of his musical compositions that YOU administer.*

<u>The Requests Seek Irrelevant Information</u>:  These Requests have nothing to do with Plaintiff's posting or with Plaintiff's allegation in her SAC that "Prince himself demanded that Universal seek the removal of the Holden Video." SAC ¶ 31. Plaintiff responds with the assertion, "[h]ardly—these facts speak directly to the issue of whether Universal sent a takedown notice for Ms. Lenz's video simply because Prince instructed it to shut down all uses of his works online—i.e. whether Universal acted in good faith or bad faith in sending that takedown notice—

- 13 -

1   and to whether there is an actual market for YouTube video licenses of songs written by Prince,

2   which bears on whether Ms. Lenz's video was fair use." Mot. at 10:11-16.  In fact, the Request is

3   relevant to none of these matters.

4          Whether Prince did or did not issue instructions about granting license requests for videos

5   on YouTube is irrelevant to Plaintiff's claim.  It is undisputed that Plaintiff never asked for

6   permission to post her video utilizing "Let's Go Crazy."  Prince's instructions regarding

7   responses to license requests is also irrelevant to Plaintiff's actual allegation, which is that "Prince

8   himself demanded that Universal seek the removal of the Holden Video."  SAC ¶ 31.  Plaintiff's

9   claim about the request being relevant to whether there is a market for YouTube licenses misses

10  the mark for purposes of the *legal* issue whether a use is or is not fair use.  A copyright owner's

11  exclusive right to grant authorization for some uses includes the right *not* to grant such licenses,

12  as well as the right of the copyright owner to change her or his mind.  *See Worldwide Church of*

13  *God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000); *Salinger v.*

14  *Random House, Inc.*, 811 F.2d 90, 99 (2d Cir. 1987).

15         Plaintiff's Motion as to these Requests should be denied.

16                    8.    **Request 36**

17     *Admit that the June 2007 Content License Agreement (UMC-0000664-UMC-0000691)*
       *does not authorize YouTube users to include an embodiment of LET' S GO CRAZY in HOME*
18     *VIDEOS posted on YouTube.*

19         The Request That Plaintiff Actually Asked—As Opposed To The Request She

20  Hypothesizes In Her Motion—Seeks An Admission Concerning A Legal Conclusion On An

21  Irrelevant Subject:  This Request suffers from the same defect as discussed concerning Request

22  No. 3.  Plaintiff is asking Universal to interpret the legal meaning of its June 2007 Content

23  License Agreement with YouTube.  Plaintiff did *not* ask Universal what its understanding or

24  belief was concerning the legal question presented.

25         Universal has produced the Agreement to Plaintiff.  It is not clear why the legal issue that

26  she wants an admission to has any relevance to her case.  Plaintiff does not discuss relevance at

27  all in her Motion.  But if she believes the legal issue is relevant to her claim, she can make her

28  arguments to the Court.

10075040.1                                          OPP. TO MOT. RE RFA RESPONSES
                                                    CASE NO. CV-07-03783

9.   **Request 38**

*Admit that LENZ's use of the LENZ VIDEO did not affect the value of LET'S GO CRAZY by any quantifiable amount.*

The Request Seeks An Admission Based On The Application Of Law To Fact, But The Legal Standard Embedded In The Request Is Erroneous:  This Request is directed to an admission on the application of a legal principle—namely, whether Plaintiff's posting of her video had any effect on the value of the underlying copyrighted work—but the legal principle embedded within the Request is erroneous.  Specifically, the Request presumes that it is possible for someone to make an unauthorized use of a copyrighted work that has no effect on the value of that work whether that effect is not quantifiable.  That must be the premise because otherwise the Request is not capable of being answered "admit" or "deny."

The premise, however, reflects an erroneous statement of law.  Congress has recognized in the Copyright Act itself that unauthorized uses will affect the value of copyrighted works, even if that value cannot be quantified.  In particular, Congress gave copyright holders the statutory right to elect *either* "actual damages and any additional profits of the infringer" *or* "*instead …* statutory damages."  17 U.S.C. § 504 (emphasis added).  Congress gave plaintiffs this choice "precisely because of the difficulties inherent in proving actual damages and profits[.]"  *Yurman Design, Inc. v. PAJ, Inc.*, 93 F. Supp. 2d 449, 462 (S.D.N.Y. 2000), *aff'd in relevant part, rev'd on other grounds*, 262 F.3d 101 (2d Cir. 2001).  As the Ninth Circuit has made clear, "[a] plaintiff may elect statutory damages *regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits*."  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (quotation omitted; emphasis added).

