| | |
|---|---|
| 1 | KELLY M. KLAUS (SBN 161091) |
|   | Kelly.Klaus@mto.com |
| 2 | MELINDA E. LEMOINE (SBN 235670) |
|   | Melinda.LeMoine@mto.com |
| 3 | MUNGER, TOLLES & OLSON LLP |
|   | 355 South Grand Avenue |
| 4 | Thirty-Fifth Floor |
|   | Los Angeles, CA  90071-1560 |
| 5 | Telephone:    (213) 683-9100 |
|   | Facsimile:     (213) 687-3702 |

Attorneys for Defendants
UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ, | CASE NO.  C 07-03783 JF (PVT) |
| Plaintiff, | **OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ANSWER TO INTERROGATORY NO. 17** |
| vs. | |
| UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP, | [Declaration of Kelly M. Klaus filed concurrently] |
| Defendants. | Date:    March 30, 2010 |
|   | Time:    10:00 a.m. |
|   | Crtrm:   5 (Hon. Patricia V. Trumbull) |
|   | **[PUBLIC VERSION]** |

## I. INTRODUCTION

Plaintiff Stephanie Lenz's Motion to Compel a Response to Interrogatory Number 17 ("Motion") attempts to persuade this Court to propound Interrogatories that Plaintiff herself never served, and then compel Universal to answer them. That is not how discovery is supposed to work. Here, Plaintiff served a poorly-drafted Request for Admission ("RFA"), which Universal answered as best it could. Plaintiff then served Interrogatory Number 17, demanding that Universal "state all facts and identify all documents" on which Universal based its response to the poorly-drafted RFA. Universal then answered Interrogatory Number 17 as best it could. In this Motion, Plaintiff complains that she did not get the answers she wanted to Interrogatory Number 17. But Universal's response to Interrogatory Number 17 answers the question posed to the best of its ability, in light of the fact that it is a convoluted Interrogatory based on an equally badly drafted RFA. If Plaintiff wanted the answers to the questions she poses in her Motion, she should have asked them. She did not, and this Court should not cure that defect on her behalf.

Universal's response to Interrogatory Number 17 is neither under-inclusive nor over-inclusive, despite Plaintiff's claims that it is somehow both. Plaintiff's claim that she was provided "too much" information in response to Interrogatory Number 17 is not one that should be redressed by a motion to compel still further responses in any event. Plaintiff's problem with Interrogatory Number 17 is really a disagreement about the relevance of particular documents and facts to the underlying issues in the lawsuit. If Plaintiff disagrees with Universal about the relevance of the facts and documents listed in Universal's response to Interrogatory Number 17, Plaintiff's remedy is a motion *in limine* to exclude the potential evidence at trial—not a motion to compel a different answer to an interrogatory. This Motion should be denied.

## II. BACKGROUND

Plaintiff claims that Universal violated 17 U.S.C. § 512(f) by sending a June 4, 2007 email to YouTube. That email identified more than 200 different YouTube postings that Universal believed made unauthorized uses of musical compositions whose copyrights are owned by the artist professionally known as Prince. (Universal administers these musical composition

10074992.1

- 1 -

OPPOSITION TO PL'S MTN TO COMPEL
ANSWER TO INTERROGATORY NO. 17
CASE NO. CV-07-03783

copyrights.) Universal requested that YouTube block access to or remove these videos in accordance with YouTube's posted terms of use. One of the videos on this list was posted by Plaintiff. It is entitled "Let's Go Crazy' #1," and indisputably makes an unauthorized use of the Prince composition, "Let's Go Crazy." Plaintiff's posting was temporarily removed from YouTube, but was restored within a matter of weeks, after Plaintiff sent YouTube a "counter-notification." Even though Ninth Circuit law is clear that liability under Section 512(f) exists only for *knowing*, material misrepresentations, *Rossi v. MPAA*, 391 F.3d 1000, 1004-05 (9th Cir. 2004), Plaintiff alleges that Universal is liable because it knew or should have known that Plaintiff's use of "'Let's Go Crazy' is a self-evident non-infringing fair use under 17 U.S.C. § 107." SAC ¶ 34.

In the nearly three years since this case was filed, Plaintiff has served voluminous written discovery – over 200 RFAs, document requests, and interrogatories. The hefty volume of discovery served and responded to in this case would be substantial by any standards. In this indisputably small case, with a single discrete issue presented, it is truly remarkable. This Motion challenges the sufficiency of Universal's response to only one of the myriad written responses demanded and provided – Interrogatory Number 17.

