KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
PUBLISHING, INC. and UNIVERSAL MUSIC
PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>　　　　　Defendants. | CASE NO.  C 07-03783 JF (PVT)<br><br>**REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY PLAINTIFF POST-DATING SECOND AMENDED COMPLAINT**<br><br>[Supplemental Declaration of Melinda E. LeMoine filed concurrently]<br><br>Date:     March 30, 2010<br>Time:    10:00 a.m.<br>Crtrm:  5 (Hon. Patricia V. Trumbull) |

1

# TABLE OF CONTENTS

I.      INTRODUCTION................................................................................................. 1

II.     ARGUMENT ....................................................................................................... 2

    A.  Plaintiff's Post-SAC Documents—Including Those Counsel *Admit* They Have But Are Not Producing—Continue To Be Relevant To Plaintiff's Claims...................................... 2

    B.  Plaintiff's "Burden" Arguments Are Attorney Rhetoric, Are Completely Unsupported By *Evidence*, And Ignore The Fact There Is *No* Burden To Counsel Producing Documents They *Already* Have Collected ................................................................................ 6

    C.  Plaintiff *Waived* Any Objection To Producing Post-SAC Documents:  She Not Only Failed To Make The Objection, But She Produced Post-SAC Documents ......................... 9

III.    CONCLUSION.................................................................................................. 11

1

# TABLE OF AUTHORITIES

2

3

## CASES

*A. Farber & Partners, Inc. v. Garber*,
  234 F.R.D. 186 (C.D. Cal. 2006) ...................................................................6

*Blankenship v. Hearst Corp.*,
  519 F.2d 418 (9th Cir. 1975) ........................................................................6

*Board of Trustees of Leland Stanford Junior University v.*
  *Roche Molecular Systems, Inc.*,
  237 F.R.D. 619 (N.D. Cal. 2006) ..................................................................2

*Campbell v. Acuff-Rose*,
  510 U.S. 569 (1994) ......................................................................................3

*DeArmand E. v. City of Antioch*,
  2009 WL 1704686 at *2 (N. D. Cal. June 17, 2009) ....................................6

*EEOC v. Safeway*,
  2002 WL 31947153 at *2 (N.D. Cal. Sept. 16, 2002) ...................................9

*Fisher v. Dees*,
  794 F.2d 432 (9th Cir. 1986) ........................................................................4

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ......................................................................................3

*Perfect 10 v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ......................................................................3

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ......................................................................9

*Soto v. City of Concord*,
  162 F.R.D. 603 (N.D. Cal. 1995) ..............................................................2, 8

## STATUTES

17 U.S.C. § 107 .............................................................................................2, 3

## RULES

Fed. R. Civ. Proc. 26(b)(1) ............................................................................2, 4

Fed. R. Civ. P. 26(b)(2)(B) ...........................................................................6, 7

Fed. R. Civ. P. 34(b) .........................................................................................9

## I.      INTRODUCTION

Plaintiff's Opposition *ignores entirely* her lawyers' *admission* that right now they possess Plaintiff's responsive, non-privileged post-Second Amended Complaint ("SAC") documents that they can produce *immediately* without any articulated—much less factually supported—burden in doing so.  *See* Klaus Feb. 9, 2010 Decl. (Doc. No. 238) ("Klaus Decl.") ¶ 4.  The production of these post-SAC documents will not burden Plaintiff in any imaginable sense.  It will not cost Plaintiff a dime. Nor could the production of documents already created, preserved and reviewed conceivably "chill" any of Plaintiff's "First Amendment" rights—even on the counter-factual assumptions that Plaintiff actually raised a First Amendment objection (she did not); that she had supported it on this motion with a competent, sworn declaration (Plaintiff—a prolific and completely uninhibited "blogger"—did not and obviously could not do that); or that such an objection would have any merit whatsoever, where it is *Plaintiff* who filed this case and has commented on her allegations relentlessly.  Plaintiff provides *no* factual support—*none*—for her claim that there is any burden whatsoever for her to collect and produce any responsive post-SAC documents, either those that her lawyers have and refuse to produce or others she has created since the end of 2009.

