ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN - #192657
KURT OPSAHL – #191303
CORYNNE MCSHERRY - #221504
454 Shotwell Street
San Francisco, CA 94110
Telephone:    (415) 436-9333
Facsimile:    (415) 436-9993
Email: fred@eff.org; kurt@eff.org
       corynne@eff.org

KEKER & VAN NEST LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN - #198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
       mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                    Plaintiff,<br><br>v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                    Defendants. | Case No. C-07-03783-JF<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DETERMINE SUFFICIENCY OF RESPONSES TO REQUESTS FOR ADMISSION**<br><br>Date:     March 30, 2010<br>Time:     10:00 a.m.<br>Dept:     5<br>Judge:    Hon. Patricia V. Trumbull<br><br>Date Comp. Filed:    July 24, 2007<br><br>**PUBLIC REDACTED VERSION** |

## I.   INTRODUCTION

Universal's response to Stephanie Lenz's motion neatly demonstrates why Ms. Lenz was forced to bring this motion and why it should be granted. Universal attempts to defend its responses not with logic and well-supported argument but with sophistry and wordplay. Ms. Lenz's requests for admission were designed to accomplish the task of creating a clear record on numerous undisputable facts, to save party and judicial resources at trial. When Universal responded with evasive partial admissions and inapt objections, Ms. Lenz attempted in good faith to come to some agreement that would allow Universal to provide appropriate answers. Universal has refused to work with Ms. Lenz in equal good faith, even going so far as to insist that it cannot understand simple terms like "instructed." Universal continues its improper behavior in its opposing papers, abandoning previous objections and offering "arguments" that it cannot possibly believe hold water.

"Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play." *Marchand v. Mercy Medical Center*, 22 F.3d 933, 936 (9th Cir. 1994). Ms. Lenz respectfully asks this Court to cut through Universal's evasion and obfuscation and compel Universal to finally meet its discovery obligations.

## II.   ARGUMENT

**A.   A.   Neither semantic sophistry nor disagreements over legal standards excuse Universal's failure to respond directly to Ms. Lenz's requests for admission.**

Ms. Lenz will respond with respect to specific requests below, but two of Universal's overarching "objections" can be addressed separately.

**1.   Universal cannot avoid its discovery obligations by feigning ignorance over the meaning of simple phrases.**

Universal insists that it had no obligation to fully respond (or respond at all) to several of the disputed requests because they were "poorly worded." Universal's purported "epistemological doubts speak highly of its philosophical sophistication, but poorly of its respect for Rule 36(a)." *Holmgren v. State Farm Mutual Automobile Insurance Company*, 976 F.2d 573, 580 (9th Cir. 1992). None of the terms in question are so ambiguous that Universal could not

have "frame[d] an intelligent reply" in the first place. *U.S. ex rel Englund v. L.A. County*, 235 F.R.D. 675, 685 (E.D. Cal. 2006). If Universal were genuinely confused, it could have made a sincere effort to answer by setting forth an understanding of the allegedly vague terms and answering accordingly. *Cf. House v. Giant of Maryland*, 232 F.R.D. 257, 262 (2005) (E.D. Va. 2005) ("If the responding party finds the wording of a request for admission imprecise, he should set forth a qualified answer that fairly meets the substance of the request."); *S.A. Healy Co. v. United States*, 37 Fed. Cl. 204, 205 (1997) ("If defendant understood the term to have some other possible meaning, it should have specified that meaning and admitted or denied each request based on both meanings"). Universal did not do so.

Rather, Universal ignores the fact that, at the very least, it has the responsibility to work with Ms. Lenz to agree on an alternate phrasing that would permit it to answer.[1] *Marchand v. Mercy Medical Center*, 22 F.3d 933, 938 (9th Cir. 1994) ("party unable to agree with exact wording of request for admission ... should agree to an alternate wording or stipulation"); *Englund*, 235 F.R.D. at 684 ("a party who is unable to agree with the exact wording of the request for admission should agree to an alternate wording or stipulation."). "Requests for admission are not games of 'Battleship' in which the propounding party must guess the precise language coordinates that the responding party deems answerable." *House*, 232 F.R.D. at 262 (emphasis in original). Universal, though, refused to accept Ms. Lenz's suggested rephrasings or propose any of its own.[2]

This Court should not permit Universal to "undermine the efficacy of the rule by crediting disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party." *Thalheim v. Eberheim*, 124 F.R.D. 34, 35 (D.Conn. 1988) (citations omitted); *see also Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 499 (D.Md. 2000) (granting sanctions where party offered "hair-splitting" answers to requests for admission).

