ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN - #192657
KURT OPSAHL – #191303
CORYNNE MCSHERRY - #221504
454 Shotwell Street
San Francisco, CA 94110
Telephone:   (415) 436-9333
Facsimile:    (415) 436-9993
Email: fred@eff.org;  kurt@eff.org
       corynne@eff.org

KEKER & VAN NEST LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN - #198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:   (415) 391-5400
Facsimile:    (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
       mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                    Plaintiff,<br><br>    v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                    Defendants. | Case No. C-07-03783-JF<br><br>**PLAINTIFF'S FURTHER OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY PLAINTIFF POST-DATING SECOND AMENDED COMPLAINT**<br><br>DECLARATION OF MICHAEL S. KWUN FILED HEREWITH |

Pursuant to the Court's April 20, 2010 Order ("Order"), Stephanie Lenz hereby further responds to Universal's motion to compel the production of documents that post-date the Second Amended Complaint ("post-SAC documents").

## I. ARGUMENT

**A. The documents Universal seeks are not relevant.**

**1. In sending its takedown notice, Universal cannot have relied on information it did not possess about the purpose and character of Ms. Lenz's use.**

As the Court recognized, Universal's reply in support of its motion jettisoned the arguments raised in its moving papers, and claimed instead that the post-SAC documents are relevant to Ms. Lenz's "affirmative allegations and Universal's right to discover documents relating to those allegations." Universal's March 16, 2010 Reply in Supp. of Mot. to Compel Prod. of Documents by Plf. Post-Dating SAC ("Reply") at 1 (emphasis omitted). Universal's new theory is that these documents could be relevant to the purpose and character of Ms. Lenz's use, which could bear on whether Ms. Lenz's video makes fair use of the "Let's Go Crazy" composition. *Id.*

But as Universal itself pointed out in its opposition to Ms. Lenz's motion to compel Universal to designate a further Rule 30(b)(6) witness, "This is a suit by Plaintiff against Universal, for allegedly violating 17 U.S.C. § 512(f)." Universal's March 2, 2010 Opp. to Plf.'s Mot. to Compel Desig. of Rule 30(b)(6) Witnesses (Docket No. 252) at 1 (emphasis omitted); *see also* Order at 4 (quoting same). As Judge Fogel explained in denying Universal's motion to dismiss the SAC, section 512 "requires copyright owners to make an initial review of the potentially infringing material prior to sending a takedown notice .... A consideration of the applicability of the fair use doctrine simply is part of that initial review." Declaration of Michael S. Kwun ("Kwun Decl."), Exh. A (Order Denying Motion to Dismiss SAC) at 7.[1]

---

[1] Universal frequently cites Judge Fogel's subsequent order denying its motion to certify for interlocutory appeal the order denying the motion to dismiss the SAC. In that order, Judge Fogel explained that not "every takedown notice must be preceded by a full fair use investigation." Kwun Decl., Exh. B (Order Denying Motion to Certify Interlocutory Appeal) at 4. The fact that a "full fair use investigation" may not be needed in every case in no way alters Judge Fogel's

1

The question in the present case is if Universal properly considered whether fair use justified Ms. Lenz's use of the "Let's Go Crazy" composition in her video.[2] It is in *that* context that fair use is at issue in this case. But in sending the takedown notice, Universal could not have relied on information it did not have. Regardless of what Ms. Lenz's purpose was in creating and posting the video (a topic Universal explored extensively at Ms. Lenz's deposition), Universal cannot plausibly claim that it sent the takedown notice because of some purpose Ms. Lenz had in creating and posting the video *if Universal was not aware of that purpose.*

Universal also tries to resurrect the "bad faith" defense on which Judge Fogel granted Ms. Lenz summary judgment by arguing that it is entitled to explore whether Ms. Lenz acted in good faith when she posted her video to YouTube. Universal argues that this, too, is relevant to the issue of fair use. *See* Reply at 4. Again, however, Universal's June 4, 2007 notice cannot have been based on information it did not even have at that time. Moreover, a party's good faith bears on the fair use defense only to the extent that it is connected to the purpose and character of the use; it is not an excuse for a wide-ranging inquiry into the creator's conduct in every aspect of her life. *See Norse v. Henry Holt & Co.,* 847 F. Supp 142, 147 (N.D. Cal. 1994) (analyzing bad faith in connection with discovery and use of letters). As discussed further below, Universal already has ample discovery on that topic. Universal's latest attempt to challenge Ms. Lenz's good faith fares no better than the affirmative defense on which Judge Fogel granted summary judgment.

