ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN - #192657
KURT OPSAHL – 191303
CORYNNE MCSHERRY - #221504
454 Shotwell Street
San Francisco, CA  94110
Telephone:    (415) 436-9333
Facsimile:    (415) 436-9993
Email: fred@eff.org;  kurt@eff.org
            corynne@eff.org

KEKER & VAN NEST LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN - #198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
            mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                              Defendants. | Case No. C-07-03783-JF<br><br>**DECLARATION OF MICHAEL S. KWUN IN SUPPORT OF PLAINTIFF'S FURTHER OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY PLAINTIFF POST-DATING SECOND AMENDED COMPLAINT** |

I, Michael J. Kwun, declare as follows:

1.    I am an attorney licensed to practice law in the State of California and am of counsel to Keker & Van Nest LLP, attorneys for plaintiff Stephanie Lenz in the above-captioned action.

2.    I have knowledge of the facts set forth herein, and if called upon as a witness thereto, I could do so competently under oath.

3.    I make this Declaration in support of Plaintiff's Further Opposition To Defendants' Motion to Compel Production of Documents by Plaintiff Post-Dating Second Amended Complaint.

4.    Attached hereto as Exhibit A is a true and correct copy of the Order Denying Motion to Dismiss entered in this action on August 20, 2008.

5.    Attached hereto as Exhibit B is a true and correct copy of the Order Denying Motion to Certify Interlocutory Appeal entered in this action on October 28, 2008.

6.    Attached hereto as Exhibit C is a true and correct copy of Plaintiff's Third Supplemental Rule 26(a) Disclosures, which are being served on Defendants today.

7.    In the course of prior document collections in this case, Ms. Lenz's counsel has collected some documents, such as emails, that were created after the filing of the second amended complaint, but has not completed a review of those documents.  Some of these documents might be responsive, although further review would be necessary in light of the elimination of most of Universal's affirmative defenses.  Moreover, even if some of these documents were responsive notwithstanding Judge Fogel's February 25, 2010 Order, they would still need to go through further privilege review, and review for confidentiality designations pursuant to the protective order in this case.

////

////

////

////

////

1

494172.01

1        I declare the foregoing under penalty of perjury under the laws of the State of California

2    and that the foregoing is true and correct.  Executed this 30th day of April, 2010, in

3    San Francisco, California.

4

5

6                             By: _/s/Michael S. Kwun_____

7                                 MICHAEL S. KWUN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**E-Filed 8/20/08**

DESIGNATED FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ, | Case Number C 07-3783 JF |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| v. | [re: docket no. 38] |
| UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP, | |
| Defendants. | |

Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal") move to dismiss the instant case for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court has read the moving papers and has considered the oral arguments of counsel. For the reasons set forth below, the motion will be DENIED.

## I. BACKGROUND

On February 7, 2007, Plaintiff Stephanie Lenz ("Lenz") videotaped her young children dancing in her family's kitchen. The song "Let's Go Crazy" by the artist professionally known as Prince ("Prince") played in the background. The video is twenty-nine seconds in length, and

1  "Let's Go Crazy" can be heard for approximately twenty seconds, albeit with difficulty given the

2  poor sound quality of the video.  The audible portion of the song includes the lyrics, "C'mon

3  baby let's get nuts" and the song's distinctive guitar solo.  Lenz is heard asking her son, "what do

4  you think of the music?"  On February 8, 2007, Lenz titled the video "Let's Go Crazy #1" and

5  uploaded it to YouTube.com ("YouTube"), a popular Internet video hosting site, for the alleged

6  purpose of sharing her son's dancing with friends and family.[1]  YouTube provides "video

7  sharing" or "user generated content."  The video was available to the public at

8  http://www.youtube.com/watch?v=N1KfJHFW1hQ.

