1   KELLY M. KLAUS (SBN 161091)
    Kelly.Klaus@mto.com
2   MELINDA E. LEMOINE (SBN 235670)
    Melinda.LeMoine@mto.com
3   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
4   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
5   Telephone:   (213) 683-9100
    Facsimile:   (213) 687-3702
6
   Attorneys for Defendants
7   UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
    PUBLISHING, INC. and UNIVERSAL MUSIC
8   PUBLISHING GROUP

9               UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                 SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ, | CASE NO.  C 07-03783 JF (PVT) |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY WITHHELD ON THE BASIS OF WAIVED CLAIM OF ATTORNEY-CLIENT PRIVILEGE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP, | |
| Defendants. | [Declaration of Kelly M. Klaus and [Proposed] Order filed concurrently] |
| | Date:   August 31, 2010 |
| | Time:   10:00 a.m. |
| | Crtrm:  5 (Hon. Patricia V. Trumbull) |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. BACKGROUND ........................................................................................ 2

    A. Plaintiff's Complaint ................................................................................ 2

    B. Plaintiff's Voluntary Disclosure Of Communications With Her Counsel.............. 4

        1. Communications Regarding Plaintiff's Motivation For Pursuing This Litigation ............................................................................ 4

        2. Communications Regarding Legal Strategies............................................. 5

        3. Communications Regarding The Substance Of Plaintiff's Factual Allegations ................................................................................ 7

    C. Plaintiff's Counsel's Efforts To Cabin Their Client's Voluntary Waiver Of The Privilege ............................................................................ 9

III. ARGUMENT ........................................................................................ 11

    A. Plaintiff's Voluntary Disclosure Of Confidential Communications With Her Counsel Vitiates The Privilege......................................................... 11

    B. Plaintiff's Waiver Extends To All Communications With Counsel On The Subject Matters As To Which She Has Waived Privilege.................................. 11

    C. At A Minimum, Universal Is Entitled To Complete Discovery Regarding The Entirety Of The Particular Communications As To Which Plaintiff Waived Privilege................................................................................ 15

IV. CONCLUSION ...................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Akamai Techs., Inc. v. Digital Island, Inc.*,
2002 WL 1285126 (N.D. Cal. May 30, 2002) ........................................................ 13

*Bowne of New York City, Inc. v. AmBase Corp.*,
150 F.R.D. 465 (S.D.N.Y. 1993) ............................................................................ 16

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ............................................................................... 14

*In re Columbia/HCA Healthcare Corp.*,
293 F.3d 289 (6th Cir. 2002) ................................................................................. 11

*In re Sealed Case*,
877 F.2d 976 (D.C. Cir. 1989) ............................................................................... 11

*In re von Bulow*,
828 F.2d 94 (2d Cir. 1987) .............................................................................. 13, 16

*Rossi v. MPAA*,
391 F.3d 1000 (9th Cir. 2004) .......................................................................... 3, 6, 12

*Weil v. Investment/Indicators, Research & Mgmt., Inc.*,
647 F.2d 18 (9th Cir. 1981) ............................................................................ passim

*Westinghouse Elec. Corp. v. Republic of the Philippines*,
951 F.2d 1414 (3d Cir. 1991) ................................................................................ 11

## FEDERAL STATUTES

17 U.S.C. § 107 ............................................................................................... 8, 14

17 U.S.C. § 512(f) .......................................................................................... passim

## TREATISES

VIII Wigmore, Evidence (McNaughton rev. 1961) ...................................................... 12

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND HER COUNSEL OF RECORD: PLEASE TAKE NOTICE that on August 31, 2010, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 5 of the above-captioned Court, located at 280 South First Street, San Jose, California, 95113, Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group ("Defendants" or "Universal") will and hereby do move the Court for an Order compelling Plaintiff [1] to produce all responsive documents withheld on the basis of a claim of attorney-client privilege, where Plaintiff has waived the privilege as to the subject matter of the communications by breaching the confidentiality of communications with her counsel; and [2] to compel Plaintiff to provide further deposition testimony as to all such matters.  Plaintiff has intentionally waived any claim of attorney-client privilege across a broad range of subject matters by repeatedly disclosing to third parties purportedly confidential communications between Plaintiff and her legal counsel regarding multiple subjects related to this litigation and Plaintiff's allegations before the Court.  This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities set forth below; the accompanying Declaration of Kelly M. Klaus ("Klaus Decl.") and all exhibits thereto; all pleadings and documents on file in this action; and such other materials or argument as the Court may properly consider prior to deciding this Motion.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Both before and during this litigation, Plaintiff Stephanie Lenz has disclosed to numerous third parties the substance of communications between herself and her lawyer regarding multiple aspects of this litigation and Plaintiff's allegations before the Court.  Plaintiff has revealed this these communications in emails and electronic "chats" with her online friends, and even on her publicly available "blog."

---

[1] By stipulation of the parties, the fact discovery cut-off in this action is July 19, 2010.  Doc. No. 291 at 2 ¶ 1.  Pursuant to Civil Local Rule 37-3, this motion is timely filed on July 26, 2010.

