KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>           Plaintiff,<br><br>    vs.<br><br>UNIVERSAL MUSIC CORP.,<br>UNIVERSAL MUSIC PUBLISHING, INC. and<br>UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>           Defendants. | CASE NO.  C 07-03783 JF (PVT)<br><br>**DECLARATION OF ROBERT E. ALLEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    December 10, 2010<br>Time:    9:00 a.m.<br>Ctrm:    3, Fifth Floor<br>Judge:   Hon. Jeremy Fogel<br><br>[Notice of Motion and Motion, Memorandum of Points and Authorities, Declarations of Benjamin Edelman and Kelly M. Klaus and Request for Judicial Notice filed concurrently] |

I, Robert E. Allen, declare:

1. I am the Senior Vice President, Business Affairs, Universal Music Publishing Group. Universal Music Publishing Group is the colloquial name used to refer to the music publishing operations of the Universal Music Group of companies. I make this declaration in support of the Motion for Summary Judgment being filed by the Defendants named in this action, *i.e.*, Universal Music Corp., Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal"). Except as to those matters stated on information and belief, the contents of this declaration are based upon my own personal knowledge. If called as a witness in this action, I could and would testify competently to the matters stated herein.

## *Background*

2. I am and since 1993 have been an attorney licensed to practice law in the State of California. My job responsibilities at Universal include advising on and coordinating a variety of business and legal matters concerning Universal's relationship with various songwriters whose rights Universal administers. In the course of my job responsibilities, I both provide legal advice to other Universal employees and receive and disseminate legal advice from other Universal attorneys.

3. One of the songwriters whose rights Universal administers is Prince Rogers Nelson, professionally known as "Prince." I am the person at Universal with overall responsibility for the legal or business issues that arise in the course of Universal's administration of Prince's rights in his copyrighted musical compositions. I also am the person at Universal with primary responsibility for communicating with Prince and his representatives regarding issues that arise in the course of Universal's administration of those musical compositions. I have held that responsibility throughout the time period 2007 to the present.

4. Universal's administration of Prince's rights in his musical compositions is the subject of a written Administration Agreement, made as of September 1, 2005, by and between Universal Music Corp., on the one hand, and Prince Rogers Nelson, p/k/a/ Prince, d/b/a/ Controversy Music (on behalf of all other music publishing companies owned and/or controlled by Prince), on the other hand. Attached as Exhibit 1 to this declaration are pertinent pages from

1  that Administration Agreement that relate to Universal's role in enforcing Prince's copyright
2  interests in his musical compositions.

### Universal's Responsibilities Regarding Prince's Musical Compositions

4       5.    Universal's responsibilities under the Administration Agreement include licensing
5  the right to exploit musical compositions written by Prince and collecting the income earned in
6  connection with such exploitations. These responsibilities include attempting to maximize the
7  licensing opportunities for Prince's copyrighted musical compositions. The licensing market for
8  the right to synchronize copyrighted musical compositions with visual images is a significant
9  source of licensing royalty income for songwriters. Unlike other common uses for musical
10 compositions – namely, the reproduction and distribution of sound recordings embodying musical
11 compositions previously distributed in phonorecords – the right to synchronize musical
12 compositions with visual images is not subject to compulsory licensing in accordance with the
13 Copyright Act. Universal works with its songwriters, including Prince, to ensure that they have
14 the opportunity to generate income from synchronization and other rights in accordance with the
15 songwriter's artistic vision.

16      6.    [REDACTED]
17 [REDACTED] This enhances the potential market for synchronization rights to Prince's
18 musical compositions. Because instances of licensing Prince's musical compositions for
19 synchronization with visual images are infrequent, the potential licensing revenue from
20 authorized synchronizations can command a high licensing fee. By the same token, the frequent
21 synchronization of a particular musical composition with video images has the potential to
22 decrease the value for future uses of that musical composition. [REDACTED]
23 [REDACTED]
24 [REDACTED]
25 [REDACTED] This is true of many of Prince's popular musical compositions, and it certainly is
26 the case with respect to musical compositions from the "Purple Rain" album, which are some of
27 Prince's most valuable musical works. The musical composition at issue in this case, "Let's Go
28 Crazy," is from the "Purple Rain" album. It is one of Prince's most popular musical

compositions. Pursuant to the Administration Agreement discussed in Paragraph 4, above, Universal is the administrator of Prince's copyright interests in this musical composition.

