UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ, <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL MUSIC CORP., ET AL, <br><br> Defendants. | Case No. C 07-03783 JF (PVT) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY** <br><br> **[Docket No. 297]** |

## INTRODUCTION

Defendant Universal Music Corporation, Universal Music Publishing, Inc. and Universal Music Publishing Group move to compel production of documents and testimony withheld on the basis of waived claim of attorney-client privilege. (collectively "defendants"). Plaintiff Stephanie Lenz opposes the motion. Pursuant to Civ. L.R. 7-1(b), the motion was taken under submission and the hearing was vacated. *See* Order Vacating August 31, 2010 Hearing filed on August 27, 2010. (Docket No. 310). Having reviewed the papers and considered the arguments of counsel, defendants' motion to compel is granted in part and denied in part.[1]

---

[1] The holding of this court is limited to the facts and particular circumstances underlying the present motion.

**BACKGROUND**

As noted in prior orders of this court, plaintiff Lenz alleges that defendant Universal improperly notified the video-sharing website, YouTube, that the 29 second video of her young toddler dancing to Prince's musical composition "Let's Go Crazy" was an unauthorized use. Universal administers the copyrights for a number of Prince's musical compositions, including "Let's Go Crazy." As a result of the June 4, 2007 notice from Universal, YouTube removed the video from its website until Lenz later sent two counter-notices demanding that her video be restored. YouTube restored her video to its website a few weeks afterwards.

Plaintiff Lenz alleges that defendant Universal knew or should have known that it was a self-evident non-infringing fair use under 17 U.S.C. Section 107. Plaintiff Lenz also alleges that she has incurred substantial and irreparable injury, including "harm to her free speech rights under the First Amendment," and to her "sense of freedom to express herself."

During the pendency of this action, defendant Universal notes that Lenz has made repeated disclosures to third parties regarding her confidential communications with legal counsel and has referenced "multiple subjects related to this litigation and [her] allegations before the court." Specifically, it notes that the multiple disclosures by plaintiff Lenz have related to the actual motive for pursuing the action, discussions regarding certain legal strategies, "core allegations" in the action, and have occurred in emails, electronic chats with online friends, and on her personal blog located at www.piggyhawk.wordpress.com. For example, plaintiff has stated that the action provides a forum for her lawyers at Electronic Frontier Foundation to "get[] their teeth into UMG [Universal Music Group]" for sending takedown notices.

In light of the above, defendant Universal moves compel plaintiff (1) to produce all responsive documents withheld on the basis of a claim of attorney-client privilege, where plaintiff has waived the privilege as to the subject matter of the communications by breaching the confidentiality of communications with her counsel; and (2) to compel plaintiff to testify further at deposition regarding such matters.

**LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . " Fed. R. Civ. P. 26(b). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

"The scope of discovery permissible under Rule 26 should be liberally construed; the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., et al.,* 254 F.R.D. 568, 575 (N.D. Cal. 2008). Permissible discovery, however, may be limited by relevant privileges, including the attorney-client privilege. *Id.* "As a general matter, '[a] party is not entitled to discovery of information protected by the attorney-client privilege.'" *Id.* "Because the attorney-client privilege is in derogation of the search for truth, it is 'narrowly and strictly construed.'" *Verizon California, Inc. v. Ronald A. Katz Technology Licensing,* 266 F. Supp. 2d 1144, 1147 (C.D. Cal. 2003) (internal citations omitted).

The party asserting the attorney-client privilege bears the burden of proving that it applies. *Pauline Weil, et al. v. Investment/Indicators, Research and Management, Inc., et al.,* 647 F.2d 18, 25 (9th Cir. 1981)(internal citations omitted). "One of the elements that the asserting party must prove is that it has not waived the privilege." *Id.*

"The disclosure of confidential information resulting in the waiver of the attorney-client privilege constitutes waiver of privilege as to communications relating to the subject matter that has been put at issue." *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., et al.,* 254 F.R.D. at 575. "The privilege which protects attorney-client communications may not be used both as a sword and a shield." *Akamai Technologies, Inc. v. Digital Island, Inc.,* 2002 WL 1285126 *8 (N.D. Cal.).

"The doctrine of waiver of attorney-client privilege is rooted in notions of fundamental fairness." *Michael E. Tennenbaum, et al. v. Deloitte & Touche,* 77 F.3d 337, 340 (9th Cir. 1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing

ORDER, *page 3*

1 those that support the cause while claiming the shelter of the privilege to avoid disclosing those
2 that are less favorable." *Id.* at 340-341.

