ELECTRONIC FRONTIER FOUNDATION
KURT OPSAHL–#191303
CORYNNE MCSHERRY - #221504
454 Shotwell Street
San Francisco, CA  94110
Telephone:     (415) 436-9333
Facsimile:      (415) 436-9993
Email: kurt@eff.org;  corynne@eff.org

KEKER & VAN NEST LLP
ASHOK RAMANI - #200020
MICHAEL S. KWUN - #198945
MELISSA J. MIKSCH - #249805
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:     (415) 391-5400
Facsimile:      (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
          mmiksch@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                              Plaintiff,<br><br>v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                              Defendants. | Case No. C-07-03783-JF (PVT)<br><br>**OPPOSITION TO MOTION TO COMPEL PRODUCTION OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY**<br><br>Date:        August 31, 2010<br>Time:       10:00 a.m.<br>Crtrm:      5 (Hon. Patricia V. Trumbull)<br><br>**REDACTED VERSION**<br><br>[APPLICATION TO SEAL, DECLARATION OF MICHAEL S. KWUN AND [PROPOSED] ORDER FILED CONCURRENTLY] |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ............................................................................................................2

    A.   Ms. Lenz posts a 29-second home video of her toddler son's dance moves on YouTube. .............................................................................................2

    B.   Universal represents to YouTube that Ms. Lenz's video infringed a copyright, causing YouTube to remove it. ..........................................................2

    C.   Ms. Lenz files suit against Universal, which could not in good faith have believed that her home video was infringing rather than a fair use. ..................................................................................................................3

III.  ARGUMENT .................................................................................................................5

    A.   Waiver of privilege is based on, and limited by, principles of fairness. ..................5

    B.   Ms. Lenz's extrajudicial statements do not warrant any waiver beyond the already produced statements themselves. ..........................................................9

    C.   To the extent that any of Ms. Lenz's statements waived privilege at all, fairness does not require any disclosure beyond the statements themselves. .......................................................................................................12

    D.   Ms. Lenz's speculation during her deposition does not justify any waiver. ..........................................................................................................15

IV.   CONCLUSION .............................................................................................................18

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

507407.01

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Akamai Tech., Inc. v. Digital Island, Inc.*
No. C-00-3508 CW(JCS), 2002 WL 1285126 (N.D. Cal. May 30, 2002) .........................12, 13

*Bittaker v. Woodford*
331 F.3d 715 (9th Cir. 2003) ................................................................................................6

*Cardtoons, L.C. v. Major League Baseball Ass'n*
199 F.R.D. 677 (N.D. Okla. 2001) .....................................................................................15

*Chevron Corp. v. Pennzoil Co.*
974 F.2d 1156 (9th Cir. 1992) ......................................................................................11, 13

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*
115 F.R.D. 308 (N.D. Cal. 1987)...........................................................................6, 12, 18

*In re Consol. Litig.*
1987 WL 20408 (N.D. Ill. Nov. 20, 1987) .....................................................................10, 13

*In re Keeper of Records*
348 F.3d 16 (1st. Cir. 2003) ..............................................................................................10

*In Re Sealed Case*
676 F.2d 793 (D.C.Cir.1982) ............................................................................................10

*In re Shearman & Sterling*
Nos. 2-124, M8-85, C84-3894, C84-743, 1986 WL 6157 (S.D.N.Y.
May 30, 1986)......................................................................................................13, 14

*In re von Bulow*
828 F.2d 94 (2d Cir. 1987) ...........................................................................9, 10, 11, 12

*Rossi v. Motion Picture Assoc. of Am., Inc.*
391 F.3d 1000 (9th Cir. 2004). ...................................................................................4, 7, 15

*Sanofi-Synthelabo v. Apotex, Inc.*
363 F.Supp.2d 592 (S.D.N.Y. 2005) ...................................................................................16

*Sizemore v. City of Madras*
No. Civ. 02-74-MA, 2004 WL 1318883 (D. Or. 2004).........................................................12

*Tennenbaum v. Deloitte & Touche*
77 F.3d 337 (9th Cir. 1996) ............................................................................................5, 6

*Weil v. Investment/Indicators, Research & Mgmt., Inc.*
647 F.2d 18 (9th Cir. 1981) ......................................................................................10, 11, 14

### Federal Statutes

17 U.S.C. 512(f)...................................................................................................................4

### Other Authorities

PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES
§ 9:44 .......................................................................................................................10

# I.     INTRODUCTION

On June 4, 2007, Universal sent a takedown notice to YouTube representing that Ms. Lenz's 29-second long home video of her toddler dancing to music infringed the copyright in Prince's song "Let's Go Crazy." As a result of that notice, YouTube took down Ms. Lenz's video the next day—at which point Ms. Lenz acquired the cause of action she now asserts. Ms. Lenz sued Universal under Section 512(f) of the Digital Millennium Copyright Act ("DMCA") for knowingly materially misrepresenting in its takedown notice that her video infringed Prince's copyright. The central issue in this case is therefore whether Universal made a knowing material misrepresentation that Ms. Lenz's video infringed copyright.

Universal offers little to explain why it needs further discovery because not one of the statements Universal cites has any bearing on this issue. Communications regarding Ms. Lenz's motivation for pursuing this litigation (much less her counsel's motivation for taking up her case) and her legal strategy certainly are not germane. The identified communications regarding her factual allegations are equally irrelevant: they all pertain either to (1) Ms. Lenz's view of Prince and her understanding of Prince's role in the takedown based on publicly available documents and (2) what people other than Universal thought about whether her video was lawful.

