KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:     (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
PUBLISHING, INC. and UNIVERSAL MUSIC
PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>           Plaintiff,<br><br>     vs.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>           Defendants. | CASE NO.  CV-07-03783 JF (PVT)<br><br>REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY WITHHELD ON THE BASIS OF WAIVED CLAIM OF ATTORNEY-CLIENT PRIVILEGE<br><br>Date: August 31, 2010<br>Time: 10:00 a.m.<br>Crtrm: 5 (Hon. Patricia V. Trumbull) |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ....................................................................................................................... 3

   A.   Plaintiff's Express, Repeated Waivers Require Disclosure of All Other Communications "On the Same Subject" ............................................................... 3

      1.   Plaintiff's Waivers Are Express – Not Implied ................................................ 3

      2.   Express Waiver Extends to All Communications "On the Same Subject." ..................... 5

   B.   Even If Plaintiff's Waiver Were Subject to Implied Waiver Analysis (Which It Is Not), Universal's Motion Must Be Granted ................................................................. 6

      1.   Communications Regarding the Substance of Plaintiff's Factual Allegations ("Comments 7-10") ............................................................................................. 6

      2.   Communications Regarding Plaintiff's Motivation for Pursuing This Litigation ("Comments 1-4") ............................................................................................. 8

      3.   Communications Regarding Legal Strategies ("Comments 5-6") ................................... 9

   C.   At a Minimum, Plaintiff's Waiver Must Extend to All Documents and Testimony Relating to the Subjects of Plaintiff's Waived Communications ....................................................... 10

# **TABLE OF AUTHORITIES**

## **CASES**

*Akamai Techs., Inc. v. Digital Island, Inc.*,
 No. C-00-3508 CW (JCS), 2002 WL 1285126 (N.D. Cal. May 30, 2002) ..........................10

*Bittaker v. Woodford*,
 331 F.3d 715 (9th Cir. 2003) ...................................................................................... 3, 4, 5

*Chevron Corp. v. Pennzoil Co.*,
 974 F.2d 1156 (9th Cir. 1992) ................................................................................................4

*In re von Bulow*,
 828 F.2d 94 (2d Cir. 1987) ............................................................................................. 4, 5

*Lehman Bros. Comm. Corp. v. Minmetals Int'l, Non-Ferrous Metals Trading Co.*,
 No. 94 CIV. 8301 (JFK), 1996 WL 345915, *1-*2 (S.D.N.Y. June 21, 1996) .......................5

*Tennenbaum v. Deloitte & Touche*,
 77 F.3d 337 (9th Cir. 1996) ....................................................................................................4

*United States v. Martin*,
 278 F.3d 988 (9th Cir. 2002) ..................................................................................................5

*United States v. Ruehle*,
 583 F.3d 600 (9th Cir. 2009) ........................................................................................... 3, 5

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
 647 F.2d 18 (9th Cir. 1981) ......................................................................................1, 5, 6, 10

## I. INTRODUCTION

Faced with Plaintiff's repeated *express* disclosures of communications that they obviously wanted Plaintiff to keep confidential, Plaintiff's lawyers resort to a series of insupportable arguments in a bootless attempt to avoid the consequences of her intentional privilege waiver. The disclosed communications are hardly irrelevant, as Plaintiff's counsel contend. What Plaintiff revealed time and again – on the Internet, in GMail "chats" and elsewhere – are parts of discussions with her lawyers that go to and in fact *undermine* Plaintiff's affirmative contentions. Plaintiff has waived privilege on, among other subjects, her affirmative allegations that her use of "Let's Go Crazy" "is a self-evident non-infringing fair use"; that "Prince himself demanded that Universal seek the removal of" Plaintiff's YouTube posting; and that "Plaintiff has been injured substantially and irreparably[,]" including, allegedly, "harm to her free speech rights under the First Amendment." SAC (Doc. No. 34) ¶¶ 34, 31, 38. Having waived privilege by revealing part of these communications, Plaintiff cannot continue to assert privilege to block Universal's indisputably legitimate inquiry into the remainder of the communications. While it may be in Plaintiff's "natur[e]" to "respond[]" to case inquiries by revealing privileged advice, Opp. at 5:14-16, that is no reason for not applying clear Ninth Circuit law to Plaintiff's express waivers.

