# EXHIBIT 2

CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

--oOo--

STEPHANIE LENZ,

        Plaintiff,

     vs.                  No. C 07-03782-JF

UNIVERSAL MUSIC PUBLISHING,
INC., and UNIVERSAL MUSIC
PUBLISHING GROUP, INC.,

        Defendants.
_____/


VIDEOTAPED DEPOSITION OF

STEPHANIE LENZ

_____

September 16, 2009

CONFIDENTIAL


REPORTED BY:  WENDY E. ARLEN, CSR #4355, CRR, RMR
JOB 422733

MERRILL   LEGAL   SOLUTIONS
800-826-0277   818-593-2300   Fax 818-593-2301   www.merrillcorp.com

CONFIDENTIAL

Page 75

1   Q.        MR. KLAUS:  Do you know if your use of Let's

2   Go Crazy in Let's Go Crazy #1 is fair use?

3             MS. McSHERRY:  Same objection.

4             THE WITNESS:  I don't know the legal

10:30   5   definitions of fair use.

6   Q.        MR. KLAUS:  Setting that aside, do you

7   believe that your use of Let's Go Crazy and Let's Go

8   Crazy #1 is fair use?

9   A.        Yes.

10:30   10   Q.        Why?

11            MS. McSHERRY:  Same objections.

12            THE WITNESS:  I don't think that it's -- the

13   point of my video what I made was the kids dancing.

14   The music happened to be playing in the background.

10:30   15   I'm not using it for a commercial purpose.  I

16   don't -- honestly I don't know how fair use is

17   defined exactly.  So...

18   Q.        MR. KLAUS:  When did you come to the

19   conclusion that your use of the song Let's Go Crazy

10:31   20   in Let's Go Crazy #1 was a fair use?

21            MS. McSHERRY:  Objection, calling for legal

22   conclusion.

23            THE WITNESS:  Could you repeat the question?

24   Q.        MR. KLAUS:  Sure.  When did you come to the

10:31   25   conclusion that your use of the song Let's Go Crazy

CONFIDENTIAL

Page 76

1    in the posting Let's Go Crazy #1 was a fair use?

2    A.        I would say that it was likely after I spoke

3    to some lawyers that I knew, but I'm not sure.

4    Q.        Which lawyers are you talking about that you

10:31    5    knew?

6              MS. McSHERRY:  Okay, I'm going to pause this

7    for a moment and advise my client, I want you to be

8    careful not to reveal any privileged communications.

9    Okay?  So if you can answer that question without

10:32    10    revealing any privileged communications, you can

11    answer the question.  Otherwise, I'm going to

12    instruct you not to answer.  Okay?

13    Q.        MR. KLAUS:  Would you like me to repeat the

14    question, Ms. Lenz?

10:32    15    A.        Yes, please.

16    Q.        You said that you thought you came to the

17    conclusion that your use of the music Let's Go Crazy

18    in the posting Let's Go Crazy #1 was fair use when

19    you talked to some lawyers that you knew.  And my

10:32    20    question to you is who are the lawyers.  Just the

21    names.  Who are the lawyers that you're talking

22    about?

23    A.        Well, I would say Marcia Hoffman.

24    Q.        Marcia Hoffman is one of Ms. McSherry's

10:33    25    colleagues at EFF, correct?

CONFIDENTIAL

1    that -- I don't know how they're related or how they

2    work together or don't work together.

3    Q.    MR. KLAUS:  Is this something that you think

4    a lawyer would need to figure out to determine

10:39    5    whether something is a fair use?

6    A.    Sometimes.

7    Q.    I'm asking you with respect to your use of

8    Let's Go Crazy in Let's Go Crazy #1.  Did you need a

9    lawyer to help you figure out whether that was a fair

10:39    10    use of the work in your posting?

11    MS. McSHERRY:  Objection, I think we're

12    getting into privileged communications here.  This is

13    essentially entering into your communications with

14    counsel about your understanding of the videos, so

10:39    15    I'm going to instruct you not to answer.

16    Q.    MR. KLAUS:  Well, let me ask it this way.

17    Had you determined -- prior to the time that you

18    spoke to Ms. Hoffman -- strike that.

19    Let me focus on your conversations with

10:40    20    Ms. Hoffman that you were talking about where you

21    came to this conclusion.  Was Ms. Hoffman the first

22    lawyer at EFF whom you spoke with about your posting?

