\*\*E-Filed 11/17/2010\*\*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                    Plaintiff,<br><br>      v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                    Defendants. | Case No. 5:07-cv-03783 JF (PVT)<br><br>ORDER[1] OVERRULING DEFENDANTS' OBJECTIONS TO DISCOVERY ORDER<br><br>[Re: Docket No. 346] |

Pursuant to Local Rule 72-2, Plaintiff Stephanie Lenz seeks relief from an order of Magistrate Judge Trumbull compelling discovery with respect to subject matter that Lenz contends is protected by the attorney-client privilege. Because Judge Trumbull's order is neither clearly erroneous nor contrary to law, the objections will be overruled.

## I. BACKGROUND

On June 4, 2007, Defendant Universal Music Corp. sent a takedown notice to YouTube alleging that a 29-second home video of Lenz's toddler dancing to the Prince song, "Let's Go Crazy," infringed Universal's copyright. YouTube complied. Lenz, represented by the

---

[1] This disposition is not designated for publication in the official reports.

1  Electronic Frontier Foundation ("EFF"), sued Universal under § 512(f) of the Digital

2  Millennium Copyright Act ("DMCA") for knowingly materially misrepresenting in the

3  takedown notice that her video infringed the copyright.  At issue in the case is whether Universal

4  knew or should have known that Lenz's video did not infringe its copyright and whether and to

5  what extent Lenz was injured by Universal's actions.

6        Prior to and during the litigation, Lenz made comments in emails and electronic "chats"

7  with friends, postings on her blog, and statements to reporters, in which she discussed

8  conversations she had with her counsel.  Universal moved to compel discovery relating to such

9  conversations, alleging that Lenz had waived attorney-client privilege.  Judge Trumbull found

10 that the privilege had been waived in three areas and required production of responsive

11 documents and two additional hours of deposition.  Dkt. 334, Order of October 22, 2010.  On

12 November 2, 2010, pursuant to Local Rule 72-2, Lenz objected to Judge Trumbull's ruling.

13 **II. LEGAL STANDARD**

14       Where, as here, the magistrate judge's ruling addresses a non-dispositive matter, the

15 district judge will modify or set aside "any portion of the magistrate judge's order found to be

16 clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A).

17 "The clearly erroneous standard, which applies to a magistrate judge's findings of fact, is

18 'significantly deferential,' requiring 'a definite and firm conviction that a mistake has been

19 committed.'"  *Crispin v. Christian Audigier, Inc.*, 2010 WL 2293238, at *3 (C.D. Cal. May 26,

20 2010) (quoting *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 623,

21 113 S.Ct. 2264, 124 L. Ed.2d 539 (1993)).  In contrast, "[t]he 'contrary to law' standard . . .

22 permits independent review of purely legal determinations by the magistrate judge." *F.D.I.C. v.*

23 *Fidelity & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000) (citing *Haines v. Liggett*

24 *Group, Inc.,* 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase 'contrary to law' indicates plenary

25 review as to matters of law")); *see Med. Imaging Centers of America, Inc. v. Lichtenstein,* 917

26 F.Supp. 717, 719 (S.D. Cal. 1996) ("Section 636(b)(1) ... has been interpreted to provide for *de*

27 *novo* review by the district court on issues of law").

28       "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense . . . ." Fed. R. Civ. P. 26(b). As a general matter, "a party is not entitled to discovery of information protected by attorney-client privilege." *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008). The party claiming the privilege bears the burden of proving that the material is privileged, including demonstrating that the privilege has not been waived. *Pauline Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) "The disclosure of confidential information resulting in the waiver of the attorney-client privilege constitutes a waiver of privilege as to the communications relating to the subject matter that has been put at issue." *Phoenix Solutions, Inc.*, 254 F.R.D. at 575. "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.*

"The privilege which protects attorney-client communications may not be used both as a sword and a shield." *Akamai Technologies, Inc. v. Digital Island, Inc.*, No. C-00-3508 CW(JCS), 2002 WL 1285126 at *8 (N.D. Cal. May 30, 2002). The doctrine of waiver of attorney-client privilege is rooted in notions of fundamental fairness and serves to "protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Tennenbaum v. Deloitte and Touche*, 77 F.3d 337, 340 (9th Cir. 1996).

