ELECTRONIC FRONTIER FOUNDATION
CINDY COHN – #145997
CORYNNE MCSHERRY – #221504
KURT OPSAHL – #191303
JULIE SAMUELS – *pro hac vice*
454 Shotwell Street
San Francisco, CA 94110
Telephone:     (415) 436-9333
Facsimile:     (415) 436-9993
Email: cindy@eff.org; corynne@eff.org;
        kurt@eff.org; julie@eff.org

KEKER & VAN NEST LLP
ASHOK RAMANI – #200020
MICHAEL S. KWUN – #198945
ANDREW F. DAWSON – #264421
710 Sansome Street
San Francisco, CA 94111-1704
Telephone:     (415) 391-5400
Facsimile:     (415) 397-7188
Email: aramani@kvn.com; mkwun@kvn.com
        adawson@kvn.com

Attorneys for Plaintiff
STEPHANIE LENZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>                              Defendants. | Case No. C 07-03783-JF (HRL)<br><br>**PLAINTIFF'S OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS**<br><br>Date:          January 25, 2011<br>Time:          10:00 a.m.<br>Courtroom:  2, 5th Floor<br>Judge:         Hon. Howard R. Lloyd |

536799.01

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND ...................................................................3

III. ARGUMENT ........................................................................................5

   A.   Ms. Lenz has produced all documents responsive to the Waiver Order..................5

      1.   Ms. Lenz is not obligated to disclose her counsel's work product and has conducted a diligent and appropriate search for documents. ...................5

         a.   The Court did not order, nor did Universal request, that Ms. Lenz produce documents never shared with her that are protected by the work product doctrine, and Universal in any event is not entitled to such documents. ...................6

         b.   An exhaustive search of counsel's records of communications with Ms. Lenz is needlessly duplicative. ...................8

      2.   Ms. Lenz has produced all responsive documents, without regard to date...................9

         a.   All documents about motive and the *Rossi* case have been produced. ...................10

         b.   Ms. Lenz has correctly interpreted the Waiver Order with respect to the remaining subject matter disputes: "publicity blitz," infringement and fair use. ...................10

            (i)   The Waiver Order does not require production of "publicity blitz" documents that are not related to motive. ...................11

            (ii)   The Waiver Order does not require production of all communications about infringement or non-infringement...................13

            (iii)   The Waiver Order does not require production of all communications about fair use. ...................14

   B.   No *in camera* review of either *all* privileged documents or all redacted documents is warranted...................17

      1.   Universal offers no credible basis for its speculation that Ms. Lenz has improperly redacted documents...................17

      2.   Universal's demand for *in camera* review of all documents being withheld on the basis of privilege lacks any basis. ...................19

   C.   Universal has failed to show by clear and convincing evidence that

i

Ms. Lenz violated a specific and definite order...................................................20

IV.      CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

## Federal Cases

*Balla v. Idaho State Bd. of Corr.*
   869 F.2d 461 (9th Cir. 1989) ...................................................................................20

*Diamond State Ins. Co. v. Rebel Oil Co., Inc.*
   157 F.R.D. 691 (D. Nev. 1994) ................................................................................17

*Gonzales v. Google, Inc.*
   234 F.R.D. 674 (N.D. Cal. 2006).................................................................................9

*Hickman v. Taylor*
   329 U.S. 495 (1947)..................................................................................................6, 7

*Holmgren v. State Farm Mut. Auto. Ins. Co.*
   976 F.2d 573 (9th Cir. 1992) ......................................................................................7

*Hyde & Drath v. Baker*
   24 F.3d 1162 (9th Cir. 1994) ....................................................................................21

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*
   10 F.3d 693 (9th Cir. 1993) ......................................................................................20

*Liew v. Breen*
   640 F.2d 1046 (9th Cir. 1981) ..................................................................................21

*Rossi v. Motion Picture Ass'n of America*
   391 F.3d 1000 (9th Cir. 2004) ....................................................................1, 3, 4, 10

*United States v. Zolin*
   491 U.S. 554 (1989)..................................................................................................17

*Upjohn Co. v. United States*
   449 U.S. 383 (1981)..................................................................................................6, 7

## Federal Statutes

17 U.S.C. § 512(f)............................................................................................................1

## Federal Rules

Federal Rule of Civil Procedure 26 ...............................................................................7, 9

Federal Rule of Civil Procedure 37 ................................................................................21

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL
COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)

## I.    INTRODUCTION

This case arises out of a mother's 29-second video of her toddler son running around her kitchen with a barely audible Prince song playing in the background.  Defendants Universal Music Corporation, Universal Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal") administer the rights to this song.  Universal's agents improperly had the video removed from YouTube, claiming copyright infringement.  The mother, Stephanie Lenz, aided by a nonprofit organization that assists those who have been subjected to the misuse of copyright law online, brought this lawsuit under 17 U.S.C. § 512(f) to hold Universal accountable for the improper takedown of the little video, which is a fair use.  Universal responded by fiercely defending its ability to take down videos such as Ms. Lenz's without having to consider whether they are fair uses.  Three and a half years of litigation have followed.

The parties come before this Magistrate Judge on a question arising from Ms. Lenz's waiver of the attorney-client privilege in her early communications with friends and family about her situation.  In response to the Court's October 22, 2010 Order Compelling Production (the "Waiver Order") requiring her to produce attorney-client communications on a few narrow topics, Ms. Lenz has conducted a careful search for responsive documents.  As a result of that review, she has produced dozens of documents spanning over three hundred pages, including *all* communications with counsel on or before June 12, 2007, when one of the statements implicating waiver was made, *all* communications with counsel concerning her motives, or counsel's motives, for filing the lawsuit, *all* communications with counsel concerning a Ninth Circuit decision, *Rossi v. Motion Picture Ass'n of America*, 391 F.3d 1000 (9th Cir. 2004), that addresses one aspect of the statute under which Ms. Lenz brings her lawsuit, and *all* communications with counsel about the determination that her use was a fair use and that she had not infringed Prince's copyright.  She has complied fully with the Waiver Order.

