1    KELLY M. KLAUS (SBN 161091)
     Kelly.Klaus@mto.com
2    MELINDA E. LEMOINE (SBN 235670)
     Melinda.LeMoine@mto.com
3    MUNGER, TOLLES & OLSON LLP
     355 South Grand Avenue
4    Thirty-Fifth Floor
     Los Angeles, CA  90071-1560
5    Telephone:    (213) 683-9100
     Facsimile:    (213) 687-3702
6
     Attorneys for Defendants
7    UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
     PUBLISHING, INC. and UNIVERSAL MUSIC
8    PUBLISHING GROUP

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12   STEPHANIE LENZ,                    CASE NO.  C 07-03783 JF (HRL)

13            Plaintiff,                **PUBLIC REDACTED NOTICE OF
                                        MOTION AND MOTION TO FIND
14        vs.                           PLAINTIFF IN CONTEMPT FOR
                                        VIOLATION OF OCTOBER 22, 2010
15   UNIVERSAL MUSIC CORP.,             ORDER, TO COMPEL COMPLIANCE
     UNIVERSAL MUSIC PUBLISHING,        AND IN CAMERA REVIEW, AND FOR
16   INC. and UNIVERSAL MUSIC           SANCTIONS; MEMORANDUM OF
     PUBLISHING GROUP,                  POINTS AND AUTHORITIES IN
17                                      SUPPORT THEREOF**
              Defendants.
18                                      [Declaration of Kelly M. Klaus, [Proposed]
                                        Order, Application to Seal, and [Proposed]
19                                      Order Granting Application to Seal filed
                                        concurrently]
20
                                        Date:    January 25, 2011
21                                      Time:    10:00 a.m.
                                        Crtrm:  2, Fifth Floor (Hon. Howard R. Lloyd)
22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.  BACKGROUND ................................................................................................. 3

    A.   Plaintiff's Lawsuit ..................................................................................... 3

    B.   Plaintiff's And EFF's Continuous Efforts To Publicize The Case ........................ 5

    C.   Plaintiff's Adjudicated Waiver Of Privilege............................................. 6

        1.   Communications Regarding Plaintiff's Motivation For Pursuing This Litigation, Including Her Counsel's Desire to Generate a "Publicity Blitz" ................................................................................ 6

        2.   Communications Regarding Legal Strategies........................................... 8

        3.   Communications Regarding The Substance Of Plaintiff's Factual Allegations ................................................................................. 9

    D.   Plaintiff's Failure To Comply with This Court's Order........................... 11

III. ARGUMENT .................................................................................................. 13

    A.   Plaintiff Should Be Found In Contempt for Violating the Court's October 22, 2010 Order ................................................................................ 14

    B.   Plaintiff's Subject Matter Waivers Extend To *All* Communications On The Waived Subjects, And Are Not Limited By Time ............................ 14

    C.   The Court Should Order Plaintiff To Search Counsel's Files Immediately For Responsive Communications ...................................... 16

    D.   Plaintiff's Time Limitation on the Publicity Motive for Pursuing The Lawsuit Is Artificial and Unjustified .................................................. 18

    E.   Plaintiff Must Produce Responsive Communications Regarding Her Core Allegations Without Imposing An Artificial Time-Limit................................. 19

    F.   The Court Should Order Immediate *In Camera* Of All Of Plaintiff's Redacted Or Withheld Documents........................................................ 20

    G.   The Court Should Sanction Plaintiff ...................................................... 20

IV.  CONCLUSION .............................................................................................. 22

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Chiron Corp. v. Genentech, Inc.*,
   179 F. Supp. 2d 1182 (E.D. Cal. 2001)................................................................................. 16

*Cobell v. Babbitt*,
   37 F. Supp. 2d 9 (D. D.C. 1999) ............................................................................... 14, 21

*EEOC v. Rekrem, Inc.*,
   2002 WL 27776 (S.D.N.Y. Jan. 10, 2002)......................................................... 15, 16

*Grove Fresh Distribs. v. John Labatt, Ltd.*,
   299 F.3d 635 (7th Cir. 2002)................................................................................. 14

*In re Crystal Palace Gambling Hall, Inc.*,
   817 F.2d 1361 (9th Cir. 1987)............................................................................... 14

*In re Heritage Bond Litig.*,
   223 F.R.D. 527 (C.D. Cal. 2004) .......................................................................... 21

*Keithley v. Home Store.com, Inc.*,
   2008 WL 3833384 (N.D. Cal. Aug. 12, 2008).......................................................... 21

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
   765 F. Supp. 611 (N.D. Cal. 1991) ............................................................. 14, 15, 19

*Mixt Greens v. Sprout Cafe*,
   2010 WL 2555753 (N.D. Cal. June 21, 2010) ......................................................... 21

*NLRB v. A-Plus Roofing, Inc.*,
   39 F.3d 1410 (9th Cir. 1994)................................................................................. 14

*Rossi v. MPAA*,
   391 F.3d 1000 (9th Cir. 2004)............................................................................. 5, 8

*Smith v. Alyeska Pipeline Service Co.*,
   538 F. Supp. 977 (D.Del. 1982), aff'd, 758 F.2d 668 (Fed. Cir. 1984) ................... 15

*SNK Corporation of America v. Atlus Dream Entertainment Co.*,
   188 F.R.D. 566 (N.D. Cal. 1999)........................................................................... 15

*Weil v. Investment/Indicators, Research & Mgmt.*,
   647 F.2d 18 (9th Cir. 1981)................................................................................... 14

*Westinghouse Elec. Corp. v. Newman & Holtzinger P.C.*,
   992 F.2d 932 (9th Cir. 1993)................................................................................. 14

## STATUTES AND RULES

17 U.S.C. § 107 ..................................................................................................... 9

17 U.S.C. § 512(f).......................................................................................... 4, 5, 8, 9

Fed. R. Civ. P. 26(b)(3)(A)(ii) ........................................................................... 2, 18

Fed. R. Civ. P. 37(b) ........................................................................................ 14, 21

**NOTICE OF MOTION AND MOTION**

**TO PLAINTIFF AND HER COUNSEL OF RECORD: PLEASE TAKE NOTICE**

that on January 25, 2011, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned Court, located at 280 South First Street, San Jose, California, 95113, Defendants Universal Music Corp., Universal Music Publishing, Inc. and Universal Music Publishing Group ("Defendants" or "Universal") will and hereby do move the Court for an Order [1] compelling Plaintiff to comply in full with the Court's October 22, 2010 Order, Doc. No. 334; [2] ordering Plaintiff to submit for immediate *in camera* review documents that Plaintiff continues to redact or withhold based; [3] for a finding of contempt against Plaintiff for failing to comply with the Court's Order; and [4] for sanctions against Plaintiff for Universal's attorneys' fees and costs incurred in pursuing this Motion.  Universal reserves the right to seek evidentiary or further sanctions at an appropriate juncture in this case.

