KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC
PUBLISHING, INC. and UNIVERSAL MUSIC
PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE LENZ,<br><br>        Plaintiff,<br><br>vs.<br><br>UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,<br><br>        Defendants. | CASE NO. C 07-03783 JF (HRL)<br><br>**REPLY IN SUPPORT OF MOTION TO FIND PLAINTIFF IN CONTEMPT FOR VIOLATION OF OCTOBER 22, 2010 ORDER, TO COMPEL COMPLIANCE AND IN CAMERA REVIEW, AND FOR SANCTIONS**<br><br>Date: January 25, 2011<br>Time: 10:00 a.m.<br>Crtrm: 2, Fifth Floor (Hon. Howard R. Lloyd) |

**TABLE OF CONTENTS**

**Page(s)**

I. Introduction .................................................................................................................... 1

II. Argument ........................................................................................................................ 3

    A. Plaintiff's Arguments For Limitations On Her Subject Matter Waivers Are Legally Unsupportable And Have Already Been Rejected By The Court.............. 3

        1. The Court Has Already Unambiguously Rejected Plaintiff's Attempts To Limit The Scope Of Her Subject Matter Limitations ............ 3

        2. Plaintiff Must Produce *All Communications* Regarding Waived Subjects ................................................................................................... 4

    B. Plaintiff Must Search Her Counsel's Files For Responsive Documents................. 7

        1. Searching Counsel's Files Would Not Be Duplicative .............................. 7

        2. Plaintiff Cannot Make A Blanket "Work Product" Claim While (Admittedly) Refusing To Review A Single Document ........................... 10

    C. *In Camera* Review—Which Would Not Burden Plaintiff At All—Is More Than Justified By Plaintiff's Demonstrated Resistance To The Court Order....... 11

    D. This Is Not a Discovery Dispute: Plaintiff's Efforts To Avoid Compliance With A Court Order Warrant Contempt And Sanctions, Not Further Negotiation ............................................................................................................ 12

III. Conclusion .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Chiron Corp. v. Genentech, Inc.*,
 179 F. Supp. 2d 1182 (E.D. Cal. 2001) .................................................................................. 5

*Cobell v. Babbitt*,
 37 F. Supp. 2d 9 (D.D.C. 1999) ........................................................................................... 12

*EEOC v. Rekrem, Inc.*,
 No. 00 CIV. 7239 (CBM), 2002 WL 27776 (S.D.N.Y. Jan. 10, 2002) ................................. 5

*Hickman v. Taylor*,
 329 U.S. 495 (1947) ............................................................................................................. 10

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*,
 765 F. Supp. 611 (N.D. Cal. 1991) ........................................................................................ 4

*SNK Corp. of Am. v. Atlus Dream Entertainment Co.*,
 188 F.R.D. 566 (N.D. Cal. 1999) .......................................................................................... 5

*Upjohn Co. v. United States*,
 449 U.S. 383 (1981) ............................................................................................................. 10

### STATUTES AND RULES

17 U.S.C. § 512(f) ......................................................................................................................... 3

Fed. R. Civ. P. 26(b)(3)(A)(ii) ..................................................................................................... 10

## I. INTRODUCTION

This Motion is not about Universal "having been given an inch" and "attempting to take a mile." Opp. at 1:25–26. It is about Plaintiff having waived the privilege regarding specified subject matters and refusing to comply with a very clear Court Order to produce all—not some—privileged documents regarding those subject matters. Rather than complying with this Order, Plaintiff (1) artificially imposed time limitations on her waivers even though subject matter waivers have no such limitation; (2) refused to search her lawyers' files for responsive documents—the most obvious place to find responsive documents; and (3) redacted the few documents that she did produce down to the point where they are incomprehensible. Plaintiff's deliberate and unjustified non-compliance finds no justification in the Court's Order or the law.

***Plaintiff distorts the law of subject matter waiver beyond recognition***: Binding Ninth Circuit law—quoted on the face of the Order—is clear that "voluntary disclosure of the contents of a privileged communication constitutes waiver of the privilege *as to all other such communications on the same subject*." Klaus Decl. Ex. 1 (Oct. 22 Order) at 4:3–6 (quoting *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)) (emphasis added). Thus, there can be no dispute that subject matter waivers are not limited to the disclosures that constituted the waivers, nor are they limited temporally. Yet, that is exactly the position that Plaintiff is taking in this case. Plaintiff does not deny that she is imposing time limitations on her search for and production of documents, but claims this is justified because the Order itself defines waived subject matters by time periods. Opp. at 10–17. That is nonsense. The Order nowhere states that the subjects on which Plaintiff waived privilege are limited by time. It is Plaintiff alone who has attempted *post hoc* to concoct time limitations on her waiver of the privilege, such as by claiming that the waiver regarding communications about "a publicity blitz and/or a lawsuit against Universal" is somehow limited to the time period surrounding the filing of the lawsuit despite the fact that there has been a continuous publicity blitz by Plaintiff and her counsel throughout the life of this case.

***Plaintiff's declarations and the documents she produced so far show that searching her lawyers' files is not "duplicative," but is required to ensure compliance with the Order***: For

1 months, Plaintiff's counsel asserted to Defendants that Plaintiff "has retained" her
2 communications with counsel, and that they therefore did not have to search their own files. *See*
3 Kwun Decl. Ex. B at 1. Now that push has come to shove, and Plaintiff and her counsel have had
4 to make their representations under penalty of perjury, the story has changed. Now we are told
5 that Plaintiff has "*a practice* of retaining all emails between my lawyers and me[,]" which is *not*
6 the same thing as saying that she did in fact save all such emails. Lenz Decl. ¶ 4 (emphasis
7 added). The best "industrial-grade servers" in the world will not retain emails that Plaintiff
8 deleted or lost. Kwun Decl. ¶ 8. Furthermore, *no* search of Plaintiff's files will locate her
9 attorneys' internal notes of oral conversations with their client. The waivers found by the Court
10 extend to all documents, which would include not just those that happen to be in Plaintiff's files,
11 but in her attorneys' files as well. Plaintiff's refusal to search her attorneys' files for waived
12 privileged communications would shield this entire category of documents from production.

13        ***Plaintiff's refusal to comply with the Court's clear Order merits a finding of contempt***.
14 What is going on here is nothing less than a deliberate effort to disregard the Court's Order
15 because Plaintiff and her counsel not only are embarrassed by what Plaintiff has disclosed and
16 what remains to be disclosed, but because Plaintiff recognizes that the documents will undermine
17 the elements of her claim in this case. Plaintiff apparently thinks that because she and her
18 lawyers are pursuing a cause, they can rewrite the Court's orders to suit their purposes. Opp. at
19 1:1–11. What Plaintiff overlooks is that she is pursuing a *case*—and the rules that apply to all
20 litigants in federal court (including subject matter waiver) apply to Plaintiff and her legion of
21 lawyers.[1] This motion should be granted.

---

[1] Plaintiff's insinuation that Universal has "big firmed" this case and dragged it out for years is absurd. *See* Opp. at 1:11. Plaintiff has had *eleven* lawyers at *three* different law firms representing her. Her initial complaint was defective and dismissed, and included two claims she did not even bother to re-file. *See* Doc. No. 32 (Order Dismissing First Am. Compl.). And it is Plaintiff who has repeatedly used baseless and/or waived claims of privilege to impede Universal's legitimate right of discovery into Plaintiff's allegations—including the specious claim that Plaintiff's communications with a non-lawyer friend in Canada were covered by the attorney-client privilege. *See* Doc. No. 150 at 3–4 (Order Granting Universal's Motion to Compel).

## II. ARGUMENT

### A. Plaintiff's Arguments For Limitations On Her Subject Matter Waivers Are Legally Unsupportable And Have Already Been Rejected By The Court

The October 22 Order clearly and specifically requires Plaintiff to produce all documents on the waived subject matters of (1) Plaintiff's motivations for pursuing this litigation, including specifically her and her counsel's desire to generate publicity; (2) legal strategies relevant to the mental-state standard under 17 U.S.C. § 512(f); and (3) Plaintiff's factual allegations that (a) her video posting made a "self evident non-infringing fair use" of Defendants' work, (b) her posting did not infringe copyright, and (c) Prince demanded that Universal send a notice about Plaintiff's posting. *See* Mot. at 9–10; Klaus Decl. Ex. 1 (Oct. 22 Order) at 6–7. Contrary to the plain terms of the Order and binding precedent, Plaintiff insists that her subject matter waivers have inherent time or scope limitations. Specifically, she insists that her waiver regarding publicity-based motives is limited to the time of the filing of the lawsuit or shortly thereafter, *see* Opp. at 12, that her waiver regarding the non-infringing status of her posting is limited to the time she and her counsel allegedly first came to that conclusion, *see* Opp. at 14, and that her waiver regarding the "fair use" status of her posting is limited to documents relevant to the *particular public statement* through which she effected her waiver.

As the complete lack of legal citation in these portions of Plaintiff's Opposition demonstrates: these attempted limitations are unsupportable. *See* Opp. at 12–14. Cases firmly reject the contention that a party may place limitations on production on waived subject matters. Plaintiff's game to avoid these precedents—arguing that time limitations are inherent in the subject matters defined by the Court—has no support in this Court's Order. The Order requires production of documents on waived subject matters without stating *any* limitation as to time.

#### 1. The Court Has Already Unambiguously Rejected Plaintiff's Attempts To Limit The Scope Of Her Subject Matter Limitations

Plaintiff already has argued—*and lost*—the very point she presses here: that the scope of her subject matter waivers should be limited. In Plaintiff's opposition to Defendants' motion to compel the documents at issue here, Plaintiff argued at length that her waiver should "not extend any further than the statements themselves" through which Lenz waived privilege. *See* Doc. No.

12737034.1 - 3 - REPLY ISO MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1  309 at 12. Judge Trumbull, affirmed by Judge Fogel, rejected this purported limitation,

2  emphasizing instead:

> "The doctrine of waiver of attorney-client privilege is rooted in notions of fundamental fairness." *Michael E. Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, *revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable*." *Id.* at 340–41. "[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege *as to all other such communications on the same subject*."

Klaus Decl. Ex. 1 (Oct. 22 Order) at 3–4. Accordingly, the Court held that Plaintiff waived the privilege over the *entire* subject matters of her "possible motives for bringing the action" (including, with specific reference, her and her counsel's desire for publicity), *id.* at 5; over the *entire* subject matter of specified legal strategies, *id.* at 6; and over the *entire* subject matter of certain of Plaintiffs' factual allegations, *id.* at 7.

Plaintiff now asserts again, despite this rejection, that she is entitled to disclose her communications with counsel selectively, producing only communications relevant to the *particular* statements that resulted in waiver. That is contrary to case law, fundamental fairness, and the unambiguous words of this Court's very Order. Plaintiff's continued resistance on grounds that are legally baseless and have been rejected by the Court is a resounding example of her contempt.

### 2. Plaintiff Must Produce *All Communications* Regarding Waived Subjects

Precedent makes it clear that "under the law . . . and in light of policy considerations, *it is not appropriate . . . for the waiving parties or judge to limit the waiver on a temporal basis*." *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 765 F. Supp. 611, 613 (N.D. Cal. 1991) (emphasis added). As the Court stated in the Order: "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to *all other such communications on the same subject*." Klaus Decl. Ex. 1 (Oct. 22 Order) at 3–4 (emphasis added). Plaintiff's attempt to dissect her obligations runs directly contrary to these precedents.

1       ***a.      Plaintiff must produce all documents regarding her motivations for pursuing the present suit, including all documents regarding publicity efforts***.  The Order holds that Plaintiff must produce documents on the subject matter of the motivation for "pursuing the action," making clear that publicity is part and parcel of such motivation.  See Klaus Decl. Ex. 1 (Oct. 22 Order) at 4–5.  Case law is clear that waivers relating to a party's motivation for pursuing suit are not limited in time, recognizing that communications occurring "after the filing of the lawsuit" remain highly probative of motivation and, thus, within a subject matter waiver regarding a party's motivation for bringing suit.  *See, e.g., SNK Corp. of Am. v. Atlus Dream Entertainment Co.*, 188 F.R.D. 566, 574 (N.D. Cal. 1999) ("It would . . . be inappropriate to attempt to dissect th[e]se communications with an artificial time limitation."); *EEOC v. Rekrem, Inc.*, No. 00 CIV. 7239 (CBM), 2002 WL 27776, at *1–*2 (S.D.N.Y. Jan. 10, 2002) ("post-filing communications certainly might tend" to demonstrate "the motivation for the earlier filing"); *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1188 (E.D. Cal. 2001) (accord).  "All communications, both pre- and post-complaint filing, should be disclosed."  *Chiron*, 179  F. Supp. 2d at 1188.  Where, as here, the record makes plain that communications regarding Plaintiff's admitted publicity-related motivations continued well after the filing of the complaint, Plaintiff has no legal support for her refusal to provide such communications: she is simply advocating for selective waiver.

Plaintiff's attempted limitation likewise has no factual support.  Plaintiff argues that the "publicity blitz" identified by the Court means only publicity at the time of the lawsuit.  This cannot be because of what the Order says; it says no such thing.  Instead, it holds that Plaintiff must produce documents regarding the motivations not just for filing but broadly for "pursuing" the action.  *See* Klaus Decl. Ex. 1 (Oct. 22 Order) at 5.  Likewise, it cannot be based on what Plaintiff's own email said.  Although Plaintiff now tries to rewrite her waiver by saying that what she meant by "publicity blitz" was only publicity at the time of filing, Plaintiff's email does not talk about any time limitation for the "publicity blitz"—or anything else in the email.  On the contrary, the *very next sentence* in Plaintiff's email discusses "settlement" money being used to pay "lawyer fees."  Kwun Decl. Ex. E.  Settlements, by definition, do not come until the end of a

12737034.1                                          - 5 -                              REPLY ISO MOT. FOR CONTEMPT
                                                                                       CASE NO. CV-07-03783

1 lawsuit. And it certainly cannot be based on the facts of the continuing publicity surrounding this
2 case: the record flatly contradicts Plaintiff and her counsel's contentions that the "blitz" at issue
3 has ever (even to the present) reached an end. *See, e.g.*, Klaus Decl. Ex. 3 (EFF's October 2010
4 online press release regarding the present case); Klaus Decl. Ex. 8 (Plaintiff's coordination with
5 EFF's designated "Media Coordinator"). Indeed, Plaintiff's own counsel admits that this
6 imposed limitation excludes *hundreds* of otherwise responsive documents from production. *See*
7 Klaus Decl. ¶ 19.

8       This limitation is prejudicial and unjustified: under the terms of this Court's Order,
9 Plaintiff must produce *all* documents relating to communications with her counsel reflecting the
10 motivations for the present suit, including without limitation Plaintiff and her counsel's publicity
11 efforts. *See* Klaus Decl. Ex. 1 (Oct. 22 Order) at 4–5.

12       ***b.    Plaintiff must produce all documents regarding communications with counsel***
13 ***about whether her posting infringed copyright and whether the posting is a fair use.*** Plaintiff's
14 attempt to slice-and-dice her obligations under this Court's Order to produce documents
15 regarding her factual allegations similarly finds no traction in the language of the Order, which
16 identifies subject matter waivers over the entire topics of Plaintiff's "*allegations*" in her Second
17 Amended Complaint that (1) Plaintiff's posting did not infringe copyright, (2) the posting was a
18 fair use of the copyrighted work, and (3) Prince demanded the Universal send the notice to
19 YouTube about Plaintiff's posting. *See* Klaus Decl. Ex. 1 (Oct. 22 Order) at 7. As a result,
20 Plaintiff must produce communications regarding the entirety of these subject matters.

21       The Court did not hold, as Plaintiff now asserts, that Plaintiff waived the privilege only
22 with regard to the specific *statements* she made on these topics to the public. *Id.* As
23 demonstrated above, the Court rejected Plaintiff's analogous argument that her waivers should be
24 limited to the statements already disclosed. *See* Klaus Decl. Ex. 1 (Oct. 22 Order) at 4–5. The
25 Order is clear that Plaintiff's waiver is with regards to the entire "factual allegations" to which
26 these statements relate. *Id.* at 6 ("Communications Regarding Plaintiff's *Factual Allegations*")
27 (emphasis added). And Plaintiff's statements themselves evidence far broader waivers than
28 Plaintiff now attempts to argue: For instance, Plaintiff's statement on her blog of her opinion that

12737034.1     - 6 -    REPLY ISO MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1    "[m]ine's not a 'fair use' case at all" was not made in isolation, but rather was part of a blog post

2    and subsequent comments that disclosed her attorneys' advice. *See* Doc. No. 293-6 (discussing

3    contents of email communications with EFF staff). As a result, and consistent with the above-

4    cited precedents, Plaintiff's production obligations are not limited to documents preceding the

5    statements through which she effected a waiver, or documents informing her *initial* conclusion

6    that she did or did not infringe or make a fair use of Defendants' works, or informing her blog

7    posts regarding the "fair use" status of her posting. Having waived attorney-client privilege over

8    the subjects of her *allegations* as a whole, Plaintiff must produce all communications relevant to

9    those allegations.

10    **B.    Plaintiff Must Search Her Counsel's Files For Responsive Documents**

11    Plaintiff does not contest that the October 22 order compels the production of documents

12    "*regarding* Plaintiff's communications with her attorneys" on all of the waived subjects. *See*

13    Klaus Decl. Ex. 1 (Oct. 22 Order), at 5, 6, 7 (emphasis added). Plaintiff, however, refuses to so

14    much as *search* for documents responsive to this request in her attorneys' files. Plaintiff attempts

15    to justify this refusal buy arguing that (1) searching counsel's files would be duplicative of a

16    search of Plaintiff's "Gmail" account (it would not be) and (2) any responsive documents in her

17    attorneys' files necessarily would be work product (a claim that is entirely unsubstantiated, since

18    Plaintiff has not actually reviewed her files; and that is beside the point insofar as the documents

19    contain only factual summaries).

20    **1.    Searching Counsel's Files Would Not Be Duplicative**

21    Plaintiff's contention that searching her counsel's files would be "duplicative" of efforts

22    to collect responsive communications from her own Gmail accounts is unsupportable. There is

23    substantial reason to believe Plaintiff has not saved every responsive email. Plaintiff's and her

24    counsel's story on this point has shifted: Counsel represented to Defendants during meet-and-

25    confers that Plaintiff unqualifiedly "has retained her communications relevant to this case,

26    including communications to and from counsel." Kwun Decl. Ex. B at 1. Faced with submitting

27    this assertion under oath, Plaintiff has retreated. Now, Plaintiff maintains only that she "ha[s] a

28    practice of retaining all emails" to and from her counsel. Lenz Decl. ¶ 4. This is far from an

1   unqualified assertion that Plaintiff has, indeed, saved all such communications—and no Google
2   server, no matter the "industrial grade," will retain emails that she has deleted. Kwun Decl. ¶ 8.

3     Plaintiff's own production may indicate the reason for this retreat, demonstrating that
4   Plaintiff may well not have saved all emails with counsel. As noted in Defendants' motion,
5   Plaintiff's initial production pursuant to the October 22 order failed to include an email
6   specifically referenced in that Order: a June 14, 2007 "email from someone at EFF," the
7   substance of which Plaintiff publicized on her blog. *See* Klaus Decl. Ex. 1 (Oct. 22 Order) at 4–5
8   (quoting Plaintiff's blog post: "Today, I got an email from someone at EFF. He asked some
9   questions, asked to see the correspondence from YouTube, asked to see the video, etc. . . . The
10  letter seemed to have the tone of 'this sounds familiar and is something we're interested in talking
11  about.'"). Plaintiff's counsel produced this email only after Defendants pointed out its absence
12  from their production. *See* Klaus Decl. ¶ 13. This document—ultimately revealed to be a June
13  11, 2007 email *from* Richard Esguerra, EFF's Referral Coordinator *to* Plaintiff—does not appear
14  to be on Plaintiff's privilege log. *See* Supp. Klaus Decl. Ex. 20 (Plaintiff's privilege log); *see id*.
15  Ex. 21 (P-E_003431).[2] Nor does it appear that Plaintiff logged additional emails sent by Mr.
16  Esguerra over the next day. *See id.* Ex. 20 (Plaintiff's privilege log); *see id.* Exs. 22 (P-
17  E_003437), 23 (P-E_003441). That is to say: it appears that Plaintiff's counsel had not
18  previously found these emails in their client's files, and may not have found it there at all. The
19  discrepancy between these documents and Plaintiff's log suggests either counsel's lack of
20  diligence in reviewing their client's files and creating a log or that Plaintiff's files are not
21  comprehensive with regards to emails between Plaintiff and her counsel. In either case, it
22  underscores the necessity of searching Plaintiff's counsel's own files.

23    Furthermore, counsel's files are the *only* available source of documents memorializing
24  oral conversations between Plaintiff and her counsel on waived subjects—the primary means,

25

26  [2] Plaintiff's privilege log contains just a single entry reflecting a communication between Plaintiff
    and Mr. Esguerra: a *different* June 11, 2007 email *from* Plaintiff *to* Mr. Esguerra, which contained
27  an attachment. *See* Supp. Klaus Decl. Ex. 20 at Entry 72. It appears that this e-mail was
    separately produced by Plaintiff. *See* Klaus Decl. Ex. 24 (P-E_003416) (June 11, 2007 email
28  from Plaintiff to Richard Esguerra, attaching .mov file).

12737034.1    - 8 -    REPLY ISO MOT. FOR CONTEMPT
                    CASE NO. CV-07-03783

1  Plaintiff's counsel has admitted, that Plaintiff and her attorneys communicated. *See* Klaus Decl.
2  Ex. 18 at 2. Plaintiff's arguments that such a search would be "needlessly duplicative" are simply
3  false. Plaintiff's counsel has stated that a substantial quantity of communications responsive to
4  this Court's October 22 Order have been verbal rather than in writing. *See* Klaus Decl. Ex. 18 at
5  2 ("The size of [Plaintiff's] document production reflects the nature of Ms. Lenz's
6  communications with her attorneys, much of which has been by phone[.]"). Counsel's notes
7  constitute the *only existing* source of documentary proof regarding conversations between Lenz
8  and her counsel on waived topics, and refusal to search for these documents is a naked attempt to
9  shield this whole category of responsive documents from production.

10  Finally, Plaintiff has provided no evidence justifying her counsel's refusal to search or
11  review their own files for documents reflecting communications with their client—and no
12  evidence establishing that such a search would be duplicative. The declaration from Plaintiff's
13  counsel—Ms. McSherry—does not come close to showing that such a search would be
14  duplicative of searching Plaintiff's files. On the contrary, Ms. McSherry admits that when she
15  looked through her own emails, she "did *not* engage in the sort of full search one might perform
16  for a full document review . . . ." McSherry Decl. ¶ 11 (emphasis added). That is a euphemism
17  for saying that counsel did not conduct the kind of search that one would have to conduct to
18  comply with a Court Order. Furthermore, Plaintiff's *ten* other counsel at *two* other law firms
19  have submitted nothing (nor, prior to Plaintiff's submissions, made any statements) demonstrating
20  any effort whatsoever to conduct any "test" searches of their files.[3]

---

24  [3] Plaintiff's argument that Defendant somehow waived any requirement that she search counsel's files through their case-management stipulation, which did not include any statement about attorneys' files, is not well made. The case-management stipulation was entered July 15, 2010—*three months* before the Order granting Defendants' motion to compel. Defendants could not possibly have waived a claim regarding the scope of an order that had yet to be entered. Immediately after the Order was issued, Defendants contacted Plaintiff's counsel to insist that counsel search their files for responsive documents, and were assured—inaccurately—that Plaintiff was conducting a "diligent, appropriate search." *See* Klaus Decl. Ex. 16 (Nov. 29, 2010 letter); Supp. Klaus Decl. Ex. 25 (Nov. 30, 2010 email).

12737034.1 - 9 - REPLY ISO MOT. FOR CONTEMPT
CASE NO. CV-07-03783

### 2.   Plaintiff Cannot Make A Blanket "Work Product" Claim While (Admittedly) Refusing To Review A Single Document

Alternatively, Plaintiff argues that she should not have to comply with this Court's Order because her counsel's memoranda of oral conversations with Plaintiff are "classic" work product. That is simply not true: Plaintiff, in her Opposition, conflates ordinary summaries of communications with her with witness interview memos, going so far even as to state that because Plaintiff will be a witness in her own case, all of her counsel's notes about conversations with her are witness interview memos. *See* Opp. at 6. That cannot be correct. If it were, then Plaintiff's proposed rule would transform every communication—for example, an email recounting that "Stephanie Lenz told me that she talked to a reporter"—into a witness interview memo purportedly reflecting counsel's mental impressions. No case—and certainly not *Hickman v. Taylor*, 329 U.S. 495 (1947) and *Upjohn Co. v. United States*, 449 U.S. 383 (1981)—holds that every summary of every conversation between a lawyer and her or his client is mental-impression work product.

If counsel's writings memorializing their conversations with Plaintiff can be considered work product at all—an unsupported proposition, given that counsel have not even searched their files—they at most are likely to be *fact* work product. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). But even if the statements are fact work product, then Defendants have shown a substantial need for those communications to prepare their case, and an inability to obtain the substantial equivalent by other means. *Id*. The Order granting the motion to compel, as well as the Order affirming it, establish that the Order compels the production of information relevant to the issues to be tried. Given Plaintiff's representation that "a substantial quantity" of responsive communications were "verbal, not in writing," Klaus Decl. Ex. 18 at 2, Defendants' need for contemporaneous writings that memorialize Plaintiff's conversations with counsel are substantial, if not compelling. Plaintiff's contrary contention—that "Universal can . . . question[] Ms. Lenz at her deposition"— does not pass the straight-face test. Opp. at 7. Absent a written record of Plaintiff's and her counsel's previous conversations of these allegations, Plaintiff will be free to show up at deposition and either assert that she "does not recall" what she and her lawyer said to each other,

or recite lawyer-drafted scripts (not subject to cross-examination) such as is now found in Paragraph 10 of Plaintiff's Declaration.[4]

### C. *In Camera* Review—Which Would Not Burden Plaintiff At All—Is More Than Justified By Plaintiff's Demonstrated Resistance To The Court Order

Defendants' Motion identifies at length the reasons why neither Defendants nor this Court can trust Plaintiff's efforts in redacting and producing documents responsive to this Court's October 22 Order. Plaintiff's initial production included *numerous* improperly redacted documents, including, by way of example, a document that plainly included an allegation that Prince was behind Universal's actions (one of the subject matters included in this Court's order). *See* Mot. at 13; Klaus Decl. Exs. 11–12; Klaus Ex. 1 (Oct. 22 Order) at 7. Defendants were forced to engage in *days* of meet and confers to obtain these improperly-redacted materials. Most troublingly, even with respect to the most egregious examples of improper redaction, Plaintiff continues to protest that these materials even were responsive. *See* Opp. at 18. Plaintiff's continued resistance to production of responsive materials reflects a zealous and unsupportable refusal to comply with the terms of this Court's Order.

Defendants cannot continue to police Plaintiff's compliance with the Court's Order from within a vacuum. Defendants have no information about the lines Plaintiff has drawn—she has refused to articulate them. *See* Klaus Decl. ¶ 16. Defendants have no information about what Plaintiff will continue to redact—those redactions are by definition unavailable to them. And Defendants have ample reason to suspect that Plaintiff will continue to withhold responsive non-privileged material within the scope of this Court's order. This is no "groundless fishing

---

[4] This Paragraph reveals Plaintiff's attempt to explain away her waiver of privilege by admitting (in the course of a blog posting disclosing her communications with counsel) that "[m]ine's not a fair use case at all." Kwun Decl. Ex. D at 1–2. Plaintiff testified at deposition that she may have made this statement based on a purported "misunderstanding" of something she'd "been told by counsel." Doc. No. 293-2 at 286:12–14. Now, in a paragraph that obviously was written by a lawyer, Plaintiff's declaration states: "I did not recall [at deposition] why I made this statement. I did testify, 'At the time it may have been my opinion. It may have been I was misunderstanding what I'd been told by counsel.' When I said that it may have been a misunderstanding of what I'd been told by counsel, I was speculating. I did not have in mind any particular thing I'd been told by any of my attorneys that might have caused a misunderstanding. I did not even have a general recollection of anything any of my attorneys had told me that might have cause[d] such a misunderstanding." Lenz Decl. ¶ 10. Absent documents with which to cross-examine Plaintiff, Defendants will simply get more lawyer-scripted responses to their questions at deposition.

---

12737034.1 — - 11 - — REPLY ISO MOT. FOR CONTEMPT
CASE NO. CV-07-03783

1  expedition[]." Opp. at 17:21 (quotations omitted). This is, in light of Plaintiff's demonstrated
2  resistance to this Court's Order (and refusal to provide Defendants with an articulation of the
3  lines being drawn during their review), the *only* way to ensure compliance. Plaintiff—who does
4  not even claim any burden from such *in camera* review—should welcome the opportunity to
5  satisfy her obligations quickly and definitively.

6        **D.**      **This Is Not a Discovery Dispute: Plaintiff's Efforts To Avoid Compliance With A Court Order Warrant Contempt And Sanctions, Not Further Negotiation**
7

8        Plaintiff has fallen far short of complying with her obligations under the October 22
9  Order. In her Opposition, Plaintiff conflates the standards applicable to her contempt: Citing
10 Ninth Circuit law discussing the need for the relevant order to be "sufficiently specific," she
11 argues that she cannot be held in contempt so long as her search reflects a good-faith
12 interpretation of the Order. *See* Opp. at 20. But Plaintiff does *not* contest that the order is
13 "sufficiently specific." *See id.* Indeed, the Order is clear, specific, and provides no support for
14 Plaintiff's resistance. In light of Plaintiff's demonstrated violation of the order, Plaintiff must be
15 held in contempt unless Plaintiff can demonstrate substantial compliance with the Order—*i.e.*,
16 that she took "all reasonable steps within [her] power to comply." *Cobell v. Babbitt*, 37 F. Supp.
17 2d 9, 16 (D.D.C. 1999).

18       Plaintiff's efforts do not show substantial compliance with the order, let alone the exercise
19 of "all reasonable steps within [her] power" to comply. *Id.* Instead, they bespeak a determined
20 effort to avoid producing documents that will undermine Plaintiff's allegations on the merits,
21 despite a Court Order that she produce them. Plaintiff has attempted to limit the scope of her
22 production, contrary to well-established precedent and the Court's unambiguous rejection of
23 Plaintiff's previous attempts to establish analogous limitations on the scope of her waiver. *See*
24 *supra*, pp. 3-7. She has redacted clearly responsive, non-privileged communications, and refused
25 to inform Defendants about the lines adopted to make such redactions. *See* Klaus Decl. Exs. 11
26 & 12. She has refused to so much as *review* her counsel's files on the basis of speculative
27 assertions that such a search would be duplicative and would necessarily lead to opinion work-
28 product documents. *See supra*, pp. 7–10. These examples contradict Plaintiff's claims of good

1 faith or substantial compliance.  Plaintiff's efforts to avoid compliance are clear, and consistent
2 with repeated efforts during this litigation to use unsupportable privilege claims to deprive
3 Defendants of relevant documents.  *See supra* n.1; Mot. at 4 n.2 (referencing Plaintiff's previous
4 withholding of communications with a non-lawyer based on a claim of privilege).

5 Plaintiff's tactics have imposed significant costs upon Defendants, who are entitled to an
6 award of sanctions for Plaintiff's resistance regardless whether Plaintiff is found in contempt.  *See*
7 Mot. at 1 (separately requesting contempt and award of sanctions), 13 (seeking "discovery
8 sanctions").  As Defendants stated in their opening motion, they will bring a separate motion to
9 establish the amount of sanctions to be awarded promptly upon the Court's Order authorizing an
10 award of sanctions.  *See* Mot. at 21.

11 **III.   CONCLUSION**

12 Plaintiff has failed to comply with the October 22, 2010 Order, and has given neither the
13 Court nor Universal a basis to trust that she will comply with her obligations going forward.   For
14 the reasons set forth herein and in Defendants' opening papers, Defendants respectfully request
15 that their motion be granted, and that the Court order compliance with its October 22 Order as
16 well as *in camera* review of withheld documents, that it hold Plaintiff in contempt, and that it
17 order sanctions in the amount of the fees and costs Defendants have incurred in meeting-and-
18 conferring about and pursuing this motion.

20 DATED: January 11, 2011                              Respectfully submitted,

22                                                      By:      */s/ Kelly M. Klaus*
23                                                               KELLY M. KLAUS

                                                        Attorneys for Defendants