KELLY M. KLAUS (SBN 161091)
Kelly.Klaus@mto.com
MELINDA E. LEMOINE (SBN 235670)
Melinda.LeMoine@mto.com
L. ASHLEY AULL (SBN 257020)
Ashley.Aull@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071–1560
Telephone: (213) 683–9100
Facsimile: (213) 687-3702

Attorneys for Defendants
UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEPHANIE LENZ,

Plaintiff,

v.

UNIVERSAL MUSIC CORP., UNIVERSAL MUSIC PUBLISHING, INC. and UNIVERSAL MUSIC PUBLISHING GROUP,

Defendants.

CASE NO. C-07-03783 JF (HRL)

**PUBLIC REDACTED VERSION**

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**

Judge: Hon. Jeremy Fogel
Date: October 16, 2012
Time: 3:00 P.M.
Ctrm: 3, Fifth Floor

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION AND SUMMARY OF OPPOSITION ........ 1

II. RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS ........ 2

III. ARGUMENT ........ 5

A. Plaintiff Lacks Any Evidence—Let Alone Undisputed Evidence—That Universal Knowingly Made A Material Misrepresentation ........ 5

B. Even If Universal Was Required To "Properly Consider" Fair Use Before Including Plaintiff's Posting In The Email To YouTube, Plaintiff Fails To Show As A Matter Of Undisputed Fact That Universal Failed To "Properly Consider" Fair Use ........ 5

1. A Party Should Not Be Liable For A Knowing Misrepresentation Under § 512(f) Based On A Claim The Party Did Not "Properly Consider" Fair Use ........ 6

2. Plaintiff Fails To Show As Undisputed Fact That Universal Failed To "Properly Consider" Fair Use ........ 7

a. "Properly Considering" Fair Use Before Sending A Takedown Notice Cannot Mean, As Plaintiff Suggests, That The Sender Evaluate And Balance All The Statutory Factors ........ 7

b. Universal's Consideration Of Plaintiff's Posting—Including Universal's Guidelines Applicable To All Postings And Sean Johnson's Review Of Plaintiff's Posting—Shows That Universal "Properly Considered" Fair Use ........ 8

3. Universal Did Not "Admit[] That It Did Not Consider Whether The [Posting] Was A Fair Use" ........ 15

C. Plaintiff Fails To Establish That Her Use Of Prince's Composition In Her Posting Was Excused By The Fair Use Defense, Much Less That Her Use Was An "Obvious Fair Use" ........ 16

1. The Purpose And Character Of Plaintiff's Posting Was Neither "Obviously" Non-Commercial Nor "Obviously" Transformative ........ 17

2. The Nature Of The Work Weighs Against Fair Use ........ 19

3. Plaintiff Is Wrong That Universal Was Bound To Find The Amount And Substantiality Of Her Use Minor ........ 20

4. Universal Was Entitled To Conclude That Widespread Synching Of Prince's Compositions On YouTube And UGC Sites Could Adversely Affect The Potential Market For Such Works ........ 21

D. Plaintiff Has Not Provided Any Evidence That Universal Acted With Willful Blindness Under The Controlling Supreme Court Standard ........ 21

E. Plaintiff Has Not Established As A Matter Of Undisputed Fact That Universal's Notice Was Subject To 17 U.S.C § 512 ........ 23

F. Plaintiff Has Not Established As A Matter Of Undisputed Fact That She Incurred Any Damages "By Reason Of" YouTube's Temporary Removal Of Her Posting ........ 24

IV. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)........ 9, 10, 18

*Am. Geophysical Union v. Texaco, Inc.*,
60 F.3d 913 (2d Cir. 1995)........ 10

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006)........ 18

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)........ 18, 19

*Castle Rock Entm't v. Carol Publishing Group, Inc.*,
150 F.3d 132 (2d Cir. 1998)........ 19

*Elvis Presley Enters., Inc. v. Passport Video*,
349 F.3d 622 (9th Cir. 2003)........ 13, 18, 20

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011)........ 2, 22

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)........ 11, 19

*Higgins v. Detroit Educational Television Found.*,
4 F. Supp. 2d 701 (E.D. Mich. 1998)........ 12, 14

*Infinity Broad. Corp. v. Kirkwood*,
150 F.3d 104 (2d Cir. 1998)........ 19

*Jackson v. Warner Bros., Inc.*,
993 F. Supp. 585 (E.D. Mich. 1997)........ 12, 14

*L.A. News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998)........ 11

*Leadsinger, Inc. v. BMG Music Publishing*,
512 F.3d 522 (9th Cir. 2008)........ 18, 19

*Lennon v. Premise Media Corp., L.P.*,
556 F. Supp. 2d 310 (S.D.N.Y. 2008)........ 19, 20

*Lenz v. Universal Music Corp.*,
572 F. Supp. 2d 1150 (N.D. Cal. 2008)........ 1, 4, 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Marascalco v. Fantasy, Inc.*,
953 F.2d 469 (9th Cir. 1991) ........ 12

*Mattel Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ........ 19

*Monge v. Maya Magazines, Inc.*,
Nos. 10–56710, 11-55483, ___ F.3d ___,
2012 WL 3290014 (9th Cir. Aug. 14, 2012) ........ passim

*Ouellette v. Viacom Int'l, Inc.*,
No. CV 10-133, 2012 WL 850921 (D. Mont. Mar. 13, 2012) ........ 6, 24

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ........ 16

*Ringgold v. Black Entm't Television, Inc.*,
126 F.3d 70 (2d Cir. 1997) ........ 12, 13, 14

*Rossi v. MPAA*,
391 F.3d 1000 (9th Cir. 2004) ........ 1, 5, 6

*Rubin v. Boston Magazine Co.*,
645 F.2d 80 (1st Cir. 1981) ........ 10

*Salinger v. Random House*,
811 F.2d 90 (2d Cir. 1987) ........ 15, 20, 21

*Sony BMG Music Entm't v. Tenenbaum*,
660 F.3d 487 (1st Cir. 2011) ........ 10

*Swirsky v. Carey*,
376 F.3d 841 (9th Cir. 2004) ........ 13

*Television Digest, Inc. v. U.S. Tel. Assoc.*,
841 F. Supp. 5 (D.D.C. 1993) ........ 11

*UMG Recordings, Inc. v. MP3.com, Inc.*,
92 F. Supp. 2d 349 (S.D.N.Y. 2000) ........ 10

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
667 F.3d 1022 (9th Cir. 2011) ........ 23, 24

*Viacom Int'l, Inc. v. YouTube, Inc.*,
676 F.3d 19 (2d Cir. 2012) ........ 22, 23

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
227 F.3d 1110 (9th Cir. 2000)........................................................................ 14, 21

**FEDERAL STATUTES**

17 U.S.C. § 107......................................................................................... 9, 11, 17

17 U.S.C. § 115......................................................................................... 7

17 U.S.C. § 512......................................................................................... 8, 11, 16, 23

17 U.S.C. § 512(c)...................................................................................... 3, 4, 23

17 U.S.C. § 512(c)(1).................................................................................. 23, 24

17 U.S.C. § 512(c)(3)(A)(v)......................................................................... 7

17 U.S.C. § 512(f)....................................................................................... passim

**LEGISLATIVE MATERIALS**

S. Rep. No. 105–190 (1998)......................................................................... 8

## I. INTRODUCTION AND SUMMARY OF OPPOSITION

Plaintiff does not have a stitch of evidence that Universal knowingly misrepresented that her "Let's Go Crazy" posting was infringing, or that she incurred any damages as the result of YouTube's temporarily removing the posting. Plaintiff cannot possibly be entitled to judgment as a matter of law under the plain language of § 512(f) or controlling Ninth Circuit precedent, including *Rossi v. MPAA*, 391 F.3d 1000 (9th Cir. 2004). The Court should grant Universal's motion. At a minimum, it must deny Plaintiff's motion.

The crux of Plaintiff's motion is that, notwithstanding the absence of evidence of a subjective, knowing misrepresentation, Universal failed to "proper[ly] consider" fair use, under the Court's motion to dismiss ruling. *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1155 (N.D. Cal. 2008). Universal maintains that the statute cannot be read to require *ex ante* fair use analysis, a position reinforced by the Ninth Circuit's recent decision in *Monge v. Maya Magazines, Inc.*, Nos. 10–56710, 11-55483, ___ F.3d ___, 2012 WL 3290014 (9th Cir. Aug. 14, 2012), which confirms that evaluating fair use "is neither a mechanistic exercise nor a gestalt undertaking, but a considered legal judgment." *Id.* at *16. If, however, the Court continues to hold that "proper consideration" of fair use is required—and that a copyright owner may be liable for making a knowing misrepresentation based simply on its not making such a consideration—then Plaintiff's motion still must be denied. Universal's review satisfied any definition of "proper consideration" that may reasonably and feasibly be applied. Regardless whether Universal's guidelines or witnesses used the magic words "fair use," the *substance* of Universal's review considered those facts that Universal could know and that would be relevant to considering a defense of "incidental, background" fair use—and Universafl still included the posting in its email to YouTube. Plaintiff also fails to show, as she admits she must, that had Universal considered the fair use factors even more than it did, it could only have found her posting to be fair. Plaintiff only gets to the conclusion that her posting was an "obvious" fair use through aggressive and erroneous interpretations of the law, a slanting of the facts, and ignorance of Plaintiff's admissions that hers was not a fair use case [redacted] [redacted]. The exercise confirms why Plaintiff's legal theory is untenable and inconsistent with

*Rossi*.

Recognizing that she has no evidence to show a knowing misrepresentation, Plaintiff insists that the Court can impute such knowledge because Universal "willfully blinded" itself to whether Plaintiff's positing made a fair use of Prince's work. Plaintiff inexplicably fails to cite the controlling case on willful blindness, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011), and she does not have any evidence at all to meet the Supreme Court's test.

Plaintiff's remaining arguments for summary judgment are meritless. Among other flaws, Plaintiff fails to show any proof that she suffered any damages. Her request to expand the concept of damages—to encompass a claimed First Amendment "chill," or compensation for time with no actual loss—is, in addition to being factually contradicted, a request to read the damages requirement out of the statute. This motion must be denied.

## II. RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Universal summarized the undisputed material facts in its own motion and incorporates that discussion by reference. *See* Dkt. No. 395 ("Universal Mot.") at 4–13. Plaintiff's "Statement of Undisputed Facts," Mot. at 2–6, asserts as "fact" several points that are (a) unsupported by evidence, (b) disputed, (c) irrelevant or (d) some combination of the foregoing.

The first two paragraphs, *id*. at 2–3, are comprised almost entirely of assertions about Plaintiff's preparation or her posting and purported purposes in making the posting. These purported facts are irrelevant to the only liability issue in the case—Universal's subjective knowledge when it sent the email to YouTube on June 4, 2007—because there is no way Universal could have known any of the facts that Plaintiff avers.

Plaintiff makes erroneous (or, at a minimum, disputed) assertions regarding the "Let's Go Crazy" posting and the audibility of "Let's Go Crazy" in it. *Id*. at 3:2–7. *First*, what Plaintiff refers to as the "Video" is *not* the YouTube posting, but rather a copy of a media file from Plaintiff's home computer. Universal reviewed only what was posted to YouTube, and that posting, rather than Plaintiff's Ex. A (attached to Miksch Decl.), is the actual evidence of the posting. *See* Dkt. No. 400-8 (Klaus Decl. Ex. 7 (lodged)) ("Lets Go Crazy 1.wmv"). *Second*,

Plaintiff is just wrong that "'Let's Go Crazy' can only be heard in the background for approximately 20 seconds of the 29-second Video and even then not all that clearly." Mot. at 3:5–7. Notwithstanding the voices in the kitchen, the music is audible from the beginning of the YouTube posting; a woman's voice (Plaintiff's) asks, "What do you think of the music?" at the six-second mark, which is before the music becomes even louder in the posting. *Third*, uncontroverted testimony of the Universal employee who reviewed the posting was that, "I recognize[d] the song 'Let's Go Crazy' by Prince right off the bat. The song was—felt it was loud in the background and it was played *throughout the entire video*." Klaus Opp. Decl. Ex. 1 at 76:3–6 (emphasis added).[1]

Plaintiff's description of Universal's administration of Prince's compositions is unsupported or disputed. Mot. at 3–4. *First*, Universal no longer administers Prince's compositions, though Universal did in 2007. *Second*, [redacted] . at 4:2–4. The deposition testimony Plaintiff cites related to an inquiry regarding a posting that (according to the email sent to Universal) was of an individual lip-synching a Prince song. Klaus Opp. Decl. Ex. 2 at 153:21–154:21; Ex. 3 at 165:16–166:16; Ex. 4. *Third*, Plaintiff introduces no evidence of any such thing as a "home video market." *See, e.g.*, Mot. at 4:3, 16:25. Plaintiff's discovery requests say "HOME VIDEO" is "a video recorded by an individual using readily available consumer recording equipment, *for personal noncommercial use*." Klaus Opp. Decl. Ex. 5 at 3:5–6 (emphasis added). As Universal's responses note, *YouTube postings* are not such "home videos." Such postings are to a commercial service available for anyone in the world to view without limit.[2] Miksch Decl. Ex. H at 13–15. *See* Dkt. No. 399-1 (Edelman Decl. Ex. 1 at ¶¶ 8–9).

---

[1] Plaintiff's "factual" assertion that YouTube "stores" videos "[a]t the[] direction" of users, making YouTube eligible for "safe harbor" under 17 U.S.C. § 512(c), Mot. at 3–4, actually involves a legal conclusion regarding the scope of safe-harbor coverage. Universal disagrees with Plaintiff's position on the issue. See Argument Section E, infra.

[2] These requests were the subject of motion practice, and Magistrate Judge Trumbull allowed Universal to qualify its responses on the "home video" issue. Dkt. No. 285 at 8:12–13.

Plaintiff's description of Universal's guidelines for the review of YouTube postings synched with Prince compositions, and Universal's application of those guidelines in conjunction with its review in this case, are discussed in detail in Argument Section B.2, *infra*. Mot. at 4:16–5:22. Plaintiff's truncated description does not accurately describe the undisputed facts regarding either of these issues.[3] In particular, Plaintiff misleadingly asserts that Mr. Johnson's review was "[t]he *sole* factual basis for Universal's decision to request that the Video be removed[.]" Mot. at 5:20–21. Plaintiff omits the undisputed fact that Mr. Johnson's review was pursuant to, and therefore incorporated the elements of, Universal's guidelines, and that it was Mr. Johnson's review *including all of the elements of the guidelines* that factored into Universal's decision regarding Plaintiff's posting. Klaus Opp. Decl. Ex. 3 at 57:1–13. Plaintiff emphasizes that Alina Moffat, an in-house lawyer at Universal who sent the email, did not review Plaintiff's posting (or the more than 200 other postings incorporating Prince's compositions on the list for that one day alone). Mot. at 5:16–19. But Plaintiff omits to tell the Court that Ms. Moffat was not usually responsible for sending such emails to YouTube, and that she sent this one because the person whose job it was happened to be out of the office that day. Klaus Opp. Decl. Ex. 6 at 17:19–21.

Plaintiff's further assertions regarding Universal's original email to YouTube, and Universal's response to Ms. Lenz's claimed "counter-notice," likewise are inaccurate and incomplete. Mot. at 5-6. Both documents reflect Universal's position that the notices are not DMCA notices, because Universal does not agree that YouTube's activities qualify for the § 512(c) "safe harbor"; and that Universal used the form language because YouTube insisted on it. Miksch Decl. Ex. P at 6; Ex. W at 2 [redacted] Plaintiff's email nowhere asserted that her use fair use. *Id.* Ex. W at 1–3.

[3] [redacted]

## III. ARGUMENT

### A. Plaintiff Lacks Any Evidence—Let Alone Undisputed Evidence—That Universal Knowingly Made A Material Misrepresentation

Plaintiff's motion should be denied—and Universal's granted—because Plaintiff has not introduced a scintilla of evidence that Universal "*knowingly* materially misrepresent[ed]" that Plaintiff's posting was infringing. 17 U.S.C. § 512(f) (emphasis added). Under *Rossi*, a § 512(f) defendant acts "knowingly" under this statute only where it has the subjective mental state of "actual knowledge" that it is materially misrepresenting the infringing status of Plaintiff's posting. *Rossi*, 391 F.3d at 1004–05 & n.6.

Plaintiff's motion, instead, is shot through with arguments based on what Plaintiff believes Universal *should have* done or *should have* known. *See* Mot. at 7:21–22 ("Universal *could not have formed* a good faith belief that the Video was infringing *because it never did* what Section 512(f) requires as a predicate for such a belief") (emphases added); *id*. at 13:13–14 ("Universal *could not have believed, if it had bothered to consider it*, that Ms. Lenz's use was anything other than fair") (emphasis added); *id*. at 18:7–8 ("Universal had all the facts it needed to recognize that Ms. Lenz's use was unlawful, *if only it had bothered to consider the issue*") (emphasis added). All of this is *post hoc* second-guessing of Universal's knowledge. These are arguments for liability based on a negligence—"should have known"—standard. Plaintiff does not provide any evidence that Universal actually, subjectively *knew* it was making a material misrepresentation. The Court should deny summary judgment to Plaintiff on this ground alone.

### B. Even If Universal Was Required To "Properly Consider" Fair Use Before Including Plaintiff's Posting In The Email To YouTube, Plaintiff Fails To Show As A Matter Of Undisputed Fact That Universal Failed To "Properly Consider" Fair Use

Relying on the Court's Order on the motion to dismiss, Plaintiff argues that Universal did not properly consider whether her "Let's Go Crazy" posting was a fair use of "Let's Go Crazy." Mot. at 8–13. Universal continues to believe that liability for knowingly misrepresenting that material is infringing cannot be based on a failure to consider whether the fair use defense would excuse the infringement. While the Court's Order continues to be law of the case, the Ninth

Circuit's intervening decision in *Monge*, 2012 WL 3290014, is inconsistent with the Order's rationale and warrants reconsideration of the standard. *See* Part 1, *infra*. But even if that standard remains the law of this case, Plaintiff fails to show as a matter of undisputed fact that Universal failed to "properly consider" fair use regarding her posting. *See* Part 2, *infra*. Finally, Plaintiff is wrong that Universal "admitted" it did not consider fair use, Mot. at 8. *See* Part 3, *infra*.

**1. A Party Should Not Be Liable For A Knowing Misrepresentation Under § 512(f) Based On A Claim The Party Did Not "Properly Consider" Fair Use**

A party does not "knowingly . . . misrepresent[] . . . that material or activity is infringing" simply because the party does not form a good faith belief that the material or activity is not a fair use. The court in *Ouellette v. Viacom Int'l, Inc.*, No. CV 10-133, 2012 WL 850921 (D. Mont. Mar. 13, 2012) (cited at Mot. at 7) held that a party that *subjectively knows* it is requesting the takedown of material that is a fair use may be liable for knowingly misrepresenting the use infringes. *See id.* at *4. But a party that has not formed a belief one way or the other as to whether the material is a fair use cannot be said to subjectively know that it is misrepresenting the infringing status of the material. If the party believes the material infringes but has not evaluated the applicability of a fair use defense that is later found applicable, the most that can be said is that the party made an unknowing mistake, which is not actionable. *Rossi*, 391 F.3d at 1005.

Absent intervening authority, Universal would reserve its arguments on the standard for appeal. However, the Ninth Circuit's recent opinion in *Monge*, while not construing § 512(f), does construe fair use at considerable length, and, we respectfully submit, is inconsistent with key premises underlying this Court's Order. *First*, the Order finds that requiring a copyright owner to consider fair use before sending a takedown notice will not be complicated and will not threaten the rapid takedown mechanism Congress envisioned. 512 F. Supp. 2d at 1155. Plaintiff, for her part, calls the task of considering fair use "simple." Mot. at 1. *Monge*, in contrast, recognizes that fair use is anything but simple. The Ninth Circuit notes that fair use "has been called the most troublesome in the whole law of copyright;" that courts and leading scholars have noted that the doctrine "is so flexible as virtually to defy definition;" and that the statutory factors have a "porous nature." 2012 WL 3290014, at *3–*4. And it holds that the process of making a fair use

determination "*is neither a mechanistic exercise nor a gestalt undertaking, but a considered legal judgment*." *Id.* at *16 (emphasis added). The Ninth Circuit's holding is inconsistent with the procedure the Court's Order envisions.

*Second*, this Court held that the statute requires the copyright owner to consider fair use before sending a notice in order to form a belief as to whether the use is "authorized by … the law." 572 F. Supp. 2d at 1154 (citing 17 U.S.C. § 512(c)(3)(A)(v)). *Monge*, however, reaffirms that fair use is an "affirmative defense," and says that the defense "*presumes that **unauthorized** copying has occurred*." 2012 WL 3290014, at *3 (emphasis added). Copying can of course be authorized by the owner; it also can be authorized by the law, as with a compulsory license. *See* 17 U.S.C. § 115. If fair use does not come into play unless the use is "unauthorized" by owner or by law, then it makes no sense to ask whether such unauthorized use is after all authorized by an affirmative defense.

**2. Plaintiff Fails To Show As Undisputed Fact That Universal Failed To "Properly Consider" Fair Use**

**a. "Properly Considering" Fair Use Before Sending A Takedown Notice Cannot Mean, As Plaintiff Suggests, That The Sender Evaluate And Balance All The Statutory Factors**

Assuming the dismissal Order remains law of this case, Plaintiff still has not established that she is entitled to summary judgment based on Universal's asserted failure to "proper[ly] consider" fair use. 572 F. Supp. 2d at 1155. The Court has not defined what it means to "properly consider" fair use in the context of a takedown notice, nor does the statute or any case. And Plaintiff never actually says what the test should be. She obliquely suggests that Universal's guidelines for evaluating YouTube postings were inadequate because they did not "instruct[] the reviewer to consider whether the use was noncommercial or transformative," "creative or unpublished," "the amount and substantiality of the use," or "discuss[] market harm." Mot. at 9. Plaintiff further suggests that Universal violated the statute by relying on Johnson's review of the posting because he was not trained in fair use and did not utter the magic words "fair use" in describing the *facts* he considered when reviewing Plaintiff's posting. *Id.* at 10–12.

It is impractical and an unreasonable reading of the statute to require that a party sending a

notice first "check the box" on each statutory factor and have personnel trained in the highly technical and complicated legal doctrine of fair use balance all the factors to determine if the use is fair. One of the key purposes behind the DMCA's notice and takedown provision is to provide copyright owners the ability to respond rapidly to potential infringement. *See* S. Rep. No. 105–190, at 21 (1998). The need for rapid response—particularly given the ease with which infringement may increase exponentially through re-linking or re-embedding tools—is dramatically illustrated by the undisputed facts here. [REDACTED] Klaus Opp. Decl. Ex. 3 at 99:19–100:9, 199:3–201:3. These represent just a microscopic fraction of the takedown notices sent annually by rights holders. *Id*. Ex. 7 (reflecting 5,670,181 URLs requested to be removed by Google in the past month). It is impractical to require evaluation and balancing of the four fair use factors by individuals trained in complex fair use doctrine, which, as the Ninth Circuit has said, is a task requires "considered legal judgment" and "put[ting] [the analysis of those factors] in the judicial blender to find the appropriate balance." *Monge*, 2012 WL 3290014, at *16. In light of all of all this—and given the § 512 "put back" procedure that safeguards third parties who believe in good faith that a takedown notice was sent in error—"proper consideration" cannot require marching through all four fair use factors. No more can be required than that the party sending the notice consider, from then-available information, facts that would be relevant to a fair use inquiry were the defense to be raised for the use in issue.

**b. Universal's Consideration Of Plaintiff's Posting—Including Universal's Guidelines Applicable To All Postings And Sean Johnson's Review Of Plaintiff's Posting—Shows That Universal "Properly Considered" Fair Use**

Plaintiff does not accurately describe the facts that Universal knew and considered before including Plaintiff's posting in its email to YouTube. Plaintiff approaches this issue by trying to segregate the guidelines that Sean Johnson followed, the facts that Johnson testified to about Plaintiff's posting in particular, and what the person who sent the email (Alina Moffat) knew and considered. Mot. at 8–13. Plaintiff's argument is that each point in the process—reviewed in isolation—shows a failure to properly consider fair use. Thus, Plaintiff argues that because

Johnson asked whether "Let's Go Crazy" was the "focus" of the posting, Johnson's review considered at most one fair use factor and excluded all others. *Id.* at 9–10. Plaintiff's approach is artificial and contrary to record evidence. Universal's knowledge and consideration included an entire process, including *both* the guidelines and Johnson's review pursuant to those guidelines, all of which incorporated multiple factors relevant to fair use. Klaus Opp. Decl. Ex. 3 at 60:15–61:6, 64:2–17, 120:25–121:11, 122:4–124:20, 125:10–127:22.[4] With all those considerations in mind, Universal determined that Plaintiff's posting was unauthorized and should be included in the email to YouTube. No more can or should be required.

**(1) Universal's Guidelines Accounted For The Commercial Nature Of YouTube Postings, Which Is Directly Relevant To The First Fair Use Factor**

Plaintiff does not dispute that the commercial or non-commercial nature of a use is directly relevant to a fair use analysis. Section 107 expressly calls for consideration of this issue, and cases make clear it is relevant. *See* 17 U.S.C. § 107(1); *Monge*, 2012 WL 3290014, at *9; *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001). Mr. Allen testified that Universal's guidelines applied to postings to YouTube and other commercial sites because YouTube is a commercial, ad-driven service. Klaus Opp. Decl. Ex. 3 at 60:15–61:6, Ex. 2 at 157:3–22. The fact that Universal's guidelines by default applied to any postings to YouTube incorporates this element of fair use consideration.

Tacitly conceding that Universal considered the commercial/non-commercial factor, Plaintiff insists that "YouTube's for-profit nature has *no bearing* on whether *a given video* is

---

[4] Plaintiff's focus on Alina Moffat's claimed lack of consideration of fair use, Mot. at 12:23-13:7, is a red herring. Moffat was only completing the administrative task of sending the email to YouTube. Moffat, the person who she filled in for that day, and Johnson, all reported to Robert Allen, [redacted] Klaus Opp. Decl. Ex. 3 at 61:1–64:17; Ex. 2 at 113:7–116:18. Plaintiff also tries to impute knowledge to Universal on June 4, 2007, based on Moffat's email days later in response to Plaintiff's attempted counter-notice. Mot. at 6:5–16, 12:27–13:7. The claim in this case relates to what Universal knew on June 4. Moreover, although Plaintiff claims Moffat should have realized Plaintiff's posting was "obvious" when given a "second opportunity to consider the matter," Mot. at 12:27, Plaintiff's attempted counter-notice *does not say anything about fair use*. *See* Miksch Decl. Ex. W at 1–3. And Plaintiff herself was admitting at the same time, "[m]ine's not a 'fair use' case at all." Klaus Opp. Decl. Ex. 8 at 2.

commercial or noncommercial." Mot. at 11:21–22 (emphases added). Plaintiff is wrong. Her conflation of her posting with a "home video" ignores that her use was not in a movie shown in a private home. Rather, it involved the reproduction and synchronization of the composition in a posting displayed on an indisputably commercial service that made that posting available to *millions*. *See* Klaus Opp. Decl. Ex. 9 at 158:20–159:24 (acknowledging that posting to YouTube implicates Prince's synchronization right). Because Plaintiff's use implicated a distinct right in the copyright "bundle of sticks," such use necessarily implicates the commercial/non-commercial context in which the use is made.

By Plaintiff's logic, it would not matter if she synched the composition to a full-length movie and then displayed that movie on a commercial television network, so long as Plaintiff pocketed no money. But Plaintiff's theory is not and never has been the law. Courts have consistently looked to the *context* in which a claimed personal use is made to determine if it is of a commercial nature. For example, the Ninth Circuit *rejected* the argument that music "uploaders" on peer-to-peer services—people who place copyrighted content in "share" folders available for others to copy—are engaged in non-commercial uses simply because they do not profit from the use. *See Napster*, 239 F.3d at 1015 n.4 & 1019 (rejecting argument that so-called "space-shifting" use of Napster was fair use because once music is in folder "the song becomes 'available to millions of other individuals,' not just the original CD owner") (citing *UMG Recordings, Inc. v. MP3.com, Inc.*, 92 F. Supp. 2d 349, 351-52 (S.D.N.Y. 2000)); *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 497 n.10 (1st Cir. 2011) (citing *Napster* for proposition that "what constitutes a commercial use [for the '"fair use" exception'] has also been interpreted broadly"). Plaintiff's argument that YouTube's commercial nature is irrelevant to whether her posting a synched video involved commercial use cannot be reconciled with *Napster* or with other cases holding that the context in which a use is made is relevant to whether the use is commercial. *See, e.g.*, *Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 922 (2d Cir. 1995) (although copying of journal articles by in-house researchers was not "commercial exploitation," the court "need not ignore the for-profit nature" or "indirect economic advantage" that Texaco obtained because of the use); *Rubin v. Boston Magazine Co.*, 645 F.2d 80, 84 (1st Cir. 1981)

(“[Plaintiffs] irrefutably showed that the copyrighted material was used as a quiz to entertain readers of a magazine of general circulation. Plainly, the district judge correctly concluded that the defendants’ use of the plaintiff’s copyright was ‘of a commercial nature.’”); *Television Digest, Inc. v. U.S. Tel. Assoc.*, 841 F. Supp. 5, 9–10 (D.D.C. 1993) (“USTA may not have directly profited in the sense of monetary gain; however there is no dispute that USTA saved money by photocopying”).

Plaintiff cannot get around this case law with her inapposite and out-of-context quotation from *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) (a quotation later picked up, in abbreviated form, in *L.A. News Serv. v. Reuters Television Int’l, Ltd.*, 149 F.3d 987, 994 (9th Cir. 1998)). Mot. at 11:22–27, 14:3–5. In *Harper & Row*, the Nation Magazine argued that its publication of portions of the Ford autobiography was non-commercial because “the purpose of news reporting is not *purely* commercial.” 471 U.S. at 562 (emphasis added). The Supreme Court rejected that argument, saying the “profit/nonprofit distinction” does not turn “whether the *sole motive* of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material *without paying the customary price*.” *Id.* (emphases added). Nothing in *Harper & Row* or *L.A. News Service* adopts Plaintiff’s position, which is that the commercial context for a use is irrelevant if the underlying user does not stand to directly profit from the use. Even Plaintiff’s expert, Prof. Jaszi, admits in one of his publications that the commercial nature of user-generated content sites “compromises th[e] argument” that postings to such sites are non-commercial for fair use purposes. Klaus Opp. Decl. Ex. 10 at 3; Ex. 9 at 188:16-189:8, 194:16-195:15.

Plaintiff also cites as support a footnote in a recommendation document from the Register of Copyrights. Mot. at 12:3-6; *see* Klaus Opp. Decl. Ex. 11 at 37. The Report has nothing to do with § 512(f) or the type of asserted fair use (incidental use) at issue in this case. The footnote was not an authoritative interpretation of § 512 or even § 107, and thus is not deferred to here.

*See Marascalco v. Fantasy, Inc.*, 953 F.2d 469, 473–74 (9th Cir. 1991).[5] Indeed, the footnote is not an interpretation of law at all. It simply comments on what it says is the absence of support for a proposition (whether so-called documentary "vidders" "stand in the shoes of the website rendering the works" for fair use purposes) asserted in those proceedings. Here, Universal *has* provided authority showing that the context for Plaintiff's use (posting a synched video to a commercial service) is relevant to the commercial nature of her use.

**(2) The Guidelines' And Johnson's Inquiry Whether The Use Of The Music Was A Significant Focus Of The Posting Is Directly Relevant To The First, Second And Third Fair Use Factors**

Plaintiff belittles the fact that Universal's guidelines asked whether Prince's music was a significant focus of a YouTube posting, and that Johnson testified that he concluded Prince's music was a significant focus of this posting specifically. Mot. at 9, 11.[6] But precedent makes clear that where, as here, the fairness of the use is justified as "incidental" or "background," the pivotal fair use question is whether the copyrighted work was the focus of the second use. *See Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 79 (2d Cir. 1997); *Higgins v. Detroit Educational Television Found.,* 4 F. Supp. 2d 701, 707 (E.D. Mich. 1998); *Jackson v. Warner Bros., Inc*., 993 F. Supp. 585, 589 (E.D. Mich. 1997). *See* Klaus Opp. Dec. Ex. 12 at 6–7 (Prof. Jaszi publication on "Best Practices" for fair use on UGC sites, and specifically "incidental[]" or "accidental[]" fair use: "the video maker should be sure … that the use is not so extensive that it calls attention to itself as the primary focus of interest").

The "focus" issue cuts across several fair use factors in such cases. It is relevant to whether the use is "transformative" (factor one), since it asks whether the use relates to "a central

---

[5] To the extent Plaintiff believes the Report is relevant to Universal's knowledge about fair use when it sent the notice, the argument fails. The Register issued the Report in 2010. Universal sent the email to YouTube in 2007.

[6] Plaintiff misleadingly suggests that Johnson interpreted this criteria to exclude only postings with "a second or less" of Prince's music. Mot. at 10:4–5. In fact, Johnson said that he understood the review for "focus" to [redacted] Klaus Opp. Decl. Ex. 1 at 64:4–10.

purpose" of the work, or whether that use has "alter[ed] the first with new expression, meaning, or message." *Ringgold*, 126 F.3d at 79. The guidelines incorporated the consideration that the right to synch Prince's music as video soundtracks was a significant use of those works, [redacted] Klaus Opp. Decl. Ex. 3 at 135:7–136:8. Universal was entitled to consider, as it did, that synchs of that music with YouTube postings usurped that core purpose for the music. *Id*. And, here, Johnson considered that he heard the song throughout the posting, that the posting described itself with the composition's title "Let's Go Crazy"—a fact that Plaintiff studiously ignores in her brief—and that a voice off-camera specifically asked the child what he thought of the music. *Id*. Ex. 1 at 75:16–76:7, 79:7–81:10.

The "focus" inquiry also relates to the factor two (the nature of the work), since it considers the artistic nature of the copyrighted work. Universal's review indisputably took the artistic nature of the work into account. *Id*. Ex. 3 at 96:9–97:22, 135:25–136:4; Ex. 1 at 64:4–10. *See* Mot. at 12:10–20.

The guidelines' and Johnson's consideration of the focus issue (generally and in this case) also is relevant to the amount and substantiality of the use (factor three), since the review had both quantitative and qualitative dimensions about how much of the song was used and whether it involved "the heart" of the song. *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 630 (9th Cir. 2003). [redacted]

Plaintiff complains that the focus guideline "[a]t best" serves to identify possible "*de minimis*" uses, not fair uses. Mot. at 9:16–17. That is not so. The analysis whether a use is *de minimis* (and not actionable) is different from whether a use is fair because it is "incidental" or "background." *Ringgold*, which analyzes the two issues separately, makes this clear. *See Ringgold*, 126 F.3d at 75–76 (not *de minimis*), 79 (not "incidental" fair use). The *de minimis* inquiry asks whether the use is "trivial," as in using only a handful of notes from a composition. *Swirsky v. Carey*, 376 F.3d 841, 852 (9th Cir. 2004) ("It cannot be said as a matter of law that seven notes is too short a length to garner copyright protection."). The "incidental" inquiry, in

contrast, considers whether the underlying work is a "focal point" or "focus" of the claimed fair use. *See Higgins*, 4 F. Supp. 2d at 707; *Jackson*, 993 F. Supp. at 589. In accordance with the guidelines, Johnson reviewed whether Prince's music was the focus of a posting—not whether there were only a handful of notes used—which is in line with the "incidental" inquiry, not the *de minimis* analysis.[7] And, Johnson determined that Plaintiff's posting utilized Prince's composition throughout the 29–second posting, which is not *de minimis*. *See Ringgold*, 126 F.3d at 77 ("26 to 27 seconds" "not *de minimis* copying").

Plaintiff also argues that Universal's inquiry into "focus" does not sufficiently "consider" fair use, because parodies may focus on the original. Mot. at 9, 11. That contention is entirely beside the point. Plaintiff in her own motion characterizes her use as "incidental background," *id*. at 18:4–5, as does Prof. Jaszi. *See* Klaus Opp. Decl. Ex. 9 at 130:1–4 (discussing Ex. 38 at 33 & n.230); Ex. 10 at 12. Plaintiff's use obviously is not a parody, as Plaintiff admitted within days of YouTube's removal of her posting. *Id.* Ex. 8 at 2 ("Mine's not a 'fair use' case at all. Nor is it a parody.").

**(3) The Guidelines Appropriately Considered [REDACTED] The Effect On The Value Of His Works, Facts That Are Directly Relevant To The Fourth Fair Use Factor**

[REDACTED] the copyright owner has the "right to change his mind" regarding whether to license uses of his works. *Monge*, 2012 WL 3290014, at *13; *Worldwide Church of*

---

[7] Prof. Jaszi said that he classified cases of conversations in a "busy restaurant" with copyrighted works playing "above the bar" as "classic, typical incidental background uses." Klaus Opp. Decl. Ex. 9 at 185:21–187:1. [REDACTED]

*God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1119 (9th Cir. 2000); *Salinger v. Random House*, 811 F.2d 90, 99 (2d Cir. 1987).

* * *

The record evidence shows that Universal's entire consideration of Plaintiff's posting—including the guidelines for review of YouTube postings and Johnson's review pursuant to those guidelines—gave consideration to the fair use factors based on all the information that Universal could know, and that Universal concluded the posting was unauthorized and should be included in the email to YouTube. Plaintiff fails to show as a matter of undisputed fact that Universal did not "properly consider" fair use.

### 3. Universal Did *Not* "Admit[] That It Did Not Consider Whether The [Posting] Was A Fair Use" (Mot. at 8:10–19)

Universal has *never* made such an admission. Given that neither the Court (nor any other source of legal authority) has ever defined what it means to "properly consider" fair use for § 512(f) purposes, it is unfathomable how Universal could have made such an admission. Plaintiff tries to fashion such an admission with a selective and misleading combination of excerpts from Robert Allen's deposition. Notably, Plaintiff does not cite any statement where Allen said "we did not consider fair use," or anything close to it [redacted]

[REDACTED].[8] Allen's testimony referred to Universal's guidelines and the application of them, all of which were explored at length in discovery, and all of which must be considered to resolve the "proper consideration" issue.[9]

**C. Plaintiff Fails To Establish That Her Use Of Prince's Composition In Her Posting Was Excused By The Fair Use Defense, Much Less That Her Use Was An "Obvious Fair Use"**

Plaintiff recognizes that she cannot prove her § 512(f) case without also showing that, if Universal had considered fair use even more than it did, "Universal *could not have believed* … that Ms. Lenz's use was anything other than fair." Mot. at 13:13–14 (emphasis added). Based on the standard that Plaintiff insists must apply—namely, that a defendant may be liable under § 512(f) if it does not rule out that a use would be deemed a fair use—Plaintiff *has* to show that the use would be deemed a fair use. Were it otherwise, a party engaged in verbatim copying with no conceivable claim to fair use could make out a claim based on the happenstance that the copyright owner did not actually examine the use and make an *ex ante* fair use determination. That would be an absurd result.

As the party pressing the affirmative claim in this case, as well as the party asserting fair use, Plaintiff has the burden to establish as a matter of undisputed fact that—even assuming there is such a thing as "obvious" or "self-evident" fair use—Plaintiff's posting meets that definition. *Monge*, 2012 WL 3290014, at *3; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th

---

[8] Universal's counsel objected specifically to the vagueness and ambiguity of this line of questioning; counsel also objected because the questions inherently implicated the legal conclusion of what it means to "properly consider" fair use for purposes of § 512. Miksch Decl. Ex. Q at 76–77. Plaintiff's counsel made no attempt to clear up ambiguity or to focus the questioning on Universal's consideration with respect to Plaintiff's posting. Moreover, Plaintiff *did not* depose Allen as a 30(b)(6) designee on topic 3 ("The basis for UNIVERSAL'S decision to request that YOUTUBE remove the LENZ VIDEO, including any steps taken to consider or determine whether that video is a fair use of LET'S GO CRAZY") or topic 6 ("UNIVERSAL'S review of the LENZ VIDEO"). *See* Klaus Opp. Decl. Ex. 13 at 1:10–11 (Mar. 24, 2010 Amended Dep. Notice).

[9] Plaintiff also cites pp. 18–19 of the Allen transcript, but the questions there were not tied to § 512 or anything having to do with Universal's decision to request that YouTube remove Plaintiff's posting, and were objected to on multiple grounds. Miksch Decl. Ex. Q at 19:3–5.

Cir. 2007). Plaintiff has not come close to meeting that burden. [redacted] This refutes Plaintiff's contention that her use was "obviously" fair. At a minimum, it shows disputed fact questions.

In addition, Plaintiff's own arguments demonstrate there is no basis for concluding that her posting inevitably would have been recognized as fair use. Plaintiff gets to this conclusion only through a combination of (a) citing facts about the creation and the purpose of the posting that Universal did not and could not have known, (b) ignoring other facts Universal did know, and (c) adopting an aggressive and expansive interpretation of numerous fair use cases and concepts. What Plaintiff and her lawyers now consider "obvious" fair use is not and under the law does not have to be obvious to Universal and other rights holders. Indeed, the fact that fair use analysis "is neither a mechanistic exercise nor a gestalt undertaking" shows the impossibility and unworkability of Plaintiff's proposed standard. *Monge*, 2012 WL 3290014, at *16.

### 1. The Purpose And Character Of Plaintiff's Posting Was Neither "Obviously" Non-Commercial Nor "Obviously" Transformative

The first fair use factor incorporates analysis of whether Plaintiff's posting falls within the statutory preamble of illustrative uses, whether the use is of a commercial nature, and whether the use was transformative. 17 U.S.C. § 107(1); *Monge*, 2012 WL 3290014, at *5–*9. Plaintiff's posting does not fit within any of the illustrative examples. For reasons discussed at length, above, Universal was entitled to, and did, consider the use to be commercial, because the work was placed on YouTube, a commercial service. *See supra* pp. 10–13.

Nor was Plaintiff's "Let's Go Crazy" posting "obviously transformative" of "Let's Go Crazy." Mot. at 14:6. "[T]he 'heart' of a claim for transformative use is 'the use of some elements of a prior author's composition to create a new one that, at least in part, comments on

that author's work.'" *Monge*, 2012 WL 3290014, at *7 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 580 (1994)). Plaintiff does not assert that her posting provided any commentary or critical analysis of "Let's Go Crazy." Although Plaintiff's voice asks what the child "thinks of the music," that is not commentary; it only confirms that "Let's Go Crazy" is a focus of the posting. Klaus Opp. Decl. Ex. 1 at 79:7–22. Universal was well within bounds in considering that "Let's Go Crazy" was being used as the synched soundtrack for a YouTube posting entitled "Let's Go Crazy #1." Synchronizing music to video is not inherently transformative, but rather the exercise of a right specifically reserved to the composition owner. *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 527 (9th Cir. 2008) ("[C]ourts have recognized a copyright holder's right to control the synchronization of musical compositions with the content of audiovisual works and have required parties to obtain synchronization licenses from copyright holders."). The cases Plaintiff cites work against her claim of "obvious transformativeness;" the cases make clear that re-casting the work in a different medium (here, synchronizing to a YouTube posting) is not transformative. *See Napster*, 239 F.3d at 1015 ("Courts have been reluctant to find fair use when an original work is merely retransmitted in a different medium."); *Blanch v. Koons*, 467 F.3d 244, 252 (2d Cir. 2006) ("We have declined to find a transformative use when the defendant has done no more than find a new way to exploit the creative virtues of the original work.").

Plaintiff claims that her voice-over and the children running around the kitchen transformed the composition. Mot. at 14:15–18. Universal was not bound to conclude that this was transformative. "Minor changes, such as placing 'voice-overs' on video clips, do not 'necessarily transform a work.'" *Monge*, 2012 WL 3290014, at *6 (quoting *Elvis Presley Enters.*, 349 F.3d at 628–29). Plaintiff further claims a transformative purpose of documenting family life in a "genre of family home videos." Mot. at 14:6–9. Plaintiff has not established that there is any established transformative standard for some "genre of family home videos." Nor could Universal have known that Plaintiff made the posting so her mother, who had difficulty with email attachments, could view it. *Id.* at 3:8–13. Even if Universal had the clairvoyance to know that purpose, that would not have obligated Universal to conclude that Plaintiff's posting was

transformative. "[A]n infringer's separate purpose, by itself, does not necessarily crate new aesthetics or a new work that 'alter[s] the first [work] with new expression, meaning or message.' A 'difference in purpose is not quite the same thing as transformation, and *Campbell* instructs that transformativeness is the critical inquiry under this factor.'" *Monge*, 2012 WL 3290014, at *8 (quoting *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998)). In sum, the case law cuts against Plaintiff's claim on the first factor.

**2. The Nature Of The Work Weighs Against Fair Use**

Plaintiff concedes, as she must, that this factor cuts against fair use. *See Leadsinger*, 512 F.3d at 531 (musical compositions are "precisely the sort of expression that the copyright law aims to protect"). Nevertheless, Plaintiff tries to minimize this factor, and in so doing unwittingly illustrates why her *post-hoc* "obvious" fair use standard represents gestalt second-guessing. *First*, Plaintiff claims this factor is not "terribly significant" in the fair use balance. This factor may not be of paramount importance in cases, like those that Plaintiff cites, where the secondary use is a parody or criticism of the underlying work. *See Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 802 (9th Cir. 2003) (photos of nude Barbies parodying the original and "everything Mattel's doll has come to signify"). Where, however, "the secondary use is at best minimally transformative," "the fictional nature of the copyrighted work remains significant." *Castle Rock Entm't v. Carol Publishing Group, Inc.*, 150 F.3d 132, 144 (2d Cir. 1998) (reversing district court's determination that a book containing trivia questions regarding *Seinfeld* television show was fair use). Universal was not bound to dismiss this factor, as Plaintiff insists.

*Second*, Plaintiff claims that the fact that "Let's Go Crazy" was published, rather than unpublished, cuts against this factor, because "*the composer has already been amply compensated*." Mot. at 14:24–26 (emphasis added). That is Plaintiff's view of what she wishes the law said, not what the law is. Proving fair use for distributing an unpublished work is even harder than proving fair use for distributing a published work, because the copyright owner has the right to control the work's first public appearance. *See Harper & Row*, 471 U.S. at 553; *Monge*, 2012 WL 3290014, at *10. But that does not mean that if a work has been published, that fact by itself *supports* the defense. *Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310

(S.D.N.Y. 2008) (Mot. at 15), said only that the fact that John Lennon's "Imagine" had been widely published "weighs *a bit* in favor of fair use," "but *not strongly*," and in all events, fair use was found there because the second work "comment[ed] on the 'social and aesthetic meaning' of the original, rather than 'exploiting its creative virtues.'" *Id.* at 325 (emphases added). And nothing in *Lennon* (or any other case Plaintiff cites) says that a secondary use is fair because the copyright owner "has already been amply compensated." Mot. at 14:25. Plaintiff's conjecture that Universal was "better positioned than most to evaluate" how much Prince had been compensated for "Let's Go Crazy" thus is non sequitur. *Id.* at 15:6–8.

**3. Plaintiff Is Wrong That Universal Was Bound To Find The Amount And Substantiality Of Her Use Minor**

As noted, Plaintiff's claim that "Let's Go Crazy" is used for 20 of 29 seconds is contrary to the testimony of the Universal employee who reviewed the posting and said the music played throughout. Klaus Opp. Decl. Ex. 1 at 76:3–6. Hence, the appropriation was more than 10% of the original, which is more than enough objectively to be considered a qualitatively substantial taking. *See, e.g.*, *Salinger*, 811 F.2d at 98–99 (use or paraphrase of 10–30% of archived copyrighted letters held unfair).

This factor also has a qualitative dimension—what was taken is as significant as how much, *id*.—and here, Plaintiff's posting used an instantly recognizable and memorable chunk of the song. Plaintiff tries to dismiss this factor on the ground that no one would use Plaintiff's posting rather than the original to listen to "Let's Go Crazy." The "heart of the work" analysis, however, looks to the value of what was taken, not the value of the secondary use. *See Elvis Presley Enters.*, 349 F.3d at 630 ("Plaintiffs are in the business of licensing these copyrights. Taking key portions extracts the most valuable part of Plaintiffs' copyrighted works."). Plaintiff tries to make hay out of the fact that Johnson, at deposition, did not specifically use the words "guitar solo" at deposition when talking about what struck him about the use of the song. Mot. at 15:21–26. But Johnson testified at length about how prominent and recognizable the music was in the posting. Klaus Opp. Decl. Ex. 1 at 75:4–81:16. Plaintiff fails to show as a that Universal should have been obligated to find this factor weighed in favor of fair use.

**4. Universal Was Entitled To Conclude That Widespread Synching Of Prince's Compositions On YouTube And UGC Sites Could Adversely Affect The Potential Market For Such Works**

Plaintiff's argument on the fourth factor is that Universal was bound to recognize that the use of Prince's compositions in "the home video market" could not have any possible effect on the value of the copyrights, [REDACTED] Mot. at 16. As discussed, Plaintiff has not introduced any evidence showing there is a "home video market," even though, as the Plaintiff in the case and the proponent of fair use, Plaintiff has the burden to offer "evidence of the relevant market or the lack of market harm." *Monge*, 2012 WL 3290014, at *14. "[B]road, unsubstantiated statements in [a] brief" do not suffice. *Id.*

Plaintiff says it is "preposterous" to believe that there should be any licensing payment in connection with YouTube postings that synch copyrighted music with images of children playing. Mot. at 17. Plaintiff ignores the fact that the authorization (and corresponding payment) for the rights to reproduce, display and transmit videos synched with Prince music could be obtained by the sites where such posting are made available. And, more fundamentally, Plaintiff ignores [REDACTED] that the fourth fair use factor has been construed in this Circuit (and the Second Circuit) to preserve the copyright owner's right to change his mind. *Monge*, 2012 WL 3290014, at *13–*14 (re-affirming *Worldwide Church of God*, 227 F.3d at 1119); *Salinger*, 811 F.2d at 99.

Plaintiff is simply wrong that the fourth fair use factor, or indeed any of the four factors, obviously, inevitably and self-evidently would have to weigh in her favor. Plaintiff's assertion of "obvious" fair use is not supported.

**D. Plaintiff Has Not Provided Any Evidence That Universal Acted With Willful Blindness Under The Controlling Supreme Court Standard**

Plaintiff's alternative argument is that, even if (as is the case) the evidence does not show Universal actually knew it was making a misrepresentation, the Court should impute such knowledge on the ground that Universal was "willfully blind to the facts showing that a given use . . . is in fact authorized by law." Mot. at 18:12–14. Plaintiff, however, omits the standard she must meet to prove willful blindness, and she does not come close to satisfying it.

The standard for willful blindness is not, as Plaintiff argues at length, the reckless disregard standard applied in some types of defamation cases. Mot. at 19–20. The standard instead is found in the Supreme Court's opinion in *Global-Tech*: "(1) the defendant *must subjectively believe* that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." 131 S. Ct. at 2070 (emphasis added).[10] The Supreme Court specifically faulted the Federal Circuit for applying a willful blindness standard that "permit[ted] a finding of knowledge when there is merely a 'known risk'" and for failing to require as proof of willful blindness "active efforts … to avoid knowing about the … nature of the activities." *Id.* at 2071.

Since Plaintiff fails to cite the controlling standard, it is unsurprising that Plaintiff does not satisfy that standard. Plaintiff rattles off a litany of factual assertions—but not a single citation to evidence in the record. Mot. at 20:15–24. None of these purported facts shows that Universal "*subjectively believe[d]* that there [was] a high probability" that either Plaintiff's posting or any other YouTube posting was a fair use. *Global-Tech*, 131 S. Ct. at 2070 (emphasis added). Plaintiff asserts in completely conclusory fashion that Universal "was confronted with actual facts establishing fair use." Mot. at 20:25. Where Universal was "confronted" with such facts Plaintiff does not say. She does not point to any evidence relating to any posting before June 4, 2007 that supposedly gave Universal a subjective belief that it was requesting the removal of postings despite the fair use defense. If, by "actual facts," Plaintiff is referring to her own posting, then the argument fails because (1) Universal was not bound to recognize her posting to be an obvious fair use, as demonstrated above; and (2) it is nonsensical to say that Universal was given actual knowledge of the claimed probability that Plaintiff's posting was a fair use by Plaintiff's posting, and that Universal simultaneously willfully blinded itself to whether the posting was a fair use.

Having failed to show that Universal had actual subjective knowledge of a high risk it was requesting the removal of fair use postings, Plaintiff also fails to show that Universal deliberately

[10] Plaintiff's failure to cite the standard is particularly baffling, given that her brief block quotes from *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012). Mot. at 19:3–7. On the same page of that case, the Second Circuit cited *Global-Tech* and the willful blindness standard.

took actions to avoid learning of that fact. Plaintiff's willful blindness argument crumbles.

**E. Plaintiff Has Not Established As A Matter Of Undisputed Fact That Universal's Notice Was Subject To 17 U.S.C. § 512**

Plaintiff insists Universal "[o]bviously … intended to take advantage of the DMCA process," Mot. at 21:14–15, but her only evidence on this point is that Universal used the form and email address that YouTube demanded Universal use to request the removal of infringing postings. Universal's email was clear:

> [O]ur use of *YouTube's required notice form* does not indicate we believe that the above referenced copyright infringement is within the scope of the Digital Millennium Copyright Act ('DMCA'). Our use of this form, *as required by YouTube*, is meant to facilitate YouTube's removal of the infringing material listed above *and is not meant to suggest or imply that YouTube's activities and services are within the scope of the DMCA safe harbor*.

Miksch Decl. Ex. P at 6 (emphasis added). *See id*. Ex. N at 4 ¶ 8 (YouTube's Terms of Use).

Klaus Opp. Decl. Ex. 3 at 56:1–7, 78:2–25. For the same reason, Plaintiff is wrong that Universal's response to Plaintiff's claimed "counternotice" "treated the notice as a Section 512 notice" or "obtained the benefits" for Universal of a notice subject to the DMCA. Mot. at 22:1–14.

Miksch Decl. Ex. W at 1–2. Plaintiff's provides no legal authority or factual support tied to such authority for her claim that Universal's June 15, 2007 email disentitles Universal to contest whether the notice was sent under the DMCA.

Indeed, Universal *does* dispute that YouTube's activities in uploading, hosting and transmitting videos constitute "storage at the direction of a user," which limits the scope of the § 512(c) safe harbor. 17 U.S.C. § 512(c)(1). Universal therefore disputes that it sent its email to YouTube "under this section," *id*. § 512(f), and that the email is subject to § 512(f). Citing the Second Circuit's decision in *Viacom*, 676 F.3d 19, Plaintiff claims that Universal cannot contest the issue before a court in the Ninth Circuit. Mot. at 21:23–26. Plaintiff ignores that Universal is currently contesting this very issue in the Ninth Circuit. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022 (9th Cir. 2011) (Universal Music Corp. is a co-plaintiff in

the case). The panel opinion ruled against Universal on the § 512(c)(1) issue, *id.* at 1031–35, but Universal has a pending petition for en banc rehearing (filed January 24, 2012) that challenges the panel's ruling. Klaus Opp. Decl. Ex. 19 at 8–12. Given the significance of the § 512(c)(1) issue to the DMCA's application here, and the amount of time the petition for rehearing *en banc* has been pending, it would be prudent to wait for the case to be resolved in the Ninth Circuit before entering a legal ruling here.[11]

**F. Plaintiff Has Not Established As A Matter Of Undisputed Fact That She Incurred Any Damages "By Reason Of" YouTube's Temporary Removal Of Her Posting**

The damages point in this case is simple: Plaintiff does not have evidence of *any* actual damages. Her request for "nominal" damages boils down to the argument that she has proved the separate element of damages simply by showing an actionable misrepresentation. If a § 512(f) plaintiff can prove damages simply by saying that they felt a takedown "restricted my sense of freedom to express myself," Lenz Decl. ¶ 10; or that they spent an hour (or fraction thereof) being burdened with a takedown notice and how to respond where the plaintiff did not incur a penny's worth of loss or actual lost wages, *see id.* ¶ 9, then the damages requirement in the statute is meaningless. The Court already has held that a § 512(f) plaintiff cannot create damages where none exist by retaining a lawyer to sue for damages. Dkt. No. 250 at 14:16–18. By the same logic, a plaintiff cannot create damages where none exist by saying they did not like the takedown notice and spent time responding to it but incurred no actual economic loss.[12]

Universal's position on the specific categories of damages is set forth in its own motion, at 23–24, and can be summarized briefly here. *First*, Plaintiff as a matter of law cannot recover

---

[11] We note that the *Shelter Capital* panel called for supplemental briefing regarding the relationship between its opinion and *Viacom* on two different safe harbor issues. Klaus Opp. Decl. Ex. 20. Regardless whether or how the panel amends its opinion, if the full court grants the petition for rehearing, then the panel opinion will have no force and the entire appeal (including § 512(c)(1)) will be before the *en banc* court.

[12] [redacted] And Plaintiff's articulation of what damages she incurred has changed repeatedly throughout this litigation. *See, e.g.*, Klaus Opp. Decl. Exs. 26 at 3–4, 27 at 1–2, 28 at 1–2.

damages (even nominal) for a claimed First Amendment "chill," when there is no state action and no First Amendment violation implicated here. As a matter of fact, the evidence shows Plaintiff did *not* suffer any chill, and has continued to post video clips. Klaus Opp. Decl. Ex. 29; Ex. 30; Ex. 17 at 73:3–74:1; Ex. 31; Ex. 32. *Second*, Plaintiff did not lose any actual wages, *id*. Ex. 17 at 28:18–20; 315:2–24, and it is wrong as a matter of law to hold that alleged lost time that cost Plaintiff nothing actually cost her something. *Third*, [REDACTED]

**IV. CONCLUSION**

The Court should deny Plaintiff's motion.

DATED: August 24, 2012

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: */s/ Kelly M. Klaus*
KELLY M. KLAUS

Attorneys for Defendants