**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**\*\*E-Filed 1/24/2013\*\***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

STEPHANIE LENZ,

    Plaintiff,

  v.

UNIVERSAL MUSIC CORPORATION,
UNIVERSAL MUSIC PUBLISHING, INC.
AND UNIVERSAL MUSIC PUBLISHING
GROUP,

    Defendants.

Case No. 5:07-cv-03783-JF

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT

[re: dkt. entries 390, 395]

   Plaintiff Stephanie Lenz ("Lenz") and Defendants Universal Music Corporation, Universal
Music Publishing, Inc., and Universal Music Publishing Group (collectively, "Universal") each
move for summary judgment. The Court has considered the briefing, the admissible evidence, and
the oral argument presented at the hearing on October 16, 2012. For the reasons discussed below,
the motions will be denied.

## I. BACKGROUND

   The facts giving rise to this action are undisputed except as noted otherwise. On February 7,
2007, Lenz videotaped her young children in her family's kitchen. The song "Let's Go Crazy" by
the artist known as "Prince" played in the background. During the video, Lenz's son is shown

United States District Court

For the Northern District of California

1   walking with the aid of a push-toy and "dancing" to the song.  Lenz can be heard asking, "what do

2   you think of the music?"  On February 8, 2007, Lenz uploaded the twenty-nine second video to

3   YouTube.com ("YouTube"), a popular Internet video hosting site.  She titled the video "Let's Go

4   Crazy #1."

5       Universal is a music publishing company that administers composition copyrights for

6   hundreds of songwriters.  In 2007, Universal administered copyrights for Prince.  Universal

7   monitored YouTube regularly for unauthorized use of Prince's works.  Universal's head of business

8   affairs, Robert Allen ("Allen"), assigned the task of monitoring YouTube to Sean Johnson

9   ("Johnson").  Johnson entered the titles of the most popular Prince songs into the YouTube search

10  field, reviewing each returned video to determine whether it used one or more of the songs in an

11  unauthorized or infringing manner.  If it did, Johnson included the video on a removal list.  The

12  removal lists subsequently were sent to YouTube with a request that the identified videos be

13  removed from the YouTube site.

14      After reviewing Lenz's video, Johnson included it on the then-current removal list.  Allen

15  instructed another Universal employee, Alina Moffat ("Moffat"), to transmit the list to YouTube via

16  email.  On June 4, 2007, Moffat incorporated the list into a standard email format that Universal

17  used when requesting that YouTube remove videos that Universal considered infringing.  She sent

18  the email (hereinafter "Takedown Notice") to copyright@youtube.com, an email address identified

19  in YouTube's Terms of Service as intended solely for the purpose of receiving notifications of

20  claimed infringement under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.

21      On June 4, 2007, YouTube sent Lenz an email notifying her that it had removed her "Let's

22  Go Crazy #1" video in response to Universal's accusation of copyright infringement.  YouTube

23  advised Lenz of the DMCA counter-notification procedures and warned her that repeated incidents

24  of copyright infringement could lead to the deletion of her account and all of her posted videos.  On

25  June 7, 2007, Lenz sent YouTube a DMCA counter-notice.  Because that counter-notice did not

26  contain all of the elements required under 17 U.S.C. § 512(g), YouTube did not restore the video to

27  its website at that time.  Lenz then retained counsel, who helped her send YouTube a second DMCA

28  counter-notice on June 27, 2007.  That counter-notice asserted that the video constituted fair use of

2

United States District Court

For the Northern District of California

1    "Let's Go Crazy."  YouTube restored the video to its site in mid-July 2007.  The video was down

2    for approximately six weeks.  As of the date of this order, the video has been viewed on YouTube

3    more than 1.2 million times.

4         Lenz filed the present action against Universal in July 2007.  Her operative second amended

5    complaint asserts a single claim for misrepresentation pursuant to 17 U.S.C. § 512(f).  Both she and

6    Universal seek summary judgment with respect to that claim.

## II. LEGAL STANDARD

8         A motion for summary judgment should be granted if "there is no genuine dispute as to any

9    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see*

10   *also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

11   the initial burden of informing the Court of the basis for the motion and identifying the portions

12   of "depositions, documents, electronically stored information, affidavits or declarations, stipulations

13   (including those made for purposes of the motion only), admissions, interrogatory answers, or other

14   materials" that demonstrate the absence of a triable issue of material fact.  Fed. R. Civ. P.

15   56(c)(1)(A); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets

16   this initial burden, the burden shifts to the non-moving party to present specific facts showing that

17   there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the

18   non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light

19   most favorable to that party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S.

20   242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

22        The DMCA limits service providers' liability "for infringement of copyright by reason of the

23   storage at the direction of a user of material that resides on a system or network controlled or

24   operated by or for the service provider."  17 U.S.C. § 512(c)(1).  This "safe harbor" provision

25   applies if the service provider meets certain requirements and, upon receiving a "notification of

26   claimed infringement," "responds expeditiously to remove, or disable access to, the material that is

27   claimed to be infringing or to be the subject of infringing activity."  17 U.S.C. § 512(c)(1)(C).  To

28   be effective, a notification of claimed infringement sent to the service provider must include *inter*

3

1    *alia* "[a] statement that the complaining party has a good faith belief that use of the material in the

2    manner complained of is not authorized by the copyright owner, its agent, or the law." 17 U.S.C. §

3    512(c)(3)(A)(v) (emphasis added). "Any person who knowingly materially misrepresents under this

4    section . . . that material or activity is infringing" may be liable for resulting damages incurred by

5    the alleged infringer. 17 U.S.C. § 512(f). To be recoverable, the damages must be "incurred by the

6    alleged infringer . . . who is injured by such misrepresentation, as the result of the service provider

7    relying upon such misrepresentation in removing or disabling access to the material or activity

8    claimed to be infringing." *Id*. Lenz claims that Universal's Takedown Notice was a "notification of

9    claimed infringement" pursuant to the DMCA, that it constituted a knowing, material

10    misrepresentation that her video infringed Prince's copyright, and that she incurred damages as a

11    result of YouTube's removal of her video from its site.

12    **A.**      **Applicability of the DMCA**

13        As an initial matter, the parties dispute whether the DMCA applies at all in this case. As

14    noted above, the DMCA imposes liability upon "[a]ny person who knowingly materially

15    misrepresents *under this section* . . . that material or activity is infringing." 17 U.S.C. § 512(f)

16    (emphasis added). Lenz asserts that Universal's Takedown Notice was a "notification of claimed

17    infringement" under § 512 and thus that any material misrepresentations contained therein were

18    made "under this section," that is, under the DMCA. Universal contends that its Takedown Notice

19    did not constitute a "notification of claimed infringement" under § 512 and thus that any

20    misrepresentations contained therein cannot give rise to DMCA liability.

21        As relevant here, YouTube's Terms of Use required that DMCA procedures be used to

22    request removal of videos from YouTube.[1] Dkt. Entry 398, Miksch Decl., Ex. N (Terms of Use), §

23    8. The Terms of Use summarized the DMCA's provisions governing notification of copyright

24    infringement and stated that such notifications should be sent to YouTube's designated Copyright

25    Agent. *Id*. The Copyright Agent's email address was given as: copyright@youtube.com. *Id*.

26

---

27    [1] Although Universal later entered into a contract with YouTube that granted Universal contractual rights with respect to removal of videos, Universal did not have any such contractual rights at the time that it sent the Takedown Notice. Dkt. Entry 456, Miksch Decl., Ex. FF (Universal-YouTube

28    contract effective June 28, 2007); Ex. Q2 (Allen Depo) at 72:4-13.

4

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Notably, the Terms of Use stated that only DMCA notices should be sent to the Copyright Agent,

2  and that any other communications should be directed to YouTube customer service through

3  http://www.google.com/support/youtube. *Id*.

4  　　　　Universal does not dispute that its Takedown Notice complied with these provisions and was

5  sent to the email address designated for receipt of DMCA notifications of copyright infringement.

6  However, it asserts that its Takedown Notice complied with YouTube's Terms of Use – and thus

7  with the DMCA – *only* because YouTube required such compliance.  Universal points out that the

8  Takedown Notice also contained the following language:

9  　　　　This email does not constitute a waiver of any right to recover damages incurred by
10 　　　　virtue of any such unauthorized activities, and such rights as well as claims for other
    　　　　relief are expressly retained.  In addition, *our use of YouTube's required notice form*
11 　　　　*does not indicate we believe that the above referenced copyright infringement is*
    　　　　*within the scope of the Digital Millennium Copyright Act ("DMCA").*  Our use of
12 　　　　this form, as required by YouTube, is meant to facilitate YouTube's removal of the
    　　　　infringing material listed above and *is not meant to suggest or imply that YouTube's*
13 　　　　*activities and services are within the scope of the DMCA safe harbor.*

14 Dkt. Entry 398, Miksch Decl., Ex. P. (Takedown Notice of June 4, 2007) (emphasis added).  Allen,

15 who ultimately was responsible for Universal's notices to YouTube, testified that he did not believe

16 that the Takedown Notice was sent pursuant to the DMCA.  Dkt. Entry 449, Klaus Decl., Ex. 3

17 (Allen Depo.) at 78:2-15.

18 　　　　Universal appears to be arguing that it invoked the DMCA process only because YouTube's

19 Terms of Use required that the process be utilized to request removal of allegedly infringing content,

20 and that because it expressly reserved its rights, the request was not made "pursuant" to the DMCA.

21 Universal does not explain why it could not have addressed its concerns with YouTube's Terms of

22 Use directly with YouTube as provided in the Terms of Use themselves, nor does it point to any

23 authority suggesting that its subjective intent is relevant to the legal adequacy of the Takedown

24 Notice for purposes of the statute.

25 　　　　Universal also argues that YouTube is ineligible for the protection of the DMCA's safe

26 harbor provision.  Specifically, Universal contends that YouTube's activities in uploading, hosting,

27 and transmitting videos do not constitute "storage at the direction of the user" as specified in §

28 512(c)(1).  Universal acknowledges that the Second Circuit has held to the contrary in *Viacom Int'l,*

5

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    *Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012).  In *Viacom*, the court concluded that YouTube's

2    conversion of videos into a standard display format, playback of videos on "watch" pages, and

3    "related videos" function are encompassed within the term "storage at the direction of the user" as

4    used in § 512(c)(1).  *Id*. at 38-39.  Universal also acknowledges that the Ninth Circuit has rejected a

5    similar § 512(c)(1) challenge asserted by Universal in *UMG Recordings, Inc. v. Shelter Capital*

6    *Partners LLC*, 667 F.3d 1022 (9th Cir. 2011).  *See id*. at 1031-35.  However, Universal notes that a

7    petition for rehearing *en banc* in *UMG Recording* remains pending and that the parties have been

8    directed to submit briefing on the impact of *Viacom* in connection with that petition.  Universal

9    suggests that this Court delay resolution of the present cross-motions pending further action by the

10   Ninth Circuit.

11          Lenz contends that *UMG Recordings* has no bearing on the present dispute because

12   YouTube was not a defendant in that case and that this Court simply should apply *Viacom*.  While it

13   is not clear that *UMG Recordings* is irrelevant to the present litigation, the Court is not inclined to

14   stay resolution of the present motions, particularly given the lengthy pendency of this litigation,

15   based upon the mere possibility that Universal's petition for rehearing *en banc* might be granted.  In

16   light of the record evidence and the current state of the law, the Court concludes that YouTube

17   qualifies for protection under the DMCA safe harbor and that Universal's Takedown Notice

18   constituted a "notification of claimed infringement" under the DMCA.

19   **B.      Material Misrepresentation**

20          As discussed above, a notification of claimed infringement sent to a service provider under §

21   512(c) must include *inter alia* "[a] statement that the complaining party has a good faith belief that

22   use of the material in the manner complained of is not authorized by the copyright owner, its agent,

23   or the law."  17 U.S.C. § 512(c)(3)(A)(v).  Universal's Takedown Notice stated as follows:

24          We believe your service is hosting the above-referenced files on its network.  These
             files are offering video recordings in an interactive streaming format that embody
25          musical compositions written by the artist known as Prince.  *We have a good faith*
             *belief that the above-described activity is not authorized by the copyright owner, its*
26          *agent, or the law.*

27   Dkt. Entry 398, Miksch Decl., Ex. P. (Takedown Notice of June 4, 2007) (emphasis added).  Lenz

28   asserts that this statement was a knowing, material misrepresentation under § 512(f) because, given

6

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    its procedures for reviewing videos before requesting that they be removed, Universal could not

2    have formed a good faith belief that Lenz's video did not constitute fair use.

3              **1.      Fair Use Doctrine**

4              This Court held early in the present litigation that a copyright owner must consider fair use

5    before proceeding with a takedown notice under the DMCA:

6         [I]n order for a copyright owner to proceed under the DMCA with "a good faith
          belief that use of the material in the manner complained of is not authorized by the
7         copyright owner, its agent, or the law," the owner must evaluate whether the material
          makes fair use of the copyright.  17 U.S.C. § 512(c)(3)(A)(v).  An allegation that a
8         copyright owner acted in bad faith by issuing a takedown notice without proper
          consideration of the fair use doctrine thus is sufficient to state a misrepresentation
9         claim pursuant to Section 512(f) of the DMCA.

10   *Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1154-55 (N.D. Cal. 2008).[2]

11             Lenz presents substantial evidence that Universal did not consider explicitly whether her

12   video made fair use of Prince's song before it sent the Takedown Notice.  Johnson, the only person

13   at Universal who reviewed YouTube videos for violations of Prince's copyrights, described his

14   practice as follows:  "I put a video on the list that embodied a Prince composition in some way if the

15   – there was a significant use of it, of the composition, specifically if the song was recognizable, was

16   in a significant portion of the video or was the focus of the video.  Dkt. Entry 452, Miksch Decl.,

17   Ex. R (Johnson Depo.) 60:17-22.  He did not put a video on the list if it had only "a second or less

18   of a Prince song, literally a one line, half line of a Prince song," or if it was shot in a noisy

19   environment like a bar where the song was playing "deep in the background."  *Id*. at 62:4-10, 63:3-

20   15.  Johnson's decision to put Lenz's video on the removal list was based upon the facts that:  it was

21   titled "Let's Go Crazy #1"; he recognized the song in the background "right off the bat"; the song

22   was loud and played through the entire video; and the audio track included a voice asking the

23   _____

24   [2] Universal claims that in light of the Ninth Circuit's recent discussion of fair use in *Monge v. Maya
     Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012), the question of whether a particular use is
25   "authorized by law" does not involve consideration of the fair use doctrine.  Addressing fair use in a
     case in which the doctrine was asserted as an affirmative defense, *Monge* held that, "This
26   affirmative defense presumes that unauthorized copying has occurred, and is instead aimed at
     whether the defendant's use was fair."  *Id*. at 1170.  Universal argues that if the fair use doctrine
27   does not come into play unless a use is "unauthorized," then by definition fair use cannot be an
     "authorized" use for purposes of the DMCA.  However, while it does provide some support for
28   Universal's position, *Monge* is not a DMCA case, and it does not address the unique statutory
     language at issue here.

                                         7

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

United States District Court

For the Northern District of California

1    children whether they liked the music. *Id*. at 75:16-76:7, 79:7-20.  Johnson made no mention of fair

2    use during his testimony and gave no indication that he considered fair use before deciding whether

3    to place Lenz's video on the removal list. *Id*.

4           The guidelines that Allen described when testifying on behalf of Universal likewise make no

5    mention of fair use:

6           The general guidelines are that when a writer is upset or requests that particular
       videos be removed from YouTube that we review the video to ensure that the

7           composition was the focus of the video and if it was we then notify YouTube that the
       video should be removed.

8

9    Dkt. Entry 452, Miksch Decl., Ex. Q (Allen Depo.) at 61:1-6.  In its supplemental response to

10   Lenz's requests for admission, Universal admitted that as of June 4, 2007 – the date of the

11   Takedown Notice – it had not instructed Johnson to consider fair use during his review of YouTube

12   videos.  Dkt. Entry 398, Miksch Decl., Ex. H (Supp. Resp. to RFAs) at 18.

13          This evidence is sufficient to establish that Universal issued its Takedown Notice without

14   considering fair use.  Universal nonetheless contends that although Johnson was not instructed to

15   and did not consider fair use *per se*, he did consider a number of factors that would be relevant to a

16   fair use determination.  In general, such factors include:  (1) whether there was a transformative

17   noncommercial purpose; (2) the nature of the copyrighted work; (3) the amount and substantiality of

18   the use of the copyrighted work; and (4) the effect on the market for the copyrighted work.  17

19   U.S.C. § 107.  Johnson testified that he considered whether Lenz's video made "significant use" of

20   Prince's song and whether the song was the "focus" of the video. *See* Dkt. Entry 452, Miksch Decl.,

21   Ex. R (Johnson Depo.) 60:17-22.  Universal argues that Johnson's consideration of these and other

22   factors relevant to a fair use analysis is sufficient to meet a requirement that a copyright owner

23   consider fair use before proceeding under the DMCA.  Citing the Ninth Circuit's recent statement

24   that "[t]he fair use doctrine has been called the most troublesome in the whole law of copyright,"

25   *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012), Universal argues that

26   requiring anything more would be inconsistent with the relatively uncomplicated review process

27   envisioned by this Court, s*ee Lenz*, 572 F. Supp. 2d at 1155.

28          While it agrees that requiring a copyright holder to engage in a full-blown fair use analysis

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1  prior to sending a DMCA takedown notice would be inconsistent with the remedial purposes of the

2  statute, the Court disagrees that it is sufficient for a copyright holder to consider facts that might be

3  relevant to a fair use analysis without making any effort to evaluate the significance of such facts in

4  the context of the doctrine itself.  Because the question of whether something constitutes fair use is a

5  "legal judgment," *Monge*, 688 F.3d at 1183, proper consideration of the doctrine must include at

6  least some analysis of the legal import of the facts.  The Court concludes that at minimum, for the

7  reasons discussed at length in its prior order, *see Lenz*, 572 F. Supp. 2d at 1154-56, a copyright

8  owner must make at least an initial assessment as to whether the fair use doctrine applies to the use

9  in question in order to make a good faith representation that the use is not "authorized by law."

10         **2.      Effect Of Universal's Failure To Consider Fair Use Doctrine**

11         Lenz asserts that under the law of the case, Universal's admitted failure to consider fair use

12  before sending its Takedown Notice is sufficient to establish liability under § 512(f).  Universal

13  disputes this assertion, relying upon the Ninth Circuit's holding in *Rossi v. Motion Picture Assoc. of*

14  *America, Inc.*, 391 F.3d 1000 (9th Cir. 2004).  In *Rossi*, the court held that "the 'good faith belief'

15  requirement in § 512(c)(3)(A)(v) encompasses a subjective, rather than objective, standard."  *Id*. at

16  1004.  The plaintiff in that case asserted that had the defendant conducted a reasonable investigation

17  into the plaintiff's allegedly offending website, the defendant necessarily would have realized that

18  there was no copyright infringement.  *Id*. at 1003.  The Court of Appeals concluded that "[a]

19  copyright owner cannot be liable simply because an unknowing mistake is made, even if the

20  copyright owner acted unreasonably in making the mistake."  *Id*. at 1005.  "Rather, there must be a

21  demonstration of some actual knowledge of misrepresentation on the part of the copyright owner."

22  *Id*.  In light of *Rossi*, it appears that Universal's mere failure to consider fair use would be

23  insufficient to give rise to liability under § 512(f).  Lenz thus must demonstrate that Universal had

24  some actual knowledge that its Takedown Notice contained a material misrepresentation.

25         This Court's prior order contemplated imposition of § 512(f) liability upon a showing that

26  the copyright owner "acted in bad faith by issuing a takedown notice without proper consideration

27  of the fair use doctrine."  *Lenz*, 572 F. Supp. 2d at 1155.  A bad faith requirement would be

28  consistent with *Rossi*'s subjective standard.  However, Lenz points out that neither the DMCA nor

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

United States District Court

For the Northern District of California

1    the applicable case law uses the term "bad faith."  Instead, both frame the inquiry in terms of

2    whether the party that issued the takedown notice had a "good faith belief" that use of the

3    copyrighted work was unauthorized.  *See* 17 U.S.C. § 512(c)(3)(A)(v) (providing that a notification

4    of claimed infringement sent to the service provider must include "[a] statement that the

5    complaining party has a *good faith belief* that use of the material in the manner complained of is not

6    authorized by the copyright owner, its agent, or the law.") (emphasis added); *Rossi*, 391 F.3d at

7    1004 (discussing the "good faith belief" requirement of § 512(c)(3)(A)(v)).  Lenz contends that

8    Universal could not have formed a good faith belief that her use of Prince's song was not fair use

9    because Universal's takedown procedures ignored the question of fair use entirely.

10        Essentially, Lenz asserts that Universal's procedures for evaluating copyright infringement

11   were so deficient that Universal willfully blinded itself as to whether any given video might

12   constitute fair use.  "Willful blindness is tantamount to knowledge."  *Viacom*, 676 F.3d at 34; *see*

13   *also Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge,

14   in copyright law . . . as it is in the law generally.").  She argues that a showing of willful blindness

15   would be sufficient to show an absence of good faith under *Rossi*'s subjective standard.[3]

16        In order to establish willful blindness on the part of a defendant, a plaintiff must establish

17   two factors:  "(1) the defendant must subjectively believe that there is a high probability that a fact

18   exists and (2) the defendant must take deliberate actions to avoid learning of that fact."  *Global*

19   *Tech. Appliances, Inc. v. SEB SA*, 131 S.Ct. 2060, 2070 (2011).  "Under this formulation, a willfully

20   blind defendant is one who takes deliberate actions to avoid confirming a high probability of

21   wrongdoing and who can almost be said to have actually known the critical facts."  *Id*. at 2070-71.

22        Addressing the second factor first, Lenz presents evidence, discussed above, that Universal

23

24   [3] At the hearing, Lenz's counsel suggested that something less than willful blindness might be
     sufficient, arguing that the *Rossi* standard could be met simply by showing that on this record
25   Universal could not have formed a good faith belief that fair use did not apply, because Universal
     did not consider fair use at all.  However, as noted above, an inadvertent failure to consider fair use
26   would be insufficient to impose § 512 liability in light of *Rossi*.  Lenz must demonstrate "some
     actual knowledge of misrepresentation" on the part of Universal.  Since the record is devoid of
27   evidence that Universal subjectively believed that fair use might apply to Lenz's video, the Court
     concludes that the only other avenue available to Lenz is to show that Universal willfully blinded
28   itself to the potential application of the fair use doctrine.

10

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1  assigned the task of reviewing YouTube postings for infringing uses of Prince's songs to a single

2  person who was not given any information or training about fair use.  A trier of fact could conclude

3  based on this evidence that Universal took deliberate actions to avoid learning whether any

4  particular use of one of Prince's works was protected by the fair use doctrine.

5      However, Lenz does not present evidence suggesting that Universal subjectively believed

6  either that there was a high probability that any given video might make fair use of a Prince

7  composition or that her video in particular made fair use of Prince's song "Let's Go Crazy."  Lenz

8  argues that her video was "self-evident" fair use and that Universal must have known it constituted

9  fair use when it sent the Takedown Notice.  However, as the Ninth Circuit recently has observed, the

10 process of making a fair use determination "is neither a mechanistic exercise nor a gestalt

11 undertaking, but a considered legal judgment."  *Monge*, 688 F.3d at 1183.   A legal conclusion that

12 fair use was "self-evident" necessarily would rest upon an objective measure rather than the

13 subjective standard required by *Rossi*.  Indeed, Universal presents evidence that Lenz herself

14 initially did not view her claim as involving fair use.  *See* Dkt. Entry 400, Klaus Decl., Ex. 1 (Lenz's

15 Blog).[4]

16     Accordingly, the Court concludes that Lenz is not entitled to summary judgment based on

17 the theory that Universal willfully blinded itself to the possibility that her video constituted fair use

18 of Prince's song.  Nor is Universal entitled to summary judgment, as it has not shown that it *lacked*

19 a subjective belief that there was a high probability that any given video might make fair use of a

20 Prince composition.  Lenz is free to argue that a reasonable actor in Universal's position would have

21 understood that fair use was "self-evident," and that this circumstance is evidence of Universal's

22 alleged willful blindness.  Universal likewise is free to argue that whatever the alleged shortcomings

23 of its review process might have been, it did not act with the subjective intent required by §512(f).

24

25

26 _____

   [4] Plaintiff objects to Universal's citation to this evidence, asserting that the relevant inquiry is what
27 *Universal* believed, not what Lenz or anyone else believed.  This objection is overruled.  Plaintiff's
   initial impression that fair use did not apply in this case is relevant to her assertion that fair use is so
28 "self-evident" that Universal must have known that the doctrine does apply.

11

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   **C.      Damages**

2          Universal contends that even if its Takedown Notice did contain a material

3   misrepresentation sufficient to give rise to liability under the DMCA, it nonetheless is entitled to

4   summary judgment because Lenz cannot demonstrate that she suffered any damages.  Lenz asserts

5   that this Court already has held that she was damaged by YouTube's removal of her video.  In its

6   order dated February 25, 2010, the Court granted partial summary judgment with respect to a

7   number of Universal's affirmative defenses, including Universal's third affirmative defense

8   asserting that Lenz had not suffered any damages.  The Court reasoned as follows:

9          Universal has challenged Lenz's claim that her pre-suit activities, which included
           "time spent reviewing counternotice procedures, seeking the assistance of counsel,
10         and responding to the takedown notice," (Pl.'s MSJ), involved actual expense or
           economic loss.
11
           Universal does not claim that Lenz did not take these actions or incur any damages in
12         doing so.  As discussed above, the Court concludes that actual expenses or economic
           losses of some minimum value are not necessary under the statute.  Accordingly,
13         because there is no genuine issue of material fact as to whether Lenz incurred *some*
           damages as defined under the statute, Lenz's motion will be granted as to Universal's
14         affirmative defense of no damages.

15  *Lenz v. Universal Music Corp.*, 2010 WL 702466, at *11-13 (N.D. Cal. Feb. 25, 2010).

16         Universal correctly points out that the record is more developed now than it was at the time

17  the Court issued its prior order, and that Lenz's damages theory has evolved over time.  Universal

18  argues that on the current record the Court may conclude as a matter of law that Lenz did not incur

19  *any* damages recoverable under § 512.

20         Lenz asserts three categories of damages:  loss of YouTube's hosting services and chilling of

21  her free speech, lost time and resources, and attorneys' fees and costs.  With respect to the first

22  category, Universal submits evidence that YouTube services were available to Lenz at no cost and

23  that Lenz did not care that YouTube declined to host her video.  *See* Dkt. Entry 400, Klaus Decl.,

24  Ex. 3 (email) ("I don't care that YouTube doesn't want to host it.  Not like I'm paying them.").

25  Lenz states in her declaration that as a result of the takedown of her video, she recorded videos of

26  her children less frequently, and felt that her freedom to express herself through video had been

27  restricted.  Dkt. Entry 392, Lenz Decl., ¶ 10.  She seeks nominal damages for the chilling of her free

28  speech rights.  However, the cases upon which she relies raised challenges to *government* action.

12

**United States District Court**
For the Northern District of California

1   For example, *Yniguez v. Arizonans for Official English*, 69 F.3d 920 (9th Cir. 1995) (en banc),

2   *vacated on other grounds*, 520 U.S. 43 (1997), involved a suit by a state employee against the state.

3   The plaintiff was awarded nominal damages.[5]  Lenz invites this Court to extend the reach of such

4   cases to the conduct of private actors in the DMCA context.  However, absent some authority

5   supporting such an extension, the Court declines the invitation.  Accordingly, the Court concludes

6   that Lenz cannot demonstrate damages based upon the loss of YouTube's hosting services and the

7   chilling of her free speech.

8           Lenz claims that, "In total, I spent at least ten hours before filing this lawsuit on obtaining

9   counsel, figuring out how to send – and sending – the first counternotice to YouTube, sending the

10  second counternotice to YouTube, and ensuring that my video was restored to YouTube."  Dkt.

11  Entry 392, Lenz Decl., ¶ 9.  She requests that she be compensated for that time at minimum wage,

12  although she admittedly did not lose any actual wages.  She goes on to state that, "Most, if not all, of

13  this work was completed on my personal computer."

14          Apparently there is no reported case that indicates definitively whether Lenz may recover for

15  the time and resources that she herself expended in attempting to have her video reinstated under the

16  DMCA's counter-notice procedures.  Universal argues that Lenz may not recover damages for her

17  expenditure of her own time and resources, citing the Restatement (Second) of Torts, §§ 525, 549

18  (1977), for the proposition that pecuniary loss is an element of a claim for misrepresentation.

19  However, it is not clear that the pecuniary loss requirement applies to a statutory claim brought

20  under the DMCA.  Lenz must have incurred at least minimal expenses for electricity to power her

21  computer, internet and telephone bills, and the like, that potentially could be recoverable under §

22  512(f).  Permitting recovery of such damages would be consistent with this Court's earlier

23  conclusion that "[t]he use of 'any damages' [in the statute] suggests strongly Congressional intent

24  that recovery be available for damages even if they do not amount to . . . substantial economic

25  damages."  *Lenz*, 2010 WL 702466, at *10.  As the Court has noted, requiring a plaintiff who has

26

27  ────────────────────
    [5] The holding in another case relied upon by Lenz, *Phelps-Roper v. City of Manchester*, 738 F.

28  Supp. 2d 947 (E.D. Mo. Sept. 8, 2010), was reversed and vacated after briefing on the present
    motions was completed, *see* 697 F.3d 678 (8th Cir. 2012).

Case No. 5:07-cv-03783-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

United States District Court

For the Northern District of California

1  demonstrated a misrepresentation actionable under the DMCA "to demonstrate in addition not only

2  that she suffered damages but also that those damages were economic and substantial would vitiate

3  the deterrent effect of the statute." *Id*.

4      Finally, Lenz claims that she incurred attorneys' fees for pre-litigation work done in

5  responding to the Takedown Notice. Attorney Marcia Hoffman states in her declaration that she

6  works for the Electronic Frontier Foundation ("EFF"), that she spent 4.25 hours helping Lenz

7  respond to the Takedown Notice prior to commencement of litigation, and that at her normal billing

8  rate the fees incurred total $1,275. Dkt. Entry 393, Hoffman Decl., ¶¶ 1-7. While those fees were

9  *pro bono*, it is not clear that they cannot form the basis of a damages claim here. Lenz points to

10 language in her retainer agreement with EFF requiring her to assign any recovery up to the full

11 amount of the EFF's fees and expenses. Dkt. Entry 446, Klaus Decl., Ex. 34 (Retainer Agreement).

12 It may be that Lenz may recover the *pro bono* fees as an element of damages if she prevails on her

13 DMCA claim. The cases cited by the parties are not dispositive on this issue.[6]

14     In summary, the Court concludes that Universal has not established that Lenz is precluded

15 from recovering *any* damages for her DMCA claim. This ruling is without prejudice to a motion for

16 judgment as a matter of law under Federal Rule of Civil Procedure 50, if and when such motion is

17 appropriate.

### IV. ORDER

18

19     For the foregoing reasons, the cross-motions for summary judgment are DENIED.

20 DATED: 1/24/2013



21 
JEREMY FOGEL
22 United States District Judge

23

24

---

25 [6] Universal argues that counsel's prelitigation work was so intertwined with the litigation that the fees are not recoverable under the Court's prior ruling that fees incurred for litigation are not
26 recoverable. *See Lenz*, 2010 WL 702466, at *11. Universal does not cite authority holding that "intertwined" fees are not recoverable, and the Court is not prepared to conclude on this record that
27 in fact the prelitigation and post litigation fees are so intertwined that the former would be unrecoverable under the Court's prior ruling.
28

14