Because it is based on an incorrect and misleading premise, the Request is improper and the Court should deny Plaintiff's Motion to have it deemed admitted.  *See Dubin*, 125 F.R.D. at 375-76 ("A request should not state 'half a fact' or 'half truths' which require the answering party to qualify responses.") (citation omitted).

1

        10.    **Requests 39 and 40**

2

        *No. 39:  Admit that PRINCE communicated with YOU regarding the removal of the LENZ*

*VIDEO.*

3

        *No. 40:  Admit that PRINCE requested that YOU seek the removal of the LENZ VIDEO.*

4

        <u>Universal Responded To Both Requests—It Denied Them</u>:  Plaintiff concedes that

5

Universal denied both of these Requests, but says that this denial was "subject to an important

6

caveat:  a claim of attorney-client and work-product privilege."  Mot. at 12:13-14.  That is not

7

accurate.  Universal qualified its denial based on the *timing* as to any communications between

8

Prince and Universal.  What Universal said in response to both Requests was that, because the

9

Requests did not include any time definition, and so as to avoid any intrusion on valid claims of

10

privilege and work-product protection, Universal construed the Request to concern

11

communications on or before June 4, 2007—the date of Universal's notice to YouTube—between

12

Prince and Universal.  Kwun Decl. Ex. B at 26-27.

13

        The June 4, 2007 date is the end point for relevant communications *according to*

14

*Plaintiff's own allegations*.  Plaintiff's SAC specifically alleges:

15

                *On information and belief, Prince himself demanded that Universal seek*
                *the removal of the Holden Video*. On information and belief, Universal sent the

16

                DMCA notice at Prince's behest, based not on the particular characteristics of the
                Holden Video or any good-faith belief that it actually infringed a copyright but on

17

                its belief that, as "a matter of principle," Prince "has the right to have his music
                removed."

18

19

SAC ¶ 31 (emphasis added).  The District Court cited this specific allegation in holding that

20

Plaintiff had pleaded facts sufficient to get beyond a motion to dismiss.  Doc. No. 45 at 3:11-15 &

21

8:11-13 (Order Denying Mot. to Dismiss).  By definition, the relevant question that these

22

Requests could be directed to is whether (as Plaintiff alleged) "Prince himself demanded that

23

Universal seek the removal of" Plaintiff's posting.  The only time period as to which this

24

allegation could have any relevance is the time when Universal included Plaintiff's video in its

25

notice to YouTube, *i.e.*, on or before June 4, 2007.

26

        Universal's denials of these Requests as limited to the time on or before June 4, 2007 was

27

proper and complied with Rule 36.

28

1       Plaintiff's Contention That Universal's Answers Are Based On Overruled Privilege

2  Objections Is Irrelevant And Incorrect:  Plaintiff asserts that Judge Seeborg and Judge Fogel have

3  both ordered that Universal is not entitled to claim privilege or work product protection over *any*

4  communications—regardless of time or content—between Prince and Universal.  Plaintiff claims

5  that Universal's drawing the line at June 4, 2007, so as to avoid any intrusion into privileged

6  communications, is based on a "false cloak of privilege."  Mot. at 12:18.  For the reasons

7  discussed above, this entire line of argument is irrelevant.  The only Prince-Universal

8  communications concerning Plaintiff's video posting that could conceivably be relevant to this

9  case would have been on or before June 4, 2007.  And Universal has denied the Requests as to

10  such communications.

11       As Plaintiff well knows—because the fact is reflected on Universal's privilege log and

12  Plaintiff has not filed any motion challenging it—Universal did have privileged communications

13  with Prince *concerning this lawsuit, after it was filed*.  Klaus Decl., Ex. 3.  Those

14  communications are irrelevant to Plaintiff's complaint, for the reasons discussed above.  But they

15  also remain privileged, notwithstanding Judge Seeborg's prior privilege ruling.  Judge Seeborg's

16  Order concerned Universal's privilege claim over common-interest communications with Prince

17  and his representatives regarding the general subject of sending notices to YouTube to remove

18  videos embodying Prince's compositions.  *See* Doc. No. 150 (Order on Mot. to Compel) at 7:4-

19  8:3.  *See also* Doc. No. 196 (Order Overruling Universal's Objection) at 2:23-24.  The issue of

20  Universal's ability to claim privilege over communications with Prince *concerning this lawsuit*

21  was not presented to, or decided by, Judge Seeborg or Judge Fogel.  Indeed, at the time of that

22  motion, Universal's production only went through the date of Plaintiff's original complaint in this

23  action, July 24, 2007.  Doc. No. 150 (Order on Mot. to Compel) at 5:18-19.  There were no

24  communications between Prince and Universal concerning this lawsuit prior to July 24, 2007—

25  and nothing about this was presented to or decided by Judge Seeborg—for the simple reason that

26  *there was no lawsuit* prior to that date.

27       Post-lawsuit communications between Universal and Prince concerning this lawsuit are

28  not subject to Judge Seeborg's Order overruling the privilege claim on the general subject of

sending notices.  The common-interest issues are quite different than the ones that were resolved

on the prior motion, because the common-interest issues for post-lawsuit communications

concern actual filed litigation.  That is not what Judge Seeborg considered on the prior motion,

which he described as involving "ordinary business advice" about whether to send takedown

notices.  Plaintiff's original complaint specifically requested a declaration of non-infringement of

"Let's Go Crazy," which Prince owns.  Doc. No. 1 at 5 (Count 3).  That claim was dismissed with

prejudice on April 4, 2008 (Doc. No. 32) but the fact remains that Universal and Prince had

common legal interests in discussing the lawsuit and Plaintiff's allegations.

Notably, Universal told Plaintiff that it was withholding post-lawsuit communications

with Prince concerning this litigation, and Plaintiff never filed a motion to compel on that

privilege claim.  Klaus Decl., Ex. 3.  Plaintiff's attempt to get around her failure to file a motion

on that privilege assertion is baseless.

<u>Plaintiff's Attempt To Have The Request Admitted Is Improper And Would Result In A</u>

<u>Misleading Record</u>:  Because Universal denied these Requests in accordance with the Rules,

Plaintiff's request for an Order deeming these Requests admitted is improper and unwarranted

under Rule 36(a)(6).  In addition, deeming these Requests admitted would create a highly

misleading and baseless record.  As discussed, Plaintiff was able to get her Second Amended

Complaint past a motion to dismiss based on the allegation that "'Prince himself demanded that

Universal seek the removal of the ["Let's Go Crazy #1"] video[.]'"  Doc. No. 45 (Order Denying

Mot. to Dismiss) at 3:11-12 (quoting SAC ¶ 31).  The uncontroverted record evidence, however,

is that, prior to Universal's sending the June 4, 2007 email to YouTube, neither Prince nor any of

his representatives had communicated with Universal regarding Plaintiff's posting.  Klaus Decl.

Ex. 4 at ¶ 9 (Doc. No. 113) (Allen Decl.).  Universal therefore denied these Requests.  An Order

deeming them admitted thus would create an incorrect and misleading record on a fact that the

District Court has deemed critical to the viability of Plaintiff's complaint.

### 11.  **Requests 41, 42 and 43**

*No. 41:  Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson that fair use of a copyrighted work is not an infringement of copyright.*

*No. 42:  Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson to consider fair use when reviewing YouTube videos for copyright infringement.*

*No. 43:  Admit that Sean Johnson did not consider fair use when reviewing the LENZ VIDEO.*

<u>Request No. 41 Is Based On An Incorrect Legal Premise And Therefore Is Misleading And Irrelevant</u>:  As with Plaintiff's Request No. 38, *supra*, this Request is based on a misleading and inaccurate premise.  Plaintiff's premise in asking this question is that whether a particular use constitutes fair use can be decided before an infringement action is filed and someone raises and proves the defense of fair use.  The fair use defense is just that – an *affirmative defense* to conduct that otherwise infringes one or more of the exclusive rights of copyright under Section 106.  A court does not reach the question of fair use under Section 107 until the court *first* concludes the use infringes under Section 106.  *Campbell*, 510 U.S. at 590; *Perfect 10 v. Amazon.com*, 487 F.3d at 719.  Because the Request is based on an inaccurate and misleading premise, Universal is not required to respond to it.

In any event, this RFA is irrelevant and unnecessary in light of the fact that Plaintiff can simply *ask Mr. Johnson* both what he was instructed to do and what he actually did.  In fact, she has done that.  From his deposition testimony, its clear that Mr. Johnson's review considered numerous factors that a court could also consider if it were adjudicating a fair use affirmative defense.  Mr. Johnson stated that he reviewed the video and assessed whether it should be included in the email to YouTube, weighing a number of factors.  He testified that, in his judgment, "Let's Go Crazy" is the focus of the video for a number of reasons, including:  he recognized the song "right off the bat"; it plays throughout the video; it plays loudly; it is not obscured like background music might be in a bar; the videographer asks the child "Do you like the music?" to which the child dances in response; and the video is even titled "'Let's Go Crazy' #1."  *See* Klaus Decl., Ex. 1.  Whether what Mr. Johnson considered meets or fails to meet the standard the Court has set forth in its prior orders in this case is not something that can simply be admitted or denied

1        <u>Request Nos. 42 And 43 Both Fail To Define What It Means To "Consider Fair Use" And</u>

2    <u>Therefore Are Unintelligible</u>:  Universal incorporates its position regarding Request No. 16,

3    above.  In addition, Universal provided a good faith, qualified response to Request No. 43, *see*

4    Kwun Decl. Ex. B at 30:8-15, so an Order deeming this Request admitted in all events is

5    improper and unwarranted under Rule 36(a)(6).  What Mr. Johnson considered, as described

6    above, is a subject better explored through deposition testimony, as Plaintiff has done.  Whether

7    Mr. Johnson's consideration of the video meets or fails to meet the standards this Court has set

8    forth in its prior orders is not the proper subject of an RFA because it cannot simply be admitted

9    or denied.  *See* Klaus Decl., Ex. 1.

10                12.    **Requests 54 and 55**

11       *No. 54:  Admit that the LENZ VIDEO is not a substitute for LET'S GO CRAZY in any*
    *actual market for that composition of which YOU are aware.*

12
    *No. 55:  Admit that the LENZ VIDEO is not a substitute for LET' S GO CRAZY in any*

13   *potential market for that composition of which YOU are aware.*

14       <u>These Requests Seek Admissions Based On The Application Of Law To Fact, But The</u>

15   <u>Legal Standard Embedded In The Requests Is Erroneous</u>:  The defect in these Requests is the

16   same as in Request 38, discussed above.  The Requests seek admissions based on the application

17   of a legal principle—namely, "the effect of the use upon the potential market for or value of the

18   copyrighted work," which is the fourth statutory fair use factor, 17 U.S.C. § 107(4)—to the facts

19   of this case.  But the principle that is embedded within the Requests does not accurately reflect

20   the controlling law.

21       Specifically, Plaintiff's Requests presume that the fourth fair use factor looks only at the

22   effect that the *particular use* before the court may have on the actual or potential market for the

23   copyrighted work.  The Requests do this by limiting their reach solely to Plaintiff's posting and

24   its possible effect on the market for "Let's Go Crazy."  The Supreme Court has held that the

25   Court must make a broader inquiry, to consider the potential impact of widespread use:

26       [The fourth fair use factor] requires courts to consider *not only* the extent of
    market harm caused by the particular actions of the alleged infringer, *but also*

27       *"whether unrestricted and widespread conduct of the sort engaged in by the*
    *defendant ... would result in a substantially adverse impact on the potential*

28       *market"* for the original.  The enquiry "must take account not only of harm to the

original but also of harm to the market for derivative works."

*Campbell*, 510 U.S. at 590 (emphasis added) (quoting 4 *Nimmer on Copyright* § 13.05 [A][4] at 13-102.61, and *Harper & Row*, 471 U.S. at 568).

Plaintiff's Requests for admissions regarding the application of law to fact do not accurately reflect the controlling standard, which is whether "unrestricted and widespread conduct of the sort engaged in by" Lenz may have effect on the market for the work.  Universal properly objected to these Requests.

## III.     CONCLUSION

Universal respectfully requests that the Court deny Plaintiff's Motion in its entirety.

DATED:  March 2, 2010                          MUNGER, TOLLES & OLSON LLP


                                              By: _____*/s/ Kelly M. Klaus*_____
                                                        KELLY M. KLAUS

                                              Attorneys for Defendants