In that Interrogatory, Plaintiff asked Universal for a further explanation of Universal's response to RFA 16. Specifically, it asked Universal to:

> State all facts and IDENTIFY all DOCUMENTS on which YOU base YOUR response to Plaintiff's Request for Admission No. 16, *including without limitation* each fact constituting the "certain information observable from [the LENZ VIDEO]" that YOU describe in YOUR response to Request for Admission 16 as information "Universal believes a court could have considered had Plaintiff been sued for copyright infringement . . . and had she raised . . . the affirmative defense of fair use. . . ."

Kwun Decl., Ex. G (emphasis added). Thus, Universal had to refer to its response to RFA 16 to answer Interrogatory Number 17.

RFA 16 asked Universal to, "Admit that YOU did not consider whether the LENZ VIDEO was a fair use of the copyright in LET'S GO CRAZY prior to sending the JUNE 4 NOCI." The RFA did not explain what it meant to "consider . . . fair use" in this context, a

sharply disputed issue between the parties. In its response to RFA 16, Universal explained that "fair use" is a fluid, equitable legal analysis a court performs to determine whether an infringing use should be otherwise excused. It cited examples of the several different meanings that the phrase "consider . . . fair use" in RFA 16 could have in light of the potential breadth of a "fair use" analysis under the law. Plaintiff could have been asking whether Universal considered just the non-inclusive list of statutory factors underlying a fair use analysis from the Copyright Act. 17 U.S.C. § 107. She could have been asking whether Universal considered any other factors a court may consider if it were presented with a hypothetical fair use defense in a hypothetical copyright infringement case based on the "Let's Go Crazy" video. Plaintiff could have been asking about factors that could only be known to Plaintiff herself that would have to be uncovered during discovery in that hypothetical infringement action. Universal noted all of these possible meanings of the term "fair use" in the RFA, and concluded its response by stating that, prior to the time that Universal sent the email to YouTube that underlies this lawsuit, a Universal employee had watched Plaintiff's video and had considered factors that Universal believed a court could have considered in deciding whether, in a hypothetical case for copyright infringement, the affirmative defense of would apply. Kwun Decl., Ex. B at 13-14.

In answering Interrogatory Number 17, then, Universal had to "state all facts and identify all documents" on which it based this response to RFA 16. Universal responded to Interrogatory Number 17 by specifying that it based its response on the video itself, including its title, the synchronization of the video images with the music, and statements made by Plaintiff therein, as well as all documents marked as exhibits at the deposition of Plaintiff on September 16, 2009. Kwun Decl., Ex. G at 5-6.

Plaintiff disputed the list of all of the exhibits marked at Plaintiff's deposition, contending that those could not be relevant to Universal's response to RFA 16. After efforts to resolve this dispute informally failed, Plaintiff brought this Motion claiming that Universal's response to Interrogatory Number 17 is "both underinclusive and overinclusive." Mot. at 6.

### III. ARGUMENT

#### A. Plaintiff Seeks to Compel Responses to Interrogatories She Did Not Ask

A party propounding an interrogatory has an obligation to ask its question clearly and precisely. The risk of not doing so is that the answer may not satisfy the questioner's curiosity. *See Pressley v. Boehlke*, 33 F.R.D. 316, 317 (W.D.N.C. 1963) (poorly drafted interrogatories have a "built-in penalty" of not yielding answers sought). Apparently, that is what has happened here. Plaintiff complains about Universal's answer to Interrogatory Number 17, alleging that it is somehow "both underinclusive and overinclusive." Mot. at 6. In fact, Universal answered the question posed. Plaintiff's problem is that she now claims to have wanted answers to different questions that Interrogatory Number 17 did not ask.

Plaintiff contends that Interrogatory Number 17 is "underinclusive" because it does not identify the employee that reviewed the "Let's Go Crazy" video before the June 4, 2007 email was sent to YouTube. Putting aside the fact (acknowledged in a footnote) that Plaintiff knows exactly who the employee was, Interrogatory Number 17 does not ask the direct question that Plaintiff claims Universal failed to answer. Mot. at 4. It does not ask Universal to identify that employee, even though it would be simple enough to pose an interrogatory that did. Instead, it demands that Universal "state all facts and identify all documents" on which it based its response to RFA 16. Universal cannot be faulted for failing to include information of which Plaintiff is already aware when that information is not even clearly called for by the Interrogatory itself.

Plaintiff further complains that Universal's answer to Interrogatory Number 17 provides *too much* information. She objects to Universal providing the facts and documents relevant to Universal's entire response to RFA 16, insisting that she wanted to know only the facts and documents relevant to a single phrase of the response. Mot. at 4, 6. But Interrogatory Number 17 is not limited in the way that Plaintiff suggests. It asks for *all* facts and *all* documents on which the response to RFA 16 is based "*including without limitation*" the particular phrase Plaintiff refers to in the Motion. If Plaintiff wanted *only* those facts and documents supporting a particular portion of Universal's response, then she should have posed an interrogatory that asked for that.

10074992.1 - 4 - OPPOSITION TO PL'S MTN TO COMPEL ANSWER TO INTERROGATORY NO. 17 CASE NO. CV-07-03783

### B. Universal Answered the Question Posed in Interrogatory Number 17

Plaintiff complains that Universal's response is overinclusive because it lists too many documents—actually, the small subset of documents marked as exhibits in Plaintiff's deposition—as documents or facts relevant to its response to RFA 16. Mot. at 4-5. Plaintiff contends that Interrogatory Number 17 demanded that Universal list only those facts and documents that Universal considered *before* sending its June 4, 2007 email to YouTube. Mot. at 5. Because many of the exhibits at Plaintiff's deposition were dated after June 4, 2007, Plaintiff contends Universal's response does not answer her question.

By its terms, Interrogatory Number 17 is much broader than Plaintiff claims. The interrogatory asked Universal to state all of the facts and identify all documents on which it based its response to RFA 16—"including *without limitation*" the "certain information observable from the Lenz Video" Plaintiff now claims the interrogatory was exclusively focused on. Kwun Decl. Ex. G at 5 (emphasis added). When Plaintiff asked for all facts and documents supporting Universal's response "including without limitation" those underlying a particular phrase within the response, she asked for facts and documents on which Universal based its *entire* response. Otherwise, the phrase "including *without limitation*" is meaningless.

Interrogatory Number 17 thus called for all the facts and documents that Universal relied on in crafting its entire response to RFA 16, including its description of the many factors a court could consider in deciding whether the affirmative defense of fair use applied in the event there were an infringement action.[1] To answer completely, Universal thus had to list the facts and documents on which it based not only the particular phrase in the response about the video itself, but also the facts and documents on which it based its responses about the potential meaning of the term "fair use". That encompasses all the facts and documents that could be relevant to a fair use analysis if one were to be performed in the hypothetical infringement lawsuit Plaintiff's

---

[1] Fair use is an *affirmative defense* to conduct that otherwise infringes one or more of the exclusive rights of copyright under Section 106. Supreme Court and Ninth Circuit precedent both make clear that a court does not reach the question of fair use under Section 107 until the court *first* concludes the use infringes under Section 106. *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007).

1  question presumes and RFA 16 describes. Universal thus listed in its answer to Interrogatory
2  Number 17 all the documents that, to its knowledge, would support Universal's position (1) if
3  there were an infringement action based on Plaintiff's unauthorized use of "Let's Go Crazy," and
4  (2) if Plaintiff raised the affirmative defense of fair use in that hypothetical action, and (3) if
5  Universal had the opportunity to take discovery on the many factors a court could consider in
6  deciding whether the assertion of that affirmative defense excused any infringement.

7      All of the documents listed in the response to Interrogatory Number 17 are documents that
8  could be considered by a court in assessing whether the affirmative defense of fair use applied.
9  That analysis is a multi-factored, flexible, case-by-case inquiry. *Perfect 10 v. Amazon.com, Inc.*,
10 508 F.3d 1146, 1163 (9th Cir. 2007). The four factors listed in the statute—the purpose and
11 character of the use, the nature of the copyrighted work, the amount and substantiality of the
12 portion used, and the effect on the market for the work—are not exclusive, and must be weighed
13 together with all other relevant factors, in light of the purposes of the copyright law more
14 generally. 17 U.S.C. § 107; *Campbell v. Acuff-Rose*, 510 U.S. 569, 577-78 (1994). Among the
15 factors that must be considered is the user's good faith. *Perfect 10,* 508 F.3d at 1164 n.8. Good
16 faith is a necessary pre-requisite to the assertion of the equitable defense of fair use. *See Fisher v.*
17 *Dees*, 794 F.2d 432, 436-37 (9th Cir. 1986) ("Because fair use presupposes good faith and fair
18 dealing, courts may weigh the propriety of the defendant's conduct in the equitable balance of a
19 fair use determination.") (internal quotations and citations omitted).

20     In the hypothetical infringement action RFA 16 imagines, all would have to be produced
21 in discovery and considered. For example:

22 - Ms. Lenz's discovery responses (Kwun Decl., Exs. 17, 18, 39) shed light on the
23    purpose of her posting, describing in detail what Ms. Lenz intended with regard to the
24    use of the copyrighted work in her video. These facts unquestionably would be
25    relevant in any hypothetical assertion of fair use as an affirmative defense.

26 - Ms. Lenz's exchanges with Theryn Fleming and others, shed light on her good faith
27    or lack thereof in prosecuting this lawsuit arising out of her posting. *See e.g.*, Klaus
28    Decl., Ex. 7. Plaintiff's postulating on ▮▮▮▮▮▮▮▮

1        ▮▮▮▮▮▮▮▮▮▮▮ for example, reflect on the purpose of her posting.

2        Klaus Decl., Ex. 8. Her many ▮▮▮▮▮▮▮▮▮▮▮

3        ▮▮▮▮▮▮▮▮▮▮▮

4        ▮▮▮—suggests that her purpose in posting the video is not merely for her

5        family's private viewing, as her complaint alleges. Klaus Decl., Ex. 7. Her insistence

6        that her video included a "self-evident, non-infringing fair use" of "Let's Go Crazy"

7        is contradicted by these documents, in which even Ms. Lenz's comrades-in-arms tell

8        her that her video constitutes copyright infringement. Klaus Decl., Ex. 7.

9    • The Second Amended Complaint (Kwun Decl., Ex. 8) in this action contained a false

10        statement, acknowledged in Plaintiff's deposition, about Plaintiff's supposed

11        reluctance to post to YouTube after the "Let's Go Crazy" video was removed. The

12        fact that Plaintiff included a false statement in a court filing related to her use is

13        relevant to her good faith.

14    • Plaintiff's retainer agreement with the Electronic Frontier Foundation ("EFF") (Kwun

15        Decl., Ex. 23), reveals that she gave over control of this litigation to an advocacy

16        group focused on de-emphasizing the exclusive rights of copyright owners, agreeing

17        to give them any and all fees recovered but agreeing to pay any fees imposed. The

18        agreement suggests that Plaintiff's use is more than the mere home video she claims it

19        to be, as she is more than willing through the agreement to become the poster child

20        for EFF's goals—▮▮▮▮▮▮▮▮▮▮▮

21        ▮▮▮▮▮▮▮▮▮▮▮ Klaus Decl., Ex. 9.

22    Because Plaintiff's Interrogatory asks for the basis of the entire response to RFA 16, these

23 documents and the others listed had to be included in the response to Interrogatory Number 17.

24    Listing the 56 exhibits marked at Plaintiff's deposition was entirely reasonable in light of

25 the fact that Plaintiff's Interrogatory is much broader than she claims, demanding that Universal

26 support the basis for its entire response. Universal specifically listed those documents that would

27 be relevant to the hypothetical fair use defense RFA 16 supposes—it did not simply point

28

10074992.1        - 7 -        OPPOSITION TO PL'S MTN TO COMPEL ANSWER TO INTERROGATORY NO. 17 CASE NO. CV-07-03783

Plaintiff to all of the documents produced in this case. Plaintiff's claim that the response is over-inclusive is simply wrong, and should be rejected.

### C. Plaintiff's Remedy is to Move to Exclude Documents as Irrelevant at Trial, Not to Force the Rewriting of Interrogatory Answers

Plaintiff's real complaint here is not that the response to Interrogatory Number 17 is either underinclusive or overinclusive. Rather, she views the response provided and the documents listed as irrelevant to the hypothetical fair use analysis RFA 16 asks about. Mot. at 6. When she receives answers she does not like, Plaintiff's remedy is not to demand that this Court craft and compel a response to an interrogatory that contains different questions. Rather, her remedy is to move to exclude through a motion *in limine* evidence or legal theories she views as irrelevant to her case. Plaintiff can certainly do that, and Universal will respond. A motion *in limine* can address the dispute over relevance directly, which is much more efficient than trying to litigate the question through a misguided discovery motion.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel a Response to Interrogatory Number 17 should be denied.

DATED: March 2, 2010                                MUNGER, TOLLES & OLSON LLP


By: ____*/s/ Melinda E. LeMoine*____
          MELINDA E. LEMOINE

Attorneys for Defendants