Plaintiff instead devotes the bulk of her Opposition to the argument that, because the District Court awarded Plaintiff summary judgment on several of Universal's affirmative defenses, Plaintiff's post-SAC documents as a matter of law are not subject to the Federal Rules' broad standards for discoverability.  Plaintiff is wrong.  The District Court's recent Order affected only Universal's defenses.  It does not affect the relevance of Plaintiff's *affirmative allegations* and Universal's right to discover documents relating to those allegations.  Plaintiff's central claim in this case continues to be that her concededly unauthorized use of "Let's Go Crazy" in her YouTube posting was so clearly excused by the affirmative defense of "fair use" that Universal knew or should have known that purported fact.  Since Plaintiff indisputably intends to try to present and support that claim at trial, Universal must have the right to take discovery to challenge that assertion.  Universal's response to Plaintiff's contention that her use was obviously subject to the fair use defense *requires* discovery into documents relating to "the purpose and

- 1 -

1    character of [Plaintiff's] use." 17 U.S.C. § 107.  An analysis in a court of law of a fair use

2    defense under 17 U.S.C. § 107 *never* would take place without a complete inquiry into what the

3    party claiming fair use had said or written regarding her or his purpose in making the use.

4    Plaintiff, who is the proponent of a claim of "obvious" fair use in this case, should not be the first

5    party ever to cordon off any inquiry into the purpose of her use.

6         The bottom line on this motion is that the documents Universal seeks are clearly

7    discoverable under Rule 26; Plaintiff provides absolutely no evidence—as it is her obligation to

8    do—to support her conclusory claims of burden; and all of her objections have been waived, as

9    evidenced by the written record and Plaintiff's production (without objection) of post-SAC

10   documents throughout much of this litigation.  This Motion should be granted.

## II.  ARGUMENT

### A.   Plaintiff's Post-SAC Documents—Including Those Counsel *Admit* They Have But Are Not Producing—Continue To Be Relevant To Plaintiff's Claims

11         Universal's Motion seeks documents that are indisputably relevant and subject to

discovery, especially under the "extremely broad" standard of relevance under the Federal Rules.

*See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) ("discovery should be allowed

unless the information sought has *no conceivable bearing* on the case") (emphasis added); Fed. R.

Civ. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence.").[1]  This Motion

seeks documents—which Plaintiff's counsel acknowledge exist—in which Plaintiff makes

statements about her YouTube posting and this lawsuit.  Klaus Decl., ¶ 4.  Plaintiff claims that the

Court's recent summary judgment Order makes these documents irrelevant.  But the Court's

decision concerned only Universal's *affirmative defenses*; it did not dispense with the *entire case*.

Plaintiff's SAC and its allegations remain, as does Universal's right to conduct discovery into

those allegations.  *See* Fed. R. Civ. Proc. 26(b)(1) (scope of discovery is material relevant to *any*

---

[1]  *See also Board of Trustees of Leland Stanford Junior University v. Roche Molecular Systems, Inc.*, 237 F.R.D. 619, 621 (N.D. Cal. 2006) ("The scope of discovery permissible under Rule 26 should be liberally construed; the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case.")

10209508.1                                              REPLY ISO MOT. TO COMPEL
                                                        CASE NO. CV-07-03783

1  party's claim *or* defense).  Plaintiff's central claim in the SAC—as stated plainly in the first

2  paragraph of her Opposition — is that her admittedly unauthorized use of the copyrighted work

3  "Let's Go Crazy" in her YouTube posting was subject to the affirmative defense of "fair use"

4  under the copyright law.  Opp. at 1.  Plaintiff clearly intends to try that contention (and others

5  related to it), and Universal therefore is entitled to test it through discovery.

6         ***Plaintiff's post-SAC documents are relevant to the purpose and character of her use,***

7  ***which Plaintiff herself says is an element of her claim***:  The "fair use" defense, which Plaintiff

8  invokes in her affirmative claim, is an "equitable rule of reason."  *Harper & Row, Publishers, Inc.*

9  *v. Nation Enters.*, 471 U.S. 539, 550 n.3 (1985) (internal quotations omitted).  Whether the "fair

10  use" defense excuses an infringement of copyright depends on multiple factors, 17 U.S.C. § 107,

11  some of which are entirely within the possession and knowledge of the user and thus must be

12  obtained in discovery.  Plaintiff's allegation that her admittedly unauthorized use would

13  necessarily be excused by the "fair use" defense depends on the same flexible, fact-driven, multi-

14  factor inquiry.  *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007).  The

15  Copyright Act lists four non-exclusive factors to be considered in assessing whether the "fair use"

16  doctrine excuses an infringing use—the purpose and character of the use, the nature of the

17  copyrighted work, the amount and substantiality of the portion used, and the effect on the market

18  for the work.  17 U.S.C. § 107.  Universal's document requests were aimed at, *inter alia,*

19  shedding light on these factors underlying a "fair use" defense.  Plaintiff has already conceded

20  that non-privileged documents responsive to those requests exist, and indeed that some number

21  (she will not say how many) already are in her counsel's possession and can be produced.  Klaus

22  Decl., ¶ 4.  These admittedly responsive documents are necessarily relevant to the "fair use"

23  defense that Plaintiff considers the focal point of her case.  *See also Campbell v. Acuff-Rose*, 510

24  U.S. 569, 577-78 (1994) (factors are non-exclusive and must be weighed together with all other

25  relevant factors in light of the purposes of the copyright laws generally).

26         For example, Universal is entitled to explore the purpose and character of Plaintiff's use—

27  the first factor listed in the statute—to test Plaintiff's allegation that the "fair use" defense

28  obviously applies and excuses her unauthorized use of "Let's Go Crazy."  Plaintiff did not stop

creating documents relating to the purpose and character of her use when she filed her SAC. Indeed, Plaintiff herself *continues* to make statements about what her purpose was in posting the video to YouTube even as recently as *one week ago* on her blog.  Supplemental Declaration of Melinda LeMoine ("LeMoine Decl."), Ex. 1 "A bite of the apple", posted on March 9, 2010, available at http://piggyhawk.wordpress.com ("Truthfully, this is what I did.  Holden had learned to walk only days before … and I shared it the way I'd always shared videos:  on YouTube …. And now it's become a story that we'll get to tell the rest of our lives at birthday parties.  It'll be in my obituary. … And now it has over a million hits.").  Plaintiff now asks this Court to wall off from discovery any evidence of the applicability of the "fair use" defense beyond her blog statements.  Universal is entitled to the documents sought in the Motion, to explore what Plaintiff says less publicly about her purpose, and to test whether her public statements and the allegations in the SAC are the whole story.

*Plaintiff's post-SAC documents are relevant to her good faith, which also is an element of Plaintiff's claim that the fair use defense obviously excused her use*:  The fact that the requested documents are relevant to the "purpose and character" of Plaintiff's use is not the only way in which these documents meet the minimal standards of discoverability set by Rule 26(b)(1).  The district court's decision on Universal's affirmative defense of "bad faith" does not change the fact that Plaintiff's *good faith* is an essential component of the claim she asserts herself in the SAC.  A user's good faith—or lack thereof—is a consideration in any analysis of whether the "fair use" defense may be asserted.  *See Fisher v. Dees*, 794 F.2d 432, 436-37 (9th Cir. 1986) ("Because fair use presupposes good faith and fair dealing, courts may weigh the propriety of the defendant's conduct in the equitable balance of a fair use determination.") (internal quotations and citations omitted).  By claiming that her use was excused under the fair use defense, Plaintiff necessarily has put her own good faith at issue, and Universal is entitled to discovery as to whether her claims of good faith are true.

*Plaintiff's post-SAC documents are relevant to her claim of damages*:  The documents sought also are relevant to the *quantity* of Plaintiff's damages, which remains an issue.  Plaintiff has privately maintained a story very different from the public one her lawyers want to tell about

- 4 -

1   how she has been damaged.  LeMoine Decl., Ex. 2 ("I don't care that YouTube doesn't want to

2   host [my posting].  Not like I'm paying them.").  The requested documents are relevant to show

3   what Plaintiff herself believes about the significance of her injury, as opposed to what her lawyers

4   want the jury to believe.  That is also unquestionably relevant even after the Court's summary

5   judgment ruling.

6          ***Plaintiff's post-SAC documents are relevant to a possible sanctions motion***:  Plaintiff

7   next claims that, although Plaintiff's post-SAC documents could provide further evidence for a

8   sanctions motion, any sanctions motion would be a waste of the Court's time and resources.  If

9   that were true, then the Court would not have specifically held that Universal could bring such a

10  motion.  Feb. 25, 2010 Order (Doc. No. 250) at 8:16-18.  A sanctions motion may be fully

11  appropriate, especially given the fact, as evidenced by the record, that discovery has repeatedly

12  shown Plaintiff's allegations to be without factual basis.  For example, in her Opposition, Plaintiff

13  chastises Universal for deposing Plaintiff's mother, even though *Plaintiff* put her mother's

14  conduct at issue in an allegation in the SAC.  Specifically, Plaintiff claimed that she posted her

15  "Let's Go Crazy" video to YouTube so that her mother could view it, because her mother

16  purportedly was unable to download email attachments but could watch videos on YouTube.

17  SAC ¶ 16.  (This is a textbook example of the type of "purpose" in posting the video that nobody

18  watching the YouTube posting could discern; discovery would be necessary to illuminate it.)

19  Contrary to Plaintiff's claim in the Opposition, the deposition of her mother did not "confirm the

20  truth" of that allegation.  Opp. at 4.  To the contrary, Plaintiff's mother testified that she *could not

21  watch* videos on YouTube, undermining Plaintiff's allegation regarding her supposed purpose for

22  posting the video to YouTube in the first place.  LeMoine Decl., Ex. 3 (Morgan Dep., 44:19-46:7,

23  49:22-53:2).  After that admission, Plaintiff's counsel agreed—on the record—that Plaintiff's

24  mother would not appear as a witness at trial.  LeMoine Decl., Ex. 3 (Morgan Dep., 96:19-92:7).

25  That is exactly what discovery is supposed to do—test the factual support underlying the

26  allegations made in litigation so that the parties may focus the issues and prepare for trial.  In this

27  and other instances, when Universal has taken discovery to probe the veracity of Plaintiff's

28

1    allegations, the truth turns out to be different than what Plaintiff alleges.[2]  Hence, the requested

2    documents are relevant not only to a potential sanctions motion, but more generally to the truth of

3    Plaintiff's allegations.  Universal has every right to explore the facts behind Plaintiff's

4    allegations, which must include her own statements about those allegations and their underlying

5    subject matter.

6          **B.    Plaintiff's "Burden" Arguments Are Attorney Rhetoric, Are Completely
                   Unsupported By *Evidence*, And Ignore The Fact There Is *No* Burden To
7                  Counsel Producing Documents They *Already* Have Collected**

8          Plaintiff, as the party resisting discovery, bears the "heavy burden" of showing why the

9    requested documents have not been produced.  *See Blankenship v. Hearst Corp*., 519 F.2d 418,

10   429 (9th Cir. 1975); *DeArmand E. v. City of Antioch*, 2009 WL 1704686 at *2 (N. D. Cal. June

11   17, 2009).  Plaintiff must support her objections in order for this Court to sustain them.  *See* Fed.

12   R. Civ. P. 26(b)(2)(B) ("On motion to compel discovery . . . the party from whom discovery is

13   sought must show that the information is not reasonably accessible because of undue burden or

14   cost."); *Oakes v. Halvorsen Marine Ltd*., 179 F.R.D. 281, 283 (C.D. Cal. 1998).  Plaintiff's

15   Opposition utterly fails to do that.

16         Plaintiff claims that production of post-SAC document would be "unduly burdensome."

17   But Plaintiff offers only unsworn attorney rhetoric—not evidence—to support that assertion.

18   That is plainly insufficient.  *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal.

19   2006) (general, boilerplate objections such as "overly burdensome and harassing" require

20   evidentiary declarations to be sustained).  Plaintiff offers none of her own evidence, but instead

21   mysteriously points to the lengthy and detailed evidence Universal submitted in support of its

22   own claim of burden.  *See* Miksch March 2, 2010 Decl. (Doc. No. 261) ("Miksch Decl."), Ex. D.

23   That only highlights the absence of such evidence from Plaintiff.  She offers no attorney

24   declaration describing the volume of documents that would need to be collected or reviewed.  Nor

25

26   _____
     [2] Plaintiff's deposition yielded the same retreat from allegations that, once tested, proved to be
27   without factual support.  Plaintiff claimed that she was so intimidated and fearful since the
     removal of her video that she had never posted another video to YouTube.  SAC, ¶ 38.  Her
28   counsel withdrew that allegation after Plaintiff admitted in deposition that it was false.  Miksch
     Decl., Ex. C at 4.

1   is there any evidence (or for that matter any specifics whatsoever) as to the "idiosyncrasies" that

2   purportedly plague Plaintiff's email system, and make it difficult to conduct an email search.  *See*

3   Opp. at 6.  How, exactly, is that the case?  Neither the Opposition nor any declaration answers

4   that question.  The Federal Rules require evidence of those specifics to support a claim of burden,

5   and without such a showing Plaintiff's claim must be rejected.  *See* Fed. R. Civ. P. 26(b)(2)(B).

6   　　　The failure to provide that evidence was not an oversight.  Plaintiff cannot supply such

7   evidence of burden in collecting and reviewing the sought-after documents in a declaration

8   subject to the penalty of perjury because the evidence does not exist.  Plaintiff's counsel have

9   *admitted* that they have documents in their possession that are responsive to Universal's requests

10  and sought in this Motion.  Klaus Decl., ¶ 4.  Plaintiff's Opposition says nothing about these

11  documents, never explaining how it could possibly be unduly burdensome to produce responsive,

12  non-privileged documents already in counsel's possession.  As far as one can tell from the

13  Opposition's silence, the documents are fully reviewed and ready to produce.

14  　　　Nor is there any evidence offered to support the alleged intrusion the discovery sought

15  would pose into Plaintiff's privacy or the purported chill it would impose on her speech.  Plaintiff

16  provides no declaration asserting any privacy interest in any of the sought-after documents, nor

17  does she provide any declaration averring that her speech has in any way been chilled.  Nor could

18  she do so.  *Plaintiff speaks publicly about this lawsuit on a near daily basis.*  Her blog is replete

19  with commentary on the very issues her Opposition purports are private or at risk of being chilled.

20  Opp. at 7; Miksch Decl., Ex. E at 7.  Plaintiff's counsel claims that the documents sought would

21  be merely cumulative of these public statements or of other documents already produced.  But

22  Universal should not be required to rely only on Plaintiff's counsel's obviously very self-

23  interested view as to whether Plaintiff's statements on the subjects of her lawsuit are cumulative

24  of (and thus consistent with) one another.  Whether Plaintiff's less public communications tell the

25  same story as the one told on her clearly lawyer-vetted blog[3] is something that Universal should

26  be able to see for itself.

27

28

---

[3] Plaintiff recently revamped her blog as an explicit soap box on her case, complete with a new "disclosure" that appears to be lawyer-created.  LeMoine Decl., Ex. 4.

As the cases cited by Plaintiff hold, any actual privacy interests may be addressed as they already have been here—by a protective order.  *Soto*, 162 F.R.D. at 616.  Indeed, Judge Seeborg already held—over a year ago— that Plaintiff's complaints of intrusion into privacy interests were adequately addressed by the protective order.  *See* LeMoine Decl., Ex. 5 (Doc. No. 71).  Plaintiff's examples of Universal's supposed disregard for her privacy and her First Amendment rights do not change that ruling, nor do they give this Court any reason to revisit it here.  First, Plaintiff points to Universal's opposition to her motion for a more restrictive protective order, in which Universal included a list of some of Plaintiff's *public statements* about this lawsuit.  Miksch Decl., Ex. E.  Universal could not have invaded Plaintiff's privacy by referring to statements *Plaintiff* made on a publicly available website.  Nor can Plaintiff contend that the quotation of that material imposed any burden on her protected speech rights, especially in view of the fact that she continues to make the exact same sort of public comment on the lawsuit to this very day.  Second, Plaintiff points to a filing that Universal made *under seal* that included some of Plaintiff's communications with her friend Theryn Fleming. Universal's filing was entirely permissible under the protective order entered in this case.  Judge Seeborg has already held that the measures required in that order—followed by Universal in that filing—sufficiently address Plaintiff's privacy concerns.  LeMoine Decl., Ex. 5 (Doc. No. 71).[4]  Moreover, Universal's reference to Plaintiff's exchanges with Fleming were not calculated to embarrass or harass Plaintiff, as Plaintiff now contends. Rather, Universal pointed out how incongruous it was for Plaintiff to claim she was having privileged attorney-client communications with Fleming (a non-lawyer) right in the middle of these chats about subjects she now claims were entirely of a personal nature.  The Court certainly did not think that Universal was trying to harass or embarrass Plaintiff:  the Court granted Universal's motion to compel these and other communications with Fleming, and that improperly withheld evidence continues to be highly

---

[4] What Plaintiff does not say is that it was not privacy concerns that motivated her designation of these communications as "Highly Confidential" under the protective order – it was an entirely bogus claim of attorney-client privilege that Judge Seeborg rejected out of hand.  In fact, Judge Seeborg rejected filing such material under seal on precisely this basis.  *See* LeMoine Decl., Ex. 6 (Doc. No. 153).

10209508.1

REPLY ISO MOT. TO COMPEL
CASE NO. CV-07-03783

relevant to Plaintiff's claims in this case.  The same result should follow for the documents that Plaintiff is trying to hide from discovery on this Motion.

### C.   Plaintiff *Waived* Any Objection To Producing Post-SAC Documents:  She Not Only Failed To Make The Objection, But She Produced Post-SAC Documents

Even if Plaintiff's objections to producing post-SAC documents had any merit—and for the reasons already explained they do not—such documents should still be produced because Plaintiff never made any such objection.  For months in discovery, Plaintiff never asserted any entitlement to withhold documents post-dating the SAC, which is a clear waiver of any objection to their production. Fed. R. Civ. P. 34(b); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).  In response to this well-settled principle, Plaintiff points only to her general, boilerplate objections that say nothing about a particular time period applying to her discovery efforts.  Such unspecified boilerplate objections are "inadequate and tantamount to not making any objection at all." *EEOC v. Safeway*, 2002 WL 31947153 at *2 (N.D. Cal. Sept. 16, 2002).  Plaintiff's failure to assert her self-imposed cut-off date until months after responses were due constitutes waiver of the objections asserted in her Opposition.  Even if Plaintiff had timely asserted an objection to producing documents post-dating the SAC—and there is no argument that she did—Plaintiff waived that unmade objection because she *produced* such documents for months before unilaterally self-imposing a cut-off date.  In the circumstances, any objection to producing post-SAC dated documents was clearly waived.

Plaintiff tries to distract from her own waiver by claiming that Universal has relied on the same general objections and self-imposed its own arbitrary date cut-off.  Opp. at 2. Plaintiff knows that is false.  Universal *told* Plaintiff, in no uncertain terms, that it *would not* search for or produce documents dated after Plaintiff's original complaint because such a search would not lead to relevant documents and would overwhelmingly call for privileged material.  Klaus Decl., Ex. G at ¶ 6.  Plaintiff moved to compel and, in response, Judge Seeborg did not merely "allude to" the SAC as a potential cut-off date, he ordered Universal to update its production up through April 18, 2008:

> Now with respect to plaintiff's motion to compel the production of documents, the question seems to be or the issues that seem to be joined in this motion are *whether or not the cut-off date for responsive documents should go through to what I understand to be the date of the Second-Amended Complaint, which I think is April 18 of '08.*

> I'm inclined to grant the plaintiff's motion as limited by plaintiff.  In other words*, I think extending the date through to April 18th, '08, is warranted* as the issue is whether or not Universal's notice of infringement was done in bad faith; and I think even if the evidence is subsequent to the notice, there could be some information from subsequent materials that shed light on Universal's practices and motivations.

LeMoine Decl., Ex. 7 (Transcript of August 19, 2009 Hearing at 6).  Plaintiff's attempt to fashion an argument out of Universal's conduct here thus fails because Universal simply did not do what Plaintiff did.  It asserted a timely objection, produced documents consistent with that objection, and then litigated the date cut-off issue once Plaintiff moved to compel.  Plaintiff, on the other hand, never raised the SAC as a date cut-off until months after she served her responses, *and* long after she had been producing documents post-dating the SAC.

Universal and Plaintiff are not in the same position here, either procedurally or substantively.  Judge Seeborg held that the relevant issue from Plaintiff's perspective is Universal's state of mind prior to sending the email to YouTube on June 4, 2007.  Judge Seeborg held that Universal's documents for some reasonable period of time thereafter could possibly be relevant to Universal's state of mind on or before June 4, 2007, and he said quite clearly that the reasonable extension of time would be through the filing of the SAC (more than 10 months later).  LeMoine Decl., Ex. 7.  The extent of the required production of documents from Universal on that issue has been litigated and settled since August of last year.  If Plaintiff had an objection to the cut-off date Judge Seeborg imposed for Universal, she could have objected to his ruling or moved to compel yet again.  It is disingenuous to claim now that the same standards apply to Plaintiff's conduct here.  There is no basis for that, and the requested production should therefore be compelled.

1

**III.    CONCLUSION**

2       For the foregoing reasons, and those stated in Universal's Motion, this Court should order

3  Plaintiff to produce documents responsive to Universal's requests for production dated after April

4  18, 2008, the date of the Second Amended Complaint.

5

6  DATED:  March 16, 2010                    MUNGER, TOLLES & OLSON LLP

7

8                                            By: _____/s/ Kelly M. Klaus_____
                                                      KELLY M. KLAUS
9
                                             Attorneys for Defendants
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28