---

[1] Universal actually appears to complain about the fact that Ms Lenz offered to agree to stipulated definitions or alternate phrasings. *See* Opp. at 11:17-19 (rejecting clarification that "value" means "economic value, such as providing utility," because that clause was "never in her Request in the first place."); Kwun Decl. Exh. C at 6 (October 8, 2009 letter from Ms. Lenz's counsel proposing that clarification).

[2] *See* Kwun Decl. Exh. C at 5-6; id. ¶¶ 9-10.

### 2. Universal cannot refuse to admit facts based on a disagreement over the law applicable in this case.

Universal restates its "legal standard" objections, contending that it need not admit or deny a fact if it disagrees with what it imagines to be Ms. Lenz's theory of the legal significance of that fact. Not surprisingly, Universal offers no legal support for the propriety of this type of objection, which flies in the face of Rule 36. "Legal jousting, and advocacy . . . should not be allowed to infect the laudable purposes of Rule 36 in eliminating issues for which proof is not required, and in narrowing issues where proof is." *Xcel Energy, Inc. v. U.S.*, 237 F.R.D. 416, 422 (D.Minn. 2006). Indeed, were Universal's position the rule, a party could avoid answering virtually any request unless the parties were in perfect agreement on the legal standard to be applied to the merits of a claim.

Thus, for example, Universal objects to Ms. Lenz's Request for Admission No. 38 (which asks Universal to admit that her video did not affect the value of Prince's "Let's Go Crazy" by an quantifiable amount) on the ground that it seeks irrelevant information because copyright owners can seek statutory damages. Opp. at 15:12-23. This is not a response at all. Ms. Lenz did not ask Universal to admit or deny that a copyright owner may seek statutory damages. She did not ask Universal to admit or deny that "unauthorized uses will affect the value of copyrighted works, even if that value cannot be quantified." Opp. at 15. She asked Universal to admit or deny that her use did not affect the value of *one song* by an amount that *can* be quantified.

Similarly, Universal objects to Ms. Lenz's requests related to fair use on the ground that the requests presume it is possible to consider fair use before it has been raised as an affirmative defense in court. *See* Opp. at 7 n.3 ("The Supreme Court and Ninth Circuit have made it clear that a court does not reach the question of fair use under Section 107 until the court *first* concludes the use infringes under Section 106.") (emphasis in original). As an initial matter, this objection misstates the law: fair use is not infringement at all, whether or not the user has been sued for infringement and defends his use with that doctrine. *See* 17 U.S.C. § 107 ("the fair use of a copyrighted work…is not an infringement of copyright"); *Sony Corp. of Am. v. Universal*

*City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("anyone . . . who makes a fair use of the work is not an infringer of the copyright with respect to such use"); *see also* Docket No. 250 (Order Granting Plaintiff's Mot. for Partial Summary Judgment) at 4:12-17 ("Lenz is correct" that "a fair use is not an infringement.") (internal quotation marks omitted). Ms. Lenz has every right to argue that Universal could have, indeed should have, considered fair use before it sent its notice, and to ask Universal to admit or deny facts relating to that argument.

Moreover, Universal's suggestion that it is somehow impossible to consider fair use until it has been raised as an affirmative defense in litigation would in no way prevent it from responding to Ms. Lenz's requests. For example, Ms. Lenz has asked Universal in requests 42 to admit or deny that it did not instruct its employee to consider fair use when reviewing Ms. Lenz's video. Universal presumably did not instruct its employee to undertake a task that it seems to believe is impossible. If so, it should admit the fact that it did not give that instruction and argue about the legal effect of that fact later. What it cannot do is refuse to answer based on what it imagines to be Ms. Lenz's theory of the case and ultimate purpose in using the admission. A party "should not be concerned as to the legal effect of its Response to a Request where . . . the Requests seek a confirmation of a fact." *Xcel Energy*, 237 F.R.D. at 422.

**B.     The requests should be deemed admitted.**

Ms. Lenz recognizes that deeming requests admitted is a significant step, but it is perfectly appropriate here. Universal is required to provide "absolute good faith and truthfulness in a response." *Dulansky v. Iowa–Illinois Gas & Elec. Co.*, 92 F. Supp. 118, 124 (S.D. Iowa 1950). Accordingly, "any responses which seek to evade or avoid ... will not be countenanced." *Id.*; *see also Asea, Inc. v. Southern Pacific Transportation Co.*, 669 F.2d 1242, 1246 (9th Cir. 1982) ("The discovery process is subject to the overriding limitation of good faith. Callous disregard of discovery responsibilities cannot be condoned.").

Universal has made little effort in its responses, in the meet and confer process, and in motion practice, to allow Ms. Lenz to complete discovery efficiently. Rather, Universal's goal appears to be to force Ms. Lenz to waste valuable deposition time and the resources of the court and the parties at trial, establishing facts that cannot reasonably be disputed. Such willful

1  disregard of discovery obligations merits an appropriate consequence. *See House*, 232 F.R.D. at
2  262 ("The party to whom requests for admission are propounded acts at his own peril when
3  answering or objecting. Gamesmanship in the form of non-responsive answers, vague promises
4  of a future response, or quibbling objections can result in the request being deemed admitted or
5  in a post-trial award of monetary sanctions without prior opportunity to correct the deficiency.").

Universal has had ample opportunity to amend its answers and has refused to do so. If that is all this Court orders Universal to do, Universal's conduct shows that there is little reason to hope it will do anything but continue its gamesmanship. *See Thalheim v. Eberheim*, 124 F.R.D. 34, 35-36 (D.Conn. 1988) (a reviewing court should not "permit a responding party to frustrate the rule by initially providing inadequate responses, forcing the requesting party to file a motion and costly memoranda, and *only then* coming forward with 'amended answers' that easily could have been supplied in the first instance.").

### 1. Requests 1 and 2

*Admit that YOUTUBE is a provider of online services or network access, or the operator of facilities therefore. (RFA 1)*

*Admit that YOUTUBE is a provider of online video hosting services. (RFA 2)*

Universal claims these requests seek irrelevant information because YouTube is not a defendant and therefore is not in need of safe harbor protection. This is a willful misreading of what is at issue in this case. Section 512(f) imposes liability where a "service provider" relies on the defendant's knowing material misrepresentation of infringement. *See* 17 U.S.C. 512(f) ("…shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer…who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing…."). Whether YouTube is, in fact, a "service provider" is therefore a preliminary question that should (and can) be eliminated from dispute.

These requests ask Universal to admit the factual predicate that is relevant to YouTube's legal status as a service provider. Universal is well capable of admitting or denying these facts, especially given its extensive relationship with YouTube. Universal might prefer not admit these facts, but that is no basis for refusing to do so. *U.S. ex rel. Seals v. Wiman*, 304 F.2d 53, 64 (5th

1 | Cir. 1962), *cert. denied* 372 U.S. 915 (1963).

2 |     Universal also insists that Ms. Lenz seeks a legal conclusion, as opposed to facts that might tend to support a legal conclusion. That complaint might make sense if Ms. Lenz had asked Universal to admit YouTube "meet[s] all of the legal requirements for claiming safe harbor protection." Opp. at 4:19-21. She didn't. Universal's complaint is that if it admits these facts, the legal conclusion that YouTube is a service provider will follow. But a request is not improper even if it relates to ultimate facts or proves dispositive of an entire case. *Cereghino v. Boeing Co.*, 873 F.Supp. 398, 403 (D.Or.1994); *Asea*, 669 F.2d at 1248. On Universal's theory, a plaintiff in a defamation suit could not ask the defendant to admit that it wrote the allegedly libelous words (as opposed to asking it to admit the words were defamatory). That is not the rule in a defamation case, and it is not the rule here.

    **2. Request 3**

*Admit that the JUNE 4 NOCI represented that LENZ VIDEO was infringing the copyright in LET'S GO CRAZY.*

    The essence of Universal's objection appears to be that Ms. Lenz's request uses the term "infringing" instead of "not authorized by the copyright owner, its agent or the law." Opp. at 6:20-22. Universal finds this objectionable because—it says—the notice "does not include" words stating that "Plaintiff's posting 'was infringing.'" *Id.*

    On any reasonable reading of the notice, this contention is simply false: Universal's takedown notice characterizes all of the videos at issue as "infringing" no less than five separate times. *See* Kwun Decl. (Dkt. No. 234) Exh. D at 1 ("■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■"), *id.* at 6 ("■■■■■■■■■■■■■," "■■■■■■■■■■," "■■■■■■■■■■■■," "■■■■■■■"). Universal's refusal to admit this request is inexcusable and should not be countenanced.

### 3. Requests 4, 6, and 7

*Admit that YOU intended YOUTUBE to remove or disable access to the LENZ VIDEO as a result of the JUNE 4 NOCI. (RFA 4)*

*Admit that YOUTUBE removed or disabled access to the LENZ VIDEO as a result of the JUNE 4 NOCI. (RFA 6)*

*Admit that YOUTUBE relied upon the June 4, 2007 NOCI in removing or disabling access to the LENZ VIDEO. (RFA 7)*

The only defense Universal offers here is that it cannot answer these requests because "Universal is not YouTube" and cannot speak to why YouTube did what it did. Opp. at 8:16-17. This objection cannot save its response to request 4, which asks Universal to admit what it—Universal—intended YouTube to do, not anything about what YouTube did or why. Universal knows what it intended. It cannot in good faith claim that the best it can do is admit that a document it prepared and sent "speaks for itself."

As for Requests 6 and 7, this objection fails. YouTube has confirmed, under oath, that the facts Ms. Lenz asks Universal to admit in Requests 6 and 7 are true. *See* Affidavit of Darren Hubbard (Dkt. No. 201) at ¶ 11. Universal does not dispute this; indeed it has actually admitted the essence of these facts. *See* Kwun Decl. Exh. B at 9 (admitting for both requests that YouTube disabled access to Ms. Lenz's video "in response to" Universal's takedown notice). Universal's insistence that Ms. Lenz should have wasted her resources deposing YouTube to ask it a question it has already answered is specious, and its refusal to admit these requests as written is unwarranted. These facts should be deemed admitted. *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1982) (The purpose of requests for admission is "to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial.").

### 4. Request 16

*Admit that YOU did not consider whether the LENZ VIDEO was a fair use of the copyright in LET'S GO CRAZY prior to sending the JUNE 4 NOCI.*

For this request, Universal channels all of its energy into its claim that it cannot understand the phrase "consider fair use." Opp. at 9:15-16. But Universal *does* understand this phrase. Universal has repeatedly used those words to describe what it argues it does not need to

do when deciding whether to send a takedown notice.[3] Universal uses that phrase again to describe what it concedes it must do after a user has sent a counternotice stating that his use is a fair one.[4] In this request, Ms. Lenz asks Universal to admit that it did not, in fact, do what it claims it did not need to do before sending a takedown notice for her video: "consider whether [her video] was a fair use of the copyright in LET'S GO CRAZY…." There is no reason Universal cannot admit or deny this fact.

### 5. Request 17

*Admit that an online video hosting service has value to a person whose video is hosted online by such service.*

On February 25, 2010, Judge Fogel granted Ms. Lenz summary judgment on Universal's "no damages" affirmative defense. Docket No. 250. In light of that order, Ms. Lenz no longer seeks the Court's assistance with respect to Universal's response to request 17.

### 6. Requests 26, 32, and 33

*Admit that YOU have never granted a SYNCHRONIZATION license for any HOME VIDEO for any PRINCE copyrights YOU administer. (RFA 26)*

*Admit that YOU have never licensed any exclusive right under 17 U.S.C. 106 for any PRINCE copyrights YOU administer to any creator of any HOME VIDEO for use in such a video. (RFA 32)*

*Admit that, to YOUR knowledge, PRINCE has never licensed any exclusive right under 17 U.S.C. §106 for LET'S GO CRAZY to any creator of any HOME VIDEO for use in such video. (RFA 33)*

Universal's defense of its response to these requests fails. These requests ask Universal to admit the fact that it hasn't licensed "Let's Go Crazy" for use in home videos, defined as "a video recorded by an individual using readily available consumer recording equipment, for

---

[3] Docket No. 11 (Mot. to Dismiss Complaint) at p. 2:17-19 ("Moreover, fair use is not even an issue to be considered (much less anticipated) unless and until a defendant affirmatively raises that defense."); Docket No. 41-1 (Reply ISO Mot. to Dismiss Second Amended Complaint) at 8:16-20 ("If a fair use defense has been asserted in the counter-notification, the copyright holder then has to consider the potential merits of that defense and decide whether to proceed to litigation. It is far more reasonable to believe that Congress intended for fair use to be considered (if at all) at the counter-notification stage, rather than ex ante, at the time an infringing use is discovered and a takedown notice is sent.").

[4] *See, e.g.*, Docket No. 38 (Mot. to Dismiss Second Amended Complaint) at p. 17 ("Congress believed a copyright holder needs to consider the relative balance of a fair use assertion …only after the individual posting the material indicates they believe they would have a fair use defense.").

personal noncommercial use." Opp. at 12:25-27.  Responding to these requests has nothing to do with whether or not Universal can tell, by watching a video on YouTube, whether it is a home video or an example of cinema verite.  Universal's claim that it cannot do that is beside the point. These requests ask Universal to admit or deny facts it can easily know: the nature of its own licensing arrangements for Prince material.  If those arrangements encompass personal noncommercial uses as a reasonable person would understand the term, it should have denied the requests.  Otherwise it should have admitted them.

Universal next tries to sidestep its wholesale failure to admit or deny facts that it knows to be true or false by arguing that these requests are irrelevant if they are not directed at its ability to evaluate YouTube videos.  This argument fails because there is more to this case that Universal's professed inability to recognize a home video when it sees one. Universal's licensing practices for Prince material relate to the licensing market for those works.  The existence and nature of that market relates to what effect (if any) Ms. Lenz's video had on the market for the work that she used.  The effect of her video on the market for that work relates to whether her video was a fair use, *see* 17 U.S.C. § 107(4), whether her video is a fair use affects whether or not it is infringing, *see* Sony, 464 U.S. at 433.  And this case is about whether Universal violated Section 512(f) by knowingly and materially misrepresenting that her video is infringing.

Universal can disagree with the legal arguments it assumes Ms. Lenz will make with the facts at issue in these requests, but it cannot refuse to answer. *Xcel Energy*, 237 F.R.D. at 422 (a party "should not be concerned as to the legal effect of its Response to a Request where . . . the Requests seek a confirmation of a fact.")

**7.     Requests 29 and 35**

*Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license the SYNCHRONIZATION, to audio-visual works displayed on YouTube, of any of his musical compositions that YOU administer.  (RFA 29)*

*Admit that, as of June 4, 2007, PRINCE had instructed YOU not to license any exclusive right under 17 U.S.C. § 106 in audio-visual works displayed on YouTube with respect any of his musical compositions that YOU administer.  (RFA 35)*

Abandoning its earlier claim that it could not understand these requests, CITE, Universal now insists they seek irrelevant admissions because copyright owners don't have to license their

works (and, therefore, Universal says, failure to license a work has no bearing on the analysis of market harm caused by a use.) This is a red herring.

Whether Prince in fact issued instructions that eliminate a particular licensing market easily bears on whether that market has been affected by a particular use of his work. Courts routinely look at just this issue in fair use cases. *See, e.g., Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) (noting plaintiff did not license thumbnail images); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), (noting plaintiff had licensing market for disputed thumbnail images, distinguishing *Kelly v. Arriba, supra*); *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) (finding fair use where, inter alia, plaintiff did not and likely would not license Barbies for use in the artistic but adult-oriented manner practice by defendant).

### 8. Request 36

*Admit that the June 2007 Content License Agreement (UMC-0000664-UMC-0000691) does not authorize YouTube users to include an embodiment of LET'S GO CRAZY in HOME VIDEOS posted on YouTube.*

As explained in Ms. Lenz's moving papers, this request asks Universal to admit a straightforward fact about a document in order to eliminate from controversy a matter that cannot be disputed. Wright & Miller at Fed. Prac. & Proc: Civil 2d § 2256 at 538 [CHECK] To the extent that an admission or denial may require some degree of interpretation, that still is not a valid basis for objection, as recognized in a case Universal itself cites, as well as elsewhere. *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000), quoting *Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803) (3d Cir. 1992) ("the text of [rule 36] specifically authorizes request for admissions of propositions of law as applied to fact.").

### 9. Request 38

*Admit that LENZ's use of the LENZ VIDEO did not affect the value of LET'S GO CRAZY by any quantifiable amount.*

Universal's sole objection to this request is that it seeks irrelevant information because copyright owners can seek statutory damages. Opp. at 15:12-23. But as explained above, this is not a response at all. This request asks Universal to admit that her use of "Let's Go Crazy" did not affect the value of that work by an amount that can be quantified. This is true or false

10

whether or not a copyright owner may seek statutory damages and whether or not a use can affect the value of a work in a way that cannot be quantified.

### 10. Requests 39 and 40

*Admit that PRINCE communicated with YOU regarding the removal of the LENZ video. (RFA 39)*

Admit that PRINCE requested that YOU seek removal of the LENZ VIDEO. (RFA 40)

In light of Universal's admission—for the record and without a privilege caveat—that neither Prince nor any of his representatives communicated with Universal about Ms. Lenz's posting prior to its takedown, Opp. at 18:20-23, Ms. Lenz no longer seeks the assistance of the Court with these requests.

### 11. Requests 41, 42, and 43

*Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson that fair use of a copyrighted work is not an infringement of copyright. (RFA 41)*

*Admit that, as of June 4, 2007, YOU had not instructed Sean Johnson to consider fair use when reviewing YouTube videos for copyright infringement. (RFA 42)*

*Admit that Sean Johnson did not consider fair use when reviewing the LENZ VIDEO. (RFA 43)*

Here, again, Universal insists that it need not respond because it supposedly believes these requests are based on an incorrect legal premise (namely, that fair use can only be considered when it is formally raised as an affirmative defense in an actual infringement lawsuit). Opp. at 19:5-13. This argument is meritless for the reasons explained above: Universal is wrong on the law, *see* Sony, 464 U.S. at 433, and a party must admit or deny facts whether or not it disagrees with their legal import, *Xcel Energy*, 237 F.R.D. at 422. Moreover, as also pointed out above, if Universal believes that no one can consider whether a use is a fair use other than in an actual infringement suit about that use, then presumably it did not instruct Sean Johnson to consider that question and should just admit that it did not do so.

As for Universal's contention that Ms. Lenz's discovery options should be limited to eliciting deposition testimony, a party may use any number of discovery vehicles to develop its case, in whatever order it prefers. *See* Fed. R. Civ. P. 26(d)(2). Universal can admit or deny this request, and it should have done so.

Finally, Universal's claim that it cannot answer because does not know what "consider" means. Opp. 20:1-9. Ms. Lenz tried to help Universal overcome this difficulty, Kwun Decl. ¶ 9; Universal refused to accept her suggestion and refused to propose its own. Universal's refusal to cooperate in good faith warrants an order deeming these requests admitted.

### 12. Requests 54 and 55

*Admit that the LENZ VIDEO is not a substitute for LET'S GO CRAZY in any actual market for that composition of which YOU are aware. (REQUEST 54)*

*Admit that the LENZ VIDEO is not a substitute for LET'S GO CRAZY in any potential market for that composition of which YOU are aware. (RFA 55)*

Ms. Lenz has repeatedly addressed the impropriety of Universal's "legal premise" contentions with respect to other requests and will not belabor the matter here. However, Universal also frames its objection as an argument that Ms. Lenz presumes that "that the fourth fair use factor looks only at the effect that the particular use before the court may have on the actual or potential market for the copyrighted work." Opp. at 20 (bolded emphasis added). Universal should not be concerned with Ms. Lenz's legal theories when it is asked to admit or deny the truth of a fact. *Xcel Energy*, 237 F.R.D. at 422. In fact, Universal's objection necessarily concedes that these requests pertain to at least part of what a Court may consider when evaluating fair use. In other words, Universal concedes that these requests are relevant. Universal refusal to answer cannot have been made in good faith, and these requests should be deemed admitted.

### III. CONCLUSION

For the foregoing reasons, Ms. Lenz's Motion should be granted.

Dated: March 16, 2010                                    KEKER & VAN NEST LLP

By: /s/Michael S. Kwun
ASHOK RAMANI
MICHAEL S. KWUN
MELISSA J. MIKSCH
Attorneys for Plaintiff
STEPHANIE LENZ