Documents created by Ms. Lenz after the SAC was filed on April 18, 2008 cannot have formed the basis for Universal's decision to send its takedown notice more than ten months prior, on June 4, 2007. The issue of fair use cannot justify Universal's attempt to obtain post-SAC

---

prior holding that "consideration of the applicability of the fair use doctrine" is required prior to the sending of a takedown notice.

[2] The parties continue to dispute the appropriate knowledge standard for section 512(f). Ms. Lenz maintains that the leading cases, properly interpreted, distinguish between the knowledge standard for factual investigations, which may be subjective, and legal determinations of infringement, which must be judged objectively. She reserves the right to raise this issue again on appeal if appropriate. There is no dispute, however, that in light of Judge Fogel's prior rulings, the central question in the case at present is whether Universal formed a subjective good faith belief that the video was infringing and whether it considered fair use in the process of doing so.

documents.

2. **Post-SAC documents are not relevant to any of the categories of damages Ms. Lenz seeks.**

Citing a single stray comment, Universal argues that it is entitled to post-SAC documents because they could be relevant to "the *quantity* of Plaintiff's damages . . . ." Reply at 4 (emphasis in original). But Universal fails to support this assertion with any examples tied to the damages Ms. Lenz actually is seeking.

First, Ms. Lenz seeks nominal damages for several categories of harm. *See* Kwun Decl., Exh. C at 1-2. That is, she is not seeking any specific *quantity* of damages for these harms. Post-SAC documents thus cannot be relevant to the quantity of harm for these categories. Second, Ms. Lenz seeks damages for the time she spent getting her video back online. *Id.* at 1. Post-SAC documents are not relevant to this category of damages, either. Third, Ms. Lenz seeks attorneys' fees for *pro bono* counsel's time spent getting Ms. Lenz's video back online. *Id.* at 2.[3] Again, there is nothing suggesting that post-SAC documents are relevant to this category of damages.

Universal has offered no justification for its claim that post-SAC documents could be relevant to the quantity of any of the categories of damages Ms. Lenz is seeking in this case. This argument, to which Universal devoted a mere eight lines in its reply brief (Reply at 4-5), should be rejected.

3. **Universal is not entitled to post-SAC documents as part of a fishing expedition regarding a theoretical sanctions motion.**

Universal's final argument is that post-SAC documents might support a sanctions motion. Counsel for Universal first threatened this sanctions motion six months ago, claiming that Ms. Lenz's testimony established that her allegations lacked evidentiary support, and that her

---

[3] Ms. Lenz also contends that 17 U.S.C. § 512(f) authorizes recovery, as damages, of fees and costs incurred in this action itself, but recognizes that Judge Fogel has held to the contrary. Specifically, Judge Fogel has held that "any fees incurred for work in responding to the takedown notice and prior to the institution of suit under § 512(f) are recoverable under that provision, [but] recovery of any other costs and fees is governed by § 505." Miksch Decl., Exh. J (Feb. 25, 2010 Order) at 15-16. Ms. Lenz reserves the right to challenge the latter aspect of this holding on appeal.

counsel lacked a basis for certifying her complaints and other filings in this action. *See* March 2, 2010 Declaration of Melissa J. Miksch ("Miksch Decl."), Exh B (October 29, 2009 Klaus Letter). Ms. Lenz's attorneys responded within two weeks. *Id.*, Exh. C (Nov. 9, 2009 Kwun-McSherry Letter).

Universal did not file a motion for sanctions. Instead, Universal made these arguments the centerpiece of its opposition to Ms. Lenz's motion for summary judgment on its bad faith and unclean hands defenses. *See* Universal's Nov. 16, 2009 Opp. to Plf.'s Mot. for Partial Summ. J. (Docket No. 215). Notwithstanding these arguments, Judge Fogel *granted Ms. Lenz summary judgment* on Universal's defenses of bad faith and unclean hands. In so doing, Judge Fogel rejected the core arguments Universal made in its October letter threatening a sanctions motion. *See* Miksch Decl., Exh. J (Feb. 25, 2010 Order) at 4 ("Lenz is correct."), 5 ("this is insufficient to show bad faith or unclean hands with regard to Lenz's original intent in posting the video or representation of that intent"), 5-6 (statements in Ms. Lenz's counter-notice "undermin[e] any claim of bad faith"), 6 ("Lenz's point is well taken."), 8 ("Universal's proffered evidence is insufficient to establish that Lenz acted in bad faith in claiming injury as a result of the takedown notice."), 9 ("Lenz is correct" and "Universal has not identified evidence from which a reasonable jury could find that any of . . . Lenz's alleged misrepresentations during this litigation were made in bad faith . . . .").

Because no motion for sanctions was pending, Judge Fogel of course did not deny a motion for sanctions. That said, his repeated rejection of the arguments that Universal raised in its October letter threatening a motion for sanctions hardly encouraged the filing of such a motion. Judge Fogel's statement that "[i]f Universal believes that Lenz or her counsel have engaged in litigation misconduct that warrants sanctions, it may raise that issue by motion," *id.* at 8, suggests only that the Court was declining to resolve a sanctions motion that had not been filed.

Moreover, Rule 11 was not intended to spawn "satellite litigation over the imposition of

sanctions." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendments.[4] "[D]iscovery should be conducted only by leave of the court, and then only in extraordinary circumstances." *Id.*;[5] *see also Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 182-83 (7th Cir. 1985). Nothing in Judge Fogel's order suggests that he intended to authorize wide-ranging discovery in support of a potential sanctions motion. To the extent that the documents Universal seeks are not otherwise relevant—and, for the reasons given above and below, they are not—Universal cannot compel their production as part of a fishing expedition regarding a threatened sanctions motion.[6]

### B. The post-SAC documents are, at best, cumulative.

The post-SAC documents are not relevant, and the Court should deny the motion to compel on that basis alone. Even if the Court were to conclude otherwise and find that the post-SAC documents have some minimal relevance to the issues in this case, they are at best cumulative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (courts must limit discovery where it is "unreasonably cumulative").

In the course of prior document collections in this case, Ms. Lenz's counsel has collected some post-SAC documents, such as emails, but has not completed a review of those documents. Kwun Decl. ¶ 7. Some of these documents might be responsive, although further review would be necessary in light of the elimination of most of Universal's affirmative defenses. *Id.* Moreover, even if some of these documents were responsive notwithstanding Judge Fogel's

---

[4] Rule 11 was further amended in 1987 and 1993. The 1987 amendments were non-substantive. *See* Fed. R. Civ. P. 11 advisory committee's note to 1987 amendments. The 1993 amendments "place[d] greater constraints on the imposition of sanctions and should reduce the number of motions for sanctions presented to the court." *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments. The 1983 advisory committee's notes regarding limitations on "satellite litigation over the imposition of sanctions" are all the more applicable today, given the focus of the 1993 amendments.

[5] The advisory committee was discussing discovery in sanctions proceedings, not discovery in support of a potential sanctions motion. Common sense, however, dictates that the same principle should apply in either situation.

[6] Indeed, on Universal's theory, any party could dramatically expand the scope of discovery, at virtually any point in litigation, simply by suggesting it might seek sanctions. Discovery can and should be limited to information relevant to actual live claims or defenses. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").

February 25, 2010 Order, they would still need to go through further privilege review, and review for confidentiality designations pursuant to the protective order in this case. *Id.*

Given the inadequate justification Universal has offered for production, the post-SAC documents are not "of sufficient potential significance to justify the burden the discovery probe would impose . . . ." *In re Convergent Tech. Securities Litigation*, 108 F.R.D. 328, 331 (N.D. Cal. 1985); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii) (courts must limit discovery where "the burden or expense . . . outweighs its likely benefit, considering the needs of the case, . . . the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.").[7]

### C. Universal should not be allowed to pursue post-SAC documents when it refuses to produce its own such documents.

Finally, considerations of fairness dictate that Universal's motion to compel be denied. Universal has refused to produce documents post-dating the SAC. While Judge Seeborg suggested *at a hearing* that he might order Universal to produce documents only through the date the SAC was filed, his actual *order* includes no such limitation. *See* February 9, 2010 Declaration of Kelly M. Klaus, Exh. D (August 25, 2009 Order) at 5-6. Universal cannot impose on Ms. Lenz a burden it refuses to accept for itself.

## II. CONCLUSION

For the foregoing reasons, and the reasons set forth in Ms. Lenz's March 2, 2010 opposition, Universal's motion to compel should be denied.

Dated: April 30, 2010　　　　　　　　　　　　　　　　KEKER & VAN NEST LLP


By:　*/s/Michael S. Kwun*
MICHAEL S. KWUN
Attorneys for Plaintiff
STEPHANIE LENZ

---

[7] At a bare minimum, if the Court is persuaded that the production of *some* post-SAC documents might be warranted, it should limit production to the narrow and specific categories of documents, if any, for which Universal has demonstrated a true need in light of the present posture of the case, rather than ordering a wholesale production of documents based on Universal's tenuous speculation about what post-SAC documents might show.