9          Universal owns the copyright to "Let's Go Crazy."  On June 4, 2007, Universal sent

10  YouTube a takedown notice pursuant to Title II of the Digital Millennium Copyright Act

11  ("DMCA"), 17 U.S.C. § 512 (2000).  The notice was sent to YouTube's designated address for

12  receiving DMCA notices, "copyright@youtube.com," and demanded that YouTube remove

13  Lenz's video from the site because of a copyright violation.  YouTube removed the video the

14  following day and sent Lenz an email notifying her that it had done so in response to Universal's

15  accusation of copyright infringement.  YouTube's email also advised Lenz of the DMCA's

16  counter-notification procedures and warned her that any repeated incidents of copyright

17  infringement could lead to the deletion of her account and all of her videos.  After conducting

18  research and consulting counsel, Lenz sent YouTube a DMCA counter-notification pursuant to

19  17 U.S.C. § 512(g) on June 27, 2007.  Lenz asserted that her video constituted fair use of "Let's

20  Go Crazy" and thus did not infringe Universal's copyrights.  Lenz demanded that the video be re-

21  posted.  YouTube re-posted the video on its website about six weeks later.  As of the date of this

22  order, the "Let's Go Crazy #1" video has been viewed on YouTube more than 593,000 times.

23          In September 2007, Prince spoke publicly about his efforts "to reclaim his art on the

24  internet" and threatened to sue several internet service providers for alleged infringement of his

25

26

27          _____

28          [1] Lenz has posted other home videos on YouTube, allegedly for the same purpose.  These
additional videos are not at issue in this action.

2

music copyrights.[2] Lenz alleges that Universal issued the removal notice only to appease Prince because Prince "is notorious for his efforts to control all uses of his material on and off the Internet." Lenz's Opposition Brief at 3. In an October 2007 statement to ABC News, Universal made the following comment:

> Prince believes it is wrong for YouTube, or any other user-generated site, to appropriate his music without his consent. That position has nothing to do with any particular video that uses his songs. It's simply a matter of principle. And legally, he has the right to have his music removed. We support him and this important principle. That's why, over the last few months, we have asked YouTube to remove thousands of different videos that use Prince music without his permission. [3]

Second Amended Complaint ("SAC"), ¶ 30; *see also* J. Aliva et al., *The Home Video Prince Doesn't Want You to See*, ABC NEWS, Oct. 26, 2007, http://abcnews.go.com/print?id+3777651 (last viewed July 23, 2008). Lenz asserts in her complaint that "Prince himself demanded that Universal seek the removal of the ["Let's Go Crazy #1"] video . . . [and that] Universal sent the DMCA notice at Prince's behest, based not on the particular characteristics of [the video] or any good-faith belief that it actually infringed a copyright but on its belief that, as 'a matter of principle' Prince 'has the right to have his music removed.'" SAC ¶ 31.

On July 24, 2007, Lenz filed suit against Universal alleging misrepresentation pursuant to 17 U.S.C. § 512(f) and tortious interference with her contract with YouTube. She also sought a declaratory judgment of non-infringement. Universal filed a motion to dismiss, which the Court granted on April 8, 2008. Lenz was given leave to amend her complaint to replead her first and second claims for relief. On April 18, 2008, Lenz filed the operative SAC, alleging only a claim for misrepresentation pursuant to 17 U.S.C. § 512(f). On May 23, 2008, Universal filed the instant motion.

## II. LEGAL STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

---

[2] *See, e.g.,* M. Collett-White, *Prince to Sue YouTube, eBay Over Music Use*, REUTERS, Sept. 13, 2007, http://www.reuters.com/article/internetNew/idUSL1364328420070914?feedtype=RSS&feedName_InternetNews&rpc=22&sp=true (last visited July 23, 2008).

[3] Lenz has dubbed this alleged pattern of activity the "Prince Policy."

3

1    cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*

2    *Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint

3    attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

4    plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

5    labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

6    do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964-65 (2007) (internal

7    citations omitted).

## III. DISCUSSION

9        The DMCA requires that copyright owners provide the following information in a

10   takedown notice:

11       (i) A physical or electronic signature of a person authorized to act on behalf of the
         owner of an exclusive right that is allegedly infringed.

12

13       (ii) Identification of the copyrighted work claimed to have been infringed, or, if
         multiple copyrighted works at a single online site are covered by a single
         notification, a representative list of such works at that site.

14

15       (iii) Identification of the material that is claimed to be infringing or to be the
         subject of infringing activity and that is to be removed or access to which is to be
         disabled, and information reasonably sufficient to permit the service provider to
         locate the material.

16

17       (iv) Information reasonably sufficient to permit the service provider to contact the
         complaining party, such as an address, telephone number, and, if available, an
         electronic mail address at which the complaining party may be contacted.

18

19       (v) *A statement that the complaining party has a good faith belief that use of the
         material in the manner complained of is not authorized by the copyright owner,
         its agent, or the law.*

20

21       (vi) A statement that the information in the notification is accurate, and under
         penalty of perjury, that the complaining party is authorized to act on behalf of the
         owner of an exclusive right that is allegedly infringed.

22

23   17 U.S.C. § 512(c)(3)(A) (emphasis added). Here, the parties do not dispute that Lenz used

24   copyrighted material in her video or that Universal is the true owner of Prince's copyrighted

25   music. Thus the question in this case is whether 17 U.S.C. § 512(c)(3)(A)(v) requires a

26   copyright owner to consider the fair use doctrine in formulating a good faith belief that "use of

27   the material in the manner complained of is not authorized by the copyright owner, its agent, or

28   the law."

4

1    Universal contends that copyright owners cannot be required to evaluate the question of

2  fair use prior to sending a takedown notice because fair use is merely an *excused* infringement of

3  a copyright rather than a use *authorized* by the copyright owner or by law.  Universal emphasizes

4  that Section 512(c)(3)(A) does not even mention fair use, let alone require a good faith belief that

5  a given use of copyrighted material is not fair use.  Universal also contends that even if a

6  copyright owner were required by the DMCA to evaluate fair use with respect to allegedly

7  infringing material, any such duty would arise only *after* a copyright owner receives a counter-

8  notice and considers filing suit.  *See* 17 U.S.C. § 512(g)(2)(C).

9    Lenz argues that fair use *is* an authorized use of copyrighted material, noting that the fair

10  use doctrine itself is an express component of copyright law.  Indeed, Section 107 of the

11  Copyright Act of 1976 provides that "[n]otwithstanding the provisions of sections 106 and 106A,

12  the fair use of a copyrighted work . . . is not an infringement of copyright." 17 U.S.C. § 107.

13  Lenz asserts in essence that copyright owners cannot represent in good faith that material

14  infringes a copyright without considering all authorized uses of the material, including fair use.

15    Whether fair use qualifies as a use "authorized by law" in connection with a takedown

16  notice pursuant to the DMCA appears to be an issue of first impression.  Though it has been

17  discussed in several other actions, no published case actually has adjudicated the merits of the

18  issue.  *See, e.g.*, *Doe v. Geller*, 533 F. Supp. 2d 996, 1001 (N.D. Cal. 2008) (granting motion to

19  dismiss for lack of personal jurisdiction).

20  **A.    Fair Use and 17 U.S.C. § 512(c)(3)(A)(v).**

21    When interpreting a statute, a court must begin "with the language of the statute and ask

22  whether Congress has spoken on the subject before [it]." *Norfolk and Western Ry. Co. v.*

23  *American Train Dispatchers Ass'n*, 499 U.S. 117, 128 (1991).  If "Congress has made its intent

24  clear, [the court] must give effect to that intent." *Miller v. French*, 530 U.S. 327, 336 (2000)

25  (internal quotation marks and citation omitted).  Here, the Court concludes that the plain meaning

26  of "authorized by law" is unambiguous.  An activity or behavior "authorized by law" is one

27  permitted by law or not contrary to law.  Though Congress did not expressly mention the fair use

28  doctrine in the DMCA, the Copyright Act provides explicitly that "the fair use of a copyrighted

5

work . . . is not an infringement of copyright." 17 U.S.C. § 107. Even if Universal is correct that fair use only *excuses* infringement, the fact remains that fair use is a lawful use of a copyright.[4] Accordingly, in order for a copyright owner to proceed under the DMCA with "a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law," the owner must evaluate whether the material makes fair use of the copyright. 17 U.S.C. § 512(c)(3)(A)(v). An allegation that a copyright owner acted in bad faith by issuing a takedown notice without proper consideration of the fair use doctrine thus is sufficient to state a misrepresentation claim pursuant to Section 512(f) of the DMCA. Such an interpretation of the DMCA furthers both the purposes of the DMCA itself and copyright law in general. In enacting the DMCA, Congress noted that the "provisions in the bill balance the need for rapid response to potential infringement with the end-users [sic] legitimate interests in not having material removed without recourse." Sen. Rep. No. 105-190 at 21 (1998).

Universal suggests that copyright owners may lose the ability to respond rapidly to potential infringements if they are required to evaluate fair use prior to issuing takedown notices. Universal also points out that the question of whether a particular use of copyrighted material constitutes fair use is a fact-intensive inquiry, and that it is difficult for copyright owners to predict whether a court eventually may rule in their favor. However, while these concerns are understandable, their actual impact likely is overstated. Although there may be cases in which such considerations will arise, there are likely to be few in which a copyright owner's determination that a particular use is not fair use will meet the requisite standard of subjective bad faith required to prevail in an action for misrepresentation under 17 U.S.C. § 512(f). *See Rossi v. Motion Picture Ass'n of America, Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (holding that "the 'good faith belief' requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than

---

[4] The Supreme Court also has held consistently that fair use is not infringement of a copyright. *See e.g., Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) ("[a]nyone . . . who makes a fair use of the work is not an infringer of the copyright with respect to such use.").

Case No. C 07-3783 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)

objective, standard").[5]

The Copyright Act unequivocally establishes the four factors used to determine fair use:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--
>
> > (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> >
> > (2) the nature of the copyrighted work;
> >
> > (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> >
> > (4) the effect of the use upon the potential market for or value of the copyrighted work.
>
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107. Undoubtedly, some evaluations of fair use will be more complicated than others. But in the majority of cases, a consideration of fair use prior to issuing a takedown notice will not be so complicated as to jeopardize a copyright owner's ability to respond rapidly to potential infringements. The DMCA already requires copyright owners to make an initial review of the potentially infringing material prior to sending a takedown notice; indeed, it would be impossible to meet any of the requirements of Section 512(c) without doing so. A consideration of the applicability of the fair use doctrine simply is part of that initial review. As the Ninth Circuit observed in *Rossi*, a full *investigation* to verify the accuracy of a claim of infringement is not required. *Rossi*, 391 F.3d at 1003-04.

The purpose of Section 512(f) is to prevent the abuse of takedown notices. If copyright owners are immune from liability by virtue of ownership alone, then to a large extent Section 512(f) is superfluous. As Lenz points out, the unnecessary removal of non-infringing material

---

[5] One might imagine a case in which an alleged infringer uses copyrighted material in a manner that unequivocally qualifies as fair use, and in addition there is evidence that the copyright owner deliberately has invoked the DMCA not to protect its copyright but to prevent such use. *See, e.g., Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1204-05 (N.D. Cal. 2004) (suggesting that the copyright owner sought to use the DMCA "as a sword to suppress publication of embarrassing content rather than as a shield to protect its intellectual property").

1   causes significant injury to the public where time-sensitive or controversial subjects are involved

2   and the counter-notification remedy does not sufficiently address these harms.  A good faith

3   consideration of whether a particular use is fair use is consistent with the purpose of the statute.

4   Requiring owners to consider fair use will help "ensure[] that the efficiency of the Internet will

5   continue to improve and that the variety and quality of services on the Internet will expand"

6   without compromising "the movies, music, software and literary works that are the fruit of

7   American creative genius."  Sen. Rep. No. 105-190 at 2 (1998).

8   **B.      The Sufficiency of Lenz's Second Amended Complaint**

9         **1. The "Prince Policy"**

10        The operative SAC contains sufficient allegations of bad faith and deliberate ignorance of

11  fair use to survive the instant motion to dismiss.  Lenz alleges that Universal is a sophisticated

12  corporation familiar with copyright actions, and that rather than acting in good faith, Universal

13  acted solely to satisfy Prince.  SAC ¶ 31.  Lenz alleges that Prince has been outspoken on matters

14  of copyright infringement on the Internet and has threatened multiple suits against internet

15  service providers to protect his music.  *Id.* at ¶ 28.  Lenz also alleges that Universal acted to

16  promote Prince's personal agenda and that its actions "ha[ve] nothing to do with any particular

17  [YouTube] video that uses his songs."  *Id.* at ¶ 30.  Although the Court has considerable doubt

18  that Lenz will be able to prove that Universal acted with the subjective bad faith required by

19  *Rossi*, and following discovery her claims well may be appropriate for summary judgment,

20  Lenz's allegations are sufficient at the pleading stage.

21        **2. Damages**

22        Universal also contends that the SAC fails to allege a compensable loss under the

23  DMCA.  Universal Brief at 2.  The SAC provides that:

24        [Lenz's] injury includes, but is not limited to, the financial and personal expenses
          associated with responding to the claim of infringement and harm to her free
25        speech rights under the First Amendment.  Because Universal's notice was
          intimidating, Ms. Lenz is now fearful that someone might construe some portion
26        of a new home video to infringe a copyright.  As a result, she has not posted a
          single video on YouTube since she received the takedown notice.

27

28  SAC ¶ 38. Universal nonetheless claims that Lenz has not alleged a compensable loss because:

8

1   (1) Universal is a private entity and thus not subject to First Amendment actions; (2) Lenz did not

2   suffer any actual injury as a result of the notice; (3) Universal is not liable for damages for

3   intimidation; and (4) Section 512 does not provide for injunctive relief.

4         At oral argument, counsel for Lenz indicated that while the damages incurred in preparing

5   Lenz's counter-notice cannot be elaborated upon for reasons of privilege, Lenz did incur actual

6   damages in reviewing counter-notice procedures, seeking the assistance of an attorney, and

7   responding to the takedown notice. *See* Transcript of Law & Motion Hearing, July 18, 2008, p.

8   5:15-25. Though damages may be nominal and their exact nature is yet to be determined, the

9   Court concludes that Lenz adequately has alleged cognizable injury under the DMCA.

10                                                **IV. ORDER**

11        Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is

12  DENIED. Universal shall file its answer within twenty (20) days of the date of this order.

13

14  DATED:  August 20, 2008

15

16                                       JEREMY FOGEL

17                                       United States District Judge

18

19

20

21

22

23

24

25

26

27

28

This order has been served upon the following persons:

Corynne McSherry
Email: corynne@eff.org

Jason M. Schultz
Email: jason@eff.org

Marcia Clare Hofmann
Email: marcia@eff.org

Michael Soonuk Kwun
Email: michael@eff.org

Kelly Max Klaus
Email: kelly.klaus@mto.com

Amy C. Tovar
Email: amy.tovar@mto.com

Case No. C 07-3783 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)

EXHIBIT B

**E-Filed 10/28/08**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ, | Case Number C 07-3783 JF (RS) |
| Plaintiff, | **ORDER[1] DENYING MOTION TO CERTIFY INTERLOCUTORY APPEAL** |
| v. | |
| UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP, | [re: docket no. 47] |
| Defendants. | |

Defendants Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal") seek certification of the Court's August 20, 2008 Order (the "Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and a stay of the proceedings pending resolution of the appeal. Because Universal has not met the requirements for such certification, the motion will be denied.[2]

---

[1] This disposition is not designated for publication in the official reports.

[2] The parties stipulated to a shortened briefing schedule and requested submission of the instant motion on the papers.

# I. BACKGROUND

The instant action involves a song playing in the background of a video that Plaintiff Stephanie Lenz ("Lenz") posted to YouTube.com. As owner of the song's copyright, Universal sent YouTube a takedown notice pursuant to Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512 (2000). YouTube removed the video. In response, Lenz sent YouTube a DMCA counter-notification on June 27, 2007. She asserted that her video constituted fair use of the song and demanded that the video be re-posted. YouTube re-posted the video on its website about six weeks later.

On July 24, 2007, Lenz filed the instant action for misrepresentation pursuant to 17 U.S.C. § 512(f). She alleges that Universal lacked a good faith belief that the video actually infringed a copyright as required by 17 U.S.C. § 512(c)(3)(A). On May 23, 2008, Universal moved to dismiss the action for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Universal argued that "copyright owners cannot be required to evaluate the question of fair use prior to sending a takedown notice because fair use is merely an *excused* infringement of a copyright rather than a use *authorized* by the copyright owner or by law." Order at 5 (emphasis original). Lenz countered that "fair use *is* an authorized use of copyrighted material." *Id.* (emphasis original). The Court agreed with Lenz and denied Universal's motion to dismiss. Universal filed the instant motion on August 29, 2008, seeking certification of the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

# II. LEGAL STANDARD

A district court, in its discretion, may certify an issue for interlocutory appeal under 28 U.S.C. § 1292(b) if (1) there is a "controlling question of law," (2) on which there are "substantial grounds for difference of opinion," and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). As the Ninth Circuit has recognized, section 1292(b) is to be used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Cement Antitrust*, 673 F.2d at 1026 (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (holding that "exceptional circumstances [must] justify a departure

2

1   from the basic policy of postponing appellate review until after the entry of a final judgment")));

2   *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (noting that

3   section 1292(b) is available only "[i]n rare circumstances").

4                                      **III. DISCUSSION**

5          Universal seeks certification of the following issue: "[W]hether 17 U.S.C. § 512(c)(3)(v)

6   requires a copyright owner to consider the fair use doctrine in formulating a good faith belief that

7   'use of the material in the manner complained of is not authorized by the copyright owner, its

8   agent, or the law.'" Order at 4.  The Court found that, at least in the context of the facts alleged in

9   Lenz's complaint, the DMCA does require consideration of fair use prior to sending a takedown

10  notice.  Universal disagrees, and argues that the issue is appropriate for immediate appeal

11  because (1) it involves a question that is potentially dispositive and therefore "controls" the case;

12  (2) there are substantial grounds for disagreeing with the Court's resolution of the issue; and (3)

13  the purely legal and dispositive nature of the question means that its resolution materially would

14  advance the litigation, because if the Ninth Circuit were to answer the question differently,

15  Lenz's case would be over.  Lenz does not dispute that the issue involves a controlling question

16  of law.  However, she argues that there are no substantial grounds for difference of opinion and

17  that immediate appeal will neither advance the litigation nor promote judicial economy.  For the

18  reasons discussed below, the Court agrees with Lenz.

19  **A. Substantial Grounds for Difference of Opinion**

20          Universal asserts that the question presented by the Order is one of first impression and

21  that there are substantial grounds for disagreeing with this Court's conclusion.  However, "'the

22  mere presence of a disputed issue that is a question of first impression, standing alone, is

23  insufficient to demonstrate a substantial ground for difference of opinion' under § 1292(b)." *In*

24  *re Conseco Life Ins. Cost of Ins. Litig.*, No. Civ. 04-1610, 2005 WL 5678841, at *2 (C.D. Cal.

25  May 31, 2005) (quoting *In re Flor*, 79 F.3d 281, 284 (2nd Cir. 1996)).  Moreover, "[a] party's

26  strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground

27  for difference'; the proponent of an appeal must make some greater showing." *Id.*  (citing *Mateo*

28  *v. The M/S Kiso*, 805 F.Supp. 792, 800 (N.D. Cal. 1992) (abrogated on other grounds by

                                           3

1   *Brockmeyer v. May*, 361 F.3d 1222, 1226 (9th Cir.  2004)).

2        As it did in its moving papers on the underlying motion, Universal argues that fair use is

3   not a use authorized by law but instead is a defense that may be raised by a party accused of

4   copyright infringement.  It asserts that requiring an *ex ante* consideration of fair use will require a

5   *post hoc* reasonableness inquiry inconsistent with the Ninth Circuit's holding in *Rossi v. Motion*

6   *Picture Ass'n of America, Inc.*, 391 F.3d 1000, 1004 (9th Cir. 2004) (holding that "the 'good

7   faith belief' requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than objective,

8   standard").  However, Universal misconstrues the Order, which held merely that "[a]n allegation

9   that a copyright owner acted *in bad faith* by issuing a takedown notice without proper

10  consideration of the fair use doctrine...is sufficient to state a misrepresentation claim pursuant to

11  Section 512(f) of the DMCA." Order at 6 (emphasis added).  The Court did not hold that every

12  takedown notice must be preceded by a full fair use investigation.  *Id.* at 7 (citing *Rossi*, 391 F.3d

13  at 1003-04).  Rather, it recognized, as it has previously, that in a given case fair use may be so

14  obvious that a copyright owner could not reasonably believe that actionable infringement was

15  taking place.  *See Online Policy Group v. Diebold, Inc.*, 337 F.Supp. 2d 1195, 1204 (N.D. Cal.

16  2004).  In such a case, which is likely to be extremely rare, the policy objectives of the DMCA

17  are served by requiring copyright owners at least to form a subjective good faith belief that the

18  "particular use is not a fair use" before sending the takedown notice.

19  **B. Material Advancement of the Litigation**

20        Universal also asserts that an immediate appeal may "materially advance" the case

21  because a reversal by the Ninth Circuit would terminate the litigation.  While it is true that

22  reversal of the Order might lead to dismissal of Lenz's 17 U.S.C. § 512(f) claim, an interlocutory

23  appeal prior to any discovery would deprive the appellate court of a factual record that likely

24  would aid its consideration of the legal questions presented. For instance, while Universal argues

25  that the "indeterminancy of the fair use inquiry" would require courts to adjudicate the

26  reasonableness of consideration of complex fair use factors thus applying an objective good faith

27  standard contrary to the holding in *Rossi,* Lenz offers several examples of how courts might

28  evaluate the "good faith belief" requirement under a subjective standard.  To date, Universal has

4

1  not identified what if any steps it took to consider fair use when it sent the takedown notice for

2  Lenz's video.[3]  Development of the factual record in this case likely will be helpful in

3  establishing whether Universal formed a subjective good faith belief that use of the song in the

4  video "in the manner complained of is not authorized by the copyright owner, its agent, or the

5  law." *See* 17 U.S.C. § 512(c)(3)(A)(v).[4]

6  ### IV. ORDER

7    Good cause therefore appearing, IT IS HEREBY ORDERED that the motion for

8  interlocutory appeal under section 1292(b) is DENIED.  The request to stay proceedings pending

9  resolution of the appeal also is DENIED.

10

11  DATED: October 28, 2008

12

13  JEREMY FOGEL
    United States District Judge

14

15

16

17

18

19

20

21

22

23

24  _____

25    [3]Based upon correspondence received from counsel on October 10, 2008, it appears that
   Universal has deferred a response to Lenz's discovery requests pending resolution of the instant

26  motion.

27    [4]This Court already has cautioned that it "has considerable doubt that Lenz will be able to
   prove that Universal acted with the subjective bad faith required by *Rossi*, and following

28  discovery her claims well may be appropriate for summary judgment."  Order at 8.

5

Case No. C 07-3783 JF
ORDER DENYING MOTION TO CERTIFY INTERLOCUTORY APPEAL

1    This order has been served upon the following persons:

2

3    Corynne McSherry
     Email: corynne@eff.org

4    Jason M. Schultz
     Email: jason@eff.org

5

6    Marcia Clare Hofmann
     Email: marcia@eff.org

7    Michael Soonuk Kwun
     Email: michael@eff.org

8

9    Kelly Max Klaus
     Email: kelly.klaus@mto.com

10   Amy C. Tovar
     Email: amy.tovar@mto.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT C

ELECTRONIC FRONTIER FOUNDATION
FRED VON LOHMANN #192657
KURT OPSAHL #191303
CORYNNE MCSHERRY #221504
454 Shotwell Street
San Francisco, CA  94110
Telephone:     (415) 436-9333
Facsimile:     (415) 436-9993
Email:  fred@eff.org; kurt@eff.org
              corynne@eff.org

KEKER & VAN NEST LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN -#198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
Email: mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>        Plaintiff,<br><br> v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC., and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>       Defendants. | Case No. C 07-03783-JF<br><br>**PLAINTIFF'S THIRD SUPPLEMENTAL RULE 26(a) DISCLOSURES** |

494169.01

Plaintiff Stephanie Lenz hereby supplements her Rule 26(a) disclosures, served on September 30, 2008 and supplemented on July 15 and September 14, 2009, by making the following additional disclosures:

**Witnesses**

In addition to the witnesses previously identified, Ms. Lenz identifies the following additional witness:

| Name/Address | Subject of Information |
|---|---|
| Marcia Hofmann c/o Electronic Frontier Foundation 454 Shotwell Street San Francisco, CA 94110 (415) 436-9333 | Attorneys' fees incurred by Ms. Lenz in connection with responding to Universal's takedown notice. |

**Damages**

Ms. Lenz seeks damages pursuant to the remedy set forth in 17 U.S.C. § 512(f). Those damages include:

1)   *Time and other resources spent by Ms. Lenz.*

a.   *Time.* Ms. Lenz spent approximately five to ten hours before filing this lawsuit on tasks such as obtaining counsel, determining how to send a counter-notice, sending the counter-notice, sending a revised counter-notice after Universal objected to the first counter-notice, and ensuring that access to her video had been restored. Ms. Lenz's time should be valued at a rate set by the jury in light of all of the facts, but in no event less than the Pennsylvania minimum wage at the time, which was $6.25/hour. For her time, Ms. Lenz therefore claims an amount of $31.25 to $62.50 for her time prior to filing this lawsuit.

b.   *Resources.* Ms. Lenz expended resources on her pre-lawsuit efforts, including the use of her computer. For purposes of the present lawsuit, Ms. Lenz seeks only nominal damages for her pre-lawsuit expenditure of these resources. To the extent that there are non-privileged, discoverable documents reflecting the resources Ms. Lenz has spent on these efforts, they have been produced.

1    2)    *Loss of access to YouTube's hosting services for the Lenz Video and the chilling*

2  *of Ms. Lenz's First Amendment expression.*  Ms. Lenz's video was unavailable on YouTube for

3  many weeks as a result of Universal's takedown notice, and her sense of her freedom to express

4  herself, including expressing herself by making home videos, making particular kinds of videos

5  as opposed to other kinds, and sharing home videos with her friends and family, was diminished

6  as a result of Universal's takedown notice.  Those losses are compensable, but for purposes of

7  the present lawsuit, Ms. Lenz seeks only an award of nominal damages for this category.

8    3)    *Attorneys' fees and costs.*  Ms. Lenz retained attorneys, acting *pro bono*, to advise

9  her in connection with ensuring access to her video was restored.  Prior to the date of this lawsuit

10  (July 24, 2007), Ms. Lenz incurred *pro bono* attorneys' fees for these purposes.  Ms. Lenz is

11  presently seeking in this action as damages for this category only the fees for the time spent by

12  Marcia Hofmann in connection with ensuring access to her video was restored, in the amount of

13  $1,275.00.

14    To the extent that there are non-privileged, discoverable documents reflecting the

15  damages Ms. Lenz is seeking, they have been produced.

16    Ms. Lenz also contends that damages attributable to efforts expended on this litigation are

17  recoverable as damages under 17 U.S.C. § 512(f).  Ms. Lenz recognizes, however, that the Court

18  has held that "any fees incurred for work in responding to the takedown notice and prior to the

19  institution of suit under § 512(f) are recoverable under that provision, [but] recovery of any other

20  costs and fees is governed by § 505."  Feb. 25, 2010 Order (Docket No. 250) at 15-16.  Ms. Lenz

21  reserves the right to challenge the latter aspect of this holding on appeal.

23  Dated:  April 30, 2010                    KEKER & VAN NEST LLP

25                    By:

26                    MELISSA J. MIKSCH
27                    Attorneys for Plaintiff
                     STEPHANIE LENZ

494169.01

1

**PROOF OF SERVICE**

2

I am employed in the City and County of San Francisco, State of California in the office of a
member of the bar of this court at whose direction the following service was made. I am over the
age of eighteen years and not a party to the within action. My business address is Keker & Van
Nest LLP, 710 Sansome Street, San Francisco, California 94111.

3

4

5

On April 30, 2010, I served the following document(s):

6

**PLAINTIFF'S THIRD SUPPLEMENTAL RULE 26(a) DISCLOSURES**

7

by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope
addressed as shown below. I am readily familiar with the practice of Keker & Van Nest LLP for
collection and processing of correspondence for mailing. According to that practice, items are
deposited with the United States Postal Service at San Francisco, California on that same day
with postage thereon fully prepaid. I am aware that, on motion of the party served, service is
presumed invalid if the postal cancellation date or the postage meter date is more than one day
after the date of deposit for mailing stated in this affidavit.

8

9

10

11

12

Kelly Klaus
Melinda LeMoine
Munger, Tolles & Olson, LLP
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1592

13

14

15

16

Executed on April 30, 2010, at San Francisco, California.

17

I declare under penalty of perjury under the laws of the State of California that the above is true
and correct.

18

19

20

SHELBY L. BROCK

21

28

445397.01

PROOF OF SERVICE
CASE NO. C 07-03783-JF