1   Plaintiff has every right to disclose her lawyers' putative legal advice to family, friends

2   and Internet readers the world over.  Doing so, however, comes at a cost:  Plaintiff cannot

3   thereafter use the claim of privilege to block Universal's discovery of responsive information

4   based on a forfeited claim of privilege.  Recognizing that their client has breached the

5   confidentiality of their communications with her – and that she has done so repeatedly –

6   Plaintiff's counsel have tried to contain the damage through improper and unjustifiable scope

7   limitations.  Specifically, Plaintiff's counsel have asserted that Plaintiff's waiver extends only to

8   the actual words that Plaintiff disclosed in her communications – and not to any other parts of the

9   very same communications with counsel or to the subjects on which Plaintiff has disclosed

10  privileged communications.  That is wrong.  The subjects on which Plaintiff has disclosed

11  privilege are not collateral to this litigation.  Plaintiff has disclosed communications with counsel

12  concerning the core allegations that Plaintiff herself affirmatively is pressing in this litigation.

13  Under long-standing authority, and basic principles of fairness, Universal is entitled to discover

14  the entire set of communications between Plaintiff and her lawyers on the waived subject matters.

15  At a minimum, Universal is entitled to discover the entirety of the communications with counsel

16  that Plaintiff voluntarily disclosed, and not just the particular components of those

17  communications included in Plaintiff's voluntarily disclosures.  This motion should be granted.

## II.   BACKGROUND

### A.   Plaintiff's Complaint

20  On June 4, 2007, Universal sent YouTube an email notice requesting that YouTube

21  remove or disable access to more than 200 video postings on YouTube that made unauthorized

22  uses of musical compositions by the artist professionally known as Prince.  One of the items on

23  this list was Plaintiff's posting, "'Let's Go Crazy' #1," which makes an admittedly unauthorized

24  use of the Prince composition, "Let's Go Crazy."  Universal administers the copyright to "Let's

25  Go Crazy" and a number of other Prince compositions.

26  YouTube removed the video and sent Plaintiff an email notifying her that it had done so.

27  On June 7, 2007, Plaintiff sent YouTube a counter-notification demanding that her video be re-

28  posted because, according to her, the video did not infringe Universal's copyright.  Within a

NOTICE OF MOT. & MOT. TO COMPEL
CASE NO. CV-07-03783

1   matter of weeks after receiving Plaintiff's counter-notification, YouTube restored Plaintiff's

2   video to the site.  Plaintiff's posting has remained on YouTube since July 2007 and has been

3   viewed more than a million times.  *See* www.youtube.com/watch?v=N1KfJHFWlhQ.

4        Plaintiff filed her complaint on July 24, 2007, and amended it (the "FAC") less than a

5   month later, on August 15.  The FAC alleged, among other things, that Universal violated

6   § 512(f) because, according to Plaintiff, Universal "knew *or should have known*" that Plaintiff's

7   use of "Let's Go Crazy" in her posting made what she called a "self-evident" fair use of the work.

8   Doc. No. 5 at ¶¶ 18-19 (emphasis added).  The FAC also alleged that Universal was liable under

9   state law for interfering with Plaintiff's purported contractual relationship with YouTube.

10        Universal moved to dismiss the FAC.  Regarding the federal law claim, Universal argued

11   that Plaintiff's attempt to base liability under § 512(f) based on a "knew or should have known"

12   standard was barred under Ninth Circuit law.  Specifically, Universal pointed out that the Ninth

13   Circuit's decision in *Rossi v. MPAA,* 391 F.3d 1000 (9th Cir. 2004), holds that a party sending a

14   takedown notice subject to the DMCA may be liable under § 512(f) only if that party has "actual

15   knowledge" that it is making a material misrepresentation in the notice.  *Id.* at 1004-05.

16   Regarding Plaintiff's state law claim, Universal's motion asserted that Plaintiff's claim was

17   barred under California's "anti-SLAPP" statute.  Doc. No. 11 at 15-19.  On April 8, 2008, the

18   Court entered an Order dismissing Plaintiff's § 512(f) claim and her state law claim of

19   interference with contract, with leave to re-plead both claims.  Doc. No. 32.

20        Plaintiff re-alleged her § 512(f) claim in her SAC, filed on April 18, 2008; Plaintiff did

21   not re-plead her state law claim.  Doc. No. 34.  Plaintiff's SAC, and other pleadings she has filed

22   and served throughout this litigation, make numerous allegations that are relevant to this motion.

23   For example, Plaintiff alleges that "Prince himself demanded that Universal seek the removal of"

24   her video posting, and that "Universal sent the DMCA notice at Prince's behest, based not on the

25   particular characteristics of [Plaintiff's 'Let's Go Crazy' posting] or any good-faith belief that it

26   actually infringed a copyright but on its belief that, as 'a matter of principle,' Prince 'has the right

27   to have his music removed.'"  SAC ¶ 31.

28

NOTICE OF MOT. & MOT. TO COMPEL
CASE NO. CV-07-03783

Plaintiff also alleges that she "has been injured substantially and irreparably" because of Universal's actions, and that this injury includes "harm to her free speech rights under the First Amendment. Because Universal's notice was intimidating, Ms. Lenz is now fearful that someone might construe some portion of a new home video to infringe a copyright." *Id*. ¶ 38.  Indeed, in her most recent pretrial disclosures, served on April 30, 2010, Plaintiff claims to that Universal's notice has caused her damages in, *inter alia*, "the chilling of Ms. Lenz's First Amendment expression."  Klaus Decl. Ex. 1 at 2 ¶ 2.  Plaintiff claims that her "sense of freedom to express herself … was diminished as a result of Universal's takedown notice."  *Id*.

### B.    Plaintiff's Voluntary Disclosure Of Communications With Her Counsel

Since the time she filed her original complaint, Plaintiff has revealed in multiple forums – emails, chats, and her personal "blog," www.piggyhawk.wordpress.com – the substance of her communications with her lawyers about numerous aspects of this case.  These communications with third parties outside of any privileged relationship have included the following:

### 1.    Communications Regarding Plaintiff's Motivation For Pursuing This Litigation

Plaintiff has maintained throughout this litigation – and undoubtedly will continue to do so when she testifies at trial – that she is pursuing this lawsuit to vindicate her claimed "First Amendment" right of free expression.  *See* SAC ¶ 38; Klaus Decl. Ex. 1 (Plaintiff's 3d Supp. Rule 26(a) Disclosures) at 2 ¶ 2.

In her communications with third parties, however, Plaintiff has revealed a different motivation for pursuing this lawsuit.  That motivation is not about vindicating Plaintiff's First Amendment rights, but rather giving her lawyers at the Electronic Frontier Foundation ("EFF") a forum in which to "get[] their teeth into UMG [Universal Music Group]" regarding its sending of takedown notices.  On June 14, 2007, just 10 days after Universal sent its notice, Plaintiff recounted in an email with a friend a conversation Plaintiff had had with a lawyer from the EFF:

They [EFF] are very, very interested in the case.  I imagine so.  I've never heard of anything like it.  *She [EFF lawyer Marcia Hoffman[2]] said that Universal Music*

---

[2] At deposition, Plaintiff admitted that she was referring in this email to a conversation she had with EFF attorney Marcia Hoffman.  Klaus Decl. Ex. 2 at 203:17-22.

NOTICE OF MOT. & MOT. TO COMPEL
                                                                                    CASE NO. CV-07-03783

*Group is creating a trend of just going all over the web claiming copyright infringement left & right & that they're breaking laws & such to do it.* **So EFF is pretty well salivating over getting their teeth into UMG yet again**.

Klaus Decl. Ex. 3 (emphasis added).

On the same day, in an email exchange with her mother, Plaintiff disclosed that, while she could not "say much," that EFF was planning to use her case for a "*publicity blitz and/or a lawsuit against Universal*." *Id*. Ex. 4 (emphasis added).[3]  Plaintiff further advised her mother – in communications that must have come from the EFF – that EFF would be funding this endeavor. As Plaintiff put it:  "Any lawyer fees would come out of the settlement." *Id*.[4]

Lenz similarly disclosed on her public "blog" that EFF's interest in advancing her case in order to attack Universal's practices in sending takedown notices:

Today I got an e-mail from someone at EFF.[5]  *He asked some questions, asked to see the correspondence from YouTube, asked to see the video, etc.  I forwarded everything to him and explained that I'm sensitive to copyright issues and have some knowledge on the topic … The letter [from EFF] seemed to have the tone of "this sounds familiar and is something we're interested in talking about.*"

*Id*. Ex. 6 (emphasis added).

2.    **Communications Regarding Legal Strategies**

Plaintiff has disclosed to third parties not only communications regarding the motivation for pursuing this litigation, but also specific legal strategies that EFF has advised Plaintiff to pursue regarding this case.

As noted, Plaintiff's initial complaint had asserted a state law claim for interference with contract, as well as a federal law claim under 17 U.S.C. § 512(f).  Universal moved to dismiss both, and moved to strike the state law claim under the applicable state law anti-SLAPP provisions.  On April 11, 2008 – three days after the District Court granted the motion to dismiss

---

[3] The EFF and Plaintiff in fact *did* launch a "publicity blitz" contemporaneously with filing this lawsuit.  Examples of this press campaign were attached as exhibits to Universal's motion to dismiss and special motion to strike the state law claim in the FAC.  *See* Doc. No. 12-3 Exs. G-K. *See also* pages 6-7, *infra*.

[4] EFF's retainer agreement with Plaintiff in fact provides that Plaintiff's retention is free of charge, and "pro bono" fees are to be paid out of any monetary recovery.  *See* Klaus Decl. Ex. 5.

[5]  Plaintiff admitted at deposition that this blog posting refers to her communications with then-EFF lawyer Jason Schultz.  Klaus Decl. Ex. 2 at 280:9-15.

NOTICE OF MOT. & MOT. TO COMPEL
CASE NO. CV-07-03783

both claims with leave to re-plead – Plaintiff revealed in a "Gmail Chat" with a friend her communications with EFF about how to re-plead the complaint:

> we're going back to the same judge with more facts, more case law and strengthening the federal aspect. *We're dropping the state charge, which was that they violated by contract w/ YouTube … this way their threat of [h]itting me with a SLAPP suit ('pay our lawyers') is dust* …. b/c the SLAPP statute is a state thing, not a federal.  If I make no state claim, they can't respond with the SLAPP allegation. … thing is, they're fighting YouTube over the federal thing right now too …. so in my case it's like "pick a federal law you're accusing me of breaking" it's lose-lose for them on [DMCA] front but they can't admit publicly that they're filing DMCA notices b/c that would obliterate the YouTube fight they're having … *I told [EFF counsel] Corynne [McSherry] that since pursuing the federal portion of the case achieves the ends I have in mind, that's fine to drop the state portion* (that they filed a false DMCA notice, tha[t] they're accusing me of copyright infringement and that *a ruling in our case could clarify a cloudy decision known as "Rossi"*)

Klaus Decl. Ex. 7 at 1 (emphasis added).  Plaintiff relayed the substance of these discussions with counsel in another "Gmail chat" with another friend on the same day.  *Id*. Ex. 8 at 2 ("we want them to admit the DMCA notice was (1) a DMCA notice and (2) false.  *Plus we want to clarify Rossi*") (emphasis added).  Of course, there is nothing "cloudy" about the *Rossi* decision.  The case is very clear that Plaintiff cannot prevail on her § 512(f) claim without showing that Universal *actually knew* it made a false representation concerning Plaintiff's posting.  *Rossi,* 391 F.3d at 1004-05.  That standard is entirely antithetical to Plaintiff's (and EFF's) alleged standard that Universal "knew or *should have known*" its notice to YouTube was incorrect.  Hence, Plaintiff's communications with counsel reveal that a prime objective for pursuing this case is to seek to *change* the *Rossi* standard in the Ninth Circuit.

Plaintiff also revealed to third parties EFF's legal strategy relating to the timing of filing the lawsuit.  As noted, Plaintiff had revealed to her mother on June 14, 2007, that she and EFF were communicating about a "publicity blitz" concerning her case.  Klaus Decl. Ex. 4.  Additional correspondence between Plaintiff and third parties revealed the substance of further communications between Plaintiff and EFF about coordinating the filing of Plaintiff's complaint with the re-posting of her video to YouTube, so as to maximize the public relations effect of the complaint.  On June 21, 2007 – which was nearly a month before Plaintiff actually filed her

original complaint – Plaintiff revealed to a "chat" friend that EFF was ready to file her complaint at that time.  Plaintiff wrote:  "they [the lawyers] said I can blog it [the case] discretely but *I've decided it's less hassle just to point on Monday and what [sic] the hit counter on my video go ding ding ding.  It should be reinstated by YouTube then what=watch*."  Klaus Decl. Ex. 12 at 2 (emphasis added).  But Plaintiff's video was not re-posted to YouTube at that time, and EFF in fact did not file her complaint on the following Monday, as Plaintiff had said they would.  Plaintiff's video was re-posted in July.  On July 18, 2007, six days before the complaint was actually filed, Plaintiff had the following exchange with another friend in a "chat":

> me [Plaintiff]:  hey, EFF may file my suit today
>
> Erin [Plaintiff's friend]: oh?  that's good, yes?
>
> me [Plaintiff]:  *yeah[,] it was held up b/c we were waiting for YouTube to restore the video, which they never did*

*Id*. Ex. 13 (emphasis added).  The "we" Plaintiff referred to obviously was her lawyers and herself.  Plaintiff's communications thus revealed (again) the substance of communications regarding litigation strategy – specifically, when to file the complaint and how to maximize it to have the greatest effect for Plaintiff's and EFF's "publicity blitz."  *Id*. Ex. 4.

3.      **Communications Regarding The Substance Of Plaintiff's Factual Allegations**

Plaintiff has disclosed to third parties not only her communications with counsel about their motivation and strategy for this litigation, but also communications with counsel about core allegations that Plaintiff is making in the case.  As discussed above, Plaintiff's SAC introduced an allegation that "Prince himself demanded that Universal seek the removal of" Plaintiff's posting, and that Universal had included Plaintiff's posting without regard to the law but instead to appease Prince.  SAC ¶ 31.  Plaintiff has revealed in multiple communications with third parties discussions she has had with counsel concerning these core allegations.

On April 16, 2008 – just two days before the SAC was filed – Plaintiff had another "Gmail chat" with a friend, in which Plaintiff revealed:

> you'll love the brief my lawyer wrote up, once it's a finished public document. … she's really going after UMPG & *now Prince is the villain as well*.  our lawsuit was filed before we knew he had a hand in it. *now she's kind of hinting that*

1
2

> *they're doing this b/c Prince bullied them into it and that there's been ample public proof that he wants everyone targeted, no matter whether they're actually guilty of anything.  it's delicious.*

3    Klaus Decl. Ex. 9 at 3-4 (emphasis added).

4         Several months later, while Universal's motion to dismiss the SAC was pending, Plaintiff

5    revealed further communications with counsel regarding whether Universal was continuing

6    simply to do Prince's bidding:

7

> *I asked [EFF counsel Corynne McSherry] if she thought they [Universal] were*
8  > *holding out to the last minute to settle & she thinks that b/c it's Prince, they have*
   > *to fight.* … [Plaintiff's Friend:] You think Prince is forcing them to fight it out
9  > instead of trying to settle?  [Plaintiff:] I think that's what Corynne thinks.

10   *Id*. Ex. 10 at 1 (emphasis added).

11        Plaintiff has publicly disclosed other of her conversations concerning allegations that she

12   has made.  As noted above, Plaintiff's complaints in this case all have alleged that Plaintiff's use

13   of "Let's Go Crazy" in her YouTube posting "is a self-evident non-infringing fair use under 17

14   U.S.C. § 107."  SAC ¶ 34.  Plaintiff, however, has revealed in communications with third parties

15   that she and her lawyers did not instantly recognize her posting to be a "self-evident" fair use:

16

> [Reporter from "Zerogossip.com"]:  You contacted the Electronic Frontier
   > Foundation.  What are you hoping for?
17
   > [Plaintiff]:  When I contacted EFF, I did so at the suggestion of a friend of mine
18 > who's a lawyer in Canada.  I wanted to know my rights, how to protect myself in
   > case UMPG sued me and in what way (if any) I had infringed copyright.  *In*
19 > *discussing the situation with one of the EFF lawyers, we came to the conclusion*
   > *that I did not infringe the copyright and eventually we decided to file this lawsuit.*

20   Klaus Decl. Ex. 11 at 3 (emphasis added).

21        The fact that Plaintiff and her lawyers did not instantly recognize her posting to be a "self-

22   evidence non-infringing fair use" was revealed by Plaintiff in postings to her blog.  On June 12,

23   2007, Plaintiff engaged in an exchange on her blog with a reader who questioned whether

24   Plaintiff would be able to make out a fair use defense.  *Id*. Ex. 6 at 1 (posting by RichardZ.com).

25   In response, Plaintiff wrote:  "You're right Richard.  *Mine's not a 'fair use' case at all.*  Nor is it

26   a parody.  *It's something different.  I've never heard of anything like it, which is why I contacted*

27   *EFF.*"  *Id*. at 2 (emphasis added).  When Universal questioned Plaintiff at deposition about what

28

- 8 -

she meant by this statement, Plaintiff said, "[a]t the time it may have been my opinion.  *It may have been I was misunderstanding what I'd been told by counsel*."  *Id.* Ex. 2 at 286:12-14 (emphasis added).  Given Plaintiff's statement that she may have publicly stated a "misunderstanding" of what her lawyers told her, Universal tried to question Plaintiff about what, in fact, her counsel had told her on the subject of whether her posting was a fair use.  Plaintiff's counsel repeatedly instructed Plaintiff not to answer any of these questions.  *Id.* at 285:22-23, 286:18-20, 287:18-19.  Unless the Court overrules these instructions, Plaintiff at trial will try to attribute her June 2007 admission that hers "is not a fair use case at all" to "misunderstanding" what her lawyers had told her.  Universal will not be able to go behind this assertion, and to challenge whether there actually is any basis for the purported "misunderstanding," because Plaintiff's counsel claimed privilege to block Universal from exploring this matter.

### C.   Plaintiff's Counsel's Efforts To Cabin Their Client's Voluntary Waiver Of The Privilege

In the face of Plaintiff's repeated waiver of privilege concerning numerous subjects that go directly to Plaintiff's allegations, Plaintiff's counsel have drawn unsupportable and unjustifiable lines impeding Universal's ability to obtain complete discovery of these matters.  In particular, counsel interposed the following objections and instructions to block Universal's questioning of Plaintiff:

> So let's talk about how we'll be handling these communications with the Electronic Frontier Foundation.  To be clear, I will allow my client to testify to confirm that she wrote any words that you happen to put before her, if she did, if she recalls it, so on.  She can testify to the date and time and place and the person she spoke with if that's something she knows.  I'm going to let her testify as to, if she needs to clarify a particular – her understanding of words, for example, simple clarifications in the context of the statement will be fine.
>
> Beyond that, I'm going to be instructing her not to answer.  And to be clear, what I mean by that is that I won't be – I'll be instructing her not to answer if there are any questions asking her to restate what counsel may or may not have told her and in particular anything that goes beyond what's directly reflected in the statement, anything that gets into other parts of the conversation or essentially, you know, pushes beyond what is directly written.

Klaus Decl. Ex. 2 at 208:5-25.  Based on the line counsel drew, counsel repeatedly instructed Plaintiff not to answer any questions concerning any of the foregoing communications beyond

Plaintiff's confirmation of what she wrote.  *See id*. at 75-76, 82-85, 200-01, 204-05, 245-46, 252-54, 258-59, 263, 280, 285-88.

After Plaintiff's deposition, and while the parties were in the middle of briefing on Plaintiff's summary judgment motion, Plaintiff's counsel sent an email to Universal's counsel announcing that Plaintiff was producing additional, never-before-produced, documents responsive to Universal's requests.  Klaus Decl. Ex. 14.  In that same email, Plaintiff's counsel announced that they would henceforth institute a date cut-off for their production of the SAC:

> Although we have previously produced a number of documents that post-date the filing of the SAC, in light of Judge Seeborg's order regarding Universal's document production responsibilities, *we generally are limiting our production going forward to documents created on or before the filing of the SAC*.

*Id*. (emphasis added).

Universal objected to, and filed a motion to compel regarding, Plaintiff's attempt to institute a never-before raised cut-off date to her production obligations.  Universal's motion remains under submission.[6]  It is possible, if not highly likely, that the post-SAC documents that Plaintiff's counsel have (and have reviewed) but are refusing to produce reveal yet additional instances of Plaintiff's waiver of post-SAC communications between Plaintiff and her lawyers.

Counsel met and conferred regarding this motion by telephone on June 23, 2010, and by email correspondence between July 14 and 15, 2010.  Klaus Decl. ¶ 2 & Ex. 15.  During those discussions, Plaintiff's counsel claimed that Universal had to identify, *inter alia*, specific items on Plaintiff's privilege log that Universal claimed were within the scope of Plaintiff's waiver.  *Id*. Ex. 15 at 2.  Identifying communications off of Plaintiff's logs is both practically impossible because of the highly generalized terms Plaintiff has used to describe the communications withheld on the logs (*e.g.*, "Confidential communication re litigation strategy").  *See id*. Ex. 16. The privilege log also is a manifestly incomplete listing of the communications relating to Plaintiff's waiver, because the privilege logs end at the filing of Plaintiff's initial complaint (July

---

[6] Universal filed its motion to compel the production of post-SAC documents on February 9, 2010.  Doc. No. 235.  By Order entered April 20, 2010, the Court directed the parties to file supplemental briefs on Defendants' Motion.  Doc. No. 285 at 12.  Plaintiff filed her supplemental brief on April 30, 2010, Doc. No. 286, and Universal filed its supplemental brief on May 7, 2010 Doc. No. 288.  Accordingly, that motion is fully briefed and awaiting decision.

NOTICE OF MOT. & MOT. TO COMPEL
CASE NO. CV-07-03783

24, 2007), and as demonstrated above, Plaintiff has continued to waive privilege beyond the date of that complaint (and likely has done so beyond the date the SAC).

## III.   ARGUMENT

### A.   Plaintiff's Voluntary Disclosure Of Confidential Communications With Her Counsel Vitiates The Privilege

Plaintiff, as the party asserting the attorney-client privilege, bears the burden of establishing all of the elements of any privilege claim.  Among other things, Plaintiff bears the burden of establishing that she has not waived the privilege.  *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  Because the privilege impedes the full and free discovery of the truth, courts strictly construe the requirements of the privilege.  *Id*.  In order to maintain a claim of privilege, a party must show that the communication with counsel was confidential at the time it was made, *and* that the party has maintained the confidentiality of the communication.  *See, e.g.*, *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).  Most relevant here, the client waives the privilege by voluntarily disclosing to third parties purportedly privileged communications the client has had with counsel.  *See, e.g., In re Columbia/HCA Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002); *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991).

### B.   Plaintiff's Waiver Extends To All Communications With Counsel On The Subject Matters As To Which She Has Waived Privilege

Plaintiff does not (because she cannot) seriously dispute that she has waived privilege over her communications with counsel – and that she has done so repeatedly.[7]  The issue on this motion is the scope of the Plaintiff's waiver.  Universal respectfully submits that, under well-established law, Plaintiff's repeated waivers of privilege concerning multiple aspects of her institution and pursuit of *this* case, as well as the basis for core factual allegations that *Plaintiff* is

---

[7] During the meet-and-confer process, Plaintiff's counsel asserted that there is no waiver because Plaintiff had merely "referred generally to legal positions she had taken or would be taking in documents to be filed shortly thereafter[.]"  Klaus Decl. Ex. 15 at 2-3.  Plaintiff's revelations of her discussions with her lawyers went well beyond stating that a particular document was (or was about to be filed) or that a publicly available document said one thing or another.  Plaintiff repeatedly revealed parts of her communications with counsel about *whether*, *why* and *how* counsel would make particular allegations or take particular actions.

making in *this* case, mean that Plaintiff has waived the privilege concerning all communications with counsel on the same subject matter as the waived communications.

A seminal decision from the Ninth Circuit on voluntary waivers of privilege states: "[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to *all other such communications on the same subject*." *Weil*, 647 F.2d at 24 (emphasis added) (citing multiple cases). Quoting Professor Wigmore's Treatise on Evidence, the court continued:

> "[W]hen [the privilege holder's] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final."

*Id*. (quoting VIII Wigmore, Evidence § 2291, at 636 (McNaughton rev. 1961) (alterations in original).

Applying this rule, it is clear that Plaintiff's voluntary disclosure of her communications with counsel waives privilege as to all withheld communications with counsel concerning the same subjects on which Plaintiff has waived privilege. As set *supra*, these subjects include, at a minimum: Plaintiff's communications with counsel regarding the motivation for pursuing this lawsuit, including EFF's interest in attacking Universal's practices regarding takedown notices; communications concerning which claims to pursue and which claims not to pursue; communications concerning the *Rossi* decision and efforts to "clarify" that decision through this litigation; the "publicity blitz" accompanying this litigation; Plaintiff's allegations concerning Prince's alleged role in the sending of the notice concerning Plaintiff's video posting; and how Plaintiff and her counsel came to conclude, first, that Plaintiff's was "not a fair use case at all," and then that her posting was not an infringement of copyright.[8]

Well aware of the rule in *Weil*, Plaintiff's counsel have asserted that Plaintiff's waiver of the privilege consisted of "extra-judicial statements" that Plaintiff "has not relied upon in this

---

[8] Any documents that the Court may order Plaintiff to produce as a result of Universal's pending motion to compel re post-SAC documents could reveal additional subject matters on which Plaintiff has waived privilege.

NOTICE OF MOT. & MOT. TO COMPEL
CASE NO. CV-07-03783

litigation[,]" and that absent prejudice to Universal, the waiver does "not reach beyond the very statements" that Plaintiff made.  Klaus Decl. Ex. 15 at 3 (citing *Akamai Techs., Inc. v. Digital Island, Inc.*, 2002 WL 1285126, at *7-10 (N.D. Cal. May 30, 2002) (Spero, Mag. J.).  The *Akamai* case, as well as the cases it relied on, avail Plaintiff nothing.  What these cases hold is that, where a party has disclosed privileged communications outside of the case but has not otherwise placed the subject matter of the disclosed communications in issue, then depending on the facts and circumstances of the particular case, considerations of fairness may weigh against a waiver across the entire subject matter as in the waived communication.  *See id.* (discussing, *inter alia*, *In re von Bulow*, 828 F.2d 94, 102-03 (2d Cir. 1987) (disclosures of communications between counsel and acquitted spouse in murder trial did not result in subject matter waiver in later civil action against the acquitted spouse)).

The *Weil* case itself discussed why there may be limits on the scope of a party's waiver.  The discussion in that case shows why this limitation does not apply to Plaintiff's voluntary waivers in this case.  In *Weil*, a shareholder sued an issuer Fund for failing to disclose in its prospectuses the Fund's failure to register its shares pursuant to various states' "Blue Sky" laws for registering securities.  *Weil*, 647 F.2d at 21.  A director of the Fund testified at deposition about advice the Fund had received  from its counsel on Blue Sky matters.  *Id.* at 23.  The Ninth Circuit held that the director's deposition testimony "waived its attorney-client privilege."  *Id.* The court went on to state the following limitation to the scope of this waiver:

> However, the Fund's disclosure occurred early in the proceedings and was made to opposing counsel rather than to the court.  Weil does not allege that it prejudiced her in any way.  Thus, we find that the Fund waived its privilege only as to communications about the matter actually disclosed, namely, the substance of Blue Sky counsel's advice regarding registration of the Fund's shares pursuant to the Blue Sky laws of the various states.

*Id.* at 25.

This narrow limitation to the general rule of subject matter waiver does not assist Plaintiff.  Unlike in *Weil*, Plaintiff's disclosures here did not consist of an isolated disclosure made "early in the proceedings."  Plaintiff has disclosed communications with counsel on repeated occasions, and she did so not only before the case was filed, but multiple times thereafter.  Moreover, the

communications are not unrelated to contentions that Plaintiff has made to the court.  The matters

on which Plaintiff waived privilege go directly to allegations that she affirmatively has made in

this case.  For example, Plaintiff alleges in her SAC – and will seek to prove at trial – that "Prince

himself demanded that Universal seek the removal of" Plaintiff's posting.  SAC ¶ 31.  We know

that Plaintiff disclosed to a third party some components of her communications related to that

allegation.  Plaintiff said that her lawyer told her that "Prince bullied [Universal] into it and that

there's been ample public proof that he wants everyone targeted, no matter whether they're

actually guilty of anything."  Klaus Decl. Ex. 9 at 3-4 (emphasis added).  Plaintiff will be pressing

that very allegation all the way through the trial of the case.

Finally, unlike in *Weil*, Plaintiff's simultaneous disclosing of part of her communications

with counsel combined with her raising privilege to block inquiry into the remainder of the

communications on these subjects causes significant legal prejudice to Universal.  Take, for

example, the communications relating to Plaintiff's allegation that her YouTube posting "is a

self-evident non-infringing fair use under 17 U.S.C. § 107."  SAC ¶ 34.  However, Plaintiff has

disclosed, in postings on her blog and in at least one interview with a reporter, that she and her

counsel did not immediately recognize her posting to be a "self-evidence non-infringing fair use."

Rather, following her initial discussions with counsel, Plaintiff said that "[m]ine's not a fair use

case at all."  Ex. 6 at 2.  Plaintiff further revealed that it was only after discussions with counsel

at EFF that "we came to the conclusion that I did not infringe the copyright and eventually we

decided to file this lawsuit."  *Id*. Ex. 11 at 3.  When Universal tried to question Plaintiff about

why she said hers is "not a fair use case at all," Plaintiff's counsel attributed her words to a

possible "misunderstanding" of what counsel had told her.  Plaintiff's counsel then used the

privilege repeatedly instructed Plaintiff not to answer any of these questions.  *Id*. Ex. 2 at 285:22-

23, 286:18-20, 287:18-19.

Plaintiff is using the privilege as both "a sword and a shield."  The law does not allow a

party to so use the privilege.  *See, e.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th

Cir. 1992).  Plaintiff without doubt will continue to claim at trial that Universal must have

recognized her posting to be a "self-evident non-infringing fair use" of copyright.  To do so,

NOTICE OF MOT. & MOT. TO COMPEL
CASE NO. CV-07-03783

1   Plaintiff is going to have to try to explain away her comment that "[m]ine's not a fair use case at

2   all," and why she and counsel had to have "discussions" before coming to the opposite

3   conclusion.[9]  Fairness dictates that Universal be entitled to discover all the communications that

4   Plaintiff had with counsel on the subject of whether her posting was a fair use.  The same holds

5   true for all of the subjects as to which Plaintiff has waived privilege.  Each of them relates

6   directly to allegations that Plaintiff herself has put into issue through the filing and prosecution of

7   this lawsuit.  In fairness, Universal is entitled to discover all withheld communications on these

8   subjects.

9          C.      **At A Minimum, Universal Is Entitled To Complete Discovery Regarding The
                   Entirety Of The Particular Communications As To Which Plaintiff Waived**
10                 **Privilege**

11         If the Court holds that Plaintiff's disclosures have not effected a subject matter waiver,

12  this motion must be granted at least to the extent of compelling Plaintiff to produce the entirety of

13  the disclosed communications she had with counsel.  As discussed, Plaintiff's counsel refused to

14  allow Universal to discover anything beyond the specific statements that Plaintiff made in the

15  communications with third parties disclosing parts of the conversations.  Klaus Decl. Ex. 2 at

16  208:5-25.  As a result, Universal has been deprived of obtaining complete discovery of all

17  documents and testimony that concern the particular communications that Plaintiff has revealed

18  in part to third parties.

19         Ninth Circuit law is clear that, even where the Court decides that, in fairness, a waiver

20  does not encompass the entire subject matter related to the disclosed communication, the party

21  that has waived privilege must produce the entirety of the waived communication.  Under

22

23  _____
    [9] Plaintiff cannot avoid having to explain her statements on the ground that it is Universal's
24  knowledge, and not her knowledge or that of her counsel, that is in issue under 17 U.S.C.
    § 512(f).  At Plaintiff's urging, the District Court in this case has stated the following as a
25  threshold consideration for whether a party sending a notice is charged with taking account of at
    least some of the elements that would go into analyzing fair use as an affirmative defense: "in a
26  given case fair use may be so obvious that a copyright owner could not reasonably believe that
    actionable infringement was taking place."  Order, Oct. 28, 2008 at 4:13-15.  Plaintiff's
27  contention in this case is that her posting must fall into this category.  If Plaintiff and her counsel
    – who (*unlike* Universal at the time it sent its notice) had access to the purpose and character
28  behind Universal's posting – did not immediately recognize Plaintiff's posting to be a fair use,
    then that fact is highly relevant to the truth or falsity of Plaintiff's core allegation.  Under

1    Plaintiff's view of the law, the waiver in *Weil* should have been limited to just the statements that

2    the Fund director made during his deposition.  But that is not where the Ninth Circuit drew the

3    line.  The court held that the waiver encompassed those "*communications about the matter*

4    *actually disclosed* namely, the substance of Blue Sky counsel's advice regarding registration of

5    Fund shares pursuant to the Blue Sky laws of the various states." *Weil*, 647 F.2d at 25 (emphasis

6    added).  The waiver, in short, was more than just what the director had disclosed at his deposition.

7    It extended to all of the communications between the Fund and the counsel concerning the matter

8    disclosed.

9          Under *Weil*, which is controlling law in the Ninth Circuit,[10] for each of the

10   communications with counsel that Plaintiff has voluntarily disclosed, Universal is entitled to all

11   documents that concern the communications that Plaintiff disclosed.  This means, for example,

12   that Plaintiff's email or other written communications with counsel reflecting the entirety of the

13   conversations that she disclosed to third parties must be disclosed to Universal.  And, Plaintiff

14   should be ordered to re-appear for her deposition (in this Judicial District) so that Universal can

15   question her (including with any produced documents) to discover the complete contents of the

16   underlying communications.

17   **IV.    CONCLUSION**

18         For the foregoing reasons, Universal respectfully requests that the Court grant its motion

19   and order Plaintiff to produce within ten (10) calendar days of the date of its Order all responsive

20   documents within the same subject matters as to which Plaintiff has waived privilege.  Universal

21   also respectfully requests that the Court order Plaintiff to appear for deposition in this Judicial

22   District immediately following the production, to answer questions regarding the documents

23   previously withheld.  At a minimum, Universal respectfully requests that the Court Order Plaintiff

24

25   _____

     [10] The Second Circuit, unlike the Ninth Circuit, has held that where "fairness" concerns dictate
     less than a complete subject matter waiver, disclosures of parts of privileged communications
     may result in a waiver of just those parts disclosed. *von Bulow*, 828 F.2d at 102.  As *Weil*
26   demonstrates, the Ninth Circuit's rule of waiver is broader, and extends to all of the
     communications that Plaintiff has waived even in part.  A court in the Second Circuit recognized
27   precisely this distinction between where the Second and Ninth Circuits drew the line. *See Bowne
     of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 484 (S.D.N.Y. 1993) (Dolinger, Mag.
28   J.).  Obviously, Ninth Circuit law controls in this case.

to produce all withheld documents, and to appear for a deposition, relating to the entirety of the communications as to which Plaintiff waived privilege.  A Proposed Order is submitted along with this Motion.

DATED:  July 26, 2010

Respectfully submitted,
MUNGER, TOLLES & OLSON LLP


By: _____/s/ Kelly M. Klaus_____
KELLY M. KLAUS

Attorneys for Defendants

NOTICE OF MOT. & MOT. TO COMPEL
CASE NO. CV-07-03783