7. Another of Universal's responsibilities under the Administration Agreement is to take legal action in accordance with the Agreement's terms regarding the protection and enforcement of Prince's rights in his musical compositions. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The unauthorized dissemination of Prince's musical compositions over the Internet takes many forms, including the unauthorized sale of bootleg recordings, the illegal distribution of downloads of Prince recordings, and the unauthorized synchronization of Prince compositions in audio-visual works.

### *Universal Investigates in Good Faith Potentially Unauthorized Uses of Prince's Composition and Decides Whether to Undertake Enforcement Actions*

8. I am informed and believe that the Plaintiff in this case has alleged that Universal follows a "Prince Policy," pursuant to which Universal reflexively and indiscriminately sends a cease-and-desist letter or request to have material removed or taken down relating to any use of Prince's musical compositions on the Internet. Universal does not and never has followed such a policy. When I receive a complaint about a particular unauthorized use from Prince or his representatives, I investigate or direct a staff member to investigate whether the use is, in fact, not authorized by Prince, one of his agents, or the law. In this regard, I am aware that Congress has created a compulsory license mechanism, pursuant to which users who comply with specific procedures – and without obtaining permission from the copyright owner – are able to make and distribute records that embody musical compositions theretofore released in phonorecords. The statutory compulsory license provisions for musical compositions are contained in 17 U.S.C. § 115. As result of these procedures, someone desiring to make what is commonly referred to as a "cover" recording of a musical composition is able to obtain a license to do so without directly seeking permission from the copyright owner to do so. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1
2
3
4 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Attached as Exhibit 2 is a true and
5 correct copy of an email exchange between myself and Kathy Adams, an employee of Prince, in
6 which I explained this point.
7         9.     In other cases, following investigation, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
8
9
10
11 ▆▆▆ Attached as Exhibit 3 is a true and correct copy of another email exchange between me
12 and Kathy Adams in which I explained this point.
13 *Universal's Review of Unauthorized Prince Content on YouTube*
14         10.    In late 2006 and 2007, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
15
16 ▆▆▆ Numerous users incorporated Prince's musical compositions into their own videos,
17 and numerous others posted videos with unauthorized embodiments of Prince's musical
18 compositions, including unauthorized videos of his live performances. For example, in the
19 Summer of 2007, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
20
21
22
23
24
25         11.    In responding to Prince's concerns ▆▆▆▆▆▆▆▆▆▆▆
26 ▆▆▆▆▆▆▆▆▆▆, Universal implemented a regular review of YouTube and asked
27 YouTube, as required by that site's Terms of Use, to remove videos once Universal determined
28 that a video posting made an unauthorized use of one or more of Prince's musical compositions.

12. The number of postings on YouTube that have made unauthorized uses of Prince's musical compositions has been staggering. As Universal's records indicate, at times Universal had to ask YouTube to remove hundreds of videos per week. By June of 2007, YouTube had removed over two thousand postings that incorporated Prince's musical compositions without authorization. By August 2007, YouTube had removed at least one thousand more. Out of these thousands of postings that Universal has requested YouTube remove, ███████████████████████████████████████████████ Attached as Exhibits 4-7 are true and correct copies of just some of the communications that Universal exchanged with YouTube regarding the requested removal of unauthorized uses of Prince's musical compositions. Attached as Exhibit 8 is a true and correct copy of a chart that Universal maintained to keep track of the number of requests made to YouTube to remove postings that made unauthorized uses of Prince's musical compositions.

13. I understand that this matter arises from a notice that Universal sent to YouTube on or about June 4, 2007, that included a posting by the Plaintiff in this case. Prior to Universal having sent that notice, neither Prince nor any of his representatives had ever communicated with me or, to the best of my knowledge, anyone at Universal, regarding Plaintiff or her posting.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed this 18th day of October, 2010, at Los Angeles, California.

_____
ROBERT E. ALLEN