3 "[I]t has been widely held that voluntary disclosure of the content of a privileged attorney
4 communication constitutes waiver of the privilege as to all other such communications on the
5 same subject." *Pauline Weil, et al. v. Investment/Indicators, Research and Management, Inc., et
6 al, supra,* 647 F.2d at 24.

## DISCUSSION

### I. Communications By Plaintiff

The following three categories of communications are at issue: (1) communications regarding plaintiff's motivation for pursuing the action; (2) communications regarding specific legal strategies; and (3) communications regarding the substance of plaintiff's factual allegations.

At plaintiff Lenz's deposition, her counsel stated at the outset, that with respect to communications plaintiff had had with the Electronic Frontier Foundation, she would only be allowed to authenticate what she had previously written, to verify the date, time, place, and person she communicated with, and to clarify her understanding of her own words. Plaintiff's counsel instructed her not to answer any questions outside these parameters.

#### A. Communications Regarding Plaintiff's Motivation for Pursuing the Action

Plaintiff Lenz asserts that she is pursuing the action to vindicate her First Amendment right of free expression. However, defendant Universal contends that plaintiff's communications with third parties suggest alternative motives for pursuing the action.

On June 14, 2007, plaintiff sent the following email:

> They [EFF] are very, very interested in the case. I imagine so. I've never heard of anything like it. She [EFF lawyer Marcia Hoffman] said that Universal Music Group is creating a trend of just going all over the web claiming copyright infringement left and right & that they're breaking laws & such to do it. So EFF is pretty well salivating over getting their teeth into UMG yet again.

In another email to her mother on that same day, plaintiff stated that she couldn't "say much," but that EFF was planning a "publicity blitz and/or a lawsuit against Universal." She further stated that EFF would be funding this endeavor and that "[a]ny lawyer fees would come out of the settlement."

1 In her blog, plaintiff posted the following:

Today, I got an e-mail from someone at EFF. He asked some questions, asked to see the correspondence from YouTube, asked to see the video, etc. I forwarded everything to him and explained that I'm sensitive to copyright issues and have some knowledge on the topic . . . The letter [from EFF] seemed to have the tone of "this sounds familiar and is something we're interested in talking about."

Plaintiff Lenz contends that the waiver doctrine is rooted in principles of fairness, and that the court should scrutinize the basis for defendant Universal's waiver argument and whether any prejudice results from the lack of any further discovery. *See, e.g.,* Opp. at 6-7. (Comments 1-3).

Here, plaintiff has voluntarily waived the privilege as to communications with her attorney regarding the possible motives for bringing the action. Plaintiff's communications with third parties relate to the actual substance of her conversations with her attorney. Therefore, in the interests of fundamental fairness, defendant Universal shall obtain further discovery regarding communications involving this subject matter. Accordingly, defendant Universal's motion to compel further discovery regarding plaintiff's communications with her attorneys as to her motives for bringing the action is granted.

### B. Communications Regarding Legal Strategies

Plaintiff also made disclosures to third parties regarding specific legal strategies.

In a Gmail Chat, plaintiff disclosed to her friend her communications with EFF regarding re-pleading the complaint:

we're going back to the same judge with more facts, more case law and strengthening the federal aspect. We're dropping the state charge, which was that they violated the contract w/YouTube . . . this way their threat of [h]itting me with a SLAPP suit ('pay our lawyers') is dust . . . b/c the SLAPP statute is a state thing, not a federal. If I make no state claim, they can't respond with the SLAPP allegation . . . thing is, they're fighting YouTube over the federal thing right now too . . . so in my case it's like "pick a federal law you're accusing me of breaking" it's lose-lose for them on [DMCA] front but they can't admit publicly that they're filing DMCA notices b/c that would obliterate the YouTube fight they're having . . . I told [EFF counsel] Corynne [McSherry] that since pursuing the federal portion of the case achieves the ends I have in mind, that's fine to drop the state portion (that they filed a false DMCA notice, tha[t] they're accusing me of copyright infringement and that a ruling in our case could clarify a cloudy decision known as "Rossi")

Plaintiff relayed the same conversation in another Gmail Chat with another friend that same day.

1  Plaintiff also revealed EFF's legal strategy relating to the timing of filing the lawsuit. As
2  noted above, on June 14, 2007, she revealed to her mother that she and EFF were communicating
3  about a "publicity blitz" for her case. Apparently, additional correspondence reveals efforts by
4  plaintiff and EFF to coordinate the filing of the complaint and the re-posting of the video on
5  YouTube.

6  On June 21, 2007, plaintiff informed her chat friend that EFF was ready to file her
7  complaint at that time. She stated "they [the lawyers] said I can blog it [the case] discretely but
8  I've decided it's less hassle just to point on Monday and what [sic.] the hit counter on my video
9  go ding ding ding. It should be reinstated by YouTube and then what=watch."

10 On July 18, 2007, plaintiff had another chat with a friend :
11 me [plaintiff]: hey, EFF may file my suit today
12 Erin [plaintiff's friend]: oh? That's good, yes?
13 Me [plaintiff]: yeah[,] it was held up b/c were waiting for YouTube to restore the video,
14 which they never did.
15 *See, e.g.,* Opp. at 7-8. (Comments 4-6).

16 As discussed above, plaintiff has voluntarily waived privilege here. Contrary to
17 plaintiff's assertion that her communications were analogous to her having merely disclosed that
18 she had spoken to an attorney and that EFF was taking the case, plaintiff disclosed the actual
19 substance of her communications with her attorney. Nonetheless, her communications regarding
20 certain specific legal strategies, including whether to drop the state law claim for interference,
21 whether she had potential exposure to a SLAPP suit, and her discussions regarding the timing of
22 the filing of the lawsuit are not relevant. Plaintiff's communications with her attorney regarding
23 the "clarification about the *Rossi* decision," however, are relevant. Accordingly, defendant
24 Universal's motion to compel further discovery regarding plaintiff's communications with her
25 attorney as to the specific legal strategies identified above is granted in part and denied in part.
26

27 **C. Communications Regarding Plaintiff's Factual Allegations**
28 In conversations with third parties, plaintiff further disclosed communications she had
with her attorneys regarding certain factual allegations.

ORDER, *page 6*

On April 16, 2008, plaintiff stated in a Gmail Chat with her friend the following:

you'll love the brief my lawyer wrote up, once it's a finished public document . . . She's really going after UMPG & now Prince is the villain as well. Our lawsuit was filed before we knew he had a hand in it. Now she's kind of hinting that they're doing this b/c Prince bullied them into it and that there's been ample public proof that he wants everyone targeted, no matter whether they're actually guilty of anything. It's delicious.

Several months later, plaintiff stated that:

I asked [EFF counsel Corynne McSherry] if she though they [Universal] were holding out to the last minute to settle & she thinks that b/c it's Prince, they have to fight . . . [Plaintiff's Friend:] You think Prince is forcing them to fight it out instead of trying to settle? [Plaintiff:] I think that's what Corynne thinks.

In another communication, plaintiff stated:

> [Reporter from "Zerogossip.com"]: You contacted the Electronic Frontier Foundation. What are you hoping for?
> [Plaintiff]: When I contacted EFF, I did so at the suggestion of a friend of mine who's a lawyer in Canada. I wanted to know my rights, how to protect myself in case UPMG sued me and in what way (if any) I had infringed copyright. In discussing the situation with one of the EFF lawyers, we came to the conclusion that I did not infringe the copyright and eventually we decided to file this lawsuit.

On June 12, 2007, plaintiff responded on her blog to a reader, who asked about a fair use defense. Plaintiff wrote: "You're right Richard. Mine's not a 'fair use' case at all. Nor is it a parody. It's something different. I've never heard of anything like it, which is why I contacted EFF." At plaintiff's deposition, she stated that "[a]t the time it may have been my opinion. It may have been I was misunderstanding what I'd been told by counsel."

As before, the court finds that plaintiff has voluntarily waived the privilege here. In the interests of fundamental fairness, defendant Universal shall obtain further discovery regarding plaintiff's communications with her attorney on this subject matter as well. Accordingly, defendant Universal's motion to compel further discovery regarding plaintiff's communications with her attorney as to the specific factual allegations set forth above is granted.

**CONCLUSION**

For the foregoing reasons, defendants' motion to compel is granted in part and denied in part. Plaintiff Lenz shall produce further responsive documents no later than November 8, 2010. Defendant Universal may depose plaintiff on the subject matters set forth above for no more than 2 hours and the deposition shall be held no later than December 1, 2010.

IT IS SO ORDERED.

Dated: October 22, 2010

*Patricia V. Trumbull*
PATRICIA V. TRUMBULL
United States Magistrate Judge