Universal nonetheless insists that Ms. Lenz has put various statements (primarily to her friends and family) "at issue" because they might bear on (1) her motivations in pursuing this case; (2) her "strategy"; (3) her understanding of some of the allegations in this case. That is not the rule, and contrary to Universal's assertion, Ninth Circuit jurisprudence does not hold otherwise. Attorney-client communications are only placed at issue where the client's claim is "grounded on" those communications, such as where a party offers an affirmative claim or defense based upon the advice of counsel. Ms. Lenz's claims are grounded on what Universal did, not on what she and her attorneys said about what Universal did.

Universal then further insists that these statements can be the basis for an extraordinarily broad subject matter waiver and an excuse to re-open Ms. Lenz's deposition. Yet, as court after court has held, including the Ninth Circuit, subject matter waiver is appropriate only where necessary to assist the search for truth. Granting Universal's motion would assist only Universal's

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

507407.01

effort to make this litigation as burdensome as possible for Ms. Lenz.  Indeed, Universal has exacerbated that burden by choosing to file this motion many months after taking Ms. Lenz's deposition, on the last possible day on which to file a motion to compel.

Universal's motion should be denied.

## II.    BACKGROUND

**A.    Ms. Lenz posts a 29-second home video of her toddler son's dance moves on YouTube.**

Plaintiff Stephanie Lenz is a mother, wife, writer and editor.  She and her husband have two children, a girl and a boy. Declaration of Michael S. Kwun ("Kwun Decl.") Ex. A (September 16, 2009 Lenz Deposition Transcript) at 28:4-17.  In early February, 2007, Ms. Lenz and her family were gathered in the kitchen while one of her CDs, Prince's "The Hits" Volume I, played in the background.  *Id.* at 30:16-32:17.  Her son, then a toddler who was just learning to walk, would happily break out his "dance moves" (that is, bouncing up and down in his walker) upon hearing the word "music."  *Id.*  Hoping to capture footage of this phase of his development for her family and friends, Ms. Lenz grabbed her digital camera from her kitchen counter and asked her son "what do you think of the music?"  *Id.*  She recorded a short 29-second video ("the Video") of her young son as he "danced" to the song playing at the time--"Let's Go Crazy."  *Id.*

Shortly thereafter, Ms. Lenz posted the Video to YouTube as is, without editing, *id.* at 74:5-7, thinking that her friends and family (especially her mother in California) would enjoy seeing her son in action, *id.* at 90:13-17.  Over the next few months the Video received some 273 views, and one comment.  Kwun Decl. Exhs. B (2007 Decl. of Stephanie Lenz in Support of Plaintiff's Opp. to Mot. to Dismiss) at ¶ 14 and C (November 13, 2007 Decl. of Micah Schaffer in Support of Plaintiff's Opp. to Mot. to Dismiss) at ¶ 3.

**B.    Universal represents to YouTube that Ms. Lenz's video infringed a copyright, causing YouTube to remove it.**

On or around June 4, 2007, Universal sent YouTube an email notice demanding that it remove Ms. Lenz's video because, Universal claimed, it infringed the copyright in Prince's "Let's Go Crazy," which Universal administers.  Kwun Decl. Exh. D (June 4, 2007 email).  YouTube promptly disabled access to the Video, per its normal practice upon receiving DMCA-compliant

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

1   takedown notices.  Kwun Decl. Exh. E (October 27, 2009 Affidavit of Darren Hubbard) at ¶ 11.

2   On June 5, 2007, YouTube informed Ms. Lenz that it had "removed or disabled access to [the

3   Video] as a result of a third-party notification by Universal Music Publishing Group claiming

4   that this material is infringing." Kwun Decl. Exh. F (June 5, 2007 email).

5        Ms. Lenz does not believe and never has believed that her video violated any law.  Kwun

6   Decl. Exh. A (Lenz Trans.) at 117:12-20, 138:4-5, 171:22-23, 172:23-25.  Accordingly, on June

7   5, 2007, Ms. Lenz sent an email to YouTube that she intended to serve as a counternotice under

8   Section 512(g) of the DMCA.  Kwun Decl. Exh. G at 1.  Ms. Lenz sent a revised counternotice to

9   YouTube on June 7, 2007, correcting an omission brought to her attention by YouTube.  Kwun

10  Decl. Exh. H at 3-5.  YouTube forwarded this counternotice to Universal.  *Id.* at 3.  Universal

11  responded by asserting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.* at 1.  Universal also reasserted that Ms. Lenz's video

15  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮▮▮▮▮▮▮  *Id.*

17       Ms. Lenz, meanwhile, engaged the Electronic Frontier Foundation as legal counsel to

18  assist her in addressing the issues arising from Universal's conduct.  Klaus Decl. Exh. 5 (Lenz-

19  EFF Retainer Agreement).  Her attorneys helped her prepare another DMCA counter-

20  notification, which she sent to YouTube on June 27, 2007.  Kwun Decl. Exhs. I and A (Lenz

21  Trans.) at 228:22-25 (as corrected).  YouTube restored her video on or about July 20, 2007.

22  Kwun Decl. Exh. J.

23  **C.    Ms. Lenz files suit against Universal, which could not in good faith have believed
         that her home video was infringing rather than a fair use.**

24       On July 24, 2007, Ms. Lenz filed a Complaint seeking redress for Universal's misuse of

25  the DMCA takedown process and its intentional interference with her contractual use of

26  YouTube's hosting services.  Dkt. No. 1.  Her complaint included both federal and state claims.

27       On September 21, 2007, Universal had moved to dismiss the Complaint and to strike the

28

3

507407.01

interference claim.  Dkt. No. 11.  Universal argued, *inter alia*, that her allegations were insufficient to state a claim Section 512(f) claim under the Ninth Circuit's decision in *Rossi v. Motion Picture Assoc. of Am., Inc.*, 391 F.3d 1000 (9th Cir. 2004).  Dkt. No. 11 (Mot. to Dismiss) at 10-12.  The parties' ensuing briefing advocated for their respective views on the proper application of *Rossi*.  Dkt. Nos. 11 (Mot. to Dismiss) at 10-12 and 21 (Opposition) at 4-8.

On or about October 26, 2007, Universal issued a statement to ABC News, claiming that

> Prince believes it is wrong for YouTube, or any user-generated site, to appropriate his music without his consent.  That position has nothing to do with any particular video that uses his songs. It's simply a matter of principle. And legally, he has the right to have his music removed. We support him and this important principle. That is why, over the last few months, we have asked YouTube to remove thousands of different videos that use Prince music without his permission.

Kwun Decl. Exh. K at 2.  In deposition, Peter Lofrumento, then Senior Vice President of Corporate Communications and Public Relations for Universal Music Group, testified that he provided this statement by reading a written statement prepared in conjunction with counsel. Kwun Decl. Exh. L (Lofrumento Trans.) at 20:22-21:5, 21:23-22:9, 26:8.

On April 8, 2008, this Court dismissed Ms. Lenz's Complaint with leave to amend.  Dkt. No. 32.  On April 18, 2008, Ms. Lenz filed her Second Amended Complaint ("SAC"), dropping her state claim and alleging only her federal claim for misuse of the DMCA process under 17 U.S.C. 512(f).  Dkt. No. 34.  Universal moved again for dismissal.  Dkt. No. 38.  Both parties' briefing again focused on the proper interpretation and application of *Rossi*.  Dkt. Nos. 38 (Mot. to Dismiss SAC) at 16-18 and 39 (Opp. to Mot. to Dismiss SAC) at 14-16.  On August 20, 2008, the Court denied Universal's Motion.  Dkt. No. 45.  Universal filed its Answer on September 30, 2008, asserting various affirmative defenses.  Dkt. No. 52.

On October 30, 2009, Ms. Lenz moved for summary judgment on all but one of Universal's affirmative defenses, including bad faith and unclean hands.  Dkt. No. 199.  The only facts Universal referenced in its Opposition as creating a material dispute regarding those two defenses concerned Ms. Lenz's motivation for filing this lawsuit and conduct with respect to the litigation itself.  Dkt. No. 215 (Opp. to MSJ) at 1-4.  On February 25, 2010, the Court granted summary judgment to Ms. Lenz on those two defenses (as well as the rest of the Universal's

507407.01

1  defenses on which she had moved).  Kwun Decl. Exh. M (Order on MSJ; Dkt. No. 250) at 3-10.

2  The court rejected any suggestion that the merits of Ms. Lenz's case depend on her motivation for

3  filing suit.  *See id.* at 8:20-9:4.

4         The last scheduled deposition in this case took place on May 18, 2010.  Kwun Decl. ¶ 4.

5  On July 15, 2010, the parties jointly stipulated to a schedule for the remainder of the case, which

6  the court entered on July 16.  Dkts. Nos. 290 and 291.  Universal insisted that the schedule

7  accommodate its desire to file this motion, which it announced for the first time on June 23—over

8  nine months after it deposed Ms. Lenz on September 16, 2009.  Kwun Decl. ¶ 5; Klaus Decl.

9  Exh. 15 at 5.  During the meet and confer process, Universal refused to identify which of Ms.

10  Lenz's statements it contended effected waiver and all of the categories of communications it

11  contended were subsumed by that waiver.  *See* Klaus Decl. Exh. 15 at 2, 3.

12         Ms. Lenz's lawsuit has generated considerable media attention, in part due to efforts by

13  her counsel to draw attention to the novel legal issues raised by her claim.  Naturally, Ms. Lenz's

14  friends and family, as well as some members of the press, have been interested to hear her

15  perspective on her case; naturally, Ms. Lenz has responded.  Ms. Lenz also keeps a "blog," where

16  she shares information about her life.

17  ### III.    ARGUMENT

18  **A.    Waiver of privilege is based on, and limited by, principles of fairness.**

19         Universal's waiver argument sits on a highly unstable foundation.  The remedy it seeks—a

20  broad subject-matter waiver on multiple topics, including communications with counsel

21  concerning the claims Ms. Lenz decided to bring, and her legal strategy in pursuing her case—has

22  no justification in fact or law.  Universal's motion nowhere asserts that these undisclosed

23  communications would not be privileged, absent waiver, and thus the question is whether

24  Ms. Lenz has waived privilege on any topics, and if so what the scope of that waiver is.

25         The doctrine of privilege waiver is based on principles of fairness.  *Tennenbaum v.*

26  *Deloitte & Touche,* 77 F.3d 337, 340 (9th Cir. 1996).  "Its principal purpose is to protect against

27  the unfairness that would result from a privilege holder selectively disclosing privileged

28  communications to an adversary, revealing those that support the cause while claiming the

507407.01

shelter of the privilege to avoid disclosing those that are less favorable." *Id.* at 340-41 (citation omitted).  The doctrine should not extend "beyond what is needed to further its purpose" to situations that "present[] none of the same fairness concerns." *Id.* at 341.  Where waiver is required in order to ensure fairness, "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker v. Woodford,* 331 F.3d 715, 720 (9th Cir. 2003);[1] *see also Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 115 F.R.D. 308, 311 (N.D. Cal. 1987) (risk of "truth garbling" is the basis for waiver, "not the mere fact of disclosure"; waiver "should only be found where this kind of truth-garbling impairs the court's ability to do justice, and/or places an adverse party at an unfair advantage").

Given the roots of the waiver doctrine in principles of fairness, the Court should examine closely the factual basis for Universal's waiver argument, and the alleged prejudice Universal would suffer absent further discovery.  Universal's motion rests on ten of Ms. Lenz's statements:

**Comment 1:**  Ms. Lenz told her friend that her counsel, the Electronic Frontier Foundation, believes that Universal has engaged in this type of conduct before, and that EFF looks forward to litigating against Universal again.  *See* Mot. at 4-5 (citing Klaus Decl. Exh. 3). Nowhere does Universal explain how this is in any way relevant to the case, or how it suffers legal prejudice from being denied access to privileged communications on this topic.  The only party that has ever sought to make an issue out of this topic is *Universal*; the statement raises no concerns that *Ms. Lenz* is seeking to make use of a selective disclosure in her case.

**Comment 2:** Ms. Lenz told her mother that she and her counsel contemplated a lawsuit and/or a publicity campaign as part of her response to Universal's misrepresentation.  Mot. at 5

---

[1] In *Bittaker,* the court was addressing a waiver that was not based on an express disclosure, but given the *Tennenbaum* court's explanation that fairness is the basis for waiver generally, the *Bittaker* court's discussion of the "fairness principle" is instructive.  The *Bittaker* court also noted that in cases based on express disclosure, narrow waivers may well be appropriate.  *Id.* at 720 n.5 (citing *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 604 n.1, 611 (8th Cir.1977) (limited waiver); *In re von Bulow,* 828 F.2d 94, 103 (2d Cir.1987) ("[W]here ... disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason logic or equity to broaden the waiver beyond those matters actually revealed."); CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE: PRACTICE UNDER THE RULES § 5.28, at 541 (2d ed. 1999) ("[t]he trend of modern cases" is toward finding only limited waivers)).

(citing Klaus Decl. Exh. 4).  Universal falsely states that Ms. Lenz cast this statement in terms of EFF's "plans." Mot. at 5.  She did not; she merely told her mother what might happen.  Klaus Decl. Exh. 5.  Regardless, the fact that Ms. Lenz has, in fact, filed a lawsuit is of course public, as is the publicity that ensued, including the press releases issued by her counsel.  Revealing that you are considering a lawsuit does not waive privilege.

**Comment 3**: Ms. Lenz told her mother that any lawyer fees incurred by Ms. Lenz would be satisfied by any settlement she might reach.  Mot. at 5 (citing Klaus Decl. Exh. 5). Ms. Lenz has been open about the fact that her counsel is representing her pro bono—indeed, this point was addressed at length in the Court's order granting summary judgment on Universal's affirmative defense of no damages (among other claims).  Universal never explains why this entitles it to privileged communications on any topic, let alone the topics identified in its motion.

**Comment 4**: Ms. Lenz posted on her blog that she had received an email from someone at EFF, that the attorney asked her factual questions, that she provided him with information, and that she interpreted the email to express interest in discussing the matter.  Mot. at 5 (citing Klaus Decl. Exh. 6).  If this statement leads to a subject matter waiver, so too would virtually any comment along the lines of, "I spoke to an attorney about my situation, and I think the law firm is going to take my case!"

**Comment 5:** After the Court dismissed Ms. Lenz's original Complaint, she told two friends that she would drop her state law claim and allege only her federal § 512(f) claim in the SAC because, as she told her counsel, the federal claim was sufficient to fulfill her goals of showing that Universal sent an improper takedown notice under the DMCA, showing that Universal accused her of infringing copyright, and clarifying *Rossi*.  Mot. at 6 (citing Klaus Decl. Exhs. 7 and 8).  The filing of the SAC made public the claims Ms. Lenz was pursuing, and the parties' disagreement about the proper application of *Rossi* was publicly documented in their filings both before and after Ms. Lenz's statement.

**Comment 6:** Ms. Lenz told two friends that she intended to wait to file her lawsuit until YouTube reinstated her video.  Mot. at 7 (citing Klaus Decl. Exhs. 12 & 13).  The timing of

Ms. Lenz's lawsuit does not make her case more or less meritorious,[2] and Universal offers no explanation of its legal prejudice in being denied access to any privileged communications on the same topic.

**Comment 7:** Ms. Lenz told a friend that the SAC would allege that Universal took down her video because Prince "bullied" it into doing so. Mot. at 7-8 (citing Klaus Exh. 9 at 3-4). This, of course, is a fact that was intended to be public, and is in the SAC.

**Comment 8:** Ms. Lenz posted on her blog on November 8, 2007, that her counsel thought that Universal would fight, rather than settle, because of Prince's wishes. Mot. at 8 (citing Klaus Decl. Exh. 10). Again, Universal offers no explanation of how Ms. Lenz's statement—a statement she has never offered in support of any of her claims—causes it legal prejudice absent a subject matter waiver.

**Comment 9:** Ms. Lenz told a reporter during an interview with www.zerogossip.com that she had contacted EFF, that they had discussed her case, that they had concluded that she had not infringed copyright and decided to file suit. Mot. at 8 (citing Klaus Decl. Exh. 11). Universal falsely suggests that Ms. Lenz has somehow revealed that Ms. Lenz or her counsel had a difficult time determining that her video is a fair use. *See* Mot. at 8. The interview, however, reveals nothing more than that (a) she discussed her video with counsel; and (b) she and counsel concluded there was no infringement. Klaus Decl. Exh. 11. There is no mention of whether this determination happened instantaneously or whether it required a longer analysis. Regardless, the issue in this case is what Universal knew, not what Ms. Lenz or EFF knew.

**Comment 10:** Ms. Lenz responded to a comment on her blog by stating that her case "is not a fair use case at all. Nor is it a parody. It's something different. I've never heard of anything like it, which is why I contacted EFF," Mot. at 8 (citing Klaus Decl. Exh. 6), and later speculated during her deposition that that statement "may have been my opinion. It may have been I was misunderstanding what I'd been told by counsel," *id.* (citing Klaus Decl. Exh. 2 at 286:12-14). When Ms. Lenz was first asked about her blog post, she prefaced her answer with the statement,

---

[2] Universal has not asserted laches or the statute of limitations as defenses, and Ms. Lenz has been granted summary judgment on its defenses of estoppel and waiver.

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

"I don't remember." *See id.* at 285:16.  Her speculation that she may have misunderstood something said by counsel is just that—speculation, not a voluntary disclosure of communications with counsel.  Moreover, because she *does not remember* why she made the comment on her blog, there is no point in ordering further discovery or reopening her deposition.

**B.   Ms. Lenz's extrajudicial statements do not warrant any waiver beyond the already produced statements themselves.**

Nine of the ten disclosures relied upon by Universal (all but Comment 10) occurred extrajudicially—Ms. Lenz neither volunteered them during her testimony, nor relied on them to support her case.[3]  And little wonder—none of these extrajudicial statements has anything to do with this case.  Her § 512(f) claim will succeed or fail based on what she proves Universal thought and did, not on what she and her attorneys may have said about what Universal thought and did.  Because these communications are not "at issue," no further disclosure is necessary to preserve fairness or aid the search for truth.  Rather, fairness is better served by denying Universal's brazen attempt to eviscerate attorney-client privilege.

Non-testimonial statements do not create a risk of unfairness, and thus do not merit a waiver beyond the statements already disclosed.  "[T]he extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communication." *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987).  A disclosure *about* litigation remains nonetheless an extrajudicial disclosure unless made in a testimonial setting.  *See id.* at 103.  "[W]here, as here, disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed." *Id.* at 102-03.  Indeed, even if the extrajudicial statements are one-sided or even misleading, "so long as such disclosures are and remain extrajudicial, there is no *legal* prejudice that warrants a broad court-imposed subject matter waiver." *Id.* at 103.  Unless the client puts *the disclosed communication* at issue—not merely the subject matter of the disclosed communication—disclosures made in public rather than in court—

---

[3] Nor will Ms. Lenz rely upon any of these statements later in this case.

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

even if selective—create no risk of legal prejudice . . . ." *Id.; see also* PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 9:44 (p. 9-216-17) (1999) ("An attorney's communications are not placed 'at issue' unless the client's claim is 'grounded' on the attorney's advice or opinion.").

This basic principle is now black-letter law.  In *In re Keeper of Records,* 348 F.3d 16 (1st. Cir. 2003), the First Circuit adopted *von Bulow* and vacated a contempt citation and reversed a turnover order for material related to the subject matter of a telephone call between two corporations during which one corporation's attorney allegedly disclosed privileged material. *Id.* at 19-20.  Noting that "[v]irtually every reported instance of an implied waiver extending to an entire subject matter involves a judicial disclosure made in the course of a judicial proceeding," the court observed that "[t]his uniformity is not mere happenstance; it exists because such a limitation makes eminently good sense." *Id.* at 24; *see also In Re Sealed Case,* 676 F.2d 793, 809 n.54 (D.C.Cir.1982) (courts need not impose a subject matter waiver "where the client has merely disclosed a communication to a third party, as opposed to making some use of it."); *In re Consol. Litig.*, Nos. 81 C 7076, 82 C 6895 and 85 C 3521, 1987 WL 20408, at *8 (N.D. Ill. Nov. 20, 1987) ("Disclosure to a non-litigant, unlike selective disclosure in the context of a lawsuit, generally leaves an adverse party in no worse position than he was without the disclosure, and so raises no fairness issue").

Contrary to Universal's claim, the Ninth Circuit's jurisprudence also embodies this sound view.  *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18 (9th Cir. 1981), the principal case relied upon by Universal, involved a waiver by one of the defendants, an investment fund.  That waiver was based on deposition testimony by one of the fund's officers about specific advice the fund had received from its Blue Sky counsel.  624 F.2d at 23.[4]  That understanding, the court observed, was directly relevant and material to plaintiff's securities fraud claim, which required proof of scienter.  624 F.2d at 23 ("The question, then, is whether the Fund may disclose a privileged attorney communication about a matter that is relevant and material to

---

[4] In *Weil,* there was also a second disclosure to the SEC that may or may not have been voluntary. *Id.* at 23 n.9.  Because the court found that the deposition testimony effectuated a

1    issues in the case, and then invoke the privilege to prevent discovery of other communications

2    about the same matter.").  The Ninth Circuit was not addressing a situation, as with Comments 1-

3    9 in the case at bar, where a party seeks a broad waiver based on an extrajudicial statement.[5]

4    Moreover, even in *Weil* the court was careful to limit the scope of the waiver to only as much as

5    necessary to ensure fairness, declining to extend the waiver to the defendant's communications

6    with counsel on other subjects.  *See id.*

7           The Ninth Circuit's subsequent decision in *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156,

8    1162 (9th Cir. 1992) reflects the same approach.  In that case, Pennzoil argued that it had decided

9    it was reasonable to acquire certain stock for investment purposes only based on the advice of its

10   tax counsel.  Chevron then sought to compel disclosure of written materials that supported

11   Pennzoil's belief that its tax position was reasonable and sound.  When Pennzoil asserted

12   attorney-client privilege, Chevron argued that Pennzoil had waived the privilege by disclosing

13   documents to an outside auditor that discussed questions relevant to the tax deferral, and that the

14   privilege was waived when Pennzoil affirmatively placed at issue the very information for which

15   it was claiming the privilege.  Citing *Weil*, the court upheld the lower court's ruling that Pennzoil

16   had waived privilege with respect to information disclosed to the auditor, but not as to all

17   communications concerning the tax deferral.  Because Pennzoil had explicitly claimed that its tax

18   position was reasonable because it was based on advice of counsel, it put that advice at issue.

19   "Where a party raises a claim which in fairness requires disclosure of the protected

20   communication, the privilege may be implicitly waived . . . Pennzoil cannot invoke the attorney-

21   client privilege to deny Chevron access to the very information that Chevron must refute in order

22   to demonstrate that Pennzoil's Schedule 13D is materially misleading." 947 F.2d at 1162-63

23   (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)).  Notably, the Ninth

24   Circuit's analysis relied heavily upon a Second Circuit decision that relied, in turn, on *von Bulow*.

25

26   waiver, the Ninth Circuit had no need to address the disclosure to the SEC.  *Id.* at 25 n.10.

27   [5] In *Bittaker,* decided well after *Weil,* the Ninth Circuit stated that the law on waiver based on
     voluntary disclosures was not settled, and cited *von Bulow*'s treatment of extrajudicial statements.

28   331 F.3d at 720 n.5.  This footnote would be nonsensical if *Weil* means what Universal argues it
     means.

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

507407.01

Thus, far from mandating that waiver automatically extends beyond the disclosure itself, Ninth Circuit decisions reiterate that waiver should apply only where the disclosure is directly and materially relevant to live issues in litigation, and, if waiver is found, should be limited to what is necessary to prevent unfairness to the party seeking production (hence the traditional 'sword/shield' analysis. In keeping with these principles, courts within the Ninth Circuit have regularly limited waiver to the disclosed communication itself. *See, e.g.*, *Sizemore v. City of Madras*, No. Civ. 02-74-MA, 2004 WL 1318883 at *2 (D. Or. 2004) (waiver limited to documents actually disclosed); *Akamai Tech.*, *Inc. v. Digital Island, Inc.*, No. C-00-3508 CW(JCS), 2002 WL 1285126 (N.D. Cal. May 30, 2002) (same); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, Nos. C 84 20642 RPA, C 86 20406 RPA, 115 F.R.D. 308, 311 (N.D. Cal. 1987) (no waiver where disclosure not used in litigation). In *Akamai*, for example, the court denied the plaintiff's motion to compel, finding that disclosure of a memorandum prepared by counsel during settlement discussions did not waive privilege as to anything but the memorandum itself. As in *von Bulow*, the defendant 'had not injected the advice of its counsel into the litigation.' 2002 WL 1285126 at *9. Consequently, the plaintiff '[would] not have to challenge any assertion that [the defendant] is not subject to liability or damages due to its reliance on the Damages Memorandum.' *Id.* Because the defendant's 'limited disclosure does not prejudice [the plaintiff] in any way,' there was no waiver beyond the memorandum itself. *Id.*

**C.    To the extent that any of Ms. Lenz's statements waived privilege at all, fairness does not require any disclosure beyond the statements themselves.**

In keeping with prevailing case law, even if the Court were to find that some statements did effect a waiver, the waiver should not extend any further than the statements themselves, and thus no further discovery is warranted. The statements Universal identified are neither relevant to any live issue in this case nor has Ms. Lenz 'injected' them into the case in a manner that implicates the fairness concerns underlying the 'sword/privilege' rationale for subject matter waivers.

The sword/shield principle is "directed to a situation where the holder of the privilege affirmatively seeks to use privileged testimony while preventing the opposing side from seeing the context or the remainder of the communication." *In re Shearman & Sterling*, Nos. 2-124, M8-85, C84-3894 and C84-743, 1986 WL 6157 at *1 (S.D.N.Y. May 30, 1986) (no waiver beyond communication actually disclosed because defendant did not seek to use privileged material). It follows that a party uses privileged material as a sword only when it relies on that material to support its position, not whenever it discloses communications that merely relate to positions it asserts. *See id.*; *cf. Chevron*, 974 F.2d at 1162 (rejecting defendant's attempt to use advice from its counsel—that is, privileged communications themselves—"both as a sword to defeat [the plaintiffs'] tax arguments and as a shield to protect against the disclosure of the basis for its affirmative defense."). "[T]he scope of a subject matter waiver depends on the use the party has made of the otherwise confidential material." *In re Consol. Litig.*, 1987 WL 20408 at *4 (denying motion to compel; disclosure of attorney's conclusion did not effect subject matter waiver encompassing all underlying documents because privilege holder did not seek to use attorney's statement in the litigation).

Here, Universal will not have to confront any assertion that X or Y is true because of something Ms. Lenz's counsel said. *Cf. Akamai*, 2002 WL 1285126 at *9 ("Akamai will not have to challenge any assertion that Digital Island is not subject to liability or damages due to its reliance on the [disclosed communication]."). The first category of statements identified by Universal, communications regarding Ms. Lenz's purpose in pursuing this litigation (or that of her counsel in agreeing to take up her case) (Mot. at 4), have no bearing on the issues in this case; indeed, in his order granting summary judgment to Lenz on virtually all of Universal's defenses, Judge Fogel rejected the notion that Ms. Lenz's motivations in filing suit might affect the merit of any of the actual claims and defenses in this case. *See* Kwun Decl. Exh. M (Order on MSJ) at 8:20-9:4. In addition, the reference to fees can hardly waive privilege; Ms. Lenz has produced her retainer agreement. Klaus Decl. Exh. 5

Universal's second category of communications, those regarding legal strategies (Mot. at 5-7), is similarly irrelevant–what matters in this case is what Universal said and thought about

507407.01

Ms. Lenz's video when it sent its takedown notice, not what Ms. Lenz and her counsel thought about Universal months later.  Moreover, as explained above, with the exception of Ms. Lenz's comments on the timing of her filing, none of the statements reveal anything Universal could not already determine, and doubtless has, from publicly filed documents and Ms. Lenz's campaign to call public attention to her situation.  The timing of the filing of Ms. Lenz's complaint, meanwhile, has nothing whatever to do with what caused her video to be taken down in the first place.

As for Universal's final category of statements (communications regarding Ms. Lenz's allegations, Mot. at 7), again, none bear on Universal's knowledge, nor have they have been 'injected' into this case.  Plaintiff's statement that the SAC would allege that Prince pressured Universal into taking her video down is, of course, true–the SAC did so allege. But any privileged discussions Ms. Lenz may have had *about* this allegation are not at issue, in contrast to the disclosures in *Weil*, which pertained directly to the relevant and material issue of defendants' knowledge.  Ms. Lenz's statement can no more effect a waiver than can the SAC itself, which reveals precisely the same information.   Similarly, there is no reason for Ms. Lenz (or Universal) to rely on any communication from Ms. Lenz's counsel about why Universal might decline to settle this litigation to prove any fact at issue in the case.

Nor does the zerogossip interview, where Ms. Lenz explained that she discussed the facts with her attorneys and they concluded that her actions were lawful, Klaus Decl. Exh. 11, effect any waiver.  The Court has already recognized that Ms. Lenz's allegation that her video is a 'self-evident fair use' relates only to what was self-evident to Universal; Universal's efforts to muddy that issue by asserting that it may not have been self-evident to someone else simply rehashes an argument the Court has already rejected.  Kwun Decl. Exh. M (Order on MSJ) at 6:4-18.

Indeed, Universal does not actually claim that Ms. Lenz will rely on any of the identified communications as part of her affirmative case, and she will not.  The fact that Universal may wish to do so does not expand the waiver beyond the disclosed communication itself.  *See In re Shearman & Sterling*, 1986 WL 6157 at *1 ("Here, there is no indication that the holder of the privilege, defendant, seeks to use a part of the communication while withholding other portions.

14

507407.01

1  On the contrary, it is plaintiff who wishes to use this material ... Thus, it cannot be said that

2  defendant is using the privilege as both a sword and a shield.  Rather, because defendant has

3  partially let down its shield, plaintiff insists it must be stripped entirely. This, I decline to do.");

4  *Lehman Bros. Comm. Corp. v. Minmetals int'l*, No. 94 CIV 8301, 1996 WL 345915 at *1-2

5  (S.D.N.Y. June 21, 1996) (pre-suit disclosure of opinion letter did not effect subject matter

6  waiver where privilege holder had not sought to use it in litigation and represented that it would

7  not do so).

8        For the same reasons discussed above, Universal has not been prejudiced by Ms. Lenz's

9  assertion of privilege.  Based on publicly-filed documents, Universal already knows that

10  Ms. Lenz dropped her state law claim, that Ms. Lenz and her counsel believe that a case such as

11  this one could help clarify how the *Rossi* decision should properly be applied, and that Ms. Lenz

12  and her counsel believe Prince was putting pressure on UMG to take down videos whether or not

13  they were protected by fair use.  As for the "strategy" communications, Universal does not need to

14  know what Ms. Lenz's strategy is in order to litigate the matters both sides are strategizing about.

15  It may well find such knowledge useful, but that does not mean that fairness requires disclosure.

16  *Cf. Cardtoons, L.C. v. Major League Baseball Ass'n*, 199 F.R.D. 677, 683 (N.D. Okla. 2001) ("It

17  may be easier for Plaintiff to prove Plaintiff's case by having access to documents which are

18  otherwise protected by attorney-client or work product privileges.  This is often true.  The Court

19  will not compel disclosure of privileged documents simply to permit a party to more easily prove

20  the elements of its cause of action.").  As for the remaining statements, Universal cannot be

21  harmed by an inability to probe further as to what Ms. Lenz, her counsel or anyone else thought

22  about whether her video was a fair use: what matters is what Universal thought.

23  **D.  Ms. Lenz's speculation during her deposition does not justify any waiver.**

24        Only one of the disclosures relied upon by Universal took place as part of these judicial

25  proceedings (as opposed to statements made outside these proceedings to third parties, and then

26  produced to Universal in discovery)—Ms. Lenz's speculation, during her deposition, that a

27  comment she posted on her blog, stating that her case "isn't a fair use case at all," may have been a

28  "misunderstanding [of] what I'd been told by counsel." (Comment 10).  Grasping at straws,

507407.01

1  Universal suggests that this statement is at issue because Ms. Lenz may defend herself against

2  Universal's arguments by claiming that she misunderstood what counsel had told her. *See* Mot. at

3  14.

4       This is wrong. First, Ms. Lenz's speculation at deposition that her statement, more than

5  two years earlier, that her case was "not a 'fair use' case at all" "may have" stemmed from a

6  misunderstanding of her conversations with counsel is so general that there is no waiver, for she

7  has not made an "affirmative representation that [Universal] must impeach or suffer an adverse

8  consequence." *Sanofi-Synthelabo v. Apotex, Inc.*, 363 F.Supp.2d 592, 595 (S.D.N.Y. 2005) (no

9  waiver by deponent's statement in deposition that he took a certain course of action (cancelling

10  some claims in his patent application) based on his conversations with counsel which "may" have

11  been influenced by business considerations). Second, Ms. Lenz will not assert the advice of

12  counsel as explanation should Universal make use of this statement on summary judgment

13  and/or question her about it at trial. In any case, Ms. Lenz's statement is correct: this not an

14  ordinary fair use case, it is a case about Universal's misrepresentations under § 512(f).

15       Finally, the full context of Ms. Lenz's testimony demonstrates that Universal's complaint

16  is much ado about nothing:

17       Q. You say:

18       "You're right Richard. Mine's not a 'fair use' case at all. Nor is it a parody. It's
         something different. I've never heard of anything like it, which is why I contacted

19       EFF."

20       Do you see that?

21       A. Yes.

22       Q. Why did you say, "Mine's not a 'fair use' case at all"?

23       MS. McSHERRY: Objection, calls for a legal conclusion.

24       THE WITNESS: **I don't remember.** It may have been my opinion, it may have
         been based on something I was told by counsel.

25
26       Q. MR. KLAUS: Do you think it's possible that your counsel told you that yours
         was not a fair use case at all?

27       MS. McSHERRY: Objection, instruction not to answer, privilege grounds.

28       Q. MR. KLAUS: You say that "it's something  different." What did you mean by "it's

16

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

1    something different"?

2    A. **I don't remember.**

3    Q. What do you mean by "I've never heard of anything like it"?

4    A. Probably referencing the fact that the music was in the background and the focus of the video was on the action of the children.

5    Q. Was it your opinion that your case was not a fair use case at all, Ms. Lenz?

6    MS. McSHERRY: Objection, calls for a legal conclusion.

7    THE WITNESS: At the time it **may have been** my opinion. It **may have been** I was misunderstanding what I'd been told by counsel.

8

9    Q. MR. KLAUS: What do you mean by you may have been misunderstanding what you had been told by counsel?

10

11   MS. McSHERRY: I'm going to instruct you not to answer unless you can answer that without revealing communications with counsel.

12   THE WITNESS: **It was so long ago, I can't remember what I was thinking at the time.**

13   Klaus Decl. Exh 2 at 285:4-286:22 (emphasis added).  Ms. Lenz begins by testifying that she

14   doesn't remember what she meant by her blog comment.  In response to the next question to

15   which she is not instructed not to answer, she again says she doesn't remember.  When asked yet

16   another question about the blog comment, she offers the "may"-laden testimony Universal relies

17   upon.  The context demonstrates that Ms. Lenz is merely speculating about something *that she*

18   *does not remember.*  Finally, when she is asked what she meant by "may have been

19   misunderstanding what [she] had been told by counsel," she is instructed not to answer unless she

20   can do so without revealing privileged communications, and she answers that *she can't*

21   *remember what she was thinking at the time.*  Ms. Lenz's testimony demonstrates two things:

22   (1) that she was offering mere speculation rather than voluntarily disclosing communications

23   with counsel; and (2) that she has no knowledge on the topic, which means there is no point in

24   ordering further discovery or reopening her deposition.

25

26

27

28

507407.01

# IV. CONCLUSION

Universal's motion is simply one more instance of an unfortunate "tendency . . . . to spend an inordinate amount of time attempting to gain an advantage in the litigation by making use of the adversary attorney's words and opinions. . . . Preoccupation with efforts to paint opposing counsel into some semantic corner or to take advantage of his choice of terms leads to costly, unproductive, and unseemly disputes." *Hewlett-Packard*, 115 F.R.D. at 311-12 (disclosure of opinion letter to third party in business negotiations did not waive privilege as to the letter itself or as to related communications). This particular "costly, unproductive and unseemly dispute" should end now, so that the parties can focus on the larger issues in this case. Universal's motion should be denied.

Dated: August 10, 2010                                KEKER & VAN NEST LLP


                                           By:   */s/Michael S. Kwun*
                                               ASHOK RAMANI
                                               MICHAEL S. KWUN
                                               MELISSA J. MIKSCH
                                               Attorneys for Plaintiff
                                               STEPHANIE LENZ

OPP. TO MOT. TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS AND TESTIMONY
CASE NO. C-07-03783-JF

507407.01

1   ELECTRONIC FRONTIER FOUNDATION
    KURT OPSAHL–#191303
2   CORYNNE MCSHERRY - #221504
    454 Shotwell Street
3   San Francisco, CA 94110
    Telephone:    (415) 436-9333
4   Facsimile:    (415) 436-9993
    Email: kurt@eff.org
5           corynne@eff.org

6   KEKER & VAN NEST LLP
    ASHOK RAMANI - #200020
7   MICHAEL S. KWUN - #198945
    MELISSA J. MIKSCH - #249805
8   710 Sansome Street
    San Francisco, CA 94111-1704
9   Telephone:    (415) 391-5400
    Facsimile:    (415) 397-7188
10  Email: aramani@kvn.com; mkwun@kvn.com
            mmiksch@kvn.com
11
    Attorneys for Plaintiff
12  STEPHANIE LENZ

13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                  SAN JOSE DIVISION

17

18  STEPHANIE LENZ,                     Case No. C-07-03783-JF (PVT)

                         Plaintiff,     **[PROPOSED] ORDER DENYING
19                                      DEFENDANTS' MOTION TO COMPEL
                                        PRODUCTION OF PRIVILEGED
20      v.                              DOCUMENTS AND TESTIMONY**

    UNIVERSAL MUSIC CORP., UNIVERSAL
21  MUSIC PUBLISHING, INC. and
    UNIVERSAL MUSIC PUBLISHING
22  GROUP,                              **Date:        August 31, 2010
                                        Time:        10:00 a.m.
23                       Defendants.    Crtrm:       5 (Hon. Patricia V. Trumbull)**

24

25

26

27

28

507365.01

1    **UPON CONSIDERATION** of all of the pleadings and evidence submitted in support of

2    Defendants' Motion to Compel Production of Documents and Testimony Withheld on the Basis

3    of Waived Claim of Attorney-Client Privilege,

4    **IT IS HEREBY ORDERED** that Defendants' Motion is denied.

5

6

7    Dated: _____, 2010          _____

                                               HON. PATRICIA V. TRUMBULL
8                                              United States District Court Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

507365.01