Plaintiff's counsel argue that the scope of Plaintiff's undeniable waiver is to be judged by the inapposite doctrine of *implied* waiver. Counsel insist that, so long as Plaintiff does not plan to introduce into evidence any specific attorney-client *communication* she has revealed, Plaintiff is free to disclose *ad nauseum* privileged communications concerning her core contentions in this case. That is wrong under binding Ninth Circuit law. Plaintiff has waived the privilege *expressly*, through her repeated, voluntary disclosures. Because Plaintiff has waived the privilege expressly, Universal is entitled to discover all other communications that Plaintiff has had with her lawyers "on the same subject." *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

Plaintiff's counsel cannot avoid the consequences of their client's waivers by

1  rewriting them or claiming that the statements have nothing to do with what Plaintiff will contend

2  at trial.  *See* Opp. at 6-9.  Take, for example, Plaintiff's lawyers' attempt to explain away her

3  admission that, "Mine's not a 'fair use' case at all."  Plaintiff affirmatively testified that her

4  statement could have been a case of Plaintiff "misunderstanding what I'd been told by counsel."

5  Klaus Decl. Ex. 2 at 286:12-14.  The Opposition first says that Plaintiff will not put her counsel's

6  advice into the case; then, in the very next breath, the Opposition offers Plaintiff's counsels'

7  current "understanding."  Specifically, Plaintiff's lawyers write:  "Ms. Lenz's statement is

8  correct:  this is not an *ordinary* fair use case, it is a case about Universal's misrepresentations

9  under § 512(f)."  Opp. at 16:13-16 (emphasis added).  Obviously, Plaintiff is going to come into

10 trial and, when confronted with her prior statements, try to offer this freshly minted explanation

11 from counsel as the excuse for stating, "Mine's not a 'fair use' case at all."  Universal is entitled

12 to know the entirety of what Plaintiff said with her lawyers on this subject so the truth can be

13 known.  This example, and numerous others discussed in the Motion and below, reveal the fallacy

14 of Plaintiff's argument in the Opposition.  Plaintiff's many disclosures of privileged

15 communications cannot be segregated between what those conversations reveal about Plaintiff's

16 affirmative allegations and what Plaintiff will put in issue at trial.  All of the revealed

17 communications relate to issues that Plaintiff herself has put in issue.

18         It bears repeating that the disclosures Universal has catalogued are limited to those

19 that Plaintiff revealed before her lawyers threw up additional obstacles to Universal's legitimate

20 discovery.  As we have explained, the circumstances of Plaintiff's counsel's abrupt

21 announcement that they would stop producing documents that post-date the Second Amended

22 Complaint – including documents counsel admit they have and have reviewed – strongly suggest

23 that Plaintiff's counsel have in their possession additional instances of Plaintiff having waived the

24 privilege.[1]  If such documents exist, they would only buttress the already strong grounds for this

---

[1] Plaintiff's counsel incorrectly claim that Universal has known all the bases for this Motion since Plaintiff's deposition but waited until the very end of discovery to file it.  That is false.  Plaintiff's counsel produced additional instances of Plaintiff disclosing her lawyers' advice after Universal deposed Plaintiff.  *See* Klaus Decl. Exs. 12 and 13.  Universal also has been awaiting decision on its pending motion to compel post-SAC documents, which likely include additional instances of Plaintiff's privilege waiver.  The last date for filing discovery motions was not decided by the Court; rather, the parties themselves were responsible for agreeing to and submitting a case

Motion. Universal's motion to compel the production of those post-SAC documents has been fully briefed and submitted for decision for more than three months. (Doc. Nos. 235, 286, 288.) Universal respectfully requests that the Court grant that Motion and this one.

## II.     ARGUMENT

### A.     Plaintiff's Express, Repeated Waivers Require Disclosure of All Other Communications "On the Same Subject"

#### 1.     Plaintiff's Waivers Are Express – Not Implied

Plaintiff contends that the question of whether she has waived her privilege is "based on principles of fairness," and that Universal cannot assert waiver because it has suffered no prejudice. Opp. at 5. That misstates the law. Plaintiff must prove that she intended to keep her communications confidential and that she has *not* waived the privilege in order to assert it in the first place. *See United States v. Ruehle*, 583 F.3d 600, 607-08 (9th Cir. 2009) (setting forth required elements for valid claim of attorney-client privilege, including that client maintain the confidence of the communication). Fairness and prejudice to Universal is irrelevant to whether Plaintiff has expressly waived her privilege by voluntarily disclosing the substance of her attorney-client communications with third parties. *See Bittaker v. Woodford*, 331 F.3d 715, 719-20 (9th Cir. 2003) (*en banc*) (distinguishing express waivers from implied waivers).

The cases Plaintiff relies on that examine prejudice and fairness do so in the context of deciding whether to find *implied* waiver. As the Ninth Circuit explained in *Bittaker*: "Such waivers by implication differ materially from the more traditional express waivers." *Bittaker*, 331 F.3d at 719. "An express waiver occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Id*. That is exactly what Plaintiff here has done repeatedly — disclosed her communications with her lawyers, and the advice her lawyers have given her in this lawsuit to third parties outside the privilege. *See, e.g.,* Klaus Decl., Ex. 12 at 2 (describing what her lawyers advised her regarding the timing of the filing of her complaint); Ex.

---

management schedule. In all events, Plaintiff has indicated absolutely no prejudice to the timing of this Motion. Nor could she demonstrate prejudice, since summary judgment motions are not due until October 18, and trial will not start until May 9, *2011* (Doc. No. 291).

11444724.1 3

REPLY ISO MOT. TO COMPEL
CASE NO. CV-07-03783

7 at 1 ("I told [EFF lawyer] Corynne that since pursuing the federal part of the case achieves the ends I have in mind, that's fine to drop the state portion . . ."). Regardless of Plaintiff's subjective intent – stated or otherwise – her repeated disclosures deprive her of the ability to satisfy the rigorous test for the protection of the privilege, because voluntary disclosure constitutes express waiver. *Bittaker,* 331 F.3d at 719 n.4.

Plaintiff never addresses express waiver. Instead, her Opposition relies exclusively on cases analyzing *implied* waiver – in particular cases defining what *Bittaker* calls "the fairness principle." *Id*. at 719. That "principle" states that in some cases—even cases where there has been no disclosure at all—the Court will imply a waiver to prevent unfairness to the opposing party, for instance when a litigant has put counsel's advice at issue. *Id*. For example, Plaintiff relies on *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996), in which the Court considered whether to *imply* a waiver in fairness to the opposing party where there had been no disclosure—just an agreement to disclose privileged material. Similarly, Plaintiff relies on *Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156 (9th Cir. 1992), in which the Court considered whether Pennzoil had "implicitly waived" the attorney-client privilege by putting the advice of its counsel at issue. 974 F.2d at 1162-63. Plaintiff's analysis conflates the standards for finding waiver in these cases – which are narrowly constrained to what is required to remedy any unfairness – with the standard for finding express waiver. The Ninth Circuit has never stated that the two are equivalent, and instead has drawn distinctions between the two doctrines when presented with the question in *Bittaker*.

Plaintiff's struggle to fit within the confines of the Second Circuit's decision in *In re von Bulow* suffers from the same fatal flaw. *Von Bulow* is itself a case analyzing implied – not express – waiver. *In re von Bulow*, 828 F.2d 94, 101-02 (2d Cir. 1987). In *von Bulow*, the client did *not* make express disclosures. Instead, the client acquiesced in *his counsel's* disclosures. *Id*. at 100. Because it is the client and not his counsel who holds the privilege, the Second Circuit analyzed this as a potential "waiver by implication" and held the scope was tied to "fairness considerations." *Id*. In those circumstances, the Second Circuit held that "extrajudicial" statements did not implicate the inherent fairness of the judicial proceeding. No Ninth Circuit

1  case excuses Plaintiff's "extrajudicial" statements from effecting a waiver. Nor is it clear that
2  even the Second Circuit would excuse multiple, repeated, voluntary disclosures *by the client* like
3  those at issue here.
4        The sum total of Plaintiff's arguments about fairness and prejudice is an attempt to
5  shift the burden to Universal to prove how it has been hurt by her statements if she does not
6  intend to inject them in the case. This turns the most basic principles of privilege law upside
7  down. As the party asserting the privilege, it is *Plaintiff's* burden to prove that "each essential
8  element" of the attorney-client privilege has been met. *Ruehle*, 583 F.3d at 608. That includes
9  the burden to prove that the privilege has not been waived. *Id.* at 607, *see also United States v.*
10 *Martin*, 278 F.3d 988, 999 (9th Cir. 2002). That makes sense, because the privilege stands as an
11 impediment to the truth. *Weil*, 647 F.2d at 24. A litigant may seek its protections, but only if he
12 or she has met every, narrowly construed requirement. Plaintiff has failed to do that here through
13 her repeated disclosures, so the protections of any privilege have been expressly waived.

      2.    **Express Waiver Extends to All Communications "On the Same Subject."**

16       As Universal explained in the Motion, *Weil* is the seminal case in the Ninth Circuit
17 defining the scope of express waivers. *See Bittaker*, 331 F.3d at 719 n.4 (citing *Weil* in the
18 context of describing express waiver). Plaintiff's Opposition largely ignores *Weil*, and relies on
19 cases from the lower courts in the Second Circuit that (not surprisingly) apply *von Bulow*.[2] While
20 Plaintiff attempts to read *von Bulow* as extending beyond the implied waiver at issue there, *von*
21 *Bulow*'s limited waiver doctrine has never been the law on the scope of express waiver in the
22 Ninth Circuit. To the contrary, *Weil* extends the waiver to all communications "on the same
23 subject." *Weil*, 647 F.2d at 24. *Bittaker* solidifies this principle. Once an express waiver occurs,
24 "the privilege is gone and the litigant may not thereafter reassert it to block discovery of the
25 information *and related communications* by his adversaries." *Bittaker*, 331 F.3d at 720 (emphasis
26 added). Under these controlling cases, Universal is entitled to discover all communications with

---

[2] *See Lehman Bros. Comm. Corp. v. Minmetals Int'l, Non-Ferrous Metals Trading Co.*, No. 94 CIV. 8301 (JFK), 1996 WL 345915, *1-*2 (S.D.N.Y. June 21, 1996) (applying *von Bulow* in support of a limited waiver based on "extrajudicial" context of statements).

Ms. Lenz's counsel "on the same subject" as those as to which she has waived the privilege. *Weil*, 647 F.2d at 24.

### B. Even If Plaintiff's Waiver Were Subject to Implied Waiver Analysis (Which It Is Not), Universal's Motion Must Be Granted

Plaintiff's struggle to fit within the confines of the inapplicable "fairness principle" avails her of nothing. That is because even under that doctrine, her express disclosures would require Universal's Motion to be granted. While Plaintiff's counsel attempt to neutralize each of her statements, even a cursory read reveals that Plaintiff is disclosing her communications with counsel on issues central to the case. Under the "fairness principle" Plaintiff invokes, she cannot reveal selectively portions of her communications with her counsel, and simultaneously prevent Universal from discovering the rest of the communications on the same subject. The denial of further discovery on the ground of privilege would prejudice Universal's ability to defend itself against Plaintiff's claims. Plaintiff's disclosures require production of all related communications even if the waiver is analyzed through her "fairness and prejudice" prism.

#### 1. Communications Regarding the Substance of Plaintiff's Factual Allegations ("Comments 7-10")

Even in the Introduction to their Opposition, Ms. Lenz's counsel describes as "[t]he central issue in this case" an issue directly relating to several of Ms. Lenz's disclosures – including a disclosure in a deposition that invoked her attorney's advice. Opp. at 1 Under Plaintiff's theory, that "central issue" depends on whether Universal "knew or should have known" that Ms. Lenz's use of "Let's Go Crazy" in her YouTube posting is, as she claims, "a self-evident, non-infringing fair use" of the work. SAC ¶ 34; Doc. No. 5 at ¶¶ 18-19. Specifically, Plaintiff claims that Universal "knew or should have known" (based on nothing other than the video itself) that her unauthorized use of "Let's Go Crazy" in a public Internet posting was excusable as a "self-evident, non-infringing fair use."

Plaintiff disclosed multiple communications with counsel that directly relate to this contention. Plaintiff told an Internet reporter that after "discussing the situation" with EFF lawyers, together they "came to the conclusion that I did not infringe the copyright." Klaus Decl.,

1  Ex. 11 at 3.  The only way Plaintiff could have come to that conclusion is because she and her
2  lawyers discussed the matter and ultimately concluded that they believed it to be a "fair use."  But
3  if that is in fact "self-evident," then there would be no need to "discuss" it, or to come to a
4  "conclusion."
5  Plaintiff now insists that whatever amount of time the EFF spent talking to her and
6  trying to discern the nature and purpose of her posting is irrelevant, because only *Universal's*
7  consideration of her posting counts.  That is just wrong.  In the first place, Judge Fogel has not
8  even ruled whether Plaintiff's posting was of a type that necessitated *any* evaluation of any fair
9  use factors before sending a takedown notice.  Judge Fogel, in fact, wrote that not "every
10 takedown notice must be preceded by a full fair use investigation."  Order, Oct. 28, 2008 (Doc.
11 No. 53) at 4:11-12.  Judge Fogel continued: "*in a given case* fair use may be so obvious that a
12 copyright owner could not reasonably believe that actionable infringement was taking place." *Id*.
13 at 4:13-15 (emphasis added). *Whether* Plaintiff's is such a "case" is an issue that has not yet been
14 determined.  Under Judge Fogel's Order, Plaintiff has the burden of showing that this is such a
15 "case."  If Plaintiff's own lawyers – from an organization that touts itself as pro-fair use, and
16 which (unlike Universal) had access to Plaintiff to discuss the nature and purpose of her posting –
17 did not immediately recognize Plaintiff's posting to be the fair use they now claim it to be, then
18 that is powerful evidence that Universal cannot be charged with having failed to recognize the
19 posting as a fair use.  The disclosures go to Plaintiff's affirmative contentions in the case –
20 indeed, her most central contentions – and Plaintiff has waived part of the communications.  Even
21 under Plaintiff's inapposite "fairness" principles, Universal is entitled to discover the entirety of
22 the communications now that Plaintiff has waived privilege.
23 Universal already demonstrated in the Introduction, *supra*, why Plaintiff's
24 deposition testimony about "misunderstanding" counsel's advice is plainly in issue, including
25 with counsel's latest attempt to try to explain away her blog admission and her deposition
26 testimony.  Plaintiff also tries to claim that her deposition testimony is "speculation" and "much
27 ado about nothing," because Plaintiff soon followed up the discussion about "misunderstanding"
28 counsel with a series of claims that she could not remember what counsel told her.  Opp. at 16-17.

1  This argument is a complete red herring.  If Plaintiff cannot remember what she and counsel
2  discussed, that is *all the more reason* for the documents to be produced:  Universal is entitled to
3  the documents, either to refresh Plaintiff's memory, to get the admissions that the documents
4  contain, or both.

### 2.  Communications Regarding Plaintiff's Motivation for Pursuing This Litigation  ("Comments 1-4")

The Opposition ignores the substance of Plaintiff's disclosures about the true motivation for pursuing this lawsuit.  Plaintiff contends that she is pursuing this litigation to vindicate her First Amendment right to free expression, the supposed basis for her damages claim.  SAC ¶ 38, Klaus Decl., Ex. 1 (Plaintiff's 3d Supp. Rule 26(a) Disclosures) at 2 ¶ 2.  In these three separate disclosures, Plaintiff reveals to her mother, her GMail chat friend, and her Internet blog audience communications that she and her lawyers have had that reflect an entirely different motivation.

Specifically, these communications reveal that Plaintiff and her lawyers brought this lawsuit not to vindicate Plaintiff's claimed First Amendment rights, but to give EFF another opportunity to aggressively pursue its anti-copyright agenda against UMG.  Plaintiff reveals that her lawyers have told her that "Universal Music Group is creating a trend of just going all over the web claiming copyright infringement left & right & that they're breaking laws & such to do it.  So EFF is pretty well salivating over getting their teeth into UMG yet again."  Klaus Decl., Ex. 3.  Plaintiff tells her mother that EFF is planning a "publicity blitz and/or a lawsuit against Universal," and that it will do so for free, further revealing communications about the true motivation behind the lawsuit.  *Id*., Exs. 4 & 5.  Finally, she reveals the substance of a letter from EFF on her blog, contending that the tone of the letter is "this sounds familiar and is something we're interested in talking about."  *Id*., Ex. 6.

The Opposition ignores the actual content of these disclosures and feigns ignorance of their relevance.  Opp. at 6-7.  Plaintiff may not selectively reveal these portions of her communications with her lawyers that directly relate to her damages claim, and then withhold others on the basis of privilege.  Plaintiff's disdain for the privilege reflected through these public

1  disclosures eviscerates it, entitling Universal to the balance of the withheld communications on
2  the same subject.  If Plaintiff is permitted to selectively withhold such communications, Universal
3  will be prejudiced because it will be deprived of discovery into relevant evidence that could
4  debunk Plaintiff's claim to have a cognizable First Amendment injury.  On the ground of
5  "fairness," Plaintiff's attempt to enforce this "selective waiver" must be rejected.

6  Plaintiff also argues that Judge Fogel's order on partial summary judgment
7  "rejected the notion that Ms. Lenz's motivations in filing suit might affect the merits of any of the
8  actual *claims* and defenses in this case."  Opp. at 13:23-24 (emphasis added).  That is wrong.  The
9  summary judgment order considered only Universal's affirmative defenses.  It did not absolve
10 Plaintiff's responsibility to prove the elements of her own claim.  Plaintiff's claim to have been
11 injured by Universal's email notice to YouTube remains part of her affirmative burden in the
12 case.  The communications she has revealed go directly to that claimed injury.  Again, Universal
13 is entitled to the entirety of Plaintiff's discussions with counsel on these subjects.

14           3.  **Communications Regarding Legal Strategies ("Comments 5-6")**

15 By lumping multiple conversations within deceptively singular headings
16 ("Comment 5" and "Comment 6"), the Opposition attempts to downplay the numerous
17 revelations Plaintiff made to her chat friends reflecting her counsel's legal strategy.  On April
18 11, 2008, she reports the details of her call with EFF lawyer, Corynne McSherry, to two GMail
19 chat friends.  These disclosures reflects the collective strategy for drafting the Second Amended
20 Complaint, including which allegations to include in the SAC, and the reasons for dropping some
21 claims and keeping others.  Klaus Decl., Ex. 7, 8.  These communications reveal that the
22 motivation for this lawsuit, again, is not to vindicate any damage Plaintiff suffered, but to
23 challenge controlling Ninth Circuit law that EFF disagrees with.  Plaintiff further reported, in two
24 additional disclosures, what she and her lawyers were hoping to achieve by timing the filing of
25 her lawsuit with the reinstatement of her YouTube posting.  Klaus Decl., Ex. 12 & 13.  Again,
26 these communications go to whether Plaintiff has been injured, as she claims or whether this suit
27 is really in pursuit of some other agenda.
28

### C. At a Minimum, Plaintiff's Waiver Must Extend to All Documents and Testimony Relating to the Subjects of Plaintiff's Waived Communications

As Plaintiff concedes, under *Weil*, a waiver in the Ninth Circuit entitles the opposing party to all communications "on the same subject." 647 F.2d at 24; Opp. at 11. Here, those subjects are wide-ranging and broad. Plaintiff's waivers extend to all communications about the motivation for this lawsuit (including her counsel's interest in attacking Universal's practices), communications about which claims to pursue and which to reject, communications concerning her counsel's efforts to "clarify" the *Rossi* decision, the "publicity blitz" accompanying this litigation, and Plaintiff's claims that Prince had a role in the removal of her video. Finally, after Plaintiff's disclosures that are *not* subject to her Opposition's attempted limitation for "extrajudicial" statements, Universal is entitled to discover how Plaintiff and her counsel came to the conclusion that hers was "not a fair use case at all" and then that her posting is not an infringement of copyright.

At best, Plaintiff's Opposition pleads with the Court to constrain the "subjects" of her waiver only to those statements she has already disclosed. But she offers no authority for allowing such a generous limitation on the scope of her waiver. She cites no example of any court enforcing the attorney-client privilege after repeated, express, voluntary waivers of the kind that Plaintiff has effected here. For instance, she relies on *Akamai Techs., Inc. v. Digital Island, Inc.*, No. C-00-3508 CW (JCS), 2002 WL 1285126 (N.D. Cal. May 30, 2002), in which the Court considered only a single, privileged document exchanged during settlement negotiations. After finding that there had been *no* waiver, the Court concluded (in dicta) that any waiver would have been limited to the document itself. None of her cases hold that the attorney-client privilege may survive repeated publication of attorney-client communications like Plaintiff has made here.

The Ninth Circuit narrowly construes the attorney-client privilege, and counsels in favor of the broad waiver Universal requires. Where a litigant has repeatedly ignored the constraints of the privilege and evinced no desire to keep her communications with her counsel confidential, there is no basis to withhold communications on the same subject on the ground of privilege. Even if, as Plaintiff urges, the Court were to mitigate its waiver finding based on

1  "fairness," the result Plaintiff argues for would pervert concepts of fairness entirely.  It is not
2  "fair" to allow Plaintiff to publicly disclose her communications with counsel about the "central
3  issue" in her case, their core legal strategies, her damages allegations, and her allegations about
4  Prince's supposed role in her case, but then prevent Universal from discovering documents and
5  obtaining testimony on the same subjects on the ground of privilege.  She cannot selectively
6  waive the privilege by telling her friends and family only what she wants them – and, one day, the
7  jury – to hear.  Universal's Motion should be granted.

DATED:  August 17, 2010                          MUNGER, TOLLES & OLSON LLP


By: _____ */s/ Kelly M. Klaus*_____
　　　　　　KELLY M. KLAUS

Attorneys for Defendants