23    A.    I don't remember.

24    Q.    Do you think she was one of the first lawyers

10:40    25    that you talked to?

CONFIDENTIAL

Page 83

1   A.      She was either the first or second.

2   Q.      And the communication -- not for the time

3   being going into the substance of the communication,

4   but the discussion with her where you came to the

10:40  5   conclusion that this was a fair use, was that during

6   your initial discussions with Ms. Hoffman?

7           MS. McSHERRY:  Objection, assumes facts.  I'm

8   going to instruct you not to answer on the ground of

9   privilege.

10:40  10          MR. KLAUS:  What?  Why?

11          MS. McSHERRY:  There's legal -- you've made

12  this -- the way I understand your question, you've

13  assumed a certain amount of legal advice that was

14  implicit in that communication.  You're asking to her

10:41  15  to confirm a communication and the nature of legal

16  advice.  That's privileged, and I'm instructing her

17  not to answer.

18          MR. KLAUS:  My question just asked for the

19  time of the communication.

10:41  20          MS. McSHERRY:  That's not the way I heard the

21  question.  Maybe you could try to repose it.

22  Q.      MR. KLAUS:  Let me say this, Ms. Lenz.

23  You've had multiple conversations with Ms. Hoffman,

24  correct?

10:41  25  A.      Yes.

CONFIDENTIAL

Page 84

Q.        And you've had multiple conversations with

her concerning your posting, correct?

A.        Yes.

Q.        And you said that it was in connection with

10:41    one of those communications with Ms. Hoffman that you

concluded that your use of Let's Go Crazy and Let's

Go Crazy #1 was a fair use, correct?

          MS. McSHERRY:  Objection, assumes facts.

Again we're getting into the nature of the substance

10:41    of communication with Ms. Hoffman.  So I'm going to

instruct you not to answer.

          MR. KLAUS:  I'm going to ask to --

considering that your client has already testified

that she came to that conclusion in a conversation

10:42    with Ms. Hoffman, I'm going to ask you to reconsider

your position just so we don't have to file a motion

and find ourselves back here, Ms. McSherry.

          MS. McSHERRY:  Well, Mr. Klaus, if you would

like to ask when she spoke with Ms. Hoffman the first

10:42    time, if that's your question, of course, the date of

a conversation with counsel is not privileged.  So if

that's the question you would like the answer to, I

will not treat that as privileged.

          MR. KLAUS:  But I'm asking her -- she's

10:42    already said that she had a conversation where she

CONFIDENTIAL

Page 85

1    came to that conclusion with Ms. Hoffman.

2              MS. McSHERRY:  Yes.

3              MR. KLAUS:  And I'm trying to figure out

4    whether that was one of the first conversations or

10:42    5    later.  I don't see how that reveals any privileged

6    information.

7              MS. McSHERRY:  Well, I disagree.  I think

8    you're inquiring further into the substance of her

9    communication with Ms. Hoffman.  Again, if you would

10:42   10    like to ask her when did she speak with Ms. Hoffman,

11    when was this prior conversation that you referred

12    to, what was the date of that, I think she can

13    confirm the date.

14    Q.       MR. KLAUS:  When was -- Ms. Lenz, when was

10:43   15    the communication with Ms. Hoffman that you have been

16    describing?

17    A.       I'm not sure.  It was soon after I received

18    the takedown notice from YouTube.

19    Q.       Do you think it was the first conversation

10:43   20    that you had with Ms. Hoffman, to the best of your

21    recollection?

22    A.       I don't know.

23    Q.       Do you know -- do you recall how many

24    conversations you had with Ms. Hoffman in the

10:43   25    aftermath of receiving the notice from YouTube?

Page 200

1    A.        Yes.

2    Q.        You say in the second sentence, you say:  "I

3    can't say much, but there may be a publicity blitz

4    and/or a lawsuit against Universal."

5              Do you see that?

6    A.        Yes.

7    Q.        Did you have discussions with somebody from

8    EFF about a publicity blitz against Universal?

9              MS. McSHERRY:  Again, I'm going to instruct

10   you not to answer on privilege grounds.

11             MR. KLAUS:  She does reference the discussion

12   in her communication to her mother.  You're still

13   going to stand by that instruction?

14             MS. McSHERRY:  I understand that.  She can

15   confirm this -- she can confirm that this statement

16   is made on this date if that's what she remembers.

17   Beyond that, I'm going to be asserting privilege and

18   instructing not to answer.

19   Q.        MR. KLAUS:  Okay.  The last sentence says:

20   "Any lawyer fees would come out of the settlement."

21             Do you see that?

22   A.        Yes.

23   Q.        What was -- what did you mean by that

24   statement?

25   A.        I don't know.

CONFIDENTIAL

Page 201

```
          1    Q.        Did somebody from EFF tell you that you
          2    wouldn't have to pay them any legal fees?
          3              MS. McSHERRY:  Again, I'm going to instruct
          4    you not to answer on the grounds of privilege.
13:43     5    Q.        MR. KLAUS:  What settlement were you
          6    referring to there, Ms. Lenz?
          7    A.        I don't think there is one.
          8              MR. KLAUS:  I hand you Exhibit No. 21.
          9              (Deposition Exhibit 21 marked for
13:44    10              identification.)
         11    Q.        MR. KLAUS:  Is Exhibit No. 21 an additional
         12    e-mail exchange between you and your mother on
         13    June 14th, 2007?
         14    A.        Yes.
13:44    15    Q.        And it's a continuation of the e-mail chain
         16    that we were looking at in Exhibit No. 20?
         17    A.        Yes.
         18    Q.        And you're responding to the question that
         19    your mother has asked you, what is EFF, by putting a
13:45    20    quotation there?
         21    A.        Yes.
         22    Q.        It says:  "EFF is a nonprofit group of
         23    passionate people - lawyers, technologists,
         24    volunteers, and visionaries working to protect your
13:45    25    digital rights."
```

CONFIDENTIAL

Page 202

1          Do you see that?

2     A.    Yes.

3     Q.    Is that your language?

4     A.    No.

13:45    5     Q.    Did you take that from EFF's Web site?

6     A.    Yes.

7     Q.    You say:  "I haven't written much about it

8     because I don't want to sabotage myself."  And

9     there's another emoticon.

13:45    10          Do you see that?

11    A.    Yes.

12    Q.    What did you mean you didn't want to sabotage

13    yourself?

14    A.    I didn't want to sabotage myself.

13:45    15    Q.    Why would writing about it sabotage yourself?

16    A.    I didn't want anything that I said to be

17    misconstrued.

18    Q.    Did somebody at EFF tell you not to write

19    much about this matter?

13:46    20          MS. McSHERRY:  Objection, instruction not to

21    answer on the grounds of privilege.

22          MR. KLAUS:  I show you Exhibit No. 22.

23          (Deposition Exhibit 22 marked for

24          identification.)

13:46    25    Q.    MR. KLAUS:  Ms. Lenz, Exhibit No. 22 is

CONFIDENTIAL

Page 203

1    another e-mail exchange on June 14th, 2007.  I'm

2    going to just ask you what we call the foundational

3    question, Ms. Lenz.  Is this a -- is Exhibit No. 22 a

4    true and correct copy of an e-mail exchange you had

13:47    5    with Ms. Fleming on June 14th, 2007?

6    A.        Yes.

7    Q.        You say in the third paragraph:  "I had a 40

8    minute phone call this morning and mentioned my

9    'friend who's a lawyer in Canada' when she asked how

13:47    10   I knew to contact EFF."

11             Do you see that?

12   A.        Yes.

13   Q.        Looking at that, does that refresh your

14   recollection that the person that you talked to on

13:47    15   June 14th, 2007, from EFF was Marcia Hoffman?

16   A.        It may have been.

17   Q.        Is there anybody else who might have been the

18   she when it said "when she asked how I knew to

19   contact EFF"?

13:47    20   A.        Unlikely.

21   Q.        So it's probably Ms. Hoffman you talked to?

22   A.        Yes.

23   Q.        You say:  "They are very, very interested in

24   the case.  I imagine so.  I've never heard of

13:47    25   anything like it."

CONFIDENTIAL

Page 204

1          Do you see that?

2    A.      Yes.

3    Q.      What did you mean when you said, "I've never

4    heard anything like it"?

13:47   5    A.      I had never heard of -- I assume I -- I don't

6    know.  I don't know.

7    Q.      The next sentence says:

8              "She said that Universal Music Group is

9              creating a trend of just going all over the

13:48   10             Web claiming copyright infringement left &

11             right & that they're breaking laws & such to

12             do it."

13          Do you see that?

14   A.      Yes.

13:48   15   Q.      Is that a reference to something that

16   Ms. Hoffman told you?

17          MS. McSHERRY:  Objection, instruct not to

18   answer on the grounds of privilege.

19   Q.      MR. KLAUS:  Who is the she that you're

13:48   20   referring to there, Ms. Lenz?

21   A.      I'm not a hundred percent sure.

22   Q.      Do you think it's likely that it was the same

23   she you referred to in the previous sentence we

24   looked at?

13:48   25   A.      It may have been.

CONFIDENTIAL

Page 205

1    Q.      Do you think it's likely that it was?

2    A.      It's likely.

3    Q.      What did -- what did that person who told you

4    that -- tell me what they said about Universal Music

13:49    5    Group creating a trend of just going all over the Web

6    claiming copyright infringement left and right and

7    that they're breaking laws and such to do it?

8            MS. McSHERRY:  Object, instruct not to

9    answer.

13:49    10           MR. KLAUS:  She described it to a third

11    party.  I think that's a waiver of any claim of

12    privilege.  I'm entitled to ask her what the

13    communication was.

14           MS. McSHERRY:  Actually, what I think you're

13:49    15    entitled to do is ask her to confirm this

16    communication, but it does not open the door to

17    further inquiries as to that conversation.

18           MR. KLAUS:  I ask you to reconsider the

19    position.  I think it's going to come up again in

13:49    20    this deposition.

21           MS. McSHERRY:  I think it's going to.

22           MR. KLAUS:  Okay.  And I just -- to be

23    clear --

24           MS. McSHERRY:  Yes.

13:49    25           MR. KLAUS:  If -- if you're going to stand by

CONFIDENTIAL

Page 206

|  |  |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 13:49 | 5 |
| | 6 |

1    that objection and not allow her to testify what

2    she's testified to third parties in this case what

3    those communications are, we're going to file a

4    motion to compel and we're going to ask that Ms. Lenz

5    be brought back to testify again at your expense into

6    these communications.

7            I'm not saying that as a threat.  I just want

8    to make it clear that's what we're going to ask for.

9    And so I'd ask you to reconsider your position.

10           MS. McSHERRY:   Okay.  Let me be clear that

11   with respect to this communication and any others

12   that come up that fall within the same category, what

13   I'm going to be telling my -- advising my client to

14   do on the record is to not answer anything beyond the

15   specific statement that's here.

16           She can confirm that statement, she can speak

17   to that statement.  But I'm not going to allow you to

18   inquire and I'm going to instruct her not to answer

19   if you inquire beyond the specific statement.  You

20   can confirm that this is what she recalls at the time

21   or whatever she recalls.  She can speak to this

22   statement.  But what she's not -- what I'm going to

23   be instructing her not to do is speak beyond it.  So

24   beyond to, you know, further aspects of the

25   conversation or anything else like that or even --

CONFIDENTIAL

Page 207

1          MR. KLAUS:  What are you going to allow?  I

2     just -- I want to be clear about this, Ms. McSherry.

3          MS. McSHERRY:  Me, too.

4          MR. KLAUS:  Beyond just allowing her to

13:51     5     confirm that she wrote these words to Ms. Fleming,

6     what are you going to allow her to testify to?

7          MS. McSHERRY:  Well, of course, I haven't

8     seen all the different things that you plan to put in

9     front of her.

13:51    10          MR. KLAUS:  Stick with this.

11          MS. McSHERRY:  With this one, she can speak

12     to this particular statement and confirm it.

13          MR. KLAUS:  Okay.  And if I ask her any

14     question other than did you write to this Ms. Fleming

13:51    15     on June 14th, 2007, you're going to instruct her not

16     to answer?

17          MR. OPSAHL:  Maybe we should take a short

18     break.

19          MS. McSHERRY:  Maybe we should take a short

13:51    20     break.  Okay?

21          MR. KLAUS:  Yes.

22          MS. McSHERRY:  It will be short.

23          VIDEOGRAPHER:  Going off the record, the time

24     is 1:51.

14:03    25          (Deposition recess taken.)

CONFIDENTIAL

Page 208

1          VIDEOGRAPHER:  Back on the record, the time

2     is 2:03.

3          MR. KLAUS:  Did you want to say something,

4     Ms. McSherry?

14:03     5          MS. McSHERRY:  Sure.  Okay.  So let's talk

6     about how we'll be handling these communications with

7     the Electronic Frontier Foundation.  To be clear, I

8     will allow my client to testify to confirm that she

9     wrote any words that you happen to put before her, if

14:04    10     she did, if she recalls it, so on.  She can testify

11     to the date and time and place and the person she

12     spoke with if that's something she knows.  I'm going

13     to let her testify as to, if she needs to clarify a

14     particular -- her understanding of words, for

14:04    15     example, simple clarifications in the context of the

16     statement will be fine.

17          Beyond that, I'm going to be instructing her

18     not to answer.  And to be clear, what I mean by that

19     is that I won't be -- I'll be instructing her not to

14:04    20     answer if there are questions asking her to restate

21     what counsel may or may not have told her and in

22     particular anything that goes beyond what's directly

23     reflected in the statement, anything that gets into

24     other parts of the conversation or essentially, you

14:05    25     know, pushes beyond what is directly written.

CONFIDENTIAL

Page 245

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | privilege.                                             |
|       | 2  | Q.        MR. KLAUS:  Following Ms. McSherry's         |
|       | 3  | instruction?                                           |
|       | 4  | A.        Yes.                                          |
| 15:00 | 5  | Q.        If I could ask you to look on page 3,        |
|       | 6  | Ms. Lenz, paragraph 10, the question is:  "You         |
|       | 7  | contacted the Electronic Frontier Foundation.  What    |
|       | 8  | are you hoping for?"                                    |
|       | 9  |           Then is the paragraph below your response?   |
| 15:00 | 10 | Do you see that?                                        |
|       | 11 | A.        Yes.                                          |
|       | 12 | Q.        It says:                                      |
|       | 13 |           "When I contacted EFF, I did so at the       |
|       | 14 |           suggestion of a friend of mine who is lawyer |
| 15:01 | 15 |           in Canada.  I wanted to know my rights, how  |
|       | 16 |           to protect myself in case UMPG sued me and in|
|       | 17 |           what way (if any) I had infringed copyright." |
|       | 18 |           Do you see that?                              |
|       | 19 | A.        Yes.                                          |
| 15:01 | 20 | Q.        The next sentence says:                       |
|       | 21 |           "In discussing the situation with one of     |
|       | 22 |           the EFF lawyers, we came to the conclusion    |
|       | 23 |           that I did not infringe the copyright and     |
|       | 24 |           eventually we decided to file this lawsuit."  |
| 15:01 | 25 |           Do you see that?                              |

CONFIDENTIAL

Page 246

1      A.       Yes.

2      Q.       Which EFF lawyer are you referring to there?

3      A.       I'm not sure.

4      Q.       Do you think it was Ms. Hoffman?

15:01  5      A.       Likely.

6      Q.       It says:  "...we came to the conclusion that

7      I did not infringe the copyright..."

8               Do you see that?

9      A.       Yes.

15:01  10     Q.       What was the basis for the conclusion that

11     you and Ms. Hoffman came to that you did not infringe

12     the copyright?

13              MS. McSHERRY:  Instruct not to answer on the

14     ground of privilege.

15:02  15     Q.       MR. KLAUS:  Do you know why you concluded

16     that you did not infringe the copyright after

17     discussing the situation with one of the EFF lawyers?

18              MS. McSHERRY:  You can answer if you can

19     answer without revealing privileged communications.

15:02  20     Otherwise, I instruct not to answer, for the record.

21              THE WITNESS:  I don't know a way to answer

22     that wouldn't do that.

23              MR. KLAUS:  Mark as Exhibit 30.

24              (Deposition Exhibit 30 marked for

15:03  25              identification.)

CONFIDENTIAL

Page 252

```
 1              Do you see that?
 2    A.        Yes.
 3    Q.        Them is Universal you're talking about?
 4    A.        I think so.
 5    Q.        Why did you say it was lose-lose for them on
 6    that front?
 7              MS. McSHERRY:  You can answer unless it
 8    involves further -- revealing further communications
 9    with your counsel, but you can speak to your
10    understanding of lose-lose.
11              THE WITNESS:  Yeah, I -- based on this, I
12    don't remember.
13    Q.        MR. KLAUS:  The time at 1:13 p.m.  Do you see
14    that?
15    A.        Yes.
16    Q.        Do you see you say:  "I told Corynne that
17    since pursuing the federal portion of the case
18    achieves the ends I have in mind, that's fine to drop
19    the state portion..."
20              Do you see that?
21    A.        Yes.
22    Q.        The Corynne you're referring to is
23    Ms. McSherry?
24    A.        Yes.
25    Q.        What was the conversation you had with
```

15:09 (line 5)
15:09 (line 10)
15:09 (line 15)
15:10 (line 20)
15:10 (line 25)

CONFIDENTIAL

Page 253

1    Ms. McSherry about achieving the ends you have in

2    mind?

3              MS. McSHERRY:  Instruct not to answer on the

4    grounds of privilege.

15:10    5    Q.        MR. KLAUS:  What were the ends that you had

6    in mind?

7              MS. McSHERRY:  Objection, vague.

8              THE WITNESS:  The ends that I had in mind --

9    have in mind would be clarification of the Digital

15:10    10    Millennium Copyright Act.

11    Q.        MR. KLAUS:  What do you -- what is your end

12    regarding clarification of the Digital Millennium

13    Copyright Act?

14    A.        My hope is that -- I was hoping that there

15:11    15    would be -- my concern is the sending of takedown

16    notices without consideration for fair use, and I

17    thought that clarifying the law would reduce the

18    number of takedown notices sent.

19    Q.        What was -- what do you believe was unclear

15:11    20    about the law regarding the consideration of fair use

21    in the sending of takedown notices?

22    A.        Like what information I got from counsel.

23    Q.        Can you tell me what it is?

24              MS. McSHERRY:  Okay.  In that case I instruct

15:11    25    not to answer.

CONFIDENTIAL

Page 254

|  | 1 | Q.       MR. KLAUS:  Can you tell me what it is, |
|---|---|---|
|  | 2 | Ms. Lenz? |
|  | 3 | MS. McSHERRY:  I instruct not to answer if |
|  | 4 | you need to reveal privileged communication between |
| 15:11 | 5 | us. |
|  | 6 | THE WITNESS:  I think I would. |
|  | 7 | Q.       MR. KLAUS:  Is there anything you know about |
|  | 8 | clarifying the law regarding the sending of takedown |
|  | 9 | notices that you can reveal that wouldn't be a |
| 15:12 | 10 | communication with your counsel? |
|  | 11 | A.       No. |
|  | 12 | MR. KLAUS:  And you're not going to let me |
|  | 13 | ask her what that means? |
|  | 14 | MS. McSHERRY:  No. |
| 15:12 | 15 | Q.       MR. KLAUS:  You say also at 1:13 p.m.:  "...a |
|  | 16 | ruling in our case could clarify a cloudy decision of |
|  | 17 | 'Rossi.'" |
|  | 18 | Do you see that? |
|  | 19 | A.       Yes. |
| 15:12 | 20 | Q.       Do you know what Rossi is? |
|  | 21 | A.       I don't remember now. |
|  | 22 | Q.       Do you know why it's a cloudy decision? |
|  | 23 | A.       Not right now. |
|  | 24 | Q.       Do you know what the -- you understand |
| 15:12 | 25 | that -- you understand that Rossi is a legal decision |

CONFIDENTIAL

Page 258

1          she thought they were holding out to the last

2          minute to settle & she thinks that because

3          it's Prince, they have to fight."

4          Do you see that?

15:16    5    A.      Yes.

6    Q.      What did Ms. McSherry tell you about why she

7    thought Universal had to fight because it's Prince?

8          MS. McSHERRY:  Instruct not to answer on the

9    grounds of privilege.

15:17   10    Q.      MR. KLAUS:  At 1:10 p.m. Ms. Marlowe asks

11    you:  "You think Prince is forcing them to fight it

12    out instead of trying to settle?"

13          Do you see that?

14    A.      Yes.

15:17   15    Q.      And you say:  "I think that's what Corynne

16    thinks."

17          Do you see that?

18    A.      Yes.

19    Q.      Why did Ms. McSherry tell you that she

15:17   20    thought Prince was forcing them to fight it out

21    instead of settle?

22          MS. McSHERRY:  Objection, assumes facts and

23    also instruct not to answer on the grounds of

24    privilege.

15:17   25    Q.      MR. KLAUS:  Why did you think that was what

CONFIDENTIAL

Page 259

1    Corynne thought?

2            MS. McSHERRY:  Instruct not to answer if you

3    need to reveal privileged communications.

4            THE WITNESS:  I'll --

15:17    5    Q.      MR. KLAUS:  Follow the instruction of

6    counsel?

7    A.      That's correct.

8            MR. KLAUS:  This is number 32.

9            (Deposition Exhibit 32 marked for

15:18    10           identification.)

11    Q.      MR. KLAUS:  Number 32 is an e-mail exchange

12    that you were having -- I'm sorry.  Strike that.  Let

13    me start over.

14           Is Exhibit 32 an April 11, 2008, Gmail chat

15:18    15    that you were having with Ms. Fleming on April 11,

16    2008?

17    A.      Yes.

18    Q.      If you could look at the second page of this

19    e-mail, do you see at around 5:51 p.m. you write to

15:18    20    Ms. Fleming (As read):  So we're sticking with claim

21    1 because we want them to admit that DMCA notice was,

22    (1) a DMCA notice and (2) false.

23           Do you see that?

24    A.      Yes.

15:19    25    Q.      What was the basis for your statement we want

CONFIDENTIAL

Page 263

```
             1    Q.        Did Ms. McSherry say to you that if one of

             2    these cases gets them to admit they're filing a DMCA

             3    notice, we're all winners?

             4              MS. McSHERRY:  Instruct not to answer on the

15:23        5    ground of privilege.

             6    Q.        MR. KLAUS:  Do you think it's likely that you

             7    got the information that's stated there from

             8    Ms. McSherry?

             9              MS. McSHERRY:  Instruct not to answer on the

15:23       10    ground of privilege.

            11    Q.        MR. KLAUS:  Is there anywhere where else you

            12    would have gotten the information to say, "If just

            13    one of these cases gets them to admit they're filing

            14    a DMCA notice, we're all winners," other than through

15:23       15    one of your lawyers at EFF?

            16    A.        I don't think so.

            17    Q.        Going back at 5:51 p.m., you said:  "We want

            18    them to admit the DMCA notice was...false."

            19              Do you see that?

15:24       20    A.        Yes.

            21    Q.        Which notice are you talking about there when

            22    you say you want them to admit the notice was false?

            23              MS. McSHERRY:  Actually, I think it

            24    misstates -- the question misstates the document.  So

15:24       25    objection.
```

CONFIDENTIAL

Page 280

1      infringement?

2              MS. McSHERRY:  Same instruction.

3      Q.      MR. KLAUS:  You say at the end of this first

4      paragraph:  "The letter seemed to have the tone of

16:01   5      'this sounds familiar and it's something we're

6      interested in talking about.'"

7              Do you see that?

8      A.      Yes.

9      Q.      Are you talking about the e-mail that you

16:01  10      received from Mr. Schultz at EFF?

11      A.      Possibly.

12      Q.      Is there anything else it might be besides

13      the e-mail?

14      A.      I would assume that it would be an e-mail

16:01  15      from him.

16      Q.      What did -- what did he say that made you

17      think that it had the tone of this sounds familiar

18      and is something we're interested in talking about?

19              MS. McSHERRY:  Objection, instruction not to

16:01  20      answer.

21      Q.      MR. KLAUS:  The next paragraph says:

22      "Recently EFF paired up with Michelle Malkin against

23      Universal and Universal backed off."

24              Do you see that?

16:01  25      A.      Yes.

CONFIDENTIAL

Page 285

1    Q.       And it carries over to the top of the second

2    page?

3    A.       Yes.

4    Q.       You say:

16:06    5           "You're right Richard.  Mine's not a

6                    'fair use' case at all.  Nor is it a parody.

7                    It's something different.  I've never heard

8                    of anything like it, which is why I contacted

9                    EFF."

16:06    10          Do you see that?

11   A.       Yes.

12   Q.       Why did you say, "Mine's not a 'fair use'

13   case at all"?

14          MS. McSHERRY:  Objection, calls for a legal

16:06    15   conclusion.

16          THE WITNESS:  I don't remember.  It may have

17   been my opinion, it may have been based on something

18   I was told by counsel.

19   Q.       MR. KLAUS:  Do you think it's possible that

16:06    20   your counsel told you that yours was not a fair use

21   case at all?

22          MS. McSHERRY:  Objection, instruction not to

23   answer, privilege grounds.

24   Q.       MR. KLAUS:  You say that "it's something

16:07    25   different."  What did you mean by "it's something

CONFIDENTIAL

Page 286

1    different"?

2    A.        I don't remember.

3    Q.        What do you mean by "I've never heard of

4    anything like it"?

16:07    5    A.        Probably referencing the fact that the music

6    was in the background and the focus of the video was

7    on the action of the children.

8    Q.        Was it your opinion that your case was not a

9    fair use case at all, Ms. Lenz?

16:07    10        MS. McSHERRY:  Objection, calls for a legal

11    conclusion.

12        THE WITNESS:  At the time it may have been my

13    opinion.  It may have been I was misunderstanding

14    what I'd been told by counsel.

16:07    15    Q.        MR. KLAUS:  What do you mean by you may have

16    been misunderstanding what you had been told by

17    counsel?

18        MS. McSHERRY:  I'm going to instruct you not

19    to answer unless you can answer that without

16:08    20    revealing communications with counsel.

21        THE WITNESS:  It was so long ago, I can't

22    remember what I was thinking at the time.

23        MR. KLAUS:  Did you -- just so we're clear,

24    Ms. Lenz was on the record as saying, "It may have

16:08    25    been my opinion.  It may have been I was

CONFIDENTIAL

Page 287

```
 1      misunderstanding what I had been told by counsel."
 2             MS. McSHERRY:  Uh-huh.
 3             MR. KLAUS:  To get to the bottom of that, I
 4      don't want to leave any impression here that there
 5      was some misunderstanding of counsel that was
 6      communicated.  So I need to go beyond that.
 7      Q.      So my question -- my question to you,
 8      Ms. Lenz --
 9             MS. McSHERRY:  Can we pause for a moment so I
10      can review the transcript?
11             MR. KLAUS:  Yes.
12             MS. McSHERRY:  I'm still going to instruct
13      not to answer.  Well, go ahead and ask your question
14      and then we'll see what we need to do.
15      Q.      MR. KLAUS:  What was the possible
16      misunderstanding of counsel that you were referring
17      to, Ms. Lenz?
18             MS. McSHERRY:  I'm going to instruct you not
19      to answer on the grounds of privilege.
20      Q.      MR. KLAUS:  Did you come to change your
21      opinion about whether yours was a fair use case,
22      Ms. Lenz?
23             MS. McSHERRY:  Objection, vague.
24             THE WITNESS:  If my opinion --
25             MS. McSHERRY:  And assumes facts.
```

16:08   5
16:08   10
16:09   15
16:09   20
16:09   25

CONFIDENTIAL

Page 288

1          THE WITNESS:  If my opinion at this time was

2     it was not fair use, then, yes, my opinion has

3     changed.

4     Q.     MR. KLAUS:  Why did -- well, you state here,

16:09   5     "Mine's not a 'fair use' case at all."  Was it your

6     opinion that it was a fair use or not a fair use?

7          MS. McSHERRY:  Objection, asked and answered

8     and calls for a legal conclusion.

9          THE WITNESS:  I'm not sure if this comment is

16:09  10     referring to my opinion or if the comment is

11     referring to something that I was possibly told by

12     counsel.

13          MR. OPSAHL:  Perhaps we should confer and we

14     can just clear this up.

16:10  15          MR. KLAUS:  I think I can move on.

16          MS. McSHERRY:  Okay.

17          MR. KLAUS:  I think I can move on.  Actually,

18     let's go off.  We can take a break for just a few

19     minutes if you want to confer.

16:10  20          VIDEOGRAPHER:  Going off the record, the time

21     is 4:09.

22          (Deposition recess taken.)

23          VIDEOGRAPHER:  Back on the record, the time

24     is 4:12.

16:13  25     Q.     MR. KLAUS:  Ms. Lenz, I'm going to hand you a

CONFIDENTIAL

Page 348

1            CERTIFICATE OF REPORTER

2        I, WENDY E. ARLEN, a Certified Shorthand

3    Reporter, hereby certify that the witness in the

4    foregoing deposition was by me duly sworn to tell the

5    truth, the whole truth and nothing but the truth in the

6    within-entitled cause;

7        That said deposition was taken down in shorthand

8    by me, a disinterested person, at the time and place

9    therein stated, and that the testimony of the said

10   witness was thereafter reduced to typewriting, by

11   computer, under my direction and supervision.

12       That before completion of the deposition, review

13   of the transcript was requested.  If requested, any

14   changes made by the deponent (and provided to the

15   reporter) during the period allowed are appended hereto.

16       I further certify that I am not of counsel or

17   attorney for either or any of the parties to the said

18   deposition nor in any way interested in the event of

19   this cause and that I am not related to any of the

20   parties thereto.

21           DATED:_____, 2009

22

23       _____

24       WENDY E. ARLEN CSR, No. 4355

25