### III. DISCUSSION

**A.     Communications Regarding Plaintiff's Motivations for Pursuing Litigation**

In an email to a friend, Lenz stated that EFF was "very, very interested in the case," and that "EFF is pretty well salivating over getting their teeth into [Universal Music Group] yet again." Klause Decl. Ex. 3. Lenz also sent an email to her mother stating that she could not "say much," but that EFF was planning a "publicity blitz and/or a lawsuit against Universal." *Id.* Ex. 4. Based on these statements, Judge Trumbull granted Universal's motion to compel further discovery regarding Lenz's communications with her attorneys as to her motives for bringing the

3

action. Order of October 22, 2010, at 5 ("[P]laintiff has voluntarily waived the privilege as to communications with her attorney regarding the possible motives for bringing action.").

Universal contends that statements by Lenz about her motivations for this action are relevant to show whether and to what extent Lenz was injured by Univeral's takedown notice. MTC at 4 ("In her communications with third parties . . . Plaintiff has revealed a different motivation for pursuing her lawsuit. That motivation is not about vindicating Plaintiff's First Amendment rights, but rather giving her lawyers at [EFF] a forum in which to "get[] their teeth into [Universal]"). In her objections, Lenz argues that her comments disclosed only information regarding "her counsel's motives for representing her pro bono," and therefore did not waive the attorney-client privilege with respect to *her own* motivations for filing suit. Judge Trumbull found that because Lenz's "communications with the third parties relate to the actual substance of her conversations with her attorney. . . . Universal shall obtain further discovery regarding communications involving this subject matter." Order of October 22, 2010 at 5.

This ruling is not clearly erroneous. Because information about Lenz's motivations for filing suit reasonably may lead to discoverable evidence about her claimed injury, her conversations about those motivations are discoverable if the privilege has been waived with respect to that subject matter. Lenz contends that her disclosure of EFF's motivations for taking the suit pro bono constitutes separate subject matter with respect to whether she has waived the privilege. However, as noted above, there is no "bright line test" for determining what constitutes the subject matter of a waiver. Instead, courts must weigh "the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Phoenix Solutions Inc. v. Wells Fargo, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008). While Lenz argues that her motivations for filing the suit and EFF's motivations for representing her are distinct subject matter, the circumstances of her disclosures indicate that the two subjects are closely intertwined and cannot easily be separated. Such integration is well illustrated in Lenz's statement to her mother that EFF was planning a "publicity blitz and/or a lawsuit against Universal." While the statement indicates that EFF was planning the lawsuit against Universal, no such suit could be undertaken without active

4

involvement by Lenz. The statement also suggests that EFF was considering the possibility of a publicity blitz in lieu of a lawsuit, indicating that EFF had some say as to whether the suit went forward. Universal is entitled to examine the context of Lenz's voluntary statements in order to assess their probative value, if any.

**B.      Communications Regarding the *Rossi* Decision**

Lenz also made disclosures to third parties about communications she had with EFF about specific legal issues. Universal sought to discover communications about these matters, including discussions about Lenz's decision to abandon her state law claim for interference, whether Lenz had potential exposure in a "SLAPP" suit, and the timing of the lawsuit itself. Judge Trumbull determined that while Lenz had waived the attorney-client privilege as to those matters, such matters are not relevant to a claim or defense by either party and therefore are not discoverable. Order of October 22, 2010, at 6. However, in an electronic chat with a friend, Lenz stated that "I told [EFF counsel] Corynne [McSherry] that since pursuing the federal portion of the case achieves the ends I have in mind, that's [sic] fine to drop the state portion (that they filed a false DMCA notice, tha[t] they're accusing me of copyright infringement and that a ruling in your case could clarify a cloudy decision known as 'Rossi')." Klaus Decl. Ex 7 at 1. Judge Trumbull determined that Lenz's comments regarding "clarification of the *Rossi* decision" were relevant. Order of October 22, 2010, at 6.

Lenz points out that at the time of the chat she already had challenged the *Rossi* standard in opposing Universal's motion to dismiss her first amended complaint. However, the reference to "clarifying *Rossi*" as one of the "ends I have in mind," is relevant to Lenz's motivations in pursuing her case, which, as discussed above, is relevant to Lenz's damage claims. Judge Trumbull's determination that Lenz voluntarily waived the attorney-client privilege as to this matter is not clearly erroneous.

**C.      Communications Regarding Plaintiff's Factual Allegations**

Judge Trumbull's order also addresses four statements made by Lenz to third parties regarding subject matter that Universal contends is relevant to Lenz's factual allegations. First, Lenz told a friend that her lawyer was hinting in her second amended complaint that "Prince

5

bullied" Universal into going after Lenz and that "there has been ample public proof that he wants everyone targeted, no matter whether they're actually guilty of anything."[2]  Second, Lenz told a friend in a separate chat that her attorney thought Prince was forcing Universal to fight the suit rather than settle.[3]  Third, Lenz indicated to a reporter for Zerogossip.com that she had contacted EFF on the recommendation of a lawyer friend from Canada, and that "[i]n discussing the situation with one of the EFF lawyers, we came to the conclusion that I did not infringe the copyright and eventually we decided to file this lawsuit."  Klaus Decl. Ex. 11 at 3.  Finally, in a response to a reader comment on her blog about a fair use defense, Lenz wrote "You're right Richard.  Mine's not a 'fair use' case at all. . . . It's something different.  I've never heard of anything like it, which is why I contacted EFF."  *Id.* Ex. 6 at 2.  When asked about this comment at her deposition, Lenz testified that "[a]t the time it may have been my opinion.  It may have been I was misunderstanding what I'd been told by counsel."  *Id.* Ex. 2 at 286:12-14.

Universal argues that the first two comments were communications about "the core allegations 'that Prince himself demanded that Universal seek the removal of' Plaintiff's posting.'"  MTC at 7 (quoting SAC ¶ 31).  According to Universal, Lenz's statement to the Zerogossip.com reporter that she discussed the situation with her lawyer and "came to the conclusion" that the posting did not infringe any copyright is relevant to Lenz's claim that Universal knew or should have known that the take-down notice was noninfringing.  Finally, Universal contends Lenz's blog posting that her case was "not a 'fair use' case at all" may or may not reflect a misunderstanding of what Lenz had been told by counsel.

---

[2] As quoted in Judge Trumbull's order, Lenz's Gmail Chat to her friend reads: "[Y]ou'll love the brief my lawyer wrote up, once it's a finished public document . . . She's really going after UMPG & now Prince is the villain as well.  Our lawsuit was filed before we knew he had a hand in it.  Now she's kind of hinting that they're doing this b/c Prince bullied them into it and that there's been ample public proof that he wants everyone targeted, no matter whether they're actually guilty of anything.  It's delicious."  Klaus Decl. Ex. 9 at 3-4.

[3] Lenz's Gmail Chat reads:
[Lenz:] "I asked [EFF counsel Corynne McSherry] if she though [sic] they [Universal] were holding out to the last minute to settle & she thinks that b/c it's Prince, they have to fight...
[Friend:] You think Prince is forcing them to fight it out instead of trying to settle?
[Lenz:] I think that's what Corynne thinks.  *Id.* at Ex. 10 at 1.

6

Judge Trumbull determined that Lenz voluntarily waived the privilege, and that Universal therefore could "obtain further discovery regarding plaintiff's communications with her attorney on this subject matter as well." Lenz objects on the grounds that her speculations about Prince's role in the case are irrelevant. She also argues that her deposition statement about her blog posting was speculation that immediately followed statements that she did not remember why she said what she did.

Judge Trumbull's determination was not clearly erroneous. When a client reveals to a third party that something is "what my lawyer thinks," she cannot avoid discovery on the basis that the communication was confidential. Nor did Judge Trumbull clearly err in determining that the comments at issue are relevant to "specific factual allegations," about which Universal may obtain further discovery. Order of October 22, 2010, at 7. Lenz's second amended complaint alleges that "Prince himself demanded that Universal seek the removal of" Lenz's YouTube video. Universal is entitled to discover information about the basis of such allegations.[4] Similarly, the nature and extent of the investigation by Lenz and her counsel to determine whether Lenz had infringed a copyright may be relevant to the issue of whether Universal itself should have known that there was no copyright violation.

Finally, Lenz's assertion in her deposition testimony that she may have based her earlier comment that her case was "not a 'fair use' case at all" on conversations with her attorneys–even if her interpretation of those conversations was mistaken–waived any claim of privilege. A party may not attempt to explain an apparent admission as a misinterpretation of a conversation with counsel, and then deny the opposing party on the basis of privilege access to the very conversations at issue.

---

[4] Lenz characterizes her comments about what her attorney thought about Prince's role in settlement negotiations as "settlement speculation." Lenz is correct in noting that speculation about Prince's role in settlement negotiations is not relevant to a claim or defense in the case. Information about such comments is discoverable only to the extent it informs the basis for factual allegations made in the complaint.

1 **ORDER**

2  Good cause therefore appearing, the objections are OVERRULED.

4  DATED: November 17, 2010

        _____
        JEREMY FOGEL
        United States District Judge

Case No. 5:07-cv-03783 JF (PVT)
ORDER OVERRULING DEFENDANTS' OBJECTIONS TO DISCOVERY ORDER
(JFLC3)