Nevertheless, having been given an inch into some attorney-client communications, Universal is now attempting to take a mile.  Specifically, it here seeks to expand the scope of the Waiver Order in four ways, which, if taken collectively, could result in a broad production of attorney-client communications about the merits of the litigation, as well as internal attorney

536799.01

work product that has never even been shared with Ms. Lenz.  Universal also seeks to burden the Court with a substantial *in camera* review of still-privileged documents.  And to little purpose; the subject matter at issue is, at best, of marginal relevance to the central question of the case— whether Universal considered fair use before claiming copyright infringement as a basis for having Ms. Lenz's video of her son removed from YouTube.  The four expansions of the Waiver Order that Universal seeks are:

- *Attorney work product:*  In addition to attorney-client communications on specific topics, which it has already received, Universal seeks to expand the waivers to require revelation of attorney work product on those same topics—even though the Waiver Order was concerned entirely with attorney-client communications, Universal never argued in connection with that motion that it was entitled to work product, and Universal cannot meet the separate, high standard applicable to attorney work product.

- *Duplicative searches:*  Universal seeks duplicative searches of attorney files for communications with Ms. Lenz even though Ms. Lenz has retained (using Google's Gmail servers) her communications with counsel, and her counsel has been given access to search and has searched those communications exhaustively in response to the Waiver Order.

- *All mentions of "fair use" or "infringement":*  In addition to all communications with counsel related to the specific subject matters at issue—the specific matters to which Ms. Lenz was referring when she waived the privilege—Universal seeks to expand the waivers to all documents relating to the broad general topics of "fair use" and "infringement" throughout the life of this case.

- *In camera review of all privileged documents:*  Universal seeks to require the Court to review *in camera* thousands of documents, including every document withheld in full or redacted on the basis of privilege, based on their rank speculation that information is being withheld or improperly redacted.

Moreover, rather than work with opposing counsel to resolve any of these disputes, using

2

techniques such as an agreement not to consider production of disputed documents on certain issues as a further waiver or as an admission that those documents were actually within the scope of the Waiver Order, or through a motion for clarification, Universal has instead moved for an order of contempt and sanctions.  Even if there is room for disagreement about the scope of the Waiver Order, given the production that Ms. Lenz has made and her good faith efforts to comply with a reasonable interpretation of the Waiver Order, there is no basis for a finding of contempt. Indeed, given the special difficulties facing counsel handling a situation where the privilege has been waived on some topics yet counsel still has the ethical obligation to preserve privilege as to unwaived topics, Ms. Lenz's efforts to comply with the Waiver Order have been exemplary.

For these reasons, and those discussed further below, Universal's motion must be denied.

## II.     FACTUAL BACKGROUND

On October 22, 2010, Magistrate Judge Trumbull granted in part and denied in part Universal's Motion to Compel Production of Privileged Documents and Testimony (the "motion to compel").  See Waiver Order (Klaus Decl.,[1] Ex. 1).  The Court ordered Ms. Lenz to disclose documents relating to three subject matters.

First, the Court ordered Ms. Lenz to produce "plaintiff's communications with her attorneys as to her motives for bringing the action," *id.* at 5:14-15, including her attorneys' motives that may be intertwined with her own, *see* Order Denying Relief from Waiver Order (Klaus Decl., Ex. 2) at 4:23-5:3.

Second, the Court considered Universal's broad demand for communications related to Ms. Lenz's and her counsel's legal strategies.  The Court denied Universal's request, except for the narrow issue of "clarification about the *Rossi* decision."  Waiver Order (Klaus Decl., Ex. 1) at 6:16-25.

Third, the Court found that certain other statements Ms. Lenz had made had waived privilege as to "specific factual allegations."  *Id.* at 7:21-24.  Relevant to the present motion, the

---

[1] As used herein, "Klaus Decl." refers to the declaration of Kelly M. Klaus filed on December 17, 2010.  *See* Docket No. 354.  Certain of the exhibits to this declaration were filed under seal on December 22, 2010.  *See* Docket No. 359.

3

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)

536799.01

1   Court found a waiver in an interview Ms. Lenz gave to Zerogossip.com in 2007, where Ms. Lenz

2   said:

3          When I contacted EFF, I did so at the suggestion of a friend of mine who's a
           lawyer in Canada.  I wanted to know my rights, how to protect myself in case

4          UMPG sued me and in what way (if any) I had infringed copyright.  In discussing
           the situation with one of the EFF lawyers, we came to the conclusion that I did

5          not infringe the copyright and eventually we decided to file this lawsuit.

6   *Id.* at 7:11-14*; see also* Declaration of Michael Kwun ("Kwun Decl."), Ex. F at 3

7   (Zerogossip.com interview).

8          The Court also found a waiver by combining two things Ms. Lenz had said.  First, on

9   June 12, 2007, Ms. Lenz left a comment on one of her own blog posts, saying, "Mine's not a

10  'fair use' case at all.  Nor is it a parody.  It's something different.  I've never heard of anything

11  like it, which is why I contacted EFF."  Waiver Order (Klaus Decl. Ex. 1) at 7:14-18; *see also*

12  Kwun Decl., Ex. D at 2 (blog post and comment).  While this statement (which does not refer to

13  the substance of any communications with counsel) cannot have waived privilege, at her

14  deposition, upon being asked about the basis for this comment, Ms. Lenz stated, "At the time it

15  may have been my opinion.  It may have been I was misunderstanding what I'd been told by

16  counsel."  Waiver Order (Klaus Decl. Ex. 1) at 7:17-19; *see also* Kwun Decl., Ex. G at 285:16-

17  18 (Lenz Depo.).  Without referring specifically to any of the above communications, the Court

18  concluded that Ms. Lenz "voluntarily waived the privilege here."  Waiver Order (Klaus Decl. Ex.

19  1) at 7:19-20.   Based on these waiver findings, it ordered that Universal "shall obtain further

20  discovery regarding plaintiff's communications with her attorney . . . as to the specific factual

21  allegations set forth above . . . ."  *Id.* at 7:20-24.

22         On November 2, 2010, Ms. Lenz filed a Motion for Relief from the Waiver Order with

23  District Judge Fogel.  *See* Docket No. 346.  Judge Fogel denied the motion on November 17,

24  holding that "[b]ecause Judge Trumbull's order is neither clearly erroneous nor contrary to law,

25  the objections will be overruled."  Klaus Decl., Ex. 2 at 1:21-22.

26         After meeting and conferring about dates for production and Ms. Lenz's deposition, Ms.

27  Lenz produced documents responsive to the Waiver Order on December 1, 2010.  Kwun Decl.

28  ¶ 9.  The parties thereafter met and conferred extensively about the December 1, 2010

production, and Ms. Lenz made a supplemental production on December 10, 2010.  *Id.* ¶¶ 9-18.
In an effort to resolve some of the remaining disputes, Ms. Lenz also offered to produce
additional documents if Universal would agree not to claim that production of those disputed
documents constituted a further waiver or an admission that those documents were actually
within the scope of the Waiver Order.  *Id.* ¶ 14.  Universal refused.  *Id.* ¶ 15.  Finally, hoping to
resolve any remaining disputes with minimal burden to the Court, Ms. Lenz's counsel proposed
filing a motion for clarification about the scope of the Waiver Order.  *Id.*  Instead, Universal filed
the present motion claiming contempt and seeking sanctions.

## III.   ARGUMENT

### A.   Ms. Lenz has produced all documents responsive to the Waiver Order.

Universal offers two basic arguments why Ms. Lenz has violated the Waiver Order and
should be held in contempt, both of which are attempts dramatically to expand the Waiver Order.
First, Universal argues that Ms. Lenz's production is incomplete because it does not include
attorney work product (Mot. at 16:14-18) and because it speculates that Ms. Lenz's email files
do not contain all of her communications with counsel and, based on that speculation, demands
that Ms. Lenz's counsel (over nine separate attorneys over a three and a half year period) each
search his or her own files.  *Id.* at 17:5-7.  Second, Universal wrongly claims that Ms. Lenz has
imposed a time limitation, rather than a subject matter limitation, to her production of documents
regarding (1) the "publicity blitz" in this case, (2) the conclusion that her video does not infringe,
and (3) her deposition testimony about the possibility she was confused when she commented
that her case is "not a 'fair use' case at all."  *Id.* at 14:19-23, 18:13-20:8. These arguments
seriously misstate the positions Ms. Lenz has taken, and in any event are without merit.

### 1.   Ms. Lenz is not obligated to disclose her counsel's work product and has conducted a diligent and appropriate search for documents.

Universal's attempts to force a search of Ms. Lenz's attorneys' files, both for broad
categories of work product and to duplicate searches that have already been completed, should
be denied.

536799.01

a.   **The Court did not order, nor did Universal request, that Ms. Lenz produce documents never shared with her that are protected by the work product doctrine, and Universal in any event is not entitled to such documents.**

Universal argues that it is entitled to documents created by counsel, including documents shared with co-counsel (but never shared with Ms. Lenz), so long as those documents in some manner reflect communications with Ms. Lenz on waived topics. This would mean that Universal would be entitled to every email that counsel sent to each other that says "Stephanie said" or "Stephanie believes" if the topic is "infringement," "fair use," or any of the other broad topics that Universal contends are within the Waiver Order. This argument faces two insurmountable obstacles: (1) attorney work product is distinct from attorney-client communication information, with a distinct regime of protections; and (2) attorney work product is not included in the Waiver Order and was not sought by Universal in its original motion to compel.

First, internal attorney documents reflecting even non-privileged communications with others are classic work product. Indeed, they are precisely the types of documents that led to the modern federal attorney work product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (describing "work product of the lawyer" as "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible" things). As Justice Jackson explained in his concurring opinion in *Hickman*, the work product doctrine extends to an attorney's summary of an interview, regardless of whether the interview was a privileged communication. *See id.* at 516-17 (Jackson, J., concurring) ("Even if his recollection were perfect, the statement would be [the attorney's] language permeated with his inferences."). "Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 399-400 (1981) (citing *Hickman*, 329 U.S. at 513, 516-17 (Jackson, J., concurring)). Even to the extent they concern topics for which she has waived privilege, Ms. Lenz's conversations with her counsel are nonetheless conversations between counsel and a witness (Ms. Lenz), and thus her counsel's notes about

6

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL
COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)

536799.01

1   those conversations fall squarely within the definition of attorney work product.

2        Indeed, the types of documents Universal seeks are not just classic work product, but

3   work product that is afforded the highest level of protection.  Although some work product can

4   be obtained upon a showing of substantial need and an inability to obtain its substantial

5   equivalent by other means, *see* Fed. R. Civ. P. 26(b)(3)(A)(ii), the standard applicable to work

6   product that reflects witness statements is far higher.  *Upjohn*, 449 U.S. at 401 (notes and

7   memoranda of witness statements "cannot be disclosed simply on a showing of substantial need

8   and inability to obtain the equivalent without undue hardship").  Instead, there must be a

9   showing that the attorney's "mental impressions [as opposed to the witness's statements] are *at*

10  *issue* in a case" and that "the need for the material is compelling."  *Holmgren v. State Farm Mut.*

11  *Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).  Neither is true here.

12       Whatever one might say about the potential relevance of Ms. Lenz's statements given

13  that the central issue in the case is *Universal's* decision to send a takedown notice (as opposed to

14  Ms. Lenz's response to that decision), Ms. Lenz's counsel's mental impressions of those

15  statements *that were not shared with her* are not at issue.  *See Holmgren*, 976 F.2d at 577.  At

16  most, Universal is entitled to inquire into communications Ms. Lenz had with counsel on waived

17  topics.  Because Universal can do so by questioning Ms. Lenz at her deposition, there is also no

18  "compelling need" to obtain work product summaries of those conversations as well.  *Id.*

19       "In performing his various duties, . . . it is essential that a lawyer work with a certain

20  degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."

21  *Hickman*, 329 U.S. at 510.  Attorneys must be free to "assemble information, sift what [they]

22  consider[] to be the relevant from the irrelevant facts, prepare [their] legal theories, and plan

23  [their] strategy without undue and needless interference."  *Id.* at 511. Granting Universal access

24  to attorney work product will uncover the sort of assembly, fact sifting, preparation and strategy

25  that the doctrine is designed to protect.

26       Second, Universal's demand for work product documents—not to mention its demand for

27  sanctions for Ms. Lenz's failure to produce them—is particularly inappropriate here, because

28  nowhere in its papers in support of its motion to compel, or in the meet and confer process that

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL
COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)

led to that motion, did Universal ever mention that it was seeking attorney work product. *See* Docket Nos. 297, 302; Kwun Decl. ¶ 5. Not surprisingly, then, nowhere in the Waiver Order, or in either party's briefs in connection with Universal's motion to compel, is there any discussion of the work product doctrine and the separate legal analysis that it requires.

Universal's attempt to expand Ms. Lenz's waiver of attorney-client communications into an expansive waiver of attorney work product is unwarranted both substantively and procedurally, and should be denied.

> **b.    An exhaustive search of counsel's records of communications with Ms. Lenz is needlessly duplicative.**

Ms. Lenz has produced all responsive communications between her and counsel. She did so by searching for and producing documents from her own email repositories. There is no reason to believe those repositories are incomplete, and in fact the evidence shows precisely the contrary.

Ms. Lenz's practice is to retain all of her email correspondence with counsel. Declaration of Stephanie Lenz ("Lenz Decl.") ¶ 4. This includes emails sent to her by counsel, and those she sends to counsel. *Id.* That email correspondence has been via two Gmail accounts, which means that her emails are stored on Google's servers, not her own computer. *Id.* ¶ 5. Ms. Lenz has given her attorneys full access to those accounts. *Id.* ¶ 6. Her attorneys have conducted an exhaustive search of those accounts. Kwun Decl. ¶ 8.

This search is precisely what Ms. Lenz told Universal, before the motion to compel was filed, that she would do in the event that the Court found there had been a waiver. At that time, Universal asked Ms. Lenz to stipulate that documents held by her attorneys were within Ms. Lenz's control. Kwun Decl., Ex. A. Ms. Lenz's counsel responded that "Ms. Lenz has retained her communications relevant to this case, including communications to and from counsel. Given this fact, I'm not sure there is any need to agree to anything regarding communications held by her current and former counsel." *Id.*, Ex. B. The filed stipulation included no reference to Ms. Lenz's counsel's files. *Id.*, Ex. C. Universal's filings in support of its motion to compel also made no mention of counsel's files. *See* Docket Nos. 297, 302.

By definition, Ms. Lenz was a party to any email communication between her and her attorneys. Because Ms. Lenz's practice is to retain those email communications with her attorneys, and because those communications are stored on Google's industrial-grade servers, there is no reason to believe there are any responsive communications between Ms. Lenz and counsel in counsel's possession that are not also in Ms. Lenz's email repositories. Indeed, during the meet and confer process that preceded the present motion, the attorney who has been Ms. Lenz's principal contact throughout this litigation, Corynne McSherry, searched her own files to see whether she could locate any responsive documents that were not in Ms. Lenz's email repositories. Declaration of Corynne McSherry ("McSherry Decl.") ¶ 11. That search, while not as exhaustive as a full document review, covered communications throughout this litigation. *Id.* She found *no* additional responsive documents. *Id.*

Ms. Lenz has conducted a thorough and diligent search for documents, and there is no basis in law or reason to require further duplicative efforts. Indeed, even where two sources of documents contain different but broadly similar information, it is within a court's discretion to limit discovery to only one source. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 686 (N.D. Cal. 2006) ("To borrow the Government's vivid analogy, in order to aid the Government in its study of the entire elephant, the Court may burden a non-party to require production of a picture of the elephant's tail, but it is within this Court's discretion to not require a non-party to produce another picture of the same tail." ). Where the two sources contain *identical* information, it is even more unproductive to require a second search. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (authorizing courts to limit requests for production where "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive."). The law does not require duplicative searches, especially where, as here, Universal has offered no basis other than unfounded speculation in support of its demand that Ms. Lenz search her counsel's files for communications with Ms. Lenz.

## 2. Ms. Lenz has produced all responsive documents, without regard to date.

Universal's next attempt to expand the Waiver Order is to claim that Ms. Lenz has applied a date restriction in her search for documents responsive to the Waiver Order. This is

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL
COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)

1    untrue.  Ms. Lenz has produced documents that relate to the specific topics for which a waiver

2    has been found.  The nature of those topics, such as the waiver about a specific legal conclusion

3    reached before the case was filed, means that responsive documents for the most part are limited

4    to certain time periods, but that merely reflects when the documents that fall within those

5    specific topics were created, not time limits now imposed by Ms. Lenz.  Thus, the cases relied

6    upon by Universal that discuss temporal restrictions are inapposite.  *See, e.g.*, Mot. at 14:24-16:3.

7           Regardless, this dispute applies only to a few narrow topics.

8           **a.     All documents about motive and the *Rossi* case have been produced.**

9           Ms. Lenz has produced documents about the motivations for pursuing this case without

10   regard to time.  *See, e.g.*, Kwun Decl., Exs. I & J (emails sent more than eight and sixteen

11   months, respectively, after this case was filed).  Universal's assertion that Ms. Lenz has limited

12   her production of "motivation" documents to the "pre-complaint period" (Mot. at 15:6-7) is

13   false.

14          Ms. Lenz has also produced all documents about *Rossi*, including documents about the

15   legal standard in that case, again without regard to time.  Universal's statement of facts notes that

16   the Waiver Order does not limit the *Rossi* documents by time (*id.* at 9:3-5), but Ms. Lenz has

17   never taken a contrary position.  Universal never raised any concerns about any time limitation

18   with respect to this topic when meeting and conferring about Ms. Lenz's production, Kwun Decl.

19   ¶ 21, and indeed its present motion makes no mention of this topic in the argument section of its

20   brief.  Regardless of what Universal may be trying to suggest in its statement of facts, there has

21   never been a dispute about the timeframe for the documents about *Rossi.*  All such documents

22   have been produced.  *Id.* There is no dispute on this topic requiring the Court's attention.

23          **b.     Ms. Lenz has correctly interpreted the Waiver Order with respect to
24          the remaining subject matter disputes: "publicity blitz," infringement
             and fair use.**

25          Three disputes about subject matter—which Universal tries to portray as disputes about

26   time—remain.  First, the parties dispute whether "publicity blitz" documents are responsive at all

27   when the waiver issue was *motive*, and, if they are, whether the relevant "publicity blitz" is the

28   one that accompanied the filing of the suit, or whether, as Universal claims, the subject matter

extends to all publicity about the case throughout the past three years.  Second, the parties dispute whether Ms. Lenz has waived privilege about coming to the conclusion that she did not infringe copyright (a conclusion that was reached before this case was filed), or whether, as Universal claims, the waiver extends to anything related to infringement.  Third, the parties dispute whether Ms. Lenz has waived privilege about any confusion she may have had when she posted her comment about fair use on her blog on June 12, 2007, or whether the waiver encompasses all communications about what claims she has or does not have in this case.

> (i)    The Waiver Order does not require production of "publicity blitz" documents that are not related to motive.

The Waiver Order, in a section entitled "Communications Regarding Plaintiff's Motivation for Pursuing the Action," held that "plaintiff has voluntarily waived the privilege as to communications with her attorney regarding the possible motives for bringing the action." Waiver Order (Klaus Decl., Ex. 1) at 4:18, 5:9-10.  Accordingly, to the extent that documents about publicity reveal possible motives (of Ms. Lenz or her counsel) for bringing the lawsuit, Ms. Lenz has produced them—not because they are about publicity, but because they are about motives.  *See, e.g.*, Kwun Decl., Ex. K (portions of draft press release discussing Ms. Lenz's reaction to Universal's takedown notice and statements from Ms. Lenz's attorneys about why Universal's conduct was unlawful).

Universal attempts to expand the waiver by arguing that because Ms. Lenz told her mother that one of the things that she was considering with her counsel was a "publicity blitz," it is entitled to all communications relating to publicity, regardless of context or relevance to Ms. Lenz's motives.  But the Court did not find that all communications related to publicity are also communications about Ms. Lenz's motives.  *See* Waiver Order (Klaus Decl., Ex. 1) at 4:18-5:15. At most, the Court suggested that Ms. Lenz's statement to her mother, made shortly after her first contact with EFF, that a "publicity blitz and/or lawsuit" might be coming soon showed that her counsel's motives and her own motives might be intertwined.  *See* Order Denying Relief from Waiver Order (Klaus Decl., Ex. 2) at 4:23-5:3.

Moreover, even if there were a waiver as to all "publicity blitz" documents, that waiver

would be limited to the particular publicity blitz that Ms. Lenz was referring to—the one that she said might occur at the time of the filing of the lawsuit, or in lieu of filing a lawsuit. *See* Kwun Decl., Ex. E; Lenz Decl. ¶ 8. Universal's argument is akin to someone claiming that, because there was a waiver wherein someone mentioned a meeting that occurred on a specific date, the waiver would reach all meetings that ever occurred. That is not a reasonable interpretation of the Waiver Order.

Specifically here, when the lawsuit was filed, EFF issued a press release. McSherry Decl. ¶ 5. Ms. Lenz and her counsel responded to press inquiries. Lenz Decl. ¶ 9; McSherry Decl. ¶ 6. As Ms. Lenz's counsel explained during the meet and confer process, there were several communications about publicity between Ms. Lenz and her counsel before the lawsuit was filed, and continuing on for a few days thereafter, but thereafter the communications about publicity in connection with the filing of the lawsuit ceased. Kwun Decl. ¶ 12; *see also* McSherry Decl. ¶ 6; Lenz Decl. ¶ 9. That was the specific "blitz" to which Ms. Lenz referred. Lenz Decl. ¶ 8.[2]

So even assuming "publicity blitz" documents unrelated to motive must be produced at all, that production must be limited to documents regarding the specific "blitz" of publicity that Ms. Lenz referred to—the one at the outset of the case.[3] Notwithstanding her belief that such documents are not responsive, Ms. Lenz attempted to avoid the need for wasteful motion practice by offering to produce such documents so long as Universal would not argue that this would be a selective waiver that would necessitate production of later publicity documents. Kwun Decl.

---

[2] Universal makes much of the publicity this case has received. There has been a fair amount of publicity, because the case raises newsworthy issues. But EFF has issued only two press releases about this case. McSherry Decl. ¶¶ 5-8. The first such press release was issued on the day the lawsuit was filed. *Id.* ¶ 5. EFF issued the second press release on July 15, 2008, nearly a year later. *Id.* ¶ 7. EFF has also "blogged" about the case twice since then. *Id.* ¶ 8. EFF has also "blogged" from time to time about issues related to those raised by Ms. Lenz's case, has occasionally commented on the case as an example of an improper takedown, has responded to press inquiries about the case, and has kept track of press mentions of the case. *Id.* ¶ 9.

[3] To be clear, impact litigation is commonly accompanied by publicity. *See* Harold Hongju Koh, *The "Haiti Paradigm" in United States Human Rights Policy*, 103 YALE L.J. 2391, 2401 (1994); Michael Ratner, *How We Closed the Guantanamo HIV Camp: The Intersection of Politics and Litigation*, 11 HARV. HUM. RTS. J. 187, 193 (1998).

¶¶ 14-15.[4]  When Universal refused to withdraw its selective waiver argument, Ms. Lenz suggested entering into a stipulation to address any alleged prejudice from any alleged selective waiver.  *Id.* ¶ 15.  Universal ignored this second proposal, and instead filed this motion.

In sum, the Waiver Order does not independently require the production of "publicity blitz" documents.  It does require the production of documents about the motives for filing suit, and those documents have been produced, including any documents related to publicity that bear on the motives for filing suit.  Even if the Waiver Order could be interpreted to require production of *all* "publicity blitz" documents, that production should be limited to documents discussing or referring to the specific "blitz" at the outset of the case, because that is what Ms. Lenz referred to in the email that created the waiver.

### (ii)   The Waiver Order does not require production of all communications about infringement or non-infringement.

In another instance of taking a specific reference and trying to turn it into a general waiver, Universal contends that all communications (and work product, *see supra* Part III.A.1.a) about "infringement or noninfringement" must be disclosed.  In the Waiver Order, the Court found that Ms. Lenz waived privilege when she told a reporter, "In discussing the situation with one of the EFF lawyers [in June 2007], we came to the conclusion that I did not infringe copyright and eventually we decided to file this lawsuit."  Waiver Order (Klaus Decl., Ex. 1) at 7:12-14; Kwun Decl, Ex. E.[5]

Universal's argument that the Waiver Order extends to *any* reference to infringement or non-infringement is a recent expansion and was not made in its motion to compel.  Indeed, even

---

[4] Under this proposal, Ms. Lenz would have searched all communications between Ms. Lenz and counsel for discussions about the initial publicity blitz—that is, the search would not be restricted to an early date range.  Not surprisingly, the discussions between Ms. Lenz and counsel about the initial publicity blitz all occurred around the beginning of this case, but again that is a fact about what documents exist, not due to an artificial time constraint on Ms. Lenz's search for documents.

[5] Universal has repeatedly argued that this means that Ms. Lenz and her lawyers did not "instantly" recognize her video as a fair use.  *See, e.g.*, Mot. at 9:13-16.  In point of fact, Ms. Lenz's lawyers required no lengthy consideration of whether her video was a fair use; in her first call with EFF after they had viewed the video, an EFF attorney told her it was a fair use.  Lenz Decl. ¶ 7.  At no time since have her attorneys suggested to her that there was any reason to reconsider the issue, or that they had any doubt about the conclusion they reached as soon as they viewed the video.  *Id.*

536799.01

1   the proposed order that Universal submitted in conjunction with its motion to compel would not

2   have ordered such a broad waiver.  Instead, Universal's proposed order directed the production

3   of documents reflecting "how Plaintiff and her counsel *came to conclude* . . . that her posting was

4   not an infringement of copyright."  Kwun Decl., Ex. H at 1:20-22 (Universal's Proposed Order,

5   Docket No. 297-1) (emphasis added).  If Universal believed the scope of waiver to be as broad as

6   it now argues, essentially encompassing all discussions of the legal issue of infringement

7   between Ms. Lenz and her counsel (and including work product) for the past three and a half

8   years, it should have said so in its initial motion.

9           In any event, Ms. Lenz has produced all communications between her and counsel about

10  the conclusion they reached in that early call.  Kwun Decl. ¶ 16.  There are no documents that

11  specifically discuss that conclusion, but documents that arguably implicitly refer to the

12  discussion (such as an email stating that EFF would like to file a lawsuit on Ms. Lenz's behalf),

13  have been produced.  *Id.* ¶ 16 & Ex. L.  Universal is of course entitled to question Ms. Lenz at

14  deposition about the conclusion she and her counsel reached, and to inquire into whether there

15  have been further discussions re-opening the topic, without regard to when those discussions

16  may have happened.  As Ms. Lenz's counsel has repeatedly explained to Universal's counsel,

17  she is not applying a time limitation to the subject matter of the waiver.

18          But the Waiver Order does not extend to all privileged documents that might reference

19  infringement or non-infringement throughout the life of this case.  It includes only those

20  documents that relate to Ms. Lenz's comment that she and her lawyers "*came to the conclusion*

21  that [Ms. Lenz] did not infringe copyright."  Waiver Order (Klaus Decl., Ex. 1) at 7:12-14

22  (emphasis added).  That conclusion was reached early in the case, and, unsurprisingly has not

23  been revisited in Ms. Lenz's discussions with counsel since, so there are no later documents to be

24  produced—again, because there are no such later documents, not because Ms. Lenz has

25  artificially restricted her search for documents by time.

26                        **(iii)    The Waiver Order does not require production of all
                                     communications about fair use.**

27          Universal makes a similar attempt to demand all communications (and attorney work

28

14

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL
COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)

536799.01

1    product, *see supra* Part III.A.1.a) about fair use, contending that Ms. Lenz has imposed an

2    artificial time limit with regard to her production of documents relating to her statement that hers

3    is "not a 'fair use' case at all." Mot. at 19:16-19. This is incorrect. Again, this is not a question

4    of imposing some external time limit, but instead a dispute as to the substantive scope of the

5    Waiver Order.

6         Initially, as is the case with respect to the "infringement" issue, Universal's own

7    proposed order submitted along with its original motion to compel sought only documents

8    relating to "how Plaintiff and her counsel *came to conclude* . . . that Plaintiff's was 'not a fair use

9    case at all' . . . ." Kwun Decl., Ex. H at 1:20-21 (emphasis added).[6] This language directly

10   contradicts Universal's position in this motion and confines the scope of the waiver to documents

11   about a particular statement Ms. Lenz made on June 12, 2007.

12        Notwithstanding its contrary position when it filed its original motion to compel,

13   Universal now argues that because the Waiver Order mentions "fair use," Ms. Lenz has waived

14   the privilege as to any and all communications relating to "whether her case is or is not a 'fair

15   use' case." *See* Mot. at 20:1-8. The terms of the Waiver Order, however, do not permit such a

16   broad interpretation and, as with "infringement," are referencing a specific statement made by

17   Ms. Lenz.

18        Universal claims that Ms. Lenz waived privilege simply by commenting on her blog on

19   June 12, 2007, "Mine's not a 'fair use' case at all." Mot. at 9:25-10:4; *see also* Kwun Decl., Ex.

20   D at 2 (blog post and comment). Nothing in the Waiver Order so states, and, indeed, nowhere in

21   that statement does Ms. Lenz say that her counsel told her that she didn't have a fair use case.

22   Ms. Lenz went on to state that she had "never heard of anything" like her case, and that was why

23   she approached EFF. Kwun Decl., Ex. D at 2. None of that reveals the substance of any

24   communication with EFF, either.

25        The finding of waiver can only be based on combining that statement with the statement

26   Ms. Lenz made at her deposition *about* this June 12, 2007 comment. Ms. Lenz testified, "At the

27

28   ───────────────

     [6] Ms. Lenz's counsel never concluded that her case is not a fair use case, and Ms. Lenz has no
     recollection why she made her June 12, 2007 comment.

─────────────────────────────────────────────
15

536799.01

1   time it may have been my opinion. It may have been I was misunderstanding what I'd been told

2   by counsel."  Kwun Decl., Ex. G at 285:16-18 (Lenz Depo.).  That is, the subject matter of the

3   waiver is whatever Ms. Lenz was told by counsel that she "may" have misunderstood at the time

4   she made her June 12, 2007 comment.  Ms. Lenz has produced all documents that fall within the

5   scope of that waiver.

6          First, Ms. Lenz has produced *all* of her communications with counsel or employees of

7   counsel prior to the June 12, 2007 comment.  At that time, Ms. Lenz had exchanged emails with

8   an EFF employee responsible for intake, and those emails have all been produced.  Kwun Decl.

9   ¶ 19.  She did not speak orally to anyone at EFF until *after* she made that comment. Declaration

10  of Marcia Hofmann ("Hofmann Decl.") ¶ 5.  Thus, Universal has the entire universe of

11  communications between Ms. Lenz and EFF that occurred before Ms. Lenz made her blog

12  comment.  To the extent that Ms. Lenz may have been confused when she made her blog

13  comment by something she was told by someone at EFF, Universal has those communications.[7]

14         Second, Ms. Lenz has also produced all communications *about* her June 12, 2007 blog

15  comment.  There are no emails that directly discuss the June 12, 2007 comment, but Ms. Lenz

16  has produced emails attaching draft documents that discuss the comment.  Kwun Decl. ¶ 17.

17         Third, there is another category of documents for which the Waiver Order might require

18  production, if any such documents existed.  If, when Ms. Lenz testified at deposition, she was

19  thinking of some particular communication with counsel, and thinking that perhaps on June 12,

20  2007 she was relying on a misunderstanding of that particular communication, Ms. Lenz would

21  likely have produced that particular communication.  For example, if Ms. Lenz's counsel had

22  sent her an email in 2008 that somehow related to whether she had a fair use case, it would

23  theoretically be possible that at her deposition Ms. Lenz could have been thinking of that 2008

24  email, and thinking that on June 12, 2007 she might have been relying on a misunderstanding of

25

26  [7] These communications all occurred on or before June 12, 2007, but that is not because of a time
    limitation imposed by Ms. Lenz.  It is because one cannot make a comment based on a
27  misunderstanding of something one has yet to be told.  If Ms. Lenz was confused when she made
    her June 12, 2007 comment, it could only have been confusion based on things she knew or had
28  heard as of June 12, 2007.

that 2008 email.  Ms. Lenz would have been wrong, because on June 12, 2007 she would yet to have received the 2008 email.  Nonetheless, if that had been what had happened, Ms. Lenz would have considered producing that 2008 email.  But that is not what happened.  In fact, as her testimony indicates, when Ms. Lenz testified at her deposition, she was speculating.  Kwun Decl., Ex. G (Lenz Depo.) at 286:21-22; *see also* Lenz Decl. ¶ 10.  She was not thinking generally or specifically about any communication that had actually happened.  Lenz Decl. ¶ 10.  She merely was speculating that, although she didn't recall why she made her June 12, 2007 statement, it *could* have been based on a misunderstanding of something she had been told by counsel, even though she did not actually have in mind anything that she was told by counsel that could have caused such a misunderstanding.  *Id.*  Thus, there are no responsive documents in this third category.

Ms. Lenz has produced everything that could conceivably be responsive to this part of the Waiver Order.

**B.    No *in camera* review of either *all* privileged documents or all redacted documents is warranted.**

Universal seeks *in camera* review of all documents withheld or redacted on the basis of privilege.  "*In camera* review is generally disfavored . . . [and] should not replace the effective adversarial testing of the claimed privileges and protections."  *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 700 (D. Nev. 1994).  At minimum, Universal must establish good cause to impose on the Court's resources, which it has failed to do.  As the Supreme Court has observed, granting *in camera* review risks "permit[ting] opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents."  *United States v. Zolin*, 491 U.S. 554, 571 (1989).  As explained below, Universal has failed to show good cause for *in camera* review, and is engaged in precisely the sort of "groundless fishing expedition[]" that the Supreme Court has cautioned against.  Its request should be denied.

**1.    Universal offers no credible basis for its speculation that Ms. Lenz has improperly redacted documents.**

Universal first asks the Court to "order Plaintiff to submit unredacted copies of all

17

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)

536799.01

redacted documents for *in camera* review." Mot. at 20:18-20. Universal has not shown good cause for such a review. It complains that the documents Ms. Lenz has produced are, in some cases, heavily redacted, and makes much of some redactions in mid-sentence. But such redactions are not surprising given that these are *communications with counsel*. Those communications are sometimes about a variety of topics, sometimes including more than one within the same sentence. While the Court has concluded that Ms. Lenz waived privilege on *some* topics, she has not waived privilege on *all* topics, and counsel has an obligation to maintain the privilege for all topics not waived.

As a result, Ms. Lenz is entitled to redact communications to the extent they discuss other, unwaived topics. Indeed, even in instances where the redacted communications are relatively mundane, Ms. Lenz has little choice but to redact. If she fails to redact communications about unwaived topics, Universal will doubtless argue that the failure to redact itself waives privilege further.

Moreover, Universal has failed to identify any reason to believe any of Ms. Lenz's redactions have been improper. After Ms. Lenz's December 1, 2010 document production, counsel for Ms. Lenz and Universal discussed the entire redaction log, item by item, in great detail. Kwun Decl. ¶ 10. Universal expressed objections to the redactions in five documents. *Id.* Without conceding that the original redactions were improper, Ms. Lenz agreed to remove the redactions to which Universal objected in four of the documents. *Id.* To the extent that the removal of the redactions was based on Ms. Lenz's agreement to apply a broader scope to the Waiver Order than she did in her initial production, she produced all additional documents responsive to that broader scope. *Id.* The redactions in the fifth document are related to publicity, and, as discussed above, the parties continue to dispute whether such documents are responsive. *Id.*

Ms. Lenz repeatedly asked Universal to identify any additional concerns it had about the redactions. *Id.* ¶ 11. Universal never identified any further concerns. *Id.* Similarly, prior to this motion, Universal did not identify *any* concerns about the redactions listed in Ms. Lenz's amended and supplemental redaction log, which accompanied her supplemental production on

18

December 10, 2010.  *Id.* ¶ 20.

In response to the Waiver Order, Ms. Lenz produced 38 documents with redactions. During the extensive meet and confer process, Universal objected to redactions in only *five* of these documents.  *Id.* ¶¶ 10-11.  Ms. Lenz *agreed* to remove four of the only five redactions Universal has ever complained about.   She decline to agree to the fifth in light of the ongoing dispute over whether the Waiver Order requires production of all "publicity blitz" documents.

In its motion, Universal identifies *two* documents that it claims contain improper redactions.  Klaus Decl., Exs. 11, 15.  One of these is one of the very documents for which Ms. Lenz has now *removed* the contested redaction.  Klaus Decl., Ex. 12.  The other is an email string that, as Ms. Lenz's redaction log indicates, was about document collection.  *Id.*, Ex. 19 at 2.  Among other things, Ms. Lenz told her attorney that she could get her the credit card statement for a hard drive she had bought.  *Id.*, Ex. 15.  This statement was produced because Universal has taken the position that documents that relate to Ms. Lenz's claimed damages relate to her motives, and Ms. Lenz has claimed the cost of that hard drive as part of her damages. Universal is not, however, entitled to all communications about document collection.  Indeed, if Ms Lenz produced this document in unredacted form, Universal would no doubt argue that although it may not have been entitled to all documents about document collection before, it now is, because Ms. Lenz should not be allowed selectively to waive privilege.

Universal has offered no good cause in support of its request that the Court engage in an *in camera* review of all documents Ms. Lenz has produced with redactions.

**2.      Universal's demand for *in camera* review of all documents being withheld on the basis of privilege lacks any basis.**

Universal's demand for *in camera* review of redacted documents, though without merit, is at least limited to a relatively small number of documents.  Its further demand for *in camera* review of all documents "withheld" is, to be clear, a demand that the Court individually review every communication between Ms. Lenz and her counsel.

This case has been pending for three and a half years.  The Waiver Order is limited to a few topics.  The communications between Ms. Lenz and her counsel that are *not* covered by the

19

536799.01

Waiver Order are voluminous.  Universal's demand is breathtaking, lacks any factual or legal basis, and should be denied.

**C.     Universal has failed to show by clear and convincing evidence that Ms. Lenz violated a specific and definite order.**

Ms. Lenz has complied with the terms of the Waiver Order and has made several offers aimed at accommodating Universal while not further waiving privilege—such as offering documents subject to an agreement that the documents won't be used as a basis to claim a further waiver or as a basis to claim that the documents were properly subject to the Waiver Order to begin with—that Universal has refused.  Ms. Lenz even offered to bring a motion for clarification on the "publicity" question where the parties had a disagreement about interpreting the language of the Waiver Order.  There is simply no basis here to hold Ms Lenz in contempt.  Indeed, it is troubling that Universal even has moved for a finding of contempt on these facts.

The Ninth Circuit has held that civil contempt in this context "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."  *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).  To "support a contempt motion, the order alleged to have been disobeyed must be sufficiently specific."  *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) (citing *Int'l Longshoremen's Assoc., Local 1291 v. Phila. Marine Trade Assoc.*, 389 U.S. 64, 76 (1967)).

In contrast, "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the" court's order.  *In re Dual-Deck*, 10 F.3d at 695 (internal quotation marks omitted).  "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence."  *Id.*

This situation is a far cry from that high standard.  Ms. Lenz did not disobey the Waiver Order—to the contrary she made a concerted, good faith effort to comply, producing hundreds of pages of documents.  Her interpretation of the Waiver Order is correct, or at a minimum is a good faith and reasonable interpretation, and she has attempted numerous ways to reach a

20

compromise with Universal about the remaining disputes.

Universal likewise is not entitled to any sanctions.[8]  Universal relies only on its claim of contempt as its basis for seeking sanctions and attorneys' fees.  Accordingly, if contempt is not found—and, for the reasons just discussed, contempt should not be found—Universal's demand for sanctions must be denied.  And even if Universal had sought sanctions on some other basis, they would not be warranted.  At the very least, there is a good faith dispute about the scope of the Waiver Order and Ms. Lenz's resulting obligations.  That, coupled with Ms. Lenz's counsel's obligation to preserve attorney-client privilege where it has not been waived, is a substantial justification for any alleged failure by Ms. Lenz to comply with the Waiver Order.  *See* Fed. R. Civ. P. 37(b)(2)(C); *see also Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981) ("a good faith dispute concerning a discovery question might, in the proper case, constitute 'substantial justification'" under Rule 37); *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994) (same).

Ms. Lenz has not acted in contempt, the sole basis Universal has argued in support of its argument for sanctions.  Even if Universal had sought sanctions on some other basis, they are not warranted.  The Court should deny Universal's request that Ms. Lenz be found to be in contempt and ordered to pay sanctions.

---

[8] Universal's request for sanctions is included as part of its motion to find Ms. Lenz in contempt, to compel compliance with the Waiver Order, and for *in camera* review.  The Court can summarily deny Universal's request for sanctions based on its failure to seek such sanctions by way of a "separately filed" motion.  *See* Civil L.R. 7-8(a) (requiring "separately filed" motion for "[a]ny motion for sanctions, regardless of the sources of authority invoked").

536799.01

1

### IV.    CONCLUSION

2        For the foregoing reasons, Universal's motion should be denied.

3    Dated:  January 4, 2011                          KEKER & VAN NEST LLP

4

5

6                                         By:    /s/Michael S. Kwun
                                              ASHOK RAMANI
7                                             MICHAEL S. KWUN
                                              ANDREW F. DAWSON
8                                             Attorneys for Plaintiff
                                              STEPHANIE LENZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO UNIVERSAL'S MOTION TO FIND PLAINTIFF IN CONTEMPT, TO COMPEL
COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS
CASE NO. C 07-03783-JF (HRL)