This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities set forth below; the accompanying Declaration of Kelly M. Klaus ("Klaus Decl.") and all exhibits thereto; all pleadings and documents on file in this action; and such other materials or argument as the Court may properly consider prior to deciding this Motion.  As set forth in the Klaus Declaration, Universal attempted to resolve this issue without the need for Court intervention, Fed. R. Civ. P. 37, Civil L.R. 37-1(a), but those efforts have been unsuccessful.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

In response to Universal's motion to compel, the Court Ordered Plaintiff to produce ***all*** privileged communications covering three broad categories of topics.  This Order was not limited to specific communications or a specific time period.  Rather, it covered the entirety of the waived subject matters and it covered the entire time of Plaintiff and counsel's relationship. Instead of complying with the Order, Plaintiff has imposed artificial limitations on what she will produce, adopted incredibly narrow definitions of the subjects on which she was held to have waived the privilege (even though the Court identified the subject matters in its Order), and

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

restricted the time period covered by the Court's Order.  Worse, Plaintiff has flat out refused to search the files of the three law firms that have represented her, opting instead to produce only those documents that Plaintiff retained in her own files.  Such a narrow search of course misses everything that Plaintiff did not save, as well as all internal law firm documents where Plaintiff's myriad of lawyers discussed communications with Plaintiff regarding the waived subjects.

Given Plaintiff's crabbed and unjustified interpretation of the Court's Order, and her refusal to search all files known to have responsive information, it comes as little surprise that Plaintiff has produced a shockingly small number of documents.  Although this case has been pending for more than *three years*, Plaintiff has produced *fewer than 80* documents (including filed pleadings) withheld based on a privilege claim.  Plaintiff's attempt to excuse away this deficient production has been that, at least as to the narrow subjects she will acknowledge are covered by the Order, Plaintiff and her lawyers have not communicated in writing.[1]  Plaintiff's explanation that she and her lawyers have been careful not to record their communications in writings to and from each other simply underscores the need for Plaintiff to review her counsel's files for documents that reflect what Plaintiff and her lawyers said to each other on the waived subjects.  Plaintiff's counsel claims that any such recording of what they and their client said to each other is necessarily intertwined with "work product" that counsel say they did not communicate to Plaintiffs.  But there is no way that counsel could make such a categorical assertion, particularly when they have refused to search their own files for even one such communication.  And in all events, Plaintiff's counsel fails to recognize that not all material claimed to be work product is immune from discovery.  *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).

There is even more to Plaintiff's recalcitrance in complying with the Court's Order.  Even as to the limited number of documents Plaintiff has grudgingly produced, the documents are riddled with redactions—many of which excise words within the middle of sentences, and that make her production look more like a child's attempt at a cut-out doll than a good faith attempt to comply with a Court Order.  For example, Plaintiff produced a document that looked like this:

---

[1] Plaintiff admits that, with respect to some categories of waived communications, she is avoiding the review and possible production of hundreds of communications.

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

Klaus Decl. Ex. 15 (P-E_003375).

The Court's Order compelling production is clear.  So, too, is Plaintiff's refusal to comply with that Order.  Universal must ask this Court to intervene.

## II.    BACKGROUND

### A.    Plaintiff's Lawsuit

This case involves an allegation by Plaintiff that Universal sent a knowingly false takedown notice to YouTube that led to the temporary removal of Plaintiff's admittedly infringing posting of a video on that site.  Specifically, in June 2007, Universal sent YouTube a notice requesting that YouTube remove more than 200 postings to the site that made unauthorized uses of musical compositions by the artist professionally known as Prince.  Universal administers the copyrights to Prince's compositions; Prince does not wish for his compositions to be used in timed synchronization to videos posted to YouTube without his authorization; and, given the popularity of Prince's music and the exponential proliferation of videos on YouTube, Universal has requested the removal of literally thousands of unauthorized postings, almost none of which has led to any objection or request for put-back.

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1    One of the hundreds of items on the June 4, 2007 list was Plaintiff's posting, entitled

2    "'Let's Go Crazy' #1."  This posting uses Prince's famous composition of the same name (adding

3    to it only the "#1") as the soundtrack for two children frenetically zooming around a kitchen in

4    time with the music.  YouTube removed the posting (along with the others in the notice) but

5    restored it within a matter of weeks after Plaintiff sent YouTube a counter-notification, which is

6    exactly what YouTube's terms of service specify should happen when someone disagrees with a

7    takedown notice.  Plaintiff's posting has been up and running on YouTube since July 2007, and to

8    date it has been viewed over a million times.  *See* www.youtube.com/watch?v=N1KfJHFWlhQ.

9    The entire episode from takedown to put-back cost Plaintiff not even one penny's worth of

10   damages.  In fact, Plaintiff confided to a friend shortly after the takedown:  "I don't care that

11   YouTube doesn't want to host it [my video].  Not like I'm paying them."  Doc No. 325-4.[2]

12   The matter should have ended with the simple restoration of Plaintiff's video, but it did

13   not because the Electronic Frontier Foundation ("EFF") decided that the case of Plaintiff's

14   takedown would make an excellent vehicle for trying to change the legal standards and public

15   debate regarding the sending of takedown notices.  Among other things, EFF filed a complaint on

16   Plaintiff's behalf, alleging that Universal had violated 17 U.S.C. § 512(f).  Section 512(f)

17   provides a claim for damages actually suffered as the result of a service provider relying on a

18   knowingly false takedown notice sent pursuant to the DMCA.  Plaintiff's complaint alleged that

19   Universal had violated this statute because it "knew *or should have known*"—*i.e.*, Universal was

20   negligent in failing to recognize—that Plaintiff's "Let's Go Crazy" posting made what the

21   complaint called a "self-evident" fair use of the copyrighted work.  Doc. No. 5 at ¶¶ 18–19

22   (emphasis added).  Plaintiff made this allegation even though Universal's notice to YouTube

23   stated quite clearly that it was not being sent pursuant to the DMCA, Doc. No. 12-2, at 18; even

24

---

25   [2] Plaintiff improperly withheld this communication (and many others) for well over a year, based
     on the specious claim that this was a privileged communication, because the friend to whom she
26   made this damning admission had gone to law school in Canada—but had never passed the Bar,
     much less ever practiced law.  Judge Seeborg rejected this privilege claim in an earlier ruling and
27   ordered Plaintiff to produce multiple communications with similarly embarrassing admissions.
     *See* Doc. No. 150, at 3–4.  For instance, communications reflecting that Plaintiff's friend told her
28   that "using copyrighted music as background music *is* copyright infringement."  Doc. No. 325-22.

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1   though the Ninth Circuit's controlling case on § 512(f) holds there is no claim under that statute

2   unless the party sending the notice had *actual knowledge* that it was making a material

3   misrepresentation in the notice, *Rossi v. MPAA,* 391 F.3d 1000, 1004-05 (9th Cir. 2004); even

4   though there is not and never has been in the history of copyright law such a creature as a "self-

5   evident" fair use; and even though, as discussed, YouTube's temporary removal of Plaintiff's

6   posting did not result in any actual damage to Plaintiff.  Plaintiff further alleged that she was

7   "injured substantially and irreparably" by the takedown notice, including injury to "her free

8   speech rights under the First Amendment."  Second Am. Compl. (Doc. No. 34) ("SAC") ¶ 38.

9         The District Court dismissed (without prejudice) Plaintiff's original complaint but held

10   that her amended complaint stated a claim under § 512(f).  In particular, the Court held that

11   Plaintiff's allegation that "Universal sent the DMCA notice at Prince's behest, based not on the

12   particular characteristics of [Plaintiff's 'Let's Go Crazy' posting] or any good-faith belief that it

13   actually infringed a copyright," SAC ¶ 31, was sufficient to make out a claim that Universal knew

14   its notice were false.  *See* Doc. No. 45, at 8.  Universal also argued that the Court should dismiss

15   the amended complaint on the ground that Plaintiff had suffered no damages, but the denied that

16   aspect of the motion as well.  *See id.* at 8–9.

17         **B.       Plaintiff's And EFF's Continuous Efforts To Publicize The Case**

18         Plaintiff and her lawyers have not only tried to win a case in a federal court, but have tried

19   to use this case to win hearts and minds in the court of public opinion.  They have done this in

20   coordinated action with each other since the filing of this lawsuit.  Lenz and her counsel gave

21   interviews to numerous news outlets, *see, e.g.*, Klaus Decl. Ex. 4; made television and radio

22   appearances, *see* Doc. No. 12-3, Exs. G–H; and issued press releases, *see id.* Exs. I–J.  These

23   activities did not cease, however, with the filing of Lenz's complaint.  Indeed, EFF's "publicity

24   blitz" continues into the present.  *See* Klaus Decl. Ex. 3.  EFF's own most recent press release on

25   the case, from October 2010, celebrates the "great deal of media coverage" Plaintiff and EFF

26   have achieved, linking to interviews or mentions in Wired News, MSNBC, Reuters, and the San

27   Francisco Chronicle from February 2008 to the present.  *Id.*; *see id.* Exs. 4–7.

28

- 5 -

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

None of this press attention has been accidental.  It has been part of a carefully coordinated strategy between EFF and Plaintiff.   Documents indicate that EFF carefully planned Plaintiff's publicity appearances, putting Plaintiff under the guidance of EFF's dedicated "Media Coordinator."  *See* Klaus Decl. Ex. 8.  All of this is standard operating procedure for EFF, which boasts that it not only is a law firm but also a public policy organization that believes copyright owners "are trying to dumb down technology to serve their 'bottom lines' and manipulate copyright laws[.]"  *See* Doc. No. 12-2, Ex. E.  EFF has proclaimed that it wants to use "[t]he risk of substantial damages and fees" to make "companies pause before sending unfounded copyright threats."  *See* Doc. No. 12-2, Ex. F.

### C.   Plaintiff's Adjudicated Waiver Of Privilege

Plaintiff has not limited her public comments about the case to public matters, such as what her video posting showed or what the Court's rulings have been.  Plaintiff also has disclosed repeatedly—in emails to friends and family, Gmail "chats," and on her personal "blog" (www.piggyhawk.wordpress.com)—the *substance* of what she and her lawyers have discussed regarding this case, her allegations, and their coordinated press strategy.

In light of Plaintiff's repeated disclosures, Universal filed a motion to compel discovery of Plaintiff's communications with her attorneys on related subject-matters.  On October 22, 2010, Magistrate Judge Trumbull entered an Order holding that Plaintiff had waived the privilege with respect to three categories of information.  Klaus Decl. Ex. 1 (Oct. 22 Order).  The court ordered Plaintiff to produce these documents by November 8, 2010.  *Id.* at 8.  The Order further requires Plaintiff to appear for deposition following the completion of her document production.  *Id.*

Plaintiff filed objections to the ruling before Judge Fogel.  On November 17, 2010, Judge Fogel denied in its entirety Plaintiff's motion to set aside the October 22 Order.  Klaus Decl. Ex. 2 (Nov. 17 Order).  The documents Plaintiff has been ordered to produce include the following:

### 1.   Communications Regarding Plaintiff's Motivation For Pursuing This Litigation, Including Her Counsel's Desire to Generate a "Publicity Blitz"

The first category as to which Plaintiff waived privilege encompasses any communications about what the actual motives and objectives are for the pursuit of this lawsuit.

1   The pertinent motives are not just Plaintiff's but also those of her lawyers, and they include both

2   of their work in pursuing a "publicity blitz" around this case.  Klaus Decl. Ex. 1 (Oct. 22 Order),

3   at 4.  The Order sets forth absolutely no time limitation for this (or any other) category of subject

4   matters as to which the privilege has been ordered waived, which of course makes perfect sense

5   since a subject matter wavier extends to all communications regarding that subject matter

6   regardless of when the communication occurred.

7        The instances of Plaintiff's waiver that led to the Court's Order, and their relevance to the

8   issues in this case, show why there is not and cannot be any time limit on Plaintiff's waiver.

9   Plaintiff has maintained throughout this litigation—and no doubt will continue to do so when she

10  testifies at trial—that she filed this lawsuit in order to obtain recompense for purported damages,

11  including, as she puts it, a chill on her claimed "First Amendment" right of free expression.  *See*

12  SAC ¶ 38; Doc. No. 293-1 (Plaintiff's 3d Supp. Rule 26(a) Disclosures) at ¶ 2.

13       Plaintiff's communications with third parties, however, reveal that she and her counsel

14  had other motivations for pursuing this litigation, including her counsel's desire to "get[] their

15  teeth into UMG [Universal Music Group]" regarding its sending of takedown notices.  Just days

16  after Universal sent its notice, Plaintiff recounted in an email to a friend a conversation she had

17  had with a lawyer from the EFF:

18           They [EFF] are very, very interested in the case.  I imagine so.  I've
             never heard of anything like it.  She [EFF lawyer Marcia Hoffman[3]]
19           said that Universal Music Group is creating a trend of just going all
             over the web claiming copyright infringement left & right & that
20           they're breaking laws & such to do it.  **So EFF is pretty well
             salivating over getting their teeth into UMG yet again**.
21
22  *See* Doc. No. 293-3 (emphasis added).

23       Likewise, in her blog, Plaintiff wrote:

24           Today I got an e-mail from someone at EFF.  He asked some
             questions, asked to see the correspondence from YouTube, asked to
25           see the video, etc.  I forwarded everything to him and explained that
             I'm sensitive to copyright issues and have some knowledge on the
26           topic . . . .  The letter [from EFF] seemed to have the tone of "this
             sounds familiar and is something we're interested in talking about."
27  _____
    [3] At deposition, Plaintiff admitted that she was referring in this email to a conversation she had
28  with EFF attorney Marcia Hoffman.  Doc. No. 293-2 at 203:17-22.

NOTICE OF MOT. & MOT. FOR CONTEMPT
                                           CASE NO. CV-07-03783

1    Doc. No. 293-6.

2           In an email exchange with her mother, Plaintiff disclosed that, while she could not "say

3    much," she could say that EFF was planning to use what had happened to her posting as the basis

4    for a "*publicity blitz and/or a lawsuit against Universal*."  Doc. No. 293-4 (emphasis added).

5           Together, the disclosed communications tell part of the story that Plaintiff and her lawyers

6    have actively disclosed using this case and Plaintiff's allegations as a vehicle for generating a

7    "publicity blitz," and that such a blitz has motivated not only Plaintiff but also her counsel (who

8    are handling this case on a *pro bono* basis).  The October 22 Order compels Plaintiff to produce

9    all withheld communications concerning this and other motivations for the pursuit of this lawsuit.

10   And the Order does not include any time limitation on the scope of the subject matter waiver.

11                  **2.        Communications Regarding Legal Strategies**

12          The October 22 Order also holds that Plaintiff has waived privilege regarding legal

13   strategies in connection with her and her counsel's discussions of the mental-state standard for a

14   claim under § 512(f), particularly with respect to their discussions about the Ninth Circuit's *Rossi*

15   standard.

16          As discussed above, *Rossi* holds that a violation of § 512(f) requires a showing that a party

17   sending a takedown notice *actually knew* that it had made a false, material statement in the notice.

18   concerning Plaintiff's posting.  *Rossi,* 391 F.3d at 1004–05.  Plaintiff and her counsel, however,

19   want the Court in this case to apply an entirely different standard, and to find Universal liable on

20   the ground that it "knew or *should have known*" its notice to YouTube was incorrect.  SAC ¶ 36.

21          Plaintiff has repeatedly disclosed in communications with third parties the substance of

22   her communications with counsel about using her case to try to change the mental-state standards

23   that govern a § 512(f) claim.  Plaintiff revealed in a "Gmail Chat" with a friend in April 2008

24   (just three days after the Court dismissed her first amended complaint) that she was motivated to

25   maintain her federal claims because "a ruling in our case could clarify a cloudy decision known

26   as *Rossi*." Doc. No. 293-7, at 1 (emphasis added).  Plaintiff relayed the substance of these

27   discussions with counsel in another "Gmail Chat" with another friend on the same day.  Doc. No.

28

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

293-8 ("we want them to admit the DMCA notice was (1) a DMCA notice and (2) false.  *Plus we want to clarify Rossi*") (emphasis added).

Given this clear waiver of discussions concerning the mental-state standard under § 512(f), the October 22 Order holds that Plaintiff must produce such communications.  Once again, the Order is *not* limited by time period.

### 3.    Communications Regarding The Substance Of Plaintiff's Factual Allegations

The third category of waiver encompasses privileged communications concerning three different types of allegations that Plaintiff has pursued throughout this case.  Klaus Decl. Ex. 1 (Oct. 22 Order) at 6–7.

First, Plaintiff waived privilege concerning discussions she has had with her counsel about whether her posting infringed copyright.  As noted, Plaintiff's complaints in this case all have alleged that Plaintiff's use of "Let's Go Crazy" in her YouTube posting "is a self-evident non-infringing fair use under 17 U.S.C. § 107."  SAC ¶ 34.  Plaintiff, however, revealed in communications with third parties that she and her lawyers did not instantly recognize her posting to be a "self-evident" fair use:

> [Reporter from "Zerogossip.com"]:  You contacted the Electronic Frontier Foundation.  What are you hoping for?
>
> [Plaintiff]:  When I contacted EFF, I did so at the suggestion of a friend of mine who's a lawyer in Canada.  I wanted to know my rights, how to protect myself in case UMPG sued me and in what way (if any) I had infringed copyright.  *In discussing the situation with one of the EFF lawyers, we came to the conclusion that I did not infringe the copyright and eventually we decided to file this lawsuit.*

Doc. No. 293-11, at 3 (emphasis added).

Second, and relatedly, Plaintiff waived the privilege regarding her discussions with counsel about what type of claims she has or had, including any claim based on her posting being a "self-evident" fair use.  This waiver stems from two sources.  On June 12, 2007, Plaintiff made an extended blog posting regarding her contact with EFF about her case.  This is the same "blog" posting wherein Plaintiff revealed the substance of some of her earliest communications with EFF.  One of Plaintiff's readers posted a comment, questioning whether Plaintiff actually could

actually support her burden of showing that her use was a fair use.  Doc. No. 293-6 (posting by RichardZ.com).  In response, Plaintiff wrote:  "You're right Richard.  *Mine's not a 'fair use' case at all*.  Nor is it a parody.  *It's something different.  I've never heard of anything like it, which is why I contacted EFF*."  *Id*. at 2 (emphasis added).  Plaintiff's statement to "Richard Z" obviously was disclosing the substance of her communications with EFF about what type of case she had (and did not have).  It is contained in the same "blog" discussion wherein Plaintiff is describing her communications with EFF, and the "mine's not a 'fair use' case at all" and "It's something different" can only come from communications with counsel.  The second source of waiver concerning this statement arose at Plaintiff's deposition, wherein Plaintiff let slip what is obvious from the blog posting, namely, that "mine's not a 'fair use' case at all reveals Plaintiff's discussions with EFF.  At deposition, Universal asked Plaintiff what she meant by this statement.  Plaintiff responded:  "At the time it may have been my opinion.  *It may have been I was misunderstanding what I'd been told by counsel*."  Doc. No. 293-2 at 286:12-14 (emphasis added).  Plaintiff's counsel thereafter blocked any attempt by Universal to discover the substance of what Plaintiff and her counsel had discussed.  *See* Doc. No. 297 at 9–10.  Based on these disclosures, Magistrate Judge Trumbull held the privilege waived concerning any discussions on the subject of whether Plaintiff's case is (or is not) "a 'fair use' case"; again, the waiver was not limited as to any time.

Third, Plaintiff waived the privilege with regards to her allegation that Prince was responsible for Universal's decision to send a notice of infringement regarding her YouTube video.  In an April 2008, "Gmail Chat" with a friend, she told the friend:

> you'll love the brief my lawyer wrote up, once it's a finished public document . . . She's really going after UMPG & now Prince is the villain as well.  Our lawsuit was filed before we knew he had a hand in it.  Now she's kind of hinting that they're doing this b/c Prince bullied them into it and that there's been ample public proof that he wants everyone targeted, no matter whether they're actually guilty of anything.  It's delicious.

*See* Klaus Decl. Ex. 1 (Oct. 22 Order) at 7.  Based on this disclosure, Magistrate Judge Trumbull held that Plaintiff waived the privilege with regards to her related allegations, namely that "Prince

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1    himself demanded that Universal seek the removal" of her video, and that Universal thus sent the

2    notice of infringement to YouTube "at Prince's behest."  SAC ¶ 31.

3            **D.       Plaintiff's Failure To Comply with This Court's Order**

4            Magistrate Judge Trumbull ordered Plaintiff to produce documents in all of the foregoing

5    categories no later than November 8.  *See* Klaus Decl. Ex. 1 (Oct. 22 Order) at 8.  The District

6    Court rejected Plaintiff's appeal of that Order on November 17.  In accordance with their

7    stipulation to agree on a date for production in the event the appeal was unsuccessful, the parties

8    agreed that Plaintiff would produce all responsive documents by December 1, 2010—more than -

9    two weeks after the Order denying the appeal and more than five weeks after the original order

10   requiring production to comply.  Klaus Decl. ¶ 11 & Ex. 16 ¶ 1.

11           Notwithstanding the ample time she had to search for and produce documents, Plaintiff's

12   December 1 production consisted of only *31 documents*.  *See* Klaus Decl. ¶ 12.  Many of these

13   were just copies of briefs (including briefs filed by Defendants) that Plaintiff's counsel had

14   forwarded to her.  Of the relative handful of substantive communications in the December 1

15   production, many were so redacted as to be unintelligible.  Indeed, many documents included

16   redactions *in the middle of sentences*.  *See, e.g.*, Klaus Decl. Exs. 9, 11, 13.  What was more, the

17   December 1 production failed to include even the *specific communications* that Plaintiff had

18   referenced in her blogs and emails, and that the Court discussed in its Order.  Hence, Plaintiff

19   wrote (and the Court quoted), "Today, I got an e-mail from someone at EFF . . . ."  *See* Klaus

20   Decl. Ex. 1 (Oct. 22 Order) at 5.  That "e-mail from someone at EFF," however, was nowhere to

21   be found in Plaintiff's production.  *See* Klaus Decl. ¶ 13.

22           Universal's counsel thereafter engaged in an extended series of meet-and-confer

23   productions, in an attempt to get Plaintiff to comply with the Order without the need for

24   additional Court intervention.  Klaus Decl. ¶¶ 15–19.  Plaintiff ultimately agreed to do a limited

25   supplementation of her production.  But this production, on December 10, 2010, does not come

26   close to achieving full compliance with the Court's Order.  The December 10 production contains

27   just *43* additional documents (totaling just over 100 additional pages), many of which have been

28   heavily redacted.  *See* Klaus Decl. ¶ 20 & Ex. 15.  As a result, nearly two months after Magistrate

Judge Trumbull's Order, Plaintiff has produced less than 80 documents total, and many of these (as noted) are just copies of pleadings.  Through the meet-and-confer process and the parties' exchange of correspondence setting forth their respective positions, it is clear that Plaintiff has refused to comply with her obligations under the Order in at least four critical respects:

### 1.      Plaintiff refuses to search her attorneys' files.

Plaintiff's counsel admits that he conducted no search of counsel's files for relevant documents reflecting communications with Plaintiff regarding the subject matters ordered to be produced.  Instead, counsel searched Plaintiff's email account.  *See* Klaus Decl. Exs. 16, 18. Plaintiff's counsel has offered two insufficient—and frankly inconsistent—explanations for why counsel will not attempt to do *any* search of their files:  (1) it is too burdensome and (2) any internal discussions of counsel's communications with Plaintiff necessarily would be interwoven with uncommunicated attorney work product.  How counsel can know that their documents will be hopelessly intertwined without actually reviewing any of those documents is a mystery.  With respect to burden, Plaintiff will not even try to do targeted searches or use search terms, and in all events, the time for raising a burden objection is long since passed.  *See* Klaus Decl. ¶ 18.  If Plaintiff had a burden objection, it was her obligation to raise it before the Court's Order was final.  She is obligated to search for and produce all responsive documents.

### 2.      Plaintiff has imposed an unsupportable date cut-off on her subject-matter waiver regarding her and her counsel's attempt to publicize this case

Plaintiff will not produce all documents relating to her and her counsel's discussions about publicizing this lawsuit, even though the October 22 Order holds that Plaintiff has waived privilege to such communications because they are relevant to the motivation for pursuing this case.  Plaintiff has said that she is not applying a date cut-off to communications regarding her or counsel's motivations *generally* about the lawsuit, but as to the one category of documents regarding the publicity motivation, Plaintiff has applied a date cut-off date that expires within a matter of weeks after the original complaint was filed.  *See* Klaus Decl. Ex. 18.  As discussed above, Plaintiff and counsel continued to publicize the case long after that.  Plaintiff's counsel admits that there are likely "hundreds" of emails between Plaintiff and her counsel reflecting

1   discussions with third parties related to publicizing this case that Plaintiff is not reviewing

2   because of the date cut-off.  Klaus Decl. ¶ 19.

3          **3.      Plaintiff has imposed an unsupportable date cut-off on her subject-matter**

4   **waiver related to her statement that "mine's not a 'fair use' case," or discussions with**

5   **counsel about her use not being infringing**

6          Plaintiff likewise has applied a date cut-off to her waivers embodied in her statements that

7   she and EFF studied the matter and concluded that her use was not infringing, or that Plaintiff's is

8   "not a fair use case at all."  Plaintiff is now trying to limit the responsive communications to those

9   that precede the statements wherein she waived the privilege, even though there is no basis in the

10  Court's Order or the law of subject matter waivers for her to do so. *See* Klaus Decl. Ex. 18 at 6.

11         **4.      Plaintiff has over-redacted documents she is producing pursuant to the**

12  **Order.**

13         During the parties' lengthy meet and confer, Plaintiffs' counsel revealed (and has in some

14  cases since produced) the contents of some of the redactions in her paltry production.  *See* Klaus

15  Decl. ¶ 17.  As Universal suspected, Plaintiffs' redactions include material Plaintiff had been

16  explicitly compelled to produce.  For example, Plaintiff redacted a communication relating to her

17  allegations about Prince, which is a subject matter clearly encompassed by the Court's Order.

18  *Compare* Klaus Decl. Exs. 11 & 12; *see* Doc. No. 334 (Oct. 22 Order) at 7.  Plaintiff's December

19  10 production continues to include numerous redactions—including a number (such as the

20  example cited *supra*, page 3, that redact out statements right in the middle of sentences.  *See*

21  Klaus Decl. ¶ 20 & Ex. 15.

**III.    ARGUMENT**

22

23         Plaintiff has failed to comply with the October 22, 2010 Order, and has given neither the

24  Court nor Universal a basis to trust that she will comply with her obligations going forward.

25  Universal has no choice but to seek an Order compelling Plaintiff to comply with her obligations

26  in full, to produce any material that she continues to redact or withhold for immediate *in camera*

27  review, for a finding of contempt, and for discovery sanctions.

28

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

**A.      Plaintiff Should Be Found In Contempt for Violating the Court's October 22, 2010 Order**

The Court may impose sanctions including an entry of contempt upon finding that a party has violated a discovery order.  *See* Fed. R. Civ. P. 37(b); *Westinghouse Elec. Corp. v. Newman & Holtzinger P.C.*, 992 F.2d 932, 934–35 (9th Cir. 1993) (Rule 37(b) provides courts with "the authority to apply sanctions, including contempt, for the failure to comply with discovery orders.").  Where it is clear that a party has violated a "clear and reasonably specific" order of the Court, sanctions must be imposed unless the offending party can demonstrate substantial compliance with the Court's orders, *i.e.*, proving that it "took *all reasonable steps within its power to comply*" with the order of the court.  *Cobell v. Babbitt*, 37 F. Supp. 2d 9, 16 (D. D.C. 1999); *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987); *Grove Fresh Distribs. v. John Labatt, Ltd.*, 299 F.3d 635, 642 (7th Cir. 2002).  A party's belief—even if in good faith—regarding the unfairness or incorrectness of an underlying order is no defense: a "good faith" belief in the wrongfulness of an order does not establish "substantial compliance" with that order.  *See NLRB v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1418 (9th Cir. 1994).

As demonstrated herein, the evidence is clear and convincing that Plaintiff has violated and continues to violate the October 22, 2010 Order

**B.      Plaintiff's Subject Matter Waivers Extend To *All* Communications On The Waived Subjects, And Are Not Limited By Time**

A consistent theme of Plaintiff's has been that the Order deems various subject matters waived only as to particular times—*e.g.*, Plaintiff says that the Order waives communications regarding publicizing the lawsuit, but only up until a few weeks after Plaintiff filed the complaint; or, as to Plaintiff's statement that, "mine's not a fair use case at all," only to communications with counsel that preceded that statement.

Plaintiff is wrong.  Under controlling authority, Plaintiff's subject-matter waiver extends to *all* communications about the disclosed subject—regardless of the time of the communication. *Weil v. Investment/Indicators, Research & Mgmt.*, 647 F.2d 18, 24 (9th Cir. 1981); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611 (N.D. Cal. 1991).  Thus "under the law . . . and in light of policy considerations, *it is not appropriate . . . for the waiving parties or*

1    *judge to limit the waiver on a temporal basis*." *McCormick-Morgan*, 765 F. Supp. at 613

2    (emphasis added). Courts repeatedly reject attempts by parties to limit the scope of a waiver to

3    the time period prior to the occurrence of the waiver. *See id.* (discussing *Smith v. Alyeska*

4    *Pipeline Service Co.*, 538 F. Supp. 977, 982 (D.Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984)).

5         Where, as here, the subject matter of a waiver involves a plaintiff's motivations for filing

6    or maintaining a suit, courts have rejected efforts (like Plaintiff's here) to limit the waiver to the

7    pre-complaint period. For instance, the court in *SNK Corporation of America v. Atlus Dream*

8    *Entertainment Co.*, 188 F.R.D. 566 (N.D. Cal. 1999) analyzed the scope of privilege waiver

9    related to a malicious-prosecution defendant's (Atlus's) invocation of advice-of-counsel as a

10   defense to plaintiff's claims. The court rejected the defendant's claim that such subject-matter

11   waiver extended only to the time of filing of the complaint:

12               The relevancy of documents in this period stem, in part, from the
                 fact that the so-called "advice of counsel" relied upon by Atlus does
13               not appear from the record to be self-contained within a single
                 document. Rather, it seems ephemeral in nature and will likely
14               constitute a series of written documents and oral communications
                 occurring before and after the infringement suit was filed. It would
15               therefore be inappropriate to attempt to dissect those
                 communications with an artificial temporal limitation. At the very
16               least, communications occurring after the filing of the lawsuit may
                 shed light on the defendants' state of mind when Atlus Dream filed
17               and maintained the patent suit. Further, communications occurring
                 after the filing of the lawsuit may be highly probative of whether
18               the Irell law firm had all of the material facts necessary to provide
                 competent advice regarding the filing of the infringement claim
19               against SNK. Therefore, documents that were relevant in [the
                 period before the filing of the suit] are still relevant in [the period
20               after filing]. In addition, information about Atlus's maintenance and
                 withdrawal of its infringement suit are directly relevant to its state
21               of mind in maintaining the suit.

22   *Id.*. at 574.

23         The court in *EEOC v. Rekrem, Inc.*, 2002 WL 27776, at *1-*2 (S.D.N.Y. Jan. 10, 2002),

24   reached the same conclusion. There, the court rejected a party's assertion that "no waiver of the

25   attorney-client privilege applies to legal advice concerning the . . . lawsuit that occurred after June

26   8, 1999—the date the . . . complaint was filed." The court reasoned that what was at issue in the

27   waiver was really "what motivated [plaintiff] to file the . . . complaint," and that while pre-filing

28   communications could be more apt to be probative of that issue, "post-filing communications

- 15 -

1   certainly might tend to disprove the motivation for the earlier filing." *Id.*; *accord Chiron Corp. v.*

2   *Genentech, Inc.*, 179 F. Supp. 2d 1182, 1188 (E.D. Cal. 2001) ("*all* communications, both pre and

3   post-complaint filing, should be disclosed.").

4       Under this well-established law, Plaintiff's repeated efforts to pick-and-choose cut-off

5   dates for the subject-matter waivers the Court has ordered are inappropriate and must be rejected.

6   **C.   The Court Should Order Plaintiff To Search Counsel's Files Immediately For**
    **Responsive Communications**

7   The Order very clearly states that Plaintiff must produce "further discovery *regarding*

8   plaintiff's communications with her attorneys" about the waived subjects.  Klaus Decl. Ex. 1

9   (Oct. 22 Order) at 5, 6, 7 (emphasis added).  The waived subjects include, *inter alia*, her counsel's

10  (particularly EFF's) motivations for prosecuting Plaintiff's case, as well as whether her use of

11  "Let's Go Crazy" was "a fair use" or "infringing."  These obviously are subjects on which

12  Plaintiff and her counsel have had numerous communications.  It would seem unfathomable that

13  Plaintiff and her counsel did not discuss these subjects, since they go to the heart of her

14  allegations in the case.  Yet, inexplicably, counsel refuses to search their own files for responsive

15  documents.  *See* Klaus Decl. ¶ 18. Plaintiff's refusal to search her counsel's files is depriving

16  Defendant of highly relevant material that is no longer subject to any claim of privilege.  It is a

17  violation of the Court Order.  The Court should order compliance now.

18      Plaintiff has advanced two reasons why she should not have to search counsel's files, but

19  neither of them has any merit.  First, Plaintiff's counsel claims burden, on the ground that they

20  have not segregated within their files those documents that reflect communications with Plaintiff.

21  *See* Klaus Decl. Ex. 18 at 3.  This objection is not well-taken.  Plaintiff is not in a position to

22  negotiate about the relative "burden" of searching for, reviewing for remaining privilege, and

23  producing emails from her counsel's files.  *Plaintiff has already been ordered to produce those*

24  *documents.*  Neither the "burden" of searching for such documents nor the "burden" of reviewing

25  the small number of such documents for work-product considerations is a valid objection to a

26  *court order* to which Plaintiff already is subject, and which has already been *upheld* by Judge

27

28

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1  Fogel despite Plaintiff's objections—which did not include burden in any event.  *See generally*

2  Doc. No. 346 (Pltf's Mot. For Relief from Magistrate Judge Trumbull's October 22, 2010 Order).

3       Furthermore, Plaintiff's burden arguments, even if they were to be considered (which they

4  should not be), pale in comparison to the potential relevance of the communications that counsel

5  are systematically overlooking by refusing to search their files.  For one thing, despite counsel's

6  assurances, there is no guarantee that Plaintiff has retained all of her written communications with

7  her lawyers.  Hence, the lawyers' files may contain documents that simply are not in Plaintiffs'

8  possession.  Moreover, *even if* Plaintiff's electronic records contained a complete set of what she

9  and her lawyers have sent to each other in email, ***Plaintiff's counsel has admitted that a***

10  ***substantial quantity of communications responsive to the October 22, 2010 Order have been***

11  ***verbal, not in writing***.  *See* Klaus Decl. Ex. 18 at 2 (Plaintiff's counsel:  "The size of [Plaintiff's]

12  document production reflects the nature of Ms. Lenz's communications with her attorneys, ***much***

13  ***of which has been by phone***[.]") (emphasis added).  If the fact that responsive communications

14  have taken place verbally rather than in writing accounts for the paucity of Plaintiff's production,

15  then that fact provides ***more*** reason, not less, for Plaintiff to search her attorneys' files for

16  documents reflecting the substance of such communications.  Absent Plaintiff's search for and

17  production of such recorded information in her attorneys' files, Plaintiff, when she testifies, will

18  simply say that she does not recall what she and her lawyers said to each other on the waived

19  subjects.  Finally, Plaintiff's claims of burden are ill-supported.  Plaintiff's counsel has indicated

20  that—without their trying to come up with justifiable key word search terms, counsel may have to

21  review a couple of thousand emails for responsive communications.  Klaus Decl. ¶ 18.  That is a

22  relatively small task in litigation matters.  Plaintiff's legal team—which, at times during this

23  litigation, has involved simultaneously *three* different law firms and at least *five* attorneys—is

24  more than capable of searching for and reviewing documents in an orderly matter.

25       Plaintiff's second argument is that any documents her counsel do have that were not

26  transmitted to her must be so intertwined with attorney mental impressions and work product that

27  it would be pointless to require counsel even to look for responsive documents.  *See* Klaus Decl.

28  Ex. 18.  As an initial matter, this argument fails because there is no basis for counsel to make it.

1   If counsel has not even looked through their files for communications, they cannot possibly make

2   the broad claim that their references to discussions with Plaintiff are laced with work product.

3   The second problem with this argument goes back to Plaintiff's problem with burden generally:

4   Plaintiff is under a Court Order to produce documents—period.  She is not in a position to

5   negotiate the extent of her search, as she might be, if she were responding to a set of document

6   requests.  And, moreover, the work product assertion is overstated, since not all material claimed

7   to be work product is immune from discovery, *see* Fed. R. Civ. P. 26(b)(3)(A)(ii), and Defendants

8   obviously have a "substantial need" for any communications that might reflect fact work product,

9   since, by Plaintiff's own admission, there is no other effective way for Universal to obtain

10  documented evidence of these communications.  Klaus Decl. Ex. 18 at 2.

11          The Court should Order Plaintiff to conduct a diligent search of her counsel's files

12  immediately.

13          **D.      Plaintiff's Time Limitation on the Publicity Motive for Pursuing The Lawsuit**
                      **Is Artificial and Unjustified**

14

15          The October 22 Order plainly requires Plaintiff to produce all "communications with her

16  attorney[s] regarding the possible motives for bringing the action."  Klaus Decl. Ex. 1 (Oct. 22

17  Order) at 5.  These motivations clearly include both Plaintiff's and EFF's.  And, as demonstrated

18  above, one of the key motivations for both Plaintiff and EFF is publicity about this lawsuit.  The

19  Order specifically points out that the publicity motivation is highly relevant to the question

20  whether this case is being pursued because Plaintiff wants to vindicate her First Amendment

21  rights, or instead to satisfy Plaintiff's and EFF's publicity agenda. *Id. at* 4.  The Order thus

22  makes clear that communications regarding publicizing this case is *exactly* the type of document

23  regarding motives that Plaintiff must produce.

24          Plaintiff has admitted that her obligation to produce "motivation" documents generally

25  may not be limited by time.  But Plaintiff has tried to draw an arbitrary line around the publicity

26  aspect of that, claiming that the "publicity blitz" ended with the filing of the complaint, and

27  Plaintiff's obligation to produce "publicity" documents must cut-off shortly after that time.  Klaus

28  Decl. ¶ 19 & Ex. 18.   This argument is specious for multiple reasons.

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

*First*, as discussed in Section B, *supra*, Plaintiff's attempt to impose a cut-off date for a subject matter waiver is flatly wrong under controlling law.

*Second*, even if it were appropriate to draw time lines around communications about the "publicity blitz"—and it is not—that determination still would not justify Plaintiff's arbitrary attempt to cut-off her obligations within weeks of the filing of the original complaint. The simple and undeniable fact is that the "blitz" has continued: indeed, the EFF in just *October of this year* issued a press release celebrating the "wide media coverage" the case had obtained, linking to numerous articles from 2008 to the present discussing the case and quoting Plaintiff's attorneys. *See* Klaus Decl. Exs. 3–7. Plaintiff's counsel admits that, because of the cut-off date, they are not reviewing and producing "hundreds" of potentially responsive publicity-related communications with Plaintiff. *Id.* ¶ 19. Plaintiff no doubt would prefer to produce as few documents as possible that are responsive to the Order, but that choice is not Plaintiff's to make. The Court should order Plaintiff to produce all responsive documents discussing publicity about the case or any other motivation (whether Plaintiff's or her counsel's) for filing or pursuing this case.

### E.   Plaintiff Must Produce Responsive Communications Regarding Her Core Allegations Without Imposing An Artificial Time-Limit

Next, Plaintiff has refused to produce all communications with her attorneys regarding the "fair use" or "infringing" status of her posting *that post-date October 2007*, when Plaintiff made one of several statements forming the basis of this subject-matter waiver. *See* Klaus Decl. Ex. 18. This limitation is wholly inappropriate.

Plaintiff's argument on this point is that the "subject matter" of the waiver extends only to the subject of what was in her mind when she made the statements that waived privilege. That is wrong. As discussed at length in Section B, *supra*, Plaintiff's waiver over a *subject-matter* has no temporal limitation. *See McCormick-Morgan*, 765 F. Supp. at 611. Plaintiff's statements about concluding through discussions with her lawyers that her use was not infringing, or her statement (in a blog posting about meeting with EFF) that hers is "not a 'fair use' case at all," waives the privilege as to Plaintiff's communications counsel on these subjects.

1    Plaintiff has argued that the "mine's not a 'fair use' case at all" waiver relates only to what

2    was in her head as of the date she made the statement.  Klaus Decl. Ex. 18 at 6.  That claim is not

3    well-taken.  As discussed above, the statement is contained in the same "blog" discussion wherein

4    Plaintiff is describing her communications with EFF, and the "mine's not a 'fair use' case at all"

5    and "It's something different" can only come from communications with counsel.  *See* Section

6    II.C.3, *supra*.  The privilege has been waived as to the subject of the substance of the

7    communication—whether her case is or is not a "fair use" case—and it does so without time

8    limitation.

9    **F.    The Court Should Order Immediate *In Camera* Of All Of Plaintiff's Redacted**
10   **       Or Withheld Documents**

11       As discussed, Plaintiff's first round of document production on December 1 included

12   *numerous* heavily-redacted documents whose contents, later disclosed, clearly indicated that they

13   fell within the bounds of this Court's order.  *See supra*; Klaus Decl. Exs. 11 & 12 (reflecting

14   redacted and unredacted version of document discussing Prince's involvement in the lawsuit).

15   Now Plaintiff's second, tardy, hard fought-over production of documents is so riddled with

16   redactions that some documents are nearly unrecognizable.  *See, e.g.*,  Klaus Decl. Ex. 15.

17       In light of Plaintiff's record of non-compliance to date, neither Universal nor the Court

18   can have confidence that Plaintiff is living up to the terms of her obligations with her continued

19   redactions of documents.  The Court should order Plaintiff to submit unredacted copies of all

20   redacted documents for immediate *in camera* review.  Plaintiff to date has redacted 38 documents

21   (of her total production of 72 documents).  If Plaintiff redacts or withholds further categories of

22   documents on the ground that she believes they are outside the scope of the Court's Order, those

23   documents, too, should be submitted for immediate *in camera* review to ensure compliance with

24   the Court's Order.

25   **G.    The Court Should Sanction Plaintiff**

26       Plaintiff has been ordered by the Court to produce documents as to which she has waived

27   privilege.  Defendants have been forced to engage in hours of negotiations, and now re-briefing of

28   issues already determined by this Court, in order to obtain Plaintiff's compliance.  Plaintiff's

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1    willingness to burden Defendants with unnecessary expense in order to obtain compliance with an

2    Order of this court justifies the imposition of sanctions.

3         The Court has the authority to award monetary sanctions in an amount sufficient to

4    remedy the injury caused by a party's contempt. Fed. R. Civ. P. 37(b); *Cobell*, 37 F. Supp. 2d at

5    10–11; *In re Heritage Bond Litig.*, 223 F.R.D. 527, 533 (C.D. Cal. 2004). At a minimum, Rule

6    37(b) requires the award of a party's reasonably-incurred expenses, including attorneys' fees,

7    caused by the party in contempt's failure to comply with the Court's discovery orders. Fed. R.

8    Civ. P. 37(b)(2) (excusing such fee award only in limited circumstances). When faced with

9    willful discovery misconduct, additional sanctions in excess of fees may be appropriate to ensure

10   compliance with the Court's orders and ensure full compensation of the injured party. *Keithley v.*

11   *Home Store.com, Inc.*, 2008 WL 3833384, at *16–*17 (N.D. Cal. Aug. 12, 2008).

12        Plaintiff's contempt of this Court's Order has caused Defendants to incur substantial costs

13   that should be reimbursed by Plaintiff, including but not limited to: (1) the costs incurred in

14   numerous hours of negotiations with Plaintiffs' counsel, and (2) the costs and fees associated with

15   the present motion, which has necessitated Defendants' repetitive briefing of issues *already*

16   *decided* by this Court. Such a request for fees is highly conservative in light of the full range of

17   sanctions available. *See, e.g.*, *Mixt Greens v. Sprout Cafe*, 2010 WL 2555753, at *1–*2 (N.D.

18   Cal. June 21, 2010) (noting that a party is entitled to fees for *both* the filing of the original motion

19   to compel and the motion for sanctions). However, absent such an award, Plaintiff will have

20   succeeded in inflicting substantial costs on Defendants, in the course of attempting to deprive

21   them of evidence highly relevant to proving their case at trial. Neither this unjust attempt to

22   deprive Defendants of evidence, nor this imposition of unwarranted costs for seeking such

23   evidence, should be allowed.[4]

24

25

26   _____

[4] If the Court awards sanctions, Universal will submit an application detailing the time and costs

27   incurred in connection with the meet-and-confer and motion process promptly upon the Court's
     Order. Further, Universal reserves the right to seek evidentiary or other sanctions that may be

28   warranted in connection with this matter at an appropriate juncture.

NOTICE OF MOT. & MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1

**IV.     CONCLUSION**

2

        Universal respectfully requests that its motion be granted, and that the Court order

3

compliance as set forth above, that it hold Plaintiff in contempt, and that it issue sanctions in the

4

amount of the fees and costs Defendants have incurred in meeting-and-conferring about and

5

pursuing this motion.

6

7

DATED:  December 17, 2010                    Respectfully submitted,

8

9

                                        By: _____*/s/ Kelly M. Klaus*_____
                                                    KELLY M. KLAUS

10

                                        Attorneys for